# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| IN RE: PHILIPS RECALLED CPAP, BI-LEVEL PAP, AND MECHANICAL VENTILATOR PRODUCTS LITIGATION | : Master Docket: Misc. No. 21-mc-1230-JFC |
| | : |
| | : MDL No. 3014 |
| This Document Relates to: | : |
| All Actions | : REPLY BRIEF IN SUPPORT OF |
| | : MOTION TO DISMISS PURSUANT |
| | : TO FED R. CIV. PRO. 12(b)(6) |
| | : |
| | : CONSOLIDATED AMENDED |
| | : CLASS ACTION COMPLAINT FOR |
| | : ECONOMIC LOSSES |

**REPLY BRIEF OF DEFENDANTS POLYMER TECHNOLOGIES INC. AND POLYMER MOLDED PRODUCTS LLC IN SUPPORT OF THEIR MOTION TO DISMISS PLAINTIFF'S CONSOLIDATED THIRD AMENDED CLASS ACTION COMPLAINT FOR ECONOMIC DAMAGES FOR FAILURE TO STATE A CLAIM UPON WHICH RELIEF CAN BE GRANTED PURSUANT TO FED. R. CIV. PRO. 12(b)(6)**

**FRANKLIN & PROKOPIK**

    */s/ Eric Scott Thompson*
ERIC SCOTT THOMPSON
PA Bar ID No.: 92666
500 Creek View Road, Suite 502
Newark, DE 19711
(302) 594-9780
ethompson@fandpnet.com
*Attorneys for Polymer Technologies Inc.*

Dated: March 23, 2023      *and Polymer Molded Products Inc.*

**TABLE OF CONTENTS**

PRELIMINARY STATEMENT ................................................................................................ 1

ARGUMENT .................................................................................................................................. 2

    I.    Plaintiff Lacks Standing to Bring RICO Claims against PolyTech ..................................... 2

    II.    Plaintiff Fails to Plead Facts Plausibly Implying the Existence of an Association-in-Fact Enterprise Necessary to Prevail on a RICO Claim under 18 U.S.C. §1962(c). .......................... 4

    III.    Plaintiff's Claim Under § 1962(d) Must Fail Since Plaintiff Has Failed to Satisfy All the Elements of a Claim Under § 1962(c) and/or Has Failed to Sufficiently Plead PolyTech Conspired to Defraud. ................................................................................................................. 9

    IV.    Further Amendment of the Complaint will be Futile. ....................................................... 9

CONCLUSION ............................................................................................................................ 10

# TABLE OF CITATIONS

**Statutes**

18 U.S.C. § 1962 .................................................................................................... 4, 5, 9

# Cases

*Apple Inc. v. Pepper*,
   587 U.S. 1514 (2019) ........................................................................................... 2

*Bell Atlantic Corp. v. Twombly*,
   550 U.S. 544 (2007) ............................................................................................ 2

*Smith v. Berg*,
   247 F.3d 538 (3d Cir. 2001) ................................................................................ 9

*City of New York v. Gordon*,
   155 F. Supp. 3d 411 (S.D.N.Y. 2015) ................................................................. 7

*Edwards v. First Nat. Bank*,
   872 F.2d 347, 352 (10th Cir. 1989) ..................................................................... 9

*Gomez v. Guthy-Renker, LLC*,
   2015 WL 4270042 (C.D. Cal. 2015) ................................................................... 7

*Howard Hess Dental Labs, Inc. v. Dentsply Intern., Inc.*,
   424 F.3d 363 (3d Cir. 2005) ................................................................................ 3

*Illinois Brick Co. v. Illinois*,
   431 U.S. 720 (1977) ......................................................................................... 2, 3

*In re Chrysler*,
   295 F. Supp. 3d 927 (N.D. Cal.. 2018) ............................................................ 4, 5

*In re Countrywide Fin. Corp. Mortg.-Backed Securities Litig.*,
   2012 WL 10731957 (C.D. Cal. 2012) ................................................................. 7

*In re Insurance Brokerage Antitrust Litigation*,
   618 F.3d 300 (3d Cir. 2010) ...................................................................... 4, 5, 6, 9

*In re Jamster Mktg. Litg.*,
   2009 WL 1456632 (S.D. Cal. 2009) ................................................................ 5, 9

