# EXHIBIT A

**EXHIBIT A**
**Compendium of the Parties' Citation Tables Addressing Present Physical Injury Requirement for Medical Monitoring Claim**

| States | Respironics' Opening Brief | Plaintiffs' Opposition | Respironics' Reply |
|---|---|---|---|
| Arizona | Claims for medical monitoring costs require present physical injury.<br><br>*Burns v. Jaquays Mining Corp.*, 752 P.2d 28, 30-31 (Ariz. Ct. App. 1988) (holding physical injury (i.e., a manifested disease) is required for a negligence claim and a heightened risk of injury or subclinical injury resulting from exposure do not suffice; *see id.* at 33 (holding medical surveillance damages are available without proof of bodily injury on a nuisance claim); *Quiroz v. ALCOA Inc.*, 416 P.3d 824, 832-33 (Ariz. 2018) (confirming *Burns* held that medical surveillance damages were recoverable without proof of bodily injury through a nuisance claim, not a negligence claim); *Pounders v. Enserch E & C, Inc.*, 306 P.3d 9, 12-13 (Ariz. 2013) (until "the disease is discoverable," "a legally compensable injury does not exist"; "cellular changes" are not an "actionable injury"). | Philips misstates the holding of *Burns v. Jaquays Mining Corp.*, 752 P.2d 28, 30-31 (Ariz. App. 1988), claiming medical monitoring requires proof of present physical injury. It is the opposite: "We believe, under the facts of this case and despite the absence of physical manifestation of any asbestos-related diseases, that the plaintiffs should be entitled to such regular medical testing and evaluation as is reasonably necessary and consistent with contemporary scientific principles applied by physicians experienced in the diagnosis and treatment of these types of injuries. We agree with the court in *Ayers v. Twp. of Jackson*, [525 A.2d 287, 312 (N.J. 1987)]." *Burns*, 752 P.2d at 33. Philips' quote relates to when the statute of limitations arises for asbestosis personal injury claims. *Id.* at 31-32. *Burns* did not limit recovery of medical monitoring to nuisance, noting plaintiffs brought claims for negligence, gross negligence, and strict liability. *Id.* at 30, 33.<br><br>*Quiroz* addressed landowner duty, not medical monitoring damages, distinguishing Burns in that manner rather than addressing whether present physical injury is a requirement for medical monitoring damages. *Quiroz v. ALCOA Inc.*, 416 P.3d 824, 832-33 (Ariz. 2018) (*Burns* did not address duty; it addressed damages). *Pounders v. Enserch E & C, Inc*, 306 P.3d 9, 12-13 (Ariz. 2013) addresses statute of limitations for personal injury claims, not the basis for medical monitoring. *Quiroz* does not say that Burns limited recovery to the nuisance claim. 416 P.3d at 833.<br><br>Arizona relies on RESTATEMENT OF TORTS (SECOND) §7 (1965) ("RESTATEMENT") for definition of injury and harm. *Walker by Pizano v. Mart*, 790 P.2d 735, 739 (Ariz. 1990); *Muscat by Berman v. Creative Innervisions LLC*, 418 P.3d 967, 971 (Ariz. App. 2017); *Tripati v. State, Ariz. Dep't of Corr.*, 16 P.3d 783, 786 (Ariz. App. 2000) (legislature's use of the word | *Burns*, an Arizona intermediate appellate decision, held: "The main issue in this case is whether subclinical asbestos-related injury is sufficient to constitute the actual loss or damage required to support a cause of action. We hold that it is not." 752 P.2d at 29. "There can be no claim for damages for the fear of contracting asbestos-related diseases in the future without the manifestation of a bodily injury." *Id.* at 31 (internal citations omitted). *Burns* then addressed medical monitoring, holding such costs were "a compensable item of damages" in that case without proof of physical injury. *Id.* at 33. But the court did not specify the claim for which such relief would be compensable without physical injury.<br><br>In *Pounders*, the Arizona Supreme Court, applying Arizona law, then held that "[f]or long-latency disease . . .a legally compensable injury does not exist" until "the disease is discoverable . . ." – *i.e.*, "upon manifestation", not at the point of subclinical or cellular change. 306 P.3d at 12-13. Plaintiffs' attempt to distinguish the holding based on its context ignores the point: a claim cannot exist until the disease manifests.<br><br>Given *Pounders* and the *Burns's* internal discrepancy, it was unclear whether *Burns* was (1) adopting a stand-alone medical monitoring claim, (2) jettisoning the physical injury rule as an element of liability for medical monitoring damages, or (3) merely holding that medical monitoring costs were recoverable through a nuisance claim, which does not require physical injury for liability.<br><br>*Quiroz* resolved this question while addressing the assertion that *Burns* held there is a tort duty to protect the public from secondary asbestos exposure. 416 P.3d 824, 832. The court "disagree[d]" and explained that *Burns* only permitted the recovery of medical monitoring "in the context of a nuisance claim" and "affirmed the |

<u>EXHIBIT A</u>
**Compendium of the Parties' Citation Tables Addressing Present Physical Injury Requirement for Medical Monitoring Claim**

| States | Respironics' Opening Brief | Plaintiffs' Opposition | Respironics' Reply |
|---|---|---|---|
| | | "injuries" does not evidence its intent to limit application of that provision to physical injuries, citing RESTATEMENT). Consistent with Burns and the definition of injury and harm in RESTATEMENT 2ND §7, economic loss caused by medical necessity of medical monitoring for the early detection of disease is an invasion of a legally protected interest and is recoverable without proof of present physical injury in Arizona. Separately, Plaintiffs' allegation of subcellular injury is sufficient to satisfy a physical harm requirement. | superior court's grant of summary judgment" on the "negligence claim." *Id.* at 832-33.<br><br>*Restatement (Second) of Torts* § 7 (1965) merely defines "injury" as "the invasion of any legally protected interest of another." As shown above, Arizona, like the *Restatement (Third) of Torts: Liab. for Econ. Harm* § 1 (2020), does not recognize freedom from "economic loss" (medical monitoring costs) caused by unintentional conduct to be a legally protected interest absent physical injury outside the context of a nuisance claim.<br><br>Further, mere cellular injury is not actionable injury giving rise to a claim. *Pounders*, 306 P.3d at 12-13 |
| Arkansas | No state appellate authority has abandoned the need for present physical injury to state a claim for medical monitoring. *But see In re Prempro Prods. Liab. Litig.*, 230 F.R.D. 555, 569 (E.D. Ark. 2005) ("Arkansas has rejected medical monitoring as a cause of action, and questions its availability as a remedy"); *see also Dowty v. Riggs*, 385 S.W.3d 117, 122-23 (Ark. 2010) (acknowledging Arkansas tort law requires physical injury to state a claim). | Philips claims "[n]o state appellate authority has abandoned the need for present physical injury to state claim for medical monitoring," but cites no state appellate authority requiring proof of present physical injury as a predicate to a medical monitoring remedy. Philips cites *In re Prempro Prods. Liab. Litig.*, 230 F.R.D. 555, 569 (E.D. Ark. 2005), correctly stating that Arkansas has not rejected medical monitoring as a remedy. *Dowty v. Riggs*, 385 S.W.3d 117, 122-23 (Ark. 20210) is a claim seeking mental anguish, not medical monitoring.<br><br>Arkansas routinely relies on the RESTATEMENT for guidance. *See, e.g., Little v. Jonesboro Country Club*, 212 S.W.3d 57, 59 (Ark. App. Ct. 2005) (Section 343) *Navorro-Monzo v. Hughes*, 763 S.W.2d 635, 636 (Ark. 1989) (Section 603); *Dildine v. Clark Equip. Co.*, 666 S.W.2d 692, 695 (Ark. 1984) (Section 388); *Mason v. Funderburk*, 446 S.W.2d 543, 546 (Ark. 1969) (Section 766). Given its consistent reliance on the RESTATEMENT, Arkansas would follow the definition of injury and harm in RESTATEMENT 2ND §7 and determine that economic loss caused by the medical necessity of medical monitoring for the early detection of disease is an invasion of a legally protected | Plaintiffs ignore the importance of *Dowty*. There, the Arkansas Supreme Court reaffirmed the physical injury requirement, explained the extremely high bar to abandoning it, and refused to carve an exception for emotional distress suffered by a bystander who was shot at and witnessed a friend being shot. 385 S.W.3d at 120-23. The physical injury requirement is well established in Arkansas. *Pennebaker v. Furry Feet Retreat, Inc.*, 620 S.W.3d 879, 881-82 (Ark. Ct. App. 2021) (recognizing Arkansas requires present physical injury); Ark. Code Ann. § 16-116-202(5) (defining "product liability action" as an action to recover for "personal injury, death, or property damage . . ."). This precedent makes it unlikely Arkansas would jettison the physical injury rule to permit recovery of medical monitoring costs which are incurred because of a fear of the potential for future disease, not present injury.<br><br>Even if it adopted the *Restatement (Second) of Torts* §7 this would not mean that Arkansas would recognize freedom from "economic loss" (medical monitoring costs) caused by unintentional conduct to be a "legally protected interest" absent physical injury. Such a change of course is beyond the scope of the Court's *Erie* prediction authority. Indeed, permitting recovery of economic loss here would |

<u>EXHIBIT A</u>
**Compendium of the Parties' Citation Tables Addressing Present Physical Injury Requirement for Medical Monitoring Claim**

| States | Respironics' Opening Brief | Plaintiffs' Opposition | Respironics' Reply |
|---|---|---|---|
| | | interest and is recoverable without proof of present physical injury given its strong reliance on the RESTATEMENT for guidance. Separately, Plaintiffs' allegation of subcellular injury is sufficient to satisfy a physical harm requirement. | be contrary to *Restatement (Third) of Torts: Liab. for Econ. Harm* § 1.<br><br>Plaintiffs provide no basis from which to conclude their conclusory assertions of subcellular or other physiological change constitute actionable injury under Arkansas law. |
| Colorado | No state appellate authority has abandoned the need for present physical injury to state a claim for medical monitoring.<br><br>While federal courts have predicted Colorado's high court would expand liability by permitting claims for medical monitoring without present physical injury, they did so based on policy judgments and decisions from other states—not on state court precedent. *See Bell v. 3M Co.*, 344 F. Supp. 3d 1207, 1214-15 (D. Colo. 2018) (refusing to depart from 1991 district court prediction while recognizing Colorado has yet to address this issue directly and state precedent has required physical injury to state a claim in other contexts). | Philips claims "[n]o state appellate authority has abandoned the need for present physical injury to state a claim for medical monitoring," but cites no state appellate authority requiring proof of present physical injury as a predicate to a medical monitoring claim or remedy. Philips cites *Bell v. 3M Co.*, 344 F. Supp. 3d 1207, 1214- 15 & 1224 (D. Colo. 2018), which, after analyzing cases from other jurisdictions, held that Colorado would probably recognize a claim for medical monitoring absent present physical injury. *Bell* analyzed *Cook v. Rockwell Int'l Corp.*, 755 F. Supp. 1468, 1471 (D. Colo. 1991), which also predicted that Colorado would recognize a claim for medical monitoring absent proof of present physical injury, distinguishing that claim from enhanced risk.<br><br>*Bell* and *Cook* are on solid ground. Colorado follows RESTATEMENT 2ND. *Bd. of Cnty. Comm'rs of Weld Cnty. v. Slovek*, 723 P.2d 1309, 1314 (Colo. 1986) (tort law attempts primarily to put an injured person in a position as nearly as possible equivalent to his position prior to the tort) (Sections 901, 929). *See, e.g., First Nat'l Bank in Lamar v. Collins*, 616 P.2d 154, 155 (Colo. App. 1980) (negligent misrepresentation); *Koenig v. PurCo Fleet Servs., Inc.*, 285 P.3d 979, 983 (Colo 2012) (Section 931). Given its consistent reliance on the RESTATEMENT, Colorado would follow the definition of injury and harm in RESTATEMENT 2ND §7 and determine that economic loss caused by medical necessity of medical monitoring for the early detection of disease is an invasion of a | Colorado adheres to the physical injury requirement, as evidenced in the context of emotional distress.  *See Boryla v. Pash*, 960 P.2d 123, 127-28 (Colo. 1998).  It also does not permit a person to "pursue a tort claim for future death, future physical injury." *Open Door Ministries v. Lipschuetz*, 373 P.3d 575, 579 (Colo. 2016), *modified on denial of reh'g* (Jun. 27, 2016) (internal citations omitted).<br><br>The district court's prediction in *Cook* that Colorado would depart from this requirement for medical monitoring costs was made 30 years ago based on an assessment of policy and evolving law. The court did not analyze Colorado law or recognize the obligation to make *Erie* predictions against the expansion of liability.  Further, the prediction (1) has not been borne out in Colorado law, which still has not permitted claims for medical monitoring without physical injury, and (2) has been held by the U.S. Supreme Court to be "beyond the bounds of currently 'evolving common law.'"  *Metro-N. Commuter R. Co. v. Buckley*, 521 U.S. 424, 440 (1997); *see also Wood v. Wyeth-Ayerst Lab'ys, Div. of Am. Home Prod.*, 82 S.W.3d 849, 854–56 (Ky. 2002); *Henry v. Dow Chem. Co.*, 701 N.W.2d 684, 689-97 (Mich. 2005); *Lowe v. Philip Morris USA, Inc.*, 183 P.3d 181, 186-87 (Ore. 2008); *Berry v. City of Chicago*, 181 N.E.3d 679, 688-89 (Ill. 2020); *Brown v. Saint-Gobain Performance Plastics Corp.*, -- A.3d --, 2023 WL 2577257 (N.H. Mar. 21, 2023).<br><br>Even if it adopts *Restatement (Second) of Torts* § 7, this would not mean that Colorado would recognize freedom from "economic |

**Compendium of the Parties' Citation Tables Addressing Present Physical Injury Requirement for Medical Monitoring Claim**

| States | Respironics' Opening Brief | Plaintiffs' Opposition | Respironics' Reply |
|---|---|---|---|
| | | legally protected interest and is recoverable without proof of present physical injury. Separately, Plaintiffs' allegation of subcellular injury is sufficient to satisfy a physical harm requirement. | loss" (medical monitoring costs) caused by unintentional conduct to be a "legally protected interest" absent physical injury. Such a change of course is beyond the scope of the Court's *Erie* prediction authority. Indeed, permitting recovery of economic loss here would be contrary to *Restatement (Third) of Torts: Liab. for Econ. Harm* § 1.<br><br>Plaintiffs provide no basis from which to conclude conclusory assertions of subcellular change constitute physical injury under Colorado law. |
| Connecticut | Claims for medical monitoring costs require present physical injury.<br><br>*Poce v. O & G Indus., Inc.*, 269 A.3d 899, 908-10 (Conn. App. 2022) *cert. denied*, 271 A.3d 663 (Conn. 2022) (holding claims for medical monitoring require "the pleading and proof of some physical component of injury"); *see also Dougan v. Sikorsky Aircraft Corp.*, No. X03HHDCV126033069S, 2017 WL 7806431, at *7 (Conn. Super. Mar. 28, 2017) "Connecticut tort law should not be expanded to provide a medical monitoring remedy . . . in the absence of actual, present injury"), *aff'd on other grounds Dougan v. Sikorsky Aircraft Corp.*, 251 A.3d 583 (Conn. 2020). | Connecticut has not decided whether to recognize a claim or remedy for medical monitoring in the absence of present manifestation of physical harm, but a plaintiff's claim fails without proof that medical monitoring is necessary. *Dougan v. Sikorsky Aircraft Corp.*, 251 A.3d 583, 589, 593 (Conn. 2020) (assuming without deciding, that Connecticut law recognizes a claim for subclinical cellular injury). Nevertheless, the Court analyzed whether plaintiffs had established the existence of a genuine issue of material fact by analyzing the Massachusetts Donovan medical monitoring elements, which Plaintiffs have pled here, and other caselaw allowing the remedy. *Dougan*, 251 A.3d at 594-97. In *Doe v. City of Stamford*, the Connecticut Supreme Court held that under the circumstances of that case, in which the claimant had sustained actual exposures to life-threatening infectious diseases in incidents that arose out of his employment, the claimant has suffered compensable injuries under the act and may recover expenses associated with reasonable medical testing and treatment. 699 A.2d 52, 54 (Conn. 1997). The court noted the elements of medical monitoring in tort law that Plaintiffs plead here, and that the injury is no less real or cognizable because it was not attended by puncture or abrasion. *Doe*, 699 A.2d at 55- | *Doe v. City of Stamford* was not interpreting tort law; rather it was interpreting the Connecticut Workers Compensation Act, and its holding is limited to the Act's defined term "injury." 699 A.2d 52, 54-57. The court expressly distinguished this limited analysis from the U.S. Supreme Court's analysis in *Buckley*, 521 U.S. 424, where the court was interpreting FELA, a "statute that is closely tied to traditional tort principles," and held those principles do not recognize medical monitoring costs to constitute actionable injury. *City of Stamford*, 699 A.2d at 57 n.11. Indeed, *Martin*, 180 F. Supp. 2d at 323 declined to extend *Stamford* beyond workers compensation cases as it was unnecessary given Martin's representation that he was not asserting medical monitoring could be awarded without actual injury.<br><br>*Poce*, on the other hand, was interpreting Connecticut tort law and held that it requires present physical injury as an element of liability, without which medical monitoring costs are not recoverable. 269 A.3d at 908-10. Plaintiff does not dispute this was *Poce*'s holding, and as an appellate ruling it is "persuasive authority" "not to be disregarded." *Travelers Indem. Co. v.* |

**Compendium of the Parties' Citation Tables Addressing Present Physical Injury Requirement for Medical Monitoring Claim**

| States | Respironics' Opening Brief | Plaintiffs' Opposition | Respironics' Reply |
|---|---|---|---|
| | | 56. *Doe* was followed by *Martin v. Shell Oil Co.*, 180 F. Supp. 2d 313, 323 (D. Conn. 2002).<br><br>*Poce v. O & G Indus., Inc.*, 269 A.3d 899, 908-10 (Conn. App. 2022) does not "hold" that claims for medical monitoring require "the pleading and proof of some physical component of injury." Rather, *Poce* cited the trial court decision *Dougan, see Poce*, 269 A.3d at 909 & n.3, as does Philips. In stating that "actual injury" as an element of negligence requires the pleading and proof of some physical component of injury, *Poce* did not consider injury under RESTATEMENT 2ND §7 or whether economic loss constitutes actual injury sufficient for a negligence claim and allowed tort recovery for negligent infliction of emotional distress without proof of present physical injury. *Poce*, 269 A.3d at 910-11.<br><br>Connecticut relies on RESTATEMENT 2ND §7 to analyze the definition of injury. *Waters v. Autuori*, 676 A.2d 357, 363 (Conn. 1996) (analyzing injury under RESTATEMENT §324). Connecticut follows RESTATEMENT for other guidance. *Pestey v. Cushman*, 788 A.2d 496, 507 (2002) (Section 822); *Gonzalez v. O & G Indus., Inc.*, 267 A.3d 766, 775 (2021) (Sections 519, 520); *Williams v. State Farm Mut. Auto. Ins. Co.*, 641 A.2d 783, 789 (Conn. 1994) (Section 145). Based on its reliance on Donovan and other medical monitoring caselaw, and its consistent reliance on the RESTATEMENT, Connecticut would follow the definition of injury and harm in RESTATEMENT 2ND §7 and determine that economic loss caused by medical necessity of medical monitoring for the early detection of disease is an invasion of a legally protected interest and is recoverable without proof of present physical injury. Separately, Plaintiffs' allegation of subcellular injury is sufficient to satisfy physical harm requirement. *See Bowerman v. United Illuminating*, 1998 WL 910271, at *5 (Conn. Super. Ct. Dec. 15, 1998) (scarring of lung | *Dammann & Co.*, 594 F.3d 238, 244 (3d Cir. 2010) (citation omitted).<br><br>*Restatement (Second) of Torts* § 7 does not change this analysis. It merely defines "injury" as "the invasion of any legally protected interest of another." Under *Poce*, the need for medical monitoring absent a physical injury is not a "legally protected interest." And none of the decisions Plaintiffs cite holds otherwise. Indeed, *Waters* illustrates the point by applying the *Restatement (Second) of Torts* § 7's definitions and holding Connecticut law requires physical harm for the claim at issue there. 676 A.2d at 363-64. And permitting recovery of economic loss here would be contrary to *Restatement (Third) of Torts: Liab. for Econ. Harm* § 1.<br><br>Plaintiffs provide no basis from which to determine conclusory assertions of subcellular change constitute physical injury under Connecticut law. |

