**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| IN RE: PHILIPS RECALLED CPAP, BI-LEVEL PAP, AND MECHANICAL VENTILATOR PRODUCTS LITIGATION<br><br>This Document Relates to:<br><br>*All Actions* | :<br>:<br>:<br>:<br>:<br>:<br>:<br>:<br>: | Master Docket: No. 21-mc-1230-JFC<br><br>MDL No. 3014 |

**KPNV'S BRIEF IN OPPOSITION TO PLAINTIFFS' EXPEDITED/EMERGENCY MOTION TO EXCLUDE KPNV'S ONLY WITNESS—A REBUTTAL FACT WITNESS—FROM TESTIFYING AT THE MAY 25th EVIDENTIARY HEARING**

**PRELIMINARY STATEMENT**

Plaintiffs seek emergency relief from this Court in a transparent effort to present at the evidentiary hearing the incorrect and distorted opinions of Plaintiffs' expert witness, Matthew Dundon, wholly unrebutted. The Court should both deny the motion and proceed with the evidentiary hearing as planned.

As Plaintiffs are well aware, the witness Plaintiffs seek to exclude (Deborah Roux, the Director of Financial Reporting and Planning of Philips North America LLC ("PNA")) will be KPNV's only witness at the hearing and is being presented *solely* to rebut the flawed assertions of Mr. Dundon. Plaintiffs, in essence, have controlled the scope of Mr. Roux's testimony by their upcoming choice of what opinions Mr. Dundon would be giving at the upcoming hearing. Realizing their expert's opinions will not withstand scrutiny, and seeking to avoid drawing further attention to the deficiencies in his eight-page declaration, Plaintiffs pretend there are extensive pre-hearing disclosure requirements for *rebuttal fact witnesses*, such as Ms. Roux, that just do not exist. In feigned outrage, Plaintiffs try to paint KPNV as engaging in borderline bad faith negotiations, but tellingly do not attach to their papers *any* of the relevant correspondence. Nor do they submit a sworn declaration describing the events they purport to describe.

As described more fully in the Monahan Declaration—which provides both the timeline and content of the discussions between KPNV and Plaintiffs—the crux of the problem about which Plaintiffs now seek "emergency" relief is entirely of their own making. Plaintiffs have exacerbated the problem by their refusal to comply with Rule 26's threshold disclosure requirements for expert witnesses, claiming an exception that simply does not exist. *See Kline* v. *Zimmer Holdings, Inc.*, 2015 WL 4077495, at *3 (W.D. Pa. July 6, 2015) (Conti, J.) (when a witness is "retained or specially employed to provide expert testimony in the case . . . an expert report is required."); *Trinity Indus., Inc.* v. *Greenlease Holding Co.*, 173 F. Supp. 3d 108, 221

(W.D. Pa. 2016) (Conti, J.) (internal quotations omitted) (citing Fed. R. Civ. P. 26(a)(2)(B)) ("[I]f the witness is one retained or specially employed to provide expert testimony[,]" the disclosure under Rule 26(a)(2)(B) must, "[u]nless otherwise stipulated or ordered by the court . . . be accompanied by a written report[.]") (vacated in part on other grounds).  In fact, Plaintiffs still have not submitted an expert report for Mr. Dundon.  Plaintiffs then compounded the prejudice to KPNV when they refused to confirm either the full complement of opinions Mr. Dundon would be presenting at the hearing or the full universe of documents he considered (which ballooned once KPNV noted that it intended to cross-examine Mr. Dundon) until the morning of Friday, May 12.  (Monahan Dec. ¶ 25.)   When Plaintiffs finally answered those questions that day—critical questions Plaintiffs needed to answer so that KPNV could know exactly what it needed a witness *to rebut*—KPNV disclosed Ms. Roux to Plaintiffs hours later.  (*Id.*)  KPNV even made that disclosure within the deadline Plaintiffs unilaterally imposed.[1]  And yet, despite meeting Plaintiffs' arbitrary deadline for disclosure, Plaintiffs still have made this Motion, demonstrating that the true goal here is to present Mr. Dundon's flawed assertions totally unrebutted at the evidentiary hearing.

