IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| IN RE: PHILIPS RECALLED CPAP, BI-LEVEL PAP, AND MECHANICAL VENTILATOR PRODUCTS LITIGATION | Master Docket: No. 21-mc-1230-JFC <br><br> MDL No. 3014 |
| This Document Relates to: *All Actions* | |

**MEMORANDUM IN SUPPORT OF KONINKLIJKE PHILIPS N.V.'S MOTION TO CONVERT THE AUGUST EVIDENTIARY HEARING INTO ORAL ARGUMENT AND TO RESCHEDULE THE EVIDENTIARY HEARING TO SEPTEMBER**

The parties are currently scheduled to conduct an evidentiary hearing before the Court on August 8 so that the Court can decide one issue: whether Koninklijke Philips N.V. ("KPNV") "controls the day-to-day operations of" Philips RS North America LLC ("Philips RS") such that the exercise of specific personal jurisdiction over KPNV would be appropriate. *In re Enterprise*, 735 F. Supp. 2d 277, 318 (W.D. Pa. 2010) (Conti, J.). As the Court emphasized during the December 14, 2022 status conference and in its decision in *Enterprise*, the ten *Enterprise* factors "offer[] a discretely individuated and functional framework for this analysis." *Id.* at 318-19; December 14, 2022 CMC Tr. at 14-21.

At last week's status conference, the Court reminded the parties that they should not burden the Court with unnecessary volumes of documentary evidence "unless there's some compelling reason." July 20, 2023 CMC Tr. at 6. Consistent with the Court's guidance, KPNV believes that it would be helpful, not only for both parties but also for the Court, to first discuss with the Court the scope of evidence relevant to the evidentiary hearing before the parties submit a final joint exhibit list. KPNV shares the same interest as the Court in ensuring that a full record of relevant evidence related to an alter ego theory of personal jurisdiction is developed for the

Court's benefit. In fact, KPNV has foregone the vast majority of its valid evidentiary objections so that Plaintiffs could introduce exhibits without having to undertake typical evidentiary burdens, such as the authentication of evidence produced by third parties. KPNV's goal in requesting the Court's guidance is to avoid wasting any of the Court's time on issues that *do not relate* to the sole issue to be tried at the evidentiary hearing: whether the exercise of personal jurisdiction over KPNV is reasonable. Right now, it is just inconceivable that the parties and the Court could address the literally hundreds of relevancy objections to multi-page documents, and still then address whatever evidence Plaintiffs intend to put forward through live testimony—which itself remains a mystery because, as of yesterday, Plaintiffs still were refusing to tell KPNV who those witnesses will be.

Thus, rather than waiting until after the hearing to argue relevancy objections—on a record that, thus far, consists of **more than 420 exhibits and tens of thousands of pages of documents, the vast majority of which are subject to relevancy objections**—KPNV requests that the Court convert the August 8 evidentiary hearing into oral argument on whether the points Plaintiffs wish to make at the evidentiary hearing, even if true, are *relevant* to the question of personal jurisdiction over KPNV and/or a waste of time under Rule 403.[1] KPNV believes that with that threshold guidance from the Court, the parties can *significantly* narrow the universe of exhibits and pages of documents, saving everyone's time and resources, including the Court's. KPNV does not believe Plaintiffs' approach of bombarding the Court with tons of documents, all subject to a later fight about relevancy, is fair to the Court or a good use of anyone's time. And if

---

[1] In light of upcoming deadlines associated with the evidentiary hearing—including a deadline of this Wednesday, July 26, for the joint and contested exhibit indexes, as well as an agenda for the evidentiary hearing—the parties jointly agreed in meet-and-confer discussions this weekend and today that KPNV would file this motion and that Plaintiffs would file their response within 24 hours.

these topics are irrelevant to personal jurisdiction (as KPNV believes), there will also be no need for KPNV to rebut that irrelevant evidence through *even more* irrelevant documents and testimony from witnesses on irrelevant topics. While it may once have made sense to defer relevancy until later, it is now clear that the evidentiary record Plaintiffs want to present to the Court—which has significantly shifted as Plaintiffs' prior theories of jurisdiction have been rebutted—is littered with too many documents irrelevant to personal jurisdiction, and it now makes sense for everyone to deal with this issue at the front end.

