IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| IN RE: PHILIPS RECALLED CPAP, BI-LEVEL PAP, AND MECHANICAL VENTILATOR PRODUCTS LITIGATION<br><br>This Document Relates to:<br>*All Actions* | Master Docket: Misc. No. 21-mc-1230-JFC<br><br>MDL No. 3014 |

**PLAINTIFFS' RESPONSE TO KONINKLIJKE PHILIPS N.V.'S MOTION TO CONVERT THE AUGUST EVIDENTIARY HEARING INTO ORAL ARGUMENT AND TO RESCHEDULE THE EVIDENTIARY HEARING TO SEPTEMBER**

KPNV is apparently now not ready to proceed despite having told the Court the opposite at the July 20th status conference. Plaintiffs do not oppose KPNV's eleventh-hour request to convert the August 8th evidentiary hearing into a hearing regarding the relevancy of Plaintiffs' proposed exhibits if the Court feels it is appropriate. There can be little doubt that the proposed exhibits are relevant to jurisdiction, and Plaintiffs stand ready to discuss each and every exhibit in whatever manner will best assist the Court.

Beyond that, there is little in KPNV's motion that Plaintiffs do not find objectionable. There is very little reason to believe that KPNV's last-minute about face was triggered by a concern that Plaintiffs seek to introduce irrelevant documents. Instead, KPNV may finally recognize that its continued recent production of documents continues to undermine its prior personal jurisdiction arguments. For example, one document added to the Parties' Joint Exhibit list after its production on June 23, 2023 shows that in response to numerous and persistent quality control and safety concerns, ███████, KPNV's former CEO Frans Van Houten and Senior VP of Quality, Regulatory and Compliance Liz Iversen ███████████████████████████████████

████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████

██████████  *See* Ex. 1 (PHILIPS_MDL-01566167).

Recognizing the overwhelming probative value of this and many other documents it has produced, KPNV frames its emergency motion based on a false predicate: that Plaintiffs' opposition to KPNV's motion to dismiss for lack of personal jurisdiction is limited to "one issue" — whether KPNV "controls the day-to-day operations of" Philips RS North America LLC ("Philips RS")." Br. at 1. No so. Plaintiffs have consistently made clear that in addition to the alter-ego and agency arguments they advance in favor of this Court's exercise of jurisdiction, they also assert that this Court has specific jurisdiction over KPNV because of its own direct contacts in the United States, and in Pennsylvania, Massachusetts, Delaware, and elsewhere — "because Royal Philips has significant contacts relating to Plaintiffs' injuries, it is directly subject to personal jurisdiction on Plaintiffs' state-law claims." *See* ECF 1688 (Pltfs. Opp.) at 8; *see also* Dec. 14, 2022 Tr. of Proceedings at (Plaintiffs' counsel describing issues as: "[First], Is there any pre-recall conduct by KPNV, Philips NA, Philips Holding and Philips RS Holding; And second, is there an alter ego or agency relationship claim that we can bring that brings them all into the case…"). While the vast majority of Plaintiffs' proposed exhibits are relevant to both issues, KPNV's emergency motion limits its relevancy arguments solely to the alter ego/agency issue and ignores that KPNV's longstanding direct involvement and actionable conduct with respect to the Recalled Devices is an issue that must be addressed in evaluating jurisdiction over KPNV.

2

KPNV's belated emergency motion is unmoored from reality and the governing legal standards, and belied by its own motions to dismiss. KPNV, having already argued that this Court should dismiss Plaintiffs' Complaints because Plaintiffs supposedly have not produced enough evidence to meet their burden to establish personal jurisdiction, now asks the Court to first exclude much of Plaintiffs' evidence because they have too much of it. KPNV's efforts to invoke the Court's admonition regarding too many exhibits misses the mark. *See, e.g.*, Br. at 2. Unlike the objections to the Report and Recommendation discussed by the Court at the last status conference, the Court has ordered that the jurisdictional motions be decided on a full evidentiary record. That record should include the relevant and probative evidence that Plaintiffs intend to offer.

