**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| IN RE: PHILIPS RECALLED CPAP, BI-LEVEL PAP, AND MECHANICAL VENTILATOR PRODUCTS LIABILITY LITIGATION<br><br>*THIS DOCUMENT RELATES TO: All Actions* | ) <br> ) <br> )  Case No. 2:21-mc-01230-JFC <br> )  MDL No. 3014 <br> ) <br> )  Honorable Joy Flowers Conti <br> ) <br> ) |

**DEFENDANTS' RESPONSE TO PLAINTIFFS' OBJECTIONS TO THE
<u>SPECIAL MASTER'S REPORT AND RECOMMENDATION</u>**

After extensive discussions between the Parties and comprehensive briefing, the Special Master concluded that this Court should deny Plaintiffs' Motion to Compel All Documents Related to the Exponent Reports and should grant Defendants' Motion for a Protective Order as to the same. The Court should adopt Special Master Katz's thorough and well-reasoned Report and Recommendation (the "R&R"), ECF No. 2069, in full and deny Plaintiffs' request for additional privilege logs. Plaintiffs' Objections raise no new arguments that have not already been considered and rejected by Special Master Katz. More problematically, Plaintiffs fail to even mention—let alone rebut—the Special Master's central finding that "Plaintiffs are on equal footing with [Defendants] in that they have all the information underlying the Exponent Reports . . . to perform the same analyses as, and to identify flaws" therein. *See* R&R at 13. With no challenge to that critical point, Plaintiffs provide no conceivable rationale for disregarding Special Master Katz's Report and Recommendation in order to breach the attorney work product privilege and grant Plaintiffs the wide-ranging discovery of protected materials they seek here.

I.  **BACKGROUND**

In September 2021, Defendants' litigation counsel, Morgan, Lewis & Bockius LLP ("Morgan Lewis")—now joined as defense counsel by Sullivan and Cromwell—retained Exponent as a non-testifying expert under Federal Rule of Civil Procedure 26(b)(4)(D). *See* Def. Ex. 1 (September 2021 Retention Letter); Fed. R. Civ. P. 26(b)(4)(D).

The September Retention letter stated, in relevant part, that Exponent's role would be to ███████████████████████████████████████████████████████████████ *See* Def. Ex. 1 ███████████████████████████████ In October 2021, Exponent and Morgan Lewis entered

into a second agreement, under which Exponent would also provide ███████████ ████████████████████████████████████████████████████████ Def. Ex. 2 (October 2021 Retention Letter). ████████████████████████████ ████████████████████████████████████████████████████████ ████████████████████████████████████████████████████████ ████████████████████████████ *Id*.

During the course of the engagement, which is continuing, Exponent has consistently provided scientific and technical consulting support to Defendants' counsel. This support has been critical to counsel's ability to provide Defendants with informed legal advice given the complexity of the chemistry, material sciences, and toxicological data that undergird this litigation. With its recognized expertise, Exponent has: (1) retrospectively analyzed the highly limited pre-Recall testing that raised questions about patient safety that led Respironics to undertake the Recall out of an abundance of caution; and (2) consolidated the results of the massive post-Recall testing program, comprised of hundreds of studies involving the comprehensive evaluation of hundreds of devices and foam samples, including pristine, field-returned, ozone-exposed, and lab-aged foam, at five independent, accredited, Third-Party Labs (Intertek, Eurofins, WuXi, UL, and NAMSA). Regarding the latter, it bears repeating that Exponent's role was, with limited exceptions, to pull together the vast amount of *scientific data* generated by the Third-Party Labs, all of which were cited in Exponent's Reports and have been produced to Plaintiffs. The post-Recall testing has uniformly confirmed that the health risk to users of DreamStation One, DreamStation Go, and System One devices is negligible.

Separately, Exponent has provided Defendants technical assistance relating to their general business needs and regulatory compliance obligations. Defendants have not asserted any sweeping

2

privilege over these documents and communications, and they are being produced in the ordinary course by Defendants and third parties (including the Third-Party Labs, which Plaintiffs have subpoenaed).

