# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| IN RE: PHILIPS RECALLED CPAP, BI-LEVEL PAP, AND MECHANICAL VENTILATOR PRODUCTS LITIGATION | : : : : : | Master Docket: No. 21-mc-1230-JFC<br><br>MDL No. 3014 |
| This Document Relates to: | : : | |
| *All Actions* | : : | |

## KONINKLIJKE PHILIPS N.V.'S RESPONSES TO PLAINTIFFS' OBJECTIONS TO KPNV'S PROPOSED EXHIBITS

Michael H. Steinberg
SULLIVAN & CROMWELL LLP
1888 Century Park East
Los Angeles, CA 90067

Tracy Richelle High
William B. Monahan
Elizabeth N. Olsen
SULLIVAN & CROMWELL LLP
125 Broad Street
New York, NY 10004

*Counsel for Defendant Koninklijke Philips N.V.*

## I.   KPNV'S RESPONSE TO PLAINTIFFS' OBJECTIONS TO DX001 – DX006

A central premise of the "expert" opinions of Matthew Dundon and Michael Garbe is that the Philips Defendants, other than KPNV, lack sufficient business records that Dundon/Garbe claim are necessary to run those companies as standalone businesses, including "flash" reports of "orders, production volumes, cash levels and sales." (Joint Report at 5.) Setting aside whether Plaintiffs' theory (even if correct) were actually relevant to the *Enterprise* factors or instead constitute a squabble irrelevant to KPNV on how the non-KPNV Philips Defendants run their businesses,[1] it is telling that the *actual* discovery requests Plaintiffs served on Defendants as part of jurisdictional discovery are nowhere mentioned in the "materials considered" section of the Dundon/Garbe joint expert report. The fact is that Dundon/Garbe never saw the records they claim are absent because *Plaintiffs never asked for them in jurisdictional discovery.* As a result—and solely in the event that Dundon/Garbe testify at the evidentiary hearing to the "absence" of those records—KPNV seeks to admit Plaintiffs' jurisdictional discovery requests to establish that Plaintiffs did not ask for those records.

Plaintiffs object on grounds of relevancy/Rule 403 and hearsay. But documents showing whether Plaintiffs requested certain documents are relevant and necessary for the Court to assess any testimony by Dundon/Garbe about the purported significance of the absence of those documents from the record. *See Walsh* v. *Fusion*, 585 F. Supp. 3d 766, 777-78 (W.D. Pa. 2022) (letter to defendants "requesting documents including, among other items, information regarding former and current employees' identities, hours, salary, timecards, and payroll," was relevant to "show[] what records [the Department of Labor] would have expected Defendants to have" and to

---

[1] Mr. Garbe testified that the joint expert report "offer[s] . . . no opinion" on any of the topics that are the subject of the *Enterprise* factors. (Michael Garbe Dep. Tr. at 116.)

assess "Defendants' failure to keep records"). If Plaintiffs did not seek the very documents Dundon/Garbe now claim are "missing," the discovery requests are themselves relevant.

Plaintiffs also claim that "[t]he scope of any discovery request was the product of numerous meet and confers" and that "considerable production of documents and other discovery not tied to these original requests has occurred in the intervening six months." But these arguments do not go toward admissibility. If Plaintiffs believe that they requested the documents in jurisdictional discovery (they did not) or that correspondence concerning these requests will somehow provide important context, they are free to add those documents to the exhibit list.

Nor is there any "hearsay" purpose for these documents. There is no "truth" being admitted; the only use for these materials is to show the actual requests made by Plaintiffs and whether they encompassed the materials Dundon/Garbe now claim are absent. This is not hearsay. *See* Fed. R. Evid. 801 Advisory Committee Notes to 1972 Proposed Rules ("If the significance of an offered statement lies solely in the fact that it was made, no issue is raised as to the truth of anything asserted, and the statement is not hearsay.").

