## IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| **IN RE: PHILIPS RECALLED CPAP, BI-LEVEL PAP, AND MECHANICAL VENTILATOR PRODUCTS LITIGATION**<br><br>**This Document Relates to:**<br>*All Actions* | **Master Docket: Misc. No. 21-mc-1230-JFC**<br><br>**MDL No. 3014** |

## PLAINTIFFS' RENEWED BRIEF IN OPPOSITION TO ROYAL PHILIPS' MOTIONS TO DISMISS FOR LACK OF PERSONAL JURISDICTION

## <u>TABLE OF CONTENTS</u>

Table of Authorities ........................................................................................................ iii

INTRODUCTION ............................................................................................................ 1

BRIEF FACTUAL OVERVIEW ..................................................................................... 6

    A.    The Legal Structure of the Philips Companies. .................................................. 6

    B.    Royal Philips' Operational Structure Is Vertically Integrated Into Business Units that Cut Across Legal Boundaries. ........................................... 7

    C.    Royal Philips Acquired Philips RS Which Was Integrated Into a Business Unit Royal Philips Managed and Controlled. ...................................... 9

    D.    Royal Philips Also Controls Its Subsidiaries Through Mandatory Policies. ........ 11

    E.    Royal Philips Contracts with Pennsylvania and Massachusetts Entities. ............. 11

    F.    Royal Philips Had Responsibility for the Quality and Regulatory Failings that Resulted in this Litigation. ........................................................ 12

    G.    Royal Philips' Recall-Related Conduct Illustrates the Level of Control it Exerts over Philips RS. ................................................................................. 13

STANDARD OF REVIEW AND APPLICABLE LAW ............................................... 14

    A.    Standard of Review. ........................................................................................... 14

    B.    Applicable Law. ................................................................................................. 15

ARGUMENT .................................................................................................................. 15

I.     General Jurisdiction. ..................................................................................................... 15

    A.    General Personal Jurisdiction Legal Standard ................................................... 15

    B.    Royal Philips Is Subject to General Jurisdiction Because Philips RS, Philips NA and PHUSA Are its Alter Egos. ..................................................... 16

II.    Specific Personal Jurisdiction. ..................................................................................... 16

    A.    Legal Standard Governing Specific Jurisdiction. .............................................. 16

    B.    *All of Plaintiffs' State Law Claims*: Royal Philips is Subject to Specific Jurisdiction in Pennsylvania and Massachusetts for all Plaintiffs' Claims Based on its own Direct Actions. ......................................... 17

        1.    Royal Philips Conduct Satisfies the Pennsylvania and Massachusetts Long-Arm Statutes. ..................................................... 17

        2.    Royal Philips Purposely Availed Itself of the Benefits and Protections of Pennsylvania and Massachusetts Law. ........................... 19

        3.    Plaintiffs' Claims Arise out of and Relate to Royal Philips' Fifteen-Year History of Contacts with Pennsylvania and Massachusetts. ............ 24

4.   The Exercise of Specific Personal Jurisdiction over Royal Philips in Pennsylvania and Massachusetts Comports with Traditional Notions of Fair Play and Substantial Justice.............................. 27

C.   *Negligent Recall/Failure to Recall Claims:* Royal Philips Is Subject to Specific Jurisdiction in Each Forum for Plaintiffs' Recall-Related Negligence Claims Based on its own Direct Actions. ........................... 28

1.   Royal Philips' Recall Contacts Satisfy Each Forum's Long-Arm Statute. ...................................................................... 29

2.   Royal Philips' Recall Involvement Exploits the Benefits and Protections of Each Forum's Laws. ......................................... 29

3.   Plaintiffs' Recall-Related Negligence Claims Arise out of and Relate to Royal Philips' Direct Contacts with each Forum. ................... 31

4.   The Exercise of Specific Jurisdiction over Royal Philips in Each Forum on Plaintiffs' Recall-Related Negligence Claims Comports with Traditional Notions of Fair Play and Substantial Justice................ 31

D.   *Federal RICO Claim:* Royal Philips Is Subject to Specific Jurisdiction for Plaintiffs' RICO Claims Based on its own Direct Actions................................. 32

1.   The Legal Standard For Specific Jurisdiction on Plaintiffs' Federal RICO Claim ...................................................................... 32

2.   For Plaintiffs' RICO Claim, Royal Philips Is Subject To Specific Jurisdiction Based On Its Aggregate Contacts With The United States As A Whole. ....................................................... 33

III.   Alter Ego Personal Jursidiction ......................................................................... 33

A.   Legal Standard Governing Alter Ego Jurisdiction.................................................. 33

B.   Royal Philips Is Subject to Personal Jurisdiction Because Philips RS Is the Alter Ego / Agent of Royal Philips. ............................................................. 35

1.   *Enterprise* Factor 10: Royal Philips Exerted the Requisite Control Over Philips RS.................................................................... 36

2.   *Enterprise* Factors 1 through 9: The Remaining Enterprise Factors Also Show that Philips RS Is the Alter Ego / Agent of Royal Philips...... 43

CONCLUSION ................................................................................................... 47

APPENDIX .................................................................................... A-1 through A-13

ii

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*Barnes v. Merck & Co.*,
    2023 WL 35359 (D. Mass. Jan. 4, 2023) ........................................................................... 18, 19

*Beemac, Inc. v. Republic Steel*,
    2021 WL 2018681 (W.D. Pa. May 20, 2021) .................................................................. passim

*Cardell Fin. Corp. v. Suchodolski Assocs., Inc.*,
    2012 WL 12932049 (S.D.N.Y. July 17, 2012) ........................................................................ 35

*Carteret Sav. Bank, FA v. Shushan*,
    954 F.2d 141 (3d Cir. 1992) ............................................................................................... 14, 32

*Colvin v. Van Wormer Resorts, Inc.*,
    417 F. App'x 183 (3d Cir. 2011) ............................................................................................. 32

*Composite Co. v. Am. Int'l Grp., Inc.*,
    988 F. Supp. 2d 61 (D. Mass. 2013) ....................................................................................... 24

*Cory v. Aztec Steel Bldg., Inc.*,
    468 F.3d 1226 (10th Cir. 2006) ............................................................................................... 32

*Craig v. Lake Asbestos of Quebec*,
    843 F.2d 145 (3d Cir. 1988) .................................................................................................... 35

*Directory Dividends, Inc. v. SBC Comm., Inc.*,
    2003 WL 21961448 (E.D. Pa. July 2, 2003) .......................................................................... 37

*Doucet v. FCA US LLC*,
    210 N.E.3d 393 (Mass. 2023) ........................................................................................... 18, 24

*EQT Prod. Co. v. Aspen Flow Control, LLC*,
    2020 WL 6545997 (W.D. Pa. Nov. 6, 2020) .......................................................................... 24

*Exxon Mobil Corp. v. Attorney General*,
    94 N.E.3d 786 (Mass. 2018) ................................................................................................... 18

*Ford Motor Co. v. Montana Eighth Jud. Dist. Ct.*,
    141 S. Ct. 1017 (2021) ............................................................................................... 19, 24, 31

*Gasbarre Prods., Inc. v. Diamond Auto. Grp. Fl., Inc.*,
    2017 WL 1102652 (W.D. Pa. Mar. 23, 2017) .................................................................. 35, 45

*Greene v. New Dana Perfumes Corp.*,
    287 B.R. 328 (D. Del. 2002) ................................................................................................... 35

*Guy Chem. Co. v. Romaco S.p.A.*,
   2009 WL 840386 (W.D. Pa. Mar. 27, 2009) ............................................................ 24

*Helicopteros Nacionales de Colombia, S.A. v. Hall*,
   466 U.S. 408 (1984) ............................................................................................ 15

*Hooper v. Safety-Kleen Sys. Inc.*,
   2016 WL 7212586 (W.D. Pa. Dec. 13, 2016) .................................................. passim

*In re Asbestos Prod. Liab. Litig. (No. VI)*,
   921 F.3d 98 (3d Cir. 2019) ................................................................................. 28

*In re Atrium Med. Corp. C-Qur Mesh Prod. Liab. Litig.*,
   299 F. Supp. 3d 324 (D.N.H. 2017) ................................................................... 15

*In re Auto. Refinishing Paint Antitrust Litig.*,
   358 F.3d 288 (3d Cir. 2004) ............................................................................... 32

*In re Cathode Ray Tube (CRT) Antitrust Litig.*,
   2017 WL 5972721 (N.D. Cal. Feb. 27, 2017) ............................................... 36, 42

*In re Chocolate Confectionary Antitrust Litig.*,
   602 F. Supp. 2d 538 (M.D. Pa. 2009) ................................................................ 34

*In re Chocolate Confectionary Antitrust Litig.*,
   674 F. Supp. 2d 580 (M.D. Pa.) ..................................................................... passim

*In re Enterprise Rent-A-Car Wage & Hour Employment Practices Litig.*,
   735 F. Supp. 2d 277 (W.D. Pa. 2010) ........................................................... passim

*In re Latex Gloves Prods. Liab. Litig.*,
   2001 WL 964105 (E.D. Pa. Aug. 22, 2001) .................................................. passim

*In Re Methyl Tertiary Butyl Ether ("MTBE") Prod. Liab. Litig.*,
   2021 WL 3371938 (S.D.N.Y. Aug. 3, 2021) ............................................... 41, 46

*Ins. Corp. of Ireland v. Compagnie des Bauxites de Guinee*,
   456 U.S. 694 (1982) ............................................................................................ 28

*Int'l Shoe Co. v. Washington*,
   326 U.S. 310 (1945) ............................................................................................ 17

*Kubik v. Letteri*,
   614 A.2d 1110 (Pa. 1992) ................................................................................... 17

*Laurel Gardens, LLC v. Mckenna*,
   948 F.3d 105 (3d Cir. 2020) ......................................................................... 4, 32, 33

*Mallory v. Norfolk Southern Rwy.*,
   143 S. Ct. 2028 (2023) ........................................................ 15, 16, 28

*McGee v. Int'l Life Ins. Co.*,
   355 U.S. 220 (1957) ........................................................ 31

*Mellon Bank (East) PSFS Nat'l Assoc. v. Farino*,
   960 F.2d 1217 (3d Cir. 1992) ........................................... 20, 24, 31

*Mold Medics LLC v. Amer. Rest. Corp.*,
   2022 WL 3999886 (W.D. Pa. Sept. 1, 2022) ............................ 19

*Neopart Transit, LLC v. Mgmt. Consulting*,
   2017 WL 714043 (E.D. Pa. Feb. 23, 2017) ............................. 14

*O'Connor v. Sandy Lane Hotel Co.*,
   496 F.3d 312 (3d Cir. 2007) ........................................... passim

*O'Neal v. Bumbo Int'l Tr.*,
   16 F. Supp. 3d 952 (S.D. Ind. 2014) ................................... 31

*Pennzoil Prods. Co. v. Colelli Assocs., Inc.*,
   149 F.3d 197 (3d Cir. 1998) ........................................... 27

*Pinker v. Roche Holdings Ltd.*,
   292 F.3d 361 (3d Cir. 2002) ........................................... 32

*PPG Indus. v. Jiangsu Tie Mao Glass Co.*,
   2020 WL 1526940 (W.D. Pa. Mar. 31, 2020) ............................ 19

*Robert Bosch LLC v. Alberee Prod., Inc.*,
   70 F. Supp. 3d 665 (D. Del. 2014) ..................................... 5

*Shuker v. Smith & Nephew, PLC*,
   885 F.3d 760 (3d Cir. 2018) ........................................... 33

*Simeone ex rel. Estate of Albert Francis Simeone, Jr. v. Bombardier-Roxax GmbH*,
   360 F. Supp. 2d. 665 (E.D. Pa. 2005) ................................. 34, 40, 44

*Solta Med., Inc. v. Lumenis, Inc.*,
   454 F. Supp. 3d 107 (D. Mass. 2020) .................................. 3, 18

*UHS of Del. Inc. v. United Health Servs. Inc.*,
   2015 WL 539736 (M.D. Pa. Feb. 10, 2015) ............................. passim

*United Dairy, Inc. v. Bayshore Indus.*,
   2015 WL 5311297 (W.D. Pa. Sept. 11, 2015) ........................... 19

*Williams by Williams v. OAO Severstal,*
  2019 WL 4888570 (Pa. Super. Ct. Oct. 3, 2019) ............................................................ 41, 42

*World-Wide Volkswagen Corp. v. Woodson,*
  444 U.S. 286 (1980) ........................................................................................................ 17

**Statutes**

18 U.S.C § 1965(b) ................................................................................................................ 32

42 Pa. C.S. § 5322(b) ............................................................................................................ 17

Mass. Gen. Laws ch. 223A, § 3 ............................................................................................ 18

**Rules**

Fed. R. Civ. P. 4(k)(1)(A) ...................................................................................................... 16

**Regulations**

21 C.F.R. § 820.20 ............................................................................................................ 12, 26

## INTRODUCTION

Pursuant to the Court's instruction at the August 8, 2023 hearing, Plaintiffs submit this renewed opposition to Defendant Koninklijke Philips N.V.'s ("Royal Philips") Motions to Dismiss based on a lack of personal jurisdiction pursuant to Rule 12(b)(2).

Royal Philips is the ultimate parent of the Philips Group ("Philips"), a multi-national conglomerate that includes Philips RS North America LLC ("Philips RS"), Philips North America LLC ("Philips NA"), Philips RS North America Holding Corporation ("Philips RS Holding"), and Philips Holding USA, Inc. ("PHUSA"). Outside litigation, Royal Philips has admitted its involvement with and responsibility for the sale of millions of defective CPAP, BiPAP, and ventilator devices throughout the United States. In June 2021, Royal Philips announced a Class I recall ("the Recall") because the PE-PUR foam "may degrade into particles which may enter the device's air pathway and be ingested or inhaled by the user, and the foam may off-gas certain chemicals." JX-4. Plaintiffs bring multiple claims for relief arising from the harms caused by these defective devices.[1]

Unable to escape the consequences of its actions, Royal Philips seeks to evade liability by pointing the finger at its subsidiary, Philips RS, and arguing that it is beyond the jurisdictional reach of this and any other U.S. court. *See* ECF No. 914; ECF No. 1355. However, this limited defense is belied by the facts and evidence. Since at least 2008, Royal Philips has had systematic and intentional business relationships with entities and individuals located in Pennsylvania and Massachusetts. It has continuously maintained board members who not only have responsibility

---

[1] Plaintiffs' allegations are set forth in three master complaints: Plaintiffs' Consolidated Third Amended Complaint for Economic Losses (ECF No. 785; "Economic Loss Complaint"), Plaintiffs' Consolidated Second Amended Complaint for Medical Monitoring (ECF No. 810; "Medical Monitoring Complaint") and Amended Master Complaint for Personal Injuries (ECF No. 834; "Personal Injury Complaint").

for managing businesses in those states, but who work and even live in those states. Beyond these incessant direct contacts, Royal Philips has organized management of its co-Defendant subsidiaries to ensure control: Royal Philips has centralized decision making, stripped hiring and firing power from its subsidiaries, prevented the distribution of annual operating plans and dividends absent its approval, and given employees of Philips International and Philips North America authority over employees of Philips RS.

At bottom, this is a simple case. Based on its overwhelming direct contacts and the organization-wide management it chose to implement, Royal Philips is subject to both general and specific jurisdiction in the multi-district litigation as follows:

**Consent.** Royal Philips has consented to personal jurisdiction in Pennsylvania on Plaintiffs' negligent failure to recall/negligent recall claims in Pennsylvania.

**General Jurisdiction**. Royal Philips is subject to general jurisdiction in Pennsylvania, and Massachusetts because it has an alter ego and/or agency relationship with its subsidiaries that are subject to general jurisdiction in those states.

