**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| **IN RE: PHILIPS RECALLED CPAP, BI-LEVEL PAP, AND MECHANICAL VENTILATOR PRODUCTS LITIGATION**<br><br>**This Document Relates to:**<br>*All Actions Asserting Economic Loss Claims* | **Master Docket: Misc. No. 21-mc-1230-JFC**<br><br>**MDL No. 3014** |

**BRIEF IN SUPPORT OF UNOPPOSED MOTION OF PROPOSED SETTLEMENT
CLASS REPRESENTATIVES FOR PRELIMINARY APPROVAL OF CLASS
SETTLEMENT AGREEMENT AND RELEASE OF ECONOMIC LOSS CLAIMS AND
TO DIRECT NOTICE TO THE PROPOSED SETTLEMENT CLASS**

**TABLE OF CONTENTS**

I.     INTRODUCTION ............................................................................................. 1

II.    HISTORY OF THE LITIGATION AND PROPOSED CLASS SETTLEMENT ........... 4

    A.    The Litigation.................................................................................. 4

    B.    Motions to Dismiss ......................................................................... 5

    C.    Discovery ...................................................................................... 5

    D.    Mediation and Settlement .............................................................. 6

III.    NOTABLE SETTLEMENT TERMS .................................................................. 8

    A.    Proposed Settlement Class............................................................... 8

    B.    Payments Available to Settlement Class Members ............................. 9

        1.    Device Payment Awards ................................................... 9

        2.    Device Return Awards ................................................... 10

        3.    Device Replacement Awards ........................................... 10

        4.    Payer Awards ................................................................ 11

    C.    Funding of Settlement Payments ................................................... 11

        1.    Device Payment Awards ................................................. 12

        2.    Device Return Awards ................................................... 13

        3.    Device Replacement Awards ........................................... 13

        4.    Payer Awards ................................................................ 14

    D.    Additional Benefits ...................................................................... 14

        1.    Accelerated Implementation Option ("AIO")..................... 14

        2.    Extended Warranties ...................................................... 15

    E.    Settlement Administration and Claims Submissions ......................... 15

        1.    Settlement Administration .............................................. 15

        2.    Claims Submissions ...................................................... 16

    F.    Releases....................................................................................... 19

    G.    Attorneys' Fees and Expenses ....................................................... 20

    H.    The Notice Plan............................................................................ 20

IV.    ARGUMENT ................................................................................................ 20

    A.    Legal Standards For Settlement Approval ....................................... 20

    B.    Preliminary Approval of the Proposed Settlement Is Warranted......... 24

1.     Settlement Class Counsel and the Class Representatives have adequately represented the Class ............................................................. 25

2.     The proposed Settlement was negotiated at arm's length........................ 26

3.     The relief provided to the Settlement Class is adequate ........................ 27

       a.     The costs, risks, and delay of trial and appeal ............................ 27

       b.     The proposed method of distributing relief to the Settlement Class and processing Settlement Class Members' Claims is easy, efficient, and effective ...................... 32

       c.     The terms of a proposed award of attorneys' fees, including timing and payment, have not yet been negotiated..................... 33

4.     The proposed Settlement treats Settlement Class Members equitably relative to each other .................................................................. 34

A.   Certification of the Proposed Class for Purposes of Settlement Only is Appropriate ....................................................................................................... 35

       1.     Numerosity Under Rule 23(a)(1) ............................................................. 36

       2.     Commonality Under Rule 23(a)(2)........................................................... 36

       3.     Typicality Under Rule 23(a)(3) ................................................................ 37

       4.     Adequacy of Representation Under Rule 23(a)(4) .................................. 38

       5.     The Predominance and Superiority Requirements of Rule 23(b)(3) ....... 39

       6.     Ascertainability ....................................................................................... 40

B.   The Notice Program is the Best Notice Practicable Under the Circumstances ................................................................................................... 42

       1.     The Proposed Notice Plan is the most practicable under the circumstances ......................................................................................... 42

       2.     The Proposed Notice Clearly Explains Settlement Class Members' Rights ...................................................................................................... 44

       3.     The Proposed Settlement Administrator Is Qualified............................. 45

E.   A Final Fairness Hearing Should be Scheduled. ................................................ 45

V.   CONCLUSION............................................................................................................... 46

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Abramson v. Agentra, LLC,*
  2021 WL 3370057 (W.D. Pa. Aug. 3, 2021) ........................................................... 40

*Amchem Prods. v. Windsor,*
  521 U.S. 591 (1997) ....................................................................................... 36, 39

*Byrd v. Aaron's Inc.,*
  784 F.3d 154 (3d Cir. 2015) ................................................................................. 41

*Calhoun v. Invention Submission Corp.,*
  2023 WL 2411354 (W.D. Pa. Mar. 8, 2023) .................................................. *passim*

*Carnegie v. Household Int'l, Inc.,*
  376 F.3d 656 (7th Cir. 2004) ............................................................................... 29

*Cole's Wexford Hotel, Inc. v. UPMC & Highmark Inc. ("Cole's Wexford I"),*
  2016 WL 6919773 (W.D. Pa. Apr. 6, 2016) (Conti, J.) ........................................ 21

*Cole's Wexford Hotel, Inc. v. UPMC & Highmark Inc. ("Cole's Wexford II"),*
  2016 WL 6236892 (W.D. Pa. July 29, 2016) (Conti, J.) ............................. 24, 26, 30

*Copley v. Evolution Well Servs. Operating LLC,*
  2023 WL 1878581 (W.D. Pa. Feb. 10, 2023) ................................................. 23, 27

*Ehrheart v. Verizon Wireless,*
  609 F.3d 590 (3d Cir. 2010) ................................................................................. 21

*Girsh v. Jepson,*
  521 F.2d 153 (3d Cir. 1975) ................................................................................. 23

*Gonzalez v. Corning,*
  885 F.3d 186 (3d Cir. 2018) ................................................................................. 40

*Granillo v. FCA US LLC,*
  2019 WL 4052432 (D.N.J. Aug. 27, 2019) ........................................................... 31

*Hickton v. Enterprise Rent-A-Car Company,*
  2013 WL 12137092 (W.D. Pa. Apr. 29, 2013) (Conti, J.) ................................ 21, 30

*In re All-Clad Metalcrafters, LLC v. Cookware Mktg. & Sales Practices Litig.,*
  2023 WL 2071481 (W.D. Pa. Feb. 17, 2023) .................................................. *passim*

*In re Baby Products Antitrust Litig.,*
  708 F.3d 163 (3d Cir. 2013) ................................................................................. 30

*In re Gen. Motors Corp. Pick-Up Truck Fuel Tank Prod. Liab. Litig.*
  *("In re GMC")*, 55 F.3d 768 (3d Cir.), *cert. denied*, 516 U.S. 824 (1995) ................. 24, 30, 36

*In re: Google Inc. Cookie Placement Consumer Priv. Litig.*,
  934 F.3d 316 (3d Cir. 2019)........................................................................ 21, 23, 24

*In re JUUL Labs, Inc. Mktg. Sales Pracs. & Prod. Liab. Litig.*,
  609 F. Supp. 3d 942 (N.D. Cal. 2022) ..................................................................... 36

*In re Mercedes-Benz Emissions Litig.*,
  2021 WL 8053614 (D.N.J. July 12, 2021)............................................................... 27

*In re Nat'l Football League Players Concussion Injury Litig.* (*"In re NFL I"*),
  775 F.3d 570 (3d Cir. 2014)............................................................................... 24, 46

*In re Nat'l Football League Players Concussion Injury Litig.* (*"In re NFL II"*),
  821 F.3d 410 (3d Cir.),............................................................................. 24, 32, 38, 42

*In re Processed Egg Prods. Antitrust Litig.*,
  284 F.R.D. 249 (E.D. Pa. 2012) .............................................................................. 44

*In re Prudential Ins. Co. Am. Sales Practice Litig.*,
  148 F.3d 283 (3d Cir. 1998)...................................................................... 23, 28, 37

*In re Prudential Ins. Co. of Am. Sales Practices Litig.*,
  962 F. Supp. 450 (D.N.J. 1997) .............................................................................. 45

*In re Railway Indus. Empl. No-Poach Antitrust Litig.*,
  2020 WL 13852931 (W.D. Pa. Aug. 26, 2020) (Conti, J.) ............................... 24, 25

*In re Rent-Way Sec. Litig.*,
  305 F. Supp. 2d 491 (W.D. Pa. 2003)................................................................. 44, 45

*In re Valsartan, Losartan & Irbesartan Prod. Liab. Litig.*,
  2023 WL 1818922 (D.N.J. Feb. 8, 2023) ................................................................ 36

*In re Volkswagen & Audi Warranty Extension Litig.*,
  89 F. Supp. 3d 155 (D. Mass. 2015) .................................................................. 31, 32

*Larson v. AT&T Mobility,*
  *Inc.*, 687 F.3d 109 (3d Cir. 2012) .......................................................................... 44

*Murphy v. Hundreds is Huge, Inc.*,
  2022 WL 2110202 (W.D. Pa. June 10, 2022)......................................................... 23

*Murphy v. Le Sportsac, Inc.*,
  2023 WL 375903 (W.D. Pa. Jan. 24, 2023) ........................................................... 21

*Newton v. Merrill Lynch*,
    259 F.3d 154 (3d Cir. 2001) ............................................................................ 38

*Palamara v. King's Family Restaurants*,
    2008 WL 1818453 (W.D. Pa. Apr. 22, 2008) ................................................ 32

*Reinig v. RBS Citizens, N.A.*,
    912 F.3d 115 (3d Cir. 2018) ............................................................................ 36

*Reyes v. Netdeposit, LLC*,
    802 F.3d 469 (3d Cir. 2015) ............................................................................ 37

*Rodriguez v. Nat'l City Bank*,
    726 F.3d 372 (3d Cir. 2013) ............................................................................ 37

*Rossini v. PNC Fin. Servs. Grp., Inc.*,
    2020 WL 3481458 (W.D. Pa. June 26, 2020) ........................................... 25, 27

*In re Warfarin Sodium Antitrust Litig. ("In re Warfarin")*,
    391 F.3d 516 (3d Cir. 2004) ....................................................................... 21, 29

*Solak v. Ford Motor Co.*,
    2023 WL 4628456 (E.D. Mich. July 19, 2023) ......................................... 27, 30

*Sullivan v. DB Invs., Inc.*,
    667 F.3d 273 (3d Cir. 2011) ................................................................. 24, 39, 40

*Torres v. BrandSafway Indus. LLC*,
    2023 WL 346667 (W.D. Pa. Jan. 20, 2023) .................................................... 22

*Vaughn v. Am. Honda Motor Co.*,
    627 F. Supp. 2d 738 (E.D. Tex. 2007) ............................................................ 32

*Vines v. Covelli Enterprises*,
    2012 WL 5992114 (W.D. Pa. Nov. 30, 2012) ................................................ 39

*Walker v. Highmark BCBSD Health Options, Inc.*,
    2022 WL 17592067 (W.D. Pa. Dec. 13, 2022) .............................................. 36

*Wetzel v. Liberty Mut. Ins. Co.*,
    508 F.2d 239 (3d Cir. 1975) ............................................................................ 38

*Zanghi v. Freightcar Am., Inc.*,
    2016 WL 223721 (W.D. Pa. Jan. 19, 2016) ............................................... 25, 32

**Statutes**

28 U.S.C. §1407 ...................................................................................................... 4

**Rules**

Fed. R. Civ. P. 23 .................................................................................................... *passim*

**Other Authorities**

Manual for Complex Litigation (Fourth) (2004) ................................................. 24, 46

*4 William B. Rubenstein, Newberg and Rubenstein on Class Actions* §13:50, Westlaw
   (6th ed. Database updated June 2023) ............................................................. 26, 44

I.      **INTRODUCTION**

Proposed Settlement Class Representatives seek preliminary approval of the Class Settlement Agreement and Release of Economic Loss Claims against the Philips Defendants and other Released Parties.[1] The Settlement confers substantial benefits upon the proposed Settlement Class,[2] was negotiated in good faith and at arm's length by experienced counsel, and should be preliminarily approved under Fed. R. Civ. P. 23(e)(1)(B) because the Court will likely be able to find after a Final Fairness Hearing that it is fair, reasonable, and adequate. The Court should also conditionally certify the proposed Settlement Class to which the Parties have stipulated.

The proposed Settlement resolves the Economic Loss Claims of Users and Payers[3] with respect to approximately 10.8 million CPAPs, BiPAPs, and ventilator devices with polyester polyurethane ("PE-PUR") foam that were recalled by Philips RS beginning on June 14, 2021 due to potential health risks caused by the degradation of the foam. The Settlement is the result of a year of extensive negotiations that began in September 2022 when the first of four in-person mediation sessions was conducted by the highly experienced, Court-appointed Settlement Mediator, Hon. Diane M. Welsh (Ret.). As explained in her Declaration,[4] the Parties were very

---

[1] The "Philips Defendants" are, collectively, Philips RS North America LLC ("Philips RS"), Koninklijke Philips N.V. ("KPNV"), Philips North America LLC, Philips Holding USA, Inc., and Philips RS North America Holding Corporation. The Released Parties also include, among others, Defendants Polymer Technologies, Inc. and Polymer Molded Products LLC.

