# EXHIBIT
# A

# IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| IN RE PHILIPS RECALLED CPAP, BI-LEVEL PAP, AND MECHANICAL VENTILATOR PRODUCTS LITIGATION | : | |
| | : | Master Docket:  Misc. No. 21-mc-1230-JFC |
| | : | |
| | : | MDL No. 3014 |
| This Document Relates to:  All Actions Asserting Economic Loss Claims | : | |

## CLASS SETTLEMENT AGREEMENT AND RELEASE OF ECONOMIC LOSS CLAIMS

## <u>TABLE OF CONTENTS</u>

PREAMBLE ....................................................................................................................1

1.    Definitions....................................................................................................2

2.    Funding Obligations and Payments by the Philips Defendants ............................11

3.    Settlement Benefits ....................................................................................16

4.    Releases......................................................................................................23

5.    Assignment to Philips RS of Economic Loss Claims Against
      Ozone Cleaning Companies..........................................................................26

6.    Allocation of Settlement Funds, Claims Process, and Claims
      Period ........................................................................................................26

7.    Settlement Class Certification......................................................................38

8.    Preliminary Approval of Settlement Pursuant to Federal Rule
      of Civil Procedure 23(e) and Related Motions ..................................................38

9.    Notice to Settlement Class Members ............................................................39

10.   Right to Opt Out of or Object to the Settlement; Opt-
      Out/Objection Period ..................................................................................41

11.   Opt-Outs....................................................................................................42

12.   Objections ..................................................................................................44

13.   Final Fairness Hearing ................................................................................45

14.   Termination of this Settlement....................................................................47

15.   MDL Court Retains Jurisdiction to Implement, Interpret and
      Enforce Agreement and Settlement ..............................................................48

16.   Choice of Law ............................................................................................48

17.   Recall Programs ..........................................................................................49

18.   Attorneys' Fees and Expenses, and Service Awards ............................................49

19.   Dispute Resolution......................................................................................50

20.   Miscellaneous ............................................................................................51

21.   Federal Rule of Evidence 408 ......................................................................53

## PREAMBLE

This Class Settlement Agreement and Release of Economic Loss Claims (this "Agreement" and the "Settlement," as may be amended from time to time hereafter) is entered into by and among the Settlement Class Representatives, on the one hand, and Defendants Philips RS North America LLC ("Philips RS"), Koninklijke Philips N.V., Philips North America LLC, Philips Holding USA, Inc., and Philips RS North America Holding Corporation (collectively, the "Philips Defendants"), on the other (collectively, the "Parties").

Following extensive negotiations between the Parties with the assistance of the Court-appointed mediator, the Honorable Diane M. Welsh (Ret.) (the "Settlement Mediator"), the Parties have reached this Settlement.  By entering into this Settlement, the Philips Defendants do not admit any wrongdoing, liability, fault, injury, damages, or violation of any law whatsoever.  The Settlement is to be construed solely as a reflection of the Parties' desire to facilitate a resolution and release of all Economic Loss Claims on behalf of the Settlement Class against the Released Parties on the terms set forth below.  The Settlement does not resolve or release Medical Monitoring and Personal Injury Claims.  The Settlement will become effective only if it is approved by the MDL Court.

## RECITALS

**WHEREAS**, beginning June 14, 2021, Philips RS announced Recalls of approximately 10.8 million Recalled Devices sold, leased, rented or otherwise distributed in the United States;

**WHEREAS**, the Philips Defendants have been named as defendants in various federal and state court actions and other proceedings in the United States and are alleged to be liable for damages and other relief for economic injuries related to the Recalled Devices;

**WHEREAS**, on October 8, 2021, the Judicial Panel on Multidistrict Litigation established the MDL, assigned the MDL to the MDL Court, and transferred all then-pending federal lawsuits to the MDL for coordinated or consolidated pretrial proceedings pursuant to 28 U.S.C. § 1407;

**WHEREAS**, since then, the Judicial Panel on Multidistrict Litigation has transferred additional lawsuits to the MDL for coordinated or consolidated pretrial proceedings pursuant to 28 U.S.C. § 1407, and additional lawsuits have been filed in and/or removed to the MDL;

**WHEREAS**, on October 10, 2022, Plaintiffs filed a Consolidated Third Amended Class Action Complaint for Economic Losses ("Economic Loss Complaint"), on behalf of themselves and all others similarly situated;

**WHEREAS**, on October 17, 2022, Plaintiffs filed a Consolidated Second Amended Class Action Complaint for Medical Monitoring, and on October 24, 2022, Plaintiffs filed an Amended Master Long Form Complaint for Personal Injuries and Damages and an accompanying Short Form Complaint (collectively, the "Medical Monitoring and Personal Injury Complaints");

**WHEREAS**, the Philips Defendants deny all alleged liability, wrongdoing, fault, violation, and damages or injuries;

**WHEREAS**, Settlement Class Counsel have engaged in substantial discovery, investigation and fact gathering, including confirmatory discovery as part of the mediation process, to evaluate the Economic Loss Claims and Defendants' defenses;

**WHEREAS**, the Parties engaged in extensive good faith, arm's-length negotiations, over a period of many months, to resolve the Economic Loss Claims, with the assistance and oversight of the Settlement Mediator;

**WHEREAS**, without conceding the correctness of any of the other Parties' legal positions, claims and/or defenses, the Parties wish to avoid the delays, expense, and risks inherent in continued litigation of the Economic Loss Claims; and

**WHEREAS**, the Medical Monitoring and Personal Injury Claims are not the subject of this proposed resolution of the Economic Loss Claims, but any Economic Loss Claims asserted in the Medical Monitoring and Personal Injury Complaints are the subject of this proposed resolution of the Economic Loss Claims.

**NOW, THEREFORE**, in consideration of the mutual covenants contained herein and intending to be legally bound, the Parties agree to resolve, release and settle the Economic Loss Claims against the Released Parties on the terms set forth below:

## 1.    <u>Definitions</u>

For purposes of this Settlement, including the attached exhibits, the following terms (designated by initial capitalization throughout this Agreement) shall have the meanings set forth in this Section.  Terms used in the singular shall include the plural.

1.1.    **Accelerated Implementation Option** shall mean the option available to certain Users to receive a Device Payment Award and a Device Return Award on an accelerated basis, pursuant to the terms set forth in Section 6.3 below.

1.2.    **Attorneys' Fees and Expenses** shall mean the final amounts approved by the MDL Court (following the conclusion of any appellate proceedings) in connection with Settlement Class Counsel's motion for attorneys' fees, costs and litigation expenses, as described in Section 18.1 below.

1.3.    **BiPAP** shall mean Bi-level Positive Airway Pressure devices.

1.4.  **Census Registry Program** shall mean the Census Registry Program established by the MDL Court in Pretrial Order #25, as modified in Pretrial Order #25(a) (ECF Nos. 739, 870).

1.5.  **Claims Appeals Special Master** shall mean, subject to MDL Court approval, the Honorable Thomas J. Rueter (Ret.).

1.6.  **Claims Period** shall mean the period during which the Settlement Administrator will accept claims that Settlement Class Members have submitted for Device Payment Awards, Device Return Awards, Device Replacement Awards and/or Payer Awards.

1.7.  **Claims Period Deadline** shall mean 120 days after the date of the Final Fairness Hearing.

1.8.  **Counsel** shall mean Settlement Class Counsel and Counsel for the Philips Defendants.

1.9.  **Counsel for the Philips Defendants** shall mean:

   1.9.1.  Counsel for Philips RS:

      1.9.1.1.  John P. Lavelle, Jr. and Lisa C. Dykstra, Morgan, Lewis & Bockius LLP, 1701 Market Street, Philadelphia, PA 19103-2921; and

      1.9.1.2.  Erik T. Koons and Andrew T. George, Baker Botts LLP, 700 K St. NW, Washington, DC 20001.

   1.9.2.  Counsel for Koninklijke Philips N.V., Philips North America LLC, Philips Holding USA Inc., and Philips RS North America Holding Corporation:

      1.9.2.1.  Michael H. Steinberg, Sullivan & Cromwell LLP, 1888 Century Park East, Los Angeles, CA 90067; and

      1.9.2.2.  Tracy Richelle High, William B. Monahan, and Elizabeth N. Olsen, Sullivan & Cromwell LLP, 125 Broad Street, New York, NY 10004.

1.10.  **CPAP** shall mean Continuous Positive Airway Pressure devices.

---

**Section 1.   Definitions**                                                   3

1.11.   **Defendants** shall mean the defendants named in the Economic Loss Complaint, namely, the Philips Defendants, Polymer Technologies, Inc., and Polymer Molded Products LLC.

1.12.   **Device Payment Award** shall mean the cash payment offered to Users relating to the Recalled Devices described in Section 3.2 below.

1.13.   **Device Replacement Award** shall mean the cash payment offered to Users who qualify for a Device Replacement Award, as set forth in Section 3.4 below.

1.14.   **Device Return Award** shall mean the cash payment offered to Users who return, or have returned, their Recalled Devices, as set forth in Section 3.3 below.

1.15.   **DME** shall mean Durable Medical Equipment providers.

1.16.   **Economic Loss Claims** shall mean any and all claims, demands, actions, or causes of action (whether for damages, fines, penalties, assessments, liens, injunctive, equitable or any other relief, whether direct, indirect or consequential, liquidated or unliquidated, past, present or future, or foreseen or unforeseen) relating in any way to the Recalled Devices or the Replacement Devices, including, but not limited to, payments, costs, reimbursements, and/or expenses incurred or made by Settlement Class Members in connection with the purchase, rental, lease or other acquisition of the Recalled Devices or the Replacement Devices, that have been asserted, could have been asserted, or could be asserted by any of the Settlement Class Members, whether known or unknown, in law or in equity, contingent or non-contingent, suspected or unsuspected, concealed or hidden, or past, present or future, including for attorneys' fees, expert fees, consultant fees, or other litigation fees or costs, except Economic Loss Claims expressly do not include Medical Monitoring and Personal Injury Claims.

1.17.   **Effective Date** shall mean the date when the Settlement becomes Final, not the Execution Date or the date of MDL Court Final Approval.  For avoidance of doubt, the Effective Date shall not have been reached until both the MDL Court enters the Final Order and Judgment and there has been the successful exhaustion of all appeal periods without appeal or resolution of any appeals or certiorari proceedings in a manner upholding the Final Order and Judgment.

1.18.   **Eligible Payers** shall mean Payers who remain in the Settlement Class and who have taken the steps applicable to them, as determined by the Settlement Administrator, to receive a Payer Award under the Settlement.

---

1.19. **Eligible Users** shall mean Users who remain in the Settlement Class and who have taken the steps (if any) applicable to them, as determined by the Settlement Administrator, to receive one or more Device Payment, Device Return, and/or Device Replacement Awards under the Settlement.

1.20. **Enrolled Recalled Devices** shall mean Recalled Devices enrolled by Users in the Settlement pursuant to the Enrollment Process.

1.21. **Enrollment Process** shall mean the process for Users to enroll Recalled Devices in the Settlement to receive a Device Payment and/or a Device Return Award, provided they otherwise meet the requirements to receive those payments under the Settlement. The Enrollment Process is available only to Users who still possess the Recalled Device(s) that they want to enroll in the Settlement and that have not previously been registered in a Recall Program, and requires that Users provide at least (i) the Serial Number for the Recalled Device(s), (ii) the User's name, mailing address, telephone number, and if applicable, e-mail address, and (iii) information regarding the User's requested form of payment under the Settlement. All Recalled Devices except the Trilogy 100/200 Recalled Devices may be enrolled in the Settlement if they otherwise meet the requirements for enrollment. For those Users who still possess their Trilogy 100/200 Recalled Devices and wish to receive a Device Return Award, they should register their Trilogy 100/200 with Philips RS pursuant to a Recall Program. Philips RS will contact the DME to make arrangements for the DME to schedule a time to retrieve the User's Trilogy 100/200 and install a Remanufactured Device.

1.22. **Execution Date** shall mean September 7, 2023.

1.23. **Extended Warranties** shall mean those extended warranties provided by Philips RS to Users who receive or received a Remanufactured Device as part of a Recall Program, as set forth in Section 3.5 below.

1.24. **Final** shall mean the later of (1) the day after the deadline to appeal the Final Order and Judgment has expired with no appeal having been taken, or (2) if an appeal is filed, the latest of (i) the date of final affirmance of the Final Order and Judgment, (ii) the expiration of the time for a petition for writ of *certiorari* to review the Final Order and Judgment if affirmed, the denial of *certiorari*, or, if *certiorari* is granted, the date of final affirmance of the Final Order and Judgment following review pursuant to that grant; or (iii) the date of final dismissal of any appeal from the Final Order and Judgment or the final dismissal of any proceeding on *certiorari* to review the Final Order and Judgment that has the effect of confirming the Final Order and Judgment. An appeal from an award of Attorneys' Fees and Expenses or an award

of Service Awards to Settlement Class Representatives shall not affect the finality of the Settlement.

1.25. **Final Fairness Hearing** shall mean the final fairness hearing before the MDL Court, as described in Section 13 of the Agreement.

1.26. **Final Order and Judgment** shall mean the Final Approval Order and Judgment entered by the MDL Court following the Final Fairness Hearing, substantially in the form attached as **Exhibit 9** hereto.

1.27. **MDL** shall mean the above-captioned MDL, *In re Philips Recalled CPAP, Bi-Level PAP, and Mechanical Ventilator Prod. Litig.*, MDL No. 3014 (W.D. Pa.) (Conti, J.).

1.28. **MDL Court** shall mean the Honorable Joy Flowers Conti, or her successor, who presides over the MDL.

1.29. **MDL Court Final Approval** shall mean entry of the Final Order and Judgment by the MDL Court.

