IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| IN RE: PHILIPS RECALLED CPAP, BI-LEVEL PAP, AND MECHANICAL VENTILATOR PRODUCTS LITIGATION<br><br>This document relates to: All Cases | Master Docket: No. 21-mc-01230<br><br>MDL No. 3014 |

**KONINKLIJKE PHILIPS N.V.'S PRE-HEARING STATEMENT ON ITS MOTIONS TO DISMISS FOR LACK OF PERSONAL JURISDICTION**

Pursuant to the Court's instructions at the August 8, 2023 argument, Koninklijke Philips N.V. ("KPNV") submits this pre-hearing statement, including "a brief identification of the issues and list of witnesses," for the October 17, 2023 evidentiary hearing on KPNV's Rule 12(b)(2) motions to dismiss for lack of personal jurisdiction.  (Aug. 8, 2023 Hearing Tr. at 42.)

**I.   PLAINTIFFS' BURDEN TO AVOID KPNV'S MOTIONS**

After extensive discovery, Plaintiffs still cannot establish that this Court has *specific* jurisdiction over KPNV in Pennsylvania and Massachusetts with respect to their non-negligent recall claims.  Nor can Plaintiffs establish *specific* jurisdiction over KPNV in all states for their negligent recall claim.  And finally, Plaintiffs have failed to establish *general* jurisdiction over KPNV in all states via an alter ego theory.

To establish specific jurisdiction, due process requires Plaintiffs to prove by a preponderance of the evidence that KPNV both "*directed [its] activities at residents of the forum*," and "the litigation results from alleged injuries that *arise out of or relate to those activities*." *Burger King* v. *Rudzewicz*, 471 U.S. 462, 472 (1985) (emphasis added).  KPNV's subsidiary's conduct in a particular forum does not establish KPNV's purposeful availment to that forum, as

"[t]he parent-subsidiary relationship itself is not sufficient to establish in personam jurisdiction over the parent entity." *In re Enterprise*, 735 F. Supp. 2d 277, 317-18 (W.D. Pa. 2010). Separately, the purported "contacts" must demonstrate a "strong relationship among the defendant, the forum, *and the litigation*—the essential foundation of specific jurisdiction." *Ford* v. *Montana*, 141 S. Ct. 1017, 1028 (2021) (emphasis added). "When there is no such connection, specific jurisdiction is lacking regardless of the extent of a defendant's *unconnected* activities in the State." *Bristol-Myers* v. *Sup. Ct.*, 582 U.S. 255, 264 (2017) (emphasis added). The jurisdictionally relevant conduct here for the remaining claims—which are solely personal injury and medical monitoring claims[1]—must have a "meaningful link" to the "substance" of these claims, *i.e.*, the selection of the specific foam for the recalled devices. *O'Connor* v. *Sandy Lane*, 496 F.3d 312, 324 (3d Cir. 2007); *Lloyd* v. *Retail Eq.*, 2022 WL 18024208, at *5 (D.N.J. 2022); *See Martinez* v. *Union Officine Meccaniche*, 2023 WL 3336644, at *2 (3d Cir. 2023) (the "core characteristics" of a "products liability claim" are the "design and manufacture of the [device] or any of its parts").

To establish personal jurisdiction through an alter ego theory, Plaintiffs "bear[] the burden to prove" by "a preponderance of the evidence" that KPNV controlled and totally dominated the "day-to-day" operations of Philips RS North America LLC ("Philips RS") or Philips North America LLC ("Philips NA") to such a pervasive extent that those subsidiaries lacked a "separate corporate existence." *Enterprise*, 735 F. Supp. 2d at 324. Courts "must start from the general rule that the corporate entity should be upheld unless specific, unusual circumstances call for an exception." *Riad* v. *Porsche*, 2023 WL 2227692, at *3 (E.D. Pa. 2023). This Court has made clear that "[i]t is assumed to be the norm that a parent will have *not only . . . the potential* to

---

[1] As the Court is aware, the parties have reached a settlement, subject to Court approval, of all economic loss claims.

exercise control [over the subsidiary], *but to exercise it to a substantial degree*," all without creating an alter-ego relationship.  *Trinity* v. *Greenlease*, 2014 WL 1766083, at *16 n.9 (W.D. Pa. 2014) (emphasis added).  Because Plaintiffs must show so much control to establish alter ego, it is no wonder that courts characterize Plaintiffs' hurdle as a "notoriously difficult burden." *Riad*, 2023 WL 2227692, at *3.

## II.   BRIEF NARRATIVE STATEMENT OF MATERIAL FACTS

The factual background relevant to KPNV's motions has been extensively laid out in KPNV's briefing, *see* ECF Nos. 1850 and 2204, and so KPNV includes below only a brief and succinct summary of the material facts.

