IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| IN RE: PHILIPS RECALLED CPAP, BI-LEVEL PAP, AND MECHANICAL VENTILATOR PRODUCTS LITIGATION<br><br>This Order Relates to: All Actions | Master Docket: No. 21-mc-1230-JFC<br><br>MDL No. 3014 |

**SPECIAL MASTER REPORT AND RECOMMENDATION ON DEFENDANTS POLYMER TECHNOLOGIES AND POLYMER MOLDED PRODUCTS, LLC'S MOTION TO DISMISS AMENDED MASTER LONG FORM COMPLAINT FOR PERSONAL INJURIES AND DAMAGES AND CONSOLIDATED SECOND AMENDED CLASS ACTION COMPLAINT <u>FOR MEDICAL MONITORING</u>**

## I.  INTRODUCTION

Pending in this multi-district litigation arising from the production and sale of certain breathing assistance devices is Defendants Polymer Technologies and Polymer Molded Products' (collectively, "PolyTech") Motion to Dismiss the Amended Master Long Form Complaint for Personal Injuries and Damages ("PIAC") and Consolidated Second Amended Class Action Complaint for Medical Monitoring ("MMSAC") pursuant to Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6).  (ECF No. 1341.)  PolyTech asserts this Court lacks jurisdiction to hear Plaintiffs' claims because PolyTech's contacts with the forum are insufficient to confer jurisdiction and because PolyTech's status as a component parts manufacturer insulates it from liability.  Id.  PolyTech also contends that Plaintiffs' claims are barred by the statute of limitations.  Plaintiffs vigorously contest these assertions.

1

The motion has been fully briefed, with Plaintiffs having filed a Brief in Opposition on March 7, 2023 and PolyTech having filed a reply brief on April 20, 2023. Opp. Br. (ECF No. 1640); Repl. Br. (ECF No. 1816). Oral argument on the motion was heard on July 11, 2023.  *See* Or. Arg. J. 11 (ECF No. 2130). This decision will address the issues presented in the Motion in the same order the parties addressed them in the briefing, with the first issue being personal jurisdiction.

## II. SPECIFIC JURISDICTION

Because the parties agree that personal jurisdiction over PolyTech cannot be based on general jurisdiction principles, this Report will analyze only the parties' arguments regarding specific jurisdiction.[1]  Relying primarily on *Intl. Shoe Co. v. State of Wash., Off. of Unempl. Compen. and Placement*, 326 U.S. 310 (1945); and *Daimler AG v. Baumann*, 571 U.S. 117 (2014), PolyTech contends that its activities within Pennsylvania are not sufficiently "continuous and systematic" to establish jurisdiction and do not give rise to the conduct at issue in this claim. Supp. Br. (ECF No. 1342) at 18.  Borrowing the analysis from *Burger King v. Rudzewicz*, 471 U.S. 462, 472 (1985), requiring a defendant to "purposefully direct [its] activities at residents of the forum" to establish specific jurisdiction, PolyTech asserts that its

---

[1] In their Brief in Opposition to PolyTech's Motion to Dismiss, Plaintiffs do not argue that the Court has general jurisdiction over PolyTech. Opp. Br. (ECF No. 1640) at 14, n.16. Thus, the question presented focuses only on specific jurisdiction.

contacts with Pennsylvania cannot meet this standard because PolyTech does not direct its efforts at individual consumers in its business-to-business model. PolyTech otherwise avers that Plaintiffs have failed to allege that PolyTech has "purposefully directed its activities at residents of the forum or availed itself of the forum's markets." *Id.* PolyTech asserts that it could not have anticipated being named as a defendant in the Western District of Pennsylvania and requiring it to defend itself in this Court would result in "exorbitant travel expenses, unavailability of evidence, and drains on judicial resources." *Id.*

In response, Plaintiffs assert that PolyTech's efforts to solicit business from current and prospective customers in Pennsylvania and its shipments of PE-PUR foam to Pennsylvania are sufficient to establish specific jurisdiction. Opp. Br. (ECF No. 1640) at 15. Further, Plaintiffs assert that under the second prong of the specific jurisdiction test, PolyTech's activities in Pennsylvania are directly related to PolyTech's shipping of the PE-PUR foam into Pennsylvania. *Id.* at 18.

