**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **IN RE: PHILIPS RECALLED CPAP, BI-LEVEL PAP, AND MECHANICAL VENTILATOR PRODUCTS LITIGATION,** | ) ) ) ) ) | Master Docket: Misc. No. 21-1230 <br><br> MDL No. 3014 |
| **This Document Relates to:** | ) ) | |
| ***Consolidated Second Amended Class Action Complaint for Medical Monitoring (ECF 815)*** | ) ) ) | |

**PLAINTIFFS' RESPONSE TO PHILIPS RS NORTH AMERICA LLC'S OBJECTIONS TO THE SPECIAL MASTER'S REPORT AND RECOMMENDATION ON THE MOTION TO DISMISS THE SECOND AMENDED COMPLAINT FOR MEDICAL MONITORING**

## <u>TABLE OF CONTENTS</u>

Table of Authorities ........................................................................................................ ii

I.     INTRODUCTION ................................................................................................ 1

II.    ARGUMENT ......................................................................................................... 5

      A.    Defendants' Overarching Objection with Respect to the Report Is
            Overstated (Objection I) ......................................................................... 5

      B.    It Is Premature to Address Overlapping Claims (Objection II) ............................. 9

      C.    The Report Correctly Found That Physical Injury Is Not Required to State
            a Claim for Medical Monitoring Under Tennessee Law (Objection III) ............... 9

      D.    Plaintiffs' Declaratory Judgment Claim Is Appropriate (Objection IV) ............... 12

      E.    The Special Master Properly Recommended Upholding Plaintiffs' Claims
            Under the Product Liability Acts of Several States (Objection V) ...................... 13

III.   CONCLUSION ................................................................................................... 15

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*Allen v. Colautti*,
    417 A.2d 1303 (Pa. Commw. Ct. 1980) .................................................................. 13

*Ayers v. Jackson*,
    525 A.2d 287 (N.J. 1987) ...................................................................................... 15

*Brown v. Abbott Labs., Inc.*,
    2011 WL 4496154 (N.D. Ill. Sep. 27, 2011) ........................................................ 15

*Camper v. Minor*,
    915 S.W.2d 437 (Tenn. 1996)................................................................................ 12

*Carroll v. Sisters of St. Francis Health Servs., Inc.*,
    868 S.W.2d 585 (Tenn. 1993)................................................................................ 12

*City of Phila. v. Lead Indus. Ass'n, Inc.*,
    994 F.2d 112 (3d Cir.1993)...................................................................................... 7

*Fields v. Speaker of Pa. House of Representatives*,
    936 F.3d 142 (3d Cir. 2019) .................................................................................. 13

*In re JUUL Labs, Inc. Mktg. Sales Prac. & Prod. Liab. Litig.*,
    2021 WL 3112460 (N.D. Cal. July 22, 2021) ...................................................... 12

*In re Valsartan, Losartan, & Irbesartan Prods. Liab. Litig.*,
    2021 WL 12142025 (D.N.J. Oct. 7, 2021) ........................................................... 14

*In re Valsartan, Losartan, & Irbesartan Prods. Liab. Litig.*,
    2023 WL 1818922 (D.N.J. Feb. 8, 2023)............................................................... 15

*Laxton v. Orkin Exterminating Co., Inc.*,
    639 S.W.2d 431 (Tenn. 1982)................................................................................ 11

*In re Valsartan, Losartan, & Irbesartan Prods. Liab. Litig.*,
    2021 WL 364663 (D.N.J. Feb. 3, 2021) ............................................................ 9, 12

*McKenna v. Ortho Pharm. Corp.*,
    622 F.2d 657 (3d Cir. 1980) ................................................................................ 7, 8

*New Castle Cty. v. Nat'l Union Fire Ins. Co.*,
    174 F.3d 338 (3d Cir. 1999) .................................................................................... 8

*Newsom v. Markus*,
    588 S.W.2d 883 (Tenn. Ct. App. 1979) ................................................................ 11

*Parents Involved in Cmty. Sch. v. Seattle Sch. Dist. No.,*
    *1*, 551 U.S. 701 (2007) ............................................................................................... 13

*Potts v. Celotex Corp.,*
    796 S.W.2d 678 (Tenn. 1990) ................................................................................... 12

*Rhodes v. Stewart,*
    488 U.S. 1 (1988) ...................................................................................................... 14

*Rye v. Women's Care Ctr. of Memphis, MPLLC,*
    477 S.W.3d 235 (Tenn. 2015) ................................................................................... 12

*Sadler v. PacifiCare of Nev.,*
    340 P.3d 1264 (Nev. 2014) .......................................................................................... 9

*Sinclair v. Merck& Co.,*
    948 A.2d 587 (N.J. 2008) ......................................................................................... 15

*Sullivan v. Saint-Gobain Performance Plastics Corp.,*
    431 F. Supp. 3d 448 (D. Vt. 2019) ........................................................................... 15

*Sutton v. St. Jude Med.S.C., Inc.,*
    419 F.3d 568 (6th Cir. 2005) ...............................................................................4, 11

