# IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| IN RE: PHILIPS RECALLED CPAP, BI-LEVEL PAP, AND MECHANICAL VENTILATOR PRODUCTS LITIGATION<br><br>This Document Relates to: Medical Monitoring Track | Master Docket: Misc. No. 21-1230<br><br>MDL No. 3014<br><br>**PLAINTIFFS' OBJECTIONS TO SPECIAL DISCOVERY MASTER'S REPORT AND RECOMMENDATION AND PROPOSED ORDER RE: DISCOVERY OF MEDICAL MONITORING NAMED PLAINTIFFS' MEDICAL HISTORIES AND PREVIOUS EXPOSURES TO HAZARDOUS SUBSTANCES** |

The discovery served by Defendant Philips RS ("Defendant" or "Philips") is not relevant, is overbroad, and seeks to invade the physician-patient privilege. Medical Monitoring Plaintiffs have *not* asserted personal injury claims. Rather, they assert claims for medical monitoring; specifically for economic damages in the form of necessary costs for the early detection of disease caused by exposure to the toxic foam in Philips' Recalled Devices.

The Special Master's Report and Recommendation ("R&R") requires Plaintiffs to, *inter alia*, broadly identify "All diagnosed medical conditions or injuries, and any medications or treatments. . ." even if unrelated to the "injuries allegedly attributable to use of a Recalled Device." In essence, for this case—which *is not* a personal injury case—Philips seeks *a robust description of every medical injury or condition ever experienced*[1] by Plaintiffs, whether related to domestic abuse, substance abuse, broken bones, chiropractic treatment, physical therapy, and a host of medical conditions unrelated to Plaintiffs' claim. Interrogatory 13.[2]

The records and information requested are covered by the right to privacy and the physician-patient privilege. Plaintiffs will not use any of this information in proving their claims for the cost of medical monitoring because the information has no relationship to Plaintiffs' claims, which are based solely on the exposure to Foam Toxins that Philips created. The R&R failed to properly weigh the at most minimal relevance of the information sought to be discovered against Plaintiffs' inherent right to privacy in their medical and employment information. Philips has not and cannot meet the minimum standard of relevancy under Rule 26,

---

[1] The Special Master limited this Interrogatory to the past ten years.
[2] The corresponding Request for Production requires Plaintiffs to disclose ten years of medical records related to the litany of conditions Philips has identified as potentially caused by its toxic foam, which would require disclosure of, for example, gynecological records, mammograms, all blood testing performed on any Plaintiff, and many other private, personal, and irrelevant records. RFP 22.

much less the higher burden of relevancy implicated by Plaintiffs' right to privacy. Indeed, discovery is not required where Philips justifies such discovery on the mere hope that it finds *something* in its fishing expedition. The R&R mistakes and misapplies the law as to the proof at issue by erroneously finding that some other exposure or family history is relevant to whether Philips' tortious conduct caused sufficient exposure to create an increased risk of disease, which Plaintiffs must prove here. What Philips seeks does not provide any defense to what Plaintiffs claim in a case that does not allege damages for manifest personal injury.

## I.       THE SENSITIVE INFORMATION PHILIPS SEEKS IS NOT DISCOVERABLE

The scope of discovery under the Rule is broad, but it is not without limits. *Hay v. Somerset Area Sch. Dist*., 2017 WL 2829700, at *1 (W.D. Pa. June 29, 2017) (citing *Bayer AG v. Betachem, Inc.*, 173 F.3d 188, 191 (3d Cir. 1999). A party seeking an order compelling discovery has the burden of proving the relevance of the requested information. *Trask v. Olin Corp.*, 298 F.R.D. 244, 263 (W.D. Pa. 2014). Under Rule 26, "the scope of all discovery is limited to matter that is relevant to the claims or defenses in the case and proportional to what is at stake in a given case." *Cole's Wexford Hotel, Inc. v. Highmark, Inc*., 209 F.Supp.3d 810, 823 (W.D. Pa. 2016).

