**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF PENNSYLVANIA**

|  |  |  |
|---|---|---|
| **IN RE: PHILIPS RECALLED CPAP, BI-LEVEL PAP, AND MECHANICAL VENTILATOR PRODUCTS LITIGATION** | : : : : : | Master Docket: No. 21-mc-1230-JFC |
|  | : | MDL No. 3014 |
| **This Document Relates to:** | : : | |
| Consolidated Second Amended Class Action Complaint for Medical Monitoring and Demand for Jury Trial (ECF No. 815) | : : : : | |

**PHILIPS RS NORTH AMERICA LLC'S RESPONSE
TO PLAINTIFFS' OBJECTIONS TO SPECIAL DISCOVERY MASTER'S REPORT
AND RECOMMENDATION AND PROPOSED ORDER RE: DISCOVERY OF
MEDICAL MONITORING NAMED PLAINTIFFS' MEDICAL HISTORIES AND
<u>PREVIOUS EXPOSURES TO HAZARDOUS SUBSTANCES</u>**

John P. Lavelle, Jr. (PA54279)
john.lavelle@morganlewis.com
Lisa C. Dykstra (PA67271)
lisa.dykstra@morganlewis.com
**MORGAN, LEWIS & BOCKIUS LLP**
2222 Market Street
Philadelphia, PA 19103-3007
Tel: 215.963.5000

Wendy West Feinstein (PA86698)
wendy.feinstein@morganlewis.com
**MORGAN, LEWIS & BOCKIUS LLP**
One Oxford Center, 32nd Floor
Pittsburgh, PA 15219-6401
Tel: 412.560.3300

*Counsel for Defendant Philips RS North
America LLC*

## TABLE OF CONTENTS

**Page**

I.      INTRODUCTION ................................................................................................ 1

II.     ARGUMENT....................................................................................................... 2

      A.     THE R&R PROPERLY FINDS THAT PLAINTIFFS' MEDICAL
            HISTORIES AND PRIOR EXPOSURES ARE RELEVANT............................ 2

            1.     PLAINTIFFS' MEDICAL HISTORIES AND PRIOR
                    EXPOSURES ARE RELEVANT TO THE CAUSATION
                    ELEMENT.................................................................................... 2

            2.     PLAINTIFFS' MEDICAL HISTORIES AND PRIOR
                    EXPOSURES ARE RELEVANT TO THE PRESCRIBED
                    MONITORING REGIME. ........................................................... 6

            3.     THE AT-ISSUE DISCOVERY IS ALSO RELEVANT TO
                    CLASS CERTIFICATION ISSUES. ......................................... 8

            4.     PLAINTIFFS' ARGUMENTS CONCERNING PERSONAL
                    INJURY CLAIMS AND PROOF OF PRESENT PHYSICAL
                    INJURY ARE STRAW MEN. .................................................... 9

      B.     NO HEIGHTENED RELEVANCY STANDARD APPLIES, AS
            PLAINTIFFS WAIVED ANY PRIVILEGE AND PRIVACY
            CONCERNS. .................................................................................... 10

      C.     TO THE EXTENT NOT WAIVED, THE R&R APPROPRIATELY
            CONSIDERS AND BALANCES PLAINTIFFS' PRIVACY
            INTERESTS. .................................................................................... 13

      D.     PLAINTIFFS' OVERBREADTH OBJECTION IS MERITLESS. .................... 14

III.    CONCLUSION................................................................................................... 15

# **TABLE OF AUTHORITIES**

**Page(s)**

**Cases**

*In re Aredia & Zometa Prods. Liab. Litig.*,
    No. 3:06-MD-1760, 2007 WL 3012972 (M.D. Tenn. Oct. 10, 2007) ...................................5, 8

*Ballard v. Union Carbide Corp.*,
    No. 2:11-CV-00366, 2012 WL 2089511 (S.D.W. Va. June 8, 2012)............................. *passim*

*Barnes v. Am. Tobacco Co.*,
    161 F.3d 127 (3d Cir. 1998)...................................................................................................7, 9

*Brown v. Saint-Gobain Performance Plastics Corp.*,
    No. 16-CV-242-JL, 2018 WL 10517306 (D.N.H. Oct. 10, 2018) ................................. *passim*

*Caldwell v. Beard*,
    No. 2:07-CV-727, 2008 WL 2887810 (W.D. Pa. July 23, 2008), *aff'd*, 324 F.
    App'x 186 (3d Cir. 2009).........................................................................................................11

*Fiorentino v. Cabot Oil & Gas Corp.*,
    No. 3:09-CV-2284, 2011 WL 5239068 (M.D. Pa. Nov. 1, 2011) ................................. *passim*

*Hansen v. Mountain Fuel Supply Co.*,
    858 P.2d 970 (Utah 1993)....................................................................................................5, 7

*Lindsay v. Pa. State Univ.*,
    No. 4:06-CV-01826, 2008 WL 11367524 (M.D. Pa. July 22, 2008) ......................................11

*Meyer v. Fluor Corp.*,
    No. 012-8638, 2004 WL 5735413 (Mo. Cir. Sept. 20, 2004)................................................8, 9

