# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| IN RE: PHILIPS RECALLED CPAP, BI-LEVEL PAP, AND MECHANICAL VENTILATOR PRODUCTS LITIGATION<br><br>This Document Relates to: Medical Monitoring Track | Master Docket: Misc. No. 21-1230<br><br>MDL No. 3014<br><br>**PLAINTIFFS' RESPONSE IN OPPOSITION TO DEFENDANT PHILIPS RS' OBJECTIONS TO SPECIAL DISCOVERY MASTER'S REPORT AND RECOMMENDATION AND PROPOSED ORDER RE: DISCOVERY OF MEDICAL MONITORING NAMED PLAINTIFFS' MEDICAL HISTORIES AND PREVIOUS EXPOSURES TO HAZARDOUS SUBSTANCES** |

## **TABLE OF CONTENTS**

**INTRODUCTION**..................................................................................................................... 1

**ARGUMENT** ............................................................................................................................. 5

**I.     Philips' Motion to Compel Should Be Denied and Its Objection as to Requests Nos. 2, 7, 12, 15, 17, 19 and 34 Should Be Rejected** ....................................................................................5

**II.    Philips' Motion to Compel Should Be Denied and its Objection Should Be Rejected as to Request No. 22 Even With the Narrowed Language** ............................................................8

**III.   Philips' Motion to Compel Should Be Denied and its Objection Should Be Rejected as to Request No. 27** ....................................................................................................... 8

**IV.    The Court Should Reject the Proposed Two-Step Process as Philips' Objection States** ........10

**CONCLUSION** ........................................................................................................................ 10

# TABLE OF AUTHORITIES

## Cases

*Ayers v. Jackson*,
  525 A.2d 287 (N.J. 1987) .................................................................................................. 9
*Ballard v. Union Carbide Corp.*,
  2012 WL 2089511 (S.D. W.Va. June 8, 2012) ................................................................... 4
*Brown v. Saint-Gobain Performance Plastics Corp.*,
  2018 WL 10517306 (D. N.H. October 10, 208) .................................................................. 4
*Cole's Wexford Hotel, Inc. v. Highmark Inc.*,
  209 F. Supp. 3d 810 (W.D. Pa. 2016) ................................................................................. 4
*Cole's Wexford Hotel, Inc. v. UPMC & Highmark Inc.*,
  2017 WL 432947 (W.D. Pa. 2017) ..................................................................................... 4
*Donovan v. Philip Morris USA, Inc.*,
  914 N.E.2d 891 (Mass. 2009) .............................................................................................. 9
*General Elec. Co. v. Knight*, ,
  499 U.S. 961 (1991) ............................................................................................................ 9
*Hansen v. Mountain Fuel Supply Co.*,
  858 P.2d 970 (Utah 1993) ............................................................................................... 3, 9
*Hashem v. Hunterdon County*,
  2017 WL 2215122 (D.N.J. May 18, 2017) ......................................................................... 5
*In re Paoli R.R. Yard PCB Litig.*,
  916 F.2d 829 (3d Cir. 1990) ............................................................................................ 1, 9
*Meyer ex rel. Coplin v. Fluor Corp.*,
  220 S.W.3d 712 (Mo. 2007) ................................................................................................ 2
*Redland Soccer Club, Inc. v. Dep't of the Army & Dep't of Def. of the U.S.*,
  696 A.2d 137 (Pa. 1997) ............................................................................................. 1, 3, 9
*Sullivan v. Saint-Gobain Performance Plastics Corp.*,
  2017 WL 11508079 (D. Vt. Sept. 13, 2017) ....................................................................... 4
*Wertz v. GEA Heat Exchangers Inc.*,
  2015 WL 8959408 (M.D. Pa. Dec. 16, 2015) ..................................................................... 4

## Rules

Fed. R. Civ. P. 26(b)(1) ............................................................................................................ 4, 10

## Other Authorities

Restatement (Second) of Torts § 15 (1965) .................................................................................. 9

**INTRODUCTION**

Philips RS North America LLC's ("Philips") Objections to the Special Discovery Master's Report and Recommendation[1] (ECF No. 2376) ("Obj.") prove that it seeks, without basis, broad private and privileged information which is not at issue in this medical monitoring case. The Objection shows that Philips *did not* "narrow [ ] a number of their requests, both temporally and otherwise" as the Special Master stated. R&R at 8. Philips simply wants to collect irrelevant private information to conduct a fishing expedition unrelated to the claims in this case.

