**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| IN RE: PHILIPS RECALLED CPAP, | ) | Master Docket: Misc. No. 21-1230 |
| BI-LEVEL PAP, AND MECHANICAL | ) | |
| VENTILATOR PRODUCTS | ) | MDL No. 3014 |
| LITIGATION, | ) | |
| | ) | |
| This Document Relates to: | ) | |
| | ) | |
| *King v. Koninklijke Philips N.V., et al.* | ) | |
| Case No. 2:23-cv-02040-JFC | ) | |

**PLAINTIFFS' LEADERSHIP'S RESPONSE TO *PRO SE* PLAINTIFF**
**DERRICK MARTIN KING'S MOTION TO COMPEL DISCOVERY**
**OR IN THE ALTERNATIVE TO REMAND HIS CASE**

**I.      INTRODUCTION**

On January 4, 2024, *pro se* Plaintiff Derrick Martin King ("Mr. King") filed a Motion to

Compel Discovery or in the Alternative Motion to Remove Case from the Class Action

Proceedings and Remand. ECF 2412. Even though the Motion is directed at Defendants, the Court

requested that Plaintiffs' Leadership submit this response.

Pursuant to 28 U.S.C. § 1407, thousands of related cases against the Defendants were

transferred to this Court, and this MDL was established. ECF 1. Also pursuant to Section 1407,

subsequently filed cases, "tag-alongs," such as Mr. King's case (ECF 2364), have been transferred

to this MDL and are governed by the procedures set forth by the Court.

As the MDL Court, this Court properly entered Pre-Trial Orders to govern the pretrial

proceedings. This includes Pre-Trial Order 8 (ECF 395) ("PTO #8"), which appoints a leadership

structure and assigns to that leadership, among other things, responsibility for "the conduct of ***all***

pretrial discovery on behalf of plaintiffs in ***all*** actions which are consolidated with the instant

MDL" (ECF 395 at 7 (emphasis added)), and Pre-Trial Order 26(b) ("PTO #26(b)), which governs

discovery in the personal injury cases, such as Mr. King's case (ECF 2275). Orders such as PTO #8 and #26(b) are typical in an MDL, are entirely appropriate, are within the broad discretion of the Court, and help ensure that MDLs are conducted in such a manner as to eliminate duplicative discovery, prevent inconsistent pretrial rulings, and conserve the resources of the parties, their counsel, and the judiciary. To allow individual plaintiffs to conduct their own, overlapping, discovery would defeat the purpose of the MDL and would lead to inefficiencies, increased costs of litigation, inconsistencies, and delay.

The Court was well within its discretion in entering PTO #8 and #26(b). Plaintiffs' Leadership will continue to work with Mr. King, as set forth below, so that he is able to access all of the information that is available to counsel for represented parties.

## II.   PTO #8 IS APPROPRIATE AND CONSISTENT WITH THE COURT'S BROAD DISCRETION TO EFFECTIVELY MANAGE THE MDL

On December 15, 2022, this Court entered PTO #8, which appointed 33 different attorneys to serve in various leadership positions in this case. Before doing so, the Court personally interviewed 75 different applicants to ensure that it had "… an array of highly skilled counsel with diverse backgrounds and experience who will provide the plaintiffs with effective counsel to advance the MDL is an efficient and just manner."[1] This Order also vests this leadership team with the authority and responsibility to "agree upon a plan for conducting the MDL *on behalf of all* plaintiffs" and "conduct discovery on behalf of the plaintiffs."[2]

---

[1] Plaintiffs' Leadership respectfully disagrees with Mr. King's suggestion that he is deprived of due process by involvement in this MDL. The Law360 article cited by Mr. King (ECF 2412-1 at 23–28) does not suggest consolidated pre-trial discovery infringes on due process rights. Instead, it cautions that courts should be cognizant of ensuring there is "adequate representation" to protect due process. It suggests that judges "select cognitively diverse leaders through a competitive process that considers adequate representation." Through the application and interview process, this Court did just that before entering PTO #8.

