# IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| IN RE: PHILIPS RECALLED CPAP | ) | |
| BI-LEVEL PAP, AND MECHANICAL | ) | Master Docket: No. 21-mc-1230-JFC |
| VENTILATOR PRODUCTS | ) | |
| LITIGATION | ) | MDL No. 3014 |
| | ) | |
| This document relates to: | ) | |
| *All Actions* | ) | |

## OBJECTION OF NON-PARTIES
### SOCLEAN, INC AND DW MANAGEMENT SERVICES, LLC
### TO PROPOSED PRETRIAL ORDER #31

# **TABLE OF CONTENTS**

PRELIMINARY STATEMENT ................................................................................. 1

ARGUMENT ......................................................................................................... 3

I.    The Proposed Order Is Designed to Allow Philips to Avoid its Rule 11
      Obligations. ................................................................................................. 3

      A.    *Philips and its Counsel Must Assess Each Third-Party Claim Asserted.* .............. 3

      B.    *The Proposed Order Purports to Relieve Philips of its Obligation to
            Investigate the Factual Bases of its Claims.* ........................................... 4

      C.    *The Proposed Order Purports to Relieve Philips of its Obligation to
            Investigate the Legal Bases of Its Claims.* ............................................ 6

      D.    *A "Master Complaint" Does Not Eliminate the Need to Plead Individual
            Claims.* .................................................................................... 7

II.   Any Third-Party Complaints—"Master" or Individualized—Would Be Premature
      Until Philips Answers the Personal Injury Complaints. .................................... 9

III.  The Proposed Order Would Improperly Entangle Third-Party Defendants in the
      Personal Injury Cases Indefinitely. .......................................................... 10

      A.    *Any Third-Party Complaint Against DW Management Would Be Subject
            to Dismissal Under Rule 12(b)(2).* ...................................................... 10

      B.    *Any Master Third-Party Complaint Without Allegations Tethered to
            Individual Personal Injury Causes of Action or Specific State Laws Would
            Be Subject to Dismissal Under Rule 12(b)(6).* ........................................ 10

      C.    *A Third-Party Complaint for Contribution Would Be Subject to a Motion
            to Strike Under Rule 14, as It Would Be Obviously Unmeritorious.* .................. 11

      D.    *A Third-Party Complaint Would Be Subject to a Motion to Strike Under
            Rule 14, as It Would Unduly Complicate the Personal Injury Litigation.* ............ 14

IV.   The Proposed Order Would Improperly Toll the Statute of Limitations. ...................... 15

CONCLUSION ..................................................................................................... 15

# TABLE OF AUTHORITIES

**Page(s)**

**CASES**

*Adams v. BRG Sports, Inc.*,
 2018 WL 4853130 (N.D. Ill. Oct. 5, 2018)..........................................................................5, 8

*Ashcroft v. Iqbal*,
 556 U.S. 662 (2009)...........................................................................................................4

*Bakali v. Jones*,
 2018 WL 3054748 (W.D. Pa. June 20, 2018)......................................................................11

*BCBSM, Inc. v. Walgreen Co.*,
 2022 WL 20440183 (N.D. Ill. Apr. 13, 2022)......................................................................6

*Berryman v. Newalta Env't Servs., Inc.*,
 2018 WL 5631169 (W.D. Pa. Oct. 31, 2018) ......................................................................14

*Cohen v. Ohio Cas. Grp.*,
 2009 WL 10728666 (W.D. Pa. Jan. 6, 2009)........................................................................9

*Dixon v. Caesars Entertainment Corp.*,
 2022 WL 3445764 (N.D. Ill. Aug. 17, 2022) ......................................................................10

*Foulke v. Dugan*,
 212 F.R.D. 265 (E.D. Pa. 2002)..........................................................................................6

*Gelboim v. Bank of Am. Corp.*,
 574 U.S. 405 (2015)........................................................................................................7, 8

*Heinrich v. Ethicon, Inc.*,
 2021 WL 5056263 (D. Nev. Nov. 1, 2021) ..........................................................................8

*In re Refrigerant Compressors Antitrust Litig.*,
 731 F.3d 586 (6th Cir. 2013) ..............................................................................................7

*In re U.S. Lines, Inc.*,
 262 B.R. 223 (S.D.N.Y. 2001), *aff'd*, 318 F.3d 432 (2d Cir. 2003) ........................................4

