**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| IN RE: PHILIPS RECALLED CPAP, BI-LEVEL PAP, AND MECHANICAL VENTILATOR PRODUCTS LIABILITY LITIGATION | ) ) ) ) ) | Master Docket: No. 21-MC-001230-JFC MDL No. 3014 |
| This Document Relates to: | ) ) | |
| *All Personal Injury Cases* | ) ) | |

**THE PHILIPS DEFENDANTS' RESPONSE TO
<u>SOCLEAN AND DWHP'S OBJECTIONS TO ENTER PTO #31</u>**

# TABLE OF CONTENTS

*Page*

**PRELIMINARY STATEMENT** ................................................................................................1

**ARGUMENT** ..........................................................................................................................6

I.      MASTER THIRD-PARTY COMPLAINTS ARE A COMMON TOOL TO STREAMLINE PROCEEDINGS IN COMPLEX CASES LIKE THIS ONE...................6

II.     RULE 14(A) DOES NOT REQUIRE THE COURT TO WAIT UNTIL IT DECIDES PENDING MOTIONS TO DISMISS.................................................................................9

III.    PTO #31 ADDRESSES SOCLEAN AND DWHP'S ASSERTED CONCERNS. ...........11

**CONCLUSION** ......................................................................................................................13

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

### Cases

*In re Asbestos Prods. Liab. Litig. (No. VI)*,
   718 F.3d 236 (3d Cir. 2013)........................................................................6, 8

*Cohen* v. *Ohio Cas. Grp.*,
   2009 WL 10728666 (W.D. Pa. Jan. 6, 2009).....................................................9, 10

*In re East Palestine Train Derailment*,
   No. 23-cv-242, ECF No. 119 (N.D. Ohio July 25, 2023).............................6, 7, 8, 11

*Graham* v. *A.T.S. Specialized*,
   2007 WL 1302544 (S.D.W. Va. May 2, 2007)......................................................11

*In re Grain Land Coop.*,
   978 F. Supp. 1267 (D. Minn. 1997), *aff'd sub nom. Grain Land Coop* v. *Kar
   Kim Farms*, 199 F.3d 983 (8th Cir. 1999) ..........................................................7

*In re Methyl Tertiary Butyl Ether ("MTBE") Prods. Liab. Litig.*,
   No. 00-cv-1898 (S.D.N.Y. 2001).........................................................................7, 11

*Monarch Life Ins. Co.* v. *Donahue*,
   702 F. Supp. 1195 (E.D. Pa. 1989) .....................................................................3

*In re Phenylpropanolamine (PPA) Prods. Liab. Litig.*,
   460 F.3d 1217 (9th Cir. 2006) .............................................................................6, 8

*Ristenbatt* v. *Western Glass Supply*,
   2021 WL 5867434 (M.D. Pa. July 19, 2021)......................................................10

*Rodin Props.-Shore Mall* v. *Cushman & Wakefield of Pa.*,
   49 F. Supp. 2d 728 (D.N.J. 1999) ........................................................................4, 12

*San Gabriel Basin Water Quality Auth.* v. *Aerojet-Gen.*,
   No. 02-cv-4565, ECF No. 383 (C.D. Cal. July 6, 2004).........................................6

*Shields* v. *Consolidated Rail*,
   810 F.2d 397 (3d Cir. 1987)..................................................................................12

*In re Taxable Mun. Bond Sec. Litig.*,
   1993 WL 591418 (E.D. La. Dec. 29, 1993)........................................................7

*Werner Enters.* v. *Trs. of Univ. of Pittsburgh*,
   2006 WL 2583458 (W.D. Pa. Sept. 6, 2006) (Conti, J.)......................................4, 12

*In re World Trade Center Disaster Site Litig.*,
No. 21-mc-100, ECF No. 82 (S.D.N.Y. Feb. 7, 2005) ...........................................................6

## Other Authorities

6 Charles Alan Wright & Arthur R. Miller, Fed. Prac. & Proc. Civ. § 1443 (3d ed.
2023) ...............................................................................................................................1, 11

