**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| IN RE: PHILIPS RECALLED CPAP, BI-LEVEL PAP, AND MECHANICAL VENTILATOR PRODUCTS LITIGATION | ) ) ) ) ) | Master Docket: Misc. No. 21-1230 |
| | ) | MDL No. 3014 |
| This Document Relates to: All Actions Asserting Economic Loss Claims | ) ) ) ) ) | |

## MEMORANDUM OPINION

Pending before the court is an Unopposed Motion of Settlement Class Representatives for Final Approval of Class Settlement and Release of Economic Loss Claims, Final Judgment, Injunction and Order of Dismissal, with brief and exhibits in support (ECF Nos. 2659, 2660), and a motion for attorneys' fees and expenses and a brief in support. (ECF Nos. 2420, 2421).

### I.   **Brief History**

On September 7, 2023, class counsel for plaintiffs filed an unopposed motion for preliminary approval of the settlement and release of economic loss claims, with brief in support. (ECF Nos. 2212, 2213). The court held a preliminary approval hearing on September 18, 2023. At that hearing, the court expressed concerns and raised questions about the settlement agreement and the proposed notice plan. The court instructed the parties to meet and confer to address the court's concerns and questions and scheduled a follow-up hearing for October 10, 2023. On September

25, 2023, plaintiffs filed a supplemental brief in further support of the motion for preliminary approval, which included revisions to the settlement agreement and proposed notice plan. (ECF No. 2263). On October 5, 2023, plaintiffs filed an amended proposed settlement agreement (the "Settlement Agreement"). (ECF No. 2279). At the continued preliminary approval hearing on October 10, 2023, having been satisfied with the revisions to the settlement agreement and the proposed notice plan, the court granted preliminary approval (ECF No. 2289) and scheduled a final fairness hearing for April 11, 2024. On January 8, 2024, plaintiffs filed a motion for attorneys' fees and expenses and a brief in support. (ECF Nos. 2420, 2421). On March 21, 2024, class counsel filed the objections to the proposed settlement, which had been submitted to the settlement administrator (ECF No. 2654), a notice of compliance with the notice plan (ECF No. 2657), and a motion for final approval of class settlement agreement and release of economic loss claims, final judgment, injunction and order of dismissal, with brief in support (ECF Nos. 2659, 2660). On March 21, 2024, the Philips defendants[1] filed their notice of compliance with the Class Action Fairness Act (ECF No. 2656). On April 9, 2024, plaintiffs filed updated documents in support of final approval of the economic loss class settlement agreement and release of economic loss claims. (ECF No. 2707). The final fairness hearing proceeded as scheduled on April 11, 2024.

## II.   **Class Action Settlement**

Before a class action can be settled, the settlement must first be approved by the court, but only after the court holds a hearing and finds that the settlement is "fair, reasonable, and adequate." Fed. R. Civ. P. 23(e)(2). As part of this undertaking, the court must: "(1) determine if the requirements for class certification under Rule 23(a) and (b) are satisfied; (2) assess whether notice

---

[1] The Philips defendants are Philips RS North America LLC ("Philips RS"), Koninklijke Philips N.V. ("KPNV"), Philips North America LLC, Philips Holding USA Inc., and Philips RS North America Holding Corporation.

to the proposed class was adequate; and (3) evaluate if the proposed settlement is fair under Rule 23(e)." *Sorace v. Wells Fargo Bank, N.A.*, No. CV 20-4318, 2024 WL 643229, at *2 (E.D. Pa. Feb. 15, 2024) (citing *In re NFL Players Concussion Inj. Litig.*, 775 F.3d 570, 581 (3d Cir. 2014)).

## III.  <u>Class Certification</u>

For a class to be certified, it must meet all four requirements prescribed by Rule 23(a): numerosity, commonality, typicality, and adequacy. Here, the class to be certified is defined as follows:

> Plaintiffs and all other individuals or entities in the United States [including its Territories (American Samoa, Guam, the Northern Mariana Islands, Puerto Rico, and the U.S. Virgin Islands), and the District of Columbia], including individuals who are United States citizens, residents, United States military, diplomatic personnel and employees living or stationed overseas, who or which, prior to the announcement of the Recalls, either (a) purchased, leased, rented, or paid for (in whole or part), or were prescribed a Recalled Device ("Users"), or (b) reimbursed (in whole or part) a User's payment to purchase, lease, rent, or otherwise pay for a Recalled Device, including insurers, self-funded employers, and other third-party payers ("Payers"). Individuals or entities whose payment obligations with respect to a particular Recalled Device preceded the announcement of the relevant Recall are part of the Settlement Class even if certain of their payment obligations postdated the Recall (e.g., certain renters and lessees).

(ECF No. 2213 at 8).

### A.  Numerosity

While there is no minimum requirement, courts generally find the numerosity requirement is satisfied when the class exceeds forty members. *Stewart v. Abraham*, 275 F.3d 220, 227 (3d Cir. 2001). Here, with over 10 million Recalled Devices[2] and millions of putative class members, the numerosity requirement is easily met.

---

[2] All capitalized terms, not otherwise defined in this opinion, shall have the meaning ascribed to the terms in the Settlement Agreement at ECF No. 2279.

### B. Commonality

The Third Circuit Court of Appeals has explained that "the focus of the commonality inquiry is not on the strength of each plaintiff's claim, but instead 'is on whether the defendant's conduct was common as to all of the class members.'" *Rodriguez v. Nat'l City Bank*, 726 F.3d 372, 382 (3d Cir. 2013) (quoting *Sullivan v. DB Invs., Inc.*, 667 F.3d 273, 299 (3d Cir. 2011)). The resulting test is not a demanding one; a single question of law or fact is enough to meet the commonality threshold. *Id.* Here, there are many common questions of law and fact, but the one that looms largest over all putative class members is whether the devices in question were defective. Thus, the commonality threshold is also easily met.

### C. Typicality

The typicality test is meant for the court to determine "whether the action can be efficiently maintained as a class and whether the [n]amed [p]laintiffs have incentives that align with those of absent class members so as to assure that the absentee's interests will be fairly represented." *Baby Neal v. Casey*, 43 F.3d 48, 57 (3d Cir. 1994). Put differently, the court must determine whether the named plaintiffs have unique circumstances separating them from the putative class or whether there are any differing legal theories being asserted by the named plaintiffs. *Id.* at 57–58. Here, the class representatives include "individuals who paid for (in whole or in part) Recalled Devices that they used; Users who paid for Replacement Devices; a hospital that purchased Recalled Devices; and a third-party payer." (ECF No. 2213 at 38). Because the class representatives had purchased or used the same kinds of devices subject to the recalls, i.e., the Recalled Devices, they suffered the same kind of financial harm as the class, all of which stemmed from the same alleged conduct of the Philips defendants. This requirement is met.

### D.  Adequacy

Adequacy tests whether "the representative parties will fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a)(4). The interests of the class representatives align with the interests of the putative class members, and the class representatives have no discernible conflicts of interest. (ECF No. 2213 at 39). Additionally, class counsel are qualified and have significant experience from representing plaintiffs in other complex class actions. The court is satisfied that the interests of the class have been adequately protected by the class representatives and the class counsel.

### E.  At least one of the three requirements listed in 23(b)

Along with the Rule 23(a) factors, the class must fall within one of the three kinds of classes contemplated by Rule 23(b). Fed. R. Civ. P. 23(b). The class defined in the Settlement Agreement falls within Rule 23(b)(3), which requires that "questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." Fed. R. Civ. P. 23(b)(3). "The predominance inquiry focuses on whether the defendants' conduct was common to all class members and whether that conduct harmed everyone in the class." *Sorace*, 2024 WL 643229, at *3. Here, the Philips defendants' conduct in selecting and installing the polyester polyurethane ("PE-PUR") foam into the Recalled Devices is common to all class members.

The superiority factor instructs the court "to balance, in terms of fairness and efficiency, the merits of a class action against those of alternative available methods of adjudication." *In re*

*Warfarin Sodium Antitrust Litig.*, 391 F.3d 516, 533–34 (3d Cir. 2004). To conduct the balancing test, Rule 23(b)(3) provides four factors for the court's consideration:

> (A) the interest of members of the class in individually controlling the prosecution or defense of separate actions; (B) the extent and nature of any litigation concerning the controversy already commenced by or against members of the class; (C) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; and (D) the likely difficulties in managing a class action.

Fed. R. Civ. P. 23(b)(3). These factors are satisfied here because handling the economic loss claims on an individual basis would be far more time consuming and cumbersome and far less efficient than handling them on a class level. The economic loss claims are encompassed in the Consolidated Economic Loss Complaint, and there are only a limited number of state actions pending. The numerous economic loss claims were transferred to this court as part of this complex multidistrict litigation. The court does not discern any significant difficulties in managing the class claims relating to economic loss. A class action is therefore superior to other methods of adjudication.

## F. Ascertainability

An "essential prerequisite" for class actions certified under Rule 23(b)(3), "is that the class must be currently and readily ascertainable based on objective criteria." *Marcus v. BMW of N. Am., LLC*, 687 F.3d 583, 592–93 (3d Cir. 2012). The ascertainability inquiry is two-fold, requiring a plaintiff to show that: (1) the class is "defined with reference to objective criteria"; and (2) there is "a reliable and administratively feasible mechanism for determining whether putative class members fall within the class definition." *Byrd v. Aaron's Inc.*, 784 F.3d 154, 163 (3d Cir. 2015), *as amended* (Apr. 28, 2015). Both factors are satisfied here. First, the class is defined by objective criteria: individuals who paid for, rented, or were prescribed a Recalled Device prior to the Recall, and Payers for Recalled Devices. Second, there is a reliable and administratively feasible

mechanism to determine who falls within the class: each device has a serial number in Philips' database with respect to the Recall.

