# IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| IN RE: PHILIPS RECALLED CPAP, BI-LEVEL PAP, AND MECHANICAL VENTILATOR PRODUCTS LITIGATION<br><br>This Document Relates to:<br>All Actions Asserting Claims for Medical Monitoring | Master Docket: Misc. No. 21-mc-1230-JFC<br><br>MDL No. 3014 |

**BRIEF IN SUPPORT OF UNOPPOSED MOTION OF PROPOSED SETTLEMENT CLASS REPRESENTATIVES FOR PRELIMINARY APPROVAL OF CLASS SETTLEMENT AGREEMENT AND RELEASE OF MEDICAL MONITORING CLAIMS AND TO DIRECT NOTICE TO THE PROPOSED SETTLEMENT CLASS**

**TABLE OF CONTENTS**

Table of Authorities ......................................................................................................... iii

I.      INTRODUCTION ............................................................................................ 1

II.     HISTORY OF THE LITIGATION AND PROPOSED CLASS SETTLEMENT ........... 4

     A.     The Litigation of the Claims for Medical Monitoring ........................................... 4

     B.     Motions to Dismiss ...................................................................................... 5

     C.     Discovery ...................................................................................................... 8

     D.     Mediation and Settlement ...................................................................... 8

III.    NOTABLE SETTLEMENT TERMS ................................................................. 9

     A.     Proposed Settlement Class ........................................................................... 9

     B.     Funding for the Equitable Relief in the Settlement ............................................. 10

     C.     Medical Advancement Program Benefits ......................................................... 10

     D.     Releases ...................................................................................................... 12

     E.     Attorneys' Fees, Costs and Expenses, and Service Awards ................................. 12

     F.     The Notice Plan ........................................................................................... 13

IV.    ARGUMENT ................................................................................................. 14

     A.     Legal Standards for Settlement Approval ......................................................... 14

     B.     Preliminary Approval of the Proposed Settlement Is Warranted ......................... 17

          1.     Settlement Class Counsel and the Class Representatives Have Adequately Represented the Class ......................................................... 18

          2.     The Proposed Settlement Was Negotiated at Arm's Length .................. 18

          3.     The Relief Provided to the Settlement Class Is Adequate, Particularly in Light of the Substantial Risks of Continued Litigation ......................................................................................... 19

               a.     Complexity, Expense, Delay, and Risks of Continued Litigation ......................................................................... 19

               b.     Sufficient Discovery and Stage of the Proceedings ................... 20

               c.     Likelihood of Maintaining Class Certification ........................... 21

|  |  | d. | Reasonableness of the Settlement | 22 |
|  |  | e. | The Provisions for Attorneys' Fees Are Reasonable | 24 |
|  | 4. |  | The Proposed Settlement Treats Settlement Class Members Equitably Relative to Each Other | 25 |
| C. |  |  | Certification of the Proposed Class for Purposes of Settlement Only Is Appropriate | 25 |
|  | 1. |  | Rule 23(a) Factors | 26 |
|  |  | a. | Numerosity Under Rule 23(a)(1) | 26 |
|  |  | b. | Commonality Under Rule 23(a)(2) | 26 |
|  |  | c. | Typicality Under Rule 23(a)(3) | 27 |
|  |  | d. | Adequacy of Representation Under Rule 23(a)(4) | 28 |
|  | 2. |  | The Settlement Class Should Be Certified Under Rule 23(b)(2) | 29 |
|  |  | a. | The Relief Sought Is Equitable | 29 |
|  |  | b. | Defendants "Acted or Refused to Act on Grounds that Apply Generally to the Class" | 32 |
|  |  | c. | The Equitable Relief Is "Appropriate Respecting the Class as a Whole" | 32 |
|  |  | d. | The Settlement Class Satisfies the "Cohesiveness" Requirement | 33 |
| D. |  |  | The Notice Program Satisfies Rule 23 and the Requirements of Due Process | 34 |
|  | 1. |  | The Proposed Notice Plan Is Reasonable and Appropriate | 34 |
|  | 2. |  | The Proposed Notice Clearly Explains Settlement Class Members' Rights | 36 |
|  | 3. |  | The Proposed Notice Administrator Is Qualified | 37 |
| E. |  |  | A Final Fairness Hearing Should Be Scheduled | 37 |
| V. |  |  | CONCLUSION | 40 |

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Adam X. v. New Jersey Dep't of Corr.*,
  2022 WL 621089 (D.N.J. Mar. 3, 2022)..........................................................................14, 25

*Atlantic Coast Line R.R. v. Brotherhood of Locomotive Eng'rs*,
  398 U.S. 281 (1970)................................................................................................................39

*Barnes v. Am. Tobacco Co.*,
  161 F.3d 127 (3d Cir. 1998)...................................................................................................29

*Berry v. Schulman*,
  807 F.3d 600 (4th Cir. 2015) ...................................................................................26, 30, 31

*Bland v. PNC Bank, N.A.*,
  2016 WL 10520047 (W.D. Pa. Dec. 16, 2016)..............................................................33, 34

*Bowling v. Pfizer, Inc.*,
  143 F.R.D. 141 (S.D. Ohio 1992) ..........................................................................................23

*Calhoun v. Invention Submission Corp.*,
  2023 WL 2411354 (W.D. Pa. Mar. 8, 2023) ......................................................20, 22, 26, 28

*Carlough v. Amchem Prods., Inc.*,
  10 F.3d 189 (3d Cir. 1993)......................................................................................................39

*Cole's Wexford Hotel, Inc. v. UPMC & Highmark Inc.*,
  2016 WL 6919773 (W.D. Pa. Apr. 6, 2016)...........................................................................14

*Cole's Wexford Hotel, Inc. v. UPMC & Highmark Inc.*,
  2016 WL 6236892 (W.D. Pa. July 29, 2016) ...................................................................17, 18

*Collier v. Montgomery County Housing Auth.*,
  192 F.R.D. 176 (E.D. Pa. 2000).........................................................................................23, 34

*Commissioners of Pub. Works of City of Charleston v. Costco Wholesale Corp.*,
  2024 WL 1004697 (D.S.C. Mar. 8, 2024) ...............................................................................33

*Copley v. Evolution Well Servs. Operating LLC*,
  2023 WL 1878581 (W.D. Pa. Feb. 10, 2023) ..........................................................................16

*Douglass v. Optavia LLC*,
  2022 WL 4281546 (W.D. Pa. Sept. 14, 2022)..............................................................14, 15, 17

*Ehrheart v. Verizon Wireless*,
   609 F.3d 590 (3d Cir. 2010)............................................................. 14

*Giovanni v. United States Dept. of Navy*,
   906 F.3d 94 (3d Cir. 2018)............................................................... 29

*Girsh v. Jepson*,
   521 F.2d 153 (3d Cir. 1975)............................................................. 16

*Hickton v. Enterprise Rent-A-Car Company*,
   2013 WL 12137092 (W.D. Pa. Apr. 29, 2013)................................. 14

*Hyland v. Navient Corp.*,
   48 F.4th 110 (2d Cir. 2022) ............................................... 23, 26, 30

*In re All-Clad Metalcrafters, LLC v. Cookware Mktg. & Sales Practices Litig.*,
   2023 WL 2071481 (W.D. Pa. Feb. 17, 2023) .............................. 18, 20

*In re Baldwin-United Corp.*,
   770 F.2d 328 (2d Cir. 1985)............................................................. 39

*In re Budeprion XL Mktg. & Sales Litig.*,
   2012 WL 2527021 (E.D. Pa. July 2, 2012)................................ passim

*In re Chinese-Manufactured Drywall Prods. Liab. Litig.*,
   2011 WL 2313866 (E.D. La. June 9, 2011)..................................... 39

*In re Corrugated Container Antitrust Litig.*,
   659 F.2d 1332 (5th Cir. 1981) ........................................................ 39

*In re Diet Drugs*,
   1999 WL 673066 (E.D. Pa. Aug. 26, 1999) ............................... 29, 34

*In re Diet Drugs*,
   2000 WL 1222042 (E.D. Pa. Aug. 28, 2000) ............................. 22, 30

*In re Diet Drugs*,
   282 F.3d 220 (3d Cir. 2002)............................................................ 39

*In re Google Inc. Cookie Placement Consumer Priv. Litig.*,
   934 F.3d 316 (3d Cir. 2019)....................................................... 14, 17

*In re Joint E. & S. Dist. Asbestos Litig.*,
   134 F.R.D. 32 (E. & S.D.N.Y. 1990)................................................ 39

*In re Nat. Football League Players' Concussion Inj. Litig.*,
   307 F.R.D. 351 (E.D. Pa. 2015) ...................................................... 23

*In re Nat'l Football League Players Concussion Injury Litig.*,
   775 F.3d 570 (3d Cir. 2014)............................................................................... 17, 38

*In re Nat'l Football League Players Concussion Injury Litig.*,
   821 F.3d 410 (3d Cir. 2016)............................................................................... 17, 34

*In re Oil Spill by Oil Rig Deepwater Horizon*,
   295 F.R.D. 112 (E.D. La. 2013)................................................................................ 24

*In re Philips Recalled CPAP, BI-LEVEL PAP, and Mechanical Ventilator Prods. Litig.*,
   2024 WL 1810190 (W.D. Pa. Apr. 25, 2024)................................................... passim

*In re Prudential Ins. Co. Am. Sales Practice Litig.*,
   148 F.3d 283 (3d Cir. 1998)................................................................ 16, 21, 24, 27

*In re Railway Indus. Empl. No-Poach Antitrust Litig.*,
   2020 WL 13852931 (W.D. Pa. Aug. 26, 2020) ..................................................... 17

*In re Rent-Way Sec. Litig.*,
   305 F. Supp. 2d 491 (W.D. Pa. 2003)...................................................................... 37

*In re Three Mile Island Litig.*,
   557 F. Supp. 96 (M.D. Pa. 1982) ............................................................................ 23

*In re Warfarin Sodium Antitrust Litig.*,
   391 F.3d 516 (3d Cir. 2004)..................................................................... 14, 21, 22

*In re Welding Fume Prods. Liab. Litig.*,
   245 F.R.D. 279 (N.D. Ohio 2007) ........................................................................... 21

*Legere-Gordon v. Firstcredit Inc.*,
   2021 WL 276695 (D. Idaho Jan. 26, 2021) ............................................................ 30

*Liberty Res., Inc. v. City of Philadelphia*,
   2023 WL 3204018 (E.D. Pa. May 1, 2023) ................................................ 25, 33, 35

*Marshall v. Nat'l Football League*,
   787 F.3d 502 (8th Cir. 2015) .................................................................................. 23

*Murphy v. Charles Tyrwhitt, Inc.*,
   2020 WL 8513583 (W.D. Pa. Nov. 25, 2020) ................................................. 25, 33

*Murphy v. Eyebobs, LLC*,
   638 F. Supp. 3d 463 (W.D. Pa. 2021)................................................................ 14, 32

*Murphy v. Le Sportsac, Inc.*,
   2023 WL 375903 (W.D. Pa. Jan. 24, 2023)..................................................... passim

*Murphy v. The Hundreds Is Huge, Inc.*,
    638 F. Supp. 3d 486 (W.D. Pa. 2022)..................................................... 16, 27, 29, 32

*Redland Soccer Club, Inc. v. Department of the Army*,
    696 A.2d 137 (Pa. 1997) ............................................................................... 29

*Reinig v. RBS Citizens, N.A.*,
    912 F.3d 115 (3d Cir. 2018)........................................................................... 27

*Reyes v. Netdeposit, LLC*,
    802 F.3d 469 (3d Cir. 2015)........................................................................... 27

