# EXHIBIT C

# to Brief in support of Preliminary Approval of Medical Monitoring Settlement Agreement

Exhibit __C__

to Br. in Support of
Preliminary Approval
of Medical Monitoring
Class Settlement

## IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| IN RE: PHILIPS RECALLED CPAP, BI-LEVEL PAP, AND MECHANICAL VENTILATOR PRODUCTS LITIGATION<br><br>This Document Relates to:<br>All Actions Asserting Claims for Medical Monitoring | Master Docket: Misc. No. 21-mc-1230-JFC<br><br>MDL No. 3014 |

### DECLARATION OF ORRAN L. BROWN SR. OF BROWNGREER PLC
### ON PROPOSED NOTICE PLAN

I, Orran L. Brown, Sr., hereby declare under penalty of perjury pursuant to 28 U.S.C. § 1746 that the following is true and correct:

1.      I have personal knowledge of the matters stated in this Declaration. In forming my opinions regarding notice in this action, I have drawn from my extensive class action experience, as described below.

2.      I have worked in the mass claims area, including class actions, for over 30 years. I have extensive experience as a lawyer handling class action proceedings, settlements and notices; as a claims administrator designing and implementing class action settlements; as a notice administrator designing notice plans and executing notice to claimants and counsel; as a trustee or special master involved in multiple claim proceedings; and as an educator on class actions and other complex litigation. My personal biography is attached to this Declaration as Exhibit 1.

3.      BrownGreer has specialized in notice administration and settlement administration since my partner, Lynn Greer, and I founded the firm in 2002. We have deep experience in the legal and administrative aspects of the design, approval, and implementation of notice plans,

1

settlement programs and the design, staffing and operation of claims facilities to provide damages payments, medical monitoring, or other benefits for the resolution of multiple claims through class action settlement, bankruptcy reorganization, voluntary agreement, or other aggregation vehicles. We have played major roles in many of the largest and most complex multiple claim proceedings and multiple claim settlement programs in history, serving as administrators, special masters, trustees, or settlement counsel. The BrownGreer Firm Overview attached as Exhibit 2 to this Declaration provides detail on our firm.

4.      BrownGreer has performed crucial administration or review roles in more than 100 major programs involving the disposition of over $33 billion in payments to qualifying claimants. In the course of the implementation of claims programs, BrownGreer has designed, written and issued over 14 million notices to claimants and counsel on the outcome of the review of their claims. My work as a lawyer and claims administrator regularly involves drafting the text of notices to known and unknown claimants or members of a class or settlement group, designing the appearance of such notices to make them concise, clear and understandable, and designing and implementing the method of distributing such notices in the best practicable manner to the persons or entities affected by them. In its capacity as a notice administrator, BrownGreer has sent more than 41 million direct notices by mail and email and has designed and implemented print and internet publication notice campaigns achieving hundreds of millions of exposures. We have extensive experience in all aspects of notice and settlement design and implementation, including:

(a) On countless occasions, I have drafted and overseen the implementation of specific campaigns to certain groups of claimants before an existing claims facility to accelerate the disposition of stalled claims, to alert claimants to information and materials needed to complete their claims to be reviewed for eligibility determinations, and to advise claimants of the results of processing steps on their claims.

(b) I have designed, and we have programmed, tested, hosted and maintained, many settlement websites to provide information on programs and containing complex

functionality permitting claimants and their counsel to submit claims materials, receive notices on claim outcomes, take action on claims, and request materials.

(c) We have designed, staffed, trained and operated call center systems and automated call systems for claimants and counsel to hear information on settlement programs, request information on notices and programs, or speak with specialists in the programs.

(d) I have advised and participated in the implementation of notice programs to known and unknown potential claimants or class members, assessed the reasonableness and sufficiency of such notice programs, from both practical and legal perspectives, and worked with marketing consultants to place public notice in written and broadcast media.

(e) I regularly advise companies and claims administrators and draft individual group notices to conform to applicable legal requirements and to make the text and instructions provided in such notices comprehensible and as simple as possible.

5. BrownGreer has administered, served as experts, and/or otherwise consulted with settled parties on many notice programs approved as sufficient by the overseeing court, including programs that required direct notice by mail or email to class members. The Firm Overview (Exhibit 2) shows our varied administration experience.

## SETTLEMENT CLASS

6. The Class Settlement Agreement and Release of Medical Monitoring Claims ("Settlement Agreement" or "Agreement") defines the Settlement Class as: all individuals in the United States,[1] including United States citizens, United States residents, and United States military, diplomatic personnel and employees living or stationed overseas, who have used a Recalled Device. SA § 1.33.

7. Excluded from the Settlement Class are: (a) Defendants and their officers, directors, and employees; and (b) the MDL Court, Settlement Mediator, and Special Masters assigned to the MDL.

---

[1] Pursuant to the Settlement Agreement, the "United States" means the United States of America, its Territories, and the District of Columbia.

### NOTICE TO THE SETTLEMENT CLASS

8.      The Settlement Class is proposed to be certified under Rule 23(b)(2) of the Federal Rules of Civil Procedure. In contrast to notice to a class certified pursuant to Rule 23(b)(3), which must be "the best notice that is practicable under the circumstances," notice to a class certified pursuant to Rule 23(b)(2) need only be "appropriate." *See* Fed. R. Civ. P. 23(c)(2).

9.      Based on my experience, the proposed Notice to the Settlement Class will be more than appropriate. The proposed Notice (attached to this Declaration as Exhibit 3) will be posted on the Settlement Website, www.RespironicsMedicalAdvancementProgram.com, the website for the Economic Loss Settlement, and BrownGreer will request that it be posted on the MDL Court's website for the MDL; and it will be disseminated primarily through direct notice, either by mail or by email (where an email address is available). Notice by mail will be in a HIPAA-compliant security envelope, which contains a pattern printed on the inside to shield the contents of the envelope, and the exterior of the envelope will not reveal the medical nature of the litigation. Notice to the Settlement Class will build upon the resources created in the course of providing notice of the Economic Loss Settlement to the Settlement Class in December 2023, including the extensive contact list developed as part of that process.

10.      The Settlement Administrator for the Economic Loss Settlement, Angeion Group LLC (ECF 2289 at ¶ 6), developed a Settlement Class List containing postal and email addresses for users of Recalled Devices based on "data from Philips Respironics for Users who registered in its Recall Programs, as well as other User information collected by Philips Respironics from DME providers as part of the Recall." ECF 2216-3 at ¶ 21; ECF 2657-3 at ¶ 7. For the postal addresses, the United States Postal Service's ("USPS") National Change of Address ("NCOA") Database

was used initially to update the addresses. ECF 2657-3 at ¶ 11. All returned items were subject to further processing which resulted in a majority of returned mailings being resent to updated addresses. *Id.* at ¶ 15. In addition, nearly 32,000 additional email addresses were obtained from Settlement Class Members who submitted their addresses at the Economic Loss Settlement Website pending preliminary approval of the Economic Loss Settlement. *Id.* at ¶ 19. BrownGreer is coordinating with Angeion Group to transfer all information from the Class List to BrownGreer.

11.     BrownGreer will employ best practices to increase the deliverability rate of the mailed notices by causing all mailing address information to be updated using the NCOA, which provides updated address information for individuals or entities who have moved during the previous four years and filed a change of address with the USPS. In addition, the addresses will be certified via the Coding Accuracy Support System to ensure the quality of the zip code and verified through Delivery Point Validation to verify the accuracy of the addresses.

12.     Notices returned to BrownGreer by the USPS with a forwarding address will be re-mailed to the new address provided by the USPS. Notices returned to BrownGreer by the USPS without forwarding addresses will be subjected to an address verification search (commonly referred to as "skip tracing") through PacificEast, a global provider of consumer data, mailing information and analytics. Notices will be re-mailed to the updated addresses obtained via the skip tracing process. BrownGreer will update the Class List with any new information gathered in these steps.

13.     As part of the Notice plan, BrownGreer will send direct email notice substantially in the form of the proposed Notice, to Settlement Class Members on the Class List who have valid email addresses. BrownGreer follows best practices to both validate emails and increase deliverability.

14.     Specifically, before distributing the email notice, BrownGreer will validate all email addresses to promote deliverability. Those Settlement Class Members whose emails are deemed invalid will receive notice by mail instead.

15.     Further, BrownGreer will design the email notice and its delivery process to avoid many common "red flags" that might otherwise cause an email recipient's spam filter to block or identify the email notice as spam. For example, where a notice campaign involves a high volume of emails, BrownGreer sends the email notices in smaller batches over the course of several days, and does not include attachments like the Notice to the email notice, because high volume issuances and attachments are often interpreted by various Internet Service Providers ("ISP") as spam or untrustworthy.

16.     BrownGreer also accounts for the real-world reality that some emails will inevitably fail to be delivered during the initial delivery attempt. Therefore, after the initial noticing campaign is complete, BrownGreer, after an appropriate resting period (which allows any temporary block at the ISP level to expire) causes a second round of email noticing to continue to any email addresses that were previously identified as soft bounces and not delivered. In our experience, this minimizes emails that may have erroneously failed to deliver due to sensitive servers and optimizes delivery. All emails that are undeliverable and identified as hard bounces, or fail to deliver after reattempt efforts, will be converted to letter notices that BrownGreer will mail using the associated physical addresses.

17.     The Notice Administrator must distribute the proposed Notice "[w]ithin 30 days after entry of the Preliminary Approval Order." SA § 8.1.2. To meet this requirement, BrownGreer will begin the email notice campaign no later than 23 days after the entry of the Preliminary Approval Order, sending emails in batches or waves, to maximize a successful email delivery rate;

and print and mail initial letter Notices no later than 30 days after entry of the Preliminary Approval Order.

18.     Before the Final Approval Hearing, BrownGreer will submit a supplemental declaration providing the Court with, among other things, a detailed, verified account of the success rate of the direct notice campaign.

19.     As part of the direct notice provided by the Notice plan, I understand that Philips Respironics will also issue a push notification to approximately 220,000 users of the DreamMapper App which will refer them to the Settlement Website.  A true and correct copy of the DreamMapper App Notice is attached to this Declaration as Exhibit 4.

## SETTLEMENT WEBSITE

20.     The Settlement Agreement requires the Settlement Administrator to establish and maintain an interactive Settlement Website for the benefit of Settlement Class Members to provide them with information regarding the approval process for the Settlement and Class Members' rights with respect thereto. SA § 17.4. BrownGreer will work with the Settlement Administrator to ensure the Settlement Website resources will be available in both English and Spanish, and BrownGreer will be able to supplement this initial information resource with a translation of the Notice documents in any language, should it be requested by a Settlement Class Member.

21.     On the Settlement Website, Settlement Class Members will be able to easily view general information about this Settlement, review relevant Court documents, and view important dates and deadlines pertinent to the Settlement.

