# EXHIBIT "A"

## PERSONAL INJURY MASTER SETTLEMENT AGREEMENT

This Personal Injury Master Settlement Agreement (the "MSA"), dated May 9, 2024, is between the undersigned counsel for Plaintiffs ("Plaintiffs' Negotiating Counsel" or the "PNC"), on the one hand, and Defendants Philips RS North America LLC ("Philips RS"), Koninklijke Philips N.V., Philips North America LLC, Philips Holding USA, Inc., and Philips RS North America Holding Corporation (collectively, the "Philips Defendants"), on the other.  The Philips Defendants and the PNC are each a "Party," and, collectively, are the "Parties."

This MSA reflects the terms of a private settlement program (as defined below, the "Program") intended to resolve the claims or potential claims of all United States Citizens or Residents who have a Qualifying Injury and who allege that they sustained such Qualifying Injury from (i) use of one or more of the Recalled Devices, and/or (ii) any asserted defects, delays or inadequacies relating to the Philips RS recall programs.

## RECITALS

A.      Beginning on June 14, 2021, Philips RS announced recalls of certain CPAP, BIPAP and ventilator products (the "Recalled Devices," defined further below).

B.      Individuals have asserted actual or potential Personal Injury Claims against the Philips Defendants, including through the filing of lawsuits or other proceedings against the Philips Defendants and also through joining the Census Registry.  The Philips Defendants deny any and all liability for all Personal Injury Claims.

C.      The filed Personal Injury Claims have been centralized in, *inter alia*, the MDL Court and the Massachusetts Court.

D.      The Parties have concluded that, given the facts and circumstances of the Personal Injury Claims, including the claims asserted and the legal and factual defenses thereto, it would be in the Parties' best interests to enter into this MSA to avoid the uncertainties, burdens and risks of new and continued litigation.  The Parties have further concluded that, based on, among other things, the total number of persons who have asserted Personal Injury Claims and, separately, the total number of persons with Personal Injury Claims that the Parties anticipate will participate in the Program, the Program is fair, reasonable and adequate.

E.      The Parties agree that this MSA and the Program are intended to resolve, in lieu of further litigation, all Released Claims of all Eligible Claimants.  For persons represented by counsel, to be an Eligible Claimant, the person must have retained counsel on or before April 29, 2024.  The Program is not available to persons represented by counsel where that representation began after April 29, 2024.

F.      Pursuant to Pretrial Order No. 8, the PNC were authorized by the MDL Court to prosecute litigation relating to the Recalled Devices, including the negotiation of any potential settlements.  This MSA is a result of work performed and expenses incurred by the Court-appointed plaintiffs' leadership for the common benefit of Plaintiffs, including as a result of

extensive negotiations between the Parties with the assistance of the Court-appointed mediator, the Honorable Diane M. Welsh (Ret.) (the "Settlement Mediator").

G.       The Program is intended to resolve all claims or potential claims of Eligible Claimants who allege any injury the undersigned counsel for Plaintiffs believe can be sustained. Based on their assessment, the remaining injuries (*i.e.*, Nonqualifying Injuries, which are not part of the Settlement or the Program) will not be pursued going forward by the undersigned counsel for Plaintiffs.

H.       The Philips Defendants are paying no more than the consideration set forth in this MSA (*i.e.*, in the aggregate, $1.075 billion) to resolve all Released Claims of all Eligible Claimants.

I.       The Parties expressly agree and acknowledge that the Settlement and the Program are available only to United States Citizens and Residents.

J.       Nothing in the Settlement will be construed as evidence of, or as an admission by, the Philips Defendants of any fault, liability, wrongdoing, causation, or damages whatsoever. The Philips Defendants maintain that use of the Recalled Devices did not cause any injuries, including any of the Qualifying Injuries.  The Philips Defendants are not endorsing or agreeing to any particular allocation methodology or injury value for any particular Qualifying Injury or Eligible Claimant.

## ARTICLE 1
## DEFINITIONS

**Cash and the $:** Any reference in this MSA to "$" means U.S. dollars.

**Census Registry** means the Census Registry Program established by Pretrial Order Nos. 25 (ECF 739) and 25a (ECF 870).

**Days** mean calendar days, but if a deadline falls on a weekend or federal holiday, then the period continues to run until the next day that is not a Saturday, Sunday, or federal holiday.

**Deficient Claimant** means any person who attempts to register for the Program but fails to provide proof of a Qualifying Injury, proof of use of a Recalled Device, and/or proof that they are a United States Citizen or Resident.  The Settlement Administrator shall implement a process to allow time for Deficient Claimants to rectify the deficiency(ies).  Absent agreement of the Parties, the amount of time for this deficiency cure process shall be no less than 45 days and not more than 90 days. Deficient Claimants who timely rectify the deficiency(ies) are Eligible Claimants and Registered Claimants.  Deficient Claimants who do not timely rectify the deficiency(ies) are neither Eligible Claimants nor Registered Claimants, and will be deemed Ineligible Claimants.

**Disengaged Claimant** means an Eligible Claimant listed on an Identification Order Declaration with an unfiled claim who fails to submit a Registration Form by the Registration Deadline and is identified by Primary Counsel on a Disengaged Claimant Declaration within 7 days after the Registration Deadline.

**Disengaged Claimant Declaration** means the declaration under penalty of perjury submitted by Primary Counsel substantially in the form of Exhibit 1.

**Eligible Claimant** means a United States Citizen or Resident who, as of the applicable Identification Order Declaration Deadline, alleges a Qualifying Injury caused by their use of one or more Recalled Devices and/or any asserted defects, delays or inadequacies relating to the Philips RS recall programs, and either (i) retained counsel on or before April 29, 2024 and is included on an Identification Order Declaration alleging a Qualifying Injury by the applicable Identification Order Declaration Deadline, or (ii) is a *pro se* plaintiff who has filed a Personal Injury Claim or Claims in the MDL Court or Massachusetts Court alleging a Qualifying Injury or submits an Identification Order Declaration alleging a Qualifying Injury by the applicable Identification Order Declaration Deadline.

**Ineligible Claimant** means anyone who is not an Eligible Claimant.  An Ineligible Claimant is not entitled to participate in or receive any benefits under the Settlement or the Program unless both Plaintiffs' Negotiating Counsel and the Philips Defendants agree to deem that person an Eligible Claimant (*e.g.*, allowing for the untimely submission of an Identification Order Declaration and/or an untimely submission of a Registration), in which case that person will be considered an Eligible Claimant for all purposes.

**Lienholders** means all government program insurers that hold Liens.

**Liens** means liens or claims asserted under the Medicare Secondary Payer Act or the Medicare, Medicaid, and SCHIP Extension Act related to a Registered Claimant's Qualifying Injury and payment pursuant to the Program.

**Massachusetts Court** means the Honorable Christopher K. Barry-Smith, or his successor, who presides over the consolidated proceeding currently captioned *St. John, Christine et al.* v. *Philips North America, LLC et al.*, Docket No. 2281CV01788 (Massachusetts Middlesex County Super. Ct., Woburn).

**MDL Court** means the Honorable Joy Flowers Conti, or her successor, who presides over *In re Philips Recalled CPAP, Bi-Level PAP, and Mechanical Ventilator Prods. Litig.*, MDL No. 3014 (W.D. Pa.) (the "MDL").

**Master Settlement Agreement or MSA**: This Personal Injury Master Settlement Agreement dated May 9, 2024 and all exhibits attached hereto.

**Nonqualifying Injuries** means any injury other than a Qualifying Injury.

**Ozone Cleaning Companies** means manufacturers of ozone-based cleaning devices for CPAP, BiPAP, ventilator or other similar devices, as well as their former, present, and future owners, shareholders, directors, officers, employees, attorneys, affiliates, parent companies, subsidiaries, predecessors and successors, including, but not limited to, SoClean Inc. and DW Management Services, LLC d/b/a DW Healthcare Partners.

**Personal Injury Claims** means any and all actual or potential claims, demands, rights, remedies, relief, actions, or causes of action, suits at law or in equity, whether sounding in tort, contract, arising under statute, or otherwise, and whether asserted or unasserted, for personal or bodily injuries, including for pecuniary, non-pecuniary, and punitive, statutory or other exemplary damages or remedies of whatever kind or character for those personal or bodily injuries (including, but not limited to, past, present or future lost wages, lost earning capacity, economic, property or business losses, or medical costs or expenses, including for pain and suffering and mental or emotional harm, and attorneys' fees, costs and expenses, as well as derivative claims such as loss of consortium or wrongful death) against the Philips Defendants or any other Released Party relating to the Recalled Devices.  Personal Injury Claims includes claims for Qualifying Injuries and also Nonqualifying Injuries.

**Plaintiffs' Negotiating Counsel** or **PNC** means the undersigned law firms for Plaintiffs that comprise the law firms that participated in the negotiations of this MSA.

**PolyTech Defendants** means Polymer Technologies, Inc. and Polymer Molded Products LLC.

**Primary Counsel** means (1) for any Eligible Claimant with a Personal Injury Claim in the MDL, or participating in the Census Registry, the lawyer or law firm listed as the registering Law Firm in MDL Centrality; (2) for any Eligible Claimant with a Personal Injury Claim filed in state court, counsel of record for the Eligible Claimant; or (3) for any Eligible Claimant with an unfiled Personal Injury Claim and who is not participating in the Census Registry, counsel with an engagement or retainer agreement with such Eligible Claimant.  Counsel shall not be Primary Counsel for an Eligible Claimant if counsel's representation of that Eligible Claimant terminated prior to the Identification Order Declaration Deadline.

**Program** means the Personal Injury Settlement Program to be set forth in this MSA.

**Qualified Settlement Fund or QSF**: The fund established pursuant to this MSA set up in accordance with Section 468B(d)(2) of the Internal Revenue Code of 1986, as amended, and 26 CFR § 1.468B-1 1, *et seq.* of the Treasury Regulations.

**Qualifying Injury** means either a Qualifying Respiratory Injury or a Qualifying Cancer.

**Qualifying Respiratory Injury** means, as demonstrated through proof of diagnosis or treatment, respiratory impairment (*e.g.*, new or worsening asthma, new or worsening COPD, chronic bronchitis, bronchiectasis, sarcoidosis, acute respiratory distress syndrome, reactive airways dysfunction syndrome, pulmonary fibrosis, pneumonitis, other interstitial lung disease, other obstructive or restrictive lung disease).

**Qualifying Cancer** means one of the following, as demonstrated through proof of diagnosis or treatment:  lung cancer; certain blood cancers (acute myeloid leukemia (AML), chronic myeloid leukemia (CML), or mucosa associated lymphoid tissue (MALT) of the air-pathway lymphoid tissue); or ENT/pathway cancers (*e.g.*, oral cavity cancers; oropharynx cancer; nasal cavity/sinus cancer; nasopharynx cancer; larynx cancer; hypopharynx cancer; salivary cancer; esophageal cancers; thyroid cancers).

**Recalled Device(s)** means the following CPAP, BiPAP and ventilator devices:

- C-series S/T, AVAPS (C-series and C-series HT);
- DreamStation ASV;
- DreamStation BiPAP;
- DreamStation CPAP;
- DreamStation Go;
- DreamStation ST, AVAPS;
- E30;
- OmniLab Advanced Plus;
- System One 50 Series ASV4 (Auto SV4);
- System One 50 Series Base;
- System One 50 Series BiPAP;
- System One 60 Series ASV4 (Auto SV4);
- System One 60 Series Base;
- System One 60 Series BiPAP;
- Trilogy 100/200, Garbin Plus, Aeris LifeVent; and
- V30 auto.

**Registered Claimant** means an Eligible Claimant who registers for the Program by the Registration Deadline and provides proof that they are a United States Citizen or Resident, proof of use of a Recalled Device, and proof of a Qualifying Injury. An Eligible Claimant who is not a Registered Claimant is not entitled to participate in or receive any benefits under the Settlement or the Program unless both Plaintiffs' Negotiating Counsel and the Philips Defendants agree to deem that person a Registered Claimant (*e.g.*, allowing for the untimely submission of a Registration), in which case that person will be considered a Registered Claimant for all purposes.

**Registration Deadline** means December 10, 2024; provided, however, that the Registration Deadline may be extended by written agreement of the Parties.

**Released Claims** has the meaning set forth in the Release attached hereto as Exhibit 2.

**Released Parties** means any individual who, or entity that, is or could be responsible or liable in any way whatsoever, whether directly or indirectly, for Released Claims. Without in any way limiting the foregoing, the Released Parties include, without limitation, (1) the Philips Defendants, (2) any of their past, present, or future parents, owners, predecessors, successors, subsidiaries, divisions, affiliates/related entities, stockholders, officers, directors, board members, supervisors, members, partners, managers, and employees, (3) any of their current, former or future suppliers, agents, testing laboratories, attorneys, vendors, consultants, claim administrators, recall administrators, contractors and subcontractors, including the PolyTech Defendants, (4) any and all current, former or future distributors, sellers, insurers, reinsurers, resellers, lessors, retail dealers, and DME providers for the Recalled Devices, (5) prescribing doctors, healthcare providers, and healthcare practices with respect to the Recalled Devices, (6) any and all individuals and entities indemnified by any other Released Party with respect to Released Claims, and (7) all of their predecessors, successors, assigns, legatees, legal representatives, and any other stakeholders, as well as all other persons acting by, through, or under them, including those who are, may be, or

are alleged to be jointly or jointly and severally liable with them, or any of them.  In addition, Released Parties includes the Ozone Cleaning Companies.  For the avoidance of doubt, nothing herein precludes the Philips Defendants from pursuing contribution claims against the Ozone Cleaning Companies.

**United States Citizen or Resident** means a person who currently is a United States citizen or resident, or a current United States military, diplomatic personnel or employee living or stationed overseas, or a person who succeeds to the rights or interests of such person (*e.g.*, estate representatives).

## ARTICLE 2
## IDENTIFICATION OF ELIGIBLE CLAIMANTS

**Section 2.1**     The Settlement is intended to resolve all Released Claims of all Eligible Claimants.  The purpose of the identification requirements set forth in this section is to identify and create an initial list of the Eligible Claimants.

**Section 2.2    Identification Order**

**2.2.1**  Promptly after the execution of this MSA, the Parties agree to request that the MDL Court and the Massachusetts Court enter Identification Orders requiring, within 30 days of the Orders (the "Identification Order Declaration Deadline"), (i) all counsel with clients in suit or on the Census Registry to identify all Eligible Claimants (whether claims or potential claims with respect to the Eligible Claimant client have been filed in suit, asserted on the Census Registry, or otherwise) for which they are Primary Counsel, and (ii) *pro se* litigants to identify themselves if they believe they suffered a Qualifying Injury caused by their use of one or more Recalled Devices and/or any asserted defects, delays or inadequacies relating to the Philips RS recall programs (the "Identification Order Declarations").

**2.2.2**  The Identification Orders shall be substantially in the form of Exhibit 3.

**2.2.3**  The Identification Orders shall require each Primary Counsel to take any and all steps necessary to identify all Eligible Claimants they represent or claim to represent (whether claims or potential claims with respect to the Eligible Claimant client have been filed in suit, asserted on the Census Registry, or otherwise), and submit to the Settlement Administrator an Identification Order Declaration under penalty of perjury that identifies all Eligible Claimants represented by that Primary Counsel and affirms under penalty of perjury that the Identification Order Declaration includes all of Primary Counsel's Eligible Claimant clients.

**2.2.4**  Identification Order Declarations may also be submitted by counsel who do not have clients in suit or on the Census Registry.  The filing of suit and/or enrollment in the Census Registry is not a condition to participating in the Program.

**2.2.5**  Promptly upon the execution of the MSA, (i) the Parties will jointly request that the MDL Court enter an Identification Order substantially in the form of Exhibit 3, (ii) the Philips Defendants will request that the MDL Court enter a Docket Management Order substantially in the form of Exhibit 4, which the PNC will not oppose, and (iii) the Philips Defendants will request

that the Massachusetts Court enter both an Identification Order and a Docket Management Order in substantially the same form, which the PNC will not oppose.

**2.2.6** The Philips Defendants shall have the option, in their sole discretion, to terminate the Settlement if either the Identification Order or the Docket Management Order are not entered by the MDL Court. This option shall expire 30 days after the MSA is signed, although the Parties can agree on a reasonable extension if the entry of those orders is then still under consideration by the MDL Court.

**Section 2.3**   For each filed case and potential claim that had been on the Census Registry, there must be a single designation of a Primary Counsel. Primary Counsel must identify clients by serving a list of all Eligible Claimant clients (whether in suit, on the Census Registry or otherwise) for which such counsel is Primary Counsel as of the date of the designation.

**Section 2.4**   If any law firm fails to submit an Identification Order Declaration by the applicable Identification Order Declaration Deadline, Plaintiffs' Negotiating Counsel agrees to invoke the full scope of their rights under the Attorney Participation Agreement, including enforcing the Attorney Participation Agreement in the MDL Court by requiring that the noncompliant law firm(s) provide a list of their clients and imposing the full extent of sanctions permitted under the Attorney Participation Agreement.

**Section 2.5**   Any person who, as of the applicable Identification Order Declaration Deadline, is not included on an Identification Order Declaration, or (for *pro se* plaintiffs only) who has not filed a Personal Injury Claim or Claims in the MDL Court or the Massachusetts Court alleging a Qualifying Injury, shall be deemed an Ineligible Claimant. An Ineligible Claimant is not entitled to participate in or receive any benefits under the Settlement or the Program unless both Plaintiffs' Negotiating Counsel and the Philips Defendants agree to deem that person an Eligible Claimant (*e.g.*, allowing for the untimely submission of an Identification Order Declaration), in which case that person will be considered an Eligible Claimant for all purposes.

**Section 2.6**   Within 14 days after the submission of Identification Order Declarations, and in consultation with the Parties, the Settlement Administrator shall provide the Parties with a de-duplicated list of Eligible Claimants (the "Identification Order Report").

**Section 2.7**   The Parties may challenge the contents of the Identification Order Report, including that such report either includes claimants who are not Eligible Claimants or fails to include Eligible Claimants or both. A challenge pursuant to this Section shall be made in writing to the Settlement Administrator and served on the other Parties within 14 days of the issuance of the Identification Order Report. Any Party that opposes the challenge may submit a written response within 10 days of such challenge. The Settlement Special Master shall review any such challenge and issue a determination, which may include amending the Identification Order Report, within 10 days of such response. The determination by the Settlement Special Master shall be final, binding and not subject to any right to further review by any party or court. The Parties may agree in writing on reasonable extensions of these deadlines.

**Section 2.8**   The Philips Defendants will be terminating the Census Registry on or around the date of this MSA. The Philips Defendants agree to the tolling of any and all time

limitations for filing or pursuing a Personal Injury Claim for all claimants included on the Identification Order Report, to the extent such time limitations have not already expired as of the date of this MSA, for the time period from the date of this MSA until 14 days after the expiration of the Philips Defendants' Termination Rights.  The tolling of limitations is not intended to, and shall not for any purposes be deemed to, limit or adversely affect any defense, other than a limitations defense, the Philips Defendants may have or would have had in the absence of this tolling.  Further, this tolling does not have any impact on any tolling provided under the Prior Tolling Agreement or the Census Registry Program.

## ARTICLE 3
## REGISTRATION AND IDENTIFICATION OF REGISTERED CLAIMANTS

**Section 3.1**   All Eligible Claimants who appear on the Identification Order Report will have an opportunity to Register for the Program, and thereby become a Registered Claimant.

**Section 3.2**   To access the benefits of the Program, Eligible Claimants must complete and submit to the Settlement Administrator a Registration Form electing to participate in the Program, including all required signatures and attachments.

**Section 3.3** The deadline for Registration shall be the Registration Deadline, which is December 10, 2024.

**Section 3.4**   Eligible Claimants who comply with and complete the Registration Form and elect to participate in the Program become Registered Claimants.  For the avoidance of doubt, only Eligible Claimants may become Registered Claimants, and inclusion on the Identification Order Report does not guarantee eligibility to become a Registered Claimant.  Conversely, Eligible Claimants not included on the Identification Order Report may become Registered Claimants only by agreement of the Parties (*e.g.*, allowing for the untimely submission of an Identification Order Declaration) pursuant to Section 2.5 or determination by the Settlement Special Master pursuant to Section 2.7.

**Section 3.5** For purposes of completing a Registration Form, a beneficiary, recognized under state law, of the deceased Eligible Claimant may initially execute the Registration Form.  In the event that the allocation to the deceased Eligible Claimant is $75,000 or more, the Release shall not be effective until executed by a representative for the deceased Eligible Claimant appointed in accordance with applicable state law.  For any deceased Eligible Claimant who will receive less than $75,000, the Release shall be effective if signed by all beneficiaries identified in a family settlement affidavit or the representative satisfies the small estate administration rules consistent with applicable state law.  For the avoidance of doubt, no claimant shall be paid until a valid and effective Release has been completed and signed.

**Section 3.6**   The Registration Form, which shall be mutually agreed on by the Parties, shall provide information to Eligible Claimants about the benefits of the Settlement and the consequences of failing to register.  The Registration Form and accompanying materials may be revised by agreement of the Parties.  The Registration Form shall require each Eligible Claimant electing to participate in the Settlement to submit to the Settlement Administrator:

**3.6.1**   Identifying information about the Eligible Claimant and the Eligible Claimant's counsel, if any.

**3.6.2**   An election as to whether the Eligible Claimant wishes to participate in the Program; and if so elected, such information as is necessary to participate in the Program, including proof the Eligible Claimant is a United States Citizen or Resident, proof of a Qualifying Injury, and proof of use of a Recalled Device (which may include, among other things, information from Care Orchestrator, registrations as part of the Philips RS recall programs, and enrollments and claims submitted as part of the economic loss class action settlement); the Philips Defendants will reasonably cooperate with the Settlement Administrator and the PNC to make such data available as part of the Program.

**3.6.3**   A full and complete release of all Released Claims against the Released Parties, a sworn representation that the person has the authority to release such claims and has not sold or otherwise transferred such claims, and an indemnification against the matters set forth in the Release and Indemnification section below, in the form attached as Exhibit 2.

**3.6.4**   If the Eligible Claimant has filed a Released Claim or Claims in a court or other tribunal, a dismissal with prejudice of the Released Claim or Claims.  Such dismissal shall only be filed in the appropriate court or other tribunal after the Philips Defendants' Termination Rights have expired.

**3.6.5**   Evidence of representative capacity (if applicable).  The Settlement Administrator will adopt a procedure specifying the proof required of the authority of an Eligible Claimant to act on behalf of a deceased or incapacitated or legally incompetent user or user's estate, where required by this Agreement.  For purposes of completing a Registration Form, a beneficiary, recognized under state law, of the deceased Eligible Claimant may initially execute the Registration Form.

