IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| IN RE: PHILIPS RECALLED CPAP, BI-LEVEL PAP, AND MECHANICAL VENTILATOR PRODUCTS LIABILITY LITIGATION, | Master Docket: Misc. No. 21-1230 <br><br> MDL No. 3014 |
| This Document Relates to: | |
| *Fuentes v. Philips RS North Amer. LLC*, 2:22-cv-00130, | |
| *King v. Koninklijke Philips N.V.*, 2:23-cv-02040, and | |
| *Spiekermier v. Koninklijke Philips N.V.*, 2:22-cv-01406. | |

**<u>Omnibus Response In Opposition To Objections
To The Private Master Settlement Agreement</u>**

On May 9, 2024, after years of litigation and extensive arm's-length negotiation with the assistance of the Court-appointed mediator, the Honorable Diane M. Welsh (Ret.), Plaintiffs' Negotiating Counsel[1] (the "PNC") and the Philips Defendants entered into a private master settlement agreement (the "MSA") intended to resolve the claims or potential claims of claimants who have a Qualifying Injury and who allege that they sustained such a Qualifying Injury from (i) use of one or more of the Recalled Devices, and/or (ii) any asserted defects, delays, or inadequacies relating to the Philips RS recall programs. *See* MSA at 1. This private agreement establishes a fund of $1.075 billion to compensate Eligible Claimants[2] who properly register to participate in

---

[1] Terms not defined herein have the same meaning as in the MSA, ECF No. 2768-1.
[2] As set forth in Article I of the MSA, Eligible Claimant means a United States Citizen or Resident who, as of the applicable Identification Order Declaration Deadline, alleges a Qualifying Injury caused by their use of one or more Recalled Devices and/or any asserted defects, delays or inadequacies relating to the Philips RS recall programs, and either (i) retained counsel on or before

the settlement Program.  The MSA is not a proposed class settlement and does not require anyone to opt-out to avoid inclusion in, or having their claims affected by, the settlement.  Instead, the MSA offers each Eligible Claimant the individual opportunity to opt-in and receive compensation in exchange for the release of that individual's personal injury claims against the Philips Defendants and other Released Parties.

Despite the opt-in structure of this private agreement, three purported objections to the MSA have been filed.[3]  However, by their own terms, none of the objections are properly before the Court and should be dismissed.  "A district court is not a party to the settlement, nor may it modify the terms of a voluntary settlement agreement between parties."  *Ehrheart v. Verizon Wireless*, 609 F.3d 590, 593 (3d Cir. 2010) (citing *Evans v. Jeff D.*, 475 U.S. 717 (1986)); May 9, 2024 Hr. Tr. at 10-11 ("[I]t's your private settlement. . . . [I]t's private and I'm not involved in it.").

The May 10 motion, ECF No. 2780 ("Fuentes Mot."), complains that Plaintiffs Vazquez and Trinidad are ineligible to participate in the settlement Program and asks the Court to re-write the private agreement to alter the definition of Qualifying Injury to render them Eligible Claimants.  The May 20 motion, ECF Nos. 2796–97 ("King Mot."), joins the Fuentes motion and likewise seeks to have the Court force the PNC and the Philips Defendants to renegotiate the MSA to include all personal injury plaintiffs within the definition of Eligible Claimant.  King Mot. at 17.

---

April 29, 2024 and is included on an Identification Order Declaration alleging a Qualifying Injury by the applicable Identification Order Declaration Deadline, or (ii) is a *pro se* plaintiff who has filed a Personal Injury Claim or Claims in the MDL Court or Massachusetts Court alleging a Qualifying Injury or submits an Identification Order Declaration alleging a Qualifying Injury by the applicable Identification Order Declaration Deadline.

[3] *See* Fuentes Urgent Motion Objecting to the Removal or Exclusion of Qualified Injury Claims Established by the FDA Under Current Personal Injury Case Settlement Agreement (ECF No. 2780); Plaintiff King Motion to Reject the Personal Injury Settlement Agreement (ECF Nos. 2796–97); and Mary Ann Spiekermeier Objection to Approval of Proposed MSA (ECF No. 2804).

