**UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| IN RE: PHILIPS RECALLED CPAP, BI-LEVEL PAP, AND MECHANICAL VENTILATOR PRODUCTS LITIGATION | Master Docket: No. 21-mc-1230<br><br>MDL No. 3014 |
| KONINKLIJKE PHILIPS N.V., PHILIPS NORTH AMERICA LLC, PHILIPS HOLDING USA, INC., PHILIPS RS NORTH AMERICA LLC, and PHILIPS RS NORTH AMERICA HOLDING CORPORATION,<br><br>     Defendants /<br>     Third-Party Plaintiffs,<br><br> v.<br><br>SOCLEAN, INC. and DW MANAGEMENT SERVICES, LLC,<br><br>     Third-Party Defendants. | **PHILIPS DEFENDANTS' AMENDED THIRD-PARTY COMPLAINT FOR CONTRIBUTION**[1] |

---

[1]   Through discovery in the related MDL (MDL 3021), the Philips Defendants are aware that (1) numerous other entities affiliated with SoClean, Inc. ("SoClean") and DW Management Services, LLC ("DWHP")—including Lifebrands Holdings, Inc., SoClean Parent, LP ("SoClean Parent"), SoClean Parent GP, LLC, DW Healthcare Partners IV LP, DW Healthcare Affiliates IV, LP, and DW Healthcare Partners IV (B), LP—should be joined as parties in this action and (2) many additional allegations regarding all of these entities' liability and personal jurisdiction (including DWHP) can be made. *See, e.g.*, MDL 3021, ECF No. 653 (identifying other parties and additional jurisdictional allegations).  But as of the filing of these amended contribution claims, SoClean and DWHP insist that these allegations cannot be made in this pleading in MDL 3014 because the documents on which these allegations are based have been produced solely in MDL 3021.  Once these documents are produced or deemed produced in MDL 3014—or SoClean otherwise agrees (or is ordered) to permit their use across both of these MDLs—the Philips Defendants intend to, again, amend their contribution claims to add those additional parties and allegations.  None of this should be necessary—these MDLs are related and have always been coordinated—but is being caused by SoClean's and DWHP's attempt to delay the advancement of these contribution claims.

Pursuant to Federal Rule of Civil Procedure 14(a) and Pretrial Order No. 31, Defendants/Third-Party Plaintiffs Koninklijke Philips N.V., Philips North America LLC, Philips Holding USA Inc., Philips RS North America LLC ("Philips RS"), and Philips RS North America Holding Corporation (collectively, "Third-Party Plaintiffs" or the "Philips Defendants") bring this third-party complaint for contribution and indemnity against Third-Party Defendants SoClean, Inc. ("SoClean") and DW Management Services, LLC ("DWHP").  Third-Party Plaintiffs' allegations are based on knowledge as to themselves and, for the conduct of others, on information and belief following a reasonable inquiry.

## INTRODUCTION

1.      Thousands of individuals (the "Device Users") have asserted they suffered a personal injury from their use of CPAP or BiPAP devices manufactured and recalled by Philips RS (the "Recalled Devices").[2]  The Device Users have asserted that the foam used in the Recalled Devices (a) breaks into particles that may then be inhaled or ingested by the Device User, and (b) emits certain volatile organic compounds ("VOCs"), including VOCs emitted when the foam degrades.  The Device Users have alleged various respiratory injuries and cancers as their personal injuries, claiming pecuniary, non-pecuniary, and punitive damages.

2.      The Philips Defendants have maintained, and continue to maintain, that the Device Users' claims against the Philips Defendants are devoid of merit for a variety of reasons.  Among others, the compounds included in any emitted foam and any VOCs are well within long-established, and scientifically supported, safety levels.

---

[2]      A list of the Recalled Devices is at https://www.usa.philips.com/healthcare/e/sleep/communications/src-update (last visited Aug. 13, 2024).

3.      Nonetheless, to avoid the uncertainty of litigation, and as announced on April 29, 2024, the Philips Defendants have entered into an agreement that would establish a $1.05 billion settlement fund (the "Settlement Fund") to compensate Device Users, *including those Device Users who used one of SoClean's ozone-based cleaning devices ("SoClean Devices") with their Recalled Devices*.[3]  As set forth in more detail below, for those Device Users who used a SoClean Device with their Recalled Devices, the Philips Defendants are entitled to contribution and indemnity from SoClean and the private equity firm that controls it, DWHP.

4.      The Philips Defendants are entitled to contribution and indemnity in two separate respects.

5.      *First*, with respect to payments from the Settlement Fund, an independent third-party settlement administrator (without the involvement of the Philips Defendants) is allocating the $1.05 billion Settlement Fund to Device Users with proven respiratory injuries ("Qualifying Respiratory Injuries") and proven cancers ("Qualifying Cancers").  For that portion of the Settlement Fund paid to Device Users who used a SoClean Device with their Recalled Device and who are paid for a Qualifying *Respiratory* Injury, the Philips Defendants are entitled to contribution and indemnity for the harms caused to the Device Users by the SoClean Device through *direct ozone inhalation*.  It is well-established that direct ozone inhalation causes numerous respiratory injuries, including reduced lung function, and worsens patients' existing chronic respiratory diseases.  At this stage, however, given the absence of scientific literature connecting direct ozone inhalation with cancers, the Philips Defendants are not seeking

---

[3]      The SoClean Devices include at least the SoClean 1, the SoClean 2, the SoClean 2 Go, the SoClean 3, and the SoClean 3+.

contribution or indemnity from the Third-Party Defendants for that portion of the Settlement Fund paid for Qualifying Cancers.

6.      *Second*, for those Device Users who do not participate in the Settlement Fund (whether by choice or because of ineligibility), continue to pursue personal injury litigation, and used a SoClean Device with their Recalled Device, the Third-Party Defendants bear responsibility, either in whole or in part, for any judgment the Device User is able to obtain.  For this category, the Third-Party Defendants are responsible for *any* proven injury (*i.e.*, not limited to Qualifying Respiratory Injuries) not only on account of direct ozone inhalation, but also because of ozone's contribution to foam degradation and the release of VOCs from degraded foam.

7.      Based on preliminary information provided by the independent third-party settlement administrator, combined with information provided by Device Users on their Plaintiff Fact Sheets, Census Forms, and Accelerated Implementation Option disclosures, *at least 4.9%* of Device Users eligible for payment from the Settlement Fund with a Qualifying Respiratory Injury are confirmed SoClean Device users who live in states where contribution is an eligible remedy. (That percentage may increase in the future as more information is learned regarding SoClean Device usage among Device Users, including through discovery of customer lists.)

8.      SoClean and its private equity sponsor, DWHP, recklessly (or worse) released SoClean Devices into the marketplace.  Even worse, SoClean, acting as DWHP's alter ego, invited customers to use its devices with Philips RS devices by making multiple claims that its products were "compatible" with the PAP devices manufactured by Philips RS.  SoClean manufactured and marketed the SoClean Devices as safe and effective for cleaning PAP devices, including, by name, the devices manufactured by Philips RS (the "Philips Respironics PAPs").  SoClean also marketed

and sold to consumers adapters that SoClean designed to connect SoClean Devices specifically to Philips Respironics PAPs.

9.      But in reality, the SoClean Devices injected toxic ozone gas into the interiors of Philips Respironics PAPs and also into the homes of Device Users.  The amount of ozone SoClean Devices release is substantial.  Independent laboratory tests conducted in 2019—testing of which SoClean was aware contemporaneously—show that SoClean Devices release ozone at a level that far exceeds federal limits.  For instance, measuring ozone at the end of a SoClean cleaning cycle, testing of the air content of a chamber containing the SoClean Device connected to a PAP found the ozone level, after just one use of the SoClean Device, was more than *560 times* the regulatory limit.  Further testing from Research Triangle Lab in 2021 showed that the SoClean 2 devices emit ozone into the ambient environment at *30 to 40 times* the regulatory limit.[4]  Additionally, as evidenced by FDA testing, unsafe levels of ozone remain in the PAP tank, hose, and mask following the end of a cleaning cycle.  PAP users can then inhale this residual ozone upon use of their PAP device.

10.      In addition, SoClean knew or should have known that its product leaked ozone into the surrounding environment.  SoClean falsely claimed to consumers that all ozone exposure would be limited to a so-called "closed circuit" of the interior of the SoClean device, PAP device, and PAP accessories, precluding any ozone from escaping into the Device User's home.  That was false.  SoClean recklessly (at minimum) ignored the fact that PAP devices contain an air intake system (*i.e.*, a path where air enters the PAP device from the atmosphere).  Ozone escapes that circuit and into the surrounding area whenever ozone is pumped through a PAP.  SoClean also paid inadequate attention to the fact that ozone gas can leak into the environment through

---

[4]      *See* ECF No. 141, ¶¶ 231-237.

connections in SoClean's product loop, such as gaps in the connection of hoses to the PAP and SoClean and product filters.

11.     Ozone causes a lengthy list of health problems including, *inter alia*, lung damage, asthma, COPD, and compromised respiratory immunity—the same conditions alleged by Device Users to have been caused by use of their Recalled Devices.  FDA has expressly warned the public of reports from "patients experiencing cough, difficult breathing, nasal irritation, headaches, asthma attacks and other breathing complaints when ozone gas-based products were used to clean, sanitize or disinfect CPAP devices and accessories."[5]  Similarly, EPA cautions that exposure to even "relatively low amounts" of ozone can cause harm to the human body.[6]  Further, a number of studies have found that ozone exposure is, at a minimum, a contributing cause to several respiratory injuries included among the Qualifying Respiratory Injuries, such as COPD,[7] pulmonary fibrosis,[8] and acute respiratory distress syndrome.[9]

12.     Not only do SoClean Devices expose users of Philips Respironics PAPs to a known toxic gas, SoClean's ozone attacks the foam in the Philips Respironics PAPs, causing or, at the

---

[5]     FDA, *FDA Reminds Patients that Devices Claiming to Clean, Disinfect or Sanitize CPAP Machines Using Ozone Gas or UV Light Have Not Been FDA Authorized* (Feb. 27, 2020), www.fda.gov/news-events/press-announcements/fda-reminds-patients-devices-claiming-clean-disinfect-or-sanitize-cpap-machines-using-ozone-gas-or (last visited Aug. 13, 2024).

[6]     EPA, *Ozone Generators that Are Sold as Air Cleaners*, www.epa.gov/indoor-air-quality-iaq/ozone-generators-are-*sold-air*-cleaners#:~:text=of%20manufacturers%27%20claims., How%20is%20Ozone%20Harmful%3F,ozone%20can%20damage%20the%20lungs (last visited Aug. 13, 2024).

[7]     *See, e.g.*, Hui Gao et al., *A Systematic Review and Meta-Analysis of Short-Term Ambient Ozone Exposure and COPD Hospitalizations*, 17 INT'L J. OF ENV. RESEARCH & PUB. HEALTH 2130 (2020).

[8]     *See, e.g.*, Kerri A. Johansson et al., *Acute Exacerbation of Idiopathic Pulmonary Fibrosis Associated with Air Pollution Exposure*, 43 EUR. RESPIRATORY J. 1124, 1128-29 (2013).

[9]     *See, e.g.*, Marco Confalonieri et al., *Acute Respiratory Distress Syndrome*, 26 EUR. RESPIRATORY. REV. 160116 (2017).

very least, significantly exacerbating foam degradation.  Tellingly, SoClean has never disputed over about three years of litigation that its ozone contributes to foam degradation in Philips Respironics PAPs.  Nor could it.  Independent third-party testing has demonstrated that ozone exposure causes or, at the very least, dramatically accelerates foam degradation in Philips Respironics PAPs.  Independent testing also has demonstrated that ozone exposure results in elevated levels of VOC emissions.  These are the same alleged injury causes (foam degradation, VOCs) asserted against the Philips Defendants by Device Users.

13.     No one has ever endorsed the use of SoClean Devices to clean Philips Respironics PAPs other than SoClean.  Philips RS directed users in its User Manual to clean the device and tubing with "water and a mild liquid dish washing detergent."  The FDA has repeatedly warned SoClean and the public about the harms that ozone poses to their health and their PAP devices.  FDA has indicated there is no reason to use ozone in connection with PAP units, advising PAP users to "follow the cleaning instructions provided by the CPAP's manufacturer, which normally include regular cleaning with soap and water."[10]  In fact, on November 21, 2023, as reflected in an FDA Safety Communication, SoClean initiated a recall in which it was required to introduce an adapter into the market to ensure that ozone would *not* enter the interior of the PAP device.[11]

---

[10]     *See* FDA, *FDA Reminds Patients that Devices Claiming To Clean, Disinfect or Sanitize CPAP Machines Using Ozone Gas or UV Light Have Not Been FDA Authorized* (Feb. 27, 2020), www.fda.gov/news-events/press-announcements/fda-reminds-patients-devices-claiming-clean-disinfect-or-sanitize-cpap-machines-using-ozone-gas-or (last visited Aug. 13, 2024).

[11]     *See* FDA, *Voluntary Recall of SoClean Equipment Intended for Use with CPAP Devices and Accessories:  FDA Safety Communication* (Nov. 21, 2023), https://www.fda.gov/medical-devices/safety-communications/voluntary-recall-soclean-equipment-intended-use-cpap-devices-and-accessories-fda-safety (last visited Aug. 13, 2024).  Notably, SoClean's pending de novo application for the SoClean 3+, if approved, would allow SoClean to market and sell its device only for certain PAP *accessories*, not for the PAP units themselves.

14.     For years, SoClean has known about the destructive properties of ozone, including ambient ozone leakage and foam degradation, yet it hid the risks associated with its ozone-based devices.  SoClean neither disclosed nor attempted to mitigate these risks, instead continuing to market its devices as safe and effective for use with PAP devices, including Philips Respironics PAPs.

