IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| IN RE: PHILIPS RECALLED CPAP, BI-LEVEL PAP, AND MECHANICAL VENTILATOR PRODUCTS LITIGATION<br><br>IN RE: SOCLEAN, INC. MARKETING, SALES PRACTICES AND PRODUCTS LIABILITY LITIGATION<br><br>This document relates to:<br><br>All Actions Between SoClean, Philips, and Their Affiliates | Master Docket Nos. 21-mc-1230 and 22-mc-152<br><br>MDL Nos. 3014 and 3021 |

**MEMORANDUM OF THE PHILIPS PARTIES**
**IN SUPPORT OF THEIR PROPOSED SCHEDULING ORDER**

# PRELIMINARY STATEMENT

As discussed at last month's case management conference, there are "multiple arms of this litigation." (July 24, 2024 CMC Tr. at 5.) In particular, four litigation tracks are currently at issue between the Philips parties and SoClean and its affiliates, including DWHP and the DW funds: (1) SoClean's affirmative claims against the Philips parties ("SoClean Claims"); (2) the Philips parties' counterclaims ("Counterclaims"); (3) the Philips parties' contribution claims for personal injury ("Contribution Claims"); and (4) the property damage claims assigned to Respironics under the Economic Loss Class Action Settlement ("Assigned Claims"). Any scheduling order should provide for coordination and a comprehensive set of deadlines for all four tracks, consistent with the goals of MDL practice. The Philips parties' schedule offers exactly this, while being consistent with black-letter law and the Court's instruction that the issue of standing (both as to SoClean and also as to the Philips parties) must be resolved "as soon as possible." (*Id.* at 15.) The Philips parties' schedule is also designed to ensure that the parties are "ready to go to trial within a year," as the Court instructed. (*Id.* at 17.)

By contrast, SoClean and DWHP have proposed a schedule that:

- ignores the Contribution Claims and the Assigned Claims entirely;

- attempts to accelerate a decision on personal jurisdiction *before* standing and *before* discovery is complete, in contravention of this Court's clear instruction that the issue of standing, not personal jurisdiction, would be accelerated and ignoring the Court's clear sequencing that "once [the] fact discovery period for the whole case is concluded, then we have to have the briefing finalized on the personal jurisdiction issues for any summary judgment motions" (July 24, 2024 CMC Tr. at 16);

- rejects opportunities to streamline proceedings by refusing to provide a proffer of the SoClean CEO's and CFO's anticipated testimony on SoClean's alleged standing, as KPNV did in similar circumstances in the Philips MDL, and thereby seek to force the Philips parties to depose the CEO and CFO before any lower-level SoClean employees and while a number of disputes remain as to the completeness of SoClean and DWHP's discovery;

- permits DWHP (and, presumably, everyone besides SoClean) to refuse any further participation in the litigation until personal jurisdiction has been decided, contrary to the Court's clear direction that "[t]here's not going to be a general stay" (July 24, 2024 CMC Tr. at 16-17); and

- attempts to unilaterally decide the order of trials (and to prioritize one of SoClean's creditors over all others) by providing a schedule only for the SoClean Claims and Counterclaims while ignoring the Contribution Claims and Assigned Claims.

Key factual and legal issues overlap in all four litigations. A schedule that accounts for all four tracks through coordinated discovery, motion practice, and hearing deadlines will therefore minimize inefficiencies to the Court (*e.g.*, by coordinating motion practice across tracks on overlapping issues) and to the parties (*e.g.*, curbing multiple depositions of the same individuals across all tracks), by advancing *all* of the litigation to its conclusion. The SoClean parties' proposal to treat the four litigation tracks as if they have nothing in common guarantees conflict, waste, gamesmanship, and delay.

