# IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| IN RE: PHILIPS RECALLED CPAP, BI-LEVEL PAP, AND MECHANICAL VENTILATOR PRODUCTS LITIGATION<br><br>This Document Relates to:<br>All Actions Asserting Claims for Medical Monitoring | Master Docket: Misc. No. 21-mc-1230-JFC<br><br>MDL No. 3014 |

**AMENDED BRIEF IN SUPPORT OF SETTLEMENT CLASS REPRESENTATIVES' MOTION FOR FINAL APPROVAL OF CLASS SETTLEMENT AGREEMENT AND RELEASE OF MEDICAL MONITORING CLAIMS, FINAL JUDGMENT, INJUNCTION AND ORDER OF DISMISSAL**

## TABLE OF CONTENTS

TABLE OF AUTHORITIES .................................................................................................. iii

I.    INTRODUCTION ....................................................................................................... 1

II.   STATEMENT OF FACTS .......................................................................................... 4

      A.    Procedural Background of the Medical Monitoring Litigation ............................ 4

      B.    Discovery Related to the Medical Monitoring Claims .......................................... 6

      C.    Mediation and Settlement ...................................................................................... 7

      D.    Funding for the MAP Benefits ............................................................................... 8

      E.    The MAP Benefits ................................................................................................. 8

      F.    Releases ................................................................................................................ 10

      G.    Attorneys' Fees, Costs, and Service Awards ....................................................... 10

      H.    The Notice Plan .................................................................................................... 11

III.  ARGUMENT ............................................................................................................ 12

      A.    The Court Should Grant Final Certification of the Settlement Class Under
            Federal Rules of Civil Procedure 23(a) and 23(b)(2) .......................................... 12

            1.    Rule 23(a) Factors ...................................................................................... 13

                  a.    Numerosity Under Rule 23(a)(1) ................................................. 13

                  b.    Commonality Under Rule 23(a)(2) .............................................. 14

                  c.    Typicality Under Rule 23(a)(3) .................................................... 14

                  d.    Adequacy of Representation Under Rule 23(a)(4) ...................... 15

            2.    The Settlement Class Should Be Certified Under Rule 23(b)(2) ............... 16

      B.    Notice Was Provided in Accordance with the Court-Approved Notice Plan
            that Satisfied the Requirements of Rule 23 ......................................................... 19

      C.    The Settlement Agreement Merits Final Approval Under Rule 23(e)(2)
            and the Applicable *Girsh* & *Prudential* Factors ................................................ 20

            1.    Settlement Class Counsel and Settlement Class Representatives
                  Have Adequately Represented the Class (Rule 23(e)(2)(A)) ................. 23

            2.    The Settlement Was Negotiated at Arm's Length (Rule
                  23(e)(2)(B)) ............................................................................................... 25

3.    The MAP Benefits Provided to the Settlement Class Are Adequate, Particularly in Light of the Substantial Risks of Continued Litigation (Rule 23(e)(2)(C) and *Girsh* and *Prudential* Analysis) .......... 26

    a.    Complexity, Expense, Delay, and Risks of Continued Litigation ................................................................................ 26

    b.    The Reaction of the Class to the Settlement ............................... 28

    c.    The Stage of the Proceedings and Sufficiency of Discovery ....... 29

    d.    Likelihood of Maintaining the Class Action Through Trial ........ 30

    e.    The Reasonableness of the Settlement ......................................... 31

    f.    The Request for Attorneys' Fees Is Reasonable ......................... 34

4.    The Proposed Settlement Treats Settlement Class Members Equitably Relative to Each Other ........................................................ 35

D.    The Court Should Overrule the Objections and Approve the Settlement ............ 36

1.    The Court Should Overrule Vague, General, Non-Specific Objections .......................................................................................... 37

2.    The Court Should Overrule Objections to the Sufficiency of the Settlement .................................................................................... 38

    a.    The MAP Research Will Be Independent, Relevant, and Subject to Judicial Oversight ......................................................... 41

    b.    Settlement Class Members Can Pursue Individual Claims for Payment of Their Medical Monitoring Expenses or Personal Injury Claims ................................................................... 43

3.    The Court Should Overrule Objections to the Non-Opt Out Settlement Class .......................................................................... 44

4.    Objections to the Notice and Objection Process Have No Merit ............. 46

5.    Objections to the Fee Motion Lack Merit ................................................ 47

6.    The Court Should Overrule All Remaining Objections ........................... 50

IV.    CONCLUSION ................................................................................................ 53

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*1988 Tr. for Allen Child. Dated 8/8/88 v. Banner Life Ins. Co.*,
   28 F.4th 513 (4th Cir. 2022) ......................................................................... 37

*Adam X. v. New Jersey Dep't of Corr.*,
   2022 WL 621089 (D.N.J. Mar. 3, 2022) ....................................................... 13

*Berry v. Schulman*,
   807 F.3d 600 (4th Cir. 2015) .................................................................. 13, 33

*Bland v. PNC Bank, N.A.*,
   2016 WL 10520047 (W.D. Pa. Dec. 16, 2016) ............................................. 18

*Boeing Co. v. Van Gemert*,
   444 U.S. 472 (1980) ...................................................................................... 49

*Bowling v. Pfizer, Inc.*,
   143 F.R.D. 141 (S.D. Ohio 1992) ............................................................ 32, 43

*Calhoun v. Invention Submission Corp.*,
   2023 WL 2411354 (W.D. Pa. Mar. 8, 2023) .......................................... passim

*Cole's Wexford Hotel, Inc. v. UPMC & Highmark Inc.*,
   2016 WL 6236892 (W.D. Pa. July 29, 2016) ................................................ 23

*Collier v. Montgomery Cnty. Hous. Auth.*,
   192 F.R.D. 176 (E.D. Pa. 2000) ....................................................... 16, 18, 32

*Comm'rs of Pub. Works of City of Charleston v. Costco Wholesale Corp.*,
   2024 WL 1004697 (D.S.C. Mar. 8, 2024) .................................................... 18

*Ehrheart v. Verizon Wireless*,
   609 F.3d 590 (3d Cir. 2010) .......................................................................... 20

*Girsh v. Jepson*,
   521 F.2d 153 (3d Cir. 1975) .......................................................................... 22

*Harris v. Pernsley*,
   654 F. Supp. 1042 (E.D. Pa. 1987) ............................................................... 43

*Harshbarger v. Penn Mut. Life Ins. Co.*,
   2017 WL 6525782 n.5 (E.D. Pa. Dec. 20, 2017) .................................... 38, 45

*Henderson v. Volvo Cars of N. Am. LLC*,
   2013 WL 1192479 (D.N.J. Mar. 22, 2013) ................................................... 40

*Hyland v. Navient Corp.*,
   48 F.4th 110 (2d Cir. 2022) ................................................................. 13, 16, 32, 33

*In re All-Clad*,
   2023 WL 2071481 ................................................................................................. 29

*In re Am. Fam. Enterprises*,
   256 B.R. 377 (Bankr. D.N.J. 2000) ...................................................................... 45

*In re Am. Invs. Life Ins. Co. Annuity Mktg. & Sales Pracs. Litig.*,
   263 F.R.D. 226 (E.D. Pa. 2009) ............................................................................ 52

*In re Baby Prods. Antitrust Litig.*,
   708 F.3d 163 (3d Cir. 2013) ................................................................... 22, 41, 42

*In re Budeprion XL Mktg. & Sales Litig.*,
   2012 WL 2527021 (E.D. Pa. July 2, 2012) ................................................. passim

*In re Cendant Corp. Litig.*,
   264 F.3d 201 (3d Cir. 2001) .................................................................................. 28

*In re Diet Drugs (Phentermine, Fenfluramine, Dexfenfluramine) Prods. Liab. Litig.*,
   1999 WL 673066 (E.D. Pa. Aug. 26, 1999) .......................................................... 18

*In re Diet Drugs*,
   2000 WL 1222042 (E.D. Pa. Aug. 28, 2000) ......................................... 16, 32, 43

*In re Gen. Motors Corp. Pick-Up Truck Fuel Tank Prod. Liab. Litig.*,
   55 F.3d 768 (3d Cir. 1995) .................................................................................... 21

*In re Google Inc. Cookie Placement Consumer Priv. Litig.*,
   934 F.3d 316 (3d Cir. 2019) ........................................................................... 20, 41

*In re Google Inc. St. View Elec. Commc'ns Litig.*,
   21 F.4th 1102 (9th Cir. 2021) ............................................................................... 49

*In re Google Location Hist. Litig.*,
   2024 WL 1975462 (N.D. Cal. May 3, 2024) ........................................................ 49

*In re High-Tech Emp. Antitrust Litig.*,
   2015 WL 5159441 (N.D. Cal. Sept. 2, 2015) ....................................................... 39

*In re Imprelis Herbicide Mktg., Sales Pracs. & Prod. Liab. Litig.*,
   296 F.R.D. 351 (E.D. Pa. 2013) ..................................................................... 28, 40

*In re Mexico Money Transfer Litig. (W. Union & Valuta)*,
   164 F. Supp. 2d 1002 (N.D. Ill. 2000) ................................................................. 40

*In re Nat'l Football League Players Concussion Inj. Litig.*,
  307 F.R.D. 351 (E.D. Pa. 2015) ....................................................................... 32, 42

*In re Netflix Privacy Litig.*,
  2013 WL 1120801 (N.D. Cal. Mar. 18, 2013) ............................................................ 49

*In re NFL Players Concussion Inj*ury Litig.,
  821 F.3d 41*0 ("NF*L III") .................................................................... 25, 26, 29

*In re Oil Spill by Oil Rig Deepwater Horizon*,
  295 F.R.D. 112 (E.D. La. 2013) ...................................................................... 32

*In re Philips Recalled CPAP, Bi-Level PAP, & Mech. Ventilator Prod. Litig.*,
  347 F.R.D. 113 (W.D. Pa. 2024) ................................................................. passim

*In re Prudential Ins. Co. Am. Sales Prac. Litig. Agent Actions*,
  148 F.3d 283 (3d Cir. 1998) .................................................................... passim

*In re Ry. Indus. Empl. No-Poach Antitrust Litig.*,
  2020 WL 13852931 (W.D. Pa. Aug. 26, 2020) ........................................................ 23

*In re Suboxone (Buprenorphine Hydrochloride & Naloxone) Antitrust Litig.*,
  2024 WL 815503 (E.D. Pa. Feb. 27, 2024) ......................................................... 23

*In re Sunrise Sec. Litig.*,
  131 F.R.D. 450 (E.D. Pa. 1990) ..................................................................... 36

*In re Three Mile Island Litig.*,
  557 F. Supp. 96 (M.D. Pa. 1982) .................................................................... 32

*In re Warfarin Sodium Antitrust Litig.*,
  391 F.3d 516 (3d Cir. 2004) ........................................................... 21, 23, 30, 31

*In re Welding Fume Prods. Liab. Litig.*,
  245 F.R.D. 279 (N.D. Ohio 2007) ................................................................... 30

*Jackson v. Wells Fargo Bank, N.A.*,
  136 F. Supp. 3d 687 (W.D. Pa. 2015) ........................................................... 28, 47

*Kaplan v. Chertoff*,
  2008 WL 200108 (E.D. Pa. Jan. 24, 2008) ........................................................... 19

*Lane v. Facebook, Inc.*,
  2010 WL 2076916 (N.D. Cal. May 24, 2010) ........................................................ 49

*Lane v. Facebook, Inc.*,
  2010 WL 9013059 (N.D. Cal. Mar. 17, 2010) ....................................................... 49

*Legere-Gordon v. Firstcredit Inc.*,
2021 WL 276695 (D. Idaho Jan. 26, 2021) ........................................................................ 33

*Liberty Res., Inc. v. City of Philadelphia*,
2023 WL 3204018 (E.D. Pa. May 1, 2023) ................................................................. passim

*Marshall v. Nat'l Football League*,
787 F.3d 502 (8th Cir. 2015) ............................................................................................ 32

*Murphy v. Charles Tyrwhitt, Inc.*,
2020 WL 8513583 (W.D. Pa. Nov. 25, 2020) ............................................................. 13, 17

*Murphy v. Eyebobs, LLC*,
638 F. Supp. 3d 463 (W.D. Pa. 2021) .................................................................. 17, 20, 43

*Murphy v. Hundreds Is Huge, Inc.*,
638 F. Supp. 3d 486 (W.D. Pa. 2022) .............................................................. 14, 16, 17, 43

*Murphy v. Le Sportsac, Inc.*,
2023 WL 375903 (W.D. Pa. Jan. 24, 2023) ................................................................. passim

*Reinig v. RBS Citizens, N.A.*,
912 F.3d 115 (3d Cir. 2018) .............................................................................................. 14

*Reyes v. Netdeposit, LLC*,
802 F.3d 469 (3d Cir. 2015) .............................................................................................. 14

*Serio v. Wachovia Sec., LLC*,
2009 WL 900167 (D.N.J. Mar. 31, 2009) ......................................................................... 45

*Sourovelis v. City of Phila.*,
515 F. Supp. 3d 343 (E.D. Pa. 2021) ................................................................................ 18

*Taha v. Bucks Cnty. Pennsylvania*,
2020 WL 7024238 (E.D. Pa. Nov. 30, 2020) ............................................................... 37, 51

*Talone v. Am. Osteopathic Ass'n*,
2018 WL 6318371 (D.N.J. Dec. 3, 2018) .......................................................................... 17

*Vaccaro v. New Source Energy Partners, L.P.*,
2017 WL 6398636 n.3 (S.D.N.Y. Dec. 14, 2017) ............................................................. 47

*Varacallo v. Mass. Mut. Life Ins. Co.*,
226 F.R.D. 207 (D.N.J. 2005) ........................................................................................... 46

*Walker v. Highmark BCBSD Health Options, Inc.*,
2022 WL 17592067 (W.D. Pa. Dec. 13, 2022) ................................................................. 25

*Walsh v. Great Atl. & Pac. Tea Co.*,
   726 F.2d 956 (3d Cir. 1983) ........................................................................ 19

*Wetzel v. Liberty Mut. Ins. Co.*,
   508 F.2d 239 (3d Cir. 1975) ................................................................. 15, 45

*Zanghi v. Freightcar Am., Inc.*,
   2016 WL 223721 (W.D. Pa. Jan. 19, 2016) ............................................... 52

**Statutes**

28 U.S.C. § 1715(b) ........................................................................................ 11

**Rules**

Fed. R. Civ. P. 8(a) ........................................................................................ 37

Fed. R. Civ. P. 12 ............................................................................................ 7

Fed. R. Civ. P. 12(b)(2) .................................................................................... 4

Fed. R. Civ. P. 12(b)(6) .................................................................................... 5

Fed. R. Civ. P. 23(a) ................................................................................. passim

Rule 23(b)(2) ........................................................................................... passim

Fed. R. Civ. P. 23(c)(2)(A) ............................................................................ 19

Fed. R. Civ. P. 23(e) ...................................................................................... 36

Fed. R. Civ. P. 23(e)(1)(B) ............................................................................ 19

Fed. R. Civ. P. 23(e)(2) ............................................................................ passim

Fed. R. Civ. P. 23(e)(3) .............................................................................. 21, 22

Fed. R. Civ. P. 23(e)(5) .................................................................................. 36

Fed. R. Civ. P. 23(e)(5)(A) ............................................................................ 37

Fed. R. Civ. P. 23(f) ...................................................................................... 27

Fed. R. Evid. 702 ........................................................................................ 8, 27

**Regulations**

45 CFR § 164.508 ............................................................................................ 9

**Other Authorities**

2 NEWBERG AND RUBENSTEIN ON CLASS ACTIONS § 4:29 (6th ed.) .............................................. 17

4 NEWBERG AND RUBENSTEIN ON CLASS ACTIONS § 13:50 (6th ed.) .......................................... 25

## I.      __INTRODUCTION__

Settlement Class Representatives seek final certification of the Settlement Class under Rule 23(b)(2), final approval of the settlement and release of Medical Monitoring Claims, and entry of Final Judgment.[1] The Settlement entails payment of $25 million by the Philips Defendants that will be used to fund significant equitable relief for all U.S. users of the Recalled Devices through Medical Advancement Program ("MAP") Benefits, while also preserving each Class Member's right to pursue individual claims for payment of medical monitoring expenses they incur or incurred on their own behalf and to bring personal injury claims if warranted. The Settlement resolves class-wide claims for medical monitoring relief against the Released Parties and serves as an excellent complement to the other settlements that have resulted from this MDL involving approximately 10.8 million CPAP, BiPAP, and ventilator devices containing PE-PUR foam that Philips RS has recalled.