*In re Juul Labs,*
    497 F.Supp.3d 552 (N.D. Cal. 2020) .............................................................. 4, 5, 7, 9

*In re: Juul Labs* (*quoting Cedric Kushner Promotions, Ltd. V. King*,
    533 U.S. 158 (2001) ................................................................................................ 4, 8

*In re Takata Airbag Products Liab. Litig.,*
    2015 WL 9987659 S.D. Fl. 2015) ............................................................................... 6

*In Re Zantac (Ranitidie) Product Liability Litigation*,
    546 F.Supp.3d 1216 (S.D. Fla. 2021) ........................................................................ 2

*Kehr Packaging, Inc. v. Fidelcor, Inc.,*
    926 F.2d 1406 (3d Cir. 1991) ..................................................................................... 5

*Shaw v. Nissan North America,*
    220 F.Supp.3d. 1046 (C.D. Cal. 2016) .................................................................. 2, 9

*In re Volkswagen "Clean Diesel"Marketing, Sales Practices, and Products Liability Litigation*,
    2017 WL 4890594 (N.D. Cal. 2017) ..................................................................... 4, 5

## PRELIMINARY STATEMENT

PolyTech[1] moved to dismiss Plaintiff's Consolidated Third-Amended Complaint ("TAC") for Economic Losses arguing Plaintiff lacks standing and failed to allege sufficient facts to support a RICO action against PolyTech. Plaintiff opposed arguing the RICO factors are sufficiently pled and that notwithstanding there being no allegations PolyTech engaged in any conduct other than operation of a legitimate business, this allegation is enough to support a RICO allegation.[2] Plaintiff takes the position that it is irrelevant if PolyTech engaged in a legitimate business relationship since that does not make PolyTech's misconduct any less actionable.[3] Plaintiff states that "PolyTech was much more than a foam supplier" but cites to no factual allegations in the TAC in support of this.[4] In fact, there are no facts alleged supporting collaborative or collusive conduct by PolyTech; Plaintiff also argues that the "Complaint details how PolyTech participated in a fraudulent scheme to conceal health and safety risks of the PE-PUR foam in the Recalled Devices" but again cites to no factual allegations in the TAC to support this.[5] Plaintiff further argues that the acts of PolyTech shipping foam "are not ordinary or normal business activities if they are used to advance the alleged fraudulent scheme". However, again, there is no citation to a factual allegation that PolyTech shipped foam for any other purpose than fulfillment of a business transaction. Entities engaged in 'ordinary business conduct and an ordinary business purpose' do

---

[1] The allegations against Polymer Technologies, Inc. and Polymer Molded Products LLC are the same without any differences and they have collectively been referred to as "PolyTech" throughout the litigation whether correspondences, pleadings, or otherwise. Therefore, all arguments on behalf of one are applicable to both and no differentiation is made. *See* paragraph 159 of Third-Amended Complaint.
[2] *See* Opposition at 8.
[3] *Id*.
[4] *Id*.
[5] *Id*.

not necessarily constitute an 'enterprise' bound by common purpose under RICO."[6] Allegations are made that this is the case, but they are bare boned with no supporting facts alleged. This is the fault of the TAC, where it fails to comply with the RICO pleading standards, and why dismissal is appropriate: it makes bare bared conclusions without the support of accompanying facts **plausibly** implying the existence of an enterprise and/or collaborative or collusive conduct as required under 12(b)(6) and *Twombly*.[7]

## ARGUMENT

### I.   Plaintiff Lacks Standing to Bring RICO Claims against PolyTech

"Illinois Brick established a bright-line rule that authorizes suit by direct purchasers but bars suit by indirect purchasers."[8] "For example, if manufacturer A sells to retailer B, and retailer B sells to consumer C, then C may not sue A. But B may sue A if A is an antitrust violator. And C may sue B if B is an antitrust violator."[9] "The Supreme Court created the indirect purchaser rule to prevent the transformation of 'treble-damages actions into massive multiparty litigations involving many levels of distribution and including large classes of ultimate consumers remote from the defendant.'"[10]

This case presents the issues which *Illinois Brick* and *In Re Zantac* sought to prevent: "massive multiparty litigations involving many levels of distribution". In our case, there is no allegation that PolyTech sold products for direct consumer use. Instead, the allegation is that PolyTech bought foam from Burnett or other companies and subsequently sold it either directly