**EXHIBIT A**
**Compendium of the Parties' Citation Tables Addressing Present Physical Injury Requirement for Medical Monitoring Claim**

| States | Respironics' Opening Brief | Plaintiffs' Opposition | Respironics' Reply |
|---|---|---|---|
| | | tissue and implantation of asbestos fibers in the lungs constitutes fact issue as to compensable legal harm where there is evidence such conditions are detrimental and existence of such conditions in plaintiffs). | |
| Delaware | Claims for medical monitoring costs require present physical injury. *In re Asbestos Litig.*, No. CIV.A. 87C-09-24, 1994 WL 16805917, at *1-2 (Del. Super. Ct. Aug. 5, 1994) (holding claims for medical surveillance costs require physical injury) (citing *Mergenthaler v. Asbestos Corp. of Am.*, 480 A.2d 647, 651 (Del. 1984)). | Philips argues that "[c]laims for medical monitoring costs require present physical injury," but cites no state appellate law requiring proof of present physical injury as a predicate to a medical monitoring claim or remedy. That issue will be clarified by the Delaware Supreme Court in *Baker v. Croda, Inc.*, No. 393, 2022 (Del. 2022) (certified question from the Third Circuit, Case Nos. 21-3360 & 22-1333) (Exhibit "1" hereto). Delaware law supports the conclusion that the Supreme Court will allow a remedy for medical monitoring absent proof of present physical injury. <br><br> Delaware courts look to the RESTATEMENT. *Murray v. Mason*, 244 A.3d 187, 194 (Del. Super. 2020), modified (Jan. 5, 2021). Under Delaware law, a cognizable injury occurs when there has been an invasion of any legally protected interest of a plaintiff. *Brown v. E.I. duPont de Nemours & Co.*, Inc., 820 A.2d 362, 369, n.26 (Del. 2003) (citing RESTATEMENT 2ND §7). Consistent with the RESTATEMENT's definition of injury, Delaware holds that tortiously caused harm is recoverable without proof of present physical injury. *Garrison v. Med. Ctr. of Del., Inc.*, 581 A.2d 288, 290 (Del. 1989) (claim for economic loss for wrongful birth is not a present physical injury); *Cummings v. Pinder*, 574 A.2d 843, 845 (Del. 1990) (intentional infliction of emotional distress).  That a medical monitoring claim does not require a present physical injury in Delaware is further demonstrated by *Mergenthaler v. Asbestos Corp. of Am.*, 480 A.2d 647 (Del. 1984). There the court dismissed claims for medical monitoring because the plaintiff wives failed to allege actual exposure, not present physical injury as Philips claims. *Id.* at 651. Allegations of actual exposure plus a need for medical surveillance would have constituted an | The Delaware Supreme Court's holding in *Mergenthaler* was plain: "We now turn to plaintiffs' argument that 'a claim for the expenses of **medically required surveillance** and related mental anguish caused thereby is maintainable under Delaware law **even if there is no present physical disease**.' As indicated earlier, **we disagree**." 480 A.2d at 651 (emphasis added).  *In re Asbestos Litig.* recognized this, as have other states.  1994 WL 16805917, at *1; *e.g.*, *Paz v. Brush Engineered Materials, Inc.*, 949 So. 2d 1, 6 n.5 (Miss. 2007). Plaintiffs prefer to focus on *Mergenthaler*'s discussion of *Ayers'* as somehow contradicting the plain holding by adopting New Jersey's abandonment of the physical injury requirement.  But *Mergenthaler* merely distinguished *Ayers* to illustrate its irrelevance under the facts of the case.  480 A.2d at 651; *see also In re Asbestos Litig.*, 1994 WL 16805917, at *1 (holding there was sufficient evidence of physical injury in the record but declining to decide the compensability of asymptomatic claims); *Banks v. E.I. du Pont de Nemours & Co*, 2022 WL 3139087, at *9 (D. Del. Aug. 4, 2022), *report and recommendation adopted*, 2022 WL 3577111 (D. Del. Aug. 19, 2022) (Delaware torts require present injury)). <br><br> The cases Plaintiffs cite do not hold otherwise.  Indeed, in *Brown*, the court explained that the claim does not accrue until "a legal injury is sustained."  820 A.2d at 369.  It then cited both the *Restatement (Second) of Torts* § 7 and *Stagg v. Bendix Corp.*, which held that latent disease claims do not accrue until disease manifestation. 472 A.2d 40, 43 (Del. Super. 1984) *aff'd* 486 A.2d 1150 (Del. 1984).  *Stagg* further held that a mere "change" in physiology is not "a demonstrable injury for which damages are |

6

<u>EXHIBIT A</u>
**Compendium of the Parties' Citation Tables Addressing Present Physical Injury Requirement for Medical Monitoring Claim**

| States | Respironics' Opening Brief | Plaintiffs' Opposition | Respironics' Reply |
|--------|---------------------------|------------------------|--------------------|
| | | actionable tort. *Id*. The Court discussed in detail *Ayers v. Jackson Twp*., 461 A.2d 184 (N.J. Super. 1983), a case holding that the cost of medical surveillance was a cognizable injury notwithstanding the present lack of manifestation of the disease caused by a toxic exposure. 480 A.2d at 651. *Mergenthaler* noted that *Ayers* recognized that a claim for monitoring absent present physical injury seeks a remedy for harm caused by actual exposure to a toxic substance and seeks monetary damages measured by the cost of medical examinations. *Id*. Philips' trial court case, *In re Asbestos Litig*., 1994 WL 16805917, at *1-2 (Del. Super. Ct. Aug. 5, 1994), misreads *Mergenthaler*. <br><br>Given its distinguishing claims based on exposure in *Mergenthaler*, its analysis of *Ayers*, and its consistent reliance on the RESTATEMENT, Delaware will follow the definition of injury and harm in RESTATEMENT 2ND §7 and determine that economic loss caused by medical necessity of medical monitoring for the early detection of disease is an invasion of a legally protected interest and is recoverable without proof of present physical injury. Separately, Plaintiffs' allegation of subcellular injury is sufficient to satisfy a physical harm requirement | recoverable" unless it produces "deleterious results." *Id*. at 42. *U.S. v. Anderson*, 669 A.2d 73, 77 (Del. 1995) reiterated this. <br><br>*Restatement (Second) of Torts* § 7 merely defines "injury" as "the invasion of any legally protected interest of another." The need for medical monitoring absent a physical injury is not a "legally protected interest" in Delaware, as shown above. Though this appears to be a question before the Delaware Supreme Court in *Baker*, 2022 WL 19010312, Plaintiffs have not identified authority from which the Court could predict Delaware would expand liability by jettisoning the physical injury requirement to permit recovery of economic losses in contradiction of *Restatement (Third) of Torts: Liab. For Econ. Harm* § 1. *See M.G. ex rel. K.G. v. A.I. Dupont Hosp. for Child.*, 393 F. App'x 884, 893 n.7 (3d Cir. 2010) (citations omitted) (requiring courts to conservatively opt against expanding liability when predicting whether a state would permit a claim for medical monitoring). <br><br>Plaintiffs also provide no basis from which to determine conclusory assertions of subcellular change constitute physical injury under Delaware law. |
| Georgia | Claims for medical monitoring costs require present physical injury. <br><br>*Parker v. Brush Wellman, Inc.*, 377 F. Supp.2d 1290, 1302 (N.D. Ga. 2005) ("no Georgia court has ever indicated an inclination to recognize such a remedy."), *aff'd sub nom. Parker v. Wellman*, 230 Fed. App'x 878, 882-83 (11th Cir. 2007) (holding Georgia law requires current physical injury to recover medical monitoring costs and | Philips argues that "[c]laims for medical monitoring costs require present physical injury," but cites no state appellate law that clearly requires proof of present physical injury as a predicate to a medical monitoring remedy. *Boyd v. Orkin Exterminating Co.* states that absent any indication that the presence of these metabolites had caused or would eventually cause actual disease, pain, or impairment of some kind, the evidence would be insufficient to support an award of actual damages in any amount. 381 S.E.2d 295, 298 (Ga. App. 1989). That the court in *Parker v. Brush Wellman, Inc.*, 377 F. Supp. 2d 1290, 1302 (N.D. Ga. 2005) | The Eleventh Circuit recognized that the issues of whether Georgia requires physical injury and whether "subclinical damage" constitutes physical injury are issues of law—not fact—to be resolved on a motion to dismiss. "To recover for personal injuries under Georgia law, a plaintiff must show that he has suffered 'injury to life or limb or damage to other property.'" *Parker*, 230 F. App'x at 881 (quoting *Pickren v. Pickren*, 593 S.E.2d 387, 388 (Ga. 2004)). This requirement extends to toxic exposure claims. *Id*. at 882 (quoting *Boyd*, 381 S.E.2d at 298). Allegations of "subclinical and cellular damage" from exposure do not constitute physical injury until they manifest in "an identifiable physical disease, illness, or impairing symptoms." *Id*. Because the |

**EXHIBIT A**
**Compendium of the Parties' Citation Tables Addressing Present Physical Injury Requirement for Medical Monitoring Claim**

| States | Respironics' Opening Brief | Plaintiffs' Opposition | Respironics' Reply |
|---|---|---|---|
| | that this requirement is not satisfied by subclinical or cellular damages) (citing *Boyd v. Orkin Exterminating Co., Inc.*, 381 S.E.2d 295, 298 (Ga. App. 1989), *overruling on other grounds recognized in Collins v. Athens Orthopedic Clinic, P.A.*, 837 S.E.2d 310, 313 (Ga. 2019). | noted that no Georgia court has ever indicated an inclination to recognize such a remedy does not mean Georgia would not do so. Rules set forth in the RESTATEMENT have become incorporated into Georgia case law. *Greenway v. Peabody Int'l Corp.*, 294 S.E.2d 541, 546 (Ga. App. 1982) (Section 398); *Huggins v. Aetna Cas. & Sur. Co.*, 264 S.E.2d 191, 192 (Ga. 1980) (Section 324A); *Badische Corp. v. Caylor*, 356 S.E.2d 198, 200 (Ga. 1987) (Section 552); *Oglethorpe Power Corp. v. Forrister*, 711 S.E.2d 641, 643 (Ga. 2011) (Sections 899, 930). Consistent with other states that allow medical monitoring costs as a remedy, Georgia courts have followed RESTATEMENT 2ND §7 to define injury. Johnson v. Ford Motor Co., 637 S.E.2d 202, 207 (2006), overruled on other grounds by Campbell v. Altec Indus., Inc., 707 S.E.2d 48 (2011). Neither Parker nor Brush analyzed whether under RESTATEMENT 2ND §7 or whether economic loss constitutes actual injury sufficient for a negligence claim and allowed tort recovery for negligent infliction of emotional distress without proof of present physical injury. Based on its consistent adoption of the RESTATEMENT, Georgia would follow the definition of injury and harm in RESTATEMENT 2ND §7 and determine that economic loss caused by the medical necessity of medical monitoring for the early detection of disease is an invasion of a legally protected interest and is recoverable without proof of present physical injury. | plaintiffs made no such allegations of manifest impairment, the district court correctly dismissed the claim for medical monitoring. *Id.* at 883. Plaintiffs provide no basis from which to depart from *Parker*'s thorough analysis. Plaintiffs' reliance on *Restatement (Second) of Torts* § 7 is misplaced, even if Georgia adopted it. Section 7 merely defines "injury" as "the invasion of any legally protected interest of another." Freedom from "economic loss"—the potential future incurrence of medical monitoring costs—allegedly caused by unintentional conduct is not a "legally protected interest" in Georgia, as shown above. The decisions Plaintiffs cite either do not address the issue or reaffirm the necessity of proving physical harm in the context of the elements of specific torts. *See Greenway*, 294 S.E.2d at 544 (adopting Rest. § 398, including the element of "physical harm"); *Huggins*, 264 S.E.2d at 192 (adopting Rest. § 324A, including the element of "physical harm"). Further, permitting the recovery of "economic loss" here, as Plaintiffs suggest, would be contrary to *Restatement (Third) of Torts: Liab. for Econ. Harm* § 1. Accordingly, there is no basis from which this Court could make an *Erie* prediction that expands liability by departing from Georgia's adherence to the traditional physical injury requirement. *A.I. Dupont Hosp.*, 393 F. App'x 884, 893 n.7. |
| Hawaii | No state appellate authority has abandoned the need for present physical injury to state a claim for medical monitoring. *But see In re Hawaii Fed. Asbestos Cases*, 734 F. Supp. 1563, 1567 (D. Haw. 1990) (holding Hawaii requires | Philips claims "[n]o state appellate authority has abandoned the need for present physical injury to state a claim for medical monitoring," but cites no state appellate authority requiring proof of present physical injury as a predicate to a medical monitoring remedy. *In re Haw. Fed. Asbestos Cases*, 734 F. Supp. 1563, 1567 (D. Haw. 1990) did not address a claim for medical | Plaintiffs do not dispute that *In re Hawaii Fed. Asbestos Cases* concluded Hawaii requires physical injury to state a viable claim for negligent toxic exposure. While Hawaii has carved an exception to this rule for HIV exposure, corpse mishandling, and child molestation, it continues to otherwise adhere to the physical injury requirement to weed out baseless claims. *Doe Parents No. 1 v. State, Dep't of Educ.*, 58 P.3d 545, 580-82 (Haw. 2002), *as amended* (Haw. Dec. 5, 2002) (summarizing Hawaii law on |

**EXHIBIT A**

**Compendium of the Parties' Citation Tables Addressing Present Physical Injury Requirement for Medical Monitoring Claim**

| States | Respironics' Opening Brief | Plaintiffs' Opposition | Respironics' Reply |
|---|---|---|---|
| | proof of physical injury to recover damages from alleged exposure to harmful substance and mere physiological reactions, without physical impairment, did not suffice). | monitoring; plaintiffs were making a present physical injury claim and the court found Hawaii law to require functional impairment.<br><br>Hawaii consistently adopts the rules of law in the RESTATEMENT. *See, e.g.*, *Spittler v. Charbonneau*, 449 P.3d 1202, 1208 (Haw. App. 2019) (Sections 6, 158, 161, 166); *Stewart v. Budget Rent-A-Car Corp.*, 470 P.2d 240, 243 (Haw. 1970) (Section 402A); *Rodrigues v. State*, 472 P.2d 509, 520 (Haw. 1970) (Section 46); *McKenna v. Volkswagenwerk Aktiengesellschaft*, 558 P.2d 1018, 1023 (Haw. 1977) (Section 447); *Maguire v. Hilton Hotels Corp.*, 899 P.2d 393, 398 (Haw. 1995) (Section 314A). Based on such consistent adoption, Hawaii would follow the definition of injury and harm in RESTATEMENT 2ND §7 and determine that economic loss caused by the medical necessity of medical monitoring for the early detection of disease is an invasion of a legally protected interest and is recoverable without proof of present physical injury. | physical injury requirement and limited exceptions for emotional distress).<br><br>While Hawaii has yet to directly address medical monitoring costs, the above precedent supports the conclusion that it would not depart from the physical injury requirement here, and Plaintiffs have not identified decisions that would permit this Court to predict otherwise. *A.I. Dupont Hosp.*, 393 F. App'x 884, 893 n. 7. *Restatement (Second) of Torts* § 7, even if adopted by Hawaii, merely defines "injury" as "the invasion of any legally protected interest of another," and the alleged need for medical monitoring absent a physical injury is not a "legally protected interest" in Hawaii.  Indeed, permitting the recovery of "economic loss" here, as Plaintiffs suggest, would be contrary to *Restatement (Third) of Torts: Liab. for Econ. Harm* § 1. |
| Idaho | No state appellate authority has abandoned the need for present physical injury to state a claim for medical monitoring.<br><br>*But see Davis v. Moran*, 735 P.2d 1014, 1019-20, 1020 n.4 (Idaho 1987) ("actual damage" is required to recover tort damages, which in exposure cases means where "objective medical proof would support the existence of an actual injury"). | Philips claims "[n]o state appellate authority has abandoned the need for present physical injury to state a claim for medical monitoring," but cites no state appellate authority requiring proof of present physical injury as a predicate to a medical monitoring remedy. Philips' cite, *Davis v. Moran*, 735 P.2d 1014, 1019-20 & n.4 (Idaho 1987), supports Plaintiffs' claims for damage since the economic loss of the cost of medically necessary medical monitoring is actual damage for recovery in tort. Plaintiffs' evidence at trial will be that the exposure caused the need for monitoring by objective medical proof, and so actual injury. *See id.*; see also *Hepburn v. Bos. Sci. Corp.*, 2018 WL 2275219, at *5 (D. Idaho May 17, 2018) ("Hepburn has also alleged that she requires continual medical monitoring. Such 'medical monitoring | Plaintiffs do not dispute that "there is no tort until there is an injury" that is "objectively ascertainable," which means "objective medical proof would support the existence of an actual injury." *Davis*, 735 P.2d at 1019-20, n.4. Plaintiffs' assertion that "the economic loss" of medical monitoring costs satisfies this requirement was rejected in *Davis*.  There, the Idaho Supreme Court held that the claim did not accrue upon exposure or even when a physician recommended testing in June 1983; rather, the claim is only actionable when there is an objectively diagnosable injury (*e.g.*, "spinal damage"). *Id.* at 1016, 1020, n.4.<br><br>Plaintiffs' reliance on *Hepburn*, 2018 WL 2275219 is misplaced. First, district court directed Hepburn to amend her complaint to "strengthen her asserted injury," which was insufficient to establish injury-in-fact. *Id.* at 9. Second, the court did not address Idaho law |