## STATEMENT OF FACTS

KPNV refers the Court to the Monahan Declaration for a complete summary of the relevant facts.  Briefly here, on March 16, 2023, Plaintiffs filed, a Declaration of Matthew Dundon in ostensible support of their opposition to KPNV's Rule 12(b)(2) motion to dismiss.  (ECF No. 1695.)  Relying on (and, in fact, misinterpreting) just 16 documents, Mr. Dundon made sweeping legal conclusions that KPNV, PHUSA, PNA, Philips RS, and Philips RS Holding Corp. operate

---

[1]      *See* Exhibits 11 & 14.

as a single entity.[2] In its reply brief, KPNV objected to the Dundon declaration on several grounds, including that it was unclear whether Mr. Dundon was providing fact or expert testimony (no expert report was provided) and, in any event, was inappropriately providing legal conclusions based on mischaracterizations of the 16 documents he reviewed. (*See* KPNV's Rule 12(b)(2) Reply, ECF No. 1850 at 44-47.) Still to this day, Mr. Dundon has not submitted a Rule 26 expert report, as required by the Federal Rules.[3]

As previewed to the Court on April 20,[4] the parties began to meet and confer on Tuesday, May 2, the day after KPNV filed its reply brief. On that initial call, Plaintiffs asked KPNV's counsel whether KPNV would agree to allow Mr. Dundon to present his testimony at the hearing *solely* through admission of his declaration. In response to follow-up questions, Plaintiffs' counsel refused to clarify whether Mr. Dundon was being offered as an expert or fact witness, but stated only that he was offering "sworn testimony." (Monahan Dec. ¶ 9.) While KPNV was considering Plaintiffs' proposal that Mr. Dundon not appear at the hearing, Plaintiffs then informed Defendants (on Friday, May 5) that they had flip-flopped and now sought to bring Mr. Dundon to the hearing to testify live. (*Id.* ¶ 12.) And it was not until Tuesday, May 9 that Plaintiffs

---

2 Despite ostensibly being called to testify in support of the question of personal jurisdiction over KPNV, Mr. Dundon actually offers *no opinions whatsoever* on facts relevant to the *Enterprise* factors. Instead, his (flawed) opinions concern the so-called "single-entity factors." But those factors are relevant to liability, *not* personal jurisdiction. As a result, KPNV maintains its right to seek to exclude the entirety of Mr. Dundon's opinions as irrelevant to the Rule 12(b)(2) / personal jurisdiction issues subject of the evidentiary hearing.

3 *See Karpenko* v. *Leendertz*, 2010 WL 831269, at *3 (E.D. Pa. Mar. 4, 2010), *aff'd*, 619 F.3d 259 (3d Cir. 2010) ("The Court did not permit Dr. Nastasee to testify at the evidentiary hearing as an expert because Respondent's counsel had not submitted an expert report as required by Rule 26(a)(2)(A),(B) of the Federal Rules of Civil Procedure.")

4 Apr. 20, 2023 Case Mgmt. Conf. Tr. (20-23) (Plaintiffs' counsel: "the parties will propose that, after we see the vast briefs, we'll confer with each other and propose some procedures for how we would conduct the hearing . . . .")

acknowledged for the first time that Mr. Dundon would be providing testimony as an expert witness. (*Id.* ¶ 15; Exhibit 4.) Still, however, Plaintiffs refused to provide an expert report setting forth either the full universe of Mr. Dundon's opinions or the documents he had considered. As KPNV communicated any number of times to Plaintiffs, KPNV could not identify a *rebuttal* witness or witnesses until it understood the scope of evidence that Plaintiffs intended to introduce at the hearing, as well as the full universe of Mr. Dundon's proffered testimony as an expert witness. (Monahan Dec. ¶ 17.) In effect, Plaintiffs controlled KPNV's ability to identify and disclose an appropriate rebuttal witness or witnesses.