To be clear, KPNV has every interest not to delay the evidentiary hearing and the Court's subsequent ruling on personal jurisdiction. But the evidentiary hearing should be focused on relevant evidence, not Plaintiffs' ever-evolving theories (each of which, as briefly discussed below, is further afield of personal jurisdiction), and Plaintiffs, KPNV, and the Court should spend their time at the hearing focused on relevant evidence, not irrelevant tangents. Accordingly, KPNV proposes that the Court convert the August evidentiary hearing to argument on the topics Plaintiffs seek to advance at the hearing, and that the evidentiary hearing be rescheduled to a date that works for the Court in September.

## BACKGROUND

Nearly eight months ago, the Court granted Plaintiffs jurisdictional discovery. December 14, 2021 CMC Tr. at 21. In doing so, the Court instructed the parties to "get it together and get this done." *Id.* Plaintiffs requested a slew of information from KPNV, including through requests for documents, interrogatory responses and a Rule 30(b)(6) deposition. Plaintiffs did not seek to depose any fact witnesses as part of jurisdictional discovery. Even with an expedited timeline, KPNV provided Plaintiffs with everything they asked for in jurisdictional discovery. As Plaintiffs' counsel explained to the Court near the end of jurisdictional discovery, with the

exception of a handful of documents (all of which were then promptly produced before the close of jurisdictional discovery) and the then-pending Rule 30(b)(6) deposition (which took place at the beginning of February 2023), Plaintiffs had already "gotten the [jurisdictional] discovery that [they] sought." January 25, 2023 CMC Tr. at 8. All jurisdictional discovery was complete in February, after KPNV's designee was deposed.

Unfortunately, Plaintiffs' "jurisdictional" theories and evidence have evolved considerably since then. Today, Plaintiffs' theories and evidence bear little resemblance (or relevance) to the purpose for which Plaintiffs were granted the jurisdictional discovery they claimed was so necessary to adjudicate the question of personal jurisdiction over KPNV. Starting with their Opposition papers, Plaintiffs offered the Declaration of Matthew Dundon (the "Dundon Declaration"), a confusing report that opined not on corporate relationships or on any abuse of the corporate form, but instead on financial record-keeping. *See* ECF No. 1695, Declaration of Matthew Dundon. But when KPNV made clear it intended to question Mr. Dundon's expertise and his demonstrably incorrect conclusions and call a rebuttal witness (Deborah Roux) to refute Mr. Dundon's incorrect statements, Plaintiffs changed direction, offering an unusual "joint" "Rule 26 Statement of Matthew Dundon *and Michael Garbe*" (the "Joint Report") that changed considerably, and now focused on various accounting pronouncements. (Unlike Mr. Garbe, who is a CPA, Mr. Dundon has no such credential and no such expertise.)

But the likelihood that Messrs. Dundon and Garbe will now appear is questionable since **Plaintiffs' own experts testified at their depositions that they have not "seen any evidence that the corporate form has been disregarded."** Michael Garbe Dep. Tr. at 117 (emphasis added). Not only did Messrs. Dundon and Garbe not see any evidence that the corporate form had been disregarded, they did not opine on any matter relevant to the evidentiary hearing. As Mr. Garbe

explained during his deposition, the Joint Report "offer[s] . . . no opinion" on any of the topics that are the subject of the *Enterprise* factors. *See* Michael Garbe Dep. Tr. at 116. This past Sunday, during a meet and confer, four days before the Court's deadline to submit a joint exhibit list, Plaintiffs were no longer willing to even say whether Messrs. Dundon and Garbe would be testifying at the upcoming evidentiary hearing. It is no wonder: Plaintiffs' experts' admission that there is no evidence of abuse of corporate form came after a two-month long excursion by KPNV to track down the evidence necessary to disprove Plaintiffs' experts' theory—an excursion requested by Plaintiffs—and to ensure Plaintiffs were afforded a "fair record on th[e] issue." May 25, 2023 CMC Tr. at 22.