Evidence is relevant if it has "any tendency" to make a fact of consequence more or less probable than it would be without the evidence. Fed. R. Evid. 401. In moving to (partially) dismiss Plaintiffs' complaints for lack of personal jurisdiction in this MDL, KPNV put at issue the wide array of facts relevant to specific personal jurisdiction, including whether KPNV has sufficient minimum contacts such that the exercise of jurisdiction is fair, *see* ECF No. 914 at 5 (Mem. in support of KPNV's 12(b)(2) motion to dismiss), and whether the relationship between KPNV and its U.S.-subsidiaries is of the nature to warrant the imputation of contacts pursuant to either the alter ego or agency doctrines, *see id.* at 14. These are "fact-intensive inquir[ies]," *see Gorton v. Air & Liquied Sys's Corp.*, 303 F. Supp. 3d 278, 292 (M.D. Pa. 2018) (Conti, J.), and Plaintiffs are entitled—if not required, *see* ECF No. 1934 at 5 (KPNV Reply Br.)—the opportunity to establish a record to support personal jurisdiction.

KPNV seeks to limit the record because a full evidentiary record is fatal to its argument. Indeed, in *In re Cathode Ray Tube (CRT) Antitrust Litig.*, 2017 WL 5972721 (N.D. Cal. Feb. 27, 2017) (MDL No.1917), the court relied on evidence similar to Plaintiffs' proposed evidence here

to deny KPNV's motion for summary judgment, holding that (1) "the evidence does not show as a matter of law that KPNV's divisions were legally separate from KPNV;" (2) "even if its divisions were nominally separate, there is evidence suggesting that they were not autonomous and that their actions were substantially directed by KPNV;" and (3) "the evidence of Philips' participation in the CRT conspiracy is that its employees acted on behalf of the Philips group of companies, and not any particular subsidiary." *Id*. at *3.

Each of the categories identified by KPNV are relevant to personal jurisdiction.[1] Employment-related documents and reporting line documents are each relevant because whether an alter ego relationship exists depend on "the legal interrelationship of the entities, the authority to control and the actual exercise of control, the administrative chains of command and organizational structure, the performance of functions, and the public's perception." *Simeone ex rel. Estate of Albert Francis Simeone, Jr. v. Bombardier-Roxax GmbH*, 360 F. Supp. 2d. 665, 675 (E.D. Pa. 2005) (quoting *In re Latex Gloves Prods. Liab. Litig.,* 2001 WL 964105, at *3 (E.D. Pa. Aug. 22, 2001)); *see also* ECF No. 1688 (Pltfs. Opp.) at 28-30. These categories also are relevant to whether KPNV purposefully directed its activities in Pennsylvania (and other states) and whether this litigation arose out of those activities sufficient to support specific jurisdiction. *See O'Connor v. Sandy Lane Hotel Co*., 496 F.3d 312, 317 (3d Cir. 2007).

Post-recall documents are relevant both because KPNV continues to oppose jurisdiction outside of Pennsylvania for claims arising out of the negligent recall and its negligent failure to recall, *see* ECF No. 914 at 4; ECF No. 1934 at 50; ECF No. 2114 at 11-12, and because the alter

---

[1] Plaintiffs reject KPNV's assertion that categorical determinations of relevance would assist the parties. Regardless of KPNV's characterization of a document, any one exhibit may be relevant to multiple aspects of the direct and/or alter ego personal jurisdiction inquiries. KPNV's own category list is more confusing than enlightening as it is impossible to discern what exhibits KPNV is referring to in each section.

4

ego inquiry looks to "the entirety of the relationship" between Royal Philips and its U.S. subsidiaries. *See Cardell Fin. Corp. v. Suchodolski Assocs., Inc.*, 2012 WL 12932049, at *16 (S.D.N.Y. July 17, 2012), *report and recommendation adopted*, 896 F. Supp. 2d 320 (S.D.N.Y. 2012) (collecting cases). Such documents are relevant to KPNV's direct involvement in the belated Recall.