Pursuant to its engagement by Morgan Lewis as a litigation consultant, Exponent has prepared several final reports (the "Exponent Reports") with respect to the potential toxicological risks associated with particulates and volatile organic compounds ("VOCs") for DreamStation One, DreamStation Go, and System One devices. *See, e.g.*, Def. Ex. 3 (March 2023 Exponent Report).[1] Those Exponent Reports are *self-contained*; that is, the Reports set forth all of Exponent's and the Labs' scientific data, methodologies, protocols, as well as any assumptions or limitations considered in their findings, such that the Reports and conclusions may be fully evaluated and challenged by another party. The most comprehensive March 2023 Report provides an excellent example. In that Report, Exponent ██████████████████████████

██████████████████████████████████████████████████████████████

██████████████████████████████████████████████████████████████

████████████████████████████████████

██████████████████████████████████████████████████████████████

████████████████████████████

Def. Ex. 3 at 8 (emphasis added). ██████████████████████████████

██████████████████████████████████████████████████████████████

██████████████████████████████████████████ *See, e.g., id.*

---

[1]  Defendants have cited relevant or exemplary language from the exhibits in the body of our submission, to alleviate the need to review any voluminous exhibits. However, due to the significance of the Exponent March 2023 Report, Defendants have attached it here as Def. Ex. 3.

at 17, 111–112 (█████████████████████████████████████████████████████

███████████████████████████████████████████████████████████████████████).

As Special Master Katz noted:

> The Report explains and summarizes Exponent's toxicological risk assessment and testing, risk characterizations of Foam particulates and volatile organic compounds, and conclusions. It also includes 28 Tables, 14 Figures, and three Appendices, one of which sets forth the scientific data prepared by approximately five third-party laboratories ("Labs").

R&R at 3.

And, finally, the Reports set forth all assumptions made and any limitations of the findings. In this regard, the post-Recall testing assumed a 'worst case scenario', meaning the testing assumed that: all of the foam had degraded; all of the foam would reach the patient; the device was used for the full 5 year useful life; the device was used to the highest level of exposure (8.9 hours per day, every day); and the patient was the lowest weight consistent with the labeled usage. With these worst-case assumptions, the data showed that the particulates and VOCs were still within the toxicological thresholds: ████████████████████████

████████████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████████████

███████████████████████ *See* Def. Ex. 3 at 113 (emphasis added).

In their Objections, Plaintiffs grossly mischaracterize aspects of Exponent's Reports. For example, Plaintiffs claim that Exponent has ████████████████████████████████

████████████████ Pl. Obj.'s at 2, ECF No. 2109. This is incorrect. ████████████

██████████████████████████████████ Pl. Ex. 1.3 at 2, ECF No. 2109-5 ████████

████████████████████████████████████████████████████████████████████[2]

---

[2] ████████████████████████████████████████████████████████████████████
████████████████████████████████████████████████████████████████████

Per the FDA's 518(a) Order, Defendants ultimately produced the March Report and its predecessors to the FDA. Defendants agree that this disclosure waives work product protection as to these Reports. The Exponent Reports, together with their supporting data and scientific literature, have been produced to Plaintiffs. As Defendants' comprehensive testing program continues, future results will continue to be produced to Plaintiffs on a rolling basis.

Seeking fodder with which to attack the Reports, Plaintiffs subpoenaed Exponent on July 22, 2022, directly seeking protected work product, including draft reports and communications with counsel. Dissatisfied with the results, on May 1, 2023, Plaintiffs moved to compel production of any undisclosed documents and communications related to those Exponent Reports that had been disclosed to the FDA. Defendants cross-moved for a protective order as to the same, and the dispute was presented to Special Master Katz.

After thorough consideration of the Parties' arguments and evidence, the Special Master concluded that, *inter alia*: (1) documents and communications relating to the Exponent Reports are protected work product under Rule 26(b)(4)(D); (2) Defendants' partial waiver of that protection by submission of the Reports to the FDA did not effect a subject matter waiver as to related documents and communications; and (3) Plaintiffs had not established "substantial need" or "exceptional circumstances"[3] that would warrant piercing work product protection. *See* R&R at 4–13.[4] Accordingly, Special Master Katz recommended that this Court grant Defendants'

---

[3]  In their Objections, Plaintiffs have waived any argument that "exceptional circumstances," Fed. R. Civ. P. 26(b)(4)(D)(ii), or "substantial need," Fed. R. Civ. P. 26(b)(3)(A)(ii), warrant the disclosure of protected work product here.