For these reasons, this Court should deny Plaintiffs' request to exclude DX001 to DX006. If Plaintiffs or Dundon/Garbe make this "missing document" argument at the evidentiary hearing, the requests are relevant and admissible for a non-hearsay purpose.

## II. KPNV'S RESPONSE TO PLAINTIFFS' OBJECTIONS TO DX007

This is another instance where Plaintiffs hope to present a false narrative to the Court at the evidentiary hearing but prevent KPNV from presenting the true facts. In their Complaint, Plaintiffs allege that "as early as 2016 . . . , *Royal Philips* has demonstrated a systematic level of involvement in and control over testing the PE-PUR foam." (ECF No. 785, ¶¶ 306-13 (emphasis added).) To support that allegation, Plaintiffs rely on foam-related test reports from a *Philips Consumer Lifestyle B.V.* ("Consumer Lifestyle") testing facility in the Netherlands (in the city of Drachten). Plaintiffs confirmed their intent to present their flawed theory because they have continued to propose and include organizational charts containing Drachten personnel as exhibits for the hearing. (*See, e.g.*, JX 0036-37.) To defeat this false narrative, on June 1, 2023, KPNV produced DX007, which shows that the Drachten facility is not managed or controlled by KPNV, but instead by Consumer Lifestyle, one of KPNV's European subsidiaries. DX007 further shows that *Respironics*, not KPNV, paid Consumer Lifestyle to perform the limited testing Plaintiffs claim somehow demonstrates that KPNV exercised a "systematic level of involvement and control over testing."

While proof of "systemic level" of control is sorely lacking (raising both relevancy and Rule 403 issues), should Plaintiffs introduce argument or evidence of their false Drachten theory, KPNV is entitled to respond. DX007 is a business record kept in the ordinary course of business and is admissible under FRE 803(6). As can be seen from the screenshots in DX007, the data and invoices included in DX007 are from 2016, years prior to the start of litigation—and entered into the database contemporaneously with the related testing. Because the data is contained in a database, reports such as those reflected in DX007 must be pulled from the database. That occurred in 2023 as part of jurisdictional discovery. But that does not make the report inadmissible, because the underlying data and invoices reflected in DX007 were kept

contemporaneously on the database from which they were pulled. *See Manolovich* v. *Park*, 461 Fed. App'x 187, 191 n.3 (3d Cir. 2012) (rejecting Plaintiff's argument that "reports . . . generated for the purpose of this lawsuit . . . do not fall within the business records exception," as "the business records exception applies to the data contained in a given . . . printout, not the printout itself," and "[t]here is no question that the data contained in the . . . reports is regularly maintained"). If necessary, KPNV would be willing to produce separately from the database each of the records in DX007, although that should not be necessary on such a basic point.[2]

The Court can also reject Plaintiffs' objection under FRE 807, the "Residual Exception." Documents are admissible pursuant to FRE 807 when they are "trustworthy, material, probative, in the interests of justice, consistent with the purposes of the Rules of Evidence, and accompanied by proper notice." *Wezorek* v. *Allstate Ins. Co.*, 2007 WL 1816293, at *2 (E.D. Pa. 2007). DX007 meets all of these requirements. Because the information on DX007 comes from a database maintained in the ordinary course of business, the information reflected in DX007 is trustworthy. One of the primary purposes of the Federal Rules of Evidence is "to administer every proceeding fairly . . . to the end of ascertaining the truth." FRE 102. The Court has expressed a similar goal, noting that the "purpose of the hearing is for [the Court] to have an appropriate record" and "not . . . about hiding the ball." (May 25, 2023 CMC Tr. at 21.) Admission of DX007 serves both of these purposes. By contrast, excluding the exhibit would result in Plaintiffs "hav[ing] the unfettered ability to present their one-sided version of events." *Wezorek*, 2007 WL 1816293 at *5.

---

[2] To be sure, KPNV has not forced this type of time-wasting that Plaintiffs are pressing for here. When Plaintiffs included on their proposed exhibit list documents produced by third parties, for example, KPNV dropped its authenticity objections to streamline these proceedings.