**Specific Jurisdiction**. The Court has specific jurisdiction over Royal Philips for its own activities. Royal Philips is: (1) subject to specific jurisdiction in Pennsylvania and Massachusetts for all of Plaintiffs' claims based upon its own direct activities; (2) subject to specific jurisdiction in every forum for Plaintiffs' recall-related claims based on its own direct activities, and (3) is subject to specific jurisdiction in this Court for Plaintiffs' RICO claims because Royal Philips has significant contacts with the United States as a whole. In addition, Royal Philips is subject to specific jurisdiction because it has an alter ego and/or agency relationship with its subsidiaries are subject to (and have consented to) specific jurisdiction on all Plaintiffs' claims.

*First,* with respect to specific jurisdiction for Royal Philips' direct activities, it bears stating

2

in simple terms. While Royal Philips claims to be a foreign company, incorporated in the Netherlands, its ongoing course of conduct leaves no doubt—for at least fifteen years, Royal Philips has ongoing business relationships, including contracts to perform services relating to the manufacture, marketing, sale, and quality of the CPAP, BiPAP, and ventilator devices at issue (the "Recalled Devices"), with entities in Pennsylvania and Massachusetts. Royal Philips' activities and contractual relationship satisfy the Pennsylvania and Massachusetts long-arm statutes and the Due Process Clause of the Fourteenth Amendment. This long history of contacts and physical presence directly related to the Recalled Devices goes well beyond the "minimum contacts" required. This simply is not a close case.

Relating to the Recalled Devices, Royal Philips has, among more, entered into many ongoing contractual arrangements with Pennsylvania- and Massachusetts-based companies, wired money to and from these states, established business relationships with in-state entities, directed business in these states through emails and other communications targeted at in-state people and entities, and has—quite dispositively--had its own employees live and work in these states. The sum and substance of these relationships proves well beyond a preponderance that Royal Philips has "reached out to some extent beyond its home" to "create[] a continuing business relationship" in Pennsylvania and Massachusetts. *See Beemac, Inc. v. Republic Steel*, 2021 WL 2018681, at *4-5 (W.D. Pa. May 20, 2021) (personal jurisdiction where foreign defendant "engag[ed] in business activities with a forum resident"); *Solta Med., Inc. v. Lumenis, Inc.*, 454 F. Supp. 3d 107, 113 (D. Mass. 2020) (personal jurisdiction over parent due to "ongoing and collaborative relationship" with its Massachusetts subsidiary).

*Second*, as to Plaintiffs' recall-related claims, Royal Philips concedes it is subject to jurisdiction in Pennsylvania but then argues that its conduct managing and executing the Recall

fails to touch every state where Royal Philips has performed negligently. ECF No 914 at 4, 13-14. The overwhelming weight of evidence demonstrates Royal Philips initiated, oversees, and internally claims accountability for the ongoing Recall—i.e. Royal Philip appointed its own executives to manage the Recall, including through targeted outreach to users in all states, Washington D.C., and Puerto Rico. The same conduct that Royal Philips concedes subjects it to jurisdiction in Pennsylvania applies with equal force in each forum.

*Third*, for Plaintiffs' federal RICO claim, Royal Philips is subject to specific jurisdiction based on its undeniable contacts with the United States "as a whole." *Laurel Gardens, LLC v. Mckenna*, 948 F.3d 105, 122 (3d Cir. 2020) (inquiry is national interest in furthering federal statute's policies). Well beyond the Pennsylvania and Massachusetts contacts (which would alone suffice), Royal Philips has sought to exploit protections and markets of the United States by, for example, employing individuals including the executives in charge of the Recalled Device's business and Patient Safety, and has acquired the U.S.-intellectual property rights for the Recalled Devices,

*Finally*, Royal Philips is subject to general and specific jurisdiction because its U.S. subsidiaries are its alter egos and/or agents. Pursuant to the alter-ego and agency doctrines, even if Royal Philips had no contacts with any forum and would not, on its own, be subject to personal jurisdiction, it nevertheless falls within the Court's jurisdictional reach because it exercises control over its U.S. subsidiaries that "exceed[s] the usual supervision that a parent exercises over a subsidiary." *UHS of Del. Inc. v. United Health Servs. Inc.*, 2015 WL 539736, at *3-4 (M.D. Pa.

Feb. 10, 2015); *Hooper v. Safety-Kleen Sys. Inc.*, 2016 WL 7212586, at \*6 (W.D. Pa. Dec. 13, 2016).[2]

Plaintiffs walk through the alter-ego analytical framework below, including an analysis of the *Enterprise* Factors.[3] Of particular importance here is the fact that Royal Philips has specifically chosen to operate its group of subsidiaries in vertically integrated strategic business units rather than the typical parent-subsidiary relationship (holding company model) that the Court saw in *Enterprise*. Under Philips' chosen framework, business units are organized by product and geography, with corporate boundaries not just permeable but ignored. The result is business units, including the units responsible for the Recalled Devices, are comprised of and managed by representatives from various Royal Philips' subsidiaries (not just Philips RS) and Royal Philips itself. Simply put, Royal Philips controls each business unit, and through this structure, each subsidiary.

There is nothing controversial about Plaintiffs' assertion that the management model implemented by Royal Philips supports a finding that its subsidiaries are its alter egos. Since *Enterprise*, multiple courts have applied the "key fact[s]" identified in that case, *In re Enterprise*, 735 F. Supp. 2d at 324-25, and concluded that where a large corporation managed its subsidiaries as Royal Philips does here that the alter-ego doctrine provided a basis for personal jurisdiction. *See, e.g.*, *Hooper*, 2016 WL 7212586 at \*6; *UHS*, 2015 WL 539736 at \*15. The facts and structures present in these cases where Pennsylvania courts have concluded the alter ego doctrine applied are

---

[2] *See Robert Bosch LLC v. Alberee Prod., Inc.*, 70 F. Supp. 3d 665, 678-79 (D. Del. 2014) (agency doctrine of personal jurisdiction also turns on the foreign defendant's control of the in-state entity).
[3] This Court articulated 10 factors to be used in analyzing alter ego issue in *In re Enterprise Rent-A-Car Wage & Hour Employment Practices Litig.*, 735 F. Supp. 2d 277, 306 (W.D. Pa. 2010) ("*In re Enterprise*"). Those factors are referred to herein as the "*Enterprise* Factors."

5

reflected here, where, for example, Philips RS was ███████████████████ ██████████████████████████████████████████

The facts that are set forth below establish that the exercise of jurisdiction is proper. Accordingly, Royal Philips' motions to dismiss should be denied.

**BRIEF FACTUAL OVERVIEW**

**A.      The Legal Structure of the Philips Companies.**

Royal Philips is a Dutch company headquartered in the Netherlands. During the relevant period, Royal Philips has owned, directly or indirectly, approximately 300 subsidiaries worldwide, including its co-defendants in this litigation PHUSA, Philips NA, Philips RS Holding, and Philips RS. JX-234 at 124;[4] *see* also JX-6 (2009 legal org. chart); JX008 (2022 legal org. chart). Royal Philips has a two-tiered board structure, consisting of a Board of Management and a Supervisory Board. JX-234 at 62, 117. Its Board of Management is "entrusted with the management of the company," and together with other officers appointed to fulfill those duties, constitute Royal Philips' Executive Committee. JX-234 at117.[5] To assist the Court, Plaintiffs provide a list of Royal Philips' relevant officers and directors at Exhibit 1.

Royal Philips' U.S. subsidiaries include PHUSA, Philips NA, Philips RS Holding, and Philips RS. Each of these entities has consented to personal jurisdiction on all of Plaintiffs' claims in this litigation. The precise legal form of these entities has shifted over time. Initially, Philips RS and Philips NA were both corporations (and Philips RS Holding was nonexistent). *See, e.g.*, JX-6.

---

[4] Citations to "JX-__" refer to joint exhibits previously provided to the Court that will jointly be moved into evidence at the evidentiary hearing. Citations to "PX-__" refer to Plaintiffs' exhibits to be moved into the record at the hearing and provided to the Court pursuant to the Parties' stipulation, ECF No. 2168, currently pending before the Court. For a list of all exhibits Plaintiffs intend to rely on at the hearing, *see* Ex. 2. For Plaintiffs' hearing witness list *see* Ex. 3.
[5] "The Board of Management is accountable for the actions and decisions of the Executive Committee and has ultimate responsibility for the company's external reporting." JX-234 at 117.

6

For various reasons, including "increased quality and compliance" and to implement standardized quality management systems, JX-7 at 5-6, Philips NA and Philips RS were converted to limited liability companies in 2017 and 2020, respectively, *see* JX-10 at 80:7-22, 82:5-83-5. JX-9 (describing 2020 changes).

At the time Plaintiffs filed their Complaints, PHUSA was a Delaware corporation with its principal place of business in Massachusetts, *see* ECF No. 815 ¶ 91; Philips NA was a Delaware LLC with its principal place of business in Massachusetts, *see* ECF No. 815 ¶ 90; Philips RS Holding was a Delaware corporation with its principal place of business in Massachusetts, *see* ECF No. 815 ¶ 93; and Philips RS was a Delaware LLC with its principal place of business in Pennsylvania, *see* ECF No. 815 ¶ 92.

### B. Royal Philips' Operational Structure Is Vertically Integrated Into Business Units that Cut Across Legal Boundaries.

During the relevant period, Royal Philips made a ████████████████████

████████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████

████████████ . This is different than a typical parent-subsidiary relationship where the parent sits above the subsidiary who runs that business independently. Instead, since at least 2012, ████████

████████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████████

████████████████████████████ ; JX-10 at 103:6-9 (PBS governs all of Philips).

Philips' functional management is intentionally structured to cut across corporate boundaries—designed to create ████████████████████████████████████████████████

███████████████████████████████████████████████

███████████████████████████████████████████████

███████████████████████████████████████████████

████████████████████████████████████████. In other words, customers of Philips' products are reached through collaboration between a business and a market—which may be, as for the Recalled Devices, roles primarily assigned to separate legal entities. Within these business units, called "Clusters" by Philips, are businesses, that also cut across entity lines, arranged by product or service type, as opposed to legal entity structure. For example, the Recalled Devices are part of Sleep & Respiratory Care ("SRC") which is part of the Connected Care Cluster.[6] Through the matrix structure, SRC sales in the United States are managed by Market North America, run by Philips NA and led by a member of the Royal Philips Executive Committee. *See* JX-24 at 10, 15 ("Businesses and Markets bear joint accountability for managing the operational end-to-end consumer and customer value chain, quality and regulatory compliance and the collaborative profit and loss account (P&L)."). This structure results in blurred corporate boundaries with all ultimate decision-making controlled by Royal Philips.

*Employee roles are shared*. There is no question that talent is shared across entity boundaries. JX-5 at 20; JX-24 at 26. In fact, internal organizational charts[7] typically fail to indicate which legal entity "employs" which individuals. This has caused Royal Philips to incorrectly

---

[6] SRC was initially created as a sub-group under a more general "Patient Care & Monitoring Solutions" business, until it was moved under the "Personal Health" Cluster in 2016. JX-240; JX-239 at 32. In 2019, the SRC Business was moved to the "Connected Care" Cluster. JX-236 at 14.

[7] Royal Philips purportedly maintains organization charts under version control, readily accessible on its intranet. JX-24 at 16 ██████████████████████████████
███████████████████████████████████████████████
███████████████████████████████████████████████
██████████

identify the "employing entity" of relevant Philips employees. *See, e.g.*, JX-112 (correcting JX-28 regarding Aliette van der Wal).

**Royal Philips manages each "cluster."** Each of the business units, which cut across various Philips' entities, are managed vertically, up and through the Royal Philips' Executive Committee level, with essential operations and functions provided by and reported through Royal Philips' representatives. JX-24 at 10-16 (describing Executive Committee management); JX-10 at 114:3-7, 115:19-23 (Executive Committee manages by cluster).

As a result of its structure, Royal Philips employees have had managerial authority over Philips RS and Philips NA employees, and Royal Philips frequently assigns employees from Philips NA and other subsidiaries to manage Philips RS. One example of this dynamic is that sales and marketing of the Recalled Devices was led by Pennsylvania-based Vitor Rocha who was the CEO of Philips NA and a member of the Royal Philips Executive Committee. *See* JX-40 at 2; JX-5 at 10; JX-28 at 3-6. Despite having no formal position within Philips RS, Mr. Rocha manages sales and marketing employees responsible for SRC products, including Eline de Graaf, *see* JX-40 at 5, herself a manager and officer of Philips RS. *See* JX-41.[8]

### C.    Royal Philips Acquired Philips RS Which Was Integrated Into a Business Unit Royal Philips Managed and Controlled.

Royal Philips and Philips RS "became 1 [one] in 2008 when Philips acquired Respironics." JX-14 at 5. On December 21, 2007, Royal Philips announced it would acquire Pennsylvania-headquartered medical device manufacturer Philips RS, then known as Respironics, Inc., in an

---

[8] These are just some of numerous examples of direct managerial control across legal and organizational boundaries by design. *See, e.g.*, JX-42 (Philips' Chief Medical Office is led by Jan Kimpen of Philips International, who manages Gary Lotz); *see also* JX-5 at 10 (Ronald Tabaksblat identified as Head of Business Transformation Royal Philips); JX-10 at 135:2-5) (claiming Mr. Tabaksblat works for Philips International).

approximately $5.1 billion cash offer funded by Royal Philips and effectuated through PHUSA. *See* JX-14 at 4; JX-15 (answer to interrogatory 11); JX-16; JX-17. Royal Philips sought to exploit the overlap between the two companies' businesses, *see* JX-17 at 6, 7 ("Home Healthcare will be huge market . . . ."), and arranged for Philips RS to become "the headquarters for Philips Home Healthcare Solutions group within Philips Healthcare." JX-16 at 5; *see* JX-17 at 12. From the outset, the CEO of Philips Healthcare, Steve Rusckowski, who was also a member of the Royal Philips Board of Management and/or Executive Committee, was responsible for Pennsylvania-based Philips RS and its products. *See* JX-15 (answer to interrogatory 8); JX-16; Exhibit 1.

The acquisition and integration of Philips RS gave Royal Philips "a leading position in the fast-growing areas of sleep management, respiratory care and non-invasive ventilation." JX-26 at 13. Royal Philips declared the integration "successfully completed" in 2009, JX-21 at 20, but also

██████████████████████████████████████████████████████

████████████████████████

Since 2008, Royal Philips has managed its sleep and respiratory care products, including the Recalled Devices, in a business unit not limited to corporate boundaries and was controlled by Royal Philips. Prior to January 1, 2019, the CPAP, BiPAP, and ventilator products at issue were managed in a vertical business called "Personal Health," JX-26 at 11; JX-25 at 10, and from 2019 forward, the Recalled Devices have been managed as part of Royal Philips' "Connected Care" business, that is led by a Royal Philips Executive Committee member. *See* JX-24 at 12. The SRC business itself cuts across corporate boundaries. JX-404 (listing sources of revenue in SRC business); *see also* JX-10 at 87:7-21 (RespirTech is separate entity); JX-8 at 4 (RespirTech separate from Philips RS); JX-32 at 41-42; JX-33; JX-34 at 7 (RespirTech managed by Sleep &

Respiratory Care). Whether called Home Healthcare Solutions or SRC, Royal Philips has implemented management and operations for the Recalled Devices by product not legal entity.

**D.      Royal Philips Also Controls Its Subsidiaries Through Mandatory Policies.**

Royal Philips also exerts control over its subsidiaries, including Philips RS, though a web of contracts and ███████████████████████████████████████████████████

████████" at Philips, including Philips RS employees and others responsible for the Recalled Devices. JX-24 at 17. Examples include the General Business Principles and the Quality Policy, which set out the guiding principles on Quality and are also used to manage compliance certification throughout all of Philips. *Id.* The General Business Principles are mandatory and are enforced through a monitoring network run by the Royal Philips Executive Committee. JX-24 at 27; JX-27 at 15-16 ("Violations of the General Business Principles will result in disciplinary action, up to and including dismissal."); JX-10 at 126:20-127:11, 131:7-134:4.