[2] Unless otherwise noted, capitalized terms have the same meaning herein that they have in the proposed Class Settlement Agreement and Release of Economic Loss Claims, attached hereto as Ex. "A" ("Settlement Agreement" or "SA"), at §1.

[3] "Users" are persons or entities who purchased, leased, rented, or paid for (in whole or part), or were prescribed a Recalled Device. *Id.* §§1.51, 1.59. "Payers" are entities that reimbursed (in whole or part) a User's payment to purchase, lease, rent, or otherwise pay for a Recalled Device, including insurers, self-funded employers, and other third-party payers. *Id.* §§1.34, 1.51.

[4] The Declaration of Hon. Diane M. Welsh (Ret.) in Support of Proposed Economic Loss Claims Settlement dated July 26, 2023, is attached hereto as Ex. "B" ("Welsh Decl.").

well-informed before entering into the Settlement – they exchanged comprehensive mediation statements that addressed the many complex factual and legal issues relating to the Economic Loss Claims and engaged in targeted discovery of documents and information relevant to the mediation discussions. During this time, the Parties also engaged in extensive briefing on the Defendants' motions to dismiss, further clarifying some of the key legal issues in this litigation.

Mediation efforts culminated in a signed Term Sheet on May 24, 2023. Thereafter, the Parties engaged in protracted negotiations over the complex terms of the Settlement Agreement and accompanying exhibits, with the Agreement ultimately executed on September 7, 2023. Importantly, the Parties' negotiations focused solely on relief for the Settlement Class, and they did not negotiate attorneys' fees during the mediation process or during their subsequent negotiations of the terms of the Settlement Agreement. Welsh Decl. ¶16.

Pursuant to this proposed Settlement, the Philips Defendants will pay a *minimum* of $479 million into *non-reversionary* Settlement Funds, with a minimum of $445,000,000 for Device Payment Awards and Device Return Awards to Eligible Users ("User Settlement Fund") and $34,000,000 for Payer Awards to Eligible Payers ("Payer Settlement Fund"). As necessary, the Philips Defendants will replenish the User Settlement Fund to pay additional Device Payment and Device Return Awards to Eligible Users that exceed the prefunded baseline thresholds. The Philips Defendants have also agreed to pay up to $15,000,000 for Device Replacement Awards to Eligible Users.

Eligible Users will receive Device Return Awards of $100 for each Recalled Device they return to Philips RS, and they will also receive Device Payment Awards ranging from $55.63 to $1,552.25 per Recalled Device, depending on the Recalled Device at issue. These cash payments will *not* be reduced, regardless of how many claims are filed. A fixed amount of $34,000,000 will

-2-

be available for Payer Awards to pay Eligible Payers. This amount will not increase or decrease based on the number or amount of Eligible Payers or submissions for Payer Awards. SA §2.10.1.

In addition to the Settlement Funds for Settlement Class Members, the Philips Defendants have agreed to pay *separately* any attorneys' fees and costs that may be awarded by the Court to Settlement Class Counsel, as well as Service Awards of $5,000 to each of the five Settlement Class Representatives, subject to Court approval. Accordingly, the payments to Settlement Class Counsel and the Settlement Class Representatives will not diminish the recovery of Settlement Class Members. Moreover, the Settlement Fund will not be reduced on account of the cost of Notice and Settlement Administration, as the Philips Defendants have likewise agreed to pay those reasonable expenses in addition to and separately from the payments to Settlement Class Members.

Another important feature of the Settlement is that Settlement Class Members who enroll their Recalled Devices in the Settlement (or register them in a Philips RS recall program) and timely return their Recalled Devices to Philips RS will *automatically* receive Device Payment Awards and Device Return Awards for each returned device without having to complete and submit a claim form. Another signature feature of the Settlement is the "Accelerated Implementation Option" ("AIO"), which enables Eligible Users who have enrolled or registered their Recalled Devices and returned them before the Claims Period Deadline to obtain their Device Payment Award and Device Return Award even *before* any appeals from the Final Judgment have been decided, and *regardless* of the outcome of those appeals.

In sum, the proposed Settlement confers very substantial benefits upon Settlement Class Members, was negotiated in good faith and at arm's length by highly experienced counsel on both sides, and avoids the considerable risks, delays, expense, and burdens of continued class action litigation of Plaintiffs' Economic Loss Claims. Significantly, Plaintiffs' Personal Injury claims and

-3-

Medical Monitoring claims are expressly excluded from the scope of this proposed settlement. Settlement Class Counsel respectfully submit that preliminary approval is warranted, and notice should be directed to the proposed Settlement Class.

## II.    HISTORY OF THE LITIGATION AND PROPOSED CLASS SETTLEMENT

### A.    The Litigation

On June 14, 2021, Philips RS announced recalls of approximately 10.8 million of its CPAP, BiPAP, and ventilator devices sold, leased, rented or otherwise distributed in the United States. Shortly thereafter, litigation related to the Recalled Devices was commenced against the Philips Defendants in various federal and state courts involving claims for economic loss, medical monitoring and personal injury. On October 8, 2021, the Judicial Panel on Multidistrict Litigation ("JPML") granted a Motion for Transfer and Coordination or Consolidation Under 28 U.S.C. §1407 thereby establishing this MDL ("the MDL"), assigned the MDL to this Court ("the MDL Court"), and transferred all then-pending federal lawsuits to the MDL for coordinated or consolidated pretrial proceedings. ECF No. 1.

On October 10, 2022, Plaintiffs filed a Consolidated Third Amended Class Action Complaint for Economic Losses on behalf of themselves and all others similarly situated. ECF No. 785 ("Economic Loss Complaint" or "EL Compl.").[5] Plaintiffs alleged that the PE-PUR foam in the Recalled Devices is susceptible to hydrolysis, causing it to degrade and expose patients to toxic particles and VOCs, EL Compl. ¶¶214-17, 255-71, some of which are known or suspected carcinogens. *Id.* ¶¶272-88. As a result, Plaintiffs allege, among other things, the Recalled Devices were defective and worthless at the time of purchase. *Id.* ¶254. Plaintiffs allege that if Settlement

---

[5] In subsequent weeks, Plaintiffs also filed a Consolidated Second Amended Class Action Complaint for Medical Monitoring (ECF No. 815) and an Amended Master Long Form Complaint for Personal Injuries and Damages and an accompanying Short Form Complaint (ECF No. 834). Medical Monitoring and Personal Injury Claims are excluded from this Settlement and preserved.

Class Members had been aware that the Recalled Devices were defective and worthless, they would not have spent money on them. *See, e.g.*, *id.* ¶¶20, 22-150.

### B.     Motions to Dismiss

Five separate motions to dismiss were filed attacking Plaintiffs' Economic Loss Complaint. ECF Nos. 902, 911, 913, 915, 918. In particular, the Philips Defendants challenged Plaintiffs' allegations that they suffered economic harm because of the purchase or acquisition of Recalled Devices, arguing that Plaintiffs lacked standing and had failed to state a claim upon which relief may be granted. *See* ECF No. 912. The Philips Defendants, other than Philips RS, argued that Plaintiffs had not alleged specific conduct on the part of those entities and had not alleged sufficient facts to establish an alter ego or agency theory of liability. ECF No. 919. KPNV argued that the Court lacked personal jurisdiction on all claims other than in Pennsylvania on the negligent recall claim. ECF No. 914. Plaintiffs filed briefs in opposition to these motions, ECF Nos. 1527, 1531, 1566, 1743, and 1745, and the motions are still pending.

### C.     Discovery

Discovery began shortly after the litigation commenced. Plaintiffs served discovery requests in early March of 2022. The Rule 26(f) meeting was held on or about April 5, 2022, and in the months following, the Parties negotiated an ESI protocol, a Protective Order, search terms, and Plaintiffs otherwise continued to serve discovery. Beginning as early as April of 2022, the Philips Defendants began to produce documents, and periodic document productions have continued since that time.

To date, Plaintiffs have reviewed hundreds of thousands of documents, including emails, Microsoft Teams chats, and mobile text messages produced by the Philips Defendants and third parties, that are relevant to issues such as liability, organizational structure, insurance, and sales

and marketing. In addition, using various e-discovery tools, Plaintiffs have been able to prioritize review of the most highly relevant documents. Plaintiffs also engaged in discovery to develop a factual record related to KPNV's motion to dismiss for lack of personal jurisdiction and with respect to the liability of the various Philips Defendants. Finally, Plaintiffs engaged experts during the discovery process, including experts on class damages, providing further insight into the strengths and weaknesses of the Economic Loss Claims. Some of the experts provided substantial assistance to Settlement Class Counsel in connection with their Science Day presentation to the Court on September 1, 2022.

### D.    Mediation and Settlement

The proposed Settlement was the product of hard-fought, arm's-length negotiations and a mediation process that was ordered by the Court. On May 26, 2022, the Court appointed the Honorable Diane M. Welsh (Ret.) to serve as a Settlement Mediator in this litigation. ECF No. 588 (Pretrial Order No. 16). Shortly after her appointment, on June 24, 2022, Judge Welsh held a Zoom meeting with counsel for the Parties and subsequently corresponded with counsel to discuss the general issues in the case and the logistics for the mediation. *See* Welsh Decl. ¶6. Over the course of the next 13 months, Judge Welsh presided over an intensive mediation and settlement negotiation process that resulted in the proposed Settlement of the Economic Loss Claims. *Id*. ¶¶6-20.

Beginning before the first mediation session, the Parties exchanged detailed mediation statements that addressed the factual issues pertaining to the Economic Loss Claims and the key legal issues relating to those claims as well as initial settlement proposals. *Id*. ¶7. On September 15, 2022, under the supervision of Judge Welsh, the Parties held their first in-person mediation session, which was attended by Settlement Class Counsel, outside counsel for the Philips

Defendants, and senior representatives of the Philips Defendants with settlement authority. *Id*. ¶8. The mediation session consisted of joint sessions with all participants, and breakout sessions with each side individually where counsel for both sides made multiple presentations regarding various factual and legal issues. *Id*.

During the first mediation session, the Parties discussed how to prioritize targeted discovery to facilitate and inform the mediation discussions. *Id*. ¶9. As a result, certain document discovery, specific interrogatories, and other discovery requests were prioritized. *Id*. Responses to that discovery enabled the Parties to become fully informed of the relevant facts and allowed them to carefully evaluate the strengths and weaknesses of their respective positions. *Id*.

On November 15, 2022, the Parties held a second in-person mediation session where they continued to discuss the structure of a proposed settlement and a draft Settlement Term Sheet. *Id*. ¶11. During this time period, the Parties continued to exchange information and documents. Under the continued supervision and guidance of Judge Welsh, the Parties held two more in-person mediation sessions on February 23 and 24, 2023. *Id*. ¶12.

In addition to the in-person mediation sessions, the Parties negotiated extensively over the phone, via Zoom, by email, and in person, and involved Judge Welsh from time-to-time to help resolve disputes as they arose. *Id*. ¶¶13-15. Over the next three and a half months, the Parties engaged in extensive negotiations over the terms of the Settlement Agreement and the many exhibits thereto, exchanging numerous drafts, engaging in extensive back and forth, and calling upon Judge Welsh to resolve certain disputes from time to time. *Id*. ¶15. Ultimately, the Parties executed the Settlement Agreement on September 7, 2023.

Throughout the Settlement negotiation process, the Parties refrained from negotiating attorneys' fees and costs for Settlement Class Counsel. *Id*. ¶16. Settlement Class Counsel

aggressively sought meaningful and substantial benefits for the Settlement Class while recognizing both the risks that would be faced if litigation of the Economic Loss Claims proceeded and the substantial costs and delays in pursuing the matter through fact and expert discovery, class certification, summary judgment, trial, and appeal. *Id*. ¶18. For their part, counsel for the Philips Defendants pushed back on many of the demands advanced by Settlement Class Counsel and articulated the obstacles Plaintiffs and the putative class would face in litigation, while at the same time recognizing the risks, expenses, and burdens of such litigation for their own clients. *Id*. ¶19. Simply put, the proposed Settlement is one that is the result of good faith, fair, thorough, and fully-informed arm's-length negotiations. *Id*. ¶¶19-20.