1.30. **Medical Monitoring and Personal Injury Claims** shall mean any claims for (1) medical monitoring damages or other medical monitoring relief and/or (2) personal injuries, including for pecuniary, non-pecuniary, and punitive damages for those personal injuries (including, but not limited to, past, present or future lost wages, lost earning capacity, or medical costs or expenses, and pain and suffering).

1.31. **Ozone Cleaning Companies** shall mean manufacturers of ozone cleaning devices for CPAP, BiPAP, ventilator or other similar devices, as well as their former, present, and future owners, shareholders, directors, officers, employees, attorneys, affiliates, parent companies, subsidiaries, predecessors and successors, including, but not limited to, SoClean Inc. and its affiliated and predecessor companies.

1.32. **Ozone Cleaning Products** shall mean devices claiming to use ozone to disinfect, clean, sanitize or otherwise employ ozone in connection with a CPAP, BiPAP, ventilator or other similar device, including, but not limited to, the Better Rest, the SoClean 1, the SoClean 2, the SoClean 2 Go, and the SoClean 3.

1.33. **Payer Award** shall mean the allocated portion of the Payer Amount that each Eligible Payer is eligible for under the Settlement, as set forth in Sections 3.6 and 6.7 below.

1.34. **Payers** shall have the meaning set forth in Section 1.51 below in the definition of Settlement Class.

---

**Section 1.   Definitions**                                                       6

1.35.   **Plaintiffs** shall mean the Plaintiffs named in the Economic Loss Complaint.

1.36.   **Preliminary Approval Order** shall mean an order of the MDL Court preliminarily approving the Settlement, substantially in the form attached as **Exhibit 1** hereto.

1.37.   **Recalled Devices**, or **Philips RS Recalled Devices**, shall mean the following CPAP, BiPAP, ventilator, and/or other devices sold, leased, rented or otherwise distributed in the United States:

    1.37.1.   C-series S/T, AVAPS (C-series and C-series HT);

    1.37.2.   DreamStation ASV;

    1.37.3.   DreamStation BiPAP;

    1.37.4.   DreamStation CPAP;

    1.37.5.   DreamStation Go;

    1.37.6.   DreamStation ST, AVAPS;

    1.37.7.   E30;

    1.37.8.   OmniLab Advanced Plus;

    1.37.9.   System One 50 Series ASV4 (Auto SV4);

    1.37.10.   System One 50 Series Base;

    1.37.11.   System One 50 Series BiPAP;

    1.37.12.   System One 60 Series ASV4 (Auto SV4);

    1.37.13.   System One 60 Series Base;

    1.37.14.   System One 60 Series BiPAP;

    1.37.15.   Trilogy 100/200, Garbin Plus, Aeris LiveVent; and

    1.37.16.   V30 auto.

1.38.   **Recall Programs** shall mean ongoing and future programs administered by Philips RS and overseen by the United States Food and Drug Administration relating to the Recalled Devices, including to repair, refurbish, remanufacture, and/or replace

---

Recalled Devices and/or that require the return of Recalled Devices to Philips RS for remediation, compensation or otherwise.  To date, Philips RS has spent more than $500 million toward the Recall Programs.

1.39.   **Recall Registration Number** shall mean the unique registration number a User receives from Philips RS when the User registers his or her Recalled Device with Philips RS pursuant to a Recall Program.

1.40.   **Recalls** shall mean the recalls of the Recalled Devices by Philips RS, beginning June 14, 2021.

1.41.   **Registered Recalled Devices** shall mean Recalled Devices registered by Users pursuant to the Recall Programs.

1.42.   **Released Claims** shall mean all Economic Loss Claims against Defendants and the other Released Parties.  For the avoidance of doubt, Released Claims expressly does not include (1) Economic Loss Claims of Settlement Class Members against Ozone Cleaning Companies (which will be assigned to Philips RS as set forth in Section 5 below), (2) claims to enforce this Settlement, or (3) Medical Monitoring and Personal Injury Claims.

1.43.   **Released Parties** shall mean any individual who, or entity that, is or could be responsible or liable in any way whatsoever, whether directly or indirectly, for Economic Loss Claims.  Without in any way limiting the foregoing, the Released Parties include, without limitation, (1) Defendants, (2) any of their past, present, or future parents, owners, predecessors, successors, subsidiaries, divisions, affiliates/related entities, stockholders, officers, directors, board members, supervisors, members, partners, managers, and employees, (3) any of their current, former or future suppliers, agents, testing laboratories, attorneys, vendors, consultants, claim administrators, recall administrators, contractors and subcontractors, (4) any and all current, former or future distributors, sellers, insurers, reinsurers, resellers, lessors, retail dealers, and DME providers for the Recalled Devices, (5) any and all individuals and entities indemnified by any other Released Party with respect to Economic Loss Claims, and (6) all of their predecessors, successors, assigns, legatees, legal representatives, and any other stakeholders, as well as all other persons acting by, through, or under them, including those who are, may be, or are alleged to be jointly or jointly and severally liable with them, or any of them.  For the avoidance of doubt, notwithstanding anything to the contrary above, the Released Parties expressly does not include Ozone Cleaning Companies.

1.44. **Remanufactured Devices** shall mean repaired, refurbished, remanufactured, and/or new replacement CPAP, BiPAP, ventilator or similar devices that Philips RS has provided to Users pursuant to the Recall Programs.

1.45. **Replacement Device** shall mean a CPAP, BiPAP, ventilator or similar device that is comparable to the replaced Philips RS Recalled Device and that was purchased, leased, rented, or otherwise paid for directly by a User (in whole or part), but only on or after June 14, 2021 and prior to the Execution Date, to replace the Philips RS Recalled Device, as set forth in Section 3.4 below.

1.46. **Replacement Device Claim Amount** shall mean the amount documented as actually paid by a User (*e.g.*, not any payment made by insurance or another third-party payer on behalf of or for the benefit of the User) to purchase, lease, or rent a Replacement Device, subject to Section 3.4.1.1 below.

1.47. **Representative Claimant** shall mean the guardian, estate, administrator, or other legal representative, including a person acting pursuant to a power of attorney for a Settlement Class Member, with authority to act on behalf of a Settlement Class Member.  Representative Claimants do not include a Settlement Class Member's counsel unless that counsel is acting under a power of attorney from the Settlement Class Member.  Representative Claimants also do not include persons or entities, such as claim aggregator companies, who purchase a User's claim(s), charge a User to submit a Claim Form, and/or seek to retain a portion of a User's claim(s) in exchange for submitting a Claim Form on behalf of such User.

1.48. **Serial Number** shall mean the unique identifying alphanumeric number located on the bottom of each Recalled Device or Remanufactured Device, or in the case of certain ventilators (such as the OmniLab Advanced Plus and Trilogy 100/200), on the device display.

1.49. **Service Awards** shall mean the final amounts approved by the MDL Court (following the conclusion of any appellate proceedings) for payment to Settlement Class Representatives for their service as a Settlement Class Representative, as described in Section 18.2 below.

1.50. **Settlement Administrator** shall mean, subject to MDL Court approval, Angeion Group, LLC ("Angeion Group").  The Settling Parties may jointly agree to replace Angeion Group with another mutually agreeable settlement administrator.

1.51. **Settlement Class or Settlement Class Members** shall include Plaintiffs and all other individuals or entities in the United States (as defined below), including individuals who are United States citizens, residents, United States military,

diplomatic personnel and employees living or stationed overseas, who or which, prior to the announcement of the Recalls, either (a) purchased, leased, rented, or paid for (in whole or part), or were prescribed a Recalled Device ("Users"), or (b) reimbursed (in whole or part) a User's payment to purchase, lease, rent, or otherwise pay for a Recalled Device, including insurers, self-funded employers, and other third-party payers ("Payers").  Individuals or entities whose payment obligations with respect to a particular Recalled Device preceded the announcement of the relevant Recall are part of the Settlement Class even if certain of their payment obligations post-dated the Recall (*e.g.*, certain renters and lessees).

EXCLUDED from the Settlement Class are:  (a) Defendants and their officers, directors, and employees; (b) the MDL Court, Settlement Mediator, Claims Appeals Special Master, and Special Masters assigned to the MDL; (c) individuals who have already released Released Claims against one or more of the Defendants pursuant to individual settlements or other resolutions; (d) DMEs; (e) the federal government and any federal government payers, including the United States Department of Health and Human Services Centers for Medicare & Medicaid Services, the Department of Defense, and the U.S. Department of Veterans Affairs; and (f) Settlement Class Counsel.

1.52.    **Settlement Class Counsel** shall mean:

1.52.1.    Christopher A. Seeger, Seeger Weiss, 55 Challenger Road, 6th Floor, Ridgefield Park, NJ 07660;

1.52.2.    Sandra L. Duggan, Levin Sedran & Berman, 510 Walnut Street, Suite 500, Philadelphia, PA 19106;

1.52.3.    Steven A. Schwartz, Chimicles Schwartz Kriner & Donaldson-Smith LLP, 361 West Lancaster Avenue, Haverford, PA 19041;

1.52.4.    Kelly K. Iverson, Lynch Carpenter, LLP, 1133 Penn Avenue, 5th Floor, Pittsburgh, PA 15222;

1.52.5.    Roberta D. Liebenberg, Fine, Kaplan and Black, R.P.C., One South Broad Street, 23rd Floor, Philadelphia, PA 19107;

1.52.6.    Lisa Ann Gorshe, Johnson Becker PLLC, 444 Cedar Street, Suite 1800, Saint Paul, MN 55101; and

1.52.7.    Arthur H. Stroyd, Jr., Del Sole Cavanaugh Stroyd LLC, 3 PPG Place, Suite 600, Pittsburgh, PA 15222.

---

**Section 1.   Definitions**                                                      10

1.53.   **Settlement Class Representatives** shall mean the following Plaintiffs:  Elizabeth Heilman; Ivy Creek of Tallapoosa LLC d/b/a Lake Martin Community Hospital; Peter Barrett; Julie Barrett; and ASEA/AFSCME Local 52 Health Benefits Trust.

1.54.   **Settlement Funds** shall mean the accounts that will be opened with the Settlement Funds Escrow Agent, MDL 3014 EL User Settlement Fund ("User Settlement Fund") and MDL 3014 EL Payer Settlement Fund ("Payer Settlement Fund"), as a Court-approved Qualified Settlement Fund pursuant to Section 1.468B-1, *et seq.* of the Treasury Regulations promulgated under Section 468B of the Internal Revenue Code of 1986, as amended.  The Escrow Agreement establishing the Settlement Funds will be in a form mutually agreed upon by the Parties.

1.55.   **Settlement Funds Escrow Agent** shall mean Huntington Bank, which will enter into an Escrow Agreement to carry out the tasks more fully detailed in that Escrow Agreement, including to receive, hold, invest, and disburse funds and pay notice-related costs and other reasonable administrative expenses authorized and approved by the Court.  The Settling Parties may jointly agree to replace Huntington Bank with another mutually agreeable financial institution.

1.56.   **Settling Parties** shall mean all Settlement Class Members and the Philips Defendants.

1.57.   **Settling Party** shall mean any one of the Settling Parties.

1.58.   **United States** shall mean the United States of America, its Territories (American Samoa, Guam, the Northern Mariana Islands, Puerto Rico, and the U.S. Virgin Islands), and the District of Columbia.

1.59.   **Users** shall have the meaning set forth in Section 1.51 above in the definition of Settlement Class.

## 2.   Funding Obligations and Payments by the Philips Defendants

2.1.   The Philips Defendants shall be responsible to make, or to cause to be made, the payments and to perform, or to cause to be performed, the obligations set forth in this Agreement.

2.2.   For purposes only of this Settlement and the enforcement of the payment and performance obligations under this Settlement, the Philips Defendants submit to the jurisdiction of the MDL Court.

2.3.   **Establishment and Administration of the Settlement Funds**

2.3.1.   The Settlement Funds will be a MDL Court-approved Qualified Settlement Fund pursuant to Section 1.468B-1, *et seq.* of the Treasury Regulations promulgated under Section 468B of the Internal Revenue Code of 1986, as amended.

2.3.2.   The Settlement Funds will be established through a deposit or deposits by, or on behalf of, the Philips Defendants of the Initial Payments for Class Notice and Settlement Administration, as set forth in Section 2.4.1 below.

2.3.3.   At the written direction of Settlement Class Counsel, the Settlement Funds Escrow Agent shall invest the Settlement Funds exclusively in instruments or accounts backed by the full faith and credit of the United States Government or fully insured by the United States Government or an agency thereof, including a U.S. Treasury Fund or a bank account that is either (a) fully insured by the Federal Deposit Insurance Corporation or (b) secured by instruments backed by the full faith and credit of the United States Government.  The Philips Defendants shall not bear any responsibility for or liability related to the investment of the Settlement Funds by the Settlement Funds Escrow Agent.

2.3.4.   Administrative expenses of the Settlement Funds will be paid from the Settlement Funds.

2.4.   **Payments for Class Notice and Settlement Administration**

2.4.1.   **Initial Payments for Class Notice and Settlement Administration**. No later than 14 days after the Execution Date, the Philips Defendants shall deposit, or cause to be deposited, $7,350,000 into the User Settlement Fund and $100,000 into the Payer Settlement Fund (collectively, the "Initial Payments for Class Notice and Settlement Administration") by wire transfer into the respective Settlement Funds for purposes of paying notice-related costs, and other reasonable administrative expenses that may be incurred pursuant to this Settlement in conjunction with the retention and/or services of the Settlement Administrator, the Settlement Funds Escrow Agent, the Claims Appeals Special Master, and the Settlement Mediator.

2.4.2.   Following MDL Court Final Approval, the Philips Defendants shall make, or cause to be made, additional payments for Settlement

---

**Section 2.   Funding Obligations and Payments by the Philips Defendants**                                                                12

Administration as set forth in Section 6.1.1 below and as required by the Settlement.