KPNV is a Dutch holding company headquartered in Amsterdam.  KPNV owns, directly or indirectly, nearly 300 subsidiaries across the globe, operating in a variety of different industries.  With KPNV's ultimate oversight, these subsidiaries operate independently, taking responsibility for their respective management, operations and financial reporting.  The Philips Group utilizes a number of governance tools to monitor the performance of its subsidiaries, to ensure synergies among its subsidiaries, to facilitate cooperation and coordination, to monitor risk, and to ensure legal compliance (including tax-compliant allocations supporting transfer pricing).  It does so through, among other things, various arm's-length intercompany agreements and group-wide high-level policies that set aspirational standards on matters such as ethics and quality.  While high-level ideals are rolled out on a group-wide basis, it is each individual legal entity that is primarily responsible for developing and implementing more specifically tailored rules and procedures for that entity's particular industry and products.

Philips RS and Philips NA are just two of KPNV's subsidiaries.  KPNV holds its interest in Philips RS through two tiers of intermediate subsidiaries:  KPNV owns 100% of Philips

Holding USA Inc. ("PHUSA"), which owns 100% of Philips RS North America Holding LLC ("Philips RS Holding"), which owns 100% of Philips RS. KPNV holds its interest in Philips NA through PHUSA: PHUSA owns 100% of Philips NA. Based upon the extensive discovery provided to them, Plaintiffs' experts have found no evidence that any element of the corporate form was disregarded by KPNV in its control or ownership of Phillips RS or Philips NA. *See* DX022 at 116-17; DX023 at 77-78.

KPNV does not design, manufacture, or sell any products at all—in the United States or elsewhere—and Plaintiffs have no evidence that KPNV designed, manufactured or sold the recalled devices of its indirect subsidiary, Philips RS. In fact, since Philips RS was acquired in 2008, it has operated—by design—on a stand-alone basis because of the perceived strength of its management team who build the Respironics business. Philips RS was governed by its own Board of Directors until it was converted into an LLC, at which point it was governed by its own members. Philips RS has its own internal functions to monitor its own operations, including marketing, human resources, engineering, strategy and business development, and quality. In its history, KPNV has never had any overlapping officers or directors with Philips RS.

Separate from the Philips Group's parent-subsidiary ownership structure, to take advantage of operating synergies, the Philips Group has organized its various businesses into "Reporting Segments" and "Business Units." Given the vast array of different types of products the 300 subsidiaries that comprise the Philips Group sell globally, the different businesses are divided into these segments and units to not only operate more efficiently, but to comply with the various applicable legal regimes and create synergies to help meet the needs of different customer bases. As a foreign private issuer, the rules and regulations of the United States Securities and Exchange Commission ("SEC") mandate KPNV's method of financial reporting, which is

governed by the International Financial Reporting Standards. The IFRS's standards require that KPNV report financial results on an operating segment (*i.e.*, along product lines) basis. Plaintiffs' own expert has acknowledged this requirement and its application to KPNV's segments. *See* DX022 at 86-88.

### III. ISSUES TO BE DECIDED

The issue to be decided at the evidentiary hearing is whether Plaintiffs' evidence meets their "substantial burden of proving that personal jurisdiction [over KPNV] is proper by a preponderance of the evidence." *Atiyeh* v. *Hadeed*, 2007 WL 853816, at *4 (E.D. Pa. 2007).[2] Based on the arguments advanced in Plaintiffs' Renewed Opposition, KPNV understands the legal issues to be addressed are as follows:

1.  As to *specific* personal jurisdiction for all of Plaintiffs' state law non-negligent recall claims, the issue for this Court is whether Plaintiffs have proven by a preponderance of the evidence that KPNV "directed [its] activities at residents of" Pennsylvania and Massachusetts and "the litigation results from alleged injuries that arise out of or relate to those activities." *Burger King*, 471 U.S. at 472.[3] KPNV disputes that Plaintiffs have proven the existence of actions taken by KPNV itself (rather than evidence of actions taken by one of its subsidiaries) that rise to the level of "deliberate targeting" of the forum states, or have proven the required "meaningful link" to the "substance" of these claims, *i.e.*, the selection of the specific foam for the recalled devices. *Sandy Lane*, 496 F.3d at 316; *Lloyd*, 2022 WL 18024208, at *5; *Martinez*, 2023 WL 3336644, at *2.

---

[2] KPNV has conceded that it is subject to personal jurisdiction with respect to Plaintiffs' negligent recall claim for those Plaintiffs who filed suit originally in Pennsylvania.