A review of the pleadings demonstrates that PolyTech has had sufficient contacts with Pennsylvania to justify this Court's exercise of specific jurisdiction. In this regard, *United Dairy, Inc. v. Bayshore Indus., LLC*, which Plaintiffs rely on, is informative on the proper approach to specific jurisdiction in instances, such as here, where the defendant's contacts with the jurisdiction are primarily via phone and email and made for the purpose of soliciting business. No. 14-1644, 2015 WL

3

5311297 at *9. Just as PolyTech asserts here, the defendants in *United Dairy* claimed that sales telephone calls and emails were insufficient to establish specific jurisdiction. *Id.* at *3. There, Judge Conti, relying on the Third Circuit case *Grand Entertainment Group, Ltd. v. Star Media Sales, Inc.*, 988 F.2d 476, 483 (3d Cir. 1993), recognized that a defendant's contacts with the forum need not be in a specific form to demonstrate jurisdiction so long as those contacts are "purposefully directed . . . at residents of the forum and the litigation results from the alleged injuries that arose out of those activities." *Id.* (citing *BP Chemicals Ltd. v. Formosa Chem. & Fibre Corp.*, 229 F.3d 254, 259 (3d Cir. 2000).). Even "a single contact with a forum can be sufficient to create a required connection." *Id.* (citing *BP Chemicals Ltd. v. Formosa Chem. & Fibre Corp.*, 229 F.3d 254, 259 (3d Cir. 2000); *Grand Entertainment Group, Ltd. v. Star Media Sales, Inc.*, 988 F.2d 476, 483 (3d Cir. 1993)).

Further, relatively few communications can subject a defendant to the forum's jurisdiction. *See Grand Entertainment Group, Ltd*. 988 F.2d at 483 (holding twelve communications directed at forum are sufficient to demonstrate that defendants have purposefully availed themselves of the forum); *O'Connor v. Fischbein*, No. 09-4931, 2010 WL 1053220 at *4 (E.D. Pa. 2010) (holding five letters and one phone call were sufficient contacts to establish specific jurisdiction); *Toussant v. Williams*, 62

4

F. Supp. 417, 425 (E.D. Pa. 2014) (finding one email sufficient to establish minimum contacts where defendant knew recipient resided in Pennsylvania).

By its own admission in its Motion, PolyTech has solicited individuals for business in Pennsylvania. Supp. Br. (ECF No. 1342) at 9.  In its brief, PolyTech admits "[b]usiness has been solicited in Pennsylvania." *Id.*   PolyTech further supports this admission by including the Affidavit of Robert Prybutok as an exhibit to its brief.   Mr. Prybutok admits PolyTech has solicited business in ". . . Pennsylvania . . . through visitation by employees and agents to business customers and prospective business customers." Supp. Br. (ECF No. 1342) at 9. Thus, PolyTech's own admissions demonstrate that it has made purposeful contacts with Pennsylvania.  Further, Plaintiffs specifically demonstrate that PolyTech made at least a dozen email and phone calls for the purpose of soliciting Philips' Pennsylvania-based employees to purchase its foam.  *See* PIAC (ECF No. 835-35) at Ex. 83; PIAC (ECF No. 835-50) at Ex. 98.   Due to the nature of these communications, to specifically request a Pennsylvania entity to purchase goods, the contacts were sufficiently intentional to establish jurisdiction.  This is the type of sales and negotiation-based communications that the courts in *United Dairy* and *Grand Entertainment Group, Ltd.* found were concerted efforts directed at the market of a forum sufficient to establish jurisdiction.

As to the second prong of the specific jurisdiction test, Plaintiffs have shown that the litigation arises out of PolyTech's purposeful contacts with Pennsylvania. To satisfy the second prong of the test, a plaintiff must demonstrate that without the defendant's acts, the question giving rise to the litigation would not have occurred. *Colvin v. Van Wormer Resorts, Inc.*, 417 F. App'x. 183, 187 (3d Cir. 2011) (noting the inquiry is "fact-sensitive" and "should hew closely to the reciprocity principle upon which specific jurisdiction rests."). Here, Plaintiffs have clearly demonstrated that they would not be bringing this claim but for PolyTech's supplying of foam products to Philips for use in the Recalled Devices. Email communications attached to the Complaints are evidence that PolyTech supplied foam to Philips.[2] Thus, construing all allegations in the light most favorable to Plaintiffs, PolyTech participated in activities in Pennsylvania that amount to a quid pro quo - showing that PolyTech should have reasonably anticipated that its shipments of PE-PUR foam to Pennsylvania could give rise to a claim there.