*Temple University of the Commonwealth System of Higher Education v.*
    *Department of Public Welfare,*
    374 A.2d 991 (Pa. Commw. Ct. 1977) ..................................................................... 13

*Travelers Indem. Co.v. Dammann & Co.,*
    594 F.3d 238 (3d Cir. 2010) ....................................................................................... 7

*United States v. Gov't of the V.I.,*
    363 F.3d 276 (3d Cir. 2004) ..................................................................................... 14

*United States v. W.T. Grant Co.,*
    345 U.S. 629 (1953) ................................................................................................. 13

*Yurecka v. Zappala,*
    472 F.3d 59 (3d Cir. 2006) .......................................................................................... 8

**Statutes**

Conn. Gen. Stat. § 52-572m(d) ....................................................................................... 16

Ind. Code § 34-20-1-1 (2008) ......................................................................................... 16

Kan. Stat. Ann. § 60-3302 ............................................................................................... 16

Ohio Rev. Code Ann. 2307.71(A)(7) ............................................................................. 16

Tenn. Code Ann. § 29-28-102(6) ................................................................................... 16

Wash. Rev. Code. § 7.72.010 ........................................................................................ 16

**Other Authorities**

Restatement (Second) of Torts § 7 (1965) ...................................................................... 9

I.    **INTRODUCTION**

On October 26, 2023, Philips[1] filed its Objections to the Special Master's Report and Recommendation ("Report" or "R&R") (ECF 2273) on the Motion to Dismiss the Second Amended Complaint for Medical Monitoring. *See* ECF 2316 ("Objections" or "Obj."). Defendants raise overarching issues and make three specific substantive objections. These Objections should be overruled.

***First,*** Philips objects that there is a disconnect between the recommendations set forth at the end of the Report and the legal conclusions contained therein (Objection I). Obj. at 1-2. Specifically, Philips objects to the recommendations with respect to Count IV of the Complaint and to the failure to mention claims Philips characterizes as "abandoned." *Id*. While Plaintiffs do agree that the statements in the recommendation with respect to Count IV create some confusion, Philips takes its position too far.

Plaintiffs seek medical monitoring in every jurisdiction either as an independent cause of action or as a remedy for other underlying torts. Count IV is a claim for relief in the 11 jurisdictions that have already recognized or clearly would recognize ***an independent cause of action*** for medical monitoring (as opposed to a remedy) without proof of present physical injury.[2] Philips

---

[1] Defendant Philips RS North America LLC ("Philips RS") moved to dismiss Plaintiffs' Second Amended Class Action Complaint for Medical Monitoring (ECF 1351) ("Motion to Dismiss"). "Br." refers to its Opening Brief in Support of the Motion to Dismiss (ECF 1352). Defendants Koninklijke Philips N.V., Philips North America LLC, Philips Holding USA Inc., and Philips RS North America Holding Corporation joined in the arguments made by Philips RS in its Motion (*see* ECF 1359 at 4 n.3). The Philips Defendants are referred to collectively herein as "Philips." The Consolidated Second Amended Class Action Complaint for Medical Monitoring (ECF 815) is referred to herein as "Complaint" or "Medical Monitoring Complaint." Paragraph citations ("¶") refer to the Complaint.

[2] Count IV asserted claims in 11 jurisdictions: Colorado, Connecticut, Delaware, District of Columbia, Florida, Massachusetts, Montana, New Hampshire, Pennsylvania, Utah, and West Virginia. Plaintiffs withdraw the pleading of an independent cause of action in Delaware and New

concedes several of these jurisdictions recognize medical monitoring as an independent cause of action but argues for dismissal on other grounds. These jurisdictions are set apart in Count IV but the remaining Counts seek medical monitoring ***as a remedy for underlying torts*** in all jurisdictions. As a result, the Report's ultimate recommendation that ties dismissal of medical monitoring claims in any jurisdiction beyond the 11 discussed above to Count IV is not correct.

***Second,*** although most of the briefing on Philips' Motion to Dismiss related to issues specific to medical monitoring, Philips incorporated into its Brief substantive arguments it made in support of its Motion to Dismiss the Master Personal Injury Complaint[3] with respect to specific causes of action. Br. at 7-8. Philips' second objection (Objection II) is that the Report does not discuss certain substantive claims that were addressed in its favor in the Special Master's Report and Recommendation on Philips' Motion to Dismiss the Master Personal Injury Complaint (ECF 2271) (the "Master Personal Injury Report" or "Master PI R&R"). Obj. at 2. As set forth below, this objection is premature because Plaintiffs have filed objections and a motion to clarify with respect to the Personal Injury Report.[4]

***Third,*** Philips makes three specific objections that it claims are "legal errors": (1) an erroneous *Erie* analysis with respect to Tennessee law (Objection III); (2) a failure to recommend dismissal of Plaintiffs' claim for declaratory judgment (Objection IV); and (3) a failure to recommend dismissal of Plaintiffs' claims under certain states' product liability acts. Obj. at 2-3 (Objection V). None of these objections has merit.