Rule 26(b)(2)(C) requires the Court to limit the extent of the discovery when, among other things, "the burden or expense of the proposed discovery outweighs its likely benefit" or the information can be obtained from another, less burdensome, source. *Pro. Recovery Servs., Inc. v. Gen. Elec. Cap. Corp.*, ,2009 WL 137326, at *4 (D.N.J. Jan. 15, 2009). Discovery should be tailored to the issues involved in the particular case. *Washington v. Brown & Williamson Tobacco Corp.*, 959 F.2d 1566, 1570 (11th Cir. 1992). "Discovery is not so liberal as to allow a party to roam in shadow zones of relevancy and to explore matter which does not appear germane merely on the theory that it might become so." *In re Fontaine*, 402 F. Supp. 1219, 1221

(E.D.N.Y. 1975). The party seeking discovery has the burden of showing that the information sought is relevant to the subject matter of the action. *Nestle Foods Corp. v. Aetna Cas. and Sur. Co.*, 135 F.R.D. 101, 104-05 (D.N.J. 1990). Mere suspicion or speculation that relevant information may exist is insufficient to justify discovery. *Hashem v. Hunterdon County*, C.A. No. 15-8585 (FLW/DEA), 2017 WL 2215122, at *3 (D.N.J. May 18, 2017 (denying subpoena for complete educational records). Where the party seeking discovery has no compelling need for third parties' information, "even a slight privacy interest outweighs the absence of any need for the information." *Lawrence v. Hoban Mgt., Inc.*, 305 F.R.D. 589, 593 (S.D. Cal. 2015), on reconsideration in part, 103 F. Supp. 3d 1216 (S.D. Cal. 2015).

Federal courts recognize a constitutionally based right of privacy that can be raised in response to discovery requests. *Zuniga v. Western Apartments,* 2014 WL 2599919, at *3 (C.D. Cal. Mar. 25, 2014). The United States Supreme Court has recognized a constitutional right to privacy—more specifically, a constitutional right to nondisclosure of one's personal information. *Whalen v. Roe,* 429 U.S. 589, 599, (1977); *Nixon v. Adm'r of Gen. Servs.,* 433 U.S. 425, 457 (1977). There can be no question that medical records, which often contain intimate facts of a personal nature, are well within the ambit of materials entitled to privacy protection. *United States v. Westinghouse Elec. Corp.*, 638 F.2d 570, 577 (3d Cir. 1980). It has been recognized in various contexts that medical records and information stand on a different plane than other relevant material. *Id*.

When the constitutional right of privacy is involved, 'the party seeking discovery must demonstrate a compelling need for discovery, and that compelling need must be so strong as to outweigh the privacy right when these two competing interests are carefully balanced.' *Artis v. Deere & Co.,* 276 F.R.D. 348, 352 (N.D. Cal. 2011) (quoting *Wiegele v. Fedex Ground Package*

*Sys.,* 2007 WL 628041, at *2 (N.D. Cal. Feb. 8, 2007)). Compelled discovery within the realm of

the right of privacy "cannot be justified solely on the ground that it may lead to relevant

information." *Id.* (quoting *Wiegele,* 2007 WL 628041, at *2). For example, personnel files, even

of a party's agent, may contain information that is both private and irrelevant to the case, and

special care must be taken in the discovery analysis. *See Miles v. Boeing Co.,* 154 F.R.D. 112,

115 (E.D. Pa. 1994); *In re Sunrise Securities Litigation,* 130 F.R.D. 560, 580 (E.D. Pa. 1989),

*clarified* by 109 B.R. 658 (E.D.Pa. 1990). In such situations, discovery may be denied, or it may

be narrowly tailored to meet the needs of the case, balanced against reasonable expectations of

privacy. *Pro. Recovery Servs.*, 2009 WL 137326, at *4. To cast a wide net for discovery of

information in the hopes that something of use may come back is the exact type of fishing

expedition precluded by proportionality. *Id.*

## II.    PRESENT AND PAST HEALTH, WORK, AND FAMILY HISTORY ARE NOT RELEVANT TO A CLAIM FOR MEDICAL MONITORING COSTS

### A.    The Elements of a Medical Monitoring Claim Do Not Make Medical Histories Relevant

The elements of a claim for medical monitoring are (1) exposure greater than normal

background levels; (2) to a proven hazardous substance; (3) caused by the defendant's

negligence; (4) as a proximate result of the exposure, plaintiff has a significantly increased risk

of contracting a serious latent disease; (5) a monitoring procedure exists that makes the early

detection of the disease possible; (6) the prescribed monitoring regime is different from that

normally recommended in the absence of the exposure; and (7) the prescribed monitoring regime

is reasonably necessary according to contemporary scientific principles. *Redland Soccer Club,*

*Inc. v. Dep't of the Army,*696 A.2d 137, 145–46 (1997). None of these elements requires proof of

manifest physical injury; that requirement is for personal injury claims that seek treatment and

care for manifest physical injury. *Merry v. Westinghouse Elec. Corp.*, 684 F.Supp. 847 (M.D. Pa. 1988) (actual physical injury is not required before claim for medical monitoring can be maintained).