*O'Connor v. Boeing N. Am., Inc.*,
    185 F.R.D. 272 (C.D. Cal. 1999)......................................................................................5, 9, 10

*Potter v. Firestone Tire & Rubber Co.*,
    863 P.2d 795 (Cal. 1993) ......................................................................................................5, 7

*Redland Soccer Club, Inc. v. Dep't of the Army & Dep't of Def. of the U.S.*,
    548 Pa. 178 (1997)...........................................................................................................2, 6, 7

*Schramm v. Metro. Life Ins. Co.*,
    No. 5:23-CV-163-JSM-PRL, 2023 WL 3320086 (M.D. Fla. May 9, 2023) ..........................11

*Sullivan v. Saint-Gobain Performance Plastics Corp.*,
    No. 5:16-CV-125, 2017 WL 11508079 (D. Vt. Sept. 13, 2017) ...............................4, 5, 13, 14

*Sullivan v. Saint-Gobain Performance Plastics Corp.*,
   No. 5:16-CV-125, 2019 WL 8272995 (D. Vt. Aug. 23, 2019)....................................3, 4, 5, 9

*Taylor Milk Co. v. Int'l Bhd. of Teamsters, AFL-CIO*,
   248 F.3d 239 (3d Cir. 2001)........................................................................................8

*Trask v. Olin Corp.*,
   298 F.R.D. 244 (W.D. Pa. 2014) ................................................................................15

*U.S. Fire Ins. Co. v. Kelman Bottles LLC*,
   No. 11CV0891, 2014 WL 2922353 (W.D. Pa. June 27, 2014) ....................................8

*United States v. Miles*,
   No. CR 13-252, 2020 WL 4904019 (W.D. Pa. Aug. 20, 2020) ...............................12

*In re Valsartan, Losartan & Irbesartan Prods. Liab. Litig.*,
   No. 19-2875, 2023 WL 1818922 (D.N.J. Feb. 8, 2023) .........................................3, 4

*Washington v. Gilmore*,
   No. CV 17-988, 2021 WL 688088 (W.D. Pa. Feb. 23, 2021) .................................10

*Wyeth, Inc. v. Gottlieb*,
   930 So.2d 635 (Fla. 3d DCA 2006) ............................................................................5

**Other Authorities**

Fed. R. Civ. P. 23(b)(2)......................................................................................................9

Fed. R. Civ. P. 23(b)(3)..................................................................................................8, 9

Fed. R. Civ. P. 26(b)(1)..............................................................................................2, 15

Philips RS North America LLC ("Respironics" or "Philips RS") respectfully responds to Plaintiffs' Objections ("Plaintiffs' Objections" or "Pls. Objs.") (ECF No. 2378) to the Report and Recommendation and Proposed Order Re: Discovery of Medical Monitoring Named Plaintiffs' Medical Histories and Previous Exposures to Hazardous Substances ("R&R") (ECF No. 2340). Plaintiffs' broad Objections should be overruled in their entirety, and this Court should adopt the R&R except as to the narrow points raised in Respironics' Objections (ECF No. 2376).

## RESPIRONICS' RESPONSES TO PLAINTIFFS' OBJECTIONS

## I.    INTRODUCTION

Plaintiffs seek payment for sweeping medical monitoring from Respironics.  As such, Plaintiffs' medical histories and prior exposures to hazardous substances are directly at issue and the R&R correctly concludes that Respironics is entitled to discovery related to these subjects, given their relevance to multiple elements of the parties' claims and defenses.  To support this conclusion, the R&R properly analyzes the applicable case law compelling medical monitoring plaintiffs to provide the same categories of information that Respironics seeks here.  Further, to the extent any privacy considerations remain with respect to this targeted area of discovery, the R&R properly balances and accounts for those interests by tailoring the discovery accordingly.

Plaintiffs ignore the weight of authority supporting discovery under these circumstances and instead assert broad and baseless objections to the R&R based on relevance, privilege and privacy, and overbreadth.  None of these objections are supported by legal precedent and they are without merit.  As Plaintiffs conceded at oral argument before Special Master Katz, and as the R&R emphasizes, Plaintiffs ***cannot cite a single case*** barring all discovery of a medical monitoring plaintiff's medical history or prior exposures.  Yet that is exactly what they ask this Court to do here.  The Court should overrule Plaintiffs' Objections.

## II.   ARGUMENT

### A.   THE R&R PROPERLY FINDS THAT PLAINTIFFS' MEDICAL HISTORIES AND PRIOR EXPOSURES ARE RELEVANT.

The R&R properly finds that Plaintiffs' medical histories and prior exposures are relevant under Rule 26(b)(1).[1]  Indeed, contrary to Plaintiffs' Objections, the at-issue discovery is relevant to *multiple* elements of the parties' claims and defenses, as well as to class certification issues.