Philips' Objections continue to rely upon the same misapprehension of medical monitoring that befalls the R&R. Simply put, the purpose of the remedy of medical monitoring is to recover the cost of a program of diagnostic testing to allow early detection of latent, unrecognized disease; the need for such monitoring arises once the plaintiff has been sufficiently exposed to the toxins at issue. *Redland Soccer Club, Inc. v. Dep't of the Army & Dep't of Def. of the U.S.*, 696 A.2d 137, 145 (Pa. 1997) (plaintiff has a significantly increased risk of contracting a serious *latent* disease); *id*. at 143 (repeating previous finding that there are "peculiar difficulties facing plaintiffs at risk for contracting a serious latent disease who are presently unable to demonstrate an actual physical injury") (citation omitted); *id*. at 143-44 (citing *In re Paoli R.R. Yard PCB Litig.*, 916 F.2d 829, 849-51 (3d Cir. 1990)) ("Often, the diseases or injuries caused by [toxic] exposure are latent. … [A]n action for medical monitoring seeks to recover only the quantifiable costs of periodic medical examinations necessary to detect the onset of physical harm. … The injury in a medical monitoring claim is the cost of the medical care that will, one

---

[1] The Special Master's Report and Recommendation and Proposed Order re: Discovery of Medical Monitoring Named Plaintiffs' Medical Histories and Previous Exposures to Hazardous Substances (ECF No. 2340) is referred to herein as the "R&R."

1

hopes, detect that injury."). Importantly, medical monitoring is not a remedy intended to detect already diagnosed physical injury. *Meyer ex rel. Coplin v. Fluor Corp.*, 220 S.W.3d 712, 716 (Mo. 2007) ("In toxic tort cases, there is often no immediately diagnosable physical injury or illness. Instead, the injury is latent and may not be discovered for months or even years."). Nor does a medical monitoring claim seek treatment of any condition, let alone "Pleaded Conditions." It only seeks compensation for a program of diagnostic testing for the early detections of illness or disease. Past monitoring and medical treatment of an already diagnosed physical injury is not at issue in a medical monitoring claim.

Philips claims that the private and privileged documents it seeks are "relevant because such documents may reflect that Plaintiffs are already being treated for a serious respiratory disease," "may well be associated with preexisting respiratory conditions," or may reflect "treatment or testing for Pleaded Conditions." Obj. at 5 (citing R&R at 5, 9). This argument lays bare the fundamental flaw of Philips' justification for its discovery requests. If a plaintiff already was being treated for "a serious respiratory disease or terminal lung cancer," R&R at 5, then the latent disease has already been detected. *Meyer ex rel. Coplin v. Fluor Corp.*, 220 S.W.3d 712, 718 (Mo. 2007) ("A physical injury requirement is inconsistent with the reality of latent injury and with the fact that the purpose of medical monitoring is to facilitate the early diagnosis and treatment of latent injuries caused by exposure to toxins."). As Plaintiffs do not seek compensation for treatment of any disease, what treatment a Plaintiff may have received for an already diagnosed disease and any private and privileged communications a Plaintiff may have had about that treatment are irrelevant.

In addition, a claim for medical monitoring is based on exposure to a known hazardous substance caused by the tortious conduct of the defendant, which is itself sufficient to increase

the risk of disease. It is not based on the risk created by another exposure, nor in combination with any other exposure or any preexisting medical condition. *Redland*, 696 A.2d at145 (citing *Hansen v. Mountain Fuel Supply Co.*, 858 P.2d 970, 976-77 (Utah 1993) ("[M]edical surveillance damages promote early diagnosis and treatment of disease or illness resulting from exposure to toxic substances caused by a tortfeasor's negligence"); *id*. at 145-46 (citing elements of the claim which include: "(1) exposure greater than normal background levels; (2) to a proven hazardous substance; (3) caused by the defendant's negligence; (4) as a proximate result of the exposure, plaintiff has a significantly increased risk of contracting a serious latent disease. . . ."). Past medical treatment for already identified disease is irrelevant.

Philips' justification for its discovery suffers from this fundamental error. Even though no medical monitoring Plaintiff is making a claim for monitoring or treatment of any currently diagnosed medical condition, Philips seeks to discover all private and privileged medical records and communications related to such a condition. If a Plaintiff already has one of the Pleaded Conditions, they do not receive monitoring for that condition, but would still receive diagnostic testing for the other diseases that Plaintiffs' medical monitoring program would test for. Thus, this exclusion is a matter of administration and does not justify the intrusion of a fishing expedition through all of a Plaintiff's private medical history that, again, has not been put at issue in this case. *See, e.g.,* C8 Medical Monitoring Program at 1 (indicating that "[a]ll Class Members should be screened for high cholesterol, *unless they have already been diagnosed or are under treatment for high cholesterol.*" And "[a]ll Class Members 18 years and older should be screened for thyroid disease, *unless they have already been diagnosed with or are already being treated for thyroid disease*.") (emphasis added).[2]

---

[2] http://www.c-8medicalmonitoringprogram.com/docs/notice.pdf.