[2] Leadership's exclusive power to plan, coordinate, and conduct discovery on behalf of all

This is the only effective manner in which consolidated proceedings like this case can progress, and this Court's authority to enter such an Order is clear and unequivocal. *See Vincent v. Hughes Air W., Inc.*, 557 F.2d 759, 774–75 (9th Cir. 1977) (holding that district court has "authority to direct the appointment of a committee of lead counsel" . . . "to insure the orderly disposition of the actions with economy of time, money and effort for the court, counsel and the parties"); Manual for Complex Litigation, § 22.62 (4th ed. 2004) ("The judge [in a complex litigation] will often need to appoint lead counsel or a committee of counsel to coordinate discovery and other pretrial preparation."). Moreover, throughout this litigation, Plaintiffs' Leadership have coordinated and conducted discovery consistent with PTO #8 and with their obligation to do so in the interests of all of the Plaintiffs in this MDL.

Generally speaking, district courts have inherent powers to manage their cases, particularly with respect to "massive litigation." *In re Asbestos Prods. Liab. Litig.* (No. VI), 718 F.3d 236, 243 (3d Cir. 2013) (*quoting In re Fannie Mae Sec. Litig.*, 552 F.3d 814, 822-23 (D.C. Cir. 2009)) ("[d]istrict judges 'must have authority to manage their dockets, especially during [a] massive litigation'"); *see also Ramirez v. T&H Lemont, Inc.*, 845 F.3d 772, 776 (7th Cir. 2016) ("a court has the inherent authority to manage judicial proceedings and to regulate the conduct of those appearing before it"); *F.J. Hanshaw Enters., Inc. v. Emerald River Dev., Inc.*, 244 F.3d 1128, 1136 (9th Cir. 2001) (citation omitted) ("All federal courts are vested with inherent powers enabling them to manage their cases and courtrooms effectively and to ensure obedience to their orders."). The district court's power extends to, for example, "controlling and scheduling discovery, including orders affecting disclosures and discovery under Rule 26 and Rules 29

Plaintiffs is not unique to this MDL. It is the standard in virtually every MDL because it is necessary to effectuate the purpose of consolidation.

through 37," "adopting special procedures for managing potentially difficult or protracted actions that may involve complex issues, multiple parties, difficult legal questions, or unusual proof problems," and "facilitating in other ways the just, speedy, and inexpensive disposition of the action." Fed. R. Civ. P. 16(c)(2)(F), (L) & (P).

These powers are particularly heightened when managing a large multidistrict litigation where the goal of centralization under Section 1407 is to eliminate duplicative discovery, prevent inconsistent pretrial rulings, and conserve the resources of the parties, their counsel, and the judiciary. *See In re H.R. Block Mort. Corp. Prescreening Litig.,* 435 F. Supp. 2d 1347, 1348 (JPML 2006). Courts have noted that such litigation "presents a special situation, in which the district judge must be given wide latitude with regard to case management in order to effectively achieve the goals set forth by the legislation that created the Judicial Panel on Multidistrict Litigation." *In re Avandia Mktg., Sales Pracs. & Prods. Liab. Litig*., 687 F. App'x 210, 214 (3d Cir. 2017) (internal citation omitted); *see In re Asbestos Prods. Liab. Litig.* (No. VI), 718 F.3d at 246 ("[A]dministering cases in multidistrict litigation is different from administering cases on a routine docket."). Case Management Orders that "streamline litigation in complex cases" have been "routinely used by courts to manage mass tort cases," *e.g., In re Vioxx Prod. Liab. Litig*., 557 F. Supp. 2d 741, 743 (E.D. La. 2008) (internal citations omitted), and appellate courts have regularly upheld their use in MDL cases, *e.g., In re Phenylpropanolamine (PPA) Prods. Liab. Litig.*, 460 F.3d 1217, 1232 (9th Cir. 2006) (noting "[c]ase management orders are the engine that drives disposition on the merits").[3]