*In re Zantac (Ranitidine) Prod. Liab. Litig.*,
 2020 WL 7866674 (S.D. Fla. Dec. 31, 2020), *aff'd in part, rev'd in part on
 other grounds*, 2022 WL 16729170 (11th Cir. Nov. 7, 2022).................................................7

*Johnson v. SmithKline Beecham Corp.*,
 2023 WL 8367748 (E.D. Pa. Oct. 12, 2023)..........................................................................4

*McCurdy v. Wedgewood Cap. Mgmt. Co.*,
    1999 WL 391494 (E.D. Pa. May 28, 1999) ...................................................................10

*Millers Cap. Ins., Co. v. Hydrofarm, Inc.*,
    340 F.R.D. 198 (D.D.C. 2022) ........................................................................................11

*Naramanian v. Greyhound Lines, Inc.*,
    2010 WL 4628096 (E.D. Pa. Nov. 15, 2010) ..................................................................9

*Roth v. Greyhound Corp.*,
    149 F. Supp. 454 (E.D. Pa. 1957) ...................................................................................6

*Scobie v. Waco Equip. Co.*,
    2008 WL 1943551 (W.D. Pa. May 1, 2008) ..................................................................14

*Straub v. Desa Indus., Inc.*,
    88 F.R.D. 6 (M.D. Pa. 1980) ..........................................................................................15

*Stroman v. United States*,
    2023 WL 6172885 (3d Cir. Sept. 22, 2023) ..................................................................15

*Too, Inc. v. Kohl's Dep't Stores, Inc.*,
    213 F.R.D. 138 (S.D.N.Y. 2003) ...................................................................................11

*Wingrove v. Wy. Casing Serv., Inc.*,
    2020 WL 6064111 (N.D. Ohio Oct. 14, 2020) ................................................................7

## STATUTES AND RULES

Fed. R. Civ. P. 11 ........................................................................................................................7

Fed. R. Civ. P. 12 ......................................................................................................................10

Fed. R. Civ. P. 14 ...................................................................................................................6, 10

Ind. Code § 34-51-2-12 ...............................................................................................................6

iii

## PRELIMINARY STATEMENT

Non-parties SoClean, Inc. ("SoClean") and DW Management Services, LLC ("DW Management") object to and oppose the motion to enter Pretrial Order #31.[1]  ECF No. 2647. SoClean asked Philips[2] multiple times if it was aware of any case in which a court has granted the relief it seeks.  Philips acknowledged it had nothing.  Nor does Philips provide any factual or legal basis for entering the proposed order in its bare-bones motion, which warrants denial on its face.

The procedure by which Philips seeks to file a Master Third-Party Complaint is misguided and wrong.  During the last status conference, Philips represented that about 800 individual plaintiffs have filed personal injury claims.  Only about ██% of those plaintiffs have self-identified as SoClean users in sworn plaintiff fact sheets.[3]  Despite this knowledge, Philips threatened to sue SoClean and DW Management for contribution in every personal injury case.  *See*, *e.g.*, Feb. 29, 2024 Hrg. Tr. at 18 ("We can, although I don't want to, file a contribution claim with respect to all 300 or however many hundred individual complaints there are, including the short form complaints.").  Philips has since retreated from this aggressive posture, but only after being confronted about its obligations under Rule 11.  Nonetheless, Philips still seeks an end run around the Federal Rules through the *automatic* application of a Master Third-Party Complaint in any case in which a plaintiff self-identified as a SoClean user, regardless of whether Philips has a legitimate factual or legal basis to bring a contribution claim under state law.  ECF No. 2647-1, ¶ 1.

---

[1]  In filing this objection, DW Management reserves all its jurisdictional defenses.  DW Management joins in this objection to object to further litigation in a forum lacking jurisdiction.

[2] Defendants Koninklijke Philips N.V., Philips North America LLC, and Philips RS North America LLC are referred to collectively herein as "Philips."

[3] Philips' counsel sent SoClean a report showing that ██ individuals have indicated some use of a SoClean device, including one individual who used SoClean "████████" and another who used SoClean "██████."  Most other plaintiffs who say they used a SoClean device do not provide any information about the frequency or duration of use.