EPA, *Ozone Generators that are Sold as Air Cleaners*,
https://www.epa.gov/indoor-air-quality-iaq/ozone-generators-are-sold-air-
cleaners#:~:text=of%20manufacturers%27%20claims.,How%20is%20Ozone
%20Harmful%3F (last visited Jan. 1, 2024) .............................................................................1

FDA, *FDA Reminds Patients that Devices Claiming to Clean, Disinfect or
Sanitize CPAP Machines Using Ozone Gas or UV Light Have Not Been FDA
Authorized* (Feb. 27, 2020), https://www.fda.gov/news-events/press-
announcements/fda-reminds-patients-devices-claiming-clean-disinfect-or-
sanitize-cpap-machines-using-ozone-gas-or; ...........................................................................1

Fed. R. Civ. P. 13(a)(1) ..............................................................................................................9

Fed. R. Civ. P. 14(a)(1) ..........................................................................................................3, 9

Fed. R. Civ. P. 1 .........................................................................................................................8

## PRELIMINARY STATEMENT

The Advisory Committee Note to Rule 14 makes clear that third parties should be brought into litigation "as soon as possible."  6 Charles Alan Wright & Arthur R. Miller, Fed. Prac. & Proc. Civ. § 1443 (3d ed. 2023); *see also* Fed. R. Civ. P. 14, Advisory Committee's Note to 1963 Amendment ("[W]hen the impleader comes so early in [a] case, there is little value in requiring a preliminary ruling by the court on the propriety of the impleader.").  In these personal injury actions, SoClean, Inc.'s ("SoClean") illegally marketed ozone cleaning devices play a considerable role, particularly where Philips Respironics users used supposedly "compatible" SoClean devices.  Ozone's toxicity is a well-known scientific fact and the subject of FDA and EPA warnings.[1]  And substantial evidence—which has been provided to SoClean, and which neither SoClean nor its alter ego, DW Management Services, LLC ("DWHP"), have attempted to contradict—demonstrates that SoClean's ozone-based CPAP cleaners were a significant cause of the CPAP foam degradation and the emission of volatile organic compounds associated with degradation that gave rise to this litigation.

As of January 2024, visual inspections of returned Respironics field devices establish that 8.9 percent of reported users of ozone cleaners saw significant foam degradation, compared to only *0.5* percent for non-ozone users.  Controlled laboratory testing for the emission of volatile organic compounds found that, after 1,300 cycles of CPAP use, machines cleaned with

---

[1]  *See* FDA, *FDA Reminds Patients that Devices Claiming to Clean, Disinfect or Sanitize CPAP Machines Using Ozone Gas or UV Light Have Not Been FDA Authorized* (Feb. 27, 2020), https://www.fda.gov/news-events/press-announcements/fda-reminds-patients-devices-claiming-clean-disinfect-or-sanitize-cpap-machines-using-ozone-gas-or; EPA, *Ozone Generators that are Sold as Air Cleaners* (last updated June 27, 2024), https://www.epa.gov/indoor-air-quality-iaq/ozone-generators-are-sold-air-cleaners#:~:text=of%20manufacturers%27%20claims.,How%20is%20Ozone%20Harmful%3F,ozone%20can%20damage%20the%20lungs.

ozone emitted 250 micrograms of diethylene glycol (a known byproduct of foam degradation) per cubic meter, whereas emissions for other machines (with or without the use of a built-in humidifier) were too low to quantify.[2]  Consistent with those findings, at no point in the SoClean MDL has SoClean taken the position that its product did not cause foam to degrade or cause the emission of volatile organic compounds associated with degradation.

To be sure, although the Philips Defendants maintain that this degradation injured no one, to whatever extent any of the Philips Defendants are held liable for injuries in connection with this degradation, SoClean (and DWHP, the private equity company controlling SoClean) must contribute proportionately to their role.  This is properly accomplished through a master third-party complaint, and it is properly done now, before the end of discovery.  Proposed Pretrial Order ("PTO") #31 (ECF No. 2647-1) is intended to bring about SoClean and DWHP's long-overdue participation in this case with minimal disruption to the Court's discovery process.