Because all relevant Rule 23(a) and (b) factors are met, and for the reasons set forth on the record on April 11, 2024, the settlement class is certified for purposes of settlement approval.

## IV.    **Appropriate Notice**

Under the Federal Rules of Civil Procedure, when a class is certified under Rule 23(b)(3), "the court must direct notice to the class members in the best way practicable under the circumstances." Fed. R. Civ. P. 23(c)(2)(B). Specifically,

> the notice must clearly and concisely state in plain, easily understood language: (i) the nature of the action; (ii) the definition of the class certified; (iii) the class claims, issues or defenses; (iv) that a class member may enter an appearance through an attorney if the member so desires; (v) that the court will exclude from the class any member who requests exclusion; (vi) the time and manner for requesting exclusion; and (vii) the binding effect of a class judgment on members under Rule 23(c)(3).

Fed. R. Civ. P. 23(c)(2)(B).

Here, before granting preliminary approval, the court closely scrutinized the Notice Program and notice forms, the frequently asked questions to be posted on the Settlement Website, the descriptions of Settlement benefits and releases, and the process for objecting to the Settlement or opting out of the Class. After some revisions to these documents, the court approved the Notice Plan. Based on the declaration of Steven Weisbrot, Esq, President and Chief Executive Officer of the claims administrator, Angeion Group, LLC, "the Notice Plan was designed to target a wide variety of geographic and demographic markets to reach User members of the Settlement Class and deliver an approximate 86.70% reach." (ECF No. 2657-1 ¶ 31). As part of a multi-faceted approach, the Notice Plan included: mailed notice to 4,981,572 eligible users, whose addresses were verified through the United States Postal Service's National Change of Address database;

emailed notice to the 2,912,887 valid email addresses identified for registered users and 2,556 valid email addresses identified as potential third-party Payers; user media notice through advertisements on Spotify, Pandora, and Sirius XM; publication notice in magazines, i.e., Southern Living, Sports Illustrated, and People; media notice to Payers consisting of "digital programmatic display advertising, social media advertising via Facebook and LinkedIn, and an additional paid search campaign via Google, all of which were separate and apart from the User media campaign and were specifically designed to reach Payer Settlement Class Members;" publication notice directed toward Payers in HR Magazine; mailed notice via first-class mail to Durable Medical Equipment providers; and press releases. (*Id.* at 2–8).[3] These efforts exceeded the desired threshold of 86.7% and reached approximately 90% of the class. (ECF No. 2657-1 ¶ 31). The Notice Plan meets all the requirements of Rule 23. The notice provided under the Notice Plan included information regarding the litigation, the definition of the class and the claims and issues in the litigation, and the claims that will be released in the settlement. (ECF No. 2657 at 17–39). The notice also: advised that a class member may object to the settlement and enter an appearance to attend the final fairness hearing (*Id.* at 38); described the binding effect of a judgment on class members (*Id.* at 38); stated the procedures and deadline for class members to exclude themselves from the class or to object (*Id.* at 35–37); and provided the date, time and location of the final settlement hearing (*Id.* at 39). Under these circumstances, the notice was directed to the putative class members in the best way practicable under the circumstances.

---

[3] Additionally, Philips RS issued a push notification to 1,048,576 registered users of the DreamMapper App. (ECF No. 2657-1 ¶ 20).

**V.** **Whether the Settlement is Fair, Reasonable, and Adequate**

Having found that the notice was adequate, the court must next determine whether the proposed settlement is "fair, reasonable, and adequate." *In re Prudential Ins. Co. Am. Sales Prac. Litig. Agent Actions*, 148 F.3d 282, 316 (3d Cir. 1998). The Third Circuit Court of Appeals has instructed district courts to apply a presumption of fairness where: "(1) the settlement negotiations occurred at arm's length; (2) there was sufficient discovery; (3) the proponents of the settlement are experienced in similar litigation; and (4) only a small fraction of the class objected. *In re Warfarin*, 391 F.3d at 535. Here, the proposed settlement was reached after more than a year of hard-fought, arm's length negotiations and mediation overseen by a retired federal magistrate judge. Further, the mediator opined that:

> the proposed settlement was the result of good faith, fair, thorough, and fully-informed arm's-length negotiations between highly capable and experienced parties and counsel with a strong command of relevant facts and legal principles. The settlement represents the parties' and counsel's best efforts and judgments after thoroughly investigating the case, considering the risks, strengths, and weaknesses of their respective positions on the myriad factual and legal issues; the substantial risks, burdens, delays and costs of continued litigation; and the best interests of their respective clients.

(ECF No. 2213 at 230). Lastly, out of the more than 5 million class notices sent, the settlement administrator received objections from only seventy-eight putative class members. (ECF No. 2660 at 12). Because this is an infinitesimally small number of objectors and the other three factors are present, the presumption of fairness applies.

With this initial presumption of fairness in mind, the court examines Rule 23(e)(2) and the additional factors for consideration developed by the Third Circuit Court of Appeals.

**A. Rule 23(e)(2)**

In determining whether the proposed settlement is fair, adequate, and reasonable, Rule 23(e)(2) directs courts to consider whether:

(A) the class representatives and class counsel have adequately represented the class;

(B) the proposal was negotiated at arm's length;

(C) the relief provided for the class is adequate, taking into account:

      (i) the costs, risks, and delay of trial and appeal;

      (ii) the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims;

      (iii) the terms of any proposed award of attorney's fees, including timing of payment; and

      (iv) any agreement required to be identified under Rule 23(e)(3); and

(D) the proposal treats class members equitably relative to each other.

Fed. R. Civ. P. 23(c)(2)(B).

## B.  Additional Third Circuit Factors to be Considered

Through a series of cases, the Third Circuit Court of Appeals identified additional factors for district courts to evaluate prior to approving a settlement. First, in *Girsh v. Jepson*, the court identified nine factors for consideration:

> (1) the complexity, expense and likely duration of the litigation; (2) the reaction of the class to the settlement; (3) the stage of the proceedings and the amount of discovery completed; (4) the risks of establishing liability; (5) the risks of establishing damages; (6) the risks of maintaining the class action through the trial; (7) the ability of the defendants to withstand a greater judgment; (8) the range of reasonableness of the settlement fund in light of the best possible recovery; [and] (9) the range of reasonableness of the settlement fund to a possible recovery in light of all the attendant risks of litigation.

521 F.2d 153, 157 (3d Cir.1975). Second, in order to account for the "sea-change in the nature of class actions" in the two decades since *Girsh*, the court identified six additional factors for, when appropriate, consideration:

> (1) the maturity of the underlying substantive issues, as measured by experience in adjudicating individual actions the development of scientific knowledge, the extent of discovery on the merits, and other factors that bear on the ability to assess the probable outcome of a trial on the merits of liability and individual damages; (2) the existence and probable outcome of claims by other classes and subclasses; (3) the comparison between the results achieved by the settlement for individual class or subclass members and the results achieved—or likely to be achieved—for other claimants; (4) whether class or subclass members are accorded the right to opt out of the settlement; (5) whether any provisions for attorneys' fees are reasonable; and

(6) whether the procedure for processing individual claims under the settlement is fair and reasonable.

*In re Prudential*, 148 F.3d at 323. The court clarified that the *Girsh* factors are mandatory, and district courts "must make findings as to each of the nine *Girsh* factors in order to approve a settlement as fair, reasonable, and adequate, as required by Rule 23(e)." *In re Pet Food Prod. Liab. Litig.*, 629 F.3d 333, 350 (3d Cir. 2010). The *Prudential* factors, or considerations, on the other hand, are permissive and "illustrative of additional inquiries that in many instances will be useful for a thoroughgoing analysis of a settlement's terms." *Id.*

Third, the court instructed district courts to consider the "degree of direct benefit provided to the class." *In re Baby Prod. Antitrust Litig.*, 708 F.3d 163, 174 (3d Cir. 2013). As part of this consideration, courts may consider "the number of individual awards compared to both the number of claims and the estimated number of class members, the size of the individual awards compared to claimants' estimated damages, and the claims process used to determine individual awards." *Id.*

### C.  Analysis

#### (i)     Rule 23(e)(2)

The proposed settlement satisfies the requirements of Rule 23(e)(2). First, class counsel and the class representatives adequately represented the class.  Here, through the voluminous production of documents, consultation with experts, and a science day, counsel "develop[ed] enough information about the [litigation] to appreciate sufficiently the value of the claims." *In re NFL Players Concussion Injury Litig.*, 821 F.3d 410, 439 (3d Cir. 2016). Second, the parties negotiated the settlement at arm's length during mediations conducted by an experienced mediator. Third, all factors of Rule 23(e)(2)(C) are satisfied by settling the economic loss claims at this time: (i) "continuing this litigation would cause the parties to incur substantial additional costs and necessitate extensive trial preparation[,]" and "continuing through trial and subsequent appeals

would only delay any recovery class members may receive" *Sorace*, 2024 WL 643229, at *5; (ii) the proposed method of distributing relief to the class is effective, and the notice complied with Rule 23 and adequately informed class members about the steps necessary to receive relief, including the "Accelerated Implementation Option" ("AIO");[4] and (iii) the relief to the class remains adequate when considering the proposed award of attorneys' fees ($94.4 million), and the Settlement Fund (in an amount not less than $495 million) will not be reduced to accommodate payment of class counsel's attorneys' fees and expenses, the cost of Notice and Settlement Administration, or Service Awards to the Settlement Class Representatives. The court considered the Settlement Agreement's provision that defendants will not oppose class counsels' request for attorneys' fees. The court found that provision did not preclude approval because the court determined after a close look at this provision in the context of the larger settlement, that it is not a basis upon which to disapprove the settlement. *See In re Wawa, Inc. Data Sec. Litig.*, 85 F.4th 712, 725–26 (3d Cir. 2023). This Settlement Agreement is the product of extensive mediations before the mediator, who attests that attorneys' fees were not a negotiating tool during settlement discussions. While the attorneys' fees were not negotiated until after reaching the principal terms of the settlement, the court considered them in the context of being part of a constructive common fund. After review based upon the percentage range and lodestar calculation, the court determined that the attorneys' fees and expenses were reasonable. *See infra* section VIII. The court concludes relief to the class is adequate. Fourth, refund payments are based on the kind of device. Because