*Rodriguez v. Nat'l City Bank*,
    726 F.3d 372 (3d Cir. 2013)........................................................................... 27

*Sourovelis v. City of Phila.*,
    515 F. Supp. 3d 343 (E.D. Pa. 2021) ............................................................ 34

*Talone v. Am. Osteopathic Ass'n*,
    2018 WL 6318371 (D.N.J. Dec. 3, 2018) ...................................................... 33

*Torres v. BrandSafway Indus. LLC*,
    2023 WL 346667 (W.D. Pa. Jan. 20, 2023)................................................... 15

*Wetzel v. Liberty Mut. Ins. Co.*,
    508 F.2d 239 (3d Cir. 1975)........................................................................... 28

*Wood v. Saroj & Manju Inves. Phila. LLC*,
    2020 WL 7711409 (E.D. Pa. Dec. 28, 2020) ................................................ 39

## Unreported Opinions

*Thomas v. Financial Corp. of America*,
    No. 19-cv-152, at ECF 86, ¶ 14 (N.D. Tex. July 13, 2020) ......................... 31

## Statutes

28 U.S.C. §§ 1651(a) and 2283 ............................................................................. 39

Section 468B of the Internal Revenue Code.......................................................... 10

**Rules**

Fed. R. Civ. P. 12(b)(2) ................................................................................................ 5

Fed. R. Civ. P. 23(a) ................................................................................ 17, 26, 27, 28

Fed. R. Civ. P. 23(b)(2) ..................................................................................... passim

Fed. R. Civ. P. 23(c)(2) ................................................................................ 13, 34, 35

Fed. R. Civ. P. 23(e)(1) ..................................................................................... passim

Fed. R. Civ. P. 23(e)(2) ..................................................................................... passim

Rule 23(e)(3) ............................................................................................................. 15

**Regulations**

45 CFR § 164.508 ................................................................................................ 11, 12

**Other Authorities**

William B. Rubenstein, 2 *Newberg and Rubenstein on Class Actions* § 4:29 ............................ 32

William B. Rubenstein, 2 *Newberg and Rubenstein on Class Actions* § 4:36 ............................ 36

William B. Rubenstein, 4 *Newberg and Rubenstein on Class Actions* § 13:50 ........................... 18

Manual for Complex Litigation, Fourth § 21.312 (2004) ............................................ 36

Manual for Complex Litigation, Fourth § 21.632 (2004) ............................................ 17

Manual for Complex Litigation, Fourth §§ 21.633 (2004) ........................................... 38

Manual for Complex Litigation, Fourth §§ 21.634 (2004) ........................................... 38

# I.    <u>INTRODUCTION</u>

Proposed Settlement Class Representatives seek preliminary approval of the Class Settlement Agreement and Release of Medical Monitoring Claims against the Philips Defendants[1] and other Released Parties and conditional certification of a Settlement Class under Rule 23(b)(2). The Settlement entails payment of $25 million by the Philips Defendants that will be used to fund significant equitable relief for all U.S. users of the Recalled Devices through Medical Advancement Program ("MAP") Benefits[2] that include (i) funding of independent medical research relating to the advancement of public knowledge regarding the detection, diagnosis and/or treatment of Qualifying Injuries; (ii) creation of a research registry to which Settlement Class Members can submit authorizations for the release and disclosure of medical information for purposes of review and evaluation in connection with the medical research, and (iii) creation of an interactive website for purposes of increasing access to and an understanding of Relevant Medical Information and Guidance concerning the long-term health effects, if any, of the use of the Recalled Devices. SA § 3. The Settlement is intended to provide valuable information, education, and guidance to members of the Settlement Class for fifteen years. *Id*.

This Settlement was negotiated in good faith and at arm's-length by experienced counsel with the assistance of the highly experienced, Court-appointed Settlement Mediator, Hon. Diane M. Welsh (Ret.).[3] It will provide the Settlement Class with meaningful benefits. And when

---

[1] The "Philips Defendants" are, collectively, Philips RS North America LLC ("Philips RS"), Koninklijke Philips N.V. ("KPNV"), Philips North America LLC, Philips Holding USA, Inc., and Philips RS North America Holding Corporation. The Released Parties also include, among others, Defendants Polymer Technologies, Inc. and Polymer Molded Products LLC.

[2] Unless otherwise noted, capitalized terms have the same meaning herein that they have in the proposed Class Settlement Agreement and Release of Medical Monitoring Claims, attached hereto as Ex. "A" ("Settlement Agreement" or "SA"), at § 1.

[3] The Declaration of Proposed Settlement Class Counsel in Support of Proposed Medical Monitoring Claims Settlement dated May 9, 2024, is attached hereto as Ex. "B" ("Counsel Decl.").

weighing the proposed equitable relief against the substantial hurdles, risks, costs, and delay from continuing to litigate the claims for medical monitoring relief, the Settlement is an excellent result. The risks of continuing to litigate those claims include the potential for: adverse rulings with respect to the pending Motion to Dismiss the Medical Monitoring Complaint[4] particularly in light of the Special Master's initial Report & Recommendation; adverse rulings with respect to experts on threshold levels of exposure and causation; an inability to find a meaningful medical monitoring testing protocol given that there is no "signature" injury and there were numerous potential injuries identified in the Recall notice; and an adverse jurisdictional ruling with respect to the Philips' parent entity KPNV, putting in doubt the availability of funding or other relief for any medical monitoring program. Moreover, certification of a nationwide class, or even numerous state subclasses, would be challenging in the context of a contested motion for certification of a litigation class, particularly in light of the lack of a signature injury, individualized circumstances relating to Class Members' use of the Recalled Devices, and myriad differences among governing state laws. The Settlement avoids all of these risks and will provide considerable, tangible benefits to the entire Settlement Class.

As the Court is well aware, this litigation relates to approximately 10.8 million CPAP, BiPAP, and ventilator devices (the "Recalled Devices") that were recalled in June 2021 because they contained polyester polyurethane ("PE-PUR") foam that was subject to degradation and off-gassing of toxic fumes (the alleged "Defect"). The Medical Monitoring Complaint addresses claims by a proposed nationwide  class of users who allegedly were exposed to toxins through their use of a Recalled Device but who did not, as of yet, manifest a physical injury. *E.g.*,

---

[4] The operative complaint is the Consolidated Second Amended Class Action Complaint for Medical Monitoring and Demand for Jury Trial (ECF 815) (the "Medical Monitoring Complaint" or "Complaint").

Complaint ¶¶ 25-88, 379-86. Since the filing of the Complaint, significant discovery and briefing on the Motion to Dismiss provided counsel with insights into the substantial risks facing Plaintiffs seeking medical monitoring relief, both on the merits and at class certification. Counsel Decl. ¶¶ 2-6.

After nearly three years of discovery, motion practice, and hard-fought litigation, the Parties negotiated a proposed Settlement in the form of broad equitable relief that will provide cohesive benefits to the Settlement Class under Rule 23(b)(2). All individuals who used a Recalled Device were exposed to the possibility of inhaling toxic fumes as a result of the alleged Defect, presenting concerns over a potential increased risk of disease and impact on their long-term health. The proposed Medical Advancement Program will provide benefits to every member of the Settlement Class, which was a central principle leading to this Settlement.

The Philips Defendants have agreed to pay $25 million to fund the equitable MAP Benefits for a period of fifteen years. Importantly, because the Recalled Devices are prescription medical devices, all Settlement Class Members have received their Recalled Device by prescription of a physician, and their health is already being monitored by their physician. The benefits are meaningful because they provide Settlement Class Members, along with their prescribing and treating physicians, with an opportunity to assess their risk of injury, or lack of risk of injury, in light of the most up-to-date and relevant science and guidance related to any medical conditions that may result from use of the Recalled Devices. This type of program that provides equitable benefits to every member of the Settlement Class with no direct monetary payment to Class Members is appropriate for certification under Fed. R. Civ. P. 23(b)(2).

This Settlement is also an excellent complement to the resolution of the other claims in this litigation. The Economic Loss Settlement received final approval on April 25, 2024 (ECF 2736),

and the private Personal Injury Settlement Agreement was entered into on May 9, 2024. Members of the Settlement Class are also members of the Economic Loss Settlement Class, and therefore eligible for significant cash payments and Extended Warranties. In addition, their ability to maintain Personal Injury Claims is not affected by the proposed Medical Monitoring Settlement, nor is their ability to bring individual claims for medical monitoring monetary relief on their own behalf. SA § 4. Moreover, the MAP Research complements the testing that the Philips Defendants are required to perform as part of the Consent Decree entered into with the Department of Justice on behalf of the Food & Drug Administration. *See, e.g.*, *id.* § 3.3.2.

Taking into account all of the relevant facts and circumstances, Settlement Class Counsel respectfully submit that the Settlement should be preliminarily approved under Fed. R. Civ. P. 23(e)(1)(B) because the Court will likely be able to find after a Final Fairness Hearing that it is fair, reasonable, and adequate. The Court should also find that it will likely be able to certify the proposed Settlement Class to which the Parties have stipulated, and the Court should direct that appropriate Notice be disseminated to the proposed Settlement Class in the manner proposed.

## II.    HISTORY OF THE LITIGATION AND PROPOSED CLASS SETTLEMENT

### A.    The Litigation of the Claims for Medical Monitoring

On October 17, 2022, Plaintiffs filed the Medical Monitoring Complaint on behalf of themselves and all others similarly situated. Plaintiffs alleged that the PE-PUR foam in the Recalled Devices is susceptible to hydrolysis, causing it to degrade and expose patients to toxic particles and VOCs, *e.g.*, Complaint ¶¶ 6, 9, 11, some of which are known or suspected carcinogens ("Foam Toxins"), *id.* ¶¶ 194-227. As a result, Plaintiffs alleged that users had inhaled and/or ingested the Foam Toxins, putting users at an increased risk of illness and disease, making it medically necessary that they undergo monitoring, diagnostic testing, clinical examinations, and consultations for the early detection of such illness and disease. *See, e.g.*, *id.* ¶¶ 367-86.

4

Accordingly, Plaintiffs sought the costs of such medical monitoring or, in the alternative, an award of the reasonable and necessary costs for the establishment of a court-supervised program of medical monitoring and diagnostic testing through equitable relief. *See id.* ¶ 386; *see also, e.g.*, ¶¶ 451, 464, 478, 497.

Plaintiffs alleged claims for medical monitoring as an independent cause of action, *id.*, ¶¶ 481-99, as well as a remedy for other state law claims, including traditional tort claims, and also claims for violations of state product liability laws and breach of warranties. Plaintiffs sought certification of a putative nationwide class (under Pennsylvania law), *id.*, ¶ 387, or alternatively, individual state law subclasses under the laws of 42 jurisdictions, *id.*, ¶¶ 389-428.

### B. Motions to Dismiss

The Philips Defendants' parent entity, KPNV, filed a motion to dismiss the Medical Monitoring Complaint for lack of personal jurisdiction pursuant to Federal Rule of Civil Procedure 12(b)(2) (the "Jurisdictional Motion") (ECF 1353) that was considered in conjunction with overlapping Rule 12(b)(2) motions to dismiss the Economic Loss Complaint (ECF 913) and Master Personal Injury Complaint (ECF 1354). The Jurisdictional Motion was subject to jurisdictional discovery, renewed briefing (ECF 2173/2186, 2204/2206), an evidentiary hearing, and the submission of competing proposed findings of fact and conclusions of law (ECF 2388/2389, 2392/2394). In addition, the remaining Philips Defendants, with the exception of Philips RS, filed a motion to dismiss the Medical Monitoring Complaint that implicated similar issues with respect to direct liability and vicarious liability that were at issue in the Jurisdictional Motion (ECF 1357, 1359, 1746/1747, 1851/1935). The Jurisdictional Motion and the motion of the other Philips Defendants are currently pending before the Court.