22.     The Settlement Website will be ADA-compliant and optimized for mobile visitors so that information loads quickly on mobile devices. Additionally, the Settlement Website will be designed to maximize search engine optimization through Google and other search engines.

Keywords and natural language search terms will be included in the Settlement Website's metadata to maximize search engine rankings.

23.     In addition to the dedicated Settlement Website, the Economic Loss Settlement Website will also be used as part of the Notice Plan. The Notice will also be posted on the Economic Loss Website in both English and Spanish and direct Settlement Class Members to the Settlement Website.

## NOTICE PURSUANT TO THE CLASS ACTION FAIRNESS ACT OF 2005

24.     Within ten days of the filing of the Settlement Agreement with this Court, BrownGreer will cause notice to be disseminated to the appropriate state and federal officials pursuant to the requirements of the Class Action Fairness Act, 28 U.S.C. §1715.

## PLAIN LANGUAGE NOTICE DESIGN

25.     The proposed Notice is designed to be "noticed," reviewed and by presenting the information in plain language, understood by Settlement Class Members. The design of the Notice Plan follows the principles embodied in the Federal Judicial Center's illustrative "model" notices posted at www.fjc.gov. The Notice contains plain-language summaries of key information about the rights and options of Settlement Class Members pursuant to the terms of the Settlement. Consistent with normal practice, prior to being delivered and published, the Notice will undergo a final edit for accuracy.

26.     Rule 23(c)(2) of the Federal Rules of Civil Procedure requires class action notices to be written in "plain, easily understood language." Brown Greer maintains a strong commitment to adhering to this requirement, drawing on its experience and expertise to craft notices that effectively convey the necessary information to Settlement Class Members in plain language.

**DATA SECURITY**

27.     BrownGreer's programs and systems are evaluated annually and every year since 2016, it has been awarded SOC 2, Type II certification. SOC 2, Type II certification is an independent auditor's report that follows a three-month examination of the design and actual operating effectiveness of our system's security, availability, and confidentiality controls, considering system aspects from infrastructure, to software, data protection, system monitoring, and recovery. BrownGreer runs regular vulnerability scans on all hosts within its network, both internally and public facing. For any area where a potential risk may develop, immediate steps are taken to address them and continually enhance data security.

**CONCLUSION**

28.     The Notice plan outlined above includes direct notice via email and postal mail, which builds on the extensive resources developed as part of the Economic Loss Settlement. Further, the Notice plan provides for the implementation of a dedicated Settlement Website to further inform members of the Settlement Class of their rights and options in the Settlement.

29.     It is my opinion that the Notice plan described herein meets the requirements of due process and Fed. R. Civ. P. 23, and will provide appropriate notice to Settlement Class Members of the proposed Settlement.

I hereby declare under penalty of perjury that the foregoing is true and correct.

Dated:  May 9, 2024

_____
Orran L. Brown, Sr.

# Exhibit 1:

Personal Biography of Orran L. Brown, Sr.



FOUNDING PARTNER
# ORRAN L. BROWN, SR.



BROWNGREER PLC
250 Rocketts Way
Richmond, Virginia  23231-3753
Direct Dial:  (804) 521-7201
Facsimile:  (804) 521-7299
obrown@browngreer.com

Orran provides guidance, leadership and services for the management and exchange of information in multidistrict litigation and the design, approval and implementation of compensation systems, notice programs and claims facilities for the resolution of claims through class action settlement, bankruptcy reorganization, voluntary agreement, and other aggregation vehicles. He serves as a neutral claims administrator, a trustee directing the implementation of settlement programs, and a court-appointed special master presiding over discovery, adjudicating discovery disputes and ensuring that pre-trial discovery progresses efficiently and in a timely manner.

## *Education*

**Harvard Law School**, Cambridge MA
J.D. *cum laude,* 1981 (research assistant to Professor Lloyd Weinreb in criminal law and process; various student organizations)

**Hampden-Sydney College**, Hampden-Sydney, VA
Hampden-Sydney, Virginia. B.A. *summa cum laude*, Government and Foreign Affairs, 1978 (GPA 4.0 out of 4.0; Co-Valedictorian; Chairman of the Student Court; Baker Scholar; Jefferson Scholar; Phi Beta Kappa; Omicron Delta Kappa; Pi Sigma Alpha; Eta Sigma Phi; Algernon Sydney Sullivan Medallion for Leadership)

## *Professional Experience*

**BrownGreer PLC**, Richmond, Virginia.
2002 – Present. Co-Founder and Chairman of the leading firm for case management of MDL and multiple claim litigation and the design and operation of compensation and claims facilities.

**Wheat Professor, Hampden Sydney College,** Hampden Sydney, Virginia.
2018 – 2020. Taught an upper level course on Leadership and Ethics.

**Bowman and Brooke, LLP**, Richmond, Virginia.
1999 – 2002. Partner. Founder and Director of the Mass Claims Resolution Group and member of



the firm's Executive Committee. Handled mass tort, class action, and other group claims facility matters, proceedings and appeals. Advised management, trustees, and claims administrators on the efficient design and operation of group claims facilities, strategies for the successful resolution of claims, the negotiation and drafting of resolution plans, legal proceedings to obtain court approval, and compliance with the agreements or court orders governing the claims resolution process.

**Adjunct Professor, University of Richmond School of Law.**
1997 – 2004. Taught an upper-level course on MDL proceedings and complex litigation from 2001 through 2004 and trial and appellate practice from 1997 through 2001.

**Outside Counsel to the Dalkon Shield Claimants Trust,** Richmond, Virginia.
1990 – 2000. Served as the primary outside general counsel to the $3.5 billion trust established in the Chapter 11 bankruptcy proceeding of the A. H. Robins Co. to handle over 400,000 personal injury claims arising from the Dalkon Shield IUD. Advised the Trust's management, trustees, inside counsel, and other outside counsel in the United States and other countries on the legal and managerial aspects of the Trust's fiduciary duties, operations (including employment issues and the Trust's lease, banking, investment and other contractual relationships), claims processing arrangements, and coordination and design of Alternative Dispute Resolution, arbitration, and trial proceedings on Dalkon Shield Claims. Represented the Trustees in the judicial proceedings in the bankruptcy and district courts, and many appeals to the Court of Appeals for the Fourth Circuit, arising out of implementing the bankruptcy Plan. Performed the same role for the two other trust funds created to handle Dalkon Shield Claims. Handled the steps and proceedings to close the three trusts and create insurance coverage and an escrow agent for run-off issues until 2008.

**Christian, Barton, Epps, Brent & Chappell**, Richmond, Virginia.
1986 – 1995. Partner and Member of the firm's Executive Committee. Handled securities fraud class actions, employment, products liability and commercial litigation in state and federal courts in Virginia and elsewhere. Counseled clients on employment law issues. Arbitrator for the American Arbitration Association for securities fraud and construction cases. Joined the partnership in 1990. Began representing the Dalkon Shield Claimants Trust in 1990 while still a member of this firm.

**Litigator in Houston, Texas.**
1982 – 1986. First with Liddell, Sapp, Zively, Brown & LaBoon and then with Miller, Keeton, Bristow & Brown after the Liddell, Sapp Litigation Chairman moved to that firm. General litigation matters, including the *Pennzoil v. Texaco* suit arising from Texaco's acquisition of Getty Oil. Tied for the highest score on the February 1983 Texas bar examination.

**Law Clerk to the Hon. Robert R. Merhige, Jr.**
1981 – 1982. United States District Court for the Eastern District of Virginia, Richmond, Virginia.



## *Professional Activities*

- Virginia State Bar
- State Bar of Texas (Inactive Status; tied for highest score on Texas Bar examination)
- Permanent Member, Fourth Circuit Judicial Conference
- Founding Member, Richmond Inn of Court
- *Super Lawyers Magazine's* Annual List of Top Attorneys in Virginia
- AV Preeminent™ Rating, Martindale-Hubbell®

## *Bar Admissions*

- Virginia and Texas
- United States Supreme Court
- United States Court of Appeals for the Third Circuit
- United States Court of Appeals for the Fourth Circuit
- United States Court of Appeals for the Fifth Circuit
- United States District Courts in Virginia and Texas

## *Selected Speaking and Writing*

- American Conference Institute: *11th Annual Drug and Medical Device Litigation. Making the Decision to Settle and Devising Novel End-Game Strategies*. December 15, 2006.
- American Conference Institute: *Resolving Mass Tort Products Liability Claims. What You Must Know About Settlement Administration*. March 28, 2007.
- American Conference Institute: *Resolving Mass Tort Products Liability Claims. Developing Your Settlement Position with Respect to Mass Tort Product Claims*. March 28, 2007.
- Louisiana State Bar Association's 8th Annual Class Action/Mass Tort Symposium. *The Function and Scope of the Claims Administration Process*. October 17, 2008.
- Center on Civil Justice: *The Future of Class Action Litigation: A View from the Consumer Class.* November 7, 2014.
- Conference, *Panel 2: Reforming the Consumer Class Action,* 11 N.Y.U. J. L. & Bus. 675, 675-697 (2015).
- Emory Law, Institute for Complex Litigation and Mass Claims, *FJC/JPML Conference Managing Settlement in Complex Litigation*, Panel: Case Management Techniques: What Helps, What Backfires, and How to Get to Efficient Resolution (2016).
- Hampden-Sydney College Bar Association Legal Conference, Panel: Class Actions and Multiple Claims: End Games Planning (2017)
- HarrisMartin MDL Conference, *HIV Drugs, Valsartan, 3M Earplugs and Litigating in a Post-Fosamax World*, Panel: Instructive Guidance for Navigating Today's Mass Tort Landscape (2019).
- HarrisMartin MDL Conference, *HIV Drugs, Valsartan, 3M Earplugs and Litigating in a Post-Fosamax World*, Panel: Settlement Issues for the Plaintiff and the Defense (2019).

---



- George Washington University Law School-James F. Humphreys Complex Litigation Center, *Annual Review of New Practices in Mass-Tort MDLs*, Presenter:  Central Litigation Management System (2021).
- George Washington University Law School-James F. Humphreys Complex Litigation Center, *Mass Tort MDL Best Practices*, Drafter and Team Lead:  Centralized Information Platform; Reviewer:  Census Orders (2021).

### *Personal*

- Born in Lynchburg, Virginia, 1956
- Grew up on a family tobacco farm in Bedford County, Virginia; worked on the farm until law school; drove a school bus at age 17.
- Married to Ellen Firsching Brown (book author and writer; former environmental lawyer with Hunton & Williams, the Office of the Attorney General of Virginia and Dominion Resources; former law clerk to Hon. Frederick P. Stamp, Jr., United States District Judge for the Northern District of West Virginia)
- Four children (Orran, Jr., Carly, Read and Drew); five grandchildren (Orran III, Anne Ryland, Beatrice, Rose, and Callum)
- Board of Trustees, Hampden-Sydney College (Vice-Chair, term ended in 2023)
- Board of Trustees, The Roller-Bottimore Foundation
- Board of Visitors, St. Christopher's School
- Vestry, St. Stephen's Episcopal Church (term ended 2021)
- City of Richmond Charter Review Commission
- Boy Scouts Troop 444, Assistant Scout Master (2012-2020)
- Various other community and philanthropic activities

# Exhibit 2:

BrownGreer PLC Firm Overview



Professional Service. Redefined.