**3.6.6**   The Settlement Administrator may request additional information or communicate with Primary Counsel and Eligible Claimants in conjunction with Primary Counsel, or *pro se* Eligible Claimants, concerning any questions that may arise in this process and/or to request additional information or documentation from any Eligible Claimant. The Settlement Administrator may respond to Eligible Claimants who contact the Settlement Administrator directly.

**Section 3.7**   A person who attempts to register for the Program but fails to provide proof of a Qualifying Injury, proof of use of a Recalled Device, and/or proof that they are a United States Citizen or Resident will be deemed a Deficient Claimant.  The Settlement Administrator shall implement a process to allow time for Deficient Claimants to rectify the deficiency(ies).  Absent agreement of the Parties, the amount of time for this deficiency cure process shall be no less than 45 days and not more than 90 days.  Deficient Claimants who timely rectify the deficiency(ies) are Eligible Claimants and Registered Claimants.  Deficient Claimants who do not timely rectify the deficiency(ies) are neither Eligible Claimants nor Registered Claimants, and will be deemed Ineligible Claimants, and will have their Registration Form and accompanying materials returned by the Settlement Administrator and will not be bound by the Program.

**Section 3.8**    For all Registered Claimants with filed complaints (or similar pleadings), a stipulated dismissal with prejudice shall be filed in the appropriate court or tribunal after the Philips Defendants' Termination Rights have expired and consistent with Section 4.3.

**Section 3.9    No Punitive Damages.**  By completing a Registration Form that elects to participate in the Program and submitting a Release, each Registered Claimant waives the right to receive any punitive damages arising out of or related to any Released Claim, and each Registered Claimant understands and agrees that no amount paid pursuant to the Program is, or shall deemed to be, attributable to punitive damages.

**Section 3.10    No Withdrawal of Registration Forms.**  Submission of a Registration Form electing to participate in the Program is irrevocable.  No Registered Claimant may under any circumstances or reason withdraw a Registration Form or accompanying materials, request the return of his/her Release or dismissal with prejudice, or otherwise withdraw from the Program regardless of the amount of any non-zero final award from the Program.  Any purported withdrawal of a Registration Form  or accompanying materials is not effective unless by the written agreement of all Parties.

**Section 3.11    Failure to Register.**  Eligible Claimants who do not register by the Registration Deadline shall not be eligible to participate in the Program unless the Parties jointly agree to waive this requirement on a case-by-case basis.

**Section 3.12    Disengagement from Eligible Claimants Who Cannot Be Located or Reached.**  Within 7 days after the Registration Deadline, to the extent applicable, Primary Counsel shall submit a Disengaged Claimant Declaration, in the form of Exhibit 1, to the Settlement Administrator and the Philips Defendants, listing all their Eligible Claimant clients Primary Counsel was unable to contact prior to the Registration Deadline, despite repeated good faith attempts to do so.  Pursuant to that Declaration, Primary Counsel will affirm that they have disengaged with and ceased all representation of any Disengaged Claimants.

## ARTICLE 4
## RELEASE AND INDEMNIFICATION

**Section 4.1**    Each Registered Claimant shall fully and forever release all Released Parties from and against all Released Claims.  Each Registered Claimant shall fully indemnify and hold harmless the Released Parties from any and all claims by Lienholders.  The Release shall be in the form of Exhibit 2.

**Section 4.2**    Each Registered Claimant shall acknowledge and warrant that the Registered Claimant is solely liable for the payment of taxes and/or liens, if any, associated with the Settlement, the Program and the releases, and that all present and future liens that arise out of or as a result of the Registered Claimant's claims or their settlement and release (including, but not limited to, any Medicare or Medicaid liens, liens by any governmental entity, other entity or insurer, workers' compensation liens, employer ERISA plan liens, Social Security liens, hospital, physician, health care provider or attorney liens) are the Registered Claimant's sole and exclusive responsibility.

**Section 4.3**   The releases, indemnities, and dismissals with prejudice provided as part of the Registration process shall be held in escrow by the Settlement Administrator, until after the Philips Defendants' Termination Rights have expired.  The Philips Defendants shall have access to such releases, indemnities, and dismissals with prejudice and may review them at any time.  If the Philips Defendants do not exercise any of their Termination Rights, such releases, indemnities, and dismissals with prejudice shall be provided to them, and the dismissals with prejudice shall be filed.

## ARTICLE 5
## PARTICIPATION AND TERMINATION

**Section 5.1   Participation Level.**  The Participation Level is the percentage of Eligible Claimants who become Registered Claimants.  The Participation Level shall be equal to (Number of Registered Claimants + Number of Eligible Claimants who do not become Registered Claimants but whose claims are dismissed with prejudice) / (Number of Eligible Claimants – Number of Disengaged Claimants) * 100.

Deficient Claimants and Ineligible Claimants are neither Eligible Claimants nor Registered Claimants and are not included as part of the Participation Level calculation.

Any Registration submissions that are materially incorrect or fraudulent will not be considered in the Participation Level calculations.

Eligible Claimants who are unable to execute a release as a result of bankruptcy or death shall count as Registered Claimants if:

a.  In the event of death, Primary Counsel asserts the Eligible Claimant's intention to participate in the Program, but is awaiting authorization to execute the Release; or

b.  In the event of a bankruptcy, Primary Counsel confirms its good faith belief that the Personal Injury Claim is property of the bankruptcy estate and provides evidence of an active bankruptcy during the pendency of such claimant's litigation against the Released Parties.

**Section 5.2**   The Settlement Administrator shall report the Participation Level 14 days after the Registration Deadline, subject to the Parties' mutual agreement to an extension for the Settlement Administrator to do so.

**Section 5.3   Minimum Participation Level.**  The Philips Defendants shall have the option, in their sole discretion, to terminate the Settlement if the following Participation Level threshold is not met (a "Termination Right"):

**Overall Participation Level.**  95% of Eligible Claimants become Registered Claimants per the formula in Section 5.1.

**Section 5.4**   Either Party may challenge the Settlement Administrator's calculation of the Participation Level within 14 days of being provided notice of the Participation Level.  Within 10 days of such challenge, any Party opposing such challenge may submit a written response.  The

Settlement Special Master shall review any such challenge and issue a determination within 10 days of such response. The determination by the Settlement Special Master shall be final, binding, and not subject to any right to further review by any Party or court. The Parties may agree in writing on reasonable extensions of these deadlines.

**Section 5.5**   The Philips Defendants' Termination Rights shall expire 14 days after the Participation Level is finalized, either 14 days after the Settlement Administrator calculates and communicates to the Philips Defendants the Participation Level thresholds, or in the event of a challenge to the Participation Level pursuant to Section 5.4, 14 days after the resolution of that challenge process, whichever is later.

**Section 5.6**   If the Program is terminated or otherwise not effectuated, then:  (1) the documents executed as part of Registration are null and void; (2) any releases and indemnities will be rescinded and will have no effect; and (3) any dismissals provided as part of the Registration process will not be filed with the applicable court and will be returned by the Settlement Administrator to the Primary Counsel or *pro se* claimant who submitted them.  None of the Parties' claims and defenses in litigation will be prejudiced by entering the MSA under these circumstances.

**ARTICLE 6**
**ADMINISTRATORS AND ROLES**

**Section 6.1   Administration.**  This is a private agreement.  Each Party, and, by inclusion on an Identification Order Declaration and/or submission of a Registration Form, each Eligible Claimant and all counsel for each such Eligible Claimant, agree that authority over the process contemplated by the Program, including any Eligible Claimants registering under the Program, resides with the Parties and those persons appointed by the MDL Court pursuant to this MSA to exercise that authority, as such authority is specified in this MSA.

**Section 6.2**   The administration of this MSA requires a Settlement Special Master, a Settlement Administrator, and an Allocation Special Master.  Other administrators may be appointed to assist in implementing the Program, at the discretion of the Parties.  All of the costs and expenses of claims and other administration for the Program will be paid for out of the Settlement Fund, including all costs and expenses incurred by the Settlement Administrator, the Settlement Special Master, the Allocation Special Master, and any other administrators, as well as all costs and expenses incurred for purposes of lien resolution.  The Philips Defendants shall not be responsible for any costs or expenses beyond their payments into the Settlement Fund, as described in Article 9 below.

**Section 6.3**   The Settlement Administrator shall be BrownGreer, PLC.  Subject to the approval of the Parties, some or all of the duties enumerated below may be modified as needed to ensure the efficient operation of this Settlement, to minimize expense, and/or to mitigate any risks to the corpus of the settlement funds.  The Settlement Administrator shall be charged with the following primary administrative responsibilities conforming to the MSA and the execution of this Program:  claims administrator; and administrator of the 26 C.F.R. § 1.468B-1 Qualified Settlement Fund ("QSF").  The following subsection lists the enumerated duties and responsibilities of the Settlement Administrator but is not intended to be an exhaustive list of

obligations.  The Parties agree that the Settlement Administrator shall perform the following duties to effect the Parties' negotiated Program.

      **6.3.1**    The Settlement Administrator shall be responsible for coordination with and implementation of any Program design, allocation methodology, and settlement document(s) requirements of the Parties.  By way of example, this may include coordination and data administration; implementation, application, and generation of Registered Claimant's settlement offer *vis-à-vis* the Allocation Special Master methodology; and building and transmitting a Settlement disclosure packet to Eligible Claimants, among other tasks.  The Settlement Administrator shall work collaboratively with the Allocation Special Master to create and distribute a Program disclosure packet to Eligible Claimants, and on reviewing, and coordinating review of, the information submitted by Eligible Claimants, including as part of the allocation methodology.

      **6.3.2**    The Settlement Administrator shall be responsible for all data administration related to the Program.  This shall include performing eligibility determinations and qualifying Eligible Claimants for participation in the Program consistent with this Agreement.  The Settlement Administrator shall review all Eligible Claimant submissions and supporting records.  The Settlement Administrator shall certify the proper execution of compulsory documents in the Settlement disclosure packet per the Parties' requirements herein, including the release and stipulated dismissals with prejudice, and coordinate with the Philips Defendants for verification of same.

      **6.3.3**    The Settlement Administrator shall work with the Parties to design and implement fraud protection measures, including to identify and reject fraudulent claims for awards from the Program.

      **6.3.4**    The Settlement Administrator in consultation and coordination with the Parties shall prepare all motions, proposed court order(s), and documents needed to establish and administer the QSF in accordance with this MSA and court order(s), and distribute funds from the QSF to law firms and Registered Claimants in accordance with the Program.  The Settlement Administrator shall obtain a Federal Taxpayer Identification Number (TIN) and open custodial bank account(s).

    **Section 6.4**    The Settlement Administrator shall report to the Parties on a periodic basis concerning all aspects of implementation of this MSA and the Program.

    **Section 6.5**    Tax Management of QSF by Settlement Administrator.

      **6.5.1**.    To the fullest extent allowable under applicable law, the Qualified Settlement Fund shall be treated as being at all times a "qualified settlement fund" within the meaning of Treasury Regulation §1.468B-1 et seq.  The Settlement Administrator and, as required, the Parties, shall timely make such elections as are necessary or advisable to carry out the provisions of this Section, including the "relation-back election" as defined in Treasury Regulation §1.468B-1, back to the earliest permitted date.  Such elections shall be made in compliance with the procedures and requirements contained in such regulation.  It shall be the sole responsibility of the Settlement Administrator to timely and properly prepare and deliver the necessary

documentation for signature by all necessary parties, and thereafter to cause the appropriate filing to occur.

   **6.5.2** Custodial Bank shall mean Huntington Bank, which will enter into an agreement to carry out the tasks more fully detailed in that agreement, including to receive, hold, invest, and disburse funds and pay reasonable administrative expenses pursuant to the Program. Upon mutual agreement, the Parties may replace Huntington Bank with another financial institution.

   **6.5.3** Tax Returns. For the purpose of Section 468B of the Internal Revenue Code, the "administrator" shall be the Settlement Administrator. The Settlement Administrator shall timely and properly provide all informational and other tax returns necessary or advisable with respect to the QSF and the amounts held in the Qualified Settlement Fund including the returns described in Treasury Regulation §1.468B-2(k)(l). Such returns (as well as the election described in Section 468B) shall be consistent with Section 468B and in all events shall reflect that all taxes (including any estimated taxes, interest or penalties, or tax detriments) on the income earned by the Qualified Settlement Fund shall be paid exclusively out of the Qualified Settlement Fund, in accordance with Section 468B.

   **6.5.4** The Parties agree to cooperate with the Settlement Administrator, each other, and their tax attorneys and accountants to the extent reasonably necessary to carry out the provisions of this Section. The Settlement Administrator shall be empowered to take all such actions, including such actions as may be inconsistent with those expressly set forth in this Article 6, as deemed necessary to ensure that the Trust is treated as a "Qualified Settlement Fund" under Section 468B of the Internal Revenue Code and the Regulations promulgated pursuant thereto. The overarching purpose of the Qualified Settlement Fund is to be at all times in compliance with Internal Revenue Code Section 468B and all administrative authority and announcements thereunder.

  **Section 6.6** The Settlement Special Master shall be Judge Diane M. Welsh (ret.).

   **6.6.1** The Settlement Special Master may decide any disputes regarding the MSA, or arising out of its or the Program's implementation, on agreement of the Parties.

  **Section 6.7** The Allocation Special Master shall be Matt Garretson. The Allocation Special Master shall create an allocation methodology to calculate the settlement offer for each Eligible Claimant (which shall be a non-zero amount for each Eligible Claimant), including an allocation methodology and process for reviewing and determining any extraordinary injury fund ("EIF") application. The Allocation Special Master shall work with the Settlement Administrator to create and distribute a Settlement disclosure packet to Eligible Claimants, and on reviewing, and coordinating review of, the information submitted by Eligible Claimants as part of the allocation methodology. The responsibility to create the allocation methodology resides with the Allocation Special Master, but the Allocation Special Master may consult with the Parties as part of that process. In entering into this Settlement, the Philips Defendants are not endorsing or agreeing to any particular allocation methodology or injury value for any particular Eligible Claimant or alleged injury. The Philips Defendants are not responsible for the allocation methodology determined by the Allocation Special Master.

## ARTICLE 7
## GOOD FAITH PARTICIPATION AND OBLIGATIONS
## OF COUNSEL FOR ELIGIBLE CLAIMANTS

**Section 7.1**   By the submission of a Registration Form, Eligible Claimants and their counsel agree to abide by any Orders entered by the MDL Court and/or the Massachusetts Court, as applicable, in furtherance of the Settlement, including the Identification Orders and Docket Management Orders.

**Section 7.2**   Counsel for Eligible Claimants must act in good faith with respect to participation or nonparticipation in the Program by their clients.   By the submission of a Registration Form for one of their Eligible Claimants, counsel for Eligible Claimants represent and warrant that they will use their best efforts to secure all documentation required for timely Registration and compliance with the Program, including releases, indemnities and, where applicable, dismissals with prejudice, from all of their clients who elect to register in the Program and to otherwise effectuate the terms of the Program and, subject to the exercise of their independent professional judgment as to the circumstances of individual clients, they will endorse Registration in the Program to their Eligible Claimant clients.

**Section 7.3**   By the submission of a Registration Form for one of their Eligible Claimants, counsel for Eligible Claimants affirm that they are not actively advertising for, soliciting, or taking steps to obtain new clients to assert Personal Injury Claims against one or more of the Released Parties, and have no present intent to do so in the future.

**Section 7.4**   Each counsel is expected to exercise his or her independent judgment in the best interest of each client.   The Parties agree that a central objective of the Program is that, with respect to any counsel for a Registered Claimant, all other Eligible Claimants represented by such counsel will also be Registered Claimants.   While nothing in this Program is intended to operate as a "restriction" on the right of any person's counsel to practice law within the meaning of Rule 5.6(b) of the ABA Model Rules of Professional Conduct (or its equivalent) in any jurisdictions in which such counsel practices or whose rules may otherwise apply, it is agreed that:   (1) by the submission of a Registration Form for one of their Eligible Claimants, counsel is representing that they have reviewed the Program, are able to represent that this Program is in the best interest of Eligible Claimants, and have recommended, or will recommend, to 100% of their Eligible Claimant clients that they complete a Registration Form for the Program; and (2) if any such Eligible Claimant disregards such recommendation, or for any other reason chooses not to participate in the Program, such counsel shall, to the extent permitted by Rules 1.16 and 5.6 of the ABA Model Rules of Professional Conduct (or their equivalent) in the relevant jurisdiction(s), take (or have taken, as the case may be) all necessary steps to disengage and withdraw from the representation of such Eligible Claimant, forego any fee interest in such Eligible Claimant, and seek to withdraw (subject to court approval, if applicable) from the representation of such Eligible Claimant.

**Section 7.5**   By the submission of a Registration Form for one of their Eligible Claimants, counsel for Eligible Claimants also agree:   (1) to abide by MDL Pretrial Order No. 24 (ECF 717) ("Common Benefit Assessment Order") and permit the payment of the specified common benefit assessment percentage of the Gross Monetary Recovery of any final award, as

defined in the Common Benefit Assessment Order, to the Common Benefit Fund, as described further in Section 10.2; (2) to comply with any Orders entered by the MDL Court in furtherance of Revised Pretrial Order No. 13 (ECF 586) and Pretrial Order No. 24; (3) to consent to the jurisdiction of the MDL Court; (4) that the Program is a result of work performed and expenses incurred by the Court-appointed plaintiffs' leadership for the common benefit of Plaintiffs; and (5) to be bound by the Court's determination on common benefit attorney fee awards, attorney fee allocations, and expense awards, and knowingly and expressly waive any right to appeal those decisions or the ability to assert the lack of enforceability of the Court's Orders or to otherwise challenge their adequacy. This MSA and the Program shall not alter any contractual obligation between lawyers and their clients regarding attorneys' fees.

## ARTICLE 8
## LIEN RESOLUTION RESPONSIBILITIES

**Section 8.1**    The Parties intend that the Settlement Fund shall fulfill and address all of the Philips Defendants' responsibilities with respect to the Released Claims of Registered Claimants, and that the Philips Defendants shall have no obligations or responsibilities with respect to Lienholders or other third parties claiming to have a right of recovery related to such Released Claims.

**Section 8.2**    Plaintiffs' Negotiating Counsel will select a Lien Administrator to assist with resolution of Liens. The Lien Administrator shall be responsible for the negotiation and resolution of Liens asserted by Lienholders, and such other duties as Plaintiffs' Negotiating Counsel and the Lien Administrator so agree. If the Lien Administrator is unable to negotiate the resolution of Liens asserted by Lienholders against Registered Claimants, the Registered Claimants (not the Philips Defendants) shall be responsible for the negotiation and resolution of such Liens.

**Section 8.3**    If the Lien Administrator and Plaintiffs' Negotiating Counsel agree that Lien Administrator has attained a satisfactory repayment amount with respect to a Registered Claimant, the Lien Administrator shall: (i) satisfy such repayment amount out of any monetary award to such Registered Claimant; and (ii) provide that reasonable compensation of the Lien Administrator for such efforts will be paid out of the monetary award to such Registered Claimant.

   If the Lien Administrator and Plaintiffs' Negotiating Counsel agree that the Lien Administrator has exhausted administrative efforts with any Lienholder to resolve groups of Liens globally, the Lien Administrator shall put in place a mechanism for resolving these Liens on an individual basis by each individual Registered Claimant. In all events, the responsibility to negotiate and resolve the Liens shall fall on the Registered Claimant, not the Philips Defendants.

**Section 8.4**    Nothing herein is intended to, nor should be construed as, creating a right of reimbursement for lienholders of obligations upon Registered Claimants or Registered Claimants' Counsel where none would otherwise exist under applicable state or federal law.

**Section 8.5**    All costs and expenses for use of the Lien Administrator shall be paid by the Registered Claimant. The Philips Defendants shall not be responsible for any of the costs or

expenses associated with the Lien Administrator beyond their two payments into the Settlement Fund, as described in Article 9 below.

**ARTICLE 9**
**SETTLEMENT FUND**

**Section 9.1    Administrative Expenses.**  Within 14 days of the execution of this MSA, the Philips Defendants shall pay $25 million into the Settlement Fund to fund initial administrative costs and expenses connected with the Program.  Such payment is irrevocable and shall not be returned to the Philips Defendants in the event that they exercise a Termination Right.  The Philips Defendants shall have no further funding obligation with respect to administrative expenses, even if the administrative expenses exceed $25 million.  Any administrative expenses that exceed $25 million will be paid for out of the Settlement Fund discussed below in Section 9.2.

**Section 9.2    Settlement Fund.**  On the later of January 6, 2025, or 14 days after the expiration of the Philips Defendants' Termination Rights, the Philips Defendants shall pay $1,050,000,000 ($1.05 billion) into the Settlement Fund, which will be available to pay benefits to Registered Claimants and any additional costs and expenses associated with the Program (including relating to lien resolution, Program administration, etc.).  The Philips Defendants shall have no further funding obligation under the Settlement or the Program, including for any attorneys' fees, costs or expenses whatsoever.

**Section 9.2.1**  In accordance with the terms of this MSA, the payments by the Philips Defendants shall be deposited into the QSF.  The payments by the Philips Defendants shall remain the property of the QSF and will be held in a fiduciary capacity.  Interest accrued shall be distributed to Registered Claimants and/or to pay costs and expenses associated with the Program, not to the Philips Defendants.

**ARTICLE 10**
**ATTORNEYS' FEES**

**Section 10.1    Individual Counsel Attorneys' Fees.**  This agreement does not alter any contractual obligation between lawyers and clients regarding attorneys' fees.

**Section 10.2    Common Benefit Fund.**  Work performed and expenses incurred for the benefit of all claimants as defined more fully in the Revised Pretrial Order No. 13 (ECF 586) and Pretrial Order No. 24 shall be paid from the Common Benefit Fund, created by an assessment of the gross monetary recovery pursuant to those Orders.  Payments are subject to procedures set in place by the MDL Court now or in the future.  In connection with any payments to or for the benefit of Registered Claimants, the Settlement Administrator shall withhold and hold back on a per-Registered-Claimant basis the Common Benefit Assessment as set forth in the MDL Court's Orders in place now or in the future implemented.  The Settlement Administrator must provide proof of compliance to the PNC and the MDL Court.

## ARTICLE 11
## MISCELLANEOUS

**Section 11.1**  No Party makes any representation regarding the tax consequences relating to this Settlement or the Program.  Eligible Claimants should consult with their own tax advisors.

**Section 11.2**  This MSA is the product of arm's-length negotiations between the Parties, including mediations and negotiations between the Parties assisted by the Honorable Diane M. Welsh (Ret.).  No Party shall be deemed to be the drafter of this MSA or any provision thereof.  No presumption shall be deemed to exist in favor of or against any Party as a result of the preparation or negotiation of this MSA.