The May 28 objection, ECF No. 2804 ("Spiekermeier Obj."), asks the Court to amend the MSA to avoid alleged conflicts with the ABA Model Rules of Professional Conduct. Spiekermeier Obj. at 3. Because the objectors' substantive legal rights are not affected by the MSA, the objectors lack standing to challenge the MSA. *See In re Vioxx Prod. Liab. Litig.*, 388 F. App'x 391, 395 (5th Cir. 2010).

A.  **The objectors lack standing to challenge the MSA.**

"Standing is a prerequisite to a court's exercise of jurisdiction . . . [and] 'non-settling parties generally have no standing to challenge [a] settlement.'" *In re Xarelto (Rivaroxaban) Prod. Liab. Litig.*, 2019 WL 6877651, at *3 (E.D. La. Dec. 17, 2019) (citing *Doe v. Tangipahoa Par. Sch. Bd.*, 494 F.3d 494, 496, n.1 (5th Cir. 2007) and quoting *In re Vioxx Prod.*, 388 F. App'x at 395); *see also In re Fine Paper Litig. State of Wash.*, 632 F.2d 1081, 1087 (3d Cir. 1980) ("a nonsettling party may not object to the terms of a settlement which do not affect its own rights"). "The rationale behind this general rule is that settlement will not affect any substantive legal rights of non-settling parties." *In re Vioxx*, 388 F. App'x at 395 (citing *Transam. Ref. Corp. v. Dravo Corp.*, 952 F2d 898, 900 (5th Cir. 1992)). Private opt-in settlements, like the MSA, cause no legal prejudice to nonparticipants. *See id.*; *In re Xarelto*, 2019 WL 6877651, at *3; *Agretti v. ANR Freight Sys., Inc.*, 982 F.2d 242, 247 (7th Cir. 1992) ("[C]ourts have repeatedly held that a settlement which does not prevent the later assertion of a non-settling party's claims, although it may force a second lawsuit against the dismissed parties, does not cause plain legal prejudice to the non-settling party.").

The rule that non-settling parties lack standing is directly applicable where, as here, the objectors cannot demonstrate any legal prejudice whatsoever. According to the objectors' own statements they are ineligible for the settlement Program created by the MSA. *See* Fuentes Mot.

3

at 2; King Mot. at 2 n.1; ECF No. 904 (Spiekermeier short form complaint alleging only Nonqualifying Injuries). Accordingly, the MSA has no effect on their legal rights. The objectors' claims against the Philips Defendants—or any other potential defendant—are not released, not modified, and not altered by the MSA. As was true before the MSA was signed, the objectors remain free to litigate against the Philips Defendants whatever claims they believe can be sustained.[4] Indeed, it is common for master settlement agreements in mass tort cases such as this to be available only to those individuals who meet the negotiated criteria for eligibility, including limits based on the type of injury alleged. For example, the *Vioxx* master settlement agreement established a global program for resolving claims, that among other restrictions on eligibility, was only available to those claimants who suffered a heart attack, ischemic stroke, or sudden cardiac death, just three of the numerous injuries asserted in state and federal court. *See In re Vioxx Prod. Liab. Litig.*, 2008 WL 3285912, at *2-3 (E.D. La. Aug. 7, 2008).

Similarly, the King motion's arguments regarding the Identification Order and the Docket Management Order are without merit, and King's request for vacatur should be denied. As an Ineligible Claimant, the Identification Order imposes no obligation on King. *See* ECF No. 2770 (requiring identification of Eligible Claimants). King's motion does not actually provide any reason why the Docket Management Order should be set aside, nor could it. Such orders are well within the Court's power, and common in multidistrict litigation, particularly in the wake of a settlement. *See, e.g.*, *In re Am. Med. Sys., Inc. Pelvic Repair Sys. Prods. Liab. Litig.,* MDL No. 2325, Pretrial Order # 239, ECF No. 4272 (S.D.W. Va. June 7, 2017) (establishing requirements for future claims against a defendant due to "recent settlement developments" of thousands of claims after more than three years of litigation); *In re Testosterone Replacement Therapy Prods.*

---

[4] Plaintiff's Co-lead Counsel corresponded with Fuentes' counsel on Friday May 10, prior to the filing of the objection to explain that the objectors' rights were unimpaired.