15.     For any Qualifying Respiratory Injuries of a settling Device User where the settling Device User also used a SoClean Device, SoClean's negligent and intentionally misleading conduct will have contributed to those injuries through direct ozone inhalation, making SoClean liable in contribution and indemnity for its relative culpability.  Likewise, to the extent the Philips Defendants may in the future bear financial responsibility for any personal injury alleged by non-settling Device Users, if such non-settling Device Users also used a SoClean Device with his or her Recalled Device, SoClean's negligent and intentionally misleading conduct will have contributed to those alleged harms both through direct ozone inhalation and also by accelerating the degradation of the foam and release of particles and VOCs.  SoClean will therefore be liable in contribution and indemnity for its relative culpability in causing those alleged injuries.

16.     But these contribution and indemnification costs should not be borne by SoClean alone.  The irresponsible conduct of SoClean was taken at the express instruction of its corporate parent, SoClean Parent, as well as SoClean Parent's controllers—a network of funds managed by DWHP.  All of these entities are implicated in SoClean's faulty product design and ensuing reckless conduct.

17.     Through acquisition due diligence, DWHP—which esteems itself as specializing in healthcare sector investments—knew or should have known that: (i) exposure to ozone is toxic, (ii) the ozone in SoClean's devices was known to degrade the components of the very PAP devices

SoClean designed them to clean, including Philips Respironics PAPs, (iii) that ozone leaks into the ambient environment and harms users, and (iv) that SoClean was marketing, promoting, and selling its devices without required FDA approval or clearance.

18.     Seeing these risks, DWHP left SoClean undercapitalized and underinsured while loading it with debt to DWHP's benefit.  SoClean became DWHP's alter ego, with DWHP dominating SoClean's affairs without regard to the existence of SoClean as a separate corporate entity, while attempting to insulate itself from any exposure by fictitiously maintaining SoClean as a separate corporation on paper.

19.     Impleading Third-Party Defendants will not prejudice Third-Party Defendants or the relevant Device Users given the current stage of the underlying litigation and the recently announced settlement.  On the other hand, Third-Party Plaintiffs will suffer prejudice if Third-Party Defendants are not impleaded into this action.  As demonstrated throughout this pleading, there is substantial evidence that Third-Party Defendants are responsible, either in whole or at least in part, for liability alleged by those Device Users who used SoClean Devices.  *See* fn.1 above.

20.     For the reasons set forth in the briefing leading to the Court's entry of Pretrial Order No. 31, resolving Third-Party Defendants' liability in this proceeding will enhance judicial efficiency.

21.     Third-Party Defendants' negligent and intentionally misleading conduct has contributed to the negligence claims for which the Philips Defendants are bearing or may in the future bear financial responsibility, making the Third-Party Defendants liable in contribution and indemnity for their relative culpability.

## THE PARTIES

22.     Third-Party Plaintiff Koninklijke Philips N.V. is a Dutch holding company with its principal place of business in Amsterdam, the Netherlands.

23.     Third-Party Plaintiff Philips North America LLC is a Delaware limited liability company with its principal place of business in Massachusetts.  Its sole member is Philips Holding USA, Inc.

24.     Third-Party Plaintiff Philips Holding USA, Inc. is a Delaware holding company with its principal place of business in Massachusetts.

25.     Third-Party Plaintiff Philips RS North America LLC is a Delaware limited liability company headquartered in Pennsylvania.  Its sole member is Philips RS North America Holding Corporation.

26.     Third-Party Plaintiff Philips RS North America Holding Corporation is a Delaware holding company with its principal place of business in Massachusetts.

27.     Third-Party Defendant SoClean, Inc. ("SoClean") is a Delaware corporation with its principal place of business in Peterborough, New Hampshire.  SoClean sold its products in interstate commerce throughout the United States.

28.     Third-Party Defendant DW Management Services, LLC, d/b/a DW Healthcare Partners, is a Delaware company with its principal place of business in Park City, Utah.  The members of DWHP reside in Park City, Utah, and Toronto, Canada.

## JURISDICTION AND VENUE

29.     This Court has supplemental jurisdiction over the subject matter of this Third-Party Complaint pursuant to 28 U.S.C. § 1367(a).  The claims in this Third-Party Complaint are so related to and intertwined with the claims at issue in the remainder of the case, over which the

Court has original jurisdiction under 28 U.S.C. § 1332, that they form part of the same "case or controversy" under Article III of the United States Constitution.

30.     Because the claims asserted in this Third-Party Complaint are closely related to and intertwined with the claims in the main cases filed by Device Users against the Philips Defendants, venue is also proper in this Court for pretrial proceedings, and venue is proper in each of the courts in which the Device Users' cases were originally filed.  *See, e.g.*, *O'Brien v. Allen*, 137 F. Supp. 691 (W.D. Pa. 1955) ("The provisions of Sec. 1391(a) have no application to a third-party defendant . . . .  [A] third-party proceeding is ancillary to the main action and the restrictions on venue do not apply to it.").   By asserting that venue is proper for the purposes of pretrial proceedings with respect to this Third-Party Complaint pursuant to 28 U.S.C. § 1407, the Philips Defendants do not waive their right to request that the cases filed against them be transferred back to their respective transferor courts for trial.

## FACTUAL ALLEGATIONS

### I.     Ozone and Its Risks When Inhaled

31.     Ozone consists of three oxygen atoms.  As EPA has explained, ozone "cleans" by shedding one of its three oxygen atoms, which bonds with the molecules of other substances, altering their chemical compositions.[12]   This reaction, known as oxidation, can kill viruses, bacteria, and odors.  But, as EPA stated in relaying the dangers of using ozone-based products indoors, "[t]he same chemical properties that allow high concentrations of ozone to react with

---

[12]     EPA, *Ozone Generators that Are Sold as Air Cleaners*, www.epa.gov/indoor-air-quality-iaq/ozone-generators-are-*sold-air*-cleaners#:~:text=of%20manufacturers%27%20claims., How%20is%20Ozone%20Harmful%3F,ozone%20can%20damage%20the%20lungs (last visited Aug. 13, 2024).

organic material outside the body give it the ability to react with similar organic material that makes up the body, and potentially cause harmful health consequences."[13]

32.     As advised by EPA and FDA and incorporated into federal regulations mandating ozone limits for medical devices, "for ozone to be effective as a germicide, it must be present in a concentration far greater than that which can be safely tolerated by man and animals."[14]

33.     Among other harms, ozone can harm the respiratory system and permanently damage the lungs.  For people already in poor health (*e.g.*, many of the individuals who may be prescribed PAP devices), repeated exposure to ozone can increase the risk of dying.[15]  While people with chronic health conditions are particularly susceptible to ozone, ozone also can create health problems in otherwise healthy people.[16]

34.     Even relatively low amounts of ozone can result in coughing, throat irritation, shortness of breath, and chest pain.[17]  These symptoms can occur within minutes of even a single exposure.[18]

---

[13]     *Id.*

[14]     21 C.F.R. § 801.415(a).

[15]     CONN. DEP'T OF PUB. HEALTH, *Ozone Generators:  What You Need To Know*, portal.ct.gov/-/media/Departments-and-Agencies/DPH/dph/environmental_health/eoha/pdf/ozonegeneratorfactsheetpdf.pdf (last visited Aug. 13, 2024).

[16]     EPA, *Ozone Generators that Are Sold as Air Cleaners*, www.epa.gov/indoor-air-quality-iaq/ozone-generators-are-sold-air-cleaners#:~:text=of%20manufacturers%27%20claims., %20How%20is%20Ozone%20  Harmful%3F,ozone%20can%20damage%20the%20lungs  (last visited Aug. 13, 2024).

[17]     *Id.*

[18]     NY STATE DEP'T OF HEALTH, *Ozone Generators as Indoor Cleaners*, www.health.ny.gov/environmental/indoors/air/ozone_generating_air_cleaners.htm#:~:text=Ozon e%20can%20react%20with%20other,health%20effect%20is%20less%20certain  (last visited Aug. 13, 2024).

35.     Ozone also causes and/or worsens asthma, increases susceptibility to respiratory infections (including by compromising the body's ability to fight those infections), inflames lung tissue, and decreases lung function.[19]

36.     Studies published in peer-reviewed journals have found that ozone exposure can cause or exacerbate numerous severe respiratory conditions, such as pulmonary fibrosis, acute respiratory distress syndrome, and COPD.[20]

37.     The federal regulation dictating maximum ozone levels for medical devices expressly recognizes that inhalation of ozone can cause sufficient harm to the lungs to result in pulmonary edema, which can result in death.[21]

38.     In addition to a host of pulmonary-related issues, ozone exposure also causes other serious health conditions.   Federal regulations report the potential for ozone to result in "undesirable physiological effects on the central nervous system, heart, and vision."[22]   For

---

[19]     EPA, *Ozone Generators that Are Sold as Air Cleaners*, www.epa.gov/indoor-air-quality-iaq/ozone-generators-are-sold-air-cleaners#:~:text=of%20manufacturers%27%20claims., %20How%20is%20Ozone%20Harmful%3F,ozone%20can%20damage%20the%20lungs   (last visited Aug. 13, 2024); EPA, *Health Effects of Ozone Pollution*, https://www.epa.gov/ground-level-ozone-pollution/health-effects-ozone-pollution#:~:text=Some%20studies%20in% 20locations%20with,many%20causes%20of%20asthma%20development (last visited Aug. 13, 2024); Claire E. Atkinson et al., *Ozone in the Development of Pediatric Asthma and Atopic Disease*, 42 IMMUNOLOGY & ALLERGY CLINICS OF N. AM. 701 (2022).

[20]     *See, e.g.*, Hui Gao et al., *A Systematic Review and Meta-Analysis of Short-Term Ambient Ozone Exposure and COPD Hospitalizations*, 17 INT'L J. OF ENV. RESEARCH & PUB. HEALTH 2130 (2020); Kerri A. Johansson et al., *Acute Exacerbation of Idiopathic Pulmonary Fibrosis Associated with Air Pollution Exposure*, 43 EUR. RESPIRATORY J. 1124 (2013); Marco Confalonieri et al., *Acute Respiratory Distress Syndrome*, 26 EUR. RESPIRATORY. REV. 160116 (2017).

[21]     *See* 21 C.F.R. § 801.415(b).

[22]     *Id.*

example, breathing ozone for even a short period can worsen symptoms in people with heart disease.[23]

39.     Ozone also "can react with other chemicals in the air to produce additional chemicals and fine particles that can cause, among other health conditions, further irritation to the eyes, nose, throat, and lungs."[24]

40.     Ozone increases the total number of VOCs in the air by combining with other common household chemicals to form "dangerous reaction products" that can be inhaled.[25]  As advised by the Connecticut Department of Health:

> Ozone does not remove chemical contaminants from the air, but in fact, increases chemical air pollution by combining with chemicals typically found in the home, office, or school, such as ordinary household cleaners, plug-in type air fresheners, and personal hygiene products.  Many of these products contain a class of volatile organic compounds (VOCs) called terpenes . . . .  Ozone combines with terpenes to form dangerous reaction products (including formaldehyde, a known human carcinogen and respiratory tract irritant) which may be even more irritating than the parent chemicals.[26]

41.     Although recovery is possible from the harmful effects of short-term exposure to low levels of ozone, health effects are more serious—and recovery less certain—with higher levels or from longer exposures, such as exposure from an ozone-generating device intended and

---

[23]     NY STATE DEP'T OF HEALTH, *Ozone Generators as Indoor Cleaners,* www.health.ny.gov/environmental/indoors/air/ozone_generating_air_cleaners.htm#:~:text=Ozon e%20can%20react%20with%20other,health%20effect%20is%20less%20certain (last visited Aug. 13, 2024).

[24]     *See id.*

[25]     CONN. DEP'T OF PUB. HEALTH, *Ozone Generators:  What You Need To Know,* portal.ct.gov/-/media/Departments-and-Agencies/DPH/dph/environmental_health/eoha/pdf/ozonegeneratorfactsheetpdf.pdf (last visited Aug. 13, 2024).

[26]     *Id.*

-14-

marketed for daily use (*i.e.*, a SoClean Device).[27]

## II.    SoClean's Development of a Faulty PAP Cleaning Machine Using Ozone as Its Operative Ingredient

42.    PAP users must regularly clean their PAP device and accessories.    PAP manufacturers, including Philips RS, recommend cleaning their PAP devices with soap and water. This process can be time-consuming.  Seeing an opportunity, SoClean purported to offer a more convenient alternative.

43.    SoClean began marketing the SoClean Devices expressly for use with PAP products.  Each of these devices operates via a similar process, designed to connect the SoClean Device directly to the user's PAP machine.  Once connected, the SoClean Device pumps ozone gas through not only the PAP's accessories but also the PAP itself.  At least until very recently, the technology undergirding the machine model has remained relatively constant throughout SoClean's various product models.[28]

44.    By design, SoClean's cleaning process floods the PAP tank, hose, and mask with ozone.  As SoClean has described:

---

[27]    *See* EPA, *Ozone Generators that Are Sold as Air Cleaners*, www.epa.gov/indoor-air-quality-iaq/ozone-generators-are-sold-air-cleaners#:~:text=of%20manufacturers%27%20claims., %20How%20is%20Ozone%20Harmful%3F,ozone%20can%20damage%20the%20lungs    (last visited    Aug.    13,    2024);    SoClean    2    User    Manual    (2019),    accessible    at https://www.directhomemedical.com/accessories/soclean-2-cpap-cleaner-sanitizer-manual.pdf ("The SoClean 2 attaches to equipment and runs daily . . . .").

[28]    As noted above, on November 21, 2023, SoClean initiated a recall in which it was required to introduce an adapter into the market to ensure that ozone would *not* enter the interior of the PAP device.  *See* FDA, *Voluntary Recall of SoClean Equipment Intended for Use with CPAP Devices and Accessories:  FDA Safety Communication* (Nov. 21, 2023), https://www.fda.gov/medical-devices/safety-communications/voluntary-recall-soclean-equipment-intended-use-cpap-devices-and-accessories-fda-safety (last visited Aug. 13, 2024).  Further, SoClean's pending de novo application for the SoClean 3+, if approved, would allow SoClean to market and sell its device only for certain PAP *accessories*, not for the PAP units themselves.