Why are SoClean and DWHP ignoring the Contribution Claims and the Assigned Claims entirely? Because for those claims, SoClean and its controllers have no upside—they only stand to lose. And, what's worse, SoClean doesn't even own the claims it is advancing. (*See* ECF No. 651, 652.) SoClean is more than $110 million in debt (which is growing) to the real party-in-interest to this litigation, White Oak Healthcare Finance, LLC ("White Oak"),[1] and has defaulted on its debt obligations numerous times. SoClean has previously acknowledged it was experiencing

---

[1] The Philips parties have moved to join White Oak as the real party-in-interest, or alternatively, to dismiss SoClean's claims against the Philips parties. (ECF No. 651, 652.) Correspondingly, the Philips parties intend to name White Oak as a Counterclaim-Defendant in the amended Counterclaims and intend to seek leave to file those amended Counterclaims once the Court has ruled on SoClean's challenges to Special Master Vanaskie's Report and Recommendation ("R&R") on the original Counterclaims. If the Court prefers, Philips can file its motion for leave to amend sooner, but for judicial efficiency, Philips believes SoClean's challenge to the R&R as to the adequacy of Philips' original pleading should first be resolved so as to avoid the potential for two amendments to the Counterclaims.

"some very attenuated . . . financial circumstances." (July 20, 2023 CMC Tr. at 6.) In truth, SoClean is bankrupt and seeks to scrape together money through its claims against the Philips parties to fund its out-of-bankruptcy-court financial reorganization plan. White Oak holds a lien on all of SoClean's assets, expressly including its claims against the Philips parties. (*See* Ex. A (SoClean, Inc.'s UCC Financing Statement Amendments).) As a result, White Oak is the *only* creditor that stands to potentially recover on the SoClean Claims. And so, the SoClean parties are seeking to press the SoClean Claims forward (to the exclusion of the other claims) to treat White Oak in preference to SoClean's other creditors (including the Philips parties) by wishing away the litigation tracks the SoClean parties' proposed schedule deliberately omits.

The Philips parties respectfully request that the Court adopt their scheduling proposal, which (i) accounts for all of the litigation and allows for the coordination that SoClean's proposal prohibits, (ii) preserves a July 2025 trial date, (iii) treats all of SoClean's creditors equally, (iv) prioritizes standing over other issues, (v) provides for the orderly resolution of personal jurisdiction challenges by all DW entities (not merely DWHP) after the discovery record is complete, and (vi) leaves the question of trial order for a later date following the conclusion of coordinated proceedings.

**ARGUMENT**

**I.    The SoClean Parties' Schedule Ignores Two of the Four Litigation Tracks and the Need for Coordinated Discovery.**

Building on the JPML's instructions in assigning both MDLs to this Court, *see In re SoClean, Inc., Mktg., Sales Pracs. & Prod. Liab. Litig.*, 585 F. Supp. 3d 1355, 1357 (J.P.M.L. 2022), the Court accurately noted from the outset that there are "going to be a lot of same issues that we'll have in the SoClean MDL that will be present in [the Philips MDL] as well." (*E.g.*, Mar.

-3-

22, 2022 CMC Tr. at 36.)² For this reason, these two MDLs have been coordinated from Day 1. Irrespective of which party has noticed a deposition, the other parties have been invited to attend and ask questions. Document production has overlapped in both MDLs. The protective orders mirror each other. And for years, all parties have attended joint discovery coordination calls with Special Master Katz. The Philips parties designed their schedule to maintain this tight coordination.³

Coordinating litigation across all four tracks will significantly reduce the discovery burdens and inefficiencies for the Court, the Special Master, and the parties. Each litigation track asks the same or similar threshold questions, including whether SoClean's ozone damaged PAP devices, when SoClean and DWHP personnel learned of ozone's harmful effects, and DWHP's and the other DW-controlled entities' alter ego status. Although some discovery inquiries unique to each track inevitably will arise, the central nexus of discovery for all claims can, and should, be addressed in a coordinated fashion. *See In re Generic Pharmas. Pricing Antitrust Litig.*, 2017 WL 4582710, at *2 (J.P.M.L. Aug. 3, 2017) (noting the benefits of "eliminat[ing] duplication and enhanc[ing] the convenience of the parties, the witnesses, and the courts through coordinated proceedings in [an] MDL").

---

² *See also* Transfer Order, ECF No. 68 ("coordination of pretrial proceedings between the two litigations in a single district would appear to offer substantial efficiencies"); Transfer Order, ECF No. 111 (noting the advantages of "coordination and other proceedings on common issues" across both MDLs); MDL 3014, CMC Tr. at 22 ("I think the special master will be critical in trying to coordinate the discovery here [Philips MDL] and the discovery over in the SoClean case [SoClean MDL].").