As part of this Settlement, the Philips Defendants have agreed to pay $25 million to fund the equitable MAP Benefits for a period of fifteen years. Importantly, because the Recalled Devices are prescription medical devices, all Settlement Class Members have received their Recalled Device by prescription of a physician, and their health is already being monitored. The MAP Benefits are meaningful because they provide Settlement Class Members, along with their prescribing and treating physicians, with an opportunity to assess their risk of injury, or lack of risk of injury, in light of the most up-to-date and relevant science and guidance related to any medical conditions that may result from use of the Recalled Devices. This type of program, which

---

[1] Unless otherwise noted, capitalized terms have the meanings set forth in the Amended Class Settlement Agreement and Release of Medical Monitoring Claims (ECF 2862-1) ("Settlement Agreement," "Settlement" or "SA"). The exhibits to the Settlement Agreement are filed on the docket at ECF 2858-1. This Brief provides a summary of the Settlement and is not intended to supplant its terms.

provides equitable benefits to every member of the Settlement Class with no direct monetary payment to Class Members, is appropriate for certification under Fed. R. Civ. P. 23(b)(2).

As the Court previously recognized in its Preliminary Approval Order ("PAO") (ECF 2864), the Settlement was the result of extensive good faith, arm's-length negotiations with the assistance and oversight of the Court-appointed Settlement Mediator, Magistrate Judge Diane Welsh (Ret.). PAO at 1. It was not entered into until after extensive briefing on Defendants' motions to dismiss before both Special Master Vanaskie and this Court, as well as extensive discovery, so the Parties were fully aware of the strengths and weaknesses of the claims and defenses and the risks of continued litigation.

This Settlement follows the resolution of the other claims in this litigation. The Economic Loss Class Settlement received final approval on April 25, 2024 (ECF 2736), and the private Personal Injury Master Settlement Agreement was entered into on May 9, 2024 (ECF 2768-1). Members of the Settlement Class are also members of the Economic Loss Settlement Class and, therefore eligible for significant cash payments and Extended Warranties. In addition, their ability to maintain Personal Injury Claims is not affected by the proposed Medical Monitoring Settlement, nor is their ability to bring individual claims on their own behalf for payment of medical monitoring expenses related to their use of a Recalled Device. SA §§ 1.21, 1.28, 4.1, 4.5.1, 4.5.2.

When weighing the valuable relief provided under the Settlement against the substantial hurdles, risks, costs, and delays from continuing to litigate the Medical Monitoring Claims, the Settlement is an excellent result. The risks of continuing to litigate those claims include the potential for: adverse rulings with respect to the pending Motions to Dismiss the Medical Monitoring Complaint, [2] particularly in light of the Special Master's initial Report &

---

[2] The operative complaint is the Consolidated Second Amended Class Action Complaint for

Recommendation; adverse rulings with respect to experts on threshold levels of exposure and causation; an inability to find a meaningful medical monitoring testing protocol given that there is no "signature" injury and there were numerous potential injuries identified in the Recall notice; and an adverse jurisdictional ruling with respect to the Philips Defendants' parent entity KPNV, putting in doubt the availability of funding or other relief for any medical monitoring program. Moreover, certification of a nationwide class, or even numerous state subclasses, would be challenging in the context of a contested motion for certification of a litigation class, particularly in light of the lack of a signature injury, individualized circumstances relating to Class Members' use of the Recalled Devices, and myriad differences among governing state laws. The Settlement avoids all of these risks and will provide considerable, tangible benefits to the entire Settlement Class for fifteen years.

The reaction of the Class to the Settlement has been overwhelmingly positive. Of millions of Class Members, only 257 have objected, an infinitesimally small fraction (less than 1/100 of 1%) of the Class. The objections are unfounded and, as set forth below, do not provide grounds for denying final approval. Many objectors provide no substance or reason for their objection. Others argue that the Settlement should provide monetary compensation to the Class Members, but do not identify any procedural, factual, legal, or other deficiency in the negotiation process or the Settlement itself. A number of the objectors complain about non-medical monitoring related issues such as the Recall, their economic losses, or their health condition, but do not assert any dissatisfaction with the Medical Monitoring Settlement or the MAP Benefits. Moreover, as the Court knows, Personal Injury and Economic Loss Claims are not released as part of the Medical Monitoring Settlement, and individual claims for payment of an individual's medical monitoring

---

Medical Monitoring and Demand for Jury Trial (ECF 815) (the "Medical Monitoring Complaint" or "Complaint").

expenses are expressly preserved. Settlement Class Counsel respectfully submit that final certification of the Settlement Class and Final Approval of the Settlement are warranted.

## II.   STATEMENT OF FACTS

### A.   Procedural Background of the Medical Monitoring Litigation

On October 17, 2022, Plaintiffs filed the Medical Monitoring Master Complaint on behalf of themselves and all others similarly situated. ECF 815. Plaintiffs alleged that the PE-PUR foam in the Recalled Devices is susceptible to hydrolysis, causing it to degrade and expose patients to toxic particles and VOCs, *e.g.*, Complaint ¶¶ 6, 9, 11, some of which are known or suspected carcinogens ("foam toxins"), *id.* ¶¶ 194-227. As a result, Plaintiffs alleged, users inhaled and/or ingested the foam toxins, putting users at an increased risk of illness and disease, and making it medically necessary that they undergo monitoring, diagnostic testing, clinical examinations, and consultations for the early detection of such illness and disease. *See, e.g.*, *id.* ¶¶ 367-86. Accordingly, Plaintiffs sought the costs of such medical monitoring or, in the alternative, an award of the reasonable and necessary costs for the establishment of a court-supervised program of medical monitoring and diagnostic testing through equitable relief. *See id.* ¶ 386; *see also, e.g.*, ¶¶ 451, 464, 478, 497.

Plaintiffs alleged claims for medical monitoring as an independent cause of action, *id.*, ¶¶ 481-99, as well as a remedy for other state law claims, including traditional tort claims, and also claims for violations of state product liability laws and breach of warranties. Plaintiffs sought certification of a putative nationwide class (under Pennsylvania law), *id.*, ¶ 387, or, alternatively, individual state law subclasses under the laws of 42 jurisdictions, *id.*, ¶¶ 389-428.

The Philips Defendants' parent entity, KPNV, filed a Motion to Dismiss the Medical Monitoring Complaint for lack of personal jurisdiction pursuant to Fed. R. Civ. P. 12(b)(2) (the "Jurisdictional Motion") (ECF 1353) that was considered in conjunction with overlapping Rule

12(b)(2) motions to dismiss the Economic Loss Complaint (ECF 913) and Master Personal Injury Complaint (ECF 1354). The Jurisdictional Motion was subject to jurisdictional discovery, renewed briefing (ECF 2173/2186, 2204/2206), an evidentiary hearing, and the submission of competing proposed findings of fact and conclusions of law (ECF 2388/2389, 2392/2394). In addition, the remaining Philips Defendants, with the exception of Philips RS, filed a Motion to Dismiss the Medical Monitoring Complaint that implicated similar issues with respect to direct liability and vicarious liability that were at issue in the Jurisdictional Motion (ECF 1357, 1359, 1746/1747, 1851/1935). The Jurisdictional Motion and the motion of the other Philips Defendants had not been decided by the time the Parties reached the Settlement.

In addition, Philips RS filed a Motion to Dismiss the Medical Monitoring Complaint for failure to state a claim pursuant to Rule 12(b)(6) (ECF 1351), which was joined by the other Philips Defendants (ECF 1359 at 4 n.3). Philips RS made numerous challenges to Plaintiffs' claims for medical monitoring relief, including the viability of medical monitoring as an independent cause of action in 5 of the 11 jurisdictions where Plaintiffs alleged such claims (ECF 1352 at 25) and the legal sufficiency of numerous causes of action for which Plaintiffs alleged medical monitoring could be a remedy (*id.* at 8-9).

Philips RS also attacked the threshold elements of medical monitoring, arguing that Plaintiffs did not adequately allege exposure to a toxic substance, did not allege exposure to a toxic substance in sufficient levels to result in an increased risk of disease, did not allege an increased risk of any particular disease, and did not present any medical monitoring program that could be designed to detect such a disease. *Id.* at 13-25. With respect to exposure, Philips argued that Plaintiffs could, at best, argue that they were "*potentially* exposed" or had "*a risk of exposure*" because the PE-PUR foam did not degrade and off-gas in all of the Recalled Devices. *Id.* at 13-14

5

(emphasis in original). Finally, Philips argued that Plaintiffs did not allege a present physical injury (a manifest physical injury), which it argued is required under the laws of the majority of the jurisdictions at issue, and that the allegations of subcellular injury were insufficient to state a medical monitoring claim. *Id.* at 9-13.

These issues were fully briefed and argued before Special Master Vanaskie on July 11, 2023. There was no dispute as to the claims under the law of 20 jurisdictions—10 allowing medical monitoring claims and 10 where Plaintiffs were not pursuing medical monitoring claims—which left 32 jurisdictions in dispute ("Disputed Jurisdictions").[3] The Special Master issued a Report and Recommendation ("R&R") on September 28, 2023, recommending dismissal of Plaintiffs' claims for medical monitoring relief in 30 of the 32 Disputed Jurisdictions. ECF 2273. The Parties each filed objections to the R&R (ECF 2314, 2316, 2368, 2371), and the Court issued an Opinion and Order on February 14, 2024 (ECF 2521 (Opinion) / ECF 2522 (Order)). In its Opinion, the Court remanded the matter back to the Special Master for additional proceedings, including additional briefing and, among other things, a jurisdiction-by-jurisdiction roadmap as to the viability of Plaintiffs' Medical Monitoring Claims. *See* ECF 2521 at 18-20. Renewed briefing on this Motion to Dismiss was ongoing at the time of settlement.

### B.    Discovery Related to the Medical Monitoring Claims

The Parties engaged in extensive discovery of the relevant facts. *See* Class Counsel Declaration in Support of Motion for Preliminary Approval of Medical Monitoring Settlement (ECF 2767-2) ("Counsel Decl.") ¶¶ 2, 4. The Parties propounded and negotiated responses to

---

[3] The Disputed Jurisdictions were: Arizona, Arkansas, Colorado, Connecticut, Delaware, Georgia, Hawaii, Idaho, Illinois, Indiana, Iowa, Kansas, Maine, Massachusetts, Minnesota, Montana, Nebraska, New Hampshire, New Jersey, New Mexico, New York, North Carolina, Ohio, Oklahoma, Oregon, Puerto Rico, Rhode Island, South Carolina, Tennessee, Texas, Virginia, and Washington. Plaintiffs later conceded, however, that Delaware, New Hampshire, and North Carolina were no longer viable because of recent developments in the case law.

requests for production of documents and interrogatories; and exchanged millions of documents on all relevant issues, including extensive testing relating to general causation, both prior to and after the Recall. *Id.* ¶ 4. The Parties also served approximately 100 subpoenas for documents from non-parties pursuant to Rule 45 and received thousands of documents in response. *Id.* Plaintiffs reviewed and analyzed these document productions. In addition, the Parties took more than 50 depositions, including those of third parties and many named medical monitoring Plaintiffs. *Id.*

### C.    Mediation and Settlement

The proposed Settlement is the product of an arm's-length, good faith negotiation process overseen by the Settlement Mediator, Hon. Diane M. Welsh (Ret.), who also oversaw the extensive and protracted negotiations among the Parties resulting in the resolution of the Economic Loss Claims and the Personal Injury Claims. The negotiations regarding the claims for medical monitoring relief were well-informed due to the extensive legal briefing and analysis and discovery. Counsel Decl. ¶¶ 2-4, 6. Settlement Class Counsel fully understood the significant risks of continuing to litigate these claims, including the risk of: not succeeding on the merits for any of the reasons advanced by the Philips Defendants in their motions; not being able to certify a litigation class; not being able to construct a meaningful medical monitoring program in the absence of a signature injury; and not being able to ensure payment for such a program from the Philips Defendants if KPNV or other non-Philips RS Defendants were dismissed on their Rule 12 challenges, including as to personal jurisdiction. *E.g.*, *id.* ¶¶ 5, 8. Further, given the individualized issues attendant to claims seeking medical monitoring relief, the Parties considered numerous factors impacting the Settlement Class as a whole to reach a resolution that makes cohesive equitable benefits available to all Settlement Class Members. *Id.* ¶ 6. On April 26, 2024, the Parties executed a Term Sheet setting forth the general terms of the Settlement and then negotiated the terms of the Settlement Agreement. *Id.* ¶ 7. Throughout the process, the Parties focused exclusively

on benefits for the Settlement Class, and there was no discussion or negotiation of attorneys' fees, costs or expenses for Settlement Class Counsel, or service awards. *Id*. ¶¶ 7, 12.

The proposed comprehensive MAP Benefits will confer significant and meaningful equitable relief upon the Settlement Class. *Id*. ¶ 9. The Settlement represents Settlement Class Counsel's best efforts and judgment after thoroughly investigating the case, and considering the uncertainty of the viability of the claims for medical monitoring relief; the difficulties in achieving and maintaining class certification; the substantial risks, burdens, delays, and costs of continued litigation, including on Fed. R. Evid. 702 motions, trial, and appeals; and the best interests of the Settlement Class. *Id*. ¶¶ 8, 11.

### D.   Funding for the MAP Benefits

The Philips Defendants will pay $25 million into a Settlement Fund that will be used to perform the obligations set forth in the Settlement Agreement. SA § 2.1. The Philips Defendants have already made the First Payment of $1.9 million into the Settlement Fund, and the remainder (the Second Payment) shall be paid within 14 days of the Effective Date. *Id.* §§ 2.4.1, 2.5. The Settlement Fund shall be used to provide the MAP Benefits for the Settlement Class. *Id.* §§ 2.5-2.6. Payments made by the Philips Defendants are non-reversionary, meaning that the Philips Defendants shall not be entitled to a return of the payments unless the Settlement does not become Final, in which case any amounts remaining from the First Payment and any other additional payments required will be returned to the Philips Defendants. *Id.* § 2.8. Net interest from the Settlement Fund will accrue to the benefit of the Settlement Class and may also be used to provide MAP Benefits to the Settlement Class. *Id.* § 2.7.

### E.   The MAP Benefits

The Settlement will create and provide a Medical Advancement Program that will offer meaningful equitable benefits for the Settlement Class. *Id.* §§ 1.17, 3. The MAP Benefits will be

provided for fifteen years, starting with the Effective Date. *Id.* § 1.17. The MAP Benefits will be implemented by the Settlement Administrator, Wolf Global Compliance ("Wolf Global"), in consultation with the Parties, and with oversight by the Court.[4] *Id.* § 5.2; PAO ¶ 7 (appointing Wolf Global as Settlement Administrator). The MAP benefits include:

   *MAP Research*: the Settlement Fund will provide grants for independent medical research related to the advancement of public knowledge regarding the detection, diagnosis, and/or treatment of those injuries alleged to have been caused by use of the Recalled Devices. SA § 3.1.1. The Settlement Administrator will work with the Parties and appropriate experts, with oversight from this Court, to determine the scope and parameters of the MAP Research, and the results of such Research, to the extent medically relevant and valid conclusions are reached, will be published on the Settlement Website discussed below and thus disseminated to Settlement Class Members. *Id.* §§ 3.1.2-3.1.3.

   *MAP Registry*: the Settlement Administrator, in consultation with the Parties, will establish a research registry to which Settlement Class Members can elect to submit authorizations for the release and disclosure of medical information protected by HIPAA, 45 CFR § 164.508, for purposes of review and evaluation in connection with the MAP Research. *Id.* § 3.2.1.

   *MAP Resources*: the Settlement Administrator, in consultation with the Parties, will also establish and maintain an interactive website ("Settlement Website") for delivery of MAP Resources to Settlement Class Members for purposes of increasing access to and an understanding of Relevant Medical Information and Guidance. *Id.* § 3.3.1. The Settlement Administrator, in consultation with the Parties, will identify appropriate materials for inclusion on the Settlement Website, based upon the current and ongoing relevant published medical literature, scientific

---

[4] The guidelines regarding the Settlement Administrator's implementation of the MAP Benefits are set forth in Exhibit 3 to the Settlement Agreement.

studies, and testing with respect to Recalled Devices conducted by independent outside laboratories, as well as information provided by the FDA. *Id.* § 3.3.2. The Settlement Administrator shall ensure that the Settlement Website is constructed in a user-friendly format and that the Relevant Medical Information and Guidance is appropriately annotated and/or summarized for affected individuals who do not have a medical or scientific background. *Id.* § 3.3.3. The Settlement Administrator will post Relevant Medical Information and Guidance and updates on the Settlement Website and shall disseminate the same to Settlement Class Members who register to receive notifications of the Relevant Medical Information and Guidance. *Id.* § 3.3.4.