---

[6] *Shaw v. Nissan North America,* 220 F.Supp.3d. 1046, 1054 (C.D. Cal. 2016).
[7] *Bell Atlantic Corp. v. Twombly,* 550 U.S. 544, 555 (2007).
[8] *In Re Zantac (Ranitidie) Product Liability Litigation*, 546 F.Supp.3d 1216, 1222 (S.D. Fla. 2021).
[9] *Id*. (*quoting Apple Inc. v. Pepper*, 587 U.S. 1514, 1521 (2019).
[10] *Id*. (*quoting Illinois Brick Co. v. Illinois*, 431 U.S. 720, 740 (1977).

to Philips or to an intermediary like Paramount Die. This highlights the involvement of many levels and many parties.

Plaintiff cannot "invoke a co-conspirator exception to *Illinois Brick's* bar on indirect purchaser standing when plaintiffs have not named the co-conspirators immediately upstream as defendants."[11] The fact that Plaintiff has chosen not to name some alleged co-conspirators is fatal to Plaintiff's standing to bring this action against PolyTech.

Plaintiff relies on *Hess I* and *Wallach* for the proposition that the direct purchaser rule does not apply when the most upstream seller (Philips) is a co-conspirator with the remote upstream seller (PolyTech).[12] However, that is not the holding in *Illinois Brick, Hess I, or Wallach* since the Alpha, Bravo, Charlie example set forth in *Illinois Brick* is contrary to Plaintiff's position. In this action, Plaintiff names several co-conspirators in the TAC, including Paramount Die, Soundcoat, and Burnett, but does not name them as Defendants. In addition, Plaintiff even factually alleges that some of the co-conspirators may have modified the foam from PolyTech before it went to Philips.[13] Yet, none are named as Defendants. Moreover, Plaintiff alleges PolyTech may not have supplied foam directly to Philips, with the foam first being supplied to intermediaries. Again, none of these alleged co-conspirators are named as Defendants. Therefore, since not all presently known alleged co-conspirators are named as Defendants and there is concern for massive multiparty litigation involving many levels of distribution in this matter, the co-conspirator exception does not apply and Plaintiff lacks standing to bring this matter.

---

[11] *Howard Hess Dental Labs, Inc. v. Dentsply Intern., Inc.,* 424 F.3d 363, 370 (3d Cir. 2005); *Wallach v. Eaton Corp.*, 814 F.Supp. 2d 428, 435 (D. Del. 2011).
[12] *See* Opposition at 15.
[13] *See* RICO Case Statement at ¶ 3, 6(a), 6(b).

**II.     Plaintiff Fails to Plead Facts Plausibly Implying the Existence of an Association-in-Fact Enterprise Necessary to Prevail on a RICO Claim under 18 U.S.C. §1962(c).**

Plaintiff cites to many cases in attempt to support that sufficient facts have been pled to plausibly support the existence of an enterprise-in-fact. However, what each case cited to by Plaintiff has in common, and what is lacking in our case, is that the **act** which the alleged co-conspirator engaged in was collaborative or collusive in furtherance of a fraudulent scheme. Since the cases relied on by Plaintiff do not support that Plaintiff has sufficiently pled a RICO claim against PolyTech, these cases are relied on in this reply. "In the context of a fraud suit involving multiple defendants, a plaintiff must, at a minimum, identify the role of each defendant in the alleged fraudulent scheme."[14] Each defendant must have some part in directing the enterprise's affairs. "Simply performing services for the enterprise or failing to stop illegal activity is not sufficient."[15] Therefore, to sufficiently plead a RICO claim, there needs to be something more than supplying foam and answering questions, which is all that occurred in our case. Plaintiff must "plausibly tie together the various defendants allegedly comprising the association in fact into a single entity that was formed for the purpose of working together, that is, acting in concert."[16] Plaintiffs must move their allegations from the realm of the possible to the plausible.[17]

RICO liability "depends on showing that the defendant conducted or participated in the conduct of the 'enterprise's affairs' not just their own affairs."[18] "Where the individual constituents of an asserted enterprise are alleged only to have conducted the 'regular business' of