<u>EXHIBIT A</u>
**Compendium of the Parties' Citation Tables Addressing Present Physical Injury Requirement for Medical Monitoring Claim**

| States | Respironics' Opening Brief | Plaintiffs' Opposition | Respironics' Reply |
|---|---|---|---|
| | | is a sufficient injury in fact to confer standing.'") (quoting *Sutton v. St. Jude Med. S.C., Inc.*, 419 F.3d 568, 569-75 (6th Cir. 2005)).<br><br>Idaho consistently adopts the rules of law in the RESTATEMENT. See, e.g., *Basic Am., Inc. v. Shatila*, 992 P.2d 175, 184 (Idaho 1999) (Section 757); *Siercke v. Siercke*, 476 P.3d 376, 386 (Idaho 2020) (Section 571); *Mico Mobile Sales & Leasing, Inc. v. Skyline Corp.*, 546 P.2d 54, 57 (Idaho 1975) (Sections 402A, 440, 442); *S. H. Kress & Co. v. Godman*, 515 P.2d 561, 563 (Idaho 1973) (Sections 395, 404). Based on its consistent adoption of the RESTATEMENT, Idaho would follow the definition of injury and harm in RESTATEMENT 2ND §7 and determine that economic loss caused by the medical necessity of medical monitoring for the early detection of disease is an invasion of a legally protected interest and is recoverable without proof of present physical injury. Separately, Plaintiffs' allegation of subcellular injury is sufficient to satisfy a physical harm requirement. | on present physical injury. Third, *Hepburn* alleged present physical injury: "constant pains in the abdominal region." *Id.* at *1.<br><br>None of the other decisions Plaintiffs cite support a prediction that Idaho would abandon the physical injury requirement here. Indeed, *Godman* adopted *Restatement (Second) of Torts* §§ 395, 404, to permit recovery for "physical harm" for defective product claims. 515 P.2d at 563-64.<br><br>Even if adopted, *Restatement (Second) of Torts* § 7 is irrelevant because it merely defines "injury" as "the invasion of any legally protected interest of another," and the need for medical monitoring absent a physical injury is not a "legally protected interest" in Idaho.<br><br>Plaintiffs provide no basis from which to conclude conclusory assertions of subcellular change constitute physical injury under Idaho law, particularly in light of *Davis*. |
| Illinois | Claims for medical monitoring costs require present physical injury.<br><br>*Berry v. City of Chicago*, 181 N.E.3d 679, 688-89 (Ill. 2020) (holding claims for medical monitoring require proof of present physical injury, not just a risk of future disease). | Philips cites *Berry v. City of Chicago*, 181 N.E.3d 679, 688-89 (Ill. 2020), but the claims addressed in Berry were materially different. Unlike this case where the exposure has indisputably already occurred, Berry involved a claim based on a purported increased risk of future exposure. *Id.* at 687 (plaintiffs, their children, grandchildren, and class are at a significantly increased risk of exposure to a known hazardous substance). Berry evaluated plaintiffs' claim as an increased risk claim because plaintiffs pled that the city's actions in replacing water mains and meters created an increased risk that lead will be dislodged or leach from the residents' individual service lines, and so put them at increased risk of lead poising, and did not analyze whether the present economic loss of medically necessary monitoring constitutes injury under the RESTATEMENT 2ND §7. Id. at 686-67. In Berry, plaintiffs did not allege that every member of the proposed class actually had | Contrary to Plaintiffs' description, the plaintiffs in *Berry* alleged that they were actually exposed to lead, allegations substantiated by water testing and blood samples.  181 N.E.3d at 683-84. Nevertheless, the Illinois Supreme Court held that the plaintiffs failed to state a claim because none alleged "any physical impairment, dysfunction, or physically disabling consequence" from the exposure.  *Id.* at 688.  Without "actual or realized harm," the claim devolves to one seeking compensation for the "increased risk of future harm" and risks clogging the "court dockets . . . with comparatively unimportant or trivial claims."  *Id*. at 687-88.  The Illinois Supreme Court proceeded to reject Plaintiffs' contention "that the need for medical testing or monitoring" itself is a cognizable injury because it "is simply another way of saying |

| States | Respironics' Opening Brief | Plaintiffs' Opposition | Respironics' Reply |
|---|---|---|---|
| | | been exposed, or that plaintiffs could ever show that elevated lead levels exist on a class-wide basis. *Berry*, 181 N.E.3d at 686-88.<br><br>The more salient case is *Lewis v. Lead Indus. Ass'n, Inc.*, 793 N.E.2d 869, 873 (Ill. App. 2003), where the court noted that there is a fundamental difference between a claim seeking damages for an increased risk of future harm and one which seeks compensation for the cost of medical examinations. The injury which is alleged, and for which compensation is sought, in a claim seeking damages for a medical examination to detect a possible physical injury is the cost of the examination. *Id.* at 874. *Lewis* considered whether "the cost of diagnostic testing to detect a possible injury, which testing was made necessary by a defendant's breach of duty, is in itself a present injury compensable in a tort action." *Id.* at 873. The court held that it was: "If a defendant's breach of duty makes it necessary for a plaintiff to incur expenses to determine if he or she has been physically injured, we find no reason why the expense of such an examination is any less a present injury compensable in a tort action than the medical expenses that might be incurred to treat an actual physical injury caused by such a breach of duty." *Id.* at 874. Ultimately, however, the claims in that case failed on causation as plaintiffs could not identify which defendants manufactured the lead pigment used in paint to which their children were exposed. *Id.* at 874-75.<br><br>Illinois consistently adopts the rules of law in the RESTATEMENT. *See, e.g., Nelson v. Union Wire Rope Corp.*, 199 N.E.2d 769, 779 (Ill. 1964) (Sections 311, 323); *Blue v. Env't Eng'g, Inc.*, 828 N.E.2d 1128, 1147 (Ill. 2005) (Section 343A); *Hammond v. N. Am. Asbestos Corp.*, 454 N.E.2d 210, 216 (Ill. 1983) (Section 402A). Consistent with other states that allow medical monitoring costs as a remedy, Illinois recognizes that an injury is defined as an invasion of a person's interest, consistent with RESTATEMENT 2ND §7. See *White v. Touche Ross & Co.*, | [plaintiffs] have been subjected to an increased risk of harm," which is not an injury. *Id.* at 688-89.<br><br>Plaintiffs' invocation of the intermediate appellate decision in *Lewis* is perplexing, given that when the Illinois Supreme Court reviewed the case, it held that the plaintiffs could not recover the costs of lead screening tests because, contrary to Illinois tort law, the plaintiffs failed to allege physical injury or property damage and sought recovery solely of an economic loss (cost of tests) that they did not allege they paid. *Lewis v. Lead Indus. Ass'n*, 178 N.E.3d 1046, 1049 (Ill. 2020).<br><br>*Leslie*, 2021 WL 4477923, at *10 (N.D. Ill. Sep. 30, 2021) explained that "a higher than average cancer risk, without physical injury, is not actionable under *Berry*." And *Barnes*, 2022 WL 2915629, at *2 (N.D. Ill. Jul. 24, 2022) reiterated that claims for medical monitoring require "present injury" under *Berry*.<br><br>Illinois's adoption of *Restatement 2nd (Second) of Torts* §7 does not change this analysis. The need for medical monitoring absent a physical injury is not a "legally protected interest" in Illinois. Indeed, *Restatement (Third) of Torts: Liab. for Econ. Harm* § 1 instructs that the "economic loss" that plaintiffs seek is not recoverable here given the absences of physical injury.<br><br>Accordingly, Plaintiffs have not provided any basis from which this Court could predict Illinois would depart from the above precedent to permit the recovery of medical monitoring damages in this case. *A.I. Dupont Hosp.*, 393 F. App'x 884, 893 n.7. Nor do they provide a basis from which to conclude conclusory assertions of subcellular change constitute physical injury under Illinois law. |

**Compendium of the Parties' Citation Tables Addressing Present Physical Injury Requirement for Medical Monitoring Claim**

| States | Respironics' Opening Brief | Plaintiffs' Opposition | Respironics' Reply |
|---|---|---|---|
| | | 516 N.E.2d 509, 514 (Ill. App. 1987). Based on Lewis, Illinois' consistent adoption of the RESTATEMENT, and its following of RESTATEMENT 2ND §7 to define injury, Illinois would follow the definition of injury and harm in §7 and determine that economic loss could by the medical necessity of medical monitoring for the early detection of disease is recoverable without proof of present physical injury where the tortious conduct cause exposure. Separately, Plaintiffs' allegation of subcellular injury is sufficient to satisfy a physical harm requirement. | |
| Indiana | No state appellate authority has abandoned the need for present physical injury to state a claim for medical monitoring. *But see Holiday v. Atl. Richfield Co.*, No. 2:16-CV-525-JVB-JPK, 2022 WL 4463342, at *4-7 (N.D. Ind. Sept. 23, 2022) (holding medical monitoring costs are a form of damages potentially recoverable through a tort claim, but that claim requires a present physical injury, not risk of injury or subclinical or other physiological change, under Indiana law). | Philips claims "[n]o state appellate authority has abandoned the need for present physical injury to state a claim for medical monitoring," but cites no state appellate authority requiring proof of present physical injury as a predicate to a medical monitoring remedy. *Holiday v. Atl. Richfield Co.*, 2022 WL 4463342, at *4-7 (N.D. Ind. Sept. 23, 2022) cites cases in the asbestos context that address statute of limitations. *Holiday* did not address whether economic loss constituted injury sufficient for a negligence claim because plaintiffs there did not argue such. *Id.* at *4. *AlliedSignal, Inc. v. Ott*, 785 N.E.2d 1068, 1075 (Ind. 2003), which *Holiday* cites, evaluates the statue of repose in an asbestos claim and so is not applicable. While citing the case elsewhere, Philips fails to cite the conclusion in *In re Zantac (Ranitidine) Prod. Liab. Litig.*, 546 F. Supp. 3d 1152, 1166 (S.D. Fla. 2021) that the Indiana Supreme Court would recognize medical monitoring as a form of damages for negligence claims, relying on *Gray v. Westinghouse Elec. Corp.*, 624 N.E.2d 49, 54 (Ind. App. 1993) (allowing medical monitoring where substantial financial loss, combined with health risks, constitutes injury) and *Allgood v. Gen. Motors Corp.*, 2005 WL 2218371, at *7 (S.D. Ind. Sept. 12, 2005) (analyzing Gray), neither of which Philips cites. | Indiana tort law requires a "compensable injury" as an element of liability. *Holiday*, 2022 WL 4463342, at *4 (*quoting Ryan v. TCI Architects/Engineers/Contractors, Inc.*, 72 N.E.3d 908, 913 (Ind. 2017)). In *Ott*, the Indiana Supreme Court held that claims arising from toxic exposure (asbestos) accrue when "the disease has actually manifested itself," not upon exposure or resulting subclinical change. 785 N.E.2d at 1075, n.8. *Ott*'s holding is applicable to the question here, does an exposure claim under Indiana law exist before the plaintiff manifests a present physical injury (disease), and answers this critical question in the negative. *Id.; see also Holiday*, 2022 WL 4463342, at *4. Plaintiffs disagree as to *Ott*'s applicability but offer no explanation as to why.<br><br>*In re Zantac* did not have the benefit of *Holiday*'s analysis and does not discuss *Ott*. The decision instead—like Plaintiffs—relies on *Gray* and *Allgood* to conclude that Indiana tort law, including negligence, does not require a present physical injury to recover medical monitoring costs. 546 F. Supp. 3d at 1166-67. Further, *Allgood* relies entirely on *Gray* to predict medical monitoring costs are recoverable through a ***nuisance*** claim without present physical injury. 2005 WL 2218371, at *8. *Gray* explained that this is because nuisance claims are unique in that |

**EXHIBIT A**
**Compendium of the Parties' Citation Tables Addressing Present Physical Injury Requirement for Medical Monitoring Claim**

| States | Respironics' Opening Brief | Plaintiffs' Opposition | Respironics' Reply |
|---|---|---|---|
| | | In addition, Indiana routinely adopts the rules of law from the RESTATEMENT. *See, e.g., Mullins v. Easton*, 376 N.E.2d 1178, 1181 (Ind. App. 1978) (Section 332); *P-M Gas & Wash Co. v. Smith*, 383 N.E.2d 357, 359 (Ind. App. 1978) (Section 342); *Childress v. Bowser*, 546 N.E.2d 1221, 1223 (Ind. 1989) (Section 357); *Kinsey v. Bray*, 596 N.E.2d 938, 940 (Ind. App. 1992) (Section 315); *Creasy v. Rusk*, 730 N.E.2d 659, 666 (Ind. 2000) (Section 283B). Based on its consistent adoption of the RESTATEMENT, it is likely that Indiana would follow the definition of injury and harm in RESTATEMENT 2ND §7 and determine that economic loss caused by medical necessity of medical monitoring for the early detection of disease is an invasion of a legally protected interest and is recoverable without proof of present physical injury. Separately, Plaintiffs' allegation of subcellular injury is sufficient to satisfy a physical harm requirement. | the statute does not require "physical damage to person or property." 624 N.E.2d at 54. <br><br> *Restatement (Second) of Torts* § 7 is irrelevant, even if it is adopted. Freedom from "economic loss" (medical monitoring) allegedly caused by unintentional conduct is not a "legally protected interest" in Indiana; nor is there reason to believe the Illinois Supreme Court would hold otherwise. Indeed, doing so would contradict *Restatement (Third) of Torts: Liab. for Econ. Harm* § 1. <br><br> Moreover, Plaintiffs provide no basis from which to conclude conclusory assertions of subcellular change constitute physical injury under Indiana law, particularly in light of *Holiday* and *Ott*. |
| Iowa | No state appellate authority has abandoned the need for present physical injury to state a claim for medical monitoring. <br><br> *But see Pickrell v. Sorin Grp. USA, Inc.*, 293 F. Supp.3d 865, 868 (S.D. Iowa 2018) (holding Indiana law would require physical injury for a claim for medical monitoring costs). | Philips claims "[n]o state appellate authority has abandoned the need for present physical injury to state a claim for medical monitoring," but cites no state appellate authority requiring proof of present physical injury as a predicate to a medical monitoring remedy. Contrary to Philips' claim, *Pickrell v. Sorin Grp. USA, Inc.*, 293 F. Supp. 3d 865, 868 (S.D. Iowa 2018), cited Iowa law that a negligence claim must include "actual injury" (not physical), concluded that a medical monitoring claim required proof of actual injury, analyzed plaintiff's claim as one for a cause of action, and failed to analyze whether the economic loss caused by the medical necessity of medical monitoring for the early detection of disease is an invasion of a legally protected interest and is "actual injury." <br><br> Iowa often turns to the rules of law in the RESTATEMENT 2ND for guidance. See, e.g., *Rohlin Constr. Co. v. City of Hinton*, 476 N.W.2d 78, 80 (Iowa 1991). Consistent with other states that | *Pickrell* involved an asymptomatic plaintiff's exposure claims caused by an alleged defect in a blood temperature regulating machine, seeking medical monitoring costs, which necessitated an *Erie* prediction. Because the claims sounded in negligence, they required actual injury as an element in Iowa. *Pickrell*, 293 F. Supp. 3d at 868 (citing *Vossoughi v. Polaschek*, 859 N.W.2d 643, 649-50 (Iowa 2015)); *Niblo v. Parr Mfg., Inc.*, 445 N.W.2d 351, 354 (Iowa 1989). Mere exposure creating a need for medical testing does not establish the requisite "present physical injury." *Slaymaker v. Archer-Daniels-Midland Co.*, 540 N.W.2d 459, 460-61 (Iowa Ct. App. 1995) (persons exposed to asbestos necessitating testing that revealed no "significant damage" did not suffer physical injury). *Pickrell* thus predicted that the Iowa Supreme Court would not permit a claim for medical monitoring costs absent physical injury. 293 F. Supp. 3d at 868. |

**Compendium of the Parties' Citation Tables Addressing Present Physical Injury Requirement for Medical Monitoring Claim**

| States | Respironics' Opening Brief | Plaintiffs' Opposition | Respironics' Reply |
|---|---|---|---|
| | | allow medical monitoring costs as a remedy, Iowa follows the definition of injury in RESTATEMENT 2ND §7 as the invasion of any legally protected interest of another. *Schlote v. Dawson*, 676 N.W.2d 187, 192 (Iowa 2004); *Barker v. Capotosto*, 875 N.W.2d 157, 164 (Iowa 2016). Based on its consistent adoption of the RESTATEMENT, and given that it specifically follows the definition of injury in RESTATEMENT 2ND §7, Iowa would determine that economic loss caused by the medical necessity of medical monitoring for the early detection of disease is an invasion of a legally protected interest and is "actual injury" and is recoverable without proof of present physical injury. Separately, Plaintiffs' allegation of subcellular injury is sufficient to satisfy a physical harm requirement. | Plaintiffs fail to present any basis from which this Court could predict that Iowa would expand liability by abandoning the present physical injury requirement or that it would hold mere exposure or the future incurrence of medical testing costs constitutes such an injury. Even if adopted, *Restatement (Second) of Torts* § 7 merely defines "injury" as "the invasion of any legally protected interest of another." The alleged need for medical monitoring absent a physical injury, however, is not a "legally protected interest" in Iowa. Indeed, permitting the recovery of "economic loss" here, as Plaintiffs suggest, would be contrary *Restatement (Third) of Torts: Liab. for Econ. Harm* § 1.<br><br>Plaintiffs provide no basis from which to conclude conclusory assertions of subcellular change constitute physical injury under Iowa law. |
| Kansas | No state appellate authority has abandoned the need for present physical injury to state a claim for medical monitoring.<br><br>*But see Burton v. R.J. Reynolds Tobacco Co.*, 884 F. Supp. 1515, 1522-23, 1523 n.6 (D. Kan. 1995) (holding Kansas law would require present physical injury for a claim for medical monitoring costs). | Philips claims "[n]o state appellate authority has abandoned the need for present physical injury to state a claim for medical monitoring," but cites no state appellate authority requiring proof of present physical injury as a predicate to a medical monitoring remedy. Philips mischaracterizes *Burton v. R.J. Reynolds Tobacco Co.*, 884 F. Supp. 1515 (D. Kan. 1995). *Burton* held that medical monitoring did not state a separate claim, rather it is merely a component of plaintiff's damages relating to his other claims, and these damages would be allowed under plaintiff's other claims. *Id.* at 1523. "Thus, to the extent plaintiff seeks future medical monitoring costs related to his peripheral vascular disease, he does not have a separate medical monitoring claim but rather a damage claim as recognized in Cott." *Burton*, 884 F. Supp. at 1523 n.6 (discussing *Cott v. Peppermint Twist Mgmt. Co., Inc.*, 856 P.2d 906 (1993)). | Kansas's courts have not addressed whether medical monitoring costs may be recovered absent present physical injury. They have, however, long held that claims for damages caused by the risk of future injury must have arisen from a physical injury. *Reynolds v. Highland Manor, Inc.*, 954 P.2d 11, 13 (Kan. Ct. App. 1998) (applying rule in the context of a claim for emotional damages).<br><br>To the extent Plaintiffs assert that *Burton* interpreted Kansas law as carving an exception to this rule for medical monitoring damages, they are wrong. *Burton* held that medical monitoring costs were recoverable as a component of damages only if the plaintiff proves the elements of liability, including physical injury. *Burrton* 884 F. Supp. at 1523; *see also Duncan v. Nw. Airlines, Inc.*, 203 F.R.D. 601, 607-08 (W.D. Wash. 2001) (recognizing this to be *Burton*'s holding); *Witherspoon v. Philip Morris Inc.*, 964 F. Supp. 455, 467 (D.D.C. 1997) (same). Where Kansas has permitted the recovery of medical monitoring costs, it did so only |