But Plaintiffs continued to refuse to define the precise contours of Mr. Dundon's testimony and identify the universe of documents he had considered until *the morning of Friday, May 12.* (*Id.* ¶ 24.) Until that point, Plaintiffs had offered only shifting and inconsistent representations, merely vaguely repeating that the "scope" of his opinions was consistent with those set forth in his declaration, and refusing to identify the full universe of documents he had considered other than that it was much broader than those identified in his declaration. (*Id.* ¶ 21.) All the while Plaintiffs were delaying providing this information, KPNV was diligently looking for an appropriate rebuttal witness, on the assumption that Plaintiffs would ultimately stand behind the declaration and not exceed it (other than by referring to some additional documents he had considered). One hour after Plaintiffs stated that Mr. Dundon would be limited by his declaration and committed to a new "comprehensive" list of materials that Mr. Dundon will have reviewed for purposes of his live testimony, KPNV disclosed the name and title of its rebuttal witness. KPNV also explained that the scope of her testimony would be limited to rebutting the factual foundations of Mr. Dundon's flawed and improper legal conclusions. Notably, KPNV made that disclosure just two minutes after Plaintiffs' self-imposed deadline of May 12 at noon. (*Id.* ¶ 25.)

On Monday, May 15, KPNV provided even more information (in response to Plaintiffs' questions) concerning the proposed testimony of Ms. Roux. (*Id.* ¶ 27.) KPNV explained, again, that Ms. Roux was going to serve solely as a rebuttal fact witness to Mr. Dundon. (*Id.*.) As such, Ms. Roux would introduce herself and testify as to her work experience to lay foundation, before going essentially paragraph by paragraph through the Dundon declaration, discussing whether she disagreed with Mr. Dundon's statements based on her experience and explaining why she disagreed if that was the case. (*Id.*) KPNV went even further, disclosing that Ms. Roux would be relying on the same exhibits that Mr. Dundon claims (now) to have relied upon, including the financial statements of PHUSA, PNA, Philips RS, and Philips RS Holdings, as well as the various intercompany agreements Defendants have produced. (*Id.*.) Even more, KPNV offered to make Ms. Roux available for a deposition in advance of the hearing, an offer Plaintiffs expressly declined (for the first time) in the motion papers they filed with the Court. (*Id.*.)[5]

[5] Plaintiffs also misleadingly suggest in their papers that KPNV made an eleventh-hour production of financial spreadsheets that included "updated data that were not part of the previously-produced versions of the spreadsheets." (Mot. at 4.) This tempest in a teapot does not support Plaintiffs' request to exclude Ms. Roux or their transparent attempt to delay the hearing. As KPNV told Plaintiffs both in its production letter accompanying these spreadsheets and orally during the May 15 meet and confer, the spreadsheets to which Plaintiffs refer are condensed spreadsheets reflecting "the same data previously produced to you" back in January, but that KPNV was re-producing these spreadsheets "in a more simplified format," with the only changes being that "most of the sub-rows were rolled up into the heading rows, so that only the high-level rows remain visible." (Monahan Dec. ¶ 26.) Based on his declaration, Mr. Dundon apparently did not appreciate that the expanded versions of these spreadsheets previously produced in January were balance sheets and income statements. KPNV re-produced them with most of the rows condensed so that Mr. Dundon hopefully would not make that same mistake at the hearing. Nevertheless, KPNV told Plaintiffs during the May 15 meet and confer (which Plaintiffs fail to mention in their papers) that, given their fixation on the timing of the production of these condensed spreadsheets, KPNV would not use them at the evidentiary hearing and will rely only on the previously-produced extended versions. It's all the same information in any event, just presented in a different way.