With their expert evidence now discredited, Plaintiffs are hunting for a new angle, as reflected by the exhibits they newly added to the exhibit list four days ago. The result: literally hundreds of exhibits are being marked for what should have been a limited evidentiary submission following completed briefing. And while KPNV had *initially* agreed to defer relevancy objections until after the evidentiary hearing, just moments after this Court's last status conference concluded, Plaintiffs offered *68* new exhibits, the vast majority of which have nothing to do with the opinions of Messrs. Dundun and Garbe or the question of personal jurisdiction. Instead, it has become clear Plaintiffs are abusing a procedure intended to *increase* the efficiency of conducting an evidentiary hearing by now offering evidence that has no connection at all to the arguments from their Opposition. (Nor did Plaintiffs remove documents from the exhibit list related to Dundon's now-discredited theories.) Plaintiffs seek to offer approximately 110 exhibits nowhere found in their Opposition or even their Complaints, over half of which were not proposed until days ago. Even if the Court spends just three minutes on each of the approximately 110 exhibits (just a fraction of the proposed exhibits), the entire court day will be consumed addressing just these irrelevant

exhibits, and that's assuming the Court spent zero time in advance preparing (which, as the parties know, is not the practice of this Court). Of course, to respond to Plaintiffs' irrelevant documents, Defendants will be forced to designate other documents equally irrelevant to jurisdiction so that they can defend against Plaintiffs' flawed theories, and this will just further burden the Court unless the Court rules now as to the relevancy of the topics Plaintiffs now apparently wish to pursue—of course, topics they pivoted to only *after* the conclusion of jurisdictional discovery, *after* the conclusion of briefing, and *after* Dundon's and Garbe's theories were rebutted.

Plaintiffs' opposition is now purely a "Whac-A-Mole" exercise. Plaintiffs' never ending switches and shifts have completely undermined the Court's direction regarding the personal jurisdiction motion and jurisdictional discovery at the December 14, 2022 status conference to "get it together and get this done." December 14, 2022 CMC Tr. at 21. This Court will now have to address Plaintiffs' desire to introduce a significant number of exhibits that they did not request during jurisdictional discovery, did not include in their Rule 12(b)(2) brief and that have nothing to do with personal jurisdiction over KPNV. The result would be over 20 large binders, even if printed double sided—and even **before** adding the more than 100 exhibits proposed by the parties on July 20, which are likely to comprise many more large binders. This is not fair to the Parties or, more importantly, to the Court.

## DISCUSSION

KPNV heard the Court loud and clear at the July 20 status conference and does not wish to overburden the court with unnecessary exhibits. Consistent with that goal, KPNV believes that it is important to resolve certain threshold issues of relevancy under Federal Rule of Evidence ("FRE") 401 and wastefulness under FRE 403 prior to the parties' submission of a joint exhibit list. Consequently, KPNV requests that the Court convert the August 8 evidentiary hearing into oral argument concerning the proper scope of evidence that may be submitted at the evidentiary

hearing, including ruling on the relevancy of certain proposed exhibits through identifying topical "classes" (some of which are identified below) of materials for consideration by the Court. In doing so, the Court could save substantial time and resources in several ways. *First*, the Court could obviate the need for KPNV to continue searching for and proposing exhibits and additional witnesses to respond to errant theories arising out of Plaintiffs' ever-growing list of documents plucked from merits discovery. *Second*, the Court could substantially reduce the time necessary to hold the evidentiary hearing by meaningfully limiting the scope of relevant evidence and testimony. *Finally*, the Court could prevent the need to review, document-by-document, what is currently a pool of over **420 exhibits** to assess the relevancy of Plaintiffs' proposed exhibits and KPNV's necessary responses to those exhibits.

> A.  **The Parties' Proposed Exhibit Lists**

When Plaintiffs filed their Rule 12(b)(2) Opposition on March 16, the Declaration of Sandra L. Duggan (the "Duggan Declaration") contained *136* exhibits that were cited and discussed in the brief. *See* ECF No. 1689. Since submitting their Opposition in March, Plaintiffs have ultimately proposed submitting *over 320 exhibits* in connection with the evidentiary hearing, 68 of which were not even proposed until the parties' exchange last week, less than two weeks before the August 8 scheduled hearing. This increase in proposed exhibits has been surprising to KPNV as jurisdictional discovery closed in February—nearly six months ago. Notably, the vast majority of the proposed exhibits (previously not cited in the Duggan Declaration accompanying their 12(b)(2) Opposition) were neither produced as part of jurisdictional discovery nor related whatsoever to the testimony of Mr. Dundon or Deborah Roux, as rebuttal to Mr. Dundon, which was the sole reason the parties did not go forward with the May 25 evidentiary hearing. But now, with Messrs. Dundon and Garbe's admissions, Plaintiffs are even further straying from the

arguments made in their Rule 12(b)(2) Opposition, with Plaintiffs now piling on numerous irrelevant documents, such as documents that postdate the recall (KPNV has already conceded jurisdiction in Pennsylvania on the so-called negligent recall claim) and communications among only *non-KPNV* employees concerning topics that do not relate to KPNV's limited interactions with Philips RS. (And, of course, forcing KPNV to scramble to find obvious exhibits showing the failings of Plaintiffs' presentation.)