And while Plaintiffs dispute KPNV's categorical labels—which are impossible to assess given the abstract nature of KPNV's arguments—communications among non-KPNV employees are relevant at least because the U.S.-based employees discuss KPNV's direct involvement with and control over day-to-day functions; and documents that demonstrate KPNV's knowledge of foam degradation are relevant to at least whether Plaintiffs' claims arise out of or relate to KPNV's contacts and whether KPNV has responsibility for concealing the defect and delaying the Recall.

However, rejecting KPNV's misplaced relevancy arguments and delaying the evidentiary hearing for one month is not a panacea. Faced with a large and growing body of evidence supporting jurisdiction, KPNV argues for the first time—just two weeks before the long-scheduled evidentiary hearing—that if Plaintiffs are permitted to introduce the same type of evidence attached to their March opposition, KPNV will somehow now come forth with yet undisclosed "additional supplemental exhibits, and potentially additional witnesses." ECF No. 2114 at 9 & 14. Furthermore, despite ongoing discovery continuing to result in the production of more and more evidence to support jurisdiction, KPNV asserts that it is at a disadvantage—despite KPNV having waited until months after Plaintiffs' brief was filed to produce such documents.[2]

---

[2] In fact, even after KPNV raised its intention to file the Emergency Motion complaining Plaintiffs seek to introduce too much evidence, and after the parties agreed to stop adding new exhibits, KPNV surprised Plaintiffs on Sunday evening with seven additional exhibits it wanted to use at the evidentiary hearing.

Accordingly, should the Court continue the August 8th hearing as KPNV has requested, this new uncertainty as to who KPNV may or may not call, and what if any additional evidence KPNV may seek to adduce, warrants further discussion regarding the timing of a renewed hearing.

Plaintiffs believe that it would be in the best interests of efficiency and conservation of party and judicial resources to defer the evidentiary hearing so both parties have sufficient time to complete the discovery they believe is necessary to present their respective arguments on a fully-developed record.

## BACKGROUND

In December 2022, KPNV put its state- and U.S.-contacts and parent-subsidiary relationships at issue when it filed a partial Motion to Dismiss for Lack of Personal Jurisdiction. ECF No. 914. The Court granted a short 45-day window for limited jurisdictional discovery, after which Plaintiffs filed their opposition to KPNV's motion. ECF No. 1688.[3] After Plaintiffs filed their opposition, the Court announced that it would hold an evidentiary hearing. Since that time there have been two constants: (1) Plaintiffs' arguments in support of jurisdiction and (2) KPNV's gamesmanship.

Plaintiffs' arguments in support of jurisdiction are unchanged and have only grown stronger as fact discovery has continued to provide evidence in support of Plaintiffs' position. On the other hand, KPNV has continued to try and change the shape of the table. When KPNV filed its Reply, it produced new documents (improperly kept from Plaintiffs until the Reply's filing). Then, as the parties began to prepare for a May evidentiary hearing, KPNV continued not only to

---

[3] ECF No. 1744 (Redacted version of Plaintiffs' Substituted Brief in Opposition to Royal Philips' Motions to Dismiss for Lack of Personal Jurisdiction); ECF No. 1745 (substituted opposition filed under seal); ECF No. 1687 (original redacted opposition), ECF No. 1688 (original opposition filed under seal).

produce new documents, but also produced newly-created documents (generated in May 2023) that it claimed it would use at the hearing along with a previously-undisclosed fact witness (Ms. Roux) that KPNV asserted would offer fact testimony relevant to its personal jurisdiction defense.

Meanwhile, fact discovery has been ongoing and will continue into 2024. Despite repeated requests by Plaintiffs, custodial files for key KPNV custodians, including CEO Roy Jakobs, former-CEO Frans van Houten, former COO Sophie Bechu and more, first began being produced in June 2023, and production delays including the identification of thousands of relevant Dutch-language documents have resulted in a drawn-out production process that has yet to be completed.