[4]  In their briefing before the Special Master, Defendants argued that communications between Exponent and Defendants' litigation counsel are also protected by the attorney-client

5

Motion for a Protective Order and deny Plaintiffs' Motion to Compel. Plaintiffs' Objections followed.

## II. STANDARD OF REVIEW

The District Court reviews the Special Master's findings of fact and conclusions of law *de novo*. *See* Fed. R. Civ. P. 53(f)(3)–(4).

## III. ARGUMENT

This Court should adopt the Special Master's R&R and dispose of the pending cross-motions accordingly. Contrary to Plaintiffs' rhetorical Objections, the actual *reasoning* necessary to resolve this discovery dispute is straightforward. *First*, Plaintiffs have abandoned their earlier contention—rejected by Special Master Katz—that Exponent was not acting as a litigation consultant in preparing the Reports, thus conceding that the Reports and all related documents are facially privileged. *Second*, Plaintiffs now put their full weight behind the argument that 'fairness' nonetheless demands the disclosure of all these documents, given the fact that Defendants provided the FDA with the Exponent Reports. But Plaintiffs adduce no pertinent authority for this position, which is belied by consideration of the ample scientific evidence already produced.[5] The Special Master rightly concluded that "Plaintiffs are on equal footing with [Defendants]" in their ability to evaluate and critique the Exponent Reports; that is all that fairness requires. *Third*, Plaintiffs' argument that they are entitled to privilege logs relating to large categories of undiscoverable documents is without merit.

> A. <u>Rule 26(b)(4)(D) Protects Documents and Communications Related to the Exponent Reports as Work Product</u>

---

privilege. Determining that such communications were protected work product, in any event, the Special Master chose not to substantively address this issue.

[5] *See* Def. Ex. 4 (L. Dykstra Ltr. to D. Buchanan, with enclosed testing list, July 20, 2023). The spreadsheet in this Exhibit has been converted to .pdf form for the Court's convenience; it is also available in the original, full-size excel format, upon the Court's request.

Rule 26 implements a specific application of the work product doctrine to non-testifying experts like Exponent:

> (D) *Expert Employed Only for Trial Preparation*. Ordinarily, a party may not, by interrogatories or deposition, discover facts known or opinions held by an expert who has been retained or specially employed by another party in anticipation of litigation or to prepare for trial and who is not expected to be called as a witness at trial. But a party may do so only:
>
> (i) as provided in Rule 35(b); or
>
> (ii) on showing exceptional circumstances under which it is impracticable for the party to obtain facts or opinions on the same subject by other means.

Fed. R. Civ. P. 26(b)(4)(D); *see Appleton Papers, Inc. v. E.P.A.*, 702 F.3d 1018, 1024 (7th Cir. 2012) ("[Rule 26(b)(4)(D)] is simply an application of the work product rule.").

Special Master Katz determined that the challenged documents and communications are work product "based on the plain language of both retention letters"—███—"and the related sequence of event[s]"—in which Exponent was retained *after* litigation had already been initiated. See R&R at 5. The Special Master considered and rejected Plaintiffs' arguments that Exponent was not acting as a non-testifying expert in preparing the Reports, the drafting of which ███ Given this factual scenario, Exponent's work on the Reports was clearly protected work product. *See, e.g.*, *In re Federated Mut. Funds Excessive Fee Litig.*, 2010 WL 11469561, at *2–4 (W.D. Pa. Mar. 25, 2010) (holding that a consultant's report and related communications were protected work product, where the consultant was engaged by a party's law

7

firm to assist in providing legal advice, and even though a "business purpose" could also have been "ascribed" to the report). In their Objections, Plaintiffs do not challenge that conclusion.[6]

B. Defendants Have Already Produced All Scientific Data Due to Plaintiffs 'in Fairness'

Despite accepting the Special Master's conclusion that Exponent was retained as, and is, a non-testifying expert, Plaintiffs' Objections instead focus on the application of Federal Rule of Evidence 502(a), which provides

> **(a) Disclosure Made in a Federal Proceeding or to a Federal Office or Agency; Scope of a Waiver.** When the disclosure is made in a federal proceeding or to a federal office or agency and waives the attorney-client privilege or work-product protection, the waiver extends to an undisclosed communication or information in a federal or state proceeding only if:
>
> **(1)** the waiver is intentional;
>
> **(2)** the disclosed and undisclosed communications or information concern the same subject matter; and
>
> **(3)** *they ought in fairness to be considered together*.