### III. KPNV'S RESPONSE TO PLAINTIFFS' OBJECTIONS TO DX008 & DX009

In what can only be described as an ironic twist, Plaintiffs now object to KPNV's use of the actual testimony of Plaintiffs' experts, Matthew Dundon and Michael Garbe. Plaintiffs' objection is not surprising given those experts' testimony: Mr. Garbe admitted during his deposition, among other things, that he had not "seen any evidence that the corporate form has been disregarded." (Garbe Dep. Tr. at 117.) Mr. Dundon agreed with Mr. Garbe's testimony. (Dundon Dep. Tr. at 13.)

Now, Plaintiffs object to admission of their experts' deposition testimony on grounds of hearsay and "wastefulness" of time. But KPNV previously represented to Plaintiffs that if Dundon/Garbe were both called as witnesses at the evidentiary hearing, KPNV would *not* seek to introduce their deposition transcripts into evidence (except for purposes of impeachment and/or rebuttal). Even to this day, however, Plaintiffs refuse to identify whether they will be calling either of their proposed experts to testify at the hearing, despite proposing additional exhibits related to their joint expert report in the July 20 exhibit exchange. Thus, this dispute is entirely of Plaintiffs' making. Until Plaintiffs disclose whether they will be calling both Dundon and Garbe to testify at the evidentiary hearing, KPNV seeks to admit their respective deposition transcripts pursuant to FRE 804(b)(1).[3] Both Dundon and Garbe are located well beyond the subpoena power of the Court (living in New York and California, respectively) and will thus be "unavailable" for the purposes of FRE 804(a)(5)(A). Thus, their deposition transcripts may be admitted as former testimony of an unavailable witness.

---

[3] Plaintiffs have included the Dundon/Garbe joint expert report on their exhibit list "for identification only." To be sure, it cannot be admitted into evidence, as it is unsworn. *See Fowle v. C & C Cola*, 868 F.2d 59, 67 (3d Cir. 1989) ("Rule 56 . . . requires facts as would be admissible in evidence," and because the "substance of th[e] report was not sworn to by the alleged expert," the report is not "competent to be considered.").

To briefly address Plaintiffs' wastefulness objection, it is unclear how Plaintiffs can simultaneously claim that Dundon/Garbe's joint report is "unquestionably relevant," on the one hand (*see* ECF No. 2116, at 9), while claiming that allowing the Court to review KPNV's examinations of Dundon/Garbe concerning their report, opinions and bases for them would somehow waste the Court's time.  Whether Plaintiffs call Dundon/Garbe or not, KPNV is entitled—whether through cross-examination of them at the hearing, or through their deposition testimony—to rebut a theory Plaintiffs thought was important enough to include in their opposition papers and have made clear they still intend to pursue through their proposed exhibits.  Plaintiffs' pursuit of this theory is what allows KPNV to use the testimony of their own experts against them.

**IV.     KPNV'S RESPONSE TO PLAINTIFFS' OBJECTIONS TO DX010 – DX014**

Plaintiffs' experts (Dundon and Garbe) testified that over the course of their review of the discovery record, they saw "no evidence that the corporate form has been disregarded." (Garbe Dep. Tr. at 117; *see* Dundon Dep. Tr. at 13 (agreeing with Garbe).) Nevertheless, in their joint expert report, they point to the absence of separate cash flow statements for each of KPNV's U.S. *subsidiaries* as somehow being relevant to personal jurisdiction over KPNV. (Joint Report at 8, 10.) But Dundon and Garbe admit, as they must, that KPNV performs the cash flow reconciliation on a *consolidated* basis (*i.e.*, for KPNV and all of its subsidiaries worldwide). Nonetheless, Dundon and Garbe claim that subsidiary-level cash flow reconciliations, which would have been *for internal use* only, are *required* by the International Financial Reporting Standards ("IFRS") outside of the United States, or by Generally Accepted Accounting Principles ("GAAP") within the United States. (*Id.* at 6.) Additionally, they claim that in their view, "only SRC [Sleep and Respiratory Care] has complete and suitable financials." (*Id.* at 16.)