**E.      Royal Philips Contracts with Pennsylvania and Massachusetts Entities.**

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

██████████████████████████████████████ Not only are these direct contractual relationships with Pennsylvania-based and Massachusetts-based companies, but they also give Royal Philips control over these entities and blur corporate boundaries.

These contracts provide for the performance of services, the exchange of intellectual property, and impose various obligations on the U.S. subsidiaries, obligations that inure to the benefit of Royal Philips. For example, the ████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████

██ ████ ██ ██ ████ █████ ██ █ █████ █████ █

████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████

███████████████████████████

**F.** **Royal Philips Had Responsibility for the Quality and Regulatory Failings that Resulted in this Litigation.**

████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████

████████████████████

Royal Philips has long assumed direct responsibility for quality and regulatory obligations.

████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████

████████████████████. FDA regulations require executive management oversight of quality. *E.g.*, 21 C.F.R. § 820.20 (requiring management responsibility over quality). ██████

████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████

██████████████████████████████████████████████████████████

██████████████████████████████████████████████████████████

██████████████████████████████████████████████████; JX-35

(leadership locations document for FDA); JX-29; JX-36 (Q&R org chart) at 2, 7; JX-37 (January 1, 2015 Q&R org chart); JX-28 at 3-6.

The health risks associated with the Recalled Devices were within the purview of the Quality and Regulatory functions expressly assumed by Royal Philips. Philips' Chief Medical Office "routinely assess[es] health risks associated with [its products]." *See* JX-108 (Philips RS answer to interrogatory 46). Similar to the quality and regulatory function, the Philips Companies' Chief Medical Office is constructed without regard for any separate legal identity of Royal Philips, Philips RS, or Philips NA, and operates on a cross-entity basis with leadership at the pan-Philips level. The Chief Medical Officer, head of the Chief Medical Office, Jan Kimpen, *see* JX-42, JX-215, was identified by Royal Philips in September 2022 as a Royal Philips employee. JX-28. On July 26, 2023, Royal Philips revised its disclosure an identified Mr. Kimpen as an employee of Philips International B.V. PX-I.[9]

### G.    Royal Philips' Recall-Related Conduct Illustrates the Level of Control it Exerts over Philips RS.

The SRC business line is an important part of Royal Philips' business. In 2020, Sleep & Respiratory Care constituted 49% of Royal Philips' total sales in the Connected Care business unit, which, in turn, accounted for 28% of Royal Philips' sales of about €19.5 billion. JX-235 at 13, 16. Philips sold millions of the Recalled Devices throughout the United States and across the globe,

---

[9] Mr. Kimpen's deposition is scheduled for August 30, 2023. To the extent his employment for Philips International is confirmed, Plaintiffs can amend to name Philips International as a defendant.

and, to protect that revenue stream, ████████████████████████████

████████████████████████████████████████████████

There can be little doubt that Royal Philips knew, or at a minimum should have known, from the moment it acquired Philips RS that the PE-PUR foam was unsuitable for use in its machines. ████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████

It was Royal Philips, not Philips RS or Philips NA or PHUSA, that dictated the ultimate, belated response. ████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

███████████████

## STANDARD OF REVIEW AND APPLICABLE LAW

### A.  Standard of Review.

When a defendant contests personal jurisdiction, the plaintiff must come forward with sufficient facts to establish jurisdiction by a preponderance of the evidence. *Carteret Sav. Bank, FA v. Shushan*, 954 F.2d 141, 146 (3d Cir. 1992). Where, as here, the claims stem from the same underlying conduct, claim-specific analysis is unnecessary. *See O'Connor v. Sandy Lane Hotel Co.*, 496 F.3d 312, 317 n.3 (3d Cir. 2007); *Neopart Transit, LLC v. Mgmt. Consulting*, 2017 WL

714043, at *4 (E.D. Pa. Feb. 23, 2017); *Beemac*, 2021 WL 2018681, at *4 (analyzing claims simultaneously). However, because Royal Philips attempts (incorrectly) to distinguish between the recall-related negligence claims and all other claims (*see* ECF No. 914; ECF No. 1355), Plaintiffs address those two categories of claims separately.

### B.    Applicable Law.

In the multidistrict litigation context, "[w]hen analyzing claims under state law, the transferee court must apply the state law that would have applied had the cases not been transferred for consolidation." *In re Enterprise*, 735 F. Supp.2d at 306 (W.D. Pa. 2010) (internal quotation marks omitted). However, the analysis itself is conducted according to the law of the circuit where the transferee court sits—in this case, the Third Circuit. *See, e.g.*, *In re Atrium Med. Corp. C-Qur Mesh Prod. Liab. Litig.*, 299 F. Supp. 3d 324, 331 (D.N.H. 2017) (analysis according to transferee circuit precedent). When considering federal claims, both the substantive law and the analysis are governed by the law of the circuit where the transferee court sits—again, here, the Third Circuit. *See In re Enterprise*, 735 F. Supp. 2d at 306.

<strong>ARGUMENT</strong>

## I.    GENERAL JURISDICTION.

### A.    General Personal Jurisdiction Legal Standard

"General jurisdiction exists when the defendant has continuous and systematic contacts with the forum state." *See In re Enterprise*, 735 F. Supp. 2d at 308 (citing *Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408, 414-15 (1984)). The quintessential circumstances where a corporation would be subject to general jurisdiction are where it is incorporated or headquartered. *See Mallory v. Norfolk Southern Rwy.*, 143 S. Ct. 2028, 2040 (2023).

**B.      Royal Philips Is Subject to General Jurisdiction Because Philips RS, Philips NA and PHUSA Are its Alter Egos.**

Plaintiffs do not contend that Royal Philips is subject to general jurisdiction in any state due to its own activities. However, Philips RS, Philips NA and PHUSA are subject to general jurisdiction in Pennsylvania and Massachusetts respectively, because they have their principal places of business, are incorporate there, and/or consented to jurisdiction by registering to do business there. *See, e.g., id.* at 2040. As set forth in detail in Section III below, those subsidiaries are alter egos and/or agents of Royal Philips. Therefore, Royal Philips is also subject to general jurisdiction in Pennsylvania and Massachusetts. *See, e.g., In re Enterprise*, 735 F. Supp. 2d at 317. Because alter ego doctrine provides a basis for both general and specific personal jurisdiction, Plaintiffs address it in a stand-alone section. *See infra* Section III.

**II.      SPECIFIC PERSONAL JURISDICTION.**

As set forth below, Royal Philips is subject to specific jurisdiction in Pennsylvania and Massachusetts for all of Plaintiffs' claims based upon its own direct activities, is subject to specific jurisdiction in every forum for Plaintiffs' recall-related negligence claims based on its own direct activities, is subject to specific jurisdiction in this Court for Plaintiffs' federal RICO claims, and is also subject to specific jurisdiction in every forum because Philips RS is its alter ego.

**A.      Legal Standard Governing Specific Jurisdiction.**

A federal district court has personal jurisdiction over a nonresident of the state in which the court sits to the extent authorized by the law of that state. *See* Fed. R. Civ. P. 4(k)(1)(A); *UHS*, 2015 WL 539736, at *3. *See* Appendix Table 1 for a list of the long-arm statutes for each state.

The exercise of specific jurisdiction must also comport with Due Process and it does so when (1) a defendant "purposefully directed" its activities at the forum, (2) the litigation "arise[s] out of or relate[s] to at least one of those activities," and (3) the exercise of jurisdiction otherwise

16

comports with "fair play and substantial justice." *O'Connor*, 496 F.3d at 317 (internal quotation marks omitted); *see Beemac*, 2021 WL 2018681, at *3.

**B.**     ***All of Plaintiffs' State Law Claims*: Royal Philips is Subject to Specific Jurisdiction in Pennsylvania and Massachusetts for all Plaintiffs' Claims Based on its own Direct Actions.**

As to Plaintiffs' claims that are not recall-related, Royal Philips mistakenly argues that it is not subject to specific jurisdiction in any forum. ECF Nos. 914 at 8, 1355. But specific jurisdiction is proper when a defendant's "conduct and connection with forum are such that [it] should reasonably anticipate being haled into court there." *See World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 297 (1980). A corporation's contacts with a forum are merely the "acts of authorized agents." *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 317-18 (1945); *In re Latex Gloves Prods. Liab. Litig.*, 2001 WL 964105, at *6 (E.D. Pa. Aug. 22, 2001) (relevant contacts include contacts of parent with subsidiary). Here, for more than fifteen years, Royal Philips has maintained purposeful, direct contacts with Pennsylvania and Massachusetts related to the design, manufacture, and (lack of) safety for the Recalled Devices such that the maintenance of jurisdiction in those states is fair and just.

**1.     Royal Philips Conduct Satisfies the Pennsylvania and Massachusetts Long-Arm Statutes.**

The Pennsylvania Long-Arm Statute grants jurisdiction to the full extent permitted by the Due Process Clause of the Fourteenth Amendment. *See* 42 Pa. C.S. § 5322(b). Pennsylvania law provides that "specific jurisdiction may be asserted over non-resident defendants 'to the fullest extent allowed under the Constitution of the United States and may be based on the most *minimum contacts* with this Commonwealth allowed under the Constitution of the United States.'" *Kubik v. Letteri*, 614 A.2d 1110, 1113-14 (Pa. 1992) (quoting the long-arm statute) (emphasis in original). As such, the only question is whether Royal Philips' Pennsylvania-contacts satisfy Due Process.

Massachusetts law provides for personal jurisdiction when a cause of action arises from, *inter alia*, (a) transacting any business in Massachusetts; (b) contracting to supply services or things in Massachusetts; (c) causing tortious injury by an act or omission in Massachusetts; [or] (d) causing tortious injury in Massachusetts by an act or omission outside this Massachusetts if the defendant regularly does or solicits business, or engages in any other persistent course of conduct, or derives substantial revenue from goods used or consumed or services rendered, in Massachusetts. Mass. Gen. Laws ch. 223A, § 3. Royal Philips' conduct satisfies each of subsections (a)-(d) of the Massachusetts Long-Arm Statute. *See Solta Med*, 454 F. Supp. 3d at 113 ("ongoing and collaborative relationship" with Massachusetts subsidiary as basis for specific jurisdiction over parent).

Sections 3(a) and 3(b) are each satisfied because (1) Royal Philips established service agreements with Massachusetts-based limited liability companies, including PHUSA and Philips NA, and (2) Plaintiffs' claims arise from Royal Philips performance of those agreements—which provide for Royal Philips to perform services that include assistance with "[t]he marketing, distribution, and commercialization of products and services, particularly with respect to . . . product and process quality." *E.g.*, JX-13; JX-260, *see Doucet v. FCA US LLC*, 210 N.E.3d 393, 399 (Mass. 2023) (citing *Exxon Mobil Corp. v. Attorney General*, 94 N.E.3d 786, 793-95 (Mass. 2018)). Section 3(c) is satisfied because Royal Philips is alleged to have caused injury in Massachusetts through in-state acts and omissions. *See, e.g.*, ECF No. 815 ¶¶ 52, 405, 481-85. And section 3(d) is satisfied because ███████████████████████████

████████████████████████████████████████

█████████████████████, *e.g.*, JX-11, and for the services Royal Philips provides to Philips NA and PHUSA. ECF No. 815 ¶¶ 52, 405, 481-85; *e.g.*, JX-13; JX-260; *see Barnes v. Merck &*

*Co.*, 2023 WL 35359, at *4 (D. Mass. Jan. 4, 2023). Because the long-arm statute is satisfied, the only question remaining is whether Royal Philips' Massachusetts-contacts satisfy Due Process.

> **2.     Royal Philips Purposely Availed Itself of the Benefits and Protections of Pennsylvania and Massachusetts Law.**

A defendant "purposefully avails itself of the privilege of conducting activities within the forum State," where, as here, it has "deliberately reached out beyond its home" to "exploit[] a market" in that state. *Ford Motor Co. v. Montana Eighth Jud. Dist. Ct*., 141 S. Ct. 1017, 1025 (2021) (internal quotation marks omitted); *see, e.g.*, *O'Connor*, 496 F.3d at 317-18; *PPG Indus. v. Jiangsu Tie Mao Glass Co.*, 2020 WL 1526940, at *8 (W.D. Pa. Mar. 31, 2020). A defendant can avail itself of a state in a number of ways including, but not limited to: "entering a contractual relationship centered there," *Ford Motor Co.*, 141 S. Ct. at 1025; wiring money to and from that state, *PPG Indus.*, 2020 WL 1526940, at *8; establishing business relationships with in-state entities, *Beemac*, 2021 WL 2018681 at *6[10]; and through emails and other communications directed to in-state people or entities, *PPG Indus.*, 2020 WL 1526940, at *8; *United Dairy, Inc. v. Bayshore Indus.*, 2015 WL 5311297, at *8 (W.D. Pa. Sept. 11, 2015) ("The Court of Appeals for the Third Circuit has stated that mail and telephone communications sent by a defendant into the forum may count toward the minimum contacts that support jurisdiction." (cleaned up)). Royal Philips directs activities at Pennsylvania and Massachusetts in each of these ways, and more.

*Contracts.* The record shows a pattern and history of intentional contractual obligations between Royal Philips, on the one hand, and Pennsylvania-based and Massachusetts-based companies, on the other hand. These include, by way of example, the following categories of agreements:

---

[10] *See also Mold Medics LLC v. Amer. Rest. Corp.,* , 2022 WL 3999886 at *7 (W.D. Pa. Sept. 1, 2022); *Barnes*, 2023 WL 35359, at *5.

- ████████████████████████████████████████████
- ██████████████████████
- ████████████████████████████████
- ██████████████████████████
- ██████████████████████████████

Each of these "continuing obligations" between Royal Philips and Pennsylvania-based and Massachusetts-based companies demonstrate availment of state law. *See, e.g.*, *Mellon Bank (East) PSFS Nat'l Assoc. v. Farino*, 960 F.2d 1217, 1223 (3d Cir. 1992) (purposeful availment based on communication and business relationship with Pennsylvania business); *Beemac*, 2021 WL 2018681 at *6 (same). For example, ████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████

█ ████████ ██ ██████ ██████ ██████ ████ ████ ██████ █████

████████████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████

██████████████

20

**Wiring Funds.** Royal Philips has invested billions of dollars into Pennsylvania-based and Massachusetts-based companies and receives regular interest payments from those companies (and those states) in return. *See, e.g.*, JX-15 (answer to interrogatory No. 11); ███████████

███████████████████████████████████████████

███████████████████████████████████████████

███████████

**Business Relationships.** Royal Philips has targeted the Pennsylvania and Massachusetts markets as a home for its Recalled Device work force and production facilities for more than fifteen years. Dating back to December 2007, Royal Philips acquired Pennsylvania-based Respironics to expand its reach into the home healthcare market. JX-17. Respironics became "the centerpiece of Home Healthcare Solutions" which was a part of Massachusetts-based Philips Healthcare— managed from day-one by a chief executive employed by Royal Philips, and only Royal Philips. JX-16; JX-15 (answer to interrogatory Nos. 8 and 18); *cf.* JX-133; JX-41; PX-B. Royal Philips employees, first Steve Rusckowski then Deborah DiSanzo, led Philips Healthcare which managed the Pennsylvania- and Massachusetts-based activities responsible for the CPAP, Bi-PAP, and ventilators at issue in this litigation. *See, e.g.*, JX-16; JX-26 at 132-134; *see also* JX-392 at 15:13-16:25, 55:10-57:2.