## III.   NOTABLE SETTLEMENT TERMS

### A.   Proposed Settlement Class

The proposed Settlement Class consists of:

Plaintiffs and all other individuals or entities in the United States [including its Territories (American Samoa, Guam, the Northern Mariana Islands, Puerto Rico, and the U.S. Virgin Islands), and the District of Columbia], including individuals who are United States citizens, residents, United States military, diplomatic personnel and employees living or stationed overseas, who or which, prior to the announcement of the Recalls, either (a) purchased, leased, rented, or paid for (in whole or part), or were prescribed a Recalled Device ("Users"), or (b) reimbursed (in whole or part) a User's payment to purchase, lease, rent, or otherwise pay for a Recalled Device, including insurers, self-funded employers, and other third-party payers ("Payers"). Individuals or entities whose payment obligations with respect to a particular Recalled Device preceded the announcement of the relevant Recall are part of the Settlement Class even if certain of their payment obligations post-dated the Recall (*e.g.*, certain renters and lessees).

EXCLUDED from the Settlement Class are: (a) Defendants and their officers, directors, and employees; (b) the MDL Court, Settlement Mediator, Claims Appeals Special Master, and Special Masters assigned to the MDL; (c) individuals who have already released Released Claims against one or more of the Defendants pursuant to individual settlements or other resolutions; (d) DMEs [Durable Medical Equipment providers]; (e) the federal government and any federal government payers, including the United States Department of Health and Human Services

Centers for Medicare & Medicaid Services, the Department of Defense, and the
U.S. Department of Veterans Affairs; and (f) Settlement Class Counsel.

Settlement Agreement §1.51. *See also id.* §§ 1.15, 1.58.

### B.      Payments Available to Settlement Class Members

The Settlement will provide four categories of substantial monetary payments to Settlement

Class Members: (1) compensation to Eligible Users for payments made to purchase, rent, or lease

a Recalled Device ("Device Payment Awards"); (2) compensation to Eligible Users for returning

a Recalled Device to Philips RS ("Device Return Awards"); (3) compensation to Eligible Users

for money spent out-of-pocket to replace their Recalled Devices between the June 14, 2021

announcement of the Recall and the September 7, 2023 Execution Date of the Settlement ("Device

Replacement Awards"); and (4) compensation to Eligible Payers for reimbursing (in whole or in

part) Users for payments made to purchase, lease, rent or otherwise pay for a Recalled Device

("Payer Awards"). *Id.* §§3.2-3.4, 3.6. In addition, Users may be eligible for extended warranties

on certain Remanufactured Devices (*i.e.*, the repaired, refurbished or new devices that Philips

Respironics provided to Users under its recall programs with the FDA). *Id.* §3.5.

### 1.      Device Payment Awards

All Users are eligible for Device Payment Awards if they purchased, leased, rented, or paid

for (in whole or part) a Recalled Device and they did not receive their full payment back pursuant

to a warranty before the Recall was announced. *Id.* §§3.2.1, 3.2.6, 6.4. The amounts of these

Awards for Users vary for each type of Recalled Device. *Id*. §3.2. Significantly, these Device

Payment Award amounts are fixed, and will not be reduced, regardless of how many claims are

filed. *Id.* §2.7.1. In the event multiple Users make valid Device Payment Award claims with respect

to the same Recalled Device (*e.g.*, a rented Recalled Device), the Device Payment Award for that

Recalled Device will be allocated on a *pro rata* basis in accordance with each User's total

-9-

payments for that device.[6] *Id.* §3.2.5.

## 2. Device Return Awards

In addition to Device Payment Awards, the proposed Settlement provides for a Device Return Award of $100 per Recalled Device for all Eligible Users who have either (1) already returned a Recalled Device to Philips RS pursuant to a Recall Program or (2) return a Recalled Device to Philips RS by the Claims Period Deadline pursuant to either the terms of the Settlement or a Recall Program.[7] *Id.* §3.3. Only one Device Return Award is available for each Recalled Device. *Id.* As is the case with Device Payment Awards, the $100 payment for Device Return Awards is fixed and will not be reduced, regardless of how many claims are filed. *Id.* §2.7.1. Receipt of a Device Return Award for a particular Recalled Device does not affect a User's eligibility to also receive a Device Payment Award. *Id.* §3.3.6. Users who receive a Device Return Award may also receive a Device Replacement Award under certain conditions. *Id.* §§3.4.6, 3.4.7.

## 3. Device Replacement Awards

The proposed Settlement also provides for Device Replacement Awards to Eligible Users. Users who paid out of pocket for a comparable Replacement Device on or after the Recall was announced on June 14, 2021 and prior to the September 7, 2023 Execution Date of the Settlement without having received, or prior to receiving, a Remanufactured Device from the Philips RS Recall Program are eligible for a Device Replacement Award. *Id.* §3.4. The amount of the Device Replacement Award for a particular User will be based on the amount actually paid by the User[8]

---

[6] Receipt of a Device Payment Award does not affect a User's eligibility, if applicable, for a Device Return Award and/or a Device Replacement Award with respect to that same device. SA §3.2.7.

[7] Philips RS agrees to make prepaid labels available on the Settlement website so as to allow Users to return their Registered or Enrolled Recalled Devices to Philips RS. *Id.* §3.3.4.

[8] The amounts of a Device Replacement Award will not be based on any payment made by insurance or another third-party payer on behalf of or for the benefit of the User. *Id.* §1.46.

to purchase, lease, or rent the Replacement Device; the value of the replaced Philips RS Recalled Device; and the total valid claims for Replacement Awards that are submitted, subject to the funding limitations for this Award. *Id.* §3.4.1. Only one Device Replacement Award is available per Recalled Device. *Id.* §3.4.3.

### 4.   Payer Awards

The proposed Settlement also provides for Payer Awards to Eligible Payers. Payer Awards will be determined based on each Eligible Payer's relative market share (aggregated among all Eligible Payers) based on the number of insured lives covered by the Eligible Payer in the United States and the dollar amount of direct premiums written by the Eligible Payer in the United States for Calendar Years 2021 and 2022. *Id.* §6.7, *et seq*. The Settlement Administrator will determine each Eligible Payer's Market Share Percentage based on industry data and the information provided in the Payer Declarations and Claim Forms. *Id.*

### C.   Funding of Settlement Payments

Pursuant to the terms of the Settlement Agreement, Settlement Funds will be established with payments made by the Philips Defendants. There will be a User Settlement Fund and a Payer Settlement Fund. *Id.* §1.54. Subject to Court approval, the Parties agree that Huntington Bank should serve as Settlement Fund Escrow Agent. *Id.* §1.55. Each Settlement Fund will be established and initially funded through deposits by, or on behalf of, the Philips Defendants, no later than 14 days after execution of the Settlement Agreement, of the Initial Payment for Class Notice and Settlement Administration, in the amounts of $7,350,000 into the User Settlement Fund and $100,000 into the Payer Settlement Fund. *Id.* §§2.3.2, 2.4.1. The Philips Defendants will make additional payments for Settlement Administration separate and apart from their payments for Settlement Awards. *Id.* §§2.4.2, 6.1.1.

Payments for Device Payment Awards, Device Return Awards, and Payer Awards will be a minimum of $479 million, with no maximum for Device Payment Awards and Device Return Awards, and there will be no reversion of the prefunded payments to the Philips Defendants. *Id*. §§2.5.1, 2.7.1., 2.10.1., 2.12. In addition to the prefunded amounts, the Philips Defendants will pay up to $15,000,000 for Device Replacement Awards. *Id.* §§2.8.1., 6.6.2.4. These funds will be paid as follows:

### 1. Device Payment Awards

The Initial Device Payment Amount will be calculated based on total Device Payment Awards for all Registered Recalled Devices as of the Execution Date plus an amount equal to the total Device Payment Awards for 5% of the remaining Recalled Devices that have not been registered by that time. *Id*. §2.5.1. The Initial Device Payment Amount will be paid in two installments by wire transfer into the User Settlement Fund: (1) 25% of the Initial Device Payment Amount ("first installment") will be paid no later than 14 days following MDL Court Final Approval; and (2) 75% of the Initial Device Payment Amount ("second installment") will be paid no later than 14 days following the Effective Date.[9] *Id*. In the event the first installment of the Initial Device Payment Amount is insufficient to pay Device Payment Awards to Users electing the AIO, discussed below, the Philips Defendants shall deposit additional funds from the second installment to make sure the User Settlement Fund is large enough to make those payments. *Id*.

The combined first and second installment payments for the Initial Device Payment Amount will be no less than $309 million. *Id*. The Settlement Agreement provides for additional

---

[9] "Effective Date" is the date when the Settlement becomes Final (*i.e*., after the MDL Court enters the Final Order and Judgment, and all appeals have been exhausted or resolved in a manner that upholds the Final Order and Judgment). SA §1.17.

payments to be made by the Philips Defendants, on a monthly basis, if the Initial Device Payment Amount and the Initial Device Return Amount are not sufficient to make all Device Payment Awards and Device Return Awards required by the Settlement. *Id.* §2.7, *et seq.*

### 2.    Device Return Awards

The Initial Device Return Amount will be an amount equal to $100 for each and every Registered and Enrolled Recalled Device returned by Users to Philips RS pursuant to the Recall Programs or the Settlement as of the date of MDL Court Final Approval.[10] *Id.* §2.6.1. The Initial Device Return Amount will be paid in two installments by wire transfer into the User Settlement Fund: (1) 25% of the Initial Device Return Amount ("first installment") will be paid no later than 14 days following MDL Court Final Approval; and (2) 75% of the Initial Device Return Amount ("second installment") will be paid no later than 14 days following the Effective Date. *Id.* In the event the first installment of the Initial Device Return Amount is insufficient to pay Device Return Awards to Users electing the AIO, discussed below, the Philips Defendants shall deposit additional funds from the second installment to make sure the User Settlement Fund is large enough to make those payments. *Id.*

The combined first and second installment payments for the Initial Device Return Amount will be not less than $136 million. *Id.*

### 3.    Device Replacement Awards

The Philips Defendants will also pay up to $10,000,000 (the "Device Replacement Amount") by wire transfer into the User Settlement Fund no later than 14 days after the Settlement Administrator determines the total number and amount of valid claims for Device Replacement

---

[10] Users who still possess Trilogy 100/200 Recalled Devices and wish to return them cannot "enroll" their devices in the Settlement. They need to register their Trilogy 100/200 with Philips RS pursuant to a Recall Program and follow the retrieval process under that program. *Id.* §3.3.4.

Awards. *Id*. §2.8.1. The determination of the Device Replacement Amount will not occur until after the Claims Period Deadline. *Id*. If the total amount needed to satisfy claims for Device Replacement Awards exceeds $10,000,000, the balance of any funds remaining in the User Settlement Fund after payment of all Device Payment Awards and Device Return Awards ("Balance of Funds in User Settlement Fund") will be used to make Device Replacement Awards. *Id*. §6.6.2.3. To the extent that the Device Replacement Amount plus the Balance of Funds in User Settlement Fund are insufficient to pay at least 50% of the total amount of claims for Device Replacement Awards, the Philips Defendants will pay an additional amount into the User Settlement Fund sufficient to pay 50% of the total amount of claims for Device Replacement Awards, up to a maximum of an additional $5,000,000. *Id*. §6.6.2.4.

### 4.    Payer Awards

The Philips Defendants will pay the Payer Amount of $34,000,000 into the Payer Settlement Fund no later than 14 days following the Effective Date. *Id*. §2.10.1. The Payer Amount, plus accrued interest in the Payer Settlement Fund, will be used to pay Payer Awards (*id*. §2.11) and is non-reversionary (*id*. §2.12) and fixed, meaning it will not increase or decrease based upon the number of claims that are made by Payers (*id*. §2.10.1). In light of the calculations and allocations that must be made after all Payer claims are submitted, Payer Awards will not be paid until after the Claims Period Deadline or the Effective Date, whichever is later. *Id*. §6.7.2.

### D.    Additional Benefits

### 1.    Accelerated Implementation Option ("AIO")

A valuable aspect of the Settlement is that Users who return their Recalled Device before the Effective Date of the Settlement (including those who have already returned their Recalled Devices) may receive their Device Payment Award and Device Return Award on an accelerated basis before any appeals have been decided if they meet certain conditions set forth in Section

6.3.2 of the Settlement Agreement.[11] These payments will be made within 60 days after the later of (1) MDL Court Final Approval, (2) Philips RS's receipt of the Recalled Device, or (3) the completion of each of the steps identified in Section 6.3.2. *Id.* §§6.3.3., *et seq.*

Payments made under the AIO are non-reversionary, meaning that Users who elect AIO get their payments without having to wait for the appeals process to run its course, and get to keep the money even if the Settlement is not upheld on appeal. *Id.* §2.12.