2.5.   **Payments for Device Payment Awards**

2.5.1.   **Initial Device Payment Amount**.  The Philips Defendants shall pay, or cause to be paid, an amount equal to the total Device Payment Awards (as set forth in Section 3.2 below) for all Registered Recalled Devices as of the Execution Date, plus an amount equal to the total Device Payment Awards for 5% of the remaining Recalled Devices that have not been registered by Users for a Recall Program by the Execution Date (the "Initial Device Payment Amount").  The payment shall be made by wire transfer into the User Settlement Fund in two installments no later than 14 days following (i) MDL Court Final Approval (25% of the Initial Device Payment Amount) ("first installment"), and (ii) the Effective Date (75% of the Initial Device Payment Amount) ("second installment").  In the event the first installment of the Initial Device Payment Amount is insufficient to pay Device Payment Awards to Users electing the AIO option, the Philips Defendants shall deposit additional funds from the second installment to make those payments. The combined first and second installment payments for the Initial Device Payment Amount will be $309,082,312.

2.5.2.   Additional payments by, or on behalf of, the Philips Defendants into the User Settlement Fund for Device Payment Awards may be required as set forth further in Section 2.7 below.

2.6.   **Payments for Device Return Awards**

2.6.1.   **Initial Device Return Amount**.  The Philips Defendants shall pay, or cause to be paid, an amount equal to $100 for each and every Registered and Enrolled Recalled Device returned by Users pursuant to the Recall Programs or the Settlement as of the date of MDL Court Final Approval (the "Initial Device Return Amount").  The payment shall be made by wire transfer into the User Settlement Fund in two installments no later than 14 days following (i) MDL Court Final Approval (25% of the Initial Device Return Amount) ("first installment"), and (ii) the Effective Date (75% of the Initial Device Return Amount) ("second installment").  In the event the first installment of the Initial Device Return Amount is insufficient to pay Device Return Awards to Users electing the AIO option, the Philips Defendants shall deposit, or cause

---

**Section 2.   Funding Obligations and Payments by the Philips Defendants**                                          13

to be deposited, additional funds from the second installment to make those payments. The combined first and second installment payments for the Initial Device Return Amount will be no less than $136,618,500, but is subject to increase depending on the number of Registered and Enrolled Recalled Devices returned by Users pursuant to the Recall Programs or the Settlement as of the date of MDL Court Final Approval.

2.6.2.  Additional payments by, or on behalf of, the Philips Defendants into the User Settlement Fund for Device Return Awards may be required as set forth further in Section 2.7 below.

## 2.7.  **Additional Payments for Device Payment Awards and Device Return Awards**

2.7.1.  To the extent the sum of the Initial Device Payment Amount and the Initial Device Return Amount is not sufficient to make all Device Payment Awards and Device Return Awards required by the Settlement, the Philips Defendants, on a monthly basis, will pay, or cause to be paid, an additional amount (the "Additional Amount") into the User Settlement Fund necessary to make those payments.

2.7.2.  The Settlement Administrator, in coordination with the Parties, shall determine within 10 days of the end of each month the Additional Amount necessary (if any) to make Device Payment Awards and Device Return Awards to all Eligible Users for the following month (the "Additional Amount Determination"). The Philips Defendants shall pay, or cause to be paid, the Additional Amount into the User Settlement Fund within 14 days after the Additional Amount Determination.

2.7.2.1.  In the event either Party or the Settlement Administrator later identifies a miscalculation in the amount of any Additional Amount Determination, and the Parties are in agreement as to the miscalculation, that amount shall be taken into consideration by the Settlement Administrator to increase or decrease subsequent Additional Amount Determination(s), as appropriate. If the Parties cannot agree as to the existence or amount of a miscalculation, such dispute shall be resolved by the Claims Appeals Special Master, whose decision on the matter shall be final and unappealable by any Party.

---

Section 2.   **Funding Obligations and Payments by the Philips Defendants** 14

2.7.2.2.    In the event the Philips Defendants deposit excess amounts into the User Settlement Fund as a result of a miscalculation of Additional Amount Determination(s) and those amounts remain in the User Settlement Fund after all Device Payment Awards and Device Return Awards required under the Settlement have been made, the excess amounts shall be returned to the Philips Defendants within 14 days after all Device Payment Awards and Device Return Awards have been made to Eligible Users.

2.8.    **Payments for Device Replacement Awards**

2.8.1.    **Device Replacement Amount**.  The Philips Defendants shall pay, or cause to be paid, up to $10,000,000 (the "Device Replacement Amount") by wire transfer into the User Settlement Fund no later than 14 days after the Settlement Administrator determines the total number and amount of valid claims for Device Replacement Awards, as set forth in Section 6.6.2 below.  This determination will not occur until after the Claims Period Deadline, and the Philips Defendants do not have any payment obligation with respect to Device Replacement Awards prior to then.

2.8.2.    Additional payments by, or on behalf of, the Philips Defendants into the User Settlement Fund for Device Replacement Awards may be required as set forth in Section 6.6.2.4 below.

2.9.    The net interest earned on payments by, or on behalf of, the Philips Defendants into the User Settlement Fund, after payment of taxes and fees owed, Class Notice and Settlement Administration expenses (*see* Section 2.4 above), will accrue to the benefit of Users and may be used to make Device Payment Awards, Device Return Awards and/or Device Replacement Awards.

2.10.    **Payment for Payer Awards**

2.10.1.    **Payer Amount**.  The Philips Defendants shall pay, or cause to be paid, $34,000,000 for Payer Awards (the "Payer Amount").  The payment shall be made by wire transfer into the Payer Settlement Fund no later than 14 days following the Effective Date.  The Payer Amount is fixed and will not increase based on the number or amount of Eligible Payers or Eligible Payer claims submitted.

---

**Section 2.   Funding Obligations and Payments by the Philips Defendants**    15

2.11.   The net interest earned on the payment by, or on behalf of, the Philips Defendants into the Payer Settlement Fund, after payment of taxes and fees owed, Class Notice and Settlement Administration expenses (*see* Section 2.4 above), will accrue to the benefit of Payers and may be used to make Payer Awards.

2.12.   The payments by, or on behalf of, the Philips Defendants of the Initial Device Payment Amount, the Initial Device Return Amount, and the Payer Amount (collectively, the "Non-Reversionary Payments") shall be non-reversionary, and the Philips Defendants shall not be entitled to return of the Non-Reversionary Payments; however, if the Settlement does not achieve MDL Court Final Approval and/or does not become Final, then the Non-Reversionary Payments and accrued interest (minus any payments made or owed for Class Notice and Settlement Administration and minus any payments made pursuant to the AIO as set forth in Section 6.3 below) will be returned to the Philips Defendants.

## 3.   **Settlement Benefits**

### 3.1.   **Overview**

3.1.1.   The Settlement benefits set forth in this Agreement are separate and distinct from any relief provided under the Recall Programs; provided, however, that to the extent that the financial compensation to a particular User under this Settlement is greater than the financial compensation provided under the Recall Programs to the same User, or vice versa, nothing precludes that User from recovering the larger of the two but not both.

3.1.1.1.   As part of the claims process for this Settlement, the Settlement Administrator, in conjunction with the Parties, will determine whether a User has already received financial compensation under the Recall Programs greater than that which otherwise would have been provided to the User through the sum of the User's Device Payment and Device Return Awards.  If so, the User is not entitled to a Device Payment or Device Return Award under this Settlement.

3.1.1.2.   Provided they otherwise meet the requirements set forth herein for a Device Replacement Award, nothing in the Recall Programs precludes Users from recovering a Device Replacement Award.

3.1.2.   Provided they otherwise meet the requirements to receive these payments under the Settlement, Users are eligible for the following cash payments under the Settlement: (a) Device Payment Awards, (b) Device Return Awards, and (c) Device Replacement Awards.  As set forth in Section 3.4.6 below, with certain exceptions, a User is not eligible for both a Device Return Award and a Device Replacement Award with respect to the same Recalled Device.

3.1.2.1.   Users who receive a Remanufactured Device from Philips RS also receive an Extended Warranty on the Remanufactured Device.

3.1.3.   Provided they otherwise meet the requirements to receive this payment under the Settlement, Payers are eligible for Payer Awards.  Payers are not eligible, directly or indirectly, for any Device Payment Awards, Device Return Awards or Device Replacement Awards, in whole or in part.

3.2.   **Device Payment Awards**.  Only one Device Payment Award is available per Recalled Device.  The amount of each Device Payment Award will be based on the Recalled Device at issue as follows:

| Recalled Device | User Device Payment Award (Per Device) |
|---|---|
| System One 50 Series ASV4 (Auto SV4) | $469.14 |
| System One 50 Series Base | $69.14 |
| System One 50 Series BiPAP | $159.46 |
| System One 60 Series ASV4 (Auto SV4) | $424.32 |
| System One 60 Series Base | $68.24 |
| System One 60 Series BiPAP | $152.70 |
| C-series S/T, AVAPS (C-series and C-series HT) | $394.37 |
| DreamStation CPAP | $55.63 |
| DreamStation ASV | $379.50 |
| DreamStation ST, AVAPS | $329.05 |
| DreamStation BiPAP | $130.63 |
| DreamStation Go | $107.43 |
| E30 | $453.83 |
| OmniLab Advanced Plus | $165.99 |
| Trilogy 100/200, Garbin Plus, Aeris LiveVent | $1,552.25 |
| V30 auto | $67.12 |

3.2.1.   Device Payment Awards will be paid to those Users who complete the steps applicable to them, if any, in Section 6 below.

3.2.2.   Payers are not eligible to receive Device Payment Awards, and no portion of a Device Payment Award will be allocated under the Settlement to Payers.

3.2.3.   Users who purchased, leased, rented, or paid for multiple Recalled Devices are eligible to seek and receive multiple Device Payment Awards.

3.2.4.   If a User purchased, leased, rented, or paid for (in whole or part) a Recalled Device, but then returned that Recalled Device to Philips RS under warranty (outside of a Recall Program) and received another Recalled Device for free pursuant to that warranty, the User is only eligible for a Device Payment Award for the Recalled Device provided to the User for free under warranty, not the original Recalled Device returned to Philips RS under warranty.

3.2.5.   In the event multiple Users make valid Device Payment Award claims with respect to the same Recalled Device (*e.g.*, a Recalled Device that was rented), the Device Payment Award for that Recalled Device will be allocated by the Settlement Administrator after the Claims Period Deadline on a *pro rata* basis in accordance with each User's total payments for the Recalled Device.

3.2.6.   Users who purchased, leased, rented, or paid for (in whole or part) a Recalled Device but who returned the Recalled Device under warranty (outside of a Recall Program) and received their full payment back are not eligible for a Device Payment Award for the Recalled Device they returned.

3.2.7.   Receipt of a Device Payment Award does not affect a User's eligibility, if applicable, for a Device Return Award and/or a Device Replacement Award.

3.3.   **Device Return Awards**.  A Device Return Award, of $100 per Recalled Device (irrespective of the type or model of Recalled Device), will be available to compensate eligible Users who have either already returned Recalled Devices pursuant to a Recall Program or who return Recalled Devices by the Claims Period Deadline pursuant to either the terms of the Settlement or a Recall Program.  There shall be only one Device Return Award available for each Recalled Device.

3.3.1.  Users are eligible to receive a separate Device Return Award for each Recalled Device they return.

3.3.2.  Payers are not eligible to receive Device Return Awards, and no portion of a Device Return Award will be allocated under the Settlement to Payers.

3.3.3.  To be eligible to receive a Device Return Award, Users must return (or already have returned after June 14, 2021) their Registered or Enrolled Recalled Device(s) pursuant to a Recall Program or under this Settlement.

3.3.4.  Philips RS agrees to make prepaid return labels available on the Settlement website maintained by the Settlement Administrator so as to allow Users to return their Registered or Enrolled Recalled Devices to Philips RS; provided, however, that for those Users who still possess their Trilogy 100/200 Recalled Devices and wish to receive a Device Return Award, they should register their Trilogy 100/200 with Philips RS pursuant to a Recall Program.  Philips RS will contact the DME to make arrangements for the DME to schedule a time to retrieve the User's Trilogy 100/200 and install a Remanufactured Device.

3.3.5.  To receive a Device Return Award, the returned Recalled Device must have a complete and visible original Serial Number and must have all of its parts, other than a humidifier attachment, power cord, the memory card, the filters, and accessories like masks and tubing.

3.3.6.  Receipt of a Device Return Award for a particular Recalled Device does not affect a User's eligibility to receive a Device Payment Award for that Recalled Device.

3.3.7.  As set forth in Section 3.4.6 below, a User is not eligible for a Device Return Award if the User receives 100% of his or her Replacement Device Claim Amount with respect to the same Recalled Device. However, as set forth in Section 3.4.7 below, in the event that a User does not receive 100% of his or her Replacement Device Claim Amount, the User may be entitled to a Device Return Award (or a portion thereof) for the associated replaced and returned Recalled Device.

3.4.  **Device Replacement Awards**.  Device Replacement Awards are intended to compensate eligible Users who, on or after June 14, 2021 and prior to the Execution Date, paid out of pocket (in whole or in part) for a Replacement Device without

---

**Section 3.   Settlement Benefits**                                                    19

having received or prior to receiving from a Recall Program a Remanufactured Device associated with the User's Recalled Device.

3.4.1.  Subject to Section 3.4.1.1 below, the Device Replacement Award for a particular User shall be based on the Replacement Device Claim Amount.