[3] While the long-arm statute of Pennsylvania is coextensive with the outer limits of federal due process, Massachusetts' long-arm statute is "more restrictive." (ECF Nos. 914 at 5-6, n.4, 1355 at 1-2.).

2. As to *specific* personal jurisdiction for Plaintiffs' negligent recall claims, the issue for this Court is whether Plaintiffs' evidence establishes by a preponderance that KPNV "directed [its] activities at residents of" every state (other than Pennsylvania) and "the litigation results from alleged injuries that arise out of or relate to those activities." *Burger King*, 471 U.S. at 472.  Plaintiffs simply cannot prove that KPNV itself took steps to reach into each and every forum state that rise to the level of "deliberate targeting" of the forum states, or that these actions relate to Plaintiffs' negligent recall claims in such a way as to satisfy the required "meaningful link" to the "substance" of these claims. *Sandy Lane*, 496 F.3d at 316; *Lloyd*, 2022 WL 18024208, at *5.[4]

3. As to *general* personal jurisdiction, the issue for this Court is whether Plaintiffs have proven by a preponderance of the evidence that KPNV exercised such pervasive control over the day-to-day operations of Philips RS or Philips NA such that Philips RS or Philips NA was KPNV's alter ego.[5]  Again, Plaintiffs have failed to meet their considerable burden. Plaintiffs have failed to demonstrate Philips RS or Philips NA effectively lacked a "separate corporate existence" based on KPNV's daily pervasive control over their businesses. *Enterprise*, 735 F. Supp. 2d at 324.  For their part, Plaintiffs cite a number of mechanisms that KPNV uses to

---

[4] Plaintiffs also need to satisfy each forum's long-arm statute for their negligent recall claims in all states other than Pennsylvania.  (*See* ECF Nos. 914 at 5-6, n. 4; 1355 at 1-2.)

[5] In keeping with their ever-moving target, Plaintiffs have now advanced "the agency doctrine" as a new potential basis for *general* personal jurisdiction in their pre-hearing statement. To the extent they are attempting to assert a non-alter ego theory of general jurisdiction, this reflects yet another shift in theory that has not been substantively raised in any of their prior briefs. Years ago, the Supreme Court "rejected using an agency theory for general jurisdiction." *Transp. Ins. Co.* v. *Am. Harvest Baking Co.*, 2015 WL 9049273, at *3 (D.N.J. Dec. 16, 2015) (citing *Daimler AG* v. *Bauman*, 571 U.S. 117, 136 (2014)); *see also Flynn* v. *Hovensa*, 2014 WL 3375238, at *5 (W.D. Pa. Jul. 3, 2014) ("[T]he *Daimler* Court rejected the use of the 'agency' theory to exercise general jurisdiction over a foreign corporation based on unrelated contacts of its subsidiary.").

monitor and run the Philips Group. The Court must determine whether these legitimate and widely adopted governance tools were so misused to allow pervasive, daily control, as opposed to just permitting the incidental control that naturally flows from the parent-subsidiary relationship and is entirely "consistent with the parent [KPNV's] investor status." *United States* v. *Bestfoods*, 524 U.S. 51, 72 (1998). The Court must consider Plaintiffs' evidence in the framework of a ten-factor test that is tailored to discerning whether the requisite control is present. *Enterprise*, 735 F. Supp. 2d at 318-19.

## IV. KPNV'S WITNESS LIST

1. Deborah Roux
2. Vitor Rocha (by video)
3. Elizabeth Iversen*
4. Frans van Houten*
5. Michael Garbe*

KPNV may elect to examine any witnesses called by Plaintiffs at the hearing, including Matthew Dundon. Witnesses designated with an asterisk (*) will appear in the form of deposition testimony by designation and/or counter-designation. The parties are currently negotiating deadlines for deposition designations and counter-designations/objections and will submit those designations jointly to the Court prior to the evidentiary hearing.

## V. KPNV'S EXHIBIT LIST

KPNV's list of exhibits is attached hereto as Appendix 1.

Dated: September 19, 2023

    Respectfully submitted,

    */s/ Michael H. Steinberg*
    Michael H. Steinberg
    steinbergm@sullcrom.com
    SULLIVAN & CROMWELL LLP
    1888 Century Park East
    Los Angeles, CA 90067
    Tel: (310) 712-6670

    */s/ Tracy Richelle High*
    Tracy Richelle High
    hight@sullcrom.com
    William B. Monahan
    monahanw@sullcrom.com
    Elizabeth N. Olsen
    olsene@sullcrom.com
    Bethany S. Labrinos
    labrinosb@sullcrom.com
    SULLIVAN & CROMWELL LLP
    125 Broad Street
    New York, NY 10004-2498
    Tel: (212) 558-4000

    *Counsel for Defendant Koninklijke Philips N.V.*