Finally, PolyTech offers no evidence that it would suffer a substantial burden by defending itself in this Court. PolyTech has provided no evidence of "exorbitant travel expenses, unavailability of evidence, drains on judicial resources or countervailing state interests" sufficient to find a burden. *Pennzoil Products Co. v. Colelli & Associates, Inc.*, 149 F.3d 197, 208 (3d Cir. 1998). Further, as Plaintiffs

---

[2] *See* PIAC (ECF No. 835-35) at Ex. 83 and PIAC (ECF No. 835-50) at Ex. 98.

6

note, Delaware's proximity to Pennsylvania weighs against a finding of unreasonable burden. *O'Connor v. Sandy Lane Hotel Co., Ltd.*, 496 F.3d 312, 323 (3d Cir. 2007).

Thus, the exercise of specific jurisdiction over the PolyTech defendants would be reasonable and it will be recommended that PolyTech's motion to dismiss on jurisdictional grounds be denied.

### III. COMPONENT PARTS DOCTRINE

PolyTech asserts that it cannot be held liable for injuries associated with the CPAP, Bi-Pap, and ventilator devices because it did not exercise sufficient control over the incorporation of the PE-PUR foam into the devices. Supp. Br. (ECF No. 1342) at 22. Accordingly, invoking the component parts doctrine, PolyTech asserts that it cannot be held liable for merely providing the PE-PUR foam. *Id.*

In response, Plaintiffs assert that PolyTech's involvement in choosing the PE-PUR foam for use in the devices falls within an exception to the component part doctrine. Opp. Br. (ECF No. 1640) at 22. Specifically, Plaintiffs assert PolyTech modified the foam for use in the devices by applying an adhesive glue to the foam, amounting to substantial participation in the integration of the foam for use in the devices that exposes PolyTech to liability. *Id.*; *See also* MMSAC (ECF No. 815) at ¶¶ 259-61. Relying on the Third Circuit's analysis in *Suchomajcz v. Hummel Chem. Co., Newark, New Jersey*, 524 F.2d 19, 26 (3d Cir. 1975), Plaintiffs further assert

that PolyTech's knowledge of the risk of degradation of the PE-PUR foam in the devices demonstrates that PolyTech should be held liable for Plaintiffs' injuries. Opp. Br. (ECF No. 1640) at 23.  Finally, Plaintiffs assert that the applicability of the component parts doctrine should not be determined at the motion to dismiss stage but should be determined on a more complete factual record. *Id.* at 24-25.[3]

Plaintiffs rely on a number of cases demonstrating that a determination of the applicability of the component parts doctrine should be completed on a full record, rather than the pleadings. *Id.*; See *Suchomajcz,* 524 F.2d at 26 (reviewing applicability of doctrine to trial court's grant of summary judgment on fully developed factual record); *Gray v. Derderian*, 365 F.Supp.2d 218, 239 (D.R.I. 2005) (in polyurethane foam case, noting prior courts addressing adjacent bulk supplier doctrine deferred determination of applicability to after discovery and determining discovery was required to assess extent of alterations of foam by distributor).  Case

---

[3] Plaintiffs assert that several jurisdictions do not adopt the doctrine. A review of law of Arizona, Illinois, Indiana, and Maine laws demonstrates Plaintiffs correctly assert they do not adopt the doctrine. *See Rocky Mountain Fire and Cas. Co. v. Biddulph Oldsmobile*, 640 p.2d (Az. 1982) (holding manufacturers of component parts are strictly liable); *Woods v. Graham Engineering Corp.*, 183 Ill. App. 337 (App. Ct. Ill. 1989) (holding component part manufacturer may be found strictly liable for injuries attributable to component); *Brewer v. PACCAR, Inc.*, 124 N.E.3d 616 (Ind. 2019); *Burns v. Architectural Doors and Windows*, 19 A.3d 823, 827 (Me. 2011). However, the Florida Supreme Court recently limited the case in which it recognized the doctrine. *Aubin v. Union Carbide Corp.*, 177 So.3d 489, 519 (Fl. 2015) (disapproving of appellate court's adoption of Restatement *in Kohler v. Marcotte*, 907 So.2d 596 (Fl. Ct. App. 2005).

law from the District Courts of this Circuit and other Circuits demonstrates that courts determine the applicability of the doctrine on a fully developed record. *See Cohen v. Subaru of America, Inc.*, No. 1:20-cv-09442-JHR-AMD, 2022 WL 714795 at *10 (D.N.J. March 10, 2022) (denying motion to dismiss claim against manufacturer under component parts doctrine where plaintiff alleged product was defective and pled facts to explain why product was defective); *Smith v. Robin America, Inc.*, 484 Fed. Appx. 908, 915 (5th Cir. 2012) (assessing applicability of component parts doctrine on fully developed summary judgment record).