---

Hampshire because of recent decisions in those states although they continue to pursue medical monitoring as a remedy for Plaintiffs from those states under Pennsylvania law.

[3] "Master Personal Injury Complaint" refers to the Amended Master Long Form Complaint for Personal Injuries and Damages, and Demand for Jury Trial (ECF 834).

[4] *See* ECF 2312 ("Motion to Modify"); ECF 2313 ("Plaintiffs' PI Objections" or "Pls. PI Obj.").

*Erie analysis.* Philips repeatedly misstates Third Circuit *Erie* jurisprudence to advance the argument that, absent an explicit decision by a state's highest court on a particular issue, this Court is required to opt for the interpretation of state law that most severely restricts liability. That is not the law. *Erie* requires the Court to examine relevant authorities to predict how a state's highest court would resolve the issue, and Third Circuit precedent makes clear that this Court should not opt for the most restrictive interpretation of state law when relevant authorities show that the state's highest court would adopt a different interpretation.

This flawed argument underpins Philips' support for the Special Master's conclusion that 27 jurisdictions (the "Disputed Jurisdictions")[5] should be dismissed. As explained in Plaintiffs' Objections to the Report, the Special Master erred in applying a blanket presumption that all Disputed Jurisdictions would require some quantum of injury above and beyond the injury Plaintiffs have explicitly pleaded. First, the Special Master erred in finding that pecuniary injury was insufficient to trigger medical monitoring as a remedy in most jurisdictions. Second, where the Special Master determined that physical injury was required, he erred in finding that allegations of subcellular harm like those made by Plaintiffs here were insufficient to satisfy that physical injury requirement. Indeed, the Special Master largely ignored these allegations which have been found sufficient in numerous jurisdictions. The Report's conclusions are contradicted by ample caselaw in each of the Disputed Jurisdictions, which weighs heavily in favor of a ruling that

---

[5] The 27 Disputed Jurisdictions are: Arizona, Arkansas, Colorado, Connecticut, Georgia, Hawaii, Idaho, Illinois, Indiana, Iowa, Kansas, Maine, Minnesota, Montana, Nebraska, New Jersey, New Mexico, New York, Ohio, Oklahoma, Oregon, Puerto Rico, Rhode Island, South Carolina, Texas, Virginia, and Washington. Report at 7-8. Plaintiffs do not challenge the recommendation for Delaware, North Carolina and New Hampshire. *See* Plaintiffs' Objections to the R&R (ECF 2314) ("Plaintiffs' Objections" or "Pls. Obj."), at 1-2 & n.2 (discussing North Carolina and New Hampshire law). Plaintiffs still seek medical monitoring as a remedy under Pennsylvania law for Plaintiffs residing in those states. *See* Section II.A, *infra*.

Plaintiffs' allegations of injury are sufficient to sustain their claims for medical monitoring damages in these jurisdictions.

Defendants' specific argument regarding Tennessee law is illustrative. The Report relies on *Sutton v. St. Jude Med. S.C., Inc.*, which held that the increased risk of disease requiring current medical monitoring constitutes a concrete present injury sufficient to confer standing and noted that Tennessee likely would recognize claims for medical monitoring ***without physical injury***. 419 F.3d 568, 575 & n.7 (6th Cir. 2005) (citing and explaining Tennessee state court precedent supporting its conclusion). Nevertheless, Philips insists that, absent an explicit Tennessee Supreme Court decision on this precise issue, this Court must reject (1) the holding of the Sixth Circuit, (2) the state court cases upon which *Sutton* relies, and (3) other Tennessee Supreme Court decisions supporting Plaintiffs' position. That skewed approach does not accurately reflect the Court's duties and obligations in conducting an *Erie* analysis.

***Declaratory Judgment.*** Philips incorrectly asserts that Plaintiffs' claim for declaratory relief must be dismissed because Plaintiffs seek to recover for past conduct relating to the Recalled Devices. However, Plaintiffs allege that the harm from Philips' past conduct is ongoing and will potentially continue into the future. Pls. Opp.[6] at 28-31. Thus, Defendants' conduct is suitable for a declaratory judgment.

***Product Liability Acts.*** Philips argues that Plaintiffs' claims under the Product Liability Acts of seven states must be dismissed because these states require "manifest" physical injury. The Report correctly found that not all of these states require physical injury and when such an injury is required, that requirement is satisfied by Plaintiffs' allegations of subcellular injury.

---

[6] "Plaintiffs' Opposition" or "Pls. Opp." refers to the Opposition to the Motion to Dismiss filed by Plaintiffs on March 7, 2023 (ECF 1634).

## II.   <u>ARGUMENT</u>

### A.   Defendants' Overarching Objection with Respect to the Report Is Overstated (Objection I)

Philips' first objection to the Report is that it fails to accurately reflect its conclusions. Obj. 3-5. Specifically, the Report incorrectly cites Count IV in the recommendation as a vehicle for dismissing the Disputed Jurisdictions.[7] *See* R&R at 37-38.