The elements of medical monitoring are not disjunctive: the exposure at issue is (1) exposure greater than normal background levels, (2) to a proven hazardous substance, *and* (3) caused by the defendant's negligence. *Id.* Thus the exposure at issue is the exposure caused by the Philips CPAP breathing devices alone: the tortiously caused exposure, not some prior exposure in the workplace or based on family history.

### B.     Plaintiffs Claim the Financial Cost of Medical Monitoring, Not Manifest Personal Injury

Plaintiffs allege that they and Class members have been significantly exposed to the proven hazardous Foam Toxins released by PE-PUR foam in the Recalled Devices when they inhaled and/or ingested these Foam Toxins through their respiratory tract and gut. ¶ 265.[3] As a result, Plaintiffs and Class members have been, and are presently, at an increased risk of illness, disease, or disease processes, requiring them to incur, both now and in the future, the cost of medically necessary diagnostic testing for the early detection of illness, disease, and disease processes arising from their exposure to the Foam Toxins during use of the Recalled Device. *Id*. ¶¶ 272 274, 284.

In other words, Plaintiffs seek compensation for the cost of medically necessary diagnostic testing for the early detection of now latent and unknown Foam Toxin-related illness or disease, not now-diagnosed physical injury. *See In re Paoli R.R. Yard PCB Litig.*, 916 F.2d 829, 850 (3d Cir. 1990) (the injury in a medical monitoring claim is the cost of the medical care

---

[3] All citations beginning with "¶" are citations to the Second Amended Complaint, ECF No. 815.

that will detect physical injury"). And Plaintiffs' claims are based solely on the amount of exposure Philips has tortiously *created* with the Foam Toxins. Philips attempts to discourage Plaintiffs from participating by invading their right to privacy, pawing through their most private life details. Philips seeks unlimited medical information even though these medical monitoring claims *are not* personal injury claims; there is a separate track for personal injury claims. *See* Amended Master Long Form Complaint for Personal Injuries and Damages, ECF No. 834.

### C.   Even For Personal Injury Claims, Which Medical Monitoring Plaintiffs Are Not Making Here, A Plaintiff Only Waives the Physician-Patient Privilege for Physical Conditions Put at Issue

Even in a personal injury case, which this is not, the injured person does not waive her physician-patient privilege for every medical condition; a claim for a broken arm from an auto accident does not waive the privilege for gynecological or neurological records. There must not be a lower bar for disclosure of medical information in medical monitoring cases than in personal injury cases.

There is no question that the physician-patient privilege attaches to each Plaintiff's medical records. Courts have recognized a privacy interest in keeping one's medical records confidential. Section I, *supra*. Pennsylvania law, for example, specifically recognizes a patient's right to keep their medical records confidential under a right to privacy recognized under the State's constitution. *Commonwealth v. Larsen*, 682 A.2d 783 (Pa. Super. Ct. 1996). The privilege is also statutorily protected under 42 Pa.C.S. §5929, prohibiting physicians from revealing certain medical information without consent unless the patient brings a *personal injury action*.

Even if the claims at issue were for personal injury, waiver is not unlimited. A waiver to the right of privacy of one's medical information is limited to litigation where a plaintiff places their health at issue, and only to the extent that the condition is relevant to the litigation.

*Klovensky v. Moore*, 57 Pa. D. & C.4th 370, (Pa. Com. Pl. Ct. 2002). Waiver of the physician-patient privilege is limited to those records relating to the cause and extent of the injuries and damages allegedly sustained because of the defendant's claimed negligence. *Alcon v. Spicer*, 113 P.3d 735, 737, 741 (Colo. 2005), *as modified* (June 27, 2005). Even where a litigant has made a personal injury claim, there can be no question that some parts of the plaintiff's medical history are not only irrelevant to the present action but also of a highly private and personal nature. *Slayton v. Biebel*, 37 Pa. D. & C.4th 140, 144 (Pa. Com. Pl. Ct. 1998). The Rules explicitly contemplate protecting parties from "annoyance, embarrassment, oppression, or undue burden or expense..." Fed. R. Civ. P. 26(c). "Plaintiff is not compelled, as a condition to entering the courtroom, to discard entirely her mantle of privacy." *Vinson v. Superior Court*, 43 Cal.3d 833, 841-842 (1987.) Rather, only those issues that have been directly put at issue are waived. Waiver of physician-patient privilege is only partial *even in a personal injury case*, extending not to all information regarding the plaintiff's entire medical history, but only to what is relevant to the plaintiffs' claims. *Nelson v. Lewis*, 534 A.2d 720, 722 (1987); *see also Desclos v. S. New Hampshire Med. Ctr.*, 903 A.2d 952, 959 (2006).