To establish a medical monitoring claim, Plaintiffs must prove essential elements such as (1) exposure to greater than normal background levels (2) of a proven hazardous substance (3) caused by defendant's negligence; (4) as a proximate result of the exposure, plaintiff has a significantly increased risk of contracting a serious latent disease (the "causation element"); (5) a monitoring procedure exists that makes the early detection of the disease possible; (6) the prescribed monitoring regime is different from that normally recommended in the absence of exposure (the "sixth element"); and (7) the prescribed monitoring procedure is reasonably necessary according to contemporary scientific principles.  *See* 1 McLaughlin on Class Actions § 5:18 (19th ed.); *see also Redland Soccer Club, Inc. v. Dep't of the Army & Dep't of Def. of the U.S.*, 548 Pa. 178, 195-96 (1997) (establishing these elements for a medical monitoring claim in Pennsylvania).  Additionally, in 31 of the 42 jurisdictions identified in the Consolidated Second Amended Class Action Complaint for Medical Monitoring ("MMSAC") (ECF No. 815), Plaintiffs must establish present physical injury.  *See* ECF No. 1405 at Table A.

### 1.   Plaintiffs' medical histories and prior exposures are relevant to the causation element.

The R&R properly concludes that Plaintiffs' medical histories and prior exposures are relevant to the causation element of their medical monitoring claims.  The R&R correctly observes

---

[1] The R&R applies the correct relevancy standard.  *See* R&R at 4 (applying Rule 26(b)(1)). Plaintiffs' argument for a heightened standard fails for multiple reasons.  *See* Section II.B, *infra*.

that "Plaintiffs do not cite one case barring all discovery of a medical monitoring plaintiff's medical history.  Instead, they rely solely on the prongs of the liability test that focus on the defendant's conduct, and ignore the others, including the causation element."  R&R at 5.

As Plaintiffs concede, proving their medical monitoring claims requires each to show that "as a proximate result of the exposure, plaintiff has a significantly increased risk of contracting a serious latent disease."  *See* Pls. Objs. at 4.  Throughout their Objections, however, Plaintiffs misconstrue the causation element by focusing "***solely*** [on] whether ***Philips' conduct*** was the cause of the increased risk of injury."  *Id.* at 10 (emphasis added).  But if Plaintiffs have pre-existing medical conditions or risk factors, or have previously been exposed to hazardous substances, then the devices at issue may not be related to any desired or needed medical monitoring.  For example, exposure to a Respironics device could not possibly have increased a Plaintiff's risk of contracting a disease that the Plaintiff ***already*** contracted prior to using the device.  Under those circumstances, Plaintiffs would not be entitled to the medical monitoring relief they seek here, which the R&R correctly recognizes "[a]s a matter of common sense."  R&R at 4.  Respironics is entitled to discovery on these subjects.

Plaintiffs twist themselves into knots to avoid acknowledging these "common sense" conclusions and cite only two cases—*In re Valsartan, Losartan & Irbesartan Prods. Liab. Litig.*, No. 19-2875 (RBK/SAK), 2023 WL 1818922 (D.N.J. Feb. 8, 2023) and *Sullivan v. Saint-Gobain Performance Plastics Corp.*, No. 5:16-CV-125, 2019 WL 8272995 (D. Vt. Aug. 23, 2019) ("*Sullivan II*")—in support of their position that their medical histories and prior exposures somehow are not relevant to the causation element.  *See* Pls. Objs. at 10.  Neither case supports Plaintiffs' contention.

In *Valsartan*, defendants did not argue that plaintiffs' medical histories or previous

exposures affected their risk of illness, but rather, argued only that plaintiffs' exposures to the alleged toxins in defendants' products was not "sufficiently high" to warrant medical monitoring. *See* 2023 WL 1818922, at *36. The *Valsartan* court simply found that this was "a legal causation issue common to the entire class" and thus certified the class. *Id.* at *37. *Valsartan* is further distinguishable because plaintiffs sought medical monitoring only for certain cancers and the proposed class consisted only of individuals who were cancer-free—something that Plaintiffs refuse to disclose here. *Id.* at 5.

In *Sullivan II*, the court certified a medical monitoring class because it was defined to include only those people who "provide proof that … they have elevated PFOA levels [the toxin at issue] established through a blood test." 2019 WL 8272995, at *4. In light of this fact, the court certified the class because "[h]istory and individual behavior are less important than the results of a blood test offered in the same manner to all [class members]." *Id.* at *16; *see also id.* at *14 ("[I]n this case the [medical monitoring] class includes only people who have PFOA tests above background levels. In a very concrete sense, the members of the proposed class are similarly situated by virtue of their lab results."). No such situation exists here. Further, *Sullivan II*'s certification of a medical monitoring class does not negate the court's earlier decision compelling plaintiffs to provide the same discovery that Respironics seeks here: information and documents regarding plaintiffs' medical histories and previous exposures, including employment information. *See Sullivan v. Saint-Gobain Performance Plastics Corp.*, No. 5:16-CV-125, 2017 WL 11508079, at *5 (D. Vt. Sept. 13, 2017) ("*Sullivan I*"). *Sullivan I* expressly held that "the defense is not required to take the plaintiffs' word for it concerning common elements of exposure and causation" and "[w]hether a proposed class representative has a history of unrelated exposure to toxins or

some special susceptibility to the chemicals involved is relevant."  *Id.* at \*4-5.[2]