3

Philips promotes a discovery standard that discovery requests may be deemed discoverable if there is any possibility, no matter how remote, that the information may be relevant to the general subject matter of the action. That is not the standard. *Cole's Wexford Hotel, Inc. v. Highmark Inc.,* 209 F. Supp. 3d 810, 823 (W.D. Pa. 2016), *on reconsideration sub nom. Cole's Wexford Hotel, Inc. v. UPMC & Highmark Inc.*, No. CV 10-1609, 2017 WL 432947 (W.D. Pa. Feb. 1, 2017). Relevance alone is not sufficient to permit discovery. Fed. R. Civ. P. 26(b)(1). Rather, discovery has to be 1) relevant and 2) proportional to the needs of the case. *Id*. Philips' discovery is neither. Discovery requests are analyzed based on *a proper understanding of what is relevant to a claim or defense. See Cole's Wexford Hotel*, 209 F. Supp. 3d at 822, citing Fed. R. Civ. P. 26(b)(1) Advisory Committee Note 2015. The amended rule "restores the proportionality factors to their original place in defining the scope of discovery." *Wertz v. GEA Heat Exchangers Inc.*, No. 1:14-CV-1991, 2015 WL 8959408, at *2 (M.D. Pa. Dec. 16, 2015).[3]

Discovery of private and privileged records and communications of already manifest physical injuries, or "preexisting conditions," is not relevant because Plaintiffs' claim is that Philips CPAP devices alone caused sufficient exposure to known toxins to increase Plaintiffs' risk of disease, not in relation to any prior physical condition or exposure, and Plaintiffs do not seek monitoring or treatment for an already existing illness or disease. Prescribing information for non-Philips CPAP machines and pictures of Plaintiffs' condition, among the other Philips' requests, do not relate to Plaintiffs' claims or any defenses to those claims because they are not

---

[3] None of the cases Philips' Objection cites for support perform a proportionality analysis as required by Fed. R. Civ. P. 26(b)(1). *See* Obj. at 6, citing *Brown v. Saint-Gobain Performance Plastics Corp.*, No. 16-cv-242-JL, 2018 WL 10517306 at *3 (D. N.H. October 10, 208), *Sullivan v. Saint-Gobain Performance Plastics Corp.*, No. 516-cv-125, 2017 WL 11508079 at *5 (D. Vt. Sept. 13, 2017), nor *Ballard v. Union Carbide Corp.*, No. 2:11-CV-0366, 2012 WL 2089511 at *2, 4 (S.D. W.Va. June 8, 2012).

put at issue in Plaintiffs' claim; even if they did, their value would be so attenuated as to fail proportionality requirements. Mere suspicion or speculation that relevant information may exist in a document is insufficient to justify discovery. *Hashem v. Hunterdon County*, No. 15-8585, 2017 WL 2215122, at *3 (D.N.J. May 18, 2017).

The Court should deny Philip's Motion to Compel and should reject Philip's Objections and the conclusions of the R&R that Philips uses to craft its Objections.

## ARGUMENT

I. **Philips' Motion to Compel Should Be Denied and Its Objection as to Requests Nos. 2, 7, 12, 15, 17, 19 and 34 Should Be Rejected**

For each of these requests, Philips admitted that "MM Plaintiffs' 'medical records/information' objection would be resolved if MM Plaintiffs are compelled to produce their medical records." Obj., Ex. F (ECF No. 2376-6), at 4-5. Special Master Katz correctly deduced that these Requests are duplicative, especially because Plaintiffs have already produced responsive documents, including purchase receipts for Recalled and other CPAP devices, prescription information for Recalled Devices, cleaning instructions, accessory information and receipts, etc.[4]

Request 2 seeks all documents and communications regarding acquisition of a recalled device, including receipts, insurance payment, explanations of benefits, and/or prescriptions. This request clearly seeks irrelevant information. What was paid or who paid for the device is irrelevant; this is not the economic loss track. Explanations of benefits or prescriptions are similarly irrelevant to the issue of Philips-caused exposure, particularly when Plaintiffs have already produced the Care Orchestrator data. "Communications regarding" the acquisition

---

[4] Plaintiffs produced these documents, despite that fact that such documents are completely irrelevant, to attempt to move the case forward.