---

[3] *See, e.g., United States v. Graf*, 610 F.3d 1148, 1169 (9th Cir. 2010) (citing *United States v. W.R. Grace,* 526 F.3d 499, 508-09 (9th Cir. 2008) (en banc)) ("A district court has broad authority to enter pretrial case management orders to ensure that the trial proceeds efficiently."); *see also In re Avandia*, 687 F. App'x at 214; *Dzik v. Bayer Corp*., 846 F.3d 211, 216 (7th Cir. 2017).

Here, the appointment and authority established in PTO #8 is typical and proper. In fact, this very issue was addressed by the Eastern District of New York in the *Zyprexa* MDL. *See Dagliano v. Eli Lilly*, 2008 WL 586372 (E.D.N.Y. Feb. 29, 2008). In *Dagliano*, a *pro se* plaintiff objected to the court's refusal to permit him to engage in individual discovery (Requests for Admissions). *Id*. at *1. The court referred to its own Case Management Order, which vested the Plaintiffs' Steering Committee with the responsibility to "[c]onduct all discovery in a coordinated and consolidated manner on behalf of and for the benefit of all Plaintiffs." *Id*. The court noted that the CMO "does not violate the Federal Rules of Civil Procedure; on the contrary, courts enjoy broad discretion to appoint lead counsel in MDL and other complex litigations and to restrict the activities of attorneys and/or unrepresented parties who have not been so appointed by the court." *Id.* (citing *Farber v. Riker-Maxson Corp.,* 442 F.2d 457, 459 (2d Cir.1971); *Vincent v. Hughes Air West,* 557 F.2d 759, 773 (9th Cir.1977); *County of Suffolk v. Long Island Lighting Co.,* 710 F. Supp. 1422, 1425 (E.D.N.Y.1989)). The court added that the plaintiff was subjected to the same limitations that applied "to all parties who are not represented by members of the PSC, and are not directed at plaintiff or *pro se* parties generally." *Id.*

## III.  PTO #26(b) PROVIDES MR. KING WITH CERTAIN DICOVERY IN HIS INDIVIDUAL PERSONAL INJURY CASE AND AN AVENUE FOR ADDITIONAL DISCOVERY

Under PTO #26(b), Mr. King is already entitled to certain discovery from Philips Defendants related to his individual case. PTO #26(b) provides for the exchange of Plaintiff and Defendant Fact Sheets in each personal injury case.

In their Fact Sheet, Defendants must disclose to Mr. King: (a) information related to Mr. King's device(s), including the Durable Medical Equipment (DME) provider the device(s) were sold to, the device(s) labeling, manuals, and instructions for use, and whether the device(s) have been returned as part of the recall, (b) information related to communications with Mr. King's

health care providers and DMEs related to the safety of the device(s), the recall, marketing of the device(s), and any financial relationship Defendant had with the provider or DME, (c) information regarding Mr. King and any data, information, or reports related to Mr. King's medical condition, (d) identification of any adverse event reports related to Mr. King, and (e) documents, such as the Device History Record, adverse event reports, complaints, photographs of Mr. King's device(s), communications related to Mr. King's device(s) or health care providers, and any other documents used or addressed in responding to the DFS. (ECF 2275-2). The effect of the DFS is the same as responses to Interrogatories and Requests for Production of Documents under the Federal Rules of Civil Procedure. (ECF 2275, ¶4). If Mr. King believes there are deficiencies in the DFS, he may notify Defendants of the same and, if not resolved, may present the dispute to the Discovery Special Master for adjudication. (ECF 2275, ¶14). Under PTO#26(b), all other individual case-specific discovery is held in abeyance until a case is designated for further discovery (such as for bellwether trial discovery), at which time Mr. King would be entitled to serve up to 10 additional case-specific Interrogatories. (ECF 2275, ¶4).