The procedures set forth in the proposed order show a casual disregard of meaningful differences in state laws relating to contribution.  A significant number of plaintiffs who self-identified as SoClean users reside in states that either do not allow any contribution claims, or only allow a claim of contribution after a settlement or judgment.  Yet, the proposed order defers the choice of law analysis in each individual case to a "later date," as part of "dispositive motions and/or specific answers to individual pleadings in those cases."  ECF No. 2647-1, ¶ 4.  Philips has it backwards.  Rather than identify which of the individual personal injury cases might support a legally recognized contribution claim, Philips instead asks the Court for permission to file a sort of placeholder lawsuit, with the blanks to be filled in later—after Philips assesses the factual and legal bases for its claims.  In other words, Philips seeks permission to sue first and investigate later, with the benefit of discovery.  This is flatly inconsistent with Rule 11.

The sudden urgency to seek relief in contribution is the latest in a series of litigation tactics designed to obtain leverage against SoClean.  It is pure gamesmanship.  In private, Philips acknowledged that its sound abatement foam broke down in hot, humid conditions—a fact that Philips kept secret for years because its flagship DreamStation product did not have FDA approval.  Changing the foam would put the entire enterprise at risk.  So Philips needed a "scapegoat."  Philips' public disparagement of ozone cleaners was not based on actual testing, but rather a "purely heuristic" mathematical model commissioned by Morgan Lewis—a model that was "not based on any theory" and later debunked by rigorous experiments conducted by an outside laboratory.  Under intense scrutiny from the FDA, Philips had no choice but to admit publicly that ozone cleaning is "unlikely to result in appreciable harm to health in patients."  In short, Philips used an industrial-grade foam known to degrade under hot, humid conditions in a medical-grade device fitted with a heated humidifier.  A reckoning was inevitable.

Philips cannot credibly argue that SoClean contributed to the alleged harm experienced by the personal injury plaintiffs.  But if Philips persists and tries to bring SoClean and/or DW Management into the Philips MDL as third-party defendants, it should wait until (i) the pleadings are settled, (ii) a choice-of-law analysis has been done in each case, and (iii) Philips completes adequate pre-suit investigations.  SoClean and DW Management respectfully request that the Court deny Philips' motion and reject the proposed Pretrial Order #31.

## ARGUMENT

**I.    The Proposed Order Is Designed to Allow Philips to Avoid its Rule 11 Obligations.**

### A.    *Philips and its Counsel Must Assess Each Third-Party Claim Asserted.*

If Philips wishes to bring third-party claims seeking contribution for state-law causes of action, it must comply with Rule 11.  The requirements of the Federal Rules are not diminished simply because hundreds of end-users have sued Philips over its defective machines (a small subset of whom also claim to have used a SoClean device).  A recent Report and Recommendation out of the Eastern District of Pennsylvania confronted a similar issue—where 52 product liability claims were filed without a sufficient investigation—and clarified the burden of a plaintiff (or here, third-party plaintiff) in a mass tort case:

> Lawyers who file pleadings and papers with a Pennsylvania court, federal or state, cannot just make things up.  When filing a complaint, the responsible attorneys promise the court that their factual contentions have evidentiary support or, if specifically so identified, will likely have evidentiary support after a reasonable opportunity for further investigation or discovery.  **We trial lawyers have a duty to investigate before pulling the lawsuit trigger**, and we must not misstate the facts we learn from our clients in our eagerness to craft a complaint that 'gets to the jury.'  As a precondition to each and every one of these 52 separate cases, the law demanded an inquiry reasonable under the circumstances.

> **One of the cardinal principles of Rule 11 practice is that a party must reasonably determine the bona fides of his or her position before asserting it.**  Neither a claim nor an affirmative defense nor any other position may be presented in the mere hope that subsequent discovery or later legal research will sustain it.

3

*Johnson v. SmithKline Beecham Corp.*, 2023 WL 8367748, at *7–8 (E.D. Pa. Oct. 12, 2023) (cleaned up) (emphasis added) (adoption pending).  Lawyers are ethically obligated to investigate and "do their homework" before they bring even "one lawsuit, much less 52 lawsuits"—or the 94 contribution claims Philips says it would plead collectively in the proposed Master Third-Party Complaint.  *Id.* at *9 (describing the failure to confirm the viability of claims before bringing them as "lick-and-a-promise lawyering").

Philips' counsel freely admits that their goal in filing a Master Third-Party Complaint before the pleadings are settled is to entrench SoClean and DW Management in discovery:  "I would like to get at least some complaints on file to make them a party . . . so that they'll participate in discovery as a party."  Mar. 14, 2024 Hrg. Tr. at 12:19–23.  But a desire for discovery does not relieve Philips or its counsel of their obligations to assess the *bona fides* of each claim asserted and to adequately plead the factual and legal bases for those claims.  The Federal Rules of Civil Procedure "do[] not unlock the doors of discovery for a plaintiff armed with nothing more than conclusions."  *Ashcroft v. Iqbal*, 556 U.S. 662, 678–79 (2009).