SoClean and DWHP's objections to this simple, efficient procedural tool seek to turn that well-ordered process into a morass of satellite litigation that benefits only them.  Those objections are meritless.  SoClean concedes that the Philips Defendants could file individual third-party complaints for contribution today but maintains that this Court is somehow powerless to streamline those complaints through a master pleading.  SoClean and DWHP's preferred approach would needlessly complicate and delay this case, and there is no legal support for it.

Efficiency has a value in this litigation and, to that end, "master" third-party complaints are often used in complex multidistrict litigation ("MDLs"), such as this case.  *See infra* section I.  And Federal Rule of Civil Procedure 14, governing third-party practice, does not

---

[2]     In addition, visual observations provided that *50 percent* of devices in Europe that demonstrated foam degradation were tied to a DME that also provided SoClean devices.

include *any* language requiring a defendant to wait patiently to file a third-party complaint until it has answered. Fed. R. Civ. P. 14(a)(1). In fact, Rule 14 is "liberally construed to accomplish its intended aim of accomplishing in one proceeding the adjudication of the rights of all persons concerned in the controversy and to prevent the necessity of trying several related claims in different lawsuits." *Monarch Life Ins. Co.* v. *Donahue*, 702 F. Supp. 1195, 1197 (E.D. Pa. 1989) (internal citations and quotations omitted). Particularly given the significant factual and legal overlap between the underlying claims and the Philips Defendants' contemplated contribution claims involving SoClean and DWHP, nothing prevents this Court from using its broad authority to streamline this proceeding by entering PTO #31.

   The Court needs no reminder of the significant complexities of these personal injury cases, involving two colliding but separate MDLs, regarding a medical device recall to which SoClean's products directly contributed. To efficiently address the issues, this Court previously entered PTO #28(b). (ECF No. 2532.) Specifically, PTO #28(b) provided that "[a]ll claims pleaded in the Second Amended Complaint will supersede and replace all claims for personal injury in any action pending in this MDL" and required, to supplement the Master Personal Injury Complaint, the Personal Injury Plaintiffs to file short form complaints "indicating their individual claims, and adopting all of the factual allegations set forth in the Second Amended Complaint as the basis for those individual claims." (PTO #28(b) at 1-2.) Now, with the full support of Plaintiffs' leadership, PTO #31 seeks to mirror PTO #28(b) by establishing a master pleading and briefing process for the sake of efficiency.

   SoClean and DWHP have no right, under the Federal Rules or elsewhere, to bar the filing of these contribution claims by the Philips Defendants. Instead, SoClean and DWHP devote many pages to the *merits* of the proposed third-party complaint, but those objections are premature,

incorrect, and miss the point.  (*See* ECF No. 2675 ("Opp.") at 3-6 (arguing that the Philips Defendants' third-party complaint does not "adequately plead the factual and legal bases for those claims").)  Similarly, SoClean and DWHP's argument on choice of law issues is without merit, and a red herring.  Contribution claims are governed by "the law of the jurisdiction which governs the underlying claim."  *Rodin Props.-Shore Mall* v. *Cushman & Wakefield of Pa.*, 49 F. Supp. 2d 728, 739 (D.N.J. 1999) (citing Restatement (Second) of Conflicts of Laws § 173 (Am. L. Inst. 1969)); *Werner Enters.* v. *Trs. of Univ. of Pittsburgh*, 2006 WL 2583458, at *4-5 (W.D. Pa. Sept. 6, 2006) (Conti, J.).  Accordingly, the Philips Defendants' contribution claims are tethered to each particular Personal Injury Plaintiff's claim.  The choice of law determinations for the underlying claims have yet to occur, and disputes regarding the appropriate choice of law will await substantive challenges to each individual personal injury complaint that is selected to be part of the bellwether process.  This Court must therefore first determine which law governs each of those individual personal claims that are selected for the bellwether process.  That is precisely what PTO #31 contemplates.