---

[4] The AIO "enables Eligible Users who have enrolled or registered their Recalled Devices and returned them before the Claims Period Deadline to obtain their Device Payment and Device Return Awards even before any appeals from the Final Judgment Order have been decided, and regardless of the outcome of those appeals." (ECF No. 2660 at 3).

the settlement is directly related to each class member's actual loss based upon the kind of device, it equitably treats the class members.

(ii)     *Additional Third Circuit Factors*

**a)  *Girsh* Factors**

The first *Girsh* factor "captures the probable costs, in both time and money, of continued litigation." *In re Warfarin*, 391 F.3d at 535–36 (quoting *In re Cendant Corp. Litig.*, 264 F.3d 201, 233 (3d Cir. 2001)). Here, as in *In re Suboxone (Buprenorphine Hydrochloride & Naloxone) Antitrust Litig.*, No. 13-MD-2445, 2024 WL 815503 (E.D. Pa. Feb. 27, 2024), continuing through trial would have required complicated and costly pretrial proceedings, "all without guarantee of any recovery. Ultimately, the settlement eliminated these risks and provided immediate and guaranteed recovery." *In re Suboxone*, 2024 WL 815503, at *6. Because this settlement, like the settlement in *In re Suboxone*, "reduces expenses and avoids delay, this factor weighs heavily in favor of approving the Settlement." *Id.*

The second *Girsh* factor "attempts to gauge whether members of the class support the settlement." *In re Prudential*, 148 F.3d at 318. Out of the more than 5 million class notices sent, the settlement administrator received only seventy-eight objections and 390 opt-outs.[5] This factor favors approval of the Settlement. *See Id.* (a district court did not abuse its discretion where there were approximately 19,000 opt-outs and 300 objections from a class of 8 million putative members).

---

[5] The opt-outs are shown on the chart filed by class counsel at ECF No. 2722. That same chart identifies putative class members who indicated a desire to opt out, but failed to comply with the requirements for opt-out. (ECF No. 2279-1 at 41–43). At the April 11, 2024 hearing, the court required that notice be given to those putative class members that their attempt to opt out did not meet the requirements. To date, the court has not received any motions to challenge the determination about deficiencies.

13

The third *Girsh* factor "ensure[s] that a proposed settlement is the product of informed negotiations." *Id.* at 319. Formal discovery, however, is not required— "[w]hat matters is not the amount or type of discovery class counsel pursued, but whether they had developed enough information about the case to appreciate sufficiently the value of the claims." *In re NFL*, 821 F.3d at 439. In its preliminary approval order, the court previously determined that "the Parties have reached the Settlement after investigating the strengths and weaknesses of the Economic Loss Claims and the defenses thereto[.]" (ECF No. 2289 at 3). Additionally, the mediator opined that the settlement was the result of "counsel's best efforts and judgments after thoroughly investigating the case, considering the risks, strengths, and weaknesses of their respective positions on the myriad factual and legal issues . . . ." (ECF No. 2213-2). This factor favors approval of the settlement.

Courts commonly group the fourth and fifth *Girsh* factors because they "survey the possible risks of litigation in order to balance the likelihood of success and the potential damage award if the case were taken to trial against the benefits of an immediate settlement." *In re Warfarin*, 391 F.3d at 537. Counsel representing the Philips Defendants have vigorously defended their clients in this multidistrict litigation, contesting many issues of fact and liability, including jurisdiction over the foreign parent entity KPNV. If KPNV prevailed on its motion to dismiss on jurisdictional grounds, there could be a risk that a substantial judgment against Philips RS could not be satisfied. These factors favor approval of the Settlement.

The sixth *Girsh* factor "measures the likelihood of obtaining and keeping a class certification if the action were to proceed to trial." *In re Warfarin*, 391 F.3d at 537. But, "[b]ecause there is always a 'possibility of decertification, and consequently the court can always claim this

factor weighs in favor of settlement,' this factor merits slight weight." *Sorace*, 2024 WL 643229, at *7 (quoting *In re Prudential*, 148 F.3d at 321).

The seventh *Girsh* factor asks "whether the defendants could withstand a judgment for an amount significantly greater than the [s]ettlement." *In re Warfarin*, 391 F.3d at 537–38 (quoting *In re Cendant*, 264 F.3d at 240). This factor, however, also carries little weight because the fact that a defendant could pay more does not mean that it should pay more than what was negotiated. *See Id.* at 538; *Jackson v. Wells Fargo Bank, N.A.*, 136 F. Supp. 3d 687, 705 (W.D. Pa. 2015). Additionally, this settlement only pertains to one of three kinds of claims against the defendants (remaining claims: personal injury and medical monitoring), and, arguably, at least the personal injury claims might carry a much greater liability.

The eighth and ninth *Girsh* factors address "whether the settlement is reasonable in light of the best possible recovery and the risk of further litigation." *In re Warfarin*, 391 F.3d at 538. These factors ask courts to "evaluate whether the settlement represents a good value for a weak case or a poor value for a strong case." *Id.* This involves comparing "the damages plaintiffs would likely recover if successful—discounted for the risk of not prevailing—with the amount of the settlement agreement." *Sorace*, 2024 WL 643229, at *8. As noted the by the Third Circuit Court of Appeals in *In re NFL*, the court "must take seriously the litigation risks inherent in pressing forward with the case," including the possibility that litigation could leave class members with "no recovery at all." 821 F.3d at 440. In this case the damaged machines are subject to remedial measures. In *Solak v. Ford Motor Co.*, 2023 WL 4628456, at *3-5 (E.D. Mich. July 19, 2023), the court dismissed a complaint for economic damages (without leave to replead) after finding that the automaker's remedial measures (a voluntary recall to replace defective airbags free of charge and reimburse owners who already paid for repairs) rendered the claims prudentially moot. That

decision illustrates the litigation risks here and sheds further light on the reasonableness of this settlement. Another consideration, as discussed above, is that if KPNV were to be dismissed for lack of personal jurisdiction, there is the possibility that a larger amount would not be available from the remaining defendants to pay the economic loss claims. This factor favors approval of the settlement.

Taken together, the *Girsh* factors favor approval of the settlement.

### b) *Prudential* Factors

The first *Prudential* factor—"maturity of the underlying substantive issues—substantially mirrors *Girsh* factor three, the stage of the proceedings." *In re Suboxone*, 2024 WL 815503, at *9. Class Counsel conducted significant legal and factual investigations before beginning settlement discussions. They also conducted formal and informal discovery of defendants. As a result, class counsel began the mediation process with substantial information about the Recalled Devices, the conduct of the defendants leading to the recalls, and the merits of the legal claims and factual allegations asserted in the Consolidated Economic Loss Complaint. This factor favors approval of the Settlement.

Factors two and three look at the outcomes of claims by other classes and other claimants and are not applicable here. Factor four, right to opt out, is met because class members were given an adequate opportunity to opt out of the Settlement. Factor four, therefore, favors approval of the Settlement. Factor five, reasonableness of attorneys' fees, is discussed in detail below, and favors approval of the Settlement. Factor six, procedure for processing individual claims, is met because the court carefully considered the procedure for processing individual claims and found it to be both fair and reasonable. Factor six, therefore, favors approval of the Settlement.

After considering the applicable *Prudential* factors, the court finds they favor approval of the Settlement.

### c) *Baby Products* Factor

The remaining factor from the Third Circuit Court of Appeals the court must consider is the *Baby Products* direct benefit factor. The number of individual awards is not relevant where, as here, "each class member who submit[s] a valid claim is eligible to receive an individual award." *In re Suboxone*, 2024 WL 815503, at *11. Regarding the size of the individual awards compared to claimants' damages, "the Settlement represents a compromise but still awards each class member a substantial direct benefit that is immediate and guaranteed." *Id.* Notably, the payments under the Settlement are directly related to the claimants' purchase or use of specific Recalled Devices.

The direct benefit to the class favors approval of the Settlement.

### (iii)    Conclusion with Respect to Fairness of the Economic Loss Settlement

The requirements of the Federal Rules of Civil Procedure are met by the Economic Loss Settlement, and the *Girsh* factors, the *Prudential* factors, as well as the *Baby Products* direct benefit factor, all favor approval of the Settlement.