In addition, Philips RS filed a Motion to Dismiss the Medical Monitoring Complaint for failure to state a claim pursuant to Rule 12(b)(6) (ECF 1351) that was joined by the other Philips

Defendants (ECF 1359 at 4 n.3). Philips RS made numerous challenges to Plaintiffs' claims for medical monitoring relief, including the viability of medical monitoring as an independent cause of action in 5 of the 11 jurisdictions at issue (ECF 1352 at 25) and the legal sufficiency of numerous causes of action for which medical monitoring could be a remedy (*id.* at 8-9).

Next, Philips RS focused on attacking the threshold elements of medical monitoring, arguing that Plaintiffs did not adequately allege exposure to a toxic substance, did not allege exposure to a toxic substance in sufficient levels to result in an increased risk of disease, did not allege an increased risk of any particular disease, and did not present any medical monitoring program that could be designed to detect such a disease. *Id*. at 13-25. With respect to exposure, Philips argued that Plaintiffs could, at best, argue that they were "*potentially* exposed" or had "*a risk of exposure*" because the PE-PUR foam did not degrade and off-gas in all of the Recalled Devices. *Id.* at 13-14 (emphasis in original). Finally, Philips argued that Plaintiffs did not allege a present physical injury (a manifest physical injury), which it argued is required under the laws of the majority of the jurisdictions at issue, and that the allegations of subcellular injury were insufficient to state a medical monitoring claim. *Id.* at 9-13.

These issues were fully briefed and argued before Special Master Vanaskie on July 11, 2023. Plaintiffs admittedly did not allege any manifest physical injury, so the principal questions before the Special Master were whether Plaintiffs had alleged the requisite exposure to toxins, whether a given state's law required a manifest physical injury as a prerequisite to medical monitoring, and whether the subcellular injury alleged would permit medical monitoring under state law in any jurisdiction. The Parties agreed that 11 jurisdictions had no physical injury requirement (although Philips challenged one of those jurisdictions on other grounds) and Plaintiffs conceded that, for purposes of this case, medical monitoring would not be pursued in 10

jurisdictions, leaving 32 jurisdictions in dispute ("Disputed Jurisdictions").[5]

The Special Master issued a Report and Recommendation ("R&R") on September 28, 2023, recommending dismissal of Plaintiffs' claims for medical monitoring relief in 30 out of the 32 Disputed Jurisdictions. ECF 2273. The core issue was whether a present (manifest) physical injury was required in each of these jurisdictions, and whether, absent a direct ruling by a jurisdiction's highest court on the matter, Plaintiffs could recover under such laws. *See, e.g.*, R&R at 4-9. The Parties each filed objections to the R&R (ECF 2314, 2316, 2368, 2371), and the Court issued an Opinion and Order on February 14, 2024 (ECF 2521 (Opinion) / ECF 2522 (Order)).

In its Opinion, the Court remanded the matter back to the Special Master for additional proceedings, including additional briefing. ECF 2521 at 20. Among other things, the Court asked for a jurisdiction-by-jurisdiction roadmap that specified the elements of medical monitoring and related underlying causes of action for which medical monitoring was an appropriate remedy. *Id.* at 18-20. In addition, the Court articulated its view of an appropriate *Erie* analysis intended to predict state law. *Id.* at 13-16. The Court generally endorsed the Special Master's conservative approach, suggesting that for the claims to survive the Motion to Dismiss, there must be a "clear indication of state law" supporting Plaintiffs' right to recover, but also provided guidance with respect to the various sources to be considered when making such a determination. *Id.* Renewed briefing on Philips' Motion to Dismiss was ongoing at the time of Settlement.

---

[5] The Disputed Jurisdictions were: Arizona, Arkansas, Colorado, Connecticut, Delaware, Georgia, Hawaii, Idaho, Illinois, Indiana, Iowa, Kansas, Maine, Massachusetts, Minnesota, Montana, Nebraska, New Hampshire, New Jersey, New Mexico, New York, North Carolina, Ohio, Oklahoma, Oregon, Puerto Rico, Rhode Island, South Carolina, Tennessee, Texas, Virginia, Washington. Plaintiffs later conceded, however, that Delaware, New Hampshire, and North Carolina were no longer viable because of recent developments in the case law.

## C.     Discovery

The Parties have engaged in extensive discovery of the relevant facts since the outset of the litigation. Counsel Decl. ¶¶ 2, 4. The Parties have propounded and negotiated responses to requests for production of documents and interrogatories; and exchanged millions of documents on all relevant issues, including extensive testing relating to general causation, both prior to and after the Recall. *Id.* ¶ 4. The Parties have also served approximately 100 subpoenas for documents from non-parties pursuant to Rule 45 and received thousands of documents in response. *Id.* Plaintiffs have reviewed and analyzed these document productions. In addition, the Parties have taken more than 50 depositions, including those of third parties and many of the named medical monitoring Plaintiffs. *Id.*

## D.     Mediation and Settlement

The proposed Settlement is the product of an arm's-length, good faith negotiation process overseen by the Settlement Mediator, Hon. Diane M. Welsh (Ret.). The negotiations regarding the claims for medical monitoring relief were well informed due to the extensive legal briefing and analysis and discovery. *Id.* ¶¶ 2-4, 6. Settlement Class Counsel fully understood the significant risks of continuing to litigate these claims, including the following risks: not succeeding on the merits for any of the reasons advanced by the Philips Defendants in their motions; not being able to certify a litigation class; not being able to construct a meaningful medical monitoring program in the absence of a signature injury; and not being able to ensure payment for such a program from the Philips Defendants if KPNV or other non-Philips RS Defendants were dismissed on their Rule 12 challenges, including as to personal jurisdiction. *E.g.*, *id.* ¶¶ 5, 8. Further, given the individualized issues attendant to claims seeking medical monitoring relief, the Parties considered numerous factors impacting the Settlement Class as a whole to reach a resolution that makes cohesive equitable benefits available to all Settlement Class Members. *Id.* ¶ 6. On April 26, 2024,

the Parties executed a Term Sheet setting forth the general terms of the Settlement and then negotiated the terms of the Settlement Agreement. *Id.* ¶ 7. Throughout the process, the Parties focused exclusively on benefits for the Settlement Class, and there was no discussion or negotiation of attorneys' fees, costs or expenses for Settlement Class Counsel, or service awards. *Id.* ¶¶ 7, 12.

The proposed comprehensive MAP Benefits will confer significant and meaningful equitable relief upon the Settlement Class. *Id.* ¶ 9. The Settlement represents Settlement Class Counsel's best efforts and judgment after thoroughly investigating the case, and considering the uncertainty of the viability of the claims for medical monitoring relief; the difficulties in achieving and maintaining class certification; the substantial risks, burdens, delays, and costs of continued litigation, including on Fed. R. Evid. 702 motions, trial, and appeals; and the best interests of the Settlement Class. *Id.* ¶¶ 8, 11.

## III.   NOTABLE SETTLEMENT TERMS

### A.   Proposed Settlement Class

The proposed Settlement Class consists of:

> All individuals in the United States [defined as the United States of America, its Territories (American Samoa, Guam, the Northern Mariana Islands, Puerto Rico, and the U.S. Virgin Islands), and the District of Columbia], including United States citizens, United States residents, and United States military, diplomatic personnel and employees living or stationed overseas, who have used a Recalled Device.
>
> EXCLUDED from the Settlement Class are: (a) Defendants and their officers, directors, and employees; and (b) the MDL Court, Settlement Mediator, and Special Masters assigned to the MDL.

SA §§ 1.33, 1.37. The proposed Settlement Class is a mandatory, non-opt out class under Rule 23(b)(2).

### B.     Funding for the Equitable Relief in the Settlement

The Philips Defendants shall pay $25 million into a Settlement Fund that will be used to

perform the obligations set forth in the Settlement Agreement. *Id.* § 2.1. Philips shall make its First

Payment into the Settlement Fund no later than 14 days after preliminary approval of the

Settlement (to assist with initial administrative costs, including notice-related costs) and the

remainder (the Second Payment) shall be paid within 14 days of the Effective Date.[6] *Id.* §§ 2.4.1,

2.5. The Settlement Fund shall be used to provide MAP Benefits for the Settlement Class. *Id.* §§

2.5-2.6. Payments made by Philips shall be non-reversionary, and Philips shall not be entitled to a

return of the payments unless the Settlement does not achieve MDL Court Final Approval and/or

does not become Final, in which case any amounts remaining from Philips' First Payment will be

returned to Philips. *Id.* § 2.8. Net interest from the Settlement Fund will accrue to the benefit of

the Settlement Class and may be used to provide MAP Benefits to the Settlement Class. *Id.* § 2.7.

### C.     Medical Advancement Program Benefits

The Settlement will create and provide a Medical Advancement Program ("MAP") that

will offer meaningful equitable benefits for the Settlement Class. *Id.* §§ 1.17, 3. The MAP Benefits

will be implemented by the Settlement Administrator, in consultation with the Parties, and with

oversight by the Court.[7] *Id.* §§ 3, 5.2. Subject to Court approval, the Parties agree that Wolf Global

Compliance ("Wolf Global") should serve as the Settlement Administrator. *Id.* §1.32. The MAP

---

[6] The Settlement Fund will be a Court-approved Qualified Settlement Fund ("QSF") pursuant to Section 1.468B-1, *et seq.* of the Treasury Regulations promulgated under Section 468B of the Internal Revenue Code of 1986, as amended. SA § 1.36, which will be opened with the Custodian Bank. The Parties agree, subject to Court approval, that Huntington National Bank will serve as the Custodian Bank, *id*. § 1.5, and that BrownGreer PLC ("BrownGreer") will serve as the QSF Administrator, *id*. § 1.27.

[7] The guidelines regarding the Settlement Administrator's implementation of the MAP Benefits are set forth in Exhibit 3 to the Settlement Agreement.

benefits include:

*MAP Research*: the Settlement Fund will provide grants for independent medical research related to the advancement of public knowledge regarding the detection, diagnosis, and/or treatment of Qualifying Injuries. *Id.* § 3.1.1. The Settlement Administrator will work with the Parties and appropriate experts, with oversight from the MDL Court, to determine the scope and parameters of the MAP Research, and the results of such Research, to the extent medically relevant and valid conclusions are reached, will be published on the Settlement Website discussed below and thus disseminated to Settlement Class Members. *Id.* §§ 3.1.2-3.1.3.

*MAP Registry*: the Settlement Administrator, in consultation with the Parties, will establish a research registry to which Settlement Class Members can elect to submit authorizations for the release and disclosure of medical information protected by HIPAA, 45 CFR § 164.508, for purposes of review and evaluation in connection with the MAP Research. *Id.* § 3.2.1.

*MAP Resources*: the Settlement Administrator, in consultation with the Parties, will also establish and maintain an interactive website ("Settlement Website") for delivery of MAP Resources to Settlement Class Members for purposes of increasing access to and an understanding of Relevant Medical Information and Guidance. *Id.* § 3.3.1. The Settlement Administrator, in consultation with the Parties, will identify appropriate materials for inclusion on the Settlement Website, based upon the current and ongoing relevant published medical literature, scientific studies, and testing with respect to Recalled Devices conducted by independent outside laboratories, as well as information provided by the FDA. *Id.* § 3.3.2. The Settlement Administrator shall ensure that the Settlement Website is constructed in a user-friendly format and that the Relevant Medical Information and Guidance is appropriately annotated and/or summarized for affected individuals who do not have a medical or scientific background. *Id.* § 3.3.3. The

Settlement Administrator will post Relevant Medical Information and Guidance and updates on the Settlement Website, and shall disseminate the same to Settlement Class Members who register to receive notifications of the Relevant Medical Information and Guidance. *Id.* § 3.3.4.