# Firm Overview

**BrownGreer plc**
250 Rocketts Way
Richmond, VA 23231
information@browngreer.com
(804) 521-7200
www.BrownGreer.com

© 2024 BrownGreer PLC



Professional Service. Redefined.



# Action, Integrity and Service.

The claims administration process moves quickly, requiring smart and nimble action to ensure the best possible resolution. BrownGreer was built with this in mind. Our relentless pursuit of excellence has allowed us to become a well-respected and sought after claims resolution law firm. We are known not only for our mastery of the technical and legal procedures in the claims resolution process, but also for our ability to fulfill the requirements of any settlement program with integrity and respect.

Choosing a claims administrator can be daunting. There are many factors to consider and every settlement has its own unique challenges. By selecting BrownGreer, you are choosing a partner that will be with you every step of the way.



Professional Service. Redefined.

# Why Choose BrownGreer?



### First and foremost, we are lawyers.

We can review and understand the legalities and nuances in every settlement agreement, as well as the implications of law that may come into play as we build your settlement program.  That knowledge helps us identify potential obstacles, discuss them with you at the outset, and plan for them in the execution of your program.



### We are cutting edge technology experts.

Our lawyers are paired with highly skilled in-house technology professionals.  Having our technology team on site gives us the advantage of working through the technical and security requirements of your program collaboratively in real time, ensuring you are receiving the best and most secure platform to execute your settlement.



### We have deep and varied experience.

Our principals, Orran Brown, Sr. and Lynn Greer, have been at the center of some of the most significant multiple claims resolutions for more than 30 years. As BrownGreer has grown, we have added to that foundation, creating a firm that can readily tackle programs of any scale across multiple industries and jurisdictions. From consumer products, food and beverage, and retail to financial services, pharmaceuticals, and medical devices, our settlement programs have ranged from several hundred class members to several million class members.



BROWNGREER | Professional Service. Redefined.

# Notice Administration
## Knowledge, Creativity and Resourcefulness.



When designing notice plans, BrownGreer focuses on reaching potential class members using the most effective methodologies to target the impacted population.  Each plan is created to inform them in clear terms of the existence of the proposed settlement, how it affects them, their rights and obligations under the settlement agreement, the actions they may take, any deadlines for acting, and the consequences of acting or failing to act by the deadline.

We have issued millions of direct class notices by email, short-form postcards, and/or long-form letters or notice packets.  Our notice services follow through to the resolution of a settlement program. We have also issued millions of review determination notices and courtesy or instructional notices to class members and their counsel.

BrownGreer also designs and executes public notice campaigns through traditional print and digital channels, including social media, that meet and exceed court mandated requirements for approval.  Our goal in every public notice campaign is to connect with the right people in the right places, using sophisticated analytics such as geo-location and profile matching.

## Notice Administration Experience

| 55+ MILLION | 41+ Million | 14+ Million |
|---|---|---|
| Total Notices Issued | Class Notices | Program Notices |



Professional Service. Redefined.



"[T]he notice provided by BrownGreer was state of the art and well-tailored to reach the maximum number of class members".

**The Hon. James F. Holderman**
U.S. District Judge, Northern District of Illinois
*In re Capital One Telephone Consumer Protection Act Litigation,* MDL Docket No. 2416



Professional Service. Redefined.

# Claims Administration
## Experience, Commitment and Compassion.



Drawing on our collective knowledge, we assist clients with the full range of legal and administrative services necessary to design, approve and implement claims facilities created for the resolution of mass claims, notice campaigns, and product recalls. We can also assist in the management of mass claims litigation through our proprietary, MDL Centrality litigation management system.

We are proud to have served in some of our nation's most significant resolution programs, such as the $4.85 billion Vioxx personal injury settlement, the ongoing $2.8 billion ASR hip settlement, and the $11 billion BP/Deepwater Horizon settlement. Equally, we are honored to have been chosen to administer some of our country's smaller, but most sensitive settlements, including the One October Settlement Fund, a private settlement to resolve claims arising from the October 1, 2017 mass shooting at the Route 91 Harvest Festival in Las Vegas, Nevada, and the Catholic Diocese of Richmond Independent Reconciliation Program, a private settlement to resolve sexual abuse claims in the Richmond Catholic Diocese. As a result, we are familiar with the special and varying requirements associated with myriad settlements both nationally and globally.

## Claims Administration Experience

| $33+ Billion | 4.5+ Million | 39.5+ Million |
|---|---|---|
| Paid to Claimants | Claims Processed | Class Members |



Professional Service. Redefined.



"The expedited resolution of approximately fifty thousand personal injury claims could not have been achieved without the extraordinary effort and outstanding work put forth by BrownGreer PLC in its role as Claims Administrator".

**The Hon. Eldon E. Fallon**
U.S. District Judge, Eastern District of Louisiana
*In re Vioxx Products Liability Litigation,* MDL Docket No. 1657



Professional Service. Redefined.

# Fund Allocation
## Methodical, Fair and Transparent.

Determining how to equitably distribute funds to claimants in a way that is transparent and understandable is key to the successful resolution of a settlement program. From simple pro rata distribution to economic life value modeling, we have decades of experience designing allocation methods that are as fair as possible to every claimant and address individual requirements of a program.



Individual settlements

Designing matrices or grids to be used in "inventory" settlements for both plaintiff's and defense firms

Firm-by-firm settlements

Developing Relative Equity Models for complicated cases involving injury categories and other enhancement factors such as economic loss and medical expenses

Bankruptcy reorganization plans

Class action settlements

Court-Assisted global settlement programs



Professional Service. Redefined.

# Fund Administration and Distribution
## Validated, Secure and Verified.

We efficiently and effectively provide the full breadth of all payment related tasks and responsibilities needed to ensure the successful fulfillment of program payment needs. We can design procedures to calculate award amounts, print, mail and track the status of checks, and in the case of electronic payments, we can coordinate the seamless exchange of program funds through PayPal, Wire, Zelle, or ACH transactions. Additionally, we can provide any ensuing post-payment oversight and follow-up activities, as needed, such as generation of end-of-year informational tax forms, stale check re-issuance, as well as ongoing monitoring and reconciliation of account balances and close-out reports.





Professional Service. Redefined.

| Case Study | NATIONAL OPIOID SETTLEMENT ADMINISTRATION |
|---|---|

BrownGreer serves as the Directing Administrator for the $26 billion National Opioid Settlement finalized with the "Big Three" drug distributors – AmerisourceBergen, Cardinal Health, and McKesson – and opioid manufacturer Johnson & Johnson.

The settlement requires 85 percent of funds be allocated to programs that will help address the ongoing opioid crisis through treatment, education, and prevention efforts. A majority of states have passed agreements that dictate how funds will be distributed between state and local subdivision governments, ensuring funds will effectively reach impacted communities.

The settlement is the first of its kind to administer resources directly to state and local governments specifically for relief programs to help rebuild the devastation caused by the opioid epidemic. As Directing Administrator, we will allocate and distribute funds based on population adjusted for the proportionate share of the opioid epidemic impact. The share of the impact is calculated using detailed and objective national data, including the amount of opioids shipped to the state, the number of opioid-related deaths that occurred in the state and the number of people who suffer opioid use disorder in the state.

BrownGreer contacted all settling states, performed and verified calculations for each state pursuant to the applicable calculation methodology, issued allocation notices to each state as needed, collected payment instructions from 4,813 beneficiaries, which include state and local governments, developed secure portals and serve as a system of record, and have paid out more than $3.4 billion to 4,656 beneficiaries.



Professional Service. Redefined.

## Case Study    FIRE VICTIM TRUST

We serve as the Claims Processor in the Fire Victim Trust, a $13.5 billion fund established for the benefit of claimants who suffered property loss, emotional distress and other damages as a result of the Butte, North Bay, and Camp Fires in Northern California. More than 80,000 claimants filed claims in the PG&E bankruptcy and are registered to seek compensation from the Fire Victim Trust.

The Federal Emergency Management Agency (FEMA) paid claimants affected by wildfires before the bankruptcy was established. Under the Stafford Act, claimants are required to repay those emergency funds under certain circumstances. In this program, FEMA reached an agreement to not pursue repayment from claimants if the trust offset awards by the amount of FEMA benefits a person already received. We developed a data sharing agreement with FEMA through which we send them claimant tax IDs and they return a report of the benefits paid to those individuals.



Professional Service. Redefined.

| Case Study | PORTER RANCH PERSONAL INJURY AND PROPERTY CLASS SETTLEMENTS |

Following a massive natural gas leak in the Porter Ranch, California area in 2015, more than 35,000 individuals filed claims of personal and property damage. In 2021, BrownGreer was named as Settlement Administrator in the $40 million property settlement program and Claims Processor in the separate $1.8 billion personal injury settlement program.

In the personal injury settlement, we developed a complex, points-based allocation system with base points for residence and employment proximity, or lack thereof, to the gas leak. We also established base point adjustments as a percentage of assigned base points to account for age, health conditions, healthcare treatment, relocation, economic loss, remediation measures performed,

bellwether plaintiffs, and discovery pool plaintiffs, and are separately addressing exceptional circumstances.

In accordance with the settlement timelines, BrownGreer established a settlement website for the property class to accept and review claims. Both programs require regular reporting to the Court and Claims Administrator, respectively, and frequent and open communication between parties. We are facilitating this with communication portals for the exchange of information. The portals we design are a hallmark of each program we administer, allowing role-based access to information and providing a secure place within the database to act on a claim or determination.



Professional Service. Redefined.

| Case Study | DEEPWATER HORIZON |
|---|---|

On April 20, 2010, an explosion on the Deepwater Horizon Macondo oil well drilling platform tragically killed 11 workers and started the largest marine oil spill in U.S. history, releasing millions of barrels of oil into the Gulf of Mexico. Hundreds of thousands of individuals and businesses suffered physical and economic damages. After filling the administrative, review, and technology needs of the Gulf Coast Claims Facility from June 2010 to 2012, BrownGreer was appointed by the court to intake, review, and process to payment claims in the Deepwater Horizon Settlement Program established in the class action settlement that replaced the GCCF process. Additionally, we coordinated with the Court-Appointed Neutrals to resolve government entity claims. We also liaised with the National Center for Disaster Fraud and the DOJ to coordinate findings of fraud and assisted in trial preparations across the country. Overall, the program referred close to 2,000 matters to the DOJ.