**Section 11.3**  This MSA shall be binding on the Parties regardless of any change in the law that might occur after the date the Parties execute this MSA.

**Section 11.4**  The terms of this MSA may not be modified or waived except in writing, signed by the Parties hereto.  The Parties hereby acknowledge that they have read this MSA and had an opportunity to obtain the advice of competent counsel of their choosing regarding it.  As such, the Parties hereby also acknowledge that they understand the terms of this MSA, and that they freely and voluntarily sign and enter into it.  The waiver by any Party of any breach of this MSA shall not be deemed or construed as a waiver of any other breach, whether prior to, subsequent to, or contemporaneous with this MSA.

**Section 11.5**  This Agreement shall be governed by and construed in accordance with the laws of the Commonwealth of Pennsylvania, including all matters of construction, validity, performance, and enforcement, and without giving effect to the principles of conflict of laws.  Other than as expressly set forth herein (*e.g.*, disputes for the Settlement Special Master), any disputes related to this MSA will be brought in the United States District Court for the Western District of Pennsylvania (Conti, J.).

**Section 11.6**  This MSA may be executed in counterparts and taken together shall constitute one and the same MSA.

**Section 11.7**  This MSA shall be binding on, and inure to the benefit of, the successors and assigns of the Parties hereto.  Nothing in this MSA, express or implied, is intended to confer upon any person or entity other than the Parties hereto or their respective successors, heirs, issue, and assigns, any rights or benefits under or by reason of this MSA.  This MSA shall not be assignable by any Party hereto without prior written consent of the other Party.

**Section 11.8**  Electronic signatures shall be accepted for execution of any settlement document required of Eligible Claimants or Eligible Claimants' Counsel.  The Parties will work with the Settlement Administrator to ensure compliance with applicable standards and protections.

**Section 11.9**  Neither this MSA, nor any exhibit, document, or instrument delivered hereunder, nor any statement, transaction, or proceeding in connection with the negotiation, execution, or implementation of this MSA or the Program, is intended to be or shall be construed as or deemed to be evidence of an admission or concession by the Philips Defendants of any fault, liability, wrongdoing, causation, or damages, or of the truth of any allegations asserted by any

plaintiff or claimant against it, including by any Eligible Claimant, or as an admission by any Eligible Claimant of any lack of merit in their Personal Injury Claim.

No Party or claimant shall seek to introduce and/or offer the terms of this Settlement, any statement, transaction, or proceeding in connection with the negotiation, execution, or implementation of this Settlement, or any statements in the documents delivered in connection with this Settlement, or otherwise rely on the terms of this Settlement, in any judicial proceeding, except insofar as necessary to enforce the terms of this Settlement or the releases provided pursuant to the Settlement, in connection with the determination of any income tax liability of a party, or in relation to any instrument executed and delivered pursuant to this Settlement (including any Registration Form and the executed attachments thereto).  If a person seeks to introduce and/or offer any of the matters described herein in any proceeding against the Philips Defendants or any other Released Party, the restrictions of this section shall not be applicable to such Released Party with respect to that person.

**Section 11.10**  The Parties shall keep confidential, pursuant to mediation privileges and confidentiality, the content of the negotiations, points of discussion, documents, communications, and supporting data utilized or prepared in connection with the negotiations and settlement discussions related to the MSA.

**Section 11.11**  Nothing in this MSA shall be interpreted to require any Party, any Eligible Claimant, or any counsel to engage in any conduct that is a violation of law and/or unethical under applicable ethical rules.

IN WITNESS WHEREOF, the Parties have executed this Agreement as of the date first set forth above.

<table>
<tr><td>

*/s/ John P. Lavelle, Jr.*
John P. Lavelle, Jr.
Lisa C. Dykstra
**MORGAN, LEWIS & BOCKIUS LLP**
2222 Market Street
Philadelphia, PA 19103-3007
(215) 963-5000 (phone)
john.lavelle@morganlewis.com
lisa.dykstra@morganlewis.com

*/s/ Wendy West Feinstein*
Wendy West Feinstein
**MORGAN, LEWIS & BOCKIUS LLP**
One Oxford Center, 32nd Floor
Pittsburgh, PA 15219-6401
(412) 560-3300 (phone)
wendy.feinstein@morganlewis.com

</td><td>

*/s/ Christopher A. Seeger*
Christopher A. Seeger
**SEEGER WEISS LLP**
55 Challenger Road, 6th Floor
Ridgefield Park, NJ  07660
(973) 639-9100 (phone)
cseeger@seegerweiss.com

*/s/ Sandra L. Duggan*
Sandra L. Duggan
**LEVIN SEDRAN & BERMAN LLP**
510 Walnut Street, Suite 500
Philadelphia, PA 19106
(215) 592-1500 (phone)
sduggan@lfsblaw.com

*/s/ Steven A. Schwartz*

</td></tr>
</table>

*/s/ Erik T. Koons*
Erik T. Koons
**BAKER BOTTS LLP**
700 K St. NW
Washington, DC 20001
(202) 639-7973 (phone)
erik.koons@bakerbotts.com

*/s/ Andrew T. George*
Andrew T. George
**BOURELLY, GEORGE + BRODEY LLP**
1050 30th Street, NW
Washington, DC 20007
(202) 753-5012 (phone)
andrew.george@bgblawyers.com

*Counsel for Defendant Philips RS North America LLC*

*/s/ Michael H. Steinberg*
Michael H. Steinberg
**SULLIVAN & CROMWELL LLP**
1888 Century Park East
Los Angeles, CA 90067
(310) 712-6670 (phone)
steinbergm@sullcrom.com

*/s/ William B. Monahan*
Tracy Richelle High
William B. Monahan
**SULLIVAN & CROMWELL LLP**
125 Broad Street
New York, NY 10004
(212) 558-4000 (phone)
hight@sullcrom.com
monahanw@sullcrom.com

*Counsel for Defendants Koninklijke Philips N.V., Philips North America LLC, Philips Holding USA Inc., and Philips RS North America Holding Corporation*

Steven A. Schwartz
**CHIMICLES SCHWARTZ KRINER & DONALDSON-SMITH LLP**
361 West Lancaster Avenue
Haverford, PA 19041
(610) 642-8500 (phone)
steveschwartz@chimicles.com

*/s/ Kelly K. Iverson*
Kelly K. Iverson
**LYNCH CARPENTER, LLP**
1133 Penn Avenue, 5th Floor
Pittsburgh, PA 15222
(412) 322-9243 (phone)
kelly@lcllp.com

*/s/ Roberta D. Liebenberg*
Roberta D. Liebenberg (Chair)
**FINE, KAPLAN AND BLACK, R.P.C.**
One South Broad Street, 23rd Floor
Philadelphia, PA 19107
(215) 567-6565 (phone)
rliebenberg@finekaplan.com

*Plaintiffs' Negotiating Counsel*

EXHIBIT "1"

**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| IN RE: PHILIPS RECALLED CPAP, BI-LEVEL PAP, AND MECHANICAL VENTILATOR PRODUCTS LIABILITY LITIGATION | )<br>)<br>)<br>) | Master Docket: Misc. No. 21-1230<br><br>MDL No. 3014 |

## <u>DECLARATION OF DISENGAGEMENT</u>

In accordance with the Personal Injury Master Settlement Agreement ("MSA"), I, _____, on behalf of myself and the law firm _____ (collectively, "Counsel"), do hereby represent and certify to the following under penalty of perjury:

1.      Based on Counsel's good-faith investigation, the individual(s) listed below (the "Disengaged Claimants") are Eligible Claimants within the meaning of the MSA, and Personal Injury Claims on their behalf have not been filed.

2.      As set forth below, Counsel has made repeated attempts to communicate, including by each of electronic mail, regular mail and phone, with each of the Disengaged Claimants regarding the MSA.

3.      The Disengaged Claimants have failed to respond to any of those repeated communications.

4.      Counsel has taken any and all steps required by applicable law to disengage from any further representation of Disengaged Claimants and to terminate any attorney-client relationship between Counsel and the Disengaged Claimants.

5.      Counsel agrees to submit to the jurisdiction of the U.S. District Court for the Western District of Pennsylvania for any matters relating to this Declaration.

6.      Counsel represents and certifies that a true and correct copy of this Declaration has

been submitted to the Settlement Administrator and to the Philips Defendants pursuant to the terms

of the MSA.

| Claimant MDL-C Plaintiff Identification No. | Claimant First Name | Claimant Last Name |
|---|---|---|
|  |  |  |
|  |  |  |
|  |  |  |

DATE:_____          /s/_____
                                [NAME OF ATTORNEY]
                                [NAME OF LAW FIRM]
                                [ADDRESS]
                                [ADDRESS]
                                [ADDRESS]
                                [TELEPHONE NUMBER]
                                [EMAIL ADDRESS]

EXHIBIT "2"

# RELEASE

I, the undersigned Releasor, have chosen to participate in the Philips Respironics PAP Personal Injury Settlement Program set forth in the Personal Injury Master Settlement Agreement, dated May 9, 2024.[1]  I have received disclosures from my counsel, if applicable, or the Settlement Administrator regarding the allocation of the Settlement Fund under the Program, and those disclosures enable me to estimate my Individual Plaintiff Settlement Payment.  I understand that along with this Release, I am submitting a Registration Form to the Settlement Administrator.  I understand that the terms of the Settlement, the Program and this Release govern the resolution of my Released Claims.  I understand and agree that this Release shall become effective concurrent with the Philips Defendants' funding payment under the Settlement Agreement.  I understand that the Philips Defendants' funding payment shall be held in trust for purposes of making payments to Registered Claimants under the Program.  I understand that at the time determined by the Settlement Agreement, I or my counsel will execute a stipulated dismissal with prejudice dismissing all pending Released Claims I have filed, if any.  Once effective, this Release shall release any and all Released Claims I and the other Releasing Parties have, or may have in the future, whether known or unknown, against the Philips Defendants and the other Released Parties.

Accordingly, in consideration for the Philips Defendants' agreement to establish the Program, the significant expenses being incurred by the Philips Defendants in connection with the Program, and my Individual Plaintiff Settlement Payment, I hereby give and make the following Release.  This Release is also entered into by any Derivative Claimant who executes a signature page hereto, in which case the agreement of such Derivative Claimant set forth on his, her or its signature page is incorporated in, and is part of, this Release.

By signing this Release, both I and any such Derivative Claimant understand and acknowledge that although I have received disclosure documents regarding the allocation of the Settlement Fund, which enables me to estimate my Individual Plaintiff Settlement Payment, there is no assurance at this time as to the precise amount of such payment, and this fact shall in no way affect the validity or effect of this Release.

**Definitions:**

**Derivative Claimant** means any and all persons who have asserted or do assert the right to sue any of the Released Parties related to the Released Claims by reason of their personal relationship with me, and/or otherwise by, through or under, or otherwise in relation to, me, whether their right to sue is independent, derivative, or otherwise.  Derivative Claimants include, but are not limited to, my parents, guardians, heirs, beneficiaries, surviving spouse (including, but not limited to, a putative or common law spouse), surviving domestic partner and/or next of kin, if any, solely in respect to Derivative Claims.

---

[1]     Capitalized terms are either (i) defined below, or (ii) in the Personal Injury Master Settlement Agreement.  Capitalized terms that are used but not otherwise defined herein shall have the meanings given such terms in the Personal Injury Master Settlement Agreement.

**Derivative Claims** means Released Claims against any of the Released Parties relating to a Derivative Claimant's personal relationship with me as it relates to the Released Claims, and/or otherwise by, through or under, or otherwise in relation to, me.

**Individual Plaintiff Settlement Payment** means any gross payment from the Settlement Fund made to a Registered Claimant or Derivative Claimant pursuant to the Program.

**Law** means a law, statute, ordinance, rule, regulation, case or other legal provision or authority.

**Released Claims** means any and all Personal Injury Claims, whether known or unknown, suspected or unsuspected, accrued or unaccrued, concealed or hidden, past, present or future, including for injuries not yet manifested and injuries or symptoms that develop further and/or are later worsened or exacerbated, relating to a Recalled Device or the Philips RS recall programs, including any alleged defects, delays or inadequacies relating to the Philips RS recall programs, as well as any claims or relief for medical screening and/or medical monitoring, whether in the form of monetary or non-monetary relief, including individual claims for monetary relief for medical monitoring, except that Released Claims does not include Personal Injury Claims for a cancer that is unknown to the Registered Claimant as of the Registration Deadline.

**Releasing Parties** means (i) myself and (ii) any Derivative Claimant.

**Settlement Program** means the Philips Respironics PAP Personal Injury Settlement Program set forth in the Personal Injury Master Settlement Agreement.

<u>**Releases**</u>:  On my own behalf and on behalf of each other Releasing Party, I hereby knowingly and voluntarily release, relinquish, and forever discharge the Released Parties from the Released Claims.  Further, on my own behalf and on behalf of each other Releasing Party, I hereby release the Released Parties from responsibility or liability for the Program, the Settlement, and the determination of any Individual Plaintiff Settlement Payment, or the associated allocation, division or computation leading to that determination.  This Release is not conditional on receipt of any particular Individual Plaintiff Settlement Amount or allocation.

I acknowledge that I and/or any other Releasing Party may in the future learn of additional and/or different facts relating to the Released Claims.  I understand and acknowledge the significance and consequences of releasing all of the Released Claims, whether known or unknown, and hereby (on my own behalf and on behalf of each other Releasing Party) assume full risk and responsibility for any and all such additional and/or different facts and any and all Released Claims that I (and/or any other Releasing Party) may hereinafter incur or discover.  To the extent that any law may at any time purport to preserve my and/or any other Releasing Party's right to hereafter assert any such unknown and/or unanticipated Released Claim, I hereby (on my own behalf and on behalf of each other Releasing Party) specifically and expressly waive (to the fullest extent permitted by applicable Law) my and any other Releasing Party's rights under such Law.  I further acknowledge having had an opportunity to obtain advice of counsel of my choosing regarding this waiver, and having had the opportunity to discuss it with such counsel to my satisfaction.

On my own behalf and on behalf of each other Releasing Party, I acknowledge and agree that the releases set forth in this Release are irrevocable and unconditional, inure to the benefit of and may be enforced by each Released Party, and are intended to be as broad as can possibly be created with respect to the Released Claims.

**WITHOUT LIMITATION OF THE FOREGOING, THIS RELEASE IS SPECIFICALLY INTENDED TO OPERATE AND BE APPLICABLE EVEN IF IT IS ALLEGED, CHARGED, OR PROVED THAT SOME OR ALL OF THE RELEASED CLAIMS ARE CAUSED IN WHOLE OR IN PART BY THE NEGLIGENCE, NEGLIGENCE PER SE, GROSS NEGLIGENCE, BREACH OF WARRANTY, FAILURE TO WARN, VIOLATION OF LAW, DEFECTIVE PRODUCT, MALICE, AND/OR CONDUCT OF ANY TYPE BY ANY OF THE PHILIPS DEFENDANTS, ANY OF THE OTHER RELEASED PARTIES, AND/OR ANY OTHER PERSON.**

<u>**Waiver of Statutory Rights:**</u>

**I, on my own behalf and on behalf of each other Releasing Party, expressly waive and relinquish, to the fullest extent permitted by law, the provisions, rights, and benefits of California Civil Code Section 1542, or any other similar provision under federal or state law, which provides:**

**A GENERAL RELEASE DOES NOT EXTEND TO CLAIMS THAT THE CREDITOR OR RELEASING PARTY DOES NOT KNOW OR SUSPECT TO EXIST IN HIS OR HER FAVOR AT THE TIME OF EXECUTING THE RELEASE AND THAT, IF KNOWN BY HIM OR HER, WOULD HAVE MATERIALLY AFFECTED HIS OR HER SETTLEMENT WITH THE DEBTOR OR RELEASED PARTY.**

**To the extent the provisions apply, the Releasing Parties likewise expressly, knowingly, and voluntarily waive the provisions of Section 28-1-1602 of the Montana Code Annotated, which provides:**

**A GENERAL RELEASE DOES NOT EXTEND TO CLAIMS THAT THE CREDITOR DOES NOT KNOW OR SUSPECT TO EXIST IN THE CREDITOR'S FAVOR AT THE TIME OF EXECUTING THE RELEASE, WHICH, IF KNOWN BY THE CREDITOR, MUST HAVE MATERIALLY AFFECTED THE CREDITOR'S SETTLEMENT WITH THE DEBTOR.**

**To the extent the provisions apply, I, on my own behalf and on behalf of each other Releasing Party, likewise expressly, knowingly, and voluntarily waive the provisions of Section 9-13-02 of the North Dakota Century Code, which provides:**

**A GENERAL RELEASE DOES NOT EXTEND TO CLAIMS WHICH THE CREDITOR DOES NOT KNOW OR SUSPECT TO EXIST IN THE CREDITOR'S FAVOR AT THE TIME OF EXECUTING THE RELEASE, WHICH IF KNOWN BY THE CREDITOR, MUST HAVE MATERIALLY AFFECTED THE CREDITOR'S SETTLEMENT WITH THE DEBTOR.**

To the extent the provisions apply, I, on my own behalf and on behalf of each other Releasing Party, likewise expressly, knowingly, and voluntarily waive the provisions of Section 20-7-11 of the South Dakota Codified Laws, which provides:

A GENERAL RELEASE DOES NOT EXTEND TO CLAIMS WHICH THE CREDITOR DOES NOT KNOW OR SUSPECT TO EXIST IN HIS FAVOR AT THE TIME OF EXECUTING THE RELEASE, WHICH IF KNOWN BY HIM MUST HAVE MATERIALLY AFFECTED HIS SETTLEMENT WITH THE DEBTOR.

To the extent the laws apply, I, on my own behalf and on behalf of each other Releasing Party, expressly waive and relinquish all rights and benefits that they may have under, or that may be conferred upon them by, Section 1542 of the California Civil Code, Section 28-1-1602 of the Montana Code Annotated, Section 9-13-02 of the North Dakota Century Code, Section 20-7-11 of the South Dakota Codified Laws, and all similar laws of other States, to the fullest extent that they may lawfully waive such rights or benefits pertaining to the Released Claims .

In connection with such waiver and relinquishment, I, on my own behalf and on behalf of each other Releasing Party, acknowledge that I am aware that I or my attorneys may hereafter discover claims or facts in addition to or different from those that we now know or believe to exist with respect to the Released Claims, but that it is my intention to accept and assume that risk and fully, finally, and forever release, waive, compromise, settle, and discharge all the Released Claims against the Released Parties.  The Release thus shall remain in effect notwithstanding the discovery or existence of any additional or different claims or facts in the future.

**No Withdrawal of Registration Form**:  I understand and agree that submission of a Registration Form electing to participate in the Program is irrevocable and that I may not under any circumstances or reason withdraw a Registration Form, request the return of my Release or dismissal with prejudice, or otherwise withdraw from the Program regardless of the amount of any Individual Plaintiff Settlement Payment from the Program.

**Attorneys' Fees; Division of Any Individual Plaintiff Settlement Payment**:  I understand that the Released Parties are not responsible for any attorneys' fees, costs or expenses I have incurred or may at any time incur, including, but not limited to, in connection with entering into this Release and any other documents.  I understand that, with respect to any Individual Plaintiff Settlement Payment, any dispute regarding the division of such Individual Plaintiff Settlement Payment between me, any Derivative Claimant executing this Release, and our respective counsel (if any) shall in no way affect the validity of this Release.  I agree that in the event of any dispute regarding fees, costs or expenses, the Released Parties shall not have any responsibility in connection with such dispute.

**Pursuit of Certain Claims**:  I agree that other than to enforce this Release, I will never (i) take any legal or other action to initiate, pursue, maintain, or otherwise attempt to execute upon, collect, or otherwise enforce, any of the Released Claims against any Released Party; (ii) institute or participate in any new legal action against any Released Party to any extent, or in any way, arising

out of, relating to, resulting from and/or connected with the Released Claims; or (iii) take any legal or other action against any Released Party concerning the administration, settlement allocation, Individual Plaintiff Settlement Payment, or any other aspect of the Program or the Settlement.

**Indemnification for Claims by Lienholders**:  I hereby agree, jointly and severally with any Derivative Claimant executing this Release, to indemnify and hold harmless each Released Party from and against any and all claims by lienholders.

**Pursuit of Certain Claims**:  Other than to participate in the Settlement, I agree that from and after the date on which this Release is executed until the earlier of either (i) the date on which this Release is delivered to the Philips Defendants, or (ii) I exit the Program and this Release is returned to me, I shall be prohibited from, and refrain from, taking any action (including any legal action) to initiate, pursue, maintain, or otherwise attempt to execute upon, collect or otherwise enforce, any actual or alleged Released Claims against any of the Released Parties.  I will also cooperate in all reasonable respects with the Philips Defendants to seek to stay, and to continue in effect any then outstanding stay with respect to, any pending legal proceedings instituted by me and/or Derivative Claimants against any Released Party in connection with Released Claims, and I will refrain from instituting any new legal action against any Released Party in connection with any Released Claim.  I will also be prohibited from and refrain from attempting to execute or collect on, or otherwise enforce, any judgment that may be entered against any Released Party in connection with any Released Claim.

**Confidentiality**:  I agree to maintain in confidence, and shall not disclose to any person, the amount of any Individual Plaintiff Settlement Payment, except as may be required by applicable Law and to effectuate the Settlement; provided, that I understand that I may disclose such information to my immediate family members and to my counsel, accountants and/or financial advisors, if any (each of whom I shall, upon such disclosure, instruct to maintain and honor the confidentiality of such information).  I agree that if I breach this confidentiality provision, money damages would not be a sufficient remedy and, accordingly, without limitation of any other remedies that may be available at law or in equity, the Philips Defendants shall be entitled to specific performance and injunctive or other equitable relief as remedies for such breach.