*Liab. Litig.,* MDL No. 2545, Case Management Order No. 126, ECF No. 2716 at 1-2 (N.D. Ill. June 11, 2018) (finding it appropriate to enter an order to manage remaining litigation in light of the parties' settlement agreements entered after years of litigation); *In re Proton-Pump Inhibitor Prods. Liab. Litig. (No. II)*, MDL 2789, Case Management Order No. 109, ECF 955 (D.N.J. Oct. 2, 2023) (recognizing the utility of docket control orders "when a defendant has taken steps to settle a significant portion of the claims pending against it") (collecting cases).

Furthermore, King's claim that the MSA includes a provision that requires Ineligible Claimants to obtain new counsel or proceed *pro se* is simply incorrect—there is no such provision. *See* MSA.  To be clear, the claims of the objectors, and all Ineligible Claimants, are in no way substantively affected by the MSA.  The MSA imposes no Identification Order or Registration obligation or deadline of any kind on the objectors, or on any Ineligible Claimant.  Accordingly, the objectors lack standing to challenge the MSA, and the motions must be denied.[5]  *See In re Vioxx*, 388 F. App'x at 395; *In re Xarelto*, 2019 WL 6877651, at *3.

**B.       Rule 23(e) is inapplicable to the MSA, a private opt-in settlement.**

The objectors' motions are not saved by their references to class action concepts, because the MSA is not and does not purport to resolve any claims on a class-wide basis.  The Fuentes motion refers to Settlement Class Representatives and Proposed Settlement Class Counsel, Fuentes Mot. ¶ 8, and calls the objectors "members of said class." Fuentes Mot. ¶ 2.  The King Motion and the Spiekermeier Objection expressly invoke Federal Rule of Civil Procedure 23(e).  King Mot. at 13; Spiekermeier Obj. at 3. However, Rule 23 does not apply because there is not now, nor has

---

[5] The accusation that Plaintiff's leadership violated any ethical duties by negotiating with the Philips Defendants an opt-in settlement that had various restrictions on eligibility is entirely baseless.  However, it bears repeating that there is no prejudice to any Ineligible Claimant. The Personal Injury Claims of all Ineligible Claimants, including those with Nonqualifying Injuries, are neither released nor at all affected by the MSA.

5

there ever been a proposed personal injury class, personal injury class representatives, or personal injury class counsel for personal injury cases in this MDL. *See, e.g.*, PTO 28, PTO 28(b) (requiring filing of individual short form personal injury complaints). Nor does the MSA purport to be a class settlement or seek certification of a class of any kind. By its own terms, the MSA is a private agreement between the PNC and the Philips Defendants that permits certain Eligible Claimants the option to participate in the voluntary Settlement Program. MSA at 1; *See* May 9, 2024 Hr. Tr. at 10-11. The MSA does not seek the resolution of any issue or right on a class-wide basis and does not seek to relieve absent or non-participating individuals of any legal right.[6] In such situations, where a private settlement agreement permits claimants to choose not to opt-in, these same arguments have been rejected. *See In re Xarelto*, 2019 WL 6877651, at *2–3. As the Supreme Court has explained, even in the class context, a court cannot require the parties to accept a settlement to which they have not agreed. *Evans*, 475 U.S. at 726–27. Accordingly, the objectors' requests that the Court modify the private MSA should be denied.

C.   **The MSA complies with all ethical rules.**

Even if Spiekermeier had standing to challenge the MSA—which she does not, because she is an Ineligible Claimant and, therefore, she and her counsel are unaffected by the MSA including the challenged provisions—her purported objection should be denied. Spiekermeier

---

[6] The King Motion's citation to *In re Cincinnati Radiation Litigation*, 1997 WL 1433832 (S.D. Ohio Aug. 4, 1997), as a non-class case is mistaken. *See id.* at *1 ("As part of the proposed settlement agreement, the proponents urged the Court to certify a 'settlement class' under Rules 23(b)(1) and 23(b)(2) of the Federal Rules of Civil Procedure."). *In re World Trade Center Disaster Site Litigation,* 834 F. Supp.2d 184 (S.D.N.Y. 2011), is also distinguishable, as the proposed settlement carved up a capped fund created by a federal law, such that there was an inherent relationship between the money paid to settling claimants and the money remaining for future claimants. *See id.* at 188. This type of concern (inapplicable to the presently injured Mr. King) is entirely absent here, where the settlement Program is not intended to compensate future claimants, is not available to persons represented by counsel where that representation began after April 29, 2024, and has no effect on the rights of those injured in the future. *See* MSA.

argues that two sections of the MSA create "inherent conflicts" for Eligible Claimants' counsel: Section 7.3 and Section 7.4. Not so. The PNC took care to ensure the MSA complied with the applicable ethical rules, and the MSA is clear on its face that none of its terms "shall be interpreted to require any Party, any Eligible Claimant, or any counsel to engage in any conduct that is a violation of law and/or unethical under applicable ethical rules." MSA § 11.11.