> SoClean products generate and pump ozone through the supply tube and
> into the humidifier reservoir, cleaning not only the water, but also the inner
> walls of the reservoir.  The ozone then moves through the CPAP hose,
> eliminating potentially harmful pathogens in the process.  Ozone also passes
> in and out of the mask, cleaning it in the same manner as the hose and
> reservoir.  When the short cleaning cycle is over, the ozone gas exits the
> chamber through a special filter that converts it back into common
> oxygen.[29]

45.     SoClean advises PAP users that cleaning with ozone for a "duration of 12 minutes is required to achieve the most effective maintenance."[30]   In its User Manual, SoClean recommends longer cleaning times than usual for PAP users in hot, humid environments, instructing them:  "If you are in a climate with high humidity and temperature, a longer disinfecting cycle might be necessary."[31]  Accordingly, SoClean users in hot, humid environments expose their PAP devices to even higher levels of ozone if following SoClean's instructions for use.

46.     The SoClean cleaning process purports to be a "closed loop."  The ozone gas is fed into a PAP through a supply tube, is supposed to fill and clean the humidifier reservoir (if a humidifier is used), then enter the PAP, and then exit the PAP through the PAP's hose and mask back into the SoClean generator, where—SoClean claims—it is converted into common oxygen.

47.     But one of the "dirty secrets" of the SoClean Device is that its loop is not actually closed.  Ozone gas created by the SoClean Device can and does, in fact, leak into the surrounding environment.  By design, PAP devices include an open pathway between its air intake (where the air enters the PAP to be pressurized before being gently pushed to the user) and its air outlet (where

---

[29]     Second Amended Complaint ¶ 58, *In re: SoClean, Inc., Mktg., Sales Pracs. & Prods. Liab. Litig.*, 22-MC-00152-JFC (W.D. Pa. filed Oct. 10, 2022), ECF No. 211.

[30]     SoClean 2 User Manual, accessible at https://cdn.ziftrshop.com/kcpwezg7nt/ A000330_11_Rev_C_SC1200_Manual_CA_081121_ENG_FR.pdf (last visited Aug. 13, 2024).

[31]     SoClean 2 User Manual, accessible at https://shop.aeroflowsleep.com/amfile/file/ download/file/231/product/2232/ (last visited Aug. 13, 2024).

the PAP face mask and SoClean Device connect to the PAP). Ozone that enters the PAP's air outlet travels through the open pathway and can escape through the air-intake opening, thereby escaping the "loop."

48.     Ozone leaks also can occur elsewhere, including through tubing connections and filters, allowing ozone to reach levels capable of harming the PAP user. FDA has noted that ozone leaks can "occur at tubing connections, filters or through containers used to house CPAP accessories." Accordingly, FDA cautions users that "ozone gas in the room where the devices are used may temporarily rise to unsafe levels especially if the room is small or not well ventilated."[32]

49.     In addition to leaks, use of SoClean Devices exposes PAP users to residual ozone that remains in the PAP tank, hose, and mask after completion of a cleaning cycle. The PAP user may unknowingly inhale this residual ozone after cleaning their PAP device.

50.     Worse still, in order for the SoClean Device to even attempt to disinfect a PAP device, it needs to generate ozone in levels far in excess of federal limits. Due to the health risks posed by ozone, medical devices that generate ozone must establish compliance with FDA regulations setting maximum acceptable levels of ozone.[33] The law requires ozone output of indoor medical devices to be no more than 0.05 part per million (ppm) by volume of air.[34]

---

[32]     FDA, *FDA Reminds Patients that Devices Claiming To Clean, Disinfect or Sanitize CPAP Machines Using Ozone Gas or UV Light Have Not Been FDA Authorized* (Feb. 27, 2020), www.fda.gov/news-events/press-announcements/fda-reminds-patients-devices-claiming-clean-disinfect-or-sanitize-cpap-machines-using-ozone-gas-or (last visited Aug. 13, 2024).

[33]     *See* FDA's Maximum Acceptable Level of Ozone Rule, 21 C.F.R. § 801.415 (2019), which took effect in 1974; FDA Final Rulemaking: Ozone Generators and Other Devices Generating Ozone, 39 Fed. Reg. 13773-74 (Apr. 17, 1974).

[34]     21 C.F.R. § 801.415(c).

51.     In 2020, in connection with FDA's post-market safety concerns, FDA conducted lab testing of ozone-based cleaning devices, of which SoClean is the self-described "dominant" market supplier.  As reported by FDA, the "testing demonstrated ozone-using disinfection devices generated ambient levels of ozone above limits considered safe for human exposure."[35]  The FDA testing also evidenced that ozone levels remained elevated in PAP devices well after a cleaning cycle.  Test results show that "ozone levels inside of the CPAP equipment can be above safe limits even several hours after cleaning is completed."[36]

52.     FDA is not alone in its findings that SoClean Devices exceed regulatory limits on ozone generation and release.  Earlier lab tests, conducted by Research Triangle Laboratories, were filed in federal court in a separate litigation against SoClean.  The 2019 tests, requested by a manufacturer of UV-based PAP cleaners (as opposed to ozone-based), also show that SoClean Devices generate and release ozone substantially in excess of federal limits.[37]  Upon the SoClean Device's automatic shutoff at the end of the recommended cleaning cycle, ozone within the Teflon test chamber measured 28 ppm, or 560 times the regulatory limit.  Another sample was collected following the recommended two-hour waiting period, and the ozone level measured 3.0 ppm—still 60 times greater than the levels deemed safe by FDA.[38]

---

[35]     FDA, *FDA Reminds Patients that Devices Claiming To Clean, Disinfect or Sanitize CPAP Machines Using Ozone Gas or UV Light Have Not Been FDA Authorized* (Feb. 27, 2020), www.fda.gov/news-events/press-announcements/fda-reminds-patients-devices-claiming-clean-disinfect-or-sanitize-cpap-machines-using-ozone-gas-or (last visited Aug. 13, 2024).

[36]     FDA, *CPAP Machine Cleaning:  Ozone, UV Light Products Are Not FDA Approved*, www.fda.gov/consumers/consumer-updates/cpap-machine-cleaning-ozone-uv-light-products-are-not-fda-approved (last visited Aug. 13, 2024).

[37]     *See* Complaint, Ex. E, *3B Medical, Inc. v. SoClean, Inc.*, Case No. 1:19-cv-03545-KPF (S.D.N.Y. filed Apr. 22, 2019).

[38]     *Id.*

53.     Later testing by Research Triangle Laboratories in 2021 found that the SoClean 2, when used as directed, caused ozone to be released into the ambient environment through the CPAP at levels of 1.5 ppm: *30 to 40* times the regulatory limit.[39]

54.     In line with its test results, to date, FDA has not approved or cleared for sale any ozone-based PAP cleaning device, including those manufactured by SoClean.  While FDA is considering a *de novo* application for the SoClean 3+, the SoClean 3+ is designed for use with certain PAP accessories *exclusively*, not PAP units themselves.

55.     In November 2023, SoClean announced an "URGENT" "Medical Device" field correction relating to its SoClean 2 and SoClean 3 product models.  As part of the field correction, SoClean informed users it was revising its labeling and instructions to include:

> Additional clarity and consistency regarding that the SoClean2 and SoClean3 are not intended to replace CPAP manufacturers' cleaning instructions but rather are to be used to supplement cleaning procedures for home use CPAP ***masks and tubing***.

> With each SoClean filter purchase, SoClean is supplying a complementary (no additional cost) Hose and Mask Adapter, which facilitates use of the SoClean2 and SoClean3 equipment ***without ozone entering the CPAP***.[40]

56.     As admitted by SoClean, the field correction was aimed at "reducing potential risks associated with the previous device design and labeling."[41]  Manuals for the SoClean Devices now reflect that they are to be used *exclusively* with PAP accessories (*e.g.*, hoses and masks), rather than PAPs themselves.[42]

---

[39]     *See* ECF No. 141, ¶¶ 231-237.

[40]     SoClean, *URGENT Medical Field Correction*, www.soclean.com/field-correction (last visited Aug. 13, 2024) (emphasis added).

[41]     *Id.*

[42]     *Compare* SoClean, SoClean 2 User Manual (2023), accessible at https://cdn.ziftrshop.com/sidns4muvl/SC2-IFU-C000219-11-Rev-D-SC2-IFU-111423-ECO-2.pdf, *with*

57.     Tellingly, despite long knowing the potential harm its products posed, SoClean only disclosed these risks after being directed to do so by FDA.

58.     Shortly thereafter, FDA issued its own Safety Communication regarding SoClean Devices, including additional information not provided in SoClean's field correction notice.  FDA took the opportunity to remind PAP users that SoClean Devices were not in compliance with FDA regulations.  It stated:  "The FDA continues to work with SoClean to bring the firm into compliance with FDA requirements."[43]  FDA also reiterated risks associated with ozone.  Specifically, FDA explained that "for ozone to be effective in destroying harmful bacteria [as marketed by SoClean], it must be present at a concentration above levels considered safe for humans."[44]

59.     For all the time before SoClean's November 2023 field correction, SoClean allowed its ozone to reach the interiors of Device Users' PAPs, as well as the air they breathed. SoClean marketed and sold products with the potential to harm the very devices they would supposedly clean, as well as the human users of those devices, without any warnings of these foreseeable risks.

III.    **SoClean Sold—and Continues to Sell—Illegal SoClean Devices for Use with PAPs**

60.     Despite all the harms associated with ozone cleaning and a lack of FDA approval or clearance, SoClean has persisted in selling the SoClean Devices to the public.  According to

---

SoClean, SoClean 2 User Manual (2019), accessible at https://www.directhomemedical.com/accessories/soclean-2-cpap-cleaner-sanitizer-manual.pdf ("The SoClean 2 attaches to equipment and runs daily . . . .").

[43]     FDA, *Voluntary Recall of SoClean Equipment Intended for Use with CPAP Devices and Accessories: FDA Safety Communication* (Nov. 21, 2023), www.fda.gov/medical-devices/safety-communications/voluntary-recall-soclean-equipment-intended-use-cpap-devices-and-accessories-fda-safety (last visited Aug. 13, 2024).

[44]     *Id.*

SoClean, "SoClean is the dominant market leader for ozone cleaners, accounting for the vast majority of sales."[45]  SoClean has marketed its devices as appropriate for use with all major brands of PAP devices, expressly including the Recalled Devices manufactured by Philips RS.

61.     SoClean has also manufactured and sold to consumers adapters that it specifically designed to make its ozone machines purportedly "compatible" with PAP devices, including PAP devices manufactured by Philips RS.  SoClean, for example, created and posted on its website a compatibility chart that included Philips trademarks and identified multiple Philips Respironics PAPs, including Recalled Devices, as "compatible with free adapter!" with SoClean Devices.[46]

62.     SoClean continued to market its ozone-based devices as safe and effective for use with PAP devices even after repeated warnings from FDA, over the course of several years, that such claims were unsubstantiated and illegal.

63.     FDA eventually took its warnings public.  In February 2020, FDA issued a Safety Communication informing patients and health care providers that devices claiming to clean, sanitize, or disinfect PAP devices or accessories using ozone "are not legally marketed for this use by FDA in the U.S., and as such, their safety and effectiveness for use with CPAP devices and accessories is unknown."[47]  Undeterred, SoClean persisted in selling its devices.

---

[45]     Second Amended Complaint ¶ 245, *In re: SoClean, Inc., Mktg., Sales Pracs. & Prods. Liab. Litig.*, 22-MC-00152-JFC (W.D. Pa. filed Oct. 10, 2022), ECF No. 211.

[46]     Internet Archive Wayback Machine, *CPAP Machine & SoClean Compatibility Chart | SoClean CPAP Cleaning Solutions*, https://web.archive.org/web/20190621210744/https://www.soclean.com/support/soclean-support/soclean-compatibility/ (last visited Aug. 13, 2024, archived June 21, 2019).

[47]     FDA, *FDA Reminds Patients that Devices Claiming To Clean, Disinfect or Sanitize CPAP Machines Using Ozone Gas or UV Light Have Not Been FDA Authorized* (Feb. 27, 2020), www.fda.gov/news-events/press-announcements/fda-reminds-patients-devices-claiming-clean-disinfect-or-sanitize-cpap-machines-using-ozone-gas-or (last visited Aug. 13, 2024).

64.     Even after FDA demanded that SoClean remove from its website and other promotional channels any statement that its products were intended for use with PAPs, SoClean ensured that U.S. consumers can still see SoClean's assertions that its products are meant to be used with Philips RS's PAPs.  An online search for "SoClean" currently yields results containing "compatibility" claims expressly prohibited by FDA.  For example, portions of the current SoClean.com website still provide the above-referenced compatibility chart and compatibility tool characterizing SoClean as compatible for use with Philips Respironics PAPs, including its DreamStation models.  SoClean's site asks:  "Is your SoClean Compatible?"  The site then provides only two choices with respect to each pictured "Philips Respironics" model listed: "Compatible!" or "Compatible with free adapter!"[48]

65.     Similarly, to this day, DWHP identifies and describes SoClean on its website's "our companies" page as creator of the "world's first automated CPAP cleaner and sanitizer."[49]

66.     SoClean designed defective products and, even after knowing the harm those products posed to their purchasers, SoClean failed to warn PAP users about the potential risks of exposure to ozone.  SoClean's negligent and intentionally misleading conduct has contributed to the harms alleged and for which the Philips Defendants (i) are bearing financial responsibility through the Settlement Fund and (ii) may continue to bear financial responsibility in the future through any continued Device User litigation, making the Third-Party Defendants liable in contribution and indemnity for their relative culpability.