³ By contrast, the SoClean parties are now fighting against coordination on the ostensible basis that one of the four litigation tracks (the Contribution Claims) is pending in the Philips MDL instead of the SoClean MDL. They never explain why that actually matters, especially given the cross-MDL coordination to date. In reality, the SoClean parties want nothing to do with the Contribution Claims (or the Assigned Claims) because they only stand to lose in those cases.

Absent coordination, inefficiencies and unnecessary discovery costs and disputes are guaranteed. For example, without coordination, many witnesses from all sides will be deposed multiple times. This will prompt motion practice if the parties cannot agree on the scope and timing of those depositions and burdens on the parties and witnesses to prepare for them. The Court anticipated this very problem. (*See* Apr. 25, 2024 CMC Tr. at 6 ("[I]f the same person is going to be deposed on something else, you know, that's where you need the coordination . . . .").)

Even more, not including the Contribution Claims and the Assigned Claims in the schedule will delay discovery both sides need to assess the potential to comprehensively resolve this litigation. Facts will emerge and events will occur during the litigation of the Contribution Claims and Assigned Claims that could cause a reassessment of strengths and weaknesses by one side or the other, paving the way to renewed mediation and a potential global settlement. The SoClean parties' myopic, SoClean-favoring schedule leaves the development of a discovery timeline for these actions for another day, thereby missing an opportunity to potentially bring this litigation nearer to a close.

The SoClean parties reject these efficiencies in service of no one's interests except their own. Their schedule focuses exclusively on the SoClean Claims (and the Counterclaims, because those are tethered to the SoClean Claims) for no reason other than to stall the Contribution Claims and the Assigned Claims, since those claims create risk for only the SoClean parties. The SoClean parties justify their position by pretending, as they have done across multiple meet-and-confers, that those claims "do not exist yet." But that is incorrect. The Contribution Claims were filed back in May 2024, more than three months ago. In fact, the SoClean parties fought vehemently for *months* to prevent the Court from finalizing Pre-Trial Order #31 (ECF No. 2745), even requiring a Report and Recommendation from Special Master Katz. The Assigned Claims,

for which Respironics stands in the shoes of consumers whose property was damaged by SoClean's ozone, are even older. Certain consumers originally asserted these economic loss class action claims against SoClean in December *2021*, alleging that SoClean's ozone cleaners damaged class members' PAP devices. *See* Complaint, *Bradley* v. *SoClean, Inc.*, MDL No. 3021, ECF No. 91-3, ¶ 11. It has been public knowledge for about a year that class members would be assigning these claims to Respironics in exchange for valuable consideration. (*See* ECF No. 2279-1 at 26.)

The SoClean parties have known about these claims from prior pleadings and presentations by the Philips parties, but feign ignorance now only to prevent all tracks from being coordinated.[4] Their position contravenes this Court's clear and repeated instructions that the MDLs are to proceed "as efficiently as possible." (Mar. 22, 2022 CMC Tr. at 4.) Scheduling all four litigation tracks now is the most efficient method the Court can adopt to bring this litigation to a conclusion quickly. There is nothing inefficient about coordination, as the pleadings for each of the four tracks are still being settled, and substantial discovery is still pending.[5]

---

[4] Even worse, despite how long they have known of the claims, SoClean and DWHP's counsel have been pretending that they have no idea—none—who is representing SoClean or DWHP in these proceedings. (Of course, SoClean and DWHP's current counsel have been doing a lot of arguing on behalf of their current clients related to these claims.) Similarly, SoClean and DWHP apparently have zero idea who is going to be representing White Oak, even though White Oak has been behind the scenes *since before SoClean filed suit*. The suggestion that there is no one on the scene to represent these companies in their most material litigations is plainly designed to impede coordination and to delay the claims the SoClean, DW, and White Oak parties are not interested in advancing.