### F.      Releases

By virtue of the Settlement, all Settlement Class Members agree to release their Medical Monitoring Claims against the Released Parties. *Id.* §§ 1.21, 1.28, 4.5.1. Settlement Class Members are not releasing individual claims for payment of medical monitoring expenses they incur on behalf of themselves but are releasing the ability to bring such claims on a class-wide or aggregate/mass/group basis and/or to seek injunctive relief. *Id.* §§ 1.21, 1.28, 4.5.1, 4.5.2. In addition, Settlement Class Members are not releasing any Personal Injury Claims they may have against the Philips Defendants or other Released Parties, nor are they releasing any Economic Loss Claims through the Settlement. *Id.* §§ 1.28, 4.1, 4.5.1.

### G.      Attorneys' Fees, Costs, and Service Awards

The Settlement Agreement provided that Settlement Class Counsel would submit a request for attorneys' fees, reimbursement of costs and expenses, and Service Awards for the plaintiffs and Class Representatives in the aggregate amount of up to $5 million, which represents 20% of the $25 million payment by the Philips Defendants into the Settlement Fund. SA § 15.1. Settlement Class Counsel filed a Motion for an Award of Attorneys' Fees, Costs, and Service Awards to Class Plaintiffs on August 26, 2024 (ECF 2949) ("Fee Motion") and a Brief in support thereof (ECF

2950) ("Fee Brief"). As discussed in the Fee Brief, the requested attorneys' fees of $4,369,754.57 represent a negative multiplier of 0.72 of the $6,084,024.90 lodestar related to time expended solely on litigation of the Medical Monitoring Claims. Fee Brief at 33. Any fees and costs awarded by the Court will be paid from the $25 million Settlement Fund.

### H.  The Notice Plan

In accordance with the Court's Preliminary Approval Order, direct individual notice was sent to over 4 million Settlement Class Members. *See* Declaration of Orran L. Brown, Sr. of BrownGreer PLC ("BrownGreer") Regarding Compliance with Notice Plan, dated October 8, 2024 (the "BG Decl.") (ECF 3003-1) at ¶¶ 10, 12, 15-16. The Parties leveraged resources developed through dissemination of notice of the Economic Loss Settlement, including an extensive Class list of postal and email addresses for users of Recalled Devices. This list was created from data provided by Users who registered Recalled Devices in the Recall, as well as other User information collected by Philips Respironics from Durable Medical Equipment providers as part of the Recall. ECF 2657-1 ¶ 7; *see also* ECF 2213-3 ¶ 21. In addition, notice of the Medical Monitoring Settlement was posted on the Settlement Website, which was launched on the first day of the Notice period (BG Decl. ¶ 18), as well as the Court's website for MDL 3014 (*id.* ¶ 28). Class Members visiting the Economic Loss Settlement website and the Personal Injury Settlement website were also informed of the Settlement Website for the Medical Monitoring Settlement. *Id.* ¶ 27. Further, all Class Members using the DreamMapper App were notified of the Settlement and directed to the Settlement Website. *Id.* ¶ 17. Finally, the Notice Administrator also supplied the notice required under the provisions of the Class Action Fairness Act, 28 U.S.C. § 1715(b). Declaration of Orran L. Brown, Sr. of BrownGreer PLC Regarding Compliance with Provisions of the Class Action Fairness Act, 28 U.S.C. § 1715(b) (ECF 3004-1).

III.   <u>ARGUMENT</u>

    A.    **The Court Should Grant Final Certification of the Settlement Class Under Federal Rules of Civil Procedure 23(a) and 23(b)(2)**

The Court previously conditionally certified, for settlement purposes only, a Settlement Class defined as:

> [a]ll individuals in the United States, including its Territories (American Samoa, Guam, the Northern Mariana Islands, Puerto Rico, and the U.S. Virgin Islands), and the District of Columbia, including United States citizens, United States residents, and United States military, diplomatic personnel and employees living or stationed overseas, who have used a Recalled Device.
>
> EXCLUDED from the Settlement Class are: (a) Defendants and their officers, directors, and employees; and (b) the MDL Court, Settlement Mediator, and Special Masters assigned to the MDL.

PAO ¶ 14.

The Court found that the Settlement Class satisfied all of the prerequisites for class certification under Rules 23(a) and 23(b)(2) of the Federal Rules of Civil Procedure, namely, numerosity, commonality, typicality, adequacy, and that "the Philips Defendants have acted on grounds generally applicable to the Settlement Class as a whole, so that final injunctive relief is appropriate respecting the Settlement Class as a whole." *Id*. ¶ 16. No new information has developed to suggest that the Court's conditional certification of the Settlement Class under Rule 23 was improper. As set forth previously[5] and as summarized below, final certification of the Settlement Class under Rules 23(a) and 23(b)(2) is warranted.

Rule 23(b)(2) class certification is proper where, as here, the "primary relief provided is injunctive and the challenged conduct of the defendants is such that injunctive relief would be appropriate." *Murphy v. Le Sportsac, Inc*., 2023 WL 375903, at *4 (W.D. Pa. Jan. 24, 2023); *see*

---

[5] Preliminary Approval Brief (ECF 2767) ("PA Br.") at 25-33.

*also Murphy v. Charles Tyrwhitt, Inc*., 2020 WL 8513583, at *4 (W.D. Pa. Nov. 25, 2020) (same), *report and recommendation adopted*, 2021 WL 21510 (W.D. Pa. Jan. 4, 2021); *Adam X. v. New Jersey Dep't of Corr*., 2022 WL 621089, at *5 (D.N.J. Mar. 3, 2022) (certifying Rule 23(b)(2) settlement class where "the injunctive relief [provided by the settlement] benefits the entire class"); *In re Budeprion XL Mktg. & Sales Litig*., 2012 WL 2527021, at *11 (E.D. Pa. July 2, 2012) ("The Court will not subvert a settlement negotiated at arm's length because a litigation class may have presented difficult issues for certification at an earlier stage in the proceedings. The language of Rule 23(b)(2) is clear: such a class may be certified if the party opposing the class has acted in a way applicable generally to the class so that final injunctive relief is appropriate respecting the class as whole. Having satisfied that standard, no more is required."); *Berry v. Schulman*, 807 F.3d 600, 609 (4th Cir. 2015) ("As the district court explained, this is a paradigmatic Rule 23(b)(2) case: The 'meaningful, valuable injunctive relief' afforded by the Agreement is 'indivisible,' 'benefitting all [ ] members' of the (b)(2) Class at once.") (citation omitted); *Hyland v. Navient Corp.*, 48 F.4th 110, 120-21 (2d Cir. 2022) (affirming certification of (b)(2) settlement class after finding, among other things, that the settlement would benefit all class members by providing them with more information about Public Service Loan Forgiveness and helping them determine whether they have viable individual claims for damages), *cert. denied*, 143 S. Ct. 1747 (2023).

## 1.  Rule 23(a) Factors

### a.  Numerosity Under Rule 23(a)(1)

Rule 23(a)(1) requires that the class be "so numerous that joinder of all members is impracticable." Fed. R. Civ. P. 23(a)(1). Numerosity is easily met here, as there were over 10 million Recalled Devices sold or otherwise distributed in the United States, and the number of proposed Settlement Class Members is in the millions. *See* PAO ¶ 16; *see also In re Budeprion*

*XL*, 2012 WL 2527021, at *6 (numerosity "clearly" met where there were at least hundreds of thousands of class members).

### b.   Commonality Under Rule 23(a)(2)

The second prong of Rule 23(a) – commonality – "requires plaintiffs to show that 'there are questions of law or fact common to the class.'" *Calhoun v. Invention Submission Corp.*, 2023 WL 2411354, at *7 (W.D. Pa. Mar. 8, 2023) (quoting Fed. R. Civ. P. 23(a)(2)). This requirement is satisfied so long as the Settlement Class Members "share at least one question of fact or law in common with each other." *Reinig v. RBS Citizens, N.A.*, 912 F.3d 115, 127 (3d Cir. 2018) (citation omitted). "[T]he bar is not a high one." *Reyes v. Netdeposit, LLC*, 802 F.3d 469, 486 (3d Cir. 2015) (citation omitted); *see also Murphy v. Hundreds Is Huge, Inc*., 638 F. Supp. 3d 486, 496 (W.D. Pa. 2022) (noting the Third Circuit has said the commonality requirement is "'easily met' because a single issue of fact or law will suffice") (citation omitted). This Court previously noted that the common question "that looms largest over all putative class members is whether the devices in question were defective. Thus, the commonality threshold is also easily met." *In re Philips Recalled CPAP, Bi-Level PAP, & Mech. Ventilator Prod. Litig*., 347 F.R.D. 113, 124 (W.D. Pa. 2024) ("*Philips I*") (Conti, J.). For the same reasons, it is also met here. *See* PAO ¶ 16.

### c.   Typicality Under Rule 23(a)(3)

Rule 23(a) also requires that "the claims or defenses of the representative parties are typical of the claims or defenses of the class." Fed. R. Civ. P. 23(a)(3). "[E]ven relatively pronounced factual differences will generally not preclude a finding of typicality where there is a strong similarity of legal theories or where the claim arises from the same practice or course of conduct." *Le Sportsac, Inc*., 2023 WL 375903, at *3 (citation omitted); *see also In re Budeprion XL*, 2012 WL 2527021, at *7 (typicality satisfied "so long as 'the claims of the named plaintiffs and putative class members involve the same conduct by the defendant . . . regardless of factual differences'")

(citation omitted). Here, the claims of the proposed Settlement Class Representatives are typical because they all arose "from the same practice or course of conduct" by the Philips Defendants. *See Le Sportsac, Inc.*, 2023 WL 375903, at *3. All proposed Settlement Class Representatives used the Recalled Devices and suffered the same type of harm as the putative Settlement Class, including the risk of exposure to the alleged foam toxins; and potential increased risk of developing illness, disease, or disease processes that have not yet become manifest. *See, e.g.*, PAO ¶ 16.

### d.   Adequacy of Representation Under Rule 23(a)(4)

The adequacy requirement of Rule 23(a)(4) ensures that that "the representative parties will fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a)(4). "Adequate representation depends on two factors: '(a) the plaintiff's attorney must be qualified, experienced, and generally able to conduct the proposed litigation, and (b) the plaintiff must not have interests antagonistic to those of the class.'" *Calhoun*, 2023 WL 2411354, at *8 (quoting *Wetzel v. Liberty Mut. Ins. Co.*, 508 F.2d 239, 247 (3d Cir. 1975)); *see also In re Budeprion XL*, 2012 WL 2527021, at *7. Both requirements are met here. *See, e.g.*, PAO ¶ 16.

***Class Counsel.*** This Court has already recognized that Settlement Class Counsel are experienced in the prosecution of complex class actions. *See Philips I*, 347 F.R.D. at 125. Class Counsel diligently prosecuted the claims for medical monitoring and engaged in fully informed and arm's-length negotiations with Defendants that culminated in this Settlement. Counsel Decl. ¶¶ 2-6, 8.

***Class Representatives.*** Settlement Class Representatives fulfilled their responsibilities on behalf of the Settlement Class by working closely with Class Counsel throughout the litigation. *Id.* ¶ 10; Declarations of Settlement Class Representatives Marilynn Sweeney (attached hereto as Exhibit "1") and Elizabeth Lemus (attached hereto as Exhibit "2"). A finding of adequacy is appropriate here because "[t]he interests of the class representatives align with the interests of the

15

putative class members, and the class representatives have no discernable conflicts of interest." *Philips I*, 347 F.R.D. at 124-25; *see also Hundreds Is Huge*, 638 F. Supp. 3d at 497 (plaintiff's interests were the same as those of class members, and all had "a strong interest in establishing liability").

### 2.    The Settlement Class Should Be Certified Under Rule 23(b)(2)

***Equitable Relief***. The Philips Defendants will pay $25 million into a non-reversionary Settlement Fund that will be used to create and sustain the Medical Advancement Program providing MAP Benefits for Settlement Class Members for a period of fifteen years. SA §§ 1.17, 2.1, 2.5, 2.8. These benefits will be made available equally to all Settlement Class Members. This equitable relief warrants certification of a Rule 23(b)(2) class. *See, e.g., In re Diet Drugs*, 2000 WL 1222042, at *25, 54 (E.D. Pa. Aug. 28, 2000) ("*Diet Drugs II*") (noting that the settlement provided "equitable, injunctive and declaratory relief," including the creation of a fund to provide "medical research and education" that would "significantly contribute to the protection and advancement of the public health" with respect to health conditions related to defective drug); *Collier v. Montgomery Cnty. Hous. Auth.*, 192 F.R.D. 176, 185 (E.D. Pa. 2000) (preliminarily approving settlement that required defendant Housing Authority "to provide notice to the tenants of the potential risk for lead-based paint exposure, the hazards of such exposure, the symptoms of any poisoning, and precautions to be taken"), *final approval granted*, 2:97-cv-05286, ECF 80 (E.D. Pa. July 7, 2000); *Hyland v. Navient*, 48 F.4th at 119 & n.2 (affirming approval of settlement and certification of Rule 23(b)(2) non-opt out class where the relief "benefits the whole class by funding a nonprofit . . . that will help all borrowers learn whether or not they are eligible for loan forgiveness and 'provid[e] guidance on . . . applications or assistance in challenging denials'").

***Defendants Acted on Grounds Generally Applicable to the Class***. Courts in this District have found that certification of a Rule 23(b)(2) class is proper where, as here, the Defendants have

"acted or refused to act on grounds that apply generally to the class." *See, e.g., Hundreds Is Huge*, 638 F. Supp. 3d at 498 (quoting Fed. R. Civ. P. 23(b)(2)); *Murphy v. Eyebobs, LLC*, 638 F. Supp. 3d 463, 476 (W.D. Pa. 2021). The Settlement Class is comprised of every user of a Recalled Device in the United States, each of whom was subject to potential exposure to the alleged foam toxins and the possibility of an increased risk of future disease. As recognized in the Preliminary Approval Order, "the Philips Defendants are alleged to have designed, manufactured, sold, negligently failed to recall, and/or negligently executed the recall of the Recalled Devices…." PAO ¶ 16. This conduct applied generally to the Settlement Class as a whole.

   *Relief is Appropriate to the Class as a Whole*. The second requirement of Rule 23(b)(2) has three components: "the requested relief must be (1) final (2) injunctive or declaratory and (3) appropriate to the class as a whole." William B. Rubenstein, 2 NEWBERG AND RUBENSTEIN ON CLASS ACTIONS § 4:29 (6th ed.) (footnotes omitted). In assessing whether a Rule 23(b)(2) settlement class meets this requirement, courts in this District and elsewhere look to the form of relief provided by the proposed settlement. Here, the MAP Benefits will be made available uniformly to all Settlement Class Members who share the same interest in being able to obtain medical information and guidance regarding the long-term health effects, if any, of their use of the Recalled Devices. This relief is appropriate to the Settlement Class as a whole because it "invokes a single, common remedy for all class members." *Le Sportsac, Inc.*, 2023 WL 375903, at *4; *see also Charles Tyrwhitt, Inc.*, 2020 WL 8513583, at *4 (same); *In re Budeprion XL*, 2012 WL 2527021, at *9 (Rule 23(b)(2) certification of settlement class requires that "the relief sought should benefit the entire class"); *Talone v. Am. Osteopathic Ass'n*, 2018 WL 6318371, at *11 (D.N.J. Dec. 3, 2018) (Rule 23(b)(2) satisfied because settlement provisions "apply indivisibly to each member of the Settlement Class and the two Sub-Classes"); *Liberty Res., Inc. v. City of*

*Philadelphia*, 2023 WL 3204018, at *9 (E.D. Pa. May 1, 2023) ("[T]he injunctive relief provided under the settlement affects all class members equally."); *Comm'rs of Pub. Works of City of Charleston v. Costco Wholesale Corp.*, 2024 WL 1004697, at *3 (D.S.C. Mar. 8, 2024) ("Defendants have acted on grounds generally applicable to the class as a whole [and] the Settlement Agreement treats all settlement class members equally in granting them the benefits of injunctive relief.").