---

[14] *In re Chrysler* 295 F. Supp. 3d at 927, 973 (N.D. Cal. 2018).
[15] *Id. (quoting Volkswagen*, 2017 WL 4890594).
[16] *In re Insurance Brokerage Antitrust Litigation* 618 F.3d 300, 370 (3d Cir. 2009)(*quoting Elsevier Inc. v. W.H.P.R., Inc.*, 692 F.Supp.2d 297, 307 (S.D.N.Y. 2010).
[17] *In re* Chrysler 295 F. Supp. 3d at 981.
[18] *In re JUUL Labs* 497 F.Supp.3d 552, 610 (N.D. Cal. 2020)(*quoting Cedric Kushner Promotions, Ltd. V. King*, 533 U.S. 158, 161, 163 (2011).

the corporate entity or business in their own interests, those allegations are insufficient to support a RICO enterprise."[19]  "Mere association with an enterprise does not violate §1962(c)."[20]

The court in *In re Chrysler* noted the extensive facts set forth in the pleadings for the **active** role of each defendant in the scheme: there was an organized plan of design and manufacture in the joint role of defendants to sell vehicles; involvement by each defendant in deceptively promoting the product (Bosch manufactured the software for the auxiliary emission control devises (AECDs) installed on Fiat Chrysler Vehicles)[21]; extensive factual allegations against VW Italy and VM America consisting of working closely with Bosch in customizing engines that would utilize the AECDs to simulate passing federal testing; and FCA NV and FCA US working closely with Bosch, VM Italy, and VM America to customize systems that would simulate compliance with federal laws.[22]  In *In re Chrysler*, all parties worked together toward a final product that was designed to deceive.  In our case, it is factually alleged PolyTech supplied foam to an intermediary who modified it and then supplied it to Philips.  Of note, there is no allegation the foam was defective and there are no facts plausibly supporting a scheme whereby PolyTech was involved in

---

[19] *In re: JUUL Labs* 497 F.Supp.3d at 599; *In re Jamster Mktg. Litg.*, 2009 WL 1456632 (S.D. Cal. 2009); *Kehr Packaging, Inc. v. Fidelcor, Inc.* 926 F.2d 1406, 1414 (3d Cir. 1991)(Court must examine whether defendant's underlying deceptive activities constitute a regular way of doing business.  Congress did not intend to expand RICO's scope to all allegations of mail fraud based upon two or more otherwise routine business mailings.).
[20] *In re Insurance Brokerage Antitrust Litigation*, 618 F.3d at 370.
[21] Not only is it alleged that Bosch worked with the Fiat Chrysler entities to develop and implement the hidden AECDs, but the plaintiffs also cited to factual support for this conclusion through analysis by researchers and marketing material, and active lobbying by Bosch.  The Court found this to plausibly support that Bosch was actively involved in developing he hidden AECDs, actively concealed their existence, and actively falsely touted to the market and lawmakers that the AEDs were compliant with federal standards.  *In re Chrysler*, 295 F.Supp.3d at 973-974.
[22] *In re Chrysler*, 295 F.Supp.3d at 973-976.  This is a summary of the factual assertions set forth in *In re Chrysler* that the plaintiffs included in the pleadings plausibly supporting an active role of each defendant in the fraudulent enterprise.

an enterprise to deceive. The question then becomes, what did the alleged collaboration allow PolyTech to do that it could not have done without the collusion? Nothing. PolyTech sold foam products to customers, which was the nature of its business, and the nature of the business it conducted with Paramount Die.[23]

Plaintiff argues the communication between PolyTech and Philips supports the existence of a collaborative collusive intent to defraud. This is erroneous. The communications showed a business responding to questions from an entity using its product. This is unlike the communications in *In re Takata*. In *In re Takata* plaintiffs alleged the existence of numerous communications showing that Takata, the Vehicle Manufacturer Defendants, and dealerships demonstrated a collaborative scheme to defraud consumers by actively concealing a defect and then selling and servicing vehicles for more money than consumers would have paid had the vehicles not contained the defect.[24] In our case, the communications show PolyTech responding to inquiries from a company using its foam. There is no language contained in the communications that plausibly supports a desire to defraud, conceal, mislead, collude, or collaborate to commit fraud. Instead, communications show that PolyTech offered a potential solution to the problem.[25]