<u>EXHIBIT A</u>
**Compendium of the Parties' Citation Tables Addressing Present Physical Injury Requirement for Medical Monitoring Claim**

| States | Respironics' Opening Brief | Plaintiffs' Opposition | Respironics' Reply |
|---|---|---|---|
| | | Kansas often follows the rules of law in the RESTATEMENT. *See, e.g., Dawson v. Assocs. Fin. Servs. Co. of Kan.*, 529 P.2d 104, 111 (Kan. 1974) (Section 46); *Shelton v. Jay Hatfield Mobility, LLC*, 2012 WL 6634394 (Kan. App. Dec. 14, 2012) (Section 323); *Brooks v. Dietz*, 545 P.2d 1104, 1105 (Kan. 1976) (Section 402A). *Borders v. Roseberry*, 532 P.2d 1366, 1372 (Kan. 1975) (Sections 357, 360, 361, 362, 379); *Koch Eng'g Co. v. Faulconer*, 610 P.2d 1094, 1104 (Kan. 1980) (Section 757). Consistent with other states that allow medical monitoring costs as a remedy, Kansas follows the definition of injury in RESTATEMENT 2ND §7 as the invasion of any legally protected interest of another. *Canaan v. Bartee*, 72 P.3d 911, 916 (Kan. 2003). Based on its consistent adoption of the RESTATEMENT and given that it specifically follows the definition of injury in RESTATEMENT 2ND §7, Kansas would determine that economic loss caused by medical necessity of medical monitoring for the early detection of disease is an invasion of a legally protected interest and is "actual injury" and is recoverable without proof of present physical injury. Separately, Plaintiffs' allegation of subcellular injury is sufficient to satisfy a physical harm requirement. | where those costs "arose from an existing injury," as in *Cott. Burton* 884 F. Supp. at 1523 n.6.<br><br>Plaintiffs fail to present any basis from which this Court could predict that Kansas would expand liability by abandoning the present physical injury requirement. Even if adopted, *Restatement (Second) of Torts* § 7 merely defines "injury" as "the invasion of any legally protected interest of another." The alleged need for medical monitoring absent a physical injury, however, is not a "legally protected interest" in Kansas. *Cf. Canaan*, 72 P.3d 911, 916 ("liberty of a guilty criminal" is not a protected interest). Indeed, permitting the recovery of "economic loss" here, as Plaintiffs suggest, would be contrary to *Restatement (Third) of Torts: Liab. for Econ. Harm* § 1.<br><br>Plaintiffs also provide no basis from which to conclude conclusory assertions of subcellular change constitute physical injury under Kansas law. |
| Maine | No state appellate authority has abandoned the need for present physical injury to state a claim for medical monitoring.<br><br>*But see Bernier v. Raymark Indus., Inc.*, 516 A.2d 534, 542-43 (Me. 1986) ("There is generally no cause of action in tort until a plaintiff has suffered an identifiable, compensable injury . . . The actionable harm is the manifestation of disease in the body, not the exposure to | Philips claims "[n]o state appellate authority has abandoned the need for present physical injury to state a claim for medical monitoring," but cites no state appellate authority requiring proof of present physical injury as a predicate to a medical monitoring remedy. The issue in *Bernier v. Raymark Indus., Inc.*, 516 A.2d 534, 542- 43 (Me. 1986) was whether inhalation of asbestos dust constitutes the physical harm that gives rise to the accrual of a judicially recognizable claim against the defendant in the context of the effective date of the products statute, 14 MRSA §221. The court concluded that in actions under section 221 involving asbestos-related injuries, a judicially recognizable claim does not | Plaintiffs baldly misrepresent *Higgins* and its thorough review of Maine law in the context of exposure related tort claims. First, *Higgins* did consider both a stand-alone medical monitoring claim and medical monitoring costs as a remedy. 2022 WL 2274876, at *10-11. Second, *Higgins* recognized that the Maine Supreme Court unequivocally held in *Bernier* that "to be able to recover in tort, a plaintiff must have 'suffered an identifiable, compensable injury,' which requires 'a manifestation of physical injury . . . sufficient to cause him actual loss, damage or suffering.'" *Id.* at *11 (quoting *Bernier*, 516 A.2d at 542-43). Mere microscopic injury from inhalation is insufficient. *Id.* (quoting *Bernier,* 516 |

| States | Respironics' Opening Brief | Plaintiffs' Opposition | Respironics' Reply |
|---|---|---|---|
| | the potentially hazardous substance or some more abstract invasion of a person's legally protected interests . . . subclinical injury . . . is 'insufficient' to constitute actual loss or damage . . . to sustain a cause of action"); *Higgins v. Huhtamaki, Inc.*, No. 1:21-CV-00369-NT, 2022 WL 2274876, at *10-11 (D. Me. June 23, 2022) (holding Maine does not permit a claim for medical monitoring absent present physical injury). | arise until there has been a manifestation of physical injury to a person to give rise to a cause of action under section 14 MRSA §221. *Bernier*, 516 A.2d at 543. *Bernier* did not consider a claim for medical monitoring and did not determine whether the economic loss caused by the medical necessity of medical monitoring for the early detection of disease is an invasion of a legally protected interest and is a compensable injury and is recoverable without proof of present physical injury. *Id. Higgins v. Huhtamaki, Inc.*, 2022 WL 2274876, at *11 (D. Me. June 23, 2022) cited *Bernier* for its conclusion that Maine would not recognize a cause of action for medical monitoring, but concluded that there are certain situations in which a plaintiff may receive damages to compensate for medical monitoring that she must undergo because of a defendant's unlawful conduct. *Higgins* did not consider a claim for medical monitoring and did not determine whether the economic loss caused by the medical necessity of medical monitoring for the early detection of disease is an invasion of a legally protected interest and is a compensable injury and is recoverable without proof of present physical injury. *Id.*<br><br>Maine often relies on the rules of law in the RESTATEMENT for guidance. *See, e.g., Rice v. Alley*, 791 A.2d 932, 936 (Me. 2002) (Section 593); *Nelson v. Maine Times*, 373 A.2d 1221, 1225 (Me. 1977) (Section 652D); *Chapman v. Rideout*, 568 A.2d 829, 830 (Me. 1990) (Section 552); *Dexter v. Town of Norway*, 715 A.2d 169, 172 (Me. 1998) (Section 411). Consistent with other states that allow medical monitoring costs as a remedy, *Dexter* relied on RESTATEMENT 2ND §7 definition of injury. Id. at n.4. Based on its consistent adoption of the RESTATEMENT, and given that it specifically follows the definition of injury in RESTATEMENT 2ND §7, Maine would determine that economic loss caused by medical necessity of medical | A.2d at 543). *Higgins*, therefore, rejected any assertion that alleged exposure and need for medical monitoring constitute "compensable injury" under Maine law. Third, applicability of *Bernier*'s holding is not limited to issues of accrual of claims under 14 M.R.S.A. § 221. Rather, the issue required the court to examine Maine tort law generally, and the court held: (1) a tort cause of action requires "identifiable, compensable injury"; (2) the threat of unrealized future harm "is not enough"; (3) the actionable harm in a latent exposure case is "the manifestation of disease in the body"; and (4) "subclinical injury" is not actionable harm. *Bernier*, 516 A.2d at 542-43.<br><br>Plaintiffs offer no basis from which to conclude *Higgins's* analysis of Maine law is wrong, let alone grounds that would permit this Court to expand Maine tort liability by predicting it would abandon the physical injury requirement here. Even if adopted, *Restatement (Second) of Torts* § 7 merely defines "injury" as "the invasion of any legally protected interest of another." Freedom from the "economic loss" of the purported need to incur future medical monitoring costs allegedly caused by unintentional conduct without physical injury is not a "legally protected interest" in Kansas. Indeed, permitting the recovery of "economic loss" here, as Plaintiffs suggest, would be contrary to *Restatement (Third) of Torts: Liab. for Econ. Harm* § 1. |

<u>EXHIBIT A</u>
**Compendium of the Parties' Citation Tables Addressing Present Physical Injury Requirement for Medical Monitoring Claim**

| States | Respironics' Opening Brief | Plaintiffs' Opposition | Respironics' Reply |
|---|---|---|---|
| | | monitoring for the early detection of disease is an invasion of a legally protected interest and is "actual injury" and is recoverable without proof of present physical injury. | |
| Minnesota | No state appellate authority has abandoned the need for present physical injury to state a claim for medical monitoring.<br><br>But see *Reliance Ins. Co. v. Arneson*, 322 N.W.2d 604, 607 (Minn. 1982) ("the threat of future harm, not yet realized, will not satisfy the damage requirement" for a tort claim); *State by Woyke v. Tonka Corp.*, 420 N.W.2d 624, 626 (Minn. Ct. App. 1988) ("Minnesota does not recognize" "a claim of increased risk of cancer. . ..."). | Philips claims "[n]o state appellate authority has abandoned the need for present physical injury to state a claim for medical monitoring," but cites no state appellate authority requiring proof of present physical injury as a predicate to a medical monitoring remedy. *Reliance Ins. Co. v. Arneson*, 322 N.W.2d 604, 607 (Minn. 1982), evaluated the statute of limitations in an insurance coverage case. *State by Woyke v. Tonka Corp.*, 420 N.W.2d 624, 626 (Minn. App. 1988) analyzed intentional infliction of emotional distress from an increased risk of cancer. Medical monitoring is distinctly different. *See, e.g.*, *Petito v. A.H. Robins Co.*, 750 So.2d 103, 105 (Fla. Dist. Ct. App. 1999); *In re Paoli R.R. Yard PCB Litig.*, 916 F.2d 829, 850-51 (3d Cir. 1990). Neither *Reliance* nor *Tonka* analyzed whether the medical necessity of medical monitoring for the early detection of disease is an invasion of a legally protected interest and is injury and is recoverable without proof of present physical injury. Rather, *Bryson v. Pillsbury Co.*, 573 N.W.2d 718, 721 (Minn. App. 1998), denied summary judgment on plaintiff's medical monitoring claim where the plaintiff had asymptomatic, subcellular damages, following *Werlein v. United States*, 746 F. Supp. 887, 901 (D. Minn. 1990), *vacated in part*, 793 F. Supp. 898 (D. Minn. 1992).<br><br>Minnesota often adopts rules of law in the RESTATEMENT 2ND for guidance. *See, e.g.*, *McCormack v. Hankscraft Co.*, 154 N.W.2d 488, 500 (Minn. 1967) (Section 402A); *Howard By & Through Howard v. Mackenhausen*, 553 N.W.2d 435, 438 (Minn. App. 1996) (Section 339); *Louis v. Louis*, 636 N.W.2d 314, 321 (Minn. 2001) (Section 343A); *Sirek by Beaumaster v. State, Dep't of Nat. Res.*, 496 N.W.2d 807, 808 (Minn. 1993) (Sections | Plaintiffs do not deny that "damage is an essential element of a negligence cause of action" that is not satisfied by the mere "threat of future harm." *Reliance*, 322 N.W.2d 604,607. Nor do they deny that "Minnesota does not recognize" "a claim of increased risk of cancer." *Woyke*, 420 N.W.2d at 625, 627-28. Rather, they contend that *Bryson* held Minnesota permits claims for medical monitoring without proof of present physical injury. *Bryson*, however, recognized that claims seeking medical monitoring require "present injury." 573 N.W.2d 720-21. The question in *Bryson* was whether the alleged "chromosome damage" was a "real and present physical and biologic injury" and this presented a question of fact. *Id.* at 721.<br><br>*Bryson* did not hold that any subcellular or other physiological change meets this requirement. Yet, this conclusory allegation is all that each Plaintiff formulaically alleges regarding his or her injury. Physiological change is a constant part of life, particularly at the subcellular level. Without further explication, Plaintiffs have not pled a plausible present injury under Minnesota law. And there is no basis from which this Court could predict that Minnesota would expand liability by abandoning the present injury requirement. Even if adopted, *Restatement (Second) of Torts* § 7 merely defines "injury" as "the invasion of any legally protected interest of another." Freedom from the "economic loss" of the purported need to incur future medical monitoring costs allegedly caused by unintentional conduct without physical injury is not a "legally protected interest" in Minnesota. Indeed, holding otherwise would contradict *Restatement (Third) of Torts: Liab. for Econ. Harm* § 1. |

**EXHIBIT A**

**Compendium of the Parties' Citation Tables Addressing Present Physical Injury Requirement for Medical Monitoring Claim**

| States | Respironics' Opening Brief | Plaintiffs' Opposition | Respironics' Reply |
|---|---|---|---|
| | | 335, 339). Based on its consistent adoption of the RESTATEMENT, Minnesota would follow RESTATEMENT 2ND §7 and determine that economic loss caused by the medical necessity of medical monitoring for the early detection of disease is an invasion of a legally protected interest and is "actual injury" recoverable without proof of present physical injury. Separately, Plaintiffs' allegation of subcellular injury, consistent with Bryson, is sufficient to satisfy a physical harm requirement. | |
| Montana | No state appellate authority has abandoned the need for present physical injury to state a claim for medical monitoring.<br><br>*But see In re Zantac (Ranitidine) Prod. Liab. Litig.*, 546 F. Supp. 3d 1152, 1167 (S.D. Fla. 2021) (holding Montana requires present physical injury for claims for medical monitoring costs). | Philips claims "[n]o state appellate authority has abandoned the need for present physical injury to state a claim for medical monitoring," but cites no state appellate authority requiring proof of present physical injury as a predicate to a medical monitoring claim or remedy. *In re Zantac (Ranitidine) Prod. Liab. Litig.*, 546 F. Supp. 3d 1152, 1167 (S.D. Fla. 2021) did not hold that Montana requires present physical injury for claims for medical monitoring costs, but only that the court lacked guidance from the Montana Supreme Court. Zantac chose not to follow the logic of *Lamping v. Am. Home Prods.*, 2000 WL 35751402 (Mont. Dist. Ct. Feb. 2, 2000), a state court which concluded that public policy dictated Montana would recognize an independent cause of action for medical monitoring.<br><br>Montana often adopts the rules of law in the RESTATEMENT for guidance. *See, e.g., Stenberg v. Beatrice Foods Co.*, 576 P.2d 725, 728 (Mont. 1978) (Section 402A); *Gagnier v. Curran Constr. Co.*, 443 P.2d 894, 897 (Mont. 1968) (Section 339); *Kyriss v. State*, 707 P.2d 5, 8 (Mont. 1985) (Section 431); *Mally v. Asanovich*, 423 P.2d 294, 297 (Mont. 1967) (Sections 479, 480). Moreover, consistent with other states that allow medical monitoring costs as a remedy, Montana relies on RESTATEMENT 2ND §7 to define injury, noting that the term injury does not necessarily contemplate harm, rather, it can be a physical change or alteration which is either beneficial, | Here, the Court is obliged to predict whether the Montana Supreme Court would permit a claim for medical monitoring costs without present physical injury. "[T]he Montana Supreme Court has not recognized" such a claim (*Lamping*, 2000 WL 35751402) or provided "guidance . . . regarding medical monitoring" (*In re Zantac*, 546 F. Supp. 3d 1152, 1167). Montana requires physical injury; exposure alone is insufficient. *See Schelske v. Creative Nail Design, Inc.*, 933 P.2d 799, 803-04 (Mont. 1997) (explaining "physical harm" is an element of exposure claims arising from alleged product defect and requiring Plaintiff to identify specific injuries/illnesses caused by alleged toxic exposure). *Lamping*, a trial-level decision that was expressly limited to its facts and has never been cited in a Montana case, did not discuss this requirement and provides no basis for the Court to depart from its obligation to avoid expanding state tort law. *In re Zantac*, reached this same conclusion after reviewing Montana law, rejecting the same *Lamping*-based argument Plaintiffs assert here. *In re Zantac*, 546 F. Supp. 3d at 1167.<br><br>Consequently, Plaintiffs identify no basis from which this Court could predict that Montana would expand liability by abandoning the present physical injury requirement. Even if adopted, *Restatement (Second) of Torts* § 7 is irrelevant. Freedom from the "economic loss" of the purported need to incur future medical monitoring costs allegedly caused by unintentional conduct |

**Compendium of the Parties' Citation Tables Addressing Present Physical Injury Requirement for Medical Monitoring Claim**

| States | Respironics' Opening Brief | Plaintiffs' Opposition | Respironics' Reply |
|---|---|---|---|
| | | detrimental or of no consequence. *Lindsay Drilling & Contracting v. U.S. Fid. & Guar. Co.*, 676 P.2d 203, 206 (Mont. 1984). Based on its consistent adoption of the RESTATEMENT and given that it specifically follows the definition of injury in RESTATEMENT 2ND §7, Montana would determine that economic loss caused by medical necessity of medical monitoring for the early detection of disease is an invasion of a legally protected interest and an injury recoverable without proof of present physical injury. Separately, Plaintiffs' allegation of subcellular injury is sufficient to satisfy a physical harm requirement. | without physical injury is not a "legally protected interest" in Montana. Indeed, permitting the recovery of "economic loss" here, as Plaintiffs suggest, would be contrary to *Restatement (Third) of Torts: Liab. for Econ. Harm* § 1.<br><br>Plaintiffs also provide no basis from which to conclude conclusory assertions of subcellular or other physiological change constitute physical harm under Montana law.  In the case they cite, *Lindsay Drilling*, the Montana Supreme Court was interpreting an insurance policy's use of the term "injury," not analyzing the elements of a tort claim.  676 P.2d 203, 205-206. And even there, the court recognized that the insurance policy required loss or detriment to the claimant—*i.e.* "harm"—not mere "physical change or alteration."  *Id.* at 205. |
| Nebraska | No state appellate authority has abandoned the need for present physical injury to state a claim for medical monitoring.<br><br>*But see Trimble v. Asarco, Inc.*, 232 F.3d 946, 962-63 (8th Cir. 2000) (holding Nebraska law has not recognized a cause of action or damages for medical monitoring absent "present physical injury" and declining to expand substantive liability under Nebraska law to do so), *abrogated on other grounds by Exxon Mobil Corp. v. Allapattah Servs., Inc.*, 545 U.S. 546 (2005); *Avila v. CNH Am. LLC*, No. 4:04-cv-03384-RGK-CRZ, 2007 WL 2688613, at *1 (D. Neb. Sep. 10, 2007) ("Nebraska law does not recognize a claim for medical monitoring | Philips claims "[n]o state appellate authority has abandoned the need for present physical injury to state a claim for medical monitoring," but cites no state appellate authority requiring proof of present physical injury as a predicate to a medical monitoring remedy. Philips cites *Trimble v. Asarco*, Inc., 232 F.3d 946, 962-63 (8th Cir. 2000), *abrogated on other grounds by Exxon Mobil Corp. v. Allapattah Servs., Inc.*, 545 U.S. 546 (2005); *Avila v. CNH Am. LLC*, 2007 WL 2688613, at *1 (D. Neb. Sep. 10, 2007) (citing Trimble); *Schwan v. Cargill Inc.*, 2007 WL 4570421, at *1 (D. Neb. Dec. 21, 2007) (same); *Avila v. CNH Am., LLC*, 2012 WL 13187721, at *5 (D. Neb. Aug. 30, 2012) (subsequent order in same *Avila* case) (citing *Trimble*). A federal court observing that a state has not yet recognized a claim absent proof of physical injury does not mean the state would not do so, and none of Philips' cases analyze whether present economic loss of medically necessary diagnostic testing is an injury under Nebraska law following RESTATEMENT 2ND §7. | Nebraska has yet to address medical monitoring.  However, it adheres to the present physical injury requirement for negligence claims.  *Avila*, 2007 WL 2688613, at *1 ("damages are an essential element" under Nebraska law and relief cannot be provided absent "present physical injury").  As explained in *Ward v. City of All.*, 417 N.W.2d 327 (Neb. 1988), toxic exposure claims accrue only after the injury "manifest[s]" itself.  *Id.* at 328, 330.  Accordingly and given the obligation not to expand state tort law in making *Erie* predictions, the courts have predicted that Nebraska would require present physical injury to state a claim for medical monitoring costs.  *Trimble*, 232 F.3d at 963.<br><br>This court has the same obligation to avoid expanding Nebraska's tort liability without substantial evidence that the Nebraska Supreme Court would do so.  *A.I. Dupont*, 393 F. App'x 884, 893 n. 7.  Plaintiffs identify no such authority, let alone any that would permit this court to disagree with the Eighth Circuit's assessment of Nebraska law. Even if adopted, *Restatement (Second) of Torts* § 7 merely defines "injury" as "the invasion of any legally protected |