This issue could have been, and should have been, resolved without Plaintiffs filing motion practice with the Court. The issue is really quite simple: Ms. Roux is a *rebuttal* fact witness. Before KPNV could identify her (or someone else) as the rebuttal witness, *it needed to know what it needed to rebut*. Plaintiffs strategically delayed in providing that information, but once they did, KPNV disclosed her to Plaintiffs literally hours later, and just two minutes after Plaintiffs' self-imposed deadline. As a rebuttal fact witness, she is not subject to the expert report requirements (as Mr. Dundon is) of the Federal Rules, and she did not need to be identified in KPNV's initial disclosures precisely because, again, her relevancy here is entirely in rebuttal to Mr. Dundon. KPNV has already identified the documents it may use in connection with her rebuttal testimony. And, again, KPNV offered Plaintiffs a deposition, but Plaintiffs chose to decline that invitation and instead to needlessly file this "emergency" motion.[6]

**ARGUMENT**

There is no law supporting Plaintiffs' extreme and manufactured position. Courts in this Circuit regularly "allow[] parties to call witnesses in rebuttal even when they were not disclosed in a pretrial memorandum or order, as long as the witness and his testimony are within the scope of proper rebuttal." *Doe ex rel. Doe* v. *Lower Merion Sch. Dist.*, 665 F.3d 524, 558 (3d Cir. 2011); *see, e.g.*, *Allegheny Enters., Inc.* v. *Endeavour Operating Corp.*, 2014 WL 5795789, at *4 (M.D. Pa. Nov. 6, 2014) (denying request to preclude rebuttal witness); *Allscripts Healthcare,*

---

6 In another attempt to facilitate the evidentiary hearing and avoid the parties and the Court getting bogged down in evidentiary objections, KPNV ultimately withdrew valid objections (other than as to relevancy) to most of the exhibits Plaintiffs seek to offer at the hearing. (And these withdrawn objections do not include the numerous valid objections KPNV abstained from making in the first instance out of a desire to avoid conflict and delay.) In total, KPNV is objecting to just *6 of the 256 exhibits* Plaintiffs have identified on their exhibit list. As to relevancy, both sides have reserved all relevancy objections, but these relevancy issues will be argued in post-hearing submissions to the Court, not at or prior to the evidentiary hearing, in order to facilitate an orderly and efficient process.

*LLC* v. *Andor Health, LLC*, 2022 WL 17370546, at *2 (D. Del. Aug. 9, 2022) (denying attempt to exclude rebuttal witness on grounds of failure to identify as witness in disclosures or supplemental discovery responses); *Murphy v. Magnolia Elec. Power Ass'n*, 639 F.2d 232, 235 (5th Cir. 1981) (finding that it was reversible error to refuse to allow a rebuttal witness to testify).

Unsurprisingly, the cases Plaintiffs cite have no applicability at all to *rebuttal fact witnesses*. Specifically, Plaintiffs cite *one* case out of New Hampshire in support of their contention that "the Court would have to postpone the hearing" because KPNV must "search[] for" and "provide[] documents related to her" in order for them to "prepare for her testimony." (Mot. at 7 (citing *Contour Design* v. *Chance Mold Steel*, 2011 WL 4527404, at *8 (D.N.H. Sept. 28, 2011)). But *Contour* involved the failure to disclosure two witnesses—one affirmative (not rebuttal) fact witness and one expert—until four months *after* trial, violating the court's scheduling order and Rule 26(a)(3) and triggering Rule 37's mandatory preclusion of such testimony. 2011 WL 4527404, at *8. Similarly, *Swankler*, cited by Plaintiffs at Mot. at 6, did *not* involve a rebuttal witness and, in any event, the court there did not entirely exclude that witness's testimony as Plaintiffs seek to do here. *Swankler* v. *Republic Food Enter. Ctr., Inc.*, 2020 WL 7263547, at *2-3, *5 (W.D. Pa. Dec. 10, 2020).