KPNV, on the other hand, has largely stuck to the exhibits it argued in its Rule 12(b)(2) reply, proposing to introduce approximately 130 exhibits throughout the course of evidentiary hearing planning. The only exhibits KPNV has added above and beyond those discussed in its Rule 12(b)(2) reply are a handful of KPNV annual reports and documents proposed for the sole purpose of rebutting Dundon/Garbe. KPNV is more than willing to (and in fact would prefer to) remove these additional exhibits from its proposed exhibit list in light of the fact that Plaintiffs' experts discredited the relevance of their own report. If the Court provided guidance on threshold issues of relevancy, the parties could avoid wasting the Court's time with the introduction of documents that confirm the irrelevancy of the report.[2]

Ultimately, Plaintiffs' positions just continue to evolve. Despite representing to the Court that they "got[] the [jurisdictional] discovery that [they] sought," January 25, 2023 CMC Tr. at 8, Plaintiffs would like to waste the Court's time by introducing a slew of evidence *not* obtained as part of jurisdictional discovery and not relevant to the issues raised in Plaintiffs' brief. It is time

---

[2] For instance, one of Dundon's and Garbe's chief criticisms was that Philips RS did not maintain adequate financial records. KPNV is prepared to offer literally thousands of pages of financial records, created as part of a monthly Sarbanes-Oxley process, to rebut those opinions. Of course, none of this should be necessary, but again, Plaintiffs refuse to state whether Dundon and/or Garbe will be appearing at the evidentiary hearing.

Plaintiffs live by their representation to the Court and narrow their proposed exhibits to withdraw those that do not concern personal jurisdiction.

### B. Plaintiffs' Additional Irrelevant Theories of Personal Jurisdiction

It is simply unfair to ask the Court to consider a joint exhibit list comprised of more than 420 documents and expect the Court to familiarize itself with those documents in connection with the upcoming evidentiary hearing. Many complex trials do not have 400+ exhibits. It is a complete waste of time to have hours devoted to addressing exhibits that Plaintiffs now seek to put before the Court, and the exhibits that KPNV was forced to propose in rebuttal, but which were never even cited in the parties' briefs. But there is a solution that should significantly streamline proceedings for both the Court and the parties: convert the August 8 evidentiary hearing into oral argument on whether Plaintiffs' theories and topics are relevant to the question of personal jurisdiction over KPNV and/or a waste of time under Rule 403. Plaintiffs can deliver their best argument on relevancy, supported by documentary examples, and the Court can rule on the relevancy of what Plaintiffs seek to establish. With that guidance from the Court, Plaintiffs can then significantly narrow their proposed exhibits in accordance with the Court's guidance, and KPNV will follow suit. KPNV also could then assess whether it will need to call additional witnesses to rebut any of the new theories, if any, that the Court determines are relevant to personal jurisdiction. The parties could then have the rest of August to substantially narrow their exhibit lists and depose any additional witnesses KPNV may need to call (if any), and the hearing could take place in September.

Based on KPNV's review of Plaintiffs' new exhibit list, KPNV sets forth below at least some of the categories of materials that Plaintiffs apparently seek to introduce at the evidentiary hearing now that their prior theories have failed. KPNV believes none of these

categories is relevant to personal jurisdiction of KPNV, or at best, would be a huge waste of time under Rule 403, and potentially would require KPNV to needlessly bring more witnesses to the evidentiary hearing and designate even more documents.  While the list below is not all of the categories, it is emblematic of the issues raised by Plaintiffs' approach to the record for purposes of this Motion.