At the July 20 status conference, Plaintiffs' counsel reported the then-mutually understood facts—with no disagreement by KPNV's counsel—and informed the Court that the Parties had agreed to joint exhibit list[4] of more than 300 exhibits and that the Parties were exchanging additional exhibits (produced by KPNV since the parties' initial exhibit list submission) following the conference. *See* July 20,2023 Tr. at 9:11-11:20 (KPNV's counsel agreeing that the procedure laid out by the court was "clear," and "perfectly fine"). Sensitive to the volume of physical copies of the exhibits, Plaintiffs' counsel re-confirmed that the Court wanted all the exhibits to be submitted on July 26th. *Id*. at 12:11-22. KPNV's counsel stated that the parties had agreed to reserve relevancy and weight objections, and even specified that such objections applied to only "a smaller number of exhibits. . . a relatively limited subset." *Id*. at 12:24-13:12.[5]

---

[4] In fact, the Parties had submitted the list of joint exhibits to the Court in May, and prior to July 21, Plaintiffs had no notice that KPNV was planning to raise the new relevancy complaints now before the Court.

[5] KPNV had a full opportunity at the July 20 hearing to raise any of the issues it now claims are threshold barriers to moving forward with the evidentiary hearing, but nevertheless chose to wait until after the hearing in an apparent effort to delay and interfere with Plaintiffs' preparation for the evidentiary hearing.

Moreover, the day after the July 20th Status Conference, the parties exchanged their updated exhibit lists. While KPNV hypocritically claims that Plaintiffs, who have the burden of proof on jurisdiction, made excessive designations, KPNV designated almost 1.5 times more pages of hard copy exhibits than Plaintiffs (11,995 versus 8,169 pages) and nearly 2.5 times the amount of native document/spreadsheet data (5.65 *gigabytes* versus 2.39 *megabytes*).

Finally, KPNV advances baseless attacks against Plaintiffs' experts, Mr. Dundon and Mr. Garbe of Dundon Advisors LLC, in an inappropriate effort to have an expert challenge on a motion about the relevancy of documents. It is not the forum for KPNV's challenges to Plaintiffs' experts. In addition, contrary to KPNV's assertions, Plaintiffs' experts have not reversed course or made any concessions. Mr. Dundon submitted his declaration in March 2023 based on the facts before him as reflected in the documents the Philips Defendants had produced (and not produced) as of that time. After KPNV subsequently produced additional documents in response to Mr. Dundon's declaration (including documents created in May 2023 in a vain attempt to fill in gaps identified by Mr. Dundon), Mr. Dundon and his colleague Mr. Garbe did exactly what one would expect: They took account of the new materials and submitted an expert report.

In their report (excerpts attached as Ex. 2), they reach the following conclusions, unchallenged by KPNV at their depositions: (1) KPNV conducts its businesses as an integrated operating company, with businesses that cut across and disregard legal entity boundaries, and SRC [Sleep & Respiratory Care business group] is one of these businesses, and (2) Defendants have not produced fundamental financial reports specific to any defendant other than KPNV of the type and content that would be necessary for the executive leadership of its subsidiaries to independently manage its business day to day (to say the least of in the long term). While the information to be provided by Plaintiffs' experts represent just a small piece of the overall evidence supporting

jurisdiction over KPNV, it is unquestionably relevant evidence demonstrating that Philips RS did not run the Philips CPAP/BiPAP/ventilator business as an independent legal entity, but instead the Philips CPAP/BiPAP/ventilator business was managed at a level that cuts across various legal entities.[6]

## DISCUSSION

As discovery has continued, the Philips Defendants have finally started to produce KPNV-related documents and internal communications that provide an increasingly robust evidentiary record that KPNV has longstanding, systematic, and intentional contacts that renders jurisdiction in this MDL unquestionable. KPNV's attempt to restrict Plaintiffs from putting that evidence before the Court is improper and misguided. Indeed, KPNV's last-minute threats that it now requires additional witnesses and discovery to rebut the increasingly-robust record assembled by Plaintiffs may warrant continuing the evidentiary hearing until after the parties have time to conduct sufficient discovery so that they can present their respective arguments based on a fully-developed record.