Fed. R. Evid. 502(a) (emphasis added); *see* Fed. R. Evid. 502(a) Advisory Committee Notes (stating that "subject matter waiver is limited to situations in which a party *intentionally* puts protected information into the litigation in a selective, misleading and unfair manner." (emphasis

---

[6] Although Plaintiffs describe the Special Master's conclusions as "concerning," Plaintiffs have uniformly conceded that Exponent can act "*both* as a litigation and a business consultant". *See* Pl. Obj.'s at 11 (emphasis in the original). Rather than arguing that Exponent did not serve in these dual roles (and thus that work product protection is wholly absent), Plaintiffs' new position (which Defendant also address below) is that they require more extensive privilege logs to police the boundaries of those two roles. This gives up the underlying point that Exponent's work on the Reports is privileged. As such, Plaintiffs have now waived the contention that Exponent was not acting as a non-testifying consultant under Rule 26(b)(4)(D) in preparing the Reports. *Cf. United States v. Quillen*, 335 F.3d 219, 224 (3d Cir. 2003) (citations omitted) ("As a procedural matter, arguments not raised in an appellant's opening brief are deemed waived."). In her R&R, the Special Master addressed at length Plaintiffs' arguments that none of Exponent's work qualified for work product protection, dismissing them all. *See* R&R at 5–7. As Plaintiffs do not revive those contentions here, Defendants will not review them.

8

added)); *Salmon v. Lang*, 57 F.4th 296, 326 (1st Cir. 2022) (quoting the 502(a) Committee Note in construing the applicability of subject matter waiver). Plaintiffs' Rule 502(a) arguments fail.

Special Master Katz correctly determined that, as the provision of the Reports to the FDA was intentional and their contents concern the "same subject matter" as the undisclosed documents, the crux of the analysis becomes the "fairness" prong of Rule 502(a). Her R&R reasonably considered the Advisory Committee Note to Rule 502(a) as persuasive authority[7] for interpreting the scope of the rule, concluding that fairness does *not* demand Defendants turn over anything more than they have already produced or committed to producing:

> None of the cases on which Plaintiffs rely support the conclusion that FRE 502(a)'s fairness prong requires the production of drafts and internal communications for the sake of finding fodder to attack suspected biases of, or outside influences on, Exponent. Instead, they require that Philips produce all the data on which the Final Reports rely so that Plaintiffs have the same opportunity to have a scientific expert perform their own assessment. *That is exactly what Philips has done*.

R&R at 11 (emphasis added). As the Exponent Reports are *self-contained* and—together with their produced supporting data—"stand[] on [their] own," there is no unfairness and no reason to conclude that privilege has been waived broadly as to related documents. *See Baxter Int'l, Inc. v. AXA Versicherung*, 224 F. Supp. 3d 648, 657 (N.D. Ill. 2016).[8]

---

[7]     Plaintiffs half-heartedly contend that Special Master Katz should have looked instead to caselaw construing the "fairness" standard in Federal Rule of Evidence 106. Though the Committee Note to Rule 502(a) observes the two rules share an "animating principle," it would seem an odd takeaway to *prefer* caselaw concerning Rule 106—which governs the admission of evidence—to the on-point Advisory Note to Rule 502(a)—concerning the scope of waiver. In any event, Plaintiffs never make out this whisp of an argument: they fail to tell the Court *how* the Rule 106 cases cited would produce a different result from that reached by the Special Master.

[8]     This is especially so given that Exponent's work is protected by Rule 26(b)(4)(D), which provides special protection to non-testifying consultants. *See, e.g.*, *Appleton Papers Inc. v. U.S. E.P.A.*, 2012 WL 1079884, at *3 (E.D. Wis. Mar. 30, 2012), *aff'd sub nom. Appleton Papers, Inc. v. E.P.A.*, 702 F.3d 1018 (7th Cir. 2012).