To rebut these flawed assertions, KPNV seeks to introduce the SEC's own materials and the applicable IFRS standards. For example, KPNV seeks to introduce the SEC's Rules for SEC Form 20-F filers (*see* DX014; General Instruction A, discussing who may use Form 20-F), which require only KPNV to (i) provide *consolidated* financial statements (*id.* at Item 8), and (ii) present its financial statements in accordance with the "IFRS as issued by the IASB,"[4] not GAAP. (*See id.* at Item 17(c).) This is not "hearsay"; these are the actual SEC rules for foreign filers, such as KPNV. *See* Fed. R. Evid. Advisory Committee Notes to 1972 Proposed Rules ("If the significance of an offered statement lies solely in the fact it was made, no issue is raised as to the truth of anything asserted, and the statement is not hearsay."). As KPNV's Form 20-F makes

---

[4] The IASB is the International Accounting Standards Board, which is responsible for the creation of the IFRS.

clear, it selected IFRS, not GAAP, so only IFRS applies. The SEC's rules do not require otherwise, which is the sole purpose for KPNV's introduction of the SEC's Form 20-F (DX14).

Next, Plaintiffs suggest that even ignoring the Form 20-F Rules, IFRS "requires" subsidiary-level cash flow reconciliations, and claim that there is something improper about the fact that SRC—which Dundon and Garbe acknowledged is *an operating "segment"* under IFRS—had cash flow reconciliations. (Joint Report at 8, 10, 14-15; Garbe Dep. Tr. at 85-86.) To rebut these incorrect statements, KPNV seeks to introduce the *actual* IFRS standards: IAS 1 (DX012), which defines what is a "general financial statement"; IFRS 8 (DX010), which addresses the accounting treatment for "Operating Segments"; IAS 7 (DX013), which addresses "Statement of Cash Flows"; and IFRS 10 (DX011), which addresses consolidation.

These standards, which Garbe/Dundon acknowledge apply, are not being offered in the sense of "truth" but instead to show what the standards require. *See* Fed. R. Evid. Advisory Committee Notes ("If the significance of an offered statement lies solely in the fact it was made, no issue is raised as to the truth of anything asserted, and the statement is not hearsay."). And even if DX010-DX014 were hearsay, FRE 803(18) allows their admission. Statements "contained in a treatise" are admissible if "the statement is called to the attention of an expert witness on cross-examination" and if "the publication is established as a reliable authority by the expert's admission . . . or by judicial notice." Here, not only were both experts apprised of the standards in cross-examination, both *specifically called out IAS 1 and the IFRS standards* in their Joint Report. (*See* Joint Report Ex. C; *see also* Michael Garbe Dep. Tr. at 34.) Both the IFRS provisions and SEC Form 20-F are indisputably authoritative, a fact Plaintiffs' experts conceded when they cited both in their own Joint Report. Further, the fact that the SEC's Form 20-F *requires* adherence to IFRS is unequivocal evidence of trustworthiness. (Item 20-F at Item 17(c).)

-9-

Dated: August 2, 2023                    Respectfully submitted,

*/s/ Michael H. Steinberg*
Michael H. Steinberg
steinbergm@sullcrom.com
**SULLIVAN & CROMWELL LLP**
1888 Century Park East
Los Angeles, CA 90067
Tel: 310.712.6670

Tracy Richelle High
hight@sullcrom.com
William B. Monahan
monahanw@sullcrom.com
Elizabeth N. Olsen
olsene@sullcrom.com
**SULLIVAN & CROMWELL LLP**
125 Broad Street
New York, NY 10004
Tel: 212.558.4000

*Counsel for Defendant Koninklijke Philips N.V.*