Royal Philips CEO Frans van Houten ███████████████████

███████████████████████████████████████████

███████████████████████████████████████████

███████████████████████████████████████████

███████████████████████████████████████████

███████████████████████████████████████████

_____

[11] As a Royal Philips employee, Ms. Kriwet was personally party to a consent decree with the Department of Justice arising from repeated quality failings. *See* JX-50 at 23, 26.
[12] Even today, the Recalled Device business and patient safety functions are helmed by Royal Philips employees based in the United States. *See* PX-D; PX-E; PX-F.

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████

                    ████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████  In total, there can be no dispute that Royal Philips intentionally

exploits the protections and markets of Pennsylvania and Massachusetts. *See, e.g.*, *Mellon Bank*,

960 F.2d at 1223 (purposeful availment from communication and business relationship with in-

state business).[13]

> **3.**   **Plaintiffs' Claims Arise out of and Relate to Royal Philips' Fifteen-Year History of Contacts with Pennsylvania and Massachusetts.**

Claims "arise out of or relate to" the defendant's contacts with the forum when there is an

affiliation between the forum and the underlying controversy. *See Ford Motor Co.*, 141 S. Ct. at

1025. A causal connection between the contact and the cause of action, while present here, is not

required. *Id.* at 1026; *Doucet*, 210 N.E.3d at 213. As the record reflects, ████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

---

[13] *See also Guy Chem. Co. v. Romaco S.p.A.*, 2009 WL 840386, at *11 (W.D. Pa. Mar. 27, 2009) (jurisdiction where foreign seller "established channels to service it as a Pennsylvania customer and attempted to provide solutions to the problems with the [product]"); *EQT Prod. Co. v. Aspen Flow Control, LLC*, 2020 WL 6545997, at *1 (W.D. Pa. Nov. 6, 2020); *Composite Co. v. Am. Int'l Grp., Inc.*, 988 F. Supp. 2d 61, 72-73 (D. Mass. 2013).



████████████████████████████████████████████████████████

██████

Beyond these actions relating to Quality, Plaintiffs' claims arise out of and relate to the contracts and communications cited above that demonstrate purposeful availment of Pennsylvania and Massachusetts law. ██████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████ ████ ████████████████ ████████ ██████████ ████ ████████ ████

████████████████████████████████████████ Plaintiffs' claims arise out of and relate to these contracts. *O'Connor*, 496 F.3d at 324 (holding tort claims related to contracts because the link is "meaningful" and neither proximate causation nor substantive relevance required).

Furthermore, through continuous management and oversight in their roles as Royal Philips employees, ████████████████████████████████████████████████████████ ████████████████████████████████████████████████. Royal Philips must have anticipated being haled into court in Pennsylvania and Massachusetts to defend actions based on CPAP, BiPAP, and ventilator products causing injury. FDA regulations require executive management oversight of quality. 21 C.F.R. § 820.20 (requiring management responsibility over quality); JX-374. ██████████████████████████████████████████

████████████████████████████████████████████████████████

▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓

▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓

    **4.**      **The Exercise of Specific Personal Jurisdiction over Royal Philips in Pennsylvania and Massachusetts Comports with Traditional Notions of Fair Play and Substantial Justice.**

Because Plaintiffs have satisfied their burden on the first two elements, it is Royal Philips' burden to prove that the exercise of jurisdiction would not comport with traditional notions of fairness. *See O'Connor*, 496 F.3d at 324 (presumption of constitutionality). Royal Philips "must present a compelling case that the presence of some other considerations would render jurisdiction unreasonable." *Id.*; *Pennzoil Prods. Co. v. Colelli Assocs., Inc.*, 149 F.3d 197, 207 (3d Cir. 1998) (when minimum contacts present, jurisdiction rarely unreasonable).

This is not one of those "rare" and "compelling" cases where jurisdiction would be unreasonable despite the presence of minimum contacts. *See O'Connor*, 496 F.3d at 325. As discussed elsewhere, Royal Philips has consented to personal jurisdiction in this forum on Plaintiffs' recall-related negligence claims, ECF No. 914 at 4, 13-14; ECF No. 1355 at 2, and thus will continue litigating in this forum (and this MDL) regardless of the outcome of the present motions. Royal Philips also consented to being sued in Pennsylvania in a related lawsuit brought by SoClean that is being coordinated with this MDL. *See In re: SoClean Inc., Mktg. Sales Pracs. & Prods. Liab. Litig.*, MDL No. 3021 (W.D. Pa.), ECF No. 126-1.

The exercise of jurisdiction over Royal Philips for its direct contacts with Pennsylvania and Massachusetts would be fair and reasonable even absent Royal Philips' consent. Both Pennsylvania and Massachusetts have a "manifest interest in providing effective means of redress" when a foreign corporation reaches into the state and injures a citizen as Royal Philips has done here. *See O'Connor*, 496 F.3d at 325. The maintenance of these suits is hardly an undue burden on Royal Philips, a multi-billion-dollar company with continuing business relationships and daily

communications with Pennsylvania-based and Massachusetts-based affiliates, and employees. Any argument that personal jurisdiction over Royal Philips is unfair should be rejected. *See Mallory*, 143 S. Ct. at 2039-41.

C.   ***Negligent Recall/Failure to Recall Claims:*** **Royal Philips Is Subject to Specific Jurisdiction in Each Forum for Plaintiffs' Recall-Related Negligence Claims Based on its own Direct Actions.**

Royal Philips consents to jurisdiction in Pennsylvania only on Plaintiffs' recall-related negligence claims. ECF No. 914 at 4, 13-14; ECF No. 1355 at 2.[14] This limited concession fails to align with the reality that the recall is national (indeed global), with Royal Philips directing activity into each forum. The Fourteenth Amendment permits suits against corporate defendants not "presen[t] within the territorial jurisdiction of a court," so long as "the quality and nature of the [company's] activity" in the state "make it reasonable and just" to maintain suit there. *See Mallory*, 143 S. Ct. at 2039. Simply put, because Royal Philips assumed control of, and provides ongoing support, oversight, and management of, the Recall—it appointed a committee of its executives to manage the repair and replacement of millions of devices, and through that program has specifically targeted citizens and businesses of each forum, *see* JX-10 (30(b)(6) Tr.) at 239:25-242:14—it is "reasonable and just" to maintain suit in each forum. *See Mallory*, 143 S. Ct. at 2039.

---

[14] Because these claims encompass Royal Philips' failure to recall for the entire 2008-2021 period, the Court should treat Royal Philips' consent on these claims as waiver as to all claims in Pennsylvania. It is black letter law that the right to assert a personal jurisdiction defense can be affirmatively and implicitly waived through conduct. *In re Asbestos Prod. Liab. Litig. (No. VI)*, 921 F.3d 98, 105 (3d Cir. 2019) (citing *Ins. Corp. of Ireland v. Compagnie des Bauxites de Guinee*, 456 U.S. 694 (1982)). "[A] party is deemed to have consented to personal jurisdiction if the party actually litigates the underlying merits or demonstrates a willingness to engage in extensive litigation in the forum." *In re Asbestos*, 921 F.3d at 105 (behavior that is consistent with waiver, that indicates an intent to litigate on the merits, is sufficient to constitute waiver even if the party also express an intent to preserve the defense).

1.     **Royal Philips' Recall Contacts Satisfy Each Forum's Long-Arm Statute.**

Like Pennsylvania, nearly all states permit the exercise of specific jurisdiction to the Fourteenth Amendment's limit. *See* Appendix Table 1. For each of these states, the only question is whether Royal Philips' recall-contacts satisfy Due Process. For each of the few states with more restrictive statutes (Connecticut, Massachusetts, Florida, Georgia, Mississippi, and New York), Plaintiffs' negligent recall claims fall within the applicable statute's scope. *See* Appendix Table 1.

███████████████████████████████████████████████

█████████████████████████████████. And relevant here, Plaintiffs allege harm caused by the negligent recall in each state. *See, e.g.*, ECF No. 785 ¶¶ 45 (Conn.), 54 (Ga.), 81-83 (Mass.), 87-89 (Miss.), 98-100 (N.Y.), 106 (Fla.); *see also* ECF No. 815; ECF No. 834.

2.     **Royal Philips' Recall Involvement Exploits the Benefits and Protections of Each Forum's Laws.**

There is nothing accidental, random, fortuitous about Royal Philips recall-related contacts. Since belatedly deciding to recall millions of devices, Royal Philips has availed itself of the benefits and privileges of each state's law by its intentional acts including targeting patients and DMEs in each state and assuming ultimate responsibility for the implementation and execution of the Recall that gives rise to these claims. ECF No. 785 at ¶¶ 387-425; *see O'Connor*, 496 F.3d at 324.

As a threshold matter, Royal Philips has directly overseen and managed the Recall. JX-153 at 4-5 ("Philips has a strong program management in place led by Roy Jakobs, Chief Business Leader of the Connected Care businesses and member of Philips' Executive Committee, to ensure the Respironics field action is executed with speed and accuracy."); JX-189. Internal documents reveal ████████████████████████████████████████

███████████████████████████████████████████████

29

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████ █ ████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████

Royal Philips has deliberately targeted customers, patients, and the markets and protections of each forum. ████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████. Accordingly, for Plaintiffs'

recall-related negligence claims, Royal Philips availed itself of all relevant forums. *See, e.g.*,

─────────────────────

[15] ████████████████████████████████████████████
████████████████████████████████████████████████████
████████████████████████████████████████████████████

*Mellon Bank*, 960 F.2d at 1223; *O'Neal v. Bumbo Int'l Tr.*, 16 F. Supp. 3d 952, 959-60 (S.D. Ind. 2014).

### 3. Plaintiffs' Recall-Related Negligence Claims Arise out of and Relate to Royal Philips' Direct Contacts with each Forum.

Plaintiffs' recall-related negligence claims have a close nexus to Royal Philips' implementation and execution of the Recall in each forum. Plaintiffs' claims arise directly from the direct and repeated contacts with individual and DME customers in each forum with informational communications, monetary solicitations, and ultimately delayed shipments of new or refurbished devices. ████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████

*See Ford Motor Co.*, 141 S. Ct. at 1026-28. While a causal connection is not required, here Royal Philips' recall-communications with each Plaintiff and their doctors were inadequate, untimely, and the direct cause of the alleged physical and monetary harm. *See, e.g.*, ECF 785 ¶¶ 551-70.

### 4. The Exercise of Specific Jurisdiction over Royal Philips in Each Forum on Plaintiffs' Recall-Related Negligence Claims Comports with Traditional Notions of Fair Play and Substantial Justice.

Plaintiffs having demonstrated availment and minimum contacts with each forum, Royal Philips cannot overcome its "heavy" burden to prove an absence of fairness. *See O'Connor*, 496 F.3d at 324. Each forum has the paramount interest of providing effective means of redress when, as here, a foreign corporation reaches into the state and solicits its citizens. *See O'Connor*, 496 F.3d at 325 (citing *McGee v. Int'l Life Ins. Co.*, 355 U.S. 220, 223 (1957)). While Courts consider multiple factors in evaluating fairness, Royal Philips ignores the forums' and plaintiffs' interests, addressing only its claimed burden of litigating in a foreign forum. ECF No. 914 at 13. Having waived the other factors, Royal Philips' argument is meritless. Requiring citizens, harmed in their

home state by Royal Philips' negligent Recall to litigate in the Netherlands would saddle these individuals with a burden far greater than Royal Philips' burden to litigate in this MDL, where it has already consented to jurisdiction. Accordingly, Royal Philips fails to make the required "compelling" case that jurisdiction over it for claims regarding the ongoing Recall would be unreasonable in any forum. *See Carteret*, 954 F.2d at 150; *Colvin v. Van Wormer Resorts, Inc.*, 417 F. App'x 183, 188 (3d Cir. 2011).

   D.   *Federal RICO Claim:* **Royal Philips Is Subject to Specific Jurisdiction for Plaintiffs' RICO Claims Based on its own Direct Actions.**

      1.   **The Legal Standard For Specific Jurisdiction on Plaintiffs' Federal RICO Claim**

"[W]hen a civil RICO action is brought in a district court where personal jurisdiction can be established over at least one defendant, summonses can be served nationwide on other defendants if required by the ends of justice." *Laurel Gardens*, 948 F.3d at 120 (quoting *Cory v. Aztec Steel Bldg., Inc.*, 468 F.3d 1226, 1231 (10th Cir. 2006)) (applying 18 U.S.C § 1965(b)).

Because Plaintiffs' RICO claims arise from a federal statute that provides for nationwide service of process, the Court has personal jurisdiction over Royal Philips if the maintenance of the suit comports with fair play and substantial justice based on the Royal Philips' contacts with the nation as a whole. *See id.* at 122 ("Unlike the traditional approach, this inquiry focuses . . . more on the national interest in furthering the policies of the federal statute at issue."); *In re Auto. Refinishing Paint Antitrust Litig.*, 358 F.3d 288, 298 (3d Cir. 2004) ("aggregate contacts with the United States"); *Pinker v. Roche Holdings Ltd.*, 292 F.3d 361, 369 (3d Cir. 2002). The sufficiency of nationwide contacts depends on the extent to which the defendant "availed [it]self of the privileges of American law and the extent to which [it] could reasonably anticipate being involved in litigation in the United States." *Pinker*, 292 F.3d at 370.

**2.    For Plaintiffs' RICO Claim, Royal Philips Is Subject To Specific Jurisdiction Based On Its Aggregate Contacts With The United States As A Whole.**

Royal Philips' undeniable contacts with the United States "as a whole" provide a proper basis for this Court's personal jurisdiction on Plaintiffs' RICO claim. *See Laurel Gardens*, 948 F.3d at 122. As set forth throughout, the record indisputably demonstrates Royal Philips' intentional availment of U.S. law over the entire relevant period. Royal Philips purchased Philips RS and made it the headquarters of the Philips Healthcare unit (with a Royal Philips CEO) with the express purpose to exploit America's growing health-tech market. ███████████

███████████████████████████████████████████████████

███████████████████████████████████████████████████

███████████████████████████████████████████████████

███████████████████████████████████████████████████

███████████████████████████████████████████████████

██. In aggregate, these contacts demonstrate purposeful conduct to exploit American law. Accordingly, the Court has personal jurisdiction over Royal Philips on Plaintiffs' RICO claim.

## III.    ALTER EGO PERSONAL JURISDICTION

### A.    Legal Standard Governing Alter Ego Jurisdiction.

Even if Royal Philips were not subject to specific jurisdiction stemming from its own contacts and involvement in the claims at issue in this litigation (it is), personal jurisdiction is separately established under the alter ego doctrine. Under this doctrine, a parent may fall within the court's jurisdictional reach based upon its relationship with an in-forum entity. *See UHS*, 2015 WL 539736, at *3. And if an alter-ego relationship exists, "personal jurisdiction exists over the parent whenever personal jurisdiction (whether general or specific) exists over the subsidiary." *Shuker v. Smith & Nephew, PLC*, 885 F.3d 760, 781 (3d Cir. 2018).

33

A subsidiary and parent are alter-egos if the parent exercises control over the subsidiary that "exceed[s] the usual supervision that a parent exercises over a subsidiary." *UHS*, 2015 WL 539736 at *3, *4 ("[T]he hallmark of an alter ego relationship is control that transcends the traditional bounds of a parent-subsidiary relationship."); *see also Hooper*, 2016 WL 7212586, at *6 (citing *In re Enterprise*, 735 F. Supp. 2d at 318); *Simeone ex rel. Estate of Albert Francis Simeone, Jr. v. Bombardier-Roxax GmbH*, 360 F. Supp. 2d 665, 675 (E.D. Pa. 2005); *In re Latex Gloves,* 2001 WL 964105, at *3.

This Court's opinion in *Enterprise* lays out ten factors that are indicative of corporate dependence:

> (1) the parent corporation owns all or a significant majority of the subsidiary's stock; (2) commonality of officers or directors exists between the two corporations; (3) the group possesses a unified marketing image, including common branding; (4) insignias, trademarks, and logos are uniform across corporate boundaries; (5) group members share employees; (6) the parent has integrated its sales and distribution systems with those of its subsidiaries; (7) the corporations exchange or share managerial or supervisory personnel; (8) the subsidiary performs business functions that would ordinarily be handled by the parent corporation; (9) the parent uses the subsidiary as a marketing division or as an exclusive distributor; and (10) the parent exercises direct control or provides instruction to the subsidiary's officers and directors.