### 2. Extended Warranties

Philips RS agrees to provide extended warranties to Users who receive (or have received) a Remanufactured Device from Philips RS as part of a Recall Program. *Id.* §3.5, *et seq.* Philips RS agrees to provide the following extended warranties: (1) two years for materials and workmanship for Remanufactured Devices that have a different Serial Number from the associated Recalled Device; and (2) two years for materials and workmanship on the repair work that was performed by Philips RS pursuant to the Recall Programs (not the entire Remanufactured Device) on Remanufactured Devices that have the same Serial Number as the associated Recalled Device (*i.e.*, the Remanufactured Device and the Recalled Device are the same device by Serial Number). *Id.*

### E. Settlement Administration and Claims Submissions

### 1. Settlement Administration

The Philips Defendants are responsible for paying all reasonable costs of Notice and Settlement Administration. *Id.* §6.1.1. These payments are in addition to the Settlement Fund payments being made to Settlement Class Members, and thus will not reduce the amounts to be

---

[11] To participate in AIO, Users must complete an individual release and an individual assignment of their claims against manufacturers of ozone cleaning products to Philips RS. *Id.* §§6.3.2.1, 6.3.2.2. This is required because they will be receiving Settlement benefits before the class-wide release and class-wide assignment have gone into effect (*i.e.*, AIO benefits will be received before the period for appealing the Final Order and Judgment has expired). *Id.* §6.3.3. The form of each document is attached to the Settlement Agreement as Exhibit 6.

-15-

received by Class Members. Subject to Court approval, the Parties agree that Angeion Group, LLC ("Angeion") should serve as the Settlement Administrator. *Id*. §1.50.

The Settlement Administrator will be responsible for disseminating notice, calculating payments (and withholdings) based on the plan of allocation set forth in the Settlement Agreement, determining Additional Amounts that the Philips Defendants need to pay into the Settlement Fund for Device Payment Awards and Device Return Awards, creating a Settlement website, reviewing the validity of claim submissions and distributing funds to Eligible Settlement Class Members, withholding and paying applicable taxes, and other duties as provided in any agreement entered into between the Parties and the Settlement Administrator. *See, e.g.*, *id*. §6.1.2. The Settlement Administrator may make necessary adjustments to claims and notice processes as circumstances may dictate, subject to the approval of Settlement Class Counsel and the Philips Defendants. *Id*. §6.1.3. The Settlement Administrator will also receive and process objections and opt-out requests by Settlement Class Members, which must be submitted no later than 60 days after the dissemination of Notice to Settlement Class Members. *Id*. §§10.1-10.2.

### 2. Claims Submissions

The Claims Period will begin when the Settlement Administrator disseminates Notice to the Settlement Class (*i.e.*, 60 days following entry of this Court's Preliminary Approval Order) and conclude on the Claims Period Deadline, which is 120 days after the date of the Final Fairness Hearing. *Id*. §§1.7, 6.2.1, 9.1.2.

***Automatic Payments for Users who return their Registered or Enrolled Recalled Device.***
To date, over 3 million Users have registered for the Philips RS Recall Programs, and over 1.3 million of the Users have returned their Registered Recalled Device to Philips RS pursuant to a Recall Program. All Users who have already returned or subsequently return their Registered or

Enrolled Recalled Device to Philips RS by the Claims Period Deadline will be paid the Device Payment Award associated with the returned Recalled Device and their $100 Device Return Award, *without the need to submit a claim form,* within 60 days after the later of (1) the Effective Date or (2) receipt of the Recalled Device by Philips RS. *Id.* §§6.4.1.1, 6.4.2.1.

*Streamlined Online Confirmation Process for Users Who Previously Registered for a Recall Program but Who Do Not or Cannot Return their Registered Recalled Device.* To receive a Device Payment Award, Users who registered for a Recall Program prior to the Settlement's Execution Date but do not or cannot return their Registered Recalled Device to Philips RS must, prior to the Claims Period Deadline, complete a simple process confirming their contact information and the Serial Number and Registration Number of their Recalled Device (if available), which may be done online (or, the User may complete a written confirmation form that is attached to the Settlement Agreement as Exhibit 7). *Id.* §6.4.2.2. Such Users will not be required to submit *any* supporting documentation as part of this process, and payment of their Device Payment Award will be made within 60 days after the later of (1) the Effective Date, or (2) completion of the confirmation process. *Id.*

*Claim Submission Process for all other Settlement Class Members (Users and Payers).* To receive a Device Payment Award, all other Users must submit a completed Claim Form (attached to the Settlement Agreement as Exhibit 4) by the Claims Period Deadline and provide sufficient documentation that the User purchased, leased, rented, or otherwise paid for one or more Recalled Devices. [12] *Id.* §6.4.3.1. To receive a Payer Award, Payers must submit a Payer

---

[12] With respect to rental Recalled Devices, the Device Payment Award for that Device will be allocated by the Settlement Administrator (after the Claims Period Deadline) among Eligible Settlement Class Members on a *pro rata* basis, taking into consideration the number of Eligible Settlement Class Members for the rental Recalled Device and the respective portion of their payments for that rental Recalled Device. *Id.* §6.4.4.1. In light of the allocation that must be made

*Footnote continued on next page*

Declaration and Claim Form supported by sufficient information and documentation as to the number of insured lives in the United States covered by the Payer and the dollar amount of direct premiums written by the Payer in the United States in the Calendar Years 2021 and 2022 (attached to the Settlement Agreement as Exhibit 8) by the Claims Period Deadline. *Id*. §6.7.1. Users and Payers can make their submissions online via a custom portal developed by the Settlement Administrator, or by mailing paper claim forms and supporting documentation to the Settlement Administrator. All valid claims will be paid to Users after the Effective Date within 60 days after they are processed and approved by the Settlement Administrator. *Id*. §6.4.3.2. Valid claims for Eligible Payers will be paid within 180 days after the Claims Period Deadline or the Effective Date, whichever is later, following processing and approval by the Settlement Administrator and an opportunity for appeals of Payer Claims Determinations. *Id*. §§6.7.2, *et seq.*, 6.8.1, 6.8.2.

*Users Seeking Device Replacement Awards.* Device Replacement Awards are intended to compensate Eligible Users who, on or after June 14, 2021 and prior to the Execution Date, paid out of pocket (in whole or in part) for a Replacement Device without having received or prior to receiving from a Recall Program a Remanufactured Device associated with the User's Recalled Device. *Id*. §3.4. Users seeking a Device Replacement Award must submit a completed Device Replacement Award Claim Form (in the form attached to the Settlement Agreement as Exhibit 5), before the Claims Period Deadline, supported by the required documentation. *Id*. §6.6.1. After the Claims Period Deadline, the Settlement Administrator will calculate the total valid claims for Device Replacement Awards submitted during the Claims Period, which will trigger the payment

---

with respect to rental Recalled Devices, no Device Payment Award shall be made with respect to rental Recalled Devices until after the Effective Date. *Id*. §6.4.4.2.

obligations by the Philips Defendants as set forth above.[13] *Id*. §6.6.2, *et seq*. Eligible Users will be paid Device Replacement Awards within 60 days after the Settlement Administrator performs that calculation. *Id*. §6.6.3.

      ***Claims Appeals.*** Any Settlement Class Member whose claim is denied (in whole or in part) by the Settlement Administrator for any reason shall be provided with a written notice explaining the deficiency and a period of 30 days to resubmit the claim to attempt to cure the deficiency. *Id*. §6.8.1. The Settlement Agreement also provides a process by which any Settlement Class Member or Defendant who believes that a claim for a payment under the Settlement has not been paid or processed in accordance with the Agreement or with any applicable orders of the MDL Court, can appeal Claims Determinations by the Settlement Administrator to the Claims Appeals Special Master. *Id*. §6.8, *et seq*. Subject to Court approval, the Parties propose the Honorable Thomas J. Rueter (Ret.) as the Claims Appeals Special Master.[14] *Id*. §1.5. The decision of the Claims Appeals Special Master with respect to such appeals shall be final and binding on the Class Member or Defendant without further appeal. *Id*. §6.8.5.

## F.    Releases

      By virtue of the Settlement, the Parties agree to mutual releases. *Id*. §4, *et seq*. Settlement Class Members agree to release their Economic Loss Claims against the Released Parties. *Id*. §§1.16, 1.42, 1.43, 4.6. The Release does not include claims against Defendants or other Released Parties for Medical Monitoring and Personal Injury Claims. *Id*. §§4.1, 4.2. Also, Settlement Class Members do not release their Economic Loss Claims against Ozone Cleaning Companies. *Id*. §4.3.

---

[13] Depending upon the amount of claims submitted for Device Replacement Awards and the amount of funds available to pay them from the User Settlement Fund, the Philips Defendants have agreed to pay up to $15,000,000 to satisfy these claims. *Id*. §6.6.3.

[14] Judge Rueter is a retired U.S. Magistrate Judge of the U.S. District Court for the Eastern District of Pennsylvania and is currently affiliated with JAMS in their Philadelphia office.

Instead, Settlement Class Members assign those claims to Philips RS. *Id.* §§4.3, 5.1.

### G.     Attorneys' Fees and Expenses

The Philips Defendants have agreed to pay separately the amount of attorneys' fees and costs awarded to Settlement Class Counsel in any final Order of the MDL Court in addition to the compensation provided to Settlement Class Members under this Settlement. *Id.* §18.1. Accordingly, any award of attorneys' fees and costs shall not diminish the recovery of Settlement Class Members. To date, the Parties have not reached agreement on the amount of attorneys' fees and costs to be paid to Settlement Class Counsel. Attorneys' fees and costs are discussed in detail in Section IV.B.3.c., *infra*.[15]

### H.     The Notice Plan

The proposed Notice is described in the Settlement, and the Notice Plan and Forms of Notice are attached to the Settlement Agreement as Exhibits 2 and 3(a)-3(h). *See also* Declaration of Steven Weisbrot, Esq. of Angeion Group, LLC dated September 5, 2023, attached hereto as Ex. "C" ("Angeion Decl."), at ¶¶17, 20-58. Details of the Notice are set forth in Section IV.D, *infra*.

## IV.   ARGUMENT

### A.     Legal Standards For Settlement Approval

Approval of a class action settlement involves a two-step process. First, at the preliminary approval stage, the Court decides whether it will be likely to ultimately approve the settlement and certify the settlement class, thus warranting the dissemination of notice to the proposed settlement class. *See* Fed. R. Civ. P. 23(e)(1)(B); *Cole's Wexford Hotel, Inc. v. UPMC & Highmark Inc.*

---

[15] Settlement Class Counsel will recommend, subject to approval by the Court, that each Settlement Class Representative receive a Service Award in the amount of $5,000 in recognition for their service as a Settlement Class Representative, and the Philips Defendants agree not to oppose such request. SA §18.2. If approved, these payments will be in addition to the compensation provided to Settlement Class Members under this Settlement and will not diminish the recovery of Settlement Class Members under the Settlement. *Id.*

(*"Cole's Wexford I"*), 2016 WL 6919773, at *1-2 (W.D. Pa. Apr. 6, 2016) (Conti, J.) (finding that proposed settlement "falls within the range of reasonableness meriting possible final approval" and directing the dissemination of notice). Second, after notice has been disseminated and class members have had the opportunity to object to or opt out of the settlement, the Court conducts a final fairness hearing and decides whether to approve the settlement. Fed. R. Civ. P. 23(e)(2); *Hickton v. Enterprise Rent-A-Car Company*, 2013 WL 12137092, at *3 (W.D. Pa. Apr. 29, 2013) (Conti, J.) (same); *see also Calhoun v. Invention Submission Corp.*, 2023 WL 2411354, at *5-6 (W.D. Pa. Mar. 8, 2023) (describing two-step process).

The Third Circuit has a "strong judicial policy in favor of class action settlement." *Ehrheart v. Verizon Wireless*, 609 F.3d 590, 595 (3d Cir. 2010). When reviewing a settlement, the Third Circuit has repeatedly stressed that "we favor the parties reaching an amicable agreement and avoiding protracted litigation. We do not wish to intrude overly on the parties' hard-fought bargain." *In re*: *Google Inc. Cookie Placement Consumer Priv. Litig.*, 934 F.3d 316, 326 (3d Cir. 2019) ("*In re*: *Google Inc.*") (internal citation omitted). "Settlement agreements are to be encouraged because they promote the amicable resolution of disputes and lighten the increasing load of litigation faced by the federal courts." *Ehrheart*, 609 F.3d at 595. Thus, "the settlement of class actions is preferred to protracted litigation: 'there is an overriding public interest in settling class action litigation, and it should therefore be encouraged.'" *Murphy v. Le Sportsac, Inc.*, 2023 WL 375903, at *9 (W.D. Pa. Jan. 24, 2023) (quoting *In re Warfarin Sodium Antitrust Litig. ("In re Warfarin")*, 391 F.3d 516, 535 (3d Cir. 2004)).

To grant preliminary approval and disseminate notice of the proposed settlement to the Settlement Class, a court must find that it "will *likely* be able to: (i) approve the proposal under Rule 23(e)(2); and (ii) certify the class for purposes of judgment on the proposal." Fed. R. Civ. P.