3.4.1.1.  The Parties have agreed to a list of comparable Replacement Devices for each Philips RS Recalled Device ("Comparable Replacement Devices List"), attached hereto as **Exhibit 5(a)**. In the event a User purchased, leased, or rented a replacement device that is not identified on the Comparable Replacement Devices List, the Settlement Administrator, in consultation with the Parties, will determine whether the replacement device at issue can be considered a comparable Replacement Device.  If the replacement device at issue is not comparable to the replaced Philips RS Recalled Device and the amount set forth on the User's Device Replacement Award Claim Form is greater than the value of a device that is comparable to the replaced Philips RS Recalled Device, as determined by the Parties in consultation with the Settlement Administrator, the User's Replacement Device Claim Amount will be reduced by the Settlement Administrator to the value of the comparable device, and the reduced amount will constitute the User's Replacement Device Claim Amount.

3.4.2.  To be eligible to receive a Device Replacement Award, a User must, within the Claims Period, complete each of the following steps:

3.4.2.1.  Submit a timely and valid claim, by completing the Device Replacement Award Claim Form in the form attached hereto as **Exhibit 5** and by providing sufficient documentation of (i) the Replacement Device, (ii) the expenses actually incurred and paid out of pocket by the User to acquire the Replacement Device, (iii) the purchase date for the Replacement Device, (iv) a sworn declaration that the Replacement Device was in fact used by the User to replace the Recalled Device, and (v) sufficient information regarding the Recalled Device that the Replacement Device was replacing so as to undertake the comparability analysis

required by Sections 1.45 and 3.4.1.1 above and to ensure that any Device Return Award for that Recalled Device is accounted for consistent with Sections 3.4.6 and 3.4.7 below.

3.4.2.2.   Return the Recalled Device to Philips RS through the process set forth above in Section 3.3.4.  If the User no longer possesses the Recalled Device, the User need not return the Recalled Device to Philips RS to be eligible for a Device Replacement Award.  However, if the User still possesses the Recalled Device, the User must return it to Philips RS to be eligible for a Device Replacement Award.

3.4.2.3.   In the event the User received a Remanufactured Device pursuant to a Recall Program, return that Remanufactured Device to Philips RS in reasonable working condition by obtaining a prepaid return label available on the Settlement website maintained by the Settlement Administrator.  The User must return the Remanufactured Device to Philips RS to be eligible for a Device Replacement Award.

3.4.3.   Only one Device Replacement Award is available per Recalled Device (*e.g.*, if a User purchased two Replacement Devices to replace a single Recalled Device, the User is only eligible for a Device Replacement Award for one of the Replacement Devices).

3.4.4.   No Device Replacement Awards shall be paid until after the Claims Period Deadline or after the Effective Date, whichever is later.

3.4.5.   If otherwise eligible, Users submitting a claim for a Device Replacement Award will also be entitled to a Device Payment Award associated with the replaced Recalled Device.  In other words, receipt of a Device Replacement Award does not preclude a User from receiving a Device Payment Award, subject to the terms and conditions for receiving such an award.

3.4.6.   Receipt of a Device Replacement Award will preclude a User from receiving a Device Return Award in the event that, after the Settlement Administrator calculates the Total Replacement Device Claim Amounts, as provided in Section 6.6.2 below, the User receives 100% of his or her Replacement Device Claim Amount.

3.4.6.1.   Under that circumstance, if a particular User already received a Device Return Award for the associated replaced and returned Recalled Device, the Device Return Award amount will be deducted in full from that User's Device Replacement Award.

3.4.7.   In the event that a User does not receive 100% of his or her Replacement Device Claim Amount, the User may be entitled to a Device Return Award (or a portion thereof) for the associated replaced and returned Recalled Device.

3.4.7.1.   Under that circumstance, Users are entitled to a Device Return Award, or a portion thereof equal to the deficit in the Device Replacement Award (up to $100), whichever is less.

3.4.8.   Payers are not eligible to receive Device Replacement Awards, and no portion of a Device Replacement Award is allocated under the Settlement to Payers.

3.5.   **Extended Warranties**.   Philips RS shall provide the following Extended Warranties to Users who receive or have received a Remanufactured Device from Philips RS as part of a Recall Program:

3.5.1.   Two years for materials and workmanship for Remanufactured Devices that have a different Serial Number from the associated Recalled Device.

3.5.2.   Two years for materials and workmanship on the repair work that was performed by Philips RS pursuant to the Recall Programs (not the entire Remanufactured Device) on Remanufactured Devices that have the same Serial Number as the associated Recalled Device (*i.e.*, the Remanufactured Device and the Recalled Device are the same device by Serial Number).

3.5.3.   The two-year warranties referenced above in Sections 3.5.1 and 3.5.2 shall begin on (i) the date of shipment to the User, for Remanufactured Devices shipped by Philips RS directly to the User, or (ii) the date the Remanufactured Device was set up by the DME for the User, for Remanufactured Devices shipped by Philips RS to the DME.

3.6.   **Payer Awards**.  Payer Awards will be paid from the Payer Amount to those Payers that qualify for such a payment based on the protocols and processes set forth in Section 6.7 below.

4.     **Releases**

4.1.    Through this Settlement, the Parties are settling and fully and forever resolving, with complete finality, any and all Released Claims of the Settlement Class Members against Defendants and the other Released Parties. The Settlement does not resolve any claims that Settlement Class Members may have, if any, against the Defendants or other Released Parties for Medical Monitoring and Personal Injury Claims, which are not released and are expressly excluded from the definition of Released Claims.

4.2.    Other than as expressly set forth below, the Philips Defendants and any successors to their rights or interests under this Settlement warrant and represent that they will not challenge or oppose a Settlement Class Member's Medical Monitoring or Personal Injury Claims or ability to recover for those Medical Monitoring or Personal Injury Claims on the basis of this Settlement, any payments under this Settlement, or the Releases provided herein. Further, the Settlement does not preclude Settlement Class Members from seeking to present evidence of their alleged economic losses at a trial (if any) of their Medical Monitoring and/or Personal Injury Claims. Such evidence may be presented only (if applicable) to establish an element of their Medical Monitoring and/or Personal Injury Claims; however, in no event shall any Settlement Class Member seek at such trial to recover damages for those economic losses, seek to increase an exemplary or punitive damages award on account of economic losses, or recover twice for their economic losses. In the event a Settlement Class Member seeks to present evidence of their alleged economic losses at a trial (if any), the Philips Defendants shall have the right, in order to prevent double recovery of economic losses by the Settlement Class Member, to seek to present evidence relating to this Settlement, including, but not limited to, any/all money received by the Settlement Class Member pursuant to this Settlement, the determination by the MDL Court that the Settlement was fair, reasonable and adequate, and that the Settlement Class Member had the opportunity to opt out of the Settlement.

4.3.    All Economic Loss Claims of Settlement Class Members against Ozone Cleaning Companies are expressly excluded from the definition of Released Claims and instead will be assigned to Philips RS in accordance with Section 5 below.

4.4.    The releases set forth herein expressly exclude any claims for breach of this Agreement.

4.5.    These terms are material terms of this Agreement and will be reflected in the Final Order and Judgment.

---

**Section 4.   Releases**                                                                 23

4.6. **Release By Settlement Class**

4.6.1. As of the Effective Date, each Settlement Class Member, on behalf of themselves and their agents, heirs, executors, administrators, successors, assigns, insurers, attorneys, representatives, shareholders, owner associations, and any other legal or natural persons who may claim by, through and/or on behalf of them ("Releasing Parties"), fully, finally, irrevocably, and forever releases, remises, waives, relinquishes, settles, surrenders, foregoes, gives up, abandons, cancels, acquits and forever discharges and covenants not to sue Defendants and the other Released Parties with respect to any and all Released Claims. Without in any way limiting the foregoing or its broad scope, this release covers (by example and without limitation) any and all claims for damages, statutory damages, equitable relief, injunctive relief, penalties, liens, and attorneys', expert, consultant, or other litigation fees or costs other than fees and costs awarded by the Court in connection with this Settlement, but does not include Medical Monitoring and Personal Injury Claims.

4.6.2. This release is not conditional on receipt of any benefits provided under this Settlement or otherwise, and applies as a result of membership as a Settlement Class Member, the notice and MDL Court-approval process herein, the ability to opt out of the Settlement, and the occurrence of the Effective Date.

4.6.3. Settlement Class Members acknowledge and waive, and agree to waive, on behalf of themselves and the other Releasing Parties, Section 1542 of the California Civil Code, which provides that: "**A GENERAL RELEASE DOES NOT EXTEND TO CLAIMS THAT THE CREDITOR OR RELEASING PARTY DOES NOT KNOW OR SUSPECT TO EXIST IN HIS OR HER FAVOR AT THE TIME OF EXECUTING THE RELEASE, AND THAT, IF KNOWN BY HIM OR HER, WOULD HAVE MATERIALLY AFFECTED HIS OR HER SETTLEMENT WITH THE DEBTOR OR RELEASED PARTY.**" Settlement Class Members expressly waive and relinquish, on behalf of themselves and the other Releasing Parties, any and all rights and benefits that they may have under, or that may be conferred upon them by, the provisions of Section 1542 of the California Civil Code, or any other law of any state or territory that is similar, comparable or equivalent to Section 1542, to the fullest extent they may lawfully waive such rights or benefits pertaining to the Released Claims. In connection with such waiver and relinquishment, Settlement Class

Members acknowledge, on behalf of themselves and the other Releasing Parties, that they are aware that they or their attorneys may hereafter discover claims or facts in addition to or different from those that they now know or believe exist with respect to the Released Claims, but that it is their intention to fully, finally, and forever settle and release all of the Released Claims, known or unknown, suspected or unsuspected, asserted or unasserted, or past, present or future, that they have against the Released Parties.  In furtherance of such intention, the release herein given by the Releasing Parties to the Released Parties shall be and remain in effect as a full and complete general release of the Released Claims notwithstanding the discovery or existence of any such additional or different claims or facts.  Each Settlement Class Member expressly acknowledges, on behalf of themselves and the other Releasing Parties, that he, she, or it has been advised by their attorneys of the contents and effect of Section 1542, and with knowledge, expressly waives whatever benefits they may have had pursuant to such section.  Settlement Class Members acknowledge, and the Releasing Parties shall be deemed to have acknowledged, that the foregoing waiver was expressly bargained for and a material element of this Settlement.

4.6.4.   Settlement Class Representatives and each Settlement Class Member who receives any benefit under the Settlement represent and warrant that they are the sole and exclusive owners of any and all Released Claims that they are releasing under this Settlement, and further acknowledge that they have not assigned, pledged, or in any manner whatsoever, sold, transferred, assigned or encumbered any right, title, interest or claim arising out of or in any way whatsoever pertaining to the Released Claims, and that they are not aware of anyone other than themselves claiming any interest, in whole or in part, in any benefits, proceeds or values to which they may be entitled.

4.6.5.   In addition, pursuant to the Final Order and Judgment, all Releasing Parties will be forever barred and enjoined from asserting against the Released Parties any and all Released Claims.

**4.7.   Release by the Philips Defendants**

4.7.1.   As of the Effective Date, the Philips Defendants fully, finally and forever release, remise, waive, surrender, forego, give up, abandon, cancel, acquit, and forever discharge and covenant not to sue Plaintiffs

---

**Section 4.   Releases**                                                          25

and any of their heirs, executors, administrators, agents, attorneys, and legal representatives, and any of their past or present parents, subsidiaries, divisions, affiliates, stockholders, officers, directors, and employees, for any claims relating to the institution, maintenance or prosecution of the Economic Loss Claims.

5. **Assignment to Philips RS of Economic Loss Claims Against Ozone Cleaning Companies**

5.1.    Settlement Class Members agree to assign, and upon the Effective Date, shall be deemed to have assigned, all of their Economic Loss Claims against Ozone Cleaning Companies to Philips RS, including any proceeds they would otherwise have been eligible for in any settlement with an Ozone Cleaning Company.

5.2.    Without in any way limiting or narrowing the scope and effectiveness of the foregoing assignment, Settlement Class Members also agree that by endorsing and cashing or depositing a check or other payment from this Settlement (including accepting payments by Zelle, ACH, or Virtual Mastercard), or otherwise participating in the benefits of this Settlement, they thereby individually assign their Economic Loss Claims against Ozone Cleaning Companies to Philips RS.

5.3.    The claims that have been asserted against SoClean, Inc. in the *First Consolidated Amended Class Action Complaint and Jury Trial Demand* (*In re: SoClean, Inc., Marketing, Sales Practices, and Products Liability Litigation*, MDL No. 3021 (Docket No. 141)) are not Economic Loss Claims and are not assigned to Philips RS.

6. **Allocation of Settlement Funds, Claims Process, and Claims Period**

6.1.    **Settlement Administration**.

6.1.1.    The Philips Defendants shall be responsible for paying all reasonable costs of Settlement Administration, including the reasonable fees and costs of the Settlement Administrator, on a monthly basis within 30 days of receipt of an itemized statement by the Settlement Administrator of authorized expenses undertaken pursuant to the administration of the Settlement.

6.1.2.    The Settlement Administrator shall be responsible for the notice administration process as set forth in Section 9 below, calculation of payments (and withholdings) to Eligible Settlement Class Members,

creation of a settlement website, distribution of funds to Eligible Settlement Class Members, withholding and payment of applicable taxes, and other duties as provided in any agreement entered into with the Settlement Administrator.  The Settlement Administrator shall sign and be bound by the Protective Order entered by the MDL Court, as amended (ECF Nos. 104, 498, 765).

6.1.3.    In conducting its duties and responsibilities, the Settlement Administrator may make necessary adjustments to claims and notice processes as circumstances may dictate, subject to the approval of Settlement Class Counsel and the Philips Defendants.

6.2.    **Claims Period**.

6.2.1.    The Claims Period will (a) begin 60 days after entry of the Preliminary Approval Order, and (b) end on the Claims Period Deadline.