While PolyTech asserts that the doctrine bars Plaintiffs' claims because Plaintiffs have failed to plead facts demonstrating that Polytech "researched, designed, developed, manufactured, tested or sold the Recalled Devices," this assertion suggests too narrow a standard regarding what conduct establishes the liability of a component parts manufacturer. Supp. Br. (ECF No. 1342) at 22.  The RESTATEMENT (THIRD) OF TORTS: PRODS LIAB. §5 recognizes that the mere facilitation of information and advice regarding the type of component parts to be used in a product, alone, is insufficient to demonstrate a component manufacturer's liability.  However, Comment e to §5 recognizes that playing a "substantial role in deciding which component best serves the requirements of the integrated product" can establish liability on the part of the component part manufacturer. RESTATEMENT (THIRD) OF TORTS: PRODS LIAB., §5 cmt. e. (1998).  Further, if the advice offered by

the component manufacturer relates to the processing of the component part and this advice contributes to the allegedly defective condition of the integrated product, the component part manufacturer can be liable. *Id*., cmt. f.  Thus, a component manufacturer can be held liable for lesser participation in the integration of the component part than PolyTech asserts.

Plaintiffs have alleged sufficient facts to demonstrate that this issue should be determined on a fully developed record.  In the Personal Injury Complaint, Plaintiffs specifically allege that PolyTech "manufactured, treated, and processed the PE-PUR foam, by among other things, applying an adhesive backing and an acoustic lining to the foam." *See* PIAC (ECF No. 834) at ¶ 70. Similarly, in the Medical Monitoring Complaint, Plaintiffs allege that representatives from PolyTech were consulted regarding the decision on which foam to use and played a hands-on role in determining what foam Philips should use in the devices. MMSAC (ECF No. 815) at ¶ 260.  Although PolyTech asserts it played no role in incorporating the PE-PUR foam into the devices, the emails between PolyTech representatives and Philips representatives raise an inference that PolyTech was involved from the beginning stages in designing the devices. *See* MMSAC (ECF No. 815) at ¶ 270; MMSAC Ex. 98 (ECF No. 811-50) (Philips representative Vincent Testa noting "Over the past few years you've [sic] helped me with technical questions regarding your foam."). However, the extent of PolyTech's involvement in the implementation is not clear

from the pleadings in the Personal Injury Complaint. Nevertheless, the pleadings sufficiently establish that PolyTech played the role of intermediary between Philips and Burnett Foam Company, entitling Plaintiffs to discovery to determine the full extent of PolyTech's involvement in the incorporation of the foam into the devices. *Id.*

Discovery is necessary to determine both PolyTech's involvement with the integration of the PE-PUR foam into the devices and PolyTech's knowledge of the dangers associated with the use of the PE-PUR foam in the devices. Application of the component parts doctrine to PolyTech's liability would be premature at this stage. Should discovery reveal that PolyTech had no greater involvement in the incorporation of the foam into the devices beyond answering technical questions, PolyTech can reassert this defense at the summary judgment stage. It will be recommended that PolyTech's motion to dismiss on the grounds of the component parts doctrine accordingly be denied but may be reasserted following discovery.

## IV.   SUFFICIENCY OF PLEADINGS

PolyTech further alleges that Plaintiffs' claims are insufficient because PolyTech is one of two intermediaries who could have provided the foam to Philips for inclusion in the Recalled Devices. Supp. Br. (ECF No. 1342) at 23. Relying on *Kester v. Zimmer Holdings, Inc.,* No. 2:10-cv-00523, 2010 WL 2696467 (W.D. Pa., June 16, 2010), PolyTech appears to assert that Plaintiffs speculate that PolyTech is

11

the source of the PE-PUR foam that caused Plaintiffs' injuries without adequately identifying whether it or Soundcoat provided the foam contained in the Recalled Devices. *Id.* at *24. Put simply, PolyTech asserts Plaintiffs have failed to plead PolyTech caused their injuries under the standards established in *Twombly* and *Iqbal*. *Id.*