Plaintiffs plead medical monitoring in the first instance as a remedy for underlying torts, not as an independent cause of action. *See* ¶ 386 ("Accordingly, in this Medical Monitoring Complaint, Plaintiffs and Class members seek as damages the costs of such medical monitoring . . . ."). In addition, Plaintiffs bring Count IV as an independent medical monitoring claim for the jurisdictions that have already recognized or would recognize a stand-alone cause of action for medical monitoring.[8] Importantly, Philips concedes that six of the 11 jurisdictions pled under Count IV do allow for medical monitoring as an independent cause of action (although they dispute the medical monitoring claims in some of those states on other grounds). *See* Br. at 32. To the extent that the Report calls for the dismissal of Count IV or suggests that more than the laws of 11 jurisdictions should be addressed as part of the resolution of Count IV, Plaintiffs and Defendants agree that this recommendation is mistaken. *See* Obj. at 4 ("Count IV asserts an independent cause of action for medical monitoring on behalf of Plaintiffs in just those eleven states that recognize such a cause of action. Nine of those states are not even among the [Disputed Jurisdictions], which strongly suggests the Special Master did not intend to so limit his recommendation.").

---

[7] Philips also calls for dismissal of Plaintiffs' request for appointment of a science panel which was agreed to by Plaintiffs (Opp. at 28). Obj. at 5. Plaintiffs do not contest this portion of the Objection.

[8] *See Supra*, note 2.

But that is where the parties' agreement ends. Plaintiffs do not agree with Philips' assertion that "[t]he Special Master's conclusion necessarily compels dismissal of all of Plaintiffs claims under the laws of the states for which the Special Master correctly found that alleging present physical injury is required." Obj. at 4. The full scope of findings in the Report reveals several inconsistencies. As noted in Plaintiffs' Objections, the overlap of states and arguments causes confusion because states differ as to whether there is an independent cause of action for medical monitoring; whether there is a physical injury requirement; and whether allegations of subcellular injury satisfy such a "physical injury" requirement. *See, e.g.*, Pls. Obj. at 4-5.

To be clear, the Special Master found that Plaintiffs properly alleged three important facts: (1) the requisite exposure, R&R at 13-22; (2) that diagnostic examinations will make early detection possible and are reasonably necessary, *id.* at 23-25; and (3) they have sustained subcellular injury, *id.* at 10-13, 27-35. Despite these findings, the Special Master ignored pecuniary injury as a basis for medical monitoring relief even though Plaintiffs would have to pay for these diagnostic tests.[9] *Id.* at 4-9. Instead, the Report applied a *per se* rule that if the highest court in a jurisdiction had not spoken definitively on the topic, it would default to the most restrictive rule which, in this case, meant requiring a plaintiff to plead physical injury. *Id.* at 6-9. Having taken that step, the Report fails to consider whether Plaintiffs' allegations of subcellular injury, which were found plausible, satisfy the physical injury requirement.

Plaintiffs also disagree with Philips' assertion that "[t]he Special Master correctly applied an *Erie* analysis" in analyzing the Disputed Jurisdictions. Obj. at 3. The entire premise of adopting a *per se* rule to find that states require a plaintiff to plead a present physical injury to state claim for medical monitoring runs counter to a proper *Erie* analysis that is supposed to be an unbiased

---

[9] *See, e.g.*, Pls. Opp. at 9-15.

prediction of what a state's highest court would rule. As it has done since its initial Brief, Philips distorts Third Circuit precedent to argue that this Court is *always* required to adopt the interpretation of state law against liability when a state's highest court has not opined on a given issue, even if relevant state authorities contradict that interpretation. Obj. at 2, 6-9. This argument misstates the principle elucidated in *Travelers Indem. Co. v. Dammann & Co.*, which found that courts should refrain from finding liability *only* when relevant state authority is hopelessly muddled or equally split. 594 F.3d 238, 253 (3d Cir. 2010) ("where 'two competing yet ***sensible*** interpretations' of state law exist.") (emphasis added).

A "competing interpretation" of a state's law is not "sensible" when it is contradicted by the weight of authority in that state. When "attempting to forecast state law," *Erie* requires the court to "consider relevant state precedents, analogous decisions, considered dicta, scholarly works, and any other reliable data tending convincingly to show how the highest court in the state would decide the issue at hand." *McKenna v. Ortho Pharm. Corp.*, 622 F.2d 657, 663 (3d Cir. 1980).[10] "[R]elevant state precedents must be scrutinized with an eye toward the broad policies that informed those adjudications, and to the doctrinal trends which they evince" *Id.* at 662. If relevant state authorities support an interpretation of state law that entails liability, and the competing interpretation has less support, then *Erie* requires this Court to adopt the interpretation that provides liability. *See, e.g.*, *Yurecka v. Zappala*, 472 F.3d 59 (3d Cir. 2006) (reversing grant of summary judgment for defendants based on an interpretation of the Pennsylvania rescue doctrine

---

[10] *See also City of Phila. v. Lead Indus. Ass'n, Inc.*, 994 F.2d 112, 123 (3d Cir.1993) ("An authoritative signal that a state's highest court would modify existing state law may be gleaned from lower state court decisions, the decisions of other courts, and treatises or other scholarly works. . . . Although not dispositive, decisions of state intermediate appellate courts should be accorded significant weight in the absence of an indication that the highest state court would rule otherwise.") (citations omitted).

that expanded liability); *New Castle Cty. v. Nat'l Union Fire Ins. Co.*, 174 F.3d 338 (3d Cir. 1999) (adopting an interpretation of Delaware that expanded liability).