> **D.    Plaintiffs' Present and Past Physical Health Is Not Put at Issue by Their Medical Monitoring Claims Because Manifest Physical Injury Is Not an Element of Their Claims**

Recovery of medical monitoring costs does not require proof of manifest physical injury as a predicate to recover medical monitoring expenses, but instead proof of significant exposure. *See, e.g.*, *Meyer v. Fluor Corp.*, 220 S.W.3d 712, 714, 716 (Mo. 2007) (no necessity of establishing a present physical injury); *Bower v. Westinghouse Elec. Corp.*, 522 S.E.2d 424, 430-33 (W.Va. 1999) (rejecting the contention that a claim for medical monitoring rests on proof of present physical harm; allowing recovery based on exposure); *Sadler v. PacifiCare of Nev., Inc.*,

340 P.3d 1264, 1269-71 (Nev. 2014) (a plaintiff may state a cause of action for negligence with medical monitoring as the remedy without asserting that he or she has suffered a present physical injury); *Exxon Mobil Corp. v. Albright*, 71 A.3d 30, 66, 75-76, 80 (Md. 2013); *Hansen v. Mountain Fuel Supply*, 858 P.2d 970, 977, 979, 981 (Utah 1993); *Burns v. Jaquays Mining Corp.*, 752 P.2d 28, 33 (Az. App. 1987); *Potter v. Firestone Tire & Rubber Co.*, 863 P.2d 795, 822 (Cal. 1993); *Redland*, 696 A.2d at 145-46; *Ayers v. Jackson*, 525 A.2d 287, 304-05 (N.J. 1987); *Askey v. Occidental Chemical Corp.*, 102 A.D.2d 130, 136 (N.Y. App. Div. 1984). A manifest physical injury requirement is inconsistent with the reality of latent harm and the purpose of medical monitoring, which is to facilitate early diagnosis and treatment of latent injuries caused by toxic exposure. *Meyer*, 220 S.W.3d at 718*; Merry v. Westinghouse Elec. Corp.*, 684 F.Supp. 847 (M.D. Pa. 1988) (actual physical injury is not required for a medical monitoring claim).[4]

In *Meyer*, a childhood lead medical monitoring case, the Missouri Supreme Court overturned the trial court's finding that individual issues predominated over the common issues, including the nature of the exposure, the time period over which the exposure occurred, *the existence of other sources such as lead paint for any presence of lead, whether the individuals are presently suffering from any lead related injuries*, whether the individuals are still being exposed, *and whether there is any need for a particular individual to be monitored*. *Meyer*, 220 S.W.3d at 719 (emphasis added). The court held that "[e]ach of these [ ] individual factors is primarily relevant to a personal injury action, not a medical monitoring claim for which there is

---

[4] Even in states that require proof of present injury in the form of subcellular harm, the analysis of the relevance of Plaintiffs' medical and employment records does not change, because proof of subcellular harm is a matter of expert testimony and not plaintiffs' medical and employment information and records. *See Redland*, 696 A.2d 137 at 147.

no necessity of establishing a present physical injury." *Id.* Further, the court noted the common fact of exposure to a set of toxins from a single source that was the overriding issue and the individual factors identified by the trial court were not particularly relevant because the need for monitoring is based on a common threshold of exposure. *Id*. *Meyer* demonstrates that individual medical histories are irrelevant in a medical monitoring case.

The crux of Plaintiffs' claims is to recover the pecuniary loss of the cost of medically necessary testing for the early detection of disease. Because manifest physical injury is not an element of their claims, Plaintiffs have not put their physical condition at issue and so have not waived the physician-patient privilege concerning their past or present physical condition, let alone that of some third person.