Other cases that Plaintiffs cite in their Objections similarly undermine their position on causation.  *See Hansen v. Mountain Fuel Supply Co.*, 858 P.2d 970, 978 (Utah 1993) ("Mere exposure to an allegedly harmful substance, however, is not enough for recovery."); *Potter v. Firestone Tire & Rubber Co.*, 863 P.2d 795, 825 n.27 (Cal. 1993) ("[T]here is no question that a defendant ought not to be liable for medical monitoring of a plaintiff's preexisting condition that is unaffected by a subsequent toxic exposure negligently caused by the defendant ….").  Indeed, the weight of authority goes against Plaintiffs and instead squarely supports the R&R.  *See, e.g.*, *Ballard v. Union Carbide Corp.*, No. 2:11-CV-00366, 2012 WL 2089511, at \*2-4 (S.D.W. Va. June 8, 2012) (agreeing that defendants "must be able to conduct discovery into any factors that could have caused the plaintiffs' risk of disease independent of the plaintiffs' alleged exposure to substances emitted from the Alloy Plant, and any facts that prove the plaintiffs would require the medical monitoring requested even in the absence of the alleged exposure"); *Fiorentino v. Cabot Oil & Gas Corp.*, No. 3:09-CV-2284, 2011 WL 5239068, at \*6 n.7 (M.D. Pa. Nov. 1, 2011) (medical monitoring plaintiffs' medical records "would seemingly be relevant to … the causation element"); *O'Connor v. Boeing N. Am., Inc.*, 185 F.R.D. 272, 283 (C.D. Cal. 1999) (holding that medical monitoring plaintiffs' medical records are relevant since their "medical conditions are risk factors other than the exposure to defendants' chemicals which may affect [their] claims").[3]

---

[2] *Sullivan II* also held that the named plaintiffs were adequate class representatives because they "have all subjected themselves to searching discovery."  2019 WL 8272995, at \*9.

[3] *See also In re Aredia & Zometa Prods. Liab. Litig.*, No. 3:06-MD-1760, 2007 WL 3012972, at \*4 (M.D. Tenn. Oct. 10, 2007) ("The answer to the specific causation issue depends upon a number of factors such as … the patient's age and other characteristics, and the patient's medical history."); *Wyeth, Inc. v. Gottlieb*, 930 So.2d 635, 640-41 (Fla. 3d DCA 2006) (because medical monitoring plaintiffs' increased risk of breast cancer could be caused by many things, and not just the alleged exposure to the drug at issue, "proving causation would not involve common issues of fact").

2.     **Plaintiffs' medical histories and prior exposures are relevant to the prescribed monitoring regime.**

In addition to the causation element, the R&R correctly concludes that Plaintiffs' medical histories and prior exposures are relevant to the "sixth element"—*i.e.*, whether the prescribed monitoring regime differs from that normally recommended in the absence of exposure—to the extent this element "refers to recommendations normal for the plaintiff, as opposed to the general public."  R&R at 5 n.3; *see also Fiorentino*, 2011 WL 5239068, at *6-7 (explaining that, in accordance with Pennsylvania Supreme Court precedent and fundamental principles of tort law, plaintiffs' medical histories are relevant to the sixth element) (citing *Redland*, 548 Pa. at 191-93, 195).  Plaintiffs' objections to this conclusion are neither persuasive nor rooted in any applicable legal authority.

*First*, Plaintiffs contend that the sixth element examines only whether the prescribed monitoring regime differs from guidelines proposed for the general population.  *See* Pls. Objs. at 11.  Plaintiffs cite *Redland* in support, but in doing so, they misrepresent that case's holding by citing to *Redland*'s description of an expert opinion, not to the Court's description of the elements of a medical monitoring claim.  *See id.*; *see also Redland*, 548 Pa. at 198 (noting that defendant's expert "acknowledged that [plaintiff's expert's] monitoring regime differs from guidelines proposed for the general population").  In fact, when examining the sixth element, the *Redland* Court emphasized principles of tort law and adopted the "persuasive approach" articulated by the Third Circuit: a medical monitoring "'plaintiff may recover only if the defendant's wrongful acts increased the plaintiff's incremental risk of incurring the harm … enough to warrant a change in the medical monitoring that otherwise would be prescribed for **that** plaintiff.'"  548 Pa. at 192-93,

195-96 (emphasis added) (quoting *In re Paoli R.R. Yard PCB Litig.*, 35 F.3d 717 (3d Cir. 1994)).[4]

Indeed, after *Redland*, the Third Circuit held that the sixth element precludes class certification because "each class member must prove that the monitoring program he requires is 'different from that normally recommended in the absence of exposure'" and "[t]o satisfy this requirement, each plaintiff must prove the monitoring program that is prescribed for the general public ***and*** the monitoring program that would be prescribed for him." *Barnes v. Am. Tobacco Co.*, 161 F.3d 127, 146 (3d Cir. 1998) (emphasis added) (citing *Redland*, 548 Pa. at 196).