5

clearly seeks private and privileged physician-patient communications not relevant to Plaintiffs' claim, and their production is not proportionate to the needs of the case. Philips claims that this information would be associated with "pre-existing respiratory conditions." Obj. at 3 (citing R&R at 5). Again, already diagnosed physical injury is irrelevant to monitoring seeking testing for unidentified or latent diseases.

Request 7 seeks all documents and communications regarding non-Philips CPAP devices. This request clearly seeks irrelevant information. Whether Plaintiff considered or used another device is irrelevant because it does not relate to toxic exposure from the Philips Recalled Devices, which is the basis for Plaintiffs' claims, nor the use of Philips Recalled Devices, which create the toxic exposure at issue. "Communications regarding" the acquisition of a non-Philips machine clearly seeks privileged physician-patient communications not relevant to the claim, and their production is not proportionate to the needs of the case. Philips already knows that non-Recalled devices would have been used because, after its tortious delay, Philips finally recalled the medically necessary devices.

Request 12 seeks all documents and communications regarding cleaning of a Recalled Device, including the products used to clean the device and frequency of cleaning. "Communications regarding" cleaning the device and frequency of cleaning likely seek privileged physician-patient communications not relevant to the claim, and the request is not proportionate to the needs of the case. Philips makes no showing that this information is relevant to any claim or defense in the case.

Request 15 seeks all documents and communications regarding use, purchase, or acquisition of any accessory to be used with the Recalled Device. Whether Plaintiffs used a humidifier, cleaner, wipe, mask, headgear, tubing, hose, filter, or other accessory is irrelevant to

the claims in this case, and Philips has failed to provide any basis of the request. Despite the lack of relevance of these requests, Plaintiffs agreed to and did provide documents in their possession regarding cleaning of their device, with the exception of their private medical records.

Request 17 seeks all documents and communications regarding the recall of a Recalled Device, including communications with any person, any health care provider, or any durable medical equipment provider; documents regarding Plaintiffs' decision to participate in the recall; and documents on when and how Plaintiff became aware of the recall. The request for communications with health care providers are clearly privileged, as would be communications with a person's spouse. Such communications are not relevant to any of Plaintiffs' claims or Philips' defenses because they do not relate to any of the elements of Plaintiffs' medical monitoring claim, especially because Plaintiffs produced other documents in response to this request, including recall notices issued by Philips itself.

Requests 19 and 34 seek documents and communications relating to any CPAP device other than the Philips Recalled Device used or "claimed to be acquired." These Requests are duplicative of Request No. 7 and are equally irrelevant as Plaintiffs argue in response to Request No. 7 above. Further, Plaintiffs do not "claim to have acquired a replacement device" as an element of their medical monitoring claims in this case; such acquisition would be wholly irrelevant to the elements of medical monitoring. As explained above, despite the clear lack of relevance of these requests, Plaintiffs agreed to and did provide documents in their possession regarding their replacement devices, including receipts, with the exception of their private medical records.

7

These Requests, even if not duplicative, are irrelevant to the claims and defenses in the case and not proportional to the needs of the case. Philips' Motion to Compel responses to these should be denied.

II.  **Philips' Motion to Compel Should Be Denied and its Objection Should Be Rejected as to Request No. 22 Even with the Narrowed Language**

Request No. 22 seeks all documents and communications from the past 10 years relating to any treatment/and or testing prescribed to a Plaintiff without limitation as to condition including for surgeries, physicals, blood and lab tests and procedures necessary for diagnosis and treatment. Using the fundamentally flawed understanding of medical monitoring discussed above and in Plaintiffs' Objections, the R&R limits this request to "treatment or testing for Pleaded Conditions" instead of recognizing that information as irrelevant. R&R at 9. Operating under the same misguided principles, Philips argues that the R&R correctly recommends granting its Motion to Compel as to Request No. 22, but takes issue with the scope of the R&R which limits the request to prior treatment or monitoring, because "any prior or current treatment or monitoring for the diseases … would likely be relevant" or "be relevant to determining if they are already undergoing monitoring duplicative of monitoring Plaintiffs seek." Obj. at 6 (citing R&R at 9-10).

As discussed in Plaintiffs' Objection, ECF No. 2378 at 13, and above, Plaintiffs' medical monitoring claim explicitly does not seek treatment for any already present and diagnosed physical injury, and so does not seek monitoring for any such condition. Therefore, Philips' justification is without merit, and its Motion to Compel should be denied.

III.  **Philips' Motion to Compel Should Be Denied and its Objection Should Be Rejected as to Request No. 27**

Request 27 seeks "[a]ll documents photographs, films, movies, or videotapes that depict or refer to Your present condition, injuries, and/or damages." The breadth of this request is

8

*astounding*—it would arguably include all videos and photographs taken of all Plaintiffs for an unlimited period of time. This request would include videos of family outings, birthday parties, and holiday pictures, not to mention any pictures or video taken during the treatment of medical conditions, including preparation and recovery from surgery.