As with PTO #8, this Court has broad discretion to control pre-trial discovery and was well within those rights in entering PTO #26(b). *See In re Data Gen. Corp. Antitrust Litig.*, 510 F. Supp. 1220, 1226 (J.P.M.L. 1979) ("Section 1407 contemplates that the degree and manner of coordinated or consolidated pretrial proceedings is left entirely to the discretion of the trial judge."); *In re Zyprexa Prod. Liab. Litig.*, 467 F. Supp. 2d 256, 273 (E.D.N.Y. 2006) ("orders of the transferee court are binding on all cases pending before it, and those which may be transferred to it as tag-along matters, notwithstanding that those cases may ultimately be adjudicated in the federal and state courts in which they originated").

Moreover, once this Court has concluded this MDL, Mr. King will have the right to have

his case remanded to its court of origin and he will have access to the necessary materials compiled by Plaintiffs' Leadership in order to proceed to trial.

Here, however, Mr. King is seeking every document provided in discovery. To date, more than 2.5 million documents, including non-party productions, Plaintiff productions, and Defense productions, including Teams chats and mobile productions, have been produced. Plaintiffs' Leadership have spent significant time and expense to house those documents on an e-discovery platform and to review those documents with technology assistance.

Currently, there are 682 actions filed and consolidated in this MDL, with another 56,691 potential cases pending on the census registry. It would defeat the purpose of consolidation if each of these plaintiffs or potential plaintiffs had full access to all of the materials produced in this litigation at each and every point in the proceeding. At this time, all Mr. King needs to do to preserve his rights is to comply with the Orders with respect to Short Form Complaints and Plaintiff Fact Sheets (or opt to avail himself of the census registry). As discussed in more detail below, Mr. King is doing so, and his rights will be preserved.  This Court has acted consistently with its authority to manage this MDL. It would defeat the purposes of centralization and coordination if all of the individual plaintiffs were conducting their own discovery. This is necessarily a matter of docket management, not a denial of participation.

IV. **PLAINTIFFS' LEADERSHIP HAVE WORKED WITH, AND WILL CONTINUE TO WORK WITH, MR. KING TO MAKE SURE HE HAS ACCESS TO ALL OF THE INFORMATION THAT IS AVAILABLE FOR INDIVIDUAL PLAINTIFFS OR THEIR COUNSEL**

Co-Liaison counsel for Plaintiffs, D. Aaron Rihn, and his staff members at Robert Peirce & Associates, P.C., have had numerous interactions with Mr. King. Mr. King has always been respectful and gracious in these interactions. These interactions are briefly summarized as follows:

A.    On September 28, 2023, Mr. King requested access to the Plaintiffs' MDL 3014 website and identified himself as a *pro se* personal injury plaintiff. He was advised to register for the website and his access was granted upon registration.

B.    On November 5, 2023, Mr. King contacted Co-Liaison Counsel D. Aaron Rihn and Peter S. Wolff via email requesting a copy of the entire docket and requesting a copy of "all the discovery that has occurred in this case to date."

C.    On November 13, 2023, Mr. King again contacted Co-Liaison Counsel D. Aaron Rihn and Peter S. Wolff requesting a response to his November 5, 2023 inquiry. Mr. King advised that he would seek relief with the Court if he did not receive a response by November 20, 2023. Co-Liaison Counsel responded via email with a Dropbox link to all of the MDL 3014 public docket filings (including the Orders discussed above), and advised Mr. King that access to discovery materials is not available to counsel who are not part of MDL leadership at this time. Mr. King also was advised to review the Pretrial Orders in this litigation, was made aware of the Short Form Complaint requirement and the Plaintiff Fact Sheet, was provided a link to the electronic service platform MDL Centrality, and was encouraged to familiarize himself with the filing procedures.