### B.  *The Proposed Order Purports to Relieve Philips of its Obligation to Investigate the Factual Bases of its Claims.*

Philips appears to recognize that it can only pursue contribution claims where a personal injury plaintiff has acknowledged "in his or her Plaintiff Fact Sheet the use of SoClean ozone-cleaning with his or her Philips Respironics device."  ECF No. 2647-1, ¶ 1.  But instead of identifying the causes of action that supposedly give rise to a contribution claim, Philips asks the Court to "deem" a Master Third-Party Complaint to be filed as to every self-identified SoClean user, with the details to be sorted out later.  *Id.*  "To file cases by the thousands [or hundreds] and expect the Court to sort out the actionable claims is improper and a waste of the Court's time."  *In re U.S. Lines, Inc.*, 262 B.R. 223, 243 (S.D.N.Y. 2001), *aff'd*, 318 F.3d 432 (2d Cir. 2003).

Philips must conduct a factual investigation in each individual personal injury case before asserting a contribution claim; it cannot simply point to plaintiffs who say they used a SoClean device at some point in time.  Indeed, Philips must individually assess whether that device plausibly contributed to each plaintiff's alleged injury.  *See Adams v. BRG Sports, Inc.*, 2018 WL 4853130, at *3 (N.D. Ill. Oct. 5, 2018) (under Rule 11, counsel must "have already considered . . . the critical issue of causation" before filing claims alleging personal injury).

In the summary of plaintiff fact sheets that Philips provided to SoClean, one individual disclosed that he used multiple Philips machines ████████████████████████████████ ████████████.  That plaintiff only "████████████████████████████████ ████████████."  Another plaintiff reported, "████████████████████████."  Yet another plaintiff claims to have "████████████████████████████."  Before Philips can bring a contribution claim alleging that a SoClean device contributed to the injuries of these plaintiffs—or any of the other █ plaintiffs—it must assess whether each plaintiff's use of a SoClean device could plausibly have been a specific cause of his or her injuries.[4]

A factual investigation and causal assessment must be made for every personal injury cause of action for which Philips wishes to premise a claim for contribution.  It remains to be seen whether Philips can make such allegations in good faith in light of test results showing ozone had no impact on patient safety and the company's public admission that foam exposed to ozone is unlikely to result in an appreciable harm to patient health.  But that is precisely the sort of analysis Rule 11 requires counsel to undertake in good faith—before a complaint is filed, not after.

---

[4] As to DW Management, Philips must also determine *when* the personal injury plaintiff used a SoClean device and whether it was before DW Management had any involvement with SoClean.

**C.**      ***The Proposed Order Purports to Relieve Philips of its Obligation to Investigate the Legal Bases of Its Claims.***

Philips also seeks to avoid its obligation to analyze which of the underlying personal injury claims legally give rise to a contribution claim.  "Impleader under Fed. R. Civ. P. 14(a) is procedural in nature and does not in itself create a right to indemnity or contribution.  Therefore, a third-party action is proper only when a right to relief exists under the applicable substantive law."  *Foulke v. Dugan*, 212 F.R.D. 265, 269–70 (E.D. Pa. 2002).  Before Philips can assert a contribution claim in good faith, it must first assess whether a right to contribution exists under state law for each specific personal injury cause of action.

Not all states permit an alleged tortfeasor to bring a contribution claim against another.  For example, the same individual plaintiff who claims to have used a SoClean device ███████ ████████████████████████████████████████████████ in Indiana, a state that does not allow contribution claims between alleged joint tortfeasors.  *See Roth v. Greyhound Corp.*, 149 F. Supp. 454, 455 (E.D. Pa. 1957) ("Under Indiana law, one of two joint tortfeasors is not entitled to contribution from the other."); *see also* Ind. Code § 34-51-2-12 (in personal injury actions, "there is no right of contribution among tortfeasors.").