To be clear, the Philips Defendants only intend to seek contribution where permitted under state law.  Upon the resolution of all disputes bearing on the choice of law determination for a particular bellwether plaintiff's case, the Philips Defendants will voluntarily dismiss their contribution claims in those cases in which the applicable state law does not provide a right of contribution.  At this stage, however, such choice of law issues concerning the underlying personal injury complaint will remain unresolved until bellwethers are selected and developed factually.  Until then, a master third-party complaint obviates the need to delve deeply into premature and hypothetical choice of law issues and instead allows SoClean and DWHP to respond to a single complaint.

Finally, SoClean and DWHP's concerns about a proposed stay of their need to respond to the master complaint under PTO #31 are easily alleviated by eliminating the proposed stay provision, which was included *for their benefit* (because they were unsure whether any underlying personal injury claim would survive the Philips Defendants' motion to dismiss).  They are not a basis to forswear the use of a master third-party complaint.

With the July 30, 2024 close of fact discovery quickly approaching (ECF No. 2653), the Philips Defendants have been working tirelessly to meet that deadline, consistent with the Court's repeated instruction that further delays must be avoided.  (*See, e.g.*, Nov. 9, 2023, CMC Tr., MDL 3014, at 10 (noting that it is in the best interest of all the parties "to keep these cases . . . moving as fast as reasonably possible").  The Philips Defendants recognize the importance of preventing this case from going "into 2025 and beyond."  (*Id.*)  But to comply with that deadline, *all* relevant parties must participate.  Those parties undoubtedly include SoClean and DWHP, who have thus far successfully resisted participation by pretending that their status is merely limited to being "third parties" and, thus, allowing them to refuse to provide discovery.  But SoClean and DWHP can no longer drag their feet and refuse to participate when the Philips Defendants have amassed substantial evidence that ozone contributed to PE-PUR foam degradation.  If SoClean and DWHP were permitted to wait for the Philips Defendants to file answers, as they suggest, the parties would then have to reopen fact discovery, including with respect to causation, to allow for SoClean and DWHP's participation.  Such a delay could even require the reopening of expert discovery.  Not only are such results contrary to this Court's instructions, but no legal authority requires that outcome.  SoClean and DWHP must now participate as parties, and they should do so in a manner that accords with the Court's existing processes.

## ARGUMENT

**I.      Master Third-Party Complaints Are A Common Tool To Streamline Proceedings In Complex Cases Like This One.**

An MDL court has "broad discretion to administer the proceeding as a whole" in order to provide for the efficient handling of legal claims arising among a large number of parties. *See In re Phenylpropanolamine (PPA) Prods. Liab. Litig.*, 460 F.3d 1217, 1232 (9th Cir. 2006); *see also In re Asbestos Prods. Liab. Litig. (No. VI)*, 718 F.3d 236, 243 (3d Cir. 2013) ("[D]istrict judges 'must have authority to manage their dockets, especially during a massive litigation.'") (citing *In re Fannie Mae Secs. Litig.*, 552 F.3d 814, 823 (D.C. Cir. 2009)). In fact, both the Philips and the SoClean MDLs were created to avoid the waste associated with litigating every case individually. Nevertheless, SoClean and DWHP suggest there would be something unusual or inappropriate about the Court using a master complaint process for third-party claims. But master third-party complaints are commonly used and are a near-procedural necessity in complex MDLs such as these.

As just one example, one MDL court, inundated with a "multitude of documents," ordered the defendants to utilize a master third-party complaint "[i]n order to conserve paper, time, and space." *In re World Trade Center Disaster Site Litig.*, No. 21-mc-100, ECF No. 82 (S.D.N.Y. Feb. 7, 2005). Such orders are commonplace, with MDL courts recognizing the utility of master third-party complaints and ordering the parties to use them. *See, e.g.*, Norfolk Southern Railway Co. & Norfolk Southern Corp.'s Third-Party Complaint, *In re East Palestine Train Derailment*, No. 23-cv-242, ECF No. 119 at 38 (N.D. Ohio July 25, 2023) ("third-party complaint" alleging that if the consolidated "Plaintiffs establish that [third-party plaintiff] is responsible for damages, then such damages were contributed by Third-Party Defendant[s]"); *San Gabriel Basin Water Quality Auth.* v. *Aerojet-Gen.*, No. 02-cv-4565, ECF No. 383 at 13-14 (C.D. Cal. July 6, 2004)