## VI.    Whether the Distribution Plan is Fair, Reasonable, and Adequate

The court must not only approve the settlement as fair, reasonable, and adequate, but it must also approve the proposed distribution plan as fair, reasonable, and adequate. *Sullivan*, 667 F.3d at 326. Generally, courts "consider plans of allocation that reimburse class members based on the type and extent of their injuries to be reasonable." *Id.* at 328. Here, all class members are entitled to compensation, and that compensation is directly related to the device purchased or used by the relevant class members. This distribution is fair, reasonable and adequate.

## VII.    **Objections**

At the final fairness hearing on April 11, 2024, the court addressed and overruled the objections of seventy-eight putative class members that were submitted to the claims administrator. That court will not readdress every objection here, as the record will reflect the court's position with respect to each objection. Attached as Exhibit A to this opinion is a chart listing the objections, the numbers used by the plaintiffs to identify each objection submitted, the bases for the objections, and the responses to the objections.  As discussed during the hearing, the responses were accepted by the court, and the objections were overruled. The court will, however, briefly address two of the common positions taken by more than one objector.

- Many objectors based their objections—and some their only objection—on the fundamental misunderstanding that this Settlement somehow affected their rights to any damages related to personal injury or medical monitoring. To be clear, this Settlement is solely for the economic loss related to the Recalled Devices themselves and does not strip the class members of any claim for potential recovery related to personal injury or medical monitoring.

- Other objectors based their objections—again, and some their only objection—on variations about the settlement amount being paid to them not being enough money. This generalized objection cannot suffice because the settlement is a compromise, "a yielding of the highest hopes in exchange for certainty and resolution." *In re Prudential*, 148 F.3d at 317; *see also In re Mexico Money Transfer Litig. (W. Union & Valuta)*, 164 F. Supp. 2d 1002, 1028 (N.D. Ill. 2000) ("The court is called upon here to assess a settlement proposal,

not the relief that would be accorded Plaintiffs were they to win their claims following litigation.").

**VIII.** <u>**Attorneys' Fees and Expenses**</u>

    **A. Fees**

Plaintiffs' counsel seek an award of attorneys' fees in the amount of $94.4 million. The Federal Rules of Civil Procedure provide that "[i]n a certified class action, the court may award reasonable attorney[s'] fees . . . that are authorized by law or by the parties' agreement." Fed. R. Civ. P. 23(h). Traditionally, there are two methods of evaluating requests for attorneys' fees: the percent-of-recovery method and the lodestar method. *In re Prudential*, 148 F.3d at 333. The percent-of-recovery method "calculates the percentage of the total recovery that the proposal would allocate to attorneys' fees by dividing the amount of the requested fee by the total amount paid out by the defendant . . . ." *In re Cendant*, 264 F.3d at 256. "The percentage-of-recovery method is appropriate where, as here, the value of the settlement to the class can be readily calculated." *Sorace*, 2024 WL 643229, at *12. The lodestar method is based on "the number of hours reasonably expended" to determine "an adequate fee irrespective of the monetary value of the final relief achieved for the class." *In re Gen. Motors Corp. Pick-Up Truck Fuel Tank Prod. Liab. Litig.*, 55 F.3d 768, 821 (3d Cir. 1995).

All class action settlements require "thorough judicial review of fee applications." *In re Prudential*, 148 F.3d at 333. Courts within the Third Circuit utilize the *Gunter* and *Prudential* factors to determine the reasonableness of fee applications. *See In re Diet Drugs (Phentermine/Fenfluramine/Dexfenfluramine) Product Liability Litigation*, 582 F.3d 524, 541 (3d Cir. 2009). The *Gunter* factors include:

> (1) the size of the fund created and the number of persons benefitted; (2) the presence or absence of substantial objections by members of the class to the

19

settlement terms and/or the fees requested by counsel; (3) the skill and efficiency of the attorneys involved; (4) the complexity and duration of the litigation; (5) the risk of nonpayment; (6) the amount of time devoted to the case by counsel; and (7) awards in similar cases.

*Id.* The *Prudential* factors are:

(1) the value of benefits accruing to class members attributable to the efforts of class counsel as opposed to the efforts of other groups, such as government agencies conducting investigations; (2) the percentage fee that would have been negotiated had the case been subject to a private contingent fee agreement at the time counsel was retained; and (3) any "innovative" terms of settlement.

*Id.* These factors "'need not be applied in a formulaic way' because each case is different, 'and in certain cases, one factor may outweigh the rest.'" *Id.* at 545 (quoting *In re AT & T Corp., Sec. Litig.*, 455 F.3d 160, 166 (3d Cir. 2006). After considering the *Gunter* and *Prudential* factors, the Third Circuit Court of Appeals has advised that "it is sensible for a court to use a second method of fee approval to cross check its initial fee calculation." *In re Prudential*, 148 F.3d at 333.

(i) *Gunter Factors*

**a) the amount of the value created and the number of persons benefitted**

The amount of value created and number of persons benefitted favors approval of this award. Under the terms of the Settlement Agreement, there are set payments ranging from $55.63 to $1,552.25 per Recalled Device, depending on the Recalled Device, for Device Payment Awards and $100 per Recalled Device for Device Return Awards to Users. Thus, the non-reversionary $506.3 million prefund represents a floor, not a ceiling, and that amount will increase as additional returns of Recalled Devices are made and additional claims for Device Payment Awards are filed and approved. When including the costs for the claims administrator, attorneys' fees and held costs, the total minimum constructive common fund becomes $613.3 million. The $94.4 million attorneys' fee request equates to 18.65% of the $506.3 million non-reversionary cash prefund amounts, and 15.4% of the $613.3 million minimum constructive common fund. These

percentages fall well within the accepted range of up to 45% of the common fund approved within the Third Circuit. *Sorace*, 2024 WL 643229, at *13.

### b) the presence or absence of substantial objections by members of the class to the settlement terms and/or fees requested by counsel

There is only one substantive objection to the attorneys' fee request, which, significantly, does not argue that the requested fee is excessive; rather, it is that: (1) the court should not rule on the Fee Petition until after the expiration of the August 9, 2024 Claims Deadline because "the claims rate . . . should be considered in determining the amount of fees"; and (2) if the court awards less than the requested fee, the difference should be paid out to class members or to a *cy pres* recipient, rather than remain with the Philips defendants. There, however, is a process for a claimant to receive payment on an accelerated basis, i.e., the AIO, and the amount to be paid to a claimant is fixed and cannot be diluted no matter the number of claimants. The court does not view the payment of attorneys' fees prior to the Claims Deadline to be adverse to the class members' interest. The allocation of fees is separate from the award to the class, and because the court found it fair and reasonable to award the amount of attorneys' fees requested, there will be no left-over funds to be paid out to class members. Therefore, this objection does not weigh against awarding the fees requested.

### c) the skill and efficiency of the attorneys involved

"The single clearest factor reflecting the quality of class counsels' services to the class are the results obtained." *In re Suboxone*, 2024 WL 815503, at *14 (cleaned up). As previously discussed, class counsel are skilled and effective class action litigators that have obtained a highly favorable settlement in a complex class action multidistrict litigation case.

### d)   the complexity and duration of the litigation

Before reaching the proposed Settlement Agreement, the economic loss claims in this case were actively litigated for over a year. The case involved complex legal issues, including those raised in the various motions to dismiss filed by defendants. Class counsel worked extensively with experts to address complex issues of science related to liability and to analyze class certification and damage theories. In short, the litigation has been more than sufficiently lengthy and complex to justify the requested attorneys' fees.

### e)   the risk of nonpayment

Class counsel litigated this case on a contingency fee basis, which carries a significant risk of nonpayment; in fact, "[a]ny contingency fee arrangement includes a risk of no payment." *O'Keefe v. Mercedes-Benz USA, LLC*, 214 F.R.D. 266, 309 (E.D. Pa. 2003)). As was the case in *Sorace*, here, "[s]uccess was not guaranteed in this case, and the risk undertaken by counsel merits approval of the requested fees." *Sorace*, 2024 WL 643229, at *13.

### f)   the amount of time devoted to the case by plaintiff's counsel

Class counsel has yet to receive any compensation for their efforts during the two-plus years this litigation has continued. As discussed below, in the lodestar crosscheck, *see infra* section VIII (C), class counsel risked $571,374.38 in out-of-pocket expenses and 85,798.40 hours of work with the knowledge that, should their efforts not yield the desired result of recovery for the plaintiffs, they would not be reimbursed or compensated. The amount of time worked favors approval.

### g)   the awards in similar cases

In common fund cases, fee awards generally range from 19% to 45% of the settlement fund. *Sorace*, 2024 WL 643229, at *13. The requested fee award of $94.4 million represents

18.65% of the $506.3 million nonreversionary prefund. The request also represents 15.4% of the minimum constructive common fund of $613.3 million (i.e., the combined value of the prefunded, non-reversionary cash payments; the costs of Class Notice and Settlement Administration; and the requested attorneys' fees and costs). Because the requested fee award is below the low-end of the accepted range, this factor favors approval.

*(ii) Prudential Factors*

**a) the value of benefits accruing to class members attributable to the efforts of class counsel as opposed to the efforts of other groups, such as government agencies conducting investigations**

While actions have been taken by the United States Food and Drug Administration and Department of Justice with respect to the Recall, class counsel here have "not relied on the government or other public agencies to do their work for them as has occurred in some cases." *In re Diet Drugs*, 582 F.3d at 544. Class counsel were appointed to represent the plaintiffs in this multidistrict litigation and have been actively litigating this action, including drafting and filing the Consolidated Economic Loss Complaint, responding to motions to dismiss, and pursuing and analyzing discovery, without assistance from the government or any third parties.