**D. Releases**

By virtue of the Settlement, all Settlement Class Members agree to release their Medical Monitoring Claims against the Released Parties. *Id.* §§ 1.21, 1.29, 4.5.1. Settlement Class Members are not releasing individual claims for medical monitoring monetary relief on behalf of themselves but are releasing the ability to bring such claims on a class-wide or aggregate/mass/group basis and/or to seek injunctive or other equitable relief. *Id.* §§ 1.21, 4.5.1, 4.5.2. In addition, Settlement Class members are not releasing any Personal Injury Claims they may have against the Philips Defendants or other Released Parties, nor are they releasing any Economic Loss Claims through the Settlement. *Id.* §§ 1.29, 4.1, 4.5.1.

**E. Attorneys' Fees, Costs and Expenses, and Service Awards**

Settlement Class Counsel will seek an award of attorneys' fees, reimbursement of costs and expenses, and service awards, in the aggregate amount of up to $5 million, which is 20% of the payments by the Philips Defendants into the Settlement Fund, to be paid from the Settlement Fund. *Id.* § 15.1. Settlement Class Counsel will file a motion for attorneys' fees, reimbursement of costs and expenses, and service awards no later than 30 days before the Objection Deadline, and the deadline for the motion will be provided in the Notice. *Id.* Settlement Class Members shall have the opportunity to submit objections. *Id.* The Parties agree that the amount of any award of attorneys' fees, costs and expenses and the amount of any service awards are intended to be considered by the Court separately from the Court's consideration of the fairness, reasonableness, and adequacy of the Settlement, and that no order concerning the amount of the attorneys' fees, costs and expenses, or service awards shall constitute grounds for termination of the Settlement.

*Id.* § 15.2.

### F.    The Notice Plan

In contrast to a notice to a class certified pursuant to Rule 23(b)(3), which must be "the best notice that is practicable under the circumstances," notice to a class certified pursuant to Rule 23(b)(2) need only be "appropriate." *See* Fed. R. Civ. P. 23(c)(2). Despite this more lenient notice standard, the Notice Plan described in the Settlement is robust. SA § 8.1.2. The proposed Notices are attached to the Settlement Agreement as Exhibits 4 and 4(a), and the specifics of the Notice Plan are discussed in more detail in Section IV.D, *infra*.

Subject to Court approval, the Parties agree that BrownGreer should serve as the Notice Administrator.[8] SA §§ 1.22; 7.2.10. Notably, BrownGreer will utilize resources created with respect to the notice program in the Economic Loss Settlement. BG Decl. ¶ 10. Those resources include the Settlement Class List that contains postal and email addresses for users of Recalled Devices. *Id*. Previously, the United States Postal Service's ("USPS") National Change of Address ("NCOA") Database was used to update the postal addresses, and all returned items were subject to further processing which resulted in a majority of returned mailings being resent to updated addresses. *Id*. In addition, nearly 32,000 additional email addresses were obtained from Settlement Class Members who submitted their addresses at the Economic Loss Settlement Website pending preliminary approval of the Economic Loss Settlement. *Id*. This comprehensive contact information will be provided to BrownGreer from the Settlement Administrator of the Economic Loss Settlement. *Id*. BrownGreer will employ best practices to update this information. *Id*. ¶¶ 11-12. The reasonable costs of Class Notice shall be paid out of the Settlement Fund. SA § 8.2.

---

[8] The Declaration of Orran L. Brown Sr. of BrownGreer on Proposed Notice Plan, dated May 9, 2024 (the "BG Decl."), is attached hereto as Ex. "C."

## IV.   ARGUMENT

### A.   Legal Standards for Settlement Approval

Approval of a class action settlement involves a two-step process. First, at the preliminary approval stage, the Court decides whether it will be likely to ultimately approve the settlement and certify the settlement class, thus warranting dissemination of notice to the proposed settlement class. *See* Fed. R. Civ. P. 23(e)(1)(B); *Cole's Wexford Hotel, Inc. v. UPMC & Highmark Inc.*, 2016 WL 6919773, at *1-2 (W.D. Pa. Apr. 6, 2016) ("*Cole's Wexford I*") (Conti, J.) (finding that proposed settlement "falls within the range of reasonableness meriting possible final approval" and directing the dissemination of notice). Second, after notice has been disseminated and class members have had the opportunity to object to the settlement, the Court conducts a final fairness hearing and decides whether to approve the settlement. Fed. R. Civ. P. 23(e)(2); *Hickton v. Enterprise Rent-A-Car Company*, 2013 WL 12137092, at *3 (W.D. Pa. Apr. 29, 2013) (Conti, J.); *Douglass v. Optavia LLC*, 2022 WL 4281546, at *1-2 (W.D. Pa. Sept. 14, 2022).

The Third Circuit has a "strong judicial policy in favor of class action settlement." *Ehrheart v. Verizon Wireless*, 609 F.3d 590, 595 (3d Cir. 2010); *see also Murphy v. Eyebobs, LLC*, 638 F. Supp. 3d 463, 479 (W.D. Pa. 2021) (recognizing "long-standing policy favoring [class settlement] agreements"). When reviewing a settlement, the Third Circuit has stressed that "we favor the parties reaching an amicable agreement and avoiding protracted litigation. We do not wish to intrude overly on the parties' hard-fought bargain." *In re Google Inc. Cookie Placement Consumer Priv. Litig.*, 934 F.3d 316, 326 (3d Cir. 2019); *Adam X. v. New Jersey Dep't of Corr.*, 2022 WL 621089, at *6 (D.N.J. Mar. 3, 2022) ("[W]hen a settlement is reached on terms agreeable to all parties, it is to be encouraged."). "Settlement agreements are to be encouraged because they promote the amicable resolution of disputes and lighten the increasing load of litigation faced by the federal courts." *Ehrheart*, 609 F.3d at 595. Thus, "the settlement of class actions is preferred

14

to protracted litigation: 'there is an overriding public interest in settling class action litigation, and it should therefore be encouraged.'" *Murphy v. Le Sportsac, Inc*., 2023 WL 375903, at *9 (W.D. Pa. Jan. 24, 2023) (quoting *In re Warfarin Sodium Antitrust Litig.*, 391 F.3d 516, 535 (3d Cir. 2004)).

To grant preliminary approval and disseminate notice of the proposed settlement to the Settlement Class, a court must find that it "will *likely* be able to: (i) approve the proposal under Rule 23(e)(2); and (ii) certify the class for purposes of judgment on the proposal." Fed. R. Civ. P. 23(e)(1)(B) (emphasis added). Courts within this District recognize that "[a]t the preliminary approval stage, the bar to meet the fair, reasonable and adequate standard is lowered," and a court's focus should be on whether the proposed settlement "'discloses grounds to doubt its fairness or other obvious deficiencies such as unduly preferential treatment of class representatives or segments of the class, or excessive compensation of attorneys, and whether it appears to fall within the range of possible approval.'" *Torres v. BrandSafway Indus. LLC*, 2023 WL 346667, at *2 (W.D. Pa. Jan. 20, 2023); *see also Douglass*, 2022 WL 4281546, at *2 (same).

Under Rule 23(e)(2), in determining whether it will likely be able to find that a proposed settlement is "fair, reasonable, and adequate," a court should consider whether:

(A)    the class representatives and class counsel have adequately represented the class;

(B)    the proposal was negotiated at arm's length;

(C)    the relief provided for the class is adequate, taking into account:

        (i)    the costs, risks, and delay of trial and appeal;

        (ii)    the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims;

        (iii)    the terms of any proposed award of attorney's fees, including timing of payment; and

(iv)     any agreement required to be identified under Rule 23(e)(3); and

(D)      the proposal treats class members equitably relative to each other.

The 2018 Advisory Committee Notes to Subdivision 23(e)(2) explain that the "core concerns" listed in the text of Rule 23(e)(2) and set forth above do not "displace" a court's consideration of the other factors that have been adopted by each Circuit Court to assess a settlement's fairness.

As this Court recently recognized in its Opinion granting final approval of the Economic Loss Settlement, courts in this Circuit have traditionally considered nine factors when determining the fairness of a proposed settlement, as set forth in *Girsh v. Jepson*, 521 F.2d 153, 157 (3d Cir. 1975). *See In re Philips Recalled CPAP, BI-LEVEL PAP, and Mechanical Ventilator Prods. Litig.*, 2024 WL 1810190, at *5 (W.D. Pa. Apr. 25, 2024) (Conti, J.). These *Girsh* factors significantly overlap with the Rule 23(e)(2) factors: "(1) the complexity, expense and likely duration of the litigation; (2) the reaction of the class to the settlement; (3) the stage of the proceedings and the amount of discovery completed; (4) the risks of establishing liability; (5) the risks of establishing damages; (6) the risks of maintaining the class action through the trial; (7) the ability of the defendants to withstand a greater judgment; (8) the range of reasonableness of the settlement fund in light of the best possible recovery; [and] (9) the range of reasonableness of the settlement fund to a possible recovery in light of all the attendant risks of litigation."[9] *Id.*; *In re Prudential Ins. Co. Am. Sales Practice Litig.*, 148 F.3d 283, 323 (3d Cir. 1998), *cert. denied*, 525 U.S. 1114 (1999) (listing additional factors that court may apply if relevant).

In addition, as recognized in this Court's opinion approving the Economic Loss Settlement,

---

[9] Courts in this District have differed as to whether the *Girsh* factors should be considered at both the preliminary and final approval stages, or just at final approval. *Compare Murphy v. The Hundreds Is Huge, Inc.*, 638 F. Supp. 3d 486, 504-09 (W.D. Pa. 2022) (applying *Girsh* at preliminary approval stage) *with Copley v. Evolution Well Servs. Operating LLC*, 2023 WL 1878581, at *2 n.1 (W.D. Pa. Feb. 10, 2023) (stating *Girsh* applies only at final approval stage).

the Third Circuit has found that district courts should "apply a presumption of fairness where: '(1) the settlement negotiations occurred at arm's length; (2) there was sufficient discovery; (3) the proponents of the settlement are experienced in similar litigation; and (4) only a small fraction of the class objected.'" *In re Philips Recalled CPAP*, 2024 WL 1810190, at *5; *see also In re Nat'l Football League Players Concussion Injury Litig.*, 821 F.3d 410, 436 (3d Cir.), *cert. denied*, 137 S. Ct. 591 (2016) ("*In re NFL III*"); *see In re Google Inc.*, 934 F.3d at 326; *In re Railway Indus. Empl. No-Poach Antitrust Litig.*, 2020 WL 13852931, at *2 (W.D. Pa. Aug. 26, 2020) (Conti, J.); *Cole's Wexford Hotel, Inc. v. UPMC & Highmark Inc.*, 2016 WL 6236892, at *2 (W.D. Pa. July 29, 2016) ("*Cole's Wexford II*") (Conti, J.).

If the preliminary approval criteria are met, a court must also consider whether it is likely to certify a class for settlement purposes. *See* Fed. R. Civ. P. 23(e)(1)(B)(ii); *see also Douglass*, 2022 WL 4281546, at *4 (preliminarily certifying class for settlement purposes). The Manual for Complex Litigation advises that "[i]f the case is presented for both class certification and settlement approval, the certification hearing and preliminary fairness evaluation can usually be combined. The judge should make a preliminary determination that the proposed class satisfies the criteria set out in Rule 23(a) and at least one of the subsections of Rule 23(b)." Manual for Complex Litigation, Fourth § 21.632 (2004); *see also In re Nat'l Football League Players Concussion Injury Litig.*, 775 F.3d 570, 582 (3d Cir. 2014) ("*In re NFL I*") (quoting § 21.632 of Manual with approval). Here, class certification is sought under Rule 23(b)(2), which applies when "the party opposing the class has acted or refused to act on grounds that apply generally to the class, so that final injunctive relief is appropriate respecting the class as a whole."