This program paid over $12 billion on nearly 391,000 claims. We designed and implemented processes for the twelve different claim types outlined in the settlement agreement, issued determinations to and handled program communication with lawyers and unrepresented claimants, and opened and operated 21 satellite offices across the Gulf.



Professional Service. Redefined.

# Economic Loss Program Experience

| ECONOMIC LOSS SETTLEMENT PROGRAMS | | | | |
|---|---|---|---|---|
| | PROGRAM DESCRIPTION | ROLE | PROGRAM SIZE | SETTLEMENT FUND |
| 1. | **Porter Ranch Property Class Settlement.** Settlement for owners and leaseholders of real property to resolve claims arising from the October 23, 2015 gas leak from a storage well at the Aliso Canyon natural gas storage facility in Porter Ranch, California. | Settlement Administrator | Estimated > 50,000 Class Members | $40 Million |
| 2. | **In re: PG&E Corporation and Pacific Gas and Electric Company, Debtor, Bankruptcy Case No. 19-30088, (Bankr. N.D. Ca.).** Settlement program created in the Chapter 11 bankruptcy proceeding of PG&E Corporation to resolve claims from individuals and businesses who suffered personal injury, property damage and economic losses as a result of fires allegedly caused by PG&E. | Claims Processor | 70,000 Claimants | $13.5 Billion |
| 3. | **In re Oil Spill by the Oil Rig "Deepwater Horizon" in the Gulf of Mexico, on April 20, 2010,** MDL Docket No. 2179 (E.D. La). Class action settlement to resolve economic loss and property damage claims arising from the April 20, 2010 oil spill in the Gulf of Mexico. | Claims Administration Services | 260,000 Claimants | Uncapped Fund; $11.6 Billion Disbursed |
| 4. | **Gulf Coast Claims Facility.** Voluntary claims program to resolve economic loss and physical injury claims arising from the April 20, 2010 oil spill in the Gulf of Mexico. | Claims Administration Services; Transition Coordinator | 600,000 Claimants | $20 Billion cap; $6.5 Billion Disbursed |
| 5. | **In re Chinese-Manufactured Drywall Products Liability Litigation,** MDL Docket No. 2047 (E.D. La.). Class action settlement for the remediation of homes containing defective drywall manufactured in China. | Claims Administrator; Lynn Greer, Special Master | 25,000 Claimants | Blend of Uncapped and Capped Funds; $610 Million Disbursed |
| 6. | **In re Syngenta AG MIR 162 Corn Litigation,** MDL Docket No. 2591, (D. Kansas). Class action settlement to resolve claims concerning genetically modified corn and crop values. | Notice and Claims Administrator | > 600,000 Class Members | $1.51 Billion |
| 7. | **In re Black Farmer's Discrimination Litigation,** No. 08-mc-0511 PLF (D.D.C.). Class action settlement to resolve claims of discrimination against African-American farmers by the U.S. Department of Agriculture regarding farm loans and loan servicing for claimants who had missed deadlines in a prior settlement. | Claims Review and Evaluation | 40,000 Claimants | $1.25 Billion |
| 8. | **Travel Insurance Refund Program in the matter of Jefferson Insurance Company** NAIC #11630 and in the matter of **BCS Insurance Company** NAIC #38245. Regulatory settlement program between certain travel insurance companies and State regulators to issue refunds to policy holders who purchased travel insurance through an Opt-Out Marketing Plan. | Program Administrator | 504,927 Payees | To Be Determined |
| 9. | **Ortega Melendres, et. al., v. Paul Penzone, et. al.,** No. CV-07-2513-PHX-GMS (D. Az.). Voluntary program to resolve claims that individuals were stopped or held by the Maricopa County Sheriff's Office in violation of a court order. | Notice and Claims Administrator | 200 Claimants | Uncapped Fund |



Professional Service. Redefined.

## ECONOMIC LOSS SETTLEMENT PROGRAMS

| | PROGRAM DESCRIPTION | ROLE | PROGRAM SIZE | SETTLEMENT FUND |
|---|---|---|---|---|
| 10. | **Confidential.** Conciliation agreement between a financial institution and the U.S. Department of Housing & Urban Development related to alleged discriminatory acts in mortgage loan application handling. | Notice and Claims Administrator | Class Size Unknown | Fund Uncapped |
| 11. | **United States Securities and Exchange Commission v. American International Group, Inc., No. 06-Civ. 100-LAP (S.D.N.Y.).** Securities enforcement action settlement between the SEC and a multinational insurance corporation over allegations of accounting fraud and related shareholder litigation. | Audited the Claims Administrator | 260,000 Class Members | $843 Million |
| 12. | **In re Genetically Modified Rice Litigation, MDL Docket No. 1811 (E.D. Mo.).** Voluntary claims program to resolve claims concerning genetically modified rice and crop values. | Claims Administrator | 12,000 Claimants | $750 Million |
| 13. | **CBP Global Settlement.** Settlement program reached by the Department of Homeland Security, U.S. Customs and Border Protection (CBP) and the National Treasury Employees Union (NTEU) to resolve certain grievances filed by NTEU. | Settlement Administrator | 25,000 Class Members | $184.1 Million |
| 14. | **United States v. National Treasury Employees Union, No. 93-1170 (D.C. App.).** Class action settlement between a federal employees' union and the U.S. Government for back payment of wages. | Trustee of Settlement Trust | 212,000 Class Members | $173 Million |
| 15. | **Blando v. Nextel West Corp., No. 02-0921-FJG (W.D. Mo.).** Class action settlement by a wireless telecommunications provider to resolve claims under Missouri law involving "cost recovery fees" charged to customers. | Advisor to the Court | 5,000,000 Class Members | $165 Million |
| 16. | **Brown & Szaller, Co., L.P.A. et al., v. Waste Management of Ohio, Inc., Case No. CV-16-859588.** Proposed class action settlement resolving claims of certain commercial customers of Waste Management of Ohio, Inc. related to alleged improper price increases on waste collection, disposal, and/or recycling services. | Notice and Claims Administrator | 65,000 Class Members | $30.5 Million |
| 17. | **Bartell, et al. v. LTF Club Operations Company, Inc., Case No. 2:14-cv-00401.** Proposed class action settlement resolving claims of certain former members of Life Time Fitness in Ohio related to Life Time's alleged failure to honor cancellation requests and issue certain refund payments under Ohio's Prepaid Entertainment Contracts Act (PECA). | Notice and Claims Administrator | 60,000 Class Members | $14 Million |
| 18. | **Wildfire Assistance Program.** Voluntary program providing financial assistance to individuals experiencing urgent needs as a result of the 2017 and 2018 California Wildfires. | Claims Administrator | 20,000 Claimants | $100 Million |
| 19. | **In re Capital One Telephone Consumer Protection Act Litigation, MDL Docket No. 2416 (N.D. Ill.).** Class action settlement to resolve claims arising from alleged violations of the Telephone Consumer Protection Act. | Notice and Claims Administrator | 17,500,000 Class Members | $75.4 Million |
| 20. | **In re Vioxx MDL Settlement Agreement Related to Consumer Class Actions, MDL Docket No. 1657 (E.D. La.).** Class action settlement to resolve consumer protection claims arising from the marketing of prescription painkillers. | Claims Administrator | 8,000 Claimants | $23 Million |
| 21. | **Yarger v. ING Bank, FSB, No. 11-154-LPS (D. Del.).** Class action settlement to resolve claims related to advertising fixed rate mortgages under Delaware consumer law. | Notice and Claims Administrator | 115,000 Class Members | $20 Million |



Professional Service. Redefined.

| | **ECONOMIC LOSS SETTLEMENT PROGRAMS** | | | |
|---|---|---|---|---|
| | **PROGRAM DESCRIPTION** | **ROLE** | **PROGRAM SIZE** | **SETTLEMENT FUND** |
| 22. | *Acosta v. Tyson Foods, Inc.,* No. 8:08-cv-86 (D. Neb.). Class action settlement by a poultry producer to resolve claims under the Fair Labor Standards Act and Nebraska law for employee compensation for time spent donning/doffing protective equipment. | Notice Administrator | 3,700 Class Members | $19 Million |
| 23. | *Flores v. Zorbalas,* No. 27-CV-16-14225 (Minn. St. Ct., Hennepin Cnty., Minn.). Class certification notice program and subsequent class action settlement program resolving claims of tenants of certain apartments in Minneapolis, MN whose landlords allegedly rented out the properties without proper licenses and failed to maintain the properties as required by health and safety laws. | Notice and Claims Administrator | 5,500 Class Members | $18.5 Million |
| 24. | *United States of America v. Capital One, N.A.,* No. 1:12-cv-828 (E.D. Va.). Consent decrees between a financial services company and the Department of Justice and Office of Comptroller of the Currency to resolve alleged violations of the Servicemembers Civil Relief Act. | Notice and Claims Administrator | 44,000 Claimants | $15 Million |
| 25. | *Figueroa v. Capital One, N.A.,* No. 3:18-cv-00692-JM-BGS (S.D. Cal.). Class action settlement by a financial institution to resolve claims that it breached its contract with accountholders by improperly assessing and collecting fees when accountholders used out of network ATMs to conduct a balance inquiry. | Notice and Claims Administrator | 1.9 million Class Members | $13 million |
| 26. | *Ene v. Maxim Healthcare Services, Inc.,* No. 4:09-cv-02453 (S.D. Tex.). Class action settlement by a healthcare provider to resolve claims under the Fair Labor Standards Act concerning the classification of healthcare recruiters as exempt from overtime pay. | Notice Administrator | 1,600 Class Members | $12.3 Million |
| 27. | *Gregorio v. Premier Nutrition Corporation,* Civil Action No: 17-cv-05987 (S.D.N.Y.). Class action settlement to resolve claims concerning the misleading advertising of protein shake products. | Notice and Claims Administrator | 9,360,000 Class Members | $9 Million |
| 28. | *Spinelli v. Capital One Bank (USA),* No. 8:08-cv-132 (M.D. Fla.). Class action settlement by a financial services company with credit card holders to resolve claims under the Truth in Lending Act. | Notice and Claims Administrator | 9,000,000 Class Members | $5 Million |
| 29. | *Hankins v. CarMax Inc.,* No. 03-C-07-005893 CN (Baltimore County Md. Cir. Ct.). Class action settlement to resolve claims that a retail car company sold used vehicles without disclosing that the vehicles had been used previously as short-term rentals. | Notice and Claims Administrator | 7,300 Class Members | $8 Million |
| 30. | *Cohen v. Warner Chilcott Public Ltd. Co.,* No. 1:06-cv-00401-CKK (D.D.C.). Class action settlement to resolve antitrust claims against two pharmaceutical companies regarding the sale of an oral contraceptive. | Notice Administrator | 2,000,000 Class Members | $6 Million |
| 31. | *Peg Bouaphekeo, et. al., v. Tyson Foods, Inc.,* No. 5:07-cv-04009-JAJ (N.D. Iowa Western Division). Class action settlement by a poultry producer to resolve claims under the Fair Labor Standards Act and Iowa law for employee compensation for time spent donning/doffing protective equipment. | Notice Administrator | 2,523 Class Members | $5.78 Million |
| 32. | *Morgan v. Richmond School of Health and Technology, Inc.,* No. 3:12-cv-00373-JAG (E.D. Va.). Class action settlement by a for-profit vocational college to resolve claims under the Equal Credit Opportunity Act, Title VI of the Civil Rights Act of 1964 and the Virginia Consumer Protection Act. | Notice and Claims Administrator | 4,200 Class Members | $5 Million |