**ACKNOWLEDGEMENT OF COMPREHENSION:  I AM ENTERING INTO THIS RELEASE FREELY AND VOLUNTARILY, WITHOUT BEING INDUCED, PRESSURED, OR INFLUENCED BY, AND WITHOUT RELYING ON ANY REPRESENTATION OR OTHER STATEMENT MADE BY OR ON BEHALF OF, ANY PHILIPS DEFENDANT OR ANY OTHER PERSON.  I UNDERSTAND AND ACKNOWLEDGE THE NATURE, VALUE, AND SUFFICIENCY OF THE CONSIDERATION DESCRIBED IN THIS RELEASE.  I ACKNOWLEDGE THAT I HAVE READ THIS RELEASE AND THE DISCLOSURE DOCUMENTS PROVIDED TO ME REGARDING THE SETTLEMENT AGREEMENT, THE PROGRAM AND THE ALLOCATION OF THE SETTLEMENT FUND, AND I HAVE HAD AN OPPORTUNITY TO OBTAIN ADVICE FROM, AND ASK QUESTIONS OF, COUNSEL OF MY CHOOSING REGARDING THE TERMS AND LEGAL EFFECT OF THESE DOCUMENTS AND MY DECISION TO PARTICIPATE IN THE PROGRAM.  I FURTHER ACKNOWLEDGE THAT I UNDERSTAND THIS RELEASE AND THAT**

**ALTHOUGH I HAVE RECEIVED DISCLOSURE DOCUMENTS REGARDING THE ALLOCATION OF THE SETTLEMENT FUND WHICH ENABLES ME TO ESTIMATE MY INDIVIDUAL PLAINTIFF SETTLEMENT PAYMENT, THERE IS NO GUARANTEE THAT I WILL RECEIVE ANY PARTICULAR AMOUNT UNDER THE PROGRAM.  I FURTHER ACKNOWLEDGE THAT THE INDIVIDUAL PLAINTIFF SETTLEMENT PAYMENT FROM THE PROGRAM SHALL BE THE ONLY PAYMENT TO ME BY ANY RELEASED PARTY.  I FURTHER ACKNOWLEDGE THAT THIS RELEASE IS THE PRODUCT OF A MEDIATED SETTLEMENT, THAT THE MEDIATOR HAD NO DUTY TO PROTECT MY INTERESTS OR PROVIDE ME WITH INFORMATION ABOUT MY LEGAL RIGHTS, AND THAT I SHOULD CONSULT WITH COUNSEL IF I AM UNCERTAIN OF MY RIGHTS.**

**<u>Waiver of Certain Provisions Regarding Timing of Any Payments</u>**:  If I have any civil action pending in any jurisdiction that has enacted, promulgated, or otherwise adopted any Law containing provisions that establish specific time periods within which settlement funds, if any, must be paid to me in connection with the settlement of such civil action and/or impose sanctions, penalties or other similar obligations against the paying party if the settlement funds are not paid within such time periods and/or invalidate or otherwise affect the terms of the settlement of such civil action, I hereby (i) specifically and expressly waive (to the fullest extent permitted by applicable Law) my rights under any such provisions and (ii) agree that payment of my Individual Plaintiff Settlement Payment shall be made solely in accordance with the terms and conditions of the Program.

**<u>No Admission of Fault</u>**:  I understand and agree that the Philips Defendants have entered into the Settlement Agreement and Program solely by way of compromise and settlement.  These documents are not, and shall not be construed at any time to be, an admission of liability, responsibility, causation, fault or damages of or by any of the Philips Defendants or any other Released Party.

**<u>Representations and Warranties</u>**:  I hereby represent and warrant that I have full power, authority and capacity to enter into this Release, which is enforceable in accordance with its terms.  Except as set forth in the section "Attorneys' Fees; Division of Any Individual Plaintiff Settlement Payment" above, I have the sole right to receive any and all Individual Plaintiff Settlement Payments with respect to my claim under the Settlement, other than holders of rights in respect of any Liens.  Neither I nor any other Releasing Party has sold, assigned, transferred or otherwise disposed of, or pledged or otherwise encumbered, any of the Released Claims in whole or in part, other than any Liens on my settlement proceeds.

I hereby acknowledge and warrant that I am solely liable for the payment of taxes and/or liens, if any, associated with the Settlement and the Program, and that all present and future liens that arise out of or as a result of the Settlement and Program (including, but not limited to, any Medicare or Medicaid liens, liens by any governmental entity, other entity or insurer, workers' compensation liens, employer ERISA plan liens, Social Security liens, hospital, physician, health care provider or attorney liens) are my sole and exclusive responsibility.

**GOVERNING LAW:  THIS RELEASE SHALL BE GOVERNED BY AND CONSTRUED IN ACCORDANCE WITH THE SUBSTANTIVE LAW OF THE COMMONWEALTH OF PENNSYLVANIA, WITHOUT REGARD TO ANY CHOICE-OF-LAW RULES THAT WOULD REQUIRE THE APPLICATION OF THE LAW OF ANOTHER JURISDICTION.**

**Severability**:  I agree that if any provision of this Release is adjudicated to be invalid, illegal or unenforceable in any jurisdiction, the relevant provision shall be deemed modified to the extent necessary to make it enforceable in such jurisdiction and, if it cannot be so modified, this Release shall be deemed amended to delete herefrom the invalid or unenforceable provision, and this Release shall be in full force and effect as so modified.  Any such modification or amendment in any event shall apply only with respect to the operation of this Release in the particular jurisdiction in which such adjudication was made and shall not affect such provision in any other jurisdiction. To the fullest extent permitted by applicable Law, I hereby (on my own behalf and on behalf of each other Releasing Party) specifically and expressly waive any provision of Law that renders any provision of this Release invalid, illegal or unenforceable in any respect.

**Electronic Signatures**:  This Release, and any exhibits thereto, to the extent signed and delivered electronically or by facsimile, shall be treated in all manner and respects as an original agreement, and shall be considered to have the same binding legal effect as if it were the original signed version thereof, delivered in person.

[The remainder of this page is intentionally left blank.]

-7-

IN WITNESS WHEREOF, I have executed this Release on the date below, to be effective as of the date set out in the first paragraph of this Release above:

**RELEASOR**

By: _____

Name: _____

Dated: _____

**SIGNATURE PAGE AND AGREEMENT BY DERIVATIVE CLAIMANT**

I am a person having or asserting the right to sue one or more of the Released Parties by reason of my relationship with Releasor (or, if Releasor is a legal representative of a Recalled Device user, such Recalled Device user). I hereby enter into the Release to which this signature page is attached and agree to be bound by all of its terms (and, without limitation, hereby give and make all releases, waivers, acknowledgements, agreements, representations and warranties therein) on the same basis as Releasor set forth therein (including, but not limited to, all joint and several indemnification obligations set forth therein). This agreement was executed on the date below, and is effective as of the date set out in the first paragraph of the Release above.

**DERIVATIVE CLAIMANT**

By: _____

Name: _____

Dated: _____

EXHIBIT "3"

**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| IN RE: PHILIPS RECALLED CPAP, BI-LEVEL PAP, AND MECHANICAL VENTILATOR PRODUCTS LIABILITY LITIGATION<br><br>This Document Relates to:<br><br>*Personal Injury Claimants and Potential Claimants* | Master Docket: No. 21-mc-1230-JFC<br><br>MDL No. 3014 |

**[PROPOSED] CASE MANAGEMENT ORDER NO. __ (Identification Order)**

In accordance with the terms of the Master Settlement Agreement ("MSA"),[1] the Court hereby enters this Identification Order.  This Order requires (i) all Primary Counsel for all Eligible Claimants, and (ii) all *Pro Se* Eligible Claimants, to provide certain information ***within 30 days of this Order, i.e., no later than June ___, 2024*** (the "Identification Order Deadline").[2]

**I.      IDENTIFICATION OF ALL ELIGIBLE CLAIMANTS**

Each counsel shall take any and all steps necessary by the Identification Order Deadline to identify all Eligible Claimants for whom they are Primary Counsel, ***whether claims or potential claims with respect to those Eligible Claimants have been filed in suit, asserted on the Census***

---

[1]      Terms not defined herein have the same meaning as in the MSA.  The MSA is available on the website of the Settlement Administrator, MDLCentrality.com/CPAP, and will be publicly available at RespironicsPISettlement.com.

[2]      As set forth in the MSA, Primary Counsel means (1) for any Eligible Claimant with a Personal Injury Claim in the MDL, or participating in the Census Registry, the lawyer or law firm listed as the registering Law Firm in MDL Centrality; (2) for any Eligible Claimant with a Personal Injury Claim filed in state court, counsel of record for the Eligible Claimant; or (3) for any Eligible Claimant with an unfiled Personal Injury Claim and who is not participating in the Census Registry, counsel with an engagement or retainer agreement with such Eligible Claimant.  Counsel shall not be Primary Counsel for an Eligible Claimant if counsel's representation of that Eligible Claimant terminated prior to the Identification Order Deadline.

*Registry, or otherwise.*  Each Primary Counsel shall also submit the information set forth below concerning all their Eligible Claimant clients by the Identification Order Deadline.

Similarly, *Pro Se* Eligible Claimants, whether claims or potential claims with respect to those *Pro Se* Eligible Claimants have been filed in suit, asserted on the Census Registry, or otherwise, shall submit the information set forth below concerning their own claim(s) by the Identification Order Deadline.

**Complete, accurate, and timely submission of this information is a requirement not only of this Order but also to participate in the Settlement Program described in the MSA.**

## II.   SERVICE OF IDENTIFICATION ORDER DECLARATIONS IDENTIFYING ALL ELIGIBLE CLAIMANTS

All counsel must submit an Identification Order Declaration *via* MDL Centrality, executed under penalty of perjury, that identifies all of that counsel's Eligible Claimants for whom they are Primary Counsel and affirms under penalty of perjury that the Identification Order Declaration includes all of the Primary Counsel's Eligible Claimant clients.   The Identification Order Declarations shall be in substantially the form set forth in Exhibit "A" attached hereto and shall include in Excel format, for each Eligible Claimant, the following information:

- the name of the Eligible Claimant;

- the Eligible Claimant's complete social security number;

- the address of the Eligible Claimant;

- the Eligible Claimant's email address, if any;

- the Eligible Claimant's date of birth;

- the Eligible Claimant's Qualifying Injury;

- the docket number, if a case has been filed for the Eligible Claimant; and

- the MDL Centrality Plaintiff ID number (if the Eligible Claimant has ever registered via MDL Centrality).

Through the Identification Order Declarations, all Primary Counsel shall certify, under penalty of perjury, that they have identified all Eligible Claimants for whom they serve as Primary Counsel. That identification obligation applies (i) regardless of whether the Eligible Claimant intends to participate in the Settlement Program set forth in the MSA, and (ii) regardless of whether the Eligible Claimant's claims or potential claims have been filed in suit, asserted on the Census Registry, or otherwise.

**All Primary Counsel shall identify all Eligible Claimants they represent.** Only Eligible Claimants must be identified, and Primary Counsel shall not identify Ineligible Claimants (*i.e.*, claimants alleging only Nonqualifying Injuries).

*Pro Se* Eligible Claimants must submit an Identification Order Declaration, executed under penalty of perjury, with the same information set forth above concerning their own claims or potential claims. For all *Pro Se* Eligible Claimants, the Identification Order Declarations shall be in substantially the form set forth in Exhibit "B" attached hereto.

Technical Support is available from MDL Centrality by phone at (888) 361-0741 or by email at MDLCentrality@browngreer.com.

Counsel and *Pro Se* Eligible Claimants have an ongoing duty to update all of the information required by this Order including, for example, when the personal information for an Eligible Claimant is incorrect or outdated. Any updated information must be served within fourteen (14) days of learning of such updated information, and shall be served through MDL Centrality.

All Identification Order Declarations are hereby designated as "Confidential" under the Amended Stipulated Protective Order entered in this matter (ECF No. 765). There is no need or

requirement for the Identification Order Declarations to be separately marked as "Confidential" in order for them to receive Confidential treatment under the Amended Stipulated Protective Order.

## III.   DEADLINE AND COMPLIANCE

Each Identification Order Declaration required under this Order shall be submitted via MDL Centrality no later than the Identification Order Deadline.  The timely submission of complete and accurate Identification Order Declarations is critical to the effective administration of the Settlement Program and to the Court's management of its docket.  Failure by Primary Counsel or *Pro Se* Eligible Claimants to comply with the terms of this Order will be a violation and shall be subject to sanctions, including sanctions of Primary Counsel.

In the event any Primary Counsel or *Pro Se* Eligible Claimant fails to fully comply with the requirements of this Order, Counsel for Defendants shall notify the Court of the alleged violations, and the Court shall enter an Order to Show Cause why the Primary Counsel or *Pro Se* Eligible Claimant should not be sanctioned.  Said Primary Counsel or *Pro Se* Eligible Claimant shall have 21 days to respond to the Order to Show Cause.  If the Primary Counsel or *Pro Se* Eligible Claimant fails to cure the violations or show good cause why they should not be sanctioned within 21 days of the entry of the Order to Show Cause, the Court may impose appropriate sanctions or other penalties on the Primary Counsel or *Pro Se* Eligible Claimant.

**SO ORDERED**, on this ___ day _____.

_____
Honorable Joy Flowers Conti
Senior United States District Judge

EXHIBIT "A"

DECLARATION OF PRIMARY COUNSEL

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF PENNSYLVANIA**

|  |  |
|---|---|
| IN RE: PHILIPS RECALLED CPAP, BI-LEVEL PAP, AND MECHANICAL VENTILATOR PRODUCTS LIABILITY LITIGATION | Master Docket: No. 21-mc-1230-JFC |
|  | MDL No. 3014 |
| This Document Relates to: |  |
| *Personal Injury Claimants and Potential Claimants* |  |

## IDENTIFICATION ORDER DECLARATION OF PRIMARY COUNSEL

1.      My name is [INSERT NAME OF COUNSEL], and I am an attorney at [INSERT NAME OF LAW FIRM].

2.      On behalf of myself and my firm, I submit this Identification Order Declaration in accordance with the Master Settlement Agreement ("MSA") and the Court's Identification Order.

3.      Attached hereto is a chart that identifies all Eligible Claimants for whom I or my firm are Primary Counsel, as defined in the MSA.  I certify that this chart identifies all Eligible Claimants for whom I or my firm are Primary Counsel.  I understand that the obligation to identify all Eligible Claimants for whom I or my firm are Primary Counsel applies regardless of whether the Eligible Claimants intend to participate in the Settlement Program set forth in the MSA.  I also understand that this obligation applies regardless of whether the Eligible Claimant's claims or potential claims have been filed in suit, asserted on the Census Registry, or otherwise.

4.      I understand that to comply with the MSA and the Court's Identification Order, this Identification Order Declaration must be submitted by the Identification Order Deadline, which is 30 days after the Court's Identification Order.  The attached chart will be timely served in Excel format through MDL Centrality in conformance with the Identification Order.

-6-

5.      I understand and agree that my failure to identify all Eligible Claimants for whom

I or my firm is Primary Counsel is a violation of the Identification Order and will result in sanctions

and other penalties as determined by the Court.

I swear under penalty of perjury that the foregoing is true and correct.


DATE: [MONTH] [DAY], [YEAR]              _/s/_____

                                                        [NAME OF COUNSEL]
                                                        [NAME OF LAW FIRM]
                                                        [ADDRESS]
                                                        [ADDRESS]
                                                        [ADDRESS]
                                                        [TELEPHONE NUMBER]
                                                        [EMAIL ADDRESS]

**IDENTIFICATION OF ELIGIBLE CLAIMANTS**

| PRIMARY COUNSEL | PRIMARY COUNSEL EMAIL ADDRESS | CLAIMANT NAME (FIRST) | CLAIMANT NAME (LAST) | SSN | CLAIMANT EMAIL ADDRESS | CLAIMANT ADDRESS | DOB mm/dd/year | Court Of Filing | Docket Number | MDL-C Number | QUALIFYING INJURY |
|---|---|---|---|---|---|---|---|---|---|---|---|
|  |  |  |  |  |  |  |  |  |  |  |  |
|  |  |  |  |  |  |  |  |  |  |  |  |
|  |  |  |  |  |  |  |  |  |  |  |  |
|  |  |  |  |  |  |  |  |  |  |  |  |
|  |  |  |  |  |  |  |  |  |  |  |  |
|  |  |  |  |  |  |  |  |  |  |  |  |
|  |  |  |  |  |  |  |  |  |  |  |  |

EXHIBIT "B"


DECLARATION OF *PRO SE* ELIGIBLE CLAIMANT

**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| IN RE: PHILIPS RECALLED CPAP, BI-LEVEL PAP, AND MECHANICAL VENTILATOR PRODUCTS LIABILITY LITIGATION | Master Docket: No. 21-mc-1230-JFC |
| | MDL No. 3014 |
| This Document Relates to: | |
| *Personal Injury Claimants and Potential Claimants* | |

**IDENTIFICATION ORDER DECLARATION OF *PRO SE* ELIGIBLE CLAIMANT**

1.     My name is [INSERT NAME OF PRO SE ELIGIBLE CLAIMANT], and I am an Eligible Claimant and not represented by counsel.

2.     I submit this Identification Order Declaration in accordance with the Master Settlement Agreement ("MSA") and the Court's Identification Order.

3.     Attached hereto is a chart that identifies my personal information and the other information required by the Identification Order.  I certify that this information is accurate.  I understand that in submitting this Declaration, I am not making the determination of whether or not to participate in the Settlement Program set forth in the MSA.

4.     I understand that to comply with the MSA and the Court's Identification Order, this Identification Order Declaration must be submitted by the Identification Order Deadline, which is 30 days after the Court's Identification Order.  The attached chart will be timely served in Excel format through MDL Centrality in conformance with the Identification Order.

5.     I understand and agree that my failure to provide the information required by the Identification Order will result in sanctions and other penalties as determined by the Court.

I swear under penalty of perjury that the foregoing is true and correct.

-10-

DATE: [MONTH] [DAY], [YEAR]                    /s/_____

                                                 [NAME OF CLAIMANT]

                                                 [ADDRESS]

                                                 [ADDRESS]

                                                 [ADDRESS]

                                                 [TELEPHONE NUMBER]

                                                 [EMAIL ADDRESS]

**IDENTIFICATION OF *PRO SE* ELIGIBLE CLAIMANT**

| CLAIMANT NAME (FIRST) | CLAIMANT NAME (LAST) | SSN | CLAIMANT EMAIL ADDRESS | CLAIMANT PHONE NUMBER | CLAIMANT ADDRESS | DOB mm/dd/year | Court Of Filing | Docket Number | MDL-C Number (if applicable) | QUALIFYING INJURY |
|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | |
| | | | | | | | | | | |
| | | | | | | | | | | |
| | | | | | | | | | | |
| | | | | | | | | | | |
| | | | | | | | | | | |
| | | | | | | | | | | |

-12-

EXHIBIT "4"

**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| IN RE: PHILIPS RECALLED CPAP, BI-LEVEL PAP, AND MECHANICAL VENTILATOR PRODUCTS LIABILITY LITIGATION | Master Docket: Misc. No. 21-01230 |
| This Document Relates To: | MDL No. 3014 |
| *All Litigating Plaintiff Cases* | |

**[PROPOSED] CASE MANAGEMENT ORDER NO.    :
DOCKET MANAGEMENT ORDER FOR CLAIMS OF LITIGATING PLAINTIFFS**

This Case Management Order (the "Order") applies to all Litigating Plaintiffs, who are defined as individuals asserting Personal Injury Claims against one or more of the Philips Defendants who do not register for the Settlement Program by the Registration Deadline set forth in the May 9, 2024 Personal Injury Master Settlement Agreement ("MSA").[1]  An individual who has asserted such claims on or prior to the Registration Deadline becomes a Litigating Plaintiff as of the Registration Deadline.  An individual who first asserts such claims after the Registration Deadline becomes a Litigating Plaintiff as of the date of the filing of such claims.

Consistent with the Court's inherent authority to manage these proceedings, and in light of the Settlement Program agreed to after years of litigation and complex and extensive discovery and motion practice before this Court and the Special Masters, the Court finds it appropriate at this time to exercise its discretion to enter this Order to fairly, effectively and efficiently manage the

---

1   Terms not defined herein have the same meaning as in the MSA.  The MSA is available on the website of the Settlement Administrator, MDLCentrality.com/CPAP, and will be publicly available at RespironicsPISettlement.com.

cases of any Litigating Plaintiffs. This Order requires all Litigating Plaintiffs to produce certain specified information regarding their claim(s), including medical records and evidence relating to device usage, their alleged injury(ies), and causation, and provides deadlines to meet those requirements prior to further proceedings, including any further discovery, motion practice, or trial on the merits. Litigating Plaintiffs shall be bound by the requirements of this Order and shall fully comply with all obligations required by this Order. The Court expects complete and full compliance with this Order and reserves its ability to dismiss a Litigating Plaintiff's case with prejudice for failure to adhere to the terms of this Order.

## I.   BACKGROUND AND STATUS OF PROCEEDINGS

1.      On June 14, 2021, Philips RS North America LLC voluntarily recalled certain prescription medical devices, including certain Continuous Positive Airway Pressure ("CPAP"), Bi-Level Positive Airway Pressure ("BiPAP"), and mechanical ventilator devices (the "Recall" and the "Recalled Devices").

2.      On October 8, 2021, the United States Judicial Panel on Multidistrict Litigation ("JPML") established MDL 3014 to centralize cases concerning the Recalled Devices. More than 800 cases have been filed in or removed to this MDL to date, and more than 58,000 potential claimants entered the Census Registry.

3.      District courts have inherent authority to manage their dockets. This is especially true in large litigations, such as this MDL.[2] A district court's power extends to, for example,

---

[2]   *See, e.g., In re Asbestos Prods. Liab. Litig.*, 718 F.3d 236, 246 (3d Cir. 2013) ("[D]istrict judges must have authority to manage their dockets, especially during [a] massive litigation.") (quoting *In re Fannie Mae Sec. Litig.*, 552 F.3d 814, 823 (D.C. Cir. 2009)); *see also Ramirez v. T&H Lemont, Inc.*, 845 F. 3d 772, 776 (7th Cir. 2016) ("[A] court has the inherent authority to manage judicial proceedings and to regulate the conduct of those appearing before it.").

"controlling and scheduling discovery, including orders affecting disclosures and discovery under Rule 26 and Rules 29 through 37," "adopting special procedures for managing potentially difficult or protracted actions that may involve complex issues, multiple parties, difficult legal questions, or unusual proof problems," and "facilitating in other ways the just, speedy, and inexpensive disposition of the action."  Fed. R. Civ. P. 16(c)(2)(F), (L) & (P).

4.     This Court is granted wide discretion with regard to case management,[3] and has the authority to streamline litigation in complex cases through rigorous Case Management Orders, particularly in mass tort cases.[4]

---

[3]     As the U.S. Court of Appeals for the Third Circuit has recognized, "multidistrict litigation 'presents a special situation, in which the district judge must be given wide latitude with regard to case management in order to effectively achieve the goals set forth by the legislation that created the [JPML].'  This wide latitude applies, in particular, to issuing discovery orders, and to dismissing actions for non-compliance with such orders."  *In re Avandia Mktg., Sales Pracs. & Prods. Liab. Litig.*, 687 F. App'x 210, 214 (3d Cir. 2017) (citation omitted); *see also In re Guidant Corp. Implantable Defibrillators Prods. Liab. Litig.*, 496 F.3d 863, 866 (8th Cir. 2007) (affirming MDL court's dismissal of claims for failure to comply with discovery orders); *In re Phenylpropanolamine Prods. Liab. Litig.*, 460 F.3d 1217, 1229 (9th Cir. 2006) ("*In re PPA*") ("[A]dministering cases in multidistrict litigation is different from administering cases on a routine docket."; finding no abuse of discretion in MDL court's dismissal of claims for failure to comply with discovery and product identification case management orders); *Freeman v. Wyeth*, 764 F.3d 806, 809 (8th Cir. 2014) (affirming MDL court's dismissal of claims for failure to provide medical authorizations); *In re Asbestos Prods. Liab. Litig.*, 718 F.3d at 246 ("[A]dministering cases in multidistrict litigation is different from administering cases on a routine docket.") (quoting *In re PPA*, 460 F.3d at 1229).