Beyond the fact that attorneys whose clients are eligible for and opt into the settlement can avail themselves of the safe harbor language to ensure that the applicable restrictions of local ethics rules will govern, neither section cited by Spiekermeier evidences an ethical conflict, and both are common in private mass settlements. *See, e.g.*, Exhibit A (3M Combat Arms settlement agreement) at 20, Article 8; Exhibit B (Fosamax settlement agreement) at ¶¶ 64, 77.

Spiekermeier's objections are unsupported and without merit. The argument regarding Section 7.3 appears to incorrectly rest on a belief that Section 7.3 "restrict(s) some of the largest plaintiff-side firms from ever practicing against [the Released Parties]." Spiekermeier Obj. at 2. However, Section 7.3 does not restrict any firm from practicing law against the Released Parties. MSA § 7.3. Rather, Section 7.3 only asks counsel for Eligible Claimants who choose to participate in the settlement to affirm that they are not presently advertising for new clients with claims regarding injuries caused by the Recalled Devices against one of the Released Parties to the extent permitted under the applicable ethical rules. *Id.*; *see* MSA § 11.11. Spiekermeier's argument regarding Section 7.4 is similarly incorrect. Any withdrawal from an Eligible Claimant is expressly subject to court approval. MSA § 7.4. And by its express terms, Section 7.4 cannot violate Model Rule 5.6 because it only applies "to the extent permitted by Rules 1.16 and 5.6 of the ABA Model Rules of Professional Conduct (or their equivalent) in the relevant jurisdiction(s).

7

MSA § 7.4; *see* MSA § 11.11.  Spiekermeier fails to offer any reason to ignore the MSA's plain language.

At bottom, the objectors ask the Court to modify the MSA, a private settlement to resolve certain personal injury claims of certain claimants, for which they are ineligible.  But the objectors are unaffected by the MSA and remain free to pursue their claims against the Philips Defendants.  The purported objections do not challenge anything the Court has been asked to do, and a bare desire to be eligible for compensation pursuant to a private settlement program is not a cognizable harm.  Accordingly, the motions and objections should be denied.

Dated: June 4, 2024

Respectfully submitted,

*/s/ Christopher A. Seeger*
Christopher A. Seeger
**SEEGER WEISS LLP**
55 Challenger Road, 6th Floor
Ridgefield Park, NJ  07660
(973) 639-9100 (phone)
cseeger@seegerweiss.com

*/s/ Sandra L. Duggan*
Sandra L. Duggan
**LEVIN SEDRAN & BERMAN LLP**
510 Walnut Street, Suite 500
Philadelphia, PA 19106
(215) 592-1500 (phone)
sduggan@lfsblaw.com

*/s/ Steven A. Schwartz*
Steven A. Schwartz
**CHIMICLES SCHWARTZ KRINER & DONALDSON-SMITH LLP**
361 West Lancaster Avenue
Haverford, PA 19041
(610) 642-8500 (phone)
steveschwartz@chimicles.com

*/s/ Kelly K. Iverson*
Kelly K. Iverson
**LYNCH CARPENTER, LLP**
1133 Penn Avenue, 5th Floor
Pittsburgh, PA 15222
(412) 322-9243 (phone)
kelly@lcllp.com


*/s/ Roberta D. Liebenberg*
Roberta D. Liebenberg (Chair)
**FINE, KAPLAN AND BLACK, R.P.C.**
One South Broad Street, 23rd Floor
Philadelphia, PA 19107
(215) 567-6565 (phone)
rliebenberg@finekaplan.com

*Plaintiffs' Negotiating Counsel*

*/s/ D. Aaron Rihn*
D. Aaron Rihn
**ROBERT PEIRCE & ASSOCIATES, P.C.**
707 Grant Street, Suite 125
Pittsburgh, PA 15219
(412) 281-7229 (phone)
arihn@peircelaw.com

*Plaintiff's Co-Liaison Counsel*

9