---

[48]     SoClean, *CPAP Machine & SoClean Compatibility Chart | SoClean CPAP Cleaning Solutions*, www.soclean.com/uk/support/soclean-support/soclean-compatibility (last visited Aug. 13, 2024).

[49]     DW Healthcare Partners, *Our Companies*, www.dwhp.com/companies/#close (last visited Aug. 13, 2024) ("SoClean Inc. is the creator of the world's first automated CPAP cleaner and sanitizer, an innovative device that naturally sanitizes CPAP equipment.").

IV.     **SoClean Devices Also Degrade the Foam Used in Philips Respironics PAPs**

67.    Independent of the exposure of Device Users to a toxic gas, use of SoClean Devices by Philips Respironics PAP Device Users accelerates and exacerbates the degradation of the PE-PUR foam used in their Philips Respironics PAPs, as substantial testing results and other evidence demonstrates.

68.    One mechanism of PE-PUR foam degradation is hydrolysis, the chemical breakdown of foam due to exposure to moisture and accelerated further at high temperatures. Hydrolysis results in cleavage of the PE-PUR polymer chain and a breakdown of the foam's mechanical properties. Under normal use conditions, hydrolysis is an extremely slow process that rarely occurs within the standard service life of a PAP device. The effects of hydrolysis on PE-PUR foam, however, can be exacerbated when other stressors are introduced, such as exposure to ozone cleaning. Because ozone is such a strong oxidizer, its introduction to the foam directly breaks certain chemical bonds present in the foam, resulting in additional polymer chain cleavage pathways, which allows for the rapid acceleration of the hydrolysis process. As a result, ozone causes, or at the very least accelerates, degradation through hydrolysis.

69.    In addition, ozone also directly causes foam degradation through a process called oxidation, the same process SoClean claims to use when cleaning PAPs. Oxidation breaks carbon bonds found in polymers, such as PE-PUR, leading those polymers to degrade.[50] Polyurethane in

---

[50]    Richmond Lee & Michelle L. Coote, *Mechanistic Insights into Ozone-Initiated Oxidative Degradation of Saturated Hydrocarbons and Polymers*, PHYSICAL CHEMISTRY CHEM. PHYSICS 24663 (2016).

particular is subject to "ozonolytic degradation" from ozone exposure, particularly at higher levels of ozone exposure such as those used for sterilization.[51]

70.     Ozone exposure as a cause, accelerator and/or exacerbator of foam degradation has been corroborated by SoClean's internal documents, several tests conducted by independent third-party laboratories, and visual inspections of Recalled Devices returned from the field.

71.     SoClean has long known but kept secret that its ozone-based devices damage the foam used inside PAP devices.  For years, SoClean was aware of but kept secret the potential for harm, and actual harm, caused by ozone when used with various materials, including foam and other materials found in PAP devices.  SoClean deliberately concealed this information.

72.     In April 2020, SoClean's Director of Engineering circulated a report discussing potential messaging around ozone's harmful impact on various materials.  The document was based on internal testing of a device used to disinfect items like cell phones and keys.  SoClean confirmed in the report that ozone could degrade foam.

73.     On March 10, 2022, specifically with respect to the Philips RS Recalled Devices, the FDA issued a public notification that "use of ozone cleaners to disinfect or sanitize the Recalled Products may exacerbate the breakdown of the foam."[52]  The FDA even instructed Philips RS to increase its warnings with respect to ozone by "[m]aintain[ing] prominently displayed information on the risk of using ozone cleaners on the Recalled Products on the Philips Recall main landing page."[53]

---

[51]     Fengwei Xie et al., *Degradation and Stabilization of Polyurethane Elastomers*, 90 PROGRESS IN POLYMER SCI. 211 (2019); Charles S. Schollenberger & K. Dinbergs, *A Study of the Weathering of an Elastomeric Polyurethane*, 1 POLYMER ENG'G & SCI. 31 (1961).

[52]     FDA, 518(A) NOTIFICATION ORDER (March 10, 2022), accessible at https://www.fda.gov/media/156811/download (last visited Aug. 13, 2024).

[53]     *Id.*

74.     Philips RS has also retained multiple independent, certified laboratories to conduct various tests of its devices, including assessments of whether the use of an ozone-based cleaning device accelerates or exacerbates foam degradation within the Recalled Devices.  For example, in early 2021, third-party consultant Scottsdale Scientific, LLC performed an analysis of accelerated testing in order to study the impact of ozone-based cleaning devices on the deterioration of the foam (the "Hawkins Phase I Study").  For this study, samples of PE-PUR foam were exposed to a set of high temperatures and humidity levels for varying lengths of time.  The impact of ozone was studied by subjecting half of the samples also to ozone on a schedule matching typical use of an aftermarket cleaning device, such as a SoClean device, while the other samples ("no-ozone") were not exposed to ozone.  To measure the rate of foam degradation, the rate at which the foam lost its tensile strength was used as a proxy (*i.e.*, the duration at which the foam's tensile strength was reduced to half of its starting value, or the "half-life" for short).

75.     After comparing the half-life for tensile strength of the ozone group and the no-ozone group, the Hawkins Phase I Study concluded, █████████████████████████

███████████████████████████████████████████

█████████ (emphasis added).

76.     Visual inspection of PAP devices returned from the field provides further evidence that the use of ozone cleaning devices is a significant contributor to foam degradation.  To determine the prevalence of foam degradation, Philips RS performed a formal visual inspection, collecting images of the state of foam on ████ returned/used DreamStation 1 devices from the United States and Canada.  The visual inspection determined whether foam had degraded or not, with an independent secondary reviewer validating those assessments.  Philips RS then conducted

data analyses of two groups of devices: devices for which the user reported no use of ozone cleaning, and devices for which the user reported use of ozone cleaning.

77.     In the United States and Canada (where ozone-based cleaning devices are most prevalent), of the group of patients who reported no use of ozone cleaning, ██████ of their returned devices showed significant visual foam degradation/volume reduction. By contrast, of the group of patients who reported use of ozone cleaning devices, ████ of their returned devices showed significant visual foam degradation/volume reduction. Therefore, devices for which the user self-reported ozone use were █████████████████ to have significant visual foam degradation/volume reduction than those where the user reported no ozone use. In addition, only approximately █████ and █████ of returned devices from Europe and Japan, respectively—regions where ozone cleaning is *not* prevalent—had significant visual degradation/volume reduction. ████████████████████████████

████████████████████████████████████

████████████████████████

78.     These tests and observations are also consistent with additional laboratory testing conducted following the Philips RS recall. In March 2023, third-party consultant Eurofins Materials Science Netherlands B.V. performed testing on DreamStation 1 devices after controlled ozone exposure (the "Eurofins Study"). The labs evaluated the visual state of the foam and tested whether certain compounds (in particular, ethylene glycol and diethylene glycol) were released from the devices after up to 1,300 SoClean ozone cleaning cycles (each cycle simulating one night of use followed by SoClean ozone cleaning). As a comparison, the Eurofins study used a control group that was *not* subjected to any ozone cleaning. Both groups were exposed to ordinary environmental oxygen. The recorded compounds listed above are known byproducts of PE-PUR

foam degradation, so in the event SoClean Devices do not cause or exacerbate degradation, the testing would have shown not only intact foam but also similar levels of those compounds between the control group and the test devices.

79.     ████████████████████████████     The Eurofins Study ██████



For instance, after 1,300 cycles, emission of diethylene glycol from the control group ██████

80.     In short, testing and analysis related to the impact of ozone on foam degradation clearly evidence that the use of SoClean's ozone cleaners causes, or at the very least significantly exacerbates or accelerates, foam degradation in the Recalled Devices.

81.     SoClean designed defective products and, even after knowing the harm those products posed to the very devices they were intended to "clean," SoClean failed to warn Device Users. SoClean's negligent and intentionally misleading conduct has contributed to the harms alleged and for which the Philips Defendants (i) are bearing financial responsibility through the Settlement Fund and (ii) may continue to bear financial responsibility in the future through any continued Device User litigation, making the Third-Party Defendants liable in contribution and indemnity for their relative culpability.

IV.    **DWHP's Domineering Management and Undercapitalization of SoClean**

82.    DWHP has exercised its ownership of SoClean to render SoClean its alter ego, controlling SoClean's business decisions, both large and small.  DWHP ran SoClean to its own benefit, treating SoClean as its personal piggy bank.  Ignoring the clear risks associated with SoClean's business, DWHP left SoClean undercapitalized and underinsured, attempting to insulate DWHP from any fallout by maintaining on paper the existence of SoClean as a separate corporate entity.

83.    DWHP is a "healthcare-focused private equity firm."[54]  The front page of its website prominently features its sophistication in the sector:  "We know healthcare."[55]  According to its website, DWHP is run by "seasoned healthcare executives with more than 120 years of combined industry experience."[56]  And DWHP claims that its "investment focus allows us to better understand and monitor the *regulatory climate*, pending and current reimbursement issues, and *government policies* and trends that impact the healthcare marketplace."[57]

84.    Given DWHP's announced sophistication in healthcare and healthcare regulation, DWHP knew or should have known from even a basic level of diligence at of the time of its SoClean acquisition that SoClean's ozone-based cleaning machines were not FDA approved or cleared for use with PAPs and therefore illegal to promote or sell for use with PAP devices.  In other words, DWHP knew or should have known that SoClean's business and primary source of

---

[54]    DW Healthcare Partners, *DWHP Home,* www.dwhp.com/ (last visited Aug. 13, 2024).

[55]    *Id.*

[56]    DW Healthcare Partners, *DW Healthcare partners raises founder fund with 210 million of capital commitments*, https://www.dwhp.com/dw-healthcare-partners-raises-founders-fund-with-210-million-of-capital-commitments/ (last visited Aug. 13, 2024).

[57]    DW Healthcare Partners, *Adding Value*, www.dwhp.com/adding-value/ (last visited Aug. 13, 2024) (emphases added).

income was predicated on illegal conduct and could be subject to an enforcement action at any time. Further, DWHP knew or should have known from its diligence that ozone was known to degrade the components of the PAP devices they were meant to clean, further placing SoClean's business at risk. DWHP thus attempted to ensure this risk would only be to SoClean by maintaining SoClean on paper as a separate corporation with little capital.

85.    Notwithstanding this risk profile, DWHP acquired a controlling interest in SoClean from SoClean's original shareholders, including its current management, for $121 million on December 20, 2017.[58] About $86.5 million of this went to SoClean's former owners in cash, with another $32.6 million in newly issued stock. Only $1.6 million of the purchase price went to SoClean's working capital to operate the business. And the acquisition was accounted for on SoClean's balance sheet by dramatically increasing intangible assets and goodwill overnight, even though both were subject to immediate impairment because both were based on SoClean's illegal business. The accounting for the transaction created two sizeable new assets (i.e., intangible assets and goodwill) to draw down on SoClean's assets while loading the company up with debt. Overnight, with only $1.6 million invested in SoClean's operations, SoClean supposedly increased dramatically in value. But those intangible assets and that goodwill were built upon the premise that SoClean had a viable and lawful business. And, when SoClean's auditors actually evaluated these assumptions, management was required to write down these assets.[59]

---

[58]    *See* Complaint, *SoClean2 Pty Ltd* v. *SoClean, Inc.*, 4:18-cv-40054 (D. Mass filed Apr. 13, 2018); Answer, *id.* (D. Mass filed Oct. 2, 2018), ¶ 70 (SoClean admitting that "[o]n or about December 21, 2017, DW Healthcare, a Toronto-based private equity firm, acquired a **controlling interest** in [SoClean]") (emphasis added).

[59]    For allegations related to DWHP and the DW Funds, *see, e.g.*, MDL 3021, ECF No. 507, ¶¶ 62-73.

86.     Further, DWHP structured its acquisition in a manner that saddled SoClean with enormous debt that left SoClean in a precarious financial condition.  DWHP financed its acquisition through a senior credit facility that imposed $60 million in debt on SoClean, with liens on *all* of SoClean's assets and that of its parent.  The creditor, White Oak Healthcare Finance, LLC, required that the $60 million in financing be secured as senior debt because of SoClean's lack of liquidity, regulatory risk, and other material financial debts and obligations.

87.     Less than a year after the acquisition, DWHP increased SoClean's debt by another $33 million, also borrowed from White Oak Healthcare Finance.  Again, the proceeds of this transaction were used to make distributions to SoClean's shareholders (i.e., to DWHP), not to improve the SoClean business, the safety of its products, or its financial position.  More debt simply allowed more distributions to DWHP, thereby ensuring the quick recoupment of fully half of its investment, regardless of whether SoClean survived as a going concern.  SoClean received no benefit from this distribution to DWHP; instead, it was only further saddled with 50% more debt, with no offsetting benefit.  There was no reason for SoClean's board of directors, if operating independently from DWHP, to approve more debt just to turn over that amount to its private equity sponsor.

88.     By December 2018, DWHP certainly had direct knowledge regarding SoClean's regulatory risks.  Despite this risk, DWHP caused SoClean to take on additional debt, while once again attempting to insulate itself from any exposure.

89.     In 2019, DWHP repeated its further leveraging of SoClean, this time by increasing SoClean's debt by another $5 million, the proceeds from which were used to buy back shares of the company from SoClean's founder.  Again, there was no reason for SoClean's board of directors

to approve more debt and overleverage SoClean just to allow the repurchase of shares and enrich SoClean's former head.

90.     DWHP did not only enrich itself through these distributions achieved by creating more leverage.  DWHP further siphoned funds from SoClean, both in terms of management fees and the receipt of large dividends.  DWHP secured annual management fees of about $1 million, regardless of SoClean's performance.  DWHP also dispersed to itself large dividends at the expense of SoClean.  For example, the year following the assumption of the additional $33 million of SoClean debt, DWHP paid itself and the other shareholders dividends of $2.989 million.