[5] With respect to the SoClean Claims and Counterclaims, each of the following threshold issues are still being litigated: (1) whether SoClean or White Oak is the real party in interest; (2) SoClean's wholesale objections to all of Special Master Vanaskie's rulings on SoClean's Rule 12(b)(6) motion to dismiss the original Counterclaims; and (3) the Philips' parties forthcoming motion for leave to amend their Counterclaims to add new parties, including the DW funds and White Oak, and new allegations recently learned in discovery, including as to personal jurisdiction over DWHP. With respect to discovery, there are still at least 25 depositions that have yet to be taken, and no one from SoClean or DWHP (other than Rule 30(b)(6) depositions of those entities), the DW funds, White Oak, or the FDA has been deposed yet. All of this should occur in a coordinated fashion, not piecemeal across the four tracks.

## II. The SoClean Parties' Request To Accelerate the Personal Jurisdiction Hearing Is Contrary to Law, Inconsistent with the Court's Instructions, and Highly Inefficient.

Through their proposed schedule, the SoClean parties ask the Court to reconsider what it said at the last conference and resolve the personal jurisdiction issues (i) before deciding Article III standing, (ii) before completion of discovery, including regarding the new allegations (including as to DWHP), new theories (including as to DWHP), and new DW parties to be named in the amended Counterclaims, and (iii) on a piecemeal basis that would require the Court to hold separate evidentiary hearings for each DW party challenging personal jurisdiction, despite a complete overlap in the legal issues. This makes no sense and should be rejected *again*.

The requirement that a plaintiff has Article III standing to sue is a "threshold matter" that is "inflexible and without exception." *Steel Co.* v. *Citizens for a Better Env't*, 523 U.S. 83, 94 (1998). "Without [Article III] jurisdiction the court cannot proceed at all in any cause." *Id*. Last month, the Court correctly ruled that resolving whether any party has standing is to be given priority over all other inquiries. *See, e.g.*, July 24, 2024 CMC Tr. at 17 ("I need you to work with the Special Master . . . to prioritize the standing issue for the discovery"); *id*. ("[F]or efficiency sake, we need to deal with [standing] so . . . if it turns out that way, then the case is over."). Accordingly, under settled law, standing must be given priority before the personal jurisdiction inquiry may be resolved.[6]

---

[6]  The Philips parties anticipate—consistent with the Court's approach on the KPNV personal jurisdiction issue in the Philips MDL—the standing hearing to be an evidentiary hearing, rather than a standard oral argument on summary judgment. *See Raritan Baykeeper, Inc.* v. *NL Indus., Inc.*, 2016 WL 7381715, at *7 (D.N.J. July 29, 2016) (setting an "evidentiary hearing to resolve the genuine disputes of material fact relevant to the determination of Plaintiffs' standing"). This Court has previously highlighted that an evidentiary hearing may be necessary "to make a factual determination about whether or not [SoClean] is an illegally marketed product." (Feb. 21, 2023 CMC Tr. at 23.) Ultimately, the Court need not decide this question now because, at the conclusion of standing discovery, there may not be any disputed issues of material fact. For instance,

The SoClean parties' proposal also would introduce a host of inefficiencies. Once SoClean's challenge to Special Master Vanaskie's Report and Recommendation is decided,[7] the Philips parties intend to amend their Counterclaims to add new parties (including White Oak, as the real party in interest, and the DW funds that had a direct ownership interest in SoClean)[8] and new allegations as to both liability *and* personal jurisdiction, *including as to DWHP*. As recognized by the Court last month, "[the Court] will have the motion filed to amend the . . . counterclaims." (July 24, 2024 CMC Tr. at 23.)[9] The pleadings will need to be settled before addressing personal jurisdiction, and additional discovery on the new allegations, theories and parties will be necessary. This does not even include a number of outstanding discovery issues from before the stay that need to be resolved, owing to the SoClean parties' severely over-restrictive view of what documents were "relevant" to the original Counterclaims as pleaded. Several other threshold issues should be resolved before the issue of personal jurisdiction can be fully adjudicated, including whether White Oak and the DW funds will also be asserting personal jurisdiction challenges alongside DWHP. If so, there will need to be discovery of those entities.[10]

---

particularly in light of the Court-appointed FDA experts' testimony, it is unclear whether SoClean is going to continue to assert that it was legal for it to market and sell the SoClean 2.

[7]     Notably, the SoClean parties have challenged *every single holding* the Special Master made. (ECF No. 646.)