    *Cohesiveness*. In certifying a class under Rule 23(b)(2), courts in this Circuit consider whether the proposed class is "cohesive." *Bland v. PNC Bank, N.A.*, 2016 WL 10520047, at *23 (W.D. Pa. Dec. 16, 2016). This means that "the conduct is such that it can be enjoined or declared unlawful only as to all of the class members or as to none of them." *Id.* (citation omitted). This cohesiveness requirement is clearly satisfied here because every member of the Settlement Class used a Recalled Device with the alleged defect; was potentially exposed to foam toxins and a risk of injury; and will benefit from the MAP Benefits. *See Sourovelis v. City of Phila.*, 515 F. Supp. 3d 343, 354 (E.D. Pa. 2021) (certifying a settlement class under Rule 23(b)(2), finding that "the class is cohesive in that there are no apparent individualized issues among the class members," since "[a]ll of the class members have the same issues and seek the same relief"); *see also In re Diet Drugs (Phentermine, Fenfluramine, Dexfenfluramine) Prods. Liab. Litig.*, 1999 WL 673066, *10 (E.D. Pa. Aug. 26, 1999) ("*Diet Drugs I*") ("Based on Plaintiffs' allegations that AHP acted in such a way as to create liability to the class as a whole and that injunctive relief is applicable to the class as a whole, the court finds that the class claims are cohesive."); *Collier*, 192 F.R.D. at 184 ("[T]he class and the plaintiff's claims are cohesive, in that all members of the class would be subject to the same or similar injuries due to MCHA's alleged non-compliance and are entitled to declaratory relief.").

* * *

For the reasons set forth above and previously discussed in the Preliminary Approval Brief, the Court should grant final certification of the Settlement Class and make a final appointment of the Settlement Class Representatives and Settlement Class Counsel per the proposed Final Approval Order. *See* Motion for Final Approval, Exhibit 1.

## B. Notice Was Provided in Accordance with the Court-Approved Notice Plan that Satisfied the Requirements of Rule 23

Under the Federal Rules of Civil Procedure, when a class is certified under Rule 23(b)(2), "the court may direct appropriate notice to the class." Fed. R. Civ. P. 23(c)(2)(A). In addition, upon granting preliminary approval of a class settlement agreement, "[t]he court must direct notice in a reasonable manner to all class members who would be bound by the proposal." Fed. R. Civ. P. 23(e)(1)(B).

Here, the Court closely scrutinized the notice proposed by the Parties, and following amendments that addressed concerns of the Court, the Court found that the Notice Plan was "appropriate under the circumstances and w[ould] apprise the Settlement Class Members of the terms and benefits of the proposed Settlement," "constitute[d] due, adequate, and sufficient notice," and "m[et] all applicable requirements of law." PAO ¶ 11. The Notice Administrator subsequently disseminated the Settlement Notice to all Settlement Class Members pursuant to the Notice Plan, building upon the extensive Class list of postal and email addresses generated in connection with the Economic Loss Settlement, as set forth in greater detail in the Statement of Facts, *supra*, § II.H; *see also* BG Decl. ¶¶ 7-16, 34. The resulting notice therefore satisfied the requirements of Rule 23 and due process. *See Walsh v. Great Atl. & Pac. Tea Co.*, 726 F.2d 956, 963 (3d Cir. 1983) (holding that for Rule 23(b)(2) settlement classes, "[n]otice to a representative cross-section sufficed to assure that inadequacies in representation of the entire class or of subclasses would likely be called to the court's attention"); *Kaplan v. Chertoff*, 2008 WL 200108, at *12, 13 (E.D. Pa. Jan. 24, 2008) (recognizing that

for settlement classes certified under Rule 23(b)(2), "[i]ndividual notice is not required" and "the form of notice is discretionary . . . [because] Rule . . . (b)(2) classes are cohesive in nature") (internal quotation marks and citation omitted).

In addition, through U.S. mail and email communications from Settlement Class Members, the Notice Administrator and Settlement Class Counsel fielded questions regarding the Settlement and objection process. *See* BG Decl. ¶¶ 29-31. The Notice Administrator worked with Settlement Class Counsel to directly communicate with and provide responsive information to all individuals who requested additional information regarding the Settlement or the objection procedure. *Id.* ¶ 31. This, too, points to the adequacy of the Notice.

### C.     The Settlement Agreement Merits Final Approval Under Rule 23(e)(2) and the Applicable *Girsh & Prudential* Factors

After assessing whether notice was adequate, the Court must determine whether the settlement is "fair, reasonable, and adequate." *In re Prudential Ins. Co. Am. Sales Prac. Litig. Agent Actions*, 148 F.3d 283, 316 (3d Cir. 1998) (citation omitted); *Philips I*, 347 F.R.D. at 126.

The Third Circuit has a "strong judicial policy in favor of class action settlement." *Ehrheart v. Verizon Wireless*, 609 F.3d 590, 595 (3d Cir. 2010); *see also Murphy v. Eyebobs*, 638 F. Supp. 3d at 479 (recognizing "long-standing policy favoring [class settlement] agreements"). When reviewing a settlement, the Third Circuit has stressed that "we favor the parties reaching an amicable agreement and avoiding protracted litigation. We do not wish to intrude overly on the parties' hard-fought bargain." *In re Google Inc. Cookie Placement Consumer Priv. Litig.*, 934 F.3d 316, 326 (3d Cir. 2019) (citations omitted). "Settlement agreements are to be encouraged because they promote the amicable resolution of disputes and lighten the increasing load of litigation faced by the federal courts." *Ehrheart*, 609 F.3d at 595; *see also Calhoun*, 2023 WL 2411354, at *10 ("'[T]he law favors settlement, particularly in class actions and other complex cases where substantial judicial resources can be conserved by

20

avoiding formal litigation.'") (quoting *In re Gen. Motors Corp. Pick-Up Truck Fuel Tank Prod. Liab. Litig.*, 55 F.3d 768, 784 (3d Cir. 1995)). Thus, "the settlement of class actions is preferred to protracted litigation: 'there is an overriding public interest in settling class action litigation, and it should therefore be encouraged.'" *Le Sportsac, Inc.*, 2023 WL 375903, at *9 (quoting *In re Warfarin Sodium Antitrust Litig.*, 391 F.3d 516, 535 (3d Cir. 2004)).

As detailed in this Court's memorandum opinion granting final approval of the Economic Loss Settlement, assessing whether a settlement is "fair, reasonable, and adequate" involves consideration of the factors set forth in Federal Rule of Civil Procedure 23(e)(2) as well as additional factors enumerated by the Third Circuit. *Philips I*, 347 F.R.D. at 127.

Rule 23(e)(2) directs courts to consider whether:

(A)    the class representatives and class counsel have adequately represented the class;

(B)    the proposal was negotiated at arm's length;

(C)    the relief provided for the class is adequate, taking into account:

      (i)    the costs, risks, and delay of trial and appeal;

      (ii)    the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims;

      (iii)    the terms of any proposed award of attorney's fees, including timing of payment; and

      (iv)    any agreement required to be identified under Rule 23(e)(3); and

(D)    the proposal treats class members equitably relative to each other.

Fed. R. Civ. P. 23(e)(2).

In addition, in *Girsh v. Jepson*, the Third Circuit Court of Appeals identified nine factors, many of which overlap with the Rule 23(e)(2) factors, that district courts must consider:

> (1) the complexity, expense and likely duration of the litigation; (2) the reaction of the class to the settlement; (3) the stage of the proceedings and the amount of discovery completed; (4) the risks of

establishing liability; (5) the risks of establishing damages; (6) the risks of maintaining the class action through the trial; (7) the ability of the defendants to withstand a greater judgment; (8) the range of reasonableness of the settlement fund in light of the best possible recovery; [and] (9) the range of reasonableness of the settlement fund to a possible recovery in light of all the attendant risks of litigation.

521 F.2d 153, 157 (3d Cir. 1975).[6] Because of the nature of the injunctive relief provided by the

Settlement, the following Rule 23(e)(2)(C) factors are inapplicable: "the effectiveness of any proposed

method of distributing relief to the class, including the method of processing class-member claims"

and "any agreement required to be identified under Rule 23(e)(3)." *Liberty Res.*, 2023 WL 3204018,

at *8 n.5. Likewise, *Girsh* factors 5, 7, 8, and 9 are inapplicable. *Id.* at *10 n.10.

"To further [the] policy of favoring settlement, [the Third Circuit] Court of Appeals has

instructed district courts to apply a presumption of fairness to a proposed settlement when: '(1) the

settlement negotiations occurred at arm's length; (2) there was sufficient discovery; (3) the proponents

of the settlement are experienced in similar litigation; and (4) only a small fraction of the class

---

[6] The Third Circuit Court of Appeals later identified six additional factors that district courts may consider, when appropriate. *In re Prudential*, 148 F.3d at 323. The *Prudential* factors are: (1) "the maturity of the underlying substantive issues, as measured by experience in adjudicating individual actions, the development of scientific knowledge, the extent of discovery on the merits, and other factors that bear on the ability to assess the probable outcome of a trial on the merits of liability and individual damages"; (2) "the existence and probable outcome of claims by other classes and subclasses"; (3) "the comparison between the results achieved by the settlement for individual class or subclass members and the results achieved—or likely to be achieved—for other claimants"; (4) "whether class or subclass members are accorded the right to opt out of the settlement"; (5) "whether any provisions for attorneys' fees are reasonable"; and (6) "whether the procedure for processing individual claims under the settlement is fair and reasonable." *Prudential*, 148 F.3d at 323. "Unlike the *Girsh* factors, each of which the district court must consider before approving a class settlement, the *Prudential* considerations are just that, prudential. They are permissive and non-exhaustive, illustrat[ing] . . . [the] additional inquiries that in many instances will be useful for a thoroughgoing analysis of a settlement's terms." *In re Baby Prods. Antitrust Litig.*, 708 F.3d 163, 174 (3d Cir. 2013). Settlement Class Representatives implicitly address the first three *Prudential* factors in the discussion, *infra*, of the Rule 23(e)(2) and *Girsh* factors. The fourth factor is inapplicable here because the Settlement Class is a non-opt out class under Rule 23(b)(2), and the sixth factor does not apply because there are no individual claims.

objected.'" *Liberty Res.*, 2023 WL 3204018, at *6 (quoting *In re Warfarin*, 391 F.3d at 535); *accord Philips I*, 347 F.R.D. at 126; *In re Ry. Indus. Empl. No-Poach Antitrust Litig.*, 2020 WL 13852931, at *2 (W.D. Pa. Aug. 26, 2020) (Conti, J.); *Cole's Wexford Hotel, Inc. v. UPMC & Highmark Inc.*, 2016 WL 6236892, at *2 (W.D. Pa. July 29, 2016) (Conti, J.).

Here, final approval of the Settlement Agreement should be granted since it satisfies the factors entitling it to an initial presumption of fairness,[7] and the Rule 23(e)(2) and Third Circuit factors weigh in favor of settlement approval.

### 1. Settlement Class Counsel and Settlement Class Representatives Have Adequately Represented the Class (Rule 23(e)(2)(A))

Rule 23(e)(2)(A) requires the Court to consider whether "class counsel and the class representatives adequately represented the class." *Philips I*, 347 F.R.D. at 128. In addition to determining whether class representatives and counsel satisfy the adequacy requirement of Rule 23(a)(4) and whether class counsel "ha[s] the experience and competence to litigate this matter," "[t]he inquiry into the adequacy of representation at the final settlement approval stage under Rule 23(e)(2)(A) requires an additional review of class counsel's 'actual performance ... acting on behalf of the class.' Critical to this inquiry is whether class counsel had an 'adequate information base,' considering the 'nature and amount of discovery,' which informed the decision to agree to the settlement.'" *Liberty Res.*, 2023 WL 3204018, at *7 (internal citation omitted) (quoting Fed. R. Civ. P. 23(e)(2) Advisory Committee Notes to 2018 Amendment) (finding adequate representation where counsel's decision to settle had been informed by voluminous discovery).

---

[7] The presumption of fairness should apply to this Settlement. Because the factors supporting the presumption overlap with the other factors set forth herein, their analysis is subsumed in the discussion below. *See In re Suboxone (Buprenorphine Hydrochloride & Naloxone) Antitrust Litig.*, 2024 WL 815503, at *6 (E.D. Pa. Feb. 27, 2024) (finding that Settlement was entitled to presumption of fairness and holding that "this presumption . . . does skew the analysis in favor of approving the Settlement").

Settlement Class Counsel consist of Plaintiffs' Co-Lead Counsel and the Chair of the Settlement Committee, who were appointed by the Court after a thorough interview and vetting process (ECF No. 395, Pretrial Order No. 8). In reviewing Plaintiffs' motion for preliminary approval and class certification of this Settlement, the Court determined that, for the purposes of Rule 23(a)(4), "the proponents of the Settlement are experienced in similar litigation," PAO ¶ 1, and that "Settlement Class Representatives and their counsel are capable of fairly and adequately protecting the interests of the Settlement Class." PAO ¶ 16.

In addition, prior to negotiating the Term Sheet of the Settlement, the Parties had fully briefed the Jurisdictional Motion, presented facts and legal arguments in the related evidentiary hearing, and submitted findings of fact and conclusions of law. They also fully briefed and argued the issues set forth in the Motions to Dismiss the Medical Monitoring Claims, after which Special Master Vanaskie issued an R&R recommending dismissal of Plaintiffs' claims for medical monitoring relief in 30 of the 32 Disputed Jurisdictions, concluding that those jurisdictions required an allegation of physical injury in order to state a medical monitoring claim. The Parties filed objections to the R&R, and this Court issued an Order and Opinion. *See* § II.A, *supra*.

The Parties had also engaged in substantial discovery, including written discovery, the production of millions of documents on all relevant issues, approximately 100 third-party subpoenas, and more than 50 depositions, including the depositions of many named plaintiffs in the Medical Monitoring Complaint. *See* § II.B, *supra*.

Settlement Class Counsel and Settlement Class Representatives, therefore, have adequately represented the Settlement Class since they negotiated the Settlement with an "adequate information base" and the "nature and amount of discovery" and the stage of the litigation had adequately informed the Parties of the risks involved in continuing to pursue the Medical Monitoring Claims. Fed. R. Civ.

P. 23(e)(2) Advisory Committee Notes to 2018 Amendment. *See Philips I*, 347 F.R.D. at 128 (finding that there had been adequate representation since through extensive discovery, Science Day, and expert consultation, "counsel 'develop[ed] enough information about the [litigation] to appreciate sufficiently the value of the claims'") (quoting *In re NFL Players Concussion Injury Litig.*, 821 F.3d 410, 439 ("*NFL III*") (3d Cir. 2016)).

### 2. The Settlement Was Negotiated at Arm's Length (Rule 23(e)(2)(B))

As previously found by this Court, and as detailed in the Settlement Class Representatives' Brief in support of preliminary approval, the proposed Settlement Agreement was the result of an arm's-length negotiation process supervised by a well-respected and experienced Court-appointed mediator. *See* PAO ¶ 1 ("The Court hereby finds that the Settlement . . . has key indicia of fairness, including that . . . the extensive settlement negotiations were arm's-length and consisted of multiple mediation sessions overseen by the Settlement Mediator," and "there is no evidence of collusion in reaching this Settlement."); *see also* PA Br. at 8-9 (describing settlement negotiations); Counsel Decl. ¶¶ 6-7, 11 (same). The settlement negotiations here bore the hallmarks of "a settlement [that] was truly arm's length in nature" since the Parties negotiated with the assistance of a neutral third party; the Parties had the benefit of significant briefing and voluminous discovery that allowed them to fully understand the strengths and weaknesses of their respective positions with respect to both the legal and factual issues in the litigation; and there was no discussion of attorneys' fees for Settlement Class Counsel during the negotiations. *See* William B. Rubenstein, 4 NEWBERG AND RUBENSTEIN ON CLASS ACTIONS § 13:50 (6th ed.); *see also Philips I*, 347 F.R.D. at 128; Counsel Decl. at ¶¶ 2-5, 7-8, 12; *Walker v. Highmark BCBSD Health Options, Inc.*, 2022 WL 17592067, at *3 (W.D. Pa. Dec. 13, 2022) ("[P]articipation of an independent mediator in settlement negotiations virtually insures that the negotiations were conducted at arm's length and without collusion between the parties.") (internal quotation marks and citation omitted).