Similar to *In re Chrysler*, in *In re Juul Labs*, the plaintiffs alleged extensive facts that Veratad Technologies, Inc. ("Veratad') (hired to provide age-verification services to JLI) worked

---

[23] *In re Insurance Brokerage Antitrust Litigation*, 618 F.3d at 378 (Collaboration in enterprise, most notably the bid rigging, allowed defendant to deceive insurance purchasers in a way not likely without such collusion).
[24] *In re Takata Airbag Products Liab. Litig.*, 2015 WL 9987659 (S.D. Fla. 2015).
[25] On August 5, 2016, Bob March of PolyTech writes as part of his e-mail response to Richard Alfieri of Philips: "We use PMF (melamine foam) for high temperature and chemical exposure acoustical absorption. Would that be of interest to you?". *See* Exhibit "1". Interestingly this was not included in the TAC even though it is part of the e-mail thread that is cited in the TAC at Paragraph 519. In addition, many people are on this e-mail thread including people not employed by either Philips or PolyTech.

with Juul Labs, Inc. ("JLI") to get around and minimize the impact of age verification requirements and changed processes to increase the numbers of prospective purchasers who passed. However, the court noted that despite the extensive factual allegations, the plaintiffs failed to allege facts showing that Veratad undertook those efforts as part of a scheme to defraud the public and regulators as opposed to simply securing higher returns for JLI which was in both Veratad's and JLI's general economic interest.[26] The court found this to be a legitimate business interest and the same business Veratad provided to its other customers.[27] The court therefore found that the plaintiffs had not plausibly alleged the existence of a distinct enterprise, separate and apart from the general business of JLI.[28] Our case is similar to *In re Juul Labs*. In our case, there are no factual allegations in the TAC that plausibly support anything other than PolyTech engaging in a routine business transaction.

The allegations against PolyTech cannot prop up the existence of an association-in-fact enterprise.[29] PolyTech sells foam products and either Philips or an intermediary purchased these foam products from them. Philips inquired about the specifics of the foam and PolyTech

---

[26] *In re JUUL Labs*, 497 F.Supp.3d. at 602.
[27] *Id*. at 601.
[28] *Id.* at 603.
[29] *In re Countrywide Fin. Corp. Mortg.-Backed Securities Litig.*, 2012 WL 10731957, *9 (C.D. Cal. June 29, 2012) (dismissing RICO claim where plaintiffs only "identified exactly the type of arms-length business transaction, with each party pursuing its own independent economic interests, that does not constitute a RICO enterprise"); *Chagby v. Target Corp.*, 2008 WL 5686105, *3 (C.D. Cal. 2008), *aff'd*, 358 Fed. Appx. 805 (9th Cir. 2009) (unpublished) (dismissing where "plaintiff alleges no facts that could lead someone to believe that Defendants' relationship with its advertising agency was anything more than a typical client of the advertising agency"); *Gomez v. Guthy-Renker, LLC*, 2015 WL 4270042, *11 (C.D. Cal. 2015) ("RICO liability must be predicated on a relationship more substantial than a routine contract between a service provider and its client."); *but see City of New York v. Gordon*, 155 F. Supp. 3d 411, 423 (S.D. NY 2015) (upholding a RICO verdict where an enterprise member formed an uncontested association-in-fact enterprise with one smoke shop to deliver contraband cigarettes, in part because that member handled deliveries for other smoke shops and, therefore, was more than a passive party to the substantive conduct alleged).

responded to their inquiries. There is no language in the communications to support PolyTech's responses as being anything other than an answer to an inquiry from a customer. In addition, there are numerous people copied on the e-mails, some of whom are not employed with PolyTech or Philips. Furthermore, there is no language to support that PolyTech was controlling and directing the affairs of a group on an on-going basis, that it was functioning as a continuing unit of an association-in-fact enterprise, or even the existence of an enterprise. In fact, PolyTech proposes alternatives in the communications to the degradation issue that was being reported to Philips. There are no facts alleged that plausibly support that PolyTech was part of an enterprise-in-fact that was engaged in an alleged fraudulent scheme. Therefore, dismissal of the RICO claim is appropriate.