**Compendium of the Parties' Citation Tables Addressing Present Physical Injury Requirement for Medical Monitoring Claim**

| States | Respironics' Opening Brief | Plaintiffs' Opposition | Respironics' Reply |
|---|---|---|---|
| | when no present physical injury is alleged."); *Schwan v. Cargill Inc.*, No. CIV.A. 4:07CV3170, 2007 WL 4570421, at *1 (D. Neb. Dec. 21, 2007) (same); *Avila v. CNH Am., LLC*, No. 4:04-cv-3384, 2012 WL 13187721, at *5 (D. Neb. Aug. 30, 2012) ("Nebraska tort law does not permit the cost of future medical monitoring to be recovered as damages by an individual who has no present physical injury."). | Consistent with other states that allow medical monitoring costs as a remedy, Nebraska follows RESTATEMENT 2ND §7 to define injury. *Cent. Neb. Pub. Power & Irrigation Dist. v. N. Platte Nat. Res. Dist.*, 788 N.W.2d 252, 263, n.46, 47 (Neb. 2010) ("harm" under the Restatement "is the detriment or loss to a person which occurs by virtue of, or as a result of, some alteration or change in his person, or in physical things"); *see also Rosnick v. Marks*, 357 N.W.2d 186, 190 (Neb. 1984). Based on its consistent adoption of the RESTATEMENT and given that it specifically follows the definition of injury in RESTATEMENT 2ND §7, Nebraska would determine that economic loss caused by medical necessity of medical monitoring for the early detection of disease is an invasion of a legally protected interest and an injury recoverable without proof of present physical injury. Although the court in Cent. Nebraska Pub. Power did not quote the language in RESTATEMENT 2ND §7, cmt. b that harm includes harm to pecuniary advantage, at a minimum, Plaintiffs' allegation of subcellular injury is sufficient to satisfy a physical harm requirement. | interest of another."  Freedom from the "economic loss" of the purported need to incur future medical monitoring costs allegedly caused by unintentional conduct without physical injury is not a "legally protected interest" in Nebraska.  Claims for negligent exposure, instead, require damages.  *Brown ex rel. Watts v. Soc. Settlement Ass'n*, 610 N.W.2d 9, 11 (Neb. 2000).  And where the assertion is a latent disease, as is the case here, damages mean a manifested illness, not the mere subcellular or other physiological change Plaintiffs allege in their complaint.  *Ward*.  Indeed, permitting the recovery of "economic loss" here, as Plaintiffs suggest, would be contrary to *Restatement (Third) of Torts: Liab. for Econ. Harm* § 1. |
| New Hampshire | No state appellate authority has abandoned the need for present physical injury to state a claim for medical monitoring.<br><br>*Brown v. Saint-Gobain Performance Plastics Corp.*, No. 16-CV-242-JL, 2017 WL 6043956, at *7 (D.N.H. Dec. 6, 2017) (noting recognizing a cause of action for medical monitoring without present, physical injury runs counter to long-standing New Hampshire law); *Brown v. Saint-Gobain Performance* | Philips claims "[n]o state appellate authority has abandoned the need for present physical injury to state a claim for medical monitoring," but then admits that the Supreme Court is currently considering that issue. Philips cites a federal court which did not decide the issue of present physical injury, but by Philips' admission, certified to the New Hampshire Supreme Court the question, among others, whether medical monitoring costs could be recovered without present physical injury as a remedy or an independent cause of action. *Brown v. Saint-Gobain Performance Plastics Corp.*, No. 16-cv-242, ECF No. 364 (D.N.H. Mar. 9, 2022) (Philips' Exhibit 1, ECF 1352-1). | On March 21, 2023, the New Hampshire Supreme Court issued its decision answering the certified questions, rejecting Plaintiffs' arguments.  *Brown*, --- A.3d ---, No. 2022-0132, 2023 WL 2577257 (N.H. Mar. 21, 2023).  There, the court held that New Hampshire tort law requires present physical injury to state a viable claim.  *Id*. at *2-3.  The court further rejected Plaintiffs' argument that the economic loss arising from the purported need to incur medical monitoring costs in the future is not an actionable injury.  *Id*.  "[T]he plaintiffs' characterization of their 'injury' as 'the present need for and cost of diagnostic testing' conflates 'an allegation of 'injury,' which is 'an instance of actionable harm,' with 'a claim for 'damages,' that is, 'a sum of |

**EXHIBIT A**
**Compendium of the Parties' Citation Tables Addressing Present Physical Injury Requirement for Medical Monitoring Claim**

| States | Respironics' Opening Brief | Plaintiffs' Opposition | Respironics' Reply |
|---|---|---|---|
| | *Plastics Corp.*, No. 16-CV-242-JL, ECF No. 364 (D.N.H. March 9, 2022) (certifying to N.H. Supreme Court the question, among others, whether medical monitoring costs could be recovered without present physical injury). *See* **Exhibit 1**. | A state trial court held that New Hampshire would recognize medical monitoring as a remedy, following RESTATEMENT 2ND §7, *Hermens v. Textiles Coated Inc. d/b/a Textiles Coated Int'l*, No. 216-2017-cv-00525 (Hillsborough Cnty. Super. Ct. Mar. 16, 2018) (attached hereto as Exhibit "2"), and there is no intermediate appellate court in the state. Consistent with other states that allow medical monitoring costs as a remedy, New Hampshire tort law follows the RESTATEMENT 2ND §7 definition of injury denoting an invasion of any legally protected interest of another. *Smith v. Cote*, 513 A.2d 341, 352 (N.H. 1986), citing RESTATEMENT 2ND §7(1). Based on its consistent adoption of the RESTATEMENT and given that it specifically follows the definition of injury in RESTATEMENT 2ND §7, New Hampshire will determine that economic loss caused by medical necessity of medical monitoring for the early detection of disease is an invasion of a legally protected interest and an injury recoverable without proof of present physical injury. Separately, Plaintiffs' allegation of subcellular injury is sufficient to satisfy a physical harm requirement. | money awarded to one who has suffered an injury.'" *Id.* at *2. In making this conflation, "the plaintiffs effectively conceded that they do not, at present *have* an injury." *Id.* (emphasis in original).<br><br>For their final argument, Plaintiffs provide no basis from which to predict conclusory assertions of subcellular or other physiological change constitute actionable harm under New Hampshire law. Indeed, *Brown* instructs that actionable injury requires harm, not just change. *Id.* at *2. |
| New Jersey | Claims for medical monitoring costs arising from the use of a product require present physical injury.<br><br>*See Sinclair v. Merck & Co., Inc.*, 948 A.2d 587, 588-89, 593-96 (N.J. 2008) (holding New Jersey Product Liability Act subsumes claims arising from allegedly defective products and requires manifest physical injury); *Vitanza v. Wyeth, Inc.*, No. ATL-L-2093-04-MT, 2006 WL 462470, at *9 (N.J. Super. Ct. Jan. 24, 2006) (applying *Sinclair* to reject medical monitoring | A product liability action is defined as "any claim or action brought by a claimant for harm caused by a product, irrespective of the theory underlying the claim, except actions for harm caused by breach of an express warranty." *Sinclair v. Merck & Co.*, 948 A.2d 587, 593 (N.J. 2008) (citing N.J.S.A. § 2A:58C–1(b)(3)). Plaintiffs bring claims for express warranty. MMC, ¶ 187 (Twelfth Claim for Relief). There is no physical injury requirement for an express warranty claim.<br><br>New Jersey follows RESTATEMENT 2ND §7 to define injury as the invasion of a legally protected interest. *Ayers v. Jackson Twp.*, 525 A.2d 287, 304 (N.J. 1987) (holding that enhanced risk of disease is injury under the New Jersey Tort Claims Act). In upholding a medical monitoring remedy, *Ayers* did not require | Plaintiffs do not dispute that *Sinclair*, 948 A.2d 587 (N.J. 2008), held that all claims falling within the scope of the New Jersey Product Liability Act require present physical injury, including those seeking medical monitoring costs. Nor do they dispute that *Sinclair* rejected the argument that "the costs of testing for contamination and of medical treatment are actionable harms under the [NJPLA]" as one that would need to be "directed to the Legislature." *Id.* at 591, 595. Rather, they contend that their claim for express warranty—and only this claim—falls outside the NJPLA's scope.<br><br>As explained in Philips' briefing on the motion to dismiss the economic loss complaint, Plaintiffs' express warranty claims fall outside the scope of the warranty, which does not extend to design |

| States | Respironics' Opening Brief | Plaintiffs' Opposition | Respironics' Reply |
|---|---|---|---|
| | claim due to absence of manifest injury from a product that allegedly increased cancer risk). | proof of present physical injury. *Id.* at 310. Because New Jersey specifically follows the definition of injury in RESTATEMENT 2ND §7, and given *Ayers'* holding that a claim for medical monitoring does not require proof of physical injury, New Jersey will determine that economic loss caused by the medical necessity of medical monitoring for the early detection of disease is an invasion of a legally protected interest and an injury recoverable without proof of present physical injury for an express warranty claim. Separately, Plaintiffs' allegation of subcellular injury is sufficient to satisfy a physical harm requirement. | defects.   Regardless, Plaintiffs' other claims require present physical injury.  For these, Plaintiffs contend that their allegations of subcellular or other physiological change satisfy the NJPLA's "manifest injury" requirement. *Sinclair* 948 A.2d at 588-89.  But Plaintiffs identify no authority supporting this position.  The injury they allege is not "manifest" but instead appears to exist only at the subclinical level.  If it is/were otherwise, Plaintiffs need to plead the facts to establish that. |
| New Mexico | No state appellate authority has abandoned the need for present physical injury to state a claim for medical monitoring. *But see Sanchez v. Clayton*, 877 P.2d 567, 573 (N.M. 1994) ("[L]iability does not attach to negligent acts that do not result in actual harm or damage."); *Jensen v. Allen*, 320 P.2d 1016, 1017 (N.M. 1958) ("Wrong without damage, or damage without wrong does not constitute a cause of action."). | Philips claims that "[n]o state appellate authority has abandoned the need for present physical injury to state a claim for medical monitoring," but cites no state appellate authority requiring proof of present physical injury as a predicate to a medical monitoring remedy. Consistent with other states that allow medical monitoring costs as a remedy, New Mexico follows the RESTATEMENT 2ND §7, recognizing injury denotes the invasion of any legally protected interest of another. *Lovelace Med. Ctr. V. Mendez*, 805 P.2d 603, 609-10 (N.M. 1991) (recognizing harm includes detriment to pecuniary advantage and that economic loss as recoverable injury for tort). Philips' two cases do not change that analysis. *Sanchez v. Clayton*, 877 P.2d 567, 573 (N.M. 1994) examines whether punitive damages may be awarded and does not evaluate the definition of injury; nevertheless, Plaintiffs here claim actual harm in the present economic loss caused by the medical need to undergo diagnostic testing for the early detection of disease. *Jensen v. Allen*, 320 P.2d 1016, 1017 (N.M. 1958) supports Plaintiffs' claim; Plaintiffs have harm and damage in the form of economic loss. *Smith v. Village of Ruidoso*, 994 P.2d 50, 57 (N.M. 1999) (adopting Section 518). Based on its consistent adoption of the RESTATEMENT and | Plaintiffs do not dispute that their claims require them to plead and prove "actual harm or damage." *Sanchez*, 877 P.2d at 573. Rather, they contend that they "have harm and damage in the form of economic loss," specifically the costs they alleged that they need to spend for "diagnostic testing for the early detection of disease."  Generally, however, there is no duty "to avoid the unintentional infliction of economic loss" under the *Restatement (Third) of Torts: Liab. for Econ. Harm* § 1, which New Mexico has adopted.  *Nat. Roofing, Inc. v. Alstate Steel, Inc.*, 366 P.3d 276, 278 (N.M.App. 2015). As explained in *Restatement (Third) of Torts: Liab. for Econ. Harm* § 1 *comt. d*, § 3 recognizes an exception to this rule for medical malpractice actions, where there are inherent limits to the liability imposed and there is an information imbalance.  The decision Plaintiffs cite, *Mendez*, 805 P.2d 603 (N.M. 1991), falls into this unique exception and has been so limited.  *See Provencio v. Wenrich*, 261 P.3d 1089, 1096-97 (N.M. 2011) (limiting *Mendez* to when a doctor botches a sterilization, does not disclose the failure, and the patient has a child incurring economic loss from raising the child).  Here, Plaintiffs are not alleging professional negligence.  Rather, they are alleging exposure "which may, in the future lead to an injury," for which |

**Compendium of the Parties' Citation Tables Addressing Present Physical Injury Requirement for Medical Monitoring Claim**

| States | Respironics' Opening Brief | Plaintiffs' Opposition | Respironics' Reply |
|--------|---------------------------|------------------------|---------------------|
| | | given that it specifically follows the definition of injury in RESTATEMENT 2ND §7, New Mexico would determine that economic loss caused by medical necessity of medical monitoring for the early detection of disease is an invasion of a legally protected interest and an injury recoverable without proof of present physical injury. Separately, Plaintiffs' allegation of subcellular injury is sufficient to satisfy a physical harm requirement. | they seek compensation—specifically, the costs of lifelong testing to assuage those fears.  In *Alberts v. Schultz*, the New Mexico Supreme Court disapproved of such claims, indicating they are not cognizable in the absence of physical injury.  975 P.2d 1279, 1285 (N.M. 1999)  *Restatement (Second) of Torts* § 7 is irrelevant.  Freedom from the "economic loss" of the purported need to incur future medical monitoring costs allegedly caused by unintentional conduct without physical injury is not a "legally protected interest" in New Mexico, and Plaintiffs have not identified any basis from which this Court could predict New Mexico would expand liability to create such a legally protected interest. |
| New York | Claims for medical monitoring costs arising from the use of a product require present physical injury.  *See Benoit v. Saint-Gobain Performance Plastics Corp.*, 959 F.3d 491, 501-02 (2d Cir. 2020) (interpreting New York law as expressly requiring "physical injury" to state a personal injury claim, including a claim for the "costs of medical monitoring"). | Philips misstates New York law in arguing that claims seeking medical monitoring costs arising from the use of a product require present physical injury. *Askey v. Occidental Chem. Corp.* addressed medical monitoring as an aspect of consequential damages in an action at law. 102 A.D.2d 130, 135 (N.Y. App. Div. 1984). In affirming denial of a motion to dismiss, the Appellate Division emphasized that "[t]he defendant is liable for 'reasonably anticipated' consequential damages which may flow later from that [toxic] invasion although the invasion itself is 'an injury too slight to be noticed at the time it is inflicted.'" *Id.* Later, *Caronia v. Philip Morris USA, Inc.* held against a judicially-created independent equitable cause of action for medical monitoring, and did not address medical monitoring as a remedy, but cited New York cases allowing recovery for clinically demonstrable presence of toxins in the body, or some physical manifestation of toxin contamination. 5 N.E.3d 11, 14-16 & 18 (N.Y. App. Div. 2013).  *Benoit v. Saint-Gobain Performance Plastics Corp.*, 959 F.3d 491 (2d Cir. 2020) demonstrates that the Court cannot take the | After summarizing the development of New York law on the issue, the Second Circuit held: (a) "an action for personal injury cannot be maintained '*absent* allegation of *any* physical injury';" (b) "it is, however, sufficient to allege '*some* injury';" and (c) "to meet the requirement to plead 'some' physical injury, it is sufficient to allege that 'in the plaintiff's body' there is either a '*clinically demonstrable presence of toxins*' *or some physical manifestation of toxin contamination.*'"  *Benoit*, 959 F.3d at 501 (emphasis in original).  Given that Plaintiffs appear to agree that this is the established test in New York, it is not clear why they argue—without support—that New York would abandon this test to permit a claim for medical monitoring costs based purely on the alleged "economic loss" of alleged future medical monitoring costs.  Regardless, *Caronia* expressly rejects Plaintiff's argument.  5 N.E.3d at 16-17 (holding New York would not permit a claim where the "only 'injury' is the 'financial burden associated with periodic medical monitoring'"). |