Worse, there is no authority to provide the remedy that Plaintiffs now seek for their invented violation. "Exclusion of evidence is an extreme sanction." *Peake* v. *Patterson*, 2007 WL 517892, at *1 (M.D. Pa. Feb. 12, 2007) (rejecting party's attempt to exclude witness testimony for failing to "identify them in discovery") (citing *Quinn* v. *Consol. Freightways Corp. of Del.*, 283 F.3d 572, 577 (3d Cir. 2002)). To support this "extreme sanction," Plaintiffs present just one (deficient) argument: that Rule 26 somehow required KPNV to (i) disclose the identity of its *rebuttal* fact witness *before* Plaintiffs identified the testimony or documents the rebuttal witness

would be rebutting; (ii) provide a written declaration of the testimony of KPNV's *rebuttal fact witness*; and (iii) review and produce her emails and documents beforehand, irrespective of any relevance to the scope of these proceedings. (Mot. at 5-6.) Nothing in the Federal Rules of Civil Procedure or any other authority imposes these requirements. Nor do Plaintiffs cite any such authority.[7] And, despite having no disclosure obligation related to as rebuttal fact witness, KPNV has offered Plaintiffs the ability to take a deposition of Ms. Roux, which they declined in favor of this "emergency" motion.[8]

As KPNV repeatedly communicated to Plaintiffs, Ms. Roux is being offered solely as a *rebuttal* fact witness.[9] She will respond to the Dundon declaration paragraph by paragraph based on her personal experience working at PNA addressing the factual foundations underlying his opinions. Rather than defend the merits of the Dundon declaration, Plaintiffs filed this emergency motion asking the Court to shield Mr. Dundon and his declaration from scrutiny in a hearing in which they bear the burden. Plaintiffs' baseless motion should be denied, and the evidentiary hearing should proceed as scheduled.

---

7 Of course, because Ms. Roux (unlike Mr. Dundon) is testifying from her personal knowledge, rather than on the basis of her expertise, "expert reports are not necessary." *Paper Mill Holding Co.* v. *D.R. Horton*, 2009 WL 189936, at *3 (E.D. Pa. Jan. 26, 2009).

8 Remarkably, Plaintiffs also made clear that they refuse to produce Mr. Dundon for his deposition *before* any deposition of Ms. Roux, a point that makes zero sense because (again) it is Ms. Roux that is rebutting Mr. Dundon, not *vice versa*. (Monahan Dec. ¶ 28.)

9 There is also no plausible basis for requiring Defendants to add Ms. Roux as a document custodian and conduct a search of her emails, which will only result in pointless delay. Ms. Roux is the Director of Financial Reporting and Planning at PNA, where, among other things, she oversees the preparation of PHUSA's consolidated financial reporting. That responsibility includes gathering and consolidating, at the PHUSA level, the financials of PHUSA's subsidiaries, including Philips RS, Philips RS Holding, and PNA. She had literally nothing to do with the manufacture, design or sale of the recalled devices. Her only relevancy here is because she can demonstrate that Mr. Dundon misread and misinterpreted the financial accounting and other documents on which he purported to rely in his declaration. No email review is necessary or appropriate in these circumstances, especially when the transparent purpose of Plaintiffs' request is to cause delay.

Dated: May 18, 2023

Respectfully submitted

*/s/ Michael H. Steinberg*

Michael H. Steinberg
steinbergm@sullcrom.com
**SULLIVAN & CROMWELL LLP**
1888 Century Park East
Los Angeles, CA 90067
Tel: (310) 712-6670

Tracy Richelle High
hight@sullcrom.com
William B. Monahan
monahanw@sullcrom.com
Elizabeth N. Olsen
olsene@sullcrom.com
Bethany S. Labrinos
labrinosb@sullcrom.com
**SULLIVAN & CROMWELL LLP**
125 Broad Street
New York, NY 10004
Tel: (212) 558-4000

*Counsel for Defendant Koninklijke Philips N.V.*