### 1. Employment-Related Documents

In jurisdictional discovery, KPNV identified for Plaintiffs—in a sworn interrogatory response—*all* of KPNV's directors and officers over the relevant period.  KPNV does not have employees; it is a holding company.  KPNV also represented in its Rule 12(b)(2) reply brief that the entire universe of KPNV personnel, for the entire relevant period, was identified in the relevant interrogatory response. (*See, e.g.*, ECF No. 1850, KPNV's Rule 12(b)(2) Reply, at 11, 28; ECF No. 1851, KPNV's Rule 12(b)(6) Reply, at 30 n.28, 36 n.34.)

Undeterred, Plaintiffs have now made clear through their proposed exhibits that they intend to engage in a massive frolic and detour by seeking to mislead the Court into believing that *other* individuals were employed by KPNV when they never were.  For instance, Plaintiffs have added to their exhibit list LinkedIn profiles, resumes, Teams chats, and discovery correspondence about custodians in an effort to somehow turn these individuals into current or former KPNV employees.  If Plaintiffs are allowed to pursue this theory at the evidentiary hearing, massive confusion will ensue.  Moreover, KPNV will have to call a witness to testify that none of them was ever employed by KPNV, and potentially also add even more documents to the exhibit list.  This would be a waste of everyone's time, but especially the Court's—and particularly in light of the fact that KPNV has already identified all of its current and former officers and directors

in an interrogatory response.³  By ruling on this matter now, the parties would be able to significantly reduce the number of exhibits already proposed and avoid the need to designate even more exhibits and witnesses.

### 2. **Reporting Line Documents.**

Relatedly, Plaintiffs seek to submit as exhibits supposed evidence of reporting lines from employees at one Philips Group entity to employees at another Philips Group entity, or to individuals at KPNV.  But even if such reporting lines did exist, it is well established that "[t]he simple fact that there are lines on a chart connecting various persons does not make the requisite showing" that KPNV "w[as] directing" these subsidiaries' respective businesses.  *E.I. du Pont.* v. *Agfa-Gavaert NV*, 335 F. Supp. 3d 657, 672 (D. Del. 2018); *see also Seltzer* v. *I.C. Optics*, 339 F. Supp. 2d 601, 605 (D.N.J. 2004) (declining to find alter ego despite subsidiary employees reporting "directly to" the parent company "on various management matters.").  Thus, such "reporting lines" evidence is also irrelevant to the question of day-to-day control and would also waste the Court's time.

### 3. **Post-Recall Period Documents**

Although Plaintiffs spent just over a handful of paragraphs in their 36-page Opposition arguing that KPNV's recall-related activities subjected KPNV to personal jurisdiction, Plaintiffs now seek to introduce numerous post-recall documents at the evidentiary hearing that were never cited before.  *See* ECF No. 1687, at 16-18, 27, 33-34.  This not only represents a departure from Plaintiffs' arguments in its brief, it is also a waste of the Court's and the parties' time—KPNV has already conceded personal jurisdiction for the recall-related claims in

---

³ The witness whom KPNV would likely call to rebut this flawed theory is unavailable to attend the evidentiary hearing, if it goes forward on August 8.  However, he is available in September.

Pennsylvania, the only state in which KPNV can seriously be argued to have had any contacts with respect to these claims (given Philips RS's headquarters in Pennsylvania). *See* ECF No. 914, at 4. Plaintiffs purportedly seek to introduce post-recall documents to show that KPNV may be the alter ego of Philips RS and thus subject to personal jurisdiction for the period of the recall for states other than Pennsylvania. But not one of these documents show that KPNV so dominated the "day-to-day operations" of Philips RS "such that [it] can be said to be a mere department of [KPNV]." *In re Enterprise*, 735 F. Supp. 2d at 318. Again, Plaintiffs' financial experts never even offered opinions under the *Enterprise* factors. But this is purely legal question, and such a legal question cannot possibly open the floodgates for cumulative and irrelevant evidence concerning KPNV's recall-related activities.