**A.     The Parties' Proposed Exhibit Lists**

KPNV's arguments about the volume of exhibits are misleading. Plaintiffs reject KPNV's premise that the Court's comments at the status conference last week regarding the volume of exhibits to an objection to a discrete discovery R&R would apply to an *de novo* evidentiary hearing on a seminal issue in the case where Plaintiffs carry the burden.

It is essential to note that the only reason Plaintiffs plan to introduce numerous exhibits at the evidentiary hearing is because there is extensive evidence to support Plaintiffs' motion and the

---

[6] KPNV's claim that Mr. Garbe admitted he was not testifying about the *Enterprise* factors is a red herring. Mr. Garbe is an expert witness applying his expertise to facts which are relevant to the *Enterprise* factors, but his job is not to be an expert on legal conclusions.

Court's jurisdiction. However, while some of these exhibits are indeed voluminous, it is KPNV—not Plaintiffs—that have prevented the submission of summaries or more tailored exhibits. For example, Plaintiffs have identified organizational charts showing how Philips has organized its businesses and managed its employees, some of which span hundreds of pages. Plaintiffs included on their exhibit list (and in support of their motion) summary charts condensing such exhibits from 800-pages down to a single page and even agreed to make nomenclature changes to such summary charts to address concerns raised by KPNV. But KPNV nonetheless has persisted in its objections to these summaries and (incorrectly) asserts that these summary charts are inadmissible, thereby necessitating that Plaintiffs designate underlying voluminous organizational charts.

**B.      Personal Jurisdiction Over KPNV**

KPNV's repeated claims that Plaintiffs have changed or abandoned theories of jurisdiction are meritless, improper and unhelpful to the Court. Plaintiffs continue to contend that KPNV is subject to specific personal jurisdiction for at least four reasons: (1) KPNV conceded that it is subject to jurisdiction on Plaintiffs negligent failure to recall/negligent recall claims in Pennsylvania; (2) KPNV has sufficient minimum contacts with three states and sufficient direct involvement in the Recall in all states that relate to Plaintiffs' claims such that the exercise of personal jurisdiction does not offend the traditional notions of fair play and substantial justice; (3) KPNV has sufficient minimum contacts with the United States as a whole to provide jurisdiction over KPNV pursuant to Plaintiffs' RICO claim; and (4) KPNV's relationship with its subsidiaries warrants application of the alter-ego and agency doctrines of personal jurisdiction. *See* ECF No. 1687 at 2 & n.2. Plaintiffs have been steadfast in arguing that KPNV is subject to the Court's jurisdiction both because of its own direct actions and under an alter ego or agency theory. At this point in the litigation, KPNV fully understands this and its repeated claims that the hearing is only

about alter ego and agency theories demonstrates a baffling lack of attention or an intentional attempt to mislead the Court.

**C.      KPNV's Categories**

      **1.      Employment Related Documents Are Relevant.**

KPNV suggests that documents relating to the scope of and nature of (unnamed) individuals' employment are somehow an irrelevant detour from the personal jurisdiction inquiry. This argument is meritless. Even setting aside other basis for personal jurisdiction, the alter ego doctrine does not depend on any one aspect of the relationship between two corporations, and "a court may consider any evidence bearing on the corporations' functional interrelationship." *In re Chocolate Confectionary Antitrust Litig.*, 674 F. Supp. 2d 580, 598 (M.D. Pa. 2009); *see* ECF No. 1688 (Pltfs. Opp.) at 21-23. Moreover, KPNV's bald assertion that it functions as a holding company is belied by the evidence. *Id*. at 8.