In their Objections, Plaintiffs trot out the same parade of off-base cases that were already considered and conclusively distinguished by Special Master Katz. For instance, the Third Circuit's decision in *Westinghouse Elec. Corp. v. Republic of Philippines*, 951 F.2d 1414 (3d Cir. 1991), involved selective disclosure of specific documents by a party to the Government *but not to its litigation adversaries*, *id*. at 1417–18, ("[W]e hold that by disclosing documents to the SEC and to the DOJ, Westinghouse waived both the attorney-client privilege and the work-product doctrine *with respect to those documents*.") (emphasis added). Here, Defendants have already produced to Plaintiffs everything that was submitted to the FDA.

The remainder of Plaintiffs' cited authority interpreting Rule 502(a) is similarly distinguishable. As the Special Master noted, "[m]ost of the other cases on which Plaintiffs rely involved *partial* productions of selective portions of an expert's report," whereas Defendants here "did not produce only portions of Exponent's investigation or reports – [they] produced the entirety of the Final Reports and all the data analyzed by Exponent." R&R at 10–11.

*In re King's Daughters Health Sys., Inc.*, 31 F.4th 520 (6th Cir. 2022), for instance, is distinguishable for several reasons. *First*, the case involved undisclosed supporting information related to an expert medical study that was "necessary to understand" that study. *Id*. at 529. Whereas the Exponent Reports, together with their supporting documents that have already been produced, represent a *self-contained and comprehensible whole*; Plaintiffs already have everything necessary to 'understand' the Reports. *Second*, the materials demanded in *King's Daughters* resemble the very categories of documents that Plaintiffs have already received. *See id*. at 525 (referring to "All records describing or identifying the sampling methodology and the manner in which the medical review was conducted" and "All records identifying the independent experts

10

and the procedures each of them reviewed"). If anything, this suggests that the Sixth Circuit's decision supports *Defendants'* position.[9]

Plaintiffs fare no better in their continued reliance on *United States v. Coburn*, 2022 WL 357217, at *1 (D.N.J. Feb. 1, 2022). There, the court held that the target of a third-party subpoena, Cognizant, had effected a subject matter waiver over certain categories of privileged documents. *Id*. at *7. These categories all related to an internal investigation conducted by Cognizant. A summary of the investigation's findings had subsequently been disclosed to DOJ, which it was argued in *Coburn* entailed a subject matter waiver as to certain related documents, including notes of interviews and other documents that had been summarized for or presented to DOJ. *Id*. But, as the Special Master understood, the underlying documents in *Coburn* are *analogous to the full Exponent Reports and supporting data that Defendants have already produced*, rather than to some nebulous broader set of documents. Further, the *Coburn* court determined that privilege had been waived for these documents with virtually no reasoning, stating the Rule 502(a) waiver standard and then simply announcing how it applied.

Significantly, none of Plaintiffs' cited authority[10] undermines the Special Master's reasoning as to why Defendants have already satisfied Rule 502(a)'s fairness prong: Plaintiffs are

---

[9] Moreover, the holding in *King's Daughters* was reached on review of a mandamus petition opposing the district court's grant of a motion to compel, so the petitioner opposing disclosure had to meet the high bar of showing a "clear and indisputable" right to relief. That petition also arose from a criminal case, so the defendant's "Fifth Amendment due process rights" were implicated to support disclosure. *Id*. at 527–28. Neither of these factors apply to the instant cross-motions.