*Enterprise*, 735 F. Supp. 2d at 318-19 (citing *In re Chocolate Confectionary Antitrust Litig.*, 602 F. Supp. 2d 538, 569-70 (M.D. Pa. 2009) ("*Chocolate I*"); *see also In re Chocolate Confectionary Antitrust Litig.*, 674 F. Supp. 2d 580, 598 (M.D. Pa.) ("*Chocolate II*"); *UHS*, 2015 WL 539736, at *4; *In re In re Latex Gloves*, 2001 WL 964105, at *3-4.

Notwithstanding the enumeration of these factors, "[n]o one aspect of the relationship between two corporations unilaterally disposes of the analysis, and the court may consider any evidence bearing on the corporations' functional interrelationship." *Chocolate II*, 674 F. Supp. 2d at 598. The analysis "should not be limited to traditional alter ego jurisprudence but should encompass whether or not there is a single functional and organic identity." *In re Latex Gloves*,

2001 WL 964105, at*3 (citation omitted).[16] It is settled law that "[t]he alter-ego test for personal jurisdiction is 'less stringent' than the test for piercing the corporate veil to impose liability." *Gasbarre Prods., Inc. v. Diamond Auto. Grp. Fl., Inc.*, 2017 WL 1102652, at *4 (W.D. Pa. Mar. 23, 2017) (citing *In re Enterprise*, 735 F. Supp. 2d at 319).

### B.      Royal Philips Is Subject to Personal Jurisdiction Because Philips RS Is the Alter Ego / Agent of Royal Philips.

The evidence shows Royal Philips exerts far greater control over Philips RS than "the usual supervision" of a parent company. The undisputed facts reveal a company, Royal Philips, that has taken conscious steps over a period of years to structure its management of its subsidiaries to intentionally ignore corporate boundaries. As this Court has stated, "the failure to adhere to corporate boundaries" "demonstrated by the exercise of managerial power over the operations and functions of one subsidiary or group of subsidiaries by employees of a separate but affiliated corporation" is the "key fact" supporting alter ego jurisdiction. *In re Enterprise*, 735 F. Supp. 2d at 324-35; *see also In re Latex Gloves*, 2001 WL 964105, *6; *Chocolate II*, 674 F. Supp. 2d at 614-617 (holding that parent corporation was the alter ego where the parent managed the subsidiary through business units aligned with product groups rather than corporate boundaries); *UHS*, 2015 WL 539736, at *15. That is precisely what exists in this case.

Plaintiffs' argument here is nothing novel. This case is on all-fours with the fact-patterns in cases where Pennsylvania courts applying the *Enterprise* factors have concluded alter-ego

---

[16] Royal Philips cites *Craig* v. *Lake Asbestos of Quebec*, 843 F.2d 145, 150 (3d Cir. 1988) for the proposition that alter ego jurisdiction is evaluated "over time." Br. at 14. *Craig* stands for no such thing, as it only addresses New Jersey's law of alter-ego *liability*. *See generally, Craig*, 843 F. 2d 145. *Greene* v. *New Dana Perfumes Corp.*, 287 B.R. 328 (D. Del. 2002) analyzes Delaware law and likewise does not support Royal Philips' statement. For personal jurisdiction, alter ego depends on "the entirety of the relationship" between Royal Philips and its U.S. subsidiaries. *Cardell Fin. Corp. v. Suchodolski Assocs., Inc.*, 2012 WL 12932049, at *16 (S.D.N.Y. July 17, 2012), *report and recommendation adopted*, 896 F. Supp. 2d 320 (S.D.N.Y. 2012) (collecting cases).

jurisdiction existed, such as *UHS* and *Hooper*. And Philips' organizational structure (at issue here) was previously examined in *In re Cathode Ray Tube (CRT) Antitrust Litig.*, 2017 WL 5972721 (N.D. Cal. Feb. 27, 2017), and the court concluded that that (1) "the evidence does not show as a matter of law that KPNV's divisions were legally separate from KPNV"; (2) "even if its divisions were nominally separate, there is evidence suggesting that they were not autonomous and that their actions were substantially directed by KPNV"; and (3) "the evidence of Philips' participation in the CRT conspiracy is that its employees acted on behalf of the Philips group of companies, and not any particular subsidiary." *Id.* at *3.

> ### 1. *Enterprise* **Factor 10: Royal Philips Exerted the Requisite Control Over Philips RS.**

Despite the existence of ten factors, one, control, is of central importance. *See In re Enterprise*, 735 F. Supp. 2d at 324-35. As Judge Fischer explained in *Hooper*, there are multiple alternative framings for the "control" inquiry at the heart of the alter ego analysis, including: (1) "whether the parent exercised its ability to control the subsidiary"; (2) "whether the structure of the corporate family operated vertically as strategic business units"; (3) "whether the parent in essence conscripted employees of the subsidiaries to discharge group-wide management functions across corporate boundaries"; and (4) "whether the parent failed to adhere to corporate boundaries by exercising managerial power over the operations and functions of subsidiaries through employees of separate but affiliated corporations." *Hooper*, 2016 WL 7212586, at *6 (citing *In re Enterprise*, 735 F. Supp. 2d at 318-325). Regardless of the framing, the answer here is a resounding "yes."

***Vertical Strategic Business Units.*** Evidence of vertically integrated business units strongly supports a finding of alter ego jurisdiction. In *In re Latex Gloves*, the court held that the subsidiary corporation was an alter ego of the parent. 2001 WL 964105, at *6. It was significant that the

parent had the ability to control the subsidiary corporation, and that the parent exercised this control and portrayed themselves as a single company to the public. *Id.* at *4. That the subsidiaries were structured and functioned vertically as strategic business units and that the strategic business units cut managerially across corporate lines from the parent through the subsidiaries was key. *See* at *4, *6 & n.18. Similarly, in *Chocolate II and UHS* an alter-ego relationship existed because the parent vertically managed the group through strategic business units aligned with product groups rather than corporate boundaries. *See Chocolate II*, 674 F. Supp 2d at 614-15; *UHS*, 2015 WL 539736 at *16; *Directory Dividends, Inc. v. SBC Comm., Inc.*, 2003 WL 21961448, at *6 (E.D. Pa. July 2, 2003) (alter ego where subsidiaries heavily integrated horizontally and vertically).

Here, ██████████████████████████████████████

████████████████████████████████████████████

█████████████████████████████████████. Simply put, Philips RS is a legal entity, but not a business management entity. ███████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████

***Employees conscripted to discharge group-wide functions across corporate boundaries.***
A management structure that permits parent corporations to "conscript[] employees of their subsidiaries to discharge group-wide management functions across corporate boundaries" is also strong evidence of an alter ego relationship. *Chocolate II*, 674 F. Supp. 2d at 615; *Latex Gloves*, 2001 WL 964105, at *6; *UHS*, 2015 WL 539736, at *9.

Royal Philips has implemented such a structure. To start with the most egregious examples, without a single vote from the Philips RS board or any other action ceding control, Royal Philips has itself stepped in and appointed Royal Philips Executive Committee members to oversee Philips RS, directly stating in internal documents that the Royal Philips executives are the ones "accountable." *See, e.g.*, JX-40, JX-41; JX-186; ████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

██████████████████████████████████████

Examples of group-wide functions being discharged across corporate boundaries is part and parcel with Philips organization. ██████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

The Philips organization is turtles all the way down.

---

███████████████████████████████████████████████████

███████████████████████████████████████████████████

███

       ***Royal Philips Exercised Control***. Royal Philips governs Philips RS and its other subsidiaries though ███████████████████████████████████████

███████████████████████████████████████████████████

███████████████████████████████████████████████████

███████████████████████████████████████████████████

███████████████████████████████████████████████████

███████████████████████████████████████████████████

███████████████████████████████████████████████████

███████████████████████████████████████████████████

███████████████████████████████████████ ██ ███████

███████████████████████████████████████████████████

███████████████████████████████████████████████████

███████████████████████████████████████████████████

████████████████████████████████████████████

    ███████████████████████████████████████████████

███████████████████████████████████████████████████

---

███████████████████████████████████████████████████
███████████████████████████████████████████████████
███████████████████████████████████████████████████
███████████████████████████████████████████████████
███████████████████████████████████████████████████
█ ███████████████████████████████████████████████████
██████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████

Royal Philips may argue that it has observed corporate formalities. But "mere observance of corporate formalities does not, on its own, defeat a finding of control where such a finding is otherwise supported by the evidence." *In Re Methyl Tertiary Butyl Ether ("MTBE") Prod. Liab. Litig.*, 2021 WL 3371938, at *16 (S.D.N.Y. Aug. 3, 2021); *Williams by Williams v. OAO Severstal*, 2019 WL 4888570, at *10-12 (Pa. Super. Ct. Oct. 3, 2019) (applying alter ego doctrine despite separate bank accounts, financial records, and distinct common officers, records, and active personnel).

And here, the evidence is overwhelming. ████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

████████████

   ▌ ████████████████████████████████████████

     ████████████████

   ▌ ████████████████████████████████████████

     ████████████████████████████████████████

     ████████████████

---

19 ████████████████████████████████████████████████

████████████████████████████████

- ███████████████████████████████████████████████

  █████████████████████

Taken together, the evidence of vertically integrated business units, employee's performing group-wide functions, managerial control and exercise of control over subsidiaries is overwhelming, and a finding of alter ego jurisdiction on such facts is well-supported by precedent.[20] *See UHS*, 2015 WL 539736 at *16. These "key facts" render *In re Enterprise* is inapposite. In that case, each subsidiary's managers had no authority beyond their employing entity. *See UHS*, 2015 WL 539736 at *8-9 (comparing *In re Enterprise* to *Chocolate II*). In stark contrast, Royal Philips is intentionally structured so that management responsibilities bear no relationship to legal formalities. Ultimately, the Philips Enterprise is a "complex, integrated, and centralized" enterprise "rather than individual operating companies within a passive parent umbrella." *UHS*, 2015 WL 539736 at *17. Royal Philips "possesses pyramidal control," and the "integrated organizational structure coupled with extensive commingling of executive functions refutes any assertions of subsidiary independence." *Id.*; *see CRT*, 2017 WL 5972721, at *3 (finding Philips subsidiaries were not distinct from, and were substantially controlled by, Royal Philips). This is the archetypal case for alter ego jurisdiction.[21] Accordingly, Royal Philips is subject to personal jurisdiction. *See UHS*, 2015 WL 539736, at *9-18.

---

[20] Additional facts also support Royal Philips' alter ego status, for example its executives regularly visited the U.S. subsidiaries and Pennsylvania in particular. *See* JX-15 (answer to interrogatory 15); *Williams by Williams*, 2019 WL 4888570, at *11 (alter ego relationship in part because "executives visited the Pennsylvania mining plant annually to review the subsidiary's financial statements and tour the facilities").

[21] The same is true pursuant to the law of all other forums. *See* Appendix Table 2.

2.      *Enterprise* **Factors 1 through 9: The Remaining Enterprise Factors Also Show that Philips RS Is the Alter Ego / Agent of Royal Philips.**

Although control, particularly through vertical business units that cut across corporate boundaries, is the most important consideration in evaluating an alter ego relationship, the other *Enterprise* factors point in the same direction.

**Factor 1 (Stock Ownership).** At all relevant times, Royal Philips has held directly or indirectly 100% of its four subsidiary co-Defendants, Philips NA, Philips USA, Philips RS Holding, and Philips RS, and has manipulated their legal form to its own benefit. Common ownership by itself is insufficient to create an alter ego relationship, but such ownership is still a consideration favoring a finding of alter ego jurisdiction. *UHS*, 2015 WL 539736, at *5.

**Factor 2 (Commonality of officers or directors).** As discussed at length above, common officers and directors are present across the Philips Companies, *see* PX-B, including between Royal Philips and its U.S. subsidiaries. For example, outgoing Royal Philips Executive Committee member Mr. Rocha was CEO of Philips NA and the Market Leader North America. Prior to Mr. Rocha, the same was true of Mr. Shafer. Among the U.S. subsidiaries, officer overlap is common. *See* JX-133. For example, Philips RS officers have simultaneously held positions at Philips NA and Philips USA and (since it was formed in 2020) Philips RS Holding, *see, e.g.*, JX-133. An alter ego relationship can exist even absent an overlap or exchange of personnel. *See Hooper*, 2016 WL 7212586, at *7. And here, what exists is far worse than multiple overlapping employees. Instead, Royal Philips has demonstrated a lack of regard for corporate formalities by conscripting employees from on subsidiary (such as Philips International or Philips NA) and giving them managerial and hiring/firing power over employees of Philips RS, without any sign off from the Philips RS board. Here, overlap is present and the "mere existence of multiple organizational

charts" that cut across the supposedly separate entities itself evinces a certain connectivity among the various entities." *UHS*, 2015 WL 539736, at \*5 n.7 (emphasis in original).

  ***Factor 3 (Unified marketing image) and Factor 4 (uniform insignias, trademarks, and logos across corporate boundaries).*** These two factors heavily favor a finding of alter ego. Philips presents a single, common marketing image worldwide, representing Royal Philips and its subsidiaries "as a single entity that is conveniently departmentalized either nationally or world-wide." *See Simeone*, 360 F. Supp. 2d at 678 (citation omitted). ████████████████

██████████████████████████████████████

██████████████████████████████████████

██████████████████████████████████████

██████████████████████████████████████

██████████████████████████████████████

██████████████████████████████████████

In addition to the Philips logo and trademark used worldwide, all employee email addresses are @philips.com. Regulators are told that Royal Philips and Philips RS "became 1 in 2008." JX-14 at 5. While parent-subsidiary relationships are often marked by common marketing schemes, and a unified public image alone would be insufficient for alter ego jurisdiction, "that the defendants intentionally steer the public's perception of the system to one of a singular, integrated corporate entity is an important factor," along with the "stated intent of establishing an indistinct identity[,] weigh[] heavily in favor of an alter ego finding." *UHS*, 2015 WL 539736, at \*8.

  ***Factor 5 (Group members share employees).*** Blurred management lines across supposedly distinct entities are a pervasive feature of Philips' organizational structure. The thousands of pages of internal organizational charts produced in this litigation (and outside of

litigation for federal regulators) describe reporting hierarchies without any mention corporate boundaries and without identifying which legal entity employees which individuals.[22] *See, e.g.*, JX-29; JX-30, JX-31; JX-40; JX-36. Commingled functions across corporate boundaries are also extensive. ████████████████████████████████████████████

████████████████████████████████████████████████

█████████████████. At bottom, "the purported structural membrane between entities is . . . amorphous and easily traversed by employees or management,"[23] therefore this factor favors finding an alter ego relationship. *See UHS*, 2015 WL 539736, at *9. It is also noteworthy that many of the shared and/or exchanged personnel were involved with Recalled Devices and the facts related to this litigation. *See Gasbarre*, 2017 WL 1102652, at *5 (finding factors for overlapping personnel and directors "uniquely implicated" where the overlapping personnel were central to the factual allegations in the case).

**Factor 6 (Integrated its sales and distribution systems with those of its subsidiaries):** Although also not determinative, *see In re Enterprise* 735 F. Supp. 2d at 323, this factor evidences an alter ego relationship. ███████████████████████████████████████

███████████████████████████████████████

**Factor 7 (exchanged or shared managerial or supervisory personnel):** As discussed at length above with respect to Factor 5 (group members share employees), the Philips Defendants

---

[22] The Philips Defendants' custodial disclosures are occasionally at odds with internal organizational charts, managerial roles shared with the FDA, and the practical exercise of authority.