-21-

23(e)(1)(B) (emphasis added). Courts within this District recognize that "[a]t the preliminary approval stage, the bar to meet the fair, reasonable and adequate standard is lowered," and a court's focus should be on whether the proposed settlement "discloses grounds to doubt its fairness or other obvious deficiencies such as unduly preferential treatment of class representatives or segments of the class, or excessive compensation of attorneys, and whether it appears to fall within the range of possible approval." *Torres v. BrandSafway Indus. LLC*, 2023 WL 346667, at *2 (W.D. Pa. Jan. 20, 2023) (internal quotation marks and citation omitted); *see also McRobie v. Credit Prot. Assoc.*, 2020 WL 6822970, at *3 (E.D. Pa. Nov. 20, 2020) ("Preliminary approval of a proposed class action settlement is not binding on the Court and is generally granted unless a proposed settlement is obviously deficient.").

Under Rule 23(e)(2), in determining whether it will likely be able to find that a proposed settlement is "fair, reasonable, and adequate," a court should consider whether:

(A) the class representatives and class counsel have adequately represented the class;

(B) the proposal was negotiated at arm's length;

(C) the relief provided for the class is adequate, taking into account:

(i) the costs, risks, and delay of trial and appeal;

(ii) the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims;

(iii) the terms of any proposed award of attorney's fees, including timing of payment; and

(iv) any agreement required to be identified under Rule 23(e)(3); and

(D) the proposal treats class members equitably relative to each other.

The 2018 Advisory Committee Notes to Subdivision 23(e)(2) explain that the "core concerns" listed in the text of Rule 23(e)(2) and set forth above do not "displace" a court's consideration of

the other factors that have been adopted by each Circuit Court to assess the fairness of a class settlement.

In the Third Circuit, courts have traditionally considered nine factors when determining the fairness of a proposed settlement, as set forth in *Girsh v. Jepson*, 521 F.2d 153, 157 (3d Cir. 1975). These *Girsh* factors significantly overlap with the Rule 23(e)(2) factors: "(1) the complexity, expense and likely duration of the litigation; (2) the reaction of the class to the settlement; (3) the stage of the proceedings and the amount of discovery completed; (4) the risks of establishing liability; (5) the risks of establishing damages; (6) the risks of maintaining the class action through the trial; (7) the ability of the defendants to withstand a greater judgment; (8) the range of reasonableness of the settlement fund in light of the best possible recovery; [and] (9) the range of reasonableness of the settlement fund to a possible recovery in light of all the attendant risks of litigation."[16] *Id.* (internal quotation marks and citation omitted); *see also In re: Google Inc.*, 934 F.3d at 322 n.2 (quoting *Girsh* factors); *In re Prudential Ins. Co. Am. Sales Practice Litig.*, 148 F.3d 283, 323 (3d Cir. 1998), *cert. denied*, 525 U.S. 1114 (1999) (listing additional factors that court may apply if relevant).

In addition, the Third Circuit has stated clearly that "[w]e apply an initial presumption of fairness in reviewing a class settlement when: (1) the negotiations occurred at arm's length; (2) there was sufficient discovery; (3) the proponents of the settlement are experienced in similar litigation; and (4) only a small fraction of the class objected." *In re Nat'l Football League Players Concussion Injury Litig.*, 821 F.3d 410, 436 (3d Cir.), *cert. denied*, 137 S. Ct. 591 (2016) ("*In re*

---

[16] Courts in this District have differed as to whether the *Girsh* factors should be considered at both the preliminary and final approval stages, or just at final approval. *Compare Murphy v. Hundreds is Huge, Inc.*, 2022 WL 2110202 at *8-13 (W.D. Pa. June 10, 2022) (applying *Girsh* at preliminary approval stage) with *Copley v. Evolution Well Servs. Operating LLC*, 2023 WL 1878581, at *2, n.1 (W.D. Pa. Feb. 10, 2023) (stating that *Girsh* applies only at final approval stage).

*NFL II*") (internal quotation marks and citation omitted); *see also In re: Google Inc.*, 934 F.3d at 326; *In re Railway Indus. Empl. No-Poach Antitrust Litig.*, 2020 WL 13852931, at *2 (W.D. Pa. Aug. 26, 2020) (Conti, J.) ("*In re Railway Antitrust*"); *Cole's Wexford Hotel, Inc. v. UPMC & Highmark Inc. ("Cole's Wexford II")*, 2016 WL 6236892, at *2 (W.D. Pa. July 29, 2016) (Conti, J.).

If the preliminary approval criteria are met, a court must also consider whether it is likely to certify a class for settlement purposes. *See* Fed. R. Civ. P. 23(e)(1)(B)(ii). The Third Circuit has long held that the certification of a settlement class serves "the core purpose of Rule 23(b)(3), which is to vindicate the claims of consumers and other groups of people whose individual claims would be too small to warrant litigation." *See, e.g., Sullivan v. DB Invs., Inc.*, 667 F.3d 273, 312 (3d Cir. 2011) (*en banc*), *cert. denied*, 566 U.S. 923 (2012) (internal quotation marks and citation omitted); *In re Gen. Motors Corp. Pick-Up Truck Fuel Tank Prod. Liab. Litig. ("In re GMC")*, 55 F.3d 768, 777-78 (3d Cir.), *cert. denied*, 516 U.S. 824 (1995). The Manual for Complex Litigation advises that "[i]f the case is presented for both class certification and settlement approval, the certification hearing and preliminary fairness evaluation can usually be combined. The judge should make a preliminary determination that the proposed class satisfies the criteria set out in Rule 23(a) and at least one of the subsections of Rule 23(b)." Manual for Complex Litigation (Fourth) §21.632 (2004); *see also In re Nat'l Football League Players Concussion Injury Litig.*, 775 F.3d 570, 582 (3d Cir. 2014) (*"In re NFL I"*) (*quoting* §21.632 of Manual with approval).

### B.   Preliminary Approval of the Proposed Settlement Is Warranted

The Settlement should be preliminarily approved under Rule 23(e)(1)(B) because, upon consideration of all of the relevant factors, the Court will likely be able to approve the Settlement as "fair, reasonable, and adequate" after a Final Fairness Hearing. In addition, the Court should

find that a presumption of fairness applies because the proposed Settlement was negotiated at arm's length before Judge Welsh by experienced counsel who had the benefit of sufficient discovery and thus could fully evaluate the strengths and weaknesses of their respective positions. *See, e.g., In re Railway Antitrust*, 2020 WL 13852931, at *2.

> **1.    Settlement Class Counsel and the Class Representatives have adequately represented the Class**

*Experienced Counsel*. Settlement Class Counsel consist of Plaintiffs' Co-Lead Counsel and the Chair and Vice-Chairs of the Settlement Committee, who were appointed by the Court after a thorough interview and vetting process (ECF No. 395, Pretrial Order No. 8).  They have decades of experience litigating complex products liability and other class action litigation, and have negotiated favorable settlements in many such cases. Since the inception of this litigation, the Court has been able to observe first-hand the vigorous and skilled litigation of this matter by Settlement Class Counsel. They used their skills, prior experience, and familiarity with the facts and law in this case to negotiate the best possible settlement for the Settlement Class, with the assistance of a Court-appointed Settlement Mediator. *See Rossini v. PNC Fin. Servs. Grp., Inc.*, 2020 WL 3481458, at *13 (W.D. Pa. June 26, 2020) ("The 'proponents' of the settlement—most significantly, Plaintiffs' counsel—are also experienced in similar litigation. . . . This generally supports a presumption that counsel knew what they were doing when negotiating the settlement."); *Zanghi v. Freightcar Am., Inc.*, 2016 WL 223721, at *15 (W.D. Pa. Jan. 19, 2016) ("[S]ignificant weight should be attributed to the belief of experienced counsel that settlement is in the best interest of the class.") (internal quotation marks and citation omitted).

*Class Representatives.* The proposed Settlement Class Representatives have fulfilled their responsibilities on behalf of the Settlement Class by working closely with Settlement Class Counsel on the litigation of the Economic Loss Claims, reviewing pleadings, and responding to

Defendants' document requests.

### 2.    The proposed Settlement was negotiated at arm's length

*Arm's-Length Negotiations*. The proposed Settlement Agreement was the result of an arduous negotiation process, including mediation supervised by a well-respected and experienced Court-appointed mediator, that took a year from the initial negotiations to the time the Agreement was signed, as discussed in significant detail above. The Declaration of Judge Welsh independently corroborates that "the negotiations between the parties were protracted, hard fought and conducted at arm's-length and in good faith," and the "highly capable and experienced parties and counsel [had] a strong command of relevant facts and legal principles." Welsh Decl. ¶¶2, 19. Importantly, the Parties' negotiations "focused exclusively on benefits for the Settlement Class, and there was no discussion or negotiation of attorneys' fees for Settlement Class Counsel" during the mediation or in connection with the negotiations over the terms of the Settlement Agreement. *Id*. ¶16.

All relevant considerations demonstrate that these negotiations were at arm's length. *See* 4 William B. Rubenstein, *Newberg and Rubenstein on Class Actions* §13:50, Westlaw (6th ed. Database updated June 2023) (hereinafter "*Newberg and Rubenstein*") (describing factors relevant to whether negotiations are arm's length); *In re All-Clad Metalcrafters, LLC v. Cookware Mktg. & Sales Practices Litig*., 2023 WL 2071481 at *6 (W.D. Pa. Feb. 17, 2023) ("*In re All-Clad*") ("[N]egotiation of a settlement through mediation suggests reasonableness and neutrality, not incompetence or self-dealing.") (internal quotation marks and citation omitted) (alteration in original); *Cole's Wexford II*, 2016 WL 6236892, at *2 ("a presumption of fairness applies because the Settlement was negotiated at arm's length with an accomplished neutral at a Court-ordered mediation") (Conti, J.); *Copley*, 2023 WL 1878581, at *4 (finding negotiations at arm's length when resolved by independent mediator); *Rossini*, 2020 WL 3481458, at *12 (same).

-26-

3.      **The relief provided to the Settlement Class is adequate**

a.      **The costs, risks, and delay of trial and appeal**

***Complexity, Expense, Delay, and Risks of Continued Litigation***. Absent a settlement, the Parties would remain engaged in motion practice, discovery, and adversarial litigation for years regarding the Economic Loss Claims. While Settlement Class Counsel believe their case is strong, they acknowledge the risks of continuing to litigate the numerous and complex legal and scientific issues in this litigation. *See, e.g., Solak v. Ford Motor Co.*, 2023 WL 4628456, at *3-5 (E.D. Mich. July 19, 2023) (dismissing claims for economic damages because the automaker conducted a voluntary recall to fix the defective airbags free of charge). The highly experienced counsel representing the Philips Defendants have vigorously defended this litigation every step of the way. To prevail, Plaintiffs would have to complete fact and expert discovery, obtain class certification, potentially litigate Rule 23(f) appeals regarding the certification order or subsequent motions for decertification, successfully defend against summary judgment or other dispositive motions, defeat *Daubert* motions, prevail at trial on liability and damages, and then prevail on any subsequent appeals. The litigation would be protracted and expensive, to say nothing of the inherent risks and uncertain outcomes attendant to each step along the way. In contrast to those risks, the proposed Settlement provides significant economic benefits in a much shorter timeframe. *See In re Mercedes-Benz Emissions Litig.*, 2021 WL 8053614, at *4 (D.N.J. July 12, 2021) (finding that settlement approval was appropriate where "[e]ven if [plaintiffs] did win at trial and on appeal, relief for the Class was likely years away as a result of the lengthy litigation process. The Mercedes Settlement eliminates these risks, cuts through the delay, and provides immediate and significant benefits to Class Members."); *Calhoun*, 2023 WL 2411354, at *13 (finding that "certainty and immediacy of a recovery through settlement and the benefits that the Settlement Class Members

-27-

will receive" warranted preliminary approval).

**Sufficient Discovery**. Plaintiffs have engaged in substantial discovery, including document discovery, third-party discovery, jurisdictional discovery, and the targeted discovery related to the mediation process. In addition, Plaintiffs have engaged experts to help evaluate numerous aspects of the case. While these efforts are discussed in greater detail above, what is important is that the amount of discovery enabled Settlement Class Counsel to fully evaluate the strengths and weaknesses of the Parties' respective positions. *See Calhoun*, 2023 WL 2411354, at *11 (granting preliminary approval where parties had "engaged in sufficient discovery to inform their negotiations before a settlement was reached"); *In re All-Clad*, 2023 WL 2071481, at *6 (granting preliminary approval where "[t]he record establishes extensive and costly investigation, research, and discovery have been conducted such that the attorneys for the parties are reasonably able to evaluate the benefits of settlement.") (internal quotation marks and citation omitted).