6.2.2.    Nothing herein precludes Users from returning Recalled Devices to Philips RS at their own expense after the Claims Period Deadline, but in that event, they will not be eligible for a payment under this Settlement based on that return; provided, however, in the event that a Recall Program for the User's specific Recalled Device is not yet in effect prior to the Claims Period Deadline, or Philips RS does not provide the User with the ability under the Recall Program to return his or her Registered Recalled Device prior to the Claims Period Deadline (or, in the case of Trilogy 100/200 Users, the User has attempted but not been able to make arrangements with the DME to schedule a time to retrieve the device), that User is eligible for a Device Return Award under this Settlement based on a return/retrieval after the Claims Period Deadline and before the conclusion of the applicable Recall Program.

6.3.    **Accelerated Implementation Option**.

6.3.1.    Users who return their Registered or Enrolled Recalled Device pursuant to the Recall Programs or the Settlement by the Claims Period Deadline may elect before the Effective Date to receive a Device Payment Award and a Device Return Award on an accelerated basis, on the terms set forth in this Section (the Accelerated Implementation Option ("AIO")).

6.3.1.1.    In the event that a Recall Program for the User's specific Recalled Device is not yet in effect prior to the Claims Period

---

**Section 6.    Allocation of Settlement Funds, Claims Process, and Claims Period**                                                          27

Deadline or Philips RS does not provide the User with the ability under the Recall Program to return his or her Registered Recalled Device prior to the Claims Period Deadline (or, in the case of Trilogy 100/200 Users, the User has attempted but not been able to make arrangements with the DME to schedule a time to retrieve the device), the User can still participate in the AIO based on a return/retrieval of the Registered Recalled Device by the conclusion of the applicable Recall Program or the Effective Date, whichever is earlier.

6.3.2.    To participate in the AIO, Users must take each of the following steps:

6.3.2.1.    Users must execute a signed, sworn declaration identifying whether or not they used an Ozone Cleaning Product with their Recalled Device.

6.3.2.2.    If the User used an Ozone Cleaning Product with their Recalled Device, the User must also execute a signed, sworn individual assignment to Philips RS of their Economic Loss Claims against the Ozone Cleaning Company.

6.3.2.3.    Users must provide Defendants with an individual release of their Released Claims.  That individual release will remain valid even if the Settlement does not become Final.

6.3.2.4.    The form of the foregoing declaration, individual assignment, and individual release, all to be signed by the User or the User's Representative Claimant, under the penalty of perjury, is attached hereto as **Exhibit 6**.  To be valid and effective, these materials must be personally signed by the User or the User's Representative Claimant, but not by the User's counsel, if any, or anyone else.   User Representative Claimants must supply the Settlement Administrator with written proof that such person has legal authority to act in a representative capacity for the User.

6.3.3.    No AIO payments will be made until after MDL Court Final Approval. AIO payments will be made only in the event the MDL Court issues the Final Order and Judgment.

---

**Section 6.   Allocation of Settlement Funds, Claims Process, and Claims Period**                                                                28

6.3.3.1.   Users who return their Registered or Enrolled Recalled Device before MDL Court Final Approval will be paid (a) the Device Payment Award associated with the returned Recalled Device and (b) a Device Return Award, within 60 days after the later of (i) MDL Court Final Approval, and (ii) the completion of each of the steps identified in Section 6.3.2 above.

6.3.3.2.   Users who return their Registered or Enrolled Recalled Device after MDL Court Final Approval but by the Claims Period Deadline, unless a later deadline applies pursuant to Section 6.3.1.1 above, will be paid (a) the Device Payment Award associated with the returned Recalled Device and (b) a Device Return Award, within 60 days after the later of (i) receipt of the Recalled Device by Philips RS (or, for Trilogy 100/200, retrieval of the Recalled Device), and (ii) the completion of each of the steps identified in Section 6.3.2 above.

6.3.4.   Payers are not eligible to elect the AIO.

6.4.   **Device Payment Awards**.

6.4.1.   **Automatic Payment to Users Who Return a Registered or Enrolled Recalled Device Prior to the Claims Period Deadline**

6.4.1.1.   Users who return their Registered or Enrolled Recalled Device pursuant to the Recall Programs or the Settlement by the Claims Period Deadline will be paid the Device Payment Award associated with the returned Recalled Device within 60 days after the later of (i) the Effective Date and (ii) receipt of the Recalled Device by Philips RS (or, for Trilogy 100/200, retrieval of the Recalled Device), without the need to submit a claim form.

6.4.2.   **Claims Process for Users Who Registered Their Recalled Device Prior to the Execution Date But Have Not Already Returned Their Recalled Device and Have Decided Not to or Cannot Return Their Recalled Device**

---

6.4.2.1.   In the event a User registered his or her Recalled Device prior to the Execution Date but (i) has not returned the Registered Recalled Device and (ii) has decided not to, or cannot, return the Registered Recalled Device, the User will still be paid the Device Payment Award associated with their Registered Recalled Device if, prior to the Claims Period Deadline, the User completes a confirmation process, which may be done online, of the User's name, current mailing address, telephone number, email (if any), electronic payment information (if the User elects electronic payment), and also the Serial Number for the Registered Recalled Device and the Recall Registration Number, if the Settlement Class Member has that information. In the event the User is not able to complete the confirmation process online, a User Confirmation Form in the form attached hereto as **Exhibit 7** will be made available to the User by the Settlement Administrator at the User's request. The User will not be required to submit any documentation as part of this process. The Settlement Administrator will attempt to confirm the registration based on the information provided by the User, and will not reject a claim based on the User's failure to provide the Serial Number and/or the Recall Registration Number if the registration can be confirmed based on other information provided by the User. Payment of the Device Payment will be made within 60 days after the later of (i) the Effective Date, and (ii) completion of the confirmation process described in this Section, including confirmation by Philips RS of the User's registration.

6.4.3.   **Claims Process for All Other Users**.

6.4.3.1.   All other Users must submit a completed Device Payment Award Claim Form, in the form attached hereto as **Exhibit 4**, by the Claims Period Deadline, supported by sufficient documentation that the User purchased, leased, rented, or paid for one or more Recalled Devices, along with the Recalled Device's Serial Number.

6.4.3.2.   All valid claims will be paid after the Effective Date by the Settlement Administrator within 60 days after they are

---

**Section 6.   Allocation of Settlement Funds, Claims Process, and Claims Period**                                                          30

processed and approved by the Settlement Administrator. To be valid and effective, the Device Payment Award Claim Form must be complete and must be personally signed by the User or the User's Representative Claimant, but not by the User's counsel, if any, or anyone else. Representative Claimants must supply the Settlement Administrator with written proof that such person has legal authority to act in a representative capacity for the User.

### 6.4.4. **Rental Recalled Devices**.

6.4.4.1. With respect to rental Recalled Devices, the Device Payment Award for that device will be allocated by the Settlement Administrator (after the Claims Period Deadline) among Eligible Users on a *pro rata* basis, taking into consideration the number of Eligible Users for the rental Recalled Device and the associated Device Payment Award for that rental Recalled Device.

6.4.4.2. Notwithstanding anything in this Agreement to the contrary, in light of the allocation that must be made with respect to rental Recalled Devices, no Device Payment Award shall be made with respect to rental Recalled Devices until after the Claims Period Deadline or after the Effective Date, whichever is later.

### 6.5. **Device Return Awards**.

6.5.1. Users who return their Registered or Enrolled Recalled Device pursuant to the Recall Programs or the Settlement by the Claims Period Deadline will be paid their Device Return Award, without the need to take further steps, within 60 days after the later of (i) the Effective Date or (ii) receipt of the Recalled Device by Philips RS (or, for Trilogy 100/200, retrieval of the Recalled Device); provided, however, that in the event that a Recall Program for the User's specific Recalled Device is not yet in effect prior to the Claims Period Deadline, or Philips RS does not provide the User with the ability under the Recall Program to return his or her Registered Recalled Device to Philips RS prior to the Claims Period Deadline (or, in the case of Trilogy 100/200 Users, the User has attempted but not been able to make arrangements with the DME to schedule a time to retrieve the device), that User is eligible for a Device

Return Award under this Settlement based on a return/retrieval after the Claims Period Deadline and before the conclusion of the applicable Recall Program.

6.5.2.    Receipt of a Device Return Award may impact the amount of a User's Device Replacement Award for the associated Recalled Device, as set forth in Sections 3.4.6 and 3.4.6.1 above.

6.6.    **Device Replacement Awards**.

6.6.1.    Users seeking a Device Replacement Award must submit a completed Device Replacement Award Claim Form, in the form attached hereto as **Exhibit 5**, before the Claims Period Deadline, supported by the required documentation, as set forth in Section 3.4.2.1 above.

6.6.2.    No Device Replacement Awards will be paid until after the Claims Period Deadline.  After the Claims Period Deadline, the Settlement Administrator will calculate the total valid Replacement Device Claim Amounts submitted in connection with claims for Device Replacement Awards during the Claims Period (the "Total Replacement Device Claim Amounts").

6.6.2.1.    Within 14 days of the Settlement Administrator's calculation of the Total Replacement Device Claim Amounts, the Philips Defendants shall pay, or have paid on their behalf, up to $10,000,000 (the "Device Replacement Amount") into the User Settlement Fund to pay the Total Replacement Device Claim Amounts, as provided in Section 2.8.1 above.

6.6.2.2.    In the event the Total Replacement Device Claim Amounts are less than $10,000,000, the Philips Defendants' payment obligation is limited to the amount of the Total Replacement Device Claim Amounts.

6.6.2.3.    In the event the Total Replacement Device Claim Amounts exceed $10,000,000, the balance, if any, of any other funds remaining in the User Settlement Fund after the Device Payment Awards and Device Return Awards have been made to all Eligible Users (the "Balance of Funds in User Settlement Fund") may be used to make Device Replacement Awards.

---

**Section 6.   Allocation of Settlement Funds, Claims Process,
and Claims Period**                                                    32

6.6.2.4.    In the event the Device Replacement Amount plus the Balance of Funds in User Settlement Fund are insufficient to pay at least 50% of the Total Replacement Device Claim Amounts, the Philips Defendants shall pay, or cause to be paid, additional monies sufficient to pay 50% of the Total Replacement Device Claim Amounts, but in no event shall the Philips Defendants' additional such payment obligation exceed $5,000,000.

6.6.3.    The resulting net Device Replacement Awards, after taking into consideration the Total Replacement Device Claim Amounts, the Device Replacement Amount, the Balance of Funds in User Settlement Fund in the event the Total Replacement Device Claim Amounts exceed $10,000,000, and if necessary, any additional payment by, or on behalf of, the Philips Defendants (up to $5,000,000), will be paid to Eligible Users within 60 days after the Settlement Administrator calculates the Total Replacement Device Claim Amounts.

6.7.    **Payer Awards**.

6.7.1.    Payers must submit a completed Payer Declaration and Claim Form attached hereto as **Exhibit 8** by the Claims Period Deadline, supported by (a) sufficient information and documentation as to the number of insured lives in the United States covered by the Payer in the calendar years 2021 and 2022 ("Payer Covered Lives"), (b) the dollar amount of direct premiums written by the Payer in the United States in the calendar years 2021 and 2022, and (c) a preferred payment option with instructions for payment.

6.7.2.    All Payer Awards will be paid by the Settlement Administrator within 180 days after the Claims Period Deadline or the Effective Date, whichever is later, following processing and approval by the Settlement Administrator and an opportunity for appeals of Payer Claims Determinations as set forth in Section 6.8 below.  To be valid and effective, the Payer Declaration and Claim Form must be complete and must be signed by a person with legal authority to do so on behalf of the Payer, but not by the Payer's counsel, if any, or anyone else.  Payers must supply the Settlement Administrator with written proof that the person signing their Declaration and Claim Form has legal authority to act on behalf of the Payer.

Section 6.   **Allocation of Settlement Funds, Claims Process,**
          **and Claims Period**                                          33

6.7.3.    Payer Eligibility, Market Share Percentage, and Preliminary Payer Award Determinations.  The Settlement Administrator shall review the Payer Declarations and Claim Forms and supporting information and documentation following the Claims Period Deadline and, within 30 days of the Claims Period Deadline, make the following determinations for each submitting entity: (a) an Eligibility Determination, (b) if eligible, a Market Share Percentage Determination as set forth in Section 6.7.5 below for all Eligible Payers, and (c) a Preliminary Payer Award Determination as set forth in Section 6.7.6 below for all Eligible Payers.

6.7.4.    For Eligibility Determinations, the Settlement Administrator shall consider whether the submitting entity meets the definition of a Payer under the Settlement and whether the Payer Declaration and Claim Form is complete and timely.

6.7.5.    For Market Share Percentage Determinations, the Settlement Administrator shall consider insurance industry data available through, including but not limited to, the National Association of Insurance Commissioners and the AIS Directory of Health Plans, as well as the information provided in the Payer Declarations and Claim Forms, and determine for each Eligible Payer the Eligible Payer's appropriate proportion of the universe of its insurance market segment in the United States in calendar years 2021 and 2022.

6.7.6.    For Preliminary Payer Award Determinations, the Settlement Administrator shall conduct the following steps:

6.7.6.1.    First, calculate the Aggregate Market Share Percentage by totaling the Market Share Percentages of all Eligible Payers. By way of example only, assuming Payer A has a Market Share Percentage of 2%, Payer B has a Market Share Percentage of 10%, and Payer C has a Market Share Percentage of 8%, the Aggregate Market Share Percentage is 20% (2% + 10% + 8% = 20%).

6.7.6.2.    Second, the Settlement Administrator shall divide 100% (the universe of Payer Covered Lives) by the Aggregate Market Share Percentage to determine the multiplying factor to be used to calculate the Payer Award for each Eligible Payer. By way of the above example, assuming the Aggregate

Market Share Percentage is 20%, the multiplying factor is 5 (100%/20% = 5).