Plaintiffs have satisfied the pleading standard articulated in *Connelly v. Lane Const. Corp.*, 809 F.3d 780, 789 (3d Cir. 2016). That is, Plaintiffs have raised a reasonable expectation that discovery will reveal evidence that PolyTech sold the foam used in certain devices. PIAC (ECF No. 834) at ¶ 208. While PolyTech correctly highlights that Plaintiffs acknowledge that the "PE-PUR foam that Philips used in its Recalled Devices was manufactured by William T. Burnett & Co" before being "sold to intermediaries like PolyTech and Soundcoat," PolyTech fails to acknowledge that Plaintiffs have specifically asserted claims against PolyTech based on PolyTech's involvement with Philips. Supp. Br. (ECF No. 1342) at 23. These allegations differentiate these claims from the claims at issue in *Kester v. Zimmer Holdings, Inc.*, where the plaintiff failed to allege facts supporting plaintiffs' use of the defendant's product. 2010 WL 2696467, at *22-23. In Paragraph 208 of the Personal Injury Complaint, Plaintiffs incorporate the message of an email sent from Philips representative Bob Marsh to PolyTech representative Bonnie Peterson where Marsh writes: "We use the PAFS foam in the air path of the Trilogy family of

ventilators." PIAC (ECF No. 834) at ¶ 208.  In that same paragraph, Plaintiffs state that PAFS foam is "PolyTech's open cell, flexible acoustic grade PE-PUR foam." *Id.* at ¶ 208.   Although the Trilogy ventilators are not included in the Recalled Devices at issue in this matter, this evidence demonstrates Philips has previously used PolyTech foam in its products.  Thus, Plaintiffs have alleged that PolyTech produced foam for use in at least some devices, making these claims more specific than the claims at issue in *Kester*.  Plaintiffs have pled sufficient facts about Philips' use of PolyTech foam in similar devices to move to discovery to determine if the foam used in the Recalled Devices was sold by PolyTech.  Thus, it will be recommended that PolyTech's motion to dismiss based upon the component parts doctrine be denied.

## V.   STATUTE OF LIMITATIONS

Finally, PolyTech asserts that Plaintiffs' claims are untimely because, calculating the statute of limitations from the date of the purchase of the component part, the statute of limitations for a breach of contract claim has expired. Supp. Br. (ECF No. 1342) at 24.  Plaintiffs assert the statute of limitations was equitably tolled under the discovery rule as interpreted by the Third Circuit in *Schmidt v. Skola*s and *Mest v. Cabot Corp*. Opp. Br. (ECF No. 1640) at 27; 770 F.3d 241, 251 (3d Cir. 2014); 49 F.3d 502, 510 (3d Cir. 2006).

13

The Third Circuit has ruled that the statute of limitations "may not afford the basis for a dismissal of the complaint under Rule 12(b)(6) where the time-bar is not "apparent on the face of the complaint." *Barefoot Architect, Inc. v. Bunge*, 632 F.3d 822, 835 (3d Cir. 2011) (quoting *Bethel v. Jendoco Constr. Corp.*, 570 F.2d 1168, 1174 (3d Cir. 1978)); *Robinson v. Johnson*, 313 F.3d 128, 135 (3d Cir. 2002). Notably, neither party discussed the applicability of each state's approach to the discovery rule. In support of its argument, PolyTech merely asserts that "There are no states that have a statute of limitations of fifteen (15) years to bring a claim for breach of contract." Supp. Br. (ECF No. 1342) at 25.

PolyTech has not shown that Plaintiffs' claims are untimely. First, the Complaints do not clearly reflect when the statute of limitations began to run. In the Personal Injury Complaint, Plaintiffs aver several dates regarding the Defendants' alleged fraudulent concealment, the Plaintiffs' reports of degradation, and the recall of the Devices. PIAC (ECF No. 834) at ¶ 168, 171, 175, 176, 249. Plaintiffs assert that the statute of limitations generally "has been equitably tolled by Defendants' fraudulent concealment and/or omissions of critical safety information." PIAC (ECF No. 834) at ¶ 305. Plaintiffs aver similar dates regarding Defendants' notice of the defect in the Medical Monitoring Complaint. See MMSAC (ECF No. 815) at ¶ 233, 236, 237, 243, 246, 251, 260, 311. At the end of these allegations, Plaintiffs indicate that the statute of limitations should be calculated from the date of the recall