      The jurisdictions that have not yet ruled on an independent medical monitoring cause of action, including the 27 Disputed Jurisdictions, recognize or would recognize the availability of medical monitoring damages as a remedy for another tort cause of action such as negligence. Allowing medical monitoring as a remedy for an underlying tort does not require this Court to find that the state at issue would recognize a new independent tort for medical monitoring, only that Plaintiffs may recover for the harm caused by Defendants under other, well-established torts. *See*, *e.g.*, *Sadler v. PacifiCare of Nev.*, 340 P.3d 1264, 1270 (Nev. 2014) (plaintiff may state a cause of action for negligence with medical monitoring as the remedy without present physical injury); Restatement (Second) of Torts § 7 (1965) ("Thus harm, as defined in this Section, is the detriment or loss to a person which occurs by virtue of, or as a result of, some alteration or change in his person . . . and also the detriment resulting to him from acts or conditions which impair . . . his pecuniary advantage . . . ."); *In re Valsartan, Losartan, & Irbesartan Prods. Liab. Litig.* ("*In re Valsartan*"), 2021 WL 364663, at *24 (D.N.J. Feb. 3, 2021) (discussing states that do not recognize an independent cause of action for medical monitoring but nonetheless allow a plaintiff to recover damages for medical monitoring as a remedy for other torts).

      Philips also calls for the dismissal of claims alleged under the laws of Alabama, Alaska, Kentucky, Louisiana, Michigan, Mississippi, North Dakota, South Dakota, Wisconsin, and Wyoming. Obj. at 5. However, Plaintiffs seek medical monitoring as a remedy under Pennsylvania law in all jurisdictions, including these 10 states. Because the issue of whether Pennsylvania law applies extraterritorially and to these Plaintiffs' claims, it is premature to dismiss these states.

Exhibit A to Plaintiffs' Objections is a chart outlining Plaintiffs' position with respect to each of the Disputed Jurisdictions. *See* ECF 2314-1. To further assist the Court, Plaintiffs attach as Exhibit A to this Response, a chart with the status of the medical monitoring claims asserted in each jurisdiction at issue here along with Plaintiffs' position.

**B.      It Is Premature to Address Overlapping Claims (Objection II)**

Philips objects that the R&R fails to recommend dismissal of claims that overlap with claims asserted in the Master Personal Injury Complaint where dismissal was recommended in the Master PI R&R. Obj. at 5-6. However, Plaintiffs have objected to or sought clarification about several of the recommendations in the Master PI R&R that would have direct implications on the "overlapping" claims. Pls. PI Obj. at 3-9; Pls. Mot. to Modify. In addition, Plaintiffs have requested leave to amend in limited circumstance. *See* Pls. PI Obj. at 6-10, 13; Pls. Mot. to Modify. Ultimately, dismissal of substantive causes of action in the Master Personal Injury Complaint should be consistently applied to the truly overlapping claims in the Medical Monitoring Complaint, but the time for such determinations has not yet arrived.[11]

**C.      The Report Correctly Found That Physical Injury Is Not Required to State a Claim for Medical Monitoring Under Tennessee Law (Objection III)**

The Special Master correctly found that medical monitoring under Tennessee law should survive dismissal on the pleadings. R&R at 9 n.11. Philips' argument amounts to little more than a command to not evaluate and predict Tennessee law but instead to fall back on a per se rule that

---

[11] Not all arguments are truly overlapping in the two complaints. For example, in the Master PI R&R, the Special Master recommended that the claims of certain states were subsumed in those states' product liability acts. Master PI R&R at 28-36. Notwithstanding other objections made by Plaintiffs to that recommendation, Plaintiffs sought leave to amend to add a count specifically delineating claims under each state's product liability act to resolve the issue. Pls. PI Obj. at 9-10; Pls. Mot. to Modify. This issue does not exist here where the Complaint does have a separate count for states' Product Liability Acts. *See* Complaint, Count XIV.

denies liability. Obj. at 6-7.