### III.   THE SPECIAL MASTER ERRED IN CONCLUDING THAT THE FOURTH ELEMENT OF MEDICAL MONITORING PUT PLAINTIFFS' MEDICAL CONDITIONS, EMPLOYMENT AND FAMILY HISTORY AT ISSUE

The Special Master erroneously suggests that the fourth element, "whether as a proximate result of the exposure, plaintiff has a significantly increased risk of contracting a serious latent disease," puts Plaintiffs' medical condition at issue. R&R at 4-5. The R&R errs in its analysis. "The exposure" at issue is (1) exposure greater than normal background levels, (2) to a proven hazardous substance, and (3) caused by the defendant's negligence. *Redland*, 696 A.2d 137, 147. Either Plaintiffs can show through expert testimony that the baseline exposure to the Foam Toxins causes an increased risk of contracting a serious disease, or they cannot. By focusing on the fourth element in isolation, R&R at 4, 5, the Special Master errs in uncoupling the significantly increased risk of disease from the exposure tortiously caused by Philips, which is the exposure at issue. Moreover, the R&R treats this case as a claim for personal injury, seeking to allow a differential diagnosis for a manifest personal injury not at issue in Plaintiffs' case. The

issue here is not whether there are speculative other causes for already manifest diseases, but whether the Philips-caused toxic exposure creates the need for monitoring.

This "causation element" does not make Plaintiffs' medical, family or work history relevant because the issue is solely whether Philips' conduct was the cause of the increased risk of injury, not because of or even in combination with any other exposure. *See, e.g., In re Valsartan, Losartan, & Irbesartan Prods. Liab. Litig.*, 2023 WL 1818922, at *37 (D.N.J. Feb. 8, 2023) (rejecting the defendant's implied causation defense to class certification, finding that each class member shared a common legal question of the possibility of an increased cancer risk). The R&R cites *Sullivan v. Saint-Gobain Performance Plastics Corp.*, Case No. 5:16-CV-125, 2017 WL 11508079 at *4 (D. Vt. September 13, 2017). But while the *Sullivan* Court initially ordered the production of medical records without an analysis of privilege law, the court later rejected the relevance of that discovery when it certified the medical monitoring class. 2019 WL 8272995, at *18 (D. Vt. Aug. 23, 2019). The court found that where plaintiffs claim an increased risk of injury and seek only medical monitoring, "[t]he strength of their claims does not depend on individual features of their health or the level of their exposure." *Id*. The court rejected the defendant's argument that an individual's risk of illness depends on the individual's background risk, general health, and individual differences. *Id*. The court noted the plaintiffs sought only testing and monitoring, which varies little between individuals. *Id*. As *Sullivan* found, individual medical health histories have no relevance to medical monitoring claims.

## IV.   THE SPECIAL MASTER ERRONEOUSLY CONCLUDES THAT THE SIXTH ELEMENT PUTS PLAINTIFFS' MEDICAL AND WORK HISTORIES AT ISSUE

The R&R erroneously concludes that the sixth prong of medical monitoring, "whether the prescribed medical monitoring regime is different from that normally recommended in the absence of exposure," would make Plaintiffs' medical records relevant. Proof of the elements of

10

medical monitoring will naturally require expert testimony. *Redland*, 696 A.2d at 147; *Ayers*, 525 A.2d at 312. This element examines whether the monitoring differs from guidelines proposed for the general population, not the individual. *Redland*, 696 A.2d at 147; *see also Sadler*, 340 P.3d at 1271 (to satisfy this element, it is necessary for a plaintiff to demonstrate that the monitoring is something greater than recommended for the public at large). This is an issue of administration, not discovery. If a particular plaintiff is already undergoing certain monitoring programs and/or testing for a particular health endpoint, the class member does not receive that particular testing but receives the other diagnostic testing prescribed for the several diseases to which Philips's conduct has exposed her.

## V.      THE CITED CASELAW DOES NOT SUPPORT PRODUCTION HERE

The Special Master cites four additional federal district court decisions that limit discovery to much less than what Philips seeks but still are overbroad in their production of medical records. They do not determine the issue here.

*Brown v. Saint-Gobain Performance Plastics Corp.,* 2018 WL 10517306, at *1 (D.N.H. Oct. 10, 2018), a decision "Not For Publication," ignored the state supreme court holding that waiver of physician-patient privilege is only partial *even in a physical injury case*, extending not to all information given in the course of treatment, but only to what is relevant to the plaintiffs' claims. *Nelson*, 534 A.2d at 722; *see also Desclos*, 903 A.2d at 959. *Brown* also relied on the *Sullivan* decision before its deeper analysis of medical monitoring claims, as addressed above, and *Ballard* and *O'Connor*, as addressed below.