Other jurisdictions similarly require Plaintiffs to prove that the monitoring regime they seek differs from what would normally be prescribed specifically to them in the absence of exposure—further supporting the R&R's finding of relevance. *See Brown v. Saint-Gobain Performance Plastics Corp.*, No. 16-CV-242-JL, 2018 WL 10517306, at *2 (D.N.H. Oct. 10, 2018) (the sixth element requires plaintiffs to "prove that they require medical monitoring beyond what otherwise has been or would be prescribed for ***them***") (emphasis added) (NH); *Potter*, 863 P.2d at 826 n.31 ("[D]efendant is not liable for reasonably certain future medical monitoring costs unless the recommended monitoring calls for tests or examinations that are in addition to or different from the type of monitoring that the [specific plaintiff] should prudently undertake regardless of the subsequent toxic exposure.") (CA); *Hansen*, 858 P.2d at 980 (consistent with tort principles, plaintiffs must prove that the monitoring they seek differs from what would have been

---

[4] Plaintiffs also cite *Sadler v. PacifiCare of Nevada, Inc.*, which holds that plaintiffs asserting claims under Nevada law must "demonstrate that the medical monitoring at issue is something greater than would be recommended as a matter of general health care for the public at large." 130 Nev. 990, 1001 (2014). Only one out of 63 Plaintiffs assert claims under Nevada law. Moreover, even under *Sadler*, that Plaintiff's medical history and prior exposures are relevant under the causation element. *See id.* at 1000 (recognizing a claim for medical monitoring because plaintiffs "will still be required to plead and prove the essential elements of their underlying claim, including, for the purpose of a negligence claim, that ***the defendant*** actually caused the need for medical testing" as opposed to some other cause) (emphasis added).

prescribed specifically for them) (UT).

     **Second**, Plaintiffs argue—again without any cited support—that the sixth element "is an issue of administration, not discovery." Pls. Objs. at 11. This argument should also be rejected. *See, e.g.*, *U.S. Fire Ins. Co. v. Kelman Bottles LLC*, No. 11CV0891, 2014 WL 2922353, at *2 (W.D. Pa. June 27, 2014) ("Because [the] motion … cites to no binding legal authority on this point … [the] motion for reconsideration fails."). Plaintiffs are not entitled to their requested relief without first proving the elements of their claims. *See Taylor Milk Co. v. Int'l Bhd. of Teamsters, AFL-CIO*, 248 F.3d 239, 247 (3d Cir. 2001) ("It is axiomatic that … plaintiff bears the burden of proving every element of his case[.]") (quotation and citation omitted); *cf. In re Aredia*, 2007 WL 3012972, at *2 n.3 (denying class certification due to individualized determinations, such as "what, if any, unique risk factors the person has in his or her medical history" and "whether the person's individual risk would benefit from the specific monitoring sought," and rejecting "Plaintiffs' suggestion that class eligibility could be determined as part of Plaintiffs' proposed claims administration process" because "Defendant is entitled to challenge any potential class member at the outset" and the "Court should not, and will not, delegate these threshold legal determinations").

     **3.**     **The at-issue discovery is also relevant to class certification issues.**

     As additional support for the R&R's finding of relevance, Plaintiffs' medical histories and prior exposures are also relevant to class certification issues, as established in Respironics' motion to compel and reply, at oral argument, and in Respironics' supplemental written submission. *See* ECF No. 2376-4 at 5-6 & n.5; ECF No. 2376-5 at 4 n.3; ECF No. 2376-6 at 2-4.

     Though Plaintiffs cite *Meyer ex rel. Coplin v. Fluor Corp.* for their contention that "medical histories are irrelevant in a medical monitoring case," Pls. Objs. at 8-9, the *Meyer* court reversed the circuit court's denial of class certification under Missouri's equivalent to Rule 23(b)(3) based solely on its analysis of the predominance element and did not address commonality or typicality.

*See* 220 S.W.3d 712, 714 n.2, 715, 719 (Mo. 2007).[5]  Here, Plaintiffs do not seek to certify a class

under Rule 23(b)(3), so *Meyer*'s nonbinding analysis is irrelevant.  The Third Circuit's decision in

*Barnes*, on the other hand, is binding and persuasive.  *See Barnes*, 161 F.3d at 143-49 (denying

certification of medical monitoring class under Rule 23(b)(2) because, among other reasons, the

sixth element and defendant's affirmative defenses preclude a finding of cohesiveness).

> ### 4.  Plaintiffs' arguments concerning personal injury claims and proof of present physical injury are straw men.

Plaintiffs extensively argue that their medical histories and prior exposures are not relevant

because (1) they are not asserting personal injury claims and (2) physical injury is not an element

of medical monitoring claims.  Both arguments defy common sense.

*First*, one need only review Plaintiffs' allegations and claims as-pled to determine that

Plaintiffs assert medical monitoring claims that squarely put their health at issue.  *See, e.g.*, ECF

No. 2376-5 at 3; *see also* MMSAC ¶¶ 25, 367, 371, 382 (alleging that Plaintiffs all "have suffered

subcellular injury or other physiological changes" making it "presently medically necessary that

they undergo diagnostic testing" for a litany of medical conditions "including but not limited to"

26 different categories of cancer, respiratory disease, and inflammation).