Philips relies on the R&R's justification of "pre-existing conditions," to seek this discovery. Obj. at 7 (citing R&R at 10). Plaintiffs do not seek monitoring for any pre-existing conditions. Philips' further justification is that Plaintiffs claim subcellular injury. Obj. at 7. It is absurd to think that there are photographs or videos of subcellular injury.[5] Since Plaintiffs seek monitoring for *latent* diseases, there are no such "films or photographs." Moreover, Plaintiffs' evidence of subcellular injury will be of necessity proven by expert testimony in this case, not through prior medical records or Facebook videos. *Redland Soccer*, 696 A.2d at 147; *Donovan,* 914 N.E.2d at 896, 902 (citing *In re Paoli R.R. Yard PCB Litig.,* 916 F.2d 829, 852 (3d Cir. 1990), cert. denied sub nom. *General Elec. Co. v. Knight,* 499 U.S. 961 (1991)); *Ayers v. Jackson,* 525 A.2d 287, 312-13 (N.J. 1987); *Hansen v. Mountain Fuel Supply Co.,* 858 P.2d 970, 980 (Utah 1993) (proof of the elements of medical monitoring usually will require competent expert testimony; evidence of subcellular change based on expert testimony). Philips' insistence that Plaintiffs answer this request demonstrates its abject failure to tie the scope of its requested discovery to information relevant to the claims and defenses at issue in this case, and in turn

---

[5] Plaintiffs plead subcellular injury because such injury is consistent with a latent disease process, not a presently diagnosed physical injury, to satisfy a bodily injury requirement if required by a particular state. *See Donovan v. Philip Morris USA, Inc*., 914 N.E.2d 891, 900-01 (Mass. 2009) (sufficient proof of impact; element of injury satisfied); Restatement (Second) of Torts § 15 (1965) (bodily harm includes where the structure or function of any part of the other's body is altered to any extent even though the alteration causes no other harm).

9

satisfy the proportionality requirement of Fed. R. Civ. P. 26(b)(1), likely because there is no basis on which to make that connection.

### IV. The Court Should Reject the Proposed Two-Step Process as Philips' Objection States

Philips states that the Court should reject the proposed two-step process of the R&R. Philips' Obj. at 7, fn. 3. Plaintiffs agree. The result of the two-step process would be to continue to encroach on Plaintiffs' private and privileged medical history without basis and will add significantly to the delays and costs in this case.

## CONCLUSION

For the foregoing reasons, the Court should reject Philips Objections and deny its Motion to Compel.

Dated: December 21, 2023                                       Respectfully submitted,

/s/ Kelly K. Iverson
Kelly K. Iverson, Esquire
**LYNCH CARPENTER, LLP**
1133 Penn Avenue, 5th Floor
Pittsburgh, PA 15222
T (412) 322-9243
kelly@lcllp.com

/s/ Christopher A. Seeger
Christopher A. Seeger, Esquire
**SEEGER WEISS LLP**
55 Challenger Road, 6th Floor
Ridgefield Park, NJ 07660
212-584-0700
cseeger@seegerweiss.com

/s/ Sandra L. Duggan
Sandra L. Duggan, Esquire
**LEVIN SEDRAN & BERMAN**
510 Walnut Street, Ste 500
Philadelphia, PA 19106
215-592-1500
215-592-4663 (fax)
sduggan@lfsblaw.com

10

*/s/ Steven A. Schwartz*
Steven A. Schwartz, Esquire
**CHIMICLES SCHWARTZ KRINER & DONALDSON-SMITH LLP**
361 West Lancaster Avenue
One Haverford Centre
Haverford, PA 19041
(610) 642-8500
steveschwartz@chimicles.com

*Plaintiffs' Co-Lead Counsel*

*/s/ D. Aaron Rihn*
D. Aaron Rihn, Esquire
**ROBERT PEIRCE & ASSOCIATES, P.C.**
707 Grant Street
Suite 125
Pittsburgh, PA 15219
412-281-7229
412-281-4229 (fax)
arihn@peircelaw.com

*Plaintiffs' Co-Liaison Counsel*

**CERTIFICATE OF SERVICE**

    I hereby certify that on December 21, 2023, the foregoing document was electronically filed with the Clerk of the Court and served upon counsel of record through the Court's ECF system.

                                                     /s/ Kelly K. Iverson
                                                     Kelly K. Iverson, Esquire