D.    On November 30, 2023, Co-Lead Counsel Sandra Duggan directed Co-Liaison Counsel to contact Mr. King to discuss PTO #8 and the processes of the MDL, and to answer any of Mr. King's questions, following emails from Mr. King to defense counsel requesting discovery.

E.   On December 1, 2023, Attorney Rihn called Mr. King and discussed the discovery procedures in the MDL, as well as the Orders and requirements related to Short Form Complaints and the Plaintiff Fact Sheet. After the call concluded, a Participation Agreement was sent for e-signature to Mr. King so that he can receive all common benefit materials compiled by Plaintiffs' Leadership, and particularly what is available to individual plaintiffs' counsel through Plaintiffs' website portal. Mr. King returned an executed copy of the Participation Agreement.

F.   On January 5, 2023, Attorney Rihn called Mr. King and encouraged him to file his Short Form Complaint and to complete and serve his Plaintiff Fact Sheet. Attorney Rihn explained that a Defendant Fact Sheet would follow the submission of the Plaintiff Fact Sheet.

G.   On January 30, 2023, Robert Peirce & Associates, P.C. provided Mr. King with a copy of the January 25, 2024 Status Conference transcript, and a reminder to complete his Plaintiff Fact Sheet if he did not already do so. Mr. King advised that he completed his Plaintiff Fact Sheet and served it via MDL Centrality.

To date, Plaintiffs' Co-Liaison counsel has coordinated with Mr. King to ensure he has access to the shared Plaintiffs' counsel website, filed his Short Form Complaint, and completed his Plaintiff's Fact Sheet. Additionally, Mr. King was, and will continue to be, provided with copies of all documents filed on the docket and all communications and documents provided to all Plaintiffs' counsel. Plaintiffs' Leadership will continue to work with, and on behalf of, Mr. King as this litigation proceeds.

## V.      CONCLUSION

For all of the foregoing reasons, Plaintiffs' Leadership respectfully submits that the Court has acted within its authority in managing the pretrial proceedings in this MDL, including through entry of PTO #8 and #26(b).

Dated: February 8, 2024

*/s/ Sandra L. Duggan*
Sandra L. Duggan, Esquire
**LEVIN SEDRAN & BERMAN LLP**
510 Walnut Street, Suite 500
Philadelphia, PA 19106
(215)592-1500 (phone)
sduggan@lfsblaw.com

*/s/ Christopher A. Seeger*
Christopher A. Seeger, Esquire
**SEEGER WEISS LLP**
55 Challenger Road, 6th Floor
Ridgefield Park, NJ 07660
 (973) 639-9100 (phone)
cseeger@seegerweiss.com

*/s/ Steven A. Schwartz*
Steven A. Schwartz, Esquire
**CHIMICLES SCHWARTZ KRINER &**
**DONALDSON-SMITH LLP**
361 West Lancaster Avenue
One Haverford Centre
Haverford, PA 19041
(610) 642-8500 (phone)
steveschwartz@chimicles.com

*/s/ Kelly K. Iverson*
Kelly K. Iverson, Esquire
**LYNCH CARPENTER, LLP**
1133 Penn Avenue, 5th Floor
Pittsburgh, PA 15222
(412) 322-9243 (phone)
kelly@lcllp.com

*Plaintiffs' Co-Lead Counsel*

 */s/ D. Aaron Rihn*
D. Aaron Rihn, Esquire
**ROBERT PEIRCE & ASSOCIATES,**
**P.C.**
707 Grant Street, Suite 125
Pittsburgh, PA 15219
(412) 281-7229 (phone)
(412) 281-4229 (fax)
arihn@peircelaw.com

Peter St. Tienne Wolff, Esquire
**PIETRAGALLO GORDON ALFANO**
**BOSICK & RASPANTI, LLP**
One Oxford Centre - 38th Floor
Pittsburgh, PA 15219
(412) 263-2000 (phone)
(412) 263-2001 (fax)
psw@pietragallo.com

*Plaintiffs' Co-Liaison Counsel*