Other states permit contribution claims, but only for some underlying causes of action and not for others.  Some states prohibit contribution for intentional torts, including fraud.  *See, e.g.*, *BCBSM, Inc. v. Walgreen Co.*, 2022 WL 20440183, at *3 (N.D. Ill. Apr. 13, 2022) (denying leave to file third-party claims premised on fraud because the laws of Illinois, North Carolina, North Dakota, Florida, Washington, Nebraska, and Minnesota bar contribution claims for intentional torts).  Still other states allow contribution claims, but only after a judgment or settlement.  *See, e.g.*, *Wingrove v. Wy. Casing Serv., Inc.*, 2020 WL 6064111, at *3–4 (N.D. Ohio Oct. 14, 2020) (dismissing third-party contribution claim prior to judgment or settlement).

The Court has already admonished Philips that "the third-party complaint should not be filed in any individual case where a state does not permit contribution."  Mar. 14, 2024 Hrg. Tr. at 10:25-11:2; *see also In re Zantac (Ranitidine) Prod. Liab. Litig.*, 2020 WL 7866674, at \*25 (S.D. Fla. Dec. 31, 2020), *aff'd in part, rev'd in part on other grounds*, 2022 WL 16729170 (11th Cir. Nov. 7, 2022) (consolidated complaint could only assert claims "for the jurisdictions that permit the claims," as "Rule 11(b)(2) requires them to bring claims that are warranted by existing law") (cleaned up).  But the proposed order would allow Philips to do just that—file a single Master Third-Party Complaint without assessing the viability of its claims under the applicable state law.

**D.    *A "Master Complaint" Does Not Eliminate the Need to Plead Individual Claims.***

Philips' description of its anticipated master complaint in the proposed order also demonstrates a fundamental misunderstanding of the nature of such pleadings in multi-district litigation.  As the Supreme Court has recognized, there are two types of "master complaints" that may be filed in MDL proceedings.  Some master complaints "supersede prior individual pleadings," in which case "the transferee court may treat the master pleadings as merging the discrete actions for the duration of the MDL pretrial proceedings."  *Gelboim v. Bank of Am. Corp.*, 574 U.S. 405, 413 n.3 (2015).  In other cases, "the master complaint is not meant to be a pleading with legal effect but only an administrative summary of the claims brought by all the plaintiffs."  *Id.* (quoting *In re Refrigerant Compressors Antitrust Litig.*, 731 F.3d 586, 590–92 (6th Cir. 2013)).  In either case, the master complaint follows individualized complaints with individualized allegations, either subsuming those complaints or summarizing them.  A "master complaint" is not used to assert claims for the first time, untethered to pre-existing individual pleadings.

Philips attempts to justify its procedural gaffe by pointing to Pretrial Order #28(b).  But Philips ignores a critical difference between that order and the one it proposes here.  Pretrial Order #28(b) permitted the filing of a Master Personal Injury Complaint of the first type described by the

Supreme Court in *Gelboim*—that is, a master complaint to "supersede and replace all claims for personal injury in any action pending in this MDL."  *See* PTO #28(b) (ECF No. 2532) at §  II.A.2. In other words, there were already "action[s] pending," which the master complaint replaced.[5]

Additionally, the Master Personal Injury Complaint permitted by Pretrial Order #28(b) was paired with a requirement for individualized "short form complaints" to be filed by every personal injury plaintiff.  *Id.* § 2.B. The short-form complaints must also include thirteen enumerated components.  *Id.*  Thus, the factual and legal bases for each individual personal injury claim must be pled, through a combination of the master and short-form complaints.  Short-form complaints, like all pleadings, are subject to the duties imposed by Rule 11.  *Heinrich v. Ethicon, Inc.*, 2021 WL 5056263, at *2 (D. Nev. Nov. 1, 2021) ("[S]hort form complaints must be prepared under Rule 11").  Here, Philips seeks to avoid any individualized pleadings.

Personal injury causation, in particular, must be pled on a person-by-person basis. "General causation"—*i.e.*, "whether the product . . . has the capacity to cause the injury"—"can appropriately be included in the master complaint."  *Adams*, 2018 WL 4853130, at *3.  "Specific causation"—*i.e.*, whether the product actually was the cause of an individual's injury—"is a different matter."  *Id.*  Specific causation must be determined and "alleged on a plaintiff-by-plaintiff basis."  *Id.*  By eliminating all individualized allegations, Philips' proposed Master Third-Party Complaint is designed "to bury individual causation problems by taking a 'safety in numbers' approach."  *Id.*  That is not appropriate.

---

[5] PTO #28 was also entered by stipulation and was not forced upon a non-party over objection.

## II.     Any Third-Party Complaints—"Master" or Individualized—Would Be Premature Until Philips Answers the Personal Injury Complaints.