-6-

(ordering that parties use master third-party complaints, including third-party complaints for contribution, in order to streamline case management); *In re Grain Land Coop.*, 978 F. Supp. 1267, 1270 (D. Minn. 1997) (ordering the parties to file master pleadings, including a third-party complaint for contribution), *aff'd sub nom. Grain Land Coop* v. *Kar Kim Farms*, 199 F.3d 983 (8th Cir. 1999); *In re Methyl Tertiary Butyl Ether ("MTBE") Prods. Liab. Litig.*, No. 00-cv-1898 (S.D.N.Y. 2001) (numerous defendant groups brought master third-party complaints against "John and Jane Does Nos. 1-500"); *In re Taxable Mun. Bond Sec. Litig.*, 1993 WL 591418, at *1 (E.D. La. Dec. 29, 1993) (pursuant to court order to "assert all third-party claims . . . in connection with the class claims," several defendants filed complaints asserting third-party claims for contribution and indemnity).[3]

Nor are MDL courts required to demand that defendants file third-party complaints in individual suits before those defendants may use master pleadings.  For instance, in *In re East Palestine*, the defendants filed a single third-party complaint seeking contribution from several third parties with respect to an underlying consolidated complaint.  The defendants did not file a complaint against the third parties in each and every individual case that was consolidated before the court.  *See* Norfolk Southern Railway Co. & Norfolk Southern Corp.'s Third-Party Complaint,

---

[3]      The term "master" is not universally used in connection with the filing of master third-party complaints, even when those complaints contemplate that they will be applied to a broad class of underlying actions.  Instead, such complaints are regularly filed in MDLs simply using the nomenclature "third-party complaint," recognizing how a third-party complaint would likely operate in an MDL.  For example, in *In re East Palestine*, an MDL resulting from the 2023 train derailment in Ohio, a pair of defendants filed a "third-party complaint" against several third parties, alleging that each third party was liable under a theory of contribution.  Norfolk Southern Railway Co. & Norfolk Southern Corp.'s Third-Party Complaint, *In re East Palestine*, No. 23-cv-242, ECF No. 119 (N.D. Ohio July 25, 2023).  The third-party complaint asserted that if the consolidated "Plaintiffs establish that [third-party plaintiff] is responsible for damages, then such damages were contributed to by Third-Party Defendant[s]."  *Id.* at 37.

*In re East Palestine*, No. 23-cv-242, ECF No. 119 (N.D. Ohio July 25, 2023).  There is no need to complicate matters here by requiring that the Philips Defendants file a minimum of 94 individual complaints only to then be consolidated, as they could have been from the beginning through a master pleading.[4]

Of course, this Court has wide discretion to streamline these proceedings, as it has done through prior pretrial orders,[5] and as it can now do through PTO #31.  Federal Rule of Civil Procedure 1 plainly states that the rules should be construed "to secure the just, speedy, and inexpensive determination of every action and proceeding."  Fed. R. Civ. P. 1.  MDLs, of course, present unique challenges to those goals.  As one court described it, "[m]ultidistrict litigation is a special breed of complex litigation where the whole is bigger than the sum of its parts."  *In re PPA*, 460 F.3d at 1232.  Given the unique challenges inherent to MDLs, "[t]he district court needs to have broad discretion to administer the proceeding as a whole, which necessarily includes keeping the parts in line," to effectuate the goals of justice and efficiency.  *Id.* at 1232; *see also In re Asbestos*, 718 F.3d at 246 ("[D]istrict judges 'must have authority to manage their dockets, especially during a massive litigation.'") (citing *In re Fannie Mae*, 552 F.3d at 823).  Thus, in

---

[4]     SoClean and DWHP assert that they asked the Philips Defendants "multiple times if [they] w[ere] aware of any case in which a court has granted the relief [they] seek[]" and that the Philips Defendants "acknowledged [they] had nothing."  (Opp. at 1.)  That is incorrect and ignores the record.  At the last case management conference, the Philips Defendants provided one such example.  (*See* March 14, 2024 CMC Tr., MDL 3014 at 4-5.)  SoClean and DWHP failed to respond to that precedent entirely.  Multiple additional examples are provided herein.