**b) the percentage fee that would have been negotiated had the case been subject to a private contingent fee agreement at the time counsel was retained**

"Attorneys regularly contract for contingent fees between 30% and 40% with their clients in non-class, commercial litigation." *In re Ins. Brokerage Antitrust Litig.*, 297 F.R.D. 136, 156 (D.N.J. 2013). Here, Settlement Class Counsel's request for 18.65% of the minimum payment to Settlement Class Members and only 15.4% of the minimum constructive common fund is significantly lower than customary percentages in private contingent fee agreements providing a greater recovery for Settlement Class Members. This factor favors the award of the fees requested.

**c)   any "innovative" terms of settlement**

The Settlement Agreement also includes an AIO option, helping to ensure that Settlement Class Members can avoid certain risks and delays of appeal and accelerate the timing of their payments. Further, the Settlement Agreement provides two-year extended warranties to class members receiving remanufactured devices through the recall programs. Because the Settlement Agreement includes beneficial and innovative terms, this factor weighs in favor of approval of the requested fees.

*(iii) Lodestar Crosscheck*

The percent recovery awards of 18.65% of the minimum payment to Settlement Class Members and 15.4% of the minimum constructive common fund are well within the acceptable ranges approved by courts within the Third Circuit. Settlement Class Counsel spent 85,798.40 hours during the relevant period litigating this case and facilitating the settlement of the Economic Loss Claims in this action. The total lodestar, based on all Fee Applicants' reported hours and currently stated hourly rates, is $65,829,309.60. The blended hourly rate for all Fee Applicants is $767.25, determined by taking the total lodestar divided by the total hours. Here, the requested $94.4 million for attorneys' fees represents a 1.43 multiplier of class counsel's reported lodestar.  The Third Circuit Court of Appeals has recognized that lodestar multipliers from one to four "are frequently awarded" in class cases. *In re Prudential*, 148 F.3d at 341. A *Lodestar* multiplier of 1.43 does not require the court to reduce the fees requested.

**B.  Expenses**

Along with their request for attorneys' fees in the amount of $94.4 million, the Settlement Class Counsel are seeking $571,374.38 in expenses. "Counsel for a class action is entitled to

reimbursement of expenses that were adequately documented and reasonably and appropriately incurred in the prosecution of the class action." *In re Safety Components, Inc. Sec. Litig.*, 166 F. Supp. 2d 72, 108 (D.N.J. 2001) (citing *Abrams v. Lightolier Inc.*, 50 F.3d 1204, 1225 (3d Cir. 1995)). Class Counsel represented that "[t]hese expenses were reviewed by the Accountant, Co-Lead Counsel, and the [Time and Expense Subcommittee] for compliance with PTO 13." (ECF No. 2421 at 40). Based upon that representation and the court's review of the summary of these expenses, the court finds them to be reasonable and similar to out-of-pocket expenses incurred in similar complex litigations. Thus, the expenses were "adequately documented and reasonably and appropriately incurred in the prosecution of [this] class action." *In re Safety Components,* 166 F. Supp. 2d at 108.

## IX. <u>Conclusion</u>

Based on the foregoing, and consistent with the court's findings and rulings at the April 11, 2024 final fairness hearing, the court finds that: (1) all the requirements for class certification have been met; (2) there was appropriate notice of the settlement of the Economic Loss Claims; (3) the settlement is fair, reasonable, and adequate; and (4) the distribution plan is fair reasonable and adequate. Additionally, for the reasons set forth in more detail on the record, the objections to the settlement raised by seventy-eight putative class members are overruled. Lastly, the court approves the requested amount of attorneys' fees and expenses. An appropriate order will follow.

BY THE COURT:

April 25, 2024

/s/ Joy Flowers Conti
Joy Flowers Conti
Senior United States District Court Judge

# EXHIBIT A

**OBJECTIONS AND RESPONSE CHART**

| Ex. No. | Objection | Response | Brief |
|---|---|---|---|
| 2; 7; 20; 29; 34; 36; 37; 51; 57; 59; 61; 69; 72 | Compensation inadequate given physical injuries Devices caused | Irrelevant – Settlement explicitly preserves Personal Injury / Medical Monitoring claims | pp. 26-27 & n.21 |
| 11; 12; 17; 20; 28; 37; 67; 70; 71; 75 | Objects to the Settlement amount. No reason given. | Conclusory objection that "it's just not enough" money is insufficient. | pp. 27-28 & n.23; pp. 29-32 & n.26 |
| 1 | Compensation is inadequate; Settlement should compensate all time and expense caused by Recall. | Variation of "it's just not enough" money objection is insufficient. | pp. 29-32 & n.26 |

**OBJECTIONS AND RESPONSE CHART**

| | | | |
|---|---|---|---|
| | Dissatisfaction with Recall and release of Philips Defendants; Settlement doesn't remove all Devices from use; Settlement should Replace all Devices. | Settlement and FDA-overseen Recall are separate programs, but Settlement nonetheless provides incentive to return devices – an additional 266,539 Devices have been returned since Notice was sent. | pp. 46-48 & n.53 |
| | Settlement benefits Philips and lawyers more than consumers | Conclusory fee objection is insufficient. | p. 43 & n.46 |
| 3 | Objector complains about experience with the Recall Program; has not received replacement despite numerous calls to DME and Philips. | Objector complaining about the separate Recall, not the Settlement. | pp. 46-48 & n.53 |
| | Seeks "aggravation fee" to compensate for his numerous calls to get a replacement and 100% out-of-pocket payment for Device. | Variation of "it's just not enough" money objection is insufficient. | pp. 29-32 & n.26 |
| 4 | Does not adequately compensate for current and potential future physical injury. | Irrelevant – Settlement explicitly preserves Personal Injury / Medical Monitoring claims. | pp. 26-27 & n.21 |
| | Objects to amount of attorneys' fees/costs | Conclusory fee objection is insufficient. | p. 43 & n.46 |
| | Objects to Service Awards. | Conclusory objection is insufficient. | p. 49 & n.58 |
| 5 | Dissatisfied with Philips Recall Program. | Objector complaining about the separate Recall, not the Settlement. | pp. 46-48 & n.53, n.54 |
| 6 | Unsupported general objection. No reason given. | Conclusory objection is insufficient. | p. 49 & n.61 |

**OBJECTIONS AND RESPONSE CHART**

| 8 | Recall was working well (he received a Remanufactured Device for one Recalled Device) and believes the Settlement prevents him from receiving the replacement DS Go he expected to receive in Recall; compensation in Settlement is not enough to buy replacement for DS Go. | Objector mistakenly believes the Settlement prevents him from receiving a replacement device; conclusory objection that "it's just not enough" money is insufficient. | pp. 47-48 & n.54 |
|---|---|---|---|
| | Compensation is not enough to replace or motivate him to return DS Go. | Variation of "it's just not enough" money objection is insufficient. | pp. 29-32 |
| | Attorneys' fees are too high in light of his inadequate compensation. | Conclusory fee objection is insufficient. | p. 43 & n.46 |
| 9 | Settlement does not compensate for out-of-pocket payment for device, accessories, interest, or time and inconvenience of trying to obtain a replacement. | Variation of "it's just not enough" money objection is insufficient. | pp. 29-32 & n.26 |
| | Settlement does not require Philips to provide a replacement. | Settlement and FDA-overseen Recall are separate programs; offering replacement devices requires FDA approval. | pp. 46-48 & n.53 |
| | Hasn't received DS Go replacement. | Objector complaining about the separate Recall, not the Settlement; users have option under Recall of receiving Recall compensation in lieu of waiting for a replacement device. | pp. 47-48 & n.54 |
| 10 | Insufficient compensation for personal injuries he may have suffered due to problems with Recall and delay in receiving replacement from Philips | Irrelevant – Settlement explicitly preserves Personal Injury / Medical Monitoring claims. | pp. 26-27 & n.21 |
| | Award is less than what it cost to purchase the Device or would cost for a comparable replacement. | Variation of "it's just not enough" money objection is insufficient. | pp 29-32 & n.26 |

| | | | |
|---|---|---|---|
| | Problems with Recall Program: has waited for a replacement for over a year; Philips hasn't contacted him to advise him on the issues that persist with the Devices. | Objector complaining about the separate Recall, not the Settlement. | pp. 46-48 & n.53 |
| 13 | Settlement offers less than what Recall offered for DS Go; Settlement does not cover cost to replace DS Go with another device. | Users have option under Recall of receiving Recall compensation in lieu of waiting for a replacement device; objector complaining about the separate Recall, not the Settlement. | p. 31 & n.27 & pp. 46-48 & n.53, n.54 |
| | Problems with Recall Program: unable to change Recall Program election from replacement of DS Go to $500 cash offer; has not received replacement. | Objector complaining about the separate Recall, not the Settlement. | pp. 46-48 & n.53 & 54 |
| | Has not received replacement for DS Go or cash offered in Recall. | Objector complaining about the separate Recall, not the Settlement. | pp. 47-48 & n.54 |
| | Settlement Award is less than $500 offered in Recall Program | Objector complaining about the separate Recall, not the Settlement; users have option under Recall of receiving Recall compensation in lieu of waiting for a replacement device. | p. 31 & n.27 |
| 14 | Settlement Award is less than $500 offered in Recall Program | Objection ignores that Users have option of receiving Settlement compensation and replacement device (upon FDA approval), or receiving Recall compensation but not a replacement device. | p. 31 & n.27 |
| 15 | Inadequate compensation: Seeks 100% compensation for out-of-pocket payment for Device; No guarantee that Device Replacement Award will provide 100% compensation for purchase of comparable device. | Variation of "it's just not enough" money objection is insufficient. | pp. 29-32 & n.26 |