## B.    Preliminary Approval of the Proposed Settlement Is Warranted

As demonstrated below, the Settlement should be preliminarily approved under Rule 23(e)(1)(B) because, upon consideration of all of the relevant factors, the Court will likely be able

to approve the Settlement as "fair, reasonable, and adequate" after a Final Fairness Hearing.

### 1. Settlement Class Counsel and the Class Representatives Have Adequately Represented the Class

***Experienced Counsel***. Settlement Class Counsel consist of Plaintiffs' Co-Lead Counsel and the Chair of the Settlement Committee, who were appointed by the Court after a thorough interview and vetting process (ECF No. 395, Pretrial Order No. 8). This Court previously found that these counsel adequately represented the interests of the Settlement Class in the Economic Loss Settlement, and should make the same finding here. *See In re Philips Recalled CPAP*, 2024 WL 1810190, at *3 ("[C]lass counsel are qualified and have significant experience from representing plaintiffs in other complex class actions.").

***Class Representatives.*** The proposed Settlement Class Representatives have fulfilled their responsibilities on behalf of the Settlement Class by working closely with Settlement Class Counsel on the litigation of the claims for medical monitoring, reviewing pleadings, responding to document requests, and presenting themselves for deposition when required. Counsel Decl. ¶ 10.

### 2. The Proposed Settlement Was Negotiated at Arm's Length

***Arm's-Length Negotiations***. As discussed above, the proposed Settlement Agreement was the result of an arm's-length negotiation process supervised by a well-respected and experienced Court-appointed mediator. *Id*. ¶¶ 6-7, 11. During this process, the Parties had the benefit of significant briefing and voluminous discovery that allowed them to fully understand the strengths and weaknesses of their respective positions with respect to both the legal and factual issues in the litigation. *Id*. at ¶¶ 2-5, 8. *See* William B. Rubenstein, 4 *Newberg and Rubenstein on Class Actions* § 13:50, Westlaw (6th ed. Database updated November 2023); *In re All-Clad Metalcrafters, LLC v. Cookware Mktg. & Sales Practices Litig*., 2023 WL 2071481, at *6 (W.D. Pa. Feb. 17, 2023) ("[N]egotiation of a settlement through mediation suggests reasonableness and neutrality, not

incompetence or self-dealing."); *Cole's Wexford II*, 2016 WL 6236892, at *2 ("[A] presumption

of fairness applies because the Settlement was negotiated at arm's length with an accomplished

neutral at a Court-ordered mediation.").

**3.** **The Relief Provided to the Settlement Class Is Adequate, Particularly in Light of the Substantial Risks of Continued Litigation**

*a.   Complexity, Expense, Delay, and Risks of Continued Litigation*

Absent a settlement, the Parties would remain engaged in motion practice, discovery, and

adversarial litigation potentially for years regarding the claims for medical monitoring relief. As

noted above, Settlement Class Counsel understood that they faced considerable risks in continuing

to litigate the numerous and complex legal, factual and scientific issues in this litigation. These

risks included the pending Motion to Dismiss the Medical Monitoring Complaint and the difficulty

in obtaining certification of a nationwide class in the context of a contested litigation class, which

would leave only the potential for state subclasses under a limited number of state laws (as

suggested by the Special Master's R&R), which would also be the subject of the Philips

Defendants' challenges to certification (*e.g.*, individualized issues). Counsel Decl. ¶ 5. In addition,

because there is no "signature" injury and there were numerous potential injuries identified in the

Recall notice, constructing a meaningful medical monitoring program would be impractical. *See*

*id*. Also, funding for any such program would be uncertain in light of the pending Jurisdictional

Motion with respect to KPNV (and the motion of the non-Philips RS Defendants). *See id*.

Additional risks of continuing to litigate claims for medical monitoring include the potential for

adverse rulings with respect to experts on threshold levels of exposure and causation. *See id*.

The highly experienced counsel representing the Philips Defendants have vigorously

defended this litigation from its inception. To prevail, Plaintiffs would have to obtain class

certification, prevail on Rule 23(f) appeals regarding the certification order or subsequent motions

19

for decertification, successfully defend against summary judgment or other dispositive motions, defeat Fed. R. Evid. 702 motions, prevail at trial on liability and claims for relief, including the establishment of a testing protocol that could encompass the varied potential injuries, and then prevail on any subsequent appeals. The litigation would be protracted and expensive, to say nothing of the inherent risks and uncertain outcomes attendant to each step along the way. In contrast to those risks, the proposed Settlement provides significant and tangible MAP Benefits, namely, MAP Research; a MAP Registry; and MAP Resources that will be made available to all Settlement Class Members. These MAP Benefits will commence after the Effective Date, which is much sooner than any relief that could be derived through litigation. *See, e.g.*, *Le Sportsac, Inc.*, 2023 WL 375903, at *10 ("[T]he proposed [equitable relief] settlement has allowed Murphy to achieve significant benefits for the class while avoiding the material expense and delay that would have been required to litigate his claims against Le Sportsac.").

### b.  *Sufficient Discovery and Stage of the Proceedings*

As discussed previously, the Parties have engaged in substantial discovery, including document discovery, third-party discovery, jurisdictional discovery, and depositions. They have exchanged millions of documents related to core issues such as liability, jurisdiction over KPNV, and general causation, including testing documents, both prior to and after the Recall; and have taken more than 50 depositions (some of which were of named Plaintiffs). Counsel Decl. ¶ 4. All of these discovery efforts have informed Settlement Class Counsel's negotiations with the Philips Defendants by providing insight on the strengths and weaknesses of the claims at issue. *Id.*, ¶¶ 2, 4, 6, 8; *see Calhoun v. Invention Submission Corp.*, 2023 WL 2411354, at *11 (W.D. Pa. Mar. 8, 2023) (approving settlement where parties had "engaged in sufficient discovery to inform their negotiations before a settlement was reached"); *In re All-Clad*, 2023 WL 2071481, at *6 (approving settlement where "The record establishes extensive and costly investigation, research,

and discovery have been conducted such that the attorneys for the parties are reasonably able to evaluate the benefits of settlement.").

In addition, the proceedings are far enough along that Settlement Class Counsel have fully briefed many of the key legal issues, continue to brief the merits of Plaintiffs' legal claims, and thoroughly analyzed the issues to be briefed in connection with class certification. It can be said without hesitation that Settlement Class Counsel had an "adequate appreciation of the merits of the case before negotiating." *In re Prudential Ins.*, 148 F.3d at 319 (internal quotation marks and citation omitted). Thus, Settlement Class Counsel were "fully informed" and able to carefully analyze the risk of future litigation of these claims in comparison to the substantial and prompt equitable relief offered by the Settlement. Counsel Decl. ¶¶ 3, 5, 6, 8.

### c. *Likelihood of Maintaining Class Certification*

This factor "measures the likelihood of obtaining and keeping a class certification if the action were to proceed to trial," *In re Warfarin*, 391 F.3d at 537, and weighs heavily in favor of approval. As discussed above, Settlement Class Counsel are mindful that a number of individual issues here could create a substantial challenge to class certification in a litigation context. *See, e.g., In re Welding Fume Prods. Liab. Litig.*, 245 F.R.D. 279, 303-07 (N.D. Ohio 2007) (surveying medical monitoring class certification issues). Indeed, counsel for Philips repeatedly emphasized that the Third Circuit Court of Appeals has not yet upheld certification of a medical monitoring class in a litigation context. Courts have recognized that certification of a settlement class does not pose the same hurdles that exist in a litigation context. *See, e.g.*, *In re Budeprion XL Mktg. & Sales Litig.*, 2012 WL 2527021, at *6, 10 (E.D. Pa. July 2, 2012) (granting final approval and noting that settlement is relevant to certification, explaining that "[b]ecause the Court is certifying a Rule 23(b)(2) settlement class receiving only injunctive relief, it is freed from some of the problems that might arise if this litigation were tried"). Moreover, as stated very recently by another court within

this District when it granted preliminary approval of a settlement, "[e]ven if certification of a class is achieved, continued discovery and resolution of legal issues could lead to decertification or modification of the class. . . . In turn, this inevitably would result in further delay and expense, as well as an uncertain outcome." *Calhoun*, 2023 WL 2411354, at *14. This factor weighs in favor of certifying the Settlement Class.

### d. *Reasonableness of the Settlement*

Courts in this Circuit consider "reasonableness in light of the best possible recovery and reasonableness in light of the risks the parties would face if the case went to trial." *In re Warfarin*, 391 F.3d at 538. Here, the Settlement will provide equitable relief to every U.S. user of a Recalled Device, each of whom had the potential to be exposed to the Foam Toxins and will benefit from the MAP Benefits that will allow them, in consultation with their physicians, to assess their risk, if any, of future injury or disease.

In particular, the MAP Benefits will fund MAP Research that will be "independent medical research related to the advancement of public knowledge regarding the detection, diagnosis, and/or treatment of Qualifying Injuries"; establish a MAP Registry to which Settlement Class Members can elect to submit authorizations for the release and disclosure of their medical information for purposes of review and evaluation in connection with the MAP Research; and establish MAP Resources that will increase "access to and an understanding of Relevant Medical Information and Guidance." SA § 3, *see also* SA Exhibit 3. In contrast, because there is no signature injury and instead there are a wide and varied range of potential injuries, crafting a meaningful medical monitoring program would be impractical. Inasmuch as Settlement Class Members received their Recalled Devices by prescription of a physician, their health is already being monitored by a physician, and the MAP Benefits will provide Relevant Medical Information and Guidance to them.

The type of equitable relief offered here has been accepted and approved in other litigation, demonstrating the fairness, adequacy, and reasonableness of the Settlement. *See, e.g., In re Diet Drugs*, 2000 WL 1222042, at *25 (E.D. Pa. Aug. 28, 2000) ("*Diet Drugs II*") (noting that the benefits provided by the settlement would "significantly contribute to the protection and advancement of the public health" where settlement included, *inter alia*, "medical research and medical registry provisions . . . [that would] provide a means to conduct extensive research with respect to the diagnosis and treatment" of health conditions related to defective drug); *In re Three Mile Island Litig.*, 557 F. Supp. 96, 97 (M.D. Pa. 1982) (describing approved settlement that included $5 million for a Public Health Fund "to finance studies of the long term health effects of the TMI incident and to further evacuation planning for the future"); *In re Nat'l Football League Players' Concussion Inj. Litig.*, 307 F.R.D. 351, 418 (E.D. Pa. 2015) ("*NFL II*") ("Education Fund benefits inure in part directly to Class Members; the Fund educates Retired Players about their medical and disability benefits under their Collective Bargaining Agreements."); *Collier v. Montgomery Cnty. Hous. Auth.*, 192 F.R.D. 176, 185 (E.D. Pa. 2000) (approving settlement that required defendant Housing Authority "to provide notice to the tenants of the potential risk for lead-based paint exposure, the hazards of such exposure, the symptoms of any poisoning; and precautions to be taken."); *Hyland v. Navient Corp.*, 48 F.4th 110, 119 & n.2 (2d Cir. 2022) (affirming approval of settlement and certification of Rule 23(b)(2) non-opt out class where the relief "benefits the whole class by funding a nonprofit . . . that will help all borrowers learn whether or not they are eligible for loan forgiveness and 'provid[e] guidance on . . . applications or assistance in challenging denials.'"); *Bowling v. Pfizer, Inc.*, 143 F.R.D. 141, 149, 166 (S.D. Ohio 1992) (settlement created non-reversionary fund for "research to develop diagnostic techniques" and "research to characterize or reduce the risk of valve replacement surgery"; "The primary

beneficiaries of this fund are the class members of the proposed settlement."); *Marshall v. Nat'l Football League*, 787 F.3d 502, 507, 519 (8th Cir. 2015) (finding fund for nonprofit "dedicated to supporting and promoting the health and welfare of Retired Players and other similarly situated individuals," including "medical research," was "a boon to those thousands upon thousands of former NFL players who can now reap the collective benefit of a large financial payout to a fund organized solely for their benefit"); *In re Oil Spill by Oil Rig Deepwater Horizon*, 295 F.R.D. 112, 123-24, 150 (E.D. La. 2013) (one of the components of the oil spill settlement, a regional health "Outreach" Program," which included significant educational projects, "provides benefits to the Class (as well as other residents of the Gulf Coast) that could only be achieved through settlement").