Professional Service. Redefined.

| | ECONOMIC LOSS SETTLEMENT PROGRAMS | | | |
|---|---|---|---|---|
| | PROGRAM DESCRIPTION | ROLE | PROGRAM SIZE | SETTLEMENT FUND |
| 33. | ***Gomez v. Tyson Foods, Inc.,*** No. 08-021 (D. Neb.). Class action settlement by a poultry processing company to resolve claims under the Fair Labor Standards Act and Nebraska law for employee compensation for time spent donning/doffing protective equipment. | Notice Administrator | 5,300 Class Members | $5 Million |
| 34. | ***Rogers v. City of Richmond, Virginia,*** No. 3:11-cv-00620 (E.D. Va.). Class action settlement under the Fair Labor Standards Act and Virginia law involving current and former city police officers alleging unpaid overtime wages. | Claims Administrator | 600 Claimants | $4.6 Million |
| 35. | ***Gales v. Capital One, N.A.,*** No. 8:13-cv-01624 (D. Md) Class action settlement by a financial services company to resolve claims related to the sale of certain repossessed motor vehicles. | Claims Administrator | 9,000 Class Members | $4.4 million |
| 36. | ***Betts v. National Cash Advance/Advance America,*** Nos. 502001CA000320OCAI-MB and 502004CA008164XXXXI-MB (Palm Beach County Cir. Ct.). Class action settlement to resolve claims alleging violates of the Florida Lending Practices Act, the Florida Consumer Finance Act, the Florida Deceptive and Unfair Trade Practices Act, and the Civil Remedies for Criminal Practices Act. | Notice and Claims Administrator | 18,500 Class Members | $4.32 Million |
| 37. | ***Llewellyn v. Big Lots Stores, Inc.,*** No. 09-cv-5085 (E.D. La.). Class action settlement by a retailer to resolve claims under the Fair Labor Standards Act regarding the classification of assistant store managers. | Claims Administrator | 200 Class Members | $4 Million |
| 38. | ***Desio v. Emerson Electric Co. d/b/a InSinkErator,*** No. 2:15-cv-00346 (E.D. Wa.). Class action settlement to resolve claims that certain filters used in water filtration systems could crack and leak water, causing property damage. | Notice and Claims Administrator | Estimated < 455,000 Class Members | $3.8 Million |
| 39. | ***Herron v. CarMax Auto Superstores, Inc.,*** No. 2006-CP-02-1230 (Aiken County S.C. Jud. Dist.). Class action settlement to resolve claims related to document processing fees charged to customers by a car dealer. | Notice and Claims Administrator | 27,000 Class Members | $3.8 Million |
| 40. | ***Collins v. Sanderson Farms, Inc.,*** No. 2:06-cv-02946 (E.D. La.). Class action settlement by a poultry processing company to resolve claims under the Fair Labor Standards Act regarding employee compensation for time spent donning/doffing protective equipment. | Notice and Claims Administrator | 21,000 Class Members | $3.1 Million |
| 41. | ***Nader v. Capital One Bank (USA),*** No. CV-12-01265-DSF (RZx) (C.D. Cal.). Class action settlement by a financial institution to resolve claims under state privacy and wiretapping laws concerning the alleged recording of outbound customer service calls. | Settlement Administrator | 1,800,000 Class Members | $3 Million |
| 42. | ***In re Children's Ibuprofen Oral Suspension Antitrust Litigation,*** No. 1:04-mc-0535 (D.D.C.). Class action settlement to resolve claims of antitrust violations by two manufacturers of over-the-counter children's pain relievers. | Notice Administrator | 10,000 Class Members | $3 Million |
| 43. | ***Rubenstein v. The Neiman Marcus Group LLC,*** No. 2:14-cv-07155-SJO-JPR (C.D. Ca.). Proposed settlement program to resolve allegations that consumers were misled by the "Compared To" price tags on merchandise sold by the Defendant. | Notice and Claims Administrator | To Be Determined | $2.9 Million |
| 44. | ***United States of America v. Chevy Chase Bank, F.S.B.,*** No. 1:13-cv-1214 (E.D. Va.). Consent decree between a financial services company and a federal regulatory agency involving allegations under the Equal Credit Opportunity and Fair Housing Acts. | Notice and Claims Administrator | 3,500 Class Members | $2.85 Million |



Professional Service. Redefined.

| | ECONOMIC LOSS SETTLEMENT PROGRAMS | | | |
|---|---|---|---|---|
| | **PROGRAM DESCRIPTION** | **ROLE** | **PROGRAM SIZE** | **SETTLEMENT FUND** |
| 45. | ***Samuel v. EquiCredit Corp.,*** No. 00-cs-6196 (E.D. Pa.). Class action settlement by a financial services institution to resolve claims under the Real Estate Settlement Procedures Act regarding the application of loan proceeds to pay mortgage broker fees. | Notice and Claims Administrator | 13,000 Class Members | $2.5 Million |
| 46. | ***Beecroft v. Altisource Business Solutions PVT LTD.,*** No. 0:15-cv-02184 (D. Minn.). Class action settlement to resolve claims arising from alleged violations of the Telephone Consumer Protection Act. | Notice and Claims Administrator | 56,104 Class Members | $1.8 Million |
| 47. | ***Hall v. Capital One Auto Finance, Inc.,*** No. 1:08-cv-01181 (N.D. Ohio). Class action settlement by a financial services company to resolve claims related to automobile repossession under Ohio consumer statutes. | Notice and Claims Administrator | 3,400 Class Members | $1.5 Million |
| 48. | ***McCoy v. North State Aviation, LLC,*** Case No. 1:17-cv-00346-CCE-LPA (M.D.N.C.). Class action settlement to resolve claims that Defendant violated the federal Worker Adjustment and Retraining Notification Act (the WARN Act), which requires certain employers to give 60-day advance notification of plant closings and mass layoffs. | Settlement Administrator | 339 Class Members | $1.5 Million |
| 49. | ***Watts v. Capital One Auto Finance, Inc.,*** No. CCB-07-03477 (D. Md.). Class action settlement by a financial services company to resolve claims related to automobile repossession under Maryland consumer statutes. | Notice and Claims Administrator | 2,700 Class Members | $990,000 |
| 50. | ***Churchill v. Farmland Foods, Inc.,*** No. 4:06-cv-4023 (C.D. Ill.). Class action settlement by a pork processing company to resolve claims under the Fair Labor Standards Act and Illinois law regarding employee compensation for time spent donning/doffing protective equipment. | Notice and Claims Administrator | 2,300 Class Members | $980,000 |
| 51. | ***Polanco v. Moyer Packing Company,*** No. C.P., 1852 (Philadelphia County Pa.). Class action settlement by a beef processing company to resolve claims under the Fair Labor Standards Act and Pennsylvania law regarding employee compensation for time spent donning/doffing protective equipment. | Notice and Claims Administrator | 4,500 Class Members | $850,000 |
| 52. | ***Cohen v. Foothill/Eastern Transportation Corridor Agency, et. al.,*** No. SACV 15-01698 DDP (C.D. Ca.). Class action settlement to resolve alleged violations of the Fair and Accurate Credit Transactions Act (FACTA) by a toll-road operator. | Notice and Claims Administrator | 25,762 Class Members | $850,000 |
| 53. | ***Bessey v. Packerland Plainwell, Inc.,*** No. 4:06-cv-0095 (W.D. Mich.). Class action settlement by a pork processing company to resolve claims under the Fair Labor Standards Act and Michigan law regarding employee compensation for time spent donning/doffing protective equipment. | Notice and Claims Administrator | 3,000 Class Members | $700,000 |
| 54. | ***Santiago v. GMAC Mortgage Group, Inc.,*** No. 784574 (E.D. Pa.). Class action settlement by a financial services company to resolve claims under the Real Estate Settlement Procedures Act concerning charges for mortgage settlement services. | Notice and Claims Administrator | 84,000 Class Members | $650,000 |



Professional Service. Redefined.

| | ECONOMIC LOSS SETTLEMENT PROGRAMS | | | |
|---|---|---|---|---|
| | **PROGRAM DESCRIPTION** | **ROLE** | **PROGRAM SIZE** | **SETTLEMENT FUND** |
| 55. | ***Contreras v. PM Beef Holdings, LLC,* No. 07-CV-3087 (D. Minn.).** Class action settlement by a beef processing company to resolve claims under the Fair Labor Standards Act and Minnesota law for employee compensation for time spent donning/doffing protective equipment. | Notice and Claims Administrator | 3,000 Class Members | $500,000 |
| 56. | ***Morales v. Greater Omaha Packing Co. Inc.,* No. 8:08-cv-0161 (D. Neb.).** Class action settlement by a beef processing company to resolve claims under the Fair Labor Standards Act and Nebraska law regarding employee compensation for time spent donning/doffing protective equipment. | Notice and Claims Administrator | 4,000 Class Members | $490,000 |
| 57. | ***Graham v. Capital One Bank (USA), N.A.,* 8:13-cv-00743 (C.D. Cal.).** Class action settlement related to claims under the California Unfair Competition Law regarding alleged improper disclosures and charges assessed on credit card accounts. | Notice and Claims Administrator | 22,500 Class Members | $460,000 |
| 58. | ***Hanna v. Agape Senior, LLC,* No. 12-CP-40-5950 (S.C. St. Ct., Richland Cnty., S.C.).** Class action settlement resolving claims of certain residents of senior and assisted living facilities related to alleged improper delivery of medical treatment. | Notice and Claims Administrator | 600 Class Members | Uncapped Fund; $480,000 Disbursed |
| 59. | ***In re Moyer Packing Co., P. & S.* Docket No. D-07-0053 (U.S. Dep't Agric.).** Consent decision involving a beef processing company to compensate cattle producers for goods sold based on weights derived using an allegedly malfunctioning weight calculation system. | Notice and Claims Administrator | 1,100 Claimants | $325,000 |
| 60. | ***Confidential.*** Voluntary payment program by a city government to compensate current and former city police officers for unpaid overtime wages. | Claims Administrator | 175 Class Members | $300,000 |
| 61. | ***Dapice v. Capital One Bank (USA), N.A.* No. 14-cv-6961 GW (AGRx).** Class action settlement by a financial institution to resolve claims related to interest rates charged on balance transfers for certain credit card accounts. | Settlement Administrator | 2,564 Class Members | $350,000 |
| 62. | ***Confidential.*** Voluntary program by a financial institution to refund customers for payments subsequently discharged in bankruptcy. | Program Administrator | 457 Payees | $233,000 |
| 63. | ***Wilder v. Triad Financial Corp.,* No. 3:03-cv-863 (E.D. Va.).** Class action settlement by a financial services company to resolve claims associated with automobile loan applications under the Fair Credit Reporting Act. | Notice and Claims Administrator | 80,000 Class Members | $200,000 |
| 64. | ***Conerly v. Marshall Durbin Food Corp.,* No. 2:06-cv-205 (N.D. Ala.).** Class action settlement by a poultry processing company to resolve claims under the Fair Labor Standards Act regarding employee compensation for time spent donning/doffing protective equipment. | Notice and Claims Administrator | 1,900 Class Members | $150,000 |
| 65. | ***Ferguson v. Food Lion, LLC,* No. 12-c-861 (Berkeley County W. Va. Cir. Ct.).** Class action settlement by a retail company to resolve claims under the West Virginia Wage Payment and Collection Act regarding timing of paychecks issued to discharged employees. | Notice and Claims Administrator | 185 Class Members | $150,000 |
| 66. | ***Confidential.*** Voluntary settlement by a food processing company to resolve claims regarding employee compensation for donning/doffing protective equipment. | Notice Administrator | 670 Class Members | $125,000 |