[4]     *In re Vioxx Prods. Liab. Litig.*, 557 F. Supp. 2d 741, 743 (E.D. La. 2008) (internal citations omitted).  Appellate courts have regularly upheld these sorts of Case Management Orders in MDL proceedings.  *See, e.g., In re Phenylpropanolamine (PPA) Prods. Liab. Litig.*, 460 F.3d 1217, 1232 (9th Cir. 2006) (stating that "[c]ase management orders are the engine that drives disposition on the merits," and finding no abuse of discretion in MDL court's dismissal of claims for failure to comply with discovery and product identification case management orders); *United States v. Graf*, 610 F.3d 1148, 1169 (9th Cir. 2010) (*citing United States v. W.R. Grace*, 526 F.3d 499, 508-09 (9th Cir. 2008) (en banc)) ("A district court has broad authority to enter pretrial case management orders to ensure that the trial proceeds efficiently."); *In re Avandia*, 687 F. App'x at 214 (affirming MDL court's dismissal for failure to comply with an order requiring that future plaintiffs provide an expert report); *Dzik v. Bayer Corp.*, 846 F.3d 211, 216 (7th Cir. 2017) (affirming MDL court's

5.      The broad discretion afforded to the Court enables it to enter case management orders after substantial discovery has taken place in a mature mass tort or multidistrict litigation where, as here, a defendant has taken steps to settle a significant portion of the claims pending against it.[5]  Many MDL courts have exercised their discretion and inherent authority to enter orders establishing discovery and other requirements for future cases filed against settling defendants in mass tort litigation.[6]

6.      In the nearly three years since this MDL was formed, the parties and the Court have expended extraordinary resources to manage these matters effectively and expeditiously.  Among other things:  The parties and the Court have participated in a Science Day.  The Parties have briefed various motions to dismiss, including motions to dismiss amended master complaints, and

---

dismissal for plaintiff's failure to comply with discovery order and stating that "[d]istrict courts handling complex, multidistrict litigation 'must be given wide latitude with regard to case management' in order to achieve efficiency") (citation omitted); *Acuna v. Brown & Root, Inc.,* 200 F.3d 335, 340 (5th Cir. 2000) ("*Lone Pine* orders are designed to handle the complex issues and potential burdens on defendants and the court in mass tort litigation.  In the federal courts, such orders are issued under the wide discretion afforded district judges over the management of discovery under Fed. R. Civ. P. 16.").

[5]      *See Avila v. Willits Env't Remediation Tr.*, 633 F.3d 828, 833 (9th Cir. 2011) (noting such orders are authorized by district judge's "broad discretion to manage discovery and to control the course of litigation under Federal Rule of Civil Procedure 16").

[6]      *See, e.g., In re Am. Med. Sys., Inc. Pelvic Repair Sys. Prods. Liab. Litig.,* MDL No. 2325, Pretrial Order # 239, ECF No. 4272 (S.D.W. Va. June 7, 2017) (establishing requirements for future claims against a defendant due to "recent settlement developments" of thousands of claims after more than three years of litigation); *In re Testosterone Replacement Therapy Prods. Liab. Litig.,* MDL No. 2545, Case Management Order No. 126, ECF No. 2716 at 1-2 (N.D. Ill. June 11, 2018) (finding it appropriate to enter an order to manage remaining litigation in light of the parties' settlement agreements entered after years of litigation); *In re Zostavax (Zoster Vaccine Live) Prods. Liab. Litig.,* No. CV 18-MD-2848, 2022 WL 952179, at *2-3 (E.D. Pa. Mar. 30, 2022) (quoting 28 U.S.C. § 1407(a)) ("A Lone Pine management order is the only viable way that 'will promote the just and efficient conduct of [these] actions.'"); *In re Proton-Pump Inhibitor Prods. Liab. Litig. (No. II)*, MDL 2789, Case Management Order No. 109, ECF 955 (D.N.J. Oct. 2, 2023) (recognizing the utility of docket control orders "when a defendant has taken steps to settle a significant portion of the claims pending against it") (collecting cases).

this Court (with the assistance of a Special Master) has determined various aspects of those motions, in whole or in part.  The parties successfully settled the economic loss claims on a class-wide basis.  The Census Registry has been active since September 2022, and more than 57,000 potential claimants have registered.  This Court has provided notice of the Census Registry on the Court's website since September 2022.  The Personal Injury Plaintiffs have been participating in the Short Form Complaint and Plaintiff Fact Sheet process since October 2022, submitting over 170,000 documents to MDL Centrality.   The Philips Defendants have submitted nearly 600 Defendant Fact Sheets.  The parties have taken more than 50 depositions, including of third parties, and exchanged millions of documents on all relevant issues, including extensive testing relating to general causation, both prior to and after the Recall.  The Special Master has resolved many discovery disputes among the parties.   The Court has heard argument on privilege issues, jurisdictional issues, and numerous rounds of dispositive motions, and the parties have participated in numerous conferences with the Court and the Special Masters.  In short, proceedings in this MDL are very mature.

7.      Recognizing that continued litigation in pursuit of remaining claims will require enormous strain on the parties and the judiciary, and without admission of fault or liability, the parties entered into the MSA, which creates a program to resolve those Personal Injury Claims for which Plaintiffs' Negotiating Counsel believe there is any expert and/or scientific support (*i.e.*, claims asserting Qualifying Injuries).

8.      For these and other reasons, the Court orders as follows:

## II.    STAY OF PROCEEDINGS PENDING SETTLEMENT REGISTRATION PROCESS

9.      So as to afford plaintiffs the opportunity to consider the Settlement Program, and to ensure the orderly and effective administration of the Settlement Program, all deadlines for the

Personal Injury and Medical Monitoring Tracks set in this Court's Order of April 16, 2024 (ECF No. 2727) are hereby vacated.  Further, absent agreement of the Philips Defendants and Plaintiffs' Negotiating Counsel, all Personal Injury Claims against one or more of the Philips Defendants are hereby stayed through and including the Registration Deadline.

10.     If after the Registration Deadline, any cases remain for which a Litigating Plaintiff has moved to remand to state court, the Court will set a schedule for those motion(s), including oral argument, following the Registration Deadline.

11.     In light of the withdrawal of the Philips Defendants from the Census Registry Program Agreement and the termination of the Census Registry Program, the Clerk is hereby directed to remove the Census Registry Program Agreement from the Court's website.

## III.   PRESERVATION NOTICE REQUIREMENTS

12.     No later than 30 days after the date on which an individual becomes a Litigating Plaintiff as defined above, counsel for the Litigating Plaintiff (or, if unrepresented, the *pro se* Litigating Plaintiff) shall notify the following individuals or entities, in writing, that they may have records relevant to the Litigating Plaintiff's claims and that any records relating to the Litigating Plaintiff must be preserved pending collection by the Litigating Plaintiff (the "Notice" or "Notices"):

        a.     All physicians and/or other healthcare providers who treated the Litigating Plaintiff, including mental health treatment providers for a Litigating Plaintiff alleging injury related to mental health;

        b.     All physicians and/or other healthcare providers who prescribed the Recalled Device(s) to the Litigating Plaintiff;

c.      Any person (if not the Litigating Plaintiff) in possession, custody or control of the Recalled Device(s);

d.      For Litigating Plaintiffs alleging death, all pathologists and coroners; and

e.      If a Litigating Plaintiff is seeking lost wages, all of his or her employers for the period from three years prior to the date for which he or she is seeking lost wages, through the last day for which the Litigating Plaintiff is seeking lost wages.

13.     All copies of the Notices shall be preserved by counsel for the Litigating Plaintiff or the *pro se* Litigating Plaintiff for so long as the claim remains pending.  Counsel for the Litigating Plaintiff or the *pro se* Litigating Plaintiff shall also serve a statement identifying the names and addresses of all individuals or entities to which Notices were sent, along with copies of the Notices and a signed certification that the Notices were sent as required by this Order, with their Plaintiff Fact Sheet.

14.     Litigating Plaintiffs may not seek to introduce into evidence at trial any document or information from anyone to whom Notice was required to be provided if a Notice was not sent to such person as required by this Order, except with leave of Court for good cause shown.

## IV.   LITIGATING PLAINTIFFS' REQUIREMENTS TO PRODUCE CERTAIN SPECIFIED INFORMATION REGARDING THEIR CLAIMS

15.     All Litigating Plaintiffs shall serve the following documents and/or information upon counsel for Defendants within the timeframe provided in Section V.  All Litigating Plaintiffs' productions shall comply with the search, production, and certification requirements of Pretrial Order No. 18 (ECF No. 660).

a. **Litigating Plaintiffs' Production Requirements**[7]

 i. All disclosures required by Fed. R. Civ. P. 26(a)(1).

 ii. Litigating Plaintiff Fact Sheet.  Each Litigating Plaintiff must prepare and submit to Defendants a Fact Sheet and all accompanying authorizations for the release of records, in the forms attached to the Litigating Plaintiff Fact Sheets, signed under penalty of perjury.

 iii. Medical Records.  All medical records relating to the Litigating Plaintiff from any time before, during and after the Litigating Plaintiff's use of the Recalled Device, including mental health records if Litigating Plaintiff alleges an injury related to mental health.

 iv. Autopsy Reports and Death Certificates.  For all Litigating Plaintiffs alleging death, all autopsy reports regarding the deceased, as well as any accompanying notes or records.

 v. Records Relating to Use of the Recalled Device and any CPAP, BiPAP, or mechanical ventilator acquired to replace the Recalled Device (a "Replacement Device").  All documents evidencing any use (or non-use) of the Recalled Device or Replacement Device, including but not limited to DreamMapper data, photos, videos,

---

[7] All documents produced pursuant to Section 12(a) will be deemed "Confidential" under the Amended Stipulated Protective Order, ECF No. 765, in the first instance, subject to a later process of re-designating these materials and challenges to any re-designation.

messages, emails, chats, social media, materials indicating instructions or habits with respect to cleaning the Recalled Device or Replacement Device, or other communications relating to the use or non-use of the Recalled Device or Replacement Device.

vi. Record Collection Production. The Litigating Plaintiff and his/her counsel shall affirmatively collect and produce such records from all available sources in the Litigating Plaintiff's possession, custody, or control, which includes but is not limited to any relevant records that can be collected from the Litigating Plaintiff's medical facilities and health care providers that treated the Litigating Plaintiff. Counsel for the Litigating Plaintiff (or the *pro se* Litigating Plaintiff) shall be responsible for submitting necessary authorizations or other requests required to obtain the Litigating Plaintiff's medical records, personnel files and other documents required by this Order. Because of the need to ensure timely and thorough collection and production and review of all relevant records by the parties, a Litigating Plaintiff and his/her counsel, if any, must **both** collect and produce records **and** provide authorizations in order to comply with this Order.

vii. Declaration. A Declaration under penalty of perjury signed by the Litigating Plaintiff's counsel attesting (i) that the Litigating Plaintiff has provided a Litigating Plaintiff Fact Sheet, executed under penalty of perjury; (ii) that all available records in the Litigating

-9-

Plaintiff's possession, custody or control described in the foregoing sections have been collected and produced; (iii) that the Litigating Plaintiff's production complies with all of the requirements of Pretrial Order No. 18; and (iv) that counsel has met with the Litigating Plaintiff, personally investigated the merit of Litigating Plaintiff's claim(s) and satisfied himself or herself that the claim(s) is/are meritorious, and discussed with the Litigating Plaintiff their claims and likelihood of success.  If any of the documents or records described in the foregoing sections do not exist or exist but cannot be obtained, the signed affidavit by the Litigating Plaintiff's counsel shall state that fact and the reasons why such materials do not exist or cannot be obtained, and shall provide a "No Records Statement" from each records custodian (or proof of return to sender from the United States Postal Service if the last known address of the medical provider is no longer valid).

**b.      Litigating Plaintiffs' Proof of Injury Requirements**

16.      All Litigating Plaintiffs shall serve upon Defendants, within the timeframe provided in Section V, all medical records that document the Litigating Plaintiff's alleged diagnosis and related injuries, including but not limited to a contemporaneous statement from the diagnosing physician that the Litigating Plaintiff was diagnosed with the alleged injury, all diagnostic reports, x-rays, CT scans, PET scans, laboratory reports, treatment plans, Emergency Room and Urgent Care records, and pharmaceutical records.

### c. Litigating Plaintiffs' Expert Reports

17. All Litigating Plaintiffs shall serve upon counsel for Defendants, within the timeframe provided in Section V, expert report(s) in compliance with Federal Rule of Civil Procedure 26, including, but not limited to, on the following topics:

    i. an opinion that the Litigating Plaintiff has a specified personal injury both generally and specifically caused by a Recalled Device, and how the Recalled Device both generally and specifically caused such Litigating Plaintiff's alleged personal injury;

    ii. an opinion ruling out alternative causes for the Litigating Plaintiff's alleged personal injury;

    iii. a detailed description of facts, medical and scientific literature, testing, and any other authorities relied upon by the expert to support such opinions;

    iv. a description of all of the Litigating Plaintiff's alleged damages; and

    v. a complete set of records relied upon in forming the expert's opinions, including any medical records and test results.

18. Form or template reports are not permitted and will be stricken by the Court.

## V. COMPLIANCE

### a. Deadline

19. The items required by Section IV shall be produced no later than 60 days after the date on which an individual becomes a Litigating Plaintiff, except that expert reports shall be produced no later than 90 days after such date.

**b.** **Failure to Comply**

20.     The Court has entered this Order establishing requirements and setting deadlines for the purpose of ensuring that further pretrial litigation against the Defendants in this mature MDL will progress as smoothly and efficiently as possible.  Should any Litigating Plaintiff fail to fully comply with the obligations of this Order, such Litigating Plaintiff's case is subject to dismissal with prejudice.

21.     In the event any Litigating Plaintiff fails to fully comply with the requirements of this Order, Counsel for Defendants shall notify the Court of the alleged deficiencies, and the Court shall enter an Order to Show Cause why the Litigating Plaintiff's case should not be dismissed with prejudice.  Counsel for Litigating Plaintiffs (or, if unrepresented, the *pro se* Litigating Plaintiffs) shall have 21 days to respond to said Order to Show Cause.  If any of the Litigating Plaintiffs fail to cure the deficiencies or show good cause why their case should not be dismissed with prejudice within 21 days of the entry of the Order to Show Cause, those Litigating Plaintiffs' claims will be dismissed with prejudice.

## VI.   ADDITIONAL CASE-SPECIFIC DISCOVERY AND RELATED MOTION PRACTICE FOR INDIVIDUAL LITIGATING PLAINTIFFS

22.     If a Litigating Plaintiff provides all of the materials contemplated by this Order, the Court shall set further deadlines for management of the case, including deadlines (i) for Defendants' expert reports on general causation, (ii) for motion practice on general causation, including under Rule 702, (iii) for additional case-specific discovery following decision(s) on general causation, and (iv) for motion practice on remaining issues, including specific causation and summary judgment.

23.     Based upon the outcome of these motions, if appropriate, the Court will set Case Management Conferences to determine whether any non-duplicative discovery, including

additional expert disclosures, is necessary and to discuss other case management issues.  The filing and briefing of summary judgment motions and Rule 702 motions (which the Court will schedule) shall not prejudice or otherwise foreclose the opportunity for any party to file later, non-duplicative summary judgment and Rule 702 motions after completing any additional discovery.  Any party seeking to file non-duplicative dispositive motions, including motions related to personal jurisdiction, must first file a motion requesting a Case Management Conference.  The Court will set deadlines for filing such motions.

24.    Upon the expiration of the Registration Deadline, counsel for the Philips Defendants shall notify the Court that the deadline for registration in the Settlement Program has expired and shall request a conference with the Court within 60 days thereafter.

_____
**HONORABLE JOY FLOWERS CONTI**

**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| IN RE: PHILIPS RECALLED CPAP, BI-LEVEL PAP, AND MECHANICAL VENTILATOR PRODUCTS LIABILITY LITIGATION | ) ) ) ) Case No. 2:21-mc-01230-JFC |
| THIS DOCUMENT RELATES TO: | ) MDL No. 3014 ) ) Honorable Joy Flowers Conti |
| *Personal Injury Cases Brought By Litigating Plaintiffs* | ) ) ) |

## LITIGATING PLAINTIFF FACT SHEET

This Litigating Plaintiff Fact Sheet ("PFS") must be completed by all Litigating Plaintiffs, as defined by Case Management Order No. _____. ***Please answer every question truthfully and accurately to the best of your knowledge.***

1. You must answer every question and provide all requested materials in this PFS. It is not sufficient to answer a question by saying "see medical records"; you must complete this form by providing a response to each question.

2. If you have previously submitted a version of this PFS prior to the Court's Case Management Order No. _____, such submission ***does not satisfy*** your PFS requirement under the Order. You must answer every question and provide all requested materials as detailed in ***this*** PFS, which seeks additional information specific to Litigating Plaintiffs.

3. Please consult with your lawyer if you need any assistance.

4. ***Please do not leave any questions unanswered***; if a question does not apply, then please respond with "N/A". The PFS will be considered deficient and will require supplementation in accordance with the deficiency process set forth in Case Management Order No. _____ if questions are left unanswered.

5. By signing the declaration at the end of this document, you are making your responses ***under oath and under penalty of perjury*** as if you were testifying in court.

1

6. You must supplement your responses if you learn that they are incomplete or incorrect, or if your circumstances have changed, in any material respect.

7. For each question where the space provided does not allow for a complete answer, please attach additional sheets so that you can provide complete answers. When attaching additional sheets, clearly label to which question your answer pertains and upload and produce the additional sheets via MDL Centrality.

8. You must authorize the disclosure of your personal records (including medical information protected by HIPAA, 45 CFR 164.508) for the purpose of review and evaluation in connection with your claim.  For each health care provider, physician, pharmacy, retailer, and government agency identified in your responses to the PFS, please provide completed and signed (***but undated***) authorizations attached as Exhibit C as described in part VI below. You may not provide a blank authorization form. All authorizations must be completed to include the addressee.

9. Definitions:

   o "**Health Care Provider**" means any hospital, clinic, medical center, physician's office, infirmary, medical or diagnostic laboratory, or other facility that provides medical, dietary, psychiatric, or psychological care or advice, and any pharmacy, weight loss center, x-ray department, laboratory, physical therapist or physical therapy department, rehabilitation specialist, physician, psychiatrist, osteopath, homeopath, chiropractor, psychologist, nutritionist, dietician, or other persons or entities involved in the evaluation, diagnosis, care, and/or treatment of the plaintiff or plaintiff's decedent.

   o "**Durable medical equipment**" ("DME") means any equipment or supplies ordered by a healthcare provider for a patient due to a medical condition or illness.

   o "**Respironics Device**" means any Continuous Positive Airway Pressure device, Bi-Level Positive Airway device, or mechanical ventilator device manufactured by Philips RS North America LLC that you acquired or used at any time.

   o "**Other Device**" means any Continuous Positive Airway Pressure device, Bi-Level Positive Airway device, or mechanical ventilator device that you acquired or used at any time, other than a Respironics Device.

   **Information provided in response to this PFS, including any response to any authorizations, will only be used for purposes related to this litigation, and shall be deemed**

2

**Confidential pursuant to the Amended Stipulated Protective Order (ECF No. 765).**   A completed PFS shall be considered discovery responses pursuant to Fed. R. Civ. P. 33 and 34 and will be governed by the standards applicable to written discovery under the Federal Rules of Civil Procedure.

## I.   <u>GENERAL INFORMATION</u>

1. Legal name of person completing this PFS (first, middle, last):

2. Legal name of person or entity on whose behalf a claim is being made (if different from the person identified in response to question 1) (first, middle, last):

3. Legal name of person who uses or used the Respironics Device(s) (if different from the person identified in response to question 2) (first, middle, last):

4. Previous or Additional Names used by person who uses/used the Respironics Device(s):

5. Identify each person that you believe has knowledge or information regarding the facts, circumstances, injuries, conditions, damages, or allegations contained in your Complaint.

6. If you are completing this PFS in a representative capacity (*e.g.*, on behalf of the estate of a deceased person or on behalf of a minor), please complete the following information about yourself and the person on whose behalf you are completing the PFS (the "Represented Person"):

| Your Address | Represented Person's Address (Respironics Device User/Plaintiff's Last Known Address) | Capacity in which you are representing the individual or estate | Relationship to the Represented Person (Respironics Device User/Plaintiff) |
|---|---|---|---|
|  |  |  |  |

     a.  If you represent a decedent's estate complete the following:

        Date of death:

        State of death:

7. Case Information:

     This PFS pertains to the following case:

| Case Name: |  |
|---|---|
| Case Number: |  |

**The rest of this PFS requests information about the person <u>who used the Respironics Device(s)</u>.  If you are completing this form in a representative capacity, please respond to the remaining questions with information about the person who used the Respironics Device(s). Whether you are completing this PFS for yourself or for someone else, "you" means the person who used the Respironics Device.**

## II.     RESPIRONICS DEVICE USAGE

**COMPLETE THE QUESTIONS IN THIS SECTION FOR EACH RESPIRONICS DEVICE. (ATTACH SEPARATE SHEETS AS NECESSARY FOR ADDITIONAL DEVICES.)**

8.   Please complete the following chart for each Respironics Device. For each Health Care Provider and DME identified in this section, please complete an authorization attached as Exhibit C, as explained in Section VI., Paragraph 3.

| Respironics Device Model Name and Number | Respironics Device Serial Number | Approximate Purchase Date of Respironics Device | How much of the total purchase price of the Respironics Device did you pay? | Reason for Use of the Respironics Device | Name and Address of Health Care Provider(s) who prescribed/recommended the use of the Respironics Device | Name and address of the DME that provided the Respironics Device |
|---|---|---|---|---|---|---|
| | | | | | | |
| | | | | | | |
| | | | | | | |

9.   For each Respironics Device in the table above, complete the following:

| Respironics Device Name and Serial Number | What date did you start using the Respironics Device? | In general, how many nights per 7 day week do/did you use the Respironics Device? | In general, how many hours per night do/did you use the Respironics Device? | Did you use the Respironics Device during the daytime? (Y/N) | If yes daytime use, approximately how many hours per day do/did you use the Respironics Device? |
|---|---|---|---|---|---|
| | | | | | |
| | | | | | |

a.   Identify every city and state you have resided in which you used the Respironics Device(s) listed above and the dates of residence for each location.

| Dates of residence | Location (city and state) |
|---|---|

|  |  |
|---|---|
|  |  |
|  |  |
|  |  |

10. For each Respironics Device listed above, where do/did you store the Respironics Device when it is/was not in use?

| Respironics Device Name and Serial Number | Where was the Respironics Device stored? |
|---|---|
|  |  |
|  |  |

11. Have you paused or stopped your usage of the Respironics Device?

    a.   If so, when and for what period of time?

| Have you paused/stopped using the Respironics Device? | When and for what period of time? |
|---|---|
|  |  |
|  |  |

12. Other than advice from your attorneys, identify and describe any advice or guidance you received regarding your use or usage, or continued use or usage, of your Respironics Device(s), including but not limited to any such advice or guidance after the Philips RS recall, including from your Health Care Provider.