91.     In addition to DWHP's overt siphoning of funds, DWHP also obtained inadequate insurance coverage for SoClean.  As a medical device company operating without FDA approval or clearance to sell its devices—devices that use a toxic gas to clean PAP devices that patients use every day¾SoClean's business was fraught with regulatory and litigation risk.  Despite this, DWHP opted for minimal insurance coverage for SoClean.  For example, SoClean's insurer has informed SoClean its policy did not cover claims regarding, *inter alia*, SoClean's failure to disclose its devices emit ozone at levels declared unsafe by FDA.  Worse still, even had the insurer deemed such claims was covered, SoClean's policy has an aggregate coverage limit of only $10 million—clearly inadequate to cover a company of SoClean's risk profile.

92.     In 2021, SoClean's house of cards began to collapse.  In 2021, SoClean wrote down its intangible assets and good will by a staggering $38.6 million, a write-down over 100 times greater than its $232,000 write-down the year prior.

93.     SoClean has represented to this Court that it is under severe financial strain, such as by confirming as "accurate" descriptions of SoClean having "very attenuated . . . financial circumstances."

-31-

94.     DWHP has owned a controlling interest in SoClean since its acquisition of SoClean in 2017.

95.     Throughout its ownership, DHWP has dominated SoClean's management and controlled it for its own benefit.  SoClean's Board of Managers also includes senior executives from DWHP who control the Board.  These executives serving on SoClean's board participate in SoClean's management beyond what is customary for an investor.  In fact, SoClean's day-to-day management is run by DHWP, as DWHP admits by charging annually its $1 million management fee.

96.     DWHP's involvement in, running of, and control of SoClean's day-to-day affairs far exceeded that which is typical of or appropriate for a shareholder.  DWHP controlled and was intimately involved in the minutiae of SoClean's operations.  The limited produced records to date indicate that, at minimum: (i) DWHP was involved in and exercised authority over personnel decisions at SoClean; (ii) DWHP was involved in and exercised authority over branding decisions at SoClean; (iii) DWHP was involved in and exercised authority over testing and research decisions at SoClean; and (iv) DWHP was involved in and exercised authority over the marketing and advertising decisions at SoClean.

97.     At all relevant times, DHWP knew or should have known through, *inter alia*, its heavy presence on SoClean's board and role in day-to-day management, that SoClean's flagship ozone machines were not FDA approved or cleared for use with PAPs, that SoClean's promotion and sale of its ozone-based PAP cleaning machines was unlawful and, thus, that nearly 100% of SoClean's revenues were derived from unlawful conduct.  Similarly, at all relevant times, DHWP knew or should have known that exposure to the ozone used in SoClean's equipment is toxic, and

that SoClean's equipment could cause foam within various PAP devices in the market, including the Recalled Devices, to degrade.

98.     SoClean's conduct, as DWHP's alter ego, contributed to the harms alleged and for which the Philips Defendants are bearing or may in the future bear financial responsibility. Impleader is therefore appropriate.

## CLAIMS FOR RELIEF

### COUNT 1 – CONTRIBUTION
(AS 09.17.080(d); AK R RCP Rule 14(c))

99.     The Philips Defendants incorporate each of the allegations above as if fully set forth herein.

100.     The Philips Defendants request judgment against Third-Party Defendants for those amounts paid by the Philips Defendants into the Settlement Fund in its discharge of the common liability in excess of the Philips Defendants' pro rata share to Device Users who used a SoClean Device and were paid for a Qualifying Respiratory Injury.  For that portion of the Settlement Fund paid to Device Users who used a SoClean Device with their Recalled Device and who are paid for a Qualifying Respiratory Injury, the Philips Defendants are entitled to contribution for the harms caused to the Device Users by the SoClean Device through direct ozone inhalation.

101.     Additionally, for those Device Users who do not participate in the Settlement Fund (whether by choice or because of ineligibility), if and to the extent the Philips Defendants are found liable for any damages alleged by those Device Users, the Philips Defendants may be, but should not be, required to pay more than their pro rata share of the common liability.  The Philips Defendants deny they have any liability to these Device Users.  But to the extent the Philips Defendants are found liable to Device Users who used SoClean Devices with their Recalled

Devices, then the Third-Party Defendants are also liable in proportion to their relative culpability. For this category, the Third-Party Defendants are responsible for any proven injury (*i.e.*, not limited to Qualifying Respiratory Injuries) not only on account of direct ozone inhalation, but also because of ozone's contribution to foam degradation and the release of VOCs from degraded foam.

102.    The Philips Defendants are thus entitled to equitable apportionment from Third-Party Defendants for all or part of any judgment entered against the Philips Defendants and to an allocation of fault as among all joint wrongdoers.

## COUNT 2 – CONTRIBUTION
(Ark. Code § 16-61-202, Ark. Code § 16-61-207)

103.    The Philips Defendants incorporate each of the allegations above as if fully set forth herein.

104.    The Philips Defendants request judgment against Third-Party Defendants for those amounts paid by the Philips Defendants into the Settlement Fund in its discharge of the common liability in excess of the Philips Defendants' pro rata share to Device Users who used a SoClean Device and were paid for a Qualifying Respiratory Injury.  For that portion of the Settlement Fund paid to Device Users who used a SoClean Device with their Recalled Device and who are paid for a Qualifying Respiratory Injury, the Philips Defendants are entitled to contribution for the harms caused to the Device Users by the SoClean Device through direct ozone inhalation.

105.    Additionally, for those Device Users who do not participate in the Settlement Fund (whether by choice or because of ineligibility), if and to the extent the Philips Defendants are found liable for any damages alleged by those Device Users, the Philips Defendants may be, but should not be, required to pay more than their pro rata share of the common liability.  The Philips Defendants deny they have any liability to these Device Users.  But to the extent the Philips Defendants are found liable to Device Users who used SoClean Devices with their Recalled

-34-

Devices, then the Third-Party Defendants are also liable in proportion to their relative culpability. For this category, the Third-Party Defendants are responsible for any proven injury (*i.e.*, not limited to Qualifying Respiratory Injuries) not only on account of direct ozone inhalation, but also because of ozone's contribution to foam degradation and the release of VOCs from degraded foam.

106.   The Philips Defendants are thus entitled to contribution from Third-Party Defendants for all or part of any judgment entered against the Philips Defendants and to an allocation of fault as among all joint wrongdoers.

**COUNT 3 – CONTRIBUTION**
(Cal. Civ. Code §§ 1431, 1432)

107.   The Philips Defendants incorporate each of the allegations above as if fully set forth herein.

108.   For Device Users who do not participate in the Settlement Fund (whether by choice or because of ineligibility), if and to the extent the Philips Defendants are found liable for any damages alleged by Device Users, the Philips Defendants may be, but should not be, required to pay more than their pro rata share of the common liability.  The Philips Defendants deny they have any liability to these Device Users.  But to the extent the Philips Defendants are found liable to Device Users who used SoClean Devices with their Recalled Devices, then the Third-Party Defendants are also liable in proportion to their relative culpability.  For this category, the Third-Party Defendants are responsible for any proven injury (*i.e.*, not limited to Qualifying Respiratory Injuries) not only on account of direct ozone inhalation, but also because of ozone's contribution to foam degradation and the release of VOCs from degraded foam.

109.   The Philips Defendants are thus entitled to proportionate contribution from Third-Party Defendants for all or part of any judgment entered against the Philips Defendants and to an allocation of fault as among all joint wrongdoers.

## COUNT 4 – EQUITABLE INDEMNITY
(Cal. Code. Civ. Proc. § 428.10(b))

110.     The Philips Defendants incorporate each of the allegations above as if fully set forth herein.

111.     The Philips Defendants request judgment against Third-Party Defendants for those amounts paid by the Philips Defendants into the Settlement Fund in its discharge of the common liability in excess of the Philips Defendants' pro rata share to Device Users who used a SoClean Device and were paid for a Qualifying Respiratory Injury.  For that portion of the Settlement Fund paid to Device Users who used a SoClean Device with their Recalled Device and who are paid for a Qualifying Respiratory Injury, the Philips Defendants are entitled to contribution for the harms caused to the Device Users by the SoClean Device through direct ozone inhalation.

112.     Additionally, for those Device Users who do not participate in the Settlement Fund (whether by choice or because of ineligibility), if and to the extent the Philips Defendants are found liable for any damages alleged by those Device Users, the Philips Defendants may be, but should not be, required to pay more than their pro rata share of the common liability.  The Philips Defendants deny they have any liability to these Device Users.  But to the extent the Philips Defendants are found liable to Device Users who used SoClean Devices with their Recalled Devices, then the Third-Party Defendants are also liable in proportion to their relative culpability. For this category, the Third-Party Defendants are responsible for any proven injury (*i.e.*, not limited to Qualifying Respiratory Injuries) not only on account of direct ozone inhalation, but also because of ozone's contribution to foam degradation and the release of VOCs from degraded foam.

113.     The Philips Defendants are thus entitled to equitable apportionment from Third-Party Defendants for all or part of any judgment entered against the Philips Defendants and to an allocation of fault as among all joint wrongdoers.

## COUNT 5 – CONTRIBUTION
### (Colo. Rev. Stat. §§ 13-50.5-101, *et seq.*)

114.    The Philips Defendants incorporate each of the allegations above as if fully set forth herein.

115.    The Philips Defendants request judgment against Third-Party Defendants for those amounts paid by the Philips Defendants into the Settlement Fund in its discharge of the common liability in excess of the Philips Defendants' pro rata share to Device Users who used a SoClean Device and were paid for a Qualifying Respiratory Injury.  For that portion of the Settlement Fund paid to Device Users who used a SoClean Device with their Recalled Device and who are paid for a Qualifying Respiratory Injury, the Philips Defendants are entitled to contribution for the harms caused to the Device Users by the SoClean Device through direct ozone inhalation.[60]

## COUNT 6 – CONTRIBUTION
### (Del. Code tit. 10, §§ 6301, *et seq.*)

116.    The Philips Defendants incorporate each of the allegations above as if fully set forth herein.

117.    The Philips Defendants request judgment against Third-Party Defendants for those amounts paid by the Philips Defendants into the Settlement Fund in its discharge of the common liability in excess of the Philips Defendants' pro rata share to Device Users who used a SoClean Device and were paid for a Qualifying Respiratory Injury.  For that portion of the Settlement Fund paid to Device Users who used a SoClean Device with their Recalled Device and who are paid for a Qualifying Respiratory Injury, the Philips Defendants are entitled to contribution for the harms caused to the Device Users by the SoClean Device through direct ozone inhalation.

---

[60]    A contribution claim for Plaintiffs who do not participate in the Settlement Fund and who used SoClean is not yet ripe in this jurisdiction, but the Philip Defendants intend to bring such a contribution claim when actionable.

118.     Additionally, for those Device Users who do not participate in the Settlement Fund (whether by choice or because of ineligibility), if and to the extent the Philips Defendants are found liable for any damages alleged by those Device Users, the Philips Defendants may be, but should not be, required to pay more than their pro rata share of the common liability.  The Philips Defendants deny they have any liability to these Device Users.  But to the extent the Philips Defendants are found liable to Device Users who used SoClean Devices with their Recalled Devices, then the Third-Party Defendants are also liable in proportion to their relative culpability. For this category, the Third-Party Defendants are responsible for any proven injury (*i.e.*, not limited to Qualifying Respiratory Injuries) not only on account of direct ozone inhalation, but also because of ozone's contribution to foam degradation and the release of VOCs from degraded foam.

119.     The Philips Defendants are thus entitled to contribution from Third-Party Defendants for all or part of any judgment entered against the Philips Defendants and to an allocation of fault as among all joint wrongdoers.

**COUNT 7 – CONTRIBUTION**
(Washington, D.C.)

120.     The Philips Defendants incorporate each of the allegations above as if fully set forth herein.

121.     For Device Users who do not participate in the Settlement Fund (whether by choice or because of ineligibility), if and to the extent the Philips Defendants are found liable for any damages alleged by Device Users, the Philips Defendants may be, but should not be, required to pay more than their pro rata share of the common liability.  The Philips Defendants deny they have any liability to these Device Users.  But to the extent the Philips Defendants are found liable to Device Users who used SoClean Devices with their Recalled Devices, then the Third-Party Defendants are also liable in proportion to their relative culpability.  For this category, the Third-

Party Defendants are responsible for any proven injury (*i.e.*, not limited to Qualifying Respiratory Injuries) not only on account of direct ozone inhalation, but also because of ozone's contribution to foam degradation and the release of VOCs from degraded foam.

122.     The Philips Defendants are thus entitled to equitable apportionment from Third-Party Defendants for all or part of any judgment entered against the Philips Defendants and to an allocation of fault as among all joint wrongdoers.

**COUNT 8 – CONTRIBUTION**
(Haw. Rev. Stat. Ann. §§ 663-12, *et seq.*)

123.     The Philips Defendants incorporate each of the allegations above as if fully set forth herein.

124.     The Philips Defendants request judgment against Third-Party Defendants for those amounts paid by the Philips Defendants into the Settlement Fund in its discharge of the common liability in excess of the Philips Defendants' pro rata share to Device Users who used a SoClean Device and were paid for a Qualifying Respiratory Injury. For that portion of the Settlement Fund paid to Device Users who used a SoClean Device with their Recalled Device and who are paid for a Qualifying Respiratory Injury, the Philips Defendants are entitled to contribution for the harms caused to the Device Users by the SoClean Device through direct ozone inhalation.

125.     Additionally, for those Device Users who do not participate in the Settlement Fund (whether by choice or because of ineligibility), if and to the extent the Philips Defendants are found liable for any damages alleged by those Device Users, the Philips Defendants may be, but should not be, required to pay more than their pro rata share of the common liability. The Philips Defendants deny they have any liability to these Device Users. But to the extent the Philips Defendants are found liable to Device Users who used SoClean Devices with their Recalled Devices, then the Third-Party Defendants are also liable in proportion to their relative culpability.