[8]     Following the filing of the Counterclaims, DWHP has pointed out that it does not own SoClean directly, but instead indirectly through affiliated funds. That position is not consistent even with SoClean Parent's consolidated financial statements (which it wrote), upon which the Philips parties relied in drafting their Counterclaims, which stated that "*DW Healthcare Partners ('DWHP')* acquired the Company." (ECF No. 507-2, at 32 (emphasis added).) But given DWHP's fixation on this point, and other evidence revealed in discovery, the Philips parties intend to name the affiliated DW funds as Counterclaim-Defendants.

[9]     SoClean and DWHP will be opposing amendment, despite the liberal Rule 15 standards and lack of prejudice.

[10]    The Philips parties also anticipate experts on the personal jurisdiction issues.

The SoClean parties, by contrast, would march to a hearing solely as to DWHP (not any of the other DWHP-related entities challenging personal jurisdiction), based on an incomplete record and before standing is addressed, leaving personal jurisdiction over other related entities to be resolved at later hearings. This approach is contrary to this Court's preference to rule on issues on the basis of a "fully developed record." *See, e.g.*, June 15, 2023 CMC Tr. at 27 (deferring decision on motion to dismiss for lack of standing due to a lack of "a fully developed record"), 42 ("I need a complete record."); Aug. 15, 2023 CMC Tr. (MDL 3014) at 8 (resolving evidentiary objections "[o]n a fully developed record").[11] Notably, while the facts relevant to personal jurisdiction may differ for each DW entity challenging jurisdiction, the gravamen of the claim and the legal issues will be very similar. As a result, the logical and efficient solution is to, *first*, take the discovery and then, *second*, have a single hearing (not the multiple hearings contemplated by the DW parties) where all personal jurisdiction issues can be resolved together under the same underlying legal framework. The Court recognized exactly this sequencing at the last case management conference, which the SoClean parties' proposal ignores:

> [W]e have to have a process where we understand that ***once that fact discovery period for the whole case is concluded***, ***then we have to have the briefing finalized on the personal jurisdiction issues*** for any summary judgment motions, and then we will have the trial.

(July 24, 2024 CMC Tr. at 16 (emphasis added).)

The Philips parties' proposed schedule is consistent with these instructions, prioritizing standing over personal jurisdiction and scheduling a hearing for personal jurisdiction after the completion of discovery for all parties. The SoClean parties' proposal is not.

---

[11]  In fact, counsel for SoClean has itself sought to avoid resolving disputes "on an incomplete record." (June 15, 2023 CMC Tr. at 29 (seeking to defer decision on motion to dismiss for lack of standing).)

-9-

### III. The SoClean Parties' Schedule Eliminates Efficiencies Designed To Expeditiously Resolve the Standing Issues.

Given the Court's express desire to prioritize standing, the Philips parties have advanced a schedule that resolves this inquiry in a manner designed to optimize efficiency and avoid surprise and needless discovery disputes. In particular, the Philips parties have streamlined the amount of information the SoClean parties need to provide regarding their alleged standing. Thus far, while the Philips parties have extensively set forth their arguments and evidence as to SoClean's lack of standing, SoClean has only vaguely stated that its CEO and CFO have unspecified information SoClean will use to support its position that it has standing, without identifying what that information is.

To mitigate the need for lengthy depositions on topics *other* than standing,[12] the Philips parties requested that SoClean put forward a proffer of what sort of testimony these individuals will provide *specifically on the issue of standing only*. Based on that proffer, the Philips parties would then decide whether to depose these senior officers in the short term (in full, or only on the standing issue) or not at all until later in proceedings. For instance, these employees may only offer testimony related to the FDA's enforcement discretion, but as made clear from the Court-appointed FDA experts, the exercise of enforcement discretion does not make the underlying conduct legal. A date for this proffer is proposed in the Philips parties' schedule. The SoClean parties, by contrast, have repeatedly rejected this offer, attempting to secure a strategic

---

[12] A full deposition of SoClean's CEO and CFO on all topics should be discouraged at this stage. Class counsel for the SoClean consumer plaintiff class has stated that they intend to depose SoClean's CEO and CFO *later* in proceedings—thereby necessitating a second deposition. Further, given these individuals' seniority, the Philips parties would ordinarily depose these individuals later in discovery, after lower-level SoClean employees have been deposed. To date, given the substantial issues with SoClean's document productions, *not a single SoClean employee has been deposed*. The Philips parties want to depose the lower-level SoClean employees before deposing SoClean's senior-most executives.

advantage by forcing the Philips parties into deposing *SoClean's CEO and CFO as their first fact witnesses*.