3.   **The MAP Benefits Provided to the Settlement Class Are Adequate, Particularly in Light of the Substantial Risks of Continued Litigation (Rule 23(e)(2)(C) and *Girsh* and *Prudential* Analysis)**

The Court can address the primary concern of Fed. R. Civ. P. 23(e)(2)(C)—that the relief provided to the settlement class is adequate—by evaluating the relevant *Girsh* and *Prudential* factors set forth below. Here, all of these factors weigh in favor of settlement approval.

a.   **Complexity, Expense, Delay, and Risks of Continued Litigation**

Rule 23(e)(2)(C)(i) instructs courts to take into account "the costs, risks, and delay of trial and appeal." This analysis is essentially the same as the one required by *Girsh* factors 1 and 4: "the complexity, expense, and likely duration of the litigation"; and "the risks of establishing liability." *See Liberty Res.*, 2023 WL 3204018, at *10. The cost analysis of the first *Girsh* factor is directly affected by the risk analysis of the fourth *Girsh* factor. *See NFL III*, 821 F.3d at 437 ("This first *Girsh* factor addresses "the probable costs, in both time and money, of continued litigation.") (internal quotation marks and citation omitted); *accord Philips I*, 347 F.R.D. at 129. Here, there are considerable risks— and there would be considerable expenditures in both time and money—in continuing to litigate the Medical Monitoring Claims.

Absent a settlement of the Medical Monitoring Claims, the Parties would remain engaged in motion practice, discovery, and adversarial litigation, potentially for years. There were considerable risks in continuing to litigate the numerous and complex legal, factual and scientific issues in this litigation and the costs associated with these risks would be sizeable. The risks included the pending Motions to Dismiss the Medical Monitoring Complaint and the difficulty in obtaining certification of a nationwide class in the context of a contested litigation class. Indeed, the Special Master's R&R left claims under the laws of only 12 states remaining in the litigation, potentially leaving a large number of Settlement Class Members with no relief at all. *See* R&R (ECF 2273) (recommending dismissal of medical monitoring claims in 30 jurisdictions after concluding that those jurisdictions had a physical

26

injury requirement); *see also* Counsel Decl. ¶ 5. The resulting class or subclasses would have their own challenges to certification (*e.g.*, individualized issues). In addition, because there is no "signature" injury and there were numerous potential injuries identified in the Recall notice, constructing a meaningful medical monitoring program would be impractical. *See* Counsel Declaration, *id.* And, funding for any such program would be uncertain in light of the pending Jurisdictional Motion with respect to KPNV and the dismissal motions of the other non-Philips RS Defendants. *See id.*

Additionally, this case implicates numerous complex scientific and medical issues that would require further investigation and analysis. *See, e.g.*, R&R at 13 (concluding that with respect to the Massachusetts medical monitoring claim, "expert discovery is needed before this Court can determine whether Plaintiffs have subcellular injuries or merely just increased risks of harm"). The risks of continuing to litigate claims for medical monitoring would therefore include the potential for adverse rulings with respect to experts on threshold levels of exposure and causation. *See id.*

Further, Plaintiffs would have to obtain class certification; prevail on Rule 23(f) appeals regarding the certification order or subsequent motions for decertification; successfully defend against summary judgment or other dispositive motions; defeat Fed. R. Evid. 702 motions; prevail at trial on liability and claims for relief, including the establishment of a testing protocol that could encompass the varied potential injuries; and then prevail on any subsequent appeals. The litigation would be protracted and expensive, to say nothing of the inherent risks and uncertain outcomes attendant to each step along the way.

In contrast to those substantial risks, the proposed Settlement provides tangible MAP Benefits in the form of MAP Research, a MAP Registry, and MAP Resources that will be made available to all Settlement Class Members for a period of fifteen years. As previously noted and discussed further below, these MAP Benefits are in addition to the relief provided by the complementary Economic Loss

and Personal Injury Master Settlements. These MAP Benefits will commence upon the Effective Date, which is much sooner than any potential relief that could be derived through litigation. *See, e.g.*, *Le Sportsac, Inc*., 2023 WL 375903, at *10 ("[T]he proposed [equitable relief] settlement has allowed Murphy to achieve significant benefits for the class while avoiding the material expense and delay that would have been required to litigate his claims against Le Sportsac.").

### b.   The Reaction of the Class to the Settlement

The second *Girsh* factor "attempts to gauge whether members of the class support the settlement." *In re Prudential*, 148 F.3d at 318; *accord Philips I*, 347 F.R.D. at 129. This factor strongly supports final approval. Here, the Notice Administrator disseminated direct individual Notice of the Settlement to over 4 million Class Members via email or U.S. mail. BG Decl. ¶ 34. By October 2, 2024 (one week after the September 25, 2024 postmark deadline for submitting objections), only 257 objections were received. *Id.* ¶ 32.[8] This amounts to an infinitesimal fraction of the Settlement Class (less than 1/100 of 1%). "The vast disparity between the number of potential class members who received notice of the Settlement and the number of objectors creates a strong presumption that this factor weighs in favor of the Settlement . . . ." *In re Cendant Corp. Litig*., 264 F.3d 201, 235 (3d Cir. 2001); *see also Philips I*, 347 F.R.D. at 129 (finding that 78 objections following direct notice to 5 million potential class members "favors approval of the Settlement") (citing *In re Prudential*, 148 F.3d at 318 (a district court did not abuse its discretion in finding that small percentage of objectors was "truly insignificant" and weighed in favor of settlement approval; approximately 300 objections were received from a class of 8 million putative objectors)); *Jackson v. Wells Fargo Bank, N.A*., 136 F. Supp. 3d 687, 702 (W.D. Pa. 2015) (stating that objections constituting less than a fraction of one-percent of class size "are a positive indicator of fairness"); *In re Imprelis Herbicide Mktg., Sales Pracs. & Prod.*

---

[8] As set forth in § III.D, *infra*, none of the objections warrants denial of final approval.

*Liab. Litig.*, 296 F.R.D. 351, 365 (E.D. Pa. 2013) ("[T]he percentage of objectors … —less than one percent—is extremely low, considering the large number of class members . . . .").

### c.  The Stage of the Proceedings and Sufficiency of Discovery

"The third *Girsh* factor 'ensure[s] that a proposed settlement is the product of informed negotiations.'" *Philips I*, 347 F.R.D. at 129 (quoting *In re Prudential*, 148 F.3d at 319). "'[W]hat matters is not the amount or type of discovery class counsel pursued, but whether they had developed enough information about the case to appreciate sufficiently the value of the claims.'" *Id.* (quoting *NFL III*, 821 F.3d at 439). Here, the Parties were well-informed of the strengths and weaknesses of their respective factual and legal positions.

As discussed previously, the Parties engaged in substantial discovery prior to the Settlement, including document discovery, written discovery, third-party discovery, jurisdictional discovery, and depositions. They exchanged millions of documents related to core issues such as liability, jurisdiction over KPNV, and general causation, including testing documents, both prior to and after the Recall; and have taken more than 50 depositions (some of which were of named Plaintiffs). Counsel Decl. ¶ 4. All of these discovery efforts informed Settlement Class Counsel's negotiations with the Philips Defendants by providing insight into the strengths and weaknesses of the claims at issue. *Id*., ¶¶ 2, 4, 6, 8; *see also Philips I*, 347 F.R.D. at 130 ("maturity of the underlying substantive issues . . . favor[ed] approval of the [Economic Loss] Settlement"); *Calhoun*, 2023 WL 2411354, at *11 (approving settlement where parties had "engaged in sufficient discovery to inform their negotiations before a settlement was reached"); *In re All-Clad*, 2023 WL 2071481, at *6 (approving settlement where "[t]he record establishes extensive and costly investigation, research, and discovery have been conducted such that the attorneys for the parties are reasonably able to evaluate the benefits of settlement.").

In addition, as discussed above, the Parties fully briefed the key legal issues related to medical monitoring and continued to brief the merits of those claims through the time of the Settlement. Notably,

prior to the Settlement, the Parties had the benefit of the Special Master's R&R and this Court's subsequent opinion addressing the Parties' objections to the R&R.

It can be said without hesitation that Settlement Class Counsel had "an adequate appreciation of the merits of the case before negotiating," and this factor weighs heavily in favor of settlement approval. *In re Prudential*, 148 F.3d at 319; Counsel Decl. ¶¶ 3-8; *see also In re Prudential*, 148 F.3d at 323 (noting that "maturity of the underlying substantive issues" should be considered, when appropriate).

### d. Likelihood of Maintaining the Class Action Through Trial

The sixth *Girsh* factor "measures the likelihood of obtaining and keeping a class certification if the action were to proceed to trial," *In re Warfarin*, 391 F.3d at 537, and weighs heavily in favor of final approval. Throughout, Class Counsel have been mindful that there are a number of legal and individual issues with respect to Plaintiffs' Medical Monitoring Claims that could create a substantial challenge to class certification in a litigation context, including, but not limited to, variations in state law, individual issues related to exposure, and individual preexisting health profiles of Class Members. *See, e.g., In re Welding Fume Prods. Liab. Litig.*, 245 F.R.D. 279, 303-07 (N.D. Ohio 2007) (surveying medical monitoring class certification issues); R&R at 12 (noting that legal issues such as the extraterritoriality of Pennsylvania law would have to be addressed if Plaintiffs were to seek certification of a nationwide class). Indeed, counsel for the Philips Defendants repeatedly emphasized that the Third Circuit Court of Appeals has not yet upheld certification of a medical monitoring class in a litigation context. Courts have recognized that certification of a settlement class does not pose the same hurdles that exist in a litigation context. *See, e.g., In re Budeprion XL*, 2012 WL 2527021, at *6, 10 (granting final approval and noting that settlement is relevant to certification, explaining that "[b]ecause the Court is certifying a Rule 23(b)(2) settlement class receiving only injunctive relief, it is freed from some of the problems that might arise if this litigation were tried"). Moreover, as stated very recently

30

by another court within this District when it granted final approval of a settlement, "[e]ven if certification of a class is achieved, continued discovery and resolution of legal issues could lead to decertification or modification of the class. . . . In turn, this inevitably would result in further delay and expense, as well as an uncertain outcome." *Calhoun*, 2023 WL 2411354, at *14.

Thus, the sixth *Girsh* factor weighs in favor of final approval of the Settlement.

### e.  The Reasonableness of the Settlement

Courts in this Circuit consider "reasonableness in light of the best possible recovery and reasonableness in light of the risks the parties would face if the case went to trial." *In re Warfarin*, 391 F.3d at 538. Here, the Settlement will provide equitable relief to every U.S. user of a Recalled Device, each of whom had the potential to be exposed to the alleged foam toxins and will benefit from the MAP Benefits that will allow them, in consultation with their physicians, to assess their risk, if any, of future injury or disease.

In particular, the MAP Benefits will fund independent medical research related to the advancement of public knowledge regarding the detection, diagnosis, and/or treatment of injuries alleged to have been caused by use of the Recalled Devices; establish a MAP Registry to which Settlement Class Members can voluntarily elect to submit authorizations for the release and disclosure of their medical information for purposes of review and evaluation in connection with the MAP Research; and establish MAP Resources that will increase access to and an understanding of Relevant Medical Information and Guidance. SA § 3, *see also* SA Exhibit 3. In contrast, because there is no signature injury and instead there are a wide and varied range of potential injuries, crafting a meaningful medical monitoring program would be impractical. Inasmuch as Settlement Class Members received their Recalled Devices by prescription of a physician, their health is already being monitored by a physician, and the MAP Benefits will provide Relevant Medical Information and Guidance to them in connection with their future decision-making.

There is ample support for approval of this Settlement under these circumstances. *See, e.g.*, *In re Three Mile Island Litig.*, 557 F. Supp. 96, 97 (M.D. Pa. 1982) (describing approved settlement that included $5 million for a Public Health Fund "to finance studies of the long term health effects of the TMI incident and to further evacuation planning for the future"); *Diet Drugs II*, 2000 WL 1222042, at *25, 54 (approving settlement providing "equitable, injunctive and declaratory relief" that included the creation of a medical research and education fund to contribute to the protection and advancement of public health concerning health conditions related to Diet Drugs); *In re Nat'l Football League Players Concussion Inj. Litig.*, 307 F.R.D. 351, 418 (E.D. Pa. 2015) ("*NFL II*") ("Education Fund benefits inure in part directly to Class Members; the Fund educates Retired Players about their medical and disability benefits under their Collective Bargaining Agreements."); *Collier*, 192 F.R.D. at 185; *Hyland v. Navient*, 48 F.4th at 119 & n.2; *Bowling v. Pfizer, Inc.*, 143 F.R.D. 141, 149, 166 (S.D. Ohio 1992) (settlement created non-reversionary fund for "research to develop diagnostic techniques" and "research to characterize or reduce the risk of valve replacement surgery"; "The primary beneficiaries of this fund are the class members of the proposed settlement."); *Marshall v. Nat'l Football League*, 787 F.3d 502, 507, 519 (8th Cir. 2015) (finding fund for nonprofit "dedicated to supporting and promoting the health and welfare of Retired Players and other similarly situated individuals," including "medical research," was "a boon to those thousands upon thousands of former NFL players who can now reap the collective benefit of a large financial payout to a fund organized solely for their benefit"); *In re Oil Spill by Oil Rig Deepwater Horizon*, 295 F.R.D. 112, 123-24, 150 (E.D. La. 2013) (one of the components of the oil spill settlement was a regional health "Outreach Program," which included significant educational projects, and "provides benefits to the Class (as well as other residents of the Gulf Coast) that could only be achieved through settlement").

It bears emphasis that the Settlement Agreement expressly preserves "individual claims for payment of that individual's medical monitoring expenses related to the individual's use of a Recalled Device, whether incurred in the past or the future,"[9] while releasing claims for injunctive relief and monetary claims brought on behalf of or as part of a class action or any other form of aggregate, group, or mass action. *See* SA §§ 1.21, 1.28, 4.2, 4.5.1, 4.5.2. This release is supported by a number of cases, including the Second Circuit's decision in *Hyland v. Navient*, which affirmed the approval of a non-opt out Rule 23(b)(2) settlement where, like here, the release covered non-monetary relief as well as "the right of individual class members to pursue claims for monetary damages 'on an aggregate basis,'" but expressly preserved the right of class members to "file individual lawsuits for monetary relief on a non-class basis." 48 F.4th at 116, 120-21. There, the court held that the carveout to preserve individual damages claims protected the due process rights of class members. *Id.* at 120-21; *accord Berry*, 807 F.3d at 609-10 (certification of a Rule 23(b)(2) settlement class on a non-opt out basis was appropriate; the release of claims for statutory damages did not render Rule 23(b)(2) certification improper, and class members retained the right to sue for actual damages on an individual basis); *Legere-Gordon v. Firstcredit Inc.*, 2021 WL 276695, at *2 (D. Idaho Jan. 26, 2021) (approving non-opt out Rule 23(b)(2) settlement that included release of claims for injunctive relief and the right to assert damages claims "in any class or representative proceeding," but "does not require class members to release any individual claims for damages they may have"); *Thomas v. Fin. Corp. of Am.*, No. 19-cv-152, at ECF 86, ¶ 14 (N.D. Tex. July 13, 2020) (granting final approval of a non-opt out Rule 23(b)(2) settlement which released claims for equitable relief and "the opportunity to participate in any class or representative proceeding related to [damages] claims," but expressly preserved "individual damages claims").

---

[9] The Settlement Agreement also preserves each Settlement Class Member's "Personal Injury Claims." *See, e.g.*, SA §§ 1.28, 4.1-4.2, 4.5.1.

The decision by the Eastern District of Pennsylvania in *In re Budeprion XL*, which approved a Rule 23(b)(2) settlement that released claims for equitable or injunctive relief, including claims for restitution, but "did not release any personal injury claims against Defendants," is instructive. *In re Budeprion XL*, 2012 WL 2527021, at *5. There, the court found:

> [T]he Class faced the very real possibility of walking away with nothing. Importantly, the settlement does not release personal injury claims that individual Class members may wish to file against Defendants. Thus, those harmed by Defendants' products remain free to vindicate their rights through the courts for any physical or emotional damages they have suffered. Leaving open the possibility for those truly harmed by Defendants' products must be considered a victory for the Class.

*Id.* at *19. The same is true in this case. The court in *Budeprion XL* also rejected an objection that the settlement benefits were "illusory," declaring, in words equally applicable here, that "[w]ith respect to monitoring, this [settlement] forces Defendants to take actions previously not required." *Id.* The court stressed that "the settlement agreement undeniably works a change in the relationship between the parties, and the relief afforded the Class is not illusory."[10] *Id.* Here, too, the Settlement confers real and important benefits upon the Settlement Class.