Plaintiffs go on to allege that PolyTech misrepresented, disregarded, and concealed information without supporting facts. These are bare boned allegations. Nevertheless, these actions must be in furtherance of an enterprise engaged in a fraudulent scheme. Here, there are insufficient facts pled that this was the case. The alleged acts of misrepresenting, disregarding, and concealing as alleged are with regard to information from PolyTech to Philips. There are no allegations of misrepresenting, disregarding, or concealing information from PolyTech to a government agency or purchaser of a CPAP machine as a member of an enterprise designed to defraud. Further, there are no facts alleged that support PolyTech having contact with or supplying information to a government agency or purchaser of a CPAP machine, let alone supplying them with fraudulent information. RICO liability "depends on showing that the defendant's conducted or participated in the conduct of the 'enterprise's affairs' not just their own affairs."[30] "Where the

---

[30] *In re: JUUL Labs*, 497 F.Supp.3d at 610 (*quoting Cedric Kushner Promotions, Ltd. V. King*, 533 U.S. 158, 161, 163 (2011).

individual constituents of an asserted enterprise are alleged only to have conducted the 'regular business' of the corporate entity or business in their own interests, those allegations are insufficient to support a RICO enterprise."[31]  These facts are insufficiently pled in the TAC and thus the TAC should be dismissed.

### III. Plaintiff's Claim Under § 1962(d) Must Fail Since Plaintiff Has Failed to Satisfy All the Elements of a Claim Under § 1962(c) and/or Has Failed to Sufficiently Plead PolyTech Conspired to Defraud.

"[A] § 1962(d) claim must be dismissed if the complaint does not adequately allege 'an endeavor which, if completed, would satisfy all of the elements of a substantive [RICO] offense.'"[32]  Plaintiff has failed to allege adequately an endeavor which, if completed, would satisfy all of the elements of a substantive [RICO] offense and, as is set forth ad nauseum above, Plaintiff has failed to allege sufficient facts plausibly demonstrating PolyTech engaging to conspire to defraud.  Therefore the claim under § 1962(d) should be dismissed.

### IV. Further Amendment of the Complaint will be Futile.

Where the court finds that a plaintiff will be unable to plead additional facts to cure the deficiency identified, amendment should not be permitted.[33]  Setting aside that Plaintiff makes no request to further amend the Complaint, even as an alternative remedy, amendment would be futile.

---

[31] *In re JUUL Labs* 497 F.Supp.3d at 599; *see In re Jamster Mktg. Litg.*, 2009 WL 1456632 (S.D. Cal. 2009).

[32] *In re Insurance Brokerage Antitrust Litigation*, 618 F.3d at 373 (*citing Salinas v. U.S.,* 522 U.S. 52 at 65; *See Efron v. Embassy Suites (Puerto Rico), Inc.,* 223 F.3d 12, 21 (1st Cir. 2000); *Lightning Lube, Inc. v. Witco Corp.,* 4 F.3d 1153, 1191 (3d Cir. 1993); *see, e.g., Edwards v. First Nat. Bank,* 872 F.2d 347, 352 (10th Cir.1989) (finding that "the conspiracy claim falls when the substantive claim based on 1962(c) is deficient" because the alleged racketeering acts do not compose a "pattern"); *cf. Smith v. Berg,* 247 F.3d at 538 (holding a defendant may be held liable for conspiring to violate § 1962(c), even if he did not operate or manage a RICO enterprise, as long as "he knowingly agree[d] to facilitate a scheme which includes the operation or management of a RICO enterprise").")

[33] *Shaw*, 220 F.Supp.3d at 1057.

This is the third iteration of the complaint and there are still insufficient facts to support the existence of an enterprise in which PolyTech was a member, participated, directed, or was otherwise involved with Philips. Instead, as demonstrated above, PolyTech was simply engaging in the business it conducts.

## CONCLUSION

WHEREFORE Defendant PolyTech respectfully requests the Motion to Dismiss be GRANTED and Plaintiff's Complaint be dismissed with prejudice and for such other relief as this Honorable Court finds appropriate and as justice requires.

**FRANKLIN & PROKOPIK**

*/s/ Eric Scott Thompson*
ERIC SCOTT THOMPSON
PA Bar Id. NO.: 92666
500 Creek View Road, Suite 502
Newark, DE 19711
(302) 594-9780

Dated: March 23, 2023    *Attorneys for Polymer Technologies, Inc.*