<u>EXHIBIT A</u>
**Compendium of the Parties' Citation Tables Addressing Present Physical Injury Requirement for Medical Monitoring Claim**

| States | Respironics' Opening Brief | Plaintiffs' Opposition | Respironics' Reply |
|--------|---------------------------|------------------------|---------------------|
| | | use of the term "physical injury" at face value, but rather must look to the law. *Benoit* held that allegations of the physical manifestation of or clinically demonstrable presence of toxins in the plaintiff's body are sufficient to ground a claim for personal injury and that, if proven, the plaintiff may be awarded the costs of medical monitoring as consequential damages for such injury. *Id*. at 501-02.  The court held that allegations of the presence of PFOA in class members blood was sufficient to state a claim for the costs of medical monitoring. *Id*. New York follows the rules of law in the RESTATEMENT. *Ashland Mgmt. Inc. v. Janien*, 624 N.E.2d 1007, 1012 (N.Y. 1993) (Section 757); *Martinez v. Kaufman-Kane Realty Co.*, 316 N.E.2d 336, 336 (N.Y. 1974) (Section 339); *Miles v. R & M Appliance Sales, Inc.*, 259 N.E.2d 913, 915 (N.Y. 1970) (Sections 410-429); *Basso v. Miller*, 352 N.E.2d 868, 874 (N.Y. 1976) (Sections 332, 341A, 343, 343A). Based on its consistent adoption of the RESTATEMENT, New York would determine that economic loss caused by medical necessity of medical monitoring for the early detection of disease is an invasion of a legally protected interest and an injury recoverable without proof of present physical injury. Separately, Plaintiffs' allegation of subcellular injury is sufficient to constitute physical manifestation of toxic contamination. | *Caronia* also rejected Plaintiffs' argument that the "allegation of subcellular injury is sufficient to constitute physical manifestation of toxic contamination."  The concept of permitting medical monitoring claims based on alleged subcellular injury indicative of a condition substantially increasing the risk of a latent disease arises from the Massachusetts Supreme Court's decision in *Donovan v. Philip Morris USA, Inc.*, 914 N.E.2d 891, 901-03 (Mass. 2009).  *Caronia* regarded *Donovan* to have abandoned the "physical injury requirement," and for this reason it was a decision New York law rejected for sound reasons.  5 N.E.3d 11, 17-18.<br><br>The question, therefore, is whether Plaintiffs have plausibly alleged that each of them has a clinically demonstrable presence of toxins in their body or a physical manifestation of toxin contamination.  The *Benoit* plaintiffs met this standard by alleging blood test results. 959 F.3d at 501-02.  Plaintiffs identify no such allegation in their complaint, which contains no Plaintiff-specific allegations of injury, and they provide no basis from which to conclude they could cure this deficiency if given leave to amend. |
| North Carolina | Claims for medical monitoring costs arising from the use of a product require present physical injury.<br><br>*Priselac v. Chemours Co.*, No. 7:20-CV-190-D, 2022 WL 909406, at *3 (E.D.N.C. Mar. 28, 2022) ("Under North Carolina law, medical monitoring is not cognizable as an independent cause of action or an element of damages absent a present physical injury.") (citing *Curl v.* | Philips cites *Priselac v. Chemours Co.*, 2022 WL 909406, at *3 (E.D.N.C. Mar. 28, 2022), a federal court interpreting North Carolina law by following *Curl v. Am. Multimedia, Inc.*, 654 S.E.2d 76, 81 (N.C. App. 2007).  *Curl* analyzed medical monitoring as a new cause of action which it held the legislature must decide. Neither *Priselac* nor *Curl* analyzed injury under North Carolina common law or the RESTATEMENT 2ND §7.<br><br>North Carolina follows the basic rules discussed in the RESTATEMENT for guidance. *Woodson v. Rowland*, 407 S.E.2d 222, 229 (N.C. 1991); *Hairston v. Harward*, 821 S.E.2d 384, 391 | In *Curl*, the court held that medical monitoring costs are merely another form of relief, available if the plaintiff proves liability, including "present injury." 654 S.E.2d at 81.  The *Curl* plaintiffs, however, had no manifested physical injury, arguing instead that "traditional tort law" permits claims based on "(1) infliction of a loss of chance of continued health/increased risk of serious disease; (2) an invasion of personal autonomy, specifically of *the right not to be compelled to undergo heightened medical monitoring for the remainder of their lives*; and (3) the instilling of fear of cancer or other deadly disease."  *Id*. at 80-81 (emphasis |

EXHIBIT A

**Compendium of the Parties' Citation Tables Addressing Present Physical Injury Requirement for Medical Monitoring Claim**

| States | Respironics' Opening Brief | Plaintiffs' Opposition | Respironics' Reply |
|---|---|---|---|
| | *American Multimedia, Inc.*, 654 S.E.2d 76, 81 (N.C. Ct. App. 2007)). | (N.C. 2018) (interpreting collateral source benefits). *Priselac* ignored that North Carolina follows RESTATEMENT 2ND §7 for the definition of injury, and that "injury" is the invasion of any legally protected interest of another. *Black v. Littlejohn*, 325 S.E.2d 469, 478 (N.C. 1985) (citing RESTATEMENT 2ND §7, cmt a). *See also Cage v. Colonial Bldg. Co., Inc. of Raleigh*, 448 S.E.2d 115, 117 (N.C. 1994) (analyzing injury as harm to a legally protected interest (citing RESTATEMENT 2ND §902 (1970), which references RESTATEMENT 2ND §7). Based on its consistent adoption of the RESTATEMENT, and given that it specifically follows the definition of injury in RESTATEMENT 2ND §7, North Carolina would determine that economic loss caused by medical necessity of medical monitoring for the early detection of disease is an invasion of a legally protected interest and an injury recoverable without proof of present physical injury. Separately, Plaintiffs' allegation of subcellular injury is sufficient to satisfy a physical harm requirement. | added). The court **rejected** these arguments, holding North Carolina requires present injury and any attempt to change that should be directed to the legislature. *Id.* at 81. The *Priselac* district court recognized this to be the plain holding of *Curl* and correctly surmised that *Curl* dictated the requisite *Erie* prediction. 2022 WL 909406, at *3 (E.D.N.C. Mar. 28, 2022).<br><br>In response, Plaintiffs argue that North Carolina follows the *Restatement (Second) of Torts* § 7, *Priselac* ignored this, and § 7 would permit a claim for medical monitoring—without present physical injury—based on "economic loss" Plaintiffs may incur based on their purported need for medical monitoring. *Curl* **rejected** this argument, as explained above. The purported need for medical monitoring based on a risk of harmful exposure and future disease, without present physical injury, is "not a legally protected interest" in North Carolina. *See Priselac*, 2022 WL 909406, at *4. None of the decisions Plaintiffs reference hold otherwise or support a contrary conclusion. Indeed, N.C. Gen. Stat. § 1-52(16) states that claims for latent diseases do not accrue until "bodily harm" is "apparent." |
| Ohio | No state appellate authority has abandoned the need for present physical injury to state a claim for medical monitoring.<br><br>*But see Queen City Terminals, Inc. v. Gen. Am. Transp. Corp.*, 653 N.E.2d 661, 667 (Ohio 1995) (holding indirect economic damages (consequently losses) can only be recovered in tort if they arise from "tangible physical injury"); *Riston v. Butler*, 777 N.E.2d 857, 866 (Ohio App. 1st Dist. 2002) (recognizing argument in | Philips claims "[n]o state appellate authority has abandoned the need for present physical injury to state a claim for medical monitoring," but cites no state appellate authority requiring proof of present physical injury as a predicate to a medical monitoring remedy.<br><br>Philips chooses not to cite a relevant federal court decision, *Day v. NLO*, 851 F. Supp. 869 (S.D. Ohio 1994), which allows a claim for medical monitoring. *Id.* at 875 & 771 (holding allegation of increased risk sufficient to meet injury requirement, not requiring proof of present physical injury; identifying policy reasons in support of a claim for monitoring costs). *In re Fernald Litig.*, 1989 WL 267039, at *2 (S.D. Ohio Sept. 29, 1989) | In *Day*, the federal district court recognized: (1) asymptomatic claims for future medical monitoring costs seek to recover based "on the chance that an injury has been sustained"; and (2) Ohio does not allow claims based on the "risk of disease" as opposed to a present injury. 851 F. Supp. at 879. Nevertheless, the district court declared: "if the Plaintiffs can establish liability and an increased risk of disease, they will be entitled to medical monitoring." *Id.* at 881. While it is not clear whether the court was making an *Erie* prediction or simply believed it was entitled to create state law, the court predicated this expansion of tort liability on (1) decisions in other courts (D.C., Utah, and California) and (2) a belief that it was in the interest of public policy. *Id.* at 880-81. What is clear, is that *Day*'s declaration was |

| States | Respironics' Opening Brief | Plaintiffs' Opposition | Respironics' Reply |
|---|---|---|---|
| | support of a claim for medical monitoring costs absent present physical injury advocated for "a change in Ohio law that has not been specifically addressed by an Ohio reviewing court"). | resulted in a trial and an award for $80,000,000 for a medical monitoring fund. This resulted in medical monitoring being implemented. See *Fernald Medical Monitoring Program*, University of Cincinnati College of Medicine, https://med.uc.edu/eh/research/projects/fcc/fmmp-history (last accessed Mar. 5, 2023). *See also Elmer v. S.H. Bell Co.*, 127 F. Supp. 3d 812, 825 (N.D. Ohio 2015) (demonstrated physical injuries not required to obtain medical monitoring relief).<br><br>*Queen City Terminals, Inc. v. Gen. Am. Transp. Corp.*, 653 N.E.2d 661, 667 (Ohio 1995) holds there is a duty to avoid intangible economic loss or losses to others that do arise from tangible physical harm to persons and tangible things.<br><br>Here, there is a direct causal nexus between the damage to Plaintiffs' property, their Devices, and the economic loss of the need to incur medical monitoring costs. *See id.* at 668. *Riston v. Butler*, 777 N.E.2d 857, 866 (Ohio App. 2002) recognizes that a claim for medical monitoring costs is not legally groundless in Ohio. *Riston* cites *Wilson v. Brush Wellman, Inc.*, 817 N.E.2d 59, 61 (Ohio 2004). In *Wilson*, the Supreme Court held that under the proper circumstances court-ordered medical monitoring may be classified as injunctive relief. *Id.* at 61 (denying certification of a class for medical monitoring damages under Rule 23(b)(3)).<br><br>Ohio adopts rules of law discussed in the RESTATEMENT 2ND for guidance. *Temple v. Wean United, Inc.*, 364 N.E.2d 267, 271 (Ohio 1977) (Section 402A); *McGlashan v. Spade Rockledge Terrace Condo Dev. Corp.*, 402 N.E.2d 1196, 1200 (Ohio 1980) (Sections 822-31, 833); *Cascone v. Herb Kay Co.*, 451 N.E.2d 815, 820 (Ohio 1983) (Section 453). Consistent with other states that allow medical monitoring costs as a remedy, Ohio also recognizes injury in a manner consistent with the RESTATEMENT 2ND definition of injury. *Fox v. Indus.* | not supported by any Ohio precedent. It was in spite of it, admittedly.<br><br>Here, the Court is obligated to faithfully apply Ohio law, avoid engrafting onto state law exceptions that the federal court finds commendable, and opt for the interpretation that "restricts liability, rather than expands it." *A.I. Dupont*, 393 F. App'x 884, 893 n.7. Because *Day* took the opposite approach, this Court cannot follow it.<br><br>As explained in *Riston*, Ohio courts have not addressed whether Ohio law permits claims for medical monitoring arising solely from exposure without present physical injury. 777 N.E.2d at 866. Plaintiffs do not dispute *Riston*'s assessment that permitting such a claim would require "a change in Ohio law." Indeed, Plaintiffs admit that Ohio does not permit recovery economic losses if they do not arise from "tangible physical injury to persons" or property (*Queen City Terminals*, 653 N.E.2d 661, 667), and they admit that the future costs of the medical monitoring sought here are "economic losses."<br><br>Plaintiffs instead argue that the need to incur those costs is caused by "damage to Plaintiffs' property, their Devices." Plaintiffs offer no clarification on the nature of this "damage" or its purported causal connection to the alleged need to incur medical monitoring costs. Nor is any connection apparent, given the lack of Plaintiff-specific allegations of device damage, let alone Plaintiff-specific allegations of physical injury, causing any need for medical treatment, including any medical testing. In sum, Plaintiffs are asserting claims based solely on the risk of past exposure allegedly increasing the risk of future disease and are seeking to recover indirect economic costs not yet incurred that do not arise from physical injury. Such claims are not cognizable under Ohio law, as explained above. |

**Compendium of the Parties' Citation Tables Addressing Present Physical Injury Requirement for Medical Monitoring Claim**

| States | Respironics' Opening Brief | Plaintiffs' Opposition | Respironics' Reply |
|---|---|---|---|
| | | *Comm'n of Ohio*, 125 N.E.2d 1, 5 (Ohio 1955) (the term, injury, is used to denote the invasion of any legally protected interest of another, whereas the term, 'harm,' implies the existence of a tangible and material detriment, and these terms are so used throughout this opinion); *State v. Suchomski*, 567 N.E.2d 1304, 1305 (Ohio 1991) (citing Black's Law Dictionary (6 Ed. 1990) "Injury"). Based on its adoption of rules of the RESTATEMENT 2ND and given that it specifically follows the definition of injury in RESTATEMENT 2ND §7, Ohio would determine that economic loss caused by the medical necessity of medical monitoring for the early detection of disease is an invasion of a legally protected interest and an injury recoverable without proof of present physical injury. Separately, Plaintiffs' allegation of subcellular injury is sufficient to satisfy a physical harm requirement. | None of the decisions Plaintiffs reference instruct otherwise. *Fernald* was resolved by a settlement that was preceded and facilitated by a non-binding "summary jury trial" awarding medical monitoring costs, which provides no insight on Ohio law. 1989 WL 267039, at *2. *Elmer* blindly relies on *Day*. 127 F. Supp. 3d at 825. *Wilson* reinstated the trial court's denial of class certification and did not opine on the need to prove present physical injury. 817 N.E.2d 59, 66. And the remainder are cited to support the argument that Ohio follows the *Restatement (Second) of Torts* § 7. But freedom from the "economic loss" of the purported need to incur future medical monitoring costs allegedly caused by unintentional conduct without physical injury is not a "legally protected interest" in Ohio. And Plaintiffs have not identified any basis from which this Court could predict Ohio would expand liability to create such a legally protected interest or recognize Plaintiffs' conclusory assertions of subcellular or other physiological change constitute actionable harm under Ohio law. |
| Oklahoma | No state appellate authority has abandoned the need for present physical injury to state a claim for medical monitoring. *But see McCormick v. Halliburton Co.*, 895 F. Supp.2d 1152, 1158-59 (W.D. Okla. 2012) ("[D]ue to the complete lack of Oklahoma law, both constitutional, statutory, and case law, on this issue, due to the importance of the public policies at issue, and due to the countless specifics that would need to be addressed if a medical monitoring remedy were recognized, such as how such a remedy would be structured, | Philips claims that "[n]o state appellate authority has abandoned the need for present physical injury to state a claim for medical monitoring," but cites no state appellate authority requiring proof of present physical injury as a predicate to a medical monitoring remedy. Philips selectively cites federal decisions on medical monitoring. *McCormick v. Halliburton Co.*, 895 F. Supp. 2d 1152, 1158-59 (W.D. Okla. 2012); *Cole v. Asarco Inc.*, 256 F.R.D. 690, 695 (N.D. Okla. 2009) ("Oklahoma law requires plaintiffs to demonstrate an existing disease or physical injury before they can recover the costs of future medical treatment that is deemed medically necessary."); *Taylor v. Michelin N. Am., Inc.*, 2018 WL 1569495, at *6-7 (N.D. Okla. Mar. 30, 2018). None address whether the economic loss of reasonably necessary diagnostic testing for the early detection of disease constitutes injury under the RESTATEMENT 2ND §7. And *McCormick* | Plaintiffs do not dispute that Oklahoma has not decided claims seeking to recover medical monitoring costs are viable without present physical injury. Indeed, in *Reece v. AES Corp.* the Tenth Circuit reviewed and held that present physical injury is required. 638 F. App'x. 755, 775-76 (10th Cir. 2016). *Reece* then rejected arguments (1) that concern about future risk constitute cognizable injury and (2) that the formulaic listing of conditions consistent with exposure sufficed to plausibly allege cognizable physical injury. *Id.* at 776-78.<br><br>Plaintiffs, instead, urge this Court to predict that Oklahoma would expand tort liability to permit asymptomatic claims for medical monitoring costs based on the expectation that it would adopt the *Restatement (Second) of Torts* § 7. Even if adopted, § 7 merely defines injury as the invasion of a "legal protected interest." But the purported need for medical monitoring based on a risk of |

| States | Respironics' Opening Brief | Plaintiffs' Opposition | Respironics' Reply |
|---|---|---|---|
| | claim preclusion issues, elements for such a remedy, etc., the Court concludes that the Oklahoma Supreme Court would not recognize a medical monitoring remedy in the absence of any guidance from the Oklahoma legislature and would instead defer to the Oklahoma legislature to first recognize such a remedy."); *Cole v. Asarco Inc.*, 256 F.R.D. 690, 695 (N.D. Okla. 2009) ("Oklahoma law requires plaintiffs to demonstrate an existing disease or physical injury before they can recover the costs of future medical treatment that is deemed medically necessary."); *Taylor v. Michelin N. Am., Inc.*, No. 14-CV-293-JED-FHM, 2018 WL 1569495, at *6-7 (N.D. Okla. Mar. 30, 2018) (dismissing medical monitoring allegations where they were not supported by plaintiff-specific allegations of personal injury—vague allegations of affecting health, medical issues, etc. were insufficient). | recognized that the Oklahoma Supreme Court opinion cited in *Cole* does not stand for the position for which it is cited. 895 F. Supp. 2d at 1155, n.1. Oklahoma follows the RESTATEMENT. *See, e.g., Miller v. Miller*, 956 P.2d 887, 900 (Okla. 1998) (following standards of RESTATEMENT 2ND §46). *Kirkland v. Gen. Motors Corp.*, 521 P.2d 1353, 1362 (Okla. 1974) (following standards of RESTATEMENT 2ND §402A). Based on its consistent adoption of the RESTATEMENT, Oklahoma would determine that economic loss caused by medical necessity of medical monitoring for the early detection of disease is an invasion of a legally protected interest and an injury recoverable without proof of present physical injury. Separately, Plaintiffs' allegation of subcellular injury is sufficient to satisfy a physical harm requirement. | harmful exposure and future disease, without present physical injury, is "not a legally protected interest" in Oklahoma, and Plaintiffs identify no authority supporting the contrary conclusion. *See In re Allergan Biocell Textured Breast Implant Prod. Liab. Litig.*, 537 F. Supp. 3d 679, 763-64 (D.N.J. 2021) (citing *Taylor v. Michelin N. Am., Inc.*, 2018 WL 1569495 at *7 (N.D. Okla. Mar. 30, 2018); *Reece*, 2014 WL 61242 at *7 (E.D. Okla. Jan. 8, 2014), *aff'd*, 638 F. App's 755 (10th Cir. 2016)). Further, Plaintiffs provide no basis from which to conclude conclusory assertions of subcellular or other physiological change constitute actionable harm under Oklahoma law. |
| Oregon | Claims for medical monitoring costs arising from the use of a product require present physical injury. *See Lowe v. Philip Morris USA, Inc.*, 183 P.3d 181, 186-87 (Or. 2008) ("conduct that results only in a significantly increased risk of future injury that requires medical monitoring | Philips incorrectly argues that *Lowe v. Philip Morris USA, Inc.*, 183 P.3d 181, 187 (Or. 2008) holds that claims seeking medical monitoring costs arising from the use of a product require present physical injury. *Lowe* held that negligent conduct that results only in a significantly increased risk of future injury that requires medical monitoring does not give rise to a claim for negligence. *Lowe* analyzed the claim as an enhanced risk of future disease case, not the present pecuniary loss of the costs of | The Oregon Supreme Court rejected Plaintiffs' arguments in *Lowe*, 183 P.3d 181. There, the plaintiff, who did not allege "present physical harm," asserted negligence claims based on the manufacture and sale of cigarettes caused her to have a "significantly increased risk" of cancer and, as a result, "it was 'reasonable and necessary' for her to undergo 'periodic medical screening.'" *Lowe*, 183 P.3d at 182-83. The court affirmed the dismissal of the complaint because Oregon requires present |