Among the many irrelevant post-recall documents Plaintiffs now seek to introduce (previously not cited in the Duggan Declaration) are at least a dozen Teams Chats transcripts from late 2021 and 2022, several slide decks from 2022 concerning the recall, and notes from FDA meetings that occurred in 2022. Plaintiffs wish to add these exhibits *in addition to* the large volume of irrelevant post-recall documents Plaintiffs cited in the Duggan Declaration. To highlight an example of not only the irrelevancy but also the wastefulness of such evidence, Plaintiffs seek to introduce 23 "Thank you" letters that accompany individualized Retention Bonus letters sent to various Philips RS employees, all from September 2021 (months after the recall), apparently for the sole reason that two KPNV employees (along with two non-KPNV employees) sent a colorful "Thank you" note along with the proposed Retention Bonus letter. *See, e.g.*, Duggan Declaration Exs. 73-95. Aside from the fact that including 23 of these virtually identical letters is cumulative, even the introduction of one letter is a waste of the Court's time as generalized corporate communications, post-recall, to Philips RS employees have no bearing on alter-ego personal

jurisdiction for the claims actually at issue, which all predate the recall. Simply put, these are not evidence of "day to day" control by KPNV of Philips RS. The number of exhibits introduced at the evidentiary hearing, and consequently the amount of time required to spend at and following the evidentiary hearing, could be substantially reduced if such documents were deemed irrelevant as a threshold issue.

### 2. Communications Among Only Non-KPNV Employees Unrelated to KPNV

The only issue to be decided at the evidentiary hearing is whether *KPNV* is subject to the Court's specific personal jurisdiction, an inquiry that focuses on whether KPNV exercised day-to-day control over Philips RS. Yet, Plaintiffs abandon that standard when they seek to now introduce numerous emails and Teams Chats that do not involve even a single KPNV employee (because it has none) or any members of KPNV's Supervisory Board, Board of Management or Executive Committees. Plaintiffs have proposed introducing over two dozen Teams Chats transcripts that do not include KPNV personnel, many of which only involve individuals employed by the same non-KPNV Philips Group entity. Such communications plainly cannot show whether KPNV exercised day-to-day control over the operations of Philips RS, and introducing these Teams Chats and email communications like it would plainly waste the Court's and the parties' time at the evidentiary hearing. Worse, because of the significance of the personal jurisdiction issue, it now places KPNV at a disadvantage for not bringing evidence to refute each of these items that were *never* raised during the briefing of this issue.

### 3. Documents that Purport to Demonstrate Knowledge of Foam Degradation

In what appears to be an attempt to make points on the merits at an evidentiary hearing solely concerned with personal jurisdiction, Plaintiffs seek to introduce a number of exhibits that could not possibly go to show any point other than knowledge of foam degradation

among certain employees throughout the Philips Group. But as the Court explained at the outset of jurisdictional discovery, "[y]ou are not looking at all of the… did the substance, the foam… cause the injury. We are not looking at *any* of those issues." *See* December 14, 2022 CMC Tr. at 21:18-20 (emphasis added). Plaintiffs should not be permitted to waste the Court's time with attempts to make points on the merits under the guise of establishing personal jurisdiction over KPNV.

### KPNV'S REQUESTED RELIEF

KPNV has spent the last two months chasing down documents to respond to a theory that Plaintiffs seem to have (but will not confirm they have) abandoned, resulting in KPNV's inability to remove potentially irrelevant exhibits from the joint exhibit list. In the meantime, Plaintiffs have searched through even more merits discovery and have proposed numerous supplemental exhibits to support new (and factually incorrect and legally irrelevant) theories that KPNV will be forced to respond to with additional supplemental exhibits, and potentially additional witnesses, if the parties wait until after the hearing to argue relevancy objections. Plaintiffs' game is unfair to KPNV and even more unfair to the Court, who will have to sift through hundreds of completely irrelevant exhibits.

KPNV respectfully requests that the Court convert the August 8 evidentiary hearing into oral argument intended to provide the parties guidance on the proper scope of relevancy for the evidentiary hearing. KPNV further requests that on or before August 1, the parties provide this Court with a list of the topical categories to be argued on August 8, as well as a two-page statement for each specific category from each side.

Dated: July 24, 2023

Respectfully submitted,

*/s/ Michael H. Steinberg*
Michael H. Steinberg
steinbergm@sullcrom.com
CA Bar. No. 134179
**SULLIVAN & CROMWELL LLP**
1888 Century Park East
Los Angeles, CA 90067
Tel: 310.712.6670

Tracy Richelle High
hight@sullcrom.com
NY Bar No. 3020096
William B. Monahan
monahanw@sullcrom.com
NY Bar No. 4229027
Elizabeth N. Olsen
olsene@sullcrom.com
NY Bar No. 5621628
**SULLIVAN & CROMWELL LLP**
125 Broad Street
New York, NY 10004
Tel: 212.558.4000