      **2.      Reporting Line Documents Are Relevant.**

KPNV next argues that reporting line evidence is irrelevant. This argument is baseless. "[T]he exercise of managerial power over the operations and functions of one subsidiary or group of subsidiaries by employees of a separate but affiliated corporation" is the "key fact" supporting alter ego jurisdiction. *In re Enterprise Rent-A-Car Wage & Hour Employment Practices Litig.*, 735 F. Supp. 2d 277, 324 (W.D. Pa. 2010); *see also In re Latex Gloves*, 2001 WL 964105, at *6; *UHS of Del. Inc. v. United Health Servs. Inc.*, 2015 WL 539736, at *15 (M.D. Pa. Feb. 10, 2015). Reporting line documents bear directly on this key issue as they shed light on how KPNV exercised its managerial power in practice. *See Hooper v. Safety-Kleen Sys. Inc.*, 2016 WL 7212586, at *6 (W.D. Pa. Dec. 13, 2016) (noting "whether the structure of the corporate family operated vertically as strategic business units" is core to alter ego inquiry (citing *In re Enterprise*, 735 F. Supp. 2d at

318-325)). These documents also reflect that Philips RS did not act as an independent, autonomous entity and that KPNV (and Philips NA and Philips USA) had direct involvement in the conduct that underly Plaintiffs' claims sufficient to establish specific jurisdiction.

### 3. Post-recall Documents Are Relevant.

KPNV confusingly argues that documents "from the post-recall period" are irrelevant while maintaining that Plaintiffs' negligent recall claim should be dismissed for all Plaintiffs outside Pennsylvania for lack of personal jurisdiction. *See* ECF No. 914 at 4; ECF No. 1934 at 50; ECF No. 2114 at 11-12. Were KPNV's continued opposition not enough, documents from the post-recall period can and do often relate to pre-recall contact/events, and the alter ego inquiry looks to "the entirety of the relationship" between KPNV and its U.S. subsidiaries across time. *See Cardell Fin. Corp. v. Suchodolski Assocs., Inc.*, 2012 WL 12932049, at *16 (S.D.N.Y. July 17, 2012), *report and recommendation adopted*, 896 F. Supp. 2d 320 (S.D.N.Y. 2012) (collecting cases).

### 4. Communications Among Non-KPNV Employees Are Relevant.

KPNV's next argument is so abstract and lacking in detail that it is difficult to seriously respond to. KPNV seems to suggest that conversations between employees at a KPNV subsidiary lack relevance. To the contrary, the substance of such conversations frequently shed light on KPNV's involvement with the Recalled Devices at issue. For example, in one text conversation a Philips RS employee states that, even prior to the recall, ███████████████████████████ ███████████████████████ *See* Ex. 3 (DRLB_05_021879). Admissions such as these by Philips RS employees are directly relevant to the personal jurisdiction inquiry as they bear on minimum contacts and KPNV's control *over Philips RS*.

### 5. Documents That Demonstrate Knowledge of Foam Degradation Are Relevant.

12

KPNV argues, in the abstract, that some documents bear only on the issue of knowledge of foam degradation. It is impossible to guess what documents Defendants are referring to, but documents relating to KPNV's knowledge of foam degradation are likely to have many purposes relevant to personal jurisdiction including assisting in determining whether Plaintiffs' claims arise out of or relate to KPNV's contacts.

**D.    KPNV's Threatened Additional Discovery**

At bottom, KPNV seeks only to delay the evidentiary hearing and to convert August 8 to an opportunity for an argument "on the scope of relevancy for the evidentiary hearing." Br. at 14. Plaintiffs do not oppose an argument on relevancy to the extent the Court believes it would be helpful, but to the extent the Court is inclined to delay the evidentiary hearing, issues raised for the first time by KPNV in its July 24 filing militate in favor of deferring such a hearing after both parties have time to conduct sufficient discovery so the evidentiary hearing can be conducted once based on a fully-developed record.