[10] In *City of Capitola v. Lexington Ins. Co.*, 2013 WL 1087491, at *1 (N.D. Cal. Mar. 13, 2013) (Grewal, Mag. J.), the magistrate judge concluded that the partial disclosure of a consultant's study waived privilege as to the remainder of the same, where there was documentary evidence supporting the conclusion that the undisclosed portions were "damaging" to the privilege holder, *id*. at *1–2. Here, the full Reports have been produced and there is no evidence that the undisclosed documents would be damaging to Defendants. Similarly, in *Rains v. Westminster Coll.*, 627 F. Supp. 3d 1267 (D. Utah 2022) (Rencher, Mag. J.), the magistrate judge granted-in-part the *pro se* plaintiff's motion to compel, concluding that the defendants had effected a subject matter waiver

11

being provided with all the scientific data necessary to understand, evaluate, and critique the Exponent Reports, including:

- The full, unredacted Reports;
- The scientific data analyzed in the Reports, including the lab reports prepared by all of the third-party Labs retained to assess the Foam;
- All other underlying data and facts relied on in the Reports;
- The methodologies, assumptions, and techniques employed by Exponent;
- Limitations Exponent identified to its analyses; and
- Communications between Exponent and the Labs.

R&R at 8 ("In short, Philips produced everything Plaintiffs would need to assess, replicate, and/or challenge Exponent's conclusions."). This ample production satisfies Rule 502(a)'s fairness prong by ensuring Defendants have not made a "selective and misleading presentation of evidence to the disadvantage of the adversary." *See* Fed. R. Evid. 502(a) Advisory Committee Notes.

Plaintiffs misleadingly claim that "nearly three months have passed" since Defendants committed to providing them with Exponents' communications with the Third-Party Labs, yet "Exponent has failed to produce . . . a single communication between Exponent and any third party." Pl. Obj.'s at 8. Plaintiffs omit that Defendants have *already begun producing* these communications, and that production of the same is ongoing. As Plaintiffs will receive all such documents—save those withheld or redacted on independent, attorney-client privilege grounds—they have no fairness argument for breaching work product protection.

Plaintiffs' sole remaining 'contention' regarding fairness combines a misguided critique of Exponent with pure speculation that there may be untoward communications involving Defendants and Defendants' counsel lurking in the wings. As the Special Master aptly described, "Plaintiffs

---

by disclosing multiple, differing versions of an investigative report that had been relied on to terminate the plaintiff, *id*. at 1279–80. But, as the Special Master pointed out, here "in contrast, there is no such confusion about multiple versions of the same Report." R&R at 11.

hope to uncover grounds to challenge the reliability of the Reports – not based on their content – but rather based on speculation Exponent was not truly acting independently." R&R at 9.

Crucially, Plaintiffs present no evidence that Defendants' disclosure of the Exponent Reports and their supporting data constitutes a "misleading" use of the same. To the contrary, Plaintiffs' own arguments *defeat* that conclusion. For example, Plaintiffs complain that Exponent's March 2023 Report does not ▮▮▮▮▮▮[11], Pl. Obj.'s at 8–9, but this just proves the Special Master's point that Plaintiffs are already in a position to evaluate the Reports on their own merits. If Plaintiffs wish to contend that the Reports contain mistakes, then they are free to do so. What they are *not* entitled to is a fishing expedition for documents that are not, in fairness, necessary to evaluate those Reports.

After boldly claiming to have "substantial evidence" to support their speculations, Pl. Obj.'s at 9, Plaintiffs cite ▮▮▮▮▮▮[12] What these odd exhibits have to do with, *e.g.*, Exponent's March 2023 Toxicological Assessment and the test results reported therein, the reader is left to guess.[13]

Accordingly, this Court should adopt the Special Master's conclusion that fairness under Rule 502(a) weighs against subject matter waiver. As Plaintiffs have everything necessary for their own experts to evaluate the Exponent Reports, there is simply no convincing rationale to

---

[11]   *But see supra* at 4 n.2 ▮▮▮▮▮▮

[12]   ▮▮▮▮▮▮

[13]   If Plaintiffs mean to accuse Defendants of falsifying testing results, for instance, then it makes little sense to demand more *Exponent* documents, considering most of the relevant testing has not even been conducted there.

force the disclosure of protected documents.[14]

### C. Plaintiffs Are Receiving the Appropriate Privilege Logs

Plaintiffs' Objections argue in the alternative that, even assuming Exponent's documents and communications related to the Reports remain protected work product, Plaintiffs are still entitled to privilege logs describing all of them (relief not recommended by the Special Master). This would purportedly allow Plaintiffs to police which Exponent materials are to be excluded from discovery. Insofar as this vague demand extends to, *e.g.*, Exponent's communications solely with counsel, this Court should decline Plaintiffs' invitation to expand the scope of its own Pre-Trial Orders and impose a fresh, heavy burden on Defendants, who are *already providing* logs—to the extent necessary—for Exponent communications with Defendants.