[23] *E.g.,* Aliette van der Wal has seamlessly moved between Philips entities. ████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

██████████████████████████████████████████████;

JX-103 (van der Wal LinkedIn profile) (same).

not only shared employees but exchanged and/or shared managerial and supervisory personnel. Courts have also evaluated shared services under this factor, *see UHS*, 2015 WL 539736 at *9-10. There can be no dispute that ██████████████████████████████████████

████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████

█████████████████████████████████████████████ "the sheer volume of overlapping employees, shared services, and identical cross-system roles and functions, together with each of the previous factors, is evidence of an alter ego relationship." *UHS*, 2015 WL 539736 at *10.

***Factor 8 (subsidiary performs business functions that would ordinarily be handled by the parent):*** Royal Philips is likely to argue that it is a mere holding company, and as such this factor cannot support an alter ego finding. However, where, as here, the parent is not merely a generic holding company, but rather used to advance specific business objectives, this factor can suggest an alter ego relationship. *MTBE*, 2021 WL 3371938, at *16. It's beyond question that Royal Philips has eschewed the holding company model, ███████████████████████

████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████

███████████████████████████████████████

███████████████████████████████

**Factor 9 (*parent uses the subsidiary as a marketing division or as an exclusive distributor*):** Royal Philips does not use Philips RS as an exclusive distributor or marketing division. However, this factor carries little weight as Courts have repeatedly found alter ego relationships in its absence. *See, e.g.*, *UHS*, 2015 WL 539736; *Chocolate II*, 674 F. Supp. 2d at 613-617.

In total, contrary to Royal Philips' unsupported assertions, the evidence shows a relationship between Royal Philips and Philips RS that is far beyond "an ordinary parent-subsidiary relationship." Notably, "the failure to adhere to corporate boundaries" "demonstrated by the exercise of managerial power over the operations and functions of one subsidiary or group of subsidiaries by employees of a separate but affiliated corporation" is the "key fact" supporting alter ego jurisdiction. *In re Enterprise*, 735 F. Supp. 2d at 324-35; *see also In re Latex Gloves*, 2001 WL 964105, *6; *Chocolate II*, 674 F. Supp. 2d at 614-617 (holding plaintiff established a *prima facie* case that parent corporation was the alter ego where the parent managed the subsidiary through business units aligned with product groups rather than corporate boundaries); *UHS*, 2015 WL 539736, at *15. Royal Philips' relationship with Philips RS fits this paradigm.[24]

## CONCLUSION

For the aforementioned reasons, Plaintiffs respectfully request that the Court deny Philips' Motion and order that: (1) Royal Philips is directly subject to specific jurisdiction in Pennsylvania and Massachusetts for all of Plaintiffs' claims; (2) Royal Philips is directly subject to specific

---

[24] For the same reasons stated above in Sections B.2.4 and C.2.4, the significant contacts that should be imputed to Royal Philips from Philips RS render the maintenance of jurisdiction fair. *See Chocolate II*, 674 F. Supp. 2d at 618.

jurisdiction in all forums for Plaintiffs' recall-based negligence claims; (3) Royal Philips is directly subject to specific jurisdiction on Plaintiffs' RICO claim; and (4) Royal Philips is subject to both general and specific jurisdiction in all forums on all Plaintiffs' claims because Philips RS is the alter ego / agent of Royal Philips.

Dated: August 22, 2023                                          Respectfully submitted,

*/s/ Sandra L. Duggan*
Sandra L. Duggan, Esquire
**LEVIN SEDRAN & BERMAN LLP**
510 Walnut Street, Suite 500
Philadelphia, PA 19106
(215) 592-1500 (phone)
sduggan@lfsblaw.com

*/s/ Christopher A. Seeger*
Christopher A. Seeger, Esquire
**SEEGER WEISS LLP**
55 Challenger Road, 6th Floor
Ridgefield Park, NJ  07660
(973) 639-9100 (phone)
cseeger@seegerweiss.com

*/s/ Steven A. Schwartz*
Steven A. Schwartz, Esquire
**CHIMICLES SCHWARTZ KRINER &
DONALDSON-SMITH LLP**
361 West Lancaster Avenue
One Haverford Centre
Haverford, PA 19041
(610) 642-8500 (phone)
steveschwartz@chimicles.com

*/s/ Kelly K. Iverson*
Kelly K. Iverson, Esquire
**LYNCH CARPENTER, LLP**
1133 Penn Avenue, 5th Floor
Pittsburgh, PA 15222
(412) 322-9243 (phone)
kelly@lcllp.com

*Plaintiffs' Co-Lead Counsel*

*/s/ D. Aaron Rihn*
D. Aaron Rihn, Esquire
**ROBERT PEIRCE & ASSOCIATES,
P.C.**
707 Grant Street, Suite 125
Pittsburgh, PA 15219
(412) 281-7229 (phone)
(412) 281-4229 (fax)
arihn@peircelaw.com

Peter St. Tienne Wolff, Esquire
**PIETRAGALLO GORDON ALFANO
BOSICK & RASPANTI, LLP**
One Oxford Centre - 38th Floor
Pittsburgh, PA 15219
(412) 263-2000 (phone)
(412) 263-2001 (fax)
psw@pietragallo.com

*Plaintiffs' Co-Liaison Counsel*

**APPENDIX**

| TABLE 1: ROYAL PHILIPS' RECALL CONTACTS SATISFY THE LONG-ARM STATUTES OF ALL STATES D.C. AND PUERTO RICO | |
|---|---|
| **STATE** | **AUTHORITY** |
| AL | Ala. R. Civ. P. 4.2 (personal jurisdiction to full extent of constitution). |
| AK | Alaska Stat. Ann. §09.05.015; *Polar Supply Co., Inc. v. Steelmaster Industries, Inc.*, 127 P.3d 52, 54 (Alaska 2005) (personal jurisdiction to full extent of constitution). |
| AZ | Ariz. R. Civ. P. 4.2 (personal jurisdiction to full extent of constitution). |
| AR | Ark. Code Ann. §16-4-101 (personal jurisdiction to full extent of constitution). |
| CA | Cal. Civ. Proc. §410.10 (2022) (personal jurisdiction to full extent of constitution). |
| CO | Colo. Rev. Stat. Ann §13-1-124; *Dart Intern., Inc. v. Interactive Target Systems, Inc.*, 877 F. Supp. 541, 543 (D. Colo. 1995) (citing *Safari Outfitters, Inc., v. Superior Court*, 167 Colo. 456, 448 P.2d 783 (1968)) (personal jurisdiction to full extent of constitution). |
| CT | Conn. Gen. Stat. Ann. §52-59b; Conn. Gen. Stat. Ann. § 33-929(f) ("Every foreign corporation shall be subject to suit in this state . . . on any cause of action arising as follows: (1) Out of any contract made in this state or to be performed in this state; (2) out of any business solicited in this state by mail or otherwise if the corporation has repeatedly so solicited business, whether the orders or offers relating thereto were accepted within or without the state; (3) out of the production, manufacture or distribution of goods by such corporation with the reasonable expectation that such goods are to be used or consumed in this state and are so used or consumed, regardless of how or where the goods were produced, manufactured, marketed or sold or whether or not through the medium of independent contractors or dealers; or (4) out of tortious conduct in this state, whether arising out of repeated activity or single acts, and whether arising out of misfeasance or nonfeasance."). |
| DC | D.C. Code. Ann. §13-423 (personal jurisdiction to full extent of constitution). |
| DE | Del. Code Ann. tit. 10, § 3104; *AstraZeneca AB v. Mylan Pharms., Inc.*, 72 F. Supp. 3d 549, 552 (D. Del. 2014) (personal jurisdiction to full extent of constitution). |
| FL | Fla. Stat. Ann. §48.193 (personal jurisdiction from actins including "Causing injury to persons or property within this state arising out of an act or omission by the defendant outside this state, if, at or about the time of the injury, either: a. The defendant was engaged in solicitation or service activities within this state; or b. Products, materials, or things processed, serviced, or manufactured by the defendant anywhere were used or consumed within this state in the ordinary course of commerce, trade, or use."). |
| GA | Ga. Code Ann. §9-10-91 (personal jurisdiction for acts including transaction of any business within Georgia; or "commi[ssion of] a tortious injury in Georgia by act or omission outside state if the tort-feasor regularly does or solicits business, or engages in any other persistent course of conduct, or derives substantial revenue from goods used or consumed or services rendered in this state"). |

| TABLE 1: ROYAL PHILIPS' RECALL CONTACTS SATISFY THE LONG-ARM STATUTES OF ALL STATES D.C. AND PUERTO RICO | |
|---|---|
| **STATE** | **AUTHORITY** |
| HI | Haw. Rev. Stat. Ann. §634-35; *Yamashita v. LG Chem., Ltd.* 518 P.3d 1169, 1171 (Haw. 2022) (citing *Cowan v. First Insurance Co. of Hawai'i Ltd.* 608 P.2d 394 (Haw. 1980)) (personal jurisdiction to full extent of constitution). |
| ID | Idaho Code. Ann. §5-514; *Wells Cargo, Inc. v. Transport Ins. Co*, 676 F. Supp. 2d 1114, 1119 (D. Idaho 2009) (personal jurisdiction to full extent of constitution). |
| IL | 735 Ill. Comp. Stat. Ann. 5/2-209; *Zamora v. Lewis*, 146 N.E.3d 231, 242 (Ill. Ct. App. 2019) (citing *Sheikholeslam v. Favreau*, 138 N.E.3d 894 (Ill. App. Ct.)) (personal jurisdiction to full extent of constitution). |
| IN | Ind. Trial R. 4.4 (2023) (personal jurisdiction to full extent of constitution). |
| IA | Iowa Code Ann. §617.3; *Shine Bros. Corp. v. American Intern. Group, Inc.*, 108 F. Supp. 3d 651, 659 (N.D. Iowa 2015) (personal jurisdiction to full extent of constitution). |
| KS | Kan. Stat. Ann. §60-308; *Kluin v. American Suzuki Motor Corp.*, 56 P.3d 829, 834 (Kan. 2002) (citing *St. Paul Surplus Lines Ins. Co. v. International Playtex, Inc.*, 777 P.2d 1259 (Kan. 1989)) (personal jurisdiction to full extent of constitution). |
| KY | Ky. Rev. Stat. Ann. §454.21; *Friction Materials Co., Inc. v. Stinson*, 833 S.W.2d 388, 390 (Ky. Ct. App. 1992) (personal jurisdiction to full extent of constitution). |
| LA | La. Stat. Ann. §13:3201 (personal jurisdiction to full extent of constitution). |
| MA | Mass. Gen. Laws Ann. ch. 223A, § 3; *Barnes v. Merck & Co.*, 2023 WL 35359, at *3 (D. Mass. Jan. 4, 2023)  (Long arm satisfied where person transacts business in Massachusetts; causes tortious injury by act or omission in Massachusetts; or causing tortious injury in this Massachusetts by an act or omission outside Massachusetts if he regularly does or solicits business, or engages in any other persistent course of conduct, or derives substantial revenue from goods used or consumed or services rendered, in this Massachusetts). |
| ME | Me. Stat. tit. 14 §704-A (personal jurisdiction to full extent of constitution). |
| MD | Md. Code Ann., Cts. & Jud. Proc. §6-103; *CSR, Ltd. v. Taylor*, 983 A.2d 492, 501 (Md. 2009) (citing *Bond v. Messerman*, 895 A.2d 990 (Md. 2006)) (personal jurisdiction to full extent of constitution). |
| MI | Mich. Comp. Laws Ann. §600.705; Mich. Comp. Laws Ann. §600.705; *Kriko v. Allstate Ins. Co. of Canada*, 357 N.W.2d 882, 883 (Mich. Ct. App. 1984) (citing *Northern Ins. Co. v. B. Elliott Ltd.*, 323 N.W.2d 683 (Mich. Ct. App. 1982)) (personal jurisdiction to full extent of constitution). |
| MN | Minn. Stat. Ann. §543.19; *Valspar Corp. v. Lukken Color Corp.*, 495 N.W.2d 408, 410 (Minn. 1992); *State Farm Mut. Auto. Ins. Co. v. Tennessee Farmers Mut. Ins. Co.*, 645 N.W.2d 169, 172 (Minn. Ct. App. 2002) (personal jurisdiction to full extent of constitution) |

| TABLE 1: ROYAL PHILIPS' RECALL CONTACTS SATISFY THE LONG-ARM STATUTES OF ALL STATES D.C. AND PUERTO RICO | |
|---|---|
| **STATE** | **AUTHORITY** |
| MS | Miss. Code. Ann. §13-3-57 ("Any nonresident person, firm, general or limited partnership, or any foreign or other corporation not qualified under the Constitution and laws of this state as to doing business herein, who shall make a contract with a resident of this state to be performed in whole or in part by any party in this state, or who shall commit a tort in whole or in part in this state against a resident or nonresident of this state, or who shall do any business or perform any character of work or service in this state, shall by such act or acts be deemed to be doing business in Mississippi and shall thereby be subjected to the jurisdiction of the courts of this state."). |
| MO | Mo. Ann. Stat. §506.500; *Babb v. Bartlett*, 638 S.W.3d 97, 106 (E.D. Mo. 2021) (personal jurisdiction to full extent of constitution). |
| MT | M. R. Civ. P. 4; *Wolves of the Rockies, Inc. v. Stone*, 2022 WL 123770, at *3 (D. Mont. Jan. 13, 2022) (personal jurisdiction to full extent of constitution). |
| NE | Neb. Rev. Stat. Ann. §25-536 ("Who has any other contact with or maintains any other relation to this state to afford a basis for the exercise of personal jurisdiction consistent with the Constitution of the United States."). |
| NJ | *IMO Indus., Inc. v. Kiekert AG*, 155 F.3d 254, 259 (3d Cir. 1998); *Lithia Ramsey-T, LLC v. City Line Auto Sales, LLC*, 2023 WL 1883355, at *6 (D.N.J. Feb. 9, 2023) (personal jurisdiction to full extent of constitution). |
| NV | Nev. Rev. Stat. Ann. §14.065 (personal jurisdiction to full extent of constitution) |
| NH | N.H. Rev. Stat. Ann. §510:4; *Kimball Union Academy v. Genovesi*, 70 A.3d 435, 440 (N.H. 2013) (personal jurisdiction to full extent of constitution). |
| NM | N.M. Stat. Ann. §38-1-16; *Tercero v. Roman Catholic Diocese,* 48 P.3d 50, 54 (N.M. 2002) (personal jurisdiction to full extent of constitution). |
| NY | N.Y. C.P.L.R. §302 (jurisdiction over acts including, commission of "a tortious act without the state causing injury to person or property within the state, except as to a cause of action for defamation of character arising from the act, if he (i) regularly does or solicits business, or engages in any other persistent course of conduct, or derives substantial revenue from goods used or consumed or services rendered, in the state, or (ii) expects or should reasonably expect the act to have consequences in the state and derives substantial revenue from interstate or international commerce."). |
| NC | N.C. Gen. Stat. Ann. §1-75.4; *Brown v. Refuel America, Inc.*, 652 S.E.2d 389, 394 (N.C. Ct. App. 2007) (personal jurisdiction to full extent of constitution). |
| ND | N.D. R. Civ. P. 4; *Bolinske v. Herd*, 689 N.W.2d 397 (N.D. 2004) (personal jurisdiction to full extent of constitution). |
| OH | Ohio Rev. Code Ann. §2307.382; *Estate of Thomson ex rel. Estate of Rakestraw v. Toyota Motor Corp. Worldwide*, 545 F.3d 357, 361 (6th Cir. 2008) (personal jurisdiction to full extent of constitution). |
| OK | Okla. Stat. Ann. Tit. 12 §2004 (personal jurisdiction to full extent of constitution). |