**Stage of the Proceedings**. The MDL proceedings were far enough along that Settlement Class Counsel had an "adequate appreciation of the merits of the case before negotiating." *In re Prudential Ins.*, 148 F.3d at 319 (internal quotation marks and citation omitted). In addition to the substantial discovery discussed above, the Parties extensively briefed five motions to dismiss, made comprehensive Science Day presentations to the Court, and exchanged comprehensive mediation statements at the outset of their negotiations. Welsh Decl. ¶¶7-8, 11-12. Thus, as confirmed by Judge Welsh, the parties were "fully informed" and able to carefully analyze the risk of future litigation in comparison to the substantial and prompt relief offered by the Settlement. *Id*. ¶19; *see In re All-Clad*, 2023 WL 2071481, at *7 (finding that this factor weighed in favor of preliminary approval where "class counsel worked with consulting experts to evaluate the alleged defect in All-Clad's cookware. Some written discovery proceeded for over a year. And the motions

-28-

to dismiss and three days of mediation before retired judges provided ample insight into each side's positions, including strengths and weaknesses of claims and defenses.") (citations omitted).

*Likelihood of Maintaining Class Certification*. This factor "measures the likelihood of obtaining and keeping a class certification if the action were to proceed to trial," *In re Warfarin*, 391 F.3d at 537, and weighs heavily in favor of approval. As stated very recently by another court within this District when it granted preliminary approval of a settlement, "[e]ven if certification of a class is achieved, continued discovery and resolution of legal issues could lead to decertification or modification of the class. . . . In turn, this inevitably would result in further delay and expense, as well as an uncertain outcome. Moreover, if a class is not certified, it is uncertain that individual settlement class members possess the resources and financial ability to pursue their claims." *Calhoun*, 2023 WL 2411354, at *14 (citing *Carnegie v. Household Int'l, Inc*., 376 F.3d 656, 661 (7th Cir. 2004) ("The realistic alternative to a class action is not 17 million individual suits, but zero individual suits …")); *see also In re All-Clad*, 2023 WL 2071481, at *7 (granting preliminary approval because, *inter alia*, "[m]aintaining [a class] throughout lengthy litigation would also be challenging, . . . If Plaintiffs failed at any stage, there would be no nationwide relief to the settlement class."). This is particularly true here, where the maximum out-of-pocket costs for any Recalled Device purchased, rented, or leased is a few thousand dollars, and in many cases, less than $100.

*Reasonableness of the Settlement*. Courts in this Circuit consider "reasonableness in light of the best possible recovery and reasonableness in light of the risks the parties would face if the case went to trial." *In re Warfarin*, 391 F.3d at 538. To make that assessment, courts must compare "the present value of the damages plaintiffs would likely recover if successful, appropriately discounted for the risk of not prevailing" with "the amount of the proposed settlement." *In re GMC*,

55 F.3d at 806 (internal quotation marks and citation omitted); *see also In re Baby Products Antitrust Litig.*, 708 F.3d 163, 174 (3d Cir. 2013) ("The Court must determine whether the compromises reflected in the settlement – including those terms relating to the allocation of settlement funds – are fair, reasonable, and adequate when considered from the perspective of the class as a whole.").

The proposed Settlement here plainly falls within the range of reasonableness "in light of the best possible recovery and attendant risks of litigation." *Cole's Wexford II*, 2016 WL 6236892, at *2; *see also Hickton*, 2013 WL 12137092 at *1 (same). The main measure of damages that Plaintiffs sought for their Economic Loss Claims was full restitution of the amount they paid to acquire a Recalled Device. *E.g.*, EL Compl. ¶660 (Recalled Devices had no value at time of purchase). The Philips Defendants fought this position vigorously, arguing, among other things, that Users had received a working device and got what they paid for, and lacked standing unless each User could plead and prove that the foam in their specific device had degraded. *See, e.g.*, ECF No. 912 at 5-8. Similarly, the Philips Defendants argued that hospitals and third-party payers (*i.e.*, insurers) were not injured because they either profited from the Recalled Devices (in the case of hospitals) or were required to pay for a device for the consumer under contractual obligations (third-party payers). *See, e.g.*, *id.* at 8-10. While Plaintiffs vehemently disagree with the Philips Defendants' position, there was substantial risk that even if Plaintiffs prevailed on liability, the Users' and Payers' damages would be significantly reduced from full restitution (and even possibly to zero). *See Solak,* 2023 WL 4628456, at *3-5. While it is impossible at this time to calculate the maximum amount Plaintiffs could receive if they were to achieve full restitution, there was a real risk of no recovery at all.

-30-

The Initial Device Payment Amount, Initial Device Return Amount, and Payer Amount are non-reversionary; they require a *minimum* payment by the Philips Defendants of $479,700,812 that will not be reduced, regardless of the number of claims that are filed. Users' Device Payment Awards and Device Return Awards are set in fixed amounts and will *not* be reduced based on the number of claims filed.[17] None of the User or Payer Awards will be reduced on account of an award of attorneys' fees and costs to Settlement Class Counsel or the cost of Notice and Settlement Administration, which are being paid by the Philips Defendants separately. In addition, Users who registered for a Recall Program or enroll in the Settlement and timely return their Recalled Devices to Philips RS will be paid automatically, without having to complete and submit a claim form; Eligible Users can receive Device Payment Awards for multiple Recalled Devices; Eligible Users can obtain Device Return Awards for multiple returned Devices, as well as Device Payment Awards and under certain circumstances, a Device Replacement Award; Eligible Users can take advantage of the "Accelerated Implementation Option," which enables them to obtain their Settlement payments after Final Approval of the Settlement by this Court but *before* and regardless of the resolution of any appeals, which would entail considerable delay and potential risk and uncertainty; and the Settlement also provides that certain Users will receive significant benefits in the form of Extended Two Year Warranties on all Remanufactured Devices provided by Philips RS.[18] It also bears emphasis that the $100 Device Return Awards incentivize Users to return their

---

[17] There is an exception for rental Recalled Devices. *See* n.12, *supra*.

[18] *See Granillo v. FCA US LLC*, 2019 WL 4052432, \*9 (D.N.J. Aug. 27, 2019) ("Given the combined value of the extended warranty, . . . and cash payments, and the settlement's benefit was substantial"); *In re Volkswagen & Audi Warranty Extension Litig.*, 89 F. Supp. 3d 155, 169 (D. Mass. 2015) (finding the retail value of extended warranty "is a more sensible measure of what the class members gained from free extended coverage"); *Vaughn v. Am. Honda Motor Co.*, 627 F. Supp. 2d 738, 746 (E.D. Tex. 2007) (valuation of settlement benefits include "warranty extensions").

Recalled Devices to Philips RS, which serves the important public policy of promoting health and well-being. Payers will also be able to qualify for a Payer Award from the fixed $34,000,000 non-reversionary fund, plus accrued interest.

On balance, the substantial monetary awards, along with additional benefits provided by the Settlement, militate strongly in favor of preliminary approval particularly when compared against the uncertainties, delays, expenses, and risks of continued litigation, including the risks associated with damages discussed above. *See In re NFL II*, 821 F.3d at 440 (finding that the "settlement represents a fair deal for the class when compared with a risk-adjusted estimate of the value of plaintiffs' claims" where a "pending motion to dismiss and other available affirmative defenses could have left retired players to pursue claims in arbitration or with no recovery at all"); *Calhoun,* 2023 WL 2411354, at *15 (settlement in the range of reasonableness in light of uncertainty and risks of continued litigation); *Zanghi*, 2016 WL 223721, at *20 (same); *Palamara v. King's Family Restaurants*, 2008 WL 1818453, at *4 (W.D. Pa. Apr. 22, 2008) (same).

### b. The proposed method of distributing relief to the Settlement Class and processing Settlement Class Members' Claims is easy, efficient, and effective

The method for distributing payments to Settlement Class Members is described in detail above. In short, the process is designed to get funds into the hands of Settlement Class Members quickly and efficiently. In the instance of the AIO, it would be shortly after Final Approval (and before the appellate process, if any, has run). SA §6.3, *et seq*. For those who do not, or cannot, elect the AIO, funds would be distributed shortly after the Effective Date of the Settlement. *Id*. §§6.4-6.7.

In addition, certain payments are automatic. Users who return their Registered or Enrolled Recalled Device to Philips RS do not need to submit a Claim Form to receive Device Payment

Awards or Device Return Awards. *Id*. §§6.4.1, 6.5.1. Users who do not return their Recalled Device to Philips RS can access a streamlined confirmation process (via the online Settlement website portal or in paper form) if they register prior to the Execution Date. *Id*. §6.4.2. Finally, a typical Claim Form process is available for all other Settlement Class Members. *Id*. §§6.4.3, 6.7.1.

<strong>c.      The terms of a proposed award of attorneys' fees, including<br>timing and payment, have not yet been negotiated</strong>

As discussed above, the Parties have not reached agreement on the amount of attorneys' fees and costs to be paid to Settlement Class Counsel subject to a final award by the Court but have agreed that those fees and costs will be paid by the Philips Defendants in addition to the Settlement Class relief and therefore, will not reduce the Settlement Class's recovery. *Id*. §18.1.

In addition, the Parties have agreed that they will use the assistance of Judge Welsh to attempt to reach an agreement on attorneys' fees and costs. *Id*. If the Parties reach such an agreement, Settlement Class Counsel will submit the negotiated amount to the Court for approval. *Id*. If no such agreement is reached, the Parties will litigate the fee issues, and each Party will present its respective position to the Court for determination. *Id*. In that event, the determination of the fee and cost issues will be subject to the Parties' agreement that: (1) the attorneys' fees and costs will be paid by, or on behalf of, the Philips Defendants in addition to the compensation provided to Settlement Class Members under this Settlement; (2) any award of attorneys' fees or costs shall not diminish the recovery of Settlement Class Members under the Settlement; (3) while fees will be based on the percentage of recovery methodology, with a lodestar cross-check, the Parties reserve all arguments as to how that recovery should be calculated, what the percentage should be, and the extent to which Settlement Class Counsel's prosecution of the Economic Loss Claims caused some or all of the recovery; and (4) the Parties shall have the right to appeal the Court's determination as to the amount of attorneys' fees and costs. *Id*. Settlement Class Counsel

-33-

represent they will not seek an award of attorneys' fees in excess of $175,000,000, which Settlement Class Counsel contends represents a fair percentage of the value of the Settlement in terms of cash recoveries and other benefits to the Settlement Class, while the Philips Defendants fully reserve the right to challenge that amount, any percentage upon which it is based, and the items comprising the value of the Settlement. *Id.*

Settlement Class Counsel will file a motion for attorneys' fees and costs at least 30 days prior to the Opt-Out/Objection Deadline, and the deadline for the motion will be provided in the Notice. *Id.* The motion will be filed on the MDL Court docket and posted on the Settlement website, and Settlement Class Members will have the opportunity to submit written objections in the manner prescribed by the Settlement Agreement to the request for attorneys' fees and costs before the Final Fairness Hearing. *Id.* §§12.1, 12.4.

    **4. The proposed Settlement treats Settlement Class Members equitably relative to each other**

The Settlement Class Members are treated equitably relative to each other under the Settlement based on their Economic Loss Claims related to the Recalled Devices. There are two separate Settlement Funds being established, one specific to Users and one specific to Payers. Each Settlement Fund provides compensation for each group's distinct alleged economic harm.

Users are eligible for Device Payment Awards, Device Return Awards, and/or Device Replacement Awards based on objective factors. Device Payment Awards are fixed in amount based on the type or model of the Recalled Device at issue to account for differences in the price of various types of Recalled Devices; Device Return Awards are $100 for all Eligible Users regardless of the type or model of the Recalled Device; and Device Replacement Awards are based upon any given User's actual costs to purchase, lease, or rent a comparable Replacement Device. All Eligible Users are treated fairly relative to each other.

-34-

Payers, who are insurers, self-funded employers, or other third-party payers that reimbursed (in whole or in part) a User's payment to purchase, lease, rent or otherwise pay for a Philips RS Recalled Device will be eligible to receive a Payer Award that is based on the Eligible Payer's relative market share (aggregated among all Eligible Payers). That market share will be determined by the number of insured lives in the United States covered by the Eligible Payer and the dollar amount of direct premiums written by the Eligible Payer in the United States in the Calendar Years 2021 and 2022, based on industry data, including but not limited to, the National Association of Insurance Commissioners and the AIS Directory of Health Plans, as well as the information provided in each Eligible Payer's Declaration and Claim Form.

The allocation of the settlement funds as to each group (Users and Payers) resulted from informed discussions and negotiations between and among Settlement Class Counsel (on behalf of Users and Payers), additional representatives of Users and Payers, and the Philips Defendants, aided by the Court-appointed Settlement Mediator. Significantly, all proposed Settlement Class Representatives endorse and approve all terms of the Settlement, including the amount of settlement funds made available for both Users and Payers.