6.7.6.3.   Third, the Settlement Administrator shall multiply the multiplying factor to each Eligible Payer's Market Share Percentage to determine the percentage of the Payer Amount to which each Eligible Payer is entitled ("Adjusted Payer Share Percentage").  By way of the above example, the Adjusted Payer Share Percentage for Payer A is 10% (2% Market Share Percentage * 5 = 10%), the Adjusted Payer Share Percentage for Payer B is 50% (10% Market Share Percentage * 5 = 50%), and the Adjusted Payer Share Percentage for Payer C is 40% (8% Market Share Percentage * 5 = 40%).

6.7.6.4.   Fourth, the Settlement Administrator will determine the Preliminary Payer Award for each Eligible Payer by multiplying their Adjusted Payer Share Percentage by the Payer Amount.  By way of the above example, assuming the Payer Amount is $500, the Preliminary Payer Award for Payer A will be $50 (10% Adjusted Payer Share Percentage * $500 = $50), the Preliminary Payer Award for Payer B will be $250 (50% Adjusted Payer Share Percentage * $500 = $250), and the Preliminary Payer Award for Payer C will be $200 (40% Adjusted Payer Share Percentage * $500 = $200).

6.7.7.   Upon completion of the steps required to make Payer Eligibility, Market Share Percentage, and Preliminary Payer Award Determinations, the Settlement Administrator shall issue those determinations, setting forth the calculations made by the Settlement Administrator, to each submitting entity and inform Eligible Payers that their Preliminary Payer Award Determination may be adjusted following the conclusion of any and all appeals to the Claims Appeals Special Master.

6.7.8.   <u>Final Payer Award Determinations</u>.   Within 30 days following the conclusion of any and all appeals to the Claims Appeals Special Master from Claims Determinations as provided for and set forth in Section 6.8 below, the Settlement Administrator shall make Final Payer Award Determinations by following the steps set forth in Section 6.7.6 above, taking into consideration the results of the appeals process from Section

Section 6.   Allocation of Settlement Funds, Claims Process,
            and Claims Period                                              35

6.8 below.   The Settlement Administrator shall distribute the Payer Awards to Eligible Payers based on the Final Payer Award Determinations within 30 days after making those determinations.

6.8.    **Appeals from Determinations of the Settlement Administrator**.

6.8.1.    Any Settlement Class Member whose claim is denied (in whole or in part) by the Settlement Administrator for any reason shall be provided with a written notice explaining the deficiency and a period of 30 days to resubmit the claim to attempt to cure the deficiency.

6.8.2.    Any Settlement Class Member or Defendant that believes that a Settlement Class Member's claim for a payment under the Settlement has not been processed in accordance with this Agreement or any applicable orders of the MDL Court shall have 30 days from the date of the Settlement Administrator's issuance of a determination on that claim ("Claims Determination") to present a written appeal, no longer than three-pages, double-spaced, to the Claims Appeals Special Master.

6.8.3.    In support of any appeal from a Claims Determination, the Settlement Class Member shall be limited to presenting solely documents, evidence, or information submitted by the Settlement Class Member in connection with that Settlement Class Member's Claim for a payment under the Settlement or under the Section 6.8.1 cure provision above.  Absent a request from the Claims Appeals Special Master for additional information or documentation, Settlement Class Members may not submit any new or additional evidence for purposes of appealing a Claims Determination.

6.8.4.    Settlement Class Members, by their decision not to opt out of the Settlement Class, knowingly and intentionally waive any right of appeal from any decision of the Claims Appeals Special Master regarding appeals from Claims Determinations by the Settlement Administrator.

6.8.5.    The decision of the Claims Appeals Special Master with respect to appeals from Claims Determinations shall be final and binding, and there shall be no appeal to any court, including the MDL Court or the U.S. Court of Appeals for the Third Circuit.

6.9.    **Uncashed Checks or Other Payments**.  In the event a Settlement Class Member does not cash his, her or its check or other payment after a period of 180 days from

---

**Section 6.   Allocation of Settlement Funds, Claims Process,
             and Claims Period**                                                    36

issuance, the check or other payment will be declared "void."  The voidance shall not impact in any way the Release provided by that Settlement Class Member to the Released Parties.  The funds associated with that check or other payment may be used to make other payments under the Settlement, including to other Settlement Class Members, and the Settlement Administrator will take sufficient steps to cancel the check or other payment; provided, however, that the Settlement Class Member shall have 30 days to request that the check or other payment be reissued, with no further requests permitted except for good cause shown within one year of the original check's or other payment's issuance.  In the event of a dispute between the Parties on whether good cause has been shown, the matter will be decided by the Claims Appeals Special Master, whose decision on the matter shall be final and unappealable by any Party or the Class Member.

6.10.   **Remaining Funds**.

6.10.1.   Subject to Section 6.10.2 below, in the event any funds remain in the User Settlement Fund after the Claims Period Deadline and after all Settlement payments have been made, including Device Replacement Awards ("Remaining Funds"), the Remaining Funds will be distributed by the Settlement Administrator *pro rata* to all Eligible Users based on the amount of each Eligible User's payment(s) under the Settlement.  To the extent any funds still remain after the *pro rata* distribution, or in the event it would be economically inefficient to distribute Remaining Funds *pro rata* to Eligible Users, the Parties agree to consult with the Settlement Administrator in an effort to reach agreement on a fair and equitable distribution of those funds, subject to MDL Court approval, but in no event will the Parties seek approval from the MDL Court for *cy pres* distribution of Remaining Funds of more than $20,000 to persons or entities other than Eligible Users.

6.10.2.   In the event the Philips Defendants paid any Additional Amounts necessary to make Device Payment and/or Device Return Awards beyond the Initial Device Payment Amount and the Initial Device Return Amount, and checks or other payments to Users qualifying for Awards remain uncashed or uncollected after 180 days from issuance, pursuant to Section 6.9 above, the checks or other payments will be declared "void," and provided those Users do not timely request that the checks or other payments be reissued, the monies will be returned to the Philips Defendants within 14 days after the last day on which any such request for reissuance can be made.  The total amount of money that

may be returned to the Philips Defendants under this provision is limited to the Additional Amounts paid by them.

7.     **Settlement Class Certification**

7.1.    The Parties hereby stipulate, for purposes of this Settlement only, that the requirements of Rule 23(a) and 23(b)(3) of the Federal Rules of Civil Procedure are satisfied, and, subject to MDL Court approval, the Settlement Class set forth in Section 1.51 shall be certified for settlement purposes only (with the understanding that, by stipulating to the proposed Settlement Class, the Philips Defendants do not agree that Rule 23 requirements are met for purposes of a litigation class and reserve all rights to oppose class certification in the event the Settlement is not approved).

8.     **Preliminary Approval of Settlement Pursuant to Federal Rule of Civil Procedure 23(e) and Related Motions**

8.1.    This Settlement shall be subject to both preliminary and final approval of the MDL Court.

8.2.    Within 10 days of the Execution Date, Settlement Class Counsel will move the MDL Court for the Preliminary Approval Order, in substantially the form annexed hereto as **Exhibit 1**, seeking, among other things, to:

8.2.1.    conditionally certify the Settlement Class;

8.2.2.    preliminarily approve the Settlement;

8.2.3.    determine that the Settlement appears fair, reasonable, and adequate within the meaning of Rule 23 of the Federal Rules of Civil Procedure and thus sufficient to promulgate notice of the Settlement to the Settlement Class;

8.2.4.    order that notice be provided to the Settlement Class pursuant to Section 9;

8.2.5.    give Settlement Class Members the right to object to or be excluded from the Settlement, as set forth in Sections 11 and 12;

8.2.6.    inform Settlement Class Members that they will be bound by the Final Order and Judgment unless such Settlement Class Member validly requests exclusion;

8.2.7.   stay and enjoin the continued pursuit of all Economic Loss Claims of Settlement Class Members against Defendants and the other Released Parties, whether in the MDL Court or in any other court or tribunal, until such time as the MDL Court has determined whether to enter the Final Order and Judgment;

8.2.8.   schedule the Final Fairness Hearing not earlier than 6 months following entry of the Preliminary Approval Order;

8.2.9.   appoint Angeion Group as the Settlement Administrator;

8.2.10.   appoint the Honorable Thomas J. Rueter (Ret.) as the Claims Appeals Special Master;

8.2.11.   find that the Settlement Funds are to be a "Qualified Settlement Fund" as defined in Section 468B-1(c) of the Treasury Regulations; and

8.2.12.   provide that any objections by any Settlement Class Member to the Settlement shall be heard and any papers submitted in support of said objections shall be considered by the MDL Court at the Final Fairness Hearing only if, on or before the conclusion of the Opt-Out/Objection Period specified in the Settlement Notice and the Preliminary Approval Order, such Settlement Class Member follows the required procedures.

8.3.   Settlement Class Counsel shall request that the MDL Court hold a hearing on the motion for the Preliminary Approval Order on a date to be determined by the MDL Court.

8.4.   The Philips Defendants shall cooperate to the extent reasonably necessary in connection with Settlement Class Counsel's motions for Preliminary and MDL Court Final Approval of the Settlement and related documents necessary to effectuate and implement the terms and conditions of this Agreement.

8.5.   The Philips Defendants shall have the right to withdraw from the Settlement if the MDL Court does not issue the Preliminary Approval Order in substantially the form attached hereto as **Exhibit 1**.

## 9.   Notice to Settlement Class Members

9.1.   **Type of Notice Required**

9.1.1.   The Class Notice Period shall commence upon the entry of the Preliminary Approval Order.

9.1.2.    Within 60 days after entry of the Preliminary Approval Order, the Settlement Administrator will cause Class Settlement Notice ("Notice"), in the forms attached hereto as **Exhibit 3**, to be disseminated in the specific forms and manner set forth in the Notice Plan attached hereto as **Exhibit 2**, by:

9.1.2.1.    First class mail, postage prepaid, and email (if an email address is available) to the last known address of all known Users based on information in the Philips RS registration database used for the Recall Programs, User information collected from DMEs and other sources as part of the Recall, User information obtained from DMEs in discovery, and User data from the Census Registry Program and Plaintiff Fact Sheets filed in support of Personal Injury Complaints pursuant to Pretrial Order #26, as amended in Pretrial Order #26(a) (ECF Nos. 766, 871);

9.1.2.2.    First-class mail, postage prepaid, to those known hospitals and sleep labs in the United States to whom Philips RS previously sold, rented, supplied, or otherwise provided Recalled Devices;

9.1.2.3.    First-class mail, postage prepaid (and via email, where available) to known Payers identified in the Settlement Administrator's proprietary database of insurers, self-funded employers, and other third-party payers;

9.1.2.4.    First-class mail, postage prepaid, to those known DMEs in the United States that sold, rented, supplied, or otherwise provided Recalled Devices to Users, requesting that the DMEs notify their Users of the Settlement;

9.1.2.5.    Posting a copy of the Notice on the Settlement website maintained by the Settlement Administrator;

9.1.2.6.    Electronic upload to all Users who elected to receive messages through DreamMapper, which will refer them to the Settlement website only;

9.1.2.7.    Providing a copy of the Notice and requesting that it be posted on the MDL Court's website for the MDL, https://www.pawd.uscourts.gov/mdl-3014-re-philips-

recalled-cpap-bi-level-pap-and-mechanical-ventilator-products-litigation;

9.1.2.8.     Publishing the Notice in media pursuant to the media notice program developed by the Settlement Administrator, as set forth in the Notice Plan attached hereto as **Exhibit 2**; and

9.1.2.9.     As the MDL Court may otherwise direct, in accordance with the requirements of Federal Rule of Civil Procedure 23(c)(2).

9.2.     **Payment of Costs of Notice**:   The Philips Defendants shall be responsible for paying the reasonable costs of Class Notice agreed to by the Parties or required by the MDL Court.   Any disputes regarding the reasonable cost of Class Notice shall be presented for resolution to the Settlement Mediator.

9.3.     The Philips Defendants shall provide notice of the Settlement to the appropriate state and federal officials pursuant to 28 U.S.C. § 1715(b).

## 10.     Right to Opt Out of or Object to the Settlement; Opt-Out/Objection Period

10.1.     Settlement Class Members have the right to opt out of or object to the Settlement, but not both.   Opting out from or objecting to the Settlement are mutually exclusive options.   Any Settlement Class Member who elects to opt out pursuant to Section 11 below may not also object to the Settlement.   Any Settlement Class Member who elects to object pursuant to Section 12 below may not also opt out of the Settlement.   In the event a Settlement Class Member submits both an objection and an opt out request, the Settlement Administrator shall notify the Settlement Class Member that they can only elect one of those options, and must inform the Settlement Administrator of their decision. If the Settlement Class Member does not thereafter take corrective action within 10 days, the submission shall be invalid.

10.2.     Settlement Class Members will have 120 days from entry of the Preliminary Approval Order ("Opt-Out/Objection Period") to opt out of or object to the Settlement in accordance with Sections 11 and 12 below.   The last day of the Opt-Out/Objection Period (the "Opt-Out/Objection Deadline") will be included in the Notice and posted on the Settlement website and the MDL Court's website for the MDL.

11. **Opt-Outs**

11.1.   Settlement Class Members who wish to opt out of the Settlement must mail a written request to opt out stating that they seek exclusion from the Settlement. Settlement Class Members shall include their contact information, including name, address, telephone number, and email, if any, as well as the same information regarding their counsel (if applicable).  Incomplete opt-outs are invalid.

    11.1.1.   In addition, Users must include in their opt-out request the following information regarding their Recalled Device(s):  Serial Number(s), if known; the type of Recalled Device; the approximate date(s) of acquisition; and the type of acquisition (*e.g.*, purchase, rental, etc.).