14

because "[P]laintiffs did not have the technical, scientific, or medical knowledge and information sufficient to ascertain the cause of their injury prior to learning of the recall and the basis for the recall." PIAC (ECF No. 834) at ¶ 307; MMSAC (ECF No. 815) at ¶ 438. Further, absent evidence of specific allegations regarding each Plaintiffs' discovery of the degradation, the date of the recall appears to be the date on which Plaintiffs would have been given actual notice regarding the alleged injuries they have suffered. Under these circumstances, it will be recommended that the Court reject PolyTech's limitations defense at this stage of the case.

Second, under the discovery rule which Plaintiffs assert governs a statute of limitations determination, additional factual development is necessary to determine whether Plaintiffs acted reasonably in ascertaining their risks of injury under individual states' laws. *See Schmidt*, 770 F.3d at 251 (interpreting Pennsylvania law) ("'In order to determine when the statute should begin to run, the finder of fact focuses on whether the plaintiff was reasonably diligent in discovering his injury.'"). While Plaintiffs gained actual knowledge regarding the risk of injury on the date of the recall, at least some Plaintiffs may have been placed on constructive notice of an injury before that date. Plaintiffs assert that users of the Recalled Devices complained to Philips about degradation of the foam "beginning in at least 2008." PIAC (ECF No. 834) at ¶ 168. Whether Plaintiffs submitted any of these complaints

15

to Philips will determine whether they acted reasonably in the face of constructive notice of their injuries and whether their claims are timely.

Accordingly, because the running of the statute of limitations is not evident on the face of the Complaints, the Complaints should not be dismissed for untimeliness at this stage. Accordingly, it will be recommended that PolyTech's motion to dismiss be denied on these grounds, but PolyTech may revive its limitations argument at the summary judgment stage if discovery reveals Plaintiffs had actual notice of an actionable claim outside the limitations period.

## VI.   CONCLUSION

Defendant PolyTech's motion to dismiss fails to demonstrate a justification for the dismissal of Plaintiffs' claims against PolyTech at this stage. Plaintiffs, and PolyTech itself, have demonstrated that PolyTech had sufficient, purposeful contacts with Pennsylvania to make the jurisdiction of this forum appropriate. PolyTech's arguments regarding the component parts doctrine similarly fail to show that Plaintiffs' claims against it should be dismissed prior to discovery. Finally, Plaintiffs have demonstrated that their pleadings are legally sufficient and their claims cannot be dismissed as time-barred now. Thus, it is recommended that PolyTech's motion to dismiss (ECF No. 1341) be denied. In accordance with Fed. R. Civ. P. 53(f)(2),

objections to or requests for modification of this Report must be submitted within twenty-one days of today.

| | |
|---|---|
| <u>September 28, 2023</u><br>Date | <u>*/s/ Thomas I. Vanaskie*</u><br>Hon. Thomas I. Vanaskie (Ret.)<br>Special Master |

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| IN RE: PHILIPS RECALLED CPAP, BI-LEVEL PAP, AND MECHANICAL VENTILATOR PRODUCTS LITIGATION | Master Docket: No. 21-mc-1230-JFC<br><br>MDL No. 3014 |
| This Order Relates to All Cases | ORDER |

**RECOMMENDATION ON DEFENDANTS POLYMER TECHNOLOGIES AND POLYMER MOLDED PRODUCTS, LLC'S MOTION TO DISMISS AMENDED MASTER LONG FORM COMPLAINT FOR PERSONAL INJURIES AND DAMAGES AND CONSOLIDATED SECOND AMENDED CLASS ACTION COMPLAINT FOR MEDICAL MONITORING FOR LACK OF PERSONAL JURISDICTION AND FAILURE TO STATE A CLAIM UPON WHICH RELIEF CAN BE GRANTED**

For the reasons provided in the attached report, it is hereby recommended that Defendants Polymer Technologies and Polymer Molded Products, LLC's Motion to Dismiss the Amended Master Long Form Complaint for Personal Injuries and Damages and Consolidated Second Amended Class Action Complaint for Medical Monitoring (ECF No. 1341) be denied.

<u>September 28, 2023</u>  
Date

          */s/ Thomas I. Vanaskie*  
          Hon. Thomas I. Vanaskie (Ret.)  
          Special Master