The Report correctly relies on the well-reasoned Sixth Circuit opinion in *Sutton* to predict Tennessee law. R&R at 9 n.11; *see also Sutton*, 419 F.3d at 570-75. Philips attempts to cast aside *Sutton* because of the posture in which the case was decided—injury-in-fact for Article III standing—even though the court was considering injury in a case involving directly analogous facts. The court framed the standing question as whether the class representatives "allege[d] an individual, personal injury," and held that the increased risk of disease requiring current medical monitoring constitutes a concrete present injury sufficient to confer standing. *Id.* Although the court did not directly rule on medical monitoring recovery under Tennessee law, it opined that Tennessee would recognize medical monitoring based solely on increased risk:

> . . . although Tennessee law is murky on the issue of whether claims for medical monitoring are cognizable, ***there are reasons why such claims are most probably proper***. First, we note that two Tennessee cases at least suggest that the state recognizes medical monitoring claims. *See Laxton v. Orkin Exterminating Co., Inc.,* 639 S.W.2d 431 (Tenn. 1982) (allowing recovery for medical expenses and mental anguish in the absence of physical injury where defendant negligently contaminated plaintiffs' household supply with toxic chemicals, and stating that "[t]here is no question as to the reasonableness of the medical expenses . . . . Even though the tests proved negative, in our opinion a jury could find sufficient 'injury' to these plaintiffs to justify a recovery for their natural concern and anxiety for the welfare of themselves and their infant children."); *Newsom v. Markus*, 588 S.W.2d 883, 887 (Tenn. Ct. App. 1979) (holding that "a party is entitled to recover reasonable medical expenses for examinations, etc., in an effort to determine if personal injuries were sustainable as a result of defendants [sic] negligence, even though it develops that the party suffered no personal injury.").

*Id.* at 575, n.7 (emphasis added).

*Sutton* and the cases it cites illustrate why the Special Master got it right. In *Laxton*,  the Tennessee Supreme Court upheld the recovery of out-of-pocket medical expenses in the absence of physical injury where plaintiffs ingested household water contaminated by dangerous chemicals. 639 S.W.2d at 432-34. *Laxton* was reaffirmed in *Carroll v. Sisters of St. Francis Health Servs., Inc.* where the court explained that in *Laxton* it was "able to discount the fact that the

plaintiffs had not suffered a classic physical injury, and to substitute as the required objective component of the prima facie case the plaintiffs' direct exposure to the carcinogenic chemical." 868 S.W.2d 585, 594 (Tenn. 1993) (citing additional cases); *see also Camper v. Minor*, 915 S.W.2d 437, 446 (Tenn. 1996) (eliminating manifest injury requirement for emotional distress). These decisions from the Tennessee Supreme Court, along with *Sutton* and *Newsom*, provide a substantial basis from which this Court should predict that Tennessee would recognize the recovery of medical monitoring damages without the need to show physical injury and certainly with allegations of subcellular injury.

Defendants' cases are inapposite. *See* Obj. at 7 (citing *Potts v. Celotex Corp.*, 796 S.W.2d 678 (Tenn. 1990) and *Rye v. Women's Care Ctr. of Memphis, MPLLC*, 477 S.W.3d 235 (Tenn. 2015)). As a preliminary matter, neither is a medical monitoring case. *Potts* was a statute of limitations decision analyzing the discovery rule for asbestos mesothelioma cases. *See Potts*, 796 S.W.2d at 680-81. And, in *Rye*, the plaintiff did not allege she was exposed to toxic chemicals that required her to incur costs to monitor whether she developed a disease but instead alleged that because of her doctor's negligence, she might be required to incur additional medical expenses at some unknown point in the future. *See, e.g., Rye*, 477 S.W.3d at 238-39 (ruling on summary judgment that evidence of the need for future medical expenses was too speculative).

The Special Master's finding is consistent with those of several federal courts that have recently relied upon *Sutton* to deny a motion to dismiss claims seeking medical monitoring under Tennessee law. *See In re JUUL Labs, Inc. Mktg. Sales Prac. & Prod. Liab. Litig.*, 2021 WL 3112460, at *16 (N.D. Cal. July 22, 2021) ("The parties dispute and cite contrary authority under Tennessee law; absent definitive authority, the claim is not dismissed at this juncture."); *In re Valsartan*, 2021 WL 364663, at *24 (grouping Tennessee among states that "may not recognize

11

independent claims for medical monitoring, they may, however, allow a plaintiff under certain circumstances to recover damages for medical monitoring premised on another claim). The Report correctly assessed Tennessee law.

**D.      Plaintiffs' Declaratory Judgment Claim Is Appropriate (Objection IV)**

Philips objects to the Special Master's finding that Plaintiffs' Declaratory Judgment Act claim should not be dismissed taking exception to the Report's use of the phrase "academic." Obj. at 7-8. Semantics aside, the Special Master's determination is correct because Plaintiffs allege that the harm from Defendants' past conduct is ongoing and will continue, rendering the conduct suitable for a declaratory judgment. *See, e.g.*, ¶¶ 367-86.