In *O'Connor v. Boeing N. Am., I,* plaintiffs brought both personal injury claims and property damage claims. 185 F.R.D. 272 (C.D. Cal. 1999). There are no personal injury claims in this case. In *Fiorentino v. Cabot Oil & Gas Corp*., 2011 WL 5239068 (M.D. Pa. Oct. 14, 2011),

the special master incorrectly evaluated the relevance of medical records based on her prediction of just one of the elements of a monitoring claim under Pennsylvania law, despite recognizing both the absence of binding precedent in the state and that the injury at issue is the cost of medical monitoring. 2011 WL 5239068 at *6-7. The special master never analyzed the physician-patient privilege, let alone the extent of any waiver. *Ballard v. Union Carbide Corp.*, 2012 WL 2089511, at *4 (S.D.W. Va. June 8, 2012), addresses three interrogatories and no production of records.

## VI.   THE SPECIAL MASTER ERRED IN ORDERING THE PRODUCTION OF MEDICAL, FAMILY HISTORY, AND WORKERS COMPENSATION INFORMATION

The Special Master erroneously recommends production of privileged information. The Special Master recommends that Plaintiffs respond to Interrogatory 11, regarding monitoring Plaintiff has participated in the last five years, without regard to the condition being monitored, and production of documents identified in Production Request 22, all medical treatment or diagnostic testing prescribed to the Plaintiff for the past 10 years, for any Pleaded Condition. Besides having no probative value as to whether diagnostic testing is medically necessary for Foam Toxin exposure, this request would require someone exposed to Foam Toxins in the lungs to identify testing for pregnancy, cholesterol, contraception, prostate cancer, surgeries, breast biopsies, counselling, gynecological records, broken bones, auto accident injuries, physical abuse, and a host of private physician-patient privileged information that is not remotely relevant to Plaintiffs' claims.  And Philips has made no effort to relate such records to the claims in the case, nor could it.

The Special Master recommends the Court compel Plaintiffs to respond to Interrogatory 12, regarding all health care providers who provide regular check-ups, x-rays, blood tests or

other diagnostic test, screening, or surveillance, regardless of the condition, for the past ten years. This would require a Plaintiff to waive their physician-patient privilege and identify physicians who provided pap smears, skin checks, cholesterol, sexually transmitted disease screening, eye exams, thyroid, prostate exams, and a host of other screenings or diagnostic testing. The Special Master recommends Plaintiffs respond to Interrogatory 13, requiring Plaintiff to identify all medical conditions, injuries, medications, and treatment. Separate from the request having no probative value relating to whether diagnostic testing is medically necessary for the Foam Toxin exposure, this request would require disclosure of procedures such as tonsillectomies, pregnancies, hernia repairs, and the like, which have no probative value here.

The Special Master recommends Plaintiffs respond to Interrogatory 14 asking for history of smoking or tobacco use. This recommendation demonstrates the fundamental misunderstanding in the Special Master's R&R: these are not personal injury claims. The issue is solely whether the exposure created by Philips Foam Toxins alone causes an increased risk of illness or disease that requires diagnostic testing. Whether or not a Plaintiff smoked has no bearing on whether the Philips Foam Toxins cause the need for medical monitoring.

The Special Master recommends Plaintiffs answer Interrogatory 15, requesting family histories of cancer or lung disease. Whether other family members have had cancer or lung disease has no probative value as to whether the exposure caused by the CPAP caused an increased risk of disease in Plaintiff. The exposure here to a Plaintiff is from a defective medical device they used. There is nothing about the history of the Plaintiff's father, mother, siblings, aunt, or uncle which would be relevant to that person's risks from exposure solely to the toxins from that device. This request seeks the production of and waiver of third-party medical

information. Family medical histories are not probative of Element 4, increased risk caused by the tortious Foam Toxin exposure, which the R&R relies for its basis.

The R&R would require Plaintiffs to respond to Interrogatory 2.17, requiring the identity of each healthcare provider who has consulted with and/or provided treatment to Plaintiff for any reason (excluding mental health reasons) in the past ten (10) years, and the reason(s) why Plaintiff sought such consultation and/or treatment from the Healthcare Provider, the approximate date of each visit and the reason(s) for each visit. This interrogatory seeks to have Plaintiffs regurgitate the detail of ten years of doctors' visits, having no relevance to whether diagnostic testing is medically necessary for the Foam Toxin exposure Philips caused. It would require disclosure of procedures such as sore throats, scrapes and bruises, contraceptives, pregnancies, gall bladder procedures, hernia repairs, and the like, which have no probative value in this case.