*Second*, for purposes of this discovery dispute, it is immaterial whether present physical

injury is an element of Plaintiffs' medical monitoring claims.[6]  The cases that the R&R relies on—

*Brown*, *Sullivan*, *Ballard*, *Fiorentino*, and *O'Connor*—are all from jurisdictions that do not require

---

[5] In an earlier decision, the *Meyer* circuit court compelled plaintiffs to execute releases for their medical and educational records and to provide a "complete list" of their medical, psychological, psychiatric, and educational providers.  *Meyer v. Fluor Corp.*, No. 012-8638, 2004 WL 5735413 (Mo. Cir. Sept. 20, 2004); *see also* 2004 WL 5731010 (*Meyer* motion to compel).

[6] If physical injury is an element, the relevance of Plaintiffs' medical histories and prior exposures cannot be seriously disputed.  Regardless, the R&R makes clear that "[w]hether or not proof of present physical injury is required would not change the [R&R's] analysis."  *See* R&R at 4 n.2.

physical injury as an element of medical monitoring claims, including Pennsylvania.[7]  All these
cases nonetheless compel medical monitoring plaintiffs to provide their medical histories and/or
prior exposures, including employment information.  *See* R&R at 6-8 (describing each case).  As
Plaintiffs conceded at oral argument and as the R&R correctly recognizes, Plaintiffs do not "cite
one case barring all discovery of a medical monitoring plaintiff's medical history."  R&R at 5.
There are no such cases, and Plaintiffs' Objections based on relevance should be overruled.

### B.   NO HEIGHTENED RELEVANCY STANDARD APPLIES, AS PLAINTIFFS WAIVED ANY PRIVILEGE AND PRIVACY CONCERNS.

In their Objections, Plaintiffs argue for the first time that, because they have an "inherent
right" to privacy in their medical records, Respironics must meet a "higher burden of relevancy"
by demonstrating a "compelling need" for the discovery at issue.  *See* Pls. Objs. at 2-4.  Plaintiffs'
objection should be overruled for multiple reasons.

*First*, the Court should not consider this new argument because "[i]ssues raised for the first
time in objections to the [special master's] recommendation are deemed waived."  *Washington v.
Gilmore*, No. CV 17-988, 2021 WL 688088, at *2-3 (W.D. Pa. Feb. 23, 2021) (Conti, J.) (quoting
*Marshall v. Chater*, 75 F.3d 1421, 1426 (10th Cir. 1996)), *reconsideration denied*, No. CV 17-
988, 2021 WL 1060346 (W.D. Pa. Mar. 18, 2021), *and aff'd*, 852 F. App'x 639 (3d Cir. 2021).

*Second*, even if the Court were to consider Plaintiffs' argument, it is baseless.  Respironics
need not demonstrate a compelling need for the discovery at issue because, in filing claims for
medical monitoring, Plaintiffs have waived any potentially-applicable privilege or privacy
interests by asserting claims and seeking damages from Respironics that put their medical

---

[7] Plaintiffs argue that *O'Connor* "does not support production here" because in that case, the
plaintiffs also asserted personal injury claims.  Pls. Objs. at 11.  But the R&R relies only on the
pertinent portions of *O'Connor*, which address discovery to medical monitoring plaintiffs who did
not assert claims for personal injury.  *See* R&R at 8; *see also O'Connor*, 185 F.R.D. at 283.

conditions precisely at issue.  Respironics is not required to meet a heightened standard to accommodate a right that Plaintiffs waived by filing this litigation.

"Courts have routinely held that, by putting one's medical condition at issue in a lawsuit, a plaintiff waives any privilege to which he may have otherwise been entitled as to his privacy interests in his medical records." *Schramm v. Metro. Life Ins. Co.*, No. 5:23-CV-163-JSM-PRL, 2023 WL 3320086, at *1 (M.D. Fla. May 9, 2023) (quoting *Oldaker v. Giles*, No. 7:20-cv-224, 2021 WL 3412551, at *3 (M.D. Ga. Aug. 4, 2021)) (collecting cases); *see also Caldwell v. Beard*, No. 2:07-CV-727, 2008 WL 2887810, at *8 (W.D. Pa. July 23, 2008) (when plaintiff "puts at issue his medical condition/treatment" he "must reasonably expect" that "his medical records will be accessed," and thus his "right to privacy has not been violated"), *aff'd*, 324 F. App'x 186 (3d Cir. 2009); *Lindsay v. Pa. State Univ.*, No. 4:06-CV-01826, 2008 WL 11367524, at *1 (M.D. Pa. July 22, 2008) (rejecting "privacy" concerns and finding "***all*** of plaintiff's medical records were discoverable" because she "elected to put her medical condition at issue") (emphasis in original).