In determining whether impleader is proper under Rule 14, "the court must first find that there exists some substantive basis in the law for the third-party plaintiff to hold the proposed third-party defendant liable. . . . To determine if a defendant in a diversity case has a substantive right sufficient to implead a third-party, the court must look to state law." *Naramanian v. Greyhound Lines, Inc.*, 2010 WL 4628096, at *3 (E.D. Pa. Nov. 15, 2010) (cleaned up).  Here, Philips proposes that it need not identify the relevant state law of contribution until after motions to dismiss are resolved and it files specific answers in each case:

> [T]he specific choice of law applicable to the claims of each Personal Injury Plaintiff—and, correspondingly, the choice of law applicable to the contribution claims of the Philips Defendants against the Third-Party Defendants with respect to each Personal Injury Plaintiff's claims—will be **determined at a later date**, as part of **dispositive motions and/or specific answers** to individual pleadings in those cases.

ECF No. 2647-1, ¶ 4 (emphases added).  Accordingly, any third-party impleader practice at this point is premature.  The Court cannot assess whether Philips "has a substantive right sufficient to implead a third-party," *Naramanian*, 2010 WL 4628096 at *3, until Philips identifies the applicable state law under which it intends to sue.

Courts do not routinely permit third-party complaints to be filed before the underlying pleadings have settled.  In this District, for example, a motion for leave to file a third-party complaint was "denied as premature" because the defendant had "not yet served its original answer to Plaintiffs' Complaint" and there remained outstanding a motion to dismiss that could narrow the potential claims giving rise to contribution.  *Cohen v. Ohio Cas. Grp.*, 2009 WL 10728666, at *1 (W.D. Pa. Jan. 6, 2009).

### III.    The Proposed Order Would Improperly Entangle Third-Party Defendants in the Personal Injury Cases Indefinitely.

Philips' request is also crafted to prevent SoClean and DW Management from obtaining an early resolution of the claims against them.  The proposed order states that all "Third-Party Defendants' motions to dismiss, answers or other responsive pleadings to the Master Third-Party Complaint shall be stayed until further order of the Court."  ECF No. 2647-1 ¶ 2.  This is an improper attempt to deny SoClean and DW Management the procedural safeguards available to third-party defendants under Rules 12(b) and 14(a)(4).

#### A.    *Any Third-Party Complaint Against DW Management Would Be Subject to Dismissal Under Rule 12(b)(2).*

As detailed in DW Management's briefing in support of its motion to dismiss in the B2B litigation, Philips cannot make even a *prima facie* showing of personal jurisdiction over DW Management.  In the event Philips attempts to file another lawsuit against DW Management in Pennsylvania, it would be unduly prejudicial and contrary to the efficiency goals of Rule 14 to prevent DW Management from immediately asserting a jurisdictional defense.

#### B.    *Any Master Third-Party Complaint Without Allegations Tethered to Individual Personal Injury Causes of Action or Specific State Laws Would Be Subject to Dismissal Under Rule 12(b)(6).*

The Master Third-Party Complaint would be subject to dismissal for failure to state a claim. Under Rule 12(b)(6), "[d]ismissal can be based on the lack of a cognizable legal theory or the absence of sufficient facts alleged under a cognizable legal theory." *McCurdy v. Wedgewood Cap. Mgmt. Co.*, 1999 WL 391494, at *3 n.6 (E.D. Pa. May 28, 1999).  As proposed by Philips, the Master Third-Party Complaint would not identify the state contribution laws being asserted.  Nor would it need to plead facts tethering SoClean's conduct to any individual's injury.  *Cf. Dixon v. Caesars Entertainment Corp.*, 2022 WL 3445764, at *4 (N.D. Ill. Aug. 17, 2022) (dismissing third-party contribution claim because "the complaint doesn't show that the [injury] wouldn't have

10

occurred absent [third-party defendant's] alleged negligence").  Because the Master Third-Party Complaint could not withstand a motion to dismiss, Philips asks the Court to prohibit such a motion indefinitely.  That request should be denied.