[5]     *See, e.g.*, PTO #14 (ECF No. 573) ("setting forth an orderly and efficient process for filing consolidated amended class and master complaints, answers, motions to dismiss, and briefing related thereto"); Amended Stipulated Protective Order (ECF No. 765) (amending the stipulated protective order "to expedite the flow of discovery material, facilitate the prompt resolution of disputes over confidentiality . . . and facilitate coordination between this Action and the SoClean Action" by allowing "counsel for the Parties and counsel representing the parties in the SoClean Action" to discuss "Discovery Material"); PTO #28(b) (ECF No. 2532) (ordering the parties to utilize "Master" complaints and answers "[i]n light of the inefficiencies of drafting unique personal injury complaints and individual answers to those complaints").

-8-

exercising their discretion, "judges are encouraged to be innovative and creative to meet the needs of their cases."  Manual for Complex Litigation (Fourth), Introduction (2004).  In fact, the "effectiveness of [judicial management] depends on the design and implementation of flexible and creative plans that take into account the specific needs of particular litigation."  *Id.* § 12.

## II.    Rule 14(a) Does Not Require The Court To Wait Until It Decides Pending Motions To Dismiss.

SoClean and DWHP ignore the federal rules in their efforts to avoid being brought into these cases.  But their assertions that "any third-party impleader practice at this point is premature" and that "[c]ourts do not routinely permit third-party complaints to be filed before the underlying pleadings have settled," are baseless.  (Opp. at 9.)  Federal Rule of Civil Procedure 14 only provides that "[a] defending party may, as third-party plaintiff, serve a summons and complaint on a nonparty who is or may be liable to it for all or part of the claim against it."  Fed. R. Civ. P. 14(a)(1).  Only if the "third-party plaintiff . . . files the third-party complaint more than 14 days after serving its original answer" must a third-party plaintiff "obtain the court's leave" by motion.  *Id.*  Rule 14 differs from Rule 13, which governs counterclaims, and requires that compulsory counterclaims and "pleadings" be filed contemporaneously.  Fed. R. Civ. P. 13(a)(1). Rule 14 has no such requirement.  It does not bar the Philips Defendants from filing a third-party complaint at this stage of litigation.  In fact, SoClean and DWHP have conceded during meet-and-confers that the Philips Defendants are permitted, now, to file individual third-party complaints for contribution—their objection has been to the use of a *master complaint* to streamline these proceedings.

The single case SoClean and DWHP cite in support of their prematurity argument is neither supportive nor indicative of what is "routine[]."  (Opp. at 9 (citing *Cohen* v. *Ohio Cas. Grp.*, 2009 WL 10728666 (W.D. Pa. Jan. 6, 2009)).)  As a threshold matter, "whether a particular

third-party defendant may be impleaded is a question 'which rests with the sound discretion of the trial court.'" *Ristenbatt* v. *Western Glass Supply*, 2021 WL 5867434, at *2 (M.D. Pa. July 19, 2021) (quoting *State Coll. Area Sch. Dist.* v. *Royal Bank of Can.*, 825 F. Supp.2d 573, 579 (M.D. Pa. 2011)).  The court exercised this discretion under the facts of *Cohen*, which are quite different from those here.  In *Cohen*, the owners of a home damaged in a fire sued their insurance company for faulty repair work, and the insurance company sought to bring in various contractors as third-party defendants.  2009 WL 10728666, at *1.  The court exercised its discretion and denied leave to file a third-party complaint, noting that the proposed impleader appeared to be defective, in that the third-parties' liability would likely be direct to the plaintiff, not to the plaintiff through the defendant.  *Id.*  This, by contrast, is a large, complex MDL, and the Philips Defendants' claim is properly for contribution on claims of injury because SoClean is liable to the MDL Plaintiffs as a result of its products harming the Philips Respironics devices, thus exacerbating any injury allegedly caused by the Philips Defendants.