| | | | |
|---|---|---|---|
| | Seeks Personal Injury compensation. | Irrelevant – Settlement explicitly preserves Personal Injury / Medical Monitoring claims. | pp. 26-28 & n.21 |
| 16 | Settlement doesn't require Philips to fulfill its "promise" and duty to repair or replace the Device under the Recall Program. | Settlement and FDA-overseen Recall are separate programs; device remediation plans require FDA approval. | pp. 46-48 & n.53 |
| | Dissatisfied with Recall Program: Neither Philips nor DME have reached out to arrange for repair or replacement of his Device. He hasn't received a repair or replacement yet. | Objector complaining about the separate Recall, not the Settlement. | pp. 46-48 & n.53 |
| | Insufficient compensation: Award does not cover the cost of a comparable replacement. Award doesn't "fund" repair of device. | Variation of "it's just not enough" money objection. | pp. 29-32 & n.26 |
| 18 | Inadequate compensation in light of health risk. | Irrelevant – Settlement explicitly preserves Personal Injury / Medical Monitoring claims. | pp. 26-28 & n.21 |
| | Objection to attorneys' fees as too high in light of the size of individual awards; seeks breakdown of how attorney's fees and costs were calculated. | Conclusory fee objection is insufficient. | p. 43 & n.46 |
| 19 | Inadequate compensation: Award does not fully compensate cost of Device; Seeks enough to pay for a comparable replacement. | Variation of "it's just not enough" money objection is insufficient. | pp. 29-32 & n.26 |
| | Seeks Medical Monitoring and Personal Injury compensation. | Irrelevant – Settlement explicitly preserves Personal Injury / Medical Monitoring claims. | pp. 26-28 & n.21 |

|    |                                                                                                                                                          |                                                                                                                                                                                                                                       |                         |
| -- | -------------------------------------------------------------------------------------------------------------------------------------------------------- | ------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------- | ----------------------- |
|    | Problems with Recall: was not aware of Recall when acquired Device in 2016.                                                                               | Objector complaining about the separate Recall, not the Settlement; Recall issued in 2021.                                                                                                                                            | pp. 46-48 & n.53        |
| 21 | Seeks wrongful death compensation.                                                                                                                       | Irrelevant – Settlement explicitly preserves Personal Injury / Medical Monitoring claims.                                                                                                                                             | pp. 26-27 & n.21        |
|    | Device Return Award is unfair to people who want to keep Device for litigation.                                                                          | Preservation Registry is available through the Settlement Website for anyone who wants to return their device but have it preserved for litigation.                                                                                    | pp. 35-36 & n.32        |
| 22 | Seeks Medical Monitoring compensation.                                                                                                                    | Irrelevant – Settlement explicitly preserves Personal Injury / Medical Monitoring claims.                                                                                                                                             | pp. 26-27 & n.21        |
|    | Objection to fees, costs, and Service Awards.                                                                                                            | Fee objection is vague and unsupported; no specifics about Service Awards.                                                                                                                                                            | p. 43 & n.46; p. 49 & n.58 |
| 23 | Objects based on "lack of consideration and failure of the parties to mutually agree to the terms of the settlement."                                    | Consideration and mutual agreement are set forth in Settlement Agreement.                                                                                                                                                             | p. 49 & n.60            |
| 24 | Objects because notice says prepaid Device Return label is available on Settlement Website but he could not find it; language on site was misleading      | Label is available through the Settlement Website; Mr. Engling received a prepaid return label from Angeion.                                                                                                                           | pp 31-32 & n.28         |
|    | Objects to attorney's fees "for not completely representing me or providing … the label."                                                                | His objection is to sufficiency of the Settlement rather than adequacy of counsel; conclusory fee objection is insufficient even if criticism were true; objection does not. undermine court's finding regarding adequacy of counsel. | p. 43 & n.46            |

| 25 | Insufficient compensation when compared to out-of-pocket payment for DS Go, and Settlement does not offer to replace the Device or accessories. | Variation of "it's just not enough" money objection is insufficient; Objector complaining about the separate Recall, not the Settlement; device remediation plans require FDA approval. | pp. 29-32 & n.26; pp. 47-48 & n.54 |
|---|---|---|---|
| | No remediation kit offered. | Self-service repair can damage Devices and void warranties; FDA warned against do-it-yourself repairs. | p. 29 & n.26 |
| 26 | Angeion is not an adequate Settlement Administrator – call was not returned and email follow up was not helpful. | Angeion sent notice to more than 5 million Class Members and received more than 250,000 calls, emails, letters (Angeion Decl. ¶ 39) but only Fischer and one other User objected to its performance. | p. 45 & n.52 |
| | Device Replacement Award should not require return of the Remanufactured Device. If it does, he should be reimbursed for both the purchase of the Recalled Device and the purchase or rental of the Replacement Device. | Variation of "it's just not enough" money objection is insufficient; no basis provided by Objector for having two separate devices; Device Payment Awards provide compensation for Recalled Device purchase, and Device Replacement Awards provide compensation for Replacement Device purchase. | pp. 29-32 & n.26[6] |
| | Recall backlog caused problems. | Objector complaining about the separate Recall, not the Settlement. | pp. 46-48 & n.53 |
| 27 | Settlement Award is inadequate. | Conclusory objection that "it's just not enough" money is insufficient. | pp. 29-32 & n.26 |

---

[6] The Final Approval brief mistakenly categorizes this as an objection to the requirement of returning a *Recalled* Device to obtain a Device Replacement Award. Thus, the discussion accompanying n. 38 on p. 39 of the brief does not apply to Objector 26's objection.

| | | |
|---|---|---|
| | DS Go will not be replaced. | Objector complaining about the separate Recall, not the Settlement; users have option under Recall of receiving Recall compensation in lieu of waiting for a replacement device. | pp. 47-48 & n.54 |
| | Settlement benefits litigants and attorneys more than consumers. | Conclusory fee objection is insufficient. | p. 43 & n.46 |
| 30 | Objects to varying Awards for different Devices – says no rationale provided. | Rationale is provided: Long Form Notice at FAQ 8 explains that Awards are based on relative pricing of Devices. | p. 35 & n.30 |
| | Objects that they had same exposure to toxic materials as Users of machines with greater Awards. | Irrelevant – Settlement explicitly preserves Personal Injury / Medical Monitoring claims. | pp. 26-27 & n.21; p. 35 & n.31 |
| | No allowance for those who "self-remediated." | Variation of "it's just not enough" money objection is insufficient; as to reimbursing for paying mechanic to drill out foam, self-service repair can damage Devices and void warranties; FDA warned against do-it-yourself repairs. | pp. 29-32 & n.26 |
| | They own their Recalled Devices and should be able to keep it as evidence. | Preservation Registry is available through the Settlement Website for anyone who wants to return their device but have it preserved for litigation. | pp. 35-36 & n.32 |
| 31 | Dissatisfied with Replacement Device. | Objector complaining about the separate Recall, not the Settlement. | pp. 46-47 & n.53 |
| 32 | Amount is insufficient to cover any future medical costs. | Irrelevant – Settlement explicitly preserves Personal Injury / Medical Monitoring claims. | pp. 26-27 & n.21 |
| | Objects to Service Awards. | Confuses "Service Awards" with what Class is being compensated. | p. 49 & n.59 |

**OBJECTIONS AND RESPONSE CHART**

| 33 | No specific objection given. | Specific objection must be provided so that Parties can respond. | p. 49 & n.61 |
|---|---|---|---|
| 35 | Settlement Award is inadequate: Replacement Device Award should be full amount paid for replacement. | Variation of "it's just not enough" money objection is insufficient. | pp. 29-32 & n.26 |
| | Questions safety of Remanufactured Devices given recent FDA warnings and wider issues with Recall. | Objector complaining about the separate Recall, not the Settlement; Settlement only about Recalled Devices, not Remanufactured Devices. | p. 27 & n.22 |
| 38 | Concerned about future health problems. | Irrelevant – Settlement explicitly preserves Personal Injury / Medical Monitoring claims. | pp. 26-27 & n.21 |
| | Objects to requirement to return Device to receive Award because it is evidence. | Preservation Registry is available through the Settlement Website for anyone who wants to return their device but have it preserved for litigation. | pp. 35-36 & n.32 |
| | Warranty on Remanufactured Device is too limited since misuse by a prior User could void the Extended Warranty. | Extended Warranty applies to all Remanufactured Devices, regardless of what a prior User did or did not hypothetically do. | p. 26 & n.20 |
| 39 | Settlement Award is inadequate for the "issues and inconvenience" he experienced. | Variation of "it's just not enough" money objection is insufficient. | pp. 27-28 & n.23 |
| | Dissatisfied with Recall. | Objector complaining about the separate Recall, not the Settlement. | pp. 46-48 & n.53 |