The substantial equitable benefits of the Settlement far outweigh the considerable risks, burdens, and delays inherent in continued litigation of the claims for medical monitoring relief.

### e.   The Provisions for Attorneys' Fees Are Reasonable

Pursuant to both Rule 23(e)(2)(C)(iii) and *In re Prudential Ins.*, 148 F.3d at 323, the Court should consider "the reasonableness of the provision for attorney's fees." *Le Sportsac, Inc.*, 2023 WL 375903, at *12. Here, the Parties' negotiations in connection with the Settlement were focused exclusively on benefits for the Settlement Class, and there was no discussion of attorneys' fees for Settlement Class Counsel. Counsel Decl. ¶¶ 7, 12. The Settlement Agreement provides that Settlement Class Counsel will submit a motion for an award of attorneys' fees, reimbursement of costs and expenses, and service awards in the aggregate amount of up to $5 million, representing 20% of the payments by the Philips Defendants into the Settlement Fund. SA § 15.1. The motion will be due 30 days prior to the Objection Deadline, thereby giving Settlement Class Members the opportunity to submit objections. *Id.* In addition, the Settlement Agreement specifically states that the amount of any award of attorneys' fees, costs and expenses, and service awards is "intended

to be considered by the Court separately from the Court's consideration of the fairness, reasonableness, and adequacy of the Settlement" itself and any order on such an award will not be a reason to terminate the Settlement. *Id.* § 15.2. Because the motion is forthcoming and "will be subject to review and approval by the Court, this factor does not weigh against the fairness of the settlement." *Le Sportsac, Inc*., 2023 WL 375903, at *12.

### 4. The Proposed Settlement Treats Settlement Class Members Equitably Relative to Each Other

This factor "calls attention to a concern that may apply to some class action settlements—inequitable treatment of some class members vis-a-vis others." Fed. R. Civ. P. 23(e)(2), Advisory Committee's Note to 2018 Amendment. *Id.* Because the Medical Advancement Program is equally available to all Settlement Class Members, this factor militates in favor of preliminary approval. *Liberty Res., Inc. v. City of Philadelphia*, 2023 WL 3204018, at *9 (E.D. Pa. May 1, 2023) ("Here, the injunctive relief provided under the settlement affects all class members equally . . . [and] weighs in favor of approval of the settlement.").

### C. Certification of the Proposed Class for Purposes of Settlement Only Is Appropriate

The benefits of a proposed settlement of a class action can be realized only through the certification of a settlement class. Both in this District and elsewhere, a number of courts have recognized the propriety of Rule 23(b)(2) class certification where, as here, the "primary relief provided is injunctive and the challenged conduct of the defendants is such that injunctive relief would be appropriate." *Le Sportsac, Inc*., 2023 WL 375903, at *5; *see also Murphy v. Charles Tyrwhitt, Inc*., 2020 WL 8513583, at *4 (W.D. Pa. Nov. 25, 2020), *report and recommendation adopted*, 2021 WL 21510 (W.D. Pa. Jan. 4, 2021) (same); *Adam X.*, 2022 WL 621089, at *5 (certifying Rule 23(b)(2) settlement class where "the injunctive relief [provided by the settlement] benefits the entire class."); *In re Budeprion XL*, 2012 WL 2527021, at *11 ("The Court will not

subvert a settlement negotiated at arm's length because a litigation class may have presented difficult issues for certification at an earlier stage in the proceedings. The language of Rule 23(b)(2) is clear: such a class may be certified if the party opposing the class has acted in a way applicable generally to the class so that final injunctive relief is appropriate respecting the class as whole. Having satisfied that standard, no more is required."); *Berry v. Schulman*, 807 F.3d 600, 609 (4th Cir. 2015) ("As the district court explained, this is a paradigmatic Rule 23(b)(2) case: The 'meaningful, valuable injunctive relief' afforded by the Agreement is 'indivisible,' 'benefitting all [ ] members' of the (b)(2) Class at once."); *Hyland*, 48 F.4th at 119 (affirming certification of (b)(2) settlement class after finding that the settlement would benefit all class members by providing them with more information about Public Service Loan Forgiveness, helping them determine whether they have viable individual claims for damages, and funding a nonprofit that would help to educate all settlement class members on loan forgiveness eligibility, applications and assistance in challenging denials).

### 1. Rule 23(a) Factors

#### a. Numerosity Under Rule 23(a)(1)

Rule 23(a)(1) requires that the class be "so numerous that joinder of all members is impracticable." Fed. R. Civ. P. 23(a)(1). Numerosity is easily met here, as there were over 10 million Recalled Devices sold or otherwise distributed in the United States, and the number of proposed Settlement Class Members is in the millions. *See In re Budeprion XL*, 2012 WL 2527021, at *6 (finding numerosity "clearly" met where there were at least hundreds of thousands of class members).

#### b. Commonality Under Rule 23(a)(2)

The second prong of Rule 23(a) – commonality – "requires plaintiffs to show that 'there are questions of law or fact common to the class.'" *Calhoun*, 2023 WL 2411354, at *7 (quoting

Fed. R. Civ. P. 23(a)(2)). This requirement is satisfied so long as the Settlement Class Members "share at least one question of fact or law in common with each other." *Reinig v. RBS Citizens, N.A.*, 912 F.3d 115, 127 (3d Cir. 2018). "[T]he bar is not a high one." *Reyes v. Netdeposit, LLC*, 802 F.3d 469, 486 (3d Cir. 2015); *see also Hundreds Is Huge¸* 638 F. Supp. 3d at 496 (noting the Third Circuit has said the commonality requirement is "'easily met' because a single issue of fact or law will suffice."). The Third Circuit has "acknowledged commonality to be present even when not all plaintiffs suffered an actual injury, when plaintiffs did not bring identical claims, and, most dramatically, when some plaintiffs' claims may not have been legally viable." *Rodriguez v. Nat'l City Bank*, 726 F.3d 372, 382 (3d Cir. 2013); *see also In re Prudential Ins.*, 148 F.3d at 310 (all claims and facts do not need to be identical). Rather, "the focus of the commonality inquiry . . . is 'on whether the defendant's conduct was common as to all of the class members.'" *Rodriguez*, 726 F.3d at 382.

Moreover, "because they do not also involve an individualized inquiry for the determination of damage awards, injunctive actions by their very nature often present common questions satisfying Rule 23(a)(2)." *Hundreds Is Huge*, 638 F. Supp. 3d at 496. This Court previously found that the common question "that looms largest over all putative class members is whether the devices in question were defective. Thus, the commonality threshold is also easily met." *In re Philips Recalled CPAP*, 2024 WL 1810190, at *2.

### c. Typicality Under Rule 23(a)(3)

Rule 23(a) also requires that "the claims or defenses of the representative parties are typical of the claims or defenses of the class." Fed. R. Civ. P. 23(a)(3). "[E]ven relatively pronounced factual differences will generally not preclude a finding of typicality where there is a strong similarity of legal theories or where the claim arises from the same practice or course of conduct." *Le Sportsac, Inc.*, 2023 WL 375903, at *3; *see also In re Budeprion XL*, 2012 WL 2527021, at *7

(typicality satisfied "so long as 'the claims of the named plaintiffs and putative class members involve the same conduct by the defendant . . . regardless of factual differences'"). Here, the claims of the proposed Settlement Class Representatives are typical because they all arose "from the same practice or course of conduct" by the Philips Defendants. *See Le Sportsac, Inc.*, 2023 WL 375903, at *3. All proposed Settlement Class Representatives used the Recalled Devices and suffered the same type of harm as the putative Settlement Class, including the risk of exposure to the Foam Toxins; and potential increased risk of developing illness, disease, or disease process that have not yet become manifest.

### d.   Adequacy of Representation Under Rule 23(a)(4)

The adequacy requirement of Rule 23(a)(4) ensures that that "the representative parties will fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a)(4). "Adequate representation depends on two factors: '(a) the plaintiff's attorney must be qualified, experienced, and generally able to conduct the proposed litigation, and (b) the plaintiff must not have interests antagonistic to those of the class.'" *Calhoun*, 2023 WL 2411354, at *8 (quoting *Wetzel v. Liberty Mut. Ins. Co.*, 508 F.2d 239, 247 (3d Cir. 1975)); *see also In re Budeprion XL*, 2012 WL 2527021, at *7. Both requirements are met here.

**Counsel.** This Court has already recognized that Settlement Class Counsel are experienced in the prosecution of class actions, including products liability and consumer class actions. *See In re Philips Recalled CPAP*, 2024 WL 1810190, at *3. Class Counsel have diligently prosecuted the claims for medical monitoring on behalf of the Settlement Class by investigating the claims prior to bringing suit; preparing complaints and other pleadings; responding to dispositive motions; conducting and responding to extensive discovery; taking and defending depositions; reviewing and analyzing extensive information, documents, and data produced by Defendants and third

parties; and engaging in fully informed and arm's-length negotiations with Defendants that culminated in this Settlement. Counsel Decl. ¶¶ 2-6, 8.

*Class Representatives.* As noted above, the Settlement Class Representatives have fulfilled their responsibilities on behalf of the Settlement Class by working closely with Settlement Class Counsel throughout the litigation, reviewing pleadings, responding to Defendants' discovery requests, and making themselves available for depositions. *Id.* ¶ 10. A finding of adequacy is appropriate here because "[t]he interests of class representatives align with the interests of the putative class members, and the class representatives have no discernable conflicts of interest." *In re Philips Recalled CPAP*, 2024 WL 1810190, at *3; *see also Hundreds Is Huge*, 638 F. Supp. 3d at 497 (plaintiff's interests were the same as class members, and all had "a strong interest in establishing liability").

## 2.   The Settlement Class Should Be Certified Under Rule 23(b)(2)

### a.   *The Relief Sought Is Equitable*

The MAP Benefits are equitable in nature, which is why certification under Rule 23(b)(2) is appropriate. The Third Circuit has acknowledged that "medical monitoring cannot be easily categorized as injunctive or monetary relief," and therefore "whether a medical monitoring claim is a request for a legal remedy or one for equitable relief requires a case-specific analysis." *Giovanni v. United States Dep't of Navy*, 906 F.3d 94, 119 (3d Cir. 2018). But when a medical monitoring settlement creates a court-supervised fund to be used to provide equitable benefits to the members of a class rather than direct payments to class members, that relief is typically considered equitable or injunctive. *Id.* (quoting *Barnes v. Am. Tobacco Co.*, 161 F.3d 127, 151 (3d Cir. 1998)); *In re Diet Drugs*, 1999 WL 673066, at *6 (E.D. Pa. Aug. 26, 1999)  ("*Diet Drugs I*") (request for comprehensive medical monitoring program was "equitable in nature"); *Redland Soccer Club, Inc. v. Dep't of the Army*, 696 A.2d 137, 142 n.6 (Pa. 1997) (same).