**Professional Service. Redefined.**

| | ECONOMIC LOSS SETTLEMENT PROGRAMS | | | |
|---|---|---|---|---|
| | **PROGRAM DESCRIPTION** | **ROLE** | **PROGRAM SIZE** | **SETTLEMENT FUND** |
| 67. | **Confidential.** Voluntary check remittance program by an investment fund to distribute proceeds from numerous settlements to beneficiaries of the fund. | Settlement Administrator | 1,049 Payees | $117,000 |
| 68. | **Confidential HUD Compensation Program.** Compensation fund established to pay damages to persons allegedly discriminated against by financial institution on basis of pregnancy or parental leave. | Notice and Claims Administrator | <100 Class Members | $50,000 |
| 69. | **Cook v. Columbia Freightliner, LLC, No. 10-CP-02-1987 (Aiken County S.C. Jud. Dist.).** Class action settlement to resolve claims regarding a trucking company and the collection of administrative fees in the sale of motor vehicles. | Notice and Claims Administrator | 380 Class Members | $17,000 |
| 70. | **Confidential.** Voluntary payments by a financial institution to reimburse fees charged to the credit card accounts of small business owners. | Payment Administrator | 656 Payees | $16,000 |
| 71. | **Clark v. Group Hospitalization and Medical Services, Inc., No. 3:10-CIV-00333-BEN-BLM (S.D. Cal.).** Class action settlement by a health insurance provider to resolve claims under the Employee Retirement Income Security Act and California's Unfair Competition Law. | Notice and Claims Administrator | 80 Class Members | $1,300 Disbursed |
| 72. | **Quinn v. BJC Health System, No. 052-00821A (City of St. Louis Mo. Cir. Ct.).** Class action settlement by a healthcare system to resolve claims associated with hospital fees charged to uninsured patients. | Claims Administrator | 26,000 Class Members | Debt Reduction/ Forgiveness to Qualifying Class Members |
| 73. | **In re Record Company Infringement Litigation, No. 6:15-cv-00708 (M. D. Fla.).** Consolidated proceedings involving 65+ parties and alleged violations of copyrights and contracts. | Orran Brown, Special Master; Project Manager | Not Applicable | Not Applicable |
| 74. | **Gray, Ritter & Graham P.C., et al. v. Goldman Phipps PLLC, et al., No. 4:13-cv-00206-CDP (E.D. Mo.).** Three separate but related claims programs (Watts Group Settlement, Banks Group Settlement, and GP/ Murray Group Settlement), established to resolve a class action lawsuit involving claimants who settled claims against Bayer arising out of the presence of Bayer's genetically-modified rice seed in the United States rice supply or lawyers who were paid common-benefit attorneys' fees or paid common-benefit expenses in that litigation. | Notice Administrator | 27,000 Class Members | Not Applicable |
| 75. | **In re Lehman Brothers Holdings Inc., No. 08-13555-JMP (Bankr. S.D.N.Y.).** Program to track, monitor and evaluate fees being charged by bankruptcy lawyers in the Lehman Brothers Chapter 11 bankruptcy proceeding. | Fee Committee Assistant | Not Applicable | Not Applicable |
| 76. | **Jerry Parker, et al. v. Smithfield Packing Company, Inc., No. 7:07-cv-00176-H.** Class action settlement to resolve claims related to overtime pay for employees of a processing facility in Clinton, North Carolina. | Notice Administrator | 2,656 Class Members | Not Applicable |



Professional Service. Redefined.

| ECONOMIC LOSS SETTLEMENT PROGRAMS | | | | |
|---|---|---|---|---|
| | PROGRAM DESCRIPTION | ROLE | PROGRAM SIZE | SETTLEMENT FUND |
| 77. | *Lee Lewis, et al. v. Smithfield Packing Company, Inc.,* No. 7:07-cv-00166-H. Class action settlement to resolve claims related to overtime pay for employees of a processing facility in Tarheel, North Carolina. | Notice Administrator | 12,136 Class Members | Not Applicable |
| 78. | *Lycan, et. al., v. City of Cleveland,* No. CV 09686044 (Court of Common Pleas, Cuyahoga County, OH). Class action lawsuit to resolve claims that the City of Cleveland, Ohio, assessed traffic fines against non-vehicle owners (including lessees and renters) whose vehicles were photographed by automatic enforcement cameras operating in city limits, in violation of a city ordinance. | Notice and Claims Administrator | 31,937 Class Members | To Be Determined |
| 79. | *Mercier, et al v. The United States,* No. 12-920C. Class action to resolve alleged claims of unpaid wages for nurses and physician assistants. | Notice and Claims Administrator | 15,000 Class Members | $130 Million |
| 80. | *Runton et al. v. Brookdale Senior Living, Inc.,* No. 0:17-cv-60664-CMA (S.D. Fla.). Class action settlement resolving claims of certain residents of senior and assisted living facilities related to staffing determinations. | Notice and Claims Administrator | 29,760 Class Members | To Be Determined |
| 81. | *In re De Bernardi v. City and County of San Francisco.* Served as Court-approved Third Party Notice Administrator for a collective action lawsuit regarding Compensatory Time Off earned in lieu of paid overtime. | Notice Administrator | 26,000 Class Members | Not Applicable |
| 82. | *In re Wazwaz v. City and County of San Francisco.* Served as Court-approved Third Party Notice Administrator for a collective action lawsuit regarding Compensatory Time Off earned in lieu of paid overtime. | Notice Administrator | 1,000 Class Members | Not Applicable |
| 83. | *In re Donofrio v. IKEA,* No. 2:2018-cv-00599. Served as Court-appointed Third-Party Administrator, responsible for tracking and maintaining Opt-in Consent Forms for a collective action lawsuit involving alleged age-discrimination in the workplace. | Third Party Administrator | 500 Claimants | Not Applicable |

 **BrownGreer** | Professional Service. Redefined.

# Personal Injury Program Experience

| | PERSONAL INJURY SETTLEMENT PROGRAMS | | | |
|---|---|---|---|---|
| | **PROGRAM DESCRIPTION** | **ROLE** | **PROGRAM SIZE** | **SETTLEMENT FUND** |
| 1. | *Sterigenics Ethylene Oxide Settlement.* BrownGreer serves as claims and QSF administrator in a settlement resolving personal injury claims related to a medical equipment sterilization facility in Willowbrook, Illinois. | Claims and QSF Administrator | 870 Claimants | $408 million |
| 2. | *Gree Deferred Prosecution Agreement.* BrownGreer serves as Special Master overseeing the deferred prosecution agreement between Gree USA Inc. and the Department of Justice to resolve allegations that the company knowingly sold fire-prone dehumidifiers. This work includes resolving and paying claims from appliance owners. | Special Master; Claims Administration | Claimants To Be Determined | Fund Uncapped |
| 3. | *National Opioid Settlement.* BrownGreer established the web portal and payment system that ensures states and subdivisions receive settlement funds from the 2022 "Big Three" opioid distributor settlement. The 18-year project requires continuous coordination with thousands of state and local government officials nationwide. | Directing Administrator | 3,000 States and Localities | $26 Billion |
| 4. | *Oxnard Train Derailment Settlement.* Served as claims administrator for a program that resolved injury claims relating to a 2015 passenger train incident in California. | Claims Processor | 37 Claimants | $61 Million |
| 5. | *JUUL Government Entity, Tribal, and Personal Injury Settlements.* A 2022 agreement was reached between the makers of JUUL and government entities, Native American tribes, and personal injury claimants to resolve claims that it deceptively marketed e-cigarettes to youths. | Settlement Administrator | Approx. 2,000 government entities, 10,000 individual claimants | Not yet disclosed |
| 6. | *Confidential.* Settlement involving sexual abuse claims. | QSF Trustee; Lien Resolution Administrator | Approx. 5,000 claimants | Approx. $70 million |
| 7. | *Porter Ranch Private Party Claims Settlement Program.* Private settlement to resolve claims arising from the October 23, 2015 gas leak from a storage well at the Aliso Canyon natural gas storage facility in Porter Ranch, California. | Design the share allocation protocol; Claim Processor | 36,000 Claimants | $1.6 Billion |
| 8. | *One October Settlement Fund.* Private settlement to resolve claims arising from the October 1, 2017 mass shooting at the Route 91 Harvest Festival in Las Vegas, Nevada. | Design the share allocation protocol; Claim Processor | 4,300 Claimants | $800 Million |
| 9. | *In re National Football League Players' Concussion Injury Litigation,* MDL Docket No. 2323 (E.D. Pa). Class action settlement to resolve claims by retired National Football League players relating to repetitive head impacts. | Claims Administrator | 20,571 Claimants | Fund Uncapped; $1.14 Billion Disbursed |
| 10. | *Catholic Diocese of Richmond Independent Reconciliation Program.* Private Settlement to resolve sexual abuse claims in the Richmond Catholic Diocese. | Claims Administrator | 68 Claimants | $6.3 Million |