13. Have you or anyone on your behalf ever cleaned your Respironics Device?

| Respironics Device Name and Serial Number | Have you or anyone on your behalf ever cleaned your Respironics Device(s)? | How did you clean the Respironics Device(s) | What products did you use to clean the Respironics Device(s)? (Please identify all products, including any products |
|---|---|---|---|

| | | | **advertised by third parties as CPAP cleaning devices.)** |
|---|---|---|---|
| | | | |
| | | | |
| | | | |

14. Have you ever noticed any particulate or dark matter in or on the Respironics Device(s)?

    a.  If yes, please identify when you first noticed the particulate/dark matter?

    b.  Identify any and all evidence you have, if any, that the foam in your Respironics Device actually degraded.

15. Have you used any optional accessories (e.g., humidifier, cleaners, wipes, masks/headgear, tubing hoses, filters, nasal cushions, etc.) in combination with the Respironics Device?

    a.  If yes, please complete the chart below.

| **Accessory Name** | **Accessory Type** | **From Whom Did You Acquire the Accessory?** | **When Did You Acquire the Accessory?** |
|---|---|---|---|
| | | | |
| | | | |
| | | | |
| | | | |

16. When did you first hear about the recall notification for your Respironics Device?

17. Did you participate in the recall?

    a.  If yes, when?

    b.  What is your Philips Device Registration Confirmation Code Number?

### III.   <u>PERSONAL INFORMATION</u>

18. Current address and date you moved there:

| Current Address | Date you moved there |
|---|---|
|  |  |

19. Most recent former address and dates (approximate) during which you resided there:

| Most Recent Former Address | Dates during which you resided there (approximately) |
|---|---|
|  |  |

20. Social Security Number:

21. Date of birth:

22. Are you currently employed? YES _____ NO _____

    If yes, please identify your current employer with name, address and telephone number:

| Current Employer | Address | Phone Number |
|---|---|---|
|  |  |  |

    If not, did you leave your last job for a medical reason? YES _____ NO _____

        If yes, describe the medical reason:

23. Have you ever been out of work for more than thirty (30) days for reasons related to your health in the past five (5) years? YES _____ NO _____

        If yes, please state the approximate dates you were out of work, employer, and health condition:

| Approximate Dates you were out of work | Employer at the time | Health Condition |
|---|---|---|
|  |  |  |

|  |  |  |
|---|---|---|
|  |  |  |

24. Have you ever served in any branch of the military?  If yes, please identify.

    a.   Were you ever discharged for any reason relating to your medical or physical condition?  If yes, state what that condition was:

25. If you have Medicare, please state your Health Insurance Claim Number ("HICN") number:

## IV.    PERSONAL MEDICAL BACKGROUND

26. Current height and weight:

| Height | Weight |
|--------|--------|
|        |        |

27. Approximate weight at date of CPAP prescription:

28. **Medical Conditions:**

    a.   To the best of your knowledge, have you ever experienced or been diagnosed with any of the following conditions from the time ***beginning ten (10) years before your first use of the Device(s) to the present***? Please select Yes or No for each condition. For each condition for which you answer Yes, please complete the Treating Physician information. For each Treating Physician identified in this section, please complete an authorization attached as Exhibit C, as explained in Section VI., Paragraph 3.

| Condition Experienced or Diagnosed | Yes | No | Do Not Know | Treating Physician |
|---|---|---|---|---|
| Acute Inhalation Injury |  |  |  |  |
| Acute Respiratory Failure |  |  |  |  |
| Allergies or Allergic Reaction |  |  |  |  |
| Asthma |  |  |  |  |
| Atrial Fibrillation |  |  |  |  |
| Bronchitis |  |  |  |  |
| Cancer |  |  |  |  |
| Chronic Obstructive Pulmonary Disease |  |  |  |  |
| Chronic Kidney Disease |  |  |  |  |
| Chronic Sinusitis |  |  |  |  |
| Heart Failure |  |  |  |  |
| Lung Injury or Damage |  |  |  |  |
| Nasal Turbinate Hypertrophy |  |  |  |  |

11

| | | | | |
|---|---|---|---|---|
| Pneumonia | | | | |
| Pulmonary Fibrosis | | | | |
| Sarcoidosis | | | | |
| Sleep Apnea | | | | |
| Recurrent Esophageal Candida | | | | |
| Respiratory Infection or Failure | | | | |

29. If you have been diagnosed with cancer, which type of cancer were you diagnosed with? For each Treating Physician identified in this section, please complete an authorization attached as Exhibit C, as explained in Section VI., Paragraph 3.

| Type of Cancer | Treating Physician (if different than above in Question 28) |
|---|---|
| | |
| | |

30. If you were diagnosed with a sleep disorder, please state the disorder and treatment to address the disorder (if any).

| Sleep Disorder | Treatment to address the disorder |
|---|---|
| | |
| | |

31. **Health Care Providers** *(Excluding Mental Health Care Providers)*: To the best of your recollection, identify each Health Care Provider who has provided treatment to you *for any reason* (excluding mental health reasons) in the past ten (10) years and the reason for consulting the Health Care Provider (attach additional sheets as necessary). For each provider identified in this section, please complete an authorization attached as Exhibit C, as explained in Section VI., Paragraph 3.

| Name | Address | Approximate Dates/Years of Visits | Reason(s) for Visit or Specialty |
|---|---|---|---|
|  |  |  |  |
|  |  |  |  |
|  |  |  |  |
|  |  |  |  |
|  |  |  |  |

32. **Hospitals, Clinics, and Other Facilities**: To the best of your recollection, identify each hospital, clinic, surgery center, physical therapy or rehabilitation center, or other healthcare facility where you have received inpatient or outpatient treatment in the past ten (10) years (including any hospitalization and emergency room treatment) ***for any reason*** (attach additional sheets as necessary). For each hospital, clinic, surgery center, physical therapy or rehabilitation center, or other healthcare facility identified in this section, please complete an authorization attached as Exhibit C, as explained in Section VI., Paragraph 3.

| Name | Address | Approximate Admission Date(s) | Reason(s) for Visits |
|---|---|---|---|
|  |  |  |  |
|  |  |  |  |
|  |  |  |  |

33. **Insurance Carriers**: To the best of your recollection, identify each health insurance carrier which provided you with medical coverage and/or pharmacy benefits for the last ten (10) years, and the policy number (attach additional sheets as necessary). For each insurance carrier identified in this section, please complete an authorization attached as Exhibit A, as explained in Section VI., Paragraph 1.

| Insurer Carrier | Policyholder | Policy Number | Approximate Dates of Coverage | Includes DME Coverage (Yes/No/Don't Know) |
|---|---|---|---|---|
|  |  |  |  |  |
|  |  |  |  |  |
|  |  |  |  |  |

34. State whether you have been reimbursed or filed a claim for reimbursement under an insurance policy with respect to any of the alleged injuries that form the basis of your Complaint. If so, for each claim, identify the insurance provider with which you filed a claim, the policyholder, the policy number, the claim number, and any reimbursement amount.

35. State whether you have undergone a physical examination in connection with any application for life insurance since January 1, 2010. If so, state the following:

    a. The date the examination was conducted;
    b. The name of the health care provider who conducted the examination;
    c. Whether there is a report of such physical examination;
    d. The name of the life insurance company on whose behalf the examination was conducted; and
    e. Whether or not your application for life insurance was denied as a result of the physical examination.

36. List all of the prescription medications or over-the-counter medications you have taken for at least three consecutive months in the period during which you used your Device, to the best of your recollection, and attach additional sheets as necessary. Please also list any medications for any length of time if they were prescribed for your alleged injury. For each prescriber identified in this section for a medication prescribed for an alleged injury, please complete an authorization attached as Exhibit C, as explained in Section VI., Paragraph 3.

| Medication Name | Condition for Prescription | Prescriber Name and Address | Date of First Prescription | Medication prescribed for alleged injury Yes/No? |
|---|---|---|---|---|
| | | | | |
| | | | | |
| | | | | |
| | | | | |
| | | | | |
| | | | | |
| | | | | |

37. Have you ever used tobacco products or smoked marijuana, including cigarettes, e-cigarettes (e.g., vaping), cigars, pipes, and/or chewing tobacco/snuff?

    a. If you answered yes, please complete the chart below.

| Tobacco Product | Date Started | Date Ceased (or Ongoing) | Frequency of Use |
|---|---|---|---|
| Cigarettes | | | |
| E-Cigarettes/Vape Pens | | | |
| Cigars | | | |
| Pipes (including Hookah) | | | |
| Chewing Tobacco | | | |
| Snuff | | | |
| Any other Nicotine Product | | | |
| Marijuana | | | |

38. Other Exposure

    a.  State whether you are aware of, or have reason to believe, you may have been exposed to chemicals or toxins either at your current or former places of work or residences.

    b.  During your career have you ever to your knowledge worked on or nearby dangerous or hazardous materials (e.g., asbestos, chemicals, auto-body paints, brake-lining, mining, nuclear reactors, shipyards, etc.)?

    c.  If yes, please complete the chart below.

| Name of Employer | Address and Telephone Number | Dates of Employment | Type of Business and Position |
|---|---|---|---|
|  |  |  |  |
|  |  |  |  |
|  |  |  |  |
|  |  |  |  |

## V.   __INJURIES AND DAMAGES__

39. Are you claiming any physical injuries or illness because of the Device?

   a.   YES _____ NO _____

   b.   If yes, please describe in detail the following:

   i.   For each provider identified in this section, please complete an authorization attached as Exhibit C, as explained in Section VI., Paragraph 3.

| Physical Injury or Illness | Approximately when the symptoms began | Is the injury or illness continuing? | When were you diagnosed with this injury or illness | Who diagnosed the injury or illness? | Where was the injury or illness diagnosed? |
|---|---|---|---|---|---|
|  |  |  |  |  |  |
|  |  |  |  |  |  |
|  |  |  |  |  |  |

40. Identify the Health Care Provider(s) who treated you for the injuries you claim in this case. For each Health Care Provider identified in this section, please complete an authorization attached as Exhibit C, as explained in Section VI., Paragraph 3.

41. Identify whether, before you began using your Respironics Device, you suffered from the injury you are alleging in your Complaint as having been caused by your use of a Respironics Device.

42. State whether there is any history in your family of the same type of condition, disease or injury you are alleging in your Complaint as having been caused by your use of a Respironics Device, and if so, identify the family member and their condition, disease or injury.

43. Are you making a claim for lost wages or lost earning capacity?

44. State whether you have ever filed a claim (including a claim for worker's compensation or social security disability) or instituted a legal proceeding (including any previous legal proceedings regarding a Respironics Device) for any personal injury.  If so, state the following:

   a.   The date of the claim;
   b.   The nature of the injuries and damages claim;
   c.   The place of filing for each claim or legal proceeding;
   d.   The full names and addresses of all parties to the action;
   e.   The name of the court or other forum;
   f.   The title of the action and case number;

g.  The current posture of the claim or legal proceedings; and

h.  The final result of each completed claim or legal proceeding, including any monetary judgment, settlement, or award.

# VI.   **AUTHORIZATIONS**

All Litigating Plaintiffs must complete the following authorizations as necessitated by your responses to the foregoing sections (You may not provide a blank authorization. All authorizations must be completed and include the addressee):

1. <u>Authorization for Release of Insurance Records</u>.  For each company listed in your response to Section IV., Question 31, please provide a completed and signed (***but undated***) Authorization for Release of Insurance Records in the form attached as **<u>Exhibit A</u>**.

2. <u>Medicare Authorization Form.</u>  If you identified an HCIN in Section III, Question 21, please provide a completed and signed (***but undated***) Medicare Authorization Form in the form attached as **<u>Exhibit B</u>**.

3. <u>Limited Authorization to Disclose Health Information</u>.  For each health care provider, physician, prescriber, pharmacy, DME, retailer, hospital, clinic, surgery center, physical therapy or rehabilitation center, other healthcare facility, and government agency identified in your responses to Questions 8, 28, 29, 31, 32, 36, 39 and 40, please provide a completed and signed (***but undated***) Limited Authorization to Disclose Health Information records in the form attached as **<u>Exhibit C</u>**.

4. <u>Authorization and Consent to Release Psychotherapy Notes</u>.  If you have sought professional treatment for your emotional distress you are alleging as a result of your device usage, please, provide a completed and signed (***but undated***) Health Care Authorization in the form attached as **<u>Exhibit D</u>**.

5. <u>Authorization for the Release of Employment Records</u>.  If you are asserting a claim for lost wages or a reduction in or loss of earning capacity, please provide a completed and signed (***but undated***) Employment Authorization in the form attached as **<u>Exhibit E</u>**.

6. <u>Limited Authorization for Release of Workers' Compensation Records</u>. If you have applied for workers' compensation, please provide a completed and signed (***but undated***) Authorization for Release of Workers' Compensation Records for each agency or company you submitted your application to in the last ten (10) years in the form attached as **<u>Exhibit F</u>**.

7. <u>Consent for Release of Social Security Information and Release for Social Security Earning Capacity.</u>  If you are asserting a claim for lost wages or a reduction in earning capacity, please provide a completed and signed (***but undated***) Consent for Release of Information for Social Security records and the Release for Social Security Earning Capacity in the forms attached as **<u>Exhibit G(1) and G(2)</u>**. If you are **not** asserting a wage loss claim or a reduction in lost earning capacity, you are not required to provide the Social Security Authorizations.

18

8.  <u>Tax Return 4506 Form</u>.  If you are asserting a claim for lost wages or a reduction in earning capacity, please provide a completed and signed (***but undated***) IRS Form 4506 attached as **<u>Exhibit H</u>** for each year identified.  If you are **not** asserting a wage loss claim or a reduction in lost earning capacity, you are not required to provide IRS Form 4506.

9.  <u>Limited Authorization to Disclose Health Information.</u>  Please provide a completed and signed (***but undated)*** Limited Authorization to Disclose Health Information in the form attached as **Exhibit I**, addressed to Philips RS North America LLC, only, in connection with record collection from Care Orchestrator, Dream Mapper and/or EncoreAnywhere. All plaintiffs must complete a signed but undated Exhibit I.

## VII.   RELEVANT DOCUMENTS

**REQUEST NO. 1:** Produce all non-privileged documents you reviewed that assisted you in the preparation of your responses to this PFS.

**REQUEST NO. 2:** Produce all medical records and/or documents relating to the use of the Respironics Device(s) from any Health Care Provider who treated you in the past ten (10) years and who treated you for any disease, condition, or symptom referred to in any of your responses to the questions above and concerning any condition you claim is related to the use of the Respironics Device(s), including, but not limited to, all imaging studies of any part of your body, and laboratory, pathology, and biopsy reports, that relate in any manner to the diagnosis, treatment, care, or management of your condition and the injuries alleged in your Complaint.

**REQUEST NO. 3:**  Produce all documents you reviewed, utilized or relied on in responding to the PFS.

**REQUEST NO. 4:** Produce all documents and communications regarding your Respironics Device(s) and/or your Other Device(s), including but not limited to documents regarding any modifications or changes made to your Respironics Device(s).

**REQUEST NO. 5**: Produce all documents and communications regarding your insurance coverage from the date you acquired your Respironics Device(s) to the present.

**REQUEST NO. 6:** Produce all documents and communications regarding any application for life insurance you submitted from January 1, 2010 to the present, including but not limited to any reports of physical examinations conducted therewith and any approval or denial notification from the insurance company.

**REQUEST NO. 7:** Produce all documents and communications for any claim (including a claim for worker's compensation or social security disability) or legal proceeding for any personal injury you filed from January 1, 2010 to the present.

**REQUEST NO. 8:** Produce all documents regarding the cleaning (if any) of your Respironics Device(s), including but not limited to all documents reflecting any products used to clean your Respironics Device, the frequency of the cleaning of your Respironics Device(s), and any communication with any person regarding the cleaning of a Respironics Device.

**REQUEST NO. 9:** Produce all documents regarding any particulate or dark matter in your Respironics Device(s), including but not limited to any photos or videos of your Respironics Device(s) and any other evidence that you believe shows that the foam in your Respironics Device(s) actually degraded.

**REQUEST NO. 10:**  Produce all documents regarding any diagnosed medical conditions or injuries you suffered within the last 20 years, and any medications or treatments that you have been prescribed within the last 20 years, involving the lungs, throat, nose, mouth, respiratory tract, or any other part of the body that you claim was injured from use of a Respironics Device.

**<u>REQUEST NO. 11:</u>**  If you are seeking lost wages, all paystubs and employment contracts from three years prior to the date for which you are seeking lost wages, through the last day for which you are seeking lost wages.

**<u>REQUEST NO. 12:</u>**  Produce all documents regarding the Philips RS North America LLC recall.

## VIII.    <u>DECLARATION</u>

Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury under the laws of the United States that (i) all the information provided in this Plaintiff Fact Sheet is true and correct to the best of my knowledge; (ii) that I have supplied all the documents requested in Section VII above to the extent that such documents are in my possession, custody, or control, or in the possession, custody, or control of my lawyers; and (iii) that I have supplied the authorizations attached to this declaration.


Date: _____


Signature: _____


Printed Name: _____


Location: _____

Exhibit A

**AUTHORIZATION FOR RELEASE OF <u>INSURANCE RECORDS</u>**

To:   _____

Name

_____

Address

_____

City, State and Zip Code

This will authorize you to furnish copies of all forms regarding insurance claims applications and benefits and all medical, health, hospital, physicians, nursing or allied health professional reports, records, notes or invoices and bills, which may be in your possession.

_____

*Name of Insured*

whose date of birth is _____ and whose social security number is: _____

     You are authorized to release the above records to the following representatives of defendants in the above-entitled matter, who have agreed to pay reasonable charges made by you to supply copies of such records.

Litigation Management Inc.,

Name of Representative

<u>Third Party Record Requestor</u>

Representative Capacity (e.g., attorney, records requestor, agent, etc.)

PO Box 241370

Street Address

Cleveland, OH 44124

City, State and Zip Code

     This authorization does not authorize you to disclose anything other than documents and records to anyone.

     This authorization shall be considered as continuing in nature and is to be given full force and effect to release information of any of the foregoing learned or determined after the date hereof, if is expressly understood by the undersigned and you are authorized to accept a copy or photocopy of this authorization with the same validity as through the original had been presented to you.

_____        _____

Name/Signature                                             Date

Exhibit B

# MEDICARE AUTHORIZATION FORM
**\*\*ALL SECTIONS REQUIRED\*\***

## SECTION A: BENEFICIARY INFORMATION
Enter beneficiary name as it appears on Medicare card.

| First Name: | Middle Name: | Last Name: |
|---|---|---|

Date of Birth *(mm/dd/yyyy)*      Medicare Identification Number:

Address:

| City: | State: | Zip code: |
|---|---|---|

## SECTION B: RECORD DETAILS DEFINITION
Medicare will only disclose the claim information identified below for the individual in Section A.

Select **one** option:
    Release **all** records to date
    Release records in timeframe from start date _____ to end date: _____

**NY residents only:**
    Include all records
    Exclude information about alcohol and drug abuse, mental health treatment, and HIV

Indicate whether authorization release is for a one-time disclosure, or Identify a future date or event when the authorization will expire.

Select **one** option:
    One-time disclosure
    Expiration upon specified date _____
    Expiration upon specified event _____

## SECTION C: RELEASE INFORMATION TO
Identify the name, address and contact information of the person and/or organization to whom you want Medicare to disclose the claim records. Medicare will only release claim records to those listed.

    Release claim records to beneficiary at mailing address above.

Organization/Individual 1 Name          Recipient 1 Email Address

Litigation Management Inc.,

Recipient 1 Mailing Address:

PO Box 241370, Cleveland, OH 44124

## SECTION D: PURPOSE FOR REQUEST
This section helps Medicare understand the reason or intent for use for this record request.

| At the request of the individual | Litigation |
|---|---|

## SECTION E: AUTHORIZATION AGREEMENT

I authorize Medicare to disclose claim records to the person(s) or organization(s) documented in Section C. I understand that these claim records may be re-disclosed by the recipient and may no longer be protected by law.

I understand I have the right to revoke this authorization at any time, in writing, except to the extent that Medicare has already acted based on my permission.

I understand that signing this authorization is voluntary. Treatment, payment, enrollment in a health plan or eligibility for benefits will not be conditioned on my authorization of this disclosure.

| Signature of Beneficiary or Representative Authorized by Law: | Date Signed: |
|---|---|

Legal Role of Representative (Requires Additional Documentation):



**1. BENEFICIARY INFORMATION**
Add beneficiary name and ID number as printed on Medicare identification card, date of birth, and address.

**2. RECORD TIMEFRAME**
Indicate date range of records to release, or select "release all records."

**3. NY RESIDENTS: EXCLUSIONS OPT-IN**
**(NY residents only)** Specify whether to exclude records related to alcohol and drug abuse, mental health treatment, and HIV.

**4. SELECT EXPIRATION DATE OR EVENT**
Indicate date or event information release authorization will expire, if you are not requesting a one-time disclosure.

**5. SPECIFY ORGANIZATION TO RELEASE TO**
Specify individual(s) to whom records should be released. First name, last name, and address are required. Additional contact information provided will be used only to follow up on questions related to your application submission.

**6. SELECT REASON FOR REQUEST**
Select purpose for record release request to help Medicare understand how records will be used.

**7. BENEFICIARY SIGNATURE**
Signature and date by beneficiary or authorized representative in acceptance of HIPAA clauses required to release information. If form not signed by beneficiary, attach notarized Power of Attorney (living individual), or Letters Testamentary and/ or Letters of Administration from the court (deceased individual).