For this category, the Third-Party Defendants are responsible for any proven injury (*i.e.*, not limited to Qualifying Respiratory Injuries) not only on account of direct ozone inhalation, but also because of ozone's contribution to foam degradation and the release of VOCs from degraded foam.

126.    The Philips Defendants are thus entitled to contribution from Third-Party Defendants for all or part of any judgment entered against the Philips Defendants.

### COUNT 9 – CONTRIBUTION
(740 Ill. Comp. Stat. 100/0.01, *et seq.*)

127.    The Philips Defendants incorporate each of the allegations above as if fully set forth herein.

128.    The Philips Defendants request judgment against Third-Party Defendants for those amounts paid by the Philips Defendants into the Settlement Fund in its discharge of the common liability in excess of the Philips Defendants' pro rata share to Device Users who used a SoClean Device and were paid for a Qualifying Respiratory Injury.  For that portion of the Settlement Fund paid to Device Users who used a SoClean Device with their Recalled Device and who are paid for a Qualifying Respiratory Injury, the Philips Defendants are entitled to contribution for the harms caused to the Device Users by the SoClean Device through direct ozone inhalation.

129.    Additionally, for those Device Users who do not participate in the Settlement Fund (whether by choice or because of ineligibility), if and to the extent the Philips Defendants are found liable for any damages alleged by those Device Users, the Philips Defendants may be, but should not be, required to pay more than their pro rata share of the common liability.  The Philips Defendants deny they have any liability to these Device Users.  But to the extent the Philips Defendants are found liable to Device Users who used SoClean Devices with their Recalled Devices, then the Third-Party Defendants are also liable in proportion to their relative culpability. For this category, the Third-Party Defendants are responsible for any proven injury (*i.e.*, not

limited to Qualifying Respiratory Injuries) not only on account of direct ozone inhalation, but also because of ozone's contribution to foam degradation and the release of VOCs from degraded foam.

130.    The Philips Defendants are thus entitled to contribution from Third-Party Defendants for all or part of any judgment entered against the Philips Defendants.

## COUNT 10 – CONTRIBUTION
(Iowa Code §§ 668.1, *et seq.*)

131.    The Philips Defendants incorporate each of the allegations above as if fully set forth herein.

132.    The Philips Defendants request judgment against Third-Party Defendants for those amounts paid by the Philips Defendants into the Settlement Fund in its discharge of the common liability in excess of the Philips Defendants' pro rata share to Device Users who used a SoClean Device and were paid for a Qualifying Respiratory Injury.  For that portion of the Settlement Fund paid to Device Users who used a SoClean Device with their Recalled Device and who are paid for a Qualifying Respiratory Injury, the Philips Defendants are entitled to contribution for the harms caused to the Device Users by the SoClean Device through direct ozone inhalation.[61]

## COUNT 11 – CONTRIBUTION
(Maine)

133.    The Philips Defendants incorporate each of the allegations above as if fully set forth herein.

134.    The Philips Defendants request judgment against Third-Party Defendants for those amounts paid by the Philips Defendants into the Settlement Fund in its discharge of the common liability in excess of the Philips Defendants' pro rata share to Device Users who used a SoClean

---

[61]    A contribution claim for Plaintiffs who do not participate in the Settlement Fund and who used SoClean is not yet ripe in this jurisdiction, but the Philip Defendants intend to bring such a contribution claim when actionable.

Device and were paid for a Qualifying Respiratory Injury.  For that portion of the Settlement Fund paid to Device Users who used a SoClean Device with their Recalled Device and who are paid for a Qualifying Respiratory Injury, the Philips Defendants are entitled to contribution for the harms caused to the Device Users by the SoClean Device through direct ozone inhalation.

135.    Additionally, for those Device Users who do not participate in the Settlement Fund (whether by choice or because of ineligibility), if and to the extent the Philips Defendants are found liable for any damages alleged by those Device Users, the Philips Defendants may be, but should not be, required to pay more than their pro rata share of the common liability.  The Philips Defendants deny they have any liability to these Device Users.  But to the extent the Philips Defendants are found liable to Device Users who used SoClean Devices with their Recalled Devices, then the Third-Party Defendants are also liable in proportion to their relative culpability. For this category, the Third-Party Defendants are responsible for any proven injury (*i.e.*, not limited to Qualifying Respiratory Injuries) not only on account of direct ozone inhalation, but also because of ozone's contribution to foam degradation and the release of VOCs from degraded foam.

136.    The Philips Defendants are thus entitled to contribution from Third-Party Defendants for all or part of any judgment entered against the Philips Defendants and to an allocation of fault as among all joint tortfeasors.

### COUNT 12 – CONTRIBUTION
(Md. Code §§ 3-1401, *et seq.*)

137.    The Philips Defendants incorporate each of the allegations above as if fully set forth herein.

138.    For Device Users who do not participate in the Settlement Fund (whether by choice or because of ineligibility), if and to the extent the Philips Defendants are found liable for any damages alleged by Device Users, the Philips Defendants may be, but should not be, required to

pay more than their pro rata share of the common liability. The Philips Defendants deny they have any liability to these Device Users. But to the extent the Philips Defendants are found liable to Device Users who used SoClean Devices with their Recalled Devices, then the Third-Party Defendants are also liable in proportion to their relative culpability. For this category, the Third-Party Defendants are responsible for any proven injury (*i.e.*, not limited to Qualifying Respiratory Injuries) not only on account of direct ozone inhalation, but also because of ozone's contribution to foam degradation and the release of VOCs from degraded foam.

139.    The Philips Defendants are thus entitled to contribution from Third-Party Defendants for all or part of any judgment entered against the Philips Defendants and to an allocation of fault as among all joint wrongdoers.

## COUNT 13 – CONTRIBUTION
(Mass. Gen. Laws ch. 231B, §§ 1-4)

140.    The Philips Defendants incorporate each of the allegations above as if fully set forth herein.

141.    The Philips Defendants request judgment against Third-Party Defendants for those amounts paid by the Philips Defendants into the Settlement Fund in its discharge of the common liability in excess of the Philips Defendants' pro rata share to Device Users who used a SoClean Device and were paid for a Qualifying Respiratory Injury. For that portion of the Settlement Fund paid to Device Users who used a SoClean Device with their Recalled Device and who are paid for a Qualifying Respiratory Injury, the Philips Defendants are entitled to contribution for the harms caused to the Device Users by the SoClean Device through direct ozone inhalation.[62]

---

[62]    A contribution claim for Plaintiffs who do not participate in the Settlement Fund and who used SoClean is not yet ripe in this jurisdiction, but the Philip Defendants intend to bring such a contribution claim when actionable.

## COUNT 14 – CONTRIBUTION
(Minn. Stat. §§ 604.01, *et seq.*)

142.    The Philips Defendants incorporate each of the allegations above as if fully set forth herein.

143.    The Philips Defendants request judgment against Third-Party Defendants for those amounts paid by the Philips Defendants into the Settlement Fund in its discharge of the common liability in excess of the Philips Defendants' pro rata share to Device Users who used a SoClean Device and were paid for a Qualifying Respiratory Injury.  For that portion of the Settlement Fund paid to Device Users who used a SoClean Device with their Recalled Device and who are paid for a Qualifying Respiratory Injury, the Philips Defendants are entitled to contribution for the harms caused to the Device Users by the SoClean Device through direct ozone inhalation.

144.    Additionally, for those Device Users who do not participate in the Settlement Fund (whether by choice or because of ineligibility), if and to the extent the Philips Defendants are found liable for any damages alleged by those Device Users, the Philips Defendants may be, but should not be, required to pay more than their pro rata share of the common liability.  The Philips Defendants deny they have any liability to these Device Users.  But to the extent the Philips Defendants are found liable to Device Users who used SoClean Devices with their Recalled Devices, then the Third-Party Defendants are also liable in proportion to their relative culpability. For this category, the Third-Party Defendants are responsible for any proven injury (*i.e.*, not limited to Qualifying Respiratory Injuries) not only on account of direct ozone inhalation, but also because of ozone's contribution to foam degradation and the release of VOCs from degraded foam.

145.    The Philips Defendants are thus entitled to contribution from Third-Party Defendants for all or part of any judgment entered against the Philips Defendants.

## COUNT 15 – CONTRIBUTION
(Mo. Rev. Stat. § 537.060)

146.     The Philips Defendants incorporate each of the allegations above as if fully set forth herein.

147.     The Philips Defendants request judgment against Third-Party Defendants for those amounts paid by the Philips Defendants into the Settlement Fund in its discharge of the common liability in excess of the Philips Defendants' pro rata share to Device Users who used a SoClean Device and were paid for a Qualifying Respiratory Injury.  For that portion of the Settlement Fund paid to Device Users who used a SoClean Device with their Recalled Device and who are paid for a Qualifying Respiratory Injury, the Philips Defendants are entitled to contribution for the harms caused to the Device Users by the SoClean Device through direct ozone inhalation.

148.     Additionally, for those Device Users who do not participate in the Settlement Fund (whether by choice or because of ineligibility), if and to the extent the Philips Defendants are found liable for any damages alleged by those Device Users, the Philips Defendants may be, but should not be, required to pay more than their pro rata share of the common liability.  The Philips Defendants deny they have any liability to these Device Users.  But to the extent the Philips Defendants are found liable to Device Users who used SoClean Devices with their Recalled Devices, then the Third-Party Defendants are also liable in proportion to their relative culpability. For this category, the Third-Party Defendants are responsible for any proven injury (*i.e.*, not limited to Qualifying Respiratory Injuries) not only on account of direct ozone inhalation, but also because of ozone's contribution to foam degradation and the release of VOCs from degraded foam.

149.     The Philips Defendants are thus entitled to contribution from Third-Party Defendants for all or part of any judgment entered against the Philips Defendants.

## COUNT 16 – CONTRIBUTION
(Mont. Code § 27-1-703)

150.     The Philips Defendants incorporate each of the allegations above as if fully set forth herein.

151.     For Device Users who do not participate in the Settlement Fund (whether by choice or because of ineligibility), if and to the extent the Philips Defendants are found liable for any damages alleged by Device Users, the Philips Defendants may be, but should not be, required to pay more than their pro rata share of the common liability.  The Philips Defendants deny they have any liability to these Device Users.  But to the extent the Philips Defendants are found liable to Device Users who used SoClean Devices with their Recalled Devices, then the Third-Party Defendants are also liable in proportion to their relative culpability.  For this category, the Third-Party Defendants are responsible for any proven injury (*i.e.*, not limited to Qualifying Respiratory Injuries) not only on account of direct ozone inhalation, but also because of ozone's contribution to foam degradation and the release of VOCs from degraded foam.

152.     The Philips Defendants are thus entitled to contribution from Third-Party Defendants for all or part of any judgment entered against the Philips Defendants and to an allocation of fault as among all joint wrongdoers.

## COUNT 17 – CONTRIBUTION
(Neb. Rev. Stat. §§ 25-21, 185.10)

153.     The Philips Defendants incorporate each of the allegations above as if fully set forth herein.

154.     The Philips Defendants request judgment against Third-Party Defendants for those amounts paid by the Philips Defendants into the Settlement Fund in its discharge of the common liability in excess of the Philips Defendants' pro rata share to Device Users who used a SoClean

Device and were paid for a Qualifying Respiratory Injury. For that portion of the Settlement Fund paid to Device Users who used a SoClean Device with their Recalled Device and who are paid for a Qualifying Respiratory Injury, the Philips Defendants are entitled to contribution for the harms caused to the Device Users by the SoClean Device through direct ozone inhalation.

155.     Additionally, for those Device Users who do not participate in the Settlement Fund (whether by choice or because of ineligibility), if and to the extent the Philips Defendants are found liable for any damages alleged by those Device Users, the Philips Defendants may be, but should not be, required to pay more than their pro rata share of the common liability. The Philips Defendants deny they have any liability to these Device Users. But to the extent the Philips Defendants are found liable to Device Users who used SoClean Devices with their Recalled Devices, then the Third-Party Defendants are also liable in proportion to their relative culpability. For this category, the Third-Party Defendants are responsible for any proven injury (*i.e.*, not limited to Qualifying Respiratory Injuries) not only on account of direct ozone inhalation, but also because of ozone's contribution to foam degradation and the release of VOCs from degraded foam.

156.     The Philips Defendants are thus entitled to contribution from Third-Party Defendants for all or part of any judgment entered against the Philips Defendants.

**COUNT 18 – CONTRIBUTION**
(Nev. Rev. Stat. § 17.225)

157.     The Philips Defendants incorporate each of the allegations above as if fully set forth herein.

158.     The Philips Defendants request judgment against Third-Party Defendants for those amounts paid by the Philips Defendants into the Settlement Fund in its discharge of the common liability in excess of the Philips Defendants' pro rata share to Device Users who used a SoClean Device and were paid for a Qualifying Respiratory Injury. For that portion of the Settlement Fund

paid to Device Users who used a SoClean Device with their Recalled Device and who are paid for a Qualifying Respiratory Injury, the Philips Defendants are entitled to contribution for the harms caused to the Device Users by the SoClean Device through direct ozone inhalation.

159.    Additionally, for those Device Users who do not participate in the Settlement Fund (whether by choice or because of ineligibility), if and to the extent the Philips Defendants are found liable for any damages alleged by those Device Users, the Philips Defendants may be, but should not be, required to pay more than their pro rata share of the common liability.   The Philips Defendants deny they have any liability to these Device Users.   But to the extent the Philips Defendants are found liable to Device Users who used SoClean Devices with their Recalled Devices, then the Third-Party Defendants are also liable in proportion to their relative culpability. For this category, the Third-Party Defendants are responsible for any proven injury (*i.e.*, not limited to Qualifying Respiratory Injuries) not only on account of direct ozone inhalation, but also because of ozone's contribution to foam degradation and the release of VOCs from degraded foam.