The Court should adopt this limited proffer process just as it did in the Philips MDL. There, both Plaintiffs and KPNV made various evidentiary previews, including a written proffer from KPNV explaining one of its witnesses' intended testimony. Based on that proffer, both plaintiffs and defendants were able to negotiate a stipulation of the testimony, without requiring either party to depose the witness or call him live during the evidentiary hearing.

## IV. The DW Entities Cannot Grant Themselves a Merits Discovery Stay.

DWHP has stated during meet-and-confers that it will not participate in *any* form of merits discovery—document productions *or* depositions—across *any* of the litigation tracks unless and until the Court finds it has personal jurisdiction over it. (The Philips parties expect the other non-SoClean parties, such as the related DW Funds and potentially White Oak, to take a similar position.) The only support DWHP provides for this extreme position is a minute order the Court issued in April 2024, stating, *at the time*, that DWHP's obligation to answer the Contribution Claims would be stayed pending resolution of the issue of personal jurisdiction. (*See* ECF No. 2738.) But the Court said nothing of a merits discovery stay, and the Court made clear at the most recent case management conference that there would be *no* general stay as to any issue or party—and that all matters must move forward. (*See* July 24, 2024 CMC Tr. at 16 ("I'm not going to stop the discovery. There's not going to be a general stay.").)

DWHP's position makes no sense, disregards last month's conference, and is contrary to the purpose of coordinated MDL proceedings and this Court's prior practice. Merits discovery must continue, and DWHP should be required to participate. A personal jurisdiction challenge has *never* been a barrier to merits discovery in these MDLs. For example, despite challenging personal jurisdiction in the Philips MDL, KPNV was likewise required to—and did—

-11-

participate in merits discovery, all while Rule 12(b)(2) briefing was pending before the Court. DWHP is thus in familiar territory in this Court and should not be granted a preferred status relative to KPNV. Likewise, despite challenging SoClean's standing in this matter, the Philips parties have been required to—and have—participated in extensive merits discovery. The SoClean parties offer no legitimate reason why DWHP should be treated any differently.

To the contrary, just last month, the Court made clear that merits discovery needs to continue and, in fact, that *all* fact discovery—including merits discovery—was to be completed *before* issues of personal jurisdiction were to be resolved. (*See* July 24, 2024 CMC Tr. at 16 ("[W]e have to have a process where we understand that once that fact discovery period for ***the whole case*** is concluded, ***then*** we have to have the briefing finalized on the personal jurisdiction issues for any summary judgment motions." (emphasis added)).) DWHP should not and cannot stall this case to suit its own interests. Further, if DWHP does not participate in merits discovery and later loses its jurisdictional challenge, there will be no way to meet the Court's July 2025 trial date in any of the tracks.[13]

## V. The Court Should Reserve the Order of Trials for Future Consideration.

An insolvent company, like SoClean, has legal duties to *all* of its creditors. For SoClean, that includes the Philips parties. Right now, SoClean is attempting to force a complete restructuring outside of the watchful eye of a bankruptcy court. Because of this insolvency and the concurrent duties to the Philips parties as the largest creditor of SoClean (far exceeding White Oak's $110+ million lien), the order of trials will have important downstream effects for SoClean's out-of-bankruptcy-court financial reorganization and the interests of its creditors and other

---

[13] DWHP is a party to each of the Counterclaims, the Contribution Claims, and the Assigned Claims.

stakeholders. SoClean does not even own the claims it is asserting (*see* ECF No. 651-52), so the first preference is to White Oak who owns the claims asserted against the Philips parties. Ordinarily, a bankruptcy court would participate in this process, but SoClean is studiously avoiding filing for bankruptcy and triggering judicial supervision of its financial affairs. Obviously, SoClean should not be permitted to order trials in a manner that attempts to hinder or defraud some creditors (Philips) and prefer others (White Oak), but a failure to address all of the issues present in a holistic manner risks doing just that. All of SoClean's contingent assets and liabilities relate to litigation, and those assets are, by far, the most significant to the SoClean bankruptcy estate. The Court should avoid the risk of unintended error and reserve a determination on the proper order of trials, following the conclusion of coordinated discovery proceedings, with the benefit of comprehensive briefing on relevant statutes, procedural rules, and case law.