**f.   The Request for Attorneys' Fees Is Reasonable**

Pursuant to both Rule 23(e)(2)(C)(iii) and *In re Prudential*, the Court should consider "the reasonableness of the provision for attorney's fees." *Le Sportsac, Inc.*, 2023 WL 375903, at *12. Here, the Parties' negotiations in connection with the Settlement were focused exclusively on benefits for the Settlement Class, and there was no discussion of attorneys' fees for Settlement Class Counsel. Counsel

---

[10] The court also rejected an objection that certification under Rule 23(b)(2) was inappropriate because the complaint had originally sought not only equitable relief but also money damages, explaining that such an objection "would tie the Court's hands by forcing it to ignore the fluid nature of litigation. The objectors view the question of class certification as frozen in time based on the allegations in the class action complaint. This is unrealistic and runs counter to the principle that the law favors settlement of class actions." *Id.* at *10.

Decl. ¶¶ 7, 12. Settlement Class Counsel submitted their Fee Motion and Fee Brief that seeks counsel fees, expenses, and Service Awards in the aggregate amount of $5 million, representing 20% of the $25 million payment by the Philips Defendants into the Settlement Fund, which is consistent with the terms of the Settlement Agreement and the Court-approved Notice. ECF 2949; ECF 2950.[11] In addition, the Settlement Agreement specifically states that the amount of any award of attorneys' fees, costs and expenses, and Service Awards is "intended to be considered by the Court separately from the Court's consideration of the fairness, reasonableness, and adequacy of the Settlement" itself and any order on such an award will not be a reason to terminate the Settlement. SA § 15.2. Because the Fee Motion is "subject to review and approval by the Court, this factor does not weigh against the fairness of the settlement." *Le Sportsac, Inc*., 2023 WL 375903, at *12.

### 4.   The Proposed Settlement Treats Settlement Class Members Equitably Relative to Each Other

This Rule 23(e)(2)(D) factor "calls attention to a concern that may apply to some class action settlements—inequitable treatment of some class members vis-a-vis others." Fed. R. Civ. P. 23(e)(2), Advisory Committee's Note to 2018 Amendment. Because the MAP Benefits are equally available to all Settlement Class Members, this factor militates in favor of final approval. *Liberty Res.*, 2023 WL 3204018, at *9 ("Here, the injunctive relief provided under the settlement affects all class members equally . . . [and] weighs in favor of approval of the settlement.").

---

[11] Pursuant to the PAO, the Fee Motion was filed on August 26, 2024, 30 days prior to the Objection Deadline, thereby giving Settlement Class Members the opportunity to submit objections. PAO ¶ 20; *see also* ECF 2949. The requested fee award, which is a significant reduction from Class Counsel's lodestar, is reasonable in light of the time and effort Counsel expended in maintaining this action as explained in detail in the Fee Brief. ECF 2950.

**D.      The Court Should Overrule the Objections and Approve the Settlement**

Out of over 4 million Settlement Class Members, only 257 submitted an objection to the Settlement and/or the Fee Motion.[12] As was the case with the Economic Loss Settlement, many of the objections should be summarily overruled because they contain no stated reason for the objection. Others are based solely on frustration with the Philips Respironics Recall, objectors' economic losses, and/or their alleged health problems following use of a Recalled Device. Therefore, those objections do not even address the Medical Monitoring Settlement, and for that reason should be overruled. Importantly, as explained above, Settlement Class Members' Economic Loss Claims and Personal Injury Claims are expressly not released by the Settlement. Some Class Members object on the grounds that no monetary payments will made to them; however, as the Court knows, their right to pursue individual claims on their own behalf for payment of medical monitoring expenses they either incurred in the past or incur in the future are expressly preserved. Other objections are based on a misunderstanding of the Settlement terms. For these reasons and as set forth below, the objections should be overruled.

---

[12] Additionally, 6 purported objections were submitted by spouses of deceased Class Members (Agostini (Ex. A); Blankenship (Ex. B); Fox (Ex. C); Hicks (Ex. D); Gill (Ex. E); Wright (Ex. F)). These individuals are not Settlement Class Members and have no standing to object. Fed. R. Civ. P. 23(e)(5); *In re Sunrise Sec. Litig.*, 131 F.R.D. 450, 459 (E.D. Pa. 1990) ("non-class members have no standing to object, pursuant to a Rule 23(e) notice directed to class members, to a proposed class settlement") (citation omitted). The Charts attached hereto as Exhibits "3a" and "3b" summarize each objection and Class Counsel's response thereto and identify the Section(s) in this Brief that address the objection. The objections themselves (as well as the 6 submissions by non-Class Members) are attached as exhibits to the Notice of Objections (ECF 3005-1 through ECF 3005-97; ECF 3006-1 through ECF 3006-90; ECF 3007-1 through ECF 3007-57; ECF 3013-1 through ECF 3013-20), and cited herein as "[Surname Obj. (Ex. [#])]." Class Counsel redacted sensitive personal identifying information from the objections filed on the public docket and filed unredacted versions under seal (ECF 3008; ECF 3009; ECF 3010; ECF 3014).

### 1.    The Court Should Overrule Vague, General, Non-Specific Objections

An objection to a class settlement "must state whether it applies only to the objector, to a specific subset of the class, or to the entire class, and also state with specificity the grounds for the objection." Fed. R. Civ. P. 23(e)(5)(A). "[O]bjections must provide sufficient specifics to enable the parties to respond to them and the court to evaluate them." Fed. R. Civ. P. 23(e)(5)(A) Advisory Committee's Note to 2018 Amendment. "Failure to provide needed specificity may be a basis for rejecting an objection." *Id.*; *see also 1988 Tr. for Allen Child. Dated 8/8/88 v. Banner Life Ins. Co.*, 28 F.4th 513, 521 (4th Cir. 2022) (describing the specificity requirement of Rule 23(e)(5)(A) as "somewhat analogous, though not necessarily identical, to" the Fed. R. Civ. P. 8(a) requirement that a claim for relief contain "a short and plain statement of the claim showing that the pleader is entitled to relief").

Many of the purported objections here state in cursory fashion only that the person objects to the Settlement or fee request, without specifying grounds for the objection.[13] The Court should summarily overrule these non-specific, conclusory objections. *See* Transcript of Proceedings on April 11, 2024 on final approval of the Economic Loss Settlement (ECF 2726) ("Tr. EL Final

---

[13] Airey Obj. (Ex. 4); Baker, Dante Obj. (Ex. 7); Beyer Obj. (Ex. 9); Birkholz Obj. (Ex. 10); Weary Obj. (Ex. 12); Boardman Obj. (Ex. 14); Barnhouse Obj. (Ex. 19); Cook Obj. (Ex. 22); Davis, Nic Obj. (Ex. 31); de Castro Obj. (Ex. 32); Dimig Obj. (Ex. 33); Everman Obj. (Ex. 42); Fimrite Obj. (Ex. 44); Gatliff Obj. (Ex. 51); Geckle Obj. (Ex. 53); Goldstein Obj. (Ex. 58); Gonzalez Obj. (Ex. 59); Goodrich Obj. (Ex. 60); Harlston Obj. (Ex. 63); Harris Obj. (Ex. 64); Holmes Obj. (Ex. 70); Howard Obj. (Ex. 73); Ingram Obj. (Ex. 74); Jackson Obj. (Ex. 77); Jagannath Obj. (Ex. 78); Jimenez Obj. (Ex. 80); Kelley Obj. (Ex. 86); Klein Obj. (Ex. 89); Lencke Obj. (Ex. 103); Lopez Obj. (Ex. 104); McCormick Obj. (Ex. 111); McLevich Obj. (Ex. 116); Mellace Obj. (Ex. 117); Nereson Obj. (Ex. 122); O'Hallaron Obj. (Ex. 124); Olesky Obj. (Ex. 125); Mardjonovic Obj. (Ex. 126); West (Ex. 130); Reid Obj. (Ex. 136); Rinbolt Obj. (Ex. 137); Scilzo Obj. (Ex. 142); Shover Obj. (Ex. 145); Soto-González Obj. (Ex. 151); Sutton Obj. (Ex. 155); Toronzi Obj. (Ex. 160); Trautman Obj. (Ex. 161); Wagaman Obj. (Ex. 168); Walker, Michael Obj. (Ex. 169); Walton Obj. (Ex. 171); Watson, James Obj. (Ex. 174); Wheeler Obj. (Ex. 176); Wooten Obj. (Ex. 179); McDonald, Marie Obj. (Ex. 195); Washington Obj. (Ex. 200); Daugherty, Susan Obj. (Ex. 214); Elrod Obj. (Ex. 220); Beadle Obj. (Ex. 222); Cox Obj. (Ex. 223); Henning Obj. (Ex. 228); Schneider Obj. (Ex. 243).

Approval Hr'g") at 72:13-23 (overruling conclusory objections that did not provide a basis for the objection "[b]ecause there's nothing for the Court to really assess or weigh in on"); *Taha v. Bucks Cnty. Pennsylvania*, 2020 WL 7024238, at *6 (E.D. Pa. Nov. 30, 2020) (finding there was "no basis to sustain" an objection that "provid[ed] no reason" for the objection); *Harshbarger v. Penn Mut. Life Ins. Co.*, 2017 WL 6525782, at *6 n.5 (E.D. Pa. Dec. 20, 2017) (overruling objections that did not "identify any particular aspect of the Settlement that is unfair, unreasonable, or inadequate with respect" to the objectors or any other class members and thus "should have no bearing on this Court's analysis of the Settlement under Rule 23").

### 2. The Court Should Overrule Objections to the Sufficiency of the Settlement

The Court should overrule objections that the Settlement purportedly provides little or no benefit, including no direct financial compensation, to users of the Recalled Devices.[14] This

---

[14] Ackley Obj. (Ex. 1); Aidasani Obj. (Ex. 3); Albino Obj. (Ex. 5); Ames Obj. (Ex. 6); Barba Obj. (Ex. 8); Blake Obj. (Ex. 11); Ashley Obj. (Ex. 15); Chachere Obj. (Ex. 21); Cover Obj. (Ex. 24); Davila Obj. (Ex. 25); Dionne Obj. (Ex. 34); Jones Obj. (Ex. 37); Dudley Obj. (Ex. 38); Ekvall Obj. (Ex. 39); Kinard Obj. (Ex. 40); Baker, Jean Faour Obj. (Ex. 43); Fisher Obj. (Ex. 45); Galvan Obj. (Ex. 50); Prosser Obj. (Ex. 54); Glowacki Obj. (Ex. 55); Godfrey Obj. (Ex. 56); Goins Obj. (Ex. 57); Grassi Obj. (Ex. 61); Harrison Obj. (Ex. 65); Hewitt Obj. (Ex. 68); Callahan Obj. (Ex. 69); Hovey Obj. (Ex. 72); Iseminger Obj. (Ex. 76); Behar (Obj. (Ex. 81); Junker Obj. (Ex. 83); Keeler Obj. (Ex. 85); Kidd Obj. (Ex. 87); Kirkland Obj. (Ex. 88); Kniery Obj. (Ex. 90); Kouliev Obj. (Ex. 93); Lane Obj. (Ex. 97); Gbruoski Obj. (Ex. 99); Lawman Obj. (Ex. 101) Haueter Obj. (Ex. 102); Malone Obj. (Ex. 105); McGavock Obj. (Ex. 113); McGehee Obj. (Ex. 114); McGrier Obj. (Ex. 115); Niehans Obj. (Ex. 123); Olmstead Obj. (Ex. 127); Parker, Paul Obj. (Ex. 131); Martinez Obj. (Ex. 133); Pitman Obj. (Ex. 134); Sellentin Obj. (Ex. 143); Orestad Obj. (Ex. 146); Snower Obj. (Ex. 148); Snuffer Obj. (Ex. 149); Spiegel Obj. (Ex. 152); Parker, James Obj. (Ex. 157); Thomas, Heath Obj. (Ex. 158); Tschai Obj. (Ex.163); Verret Obj. (Ex. 165); Watson, Jennifer Obj. (Ex. 166); Wade Obj. (Ex. 167); Walker, Zack Obj. (Ex. 170); Warren Obj. (Ex. 173); White Obj. (Ex. 177); Wimberly Obj. (Ex. 178); Young Obj. (Ex. 183); Jenkins Obj. (Ex. 184); Minkley Obj. (Ex. 186); Worley-Jenkins Obj. (Ex. 187); Jewell Obj. (Ex. 193); Pollard Obj. (Ex. 198); Bailey Obj. (Ex. 199); O'Connor Obj. (Ex. 203); Drohan Obj. (Ex. 205); Hanes Obj. (Ex. 206); Martin Obj. (Ex. 207); Rollins, Joan Obj. (Ex. 209); Adams, Stephen Obj. (Ex. 212); Ward Obj. (Ex. 216); DeWitt Obj. (Ex. 217); Fernandez Obj. (Ex. 221); Felton Obj. (Ex. 224); Gray Obj. (Ex. 226); Vandiver Obj. (Ex. 230); Rogers Obj. (Ex. 231); Bey, Rosalie Obj. (Ex. 233); Rossi Obj. (Ex. 244); Pohalski Obj. (Ex. 246); Paultre Obj. (Ex. 247); Fritz Obj. (Ex. 252); Duhart Obj. (Ex. 253); Brantley Obj. (Ex. 256).

Settlement will fund independent medical research regarding the detection, diagnosis and/or treatment of those injuries alleged to have been caused by use of the Recalled Devices and will increase access to and understanding of Relevant Medical Information and Guidance concerning the long-term health effects, if any, of the use of the Recalled Devices. SA § 3. These equitable MAP Benefits will be provided to all Settlement Class Members for fifteen years. Importantly, the Settlement complements the resolution of Settlement Class Members' Economic Loss Claims, which provided significant monetary payments and Extended Warranties to the Settlement Class. Moreover, Personal Injury Claims of Settlement Class Members are not released by the Settlement, and all Settlement Class Members will also maintain their right to pursue individual claims on their own behalf for payment of any medical monitoring expenses they have incurred or will incur in the future.

Several objections argue that the Settlement is insufficient to adequately punish the Philips Defendants or at least hold them accountable.[15] But a given settlement "does not need to provide for all possible recoverable damages to deter wrongdoing." *In re High-Tech Emp. Antitrust Litig.*, 2015 WL 5159441, at *5 (N.D. Cal. Sept. 2, 2015). Moreover, in addition to the $25 million the Philips Defendants are paying to resolve the Medical Monitoring Claims, they paid over half a billion dollars to resolve the Economic Loss Claims (*Philips I*, 347 F.R.D. at 132), agreed to pay $1.075 billion to resolve Personal Injury Claims (ECF 2768-1), and expended more than $500 million toward the Recall (Economic Loss Settlement Agreement (ECF 2279-1) § 1.37). Further, the Philips Defendants entered into a consent decree with the FDA and Department of Justice providing for additional testing and monitoring.

---

[15] Aidasani Obj. (Ex. 3); Albino Obj. (Ex. 5); Ames Obj. (Ex. 6); Dudley Obj. (Ex. 38); Olmstead Obj. (Ex. 127); Parnell Obj. (Ex. 164); Wade Obj. (Ex. 167); Schofer Obj. (Ex. 175); O'Connor Obj. (Ex. 203); Mills Obj. (Ex. 208); Rogers Obj. (Ex. 231).

The objections to the sufficiency of the Settlement do not consider that Settlement Class Members can still pursue their individual claims for medical monitoring expenses or personal injury and do not overcome the considered analysis of the experienced Settlement Mediator and Settlement Class Counsel that the Settlement is fair, reasonable, and adequate and in the best interest of the Settlement Class. They also do not identify any procedural, factual, legal, or other deficiency in the negotiation process or the Settlement itself. Nor do they address the considerable risks, costs, and delays of continued litigation.[16] The objections also do not weigh the certain benefits the Settlement will provide against the possibility of no class certification or no recovery at all resulting from the dismissal of the claims at the pleadings stage, a later grant of summary judgment against Plaintiffs, an adverse trial verdict, or the possibility of KPNV being dismissed and refusing to directly or indirectly contribute to a judgment or settlement. Further, they do not consider the myriad differences among governing state laws, including as to the availability of medical monitoring relief or damages. They do not address the fact that the Recall identified numerous potential injuries but there is no "signature" injury, or that Settlement Class Members' underlying health conditions and use of the Recalled Devices were highly individualized, making it difficult to craft an appropriate medical monitoring protocol. These "generalized objection[s] cannot suffice because the settlement is a compromise, 'a yielding of the highest hopes in exchange for certainty and resolution.'" *Philips I*, 347 F.R.D. at 131 (overruling objections that the Economic Loss Settlement did not pay class members enough money) (quoting *In re Prudential*, 148 F.3d at

---

[16] A handful of objectors raise vague concerns about the release of their class claims. *See* Dionne Obj. (Ex. 34); DeWitt Obj. (Ex. 217); Smith Obj. (Ex. 242); Pohalski Obj. (Ex. 246); Gravelyn Obj. (Ex. 251); Brantley Obj. (Ex. 256). These criticisms ignore the significant risks of obtaining class certification even in states where the law on medical monitoring supports Plaintiffs' allegations. Individual issues such as exposure to alleged foam toxins and unique medical circumstances, among others, present substantial hurdles to class certification.