**Compendium of the Parties' Citation Tables Addressing Present Physical Injury Requirement for Medical Monitoring Claim**

| States | Respironics' Opening Brief | Plaintiffs' Opposition | Respironics' Reply |
|---|---|---|---|
| | does not give rise" to a tort claim, including one for medical monitoring costs). | medical care to determine the extent of harm, and did not evaluate injury under RESTATEMENT 2ND §7. 183 P.3d at 182-83. The concurrence noted that the majority does not reject medical monitoring as a remedy in a negligence action, and Oregon law may well permit it. *Id.* at 187. The dissent noted that when science and medicine are able to identify harm before it becomes manifest, and to do so with sufficient certainty, Oregon law does not foreclose an action in negligence or the remedy of medical monitoring. *Id.* at 189.<br><br>Oregon consistently adopts the rules of the RESTATEMENT 2ND. *See, e.g., Heaton v. Ford Motor Co.*, 435 P.2d 806, 811 (Or. 1967) (Section 402A); *Lampos v. Bazar, Inc.*, 527 P.2d 376, 384 (Or. 1974) (Section 662); *McEwen v. Ortho Pharm. Corp.*, 528 P.2d 522, 528 (Or. 1974) (Section 388); *Hudson v. Peavey Oil Co.*, 566 P.2d 175, 179 (Or. 1977) (Section 929). Consistent with other states that allow medical monitoring costs as a remedy, Oregon follows RESTATEMENT 2ND §7 for the definition of injury as the invasion of any legally protected interest. *Gaston v. Parsons*, 864 P.2d 1319, 1322 (Or. 1994). Based on its consistent adoption of the RESTATEMENT and given that it specifically follows the definition of injury in RESTATEMENT 2ND §7, Oregon would determine that economic loss caused by medical necessity of medical monitoring for the early detection of disease is an invasion of a legally protected interest and an injury recoverable without proof of present physical injury. Separately, Plaintiffs' allegation of subcellular injury is sufficient to satisfy a physical harm requirement. | physical injury. In reaching this decision, the court expressly rejected Plaintiffs' arguments that a viable claim could be based on: (1) the significantly increased risk of cancer itself; and (2) "the economic cost" of medical monitoring "constitutes a sufficient present herm." *Id.* at 184. "[A] plaintiff must suffer harm 'to an interest of a kind the law protects against negligent invasion'" to state a claim. *Id.* The mere threat of physical harm is insufficient to constitute an actionable injury. *Id.* The threat only becomes actionable when it manifests into "present physical harm." *Id.* at 185. The court also held Plaintiffs' second argument contradicted Oregon law because the costs of medical monitoring are economic losses that are not actionable absent a special duty or physical injury to person or property. *Id.* at 186.<br><br>Justice Walters's concurrence agreed the claim failed because there was no alleged "present physical harm." *Id.* at 187. She then opined that physical harm should include "detectable physical effects" from negligent exposure to a harmful substance. *Id.* at 188. Nevertheless, she concurred in the result: simply alleging the exposure that comes with smoking a pack every day for five years does not establish the necessary physical harm to state a claim.<br><br>Accordingly, *Lowe* forecloses both of Plaintiffs' arguments. Neither the economic loss of future medical monitoring costs nor non-detectable subcellular or other physiological change satisfy the present physical harm requirement demanded by Oregon tort law. |
| Puerto Rico | No Puerto Rican appellate authority has abandoned the need for present physical | Philips claims "[n]o Puerto Rican authority has abandoned the need for present physical injury to state a claim for medical monitoring," but cites no authority requiring proof of present physical injury as a predicate to a medical monitoring remedy. | Plaintiffs do not dispute that Puerto Rican tort law requires proof of actual damages to state a viable claim. Instead, they argue that Puerto Rico would adopt *Restatement (Second) of Torts* § 7 and because of this, would hold the "economic loss" of the alleged |

| States | Respironics' Opening Brief | Plaintiffs' Opposition | Respironics' Reply |
|--------|---------------------------|------------------------|--------------------|
| | injury to state a claim for medical monitoring.<br><br>*But see Vazquez v. Com. Ins. Co.*, 102 P.R. Dec. 813 (1974) (noting liability requires proof of actual damage). | Philips cites *Vazquez v. Com. Ins. Co.*, 102 P.R. Dec. 813 (1974), but *Vasquez* merely holds that plaintiff must prove damage in a medical negligence case. Here Plaintiffs allege damage: the economic loss caused by the medical necessity of medical monitoring due to the increased risk of disease caused by the exposure to Philips' PE-PUR toxins.<br><br>Puerto Rico often adopts the rules of the RESTATEMENT 2ND. See, e.g., *Gonzalez Caban v. JR Seafood*, 199 P.R. Dec. 234 (2017) (Section 402A) *Montalban v. Centro Com. Plaza Carolina*, 132 P.R. Dec. 785 (1993) (Section 344); *Porto y Siurano v. Bentley P.R., Inc.*, 132 P.R. Dec. 331 (1992) (Section 577). Based on its consistent adoption of the RESTATEMENT 2ND, Puerto Rico would determine that the economic loss caused by the medical necessity of medical monitoring for the early detection of disease is an invasion of a legally protected interest and an injury recoverable without proof of present physical injury. Separately, Plaintiffs' allegation of subcellular injury is sufficient to satisfy a physical harm requirement. | future need to incur medical monitoring costs satisfies the actual damage requirement.  Section 7, however, merely defines injury to constitute the invasion of a "legal protected interest."  Under the *Restatement (Third) of Torts: Liab. for Econ. Harm* § 1, there is "no general duty to avoid the unintentional infliction of economic loss on another," which is commonly referred to as the economic loss doctrine.  *See also Isla Nena Air Servs., Inc. v. Cessna Aircraft Co.*, 449 F.3d 85, 90-92 (1st Cir. 2006) (predicting Puerto Rico would adopt and apply the economic loss doctrine in product defect cases).  Plaintiffs do not identify any authority that would permit this Court to predict Puerto Rico would expand liability to permit claims premised on the risk of exposure that may increase the risk of a future disease and/or the future incurrence of the economic loss of medical monitoring costs.  Nor do they provide any basis from which to conclude conclusory assertions of subcellular or other physiological change constitute actionable damage under Puerto Rico law. |
| Rhode Island | Claims for medical monitoring costs arising from the use of a product require present physical injury.<br><br>*See Miranda v. Dacruz*, No. PC04-2210, 2009 WL 3515196, at *7-8 (R.I. Super. Oct. 26, 2009) (holding Rhode Island requires manifested present physical injury to state a claim for medical monitoring costs) (citing *Kelley v. Cowesett Hills Assocs.*, 768 A.2d 425, 430 (R.I. 2001) (requiring manifestation of illness or disease to state a viable tort claim based on exposure)). | Philips argues that "[c]laims for medical monitoring costs arising from the use of a product require present physical injury," but cites no state appellate authority requiring proof of present physical injury as a predicate to a medical monitoring remedy. *Kelley v. Cowesett Hills Assocs.*, 768 A.2d 425, 430 (R.I. 2001) did not address a remedy of medical monitoring.  Rather *Kelley* upheld the analysis of the lower court case treating the claim as an emotional distress claim. *Id.* at 430 (citing emotional distress cases). *Kelley* does not mention of costs of monitoring and *Kelley* did not analyze injury under RESTATEMENT 2ND §7. Philips cites *Miranda v. Dacruz*, 2009 WL 3515196, at *7-8 (R.I. Super. Ct. Oct. 26, 2009), but fails to cite trial court decisions elsewhere in analyzing law of the various states. *Miranda* analyzed the claim as a future injury claim, but did not analyze injury under | In Rhode Island, "the possibility of contracting cancer resulting from mere exposure to a carcinogen, although potentially increasing one's risk of developing cancer, is too tenuous to be a viable cause of action."  *Kelley*, 768 A.2d at 430.  Thus, "in the absence of physical manifestation" (*i.e.*, "symptomatology"), a plaintiff cannot "establish a *prima facie* case of negligence as a matter of law."  *Id.* at 430, 431.  Plaintiffs' attempt to characterize *Kelley*'s holding as being limited to claims for emotional distress ignores the plain language of the holding.  The Rhode Island superior court recognized this in *Miranda*, holding an asymptomatic plaintiff cannot assert a claim for medical monitoring costs under *Kelley*.  2009 WL 3515196, at *8. |

**Compendium of the Parties' Citation Tables Addressing Present Physical Injury Requirement for Medical Monitoring Claim**

| States | Respironics' Opening Brief | Plaintiffs' Opposition | Respironics' Reply |
|---|---|---|---|
| | | RESTATEMENT 2ND §7. Cf. *Emerson v. Magendantz*, 689 A.2d 409, 413-14 (R.I. 1997) (allowing recovery of economic loss for failed sterilization procedure without present physical injury).<br><br>Rhode Island consistently adopts the rules of the RESTATEMENT. See, e.g., *Gushlaw v. Milner*, 42 A.3d 1245, 1258 (R.I. 2012) (Sections 314,M315, 320); *Swerdlick v. Koch*, 721 A.2d 849, 859 (R.I. 1998) (Section 652D); *Lyons v. R.I. Pub. Employees Council* 94, 516 A.2d 1339, 1342 (R.I. 1986) (Section 588); *Hill v. Nat'l Grid*, 11 A.3d 110, 113 (R.I. 2011) (Section 339). Based on its consistent adoption of the RESTATEMENT, Rhode Island would determine that economic loss caused by the medical necessity of medical monitoring for the early detection of disease is an invasion of a legally protected interest and an injury recoverable without proof of present physical injury. Separately, Plaintiffs' allegation of subcellular injury is sufficient to satisfy a physical harm requirement. | Plaintiffs do not identify any authority that would permit this Court to expand Rhode Island tort liability by predicting it would reverse course form *Kelley* and permit claims for medical monitoring absent physical manifestation of disease or illness.  Even if adopted, the *Restatement (Second) of Torts* § 7's definition of injury merely extends to invasions of a "legally protected interest." *Kelley* plainly rejected the argument that freedom from exposure to harmful substances is a legally protected interest.  Further, the *Restatement (Third) of Torts: Liab. for Econ. Harm* § 1 and *Miranda* support the conclusion that freedom from economic loss, including costs associated with medical monitoring, is not a legally protected interest, and Plaintiffs cite no case to the contrary.  In the lone substantive decision they reference, *Emerson*, the plaintiff **did** suffer physical harm, including the pains of delivery and an "additional invasive medical treatment," and the court **rejected** recovery of economic losses, namely the costs of rearing the child to adulthood.  689 A.2d 409, 411, 413.  Plaintiffs' assertions to the contrary are unsupported and mistaken. |
| South Carolina | No state appellate authority has abandoned the need for present physical injury to state a claim for medical monitoring.<br><br>*But see Sapp v. Ford Motor Co.*, 687 S.E.2d 47, 49-50 (S.C. 2009) ("liability only lies where there is damage done to … property or personal injury …Imposing liability merely for the creation of risk when there are no actual damages drastically changes the fundamental elements of a tort action, makes any amount of damages entirely speculative, and holds the manufacturer as an insurer | Philips claims "[n]o state appellate authority has abandoned the need for present physical injury to state a claim for medical monitoring," but cites no state appellate authority requiring proof of present physical injury as a predicate to a medical monitoring remedy. *Sapp v. Ford Motor Co.*, 687 S.E.2d 47, 49-50 (S.C. 2009) evaluated the economic loss rule for the distinction between tort and contract law. Sapp did not consider a claim for medical monitoring, and moreover, Plaintiffs have suffered property damage. *Sapp* explains that the economic loss rule does not preclude a homebuyer from recovering in tort where the builder violates a building code, deviates from industry standards, or constructs a home that he knows or should know will pose a serious risk of physical harm. *Id*. at 49. *Rosmer v. Pfizer, Inc.*, 2001 WL 34010613, at *5 (D.S.C. Mar. 30, 2001) | Plaintiffs do not dispute *Rosmer*'s recognition that South Carolina does not permit a stand-alone medical monitoring claim.  Medical monitoring costs, instead, are merely a form of damages potentially recoverable if liability is established on the elements of another claim.  Where, as here, the plaintiff asserts liability arising from an alleged product defect, South Carolina law provides no remedy absent "physical harm to person or property" other than the product.  *Sapp*, 687 S.E.2d at 49-50; S.C. Code Ann. § 15-73-10 (product defect damages are limited to "physical harm").<br><br>Plaintiffs claim to "have suffered property damage" but do not identify damage to property other than their devices.  Nor have they identified any basis from which to conclude that their conclusory assertions of subcellular or other physiological change satisfy South Carolina's "physical harm" requirement.  To the |

| States | Respironics' Opening Brief | Plaintiffs' Opposition | Respironics' Reply |
|---|---|---|---|
| | against all possible risk of harm."); *Rosmer v. Pfizer, Inc.*, No. CIV.A. 9:99-228018RB, 2001 WL 34010613, at *5 (D.S.C. Mar. 30, 2001) (holding South Caroline has not adopted a medical monitoring cause of action in effect in other states to circumvent the present physical injury requirement). | analyzes whether South Carolina has adopted medical monitoring as a cause of action, but not as a remedy, and does no analysis of injury under the RESTATEMENT 2ND.<br><br>South Carolina consistently adopts the rules of the RESTATEMENT. *See, e.g., Lydia v. Horton*, 540 S.E.2d 102, 107 (S.C. App. 2000), rev'd, 583 S.E.2d 750 (S.C. 2003) ("Many of our decisions follow closely the logic of the Restatement") (Sections 308 and 390); *ML-Lee Acquisition Fund, L.P. v. Deloitte & Touche*, 489 S.E.2d 470, 472 (S.C. 1997) (Section 552); *Callander v. Charleston Doughnut Corp.*, 406 S.E.2d 361, 362 (S.C. 1991) (Section 343A); *Sims v. Giles*, 541 S.E.2d 857, 863 (S.C. App. 2001) (Sections 330, 341A). Based on its consistent adoption of the RESTATEMENT, South Carolina would determine that economic loss caused by the medical necessity of medical monitoring for the early detection of disease is an invasion of a legally protected interest and an injury recoverable without proof of present physical injury. Separately, Plaintiffs' allegation of subcellular injury is sufficient to satisfy a physical harm requirement. | extent Plaintiffs are arguing that this requirement does not apply to products posing serious risk of physical harm, *Sapp* held that the serious risk exception only applies to residential houses. *Sapp*, 687 S.E.2d at 50.<br><br>Moreover, even if adopted, the *Restatement (Second) of Torts* § 7's definition of injury would not support the conclusion that South Carolina would permit a claim premised on purported "economic loss" caused by the potential future incurrence of medical monitoring costs. *Sapp* definitively rejects product liability claims premised only on economic loss. 687 S.E.2d at 49-50. This is echoed by the *Restatement (Third) of Torts: Liab. for Econ. Harm* § 1's recognition that there is "no general duty to avoid the unintentional infliction of economic loss on another." |
| Tennessee | No state appellate authority has abandoned the need for present physical injury to state a claim for medical monitoring.<br><br>*But see Bostick v. St. Jude Medical, Inc.*, 2004 WL 3313614, at *14 (W.D. Tenn. Aug. 17, 2004) ("[A] review of the applicable case law reveals that Tennessee does require a present injury") (citing *In re St. Jude Med., Inc., Silzone Heart Valves Prods. Liab. Litig.*, MDL No. 01-1396(JRT/FLN), 2004 U.S. Dist. | Philips claims "[n]o state appellate authority has abandoned the need for present physical injury to state a claim for medical monitoring," but fails to cite *Laxton v. Orkin Exterminating Co., Inc.*, 639 S.W.2d 431, 432-34 (Tenn. 1982), in which the court upheld the recovery of out-of-pocket medical expenses in the absence of physical injury where plaintiffs ingested household water contaminated by dangerous chemicals. In allowing recovery for emotional distress, *Laxton* also held that "[t]here is no question as to the reasonableness of the medical expenses. . . . Even though the tests proved negative, in our opinion a jury could find sufficient 'injury' to these plaintiffs based on their exposure. *Id.* at 434. The validity of *Laxton* was subsequently upheld by the court again in *Carroll v. Sisters of St. Francis* | In Tennessee, "cognizable damage" is necessary for claim, and where the claim arises from the risk of future injury, "there must be a reasonable degree of medical certainty that the plaintiff will develop a disease in the future as a result of the injury." *Potts*, 796 S.W.2d at 681. Consequently, a claim arising from a latent disease caused by toxin exposure does not exist "until that condition [is] diagnosed, or reasonably could [be] diagnosed." *Id.* at 684. Reviewing and applying Tennessee precedent, *Jones* held that Tennessee requires "present injury or loss to maintain an action" to recover the costs of "testing for the development of a possible future injury." 2000 WL 33727733, at *8. |

**Compendium of the Parties' Citation Tables Addressing Present Physical Injury Requirement for Medical Monitoring Claim**

| States | Respironics' Opening Brief | Plaintiffs' Opposition | Respironics' Reply |
|---|---|---|---|
|  | LEXIS 13965, at *12 n. 3 (D. Minn. July 15, 2004); *Jones v. Brush Wellman, Inc.*, No. 1:00 CV 0777, 2000 WL 33727733, at *8 (N.D. Ohio, Sept. 13, 2000); *Potts v. Celotex Corp.*, 796 S.W.2d 678, 681 (Tenn. 1990). | *Health Servs., Inc.*, 868 S.W.2d 585, 594 (Tenn. 1993) (explaining that, in *Laxton*, the Court was "able to discount the fact that the plaintiffs had not suffered a classic physical injury, and to substitute as the required objective component of the prima facie case the plaintiffs' direct exposure to the carcinogenic chemical," and citing additional cases). *See also Camper v. Minor*, 915 S.W.2d 437, 446 (Tenn. 1996) (eliminating manifest injury requirement for emotional distress). *Eskin v. Bartee*, 262 S.W.3d 727, 734 n.18 (Tenn. 2008) (citing *Laxton* and upholding a negligent infliction of emotional distress claim without proof of physical injury). In *Sutton v. St. Jude Med. S.C., Inc.*, 419 F.3d 568, 575 (6th Cir. 2005), the court concluded that the increase in the risk of injury clearly establishes an injury in fact, finding medical monitoring claims most likely proper under Tennessee law, *id.* at 576 n.7 (citing *Laxton* and *Newsom v. Markus*, 588 S.W.2d 883, 887 (Tenn. App. 1979), and holding that "a party is entitled to recover reasonable medical expenses for examinations, etc., in an effort to determine if personal injuries were sustained as a result of defendants [sic] negligence, even though it develops that the party suffered no personal injury").