Discovery remains ongoing and the Parties are scheduling depositions, including depositions of current KPNV employees and non-party, former employees of KPNV.[7] However, only one fact witness has been deposed to date. KPNV claims that it would be unable to proceed with the evidentiary hearing without proposing "additional supplemental exhibits" – as yet unidentified – and with "potentially additional witnesses" – as yet unnamed or disclosed. Br. at 14. This continued gamesmanship and ongoing attempt to change the scope of discovery on the eve of hearing is inefficient and puts a strain on resources that would be better spent completing fact discovery on the planned schedule. If the August 8th hearing is to be deferred, Plaintiffs request

---

[7] Most if not all of these employees and former employees have all retained separate counsel, and the Parties continue to work through the logistical challenge of scheduling and coordinating (across multiple MDLs) the document productions and deposition schedule.

that the Parties be permitted to focus on completing fact discovery so that the hearing, when it happens, can, as requested by the Court, finally and truly "be all about what is the truth. What are the real facts in this case?" *See* 5-25-2023 CMC Tr. at 22:2-4.

DATED: July 25, 2023 　　　　　　　　　　　　　　　Respectfully submitted,

| | |
|---|---|
| */s/ Sandra L. Duggan* <br> Sandra L. Duggan, Esquire <br> **LEVIN SEDRAN & BERMAN LLP** <br> 510 Walnut Street, Suite 500 <br> Philadelphia, PA 19106 <br> (215)592-1500 (phone) <br> sduggan@lfsblaw.com | */s/ Steven A. Schwartz* <br> Steven A. Schwartz, Esquire <br> **CHIMICLES SCHWARTZ KRINER &** <br> **DONALDSON-SMITH LLP** <br> 361 West Lancaster Avenue <br> One Haverford Centre <br> Haverford, PA 19041 <br> (610) 642-8500 (phone) <br> steveschwartz@chimicles.com |
| */s/ Christopher A. Seeger* <br> Christopher A. Seeger, Esquire <br> **SEEGER WEISS LLP** <br> 55 Challenger Road, 6th Floor <br> Ridgefield Park, NJ 07660 <br> (973) 639-9100 (phone) <br> cseeger@seegerweiss.com | */s/ Kelly K. Iverson* <br> Kelly K. Iverson, Esquire <br> **LYNCH CARPENTER, LLP** <br> 1133 Penn Avenue, 5th Floor <br> Pittsburgh, PA 15222 <br> (412) 322-9243 (phone) <br> kelly@lcllp.com |

*Plaintiffs' Co-Lead Counsel*

| | |
|---|---|
| */s/ D. Aaron Rihn* <br> D. Aaron Rihn, Esquire <br> **ROBERT PEIRCE & ASSOCIATES,** <br> **P.C.** <br> 707 Grant Street, Suite 125 <br> Pittsburgh, PA 15219 <br> (412) 281-7229 (phone) <br> (412) 281-4229 (fax) <br> arihn@peircelaw.com | Peter St. Tienne Wolff, Esquire <br> **PIETRAGALLO GORDON ALFANO** <br> **BOSICK & RASPANTI, LLP** <br> One Oxford Centre - 38th Floor <br> Pittsburgh, PA 15219 <br> (412) 263-2000 (phone) <br> (412) 263-2001 (fax) <br> psw@pietragallo.com |

*Plaintiffs' Co-Liaison Counsel*

**CERTIFICATE OF SERVICE**

    I hereby certify that a true and correct copy of the foregoing document was filed via the Court's CM/ECF system on this 25th day of July 2023, and is available for download by all counsel of record.

                                                     */s/ D. Aaron Rihn*
                                                     D. Aaron Rihn, Esquire
                                                     PA I.D. No.: 85752
                                                     ROBERT PEIRCE & ASSOCIATES, P.C.
                                                     707 Grant Street
                                                     Suite 125
                                                     Pittsburgh, PA 15219
                                                     Tel: 412-281-7229
                                                     Fax: 412-281-4229
                                                     arihn@peircelaw.com