*First*, the scope of privilege logging required in this litigation is determined by this Court's Pre-Trial Order 19, ECF No. 661 at 1–2, which *excludes* Parties' and counsels' communications with their litigation consultants, *see id*. at 2 (excluding from logging documents (1) created on or after June 17, 2021, (2) regarding MDL 3014, and that are, *inter alia*, either (3a) "exchanged solely between a party and their outside counsel," or (3b) "opinion work product of outside legal counsel" exchanged with a party, or (3c) "exchanged solely between or among outside counsel for Philips Defendants"). The Special Master correctly determined that Exponent was acting as a non-testifying consultant *for Defendants' litigation counsel* in preparing the Reports. Thus, it necessarily follows that Exponent would be included within the PTO's category of 'legal counsel' when in that role. *Cf. In re Cendant Corp. Sec. Litig.*, 343 F.3d 658, 662 (3d Cir. 2003) (work product "protection extends beyond materials prepared by an attorney to include materials

---

[14] Plaintiffs complain that they would receive more discovery "from a testifying expert than the Special Master has permitted with respect to the Exponent Reports and Summaries." Pl. Obj.'s at 10 n.16. Plaintiffs' issue here is with the Federal Rules themselves. *See supra* at 9 n.8.

14

prepared by an attorney's agents and consultants."). Were it otherwise, the scope of the logging exceptions would be eviscerated and the purpose of the PTO defeated, resulting in the imposition of a massive new discovery burden for Defendants. It would also require Plaintiffs to prepare a privilege log of their communications with their consulting experts.

*Second*, the provision of any sufficiently detailed log of Exponent's communications with Defendants' counsel would inevitably reveal the latter's intangible opinion work product; the logs would reflect a complete history of their strategy, queries, and interests in relevant scientific subjects over the course of this litigation. *See id.* at 662–66 (work product includes documents that would reveal the "mental impressions" or litigation strategy of attorneys). This is exactly why PTO 19 excludes certain opinion work product from any logging requirement.

*Third*, Plaintiffs are essentially demanding a privilege log covering every document and communication in a massive conceptual category that consists, by definition, of content that is not subject to discovery, including communications exclusively between Exponent and Defendants' counsel regarding the Reports and internal Exponent communications related solely to assisting counsel in providing informed litigation advice to Defendants. *Fourth*, given the foregoing, drafting the contemplated logs would present an unreasonably heavy burden for Defendants, forcing them to review vast quantities of clearly privileged documents.

In sum, Plaintiffs' insistence on overbroad privilege logs should be disregarded as inconsistent with PTO 19 and otherwise unsupported.

## IV.  CONCLUSION

For the foregoing reasons, this Court should adopt the Special Master's Report and Recommendation, deny Plaintiffs' Motion to Compel, and grant Defendants' Motion for a Protective Order.

<u>Dated</u>: August 2, 2023               Respectfully submitted,

<div style="margin-left:auto">

<u>*/s/ Lisa C. Dykstra*</u>
Lisa C. Dykstra
lisa.dykstra@morganlewis.com
Morgan, Lewis & Bockius LLP
1701 Market Street
Philadelphia, PA 19103-2921
Tel: (215) 963-5699

*Counsel for Defendant Philips RS North America LLC*

<u>*/s/ William B. Monahan*</u>
William B. Monahan
monahanw@sullcrom.com
Sullivan & Cromwell LLP
125 Broad Street
New York, NY 10004-2498
Tel: (212) 558-7375

*Counsel for Defendants Koninklijke Philips N.V. and Philips North America LLC*

</div>

**CERTIFICATE OF SERVICE**

I hereby certify on this 2nd day of August 2023, a true and correct copy of the foregoing was filed electronically and is available for viewing and downloading from the Court's ECF System.  Notice of this filing will be sent to all counsel of record by operation of the ECF System.

                                                */s/ Lisa C. Dykstra*
                                                Lisa C. Dykstra