| TABLE 1: ROYAL PHILIPS' RECALL CONTACTS SATISFY THE LONG-ARM STATUTES OF ALL STATES D.C. AND PUERTO RICO | |
|---|---|
| **STATE** | **AUTHORITY** |
| OR | OR Civ. P. 4 (personal jurisdiction to full extent of constitution). |
| PA | 42 Pa. Stat. and Cons. Stat. Ann. §5322 (personal jurisdiction to full extent of constitution). |
| PR | P.R. Laws Ann. tit. 32A, Ap. V, §3.1 (personal jurisdiction to full extent of constitution). |
| RI | 9 R.I. Gen. Laws. Ann. §9-5-33(a) (personal jurisdiction to full extent of constitution). |
| SC | S.C. Code Ann. §3-2-803; *Hidria, Usa, Inc. v. Delo*, 783 S.E.2d 839, 843 (S.C. Ct. App. 2016) (personal jurisdiction to full extent of constitution). |
| SD | S.D. Codified Laws §15-7-2 (personal jurisdiction to full extent of constitution). |
| TN | Tenn. Code Ann. §20-2-214 (personal jurisdiction to full extent of constitution). |
| TX | Tex. Civil Prac. & Rem. §17.042; *Western Technologies, Inc. v. Omnivations II, L.L.C.*, 583 S.W.3d 786, 791 (Tex. App. 2019) (citing *TV Azteca v. Ruiz*, 490 S.W.3d 29, 36 (Tex. 2016)) (personal jurisdiction to full extent of constitution). |
| UT | Utah Code Ann. §78B-3-205; *Pohl, Inc. of America v. Webelhuth*, 201 P.3d 944, 956 (Utah 2008) (personal jurisdiction to full extent of constitution). |
| VT | Vt. Stat. Ann. Tit. §§855 & 913; *Northern Aircraft, Inc. v. Reed*, 572 A.2d 1382, 1385-86 (Vt. 1990) (personal jurisdiction to full extent of constitution). |
| VA | VA Code Ann. §8.01-328.1; *In re Eli Lilly and Company*, 580 F. Supp. 3d 334, 340 (E.D. Va. 2022) (quoting *UMG Recordings, Inc. v. Kurbanov*, 963 F.3d 344, 351 (4th Cir. 2020), *cert. denied*, 141 S. Ct. 1057 (2021) (personal jurisdiction to full extent of constitution). |
| WA | Wash. Rev. Code Ann. §4.28.185; *Oytan v. David-Oytan*, 288 P.3d 57, 66 (Wash. Ct. App. 2012) (citing *In re Marriage of Yocum*, 870 P.2d 1033 (Wash. Ct. App. 1994)) (personal jurisdiction to full extent of constitution). |
| WV | W.Va. Code Ann. §56-3-33; *Leslie Equip. Co. v. Wood Res. Co., L.L.C.*, 687 S.E.2d 109, 113 n.14 (W. Va. 2009) (personal jurisdiction to full extent of constitution). |
| WI | Wis. Stat. Ann. §801.05; *Daniel J. Hartwig Assocs., Inc. v. Kanner*, 913 F.2d 1213, 1217 (7th Cir.1990) (personal jurisdiction to full extent of constitution). |
| WY | Wyo. Stat. Ann. §5-1-107 (personal jurisdiction to full extent of constitution). |

A-4

| TABLE 2: ROYAL PHILIPS IS SUBJECT TO ALTER EGO/AGENCY JURISDICTION | |
|---|---|
| **Each circuit analyzes alter ego or agency jurisdiction in substantially the same manner.** | |
| First Circuit | *Concepts NREC, LLC v. SoftInway, Inc.*, 2021 WL 916259, at *3 (D. Mass. Mar. 10, 2021) ("[T]welve factors that courts may look to as part of a "evaluative consideration" of whether corporate formalities should be set aside: (1) common ownership; (2) pervasive control; (3) confused intermingling of business assets; (4) thin capitalization; (5) nonobservance of corporate formalities; (6) absence of corporate records; (7) no payment of dividends; (8) insolvency at the time of the litigated transaction; (9) siphoning away of corporation's funds by dominant shareholder; (10) nonfunctioning of officers and directors; (11) use of the corporation for transactions of the dominant shareholders; and (12) use of the corporation in promoting fraud.")<br><br>*City of Bangor v. Citizens Commc'ns Co.*, 2003 WL 22183205, at *3 (D. Me. Sept. 22, 2003), *report and recommendation adopted*, 2003 WL 22913423 (D. Me. Dec. 1, 2003) (similar).<br><br>*Daynard v. Ness, Motley, Loadholt, Richardson & Poole, P.A.*, 290 F.3d 42, 55 (1st Cir. 2002) ("For purposes of personal jurisdiction, the actions of an agent may be attributed to the principal.") |
| Second Circuit | *S. New England Tel. Co. v. Glob. NAPs Inc.*, 624 F.3d 123, 138 (2d Cir. 2010) ("It is also well established that the exercise of personal jurisdiction over an alter ego corporation does not offend due process.").<br><br>*Clipper Wonsild Tankers Holding A/S Biodiesel Ventures, LLC*, 851 F. Supp. 2d 504, 510-511 (2d Cir. 2012) (assessing whether piercing corporate veil will achieve equitable result through review of factors including disregard of corporate formalities, inadequate capitalization, intermingling of funds, overlap of ownership, common office space).<br><br>*CesFin Ventures LLC v. Al Ghaith Holding Co. PJSC*, 2022 WL 18859076, at *5 (S.D.N.Y. Dec. 10, 2022) ("In determining whether an entity is properly understood as another's alter ego for jurisdictional purposes, courts consider a number of factors, including the failure to observe corporate formalities; intermingling of personal and corporate funds; overlap in ownership and directors; shared office space and phone numbers; whether the alter egos and the corporation dealt with one another at arm's length; the payment or guarantee of debts of the alter egos by the corporation in question; and whether the corporation in question had property that was used by the alter egos as if it were their own."). |
| Third Circuit | *UHS of Del. Inc. v. United Health Srvs. Inc.*, 2015 WL 539736, at *4 (M.D. Pa. Feb. 10, 2015) (Factors indicative of corporate dependence include: "(1) the parent corporation owns all or a significant majority of the subsidiary's stock; (2) commonality of officers or directors exists between the two corporations; (3) the group possesses a unified marketing image, |

A-5

| | |
|---|---|
| | including common branding; (4) insignias, trademarks, and logos are uniform across corporate boundaries; (5) group members share employees; (6) the parent has integrated its sales and distribution systems with those of its subsidiaries; (7) the corporations exchange or share managerial or supervisory personnel; (8) the subsidiary performs business functions that would ordinarily be handled by the parent corporation; (9) the parent uses the subsidiary as a marketing division or as an exclusive distributor; and (10) the parent exercises direct control or provides instruction to the subsidiary's officers and directors."). |
| | *D'Jamoos ex rel. Est. of Weingeroff v. Pilatus Aircraft Ltd.*, 566 F.3d 94, 108–09 (3d Cir. 2009) ("[A]s all corporations must necessarily act through agents, a wholly owned subsidiary may be an agent and when its activities as an agent are of such a character as to amount to doing business of the parent, the parent is subjected to the in personam jurisdiction of the state in which the activities occurred."). |
| Fourth Circuit | *Sky Cable, LLC v. DIRECTV, Inc.,* 886 F.3d 375, 390-92 (4th Cir. 2018) (alter ego not a formula, but appropriate when a single individual or entity completely controls another entity). |
| Fifth Circuit | *Patin* v. *Thoroughbred Power Boats*, 294 F.3d 640, 653 n.18 (5th Cir. 2002) ("[F]ederal courts have consistently acknowledged that it is compatible with due process for a court to exercise personal jurisdiction over . . . a corporation that would not ordinarily be subject to personal jurisdiction in that court when the . . . corporation is an alter ego or successor of a corporation that would be subject to personal jurisdiction in that court."). *Freudensprung v. Offshore Tech. Servs., Inc.*, 379 F.3d 327, 346 (5th Cir. 2004) ("In determining whether a plaintiff asserting personal jurisdiction has overcome the presumption of corporate separateness, this Court considers the following nonexhaustive factors: (1) the amount of stock owned by the parent of the subsidiary; (2) whether the entities have separate headquarters, directors, and officers; (3) whether corporate formalities are observed; (4) whether the entities maintain separate accounting systems; and (5) whether the parent exercises complete control over the subsidiary's general policies or daily activities.") |
| Sixth Circuit | *Estate of Thomson* v. *Toyota Motor Corp. Worldwide*, 545 F.3d 357, 362 (6th Cir. 2008) (Sixth Circuit guided by factors such as whether (1) corporate formalities are observed, (2) corporate records are kept, and (3) the corporation is financially independent (4) sharing the same employees and corporate officers; (5) engaging in the same business enterprise; (6) having the same address and phone lines; (7) using the same assets; (8) completing the same jobs; (9) not maintaining separate books, tax returns and financial statements; and (10) exerting control over the daily affairs of another corporation.). |

| Seventh Circuit | *City of Greenville, Ill. v. Syngenta Crop Prot., Inc.*, 830 F. Supp. 2d 550, 555 (S.D. Ill. 2011) ("Where a plaintiff claims a parent company is subject to a court's jurisdiction by virtue of its subsidiary's contacts because it exercised extraordinary control over the subsidiary, the court considers factors including: (1) whether officers or directors are the same; (2) how much control is exerted by parent over daily affairs of its subsidiary; (3) whether parent arranges financing for and capitalization of subsidiary; (4) whether separate books, tax returns, and financial statements are kept; (5) whether parent holds its subsidiary out as agent; and (6) the method of payment made to parent by subsidiary."). <br><br> *City of Greenville, Ill. v. Syngenta Crop Prot., Inc.*, 830 F. Supp. 2d 550, 555 (S.D. Ill. 2011) (subsidiary's jurisdictional contacts can be imputed to parent "where the subsidiary is acting solely as the parent's agent, and the parent is simply doing business through its subsidiary to shield itself from liability."). |
|---|---|
| Eighth Circuit | *Lakota Girl Scout Council, Inc. v. Havey Fund-Raising Mgmt., Inc.*, 519 F.2d 634, 638 (8th Cir. 1975) (corporate form can be disregarded "if (1) the corporation is undercapitalized, (2) without separate books, (3) its finances are not kept separate from individual finances, individual obligations are paid by the corporation, (4) the corporation is used to promote fraud or illegality, (5) corporate formalities are not followed or (6) the corporation is merely a sham.") |
| Ninth Circuit | *Ranza v. Nike, Inc.*, 793 F.3d 1059, 1073 (9th Cir. 2015) (Alter ego relationship shown by *prima facie* case that there is such unity of interest and ownership that the separate personalities of the two entities no longer exist and (2) that failure to disregard their separate identities would result in fraud or injustice.) <br><br> *Daewoo Elecs. Am. Inc. v. Opta Corp.*, 875 F. 3d 1241, 1250 (9th Cir. 2017) (Factors indicative of alter ego control by parent include: (1) inadequate capitalization, (2) commingling of funds and other assets, (3) disregard of corporate formalities and failure to maintain an arm's length relationship, (4) holding out by one entity that is liable to the debts of the other, (5) identical equitable ownership, (6) use of the same offices and employees, (7) lack of segregation of corporate records, (8) manipulating assets between entities so as to concentrate the assets in one and the liabilities in another, and (9) identical directors and officers.). |
| Tenth Circuit | *Titan Feeding, LLC v. Corey Cattle Co., LLC*, 2022 WL 4182458, at *8 (D. Colo. Sept. 13, 2022) (Factors considered to determine whether one corporation is the alter ego of another include, whether it (1) is operated as a distinct business entity, (2) maintains its funds separately (3) keeps adequate records (4)  facilitates misuse by an insider, (5) is thinly capitalized, (6) is used as a mere shell, (7) disregards legal formalities, and (8) allows funds or assets to be used for noncorporate purposes). |

| | |
|---|---|
| | *Curtis Publishing Co. v. Cassel,* 302 F.2d 132, 137 (10th Cir.1962) ("[A] wholly owned subsidiary may be an agent and when its activities as an agent are of such a character as to amount to doing business of the parent, the parent is subjected to the in personam jurisdiction of the state in which the activities occurred."). |
| Eleventh Circuit | *United States* v. *Mortg. Investors Corp.,* 987 F.3d 1340, 1355 (11th Cir. 2021) ("[F]ederal courts have consistently acknowledged that it is compatible with due process for a court to exercise personal jurisdiction over . . . a corporation that would not ordinarily be subject to personal jurisdiction in that court when the . . . corporation is an alter ego or successor of a corporation that would be subject to personal jurisdiction in that court."). |
| **Plaintiffs have set forth sufficient evidence to support alter-ego or agency jurisdiction pursuant to the substantive law of each forum.** | |
| First Circuit | *See, e.g., Concepts NREC, LLC v. SoftInway, Inc.,* 2021 WL 916259, at *7 (D. Mass. Mar. 10, 2021) (*prima facie* showing of alter ego jurisdiction because two entities "operated in a common enterprise and that the lines between the one and the other were, at best, ambiguous"; consulting agreements permitted one entity to practically direct employees of the other entity);*City of Bangor v. Citizens Commc'ns Co.,* 2003 WL 22183205, at *5 (D. Me. Sept. 22, 2003) *report and recommendation adopted,* 2003 WL 22913423 (D. Me. Dec. 1, 2003) (*prima facie* showing of alter ego jurisdiction because among more, overlapping officers, the parent corporation's involvement in subsidiary's business transactions, and cross-entity managerial roles); *U.S. v. Arkwright, Inc.,* 690 F. Supp. 1133 (D.N.H. 1988) (*prima facie* case for personal jurisdiction when a parent owns one hundred per cent of its subsidiary's stock, has approval over the subsidiary's capital and operating budgets, its loans, and guarantees the subsidiary's loans and lines of credit.); *McAleer v. Smith,* 715 F. Supp. 1153, 1159 (D.R.I. 1989) (personal jurisdiction when non-forum defendant "possessed a substantial right to control the marketing activities of its sole distributor" within the state); *W. Clay Jackson Enterprises, Inc. v. Greyhound Leasing & Fin. Corp.,* 431 F. Supp. 1229, 1232 (D.P.R. 1977) (alter ego jurisdiction due to "high degree of supervision and control" as shown by common officers and directors, consolidated income statements, parent supervision of banks accounts). |
| | *See, e.g., Jet Wine & Spirits, Inc. v. Bacardi & Co.,* 298 F.3d 1, 9 (1st Cir. 2002) (personal jurisdiction over parent under agency theory because subsidiary was the "exclusive brand agent and distributor" for the parent); *Ameral v. Intrepid Travel Party, Ltd.,* 128 F. Supp. 3d 382, 388 (D. Mass. 2015) (imputing subsidiary's jurisdictional contacts to parent due to apparent agency relationship); *Winne v. Nat'l Collegiate Student Loan Tr. 2005-1,* 228 F. Supp. 3d 141, 151 (D. Me. 2017) (attributing jurisdictional contacts based on "agency-like relationship" between two entities demonstrating active management and by one entity over the other, |