## A. Certification of the Proposed Class for Purposes of Settlement Only is Appropriate

In Section 7.1 of the Settlement Agreement, Plaintiffs and the Philips Defendants stipulated, for purposes of the Settlement only and subject to this Court's approval, that the requirements of Rule 23(a) and 23(b)(3) of the Federal Rules of Civil Procedure are satisfied.

The benefits of a proposed settlement of a class action can be realized only through the certification of a settlement class. *See Amchem Prods. v. Windsor*, 521 U.S. 591, 620 (1997); *see also Walker v. Highmark BCBSD Health Options, Inc.*, 2022 WL 17592067, at *5 (W.D. Pa. Dec. 13, 2022). For a court to certify a class for settlement, the "[s]ettlement [c]lass[] must satisfy the

Rule 23(a) requirements of numerosity, commonality, typicality, and adequacy of representation, as well as the relevant 23(b) requirement." *In re GMC*, 55 F.3d at 778. A number of courts have recognized the propriety of class certification in defective product cases where economic losses are sought. *See, e.g.*, *In re Valsartan, Losartan & Irbesartan Prod. Liab. Litig.*, 2023 WL 1818922, at *20, *25 (D.N.J. Feb. 8, 2023) (certifying consumer and third-party payor economic loss classes for contaminated and defective Valsartan drugs); *In re JUUL Labs, Inc. Mktg. Sales Pracs. & Prod. Liab. Litig.*, 609 F. Supp. 3d 942, 957-58, 1002-03, 1023 (N.D. Cal. 2022) (certifying two nationwide RICO classes and state classes).

### 1.     Numerosity Under Rule 23(a)(1)

Rule 23(a)(1) requires that the class be "so numerous that joinder of all members is impracticable." Fed. R. Civ. P. 23(a)(1). Numerosity is easily met here, as there were close to 11 million Recalled Devices sold or otherwise distributed in the United States, and the number of proposed Settlement Class Members is in the millions.

### 2.     Commonality Under Rule 23(a)(2)

The second prong of Rule 23(a) – commonality – "requires Plaintiffs to show that 'there are questions of law or fact common to the class.'" *Calhoun*, 2023 WL 2411354, at *7 (quoting Fed. R. Civ. P. 23(a)(2)). This requirement is satisfied so long as the class members "share at least one question of fact or law in common with each other." *Reinig v. RBS Citizens, N.A.*, 912 F.3d 115, 127 (3d Cir. 2018) (internal quotation marks and citation omitted). "[T]he bar is not a high one." *Reyes v. Netdeposit, LLC*, 802 F.3d 469, 486 (3d Cir. 2015) (cleaned up) (internal quotation marks and citation omitted). The Third Circuit has "acknowledged commonality to be present even when not all plaintiffs suffered an actual injury, when plaintiffs did not bring identical claims, and, most dramatically, when some plaintiffs' claims may not have been legally viable." *Rodriguez v.*

-36-

*Nat'l City Bank*, 726 F.3d 372, 382 (3d Cir. 2013) (citations omitted); *see also In re Prudential Ins.*, 148 F.3d at 310 (all claims and facts do not need to be identical). Rather, "the focus of the commonality inquiry . . . is on whether the defendant's conduct was common as to all of the class members." *Rodriguez*, 726 F.3d at 382 (internal quotation marks and citation omitted).

In this case, there are numerous common questions of law and fact, including, but not limited to: whether the Recalled Devices were defective; if so, whether and when the Defendants knew they were defective; whether the Recalled Devices were marketed as, among other things, safe breathing assistance devices; whether Defendants violated RICO, numerous different state law duties, or were unjustly enriched; and whether the purchase, rental, or payment for the Recalled Devices caused economic losses to the Settlement Class Members. Commonality is, therefore, easily satisfied. *See In re All-Clad*, 2023 WL 2071481, at *3.

### 3.     Typicality Under Rule 23(a)(3)

Rule 23(a)(3)'s typicality requirement is also met. The claims of the proposed Settlement Class Representatives are typical because they suffered substantially the same economic loss from the same conduct as every other Settlement Class Member. The Settlement Class Representatives and the Settlement Class Members all suffered financial harm arising out of, among other things, the Philips Defendants' design, manufacture and sale of the allegedly defective Recalled Devices; their alleged failure to disclose or adequately remedy the alleged defect; and their alleged negligence in delaying the Recall. Typicality is satisfied. *See In re All-Clad*, 2023 WL 2071481, at *3 (typicality satisfied "because they suffered the same injury from identical conduct by All-Clad"); *Calhoun*, 2023 WL 2411354, at *7 (typicality "satisfied where there is a 'strong similarity of legal theories or where the claim arises from the same practice or course of conduct.'") (quoting *In re NFL II*, 821 F.3d at 428); *Newton v. Merrill Lynch*, 259 F.3d 154, 183-84 (3d Cir. 2001).

### 4.      Adequacy of Representation Under Rule 23(a)(4)

The adequacy requirement of Rule 23(a)(4) ensures that that "the representative parties will fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a)(4). "Adequate representation depends on two factors: '(a) the plaintiff's attorney must be qualified, experienced, and generally able to conduct the proposed litigation, and (b) the plaintiff must not have interests antagonistic to those of the class.'" *Calhoun*, 2023 WL 2411354, at *8 (quoting *Wetzel v. Liberty Mut. Ins. Co.*, 508 F.2d 239, 247 (3d Cir. 1975)). Both requirements are met here.

**Counsel.** As discussed above, Settlement Class Counsel are experienced in the prosecution of class actions, including products liability and consumer protection class actions and have diligently prosecuted the claims on behalf of Plaintiffs and the Settlement Class by investigating the claims prior to bringing suit, preparing complaints and other pleadings, responding to dispositive motions, making the Science Day presentation, conducting and responding to extensive discovery, reviewing and analyzing extensive information, documents, and data produced by Defendants and third parties, and engaging in lengthy and complex arm's-length negotiations with Defendants that culminated in this beneficial Settlement. *See Calhoun*, 2023 WL 2411354, at *8.

**Class Representatives.** The proposed Settlement Class Representatives include individuals who paid for (in whole or in part) Recalled Devices that they used; Users who paid for Replacement Devices; a hospital that purchased Recalled Devices; and a third-party payer. As noted above, the Settlement Class Representatives, who are named Plaintiffs in the Economic Loss Complaint, have fulfilled their responsibilities on behalf of the Settlement Class by working closely with Settlement Class Counsel on the litigation of the Economic Loss Claims, reviewing pleadings, and responding to Defendants' discovery requests. They "share common interests [with Class Members] in seeking compensation for the alleged harms suffered from Defendants'

-38-

conduct" and "[b]y advancing their claims, [the Settlement Class Representatives] have also advanced the claims of other Settlement Class Members." *See id.* A finding of adequacy is appropriate here where "[t]here is no discernible conflict of interest in the record or otherwise between [the named representative] and the other class members" and there are substantial "factual and legal similarities between the claims." *Vines v. Covelli Enterprises*, 2012 WL 5992114, at *4 (W.D. Pa. Nov. 30, 2012).

### 5.     The Predominance and Superiority Requirements of Rule 23(b)(3)

Plaintiffs seek to certify the Settlement Class under Rule 23(b)(3), which has two components: predominance and superiority. In making these assessments, the Court may consider that the class will be certified for settlement purposes only, and there is no consideration of manageability for trial. *See Amchem*, 521 U.S. at 620 (citing Fed. R. Civ. P. 23(b)(3)(D)); *see also Calhoun*, 2023 WL 2411354, at *9.

**Predominance.** The focus of the predominance "inquiry is on whether the defendant's conduct was common as to all of the class members, and whether all of the class members were harmed by the defendant's conduct." *Sullivan*, 667 F.3d at 298. As shown above, there are numerous common questions of fact and law that predominate over any questions that may affect individual Settlement Class Members. If the case were to proceed, the ultimate issues would center on the Philips Defendants' common course of conduct; issues that are shared among all Settlement Class Members and are "capable of proof at trial through evidence that is common to the class rather than individual to its members." *Calhoun*, 2023 WL 2411354, at *9 (quoting *Gonzalez v. Corning*, 885 F.3d 186, 195 (3d Cir. 2018)) (internal quotation marks omitted). Accordingly, the Rule 23(b)(3) predominance requirement is satisfied. *Calhoun*, 2023 WL 2411354, at *9 (finding predominance where "Plaintiffs and the Settlement Class have the same interest in establishing

liability, and they all seek damages for the same harm. Absent the proposed settlement, they would rely on the same evidence of Defendants' violations of law and on class-wide damage models to show the fact and amount of harm.").

*Superiority.* The second prong of Rule 23(b)(3) – that a class action be superior to other available methods for the fair and efficient adjudication of the controversy – is also readily satisfied. Superiority requires the Court to consider whether "a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." *Sullivan*, 667 F.3d at 296 (internal quotation marks and citations omitted); *see also Calhoun*, 2023 WL 2411354, at *9. Here, the superiority requirement is satisfied because litigating the relatively small Economic Loss Claims of the Class Members on an individual basis against the Philips Defendants would not be economically feasible. *See, e.g., Abramson v. Agentra, LLC*, 2021 WL 3370057, at *9 (W.D. Pa. Aug. 3, 2021) ("[T]his class action is superior to other available methods because it is neither economically feasible, nor judicially efficient, for more than 2,000 class members who have submitted claims, let along the more than 19,000 who were sold an Agentra product, to pursue individual claims against Agentra."); *In re All-Clad*, 2023 WL 2071481, at *3.

Moreover, the Parties' Settlement will avoid the needless duplication of effort, burdens, and other judicial inefficiencies that would result from repeated individual litigation of the same issues. *See Calhoun*, 2023 WL 2411354, at *9 ("A class-wide settlement will not only achieve resolution of the class members' claims without multiple lawsuits and trials, but also ensures that similarly situated members are treated uniformly.").

### 6.    Ascertainability

In the Third Circuit, ascertainability is a "necessary prerequisite" of a Rule 23(b)(3) class, and the inquiry is two-fold, "requiring a plaintiff to show that: (1) the class is defined with

reference to objective criteria; and (2) there is a reliable and administratively feasible mechanism for determining whether putative class members fall within the class definition." *Byrd v. Aaron's Inc*., 784 F.3d 154, 163 (3d Cir. 2015) (internal quotation marks and citation omitted). The inquiry does not require a plaintiff to be able to identify all class members at class certification, "instead, a plaintiff need only show that class members *can* be identified." *Id.* (internal quotation marks and citation omitted) (emphasis in original).

Here, the Settlement Class has been defined with objective criteria, *i.e.,* it is comprised of individuals and entities who have paid for, rented, and/or were prescribed a Recalled Device prior to the Recall, plus Payers who paid for, or reimbursed for, Recalled Devices. Each Recalled Device has a unique Serial Number that is maintained in the Philips Defendants' records. A substantial number of Settlement Class Members (over 3 million) can be identified through the Philips RS registration database associated with the Recall Programs and User information collected from DMEs and other sources as part of the Recall. In addition, User information was obtained from DMEs in discovery, data from the Census Registry Program, and Plaintiff Fact Sheets filed in support of Personal Injury Complaints filed in this MDL. The ascertainability requirement is therefore met. *See In re All-Clad*, 2023 WL 2071481, at *3 ("[T]he class is clearly ascertainable because the settlement class parameters present objective criteria, and the parties can . . . identif[y] members through detailed records.").

Having satisfied all the requirements under Rule 23, the proposed Settlement Class Representatives respectfully submit that the Court should certify the proposed Settlement Class for settlement purposes. *See* Fed. R. Civ. P. 23(c)(1)(B).

**B.  The Notice Program is the Best Notice Practicable Under the Circumstances**

Rule 23(e)(1)(B) requires the Court to "direct notice in a reasonable manner to all class members who would be bound by the proposal." In an action certified under Rule 23(b)(3), the Court must "direct to class members the best notice that is practicable under the circumstances, including individual notice to all members who can be identified through reasonable effort." Fed. R. Civ. P. 23(c)(2)(B). "Generally speaking, the notice should contain sufficient information to enable class members to make informed decisions on whether they should take steps to protect their rights, including objecting to the settlement or, when relevant, opting out of the class." *In re NFL II*, 821 F.3d at 435 (internal quotation marks and citation omitted).

**1.      The Proposed Notice Plan is the most practicable under the circumstances**

The proposed Notice Plan involves direct notice by both pre-paid first-class mail and email to all User and Payer Settlement Class Members with available address information. It seeks to provide notice through identifiable DMEs, notice to Users who elected to receive messages through the DreamMapper App, publication notice *via* an extensive proposed digital and print media notice program developed by the Settlement Administrator in consultation with the Parties, publication on a Settlement website, and publication on the Court's website. SA §9.1, *et seq*.; *see also* SA Exhibits 2, 3(a)-(h); Angeion Decl. ¶¶18, 21-59. The proposed Notice Plan also takes into account and separately takes steps to target Users and Payers. *See, e.g.,* Angeion Decl. ¶¶18, 32-53. The media component of the Notice Plan alone is designed to reach 86.70% of the Target Audience, and that is over and above the reach of the comprehensive direct notice campaign (mail and email), settlement website, and toll-free telephone hotline. *Id*., ¶19.