    11.1.2.   In addition, Payers must include in their opt-out request the following information:  full name of Payer plan and whether the Payer reimbursed (in whole or part) Users' payments to purchase, lease, rent, or otherwise pay for Recalled Devices; number of lives insured by the Payer in each of the calendar years 2008 to 2022; and number of direct premiums written in each of the calendar years 2008 to 2022.

11.2.   An original request to opt out signed by the Settlement Class Member must be mailed to the Settlement Administrator at:

Respironics CPAP Settlement
Attn: Exclusions
P.O. Box 58220
Philadelphia, PA 19102

The opt-out request must be postmarked no later than the Opt-Out/Objection Deadline.  Untimely opt-outs are invalid.

11.3   To be valid and effective, the request to opt out must be personally signed by the Settlement Class Member or the Settlement Class Member's Representative Claimant, but not by the Settlement Class Member's counsel, if any, or anyone else. Representative Claimants must supply the Settlement Administrator with written proof that such person has legal authority to act in a representative capacity for the Settlement Class Member.  A pleading or any other request to opt out made or signed only by counsel for the Settlement Class Member shall not be sufficient. Mass opt-outs also are not permitted, and each Settlement Class Member may only opt out on behalf of himself, herself, or itself.  Electronic signatures (other than DocuSign) are not valid and effective, whether for Settlement Class Members or Representative Claimants.

---

11.4.    The Settlement Administrator shall provide a copy by email of all requests to opt out to Counsel within 48 hours of receipt.

11.5.    Settlement Class Counsel shall file all validated requests to opt out with the MDL Court as an attachment to the proposed Final Order and Judgment in support of their motion for MDL Court Final Approval of the Settlement.

11.6.    If a Settlement Class Member submits both a Claim Form and a request to opt out prior to MDL Final Court Approval, the Settlement Class Member will be deemed to have waived and withdrawn the request to opt out and shall be treated as a Settlement Class Member for all purposes, irrespective of the sequencing of the submission of the Claim Form and the request to opt out.

11.7.    Valid requests to opt out from the Settlement will become effective only upon MDL Court Final Approval.

11.8.    Settlement Class Members may revoke their opt-out request in writing at any time prior to MDL Court Final Approval.

11.9.    Settlement Class Members who opt out of the Settlement Class and do not revoke their opt out request in writing prior to MDL Court Final Approval will be deemed to no longer be members of the Settlement Class.

11.10.    Settlement Class Members who opt out of the Settlement Class may not receive benefits under the Settlement and may not object to any aspect of the Settlement or to an award of Attorneys' Fees and Expenses or payment of Service Awards to the Settlement Class Representatives.

11.11.    The Parties agree and acknowledge that because any opt-out may be detrimental to the Settlement, the Philips Defendants will have the right, exercised in good faith, to terminate the Settlement on account of the existence of any opt-out by written notice to the MDL Court and Settlement Class Counsel 14 days after the conclusion of the Opt-Out/Objection Period.

11.12.    Upon the Effective Date, all Settlement Class Members who have not timely and validly opted out will be bound by the Settlement, and the relief provided by the Settlement will be their sole and exclusive remedy for their Released Claims against the Released Parties.

**12.** __Objections__

12.1. Any Settlement Class Member who objects to the Settlement (in whole or in part), any terms hereof, or the approval process must make that objection by the following procedure:

12.1.1. The objection must be in writing.

12.1.2. The objection must state whether it applies only to the objector, to a specific subset of the Settlement Class, or to the entire Settlement Class, and also state with specificity the grounds for the objection. The objection must also include a statement whether the Settlement Class Member intends to appear at the Final Fairness Hearing either with or without the objector's counsel (who shall be identified). The objection must identify any witnesses intended to be called, the subject area of the witnesses' testimony, and identify and attach a copy of all documents to be used or offered into evidence at the Final Fairness Hearing.

12.1.3. The objection must be signed by the Settlement Class Member and his, her or its counsel, if any. An objection signed by counsel alone shall be invalid.

12.1.4. The objection must contain the caption of the MDL and the caption of any other litigation, arbitration or proceeding involving the Recalled Devices in which the Settlement Class Member is a named party, and include the name, mailing address, email address, if any (an email address is not required), and telephone number of the objecting Settlement Class Member and his, her or its counsel (if any).

12.1.5. The objection must provide information regarding the Recalled Device(s) to which the Settlement Class Member's Economic Loss Claims relate. For Users, their Objection must include the Serial Number(s), if known, and the type of Recalled Device(s). For Payers, their Objection must include whether the Payer reimbursed (in whole or part) Users' payments to purchase, lease, rent, or otherwise pay for Recalled Devices; the number of lives insured by the Payer in each of the calendar years 2008 to 2022; and the number of direct premiums written in each of the calendar years 2008 to 2022.

12.1.6. The objection must state if the objector or the objector's counsel have objected to a class action settlement during the past 5 years, and if so, identify all cases in which the objector or the objector's counsel have

filed an objection by caption, court and case number, and for each case, the disposition of the objection, including whether any payments were made to the objector or the objector's counsel, and if so, the incremental benefits, if any, that were achieved for the class in exchange for such payments.

12.1.7.    The objection must be mailed to the Settlement Administrator at:

Respironics CPAP Settlement
Attn: Objections
P.O. Box 58220
Philadelphia, PA 19102

The objection must be postmarked no later than the Opt-Out/Objection Deadline.  Untimely objections are invalid.

12.1.8.    The Settlement Administrator shall provide a copy of all objections to Counsel by email within 48 hours of receipt.

12.1.9.    Settlement Class Counsel shall file the objections, if any, received by the Settlement Administrator with the MDL Court no later than 21 days before the Final Fairness Hearing.

12.2.    Any objection not submitted in full compliance with these terms and procedures are invalid and deemed waived.

12.3.    Settlement Class Members who fail to file and serve timely written objections in accordance with Section 12.1 above shall be deemed to have waived any objections, shall not be heard at the Final Fairness Hearing, and shall be foreclosed from making any objection (whether by appeal or otherwise) to the Settlement.

12.4.    Settlement Class Counsel and/or Counsel for the Philips Defendants shall file any response(s) to the objections with the MDL Court no later than 7 days before the Final Fairness Hearing.

## 13.    Final Fairness Hearing

13.1.    After the close of the Class Notice Period and the Opt-Out/Objection Period, but no later than 21 days before the Final Fairness Hearing, Settlement Class Representatives and Settlement Class Counsel shall move for MDL Court Final Approval of the Settlement and to enter the Final Order and Judgment, substantially in the form of **Exhibit 9** hereto, which shall do each of the following, among other things:

13.1.1.   Approve finally this Agreement and its terms as being a fair, reasonable, and adequate settlement as to the Settlement Class Members within the meaning of Rule 23 of the Federal Rules of Civil Procedure and directing its consummation according to its terms and conditions;

13.1.2.   Determine that the Class Notice constituted the best notice that was practicable under the circumstances, and constituted due and sufficient notice for all other purposes for all persons entitled to receive notice;

13.1.3.   Certify the Settlement Class and confirm the appointment of the Settlement Class Representatives and Settlement Class Counsel;

13.1.4.   Direct that the Economic Loss Complaint be dismissed with prejudice as to all Defendants, without costs;

13.1.5.   Reserve to the MDL Court exclusive jurisdiction over the Settlement, this Agreement, including the interpretation, implementation, administration, consummation, and enforcement of this Settlement and this Agreement, and the "qualified settlement funds," as defined under §1.468B-1 of the Treasury Regulations promulgated under Sections 461(h) and 468B of the Internal Revenue Code of 1986, as amended, created under the Agreement;

13.1.6.   Determine under Federal Rule of Civil Procedure 54(b) that there is no just reason for delay, and direct that the Final Order and Judgment be entered;

13.1.7.   Enjoin and finally and forever bar any and all Settlement Class Members from maintaining, continuing, pursuing and/or prosecuting the Released Claims in any action, arbitration or other proceeding, whether pending or filed in the future, against Defendants or the Released Parties, as well as entitling the Released Party or Parties to recover any and all reasonable costs and expenses from that Settlement Class Member arising from that Settlement Class Member's violation of the injunction; and

13.1.8.   Enjoin and forever bar the Philips Defendants and any successors to the Philips Defendants' rights or interests under the Settlement from challenging or opposing a Settlement Class Member's Medical Monitoring and Personal Injury Claims or ability to recover for those claims on the basis of this Settlement, any payments under this Settlement, or the Releases provided herein, other than to prevent

---

**Section 13. Final Fairness Hearing**                                   46

double recovery for economic losses related to the Recalled Devices or to prevent against the increase of an exemplary or punitive damages award on account of economic losses.

13.2. The Philips Defendants shall have the right to withdraw from the Settlement if the MDL Court does not enter a Final Order and Judgment substantially in the form of **Exhibit 9** hereto.

13.3. At the Final Fairness Hearing, the MDL Court shall also be requested to, *inter alia*, (i) consider any timely and properly filed objections to the Settlement, (ii) certify the Settlement Class pursuant to Fed. R. Civ. P. 23(a) and (b)(3), (iii) determine whether the Settlement is fair, reasonable, and adequate, was entered into in good faith and negotiated by the Parties at arm's length, and should be approved, (iv) provide findings in connection therewith, (v) enter the Final Order and Judgment, (vi) consider Service Awards to the Settlement Class Representatives, as described in Section 18.2 below, and (vii) consider Settlement Class Counsel's motion for Attorneys' Fees and Expenses, as described in Section 18.1 below.

## 14. Termination of this Settlement

14.1. This Settlement shall be terminated and cancelled upon any of the following events:

14.1.1. The MDL Court declines to enter the Preliminary Approval Order substantially in the form of **Exhibit 1** hereto;

14.1.2. The MDL Court declines to enter the Final Order and Judgment substantially in the form of **Exhibit 9** hereto; or

14.1.3. The Final Order and Judgment is reversed by a higher court.

14.2. The Philips Defendants may, at their sole and exclusive discretion and option, withdraw from and cancel their obligations under this Settlement, upon any of the following events:

14.2.1. The Notice does not comply with the Preliminary Approval Order;

14.2.2. Settlement Class Counsel, on behalf of the Settlement Class, materially breaches the Settlement and such breach materially frustrates the purposes of this Settlement;

14.2.3. The Economic Loss Complaint is not dismissed with prejudice as to all Defendants;

14.2.4.    The Released Claims of the Releasing Parties against Defendants and the other Released Parties are not released on the terms set forth herein;

14.2.5.    The MDL Court does not enter the preliminary injunction described in Section 8.2.7 above;

14.2.6.    The MDL Court does not enter the permanent injunctions described in Sections 13.1.7 and 13.1.8 above; or

14.2.7.    This Settlement is changed in any material respect, except by written agreement of the Parties.

14.3.    In the event of a breach of the Agreement by the Philips Defendants, the Settlement Class Representatives may, at their sole discretion, seek to enforce the Settlement in the MDL Court (or, if the MDL Court does not have jurisdiction, any other court with jurisdiction to hear the matter).

14.4.    In the event of a breach of the Agreement by the Settlement Class Representatives, the Philips Defendants may, at their sole discretion, seek to enforce the Settlement in the MDL Court (or, if the MDL Court does not have jurisdiction, any other court with jurisdiction to hear the matter).

## 15.    **MDL Court Retains Jurisdiction to Implement, Interpret and Enforce Agreement and Settlement**

15.1.    The MDL Court shall retain continuing and exclusive jurisdiction over the Philips Defendants, the Settlement Class, the Settlement Class Members, this Agreement, and the Settlement for the purposes of administering, supervising, implementing, interpreting, construing, consummating, and enforcing this Agreement and the Settlement, and the MDL Court shall also retain continuing and exclusive jurisdiction over the "qualified settlement funds," as defined under §1.468B-1 of the Treasury Regulations promulgated under Sections 461(h) and 468B of the Internal Revenue Code of 1986, as amended, created under the Agreement, and the distribution of same to Eligible Settlement Class Members.

## 16.    **Choice of Law**

16.1.    This Agreement shall be governed by and construed in accordance with the laws of the Commonwealth of Pennsylvania, including all matters of construction, validity,

performance, and enforcement, and without giving effect to the principles of conflict of laws.

## 17.   <u>Recall Programs</u>

17.1.   Settlement Class Counsel and the Philips Defendants shall cooperate with each other, and with governmental regulatory officials (where and if appropriate), with respect to implementing the relief provided for in this Settlement in coordination with any Recall Programs and to ensure that the Recall Programs are carried out to completion in an efficient manner; provided, however, that Settlement Class Counsel shall not have standing to participate directly or indirectly in any Recall Programs, except to the extent necessary to enforce the terms of this Settlement and the rights of Settlement Class Members under this Settlement.

## 18.   <u>Attorneys' Fees and Expenses, and Service Awards</u>

18.1.   The Parties, with the assistance of the Settlement Mediator, will attempt to reach agreement on the amount of attorneys' fees and costs that Settlement Class Counsel will seek from the Court and which the Philips Defendants will not oppose.  If the Parties reach agreement, Settlement Class Counsel will submit the negotiated amount to the Court for approval, either as part of, or subsequent to, the Final Fairness Hearing, and the Philips Defendants will not oppose the application of Settlement Class Counsel.  If the Parties do not reach agreement, the Parties will litigate the matter, and each Party will present its respective position to the Court for determination.  In that event, the determination of the fee and cost issues will be subject to the Parties' agreement that:  (1) the attorneys' fees and costs will be paid by, or on behalf of, the Philips Defendants in addition to the compensation provided to Settlement Class Members under this Settlement; (2) any award of attorneys' fees or costs shall not diminish the recovery of Settlement Class Members under the Settlement; (3) while fees will be based on the percentage of recovery methodology, with a lodestar cross-check, the Parties reserve all arguments as to how that recovery should be calculated, what the percentage should be, and the extent to which Settlement Class Counsel's prosecution of the Economic Loss Claims caused some or all of the recovery; and (4) the Parties shall have the right to appeal the Court's determination as to the amount of attorneys' fees and costs.  Settlement Class Counsel represent they will not seek an award of attorneys' fees in excess of $175,000,000, which Settlement Class Counsel contend represents a fair percentage of the value of the Settlement in terms of cash recoveries and other benefits to the Settlement Class.  The Philips Defendants fully reserve the right to challenge that amount, any percentage upon which it is based, and the items comprising the claimed value of the Settlement.  Settlement Class Counsel's motion

for attorneys' fees and costs will be due 30 days before the Opt-Out/Objection Deadline, and the deadline for the motion will be provided in the Notice. Settlement Class Members shall have the opportunity to submit objections.