Philips mainly argues that Plaintiffs' claim should be dismissed because Plaintiffs seek to recover for past conduct relating to the Recalled Devices, conduct which cannot be adjudicated via a declaratory judgment claim. Def. Obj. at 7-8. But, defendants bear the "heavy burden of proving that there is no reasonable expectation that the past conduct will be repeated." *Allen v. Colautti*, 417 A.2d 1303, 1306 (Pa. Commw. Ct. 1980) (citing *United States v. W.T. Grant Co.*, 345 U.S. 629, 633 (1953)). Pennsylvania courts have consistently held that declaratory actions will not be dismissed where they concern questions of a recurring nature, capable of avoiding review, and of important public interest. *Temple University of the Commonwealth System of Higher Education v. Department of Public Welfare*, 374 A.2d 991, 995 (Pa. Commw. Ct. 1977). Nor will a case be dismissed as moot merely because alleged illegal conduct has been stopped. *W. T. Grant Co.*, 345 U.S. at 632.

As noted, Philips objects to the word "academic," which it argues relates to "mootness." Def. Obj. at 7-8. However, the Third Circuit has found that "[v]oluntary cessation" of misconduct (such as Philips' decision to cease using PE-PUR foam) "will moot a case only if it is 'absolutely clear that the allegedly wrongful behavior could not reasonably be expected to recur.'" *Fields v.*

*Speaker of Pa. House of Representatives*, 936 F.3d 142, 161 (3d Cir. 2019) (quoting *Parents Involved in Cmty. Sch. v. Seattle Sch. Dist. No. 1*, 551 U.S. 701, 719 (2007)). Here, Defendants have failed to show that there is "no reasonable likelihood that a declaratory judgment would affect the parties' future conduct." *See, e.g.*, *Rhodes v. Stewart*, 488 U.S. 1, 4 (1988) (*per curiam*); *United States v. Gov't of the V.I.*, 363 F.3d 276, 285 (3d Cir. 2004).

### E.   The Special Master Properly Recommended Upholding Plaintiffs' Claims Under the Product Liability Acts of Several States (Objection V)

Philips contends that the Special Master erred when he found that Plaintiffs' claims under the product liability acts of New Jersey, Connecticut, Indiana, Kansas, Ohio, Tennessee, and Washington should not be dismissed. Obj. at 8-9. Philips argues that these claims must be dismissed because Plaintiffs have failed to allege a "'manifest' physical injury," *id*., but the Special Master properly found either that no such requirement exists under these statutes or to the extent that it does, Plaintiffs' allegations of subcellular injury satisfy the requirement, R&R at 27-35. *See also In re Valsartan*, 2021 WL 12142025, at *12 (D.N.J. Oct. 7, 2021) (rejecting an identical argument that plaintiffs' allegations of subcellular injury were insufficient to support product liability act claims for medical monitoring because the "broad definitions of harm [in the product liability acts] do not exclude cellular or even subcellular injury, and it would not be prudent to bar medical monitoring claims at this juncture of the case in the absence of definitive controlling authority from a particular state"). The Special Master's determination is consistent with the analysis that should have happened elsewhere in the Report—when physical injury is required, the question is whether subcellular injury as alleged here satisfies that requirement. With respect to the product liability acts at issue, the Special Master appropriately determined that it did (elsewhere, the Report ignores the allegations of subcellular injury and performs no such analysis).

Philips' focus on the New Jersey Product Liability Act ("NJPLA") illustrates the flaw in its position. The Special Master properly found that Plaintiffs sufficiently allege injury under the NJPLA. R&R at 32. Philips overreads *Sinclair v. Merck & Co.*, in an effort to make its point. 948 A.2d 587 (N.J. 2008). As explained in Plaintiffs' Opposition, *Sinclair* did not find that subcellular injury is insufficient to satisfy any physical injury requirement that is contained in the NJPLA. Pls. Opp. at 31-32; *see Brown v. Abbott Labs., Inc.*, 2011 WL 4496154, at *3 (N.D. Ill. Sep. 27, 2011) ("[*Sinclair*] did not ... impose some minimum threshold of physical injury or illness below which damages are unavailable. The court merely held that the plaintiff must suffer an actual physical injury or illness."). *Sinclair* considered whether plaintiffs alleging only increased risk of future injury "may seek to recover the costs of medical monitoring ***without an allegation of physical injury***." *Sinclair*, 948 A.2d at 591 (emphasis added). The court concluded that the NJPLA requires physical injury and affirmed dismissal of plaintiffs' NJPLA claim. *Id.* at 595 ("[I]t is not disputed that plaintiffs do not allege a personal physical injury."). Thus, while *Sinclair* did find that physical injury is required, it does not address whether subcellular injury satisfies that requirement.

New Jersey case law makes clear that the New Jersey Supreme court recognizes subcellular injury as sufficient to satisfy a physical injury requirement and therefore, sufficient to sustain a claim under the NJPLA. *See, e.g.*, *Ayers v. Jackson*, 525 A.2d 287 (N.J. 1987) (upholding a remedy of medical monitoring based in part on allegations of subcellular injury).[12] Here, as the Special Master correctly recognized, Plaintiffs have alleged "physical injury" for the purposes of the

---

[12] *Sinclair* makes clear that *Ayers* "remains the law in New Jersey." *Sullivan v. Saint-Gobain Performance Plastics Corp.*, 431 F. Supp. 3d 448, 464 (D. Vt. 2019) (citing *Sinclair*, 948 A.2d at 591; citing *Ayers*, 525 A.2d at 311). In *Ayers*, the Supreme Court of New Jersey held that the cost of medical monitoring was a compensable item of damages when the need for such monitoring resulting from exposure to toxic chemicals and noted that plaintiffs' expert had testified that "exposure to chemicals had already caused actual physical injury to plaintiffs ***through its adverse effects on the genetic material within their cells***." *Ayers*, 525 A.2d at 303 (emphasis added).