The Special Master would require Plaintiffs to answer Interrogatories 16 and 2.19, requiring identification of occupation and employers to which they submitted a claim for worker's compensation, and 17, whether Plaintiff is aware or has reason to believe there may be heightened exposure to chemicals in the workplace. The R&R ignores the legal jeopardy Plaintiff could be placed in by guessing about toxic exposures in the workplace as to their employers and their own potential compensation claims. Workplace history is not probative of Element 4, increased risk caused by the tortious Foam Toxin exposure, which is the basis for the R&R.

Based on the foregoing, the Special Master misinterpreted and misapplied applicable discovery and medical monitoring law and erred in recommending granting Philips' Motion to Compel as to Interrogatories 11, 12, 13, 14-17, 2.17, 2.19, and Document Request 22.

The Special Master also recommends identification of the conditions that led to the use of

the recalled device, Rog. 1(f), or the advice to change the use of the devices, Rog 6.[5] The conditions leading to Plaintiffs' use of Philips' devices are irrelevant. The information seeks physician-patient privileged information not waived by these claims because it is the fact of exposure to Philips' Foam Toxins and thus the use of the devices that is at issue. The reason for the use is irrelevant where there is no personal injury claim. Plaintiffs have already agreed to produce documents related to the use of the devices, including SD cards and releases of Care Orchestrator data. Any other medical information about the underlying conditions or other medical advice is not relevant. The R&R errs in granting Defendants' Motion to Compel as to Interrogatories 1(f) and 6, and Requests for Product of Documents 2, 5, 6, and 8[6] to the extent they request information beyond the time periods of use of the Recalled Devices.

## **CONCLUSION**

Plaintiffs respectfully request this Court overrule the Special Master's Report and Recommendation and deny Philips' Motion to Compel in its entirety.

Dated: December 7, 2023

Respectfully submitted,

/s/ Kelly K. Iverson
Kelly K. Iverson, Esquire
**LYNCH CARPENTER, LLP**
1133 Penn Avenue, 5th Floor
Pittsburgh, PA 15222
T (412) 322-9243
kelly@lcllp.com

/s/ Christopher A. Seeger

---

[5] Plaintiffs provided a limited response to Interrogatory 6, identifying any advice to change their use of their Device by their prescribing physician.

[6] The Special Master misstated Plaintiffs' position regarding Interrogatories 1(f) and 6, and Requests for Product of Documents 2, 5, 6, and 8. Plaintiffs consistently stated throughout the discovery and meet and confer process that these discovery requests were irrelevant. Plaintiffs, while expressly reserving their objections, offered to respond to these discovery requests as part of global compromise of the present discovery dispute.

Christopher A. Seeger, Esquire
**SEEGER WEISS LLP**
55 Challenger Road, 6th Floor
Ridgefield Park, NJ 07660
212-584-0700
cseeger@seegerweiss.com

*/s/ Sandra L. Duggan*
Sandra L. Duggan, Esquire
**LEVIN SEDRAN & BERMAN**
510 Walnut Street
Ste 500
Philadelphia, PA 19106
215-592-1500
215-592-4663 (fax)
sduggan@lfsblaw.com

*/s/ Steven A. Schwartz*
Steven A. Schwartz, Esquire
**CHIMICLES SCHWARTZ KRINER &
DONALDSON-SMITH LLP**
361 West Lancaster Avenue
One Haverford Centre
Haverford, PA 19041
(610) 642-8500
steveschwartz@chimicles.com

*Plaintiffs' Co-Lead Counsel*

*/s/ D. Aaron Rihn*
D. Aaron Rihn, Esquire
**ROBERT PEIRCE & ASSOCIATES, P.C.**
707 Grant Street
Suite 125
Pittsburgh, PA 15219
412-281-7229
412-281-4229 (fax)
arihn@peircelaw.com

*Plaintiffs' Co-Liaison Counsel*

## CERTIFICATE OF SERVICE

I hereby certify that on December 7, 2023, the foregoing document was electronically filed with the Clerk of the Court and served upon counsel of record through the Court's ECF system.

*/s/ Kelly K. Iverson*
Kelly K. Iverson, Esquire