Here, the R&R properly concludes that Plaintiffs put their medical conditions at issue by asserting medical monitoring claims. *See* R&R at 8 ("Plaintiffs' have put at issue their pre-existing risk of, or experience with, the Pleaded Conditions ...."). The R&R's conclusion is consistent with the weight of authority on this issue. *See, e.g.*, *Brown*, 2018 WL 10517306, at *2-3 (medical monitoring plaintiffs waived any physician-patient privilege by putting their medical conditions at issue in litigation); *Ballard*, 2012 WL 2089511, at *4 (rejecting medical monitoring plaintiffs' privacy arguments where a protective order was in place); *Fiorentino*, 2011 WL 5239068, at *1 (acknowledging the "confidential nature" of medical monitoring plaintiffs' medical records but

nonetheless compelling plaintiffs to produce them for use in the litigation).[8]

In their Objections, Plaintiffs concede that privilege is waived (i) in litigation where plaintiffs put their medical conditions at issue (ii) to the extent that the conditions are relevant to the litigation. *See* Pls. Objs. at 6. Both prongs are met here. Plaintiffs filed litigation that places their medical conditions at issue and seek recovery from Respironics for medical monitoring. *See* Section II.A.4, *supra*. And, as pled, Plaintiffs have put into issue ***limitless*** medical conditions by alleging they are at risk of developing ***limitless*** Pleaded Conditions.[9] *See* MMSAC at ¶ 371 (using open-ended language "including but not limited to" and "such as"; identifying broad categories of conditions instead of specific conditions; and alleging that exposure to Respironics' devices "causes widespread damage" to DNA, reproductive systems, neurological systems, and "other [unidentified] critical systems"). Thus, Plaintiffs have waived privilege and privacy interests in their medical information, and the R&R's recommendation that Plaintiffs be compelled to provide information specific to the claims and defenses at issue in this case is appropriate. *See Brown*, 2018 WL 10517306, at *3; *see also, e.g.*, *Ballard*, 2012 WL 2089511, at *5 (compelling medical

---

[8] Plaintiffs' efforts to discount *Brown*, improperly, for the first time in their Objections, fail. *See* Pls.' Objs. at 11. Though *Brown* is unpublished, such decisions remain "'strongly persuasive authority' for district courts." *See United States v. Miles*, No. CR 13-252, 2020 WL 4904019, at *2 (W.D. Pa. Aug. 20, 2020) (Conti, J.) (citation omitted). Moreover, contrary to Plaintiffs' assertions, the *Brown* court did not "ignore" that "waiver of physician-patient privilege" extends "only to what is relevant to the plaintiffs' claims." *See* Pls.' Objs. at 11. Rather, given the "variety" of conditions plaintiffs put at issue, the court was "hard-pressed to conclude" that plaintiffs' medical records would contain any irrelevant information. *See Brown*, 2018 WL 10517306, at *3.

[9] "Pleaded Conditions" has the same meaning as the term used in the R&R, *i.e.*, the litany of medical conditions that Plaintiffs claim in this litigation that they are at risk of developing in the future due to their alleged use of Respironics' devices. *See* R&R at 1; *see also* MMSAC at ¶ 371.

monitoring plaintiffs to describe family medical history).[10]

**Third**, to the extent Respironics must demonstrate a compelling need for discovery of Plaintiffs' medical histories and prior exposures, it has done so: Respironics needs this discovery to defend itself in the putative class action that Plaintiffs have filed.  *See* Section II.A, *supra*.

### C.   TO THE EXTENT NOT WAIVED, THE R&R APPROPRIATELY CONSIDERS AND BALANCES PLAINTIFFS' PRIVACY INTERESTS.

The R&R appropriately addresses Plaintiffs' privacy concerns and acknowledges that "the private nature of a person's medical history dictates the need to tailor discovery requests to avoid intruding into aspects of Plaintiffs' medical histories that are not relevant."  R&R at 5.

Plaintiffs' objection that the "R&R failed to properly weigh the at most minimal relevance of the information sought to be discovered against Plaintiffs' inherent right to privacy" is completely baseless (Pls. Objs. at 1), as the R&R implements *two* safeguards to address Plaintiffs' privacy concerns.  First, the R&R endorses a "two-step process" of "first interrogatories and then, if those uncover prior medical history germane to the litigation, tailored follow-up document requests."  *See* R&R at 5; *see also id.* at 10.  Second, the R&R allows Plaintiffs to review their own medical records for responsiveness and privilege before producing them, "especially because there may be highly sensitive medical information (other than mental health history, which Philips RS excluded) that is irrelevant to this case."  *See* R&R at 11; *see also id.* at Proposed Order ("To

---

[10] Plaintiffs also argue for the first time that they have an "inherent right to privacy" in their "employment information" and that Interrogatory No. 15 seeks "waiver of third-party medical information."  *See* Pls. Objs. at 1, 13-14.  Not only are these arguments waived, but Plaintiffs' assertions are conclusory and unsubstantiated such that they fail to properly state an objection. Even if Plaintiffs had properly stated these objections, they have waived any privacy interest in their employment information and family medical history for the same reasons they waived such interests in their medical information.  *See* Section II.B, *supra*; *see also, e.g.*, *Sullivan I*, 2017 WL 11508079, at *4 (granting motion to compel production of employment records in medical monitoring case); *Ballard*, 2012 WL 2089511, at *5 (compelling medical monitoring plaintiffs to describe "any family or personal history of illness and/or genetic disease").

the extent Plaintiffs' counsel believes responsive information or documents will reveal highly sensitive medical history that is not relevant, they shall meet and confer and, if necessary, engage the Discovery Special Master.").[11]   The R&R therefore properly accounts for any remaining privacy interests and tailors the discovery accordingly.