### C. *A Third-Party Complaint for Contribution Would Be Subject to a Motion to Strike Under Rule 14, as It Would Be Obviously Unmeritorious.*

Unlike most complaints, third-party complaints filed under Rule 14 are subject to an early merits determination by the Court.  "[T]he Advisory Committee Notes [to Rule 14] make clear that, on a motion to strike, courts must conduct a preliminary screening and can dispose of obviously unmeritorious claims."  *Millers Cap. Ins., Co. v. Hydrofarm, Inc.*, 340 F.R.D. 198, 223 (D.D.C. 2022) (cleaned up); *see also Bakali v. Jones*, 2018 WL 3054748, at *3 (W.D. Pa. June 20, 2018) (denying motion for leave to file third-party complaint because "the proposed Third Party Complaint state[s] claims that are 'obviously unmeritorious'").  For each contribution claim, the Court must determine whether "there is sufficient factual support for [the] allegation," as well as whether "a right of contribution exists" under the relevant state's law.  *Millers*, 340 F.R.D. at 224; *see also Too, Inc. v. Kohl's Dep't Stores, Inc.*, 213 F.R.D. 138, 142 (S.D.N.Y. 2003) (analyzing deposition and other "evidence in the record" to determine whether claim for contribution was unmeritorious).

Any claim by Philips that SoClean is a joint tortfeasor would be unmeritorious.  Philips received reports about the breakdown of its sound abatement foam into black particles long before SoClean even existed.  In 2015 and 2018, Philips received complaints about foam particles in ventilator devices located in Asia and Australia, none of which had anything to do with SoClean. In fact, these complaints involved Trilogy ventilators that cannot be used with SoClean and geographies in which SoClean did not sell or distribute products.  As early as August 2016, Philips conducted internal testing of the degraded foam at a facility in the Netherlands and concluded:

████████████████████████████████████████████████████████

████████████████████████████████ Ex. A at 2.  Additional testing performed by an

outside laboratory in 2018 confirmed that the sound abatement foam used by Philips in both

ventilator and CPAP devices broke down due to hydrolysis—*i.e.*, water-induced degradation.  Ex.

B at 2 ████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████  Fast forward to November 2020, when the Products Materials Group described the

"failure mechanism" of the sound abatement foam as ████████████████████████████

and circulated photos of foam exposed to ██████████████████████████████ Ex. C at

Slides 7, 15.

████████████████████████████████████████████████████████

Everything changed on December 21, 2020.  During a morning meeting about foam

complaints, the highest levels of management at Philips RS decided to blame SoClean for

DreamStation failures in the United States.  Philips employees in the biocompatibility group

immediately began texting their colleagues:

████████████████████████████████████████████████████████



Ex. D at 1; Ex. E.  This was the beginning of a deliberate smear campaign against SoClean that continues to this day.  Philips' flagship DreamStation product did not have FDA approval, an embarrassing fact that the former CEO found "astonishing" because "medical regulations say that you need to apply for a 510(k) when you introduce a new product."  *See* Ex. F at 48:15–24.  And the deleterious effect of the heated humidifier was undeniable—it was associated with ▮% of DreamStation failures in the United States.  *See* Ex. G at Slides 2–3.  Philips needed a "scapegoat."

Ex. H.

The FDA concluded that "the unreasonable risk associated with [Philips'] products was not caused by the use of ozone cleaning agents[.]"[6]  By May 2023, Philips had no choice but to admit publicly that "ozone-induced degradation is unlikely to result in an appreciable harm to health in patients."[7]  A mountain of damning evidence presents an existential obstacle to any third-party complaint, and the proposed order would improperly shield the complaint from such scrutiny.

---

[6] *See* FDA, *Proposal for FDA to Issue an Order for Device Repair, Replacement, and/or Refund – Notice of Opportunity for a Hearing* (May 2, 2022), at 2, *available at* https://www.fda.gov/media/158129/download.

[7] *See* Philips, *Philips provides updated on completed set of test results for CPAP/BiPAP sleep therapy devices* (May 16, 2023), *available at* https://www.usa.philips.com/a-

**D.**   *A Third-Party Complaint Would Be Subject to a Motion to Strike Under Rule 14, as It Would Unduly Complicate the Personal Injury Litigation.*

"When considering whether to allow or to strike a third-party complaint, courts consider whether the third-party complaint would introduce an unrelated controversy or unduly complicate the case at trial." *Berryman v. Newalta Env't Servs., Inc.*, 2018 WL 5631169, at *1 (W.D. Pa. Oct. 31, 2018) (cleaned up).  The proposed Master Third-Party Complaint would do exactly that.