    Rule 14 permits that claim to be made at this time.  In fact, Rule 14 facilitates filing a third-party complaint as early as possible.  The Advisory Committee Notes provide that "[w]hen the impleader comes so early in [a] case, there is little value in requiring a preliminary ruling by the court on the propriety of the impleader."  Fed. R. Civ. P. 14, Advisory Committee's Note to 1963 Amendment.  As a result, "the rule encourages defendant[s] to implead the third party as soon as possible."  6 Charles Alan Wright & Arthur R. Miller, Fed. Prac. & Proc. Civ. § 1443 (3d ed. 2023).  Whether a third-party complaint is filed before the answer, or within the 14 day window that Rule 14(a) provides, makes no difference.  In fact, at least one court has recognized, "[t]he only effect the filing of an answer has on the third-party complaint is whether or not leave is necessary. . . .  If, due to a pending motion to dismiss and the district court's scheduling order, a

motion  to file a third-party complaint is filed before the answer, then because this is 'not later than [14] days after serving the original answer,' leave of court is not needed, and the district court may order the complaint filed." *Graham* v. *A.T.S. Specialized*, 2007 WL 1302544, at *2 (S.D.W. Va. May 2, 2007).  That court explained that "[t]he rationale of requiring a defendant to implead as soon as possible is not undermined by granting [the defendant's] pre-answer motion to file a third-party complaint." *Id.*

For these reasons, MDL courts are not required to bar a defendant from filing third-party complaints before the defendant has answered or before the court has ruled on any underlying motions to dismiss.  *See, e.g.*, *In re East Palestine*, No. 23-cv-242, ECF No. 119 (N.D. Ohio July 25, 2023) (third-party complaint filed while motions to dismiss pending).  The Philips Defendants have come across no such arbitrary rule.  Nor would such a rule make sense, particularly in the context of an MDL.  MDL dockets are replete with amended complaints, amended counterclaims, amended answers, and "follow-on" complaints filed years after the docket was first opened.  For instance, in *In re Methyl Tertiary Butyl Ether ("MTBE") Products Liability Litigation*, No. 00-cv-1898 (S.D.N.Y.), pleadings were amended and motions to dismiss were briefed for *years* after third-party complaints first began to be filed.  A rule such as the one SoClean and DWHP propose, requiring MDL courts to bar any third-party complaints until the underlying complaints are fully dealt with, would be unworkable in such a case—as it would be in many other MDLs.  Such a rule simply does not make sense.  Nor does it exist.

## III.    PTO #31 Addresses SoClean and DWHP's Asserted Concerns.

SoClean and DWHP briefly pick at certain elements of the procedure proposed by PTO #31 to argue that the entire process is untenable.  In particular, they take issue with (i) deferring the resolution of the choice of law applicable to a given claim, and (ii) staying their

time to respond until the Court has ruled on the currently pending motion to dismiss the Second Amended Master Personal Injury Complaint.  Both of these grievances are meritless.

As to deferring the resolution of the applicable choice of law, that is precisely what this Court determined was appropriate with respect to the underlying master personal injury complaint.  (*See* PTO #28(b) at 11 ("Any choice of law principles *will be determined* based on the choice-of-law rules that would have applied in the federal district court of the Personal Injury Plaintiff's designated venue.") (emphasis added).)   And this is no small task—certainly not as simple as checking whether the law of the state in which a SoClean user resides grants a right to contribution.  (*See* Opp. at 2.)  Instead, "[a] district court's choice of law determination is governed by the choice of law rules of the forum state."  *Shields* v. *Consolidated Rail*, 810 F.2d 397, 399 (3d Cir. 1987) (undergoing a choice of law analysis with respect to contribution claims, where, if Indiana law applied, there was no right to contribution, but if Pennsylvania law applied, a right to contribution existed).  Accordingly, as PTO #31 sets out, "[a]ny choice of law principles will be determined based on the choice-of-law rules that would have applied in the federal district court of the Personal Injury Plaintiff's designated venue."  (PTO #31 at 3 (quoting and incorporating PTO #28(b)).)