| 40 | Settlement Award is inadequate in light of the punitive damages, loss of life, and wider harms. | Unavailing conclusory objection that does not identify any legal, equitable, factual, or procedural errors or deficiencies; | pp. 27-28 & n.23; pp. 26-27 & n.21 |
|---|---|---|---|
| | | To the extent objection is based on "loss of life" and "wider harms" it is irrelevant – Settlement explicitly preserves Personal Injury / Medical Monitoring claims. | |
| 41 | Settlement does not offer replacement or repaired Devices; Philips offered him financial payment or replacement of DS Go; he elected replacement but has not received it. | Users have option under Recall of receiving Recall compensation in lieu of waiting for a replacement device; device remediation plans require FDA approval; objector complaining about the separate Recall, not the Settlement. | pp. 46-48 & n.53, n.54 |
| | Settlement does not reimburse enough: spent almost $2K on two DS Go Devices and accessories that only work with DS Go and wants to be fully compensated | Variation of "it's just not enough" money objection is insufficient. | pp. 29-32 & n.26 |
| | Requested attorneys' fee is excessive because Settlement does not compensate for all out-of- pocket expenses | His objection is to sufficiency of the Settlement rather than adequacy of counsel; conclusory fee objection is insufficient even if criticism were true; objection does not. undermine court's finding regarding adequacy of counsel. | pp. 31-32 & n.28; p. 43 & n.46 |
| 42 | Settlement does not offer replacement or repaired machines which have not yet been provided in the recall | Objector complaining about the separate Recall, not the Settlement; device remediation plans require FDA approval. | pp. 46-48 & n.53 |
| 43 | Settlement does not consider that the Device may have caused her physical injury. | Irrelevant – Settlement explicitly preserves Personal Injury / Medical Monitoring claims. | pp. 26-27 & n.21 |
| | Does not want to return Recalled Device to get Device Replacement Award – is in Portugal. | Don't have to return device but can get a prepaid label to do so without cost. | p. 39 & n.38 |

|    | | | |
|----|------------------------------------------------------------|-----------------------------------------------------------------------|----------------------------|
|    | Award is insufficient as it does not cover accessories she needed. | Conclusory objection that "it's just not enough" money is insufficient. | pp. 29-32 & n.26 |
|    | Dissatisfied with Recall for his DS Go. | Objector complaining about the separate Recall, not the Settlement; users have option under Recall of receiving Recall compensation in lieu of waiting for a replacement device. | pp. 46-48 & n.53, n.54 |
| 44 | Settlement Award is inadequate given the health issues and delay in getting replacement devices out. | Irrelevant – Settlement explicitly preserves Personal Injury / Medical Monitoring claims; Settlement and FDA-overseen Recall are separate programs. | pp. 26-27 & n.21; pp. 46-47 & n.53 |
| 45 | Device Return Award is unfair to people who discarded devices. Philips did not instruct them to keep or return Recalled Devices | Device Return Award (as opposed to Device Payment Award) is not based on Economic Loss but provides an incentive to send Recalled Devices to Philips RS, thereby removing the Recalled Device from circulation; an additional 266,539 Devices have been returned since Notice was sent. The Settlement is not unfair just because not everyone can take advantage of every benefit. | pp. 8; 35-36 & n.33 |
|    | Device Payment Award is too low – he spent much more for his Recalled Device; Device Replacement Award unfairly requires him to return Remanufactured Device; he should be fully reimbursed for what he paid for the Recalled Device and for the Replacement Device. | Variation of "it's just not enough" money objection is insufficient; no basis provided by Objector for having two separate devices; Device Payment Awards provide compensation for Recalled Device purchase, and Device Replacement Awards provide compensation for Replacement Device purchase. | pp. 29-32 & n.26[7] |

---

[7] The Final Approval brief mistakenly categorizes this as an objection to the requirement of returning a *Recalled* Device to obtain a Device Replacement Award. Thus, the discussion accompanying n. 38 on p. 39 of the brief does not apply to Objector 45's objection.

| 46 | Settlement Award is inadequate punishment of Philips RS. | Conclusory objection is insufficient; Settlement will provide at least $506 million to Class Members. | pp. 27-28 & n.23 |
|---|---|---|---|
| | Insufficient compensation for physical injuries. | Irrelevant as the Settlement explicitly preserves Personal Injury / Medical Monitoring claims. | pp. 26-27 & n.21 |
| | Issues she had with the replacement devices are not accounted for. | Settlement and FDA-overseen Recall are separate programs; Settlement is about the Recalled Devices, not the Remanufactured Devices. | pp. 46-48 & n.53 |
| 47 | Objects because the claim process is too hard to understand; since he returned his Device, Philips has all his information and should just send him a check. | Settlement offers a streamlined claim process that provides automatic Device Payment and Return Awards to Class Members, like this Objector, who registered and returned their Recalled Devices; objector will receive a check unless he elects another form of payment. | pp. 44-45 & n.49, n. 50 |
| 48 | Settlement Award is inadequate given the amount he paid for his DS Go; does not know "if this settlement replaces what [he] was promised" by Philips RS. | Conclusory objection that "it's just not enough" money is insufficient; Objector complaining about the separate Recall, not the Settlement; users have option under Recall of receiving Recall compensation in lieu of waiting for a replacement device. | pp. 29-32 & n.26; pp. 47-48 & n.54 |
| 49 | Settlement is not sufficient to purchase a Replacement Device for the DS Go; dissatisfied with the Recall process | Conclusory objection that "it's just not enough" money is insufficient; users have option under Recall of receiving Recall compensation in lieu of waiting for a replacement device; objector complaining about the separate Recall, not the Settlement. | pp. 29-32 & n.26; pp. 46-48 & n.53 |

| 50 | Allocation between Device Payment Fund and Device Replacement Fund is unfair because merely owning or using a Recalled Device does not mean the Class Member suffered economic loss but those who replaced their Devices did, so Device Replacement should be uncapped and fully reimburse cost of replacing Recalled Device. | Negotiated allocation among User Awards according to theory of the case is not unfair just because not everyone is eligible for every award. | pp. 36-37 & n.34 |
|---|---|---|---|
| | Award insufficient. | Conclusory objection that "it's just not enough" money is insufficient. | pp. 29-32 & n.26 |
| 52 | Device should be completely (and immediately) replaced at no cost.<br><br>General grievance with the Recall process. | Settlement and FDA-overseen Recall are separate programs; objector complaining about the separate Recall, not the Settlement. | pp. 46-48 & n.53 |
| 53 | Insufficient compensation for personal injuries that were caused or exacerbated by continued use throughout the Recall. | Irrelevant – Settlement explicitly preserves Personal Injury / Medical Monitoring claims; Settlement and FDA-overseen Recall are separate programs. | pp. 26-27 & n.21; pp. 46-48 & n.53 |
| 54 | Settlement doesn't provide for compensation for "personal injury." | Irrelevant – Settlement explicitly preserves Personal Injury / Medical Monitoring claims. | pp. 26-27 & n.21 |
| | Dissatisfied with the Recall. | Settlement and Recall are separate programs; objector complaining about the separate Recall, not the Settlement. | pp. 46-48 & n.53 |
| 55 | Insufficient amount to compensate class members for their injuries caused by failure of Philips to remove the Devices from the market after Philips knew of the problems. | To the extent the objection is because Settlement does not sufficiently compensate for personal injuries, it is irrelevant – Settlement explicitly preserves Personal Injury / Medical Monitoring claims. | pp. 26-27 & n.21 |

|  |  | To the extent objection is based on out-of-pocket expenses incurred, it is a variation of the "it's just not enough" money objection and is insufficient. | pp. 29-32 & n.26 |
|  | Philips should pay more for its actions. | Conclusory objection is insufficient. | pp. 27-28 & n.23 |
| 56 | Settlement does not adequately compensate for physical injuries. | Irrelevant – Settlement explicitly preserves Personal Injury / Medical Monitoring claims. | pp. 26-27 & n.21 |
|  | Dissatisfaction with the Recall. | Settlement and Recall are separate programs; objector complaining about the separate Recall, not the Settlement. | pp. 46-48 & n.53 |
| 58 | Unfair that Device Replacement Award is paid only to Users who purchased a replacement device on or after June 14, 2021 and prior to the Execution Date. | Cutoff date was a reasonable, negotiated term to guard against gamesmanship; does not make Settlement unfair.<br><br>Nevertheless, the Philips Defendants have agreed permit this User to submit a claim for a Device Replacement Award. | p. 37 & n.35 |
| 60 | Settlement process is "unworkable." Had hard time getting information he needed from Philips and Settlement Administrator and then got error messages when tried to file Device Replacement Award form. As a result, he has $849 in Replacement costs that he cannot get reimbursed. | Objection is insufficient in light of the fact that Angeion sent notice to more than 5 million Class Members and received more than 250,000 calls, emails, and letters (Angeion Decl. ¶ 39), but only two Users objected to its performance and only a few to the Settlement Website, claims process, etc. | p. 45 & n.52 |

| 62 | Settlement Award is inadequate in that it does not compensate for personal injury. | Irrelevant – Settlement explicitly preserves Personal Injury / Medical Monitoring claims. | pp. 26-27 & n.21 |
|---|---|---|---|
| | Remanufactured Device is defective. | Settlement is only about Recalled Devices, not Remanufactured Devices; objector complaining about the separate Recall, not the Settlement. | p. 27 & n.22; pp. 46-48 & n.53 |
| | Requiring return of the device for $100 is not justified. | Conclusory objection that "it's just not enough" money is insufficient; Settlement and FDA-overseen Recall are separate programs. | pp. 27-28 & n.23; pp. 46-48 & n.53 |
| | Objects to returning Recalled Device assuming that Philips is trying to lose evidence that they caused cancer or other diseases. | Preservation Registry is available through the Settlement Website for anyone who wants to return their device but have it preserved for litigation. | pp. 35-36 & n.32 |
| 63 | Objects to the cutoff date for Replacement Awards being September, 7, 2023, before the Settlement was made public. | Cutoff date was a reasonable, negotiated term to guard against gamesmanship; does not make Settlement unfair. | pp. 37 & n.35 |
| | Dissatisfied with Recall and delay of receipt of new DS Go. | Objector complaining about the separate Recall, not the Settlement; users have option under Recall of receiving Recall compensation in lieu of waiting for a replacement device. | pp. 46-48 & n.53, n.54 |