In this case, the Philips Defendants will pay $25 million into a non-reversionary Settlement Fund that will not be disbursed directly to Class Members, but instead will be used to create and sustain the Medical Advancement Program providing MAP Benefits for Settlement Class Members for a period of fifteen years. SA §§ 1.17, 2.1, 2.5, 2.8. These benefits will be made equally available to all Class Members. This equitable relief warrants certification of a Rule 23(b)(2) class. *See, e.g., In re Diet Drugs II*, 2000 WL 1222042, at *54 (E.D. Pa. Aug. 28, 2000) (Rule 23(b)(2) was implicated because the settlement provided "equitable, injunctive and declaratory relief," namely, the creation of a fund to provide, *inter alia*, "medical research and education" and a "medical/legal registry to assure that Diet Drug Recipients receive prompt and proper diagnosis and treatment of Diet Drug induced health problems.").

The Settlement Agreement expressly preserves "individual claims for monetary relief for medical monitoring required as a result of use of the Recalled Devices,"[10] while releasing claims for equitable relief and monetary claims brought on behalf of or as part of a class action or any other form of aggregate, group, or mass action. *See, e.g*., SA §§ 1.21, 4.2, 4.5.1, 4.5.2. This release is supported by a number of cases, including the Second Circuit's decision in *Hyland*, which affirmed the approval of a non-opt out Rule 23(b)(2) settlement where, like here, the release covered non-monetary relief as well as "the right of individual class members to pursue claims for monetary damages 'on an aggregate basis,'" but expressly preserved the right of class members to "file individual lawsuits for monetary relief on a non-class basis." 48 F.4th at 116, 120-21. There, the court held that the carveout to preserve individual damages claims protected the due process rights of class members. *Id*. at 120; *accord Berry*, 807 F.3d at 609-10  (certification of a Rule 23(b)(2) settlement class on a non-opt out basis was appropriate; the release of claims for statutory

---

[10] The Settlement Agreement also preserves each Settlement Class Member's "Personal Injury Claims." *See, e.g*., SA §§ 1.29, 4.1-4.2, 4.5.1.

damages did not render Rule 23(b)(2) certification improper, and class members retained the right to sue for actual damages on an individual basis); *Legere-Gordon v. Firstcredit Inc*., 2021 WL 276695, at *2 (D. Idaho Jan. 26, 2021) (approving non-opt out Rule 23(b)(2) settlement that included release of claims for injunctive relief and the right to assert damages claims "in any class or representative proceeding," but "does not require class members to release any individual claims for damages they may have."); *Thomas v. Fin. Corp. of Am.*, No. 19-cv-152, at ECF 86, ¶ 14 (N.D. Tex. July 13, 2020) (granting final approval of a non-opt out Rule 23(b)(2) settlement which released claims for equitable relief and "the opportunity to participate in any class or representative proceeding related to [damages] claims," but expressly preserved "individual damages claims.").

*In re Budeprion XL*, which approved a Rule 23(b)(2) settlement that released claims for equitable or injunctive relief, including claims for restitution, but "did not release any personal injury claims against Defendants," is instructive. *In re Budeprion XL*, 2012 WL 2527021, at *5. There, the Court found:

> [T]he Class faced the very real possibility of walking away with nothing. Importantly, the settlement does not release personal injury claims that individual Class members may wish to file against Defendants. Thus, those harmed by Defendants' products remain free to vindicate their rights through the courts for any physical or emotional damages they have suffered. Leaving open the possibility for those truly harmed by Defendants' products must be considered a victory for the Class.

*Id.* at *19. The same is true in this case. The court also rejected an objection that the settlement benefits were "illusory," declaring, in words equally applicable here, that "[w]ith respect to monitoring, this [settlement] forces Defendants to take actions previously not required." *Id*. The court stressed that "the settlement agreement undeniably works a change in the relationship

between the parties, and the relief afforded the Class is not illusory."[11] *Id*. Here, too, the Settlement confers real and important benefits upon the Settlement Class.

### b. Defendants "Acted or Refused to Act on Grounds that Apply Generally to the Class"

Courts in this District have found that "certification of a Rule 23(b)(2) class is proper where, as here, the Defendants have "acted or refused to act on grounds that apply generally to the class." *See, e.g., Hundreds Is Huge, Inc*., 638 F. Supp. 3d at 498; *Eyebobs, LLC*, 638 F. Supp. 3d at 473. The Settlement Class is comprised of every U.S. user of a Recalled Device, each of whom was subject to potential exposure to the Foam Toxins and the possibility of an increased risk of future disease. It is undeniable that the challenged conduct—*e.g*., Philips' design, manufacture, marketing, and sale of Recalled Devices containing the alleged Defect, as well as Philips' delay in initiating the Recall and its alleged negligence in handling of the Recall—applied generally to the Settlement Class as a whole.

### c. The Equitable Relief Is "Appropriate Respecting the Class as a Whole"

The second requirement of Rule 23(b)(2) has three components: "the requested relief must be (1) final (2) injunctive or declaratory and (3) appropriate to the class as a whole." 2 *Newberg and Rubenstein* § 4:29 (footnotes omitted). In assessing whether a Rule 23(b)(2) settlement class meets this requirement, courts in this District and elsewhere look to the form of relief provided by the proposed settlement. For example, in the *Le Sportsac* litigation, the plaintiffs' complaint alleged that the defendant's website violated the Americans with Disabilities Act. The court found

---

[11] The court also rejected an objection that certification under Rule 23(b)(2) was inappropriate because the complaint had originally sought not only equitable relief but also money damages because such an objection "would tie the Court's hands by forcing it to ignore the fluid nature of litigation. The objectors view the question of class certification as 'frozen in time based on the allegations in the class action complaint.' This is unrealistic and runs counter to the principle that the law favors settlement of class actions." *Id*. at *10.

that certification of a settlement class under Rule 23(b)(2) was appropriate because the equitable relief provided by the settlement "invokes a single, common remedy for all class members: equal and full access to [the defendant's website]." *Le Sportsac, Inc.*, 2023 WL 375903, at *4; *see also Charles Tyrwhitt, Inc.*, 2020 WL 8513583, at *4 (same); *In re Budeprion XL*, 2012 WL 2527021, at *9 (Rule 23(b)(2) certification of settlement class requires that "the relief sought should benefit the entire class"); *Talone v. Am. Osteopathic Ass'n*, 2018 WL 6318371, at *11 (D.N.J. Dec. 3, 2018) (Rule 23(b)(2) satisfied because settlement provisions "apply indivisibly to each member of the Settlement Class and the two Sub-Classes.").

Here, as discussed previously, the relief afforded by the proposed Settlement Agreement is equitable, and the MAP Benefits will be made available uniformly to all Settlement Class Members who share the same interest in being able to obtain medical information and guidance regarding the long-term health effects, if any, of their use of the Recalled Devices. SA § 3; *see also* SA Exhibit 3. Thus, just as in *Le Sportsac, Inc.*, "the class as a whole shares the same interest in obtaining the injunctive relief provided by the settlement." 2023 WL 375903, at *4; *accord Liberty Res., Inc.*, 2023 WL 3204018, at *9 ("[T]he injunctive relief provided under the settlement affects all class members equally".); *Comm'rs of Pub. Works of City of Charleston v. Costco Wholesale Corp.*, 2024 WL 1004697, at *3 (D.S.C. Mar. 8, 2024) (certifying (b)(2) settlement class where "Defendants have acted on grounds generally applicable to the class as a whole [and] the Settlement Agreement treats all settlement class members equally in granting them the benefits of injunctive relief.").

### d.   The Settlement Class Satisfies the "Cohesiveness" Requirement

In certifying a class under Rule 23(b)(2) in the Third Circuit, courts consider whether the proposed class is "cohesive." *Bland v. PNC Bank, N.A.,* 2016 WL 10520047, at * 23 (W.D. Pa. Dec. 16, 2016). This means that "the conduct is such that it can be enjoined or declared unlawful

only as to all class members or as to none of them." *Id.*  This cohesiveness requirement is clearly satisfied here because every member of the Settlement Class used a Recalled Device with the alleged defect; was potentially exposed to toxins and a risk of injury; and will benefit from the MAP Benefits. *See Sourovelis v. City of Phila.*, 515 F. Supp. 3d 343, 354 (E.D. Pa. 2021) (certifying a settlement class under Rule 23(b)(2), finding that "the class is cohesive in that there are no apparent individualized issues among the class members," since "[a]ll of the class members have the same issues and seek the same relief."); *see also In re Diet Drugs I*, 1999 WL 673066, at *10 ("Based on Plaintiffs' allegations that AHP acted in such a way as to create liability to the class as a whole and that injunctive relief is applicable to the class as a whole, the court finds that the class claims are cohesive."); *Collier*, 192 F.R.D. at 184 ("The court also finds that the class and the plaintiff's claims are cohesive, in that all members of the class would be subject to the same or similar injuries due to MCHA's alleged non-compliance and are entitled to declaratory relief.").

### D.  The Notice Program Satisfies Rule 23 and the Requirements of Due Process

Rule 23(e)(1)(B) requires the Court to "direct notice in a reasonable manner to all class members who would be bound by the proposal." In an action certified under Rule 23(b)(2), the Court "may direct appropriate notice to the class." Fed. R. Civ. P. 23(c)(2)(A). "Generally speaking, the notice should contain sufficient information to enable class members to make informed decisions on whether they should take steps to protect their rights, including objecting to the settlement." *In re NFL III*, 821 F.3d at 435.

### 1.  The Proposed Notice Plan Is Reasonable and Appropriate

The proposed Notice Plan aims to provide direct notice by either first-class mail or email (if an email address is available) to all known Settlement Class Members. SA § 8.1.2.1; *see also* BG Decl. ¶¶ 9, 13-16. As previously discussed, BrownGreer will utilize information that has

already been collected and updated in connection with disseminating notice of the Economic Loss Settlement and will further update that information. *See* BG Decl. ¶¶ 10-16. The Notice Plan seeks to provide notice to Settlement Class Members by: (1) first class mail, postage prepaid, or email (if an email address is available) to their last known address based on the available information; (2) electronic upload by Philips RS of a notification to all Settlement Class Members who elected to receive messages through DreamMapper App, which will refer them to the Settlement Website only; (3) the posting a copy of the Notice on the Settlement Website, www.RespironicsMedicalAdvancementProgram.com; (4) posting a copy of the Notice on the settlement website for the Economic Loss Settlement, www.respironicscpap-elsettlement.com; (5) providing a copy of the Notice and requesting that it be posted on the MDL Court's website for the MDL, https://www.pawd.uscourts.gov/mdl-3014-re-philips-recalled-cpap-bi-level-pap-and-mechanical-ventilator-products-litigation; and (6) as the MDL Court may otherwise direct, in accordance with the requirements of Federal Rule of Civil Procedure 23(c)(2)(A). SA § 8.1.2; *see also* SA Exhibits 4 and 4(a).