 **BROWNGREER** | Professional Service. Redefined.

| | **PERSONAL INJURY SETTLEMENT PROGRAMS** | | | |
|---|---|---|---|---|
| | **PROGRAM DESCRIPTION** | **ROLE** | **PROGRAM SIZE** | **SETTLEMENT FUND** |
| 11. | ***Trafigura.*** Expert consultant to evaluate feasibility of claims administration program arising from a toxic spill in the Ivory Coast of Africa, evaluating hurdles of corruption, fraud, identity verification, payment and communication difficulties. | Lynn C. Greer Expert Consultant | Not Applicable | Not Applicable |
| 12. | ***In re Vioxx Products Liability Litigation,*** **MDL Docket No. 1657 (E.D. La.).** Voluntary settlement program to resolve claims arising from the use of prescription painkillers. | Claims Administrator | 60,000 Claimants | $4.85 Billion |
| 13. | ***In re Diet Drugs (Phentermine/Fenfluramine/Dexfenfluramine) Products Liability Litigation,*** **MDL Docket No. 1203 (E.D. Pa.).** Class action settlement to resolve claims arising from the use of "Fen-Phen" diet drugs. | Liaison for the Defendant to the Settlement Trust | 600,000 Claimants | $3.55 Billion |
| 14. | ***In re A.H. Robins Company Inc., Debtor (In re Dalkon Shield Claimants Trust),*** **MDL Docket No. 211 (Bankr. E.D. Va.).** Settlement program created in the Chapter 11 bankruptcy proceeding of the A.H. Robins Company to resolve claims arising from use of the Dalkon Shield intrauterine device. | Counsel to the Settlement Trust | 400,000 Claimants | $3 Billion |
| 15. | ***In re DePuy Orthopaedics, Inc.,*** ASR Hip Implant Products, MDL Docket No. 2197 (N.D. Ohio). Voluntary settlement program for claims relating to metal-on-metal hip implant devices. | Claims Administrator | 9,300 Claimants | $2.8 Billion |
| 16. | ***In re Diet Drugs (Phentermine/Fenfluramine/ Dexfenfluramine) Products Liability Litigation,*** **MDL Docket No. 1203 (E.D. Pa.).** Voluntary settlement program to resolve opt outs from the class action settlement of claims arising from use of "Fen-Phen" diet drugs. | Claims Administrator | 66,000 Claimants | $2.63 Billion |
| 17. | ***In re Actos (Pioglitazone) Products Liability Litigation,*** **MDL Docket No. 2299 (W.D. La.).** Voluntary settlement program to resolve claims arising from the use of a diabetes medication. | Claims Administrator | 10,800 Claimants | $2.37 Billion |
| 18. | ***Confidential.*** Voluntary settlement program of claims arising from the use of a prescription medication. | Claims Administrator | 12,000 Claimants | Fund Uncapped; $1.4 Billion Disbursed |
| 19. | ***In re Sulzer Orthopedics and Knee Prosthesis Products Liability Litigation,*** **MDL Docket No. 1401 (N.D. Ohio).** Class action settlement of claims relating to hip and knee implants. | Claims Administrator | 27,000 Claimants | $1.15 Billion |
| 20. | ***Confidential.*** Voluntary settlement program of claims arising from the use of a prescription medication. | Claims Administrator | 2,700 Claimants | Fund Uncapped; $279 Million Disbursed |
| 21. | ***In re Xarelto® Litigation Settlement Program.*** Private settlement to resolve cases arising out of the use of a prescription blood thinner. | Claims Administrator | 33,000 | $775 Million |
| 22. | ***In re Pradaxa (Dabigatran Etexilate) Products Liability Litigation,*** **MDL Docket No. 2385 (S.D. Illinois).** Voluntary settlement program to resolve claims arising from the use of a blood thinning medication. | Claims Administrator | 4,800 Claimants | $650 Million |
| 23. | ***In re Benicar (Olmesartan) Products Liability Litigation,*** **MDL No. 2606 (N.J.).** Voluntary settlement program to resolve claims arising from the use of prescription hypertension medication. | Claims Administrator | 8,500 Claimants | $358 Million |
| 24. | ***In re Wright Medical Technology, Inc., Conserve Hip Implant Products Liability Litigation,*** **MDL Docket No. 2329, (N.D. Ga.).** Private settlement program established to resolve claims related to CONSERVE®, DYNASTY®, and LINEAGE® metal-on-metal hip replacement devices. | Claims Administrator | 1,233 Claimants | $249 Million |



Professional Service. Redefined.

| | PERSONAL INJURY SETTLEMENT PROGRAMS | | | |
|---|---|---|---|---|
| | PROGRAM DESCRIPTION | ROLE | PROGRAM SIZE | SETTLEMENT FUND |
| 25. | *In re Reglan®/Metoclopramide Mass Tort Litigation,* No. 01997 (Philadelphia County Ct. of C.P.); *In re Reglan® Litigation,* Case No. ATL-L-3865-10 (Super Ct. NJ); Reglan®/Metoclopramide Cases, CJC-10-004631 (Cal. Super Ct.). Private settlement program consolidating PA, NJ, and CA class action settlements to resolve claims arising out of the use of a prescription medication. | Notice and Claims Administrator | 5,263 Claimants | $240 Million |
| 26. | *In re Guidant Implantable Defibrillators Products Liability Litigation Settlement,* MDL Docket No. 1708 (D. Minn.). Voluntary settlement program to resolve claims related to a medical device company's cardiac resynchronization therapy devices, implantable cardiac defibrillators and pacemakers. | Advised Defendant and Defense Counsel | 26,000 Class Members | $240 Million |
| 27. | *In re Nuvaring Products Liability Litigation,* MDL Docket No. 1964 (W.D. Mo.). Voluntary settlement program to resolve claims related to the use of a contraceptive device. | Claims Administrator | 3,800 Claimants | $100 Million |
| 28. | *In re Abilify (Aripiprazole) Products Liability Litigation,* MDL No. 2734 Settlement Program. Private settlement program to resolve cases arising out of the use of a prescription medication. | Claims Administrator | 3,955 Claimants | $60 Million |
| 29. | *In re Phenylpropanolamine (PPA) Products Liability Litigation,* MDL Docket No. 1407 (W.D. Wash.). Class action settlement trust established to resolve claims related to an over-the-counter weight loss product. | Claims Administrator | 500 Claimants | $60 Million |
| 30. | *In re Yasmin and Yaz (Drospirenone) Marketing, Sales Practices and Products Liability Litigation,* MDL Docket No. 2100 (S.D. Ill.). Private voluntary settlement program to resolve claims alleging an arterial thromboembolism ("ATE"), either alone or in combination with some other injury, resulting from the use of drospirenone-containing oral contraceptives manufactured by Bayer or marketed by Barr Laboratories, Inc., or Teva Pharmaceuticals USA, Inc. | Claims Administrator | 1,275 Claimants | $57 Million |
| 31. | *In re Yasmin and YAZ (Drospirenone) Marketing, Sales Practices and Products Liability Litigation,* MDL Docket No. 2100 (S.D. Ill.). Private settlement program to resolve claims alleging gallbladder disease or a gallbladder injury from the use of drospirenone-containing oral contraceptives manufactured by Bayer or marketed by BarrTeva. | Claims Administrator | 9,000 Claimants | $24 Million |
| 32. | *In re OxyContin Litigation - All Cases,* No. 2002-CP-18-1756 (Cir. Ct. Dorchester County, S.C.). Class action settlement by a pharmaceutical company regarding a prescription pain killer. | Notice and Claims Administrator | 3,600 Class Members | $4.25 Million |
| 33. | *Confidential.* Private Settlement to resolve cases arising out of the use of a male-oriented hair coloring product designed to cover grey hair. | Claims Administrator | Not Disclosed | Not Disclosed |
| 34. | *In re Seroquel Products Liability Litigation,* MDL Docket No. 1769 (M.D. Fla.). Multidistrict litigation proceedings involving the antipsychotic prescription drug Seroquel. | Special Master; Project Manager | Not Disclosed | Not Applicable |
| 35. | *In re Pittsburgh Corning Corporation,* No. 00-22876-TPA (Bankr. W.D. Pa.). Class action settlement to resolve personal injury claims relating to exposure to asbestos made by refinery and chemical plant workers with individual asbestos cases pending in the Eastern District of Texas. | Notice Administrator | 2,272 Class Members | Not Applicable |



**BROWN**GREER | Professional Service. Redefined.

## Our Founders

### Orran L. Brown



Orran develops and implements the best practices and strategies for the negotiation and drafting of resolution plans, legal proceedings to obtain court approval, the efficient design and operation of group claims facilities and compliance with the agreements and court orders governing the claims resolution process to provide a program a successful start and timely and efficient progress to a successful completion.

Orran is respected by lawyers for claimants and the defense, courts, and claimants as knowledgeable, efficient, fair, and in tune with their needs. He has helped guide the implementation of extremely complex programs, and knows how to design and put in place allocation and evaluation criteria that uniformly and equitably deliver benefits to those entitled to receive them, while keeping administrative costs as low as possible. He believes that these programs cannot be bureaucratic or impenetrable, or even appear to be. Instead, they serve the needs of the parties and the court, which leads to successful outcomes. His work on the $800 million One October Settlement Fund for the victims of the mass shooting in 2017  at the Route 91 concert in Las Vegas is an example of how his experience, creativity, and diligence can be brought to bear on a complicated, emotionally difficult program.

### Lynn Crowder Greer



Lynn has served in mass claims resolution for 30 years, advising management, trustees, claims administrators and corporations on the successful implementation and administration of resolution plans. She began specializing in this area of the law in 1990, when she joined the in-house legal department of Dalkon Shield Claimants Trust, an entity created pursuant to the A.H. Robins bankruptcy to process claims of women injured by the Dalkon Shield intrauterine device. Lynn became the Manager of the Trust's legal department and ultimately rose to General Counsel and Executive Director, developing and implementing policies and processes that handle these deeply personal injury claims with accuracy and sensitivity, while achieving finality. The finite fund set aside to pay the claims was managed so successfully, that the Trust made four additional pro rata payments to women as claims were processed and concluded.

Since the Trust's closure in 2000, Lynn has focused her professional career on meeting the unique needs of clients or Courts involved in or faced with multiple claims or lawsuits. Recognizing the need to bring order to the chaos that arises when numerous claims are filed against a defendant, she and Orran Brown founded BrownGreer PLC in 2002 to provide different and innovative solutions for managing such situations. Since then, BrownGreer has been involved in some of the largest and most complex claims resolution programs in history, processing over 4.3 million claims filed by nearly 40,000,000 class members and paying over $34 billion to qualified claimants.

Lynn has been appointed by Courts to serve as Special Master, Claims Administrator and other leadership positions in national settlement programs such as the Chinese Drywall class action litigation and the BP Oil Spill program as it transitioned from an emergency fund to a certified class action settlement. She has also acted as the head of the Project Management Office for a major client defending a pharmaceutical action and has served as a consultant in an international matter opining on the feasibility of a claims administration program. In each of BrownGreer's engagements, Lynn lends her expertise and is a hands-on participant, working with and serving all of the program's constituents and ensuring its successful development, administration and conclusion. Her unique combination of legal, administrative, communication, leadership, and personal skills render her equally comfortable presenting to a supervisory Federal District Court, reporting to executive management at a Fortune 500 company, facilitating and leading a conference call among the parties to a settlement agreement, speaking with claimants, mentoring her internal team members, participating in panel discussions on claims administration best practices, or working behind the scenes to draft protocols or process flows. Her sole focus on multiple claims resolution for almost three-decades, as well as her vast and unique experience make her a leader in the industry.