Exhibit C

<u>LIMITED AUTHORIZATION TO DISCLOSE HEALTH INFORMATION</u>
**(Pursuant to the Health Insurance Portability and Accountability Act "HIPAA" of 4/14/03)**

TO: _____

Patient Name: _____

DOB: _____

SSN: _____

I,_____, hereby authorize you to release and furnish to: Litigation Management Inc., PO Box 241370, Cleveland, OH 44124 <u>COPIES ONLY</u> of the following information:

\*     All medical records, including inpatient, outpatient, and emergency room treatment, all clinical charts, reports, documents, correspondence, test results, statements, questionnaires/histories, electronic medical data including information from Care Orchestrator and/or other databases, office and doctor's handwritten notes, and records received by other physicians. Said medical records may include all information regarding AIDS and HIV status.

\*     All reports of autopsy, laboratory, histology, cytology, pathology, radiology, CT Scan, MRI, echocardiogram and cardiac catheterization reports.

\*     All radiology films, mammograms, myelograms, CT scans, photographs, bone scans, pathology/cytology/histology/autopsy/immunohistochemistry specimens, cardiac catheterization videos/CDs/films/reels, and echocardiogram videos.

\*     All pharmacy/prescription records including NDC numbers and drug information handouts/monographs.

\*     All billing records including all statements, itemized bills, and insurance records.

1. To my medical provider: this authorization is being forwarded by, or on behalf of, attorneys for the defendants and has been approved by the Court supervising this litigation. This authorization is for the sole purpose of allowing copies of my medical records to be provided to the defendants in this litigation. It does not allow discussions of my medical history, care, treatment, diagnosis, prognosis, information revealed by or in the medical records, or any other matter bearing on my medical or physical condition.

2. I understand that the information in my health record may include information relating to sexually transmitted disease, acquired immunodeficiency syndrome (AIDS), or human immunodeficiency virus (HIV). It may also include information about treatment for alcohol and drug abuse.

3. I understand that I have the right to revoke this authorization at any time. I understand that if I revoke this authorization I must do so in writing and present my written revocation to the health information management department. I understand the revocation will not apply to information that has already been released in response to this authorization. I understand the revocation will not apply to my

insurance company when the law provides my insurer with the right to contest a claim under my policy. Unless otherwise revoked, this authorization will expire in one year.

4. I understand that authorizing the disclosure of this health information is voluntary. I can refuse to sign this authorization. I need not sign his form in order to assure treatment. I understand I may inspect or copy the information to be used or disclosed as provided in CFR 164.524. I understand that any disclosure of information carries with it the potential for an unauthorized re-disclosure and the information may not be protected by federal confidentiality rules. If 1 have questions about disclosure of my health information, I can contact the releaser indicate above.

5. A notarized signature is not required. CFR 164.508. A copy of this authorization may be used in place of an original.


Print Name: _____(plaintiff/representative)

Signature: _____        _____
                                                                            Date

Exhibit D

**THIS SHOULD ONLY BE COMPLETED IF YOU HAVE SOUGHT PROFESSIONAL TREATMENT FOR YOUR EMOTIONAL DISTRESS YOU ARE ALLEGING AS A RESULT OF YOUR DEVICE USAGE.**

**AUTHORIZATION AND CONSENT TO RELEASE PSYCHOTHERAPY NOTES**

Name of Individual: _____

Social Security Number: _____

Date of Birth: _____

Provider Name: _____

TO:    All physicians, hospitals, clinics and institutions, pharmacists and other healthcare providers;

        The Veteran's Administration and all Veteran's Administration hospitals, clinics, physicians and employees;

        Social Security Administration; and

        Department of the Treasury/Internal Revenue Service;

        Open Records, Administrative Specialist, Department of Workers' Claims;

        All employers or other persons, firms, corporations, schools and other educational institutions;

    The undersigned individual herby authorizes each entity included in any of the above categories to furnish and disclose to Litigation Management, Inc. PO Box 241370, Cleveland, OH 44124 and its authorized representatives, with true and correct copies of all "psychotherapy notes", as such term is defined by the Health Insurance Portability and Accountability Act, 45 CFR §164-501. Under HIPAA, the term "psychotherapy notes" means notes recorded (in any medium) by a health care provider who is a mental health professional documenting or analyzing the contents of conversation during a private counseling session or a group, joint or family counseling, session, and that are separated from the rest of the individual's record. This authorization does not authorize ex parte communication concerning same.

- This authorization provides for the disclosure of the above-named patient's protected health information for purposes of the following litigation matter: _____
  _____
  _____

- The undersigned individual is hereby notified and acknowledges that any health care provider or health plan disclosing the above requested information may not condition treatment, payment, enrollment or eligibility for benefits on whether the individual signs this authorization.

- The undersigned individual is hereby notified and acknowledges that he or she may revoke this authorization by providing written notice to either Litigation Management (PO Box 241370, Cleveland, OH 44124) and/or to one or more entities listed in the above categories, except to the extent that any such entity has taken action in reliance on this authorization.

- The undersigned is hereby notified and acknowledges that he or she is aware of the potential that protected health information disclosed and furnished to the recipient pursuant to this authorization is subject to redisclosure by the recipient for the purposes of this litigation in a manner that will not be protected by the <u>Standards for the Privacy of Individually Identifiable Health Information</u> contained in the HEPAA regulations (45 CFR §§164.500-164.534).

- The undersigned is hereby notified that he/she is aware that any and all protected health information disclosed and furnished to Litigation Management, Inc, pursuant to this authorization will be shared with any and all co-defendants in the matter of _____ _____ and is subject to redisclosure by the recipient for the purposes of this litigation in a manner that will not be protected by the <u>Standards for the Privacy of Individually Identifiable Health Information</u> contained in the HIPAA regulations (45 CFR §§164.500-164.534).

- A photocopy of this authorization shall be considered as effective and valid as the original, and this authorization will remain in effect until the later of: (i) the date of settlement or final disposition of _____ (ii) one (1) year after the date of signature of the undersigned below.

**I have carefully read and understand the above and do hereby expressly and voluntarily authorize the disclosure of all of my above information to Litigation Management, Inc. PO Box 241370, Cleveland, OH 44124, and its authorized representatives, by any entities included in the categories listed above.**

Date:_____        _____
                                Signature of Individual or Individual's
                                Representative

Printed Name of Individual's Representative (If applicable) _____

_____

Relationship of Representative to Individual (If applicable) _____

_____

This authorization is designed to be in compliance with the Health Insurance Portability and Accountability Act, and the regulations promulgated thereunder, 45 CFR Parts 160 and 164 (collectively, "HIPAA").

Exhibit E

**THIS SHOULD ONLY BE COMPLETED IF YOU ARE ASSERTING A CLAIM FOR LOST WAGES OR A REDUCTION IN OR LOSS OF EARNING CAPACITY.**

**HIPAA COMPLIANT AUTHORIZATION FORM PURSUANT TO 45 CFR 164.508 EMPLOYMENT AUTHORIZATION**

TO: _____

     Name of Employer

 

     _____

     Address, City State and Zip Code

RE: Employee Name: _____ aka _____

     Date of Birth: _____Social Security Number: _____

     Address: _____

 

     I authorize the disclosure of my employment records including any medical information protected by HIPAA, 45 CFR 164.508, for the purpose of review and evaluation in connection with a legal claim. I expressly request that all entities identified above disclose full and complete records including the following:

     This will authorize you to furnish copies of alt applications for employment; resumes; records of all positions held; job descriptions of positions held; wage and income statements and/or compensation records; wage increases and decreases; performance evaluations, reviews and reports; transfers, statements and comments of fellow employees; all documents relating to discipline including warnings, reprimands, suspensions, terminations, and all other forms of discipline; attendance records; W-2s, worker's compensation files; all medical records, x- rays and test results; any physical examination records; all documents relating to my absences, illnesses and injuries; any records pertaining to claims made relating to health, disability or accidents in which 1 was involved including correspondence, reports, claim forms, questionnaires, records of payments made to me or on my behalf; and any other records relating to my employment and/or in my personnel file.
     Information about HIV/AIDS and alcohol/substance abuse may be disclosed.

I authorize you to release the information to;

_____

Name (Records Requestor)

_____

Street Address     City     State and Zip Code

I intend that this authorization shall be continuing in nature. If information responsive to this

authorization is created, learned or discovered at any time in the future, either by you or another party, you must produce such information to the Records Requestor at that time.

I acknowledge the right to revoke this authorization by writing to you at the above referenced address. However, I understand that any actions already taken in reliance on this authorization cannot be reversed, and my revocation will not affect those actions. I understand that the entity to which this authorization is directed may not condition treatment, payment, enrollment or eligibility benefits on whether or not i sign the authorization. Any facsimile, copy or photocopy of the authorization shall authorize you to release the records herein.

This authorization expires _____ or at the conclusion of the case, whichever occurs first.

_____
Signature of Employee or Personal Representative Date Name of Employee or Personal Representative

_____
Description of Personal Representative's Authority to Sign for Employee (attach documents that show authority)

Exhibit F

*To be executed only if you have filed a claim for workers compensation in the last ten (10) years.*

### HIPAA COMPLIANT AUTHORIZATION FORM PURSUANT TO 45 CFR 164.508
### WORKERS' COMPENSATION AUTHORIZATION

TO: _____

RE:  Name: _____ aka _____

Date of Birth: _____Social Security Number: _____

Address: _____

      I authorize the disclosure of my Workers' Compensation records including any medical information protected by HIPAA, 45 CFR 164.508, for the purpose of review and evaluation in connection with a legal claim. I expressly request that all entities identified above disclose full and complete records including the following:

      all workers' compensation claims, including claim petitions, judgments, findings, notices of hearings, hearing records, transcripts, decisions and orders; all depositions and reports of witnesses and expert witnesses; employer's accident reports; all other accident, injury, or incident reports; all medical records; records of compensation payment made; investigatory reports and records; applications for employment; records of all positions held; job descriptions of any positions held; salary records; performance evaluations and reports; statements and comments of fellow employees; attendance records; all physicians', hospital, medical, health reports; physical examinations; records relating to health or disability insurance claims, including correspondence, reports, claim forms, questionnaires, records of payments made to physicians, hospitals, and health institutions or professionals; statements of account, itemized bills or invoices; and any other records relating to the above-named individual.  Copies, NOT originals, of all x-rays, CT scans, MRI films, photographs, and any other radiological, nuclear medicine, or radiation therapy films and of any corresponding reports. I expressly request that all covered entities under HIPAA identified above disclose full and complete protected medical information spanning the time period of _____ to _____.

I authorize you to release the information to Litigation Management Inc., P.O. Box 241370, Cleveland, OH 44124.

I intend that this authorization shall be continuing in nature. If information responsive to this authorization is created, learned or discovered at any time in the future, either by you or another party, you must produce such information to the Records Requestor at that time.

I acknowledge the right to revoke this authorization by writing to you at the above referenced address. However, I understand that any actions already taken in reliance on this authorization cannot be reversed, and my revocation will not affect those actions. I understand that the entity to which this authorization is directed may not condition treatment, payment, enrollment or eligibility benefits on whether or not I sign the authorization. I further

acknowledge that information about HIV/AIDS and alcohol/substance abuse may be disclosed. I also understand that the covered entity to whom this authorization is directed may not condition treatment, payment, enrollment or eligibility benefits on whether or not the individual signs the authorization.  Any facsimile, copy or photocopy of the authorization shall authorize you to release the records herein.

This authorization expires _____ or at the conclusion of the case, whichever occurs first.


**Print Name:** _____ **(plaintiff/representative)**


**Signature:** _____ **Date:** _____

# Exhibit G(1)

***To be executed only if you have filed a claim for social security disability and are asserting a claim for lost wages or a reduction in earning capacity.***

Social Security Administration

Form Approved
OMB No. 0960-0566

## Consent for Release of Information

### Instructions for Using this Form

Complete this form only if you want us to give information or records about you, a minor, or a legally incompetent adult, to an individual or group (for example, a doctor or an insurance company).  If you are the natural or adoptive parent or legal guardian, acting on behalf of a minor child, you may complete this form to release only the minor's non-medical records.  We may charge a fee for providing information unrelated to the administration of a program under the Social Security Act.

**NOTE:** Do not use this form to:

• Request the release of medical records on behalf of a minor child.  Instead, visit your local Social Security office or call our toll-free number, 1-800-772-1213 (TTY-1-800-325-0778), or

• Request detailed information about your earnings or employment history.  Instead, complete and mail form SSA-7050-F4. You can obtain form SSA-7050-F4 from your local Social Security office or online at www.ssa.gov/online/ssa-7050.pdf.

### How to Complete this Form

We will not honor this form unless all required fields are completed.  An asterisk (*) indicates a required field.  Also, we will not honor blanket requests for "any and all records" or the "entire file."  You must specify the information you are requesting and you must sign and date this form.  We may charge a fee to release information for non-program purposes.

• Fill in your name, date of birth, and social security number or the name, date of birth, and social security number of the person to whom the requested information pertains.

• Fill in the name and address of the person or organization where you want us to send the requested information.

• Specify the reason you want us to release the information.

• Check the box next to the type(s) of information you want us to release including the date ranges, where applicable.

• For non-medical information, you, the parent or the legal guardian acting on behalf of a minor child or legally incompetent adult, must sign and date this form and provide a daytime phone number.

• If you are not the individual to whom the requested information pertains, state your relationship to that person.  We may require proof of relationship.

### PRIVACY ACT STATEMENT

Section 205(a) of the Social Security Act, as amended, authorizes us to collect the information requested on this form.  We will use the information you provide to respond to your request for access to the records we maintain about you or to process your request to release your records to a third party.  You do not have to provide the requested information.  Your response is voluntary; however, we cannot honor your request to release information or records about you to another person or organization without your consent. We rarely use the information provided on this form for any purpose other than to respond to requests for SSA records information. However, the Privacy Act (5 U.S.C. § 552a(b)) permits us to disclose the information you provide on this form in accordance with approved routine uses, which include but are not limited to the following:

1. To enable an agency or third party to assist Social Security in establishing rights to Social Security benefits and or coverage;
2. To make determinations for eligibility in similar health and income maintenance programs at the Federal, State, and local level;
3. To comply with Federal laws requiring the disclosure of the information from our records; and,
4. To facilitate statistical research, audit, or investigative activities necessary to assure the integrity of SSA programs.

We may also use the information you provide when we match records by computer.  Computer matching programs compare our records with those of other Federal, State, or local government agencies.  We use information from these matching programs to establish or verify a person's eligibility for Federally-funded or administered benefit programs and for repayment of incorrect payments or overpayments under these programs. Additional information regarding this form, routine uses of information, and other Social Security programs is available on our Internet website, www.socialsecurity.gov, or at your local Social Security office.

### PAPERWORK REDUCTION ACT STATEMENT

This information collection meets the requirements of 44 U.S.C. § 3507, as amended by section 2 of the Paperwork Reduction Act of 1995. You do not need to answer these questions unless we display a valid Office of Management and Budget control number.  We estimate that it will take about 3 minutes to read the instructions, gather the facts, and answer the questions. **SEND OR BRING THE COMPLETED FORM TO YOUR LOCAL SOCIAL SECURITY OFFICE.  You can find your local Social Security office through SSA's website at** www.socialsecurity.gov. **Offices are also listed under U.S. Government agencies in your telephone directory or you may call 1-800-772-1213 (TTY 1-800-325-0778).**  You may send comments on our time estimate above to: SSA, 6401 Security Blvd., Baltimore, MD 21235-6401. ***Send only comments relating to our time estimate to this address, not the completed form.***

**Form SSA-3288** (11-2016) uf
Destroy Prior Editions

Social Security Administration

Form Approved
OMB No. 0960-0566

## Consent for Release of Information

You must complete all required fields. We will not honor your request unless all required fields are completed. (*Signifies a required field. **Please complete these fields in case we need to contact you about the consent form*).

**TO:  Social Security Administration**

_____   _____   _____
**\*My Full Name**              **\*My Date of Birth**                  **\*My Social Security Number**
                                 **(MM/DD/YYYY)**

I authorize the Social Security Administration to release information or records about me to:

**\*NAME OF PERSON OR ORGANIZATION:**                **\*ADDRESS OF PERSON OR ORGANIZATION:**

 LITIGATION MANAGEMENT, INC.                            6000 PARKLAND BOULEVARD
_____

_____          MAYFIELD HEIGHTS, OH 44124

_____          _____

**\*I want this information released because:**   to be used in support of an active litigation.
 We may charge a fee to release information for non-program purposes.

 Invoices can be sent via fax to: 440-484-2055, please reference the PacketID number found above Social Security Disability on the request letter.

 Please feel free to contact Litigation Management, Inc. directly at (888) 803 - 8706 with any questions.

**\*Please release the following information selected from the list below:**
 **Check at least one box. We will not disclose records unless you include date ranges where applicable.**

1. ☐ Verification of Social Security Number
2. ☐ Current monthly Social Security benefit amount
3. ☐ Current monthly Supplemental Security Income payment amount
4. ☒ My benefit or payment amounts from date _____ to date  PRESENT.
5. ☒ My Medicare entitlement from date _____ to date  PRESENT.
6. ☐ Medical records from my claims folder(s) from date_____ to date_____
    If you want us to release a minor child's medical records, do not use this form.  Instead, contact your local Social Security office.
7. ☒ Complete medical records from my claims folder(s)
8. ☒ Other record(s) from my file (We will not honor a request for "any and all records" or "the entire file." You must specify other records; e.g., consultative exams, award/denial notices, benefit applications, appeals, questionnaires, doctor reports, determinations.)

    Documents or other items relating to my social security claims(s): applications, questions, petitions, payment documents/decisions/awards/denials, jurisdictional documents/notes, transcripts, correspondence, findings, notice of hearings, hearing records, orders, depositions, reports; witnesses, medical reviewers and experts consultative examination reports, current developments/temporary, non-disability development and documentation, medical records and determination records.

**I am the individual, to whom the requested information or record applies, or the parent or legal guardian of a minor, or the legal guardian of a legally incompetent adult. I declare under penalty of perjury (28 CFR § 16.41(d)(2004) that I have examined all the information on this form and it is true and correct to the best of my knowledge. I understand that anyone who knowingly or willfully seeking or obtaining access to records about another person under false pretenses is punishable by a fine of up to $5,000. I also understand that I must pay all applicable fees for requesting information for a non-program-related purpose.**

**\*Signature:** _____        **\*Date:** _____

**\*\*Address:** _____        **\*\*Daytime Phone:** _____

**Relationship (if not the subject of the record):** _____        **\*\*Daytime Phone:** _____

Witnesses must sign this form ONLY if the above signature is by mark (X). If signed by mark (X), two witnesses to the signing who know the signee must sign below and provide their full addresses. Please print the signee's name next to the mark (X) on the signature line above.

| 1.Signature of witness | 2.Signature of witness |
|---|---|
| Address(Number and street,City,State, and Zip Code) | Address(Number and street,City,State, and Zip Code) |

**Form SSA-3288** (11-2016) uf

# Exhibit G(2)

***To be executed only if you are asserting a claim for lost wages or a reduction in earning capacity.***

Form **SSA-7050-F4** (02-2021)

Discontinue Prior Editions                                                                        Page 1 of 4
Social Security Administration                                                          OMB  No. 0960-0525

# REQUEST FOR SOCIAL SECURITY EARNING INFORMATION

*Use This Form If You Need

**1. Certified/Non-Certified Detailed Earnings Information**
   Includes periods of employment or self-employment
   and the names and addresses of employers.

**2. Certified Yearly Totals of Earnings**
   Includes total earnings for each year but does not
   include the names and addresses of employers.

> DO NOT USE THIS FORM TO REQUEST
> YEARLY EARNINGS TOTALS
>
> Yearly earnings totals are free to the public
> if you do not require certification.
>
> To obtain FREE yearly totals of earnings,
> visit our website at www.ssa.gov/myaccount.

### Privacy Act Statement
### Collection and Use of Personal Information

Section 205 of the Social Security Act, as amended, allows us to collect this information. In addition, the Budget and Accounting Act of 1950 and Debt Collection Act of 1982 authorize us to collect credit card information, if you choose to pay for the earnings information you have requested with a credit card. Furnishing us this information is voluntary. However, failing to provide all or part of the information may prevent us from processing your request.

We will use the information to identify your records, process your request, and send the earnings information you request. We may also share the information for the following purposes, called routine uses:

1. To the Internal Revenue Service (IRS) for auditing SSA's compliance with the safeguard provisions of the Internal Revenue Code of 1986, as amended.

2. To contractors and other Federal agencies, as necessary, for the purpose of, assisting the Social Security Administration (SSA) in the efficient administration of its programs.

3. To banks enrolled in the Treasury credit card network to collect a payment or debt when the individual has given his/her credit card number for this purpose.

In addition, we may share this information in accordance with the Privacy Act and other Federal laws. For example, where authorized, we may use and disclose this information in computer matching programs, in which our records are compared with other records to establish or verify a person's eligibility for Federal benefit programs and for repayment of incorrect or delinquent debts under these programs.

A list of additional routine uses is available in our Privacy Act System of Records Notices (SORNs) 60-0059, entitled Earnings Recording and Self-Employment Income System, 60-0090, entitled Master Beneficiary Record, 60-0224, entitled SSA-Initiated Personal Earnings and Benefit Estimate Statement, and 60-0231, entitled Financial Transactions of SSA Accounting and Finance Offices. Additional information and a full listing of all our SORNs are available on our website at www.socialsecurity.gov/foia/bluebook.

**Paperwork Reduction Act Statement -** This information collection meets the requirements of 44 U.S.C. § 3507, as amended by section 2 of the Paperwork Reduction Act of 1995. You do not need to answer these questions unless we display a valid Office of Management and Budget control number. We estimate that it will take about 11 minutes to read the instructions, gather the facts, and answer the questions. ***Send only comments relating to our time estimate above to:*** SSA, 6401 Security Blvd, Baltimore, MD 21235-6401.

Form **SSA-7050-F4** (02-2021)                                                          Page 2 of 4

# REQUEST FOR SOCIAL SECURITY EARNING INFORMATION

1.  Provide your name as it appears on your most recent Social Security card or the name of the individual whose earnings you are requesting.

First Name: | | | | | | | | | | | | | | | | | | | | |       Middle Initial: | |

Last Name: | | | | | | | | | | | | | | | | |

Social Security Number (SSN) | | | |   | | |   | | | | |       One SSN per request

Date of Birth:                                            Date of Death:

Other Name(s) Used
Maiden Name

2. What kind of earnings information do you need? (Choose **ONE** of the following types of earnings or SSA must return this request.)

☐ **Itemized Statement of Earnings $92.00**

(Includes the names and addresses of employers)

If you check this box, tell us why you need this information below.

Year(s) Requested: | | | |  to  | | | |

Year(s) Requested: | | | |  to  | | | |

☐ Check this box if you want the earnings information **CERTIFIED** for an additional $30.00 fee.

☐ **Certified Yearly Totals of Earnings $30.00**

(Does not include the names and addresses of employers)Yearly earnings totals are FREE to the public if you do not require certification. To obtain FREE yearly totals of earnings, visit our website at www.ssa.gov/myaccount.