160.    The Philips Defendants are thus entitled to contribution from Third-Party Defendants for all or part of any judgment entered against the Philips Defendants and to an allocation of fault as among all joint tortfeasors.

## COUNT 19 – CONTRIBUTION
(N.J.S.A. 2A:53A-1; N.J.S.A. 2A:15-5.3, *et seq.*)

161.    The Philips Defendants incorporate each of the allegations above as if fully set forth herein.

162.    For Device Users who do not participate in the Settlement Fund (whether by choice or because of ineligibility), if and to the extent the Philips Defendants are found liable for any damages alleged by Device Users, the Philips Defendants may be, but should not be, required to pay more than their pro rata share of the common liability.  The Philips Defendants deny they have

any liability to these Device Users.  But to the extent the Philips Defendants are found liable to Device Users who used SoClean Devices with their Recalled Devices, then the Third-Party Defendants are also liable in proportion to their relative culpability.  For this category, the Third-Party Defendants are responsible for any proven injury (*i.e.*, not limited to Qualifying Respiratory Injuries) not only on account of direct ozone inhalation, but also because of ozone's contribution to foam degradation and the release of VOCs from degraded foam.

163.    The Philips Defendants are thus entitled to contribution from Third-Party Defendants for all or part of any judgment entered against the Philips Defendants.

## COUNT 20 – PROPORTIONAL INDEMNIFICATION
(New Mexico)

164.    The Philips Defendants incorporate each of the allegations above as if fully set forth herein.

165.    For Device Users who do not participate in the Settlement Fund (whether by choice or because of ineligibility), if and to the extent the Philips Defendants are found liable for any damages alleged by Device Users, the Philips Defendants may be, but should not be, required to pay more than their pro rata share of the common liability.  The Philips Defendants deny they have any liability to these Device Users.  But to the extent the Philips Defendants are found liable to Device Users who used SoClean Devices with their Recalled Devices, then the Third-Party Defendants are also liable in proportion to their relative culpability.  For this category, the Third-Party Defendants are responsible for any proven injury (*i.e.*, not limited to Qualifying Respiratory Injuries) not only on account of direct ozone inhalation, but also because of ozone's contribution to foam degradation and the release of VOCs from degraded foam.

166.    The Philips Defendants are thus entitled to indemnification from Third-Party Defendants for all or part of any judgment entered against the Philips Defendants.[63]

## COUNT 21 – CONTRIBUTION
### (N.Y. C.P.L.R. §§ 1401, *et seq.*)

167.    The Philips Defendants incorporate each of the allegations above as if fully set forth herein.

168.    For Device Users who do not participate in the Settlement Fund (whether by choice or because of ineligibility), if and to the extent the Philips Defendants are found liable for any damages alleged by Device Users, the Philips Defendants may be, but should not be, required to pay more than their pro rata share of the common liability.  The Philips Defendants deny they have any liability to these Device Users.  But to the extent the Philips Defendants are found liable to Device Users who used SoClean Devices with their Recalled Devices, then the Third-Party Defendants are also liable in proportion to their relative culpability.  For this category, the Third-Party Defendants are responsible for any proven injury (*i.e.*, not limited to Qualifying Respiratory Injuries) not only on account of direct ozone inhalation, but also because of ozone's contribution to foam degradation and the release of VOCs from degraded foam.

169.    The Philips Defendants are thus entitled to contribution from Third-Party Defendants for all or part of any judgment entered against the Philips Defendants.

## COUNT 22 – CONTRIBUTION
### (N.C. Gen. Stat. §§ 1B-1, *et seq.*)

170.    The Philips Defendants incorporate each of the allegations above as if fully set forth herein.

---

[63]    A proportional indemnification claim for Plaintiffs who do not participate in the Settlement Fund and who used SoClean is not yet ripe in this jurisdiction, but the Philip Defendants intend to bring such a contribution claim when actionable.

171.    The Philips Defendants request judgment against Third-Party Defendants for those amounts paid by the Philips Defendants into the Settlement Fund in its discharge of the common liability in excess of the Philips Defendants' pro rata share to Device Users who used a SoClean Device and were paid for a Qualifying Respiratory Injury.  For that portion of the Settlement Fund paid to Device Users who used a SoClean Device with their Recalled Device and who are paid for a Qualifying Respiratory Injury, the Philips Defendants are entitled to contribution for the harms caused to the Device Users by the SoClean Device through direct ozone inhalation.

172.    Additionally, for those Device Users who do not participate in the Settlement Fund (whether by choice or because of ineligibility), if and to the extent the Philips Defendants are found liable for any damages alleged by those Device Users, the Philips Defendants may be, but should not be, required to pay more than their pro rata share of the common liability.  The Philips Defendants deny they have any liability to these Device Users.  But to the extent the Philips Defendants are found liable to Device Users who used SoClean Devices with their Recalled Devices, then the Third-Party Defendants are also liable in proportion to their relative culpability. For this category, the Third-Party Defendants are responsible for any proven injury (*i.e.*, not limited to Qualifying Respiratory Injuries) not only on account of direct ozone inhalation, but also because of ozone's contribution to foam degradation and the release of VOCs from degraded foam.

173.    The Philips Defendants are thus entitled to contribution from Third-Party Defendants for all or part of any judgment entered against the Philips Defendants and to an allocation of fault as among all joint wrongdoers.

## COUNT 23 – CONTRIBUTION
(N.D. Cent. Code §§ 32-38-01, *et seq.*)

174.    The Philips Defendants incorporate each of the allegations above as if fully set forth herein.

175.    The Philips Defendants request judgment against Third-Party Defendants for those amounts paid by the Philips Defendants into the Settlement Fund in its discharge of the common liability in excess of the Philips Defendants' pro rata share to Device Users who used a SoClean Device and were paid for a Qualifying Respiratory Injury.  For that portion of the Settlement Fund paid to Device Users who used a SoClean Device with their Recalled Device and who are paid for a Qualifying Respiratory Injury, the Philips Defendants are entitled to contribution for the harms caused to the Device Users by the SoClean Device through direct ozone inhalation.

176.    Additionally, for those Device Users who do not participate in the Settlement Fund (whether by choice or because of ineligibility), if and to the extent the Philips Defendants are found liable for any damages alleged by those Device Users, the Philips Defendants may be, but should not be, required to pay more than their pro rata share of the common liability.  The Philips Defendants deny they have any liability to these Device Users.  But to the extent the Philips Defendants are found liable to Device Users who used SoClean Devices with their Recalled Devices, then the Third-Party Defendants are also liable in proportion to their relative culpability. For this category, the Third-Party Defendants are responsible for any proven injury (*i.e.*, not limited to Qualifying Respiratory Injuries) not only on account of direct ozone inhalation, but also because of ozone's contribution to foam degradation and the release of VOCs from degraded foam.

177.    The Philips Defendants are thus entitled to contribution from Third-Party Defendants for all or part of any judgment entered against the Philips Defendants and to an allocation of fault as among all joint wrongdoers.

**COUNT 24 – CONTRIBUTION**
(Ohio Rev. Code §§ 2307.25, *et seq.*)

178.    The Philips Defendants incorporate each of the allegations above as if fully set forth herein.

179.    The Philips Defendants request judgment against Third-Party Defendants for those amounts paid by the Philips Defendants into the Settlement Fund in its discharge of the common liability in excess of the Philips Defendants' pro rata share to Device Users who used a SoClean Device and were paid for a Qualifying Respiratory Injury.  For that portion of the Settlement Fund paid to Device Users who used a SoClean Device with their Recalled Device and who are paid for a Qualifying Respiratory Injury, the Philips Defendants are entitled to contribution for the harms caused to the Device Users by the SoClean Device through direct ozone inhalation.

180.    Additionally, for those Device Users who do not participate in the Settlement Fund (whether by choice or because of ineligibility), if and to the extent the Philips Defendants are found liable for any damages alleged by those Device Users, the Philips Defendants may be, but should not be, required to pay more than their pro rata share of the common liability.  The Philips Defendants deny they have any liability to these Device Users.  But to the extent the Philips Defendants are found liable to Device Users who used SoClean Devices with their Recalled Devices, then the Third-Party Defendants are also liable in proportion to their relative culpability. For this category, the Third-Party Defendants are responsible for any proven injury (*i.e.*, not limited to Qualifying Respiratory Injuries) not only on account of direct ozone inhalation, but also because of ozone's contribution to foam degradation and the release of VOCs from degraded foam.

181.    The Philips Defendants are thus entitled to contribution from Third-Party Defendants for all or part of any judgment entered against the Philips Defendants.

### COUNT 25 – CONTRIBUTION
(12 Okla. Stat. § 832)

182.    The Philips Defendants incorporate each of the allegations above as if fully set forth herein.

183.     The Philips Defendants request judgment against Third-Party Defendants for those amounts paid by the Philips Defendants into the Settlement Fund in its discharge of the common liability in excess of the Philips Defendants' pro rata share to Device Users who used a SoClean Device and were paid for a Qualifying Respiratory Injury.  For that portion of the Settlement Fund paid to Device Users who used a SoClean Device with their Recalled Device and who are paid for a Qualifying Respiratory Injury, the Philips Defendants are entitled to contribution for the harms caused to the Device Users by the SoClean Device through direct ozone inhalation.

184.     Additionally, for those Device Users who do not participate in the Settlement Fund (whether by choice or because of ineligibility), if and to the extent the Philips Defendants are found liable for any damages alleged by those Device Users, the Philips Defendants may be, but should not be, required to pay more than their pro rata share of the common liability.  The Philips Defendants deny they have any liability to these Device Users.  But to the extent the Philips Defendants are found liable to Device Users who used SoClean Devices with their Recalled Devices, then the Third-Party Defendants are also liable in proportion to their relative culpability.  For this category, the Third-Party Defendants are responsible for any proven injury (*i.e.*, not limited to Qualifying Respiratory Injuries) not only on account of direct ozone inhalation, but also because of ozone's contribution to foam degradation and the release of VOCs from degraded foam.

185.     The Philips Defendants are thus entitled to contribution from Third-Party Defendants for all or part of any judgment entered against the Philips Defendants.

### COUNT 26 – CONTRIBUTION
(42 Pa. Cons. Stat. §§ 8324, *et seq.*)

186.     The Philips Defendants incorporate each of the allegations above as if fully set forth herein.

187.     The Philips Defendants request judgment against Third-Party Defendants for those amounts paid by the Philips Defendants into the Settlement Fund in its discharge of the common liability in excess of the Philips Defendants' pro rata share to Device Users who used a SoClean Device and were paid for a Qualifying Respiratory Injury. For that portion of the Settlement Fund paid to Device Users who used a SoClean Device with their Recalled Device and who are paid for a Qualifying Respiratory Injury, the Philips Defendants are entitled to contribution for the harms caused to the Device Users by the SoClean Device through direct ozone inhalation.

188.     Additionally, for those Device Users who do not participate in the Settlement Fund (whether by choice or because of ineligibility), if and to the extent the Philips Defendants are found liable for any damages alleged by those Device Users, the Philips Defendants may be, but should not be, required to pay more than their pro rata share of the common liability. The Philips Defendants deny they have any liability to these Device Users. But to the extent the Philips Defendants are found liable to Device Users who used SoClean Devices with their Recalled Devices, then the Third-Party Defendants are also liable in proportion to their relative culpability. For this category, the Third-Party Defendants are responsible for any proven injury (*i.e.*, not limited to Qualifying Respiratory Injuries) not only on account of direct ozone inhalation, but also because of ozone's contribution to foam degradation and the release of VOCs from degraded foam.

189.     The Philips Defendants are thus entitled to contribution from Third-Party Defendants for all or part of any judgment entered against the Philips Defendants.

### COUNT 27 – CONTRIBUTION
(R.I.G.I. §§ 10-6-3, *et seq.*)

190.     The Philips Defendants incorporate each of the allegations above as if fully set forth herein.

191.    The Philips Defendants request judgment against Third-Party Defendants for those amounts paid by the Philips Defendants into the Settlement Fund in its discharge of the common liability in excess of the Philips Defendants' pro rata share to Device Users who used a SoClean Device and were paid for a Qualifying Respiratory Injury.  For that portion of the Settlement Fund paid to Device Users who used a SoClean Device with their Recalled Device and who are paid for a Qualifying Respiratory Injury, the Philips Defendants are entitled to contribution for the harms caused to the Device Users by the SoClean Device through direct ozone inhalation.

192.    Additionally, for those Device Users who do not participate in the Settlement Fund (whether by choice or because of ineligibility), if and to the extent the Philips Defendants are found liable for any damages alleged by those Device Users, the Philips Defendants may be, but should not be, required to pay more than their pro rata share of the common liability.  The Philips Defendants deny they have any liability to these Device Users.  But to the extent the Philips Defendants are found liable to Device Users who used SoClean Devices with their Recalled Devices, then the Third-Party Defendants are also liable in proportion to their relative culpability.  For this category, the Third-Party Defendants are responsible for any proven injury (*i.e.*, not limited to Qualifying Respiratory Injuries) not only on account of direct ozone inhalation, but also because of ozone's contribution to foam degradation and the release of VOCs from degraded foam.

193.    The Philips Defendants are thus entitled to contribution from Third-Party Defendants for all or part of any judgment entered against the Philips Defendants.

### COUNT 28 – CONTRIBUTION
(S.C.  Code Ann. §§ 15-38-20, *et seq.*)

194.    The Philips Defendants incorporate each of the allegations above as if fully set forth herein.

Case 2:21-mc-01230-JFC   Document 2922   Filed 08/13/24   Page 57 of 66

195.    The Philips Defendants request judgment against Third-Party Defendants for those amounts paid by the Philips Defendants into the Settlement Fund in its discharge of the common liability in excess of the Philips Defendants' pro rata share to Device Users who used a SoClean Device and were paid for a Qualifying Respiratory Injury.  For that portion of the Settlement Fund paid to Device Users who used a SoClean Device with their Recalled Device and who are paid for a Qualifying Respiratory Injury, the Philips Defendants are entitled to contribution for the harms caused to the Device Users by the SoClean Device through direct ozone inhalation.