In its schedule, the Philips parties intentionally left this issue open for consideration at a later date. By contrast, the SoClean parties' *exclusive* focus on only the SoClean Claims and the Counterclaims dictates that trial for these actions must come first. The Philips parties have serious concerns with this outcome. Adopting a schedule that places trial of and judgment on the SoClean Claims and the Counterclaims ahead of the Assigned Claims and Contribution Claims impacts the interests of all of SoClean's creditors, including the Philips parties as the largest creditors. As currently contemplated by SoClean, in the event a trial of the SoClean Claims and the Counterclaims were to result in net proceeds going to SoClean, the SoClean parties' schedule would allow White Oak to recover on at least some of the substantial debt owed to it by SoClean *in preference to other creditors*. That is because White Oak has a security interest in the outcome of the SoClean Claims. (*See* June 16, 2022, UCC Financing Statement Amendment at 2.) But as an insolvent entity, SoClean owes a duty not only to White Oak, but to *all* of its creditors, including

the Philips parties. *See In re Zambrano Corp.*, 478 B.R. 670, 684 (Bankr. W.D. Pa. 2012) (explaining that "when an entity is insolvent, [fiduciary] duties extend to creditors of the corporation"). The goal of a bankruptcy proceeding is to create an organized process to resolve the interests of the debtor's creditors. For that reason, a bankrupt company is not permitted to avoid adjudication of one creditor's claim solely to adversely affect the priority and interests of other creditors; correspondingly, bankruptcy rules and procedures are designed to avoid "free-floating discretion to redistribute rights," particularly when it comes to creditor rights. *In re Chic., Milwaukee, St. Paul & Pac. R.R. Co.*, 791 F.2d 524, 528 (7th Cir. 1986) (Posner, J.).

Accordingly, contrary to the implicit suggestion in the SoClean parties' proposed schedule, now is not the time to address the ordering of trials. The Philips parties respectfully request that the Court set briefing at a later date, after the conclusion of coordinated pre-trial proceedings, on these and any other issues the Court believes may be relevant to the ordering of trials.[14]

## CONCLUSION

The Court should adopt the Philips parties' proposed schedule.

Dated: August 14, 2024

Respectfully submitted,

/s/ Michael H. Steinberg
Michael H. Steinberg (CA Bar No. 134179)
steinbergm@sullcrom.com
SULLIVAN & CROMWELL LLP
1888 Century Park East
Los Angeles, CA 90067
Tel: (310) 712-6670
Fax: (310) 712-8800

---

[14] This briefing could cover such issues as (i) whether SoClean fraudulently transferred $50 million from its earnings to its owners (in spite of competing creditor claims), (ii) the possibility of equitable subordination, and (iii) whether a particular order of trials could result in hindrance or delay to contingent unsecured creditors.

/s/ *Tracy Richelle High*
Tracy Richelle High (NY Bar No. 3020096)
hight@sullcrom.com
William B. Monahan (NY Bar No. 4229027)
monahanw@sullcrom.com
SULLIVAN & CROMWELL LLP
125 Broad Street
New York, NY 10004-2498
Tel: (212) 558-4000
Fax: (212) 558-3588

*Counsel for Koninklijke Philips N.V. and Philips North America LLC*


/s/ *Erik T. Koons*
Erik T. Koons (NY Bar No. 2941102)
erik.koons@bakerbotts.com
BAKER BOTTS LLP
700 K Street, N.W.
Washington, D.C. 20001
Tel: (202) 639-7973
Fax: (202) 585-1086

/s/ *Andrew T. George*
Andrew T. George (PA Bar No. 208618)
andrew.george@bgblawyers.com
BOURELLY, GEORGE & BRODEY LLP
1050 30th Street, NW
Washington, DC 20007
Tel: (202) 753-5012
Fax: (703) 465-8104

*Counsel for Philips RS North America LLC*

-15-