317). *Accord Calhoun*, 2023 WL 2411354, at *17 ("Objections that are based upon an assumption that a settlement is fair and reasonable only if it provides a complete relief are unavailing.").[17]

District courts assessing the fairness, reasonableness, and adequacy of Rule 23(b)(2) settlements in which settlement funds are used for the benefit of "the class *as a whole*," rather than for monetary compensation to individual class members, use "the same framework developed for assessing other aspects of class action settlements: namely, applying the *Girsh* factors; applying the *Prudential* factors where applicable; and also considering the degree of direct benefit provided to the class." *In re Google Inc. Cookie Placement*, 934 F.3d at 328, 329 (emphasis added). Similarly, in every settlement, "settlement approval should be a practical inquiry rooted in the particular case's facts and procedural posture" and "[u]ltimately '[t]he role of a district court is not to determine whether the settlement is the fairest possible resolution . . . [, but rather to] determine whether the compromises reflected in the settlement . . . are fair, reasonable, and adequate when considered from the perspective of the class as a whole.'" *Id.* at 328 (quoting *In re Baby Prods.*, 708 F.3d at 173-74).

Here, all of these factors support overruling the objections to the sufficiency of the Settlement.

### a.   The MAP Research Will Be Independent, Relevant, and Subject to Judicial Oversight

A handful of objectors criticize the MAP Research Program without basis.[18] None of these

---

[17] *See also In re Imprelis Herbicide Mktg., Sales Pracs. and Prods. Liab. Litig.*, 296 F.R.D. 351, 365-66 (E.D. Pa. 2013) (rejecting objections that were based solely on the amount of the award); *Henderson v. Volvo Cars of N. Am. LLC*, 2013 WL 1192479, at *9 (D.N.J. Mar. 22, 2013) ("[C]omplaining that the settlement should be 'better'. . . is not a valid objection.") (citation omitted); *In re Mexico Money Transfer Litig. (W. Union & Valuta)*, 164 F. Supp. 2d 1002, 1028 (N.D. Ill. 2000) ("The court is called upon here to assess a settlement proposal, not the relief that would be accorded Plaintiffs were they to win their claims following litigation.").

[18] Dudley Obj. (Ex. 38); Niehans Obj. (Ex. 123); Griswold Obj. (Ex. 188); Drohan Obj. (Ex. 205);

objections offers any evidence to support their criticisms. Further, they ignore the many Settlement

provisions and safeguards that will ensure that the MAP Research is independent, meaningful, and

beneficial. Indeed, the Settlement specifies a robust process for identifying and evaluating

potential research grant recipients[19] and requires approval by the Court before monies are

expended. Further, all requests for grants will be posted on the Settlement Website and subject to

public scrutiny, ensuring transparency. SA § 3; SA Exhibit 3 § II.E. These protocols "allow any

interested class member to keep apprised of the [grant] recipient selection process" and bring any

valid concerns to the attention of the Parties, Counsel, or the Court. *In re Baby Prods.*, 708 F.3d at

180. Once approved, the grants themselves will be posted on the Settlement Website. SA § 3.1.3.

The Settlement also mandates auditing and tracking of research progress. SA Exhibit 3 § II.F. In

addition, relevant research results must be posted on the Settlement Website and sent to Class

Members who register to receive notifications of the Relevant Medical Information and Guidance.

SA § 3.1.4 & SA Exhibit 3 § II.G. Judicial oversight will be maintained at all times, as the Court

will retain jurisdiction over the Parties and the Settlement to supervise and enforce the Settlement

Agreement. SA § 13.

     Some objectors offer alternative purposes for the MAP Research other than those agreed

---

DeWitt Obj. (Ex. 217); Childs Obj. (Ex. 255).

[19] Among other things, the Settlement specifies that in identifying potential grantees, the Settlement Administrator "will engage with listings or directories of relevant clinical trials or studies, such as those funded by the National Institutes of Health (NIH) and/or through university or research associations [and] also analyze general grant opportunities for associations or organizations that are performing ongoing research in relevant areas related to the detection, diagnosis, and/or treatment of those injuries alleged to have been caused by use of the Recalled Devices." SA Exhibit 3 § II.B.1. There was one conclusory objection to the Settlement Administrator. Fernandez Obj. (Ex. 221). The Court has already evaluated Wolf Global Compliance's credentials and appointed it to the role of Settlement Administrator. PAO ¶ 7; Wolf Global Compliance's Declaration and Firm Resume (ECF 2783-2) (setting forth its extensive experience in similar litigation). This objection is without merit.

upon by the Parties and stated in the Settlement Agreement,[20] ignoring the fact that injunctive or equitable relief should be closely related to the nature of the suit and the interests of the class. *See NFL II*, 307 F.R.D. at 418 (approving class action settlement of litigation about risk of head injury from football that included creation of fund to educate players about their benefits); *Diet Drugs II*, 2000 WL 1222042, at *24-25 (approving class action settlement that included establishment of a fund for medical research and education concerning heart disease alleged to have been caused by drugs at issue). In this case, the MAP Research appropriately focuses on "the detection, diagnosis, and/or treatment of those injuries alleged to have been caused by use of the Recalled Devices." SA § 3.1.1. Some objectors' belief that this research may somehow benefit the Philips Defendants[21] is of no moment. *See Bowling v. Pfizer*, 143 F.R.D. at 166 (overruling objection that only the defendants would benefit from a research fund designed to determine the best remedies for dealing with potential defects in the heart valve they produced). Further, any suggestion that the Settlement should be rewritten is contrary to well-settled law. *Murphy v. Eyebobs*, 638 F. Supp. 3d at 481 ("The Court's role in evaluating a proposed settlement is limited. Although the Court may either approve or disapprove the settlement, it may not rewrite it.") (quoting *Harris v. Pernsley*, 654 F. Supp. 1042, 1049 (E.D. Pa. 1987)); *Hundreds is Huge*, 638 F. Supp. 3d at 505.

### b. Settlement Class Members Can Pursue Individual Claims for Payment of Their Medical Monitoring Expenses or Personal Injury Claims

Some objectors argue that the Settlement is insufficient because it does not compensate for personal injuries or medical expenses.[22] But the Settlement expressly preserves Personal Injury

---

[20] Dudley Obj. (Ex. 38) at 3; Griswold Obj. (Ex. 188).

[21] Cover Obj. (Ex. 24); Dudley Obj. (Ex. 38); Fisher Obj. (Ex. 45); Warren Obj. (Ex. 173); Wimberly Obj. (Ex. 178).

[22] Aidasani Obj. (Ex. 3); Kinard Obj. (Ex. 40); Galvan Obj. (Ex. 50); Hensley Obj. (Ex. 66);

Claims as well as individual claims on their own behalf for payment of medical monitoring expenses incurred in the past or the future. SA § 4.5.1 (releasing claims "sought as a representative or member of any class of claimants in a class action or aggregate, group, or mass action" and specifying that the Release "does *not* include Personal Injury Claims, Economic Loss Claims, or individual claims for payment of that individual's medical monitoring expenses related to the individual's use of a Recalled Device, whether incurred in the past or the future, and regardless of how those claims may be characterized (*e.g.*, equitable, legal, etc.)"); *see also* SA §§ 1.28, 4.1. The release of aggregate claims for medical monitoring while preserving individual claims for payment of medical monitoring expenses should therefore be approved. *See* § III.C.3.e, *supra*, at 31-34.

### 3.    The Court Should Overrule Objections to the Non-Opt Out Settlement Class

Some Class Members object to not being able to opt out of or exclude themselves from the Settlement, to being included in the litigation without their knowledge, or to otherwise relinquishing their legal rights. [23] Some of these objections apparently are based on the

---

Callahan Obj. (Ex. 69); Hovey Obj. (Ex. 72); Ipsen Obj. (Ex. 75); Kidd Obj. (Ex. 87); Lackey Obj. (Ex. 94); McGrier Obj. (Ex. 115); Olmstead Obj. (Ex. 127); Parker, Paul Obj. (Ex. 131); Perkins Obj. (Ex. 132); Schofer Obj. (Ex. 175); Wimberly Obj. (Ex. 178); Minkley Obj. (Ex. 186); Worley-Jenkins Obj. (Ex. 187); Griswold Obj. (Ex. 188); Salerno Obj. (Ex. 189); Jewell Obj. (Ex. 193); Meier Obj. (Ex. 196); Bailey Obj. (Ex. 199); Rollins, Joan Obj. (Ex. 209); Evans, Raven Obj. (Ex. 232); Rossi Obj. (Ex. 244); Gustafson Obj. (Ex. 250); Fritz Obj. (Ex. 252); Duhart Obj. (Ex. 253).

[23] Ackley Obj. (Ex. 1); Adkins Obj. (Ex. 2); Albino Obj. (Ex. 5); Buck Obj. (Ex. 18); Davila Obj. (Ex. 25); Datian Obj. (Ex. 28); Dionne Obj. (Ex. 34); Evans, Carolyn Obj. (Ex. 41); Flowers Obj. (Ex. 46); Gawronski Obj. (Ex. 52); Godfrey Obj. (Ex. 56); Goldstein Obj. (Ex. 58); Harris Obj. (Ex. 64); Jagdatt Obj. (Ex. 79); Johnson, Margie Obj. (Ex. 82); Knight Obj. (Ex. 91); Korte Obj. (Ex. 92); Kouliev Obj. (Ex. 93); Howser Obj. (Ex. 107); McDonald, Janice Obj. (Ex. 112); Nau Obj. (Ex. 120); West (Ex. 130); Parker, Paul Obj. (Ex. 131); Martinez Obj. (Ex. 133); Sensenig Obj. (Ex. 144); Shover Obj. (Ex. 145); Snower Obj. (Ex. 148); Solis Obj. (Ex. 150); Stark Obj. (Ex. 154); Sutton Obj. (Ex. 155); Parker, James Obj. (Ex. 157); Thomas, Heath Obj. (Ex. 158); Tombs Obj. (Ex. 159); Toronzi Obj. (Ex. 160); Trein Obj. (Ex. 162); Park Obj. (Ex. 197); Adams, Stephen Obj. (Ex. 212); Loftis-Jones Obj. (Ex. 215); DeWitt Obj. (Ex. 217); Beadle Obj. (Ex.

misimpression that participation in the Settlement Class precludes receipt of benefits from the Economic Loss Settlement, releases individual claims for medical monitoring or personal injuries, or impacts other legal rights they may have. This is not correct.

First, Federal Rule of Civil Procedure 23(b)(2) allows a court to certify a non-opt out class where, as here, the Defendants have acted or refused to act in a way that is applicable to the entire class, making equitable and/or declaratory relief for the class as a whole appropriate. *See supra* § III.A.2. This Court already has preliminarily found that "the Settlement Class meets all prerequisites for class certification under Rules 23(a) and 23(b)(2) of the Federal Rules of Civil Procedure." PAO ¶16. Therefore, there is "no constitutional or other right to opt-out of the class." *In re Am. Fam. Enterprises*, 256 B.R. 377, 416–17 (Bankr. D.N.J. 2000) (collecting cases). As the Third Circuit Court of Appeals explained, this is because "the fundamental objective of (b)(2) [is] to bind the members of the class with one conclusive adjudication. . . . [O]pting out and notice, are . . . unnecessary for the homogeneous (b)(2) class." *Wetzel v. Liberty Mut. Ins.*, 508 F.2d at 252–53. Courts within the Third Circuit have overruled similar objections as meritless, and this case should be no different. *See Harshbarger*, 2017 WL 6525782, at *6 n.5 ("Given the nature of the highly homogenous Class [and] the nature of the injunctive and declaratory relief under the Settlement, . . . certification of a mandatory Settlement Class under both Rules 23(b)(1)(A) and 23(b)(2) was entirely appropriate and warranted in this instance."); *Serio v. Wachovia Sec., LLC*, 2009 WL 900167, at *7 (D.N.J. Mar. 31, 2009) (holding that there is no opt-out right when settlement class is certified under Rule 23(b)(2)).

222); Cox Obj. (Ex. 223); Felton Obj. (Ex. 224); Strange Obj. (Ex. 235); Rosado Obj. (Ex. 236); Bey, Richard Amun'Ra Obj. (Ex. 239); VanDerbeck Obj. (Ex. 241); Colbert Obj. (Ex. 254).

Second, since Settlement Class Members' Economic Loss Claims, Personal Injury Claims, and individual claims for payment of their medical monitoring expenses are expressly preserved by the Settlement, no one is prejudiced by their inability to opt out of the Settlement Class.

### 4.    Objections to the Notice and Objection Process Have No Merit

The Notice directed Settlement Class Members to the Settlement Website "for more information on how to make a valid objection to the Settlement," and where "[m]ore details concerning the full Settlement Agreement, and other relevant documents, are available." Notice at 1-2 & FAQ 3. The Settlement Agreement and exhibits were posted on the Settlement Website throughout the Notice Period. BG Decl. ¶¶ 19-26. Section 9 of the Settlement provided the requisite details on Class Members' right to object and the process for doing so. The method and manner for objecting here were identical to the Economic Loss Settlement, which also did not include an online objection form. *Compare* SA § 9 *with* Economic Loss Settlement Agreement § 12. Nevertheless, some Settlement Class Members have complained about the objection process, that the Settlement Website did not include a form that they could fill out and submit electronically, or that they could not easily communicate with the Settlement Administrator about the objection process.[24] As set forth in its Declaration, BrownGreer included a "Contact Us" link on the Settlement Website to facilitate email communications with Class Members, BG Decl. ¶ 22, and in consultation with the Parties, updated the Settlement Website with additional details about the process for objecting to the Settlement and/or the Fee Motion, *id.* ¶¶ 30-31. BrownGreer separately emailed responses to any Settlement Class Member who requested more information about the

---

[24] Ackley Obj. (Ex. 1); Daley Obj. (Ex. 26); Davis, Nic Obj. (Ex. 31); Dolliver Obj. (Ex. 36); Dudley Obj. (Ex. 38); Kouliev Obj. (Ex. 93); Nereson Obj. (Ex. 122); O'Hallaron Obj. (Ex. 124); Martinez Obj. (Ex. 133); Thomas, Heath Obj. (Ex. 158); Trein Obj. (Ex. 162); Meier Obj. (Ex. 196); Hanes Obj. (Ex. 206); DeWitt Obj. (Ex. 217).

objection process or the Settlement. *Id.* Moreover, Settlement Class Counsel also followed up with Class Members.

Thus, none of the complaints about the Notice or objection process undermines the Court-approved Notice or demonstrates due process violations, and therefore they should be overruled. *See Varacallo v. Mass. Mut. Life Ins. Co.*, 226 F.R.D. 207, 227 (D.N.J. 2005) (overruling as "unfounded" objections that class notice provided "insufficient information" about claims processing and noting that class members had several avenues for obtaining additional information, including contacting Class Counsel or "reviewing the Settlement Agreement itself").

### 5.       Objections to the Fee Motion Lack Merit

Many objections to the award of attorneys' fees, reimbursement of costs, and Service Awards are based on the mistaken belief that individual Settlement Class Members would be responsible for paying fees and costs out of their own pockets.[25] This is not the case. Instead, the Notice specifically apprised Class Members that "You will not be charged for [Class Counsel's] services," and also that counsel fees and expenses, along with Class Representative Service Awards, would be paid out of "the $25 million Settlement Fund." Notice at 4, ¶ 5.

Other objections simply declare opposition to attorneys' fees, expenses, and Service Awards, providing no valid basis for the objection.[26] The Court should overrule these objections

---

[25] Ackley Obj. (Ex. 1); Beyer Obj. (Ex. 9); Booker Obj. (Ex. 16); Flechsig Obj. (Ex. 30); Heeter Obj. (Ex. 35); Frantz Obj. (Ex. 47); Froom Obj. (Ex. 49); Gruber Obj. (Ex. 62); Zellner Obj. (Ex. 67); Hooper Obj. (Ex. 71); Knight Obj. (Ex. 91); Korte Obj. (Ex. 92); Calloway (Ex. 100); Massey Obj. (Ex. 106); Howser Obj. (Ex. 107); Moyer Obj. (Ex. 118); Wilson Obj. (Ex. 119); Olson Obj. (Ex. 128); Pitman Obj. (Ex. 134); Robison Obj. (Ex. 138); Sprague Obj. (Ex. 153); Szasz Obj. (Ex. 156); Wagaman Obj. (Ex. 168); Wansley Obj. (Ex. 172); Wheeler Obj. (Ex. 176); Park Obj. (Ex. 197); Ubelhor Obj. (Ex. 202); Coupel Obj. (Ex. 204); Hanes Obj. (Ex. 206); Brown Obj. (Ex. 213); Strange Obj. (Ex. 235); Rosado Obj. (Ex. 236); Hawe Obj. (Ex. 249); Colbert Obj. (Ex. 254).