Philips cites *Bostick v. St. Jude Med., Inc.*, 2004 WL 3313614, at *14 (W.D. Tenn. Aug. 17, 2004), which cites only one state court case for its conclusion on Tennessee law. That case, *Potts v. Celotex Corp.*, 796 S.W.2d 678, 680-81 (Tenn. 1990), analyzed the discovery rule for asbestos mesothelioma cases where defendant sought to have the court hold the claim was late, not medical monitoring. *Potts* recognized for injury, there needs be some legally cognizable damage and analyzed an increased risk of cancer claim; medical monitoring is not an increased risk claim. *Id.* at 681. Bostick did not cite *Laxton* or *Newsome*. | *Sutton* did not hold otherwise. Rather, the court held that an increased risk of future harm suffices for Article III standing. The court expressly declined to reach the issue of whether Tennessee would allow a claim for medical monitoring without manifested physical injury. *Sutton*, 419 F.3d at 575-76.

Neither *Sutton's* dicta discussion of Tennessee's "murky" law in footnote 7 nor the cases it cites provide sufficient grounds for this Court to make an *Erie* prediction that would expand liability to permit recovery without present physical injury. 419 F.3d at 576 n.7 (citing *Laxton*, 639 S.W.2d 431 and *Newsom*, 588 S.W.2d at 887). First, *Sutton* did not address *Potts*. Second, in *Newsom*, which involved a car accident in which the plaintiff was not only injured but "totally temporarily disabled at the time of the collision," the court merely held that verdicts were not impermissibly inconsistent. *Newsom*, 588 S.W.2d at 884-88. Third, *Laxton* held that a plaintiff who ingests toxins may recover damages for the mental anguish between discovery of the ingestion and a negative diagnosis. 639 S.W.2d 433-34. Neither *Newsom* nor *Laxton* held that a plaintiff could recover the costs of a lifetime of future medical monitoring based solely on the risk of exposure to a possible carcinogen without any present injury. *See Jones*, 2000 WL 33727733, at *6 (analyzing *Laxton* and other Tennessee precedent and concluding they do not permit medical monitoring costs without present injury); *see also Camper v. Minor*, 915 S.W.2d 437, 445-46 (Tenn. 1996) (recognizing that *Laxton* questionably departed from the strict interpretation of the physical manifestation rule, which the court then abandoned as an element for the recovery of damages for severe mental anguish, but otherwise retained).

Following *Sutton*, the Tennessee Supreme Court examined the requirements for recovering future medical expenses in *Rye v. Women's Care Ctr. of Memphis, MPLLC*, 477 S.W.3d 235, 266 |

**EXHIBIT A**

**Compendium of the Parties' Citation Tables Addressing Present Physical Injury Requirement for Medical Monitoring Claim**

| States | Respironics' Opening Brief | Plaintiffs' Opposition | Respironics' Reply |
|---|---|---|---|
| | | Additionally, Tennessee consistently adopts the rules of the RESTATEMENT 2ND. *See, e.g., Swallows v. W. Elec. Co.*, 543 S.W.2d 581, 582 (Tenn. 1976) (Section 46); *Bethlehem Steel Corp. v. Ernst & Whinney*, 822 S.W.2d 592, 595 (Tenn. 1991) (Section 552); *Martin v. Senators, Inc.*, 418 S.W.2d 660, 663-64 (Tenn. 1967) (Section 867); *West v. Media Gen. Convergence, Inc.*, 53 S.W.3d 640, 641 (Tenn. 2001) (Section 652). *Gibson v. Trant*, 58 S.W.3d 103, 111 (Tenn. 2001) cites the RESTATEMENT 2ND §7 as persuasive in analyzing harms to a legally protected interest. Based on its consistent adoption of the RESTATEMENT, its application of the definition of injury in RESTATEMENT 2ND §7, and the *Laxton* and *Newsome* decisions, Tennessee would determine that economic loss caused by medical necessity of medical monitoring for the early detection of disease is an invasion of a legally protected interest and an injury recoverable without proof of present physical injury. Separately, Plaintiffs' allegation of subcellular injury is sufficient to satisfy a physical harm requirement. | (Tenn. 2015).  There, the court reaffirmed the need to prove a physical injury to state a claim for future medical expenses.  *Id.* (assuming, but not deciding, that RH-sensitization was a cognizable physical injury before concluding that Rye failed to prove a need for future medical care to reasonable medical certainty).<br><br>Even if adopted, the *Restatement (Second) of Torts* § 7 provides no basis from which this Court could expand liability by predicting Tennessee would abandon the physical injury requirement.  The purported need for medical monitoring based on a risk of harmful exposure and future disease, without present physical injury, is "not a legally protected interest" in Tennessee, and Plaintiffs identify no authority supporting the contrary conclusion.<br><br>Further, Plaintiffs provide no basis from which to conclude conclusory assertions of subcellular or other physiological change constitute actionable harm under Tennessee law, particularly in light of *Potts's* holding that exposure claims are not cognizable until the disease is diagnosable. |
| Texas | No state appellate authority has abandoned the need for present physical injury to state a claim for medical monitoring.<br><br>*But see Norwood v. Raytheon Co.*, 414 F. Supp. 2d 659, 663-66 (W.D. Tex. 2006) (reviewing Texas's related precedent and holding that it would not permit claims for medical monitoring absent present physical injury). | Philips claims "[n]o state appellate authority has abandoned the need for present physical injury to state a claim for medical monitoring," but cites no state appellate authority requiring proof of present physical injury as a predicate to a medical monitoring remedy. *Norwood v. Raytheon Co.*, 414 F. Supp. 2d 659, 663-66 (W.D. Tex. 2006) correctly found that Texas courts have not directly and specifically addressed medical monitoring claims. *Norwood* incorrectly found that medical monitoring claims and the mental anguish claims are arguably similar in nature, *Id.* at 664, and relied on a mental anguish case, *Temple-Inland Forest Prods. Corp. v. Carter*, 993 S.W.2d 88, 92 (Tex. 1999). *Norwood* did not analyze injury under RESTATEMENT 2ND §7 or | In the absence of Texas precedent on the need to plead and prove present physical injury for claims seeking to recover medical monitoring costs, the analysis properly focuses on precedent in related areas.  *Travelers*, 594 F.3d at 244.  And where precedent yields "two competing yet sensible interpretations of state law," district courts are required to "opt for the interpretation that restricts liability, rather than expands it."  *A.I. Dupont*, 393 F. App'x 884, 893 n.7.  Applying this approach, *Norwood* turned to analogous precedent: Texas's requirement of a present physical injury in *Temple-Inland* to recover damages for mental anguish arising from the risk of future disease as a result of exposure. *Norwood* opted for the conservative prediction that Texas would |

**Compendium of the Parties' Citation Tables Addressing Present Physical Injury Requirement for Medical Monitoring Claim**

| States | Respironics' Opening Brief | Plaintiffs' Opposition | Respironics' Reply |
|---|---|---|---|
| | | consider whether the economic loss caused by the medical necessity of medical monitoring for the early detection of disease is an invasion of a legally protected interest and an injury recoverable without proof of present physical injury.<br><br>Texas adopts the rules of the RESTATEMENT 2ND. *See, e.g., Dunnings v. Castro*, 881 S.W.2d 559, 563 (Tex. App. 1994) (Section 518); *In re Bass*, 113 S.W.3d 735, 739 (Tex. 2003) (Section 757); *Redinger v. Living, Inc.*, 689 S.W.2d 415, 418 (Tex. 1985) (Section 414); *Ernst & Young, L.L.P. v. Pac. Mut. Life Ins. Co.*, 51 S.W.3d 573, 580 (Tex. 2001) (Section 531). Based on its consistent adoption of the RESTATEMENT 2ND, Texas would determine that the economic loss caused by the medical necessity of medical monitoring for the early detection of disease is an invasion of a legally protected interest following RESTATEMENT 2ND §7 and an injury recoverable without proof of present physical injury. Separately, Plaintiffs' allegation of subcellular injury is sufficient to satisfy a physical harm requirement. | also require present physical injury to sustain a claim for medical monitoring costs, particularly given that the claims are predicated on the risk of future disease from exposure and abandoning the physical injury requirement raises the same concerns regarding the validity of claims, unpredictable liability, and floods of trivial claims. 414 F. Supp. 2d at 662-68.<br><br>Plaintiffs do not dispute *Norwood*'s analysis of Texas law on the application of the physical injury requirement to claims arising from an alleged increased risk of future disease. Rather, they challenge *Norwood*'s reliance on *Temple-Inland* and rely instead on the belief that Texas would adopt *Restatement (Second) of Torts* § 7. Plaintiffs, however, provide no explanation for why reliance on *Temple-Inland* was erroneous, particularly given *Norwood*'s fulsome justification for doing so. Plaintiffs also identify no authority supporting their assertion that Texas would recognize the "economic loss" of future medical monitoring costs to be "a legally protected interest." To the contrary, the *Restatement (Third) of Torts: Liab. for Econ. Harm* § 1 recognizes there is no "duty to avoid the unintentional infliction of economic loss on another."<br><br>Plaintiffs also provide no basis from which to decide conclusory assertions of subcellular or other physiological change constitute actionable harm under Texas law. |
| Virginia | Claims for medical monitoring costs arising from the use of a product require present physical injury.<br><br>*See Ball v. Joy Tech., Inc.*, 958 F.2d 36, 39 (4th Cir. 1991) (dismissing plaintiffs claim for medical monitoring damages because Virginia law requires a present, physical injury), *cert. denied*, 502 U.S. | Philips argues that "[c]laims for medical monitoring costs arising from the use of a product require present physical injury," but cites no state appellate authority that supports that conclusion. *Ball v. Joy Techs., Inc.*, 958 F.2d 36, 39 (4th Cir. 1991) was decided well before medical monitoring jurisprudence full developed and none of the cases it cited considered medical monitoring as a claim or remedy. It also erroneously concluded that a claim for medical monitoring is a | Despite Plaintiffs' misrepresentations to the contrary, both *Ball*, 958 F.2d 36, and *In re Chinese Drywall*, 2010 WL 7378659, addressed the question presented here: does Virginia permit claims seeking medical monitoring costs as a form of relief in the absence of present physical injury. *Ball* determined that Virginia law required present physical injury. 958 F.2d at 39. And *In re Chinese Drywall* reaffirmed this ten years later, holding "plaintiffs not presently claiming personal injuries" could not seek medical |

**Compendium of the Parties' Citation Tables Addressing Present Physical Injury Requirement for Medical Monitoring Claim**

| States | Respironics' Opening Brief | Plaintiffs' Opposition | Respironics' Reply |
|---|---|---|---|
| | 1033 (1992); *In re All Pending Chinese Drywall Cases*, 80 Va. Cir. 69, 2010 WL 7378659, at *10 (Va. Cir. Ct. City of Norfolk Mar. 29, 2010) ("Circuit courts are not empowered to establish 'novel' or 'innovative' remedies that depart from Virginia common-law or legislative authority. Even though this Court might recognize the merits of a monitoring program, the creation of such a program is one for the legislature and not the courts."). | claim for future harm. *Id.* The trial court in *In re All Pending Chinese Drywall Cases*, 2010 WL 7378659,*10 (Va. Cir. Ct. City of Norfolk Mar. 29, 2010) observed that Virginia has not previously recognized a claim for medical monitoring. In determining that the creation of such a program is one for the legislature and not the courts, the court was not making a determination of Virginia law. Neither *Ball* nor *In re All* analyzed medical monitoring as a remedy, analyzed injury under RESTATEMENT 2ND §7, or considered whether the economic loss caused by the medical necessity of medical monitoring for the early detection of disease is an invasion of a legally protected interest and an injury recoverable without proof of present physical injury. *Id.*<br><br>Virginia has often accepted the RESTATEMENT 2ND as authoritative. *Shoemaker v. Funkhouser*, 856 S.E.2d 174, 178 n.2 (2021) (listing cases where the state adopted Sections 21, 158, 315, 319, 323, 586, 587, 766, and Section 318). Based on its consistent adoption of the RESTATEMENT, Virginia would apply the definition of injury in RESTATEMENT 2ND §7, and determine that economic loss caused by medical necessity of medical monitoring for the early detection of disease is an invasion of a legally protected interest and an injury recoverable without proof of present physical injury. Separately, Plaintiffs' allegation of subcellular injury is sufficient to satisfy a physical harm requirement. | monitoring costs as damages because, while certain other states have permitted such a claim, Virginia had not, and adopting such a novel claim required the court to impermissibly depart from Virginia common law.  80 Va. Cir. 69, 2010 WL 7378659 at *9-10.<br><br>Plaintiffs identify no authority to support their request to ignore this precedent and predict that Virginia would expand liability by abandoning the present physical injury requirement here. *Restatement (Second) of Torts* § 7, even if adopted by Virginia, merely defines "injury" as "the invasion of any legally protected interest of another," and the alleged need for medical monitoring absent a physical injury is not a "legally protected interest" in Virginia.  Indeed, permitting the recovery of "economic loss" here, as Plaintiffs suggest, would be contrary to *Restatement (Third) of Torts: Liab. for Econ. Harm* § 1.<br><br>Likewise, Plaintiffs provide no basis from which to decide conclusory assertions of subcellular change constitute physical injury under Virginia law, particularly given the holding in *Lo v. Burke*, 455 S.E.2d 9 (Va. 1995) that the cellular growth of a cyst is not an actionable injury until it turns malignant.  *Id.* at 13. |
| Washington | No state appellate authority has abandoned the need for present physical injury to state a claim for medical monitoring.  *But see Duncan v. Nw. Airlines, Inc.*, 203 F.R.D. 601, 605-07 (W.D. Wash. 2001) (predicting Washington courts would not recognize a | Philips claims "[n]o state appellate authority has abandoned the need for present physical injury to state a claim for medical monitoring," but cites no state appellate authority requiring proof of present physical injury as a predicate to a medical monitoring remedy. *Duncan v. Nw. Airlines, Inc.*, 203 F.R.D. 601, 605-07 (W.D. Wash. 2001) correctly states that no Washington appellate court has spoken directly on medical | Washington tort law requires "a present, existing injury" to establish liability.  *Duncan*, 203 F.R.D. at 606 (citing *Koker v. Armstrong Cork, Inc.*, 804 P.2d 659, 668-69 (Wash. Ct. App. 1991); *Sorenson v. Raymark Indus., Inc.*, 756 P.2d 740, 741-42 (Wash. Ct. App. 1988)).  "An enhanced risk of disease is not enough."  *Id.* (citing *Koker*, 804 P.2d at 669).  From this, *Duncan* held that the "elements of negligence are clear in Washington," |

<u>EXHIBIT A</u>

**Compendium of the Parties' Citation Tables Addressing Present Physical Injury Requirement for Medical Monitoring Claim**

| States | Respironics' Opening Brief | Plaintiffs' Opposition | Respironics' Reply |
|---|---|---|---|
|  | cause of action for medical monitoring because Washington law requires existing injury in order to pursue a negligence claim); *In re Berg Litig.*, 293 F.3d 1127, 1133 (9th Cir. 2002) (citing *Duncan* with approval); *see also Walston v. Boeing Co.*, 334 P.3d 519, 522 (Wash. 2014) (holding "asymptomatic cellular-level injury" is not a "compensable injury" but rather reflects merely "a *risk* of compensable injury" (emphasis in original)). | monitoring. *Duncan* finds that plaintiffs with a present injury may seek medical monitoring as a remedy to a negligence cause of action under existing Washington law, so there was no reason to create, as urged by plaintiff, a new, separate tort of medical monitoring. *Id.* at 606. Thus, *Duncan* only evaluated whether to create a new cause of action and did not consider medical monitoring as a remedy for toxic exposure. *Id.* It also erroneously equated a medical monitoring claim with an enhanced risk of disease claim. *Id.* at 607.<br><br>*In re Berg Litig.*, 293 F.3d 1127, 1133 (9th Cir. 2002) evaluated whether medical monitoring met the jurisdictional requirements of the Price Anderson Act. Neither *Duncan* nor *In re Berg* analyzed medical monitoring as a remedy, analyzed injury under RESTATEMENT 2ND §7, or considered whether the economic loss caused by the medical necessity of medical monitoring for the early detection of disease is an invasion of a legally protected interest and an injury recoverable without proof of present physical injury. Id.<br><br>*Walston v. Boeing Co.*, 334 P.3d 519, 522 (Wash. 2014) is not a medical monitoring case and evaluated only whether a risk of injury was sufficient to meet the deliberate intention standard for liability. Its "asymptomatic cellular-level injury" is not a "compensable injury" statement was made in the context of finding liability and does not limit Plaintiffs' claims here. Plaintiffs injury is economic loss of the medically necessary diagnostic testing caused by Philips which Walston did not analyze. *Id*.<br><br>Washington often adopts the rules of law in the RESTATEMENT. *See, e.g., Memel v. Reimer*, 538 P.2d 517, 520 (Wash. 1975) (Section 342); *Fleming v. Stoddard Wendle Motor, Co.*, 423 P.2d 926, 928 (Wash. 1967) (Section 388); | apply to claims seeking medical monitoring costs as a form of damages, and require existing injury. *Id.* at 609.  Plaintiffs' assertion that *Duncan*'s analysis has no bearing on whether Washington requires physical injury, ignores the decision's detailed holding.<br><br>Plaintiffs identify no authority to support their request to ignore *Duncan* and Washington precedent to predict that Washington would expand liability by abandoning the present physical injury requirement here.  *Restatement (Second) of Torts* § 7, even if adopted by Washington, merely defines "injury" as "the invasion of any legally protected interest of another."  Freedom from "economic loss"—here, the potential future incurrence of medical monitoring costs—allegedly caused by unintentional conduct is not a "legally protected interest" in Washington.  Indeed, permitting the recovery of "economic loss" here, as Plaintiffs suggest, would be contrary to *Restatement (Third) of Torts: Liab. for Econ. Harm* § 1. |

**Compendium of the Parties' Citation Tables Addressing Present Physical Injury Requirement for Medical Monitoring Claim**

| States | Respironics' Opening Brief | Plaintiffs' Opposition | Respironics' Reply |
|---|---|---|---|
|  |  | *Dunlap v. Wayne*, 716 P.2d 842, 848 (Wash. 1986) (Section 566); *McKown v. Simon Prop. Grp., Inc.*, 344 P.3d 661, 668 (Wash. 2015) (Section 344). Washington courts analyze injury following RESTATEMENT 2ND §7. *Gazija v. Nicholas Jerns Co.*, 543 P.2d 338, 341 (Wash. 1975); *Prudential Prop. & Cas. Ins. Co. v. Lawrence*, 724 P.2d 418, 421 (Wash. App. 1986). Based on its consistent adoption of the RESTATEMENT and given that it specifically follows the definition of injury in RESTATEMENT 2ND §7, Washington would determine that economic loss caused by medical necessity of medical monitoring for the early detection of disease is an invasion of a legally protected interest and an injury recoverable without proof of present physical injury. |  |