A-8

| | |
|---|---|
| | including power to fire employees and requirement of obtaining approval of principal for various actions). |
| Second Circuit | *See, e.g.*, *In re Vitamin C Antitrust Litig.*, 2012 WL 2930109, at *6, 12 (E.D.N.Y. July 18, 2012) (alter ego personal jurisdiction because the "practical reality" was that the parent, "as advertised on its website, manufactures and sells" the product at issue through the subsidiary, "which acts like a sales department of" the parent); *Williams v. PMA Cos.*, Inc., 419 F. Supp. 3d 471, 486 (N.D.N.Y. 2019) (alter ego personal jurisdiction when parent and subsidiary had "a conscious and continuous sharing of work and work responsibilities"); *Shanshan Shao v. Beta Pharma, Inc.*, 2019 WL 7882485, at *12 (D. Conn. Sept. 23, 2019) (alter ego personal jurisdiction because assets comingled among wholly owned subsidiaries and corporate form abused in attempt to avoid liability); *Mansfield Heliflight, Inc. v. Heli-One Canada Inc.*, 2012 WL 4479851, at *7 (D. Vt. Sept. 28, 2012) (alter ego personal jurisdiction because website and press releases failed to distinguish between separate entities, and officers overlapped); *Concepts NREC, LLC v. Qiu*, 2021 WL 6750964, at *5 (D. Vt. Sept. 20, 2021) (alter ego personal jurisdiction because two companies commonly owned, shared offices, and worked for collective benefit of single enterprise world-wide). |
| Third Circuit | *See, e.g., UHS of Del. Inc. v. United Health Srvs. Inc.*, 2015 WL 539736, at *4 (M.D. Pa. Feb. 10, 2015) (alter ego jurisdiction because parent vertically managed group of companies through strategic business units aligned with product groups rather than corporate boundaries); *Hooper v. Safety-Kleen Systems Inc.*, 2016 WL 7212586, at *6 (W.D. Pa. Dec. 13, 2016); *Simeone ex rel. Estate of Albert Francis Simeone, Jr. v. Bombardier-Roxax GmbH*, 360 F. Supp. 2d. 665, 675 (E.D. Pa. 2005); *In re Latex Gloves Prods. Liab. Litig.*, 2001 WL 964105, at *3 (E.D. Pa. Aug.22, 2001).\n\n*See, e.g., Cephalon, Inc. v. Watson Pharm., Inc.*, 629 F.Supp.2d 338, 348 (D. Del. 2009) (Under the agency theory, the court may attribute the actions of a subsidiary company to its parent where the subsidiary acts on the parent's behalf or at the parent's direction."); *Wesley–Jessen Corp. v. Pilkington Visioncare, Inc.*, 863 F.Supp. 186, 188 (D. Del.1993) (agency relationship when "the business strategies and financial statements of the defendant companies are analyzed as a unit, and these companies present themselves as a unified entity to their employees and to the marketplace"). |
| Fourth Circuit | *See, e.g., Hayward Indus., Inc. v. Ningbo C.F. Elec. Tech Co.*, 2021 WL 2187953, at *7 (W.D.N.C. May 28, 2021) (*prima facie* show of alter ego jurisdiction where evidence shows overlap in principals between three corporations that also hold themselves out as part of single enterprise); *Virginia Elec. & Power Co. v. Peters*, 2018 WL 1995523, at *3 (E.D. Va. Apr. 27, 2018) (alter ego personal jurisdiction where unity of ownership and corporate structure used to avoid liability); *Makina v. Kimya Endustrisi*, 2023 WL 2065673, at *5 (W.D. Va. Feb. 17, 2023) (allegation that corporate entity agreed to pay outstanding debt owed by owner sufficient to survive motion to dismiss alter ego claim); *Pfizer Inc. v. Synthon Holding, B.V.*, 386 |

A-9

| | |
|---|---|
| | F. Supp. 2d 666, 678 (M.D.N.C. 2005) (alter ego jurisdiction where CEO of parent provided direct instructions regarding business and operations of subsidiary); *Federal Deposit Ins. Corp. v. British–American Corp.,* 726 F. Supp. 622, 629-30 (E.D.N.C.1989)(holding parent corporations cannot hide behind the fiction of a subsidiary and enjoy the benefits of a forum while at the same time avoiding the responsibilities attendant therewith.); *Copley Triangle Assocs. v. Apparel America, Inc.,* 385 S.E.2d 201, 202-03 (N.C. App. 1989); *Gourdine v. Karl Storz Endoscopy-Am., Inc.*, 223 F. Supp. 3d 475, 493 (D.S.C. 2016) (alter ego jurisdiction because it is "inequitable to excuse from a product liability action the party that designed the product, manufactured the product, developed the product's marketing and sales materials, and solely owned and controlled the sales agent who entered the forum to sell the product, on the basis of a legal separation between manufacturer and distributor insufficient to warrant any written distribution, exclusivity, servicing, or marketing agreement between them"); *see also Newport News Holdings Corp. v. Virtual City Vision, Inc.*, 650 F.3d 423, 433-34 (4th Cir. 2011). |
| Fifth Circuit | *See, e.g.*, *In re Chinese Manufactured Drywall Prod. Liab. Litig.*, 894 F. Supp. 2d 819, 895 (E.D. La. 2012), *aff'd,* 742 F.3d 576 (5th Cir. 2014), and *aff'd,* 753 F.3d 521 (5th Cir. 2014) (alter ego and agency jurisdiction where parent entity created subsidiary, had overlapping directors with subsidiary, capitalized subsidiary, used common email addresses and websites as subsidiary, held itself out to be a single entity); *Ronaldo Designer Jewelry, Inc. v. Anne Ryan, LLC*, 74 F. Supp. 3d 783, 790 (S.D. Miss. 2015) (alter ego personal jurisdiction where companies had same owners, sold the same type of merchandise, shared the same sales representative, shared same location to many of the same customers); *Berry v. Lee*, 428 F. Supp. 2d 546, 556 (N.D. Tex. 2006) (*prima facie* showing of personal jurisdiction based on evidence that four companies act as single enterprise including that companies' brochures, business cards, and websites all refer to a single enterprise) |
| Sixth Circuit | *See, e.g.*, *Kate v. Artimplant USA, Inc.*, No. 1:12 CV 134, 2012 WL 1902575, at *2 (N.D. Ohio May 25, 2012) (alter ego personal jurisdiction over Swedish medical device manufacturer because it owned and controlled its American subsidiary and the control and operations of entity American entity's marketing, sales, and advertising were "inextricably intertwined" with the European entity such that the European entity could not separate itself from the U.S. entity for the purpose of establishing jurisdiction); *Wang v. Gen. Motors, LLC*, 2020 WL 4474163, at *7–8 (E.D. Mich. Aug. 4, 2020) (*prima facie* showing of alter ego personal jurisdiction because the senior management of one entity maintained operational command and control over the other, purportedly separate entity; corporate officials and managers were shared; websites and corporate logos suggested a single unitary enterprise); *Keller v. Clean Harbors, Inc.*, 2018 WL 1474567, at *3–4 (E.D. Mich. Jan. 31, 2018), *report and recommendation adopted in part*, 2018 WL 1471444 (E.D. Mich. Mar. 26, |

A-10

| | |
|---|---|
| | 2018) (alter ego jurisdiction where entity shared corporate officers; consolidated financial statements; and control over operations); *Gillett v. Spirit Com. Auto Risk Retention Grp., Inc.*, 2020 WL 5732155, at *8 (W.D. Ky. Sept. 24, 2020), *amended on reconsideration in part*, 2021 WL 27475 (W.D. Ky. Jan. 4, 2021) (alter ego jurisdiction because two entities operated by the same individuals, shared employees, had similarly designed websites); *Pro Tanks Leasing v. Midwest Propane & Refined Fuels, LLC*, 988 F. Supp. 2d 772, 785–94 (W.D. Ky. 2013) (alter ego jurisdiction where entities shared at least one corporate officer and the same board of directors; parent financed and guaranteed subsidiaries operations); *Glover v. Small Bone Innovations, Inc.*, 2012 WL 2412068, at *5 (N.D. Ohio June 26, 2012); *Moore v. Westgate Resorts Ltd., L.P.*, No. 3:18-CV-00410-DCLC, 2020 WL 6814666, at *9–10 (E.D. Tenn. Nov. 18, 2020) (alter ego jurisdiction where two entities shared the same corporate officers and managing employees; engaged in the same business; operated under the same brand name; shared the financial assets). |
| Seventh Circuit | *See, e.g.*, *City of Greenville v. Syngenta Crop Prot., Inc.*, 830 F. Supp. 2d 550, 563-64 (S.D. Ill. 2011) (alter ego personal jurisdiction because parent's control of subsidiary exceed that which is consistent with investor status, uniform marketing representing a single-intergraded globally managed entity, uniform corporate insignia, logos, and websites, and ultimate management through the parent's executive committee); *Certain Underwriters at Lloyds v. CSX Transp., Inc.*, 2021 WL 3353914, at *3 (S.D. Ill. Aug. 2, 2021) (alter ego personal jurisdiction because companies had overlapping boards and management agreement for shared services that rendered companies implicitly and explicitly intertwined); *Wesleyan Pension Fund, Inc. v. First Albany Corp.*, 964 F. Supp. 1255, 1261–62 (S.D. Ind.1997) (alter ego personal jurisdiction based on contacts of eight subsidiary corporations because "greater than normal control" exerted over subsidiaries based on shared and overlapping officers and directors, shared principal place of business, and common ownership); *Handlos v. Litton Industries, Inc.*, 304 F. Supp. 347 (E.D. Wis. 1969) (alter ego personal jurisdiction because the defendant represented its assets to shareholders in the form of consolidated statements and held itself out as an organization that exercised considerable control over its subsidiaries.); *Taurus IP v. DaimlerChrysler Corp.*, 519 F. Supp. 2d 905 (W.D. Wis. 2007). |
| Eighth Circuit | *See, e.g.*, *George v. Uponor Corp.*, 988 F. Supp. 2d 1056, 1065 (D. Minn. 2013) (*prima facie* showing of alter ego jurisdiction where parent and subsidiary filed consolidated financial statements, refer to one another as part of a single business enterprise divided by geographic reporting regions); *Gorton v. Nordlund,* 2005 WL 3289426, at *7 (Minn. Ct. App. Dec. 6, 2005) (upholding jurisdiction in part because of interrelationship between parent and subsidiary in production and sale of product at issue, and because parent operated subsidiary as a "major division" of company and coordinated its business); *Lakota Girl Scout Council, Inc. v. Havey Fund-Raising Mgmt., Inc.*, 519 F.2d 634, 638 (8th Cir. 1975) (alter ego |

| | |
|---|---|
| | jurisdiction where sole shareholder controlled corporation); *Anderson v. Dassault Aviation*, 361 F.3d 449, 452 (8th Cir. 2004); *McCall L. Firm, PLLC v. Crystal Queen, Inc.*, 2017 WL 5652389, at *10 (E.D. Ark. Mar. 3, 2017); *Ribeiro v. Baby Trend, Inc.*, 2016 WL 3093439, at *8 (D. Neb. June 1, 2016) |
| Ninth Circuit | *See, e.g.*, *City and County of San Francisco v. Purdue Pharma L.P.*, 491 F. Supp. 3d 610, 635-644 (N.D. Cal. 2020) (*prima facie* showing of alter ego personal jurisdiction for three foreign parents because, among more, parent oversaw and enforced implementation of U.S. subsidiary's compliance program by training, developing policies and procedures, auditing a monitoring implementation of procedures, and correcting deviating behavior.); *Pehle v. Dufour*, 2012 WL 4490955, at *6 (E.D. Cal. Sept. 28, 2012) ("Here, plaintiff has adequately established that there is a unity of interests ... since [parent] also dictates the day-to-day business of the corporation, including determinations regarding wage and hour policies."); *Rollins Burdick Hunter of So. Cal., Inc. v. Alexander & Alexander Servs., Inc.*, 206 Cal. App. 3d 1, 11, 253 Cal.Rptr. 338 (1988) (concluding that the parent corporation's control over incentive decisions supports a finding of alter ego).*Television Events & Mktg., Inc. v. Amcon Distrib. Co.*, 416 F. Supp. 2d 948, 963 (D. Haw. 2006) (sufficient allegations of alter ego for personal jurisdiction where funds comingled); *Davidson v. USPlabs, LLC*, 2015 WL 12683825, at *6 (D. Haw. Oct. 30, 2015) (*prima facie* showing of alter ego personal jurisdiction where injustice, inequity or fraud would result); *U.S. Pipelining LLC v. Johnson Controls, Inc.*, 2017 WL 11702920, at *6 (D. Haw. Apr. 28, 2017); *Flynt Distrib. Co. v. Harvey*, 734 F.2d 1389, 1393 (9th Cir. 1984); *Geanacopulos v. Narconon Fresh Start*, 39 F. Supp. 3d 1127, 1133 (D. Nev. 2014). |
| Tenth Circuit | *See, e.g.*, *US Magnesium, LLC v. ATI Titanium LLC*, No. 2:17-CV-923-DB, 2019 WL 1755427, at *4 (D. Utah Apr. 19, 2019) (sufficient allegations for alter ego personal jurisdiction pleaded where complaint alleged failure to maintain separate financial records; and undercapitalization); *Larada Scis., Inc. v. Pediatric Hair Sols. Corp.*, , 2023 WL 2043300, at *17 (D. Utah Feb. 16, 2023); *Luc v. Krause Werk GMBH & Co.*, 289 F. Supp. 2d 1282, 1289 (D. Kan. 2003) (*prima facie* case of alter ego personal jurisdiction despite separate operations, facilities, records, books, and headquarters); *Dickson Indus., Inc. v. Thomas Grinding, Inc.*, 2009 WL 10687735, at *3 (W.D. Okla. Jan. 14, 2009); *TransFirst, LLC v. Brown*, 323 F.R.D. 641, 653 (D. Colo. 2018) (*prima facie* showing of alter ego jurisdiction where funds and assets comingle, legal formalities ignored, among more); *F.D.I.C. v. First Interstate Bank of Denver, N.A.*, 937 F. Supp. 1461, 1468 (D. Colo. 1996). |
| Eleventh Circuit | *See, e.g.*, *Najran Co. for Gen. Contracting & Trading v. Fleetwood Enterprises*, Inc., 659 F. Supp. 1081 (S.D. Ga.1986) (subsidiaries were alter ego of parent, where parent controlled operations of subsidiaries, |

subsidiaries had no employees or office space, parent transported subsidiaries' employees to and from job site, and stationery of parent and subsidiary were used interchangeably); *Huntsville Aviation Corp. v. Ford*, 577 So.2d 1281 (Ala. 1991) (alter ego existed where corporations as they were used interchangeably, credits were shared amongst supposedly separate entities, and all controlled by the same stockholder); *Hollingshead v. Burford Equip. Co.*, 828 F. Supp. 916 (M.D. Ala.1993) (alter ego where companies shared common stock ownership, officers and directors were the same, dealings between entities were undocumented in financial reports, and salaries and expenses were paid for and by the other); *PFM Air, Inc. v. Dr. Ing. hc. F. Porsche A.G.*, 751 F. Supp. 2d 1264, 1276 (M.D. Fla. 2010) alter ego or agency relationship where subsidiary existed to provide support to parent in the forum country).

*In re Chinese-Manufactured Drywall Products Liab. Litig.*, 753 F.3d 521, 546-7 (5th Cir. 2014) (personal jurisdiction based on agency relationship where control demonstrated by principal's employees board members of agent, principal provided capital contribution, equipment and rental space for agent, agent used principal's trademark without charge, and agent held itself out to be the same entity as principal); *Stubbs v. Wyndham Nassau Resort & Crystal Palace Casino*, 447 F.3d 1357, 1361–63 (11th Cir. 2006) (personal jurisdiction based on agency relationship when the subsidiary acted as an advertising and booking department for the parent, and the subsidiary conducted business solely for the parent); *Meier ex rel. Meier v. Sun Int'l Hotels, Ltd.*, 288 F.3d 1264 (11th Cir. 2002) (personal jurisdiction based on agency relationship where resident subsidiary conducted business with and for foreign affiliate).

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that a true and correct copy of the foregoing document was filed via the Court's CM/ECF system on this 22nd day of August 2023, and is available for download by all counsel of record.

*/s/ D. Aaron Rihn*
D. Aaron Rihn, Esquire
PA I.D. No.: 85752
ROBERT PEIRCE & ASSOCIATES, P.C.
707 Grant Street
Suite 125
Pittsburgh, PA 15219
Tel: 412-281-7229
Fax: 412-281-4229
arihn@peircelaw.com

A-1