For purposes of direct notice, Users can be identified through numerous sources including information in the Philips RS registration database used for the Recall, information collected from

-42-

DMEs and other sources as part of the Recall, information obtained from DMEs in discovery, and User data from the Census Registry Program and Plaintiff Fact Sheets filed in support of Personal Injury Complaints. SA §9.1.2.1; *see also* Angeion Decl. ¶21. Hospitals and sleep labs in the United States can be identified from Philips RS's own records. SA §9.1.2.2; Angeion Decl. ¶21. Angeion has already received contact information for approximately 5,000,000 members of the proposed Settlement Class. *See* Angeion Decl. ¶21.

With respect to Payers, Angeion can supplement the list of Settlement Class Members to provide Notice to Payers through its proprietary third-party payer database that consists of drug stores; pharmacies; insurance companies; and health, welfare and pension funds. *See* Angeion Decl. ¶22. In addition to the direct notice efforts with respect to Payers, Angeion has developed a Payer media plan that consists of digital advertisements, social media advertising via Facebook and LinkedIn, and an additional paid search campaign via Google, specific to Payers. *Id.* ¶52. Publication in HR Magazine (or a similar title) will be used to further disseminate Notice to Payers. *Id.* ¶53.

The proposed Notice is comprehensive, innovative, and robust, and it targets both Users and Payers. It includes "state-of-the-art internet advertising, a comprehensive social media campaign and a search engine marketing campaign." Angeion Decl. ¶70. Further, the Notice Plan provides for the implementation of a dedicated settlement website and toll-free hotline to further inform Settlement Class Members of their rights and options. *Id.* It is clear that the proposed Notice Plan is the best notice practicable under the circumstances and fully meets the requirements of due process and Federal Rule of Civil Procedure 23. *See, e.g., Larson v. AT&T Mobility, Inc.*, 687 F.3d 109, 122-31 (3d Cir. 2012) (discussing importance of individual notice where reasonable); *In re Processed Egg Prods. Antitrust Litig.*, 284 F.R.D. 249, 266 (E.D. Pa. 2012) (individual mailings

-43-

discharges notice requirement); *In re All-Clad*, 2023 WL 2071481, at *5 (finding that notice plan, which utilized email, direct mail, digital notices, internet banners, social media notices, a settlement website, and a toll-free number constituted best notice practicable).

### 2.      The Proposed Notice Clearly Explains Settlement Class Members' Rights

The proposed Notice presented here fully complies with Rule 23 and the Due Process mandates. The proposed forms of Notice are written in plain language and aim to inform Settlement Class Members of the Settlement and its key terms; and ensure that Settlement Class Members will be able to review the Long Form Notice, Settlement Agreement, and other relevant materials so that they understand their rights and options. *See* Advisory Committee Notes on 2018 Amendment to Rule 23(c)(2) ("The ultimate goal of giving notice is to enable class members to make informed decisions about whether to opt out or, in instances where a proposed settlement is involved, to object or to make claims."); *see also* SA Exhibits 2, 3(a)-3(h); *Newberg and Rubenstein* §8:12 (notice "must contain information that a reasonable person would consider to be material in making an informed, intelligent decision of whether to opt out or remain a member of the class and be bound by the final judgment.") (internal quotation marks and citation omitted). The proposed Notice program provides all information required under Rule 23(c)(2)(B) including Settlement Class Members' right to object to the Settlement or opt out of the Settlement Class, or to participate in the Settlement and file a claim, if applicable. *See* SA Exhibits 2, 3(a)-3(h). The proposed notices will also provide the date and time of the Final Fairness Hearing, and how Settlement Class Members may appear at that hearing if they so choose. *See In re Rent-Way Sec. Litig.*, 305 F. Supp. 2d 491, 511 (W.D. Pa. 2003) ("[The due process] standard is met if the notice informs class members concerning: (i) the nature of the litigation; (ii) the general terms of the settlement; (iii) where complete information can be located; and (iv) the time and place of the

fairness hearing and that objectors may be heard.") (citing *In re Prudential Ins. Co. of Am. Sales Practices Litig.*, 962 F. Supp. 450, 527 (D.N.J. 1997) (notice must "afford [interested parties] an opportunity to present their objections.")).

### 3. The Proposed Settlement Administrator Is Qualified

The Parties carefully evaluated detailed proposals from seven experienced settlement administrators and jointly agreed to retain (subject to the Court's approval) Angeion Group to serve as Settlement Administrator. The Parties engaged in extensive discussions with Angeion and amongst themselves to reach agreement on the contours of the notice program and claims processes. The Parties jointly request that the Court appoint Angeion as the Settlement Administrator. Angeion is highly qualified and has significant experience administering settlements and notice in large class action cases, including the very recent *Calhoun* and *In re All-Clad* cases in this District. *Calhoun*, 2023 WL 2411354, at *5; *In re All-Clad*, 2023 WL 2071481, at *5. *See* Angeion Decl. ¶¶1-12 (describing Angeion qualifications and experience). Angeion's duties and responsibilities are set forth in the Settlement Agreement. *See, e.g.,* SA §6, *et seq*.

### E. A Final Fairness Hearing Should be Scheduled.

The Court should schedule a Final Fairness Hearing for the following purposes: (1) to finally determine whether the proposed Settlement is a fair, reasonable, and adequate settlement as to the Settlement Class Members within the meaning of Rule 23(e)(2) of the Federal Rules of Civil Procedure; (2) to determine whether a Final Judgment should be entered dismissing the Economic Loss Claims of the Settlement Class against the Defendants with prejudice, as required by the Settlement Agreement; (3) to consider the proposed plan of allocation set forth in the Settlement Agreement; (4) to consider Settlement Class Counsel's forthcoming Motion for Award of Attorneys' Fees and Litigation Expenses; (5) to consider the Petition for Service Awards to the

Settlement Class Representatives; (6) to consider timely, written objections that conform to the requirements set forth in the Settlement Agreement; and (7) to consider such other matters as the Court may deem appropriate. *See* Manual for Complex Litigation (Fourth) §§21.633, 21.634; *In re NFL I*, 775 F.3d at 581-83. Plaintiffs propose, and Philips Defendants do not oppose, the following schedule for final approval:

| Event | Date |
|---|---|
| Preliminary Approval Order | TBD |
| Dissemination of Notice Pursuant to Notice Plan | 60 days after entry of Preliminary Approval Order |
| Claims Period begins | 60 days after entry of Preliminary Approval Order |
| Deadline for Settlement Class Counsel to File Motion for Attorneys' Fees and Expenses | 90 days after entry of Preliminary Approval Order |
| Deadline for Settlement Class Members to Opt Out of or Object to the Settlement | 120 days after entry of Preliminary Approval Order |
| Motion for Final Approval (including list of Opt-Outs as an Exhibit) | 21 days prior to Final Fairness Hearing |
| Response to Objections | 7 days prior to Final Fairness Hearing |
| Final Fairness Hearing | At least 6 months after entry of Preliminary Approval Order |
| Claims Period Deadline | 120 days after Final Fairness Hearing |

## V.   **CONCLUSION**

For the foregoing reasons, proposed Settlement Class Representatives respectfully request that the Court enter an Order: (1) preliminarily certify the proposed Settlement Class; (2) preliminarily approve the Settlement; (3) determine that the Settlement appears fair, reasonable, and adequate within the meaning of Rule 23 of the Federal Rules of Civil Procedure and thus sufficient to promulgate notice of the Settlement to the Settlement Class; (4) order that notice be

provided to the Settlement Class pursuant to the terms of the Settlement Agreement; (5) give Settlement Class Members the right to object to or be excluded from the Settlement; (6) inform Settlement Class Members that they will be bound by the Final Order and Judgment unless they validly request exclusion; (7) stay and enjoin the continued pursuit of all Economic Loss Claims of Settlement Class Members against Defendants and the other Released Parties, whether in the MDL Court or in any other court or tribunal, until such time as the MDL Court has determined whether to enter the Final Order and Judgment; (8) schedule the Final Fairness Hearing not earlier than six months following entry of the Preliminary Approval Order; (9) appoint Angeion Group as the Settlement Administrator; (10) appoint Huntington Bank as the Settlement Funds Escrow Agent; (11) appoint the Honorable Thomas J. Rueter (Ret.) as the Claims Appeals Special Master; (12) appoint Settlement Class Representatives; (13) appoint Settlement Class Counsel; (14) preliminarily approve the plan of allocation of Settlement funds set forth in the Settlement Agreement; (15) order the establishment of the Settlement funds, as set forth in the Settlement Agreement; (16) order the payment of all reasonable costs of Settlement Administration, including the reasonable fees and costs of the Settlement Administrator, Settlement Funds Escrow Agent, Settlement Mediator, and Claims Appeals Special Master, as set forth in the Settlement Agreement; (17) find that the Settlement Funds are to be a "Qualified Settlement Fund" as defined in Section 468B-1(c) of the Treasury Regulations; and (18) provide that any objections by any Settlement Class Member to the Settlement shall be heard and any papers submitted in support of objections shall be considered by the MDL Court at the Final Fairness Hearing only if, on or before the conclusion of the Opt-Out/Objection Period, such Settlement Class Member follows the required procedures set forth in the Settlement Agreement.

Dated: September 7, 2023                                    Respectfully submitted,

*/s/ Sandra L. Duggan*
Sandra L. Duggan, Esquire
**LEVIN SEDRAN & BERMAN LLP**
510 Walnut Street, Suite 500
Philadelphia, PA 19106
(215)592-1500 (phone)
sduggan@lfsblaw.com

*/s/ Christopher A. Seeger*
Christopher A. Seeger, Esquire
**SEEGER WEISS LLP**
55 Challenger Road, 6th Floor
Ridgefield Park, NJ  07660
(973) 639-9100 (phone)
cseeger@seegerweiss.com

*/s/ Steven A. Schwartz*
Steven A. Schwartz, Esquire
**CHIMICLES SCHWARTZ KRINER &
DONALDSON-SMITH LLP**
361 West Lancaster Avenue
Haverford, PA 19041
(610) 642-8500 (phone)
steveschwartz@chimicles.com

*/s/ Kelly K. Iverson*
Kelly K. Iverson, Esquire
**LYNCH CARPENTER, LLP**
1133 Penn Avenue, 5th Floor
Pittsburgh, PA 15222
(412) 322-9243 (phone)
kelly@lcllp.com

*Plaintiffs' Co-Lead Counsel / Proposed Settlement Class Counsel*

Roberta D Liebenberg, Esquire (Chair)
**FINE, KAPLAN AND BLACK, R.P.C.**
One South Broad Street, 23rd Floor
Philadelphia, PA 19107
(215) 567-6565 (phone)
rliebenberg@finekaplan.com

Lisa Ann Gorshe, Esquire (Vice Chair)
**JOHNSON BECKER PLLC**
444 Cedar Street, Ste 1800
Saint Paul, MN 55101
(612) 436-1852 (phone)
lgorshe@johnsonbecker.com

Arthur H. Stroyd, Jr., Esquire (Vice Chair)
**DEL SOLE CAVANAUGH STROYD LLC**
3 PPG Place, Suite 600
Pittsburgh, PA 15222
(412) 261-2172 (phone)
(412) 261-2110 (fax)
astroyd@dscslaw.com

*Settlement Committee / Proposed Settlement Class Counsel*

*/s/ D. Aaron Rihn*
D. Aaron Rihn, Esquire
**ROBERT PEIRCE & ASSOCIATES,
P.C.**
707 Grant Street, Suite 125
Pittsburgh, PA 15219
(412) 281-7229 (phone)
(412) 281-4229 (fax)
arihn@peircelaw.com

Peter St. Tienne Wolff, Esquire
**PIETRAGALLO GORDON ALFANO
BOSICK & RASPANTI, LLP**
One Oxford Centre - 38th Floor
Pittsburgh, PA 15219
(412) 263-2000 (phone)
(412) 263-2001 (fax)
psw@pietragallo.com

*Plaintiffs' Co-Liaison Counsel*

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that a true and correct copy of the foregoing document was filed via the

Court's CM/ECF system on this 7th day of September 2023, and will be served to Counsel for

Defendants via email.

*/s/ D. Aaron Rihn*
D. Aaron Rihn, Esquire
PA I.D. No.: 85752
ROBERT PEIRCE & ASSOCIATES, P.C.
707 Grant Street
Suite 125
Pittsburgh, PA 15219
Tel: 412-281-7229
Fax: 412-281-4229
arihn@peircelaw.com