18.2.   **Service Awards**:  Settlement Class Counsel will recommend to the MDL Court that service awards be made, subject to MDL Court approval, to the Settlement Class Representatives in the amount of $5,000 each in recognition for their service as a Settlement Class Representative, and the Philips Defendants agree not to oppose such request.  Settlement Class Representatives certify and agree that they had no expectation of a service award when agreeing to this Settlement, and that the decision of whether or not to award a service award will be left to the discretion of the Court.  With that understanding, the Philips Defendants agree to pay Service Awards, if any, within 30 days of the date of a final order awarding Service Awards or within 30 days of the Effective Date, whichever is later.  These payments are in addition to the compensation provided to Settlement Class Members under this Settlement and shall not diminish the recovery of Settlement Class Members under the Settlement.  The Parties agree that the Philips Defendants shall not pay, or be obligated to pay or cause to be paid, any amounts in excess of $5,000 for each Settlement Class Representative for Service Awards.  Settlement Class Representatives shall provide W-9 Forms prior to such payment.

18.3.   The Parties agree that the amount of any award of attorneys' fees and expenses and the amount of any service awards are intended to be considered by the Court separately from the Court's consideration of the fairness, reasonableness, and adequacy of the Settlement.  No order of the Court, or modification, reversal, or appeal of any order of the Court, concerning the amount(s) of attorneys' fees and expenses or service awards shall affect whether the Final Order and Judgment is entered, or constitute grounds for termination of the Settlement.

**19.   Dispute Resolution**.

19.1.   Any dispute between the Parties relating to the interpretation or application of any provision of the Settlement will be discussed between Settlement Class Counsel and Counsel for the Philips Defendants in the first instance in an effort to resolve the matter.  If they reach an impasse, the matter shall be presented to and discussed with the Claims Appeals Special Master.  In the event an impasse remains after presenting the dispute to the Claims Appeals Special Master, the dispute will be resolved by appeal to the MDL Court (with the potential for further appeal to the U.S. Court of Appeals for the Third Circuit).

19.2.   This appeal process applies only to disputes between the Parties relating to the interpretation or application of a provision of the Settlement and does not apply to

decisions by the Claims Appeals Special Master concerning disputes by Settlement Class Members regarding their claims or Claims Determinations as set forth in Section 6.8 above.

20. **Miscellaneous**

20.1.   The headings in this Agreement are included for convenience only and shall not be deemed to constitute part of this Agreement or to affect its construction.

20.2.   If the last day of any period mentioned in this Settlement falls on a weekend or legal holiday, the period shall include the next business day.   To the extent any timeframe set out in this Settlement Agreement is ambiguous, said ambiguity shall be resolved by applying the convention contained in Rule 6 of the Federal Rules of Civil Procedure.

20.3.   All persons shall be on notice of their continuing duty to monitor the MDL Court's docket for the most current filings and information.   The MDL Court, in its discretion, may alter, postpone or amend any deadlines or hearing dates scheduled by the MDL Court in connection with the approval of this Settlement without additional formal notice.   Orders concerning any such changes are expected to be docketed on the MDL Court's website:

> https://www.pawd.uscourts.gov/mdl-3014-re-philips-recalled-cpap-bi-level-pap-and-mechanical-ventilator-products-litigation.

20.4.   The Settlement Administrator shall post on the Settlement website this Agreement (including all of its exhibits), as well as relevant pleadings by the Parties and orders entered by the MDL Court in connection with the Settlement, including relevant scheduling orders.

20.5.   Nothing expressed or implied in this Agreement is intended to or shall be construed to confer upon or give any person or entity, other than Settlement Class Members, the Philips Defendants, and the other Released Parties, any right or remedy under or by reason of this Agreement.

20.6.   Settlement Class Members (or their counsel, if any) who submit false or intentionally misleading information, through any form of deception, dishonesty or fraud, shall be subject to appropriate sanctions (including monetary sanctions and costs).

20.7.   Unless otherwise specified, any written notices and other communications under this Settlement shall be in writing and shall be sent to Settlement Class Counsel and

Counsel for the Philips Defendants.  Routine communications may be made by email.  Communications asserting a breach of this Settlement shall be made by email and by hand delivery or overnight courier (*e.g.*, Express Mail, Overnight UPS, or FedEx).

20.8.   Other than as provided for in Orders of the MDL Court, there are no restrictions upon the Philips Defendants with respect to any returned Recalled Devices, including, but not limited to, whether or how they can be retained, used, tested, remediated, and/or discarded.

20.9.   This Settlement is the product of arms'-length negotiations between Settlement Class Counsel, the Philips Defendants, and Counsel for the Philips Defendants.  None of the Parties or their Counsel shall be deemed to be the drafter of this Agreement or any provision thereof.  No presumption shall be deemed to exist in favor of or against anyone on account of who drafted any particular portion of this Agreement.

20.10.  This Settlement constitutes the entire agreement between the Parties with respect to the matters set forth herein and supersedes any and all prior and contemporaneous undertakings in connection therewith, including any prior term sheets.  In entering into this Agreement, the Parties have not received or relied upon any agreements or promises other than as contained in writing in this Agreement.

20.11.  This Settlement may not be modified or amended unless such modification or amendment is in writing executed by all Parties, and (upon the Final Order and Judgment) approved by the MDL Court.

20.12.  This Settlement may be executed in multiple counterparts, all of which taken together shall constitute one and the same Settlement.

20.13.  If there is any conflict as between the Agreement and any exhibits, the language and terms in the Agreement shall prevail.

20.14.  In the event this Agreement is not preliminarily or finally approved by the MDL Court, or in the event that the Order and Final Judgment approving the Settlement is entered but later reversed or vacated, or the Philips Defendants exercise their right to terminate the Agreement pursuant to Section 11.11, the pre-settlement status of this MDL shall be restored (including without limitation any applicable tolling of any statute of limitations), and the Agreement shall have no effect on the rights of the Parties to prosecute or defend the Economic Loss Claims in the MDL or elsewhere in any respect, including without limitation the right to fully litigate the issues related to class certification, raise personal jurisdiction defenses, or any

---

**Section 20. Miscellaneous**                                                           52

other defenses.  The Parties will negotiate and submit to the MDL Court for Court approval a modified case schedule at such time.

20.15.   Settlement Class Members should consult their personal tax advisor for assistance regarding any tax ramifications of this Settlement.  Settlement Class Counsel, the Philips Defendants, and their Counsel are not providing any opinion, representation or advice as to the tax consequences or liabilities of Settlement Class Members as a result of any payments or benefits under this Settlement.  Nothing in this Agreement should be relied upon by any Settlement Class Member as the provision of tax advice.  Settlement Class Members shall hold the Philips Defendants and their Counsel harmless from any federal, state, or foreign tax assessments, interest, and/or penalties that result for any amounts paid or benefits provided under this Agreement, and the Philips Defendants shall not be liable for the payment of any additional amounts now or in the future for any amount related to a Settlement Class Member's tax consequences

20.16.   Each of the undersigned signatories represents that he or she is fully authorized to enter into the terms and conditions of, and to execute this Agreement, subject to Court approval.

## 21.   <u>Federal Rule of Evidence 408</u>

21.1.   The Parties specifically acknowledge and agree that this Settlement, along with all related drafts, motions, pleadings, conversations, negotiations and correspondence, shall be considered a compromise within the meaning of Federal Rules of Evidence Rule 408, and any equivalent rule of evidence or procedure of any state, and shall not (i) constitute, be construed, be offered, or be received into evidence as an admission of the validity of any claim or defense, or the truth of any fact alleged or other allegation in the MDL, or in any other pending or subsequently filed action, arbitration or other proceeding, or of any wrongdoing, fault, violation of law, or liability of any kind on the part of any Party, except as permitted in Sections 4.2 and 21.3 of this Settlement; or (ii) be used to establish a waiver of any defense or right, or to establish or contest jurisdiction or venue.  As set forth in Section 2.2 above, the Philips Defendants submit to the jurisdiction of the MDL Court solely for purposes of the Settlement and the enforcement of the payment and performance obligations thereunder.

21.2.   The Parties agree that this Settlement, any orders, pleadings, or other documents entered in furtherance of this Settlement, and any acts in the performance of this Settlement are not intended to be, nor shall they in fact be, admissible, discoverable, or relevant in any case or other proceeding against the Defendants as evidence of

any obligation that any Party hereto has or may have to anyone, except with regard to the obligations and rights under the Settlement.

21.3.    The provisions of this Settlement, and any orders, pleadings or other documents entered in furtherance of this Settlement, may be offered or received in evidence solely (i) to enforce the terms and provisions hereof or thereof, (ii) as may be specifically authorized by a court of competent jurisdiction after a hearing upon application of a Party hereto, (iii) in order to establish payment, prior payment for a claimed loss, set-off, counterclaim or an affirmative defense of exception in a subsequent case, including *res judicata*, collateral estoppel, release, good faith settlement, judgment bar or reduction, or any other theory of claim preclusion or issue preclusion or similar defense or counterclaim, (iv) in connection with any motion to dismiss, enjoin or stay a Released Claim, (v) to establish an assignment to Philips RS of Economic Loss Claims against Ozone Cleaning Companies, or (vi) to obtain MDL Court approval of the Settlement.

[intentionally left blank]

---

**Section 21. Federal Rule of Evidence 408**                                                    54

The Parties have executed this Settlement Agreement, by their duly authorized representatives, on the Execution Date.

PHILIPS RS NORTH AMERICA, LLC:

*/s/ John P. Lavelle, Jr.*
John P. Lavelle, Jr.
Lisa C. Dykstra
**MORGAN, LEWIS & BOCKIUS LLP**
1701 Market Street
Philadelphia, PA 19103-2921
(215) 963-5000
john.lavelle@morganlewis.com
lisa.dykstra@morganlewis.com

*/s/ Erik T. Koons*
Erik T. Koons
Andrew T. George
**BAKER BOTTS LLP**
700 K St. NW
Washington, DC 20001
(202) 639-7973 (phone)
erik.koons@bakerbotts.com
andrew.george@bakerbotts.com

KONINKLIJKE PHILIPS N.V., PHILIPS
NORTH AMERICA LLC, PHILIPS
HOLDING USA INC., AND PHILIPS RS
NORTH AMERICA HOLDING
CORPORATION:

*/s/ William B. Monahan*
Michael H. Steinberg
**SULLIVAN & CROMWELL LLP**
1888 Century Park East
Los Angeles, CA 90067
(310) 712-6670 (phone)
steinbergm@sullcrom.com

Tracy Richelle High
William B. Monahan
Elizabeth N. Olsen
**SULLIVAN & CROMWELL LLP**
125 Broad Street

PLAINTIFFS' CO-LEAD COUNSEL:

*/s/ Christopher A. Seeger*
Christopher A. Seeger
**SEEGER WEISS LLP**
55 Challenger Road, 6th Floor
Ridgefield Park, NJ 07660
(973) 639-9100 (phone)
cseeger@seegerweiss.com

*/s/ Sandra L. Duggan*
Sandra L. Duggan
**LEVIN SEDRAN & BERMAN LLP**
510 Walnut Street, Suite 500
Philadelphia, PA 19106
(215) 592-1500 (phone)
(215) 592-4633 (fax)
sduggan@lfsblaw.com

*/s/ Steven A. Schwartz*
Steven A. Schwartz
**CHIMICLES SCHWARTZ KRINER &
DONALDSON-SMITH LLP**
361 West Lancaster Avenue
Haverford, PA 19041
(610) 642-8500 (phone)
steveschwartz@chimicles.com

*/s/ Kelly K. Iverson*
Kelly K. Iverson
Gary Lynch
**LYNCH CARPENTER, LLP**
1133 Penn Avenue, 5th Floor
Pittsburgh, PA 15222
(412) 322-9243 (phone)
kelly@lcllp.com
gary@lcllp.com

55

New York, NY 10004
(212) 558-4000 (phone)
hight@sullcrom.com
monahanw@sullcrom.com
olsene@sullcrom.com

PLAINTIFFS' SETTLEMENT
COMMITTEE:

*/s/ Roberta D. Liebenberg*
Roberta D. Liebenberg (Chair)
**FINE, KAPLAN AND BLACK, R.P.C.**
One South Broad Street, 23rd Floor
Philadelphia, PA 19107
(215) 567-6565 (phone)
rliebenberg@finekaplan.com


*/s/ Lisa Ann Gorshe*
Lisa Ann Gorshe (Vice Chair)
**JOHNSON BECKER PLLC**
444 Cedar Street, Suite 1800
Saint Paul, MN 55101
(612) 436-1852 (phone)
lgorshe@johnsonbecker.com


*/s/ Arthur H. Stroyd, Jr.*
Arthur H. Stroyd, Jr. (Vice Chair)
**DEL SOLE CAVANAUGH STROYD LLC**
3 PPG Place, Suite 600
Pittsburgh, PA 15222
(412) 261-2172 (phone)
astroyd@dscslaw.com