NJPLA in the form of subcellular injury. This interpretation of New Jersey law reflects the thrust of relevant decisions. *See In re Valsartan*, 2023 WL 1818922 (D.N.J. Feb. 8, 2023) (certifying a medical monitoring class including New Jersey plaintiffs seeking monitoring as a remedy to their NJPLA claims on subcellular injury allegations).

As the Special Master explains in the Report, neither the statutory text of the product liability acts[13] nor applicable state caselaw supports Defendants' claim that Plaintiffs' alleged subcellular injury does not satisfy applicable injury requirements. R&R at 27-35. As explained above in Section II.A, *supra*, Philips' argument proceeds from a faulty premise: that in the absence of authority from a state's highest court, the product liability acts must be interpreted to most severely limit Defendants' liability. On the contrary, ample authority supports the conclusion that the highest courts in these states would find that Plaintiffs' allegations of subcellular injury would satisfy applicable statutory requirements. Pls. Opp. at 32-38.

## III.   <u>CONCLUSION</u>

Based upon the foregoing and the reasons set forth in Plaintiffs' Objections, the Court should overrule Philips' Objections and deny Defendants' Motion to Dismiss.

---

[13] *See, e.g.*, Wash. Rev. Code. § 7.72.010 (2008) ("'Harm' includes any damages recognized by the courts of this state . . . ."); Conn. Gen. Stat. § 52-572m(d) (2008) ("'Harm' includes . . . personal injuries . . . ."); Ind. Code § 34-20-1-1 (2008) (product liability act applies to actions "for physical harm caused by a product"); Kan. Stat. Ann. § 60-3302 (2006) ("'Harm' includes: . . . personal physical injuries, illness or death."); Ohio Rev. Code Ann. 2307.71(A)(7) (2008) ("'Harm' means death, physical injury to person, serious emotional distress, or physical damage to property . . . ."); Tenn. Code Ann. § 29-28-102(6) (2008) ("'Product liability action' . . . includes all actions . . . on account of personal injury, death or property damage").

DATED:  November 30, 2023                    Respectfully submitted,

*/s/ Sandra L. Duggan*                        */s/ Steven A. Schwartz*
Sandra L. Duggan, Esquire                     Steven A. Schwartz, Esquire
**LEVIN SEDRAN & BERMAN LLP**                 **CHIMICLES SCHWARTZ KRINER &**
510 Walnut Street, Suite 500                  **DONALDSON-SMITH LLP**
Philadelphia, PA 19106                        361 West Lancaster Avenue
(215)592-1500 (phone)                         One Haverford Centre
sduggan@lfsblaw.com                           Haverford, PA 19041
                                              (610) 642-8500 (phone)
                                              steveschwartz@chimicles.com
*/s/ Christopher A. Seeger*
Christopher A. Seeger, Esquire                */s/ Kelly K. Iverson*
**SEEGER WEISS LLP**                          Kelly K. Iverson, Esquire
55 Challenger Road, 6th Floor                 **LYNCH CARPENTER, LLP**
Ridgefield Park, NJ  07660                    1133 Penn Avenue, 5th Floor
(973) 639-9100 (phone)                        Pittsburgh, PA 15222
cseeger@seegerweiss.com                       (412) 322-9243 (phone)
                                              kelly@lcllp.com

*Plaintiffs' Co-Lead Counsel*

*/s/ D. Aaron Rihn*                           Peter St. Tienne Wolff, Esquire
D. Aaron Rihn, Esquire                        **PIETRAGALLO GORDON ALFANO**
**ROBERT PEIRCE & ASSOCIATES,**               **BOSICK & RASPANTI, LLP**
**P.C.**                                      One Oxford Centre - 38th Floor
707 Grant Street, Suite 125                   Pittsburgh, PA 15219
Pittsburgh, PA 15219                          (412) 263-2000 (phone)
(412) 281-7229 (phone)                        (412) 263-2001 (fax)
(412) 281-4229 (fax)                          psw@pietragallo.com
arihn@peircelaw.com

*Plaintiffs' Co-Liaison Counsel*

16

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that a true and correct copy of the foregoing document was filed via the

Court's CM/ECF system on November 30, 2023, and is available for download by all counsel of

record.

*/s/ D. Aaron Rihn*
D. Aaron Rihn
PA I.D. No.: 85752
ROBERT PEIRCE & ASSOCIATES, P.C.
707 Grant Street
Suite 125
Pittsburgh, PA 15219
Tel: 412-281-7229
Fax: 412-281-4229
arihn@peircelaw.com