### D.      PLAINTIFFS' OVERBREADTH OBJECTION IS MERITLESS.

The discovery sought, as modified by the R&R and agreement of the parties, is appropriate in scope.  Plaintiffs contend that the "discovery served" is "overbroad" (Pls. Objs. at 1), but fail to acknowledge that the at-issue discovery has been narrowed through the meet-and-confer process, as reflected by the R&R.  *See* R&R at 2 n.1 ("Where Philips RS agreed to modify an interrogatory or document request, this chart reflects the modified version."); *see also id.* at 5, 8 (further narrowing the at-issue discovery).  Because Plaintiffs misrepresent that they are being asked to provide "unlimited medical information" (Pls. Objs. at 6), their overbreadth objection is baseless.[12]

Plaintiffs focus their overbreadth objections on Interrogatory No. 13 and Request No. 22, but these objections are meritless.  Plaintiffs describe Interrogatory No. 13 as seeking a "robust description" of "every medical injury or condition ever experienced" for the past ten years.  Pls. Objs. at 1.  The interrogatory in fact asks Plaintiffs to "[i]dentify" their diagnosed medical conditions or injuries, medications, and treatments, which is far narrower than interrogatories that other medical monitoring plaintiffs have been compelled to answer.  *See* Appx. A at 3; *see also, e.g.*, *Sullivan I*, 2017 WL 11508079, at *5 (compelling medical monitoring plaintiffs to "answer

---

[11] The R&R adopts the more restrictive approach, in Plaintiffs' favor.  *Cf.*, *Brown*, 2018 WL 10517306, at *3 (denying medical monitoring plaintiffs' request to screen medical records for relevancy and compelling plaintiffs to execute medical records releases); *Fiorentino*, 2011 WL 5239068, at *8 (compelling medical monitoring plaintiffs to execute medical records releases).

[12] Respironics attaches hereto an appendix so the Court can reference the full text of the interrogatories ("Interrogatories") and requests for production ("Requests") included in the R&R's proposed order, as modified where applicable.  *See* Appendix A.

interrogatories concerning all places they have received medical treatment and the conditions for which they sought treatment" for a 20-year period); *Ballard*, 2012 WL 2089511, at *2-4 (compelling medical monitoring plaintiffs to identify their medical, psychiatric, and psychological conditions, as well as treatments and medications, throughout their lives).  Further, Plaintiffs are aware that "[a]lthough mental health history is the only explicit exclusion Philips RS included in these discovery requests, the parties recognized in meet and confers there may be other highly sensitive and private conditions that are not relevant in this case"—like substance abuse and domestic abuse—"and agreed to address those in good faith as they arise."  R&R at 9 n.5.[13]

Plaintiffs object to Request No. 22 as requiring "Plaintiffs to disclose ten years of medical records related to the litany of conditions Philips has identified."  Pls. Objs. at 1 n.2.  This is misleading, as Request No. 22 seeks only documents regarding ***the Pleaded Conditions*** and quotes directly from the MMSAC.  *See* Appx. A at 3.  Request No. 22 is tailored to Plaintiffs' claims and allegations.  *See Trask v. Olin Corp.*, 298 F.R.D. 244, 263 (W.D. Pa. 2014) ("To determine the scope of discoverable information under Rule 26(b)(1), the Court looks initially to the pleadings.").

Plaintiffs fail to accurately represent the discovery requests they are being asked to respond to, and their Objections based on overbreadth should be overruled.

## III.    CONCLUSION

For the above reasons, those stated in Respironics' motion to compel and reply (ECF Nos. 2376-4 and 2376-5), at oral argument, and in Respironics' supplemental written submission (ECF No. 2376-6), Respironics respectfully requests that this Court overrule Plaintiffs' Objections and adopt the R&R except as to those narrow points raised in Respironics' Objections (ECF No. 2376).

---

[13] Plaintiffs vaguely assert that answering Interrogatory Nos. 2.19, 16, and 17 would subject them to "legal jeopardy."  *See* Pls. Objs. at 14.  But Plaintiffs do not cite any authority in support, or even specify the "legal jeopardy" they purportedly may face.  Plaintiffs' conclusory and unsupported argument thus fails to properly state an objection.

Dated: December 21, 2023

Respectfully Submitted,

*/s/ Wendy West Feinstein*
John P. Lavelle, Jr. (PA54279)
john.lavelle@morganlewis.com
Lisa C. Dykstra (PA67271)
lisa.dykstra@morganlewis.com
**MORGAN, LEWIS & BOCKIUS LLP**
2222 Market Street
Philadelphia, PA 19103-3007
Tel: 215.963.5000

Wendy West Feinstein (PA86698)
wendy.feinstein@morganlewis.com
**MORGAN, LEWIS & BOCKIUS LLP**
One Oxford Center, 32nd Floor
Pittsburgh, PA 15219-6401
Tel: 412.560.3300

*Counsel for Defendant Philips RS North America LLC*

**CERTIFICATE OF SERVICE**

I hereby certify that on December 21, 2023, the foregoing document was electronically filed with the Clerk of the Court and served upon counsel of record through the Court's ECF system.

*/s/ Wendy West Feinstein*
Wendy West Feinstein