The introduction of an entirely new line of products into these cases, made by an entirely different company, would be subject to the Court's review under Rule 14.  Philips has been sued by approximately 800 personal injury plaintiffs.  Mar. 14, 2024 Hrg. Tr. at 3:12–13 ("[S]o we have about 800 individual plaintiffs suing us for personal injury.").  Of those, Philips has identified only ██ plaintiffs—██%—who claim to have used a SoClean device to clean their Philips machines.[8]

Courts routinely exercise their discretion to reject third-party complaints that "would involve different evidence, witnesses, and legal issues" than the lawsuit brought by plaintiffs. *Scobie v. Waco Equip. Co.*, 2008 WL 1943551, at *2 (W.D. Pa. May 1, 2008).  Those inefficiencies are even more pronounced here, where SoClean has no connection to the vast majority (at least ██%) of personal injury plaintiffs.  Including DW Management as a third-party defendant would only complicate matters further.  In addition to mini trials about the root cause of foam degradation, the introduction of factual disputes about alter ego would swamp these proceedings (and the jury) with evidence of corporate governance and the structure and function of private investment funds. These are unnecessary complications that can be easily avoided.

---

w/about/news/archive/standard/news/press/2023/20230516-philips-provides-update-on-completed-set-of-test-results-for-cpap-bipap-sleep-therapy-devices.html.

[8] Philips counsel has represented that approximately ██ plaintiffs have completed fact sheets. Even using that as the denominator, only about ██████████████ have self-identified as a SoClean user.

## IV.   The Proposed Order Would Improperly Toll the Statute of Limitations.

The proposed order also includes improper procedures that toll all statute of limitations applicable to any potential claims brought by the plaintiffs against the third-party defendants: "[A]ll time limitations with respect to any claims held by any Personal Injury Plaintiff against the Third-Party Defendants shall be suspended and tolled."  ECF No. 2647-1, ¶ 7.

Philips is wrong to suggest that its decision to pursue a third-party complaint somehow tolls the statutes of limitations.  "The filing of a third-party complaint by the original Defendant does not toll the running of the statute on a cause of action between the Plaintiff and a third-party Defendant."  *Straub v. Desa Indus., Inc.*, 88 F.R.D. 6, 9 (M.D. Pa. 1980).

To the extent Philips and the Personal Injury Plaintiffs intended to invoke some form of equitable tolling, they have failed to present any basis for such a drastic remedy.  "Equitable tolling is an extreme remedy that is extended only sparingly."  *Stroman v. United States*, 2023 WL 6172885, at *2 (3d Cir. Sept. 22, 2023) (cleaned up).  "To receive the benefit of equitable tolling, the claimant must show that extraordinary circumstances prevented him from taking timely action. This requirement is satisfied by demonstrating that (1) the defendant has actively misled him respecting his cause of action; (2) he, in some extraordinary way, has been prevented from asserting his rights; or (3) he has timely asserted his rights mistakenly in the wrong forum."  *Id.* Neither Philips, nor the personal injury plaintiffs have provided any basis supporting equitable tolling here, other than their stipulated say so.  The rights of non-parties to this action cannot be eliminated in such a fashion or without cause.

## CONCLUSION

For the foregoing reasons, SoClean and DW Management respectfully request that the Court reject the proposed Pretrial Order #31.

15

Dated: March 29, 2024                    Respectfully submitted,

                                         */s/ Colin Cabral*
                                         _____

                                         Colin G. Cabral
                                         Michael R. Hackett
                                         James R. Anderson
                                         Adam L. Deming
                                         Genesis G. Sanchez Tavarez
                                         PROSKAUER ROSE LLP
                                         One International Place
                                         Boston, MA 02110
                                         p: 617-526-9600
                                         f: 617-526-9899
                                         ccabral@proskauer.com
                                         mhackett@proskauer.com
                                         jaanderson@proskauer.com
                                         ademing@proskauer.com
                                         gsancheztavarez@proskauer.com

                                         Jeff H. Warshafsky
                                         Nicole Swanson
                                         PROSKAUER ROSE LLP
                                         Eleven Times Square
                                         New York, NY 10036
                                         p: 212-969-3000
                                         f: 212-969-2900
                                         jwarshafsky@proskauer.com
                                         nswanson@proskauer.com

                                         *Attorneys for SoClean, Inc. and DW
                                         Management Services, LLC*

16

<u>**CERTIFICATE OF SERVICE**</u>

This is to certify that on the 29th day of March, 2024, the foregoing document was electronically filed with the Clerk of the United States District Court for the Western District of Pennsylvania, using the CM/ECF system, which will send notification of such filing to all counsel of record.  This document was filed electronically and is available for viewing and downloading from the ECF system.

*/s/ Colin Cabral*_____

17