In addition, contribution claims are governed by "the law of the jurisdiction which governs the underlying claim."  *Rodin Props.-Shore Mall*, 49 F. Supp. 2d at 739 (citing Restatement (Second) of Conflicts of Laws § 173 (1969)); *Werner Enters.*, 2006 WL 2583458, at *4-5 (noting that that the "law of the jurisdiction governing the underlying claim normally will govern whether contribution can be obtained," and thus applying Pennsylvania law to a contribution claim "[b]y reason of the underlying claim being governed by Pennsylvania law").  As a result, the filing of a contribution claim is tethered to the underlying Personal Injury Plaintiff's

claim, and this Court must first determine which law governs each Personal Injury Plaintiff's claim before it can determine whether a right to contribution exists.   That is precisely what PTO #31 contemplates.   Once those issues are resolved, the parties can then revisit the choice of law issues and determine whether there is any dispute on that point.   At this juncture, however, SoClean and DWHP need not respond to any one individual complaint, but instead only to a master complaint, obviating the need to resolve intricate choice of law questions now.   There is no reason to delay SoClean's and DWHP's participation in this case simply because those choice of law issues are not yet resolved.

As to staying SoClean and DWHP's time to respond, SoClean and DWHP construe PTO #31 as imposing an indefinite stay on their responsive pleadings in a manner that "prevent[s] SoClean and DW Management from obtaining an early resolution of the claims against them." (Opp. at 10.)   Not so.   PTO #31 provides that the stay will be lifted "following the Court's disposition of Philips RS North America, LLC's motion to dismiss the Second Amended Master Personal Injury Complaint."   (PTO #31 at 2.)   This stay was incorporated *to address the concerns of SoClean and DWHP* about the Philips Defendants' pending motion to dismiss.   The Philips Defendants are indifferent to whether the PTO includes a stay or not—if SoClean and DWHP so desire, the Philips Defendants do not object to striking that provision and proceeding straightaway with any motions to dismiss or motions to strike that SoClean and DWHP wish to file with respect to the Philips Defendants' master third-party complaint.

## CONCLUSION

For the foregoing reasons, the Court should enter Pretrial Order #31.

-13-

Dated:  April 5, 2024

Respectfully submitted,

/s/  *Michael H. Steinberg*

Michael H. Steinberg
steinbergm@sullcrom.com
SULLIVAN & CROMWELL LLP
1888 Century Park East
Los Angeles, CA 90067
Tel: (310) 712-6670

/s/  *Tracy Richelle High*

Tracy Richelle High
hight@sullcrom.com
William B. Monahan
monahanw@sullcrom.com
Shane M. Palmer
palmersh@sullcrom.com
Alexandra Bodo
bodoa@sullcrom.com
SULLIVAN & CROMWELL LLP
125 Broad Street
New York, NY  10004-2498
Tel:  (212) 558-4000

*Counsel for Defendants Koninklijke Philips*
*N.V., Philips North America LLC, Philips*
*Holding USA Inc., and Philips RS North*
*America Holding Corp.*

/s/  *Erik T. Koons*

Erik T. Koons (D.C. Bar No. 468289)
erik.koons@bakerbotts.com
Andrew George (PA Bar No. 208618)
andrew.george@bakerbotts.com
BAKER BOTTS LLP
700 K Street, N.W.
Washington, D.C.  20001
Tel:  (202) 639-7973
Fax:  (202) 585-1086

*Counsel for Defendants Philips RS North*
*America LLC*

-14-

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify on this 5th day of April 2024, a true and correct copy of the foregoing was filed electronically and is available for viewing and downloading from the Court's ECF System.   Notice of this filing will be sent to all counsel of record by operation of the ECF System.

/s/  <i>Michael H. Steinberg</i>

Michael H. Steinberg