| 64 | Settlement Award is inadequate because the amount is insufficient. He paid $987.48 and is only getting $207.43 if he returns the device. | Variation of "it's just not enough" money objection is insufficient. | pp. 29-32 & n.26 |
|---|---|---|---|
| | He was not helped by insurance unlike many other people so isn't fair that Device Replacement Award doesn't fully compensate him. | His objection is to sufficiency of the Settlement rather than adequacy of counsel; conclusory fee objection is insufficient even if criticism were true; objection does not. undermine Court's finding regarding adequacy of counsel. | pp. 36-37 & n.34 |
| | Previously was offered $500 or a replacement device but has been waiting for a replacement DS Go for 2 years. | Objector complaining about the separate Recall, not the Settlement; users have option under Recall of receiving Recall compensation in lieu of waiting for a replacement device. | pp. 46-48 & n.53, n.54. |
| 65 | Amount of the Settlement award is insufficient because it does not reimburse him for having a CPAP repair company service his Recalled Device repaired in Oct. 2017. | Variation of "it's just not enough" money objection is insufficient. | pp. 29-32 & n.26 |
| | Recall has been handled unfairly. | Settlement and FDA-overseen Recall are separate programs; objector complaining about the separate Recall, not the Settlement.. | pp. 46-48 & n.53 |
| 66 | Settlement award insufficient because it does not provide relief for future personal injury or medical costs. | Irrelevant – Settlement explicitly preserves Personal Injury / Medical Monitoring claims. | pp. 26-27 & n.21 |
| | Objects to Service Awards but appears to confuse "Service Awards" with compensation to Class Members. | General objection to Service Awards seems to be an objection to compensation to Class Members | p. 49 & n.59 |

| | | | |
|---|---|---|---|
| | beyond reiterating dissatisfaction with Philips' alleged conduct. | | |
| | CPAP made breathing worse not better. | Irrelevant – Settlement explicitly preserves Personal Injury / Medical Monitoring claims. | pp. 26-27 & n.21 |
| 68 | Device Replacement Award is unfair to those who discarded Recalled Device; no one instructed her keep Device and now can't be reimbursed for $751.09 spent on Replacement. | This objection is a mistaken understanding of the Settlement terms. Only have to return the Recalled Device to get a Replacement Award if they still have the Recalled Device. | pp. 38-39 & n.37 |
| 72 | Objects because the sound abatement foam causes serious injury and she will need medical monitoring. | Irrelevant – Settlement explicitly preserves Personal Injury / Medical Monitoring claims. | pp. 26-27 & n.21 |
| 73 | Philips has not honored the warranties on the Remanufactured Device and there is no way to enforce Extended Warranty – Court should impose strict guidelines and impose fines if Philips does not comply. | Breach of warranty action is available to enforce Extended Warranty and is not released in Settlement. | p. 26 & n.20 |
| | Concerns about health effects of Remanufactured Devices. | Irrelevant – Settlement explicitly preserves Personal Injury / Medical Monitoring claims and Settlement is about the Recalled Devices, not the Remanufactured Devices. | p. 27 & n.22 |
| | Recall not satisfactory. | Settlement and FDA-overseen Recall are separate programs; objector complaining about the separate Recall, not the Settlement. | pp. 46-48 & n.53 |
| 74 | Amount of settlement award is insufficient to cover actual financial losses. | Variation of "it's just not enough" money objection is insufficient. | pp. 26-32 & n.26 |
| | Requiring return of device to obtain the Device Return Award is unreasonable because they need the machine for future personal injury claim. | Preservation Registry is available through the Settlement Website for anyone who wants to return their device but have it preserved for litigation. | pp. 35-36 & n.32 |

| 76 | He (and many others) no longer have the Recalled Device so cannot receive Device Return Award. | Device Return Award provides incentive to send Recalled Devices to Philips RS, thereby removing the Recalled Device from circulation; Settlement is not unfair just because not everyone can claim every benefit; eligible for Device Payment Award. | pp. 8; 35-36 & n.33 |
| 77 | Confirmation process for Users who do not return their device is burdensome; confirmation process for Users is unfair because not required from other Users (those returning Devices). | Information for Users not returning devices needs to be updated because Recall Registration began nearly 3 years ago; this process allows Users to elect a payment method (e.g., Zelle). Confirmation is a quick and simple process that doesn't require submitting the additional information requested in standard Claim Form. Philips knows it is communicating with the right person when a Recalled Device has been returned to it. | pp. 43-44 & n.47, n. 48 |
| | Confirmation process flawed because Notice envelope has confirmation ID number and if a User misplaces the envelope they can't complete Form. | Confirmation ID number is not required, a User can use their Registration number or other information. | pp. 43-44 & n.47, n. 48 |
| | Accelerated Implementation Option (AIO) is unfair because it is not available to Users who have not returned and cannot return their Recalled Device. | This timing of payments (after final disposition of the litigation) is typical in a class action. Users who get Accelerated Implementation Option (AIO) are getting an additional benefit because: it incentivizes return of Devices, and is in exchange for valuable consideration (*i.e.*, Philips pays on accelerated schedule in exchange for return of Device and Users' releases; and the payments and releases are irreversible, even if Settlement is overturned on appeal.). In addition, Settlement is not unfair simply because not everyone gets to access every benefit. | pp. 37-38 & n.36 |

| | | |
|---|---|---|
| Notice and website are inadequate because instructions are contradictory and incomplete | Notice and website were clear, approved by Court, and contained information needed to meet deadlines. | pp. 45-46 & n.51 |
| Class Counsel should not be paid before the Claims Deadline if Class Members are not getting paid before the Claims Deadline. | No reason to delay payment to Class Counsel because reasonableness of the Fee Award is not based solely upon "the amount actually paid to the class" and instead can be evaluated by reference to the "amounts made available" to the class by the defendant. Here we know that defendants have made half a billion dollars in non-reversionary funds available. In addition, this objection does not argue that the size of the current fee request is unreasonable. | pp. 40-41 & n.40, n.41, n.42, n.43 |
| Timing of distribution to Payers is unfair because they should be paid promptly after claim approval and not delayed. | This timing of this distribution is typical in a class action. Users do not have standing to object to provisions impacting only Payers. | p. 37 & n.36 |
| Reminder notice should be sent with respect to uncashed checks and funds from uncashed checks should be distributed to Class Members not returned to Philips. | This is an effort to rewrite the Settlement Agreement. The Settlement Agreement provides half a billion dollars in non-reversionary funds and the reversion in SA § 6.10.2 applies only to uncashed checks and only if Philips pays *Additional* Amounts to replenish the Device Payment or Device Return Funds. In addition, there is a procedure for uncashed checks in the Settlement Agreement, SA, §§ 6.9-6.10, and efforts were made to avoid the number of checks by offering alternate payment methods, *e.g.,* SA, Ex. 3(a), at 17. | p. 48 & n.55 |
| Angeion should be required to run addresses against the National Change of Address database before mailing checks. | Angeion already did this before mailing the Notices. | Weisbrot Decl. ¶¶ 11-12 |

| | | |
|---|---|---|
| Unfair that Release is effective on the Effective Date and it should be conditioned on Philips completing funding of the various awards. | Trying to rewrite Settlement Agreement. Philips must make initial funding payments within 14 days of Final Approval. In addition, Settlement Class Representatives may seek enforcement of the Settlement in the MDL Court if Philips fails to compete funding. | pp. 49 & n.62 |
| Unfair because right to terminate not conditioned on number of opt-outs and doesn't require Philips to pay admin expenses or otherwise return Class to position it was in prior to Settlement. | Moot. | p. 48 & n.56 |
| Objection process unfair because objections that do not fully comply with format required by Settlement Agreement are deemed invalid and waived. | All objections received were addressed regardless of whether they were compliant with the requirements. | p. 40 & n.33 |
| Objection process burdensome because objections have to be mailed, not electronically submitted. | This process was approved by the Court and is not onerous. | PAO § A.2 |
| Objection process unfair because doesn't require Responses to be sent to Objector. | The Responses to the objections, part of the Final Approval Brief, is posted on the settlement website. | p. 48 & n.57 |
| There should be a way to attend the Final Approval Hearing at no cost (*e.g.* Zoom) | Moot; the Court has ruled on this issue. | n/a |
| Notice to Objectors should be required in event the Final Hearing is continued. | Moot; the hearing has not been continued. Future changes to Important Dates will be included on the settlement website. | n/a |
| Any difference between the Court's Fee Award and Counsel's Fee request should be distributed *pro rata* to the Class. It should not revert to Philips. | Attorneys' fees are paid separately by Philips and Philips' User and Payer payment obligations are unaffected by the amount of the Attorneys' Fee Award. The Philips Defendants agreed to pay fees and costs awarded by the Court up to $95 million, not $95 million irrespective of the Court's award. | p. 42 & n.45 |

46

| 78 | **Later elected to opt out rather than object.** | Inadequate compensation for physical injuries | Irrelevant – Settlement explicitly preserves Personal Injury / Medical Monitoring claims | pp. 26-27 & n.21 |
|---|---|---|---|---|
| | | May need his Device for litigation. | Preservation Registry is available through the Settlement Website for anyone who wants to return their device but have it preserved for litigation. | pp 35-36 & n.32 |