The proposed Notice Plan is both reasonable and appropriate and fully meets the requirements of Due Process and Federal Rule of Civil Procedure 23. Indeed, the direct notice proposed here goes beyond what has been approved as adequate in other Rule 23(b)(2) class settlements. *See, e.g.*, *Liberty Res., Inc.*, 2023 WL 3204018, at *2 (finding on preliminary approval that the plan of "publishing the relevant information on the City's website and in local English- and Spanish-language newspapers as well as distributing the notice to local disability rights organizations--was reasonable under Rule 23(e)(1)."); *see also* Advisory Committee Notes on 2003 Amendment to Rule 23(c)(2) ("When the court does direct certification notice in a (b)(1) or (b)(2) class action, the discretion and flexibility established by subdivision (c)(2)(A) extend to the

method of giving notice. Notice facilitates the opportunity to participate. Notice calculated to reach a significant number of class members often will protect the interests of all.… The court should consider the costs of notice in relation to the probable reach of inexpensive methods.").

        **2.**    **The Proposed Notice Clearly Explains Settlement Class Members' Rights**

The proposed form of Notice, attached to the Settlement Agreement as Exhibit 4, fully complies with Rule 23 and Due Process mandates. The proposed Notice is concise and is written in plain language; it informs Settlement Class Members of the Settlement and its key terms; and ensures that they will be able to review the Settlement Agreement and other relevant materials to understand their rights and options. *See* SA Exhibit 4; 2 *Newberg and Rubenstein* § 4:36 ("Class members in (b)(2) cases receive notice that a case has been settled and an award of fees sought because they are provided the opportunity to object to—or voice their concerns about—the terms of the settlement and/or to the attorney's fees.").

The proposed Notice provides Settlement Class Members with all that is required in order for them to review the proposed Settlement and assert any objections. Specifically, the Notice contains the relevant categories of information suggested in the Manual for Complex Litigation, Fourth § 21.312 since it: defines the Settlement Class; clearly describes the options open to the class members and the deadlines for taking action; describes the essential terms of the proposed Settlement; discloses the requests for service awards; provides information regarding the anticipated request for attorneys' fees, costs and expenses; indicates the time and place of the hearing to consider final approval of the Settlement; describes the method and deadline for objecting to the Settlement; and states the size of the Settlement Fund that will be used to create the Settlement's equitable benefits. *See* SA Exhibit 4. In addition, the Notice prominently displays the address of the Settlement Website, www.RespironicsMedicalAdvancementProgram.com,

which will provide Settlement Class Members with additional relevant documents and information. *Id.*; *see also In re Rent-Way Sec. Litig.*, 305 F. Supp. 2d 491, 511 (W.D. Pa. 2003) ("[The due process] standard is met if the notice informs class members concerning: (i) the nature of the litigation; (ii) the general terms of the settlement; (iii) where complete information can be located; and (iv) the time and place of the fairness hearing and that objectors may be heard.").

### 3.      The Proposed Notice Administrator Is Qualified

The Parties carefully selected BrownGreer to be Notice Administrator for dissemination of notice as part of this Settlement. SA § 1.22. The Notice Administrator's duties and responsibilities are set forth in the Settlement Agreement. *See* SA §§ 8, 9.3, 17.4. Mr. Orran L. Brown, Sr. has over thirty years of experience as a lawyer, claims administrator, and notice administrator in the mass claims area, including class actions. *See* BG Decl. ¶ 2 & Ex. 1 (personal Biography of Mr. Brown). His firm, BrownGreer, has specialized in notice administration and settlement administration since it was founded in 2002 and it "has performed crucial administration or review roles in more 100 major programs involving the disposition of over $33 billion in payments to qualifying claimants." *See id.* ¶¶ 3-4 & Ex. 2 (BrownGreer Firm Overview). Mr. Brown and BrownGreer are well qualified to perform the duties of the Notice Administrator.

### E.      A Final Fairness Hearing Should Be Scheduled

The Court should schedule a Final Fairness Hearing for the following purposes: (1) to finally determine whether the proposed Settlement is a fair, reasonable, and adequate settlement as to the Settlement Class Members within the meaning of Rule 23(e)(2) of the Federal Rules of Civil Procedure and direct that the Settlement be consummated according to its terms and conditions; (2) to determine whether the Notice was appropriate and disseminated in accordance with the Preliminary Approval Order; (3) to determine whether the Settlement Class should be certified under Rule 23(b)(2) and whether to confirm the appointment of the Settlement Class

Representatives and Settlement Class Counsel; (4) to determine whether a Final Judgment should be entered dismissing the Medical Monitoring Claims of the Settlement Class against the Defendants with prejudice, without costs, as required by the Settlement Agreement; (5) to consider Settlement Class Counsel's forthcoming motion for an award of attorneys' fees and expenses, and service awards; (6) to consider timely and valid written objections that conform to the requirements set forth in the Settlement Agreement; and (7) to consider such other matters as the Court may deem appropriate. *See* Manual for Complex Litigation, Fourth §§ 21.633, 21.634; *In re NFL I*, 775 F.3d at 581-83. Plaintiffs propose, and the Philips Defendants do not oppose, the following schedule for final approval:

| Event | Date |
|---|---|
| Preliminary Approval Order | TBD |
| Commencement of Class Notice Period | Date of Entry of Preliminary Approval Order |
| Completion of Dissemination of Notice Pursuant to Notice Plan | 30 days after entry of Preliminary Approval Order |
| Deadline for Settlement Class Counsel to File Motion for Attorneys' Fees and Expenses | 30 days prior to Objection Deadline |
| Deadline for Settlement Class Members to Object to the Settlement | 90 days after entry of Preliminary Approval Order (60 days after Notice is disseminated) |
| Motion for Final Approval of the Settlement Agreement and Response to Objections | 21 days prior to Final Fairness Hearing |
| Filing of Objections with the Court | 21 days prior to Final Fairness Hearing |
| Filing of Proof of Compliance with Notice Plan | 21 days prior to Final Fairness Hearing |
| Filing of Proof of Compliance with CAFA | 21 days prior to Final Fairness Hearing |
| Final Fairness Hearing | At least 4 months after entry of Preliminary Approval Order |

As part of the Preliminary Approval Order, Settlement Class Counsel also request that the Court "stay and enjoin Settlement Class Members from pursuing all Medical Monitoring Claims against Defendants and the other Released Parties, whether in the MDL Court or in any other court or tribunal, until such time as the MDL Court has determined whether to enter the Final Order and Judgment." SA § 7.2.8; *see, e.g.*, Order Preliminarily Approving Proposed Class Settlement Agreement and Release of Economic Loss Claims, at ¶ 33 (ECF 2289). The Court has the authority to enter such an injunction, directed at members of the putative Settlement Class, pursuant to 28 U.S.C. §§ 1651(a) and 2283 because it is necessary and appropriate in aid of the Court's continuing jurisdiction and authority. *See, e.g.*, *In re Diet Drugs*, 282 F.3d 220, 235 (3d Cir. 2002) (recognizing "a category of federal cases for which state court actions present a special threat to the jurisdiction of the federal court" – namely, where "a federal court [is] entertaining complex litigation, especially when it involves a substantial class of persons from multiple states, or represents a consolidation of cases from multiple districts. . . ."); *Carlough v. Amchem Prods., Inc.*, 10 F.3d 189, 203-04 (3d Cir. 1993) ("Here the prospect of settlement was indeed imminent, as in other cases in which federal courts have issued injunctions.").[12] Indeed, that is why courts "regularly issue injunctions restraining parallel litigation between preliminary approval and final approval of settlements." *Wood v. Saroj & Manju Invs. Phila. LLC*, 2020 WL 7711409, at *13 (E.D. Pa. Dec. 28, 2020); *see also In re Chinese-Manufactured Drywall Prods. Liab. Litig.*, 2011 WL 2313866, at *7 (E.D. La. June 9, 2011) ("[S]tay orders on parallel state court cases are

---

[12] *See also Atl. Coast Line R.R. v. Brotherhood of Locomotive Eng'rs*, 398 U.S. 281, 295 (1970) (courts will invoke the "necessary in aid of its jurisdiction" exception "to prevent a state court from so interfering with a federal court's consideration or disposition of a case as to seriously impair the federal court's flexibility and authority to decide that case"); *In re Baldwin-United Corp.*, 770 F.2d 328, 337 (2d Cir. 1985) (same); *In re Corrugated Container Antitrust Litig.*, 659 F.2d 1332, 1334 (5th Cir. 1981), *cert. denied*, 456 U.S. 936 (1982) (same); *In re Joint E. & S. Dist. Asbestos Litig.*, 134 F.R.D. 32, 37 (E. & S.D.N.Y. 1990) (same).

routinely included in preliminary approval orders of class settlements issued by federal district courts pursuant to their authority under the All Writs Act and Anti-Injunction Act.").

## V.     **CONCLUSION**

The proposed Medical Monitoring Settlement will confer important and innovative equitable relief upon all Settlement Class Members. Specifically, the $25 million non-reversionary payment by the Philips Defendants will fund the Medical Advancement Program, which will provide valuable MAP Benefits for fifteen years to members of the Settlement Class concerning the potential health risks posed by their use of the Recalled Devices. The Settlement avoids the considerable risks, delay, and expense of continued litigation of the claims for medical monitoring relief, whose ultimate success was far from assured. This proposed Settlement complements the recent settlements of the Economic Loss Claims and Personal Injury Claims, and the release in the Settlement Agreement expressly carves out Settlement Class Members' Personal Injury Claims as well as their right to bring individual claims for medical monitoring monetary relief on their own behalf.

Accordingly, Settlement Class Counsel respectfully submit that the Court should grant Preliminary Approval of the Settlement under Rule 23(e)(1)(B) and conditionally certify the proposed Settlement Class under Rule 23(b)(2).

Dated: May 9, 2024                                    Respectfully submitted,

*/s/ Sandra L. Duggan*                          */s/ Christopher A. Seeger*
Sandra L. Duggan, Esquire                    Christopher A. Seeger, Esquire
**LEVIN SEDRAN & BERMAN LLP**        **SEEGER WEISS LLP**
510 Walnut Street, Suite 500                 55 Challenger Road, 6th Floor
Philadelphia, PA 19106                          Ridgefield Park, NJ  07660
(215) 592-1500 (phone)                         (973) 639-9100 (phone)
sduggan@lfsblaw.com                           cseeger@seegerweiss.com

_/s/ Steven A. Schwartz_
Steven A. Schwartz, Esquire
**CHIMICLES SCHWARTZ KRINER &**
**DONALDSON-SMITH LLP**
361 West Lancaster Avenue
Haverford, PA 19041
(610) 642-8500 (phone)
steveschwartz@chimicles.com

_/s/ Kelly K. Iverson_
Kelly K. Iverson, Esquire
**LYNCH CARPENTER, LLP**
1133 Penn Avenue, 5th Floor
Pittsburgh, PA 15222
(412) 322-9243 (phone)
kelly@lcllp.com

*Plaintiffs' Co-Lead Counsel / Proposed Settlement Class Counsel*

_/s/Roberta D. Liebenberg_
Roberta D. Liebenberg, Esquire
**FINE, KAPLAN AND BLACK, R.P.C.**
One South Broad Street, 23rd Floor
Philadelphia, PA 19107
(215) 567-6565 (phone)
rliebenberg@finekaplan.com

*Chair Settlement Committee / Proposed Settlement Class Counsel*

_/s/ D. Aaron Rihn_
D. Aaron Rihn, Esquire
**ROBERT PEIRCE & ASSOCIATES,**
**P.C.**
707 Grant Street, Suite 125
Pittsburgh, PA 15219
(412) 281-7229 (phone)
(412) 281-4229 (fax)
arihn@peircelaw.com

Peter St. Tienne Wolff, Esquire
**PIETRAGALLO GORDON ALFANO**
**BOSICK & RASPANTI, LLP**
One Oxford Centre - 38th Floor
Pittsburgh, PA 15219
(412) 263-2000 (phone)
(412) 263-2001 (fax)
psw@pietragallo.com

*Plaintiffs' Co-Liaison Counsel*