BrownGreer is redefining multiple claim resolution and litigation management with industry-leading technology and expert strategies to resolve your multiple claims and data management challenges with uncompromising accuracy and efficiency.

**BrownGreer plc**
250 Rocketts Way
Richmond, VA 23231
information@browngreer.com
(804) 521-7200
www.BrownGreer.com

© 2024 BrownGreer PLC

FO-135-05-07-2024

# Exhibit 3:

Notice of Proposed Class Action Settlement

NOTICE OF PROPOSED CLASS ACTION SETTLEMENT

*In re Philips Recalled CPAP, BI-LEVEL PAP, and Mechanical Ventilator Products Litigation,*
*No. 21-mc-1230, MDL 3014*

UNITED STATES DISTRICT COURT FOR THE WESTERN DISTRICT OF PENNSYLVANIA

**A court authorized this Notice. This is not a solicitation from a lawyer.**

---

*Para la notificación en Espanol, visite el sitio web*
*www.RespironicsMedicalAdvancementProgram.com*

---

**If you used a Philips Respironics CPAP, BiPAP or Ventilator that was recalled, you will receive Medical Advancement Program Benefits from a proposed class action settlement of Medical Monitoring Claims if the settlement is approved.**

- A proposed Settlement has been reached in a federal class action lawsuit that seeks to resolve Medical Monitoring Claims relating to certain CPAPs, BiPAPs, and ventilators that were recalled by Philips Respironics beginning in June 2021 (the "Recalled Devices"). These devices were sold in the U.S. between 2008 and 2021. The benefits of the Settlement are summarized in the Q&A section below.

- You are included in the proposed Settlement if you are a U.S. citizen or resident (including its Territories and the District of Columbia) who has used a Recalled Device.

- Your legal rights are affected by the proposed Settlement even if you do nothing. If the proposed Settlement is approved, you will be able to receive the Medical Advancement Program Benefits provided by the Settlement for 15 years, and you will release your Medical Monitoring Claims on the terms set forth in the Settlement. The Settlement does *not* affect or release any claims for personal injuries relating to the Recalled Devices.

- This Settlement is also *separate* from the settlement and release of Economic Loss Claims relating to the Recalled Devices. The Court recently granted final approval of the Economic Loss Settlement.

- **Your rights and the deadline to exercise them are summarized in this notice. Please read this entire notice carefully.** More details concerning the full Settlement Agreement, and other relevant documents, are available at www.RespironicsMedicalAdvancementProgram.com.

- Please note that this is a non-opt out Settlement, meaning you do not have the right to opt out or request exclusion from the Settlement Class. But you do have the right to object to the Settlement, if you wish.

- Capitalized terms in this Notice have the same meaning as defined in the Settlement Agreement.

| YOUR LEGAL RIGHTS AND OPTIONS IN THIS PROPOSED SETTLEMENT | | |
|---|---|---|
| **Object to the Settlement** | If you object to the proposed Settlement, you must mail your objection to the Notice Administrator by the Objection Deadline. Failure to meet the deadline will render your objection invalid and waived.<br>• Go to www.RespironicsMedicalAdvancementProgram.com for more information on how to make a valid objection to the Settlement. | Your objection must be postmarked on or before [INSERT Objection Deadline] |

| **Go to a Hearing** | If you wish to speak in Court regarding an objection that you have submitted, you must submit a timely written request to the Notice Administrator. | Your request to appear at the hearing must be postmarked on or before **[INSERT Objection Deadline]** |
| --- | --- | --- |
| **Do Nothing** | You do not have to do anything to benefit from the Settlement. If the Settlement becomes Final, you will not be able to sue the Philips Defendants or any of the Released Parties for the Medical Monitoring Claims, as defined in the Settlement Agreement. | None |

## Why am I receiving this Notice?

A Court authorized this Notice to U.S. citizens or residents who have used one or more of the following CPAP, BiPAP, or ventilator devices recalled by Philips Respironics: System One 50 Series ASV4 (Auto SV4); System One 50 Series Base; System One 50 Series BiPAP; System One 60 Series ASV4 (Auto SV4); System One 60 Series Base; System One 60 Series BiPAP; C-series S/T, AVAPS (C-series and C-series HT); DreamStation CPAP; DreamStation ASV; DreamStation ST, AVAPS; DreamStation BiPAP; DreamStation Go; E30; OmniLab Advanced Plus; Trilogy 100/200, Garbin Plus, Aeris LifeVent; V30 auto.

## What are the Settlement Benefits?

The Philips Defendants have agreed to pay $25 million into a Settlement Fund, and they shall *not* be entitled to a return of the Settlement Payment if the Settlement is approved and becomes Final. The Settlement Fund will be used to create Medical Advancement Program Benefits for Settlement Class Members for a period of 15 years, which will consist of:

- Funding independent medical research which will contribute to the advancement of public knowledge and education with respect to the detection, diagnosis, and/or treatment of Qualifying Injuries;

- Establishing a research registry for Settlement Class Members to which they can elect to submit authorizations for the release and disclosure of medical information protected by HIPAA, 45 CFR § 164.508, for purposes of review and evaluation in connection with the research related to the Qualifying Injuries;

- Establishing and maintaining an interactive website for Settlement Class Members to access the current medical information and guidance regarding the long-term health effects, if any, of use of the Recalled Devices ("Relevant Medical Information and Guidance"); and

- Periodically posting on the Settlement Website and disseminating to Settlement Class Members who register to receive notifications of the Relevant Medical Information and Guidance, which will be provided in a user-friendly format for affected individuals who do not have a medical or scientific background.

## No payments will be made to Settlement Class Members under the Settlement.

The Court in charge of this case still has to decide whether to approve the proposed Settlement. The Medical Advancement Program Benefits for Settlement Class Members will be provided if the Court approves the proposed Settlement, and after any appeals are resolved in favor of upholding the Settlement. This process can take time. Please be patient. You do not need to do anything or fill out any forms in order to be able to receive the Medical Advancement Program Benefits.

## What are the Qualifying Injuries?

One of the Medical Advancement Program Benefits that will be created by the Settlement Fund will be the funding of medical research related to the detection, diagnosis, and/or treatment of Qualifying Injuries. The Qualifying Injuries that may be the subject of this research include:

- Respiratory illnesses, such as asthma, chronic obstructive pulmonary disease (COPD), chronic bronchitis, bronchiectasis, sarcoidosis, acute respiratory distress syndrome, reactive airways dysfunction syndrome, pulmonary fibrosis, other interstitial lung disease, pneumonitis, and other restrictive or obstructive lung diseases;

- Certain mouth, nose, and throat cancers, such as, oral cavity cancers, oropharynx cancer, nasal cavity/sinus cancer, nasopharynx cancer, larynx cancer, hypopharynx cancer, salivary cancer, certain upper- and mid-esophageal cancers, certain limited thyroid cancers;

- Lung cancer; and

- Specific blood cancers, *i.e.*, acute myeloid leukemia (AML), chronic myeloid leukemia (CML), mucosa associated lymphoid tissue (MALT) originating in the air-pathway lymphoid tissue.

## What are My Options?

**You do not have the right to opt out of, or otherwise request exclusion from, the Settlement.**

However, you may **Object** to the Settlement or to the request for attorneys' fees, reimbursement of costs and expenses, and service awards by [INSERT Objection Deadline]. **Failure to timely and properly Object by the Objection Deadline will render your objection invalid and waived.** Please visit www.RespironicsMedicalAdvancementProgram.com for more information on how to Object to the Settlement. If you submit an objection, and would like to speak in Court regarding your objection, you may submit a written request to the Notice Administrator to appear at the Final Approval Hearing. Your request to appear must be post-marked by [INSERT Objection Deadline].

If you **Do Nothing and the Settlement becomes Final**, then you will automatically be permitted to benefit from, and be legally bound by, the terms of the Settlement, and you will release your Medical Monitoring Claims against the Philips Defendants and the other Released Parties.

## What are the Medical Monitoring Claims being given up if the Settlement is approved?

The Medical Monitoring Claims consist of any claims or relief for medical monitoring that were asserted or alleged, or could have been asserted or alleged, in the litigation, including the claims alleged and the relief sought in the Medical Monitoring Complaint for (a) non-monetary relief, including injunctive relief and/or specific performance, or (b) monetary relief, but only to the extent such monetary relief claims are brought, or relief is sought, as a representative or member

of any class of claimants in a class action, or through any other form of aggregate, group, or mass action.

Medical Monitoring Claims do *not* include individual claims for monetary relief for medical monitoring arising from use of the Recalled Devices. However, Medical Monitoring Claims *do* include individual claims for non-monetary relief, including injunctive relief and/or specific performance.

Details regarding the Release are in Section 4 of the Settlement Agreement, which can be viewed at www.RespironicsMedicalAdvancementProgram.com.

## Do I have a Lawyer for these Medical Monitoring Claims?

Yes. The Court appointed the following lawyers to represent you and the other Settlement Class Members: Christopher A. Seeger of Seeger Weiss LLP; Sandra L. Duggan of Levin Sedran & Berman LLP; Steven A. Schwartz of Chimicles Schwartz Kriner & Donaldson-Smith LLP; Kelly K. Iverson of Lynch Carpenter, LLP; and Roberta D. Liebenberg of Fine, Kaplan and Black, R.P.C.

These firms are called Settlement Class Counsel. You will not be charged for their services. They will be seeking attorneys' fees, reimbursement of costs and expenses, and service awards totaling up to 20% of the $25 million Settlement Fund, and their motion will be posted on the Settlement website.

## The Court's Final Approval Hearing.

The Court will hold a Final Approval Hearing on _____, 2024 at _____m., in Courtroom 5A of the Joseph F. Weis, Jr. U.S. Courthouse, 700 Grant Street, Pittsburgh, PA 15219.

At this hearing, the Court will consider whether the Settlement is fair, reasonable, and adequate. If there are objections, the Court will consider them. The Court will listen to Objectors who have timely and properly asked to speak at the hearing. The Court will then decide whether to approve the Settlement.

The Court will also decide how much should be awarded with respect to the motion for attorneys' fees, reimbursement of costs and expenses, and service awards that will be filed by Settlement Class Counsel.

The Court may reschedule the Final Approval Hearing or change any of the deadlines described in this Notice. Be sure to check the website, www.RespironicsMedicalAdvancementProgram.com, for news of any such changes.

**For more information, visit www.RespironicsMedicalAdvancementProgram.com.**

# Exhibit 4:

DreamMapper App Notice

**<u>DreamMapper Message</u>:**

For information on the U.S. settlement of Medical Monitoring Claims, visit
www.RespironicsMedicalAdvancementProgram.com