Year(s) Requested: | | | |  to  | | | |

Year(s) Requested: | | | |  to  | | | |

3. If you would like this information **sent to someone else**, please fill in the information below.

I authorize the Social Security Administration to release the earnings information to:

| Name | Litigation Management, Inc. | | |
|------|------|------|------|
| Address | PO Box 241370 | | State  OH |
| City | Cleveland | ZIP Code 44124 | |

4. I am the individual to whom the record pertains (or a person authorized to sign on behalf of that individual). I declare under penalty of perjury that I have examined all the information on this form, and on any accompanying statements or forms, and it is true and correct to the best of my knowledge.

| **Signature AND Printed Name of Individual or Legal Guardian** | *SSA must receive this form within 120 days from the date signed* |
|------|------|
| | Date |
| Relationship (if applicable, you must attach proof) | Daytime Phone: |
| Address | State |
| City | ZIP Code |

Witnesses must sign this form ONLY if the above signature is by marked (X). If signed by mark (X), two witnesses to the signing who know the signee must sign below and provide their full addresses. Please print the signee's name next to the mark (X) on the signature line above.

| 1. Signature of Witness | 2. Signature of Witness |
|------|------|
| Address *(Number and Street, City, State and ZIP Code)* | Address *(Number and Street, City, State and ZIP Code)* |

Form **SSA-7050-F4** (02-2021)                                                                                    Page 3 of 4

# REQUEST FOR SOCIAL SECURITY EARNING INFORMATION

## INFORMATION ABOUT YOUR REQUEST

You may use this form to request earnings information for one ONE Social Security Number (SSN)

### How do I get my earnings statement?

You must complete the attached form. Tell us the specific type of earnings you want, type of earnings record, and provide your mailing address. The itemized statement of earnings will be mailed to ONE address, therefore, if you want the statement sent to someone other than yourself, provide their address in section 3. Mail the completed form to SSA within 120 days of signature. If you sign with an "X", your mark must be witnessed by two impartial persons who must provide their name and address in the spaces provided. Select **ONE** type of earnings statement and include the appropriate fee.

**1. Certified/Non-Certified Itemized Statement of Earnings**
   This statement includes years of self-employment or employment and the names and addresses of employers.

**2. Certified Yearly Totals of Earnings**
   This statement includes the total earnings for each year requested but *does not* include the names and addresses of employers.

If you require one of each type of earnings statement, you must complete two separate forms. Mail each form to SSA with one form of payment attached to each request.

### How do I get someone else's earnings statement?

You may get someone else's earnings information if you meet one of the following criteria, attach the necessary documents to show your entitlement to the earnings information and include the appropriate fee.

**1. Someone Else's Earnings**
   The natural or adoptive parent or legal guardian of a minor child, or the legal guardian of a legally declared incompetent individual, may obtain earnings information if acting in the best interest of the minor child or incompetent individual. You must include proof of your relationship to the individual with your request. The proof may include a birth certificate, court order, adoption decree, or other legally binding document.

**2. A Deceased Person's Earnings**
   You can request earnings information from the record of a deceased person if you are:
   • The legal representative of the estate;
   • A survivor (that is, the spouse, parent, child, divorced spouse of divorced parent); or
   • An individual with a material interest (e.g., financial) who is an heir at law, next of kin, beneficiary under the will or donee of property of the decedent.

   You must include proof of death and proof of your relationship to the deceased with your request.

### Is There A Fee For Earnings Information?

Yes. We charge a $92.00 fee for providing information for purposes unrelated to the administration of our programs.

**1. Certified or Non-Certified Itemized Statement of Earnings**
   In most instances, individuals request Itemized Statements of Earnings for purposes unrelated to our programs such as a private pension plan or personal injury suit. Bulk submitters may email OCO.Pension.Fund@ssa.gov for an alternate method of obtaining itemized earnings information.

   We will **certify** the itemized earnings information for an additional $30.00 fee. Certification is usually not necessary unless you are specifically requested to obtain a certified earnings record.

   Sometimes, there is no charge for itemized earnings information.  If you have reason to believe your earnings are not correct (for example, you have previously received earnings information from us and it does not agree with your records), we will supply you with more detail for the year(s) in question.  Be sure to show the year(s) involved on the request form and explain why you need the information. If you do not tell us why you need the information, we will charge a fee.

**2. Certified Yearly Totals of Earnings**
   We charge $30.00 to certify yearly totals of earnings. However, if you do not want or need certification, you may obtain yearly totals *FREE* of charge at www.ssa.gov/myaccount.  Certification is usually not necessary unless you are advised specifically to obtain a certified earnings record.

### Method of Payment
**This Fee Is Not Refundable. DO NOT SEND CASH.**

You may pay by credit card, check or money order.
• Credit Card Instructions
   Complete the credit card section on page 4 and return it with your request form.

• Check or Money Order Instructions
   Enclose one check or money order per request form payable to the Social Security Administration and write the Social Security number in the memo.

### How long will it take SSA to process my request?

Please allow SSA 120 days to process this request. After 120 days, you may contact 1-800-772-1213 to leave an inquiry regarding your request.

# REQUEST FOR SOCIAL SECURITY EARNING INFORMATION

- **Where do I send my complete request?**

| Mail the completed form, supporting documentation, and applicable fee to:<br><br>**Social Security Administration**<br>P.O. Box 33011<br>Baltimore, Maryland 21290-33011 | If using private contractor such as FedEx mail form, supporting documentation, and application fee to:<br><br>**Social Security Administration**<br>P.O. Box 33011<br>Baltimore, Maryland 21290-33011 |
|---|---|

- **How much do I have to pay for an Itemized Statement of Earnings?**

| **Non-Certified** Itemized Statement of Earnings | **Certified** Itemized Statement of Earnings |
|---|---|
| $92.00 | $122.00 |

- **How much do I have to pay for Certified Yearly Totals of Earnings?**

Certified yearly totals of earnings cost $30.00.  You may obtain non-certified yearly totals <u>FREE</u> of charge at <u>www.ssa.gov/myaccount</u>.  Certification is usually not necessary unless you are specifically asked to obtain a certified earnings record.

## YOU CAN MAKE YOUR PAYMENT BY CREDIT CARD

As a convenience, we offer you the option to make your payment by credit card.  However, regular credit card rules will apply.  You also pay by check or money order.  Make check payable to Social Security Administration.

| | |
|---|---|
| CHECK ONE | ☐ Visa        ☐ American Express<br><br>☐ MasterCard        ☐ Discover |
| Credit Card Holder's Name<br>(Enter the name from the credit card) | <br>First Name, Middle Initial, Last Name |
| Credit Card Holder's Address | <br>Number & Street<br><br>City, State, & ZIP Code |
| Daytime Telephone Number | ☐☐☐   ☐☐☐   ☐☐☐☐<br>Area Code |
| Credit Card Number | ☐☐☐☐  ☐☐☐☐  ☐☐☐☐  ☐☐☐☐ |
| Credit Card Expiration Date | <br>(MM/YY) |
| Amount Charged<br>See above to select the correct fee for your request.<br>Applicable fees are $30.00, $92.00, or $122.00.<br>SSA will return forms without the appropriate fee. | $ |
| Credit Card Holder's Signature | Date |

| **DO NOT WRITE IN THIS SPACE**<br>**OFFICE USE ONLY** | Authorization |
|---|---|
| | Name | Date |
| | Remittance Control # |

# Exhibit H

***To be executed only if you are asserting a claim for lost wages or a reduction in earning capacity.***

Form **4506**

(Novmeber 2021)

Department of the Treasury
Internal Revenue Service

# Request for Copy of Tax Return

▶ Do not sign this form unless all applicable lines have been completed.

▶ **Request may be rejected if the form is incomplete or illegible.**

▶ For more information about Form 4506, visit *www.irs.gov/form4506.*

OMB No. 1545-0429

**Tip: Get faster service:** Online at www.irs.gov, **Get Your Tax Record** (Get Transcript) or by calling **1-800-908-9946** for specialized assistance. We have teams available to assist. **Note:** Taxpayers may register to use Get Transcript to view, print, or download the following transcript types: **Tax Return Transcript** (shows most line items including Adjusted Gross Income (AGI) from your original Form 1040-series tax return as filed, along with any forms and schedules), **Tax Account Transcript** (shows basic data such as return type, marital status, AGI, taxable income and all payment types), **Record of Account Transcript** (combines the tax return and tax account transcripts into one complete transcript), **Wage and Income Transcript** (shows data from information returns we receive such as Forms W-2, 1099, 1098 and Form 5498), and **Verification of Non-filing Letter** (provides proof that the IRS has no record of a filed Form 1040-series tax return for the year(s) you request).

**1a** Name shown on tax return. If a joint return, enter the name shown first.

**1b** First social security number on tax return, individual taxpayer identification number, or employer identification number (see instructions)

**2a** If a joint return, enter spouse's name shown on tax return.

**2b** Second social security number or individual taxpayer identification number if joint tax return

**3** Current name, address (including apt., room, or suite no.), city, state, and ZIP code (see instructions)

**4** Previous address shown on the last return filed if different from line 3 (see instructions)

**5** If the tax return is to be mailed to a third party (such as a mortgage company), enter the third party's name, address, and telephone number.

**Caution:** If the tax return is being sent to the third party, ensure that lines 5 through 7 are completed before signing. (see instructions.)

**6** **Tax return requested.** Form 1040, 1120, 941, etc. and all attachments as originally submitted to the IRS, including Form(s) W-2, schedules, or amended returns. Copies of Forms 1040, 1040A, and 1040EZ are generally available for 7 years from filing before they are destroyed by law. Other returns may be available for a longer period of time. Enter only one return number. If you need more than one type of return, you must complete another Form 4506. ▶ _____

**Note:** If the copies must be certified for court or administrative proceedings, check here . . . . . . . . . . . . . . ☐

**7** **Year or period requested.** Enter the ending date of the tax year or period using the mm/dd/yyyy format (see instructions).

____ / ____ / ____     ____ / ____ / ____     ____ / ____ / ____     ____ / ____ / ____

____ / ____ / ____     ____ / ____ / ____     ____ / ____ / ____     ____ / ____ / ____

**8** **Fee.** There is a $43 fee for each return requested. **Full payment must be included with your request or it will be rejected. Make your check or money order payable to "United States Treasury." Enter your SSN, ITIN, or EIN and "Form 4506 request" on your check or money order.**

**a** Cost for each return . . . . . . . . . . . . . . . . . . . . . . $ _____

**b** Number of returns requested on line 7 . . . . . . . . . . . . . _____

**c** Total cost. Multiply line 8a by line 8b . . . . . . . . . . . . . $ _____

**9** If we cannot find the tax return, we will refund the fee. If the refund should go to the third party listed on line 5, check here . . . . . . ☐

**Caution:** Do not sign this form unless all applicable lines have been completed.

**Signature of taxpayer(s).** I declare that I am either the taxpayer whose name is shown on line 1a or 2a, or a person authorized to obtain the tax return requested. If the request applies to a joint return, at least one spouse must sign. If signed by a corporate officer, 1 percent or more shareholder, partner, managing member, guardian, tax matters partner, executor, receiver, administrator, trustee, or party other than the taxpayer, I certify that I have the authority to execute Form 4506 on behalf of the taxpayer. **Note:** This form must be received by IRS within 120 days of the signature date.

☐ **Signatory attests that he/she has read the attestation clause and upon so reading declares that he/she has the authority to sign the Form 4506.** See instructions.

Phone number of taxpayer on line 1a or 2a

**Sign Here**

▶ | Signature (see instructions) | Date

▶ | Print/Type name | Title (if line 1a above is a corporation, partnership, estate, or trust)

▶ | Spouse's signature | Date

Print/Type name

**For Privacy Act and Paperwork Reduction Act Notice, see page 2.**   Cat. No. 41721E   Form **4506** (Rev. 11-2021)

Form 4506 (Rev. 11-2021)    Page **2**

Section references are to the Internal Revenue Code unless otherwise noted.

## Future Developments

For the latest information about Form 4506 and its instructions, go to *www.irs.gov/form4506*.

## General Instructions

**Caution:** Do not sign this form unless all applicable lines, *including lines 5 through 7,* have been completed.

**Designated Recipient Notification.** Internal Revenue Code, Section 6103(c), limits disclosure and use of return information received pursuant to the taxpayer's consent and holds the recipient subject to penalties for any unauthorized access, other use, or redisclosure without the taxpayer's express permission or request.

**Taxpayer Notification.** Internal Revenue Code, Section 6103(c), limits disclosure and use of return information provided pursuant to your consent and holds the recipient subject to penalties, brought by private right of action, for any unauthorized access, other use, or redisclosure without your express permission or request.

**Purpose of form.** Use Form 4506 to request a copy of your tax return. You can also designate (on line 5) a third party to receive the tax return.

**How long will it take?** It may take up to 75 calendar days for us to process your request.

**Where to file.** Attach payment and mail Form 4506 to the address below for the state you lived in, or the state your business was in, when that return was filed. There are two address charts: one for individual returns (Form 1040 series) and one for all other returns.

If you are requesting a return for more than one year or period and the chart below shows two different addresses, send your request based on the address of your most recent return.

## Chart for individual returns (Form 1040 series)

| If you filed an individual return and lived in: | Mail to: |
|---|---|
| Florida, Louisiana, Mississippi, Texas, a foreign country, American Samoa, Puerto Rico, Guam, the Commonwealth of the Northern Mariana Islands, the U.S. Virgin Islands, or A.P.O. or F.P.O. address | Internal Revenue Service RAIVS Team Stop 6716 AUSC Austin, TX 73301 |
| Alabama, Arkansas, Delaware, Georgia, Illinois, Indiana, Iowa, Kentucky, Maine, Massachusetts, Minnesota, Missouri, New Hampshire, New Jersey, New York, North Carolina, Oklahoma, South Carolina, Tennessee, Vermont, Virginia, Wisconsin | Internal Revenue Service RAIVS Team Stop 6705 S-2 Kansas City, MO 64999 |
| Alaska, Arizona, California, Colorado, Connecticut, District of Columbia, Hawaii, Idaho, Kansas, Maryland, Michigan, Montana, Nebraska, Nevada, New Mexico, North Dakota, Ohio, Oregon, Pennsylvania, Rhode Island, South Dakota, Utah, Washington, West Virginia, Wyoming | Internal Revenue Service RAIVS Team P.O. Box 9941 Mail Stop 6734 Ogden, UT 84409 |

## Chart for all other returns

| For returns not in Form 1040 series, if the address on the return was in: | Mail to: |
|---|---|
| Connecticut, Delaware, District of Columbia, Georgia, Illinois, Indiana, Kentucky, Maine, Maryland, Massachusetts, Michigan, New Hampshire, New Jersey, New York, North Carolina, Ohio, Pennsylvania, Rhode Island, South Carolina, Tennessee, Vermont, Virginia, West Virginia, Wisconsin | Internal Revenue Service Stop 6705 S-2 Kansas City, MO 64999 |
| Alabama, Alaska, Arizona, Arkansas, California, Colorado, Florida, Hawaii, Idaho, Iowa, Kansas, Louisiana, Minnesota, Mississippi, Missouri, Montana, Nebraska, Nevada, New Mexico, North Dakota, Oklahoma, Oregon, South Dakota, Texas, Utah, Washington, Wyoming, a foreign country, American Samoa, Puerto Rico, Guam, the Commonwealth of the Northern Mariana Islands, the U.S. Virgin Islands, or A.P.O. or F.P.O. address | Internal Revenue Service RAIVS Team P.O. Box 9941 Mail Stop 6734 Ogden, UT 84409 |

## Specific Instructions

**Line 1b.** Enter the social security number (SSN) or individual taxpayer identification number (ITIN) for the individual listed on line 1a, or enter the employer identification number (EIN) for the business listed on line 1a. For example, if you are requesting Form 1040 that includes Schedule C (Form 1040), enter your SSN.

**Line 3.** Enter your current address. If you use a P.O. box, please include it on this line 3.

**Line 4.** Enter the address shown on the last return filed if different from the address entered on line 3.

**Note.** If the addresses on lines 3 and 4 are different and you have not changed your address with the IRS, file Form 8822, Change of Address, or Form 8822-B,Change of Address or Responsible Party — Business, with Form 4506.

**Line 7.** Enter the end date of the tax year or period requested in mm/dd/yyyy format. This may be a calendar year, fiscal year or quarter. Enter each quarter requested for quarterly returns. Example: Enter 12/31/2018 for a calendar year 2018 Form 1040 return, or 03/31/2017 for a first quarter Form 941 return.

**Signature and date.** Form 4506 must be signed and dated by the taxpayer listed on line 1a or 2a. The IRS must receive Form 4506 within 120 days of the date signed by the taxpayer or it will be rejected. Ensure that all applicable lines, *including lines 5 through 7*, are completed before signing.

 *You must check the box in the signature area to acknowledge you have the authority to sign and request the information. The form will not be processed and returned to you if the box is unchecked.*

**Individuals.** Copies of jointly filed tax returns may be furnished to either spouse. Only one signature is required. Sign Form 4506 exactly as your name appeared on the original return. If you changed your name, also sign your current name.

**Corporations.** Generally, Form 4506 can be signed by: (1) an officer having legal authority to bind the corporation, (2) any person designated by the board of directors or other governing body, or (3) any officer or employee on written request by any principal officer and attested to by the secretary or other officer. A bona fide shareholder of record owning 1 percent or more of the outstanding stock of the corporation may submit a Form 4506 but must provide documentation to support the requester's right to receive the information.

**Partnerships.** Generally, Form 4506 can be signed by any person who was a member of the partnership during any part of the tax period requested on line 7.

**All others.** See section 6103(e) if the taxpayer has died, is insolvent, is a dissolved corporation, or if a trustee, guardian, executor, receiver, or administrator is acting for the taxpayer.

**Note:** If you are Heir at law, Next of kin, or Beneficiary you must be able to establish a material interest in the estate or trust.

**Documentation.** For entities other than individuals, you must attach the authorization document. For example, this could be the letter from the principal officer authorizing an employee of the corporation or the letters testamentary authorizing an individual to act for an estate.

**Signature by a representative.** A representative can sign Form 4506 for a taxpayer only if this authority has been specifically delegated to the representative on Form 2848, line 5a. Form 2848 showing the delegation must be attached to Form 4506.

**Privacy Act and Paperwork Reduction Act Notice.** We ask for the information on this form to establish your right to gain access to the requested return(s) under the Internal Revenue Code. We need this information to properly identify the return(s) and respond to your request. If you request a copy of a tax return, sections 6103 and 6109 require you to provide this information, including your SSN or EIN, to process your request. If you do not provide this information, we may not be able to process your request. Providing false or fraudulent information may subject you to penalties.

Routine uses of this information include giving it to the Department of Justice for civil and criminal litigation, and cities, states, the District of Columbia, and U.S. commonwealths and possessions for use in administering their tax laws. We may also disclose this information to other countries under a tax treaty, to federal and state agencies to enforce federal nontax criminal laws, or to federal law enforcement and intelligence agencies to combat terrorism.

You are not required to provide the information requested on a form that is subject to the Paperwork Reduction Act unless the form displays a valid OMB control number. Books or records relating to a form or its instructions must be retained as long as their contents may become material in the administration of any Internal Revenue law. Generally, tax returns and return information are confidential, as required by section 6103.

The time needed to complete and file Form 4506 will vary depending on individual circumstances. The estimated average time is: **Learning about the law or the form,** 10 min.; **Preparing the form,** 16 min.; and **Copying, assembling, and sending the form to the IRS,** 20 min.

If you have comments concerning the accuracy of these time estimates or suggestions for making Form 4506 simpler, we would be happy to hear from you. You can write to:

Internal Revenue Service
Tax Forms and Publications Division
1111 Constitution Ave. NW, IR-6526
Washington, DC 20224.

Do not send the form to this address. Instead, see *Where to file* on this page.

Exhibit I

<u>LIMITED AUTHORIZATION TO DISCLOSE HEALTH INFORMATION</u>
**(Pursuant to the Health Insurance Portability and Accountability Act "HIPAA" of 4/14/03)**

TO: Philips RS North America LLC _____

Patient Name: _____

DOB: _____

SSN: _____

I,_____, hereby authorize you to release and furnish to: Litigation Management Inc., PO Box 241370, Cleveland, OH 44124 <u>COPIES ONLY</u> of the following information:
*        All medical records, including inpatient, outpatient, and emergency room treatment, all clinical charts, reports, documents, correspondence, test results, statements, questionnaires/histories, electronic medical data including information from Care Orchestrator and/or other databases, office and doctor's handwritten notes, and records received by other physicians. Said medical records may include all information regarding AIDS and HIV status.
*        All reports of autopsy, laboratory, histology, cytology, pathology, radiology, CT Scan, MRI, echocardiogram and cardiac catheterization reports.
*        All radiology films, mammograms, myelograms, CT scans, photographs, bone scans, pathology/cytology/histology/autopsy/immunohistochemistry specimens, cardiac catheterization videos/CDs/films/reels, and echocardiogram videos.
*        All pharmacy/prescription records including NDC numbers and drug information handouts/monographs.
*        All billing records including all statements, itemized bills, and insurance records.

1.  To my medical provider: this authorization is being forwarded by, or on behalf of, attorneys for the defendants and has been approved by the Court supervising this litigation. This authorization is for the sole purpose of allowing copies of my medical records to be provided to the defendants in this litigation. It does not allow discussions of my medical history, care, treatment, diagnosis, prognosis, information revealed by or in the medical records, or any other matter bearing on my medical or physical condition.

2.  I understand that the information in my health record may include information relating to sexually transmitted disease, acquired immunodeficiency syndrome (AIDS), or human immunodeficiency virus (HIV). It may also include information about treatment for alcohol and drug abuse.

3.  I understand that I have the right to revoke this authorization at any time. I understand that if I revoke this authorization I must do so in writing and present my written revocation to the health information management department. I understand the revocation will not apply to information that has already been released in response to this authorization. I understand the revocation will not apply to my

insurance company when the law provides my insurer with the right to contest a claim under my policy. Unless otherwise revoked, this authorization will expire in one year.

4. I understand that authorizing the disclosure of this health information is voluntary. I can refuse to sign this authorization. I need not sign his form in order to assure treatment. I understand I may inspect or copy the information to be used or disclosed as provided in CFR 164.524. I understand that any disclosure of information carries with it the potential for an unauthorized re-disclosure and the information may not be protected by federal confidentiality rules. If 1 have questions about disclosure of my health information, I can contact the releaser indicate above.

5. A notarized signature is not required. CFR 164.508. A copy of this authorization may be used in place of an original.

Print Name: _____(plaintiff/representative)

Signature: _____        _____
                                                                              Date