196.    Additionally, for those Device Users who do not participate in the Settlement Fund (whether by choice or because of ineligibility), if and to the extent the Philips Defendants are found liable for any damages alleged by those Device Users, the Philips Defendants may be, but should not be, required to pay more than their pro rata share of the common liability.  The Philips Defendants deny they have any liability to these Device Users.  But to the extent the Philips Defendants are found liable to Device Users who used SoClean Devices with their Recalled Devices, then the Third-Party Defendants are also liable in proportion to their relative culpability. For this category, the Third-Party Defendants are responsible for any proven injury (*i.e.*, not limited to Qualifying Respiratory Injuries) not only on account of direct ozone inhalation, but also because of ozone's contribution to foam degradation and the release of VOCs from degraded foam.

197.    The Philips Defendants are thus entitled to contribution from Third-Party Defendants for all or part of any judgment entered against the Philips Defendants.

## COUNT 29 – CONTRIBUTION
### (S.D.C.L. §§ 15-8-12, *et seq.*)

198.    The Philips Defendants incorporate each of the allegations above as if fully set forth herein.

-57-

199.     The Philips Defendants request judgment against Third-Party Defendants for those amounts paid by the Philips Defendants into the Settlement Fund in its discharge of the common liability in excess of the Philips Defendants' pro rata share to Device Users who used a SoClean Device and were paid for a Qualifying Respiratory Injury.  For that portion of the Settlement Fund paid to Device Users who used a SoClean Device with their Recalled Device and who are paid for a Qualifying Respiratory Injury, the Philips Defendants are entitled to contribution for the harms caused to the Device Users by the SoClean Device through direct ozone inhalation.

200.     Additionally, for those Device Users who do not participate in the Settlement Fund (whether by choice or because of ineligibility), if and to the extent the Philips Defendants are found liable for any damages alleged by those Device Users, the Philips Defendants may be, but should not be, required to pay more than their pro rata share of the common liability.  The Philips Defendants deny they have any liability to these Device Users.  But to the extent the Philips Defendants are found liable to Device Users who used SoClean Devices with their Recalled Devices, then the Third-Party Defendants are also liable in proportion to their relative culpability. For this category, the Third-Party Defendants are responsible for any proven injury (*i.e.*, not limited to Qualifying Respiratory Injuries) not only on account of direct ozone inhalation, but also because of ozone's contribution to foam degradation and the release of VOCs from degraded foam.

201.     The Philips Defendants are thus entitled to contribution from Third-Party Defendants for all or part of any judgment entered against the Philips Defendants.

### COUNT 30 – CONTRIBUTION
(Tenn. Code Ann. §§ 29-11-102, *et seq.*)

202.     The Philips Defendants incorporate each of the allegations above as if fully set forth herein.

203.     The Philips Defendants request judgment against Third-Party Defendants for those amounts paid by the Philips Defendants into the Settlement Fund in its discharge of the common liability in excess of the Philips Defendants' pro rata share to Device Users who used a SoClean Device and were paid for a Qualifying Respiratory Injury.  For that portion of the Settlement Fund paid to Device Users who used a SoClean Device with their Recalled Device and who are paid for a Qualifying Respiratory Injury, the Philips Defendants are entitled to contribution for the harms caused to the Device Users by the SoClean Device through direct ozone inhalation.[64]

### COUNT 31 – CONTRIBUTION
(Tex. Civ. Prac. & Rem. Code Ann. §§ 33.015, *et seq.*)

204.     The Philips Defendants incorporate each of the allegations above as if fully set forth herein.

205.     For Device Users who do not participate in the Settlement Fund (whether by choice or because of ineligibility), if and to the extent the Philips Defendants are found liable for any damages alleged by Device Users, the Philips Defendants may be, but should not be, required to pay more than their pro rata share of the common liability.  The Philips Defendants deny they have any liability to these Device Users.  But to the extent the Philips Defendants are found liable to Device Users who used SoClean Devices with their Recalled Devices, then the Third-Party Defendants are also liable in proportion to their relative culpability.  For this category, the Third-Party Defendants are responsible for any proven injury (*i.e.*, not limited to Qualifying Respiratory Injuries) not only on account of direct ozone inhalation, but also because of ozone's contribution to foam degradation and the release of VOCs from degraded foam.

---

[64]     A contribution claim for Plaintiffs who do not participate in the Settlement Fund and who used SoClean is not yet ripe in this jurisdiction, but the Philip Defendants intend to bring such a contribution claim when actionable.

206.   The Philips Defendants are thus entitled to contribution from Third-Party Defendants for all or part of any judgment entered against the Philips Defendants.

**COUNT 32 – CONTRIBUTION**
(Va. Code Ann. §§ 8.01-34, *et seq.*)

207.   The Philips Defendants incorporate each of the allegations above as if fully set forth herein.

208.   The Philips Defendants request judgment against Third-Party Defendants for those amounts paid by the Philips Defendants into the Settlement Fund in its discharge of the common liability in excess of the Philips Defendants' pro rata share to Device Users who used a SoClean Device and were paid for a Qualifying Respiratory Injury.  For that portion of the Settlement Fund paid to Device Users who used a SoClean Device with their Recalled Device and who are paid for a Qualifying Respiratory Injury, the Philips Defendants are entitled to contribution for the harms caused to the Device Users by the SoClean Device through direct ozone inhalation.

209.   Additionally, for those Device Users who do not participate in the Settlement Fund (whether by choice or because of ineligibility), if and to the extent the Philips Defendants are found liable for any damages alleged by those Device Users, the Philips Defendants may be, but should not be, required to pay more than their pro rata share of the common liability.  The Philips Defendants deny they have any liability to these Device Users.  But to the extent the Philips Defendants are found liable to Device Users who used SoClean Devices with their Recalled Devices, then the Third-Party Defendants are also liable in proportion to their relative culpability.  For this category, the Third-Party Defendants are responsible for any proven injury (*i.e.*, not limited to Qualifying Respiratory Injuries) not only on account of direct ozone inhalation, but also because of ozone's contribution to foam degradation and the release of VOCs from degraded foam.

210.    The Philips Defendants are thus entitled to contribution from the Third-Party Defendants for all or part of any judgment entered against the Philips Defendants and to an allocation of fault as among all joint wrongdoers.

### COUNT 33 – CONTRIBUTION
(R.C.W.A §§ 4.22.030, *et seq.*)

211.    The Philips Defendants incorporate each of the allegations above as if fully set forth herein.

212.    The Philips Defendants request judgment against Third-Party Defendants for those amounts paid by the Philips Defendants into the Settlement Fund in its discharge of the common liability in excess of the Philips Defendants' pro rata share to Device Users who used a SoClean Device and were paid for a Qualifying Respiratory Injury.  For that portion of the Settlement Fund paid to Device Users who used a SoClean Device with their Recalled Device and who are paid for a Qualifying Respiratory Injury, the Philips Defendants are entitled to contribution for the harms caused to the Device Users by the SoClean Device through direct ozone inhalation.

213.    Additionally, for those Device Users who do not participate in the Settlement Fund (whether by choice or because of ineligibility), if and to the extent the Philips Defendants are found liable for any damages alleged by those Device Users, the Philips Defendants may be, but should not be, required to pay more than their pro rata share of the common liability.  The Philips Defendants deny they have any liability to these Device Users.  But to the extent the Philips Defendants are found liable to Device Users who used SoClean Devices with their Recalled Devices, then the Third-Party Defendants are also liable in proportion to their relative culpability. For this category, the Third-Party Defendants are responsible for any proven injury (*i.e.*, not limited to Qualifying Respiratory Injuries) not only on account of direct ozone inhalation, but also because of ozone's contribution to foam degradation and the release of VOCs from degraded foam.

214.     The Philips Defendants are thus entitled to contribution from the Third-Party Defendants for all or part of any judgment entered against the Philips Defendants.

### COUNT 34 – CONTRIBUTION
(West Virginia Code §§ 55-7-13a, *et seq.*)

215.     The Philips Defendants incorporate each of the allegations above as if fully set forth herein.

216.     The Philips Defendants request judgment against Third-Party Defendants for those amounts paid by the Philips Defendants into the Settlement Fund in its discharge of the common liability in excess of the Philips Defendants' pro rata share to Device Users who used a SoClean Device and were paid for a Qualifying Respiratory Injury.  For that portion of the Settlement Fund paid to Device Users who used a SoClean Device with their Recalled Device and who are paid for a Qualifying Respiratory Injury, the Philips Defendants are entitled to contribution for the harms caused to the Device Users by the SoClean Device through direct ozone inhalation.

217.     Additionally, for those Device Users who do not participate in the Settlement Fund (whether by choice or because of ineligibility), if and to the extent the Philips Defendants are found liable for any damages alleged by those Device Users, the Philips Defendants may be, but should not be, required to pay more than their pro rata share of the common liability.  The Philips Defendants deny they have any liability to these Device Users.  But to the extent the Philips Defendants are found liable to Device Users who used SoClean Devices with their Recalled Devices, then the Third-Party Defendants are also liable in proportion to their relative culpability. For this category, the Third-Party Defendants are responsible for any proven injury (*i.e.*, not limited to Qualifying Respiratory Injuries) not only on account of direct ozone inhalation, but also because of ozone's contribution to foam degradation and the release of VOCs from degraded foam.

218.     The Philips Defendants are thus entitled to contribution from the Third-Party Defendants for their comparative share of any judgment entered against the Philips Defendants.

### COUNT 35 – CONTRIBUTION
(Wisconsin)

219.     The Philips Defendants incorporate each of the allegations above as if fully set forth herein.

220.     The Philips Defendants request judgment against Third-Party Defendants for those amounts paid by the Philips Defendants into the Settlement Fund in its discharge of the common liability in excess of the Philips Defendants' pro rata share to Device Users who used a SoClean Device and were paid for a Qualifying Respiratory Injury.  For that portion of the Settlement Fund paid to Device Users who used a SoClean Device with their Recalled Device and who are paid for a Qualifying Respiratory Injury, the Philips Defendants are entitled to contribution for the harms caused to the Device Users by the SoClean Device through direct ozone inhalation.

221.     Additionally, for those Device Users who do not participate in the Settlement Fund (whether by choice or because of ineligibility), if and to the extent the Philips Defendants are found liable for any damages alleged by those Device Users, the Philips Defendants may be, but should not be, required to pay more than their pro rata share of the common liability.  The Philips Defendants deny they have any liability to these Device Users.  But to the extent the Philips Defendants are found liable to Device Users who used SoClean Devices with their Recalled Devices, then the Third-Party Defendants are also liable in proportion to their relative culpability. For this category, the Third-Party Defendants are responsible for any proven injury (*i.e.*, not limited to Qualifying Respiratory Injuries) not only on account of direct ozone inhalation, but also because of ozone's contribution to foam degradation and the release of VOCs from degraded foam.

222.    The Philips Defendants are thus entitled to contribution from Third-Party Defendants for all or part of any judgment entered against the Philips Defendants.

## PRAYER FOR RELIEF

WHEREFORE, Third-Party Plaintiffs respectfully ask for:

a.    Entry of judgment in Third-Party Plaintiffs' favor against Third-Party Defendants;

b.    An award of contribution and indemnity proportional to the Third-Party Defendants' fault for all or part of (i) the proceeds paid to Device Users with a Qualifying Respiratory Injury under the Settlement Fund, and (ii) any judgment for which Third-Party Plaintiffs are determined to be liable (if any), irrespective of the claimed injury;

c.    Prejudgment and post-judgment interest;

d.    Reasonable attorneys' fees, costs, and expenses incurred in this litigation as allowed for the indemnity and other claims asserted by Third-Party Plaintiffs; and

e.    Such other relief as the Court may deem appropriate and just.

## JURY DEMAND

Third-Party Plaintiffs demand a jury trial on all issues so triable.

Respectfully submitted,

Dated: August 13, 2024

/s/ Erik T. Koons
Erik T. Koons (admitted *pro hac vice*)
erik.koons@bakerbotts.com
Sterling Marchand (admitted *pro hac vice*)
sterling.marchand@bakerbotts.com
BAKER BOTTS L.L.P.
700 K Street, NW
Washington, DC 20001
Tel:  (202) 639-7700
Fax:  (202) 585-1086

-64-

*/s/ Andrew T. George*
Andrew T. George (PA Bar No. 208618)
andrew.george@bgblawyers.com
BOURELLY, GEORGE + BRODEY
1050 30th Street, NW
Washington, DC  20007
Tel:  (202) 753-5012
Fax:  (703) 465-8104

*Counsel for Third-Party Plaintiff Philips RS*
*North America LLC*


*/s/ Michael H. Steinberg*
Michael H. Steinberg (CA Bar No. 134179)
steinbergm@sullcrom.com
SULLIVAN & CROMWELL LLP
1888 Century Park East
Los Angeles, CA  90067
Tel:  (310) 712-6670
Fax:  (310) 712-8800

*/s/ William B. Monahan*
Tracy Richelle High (NY Bar No. 3020096)
hight@sullcrom.com
William B. Monahan (NY Bar No. 4229027)
monahanw@sullcrom.com
SULLIVAN & CROMWELL LLP
125 Broad Street
New York, NY  10004-2498
Tel:  (212) 558-4000
Fax:  (212) 558-3588

*Counsel for Third-Party Plaintiffs Koninklijke*
*Philips N.V., Philips North America LLC,*
*Philips Holding USA Inc., and Philips RS North*
*America Holding Corporation*

## CERTIFICATE OF SERVICE

I hereby certify on this 13th day of August 2024 a true and correct copy of the foregoing was filed electronically and is available for viewing and downloading from the Court's ECF System.    Notice of this filing will be sent to all counsel of record by operation of the ECF System.

 _/s/ William B. Monahan_
William B. Monahan