[26] Albino Obj. (Ex. 5); Barba Obj. (Ex. 8); Buck Obj. (Ex. 18); Barnhouse Obj. (Ex. 19); Dionne Obj. (Ex. 34); Frazier Obj. (Ex. 48); Geckle Obj. (Ex. 53); Gonzalez Obj. (Ex. 59); McCord Obj. (Ex. 110); Mellace Obj. (Ex. 117); Nau Obj. (Ex. 120) (objects to his counsel benefiting financially

as well. *See, e.g., Philips I*, 347 F.R.D. at 131, 136, 137, 140, 142 (overruling conclusory objections to attorneys' fees, including objections that only attorneys benefitted from the settlement); *Jackson v. Wells Fargo Bank, N.A.*, 136 F Supp. 3d 687, 714 (W.D. Pa. 2015) (overruling "simply insubstantial" objections that "the attorneys are being paid 'too much'"); *Vaccaro v. New Source Energy Partners, L.P.*, 2017 WL 6398636, at *8 n.3 (S.D.N.Y. Dec. 14, 2017) (rejecting "conclusory" objection that requested fees were "too high").

Similarly, the Court should overrule one Settlement Class Member's conclusory and unsubstantiated objection that Class Counsel could not have spent enough time on the litigation to warrant the requested fee or that the fee was far too much money to give to the five counsel identified in the Notice as Settlement Class Counsel.[27] The Fee Motion (ECF 2949) and Fee Brief (ECF 2950), which are incorporated here by reference, substantiate the many thousands of hours Common Benefit Counsel devoted to the litigation of the Medical Monitoring Claims with no assurance of success and also demonstrate the reasonableness of the requested fee by virtue of the negative lodestar value of the requested attorneys' fees. Significantly, none of the objections to the Fee Motion directly addresses any of the legal or factual points made in the Fee Motion or Fee Brief.

The Fee Brief (ECF 2950) more than adequately details the basis of the requested fee award. *Compare* Tr. EL Final Approval Hr'g at 82:15-22 (overruling objection seeking breakdown of fee and costs calculations; "We do have a breakdown of the fees and costs in the response that

---

since he was included in the class action without his consent); Solis Obj. (Ex. 150); Soto-González Obj. (Ex. 151); Walker, Michael Obj. (Ex. 169);  Carson Obj. (Ex. 181); Kramer, Harry Obj. (Ex. 185); McDonald, Marie Obj. (Ex. 195); Stoysich-Noordam Obj. (Ex. 211); Adams, Stephen Obj. (Ex. 212); Loftis-Jones Obj. (Ex. 215); Fernandez Obj. (Ex. 221); Felton Obj. (Ex. 224); Fields Obj. (Ex. 225); Willing Obj. (Ex. 234); Rossi Obj. (Ex. 244); Fritz Obj. (Ex. 252); Duhart Obj. (Ex. 253); Brantley Obj. (Ex. 256).

[27] McGehee Obj. (Ex. 114).

was given in terms of looking at comparable percentage rates of basis as well as lodestar. So that has been satisfied."). One objector argued that the fee should be based on the hours the lawyers actually worked on the litigation, essentially endorsing a lodestar award.[28] As discussed at length in the Fee Brief, the requested fee is *less* than what counsel would receive under that approach.

Aside from the general, conclusory objections related to attorneys' fees, the most common objection is that Settlement Class Counsel should receive no money at all, or less than what they requested, because Settlement Class Members are not receiving any direct financial compensation.[29] But that is true in every Rule 23(b)(2) settlement. As discussed in detail above and in the Fee Brief, Settlement Class Counsel's efforts in this case brought significant and meaningful equitable relief to Settlement Class Members that will be available for fifteen years. Courts have long recognized that "a litigant or a lawyer who recovers a common fund for the benefit of persons other than himself or his client is entitled to a reasonable attorney's fee from the fund as a whole." *Boeing Co. v. Van Gemert*, 444 U.S. 472, 478 (1980). This is true even where, as here, a settlement fund is distributed entirely to organizations that will benefit the class, with no payments made directly to class members. *See, e.g.*, *In re Google Inc. St. View Elec. Commc'ns Litig.*, 21 F.4th 1102, 1120-22 (9th Cir. 2021) (affirming fee award in class settlement without direct monetary payments to class members). Courts have explicitly rejected arguments that counsel should receive no fee or a reduced fee in such cases. *Id.*; *In re Google Location Hist. Litig.*, 2024 WL 1975462, at *14, 16 (N.D. Cal. May 3, 2024) (awarding attorney fees where settlement

---

[28] Niehans Obj. (Ex. 123).

[29] Davila Obj. (Ex. 25); Dolliver Obj. (Ex. 36); Fisher Obj. (Ex. 45); Glowacki Obj. (Ex. 55); Harrison Obj. (Ex. 65); Keeler Obj. (Ex. 85); Kirkland Obj. (Ex. 88); Thomas, Heath Obj. (Ex. 158); Verret Obj. (Ex. 165); Wade Obj. (Ex. 167); Minkley Obj. (Ex. 186); Jewell Obj. (Ex. 193); Evans, Raven Obj. (Ex. 232); Rollins, Frank Obj. (Ex. 237); Wagemann Obj. (Ex. 240); Paultre Obj. (Ex. 247).

fund was distributed solely to organizations devoted to data privacy issues, with no payments going to class members); *In re Netflix Privacy Litig.*, 2013 WL 1120801 at *9-10 (N.D. Cal. Mar. 18, 2013) (awarding fees where settlement fund was distributed entirely to organizations focused on Internet privacy policy or privacy education); *Lane v. Facebook, Inc.*, 2010 WL 2076916 (N.D. Cal. May 24, 2010) (awarding attorneys' fees and costs where settlement fund was used to establish a Privacy Foundation); *Lane v. Facebook, Inc.*, 2010 WL 9013059, at *4 (N.D. Cal. Mar. 17, 2010) (approving use of settlement funds to establish Privacy Foundation), *aff'd*, 696 F.3d 811 (9th Cir. 2012).

### 6.    The Court Should Overrule All Remaining Objections

A number of objections complain that the Settlement does not address problems with the Recall or adequately compensate for economic losses or personal injuries. Some of these objectors fear the Settlement prevents them from obtaining a replacement for a Recalled Device or receiving an Economic Loss Settlement Award. Others argue that the amount of money offered for Recalled Devices is inadequate, apparently misinterpreting the Settlement objection procedure as a means to object to the substance or administration of the Economic Loss Settlement. And some simply confuse this Settlement with the Recall or the Economic Loss Settlement, without lodging any specific complaint.[30]

---

[30] Albino Obj. (Ex. 5); Ames Obj. (Ex. 6); Barba Obj. (Ex. 8); Blatt Obj. (Ex. 13); Bruce Obj. (Ex. 17); Barnhouse Obj. (Ex. 19); Caughron Obj. (Ex. 20); Cornell Obj. (Ex. 23); Daley Obj. (Ex. 26); Daniels Obj. (Ex. 27); Daugherty, Michael Obj. (Ex. 29); Dudley Obj. (Ex. 38); Kinard Obj. (Ex. 40); Flowers Obj. (Ex. 46); Galvan Obj. (Ex. 50); Gatliff Obj. (Ex. 51); Hensley Obj. (Ex. 66); Callahan Obj. (Ex. 69); Ipsen Obj. (Ex. 75); Keaton Obj. (Ex. 84); Kidd Obj. (Ex. 87); Kniery Obj. (Ex. 90); Bell Obj. (Ex. 95); Lambert Obj. (Ex. 96); Lane Obj. (Ex. 97); Kramer Resides Obj. (Ex. 98); Lawman Obj. (Ex. 101); Johnson, Mark Obj. (Ex. 108); McClure Obj. (Ex. 109); McGehee Obj. (Ex. 114); McGrier Obj. (Ex. 115); Nelson Obj. (Ex. 121); Nereson Obj. (Ex. 122); Olmstead Obj. (Ex. 127); Palmer Obj. (Ex. 129); Pucino-Chambliss Obj. (Ex. 135); Rossman Obj. (Ex. 139); Saari Obj. (Ex. 140); Hamilton Obj. (Ex. 141); Orestad Obj. (Ex. 146); Snable Obj. (Ex. 147); Parnell Obj. (Ex. 164); Wade Obj. (Ex. 167); Worden Obj. (Ex. 180); Wynn Obj. (Ex. 182);

This Settlement is separate from the Economic Loss Settlement. *See* Notice, at 1 (ECF 2858-1) ("This Settlement is *separate* from the settlement and release of Economic Loss claims relating to the Recalled Devices. The Court granted final approval of the Economic Loss Settlement on April 25, 2024.") (emphasis in original). Settlement Class Members can receive the MAP Benefits in this Settlement without jeopardizing recovery under the other settlements. Nor does the Settlement concern the administration of the Recall.

Therefore, objections based on dissatisfaction or confusion with the Recall or the Economic Loss Settlement are irrelevant here and should be overruled. *See* Tr. EL Final Approval Hr'g at 70:14-71:5 (overruling as irrelevant objections to Economic Loss Settlement that were based on inadequate compensation for personal injuries because Economic Loss Settlement did not encompass or release such claims); *id.* at 75:16-22 (overruling objection based on dissatisfaction with Philips RS Recall because "the recall is separate from the settlement [and so] there really isn't an objection to the settlement, per se"); *Philips I*, 347 F.R.D. at 131, 136, 138, 139, 140, 141, 142, 143, 144, 145, 147, 148, 149, 150, 151 (overruling similar objections to Economic Loss Settlement Agreement); Br. in Support of Final Approval of Economic Loss Settlement Agreement, at 46-48 & nn.52-53 (ECF 2660) (responding to similar objections based on dissatisfaction with the Recall

_____

Jenkins Obj. (Ex. 184); Kramer, Harry Obj. (Ex. 185); Minkley Obj. (Ex. 186); Worley-Jenkins Obj. (Ex. 187); Griswold Obj. (Ex. 188); Salerno Obj. (Ex. 189); Adams, Sharon Obj. (Ex. 191); Ayers Obj. (Ex. 192); King Obj. (Ex. 194); Meier Obj. (Ex. 196); Pollard Obj. (Ex. 198); Sonail Obj. (Ex. 201); Drohan Obj. (Ex. 205); Mills Obj. (Ex. 208); Rollins, Joan (Ex. 209); Seamon Obj. (Ex. 210); Ecklund Obj. (Ex. 218); Dobson Obj. (Ex. 219); Fernandez Obj. (Ex. 221); Felton Obj. (Ex. 224); Guy Obj. (Ex. 227); Thomas, Craig Obj. (Ex. 229); Vandiver Obj. (Ex. 230); Rogers Obj. (Ex. 231); Evans, Raven Obj. (Ex. 232); Bey, Rosalie Obj. (Ex. 233); Willing Obj. (Ex. 234); Rollins, Frank Obj. (Ex. 237); Mathias Obj. (Ex. 238); Wagemann Obj. (Ex. 240); Rossi Obj. (Ex. 244); Rodenacker Obj. (Ex. 245); Gustafson Obj. (Ex. 250); Gravelyn Obj. (Ex. 251); Fritz Obj. (Ex. 252); Duhart Obj. (Ex. 253); Colbert Obj. (Ex. 254); Brantley Obj. (Ex. 256); Hosen Obj. (Ex. 257).

program); *see also Taha*, 2020 WL 7024238, at *5-6 (overruling objections seeking relief that was outside the scope of the settlement).

Finally, several objectors mistakenly assume their medical records and other personal health information will be automatically disclosed to and used by the MAP researchers, with some fearing they could not opt out of such disclosure.[31] In fact, "Settlement Class Members can *choose* to submit their medical information" to the MAP Registry "for review and evaluation, thereby contributing to the advancement of public knowledge and education with respect to these injuries." SA at 2-3 (emphasis added). Otherwise, Settlement Class Members' medical information will *not* be disclosed. Settlement Class Members who want to participate in the MAP Registry must affirmatively elect "to release or disclose medical information to appropriate recipients working on behalf of the MAP Research" program (SA Exhibit 3 § III.C) "for purposes of review and evaluation in connection with the MAP Research" (SA § 3.2.1). Those who do not wish to participate need not take any action at all. *Id.* (participation in the registry requires Settlement Class Members to affirmatively "elect to submit authorizations for the release and disclosure of medical information protected by HIPAA").

Objections based on misunderstandings of the Settlement's terms "do not indicate to the Court that the proposed settlement is unfair, inadequate, or unreasonable" and "do not weigh against granting final approval to the proposed settlement." *Zanghi v. Freightcar Am., Inc.*, 2016 WL 223721, at *13, 18 (W.D. Pa. Jan. 19, 2016) (overruling objections that "demonstrate a misunderstanding of the settlement proposal"). *Accord In re Am. Invs. Life Ins. Co. Annuity Mktg.*

---

[31] Davila Obj. (Ex. 25); Datian Obj. (Ex. 28); Baker, Jean Faour Obj. (Ex. 43); Korte Obj. (Ex. 92); Gbruoski Obj. (Ex. 99); Martinez Obj. (Ex. 133); Pitman Obj. (Ex. 134); Schreiber Obj. (Ex. 190); Ward Obj. (Ex. 216); Pohalski Obj. (Ex. 246); Khan Obj. (Ex. 248).

*& Sales Pracs. Litig.*, 263 F.R.D. 226, 240 (E.D. Pa. 2009) ("[O]bject[ions] based on a misunderstanding of the settlement terms . . . do not affect the settlement's fairness.").

## IV.    CONCLUSION

For the foregoing reasons, Settlement Class Representatives respectfully request that the Court grant final approval of the proposed Settlement, certify the Settlement Class, and enter the proposed Final Approval Order.

Dated: October 17, 2024                              Respectfully submitted,

*/s/ Sandra L. Duggan*                              */s/ Christopher A. Seeger*
Sandra L. Duggan, Esquire                         Christopher A. Seeger, Esquire
**LEVIN SEDRAN & BERMAN LLP**           **SEEGER WEISS LLP**
PA Bar ID 56420                                     NJ Bar ID 042631990
510 Walnut Street, Suite 500                      55 Challenger Road, 6th Floor
Philadelphia, PA 19106                             Ridgefield Park, NJ  07660
(215) 592-1500 (phone)                            (973) 639-9100 (phone)
sduggan@lfsblaw.com                             cseeger@seegerweiss.com

*/s/ Steven A. Schwartz*                           */s/ Kelly K. Iverson*
Steven A. Schwartz, Esquire                       Kelly K. Iverson, Esquire
**CHIMICLES SCHWARTZ KRINER &**        **LYNCH CARPENTER, LLP**
**DONALDSON-SMITH LLP**                     PA Bar ID 307175
PA Bar ID 50579                                     1133 Penn Avenue, 5th Floor
361 West Lancaster Avenue                         Pittsburgh, PA 15222
Haverford, PA 19041                                (412) 322-9243 (phone)
(610) 642-8500 (phone)                            kelly@lcllp.com
steveschwartz@chimicles.com

*/s/Roberta D. Liebenberg*
Roberta D. Liebenberg, Esquire
**FINE, KAPLAN AND BLACK, R.P.C.**
PA Bar ID 31738
One South Broad Street, 23rd Floor
Philadelphia, PA 19107
(215) 567-6565 (phone)
rliebenberg@finekaplan.com

*Settlement Class Counsel*

*/s/ D. Aaron Rihn*
D. Aaron Rihn, Esquire
**ROBERT PEIRCE & ASSOCIATES, P.C.**
PA Bar ID: 85752
707 Grant Street, Suite 125
Pittsburgh, PA 15219
(412) 281-7229 (phone)
(412) 281-4229 (fax)
arihn@peircelaw.com

Peter St. Tienne Wolff, Esquire
**PIETRAGALLO GORDON ALFANO BOSICK & RASPANTI, LLP**
PA Bar ID: 208433
One Oxford Centre - 38th Floor
Pittsburgh, PA 15219
(412) 263-2000 (phone)
(412) 263-2001 (fax)
psw@pietragallo.com

*Plaintiffs' Co-Liaison Counsel*