# In the United States District Court
# Western District of Pennsylvania
# Pittsburgh Division

| | |
|---|---|
| ***In re:*** **PHILIPS RECALLED CPAP, Bi-Level PAP, AND MECHANICAL VENTILATOR PRODUCTS LIABILITY LITIGATION** | Case No. **2:21-mc-01230-JFC** MDL No. **3014** |
| This Document Relates to: | Judge **JOY FLOWERS CONTI** |
| *King v. Cornerstone Medical Services— Midwest LLC, et al.,* Case No. 2:23-cv-02040-JFC | |

**<u>*Pro Se* PLAINTIFF DERRICK MARTIN KING'S REPLY IN SUPPORT OF HIS MOTION TO STAY IMPLEMENTATION OF THE PRIVATE MASTER SETTLEMENT AGREEMENT FOR PERSONAL INJURY CLAIMS PENDING RESOLUTION OF THE PROCEEDINGS IN THE THIRD CIRCUIT COURT OF APPEALS</u>**

## TABLE OF CONTENTS

TABLE OF CONTENTS ............................................................................... i

TABLE OF AUTHORITIES ..................................................................... iii

INTRODUCTION ...................................................................................... 1

RESPONSES IN OPPOSITION TO PLAINTIFF KING'S MOTION ................. 2

    A.    The Philips Defendants. ................................................................. 2

    B.    The PolyTech Defendants. ............................................................ 2

    C.    The MDL Plaintiffs, Liaison Counsel, and PSC........................... 3

PLAINTIFF KING'S DECLARATION .................................................... 3

PLAINTIFF KING'S REPLY TO THE PHILIPS DEFENDANTS...................... 4

    A.    The Philips Defendants (specifically Philips RS North
America LLC) have Engaged in Improper Tactics
Designed Specifically to Delay Proceeding on the Merits
in a Court of Law. ....................................................................... 4

    B.    Counsel for Defendant Philips RS North America LLC is
Included in the ECF/CM Filing System and Receives
Notices from the Clerk of the Third Circuit Court of
Appeals. ....................................................................................... 8

    C.    Counsel for the Philips Defendants Will Eventually be
Required to Answer for their Conduct with the
Disciplinary Counsel for the Pennsylvania Supreme Court
and/or the Ohio Board of Professional Conduct. .......................... 8

PLAINTIFF KING'S REPLY TO THE POLYTECH DEFENDANTS ............... 10

PLAINTIFF KING'S REPLY TO THE MDL PLAINTIFFS' LEAD
COUNSEL, LIAISON COUNSEL, AND PSC ......................................... 11

    A.    Like the Philips Defendants, the MDL Plaintiffs Seek to
Avoid Review of the Master Settlement Agreement by
either the Third Circuit or by this Court. ................................. 11

    B.    The MDL Plaintiffs are Free to Submit their Arguments
to the Third Circuit, But They Have Refused to do so.............. 14

C.    Counsel for the MDL plaintiffs have Presented
Inconsistent Arguments Regarding Plaintiff King's
Eligibility to Participate in the Private Master Settlement
Agreement. ................................................................... 15

**CONCLUSION** ..................................................................... **17**

**CERTIFICATE OF SERVICE** ................................................ **19**

# TABLE OF AUTHORITIES

## Statutes

28 U.S.C. § 1332 ........................................................................................................ 5

28 U.S.C. § 1407 ........................................................................................................ 5

28 U.S.C. § 1441 ........................................................................................................ 5

28 U.S.C. § 1446 ........................................................................................................ 5

28 U.S.C. § 1915 ........................................................................................................ 4

28 U.S.C. § 2112 ........................................................................................................ 5

42 Pa. Con. Stat. § 8343 ............................................................................................ 9

Ohio Rev. Code § 2323.311 ...................................................................................... 4

## Rules of Court

Fed. R. Civ. P. 23 ...................................................................................................... 9

J.P.M.L. Rule 7.1(a) .................................................................................................. 5

## Case Dockets

*In re Derrick Martin King,*
    3d Cir. No. 25-1216 ............................................................................................. 1

*In re Derrick Martin King,*
    6th Cir. No. 24-3851 ............................................................................................ 7

*In re Philips Recalled CPAP, Bi-Level PAP, and Mechanical Ventilator*
    *Products Liability Litigation,*
    MDL No. 3014 (J.P.M.L.) ................................................................................ 5, 8

*In re Philips Recalled CPAP, Bi-Level PAP, and Mechanical Ventilator*
    *Products Liability Litigation,*
    W.D. Pa. No. 2:21-mc-01230, MDL No. 3014 ............................................ 9, 14, 17

*King v. Cornerstone Medical Services—Midwest LLC, et al.,*
    N.D. Ohio No. 5:24-cv-01344-BYP ............................................................ 6, 7, 8

*King v. Cornerstone Medical Services—Midwest LLC, et al.,*
    W.D. Pa. No. 2:24-cv-01693-JFC ...................................................................... 8

*King v. Cornerstone Medical Services—Midwest LLC, et al.,* Summit
    C.P. no. CV 2024-07-2874 (Ohio Com. P.). ............................................. 6

*King v. Koninklijke Philips N.V., et al.,*
    N.D. Ohio No. 5:23-cv-02042-PAB ....................................................... 4

*King v. Koninklijke Philips N.V., et al.,*
    W.D. Pa. No. 2:23-cv-02040-JFC .......................................................... 5

**Professional Conduct Rules**

Pa. R. Prof. Cond. 1.1 ................................................................................ 10

Pa. R. Prof. Cond. 1.3 ................................................................................ 11

**Law Reviews and Journals**

Elizabeth Chamblee Burch, *Monopolies in Multidistrict Litigation,* 70
    Vand. L. Rev. 67 (2017) ..................................................................... 12, 14

**Other Authorities**

CBS News (Apr. 29, 2024), *Philips settles suits over its DreamStation
    sleep apnea machines for $1.1 billion.* Available online at
    https://www.cbsnews.com/news/philips-sleep-apnea-machines-
    settlement-dreamstation/ (accessed Feb. 21, 2025) ................................ 18

Jen Christensen (Apr. 30, 2024), *Philips reaches $1.1 billion settlement
    for CPAP machine lawsuits, admits nofault or liability.* CNN,
    available online at https://cnn.com/2024/04/30/health/philips-1-
    billion-cpap-settlement-agreement/index.html (accessed Feb. 21,
    2025) ................................................................................................... 18

Michael D. Sallah and Debbie Cenziper (Apr. 30, 2024), *Philips agrees
    to $1 billion settlement with patients over defective breathing
    machines.* Pittsburgh Post-Gazette, available online at
    https://www.post-gazette.com/business/healthcare-
    business/2024/04/29/philips-cpap-breathing-machines-
    settlement/stories/202404290044 (accessed Apr. 30, 2024) ................... 18

## **INTRODUCTION**

On February 13, 2025, *Pro se* Plaintiff Derrick Martin King (hereinafter "Plaintiff King" filed a motion to stay implementation of the proposed $1.1 billion-dollar Master Settlement Agreement (hereinafter "MSA") for plaintiffs alleging certain personal injuries (ECF No. 2768) pending the Third Circuit Court of Appeals' resolution of Plaintiff King's Petition for Writ of Mandamus.[1] The very same day that the Third Circuit Clerk docketed the Petition, Judge Conti entered an Order (ECF No. 3141) which ordered each of the parties to file a response to Plaintiff King's motion to stay proceedings by Friday, February 21, 2025.

Plaintiff King states for the record that he has been in communication with Tim Cruz[2] and Itri Shauna[3] regarding access to the common-benefit discovery documents. Plaintiff King has been given access to the discovery repository. In addition, Plaintiff King was offered an opportunity to purchase a hard drive containing the common-benefit discovery documents for approximately $300.

Accordingly, the discovery issue is now moot. This Court and the Third Circuit has been notified by Plaintiff King of the mootness. However, the remaining issue

---

[1] On February 4, 2025, Plaintiff King sought a writ of mandamus with the Third Circuit. *In re Derrick Martin King,* 3d Cir. No. 25-1216. The mandamus petition was docketed with the Clerk of Courts on February 13, 2025.

[2] Cruz (tcruz@seegerweiss.llp) is employed as an IT administrator at SeegerWeiss LLP.

[3] Shauna Itri (sitri@seegerweiss.llp) is a partner at SeigerWeiss LLP.

1

(whether or not the private master settlement agreement can proceed forward) has not been mooted.

<u>**RESPONSES IN OPPOSITION TO PLAINTIFF KING'S MOTION**</u>

A.     The Philips Defendants.

On February 21, 2025, the Philips Defendants filed a response in opposition to Plaintiff King's motion (ECF No. 3164). The Philips Defendants present two arguments in opposition: (1) Plaintiff King's mandamus petition is unlikely to succeed on the merits because the Court cannot modify the terms of a private personal injury settlement;[4] and (2) the requested stay would prejudice the parties participating in the settlement—and undermine the purpose of the MDL—while taking nothing away from Plaintiff King.[5]

B.     The PolyTech Defendants.

On February 21, 2025, Defendant Polymer Technologies Inc. and Defendant Polymer Molded Products LLC. (referred to collectively as "the PolyTech Defendants") filed a "joinder" that stated:

> PLEASE TAKE NOTICE THAT the arguments set forth in the *Philips Defendants' Opposition to Plaintiff Derrick Martin King's Motion to Stay Implementation of the Private Master Settlement Agreement for Personal Injury Claims Pending Resolution of the Proceedings In the Third Circuit Court of Appeals*, D.I. 3164, ("Philips' Response") equally apply to Polymer Technologies Inc. and Polymer Molded Products, LLC. Therefore, Polymer Technologies Inc. and Polymer Molded Products,

---

[4] (ECF No. 3164 at p. 7-8).

[5] *Id.* at pp. 9-10.

LLC hereby join in the Philips' Response for all the reasons set forth therein.[6]

C.    The MDL Plaintiffs, Liaison Counsel, and PSC.

On February 21, 2025, the MDL lead counsel, liaison counsel, and PSC filed a response in opposition to Plaintiff King's Motion (ECF No. 3166). The MDL Plaintiffs argue that: (1) the balance of factors weighs against granting a stay;[7] and (2) Plaintiff King has no standing to object to the settlement.[8]

## PLAINTIFF KING'S DECLARATION

Throughout the remainder of this document, Plaintiff King will refer to his Declaration (hereinafter "King Declaration") and the exhibits annexed to the King Declaration.[9]

---

[6] (ECF No. 3165 at p. 1). PolyTech's counsel Eric Scott Thompson cannot come up with anything to add or present an original argument (he merely states that he agrees with anything that the Philips Defendants argue). It is clear to Plaintiff King that attorney Thompson is incompetent to practice law in the Commonwealth of Pennsylvania and will be required to answer questions regarding his competency to practice law to the Disciplinary Board of the Supreme Court of Pennsylvania.

[7] (ECF No. 3166 at pp. 4-5).

[8] *Id.*, at pp. 5-7.

[9] The King Declaration is annexed herein and marked as Exhibit A.

## PLAINTIFF KING'S REPLY TO THE PHILIPS DEFENDANTS

A.    The Philips Defendants (specifically Philips RS North America LLC) have Engaged in Improper Tactics Designed Specifically to Delay Proceeding on the Merits in a Court of Law.

This Court should review the underhanded tactics of counsel for Defendant Philips RS North America LLC that began immediately after Plaintiff King filed suit in an Ohio state court.

The docket sheet maintained by the Summit County Clerk of Courts indicates that on September 21, 2023, Plaintiff King initiated a complaint in the Summit County Court Common Pleas. [10] Included in the documents was a "poverty affidavit." [11] The docket sheet indicates that the "poverty affidavit" was sent to the chambers of the assigned judge but was awaiting approval or disapproval.

The docket of the Northern District of Ohio indicates that on October 18, 2023, Defendant Philips RS North America LLC filed a *Notice of Removal*. [12] This filing

---

[10] *See* King Declaration at ¶ 3; Exhibit B.

[11] A "poverty affidavit" is authorized under Ohio Rev. Code § 2323.311 and it operates similar to the *in forma pauperis* statute (28 U.S.C. § 1915) used in the Federal courts and it allows any party who is indigent to proceed in the Court without prepayment of filing fees and other costs. When filing a case under the "poverty affidavit" statute, the Clerk of Court does not serve the documents upon the defendants until after a judge or magistrate reviews the information provided in the "poverty affidavit" and either approves the filing or sets a court hearing when the filing party can present arguments.

[12] *See King v. Koninklijke Philips N.V., et al.,* N.D. Ohio No. 5:23-cv-02042-PAB. The notice is authorized under 28 U.S.C. § 1332, 28 U.S.C. § 1441, and 28 U.S.C. § 1446 to remove a case from a state court to the United States District Court in the jurisdiction where the state court is located.

divests the Summit County Court of Common Pleas of jurisdiction and terminates proceedings in that court. The very next day, the Philips Defendants filed a *Notice of Tag-Along Actions* with the Judicial Panel on Multidistrict Litigation (hereinafter "J.P.M.L.").[13] Plaintiff King did not contest the eventual transfer to this Court.

On October 27, 2023, the J.P.M.L. issued CTO No. 84 and conditionally transferred the case to this Court.[14] The case was formally transferred to this Court on November 29, 2023.[15] Counsel for Defendant Philips RS North America LLC has continued their delay tactics designed to prevent Plaintiff King from resolving the case.

After Plaintiff King voluntarily dismissed his initial case,[16] he included a new party, Cornerstone Medical Services—Midwest LLC as a Defendant.[17] On July 7, 2024, Plaintiff King filed a complaint in the Summit County Court of Common

---

[13] The notice is authorized under 28 U.S.C. § 1407, 28 U.S.C. § 2112, and J.P.M.L. Rule 7.1(a). The cited statutes and rules of procedure allows the J.P.M.L. to consolidate cases into a multidistrict action for pretrial purposes.

[14] *See In re Philips Recalled CPAP, Bi-Level PAP, and Mechanical Ventilator Products Liability Litigation,* MDL No. 3014 (J.P.M.L.), ECF No. 826.

[15] (ECF No. 2364); *see also King v. Koninklijke Philips N.V., et al.,* W.D. Pa. No. 2:23-cv-02040-JFC, ECF No. 10.

[16] (ECF No. 2840); *see also King v. Koninklijke Philips N.V., et al.,* W.D. Pa. No. 2:23-cv-02040-JFC, ECF No. 22. Plaintiff King dismissed this case because of the private Settlement Agreement.

[17] Cornerstone Medical Services—Midwest LLC was the Durable Medical Equipment (DME) supplier who sold Plaintiff King the Philips Respironics DreamStation AutoPAP device that is the subject of this litigation.

Pleas.[18] Plaintiff King filed a "poverty affidavit" with the clerk of courts. It should be noted that the docket sheet for this case indicates that on July 18, 2024, the "poverty affidavit" was granted. The service list indicates that FedEx delivered the documents to Defendant Philips RS North America LLC's statutory agent on July 24, 2024.

Plaintiff King stated in his complaint filed with the Summit County Court of Common Pleas that Cornerstone Medical Services—LLC was established as an Ohio Limited Liability Company. Despite knowing that the Federal courts lack diversity jurisdiction, on August 5, 2024, Defendant Philips RS North America LLC filed a Notice of Removal with the Northern District of Ohio.[19]

On August 7, 2024, Plaintiff King filed an *Omnibus Motion to Remand to State Court and Motion for Sanctions.*[20] On August 12, 2024, Defendant Philips RS North America LLC filed a *Motion to Stay Proceedings Pending Transfer to MDL No. 3014.*[21] Plaintiff King filed a response in opposition, Defendant Philips RS North America

---

[18] *See* King Declaration at ¶ *King v. Cornerstone Medical Services—Midwest LLC, et al.,* Summit C.P no. 2024-07-2874.

[19] *King v. Cornerstone Medical Services—Midwest LLC, et al.,* N.D. Ohio No. 5:24-cv-01344-BYP.

[20] *King v. Cornerstone Medical Services—Midwest LLC, et al.,* N.D. Ohio No. 5:24-cv-01344-BYP, ECF No. 4.

[21] *King v. Cornerstone Medical Services—Midwest LLC, et al.,* N.D. Ohio No. 5:24-cv-01344-BYP, ECF No. 5.

filed a reply in support of their motion, and Plaintiff King filed a reply in support of his motion.[22]

It should be noted that on October 1, 2024, Plaintiff King sought a writ of mandamus with the Sixth Circuit Court of Appeals.[23] The mandamus petition remains pending and is the subject of motions pending before this Court.[24]

On October 11, 2024, Judge Benita Y. Pearson entered an Order which: (1) granted Defendant Philips RS North America LLC's motion to stay proceedings pending transfer to MDL No. 3014; (2) and staying Plaintiff King's motion to remand to state court.[25]

---

[22] *King v. Cornerstone Medical Services—Midwest LLC, et al.,* N.D. Ohio No. 5:24-cv-01344-BYP, ECF Nos. 7, 8, and 9.

[23] *In re Derrick Martin King,* 6th Cir. No. 24-3851.

[24] On December 16, 2024, Plaintiff King filed a motion to stay the case (hereafter "First Motion to Stay") pending resolution by the Sixth Circuit (ECF No. 3068). On January 6, 2025, the Philips Defendants filed a response in opposition (ECF No. 3083). The MDL Plaintiffs also filed a response in opposition (ECF No. 3085). The PolyTech Defendants filed a "joinder" supporting the Philips Defendants (ECF No 3084). Finally, on January 13, 2025, Plaintiff King filed a reply in support of his motion (ECF No. 3087).

[25] *King v. Cornerstone Medical Services—Midwest LLC, et al.,* N.D. Ohio No. 5:24-cv-01344-BYP, ECF No. 15.

On October 11, 2024, the J.P.M.L. set the matter for a non-oral hearing at its December 5, 2024 session in New York, New York.[26] On December 12, 2024, the J.P.M.L. transferred the case to this Court.[27]

> **B.    Counsel for Defendant Philips RS North America LLC is Included in the ECF/CM Filing System and Receives Notices from the Clerk of the Third Circuit Court of Appeals.**

The General Docket for the Third Circuit Court of Appeals for the *In re Derrick Martin King* case (3d Cir. No. 25-1216) indicates that attorney Wendy West Feinstein is included in the list of attorneys who receive notices from the Clerk of the Third Circuit Court of Appeals. Despite receiving clear notification of all filings that Plaintiff King may file with the Third Circuit, Defendant Philips RS North America LLC has not filed any arguments with the Third Circuit. Plaintiff King's argument that Defendant Philips RS North America LLC does not want either the Third Circuit or this Court to review any aspect of the private master settlement agreement is very interesting.

> **C.    Counsel for the Philips Defendants Will Eventually be Required to Answer for their Conduct with the Disciplinary Counsel for the Pennsylvania Supreme Court and/or the Ohio Board of Professional Conduct.**

In their response in opposition, the Philips Defendants stated:

---

[26] *In re Philips Recalled CPAP, Bi-Level PAP, and Mechanical Ventilator Products Liability Litigation,* MDL No. 3014 (J.P.M.L.) ECF No. 942.

[27] *King v. Cornerstone Medical Services—Midwest LLC, et al.,* W.D. Pa. No. 2:24-cv-01693-JFC.

Plaintiff Derrick King's Motion to Stay Implementation of the Private Master Settlement Agreement for Personal Injury Claims while his Petition for Writ of Mandamus ("Mandamus Petition") remains pending in the U.S. Court of Appeals for the Third Circuit, ECF No. 3139 (the "Motion"), is his latest in a series of efforts to interfere with the orderly administration and resolution of this MDL. **<u>Over the past two years, King's vexatious litigation tactics have burdened this Court, the Philips Defendants, and several other courts with repetitive and meritless motion practice.</u>** Now—for the second time—he seeks to delay implementation of the private personal injury settlement program that was inked over nine months ago and which he has no standing to challenge. The settlement of other plaintiffs' personal injury cases does not compromise King's rights or claims in any way. The personal injury settlement program was created by private agreement, not a class settlement subject to the Court-approval requirements of Federal Rule of Civil Procedure 23.[28]

Counsel for the Philips Defendants have made defamatory and untrue statements about Plaintiff King in violation of Pennsylvania law.[29] Plaintiff King states that he has never been declared as a "vexatious litigator" by this Court or by any other court. Counsel for the Philips Defendants have no basis to make that statement.

Plaintiff King will suggest to counsel for the Philips Defendants that they make sure that their professional liability insurance policy is up-to-date and that it covers their actions associated with this case (specifically the defamatory comments

---

[28] (ECF No. 3164 at p. 4). (emphasis added).

[29] 42 Pa. Con. Stat. § 8343 sets the following elements for defamation: (1) The defamatory character of the communication; (2) Its publication by the defendant; (3) Its application to the plaintiff; (4) The understanding by the recipient of its defamatory meaning; (5) The understanding by the recipient of it as intended to be applied to the plaintiff; (6) Special harm resulting to the plaintiff from its publication; and (7) Abuse of a conditionally privileged occasion.

made regarding Plaintiff King). Counsel for the Philips Defendants will have to answer to the Disciplinary Counsel for the Pennsylvania Supreme Court for their conduct in this case. In addition, attorney Wendy West Feinstein will have to answer to the Ohio Board of Professional Conduct for her conduct in the U.S. District Court for the Northern District of Ohio and the Summit County Court of Common Pleas.

## **PLAINTIFF KING'S REPLY TO THE POLYTECH DEFENDANTS**

Records on file with the Disciplinary Board of the Supreme Court of Pennsylvania indicates that Eric Scott Thompson, Pa. ID No. 92666, was first admitted to practice law in the Commonwealth of Pennsylvania on May 18, 2004.[30]

The actions of Eric Scott Thompson in this case leads to serious questions regarding his competency to practice law in the Commonwealth of Pennsylvania.[31]

---

[30] *See* the Disciplinary Counsel of the Supreme Court of Pennsylvania's online database, available online at https://www.padisciplinaryboard.org/for-the-public/find-attorney/attorney-detail/92666 (accessed Feb. 21, 2025).

[31] *See* Pa. R. Prof. Cond. 1.1 ("A lawyer shall provide competent representation to a client. Competent representation requires the legal knowledge, skill, thoroughness and preparation reasonably necessary for the representation." In addition, Pa. R. Prof. Cond. 1.3 states that "A lawyer shall act with reasonable diligence and promptness in representing a client." Parroting the arguments of the Philips Defendants does not demonstrate reasonable diligence in the representation of his client.

## PLAINTIFF KING'S REPLY TO THE MDL PLAINTIFFS' LEAD COUNSEL, LIAISON COUNSEL, AND PSC

A.   Like the Philips Defendants, the MDL Plaintiffs Seek to Avoid Review of the Master Settlement Agreement by either the Third Circuit or by this Court.

Counsel for the MDL Plaintiffs are acting not in the best interests of the plaintiffs, but seek to protect the millions of dollars that counsel would be entitled to should the private master settlement agreement be permitted to proceed. Professor Elizabeth Chamblee Burch of the University of Georgia School of Law stated the following when it comes to multidistrict litigation:

> When transferee judges receive a multidistrict proceeding, they select a few lead plaintiffs' lawyers to efficiently manage litigation and settlement negotiations. That decision gives those attorneys total control over all consolidated plaintiffs' claims and rewards them richly in common-benefit fees. It's no surprise then that these are coveted positions, yet empirical evidence confirms that the same attorneys occupy them time and again.

> Anytime repeat players exist and exercise both oligopolistic leadership control across multidistrict proceedings and monopolistic power within a single proceeding, there is concern that they will use their dominance to enshrine practices and norms that benefit themselves at consumers' (or here, clients') expense. Apprehensiveness should increase when defense lawyers are repeat players too, as they are in multidistrict litigation. And anxiety may peak when the circumstances exhibit these anti-competitive characteristics, but lack regulation as they do here. Without the safeguards built into class certification, judicial monitoring and appellate checks disappear. What remains is a system that may permit lead lawyers to act, at times, like a cartel.[32]

In addition to this, Professor Burch stated that:

---

[32] Elizabeth Chamblee Burch, *Monopolies in Multidistrict Litigation,* 70 Vand. L. Rev. 67 (2017).

> . . . [R]epeat players on both sides continually achieve their goals in tandem—defendants end massive suits and lead plaintiffs' lawyers increase their common-benefit fees. But this exchange may result in lower payouts to plaintiffs, stricter evidentiary burdens in claims processing, or more coercive plaintiff-participation measures in master settlements.[33]

Finally, Professor Burch (a noted critic of the MDL litigation process), stated that:

> What is less clear, however, is how the plaintiffs fare—the consumers, so to speak. Not all plaintiffs' claims are created equal. If leadership's influence is unchecked, it's possible that lead attorneys could secure generous common-benefit fees for themselves, while generating suboptimal outcomes for some or all claimants. It is here that a significant departure from the class-action baseline emerges, for without certification, multidistrict proceedings lack the judicial, competitive-market, and institutional checks that can help safeguard and legitimize class outcomes.
>
> Self-dealing settlement terms and collusive behavior have been well-documented in class actions even though classes require extensive regulation throughout the proceedings. In Rule 23(b)(3) classes, because only class counsel stand to gain attorneys' fees, a host of competing attorneys who are otherwise boxed out of that fee award have incentives to solicit and assist class members in opting out.
>
> Appellate courts stand ready to reverse collusive deals and chastise self-dealing attorneys. And even defendants occasionally serve as watchdogs for class members when their interests align: they invoke inadequate representation as a rationale against class certification and then, when settling, may consider its existence to prevent the class-wide settlement's preclusive effect from unraveling.
>
> But even these safeguards crumble in non-class, multidistrict proceedings. When transferee judges select lead lawyers, they rarely attend to adequate representation, focusing instead on financial means, expertise, and cooperation—factors that empower repeat players but may stifle competition. And unlike class settlements that require judges to ensure that they are fair, reasonable, and adequate, judges have little say in "private" global deals that leaders design. External competitive

---

[33] *Id.*, 70 Vand. L. Rev. at 67-68 (2017).

checks are likewise absent: the overwhelming message sent by transferee judges is that leadership appointments—and the lucrative fees accompanying them—are conditioned upon cooperation and team play. So, even though plaintiffs' attorneys are assertive and ambitious, their calculated response may be to silence their discord and achieve financial success by playing the long game. Defendants are no help either, for finality hinges not on adequate representation and preclusion, but on convincing claimants to accept the deal.

Maybe these circumstances would be less troubling if they affected only a few cases, but multidistrict litigation is mushrooming in both impact and sheer numbers. These cases often attract sustained media attention (e.g., General Motors' ignition switch litigation), which influences public perception. And from 2002 to 2015, multidistrict proceedings leapt from sixteen to thirty-nine percent of the federal courts' entire civil caseload. Removing prisoner and social security cases escalates that number to 45.6 percent. Many factors surely contribute to that increase, but two pulling in divergent directions stand out: corporations operate nationally (and internationally), but recent congressional and judicial decisions have hobbled the use of nationwide class actions, particularly when state laws govern.

In short, multidistrict litigation impacts the entire civil justice system. Even though the Judicial Panel on Multidistrict Litigation ("the Panel") centralizes factually related cases to promote efficient pretrial handling only, the reality is that just 2.9 percent of cases return to their original districts. As cases routinely conclude through these proceedings, the lack of checks and balances to thwart self-dealing temptations becomes all the more startling and suggests that regulation is warranted.[34]

Counsel for the MDL Plaintiffs are only interested in protecting their bottom line, and have no interest in obtaining compensation for those plaintiffs who either have their own counsel or (like Plaintiff King) proceeding pro se. If counsel for the MDL plaintiffs represent their clients on a one-third contingency (plus expenses), the

---

[34] *Id.*, 70 Vand. L. Rev. at 70-73 (2017) (footnotes omitted).

expected fees earned for the $1,075,000,000. settlement, the fees earned by counsel

for the MDL plaintiffs is approximately $354,750,000.[35]

> B.    The MDL Plaintiffs are Free to Submit their Arguments to the
> Third Circuit, But They Have Refused to do so.

Once again, the general docket for Plaintiff King's mandamus action in the

Third Circuit Court of Appeals lists several of the MDL Plaintiffs' counsel (including

Sandra L. Duggan, Kelly K. Iverson, Daniel A. Rihn, Steven A, Schwartz, Christopher

A. Seeger, and Peter S. Wolff) are listed as counsel (and thus receive electronic notices

whenever a document is filed with the Third Circuit).

Despite receiving notice of the Third Circuit filing, the MDL Plaintiffs refuse

to present any arguments to the Third Circuit (which clearly have the authority to

review the case and make a ruling that would be binding on the parties and would be

definitive. It is as if the MDL Plaintiffs are afraid of what the Third Circuit Court of

Appeals will do to this case.

---

[35] Counsel for the MDL plaintiffs were awarded attorneys' fees of $ 94,440,614.59 and reimbursement of $ 559,385.41 for expenses in the settlement of the class-action for economic losses (ECF No. 2737). In addition, and expenses of counsel for the MDL Plaintiffs were awarded $4,369,754,57 in attorneys' fees and reimbursement of for the medical monitoring settlement and $ 451,243,245.43 in expenses in the settlement of the class-action for medical monitoring (ECF No. 3054).

C.    Counsel for the MDL plaintiffs have Presented Inconsistent Arguments Regarding Plaintiff King's Eligibility to Participate in the Private Master Settlement Agreement.

On August 7, 2024, BrownGreer mailed Plaintiff King a letter regarding the Personal Injury Master Settlement Agreement.[36] The relevant portions of the first paragraph of the letter states that:

> You satisfy the definition of an "Eligible Claimant" in the Master Settlement Agreement and can register to participate in the Settlement Program because you alleged a Qualifying Injury caused by usage of a Philips Recalled Device If you want to participate in the voluntary Settlement Program, you must complete the attached Registration Packet forms and send them to us by the December 10, 2024 Registration Deadline: (1) Registration Form: (2) Release: (3) Lien Disclosure and Authorization Form; and (4) a template Stipulation of Dismissal with Prejudice (only required if you have a pending lawsuit against the Philips Defendants).[37]

Plaintiff King was confused by the statements regarding his eligibility to participate in the Master Settlement Agreement, so he emailed Daniel Aaron Rihn and Zac Gordon.[38] Approximately fifteen minutes later, Zac Gordon responded and inquired as to whether or not the documents were related to the Medical Advancement Program for the Medical Monitoring class-action settlement. [39] Approximately ten minutes after receiving Zac Gordon's email, Plaintiff King

---

[36] The August 7, 2024 letter from BrownGreer PLC is annexed herein and marked as Exhibit J.

[37] *Id.*

[38] The August 7, 2024 email is annexed herein and marked as Exhibit K.

[39] *Id.*

responded by informing Gordon that "The documents say nothing about medical monitoring."[40] Approximately ten minutes later, Zac Gordon emailed Plaintiff King and indicated that he would forward the email to BrownGreer.[41]

On November 13, 2024, Plaintiff King received an email from Adasa Hernandez.[42] The email listed the Qualifying Respiratory Injuries, Worsening Qualifying Reparatory Injuries, and the Qualifying Cancers that were eligible to participate in the private Settlement Agreement. Based on this list, Plaintiff King is not eligible to participate in the private Settlement Agreement.[43]

In their response in opposition, the MDL plaintiffs state:

King is a "Litigating Plaintiff," as that term is defined in the Docket Management Order issued with the notice of settlement. The deadline to register to participate in the MSA has passed, and the Docket Management Order provides that for any Litigating Plaintiff who has moved to remand to state court, the Court will set a schedule for those motions following the Registration Deadline. ECF No. 2769 at 6. The Court should direct him to file a motion to remand his claim to state court if he so desires and await the Court's scheduling order on his motion. He will suffer no cognizable harm by being required to follow the same process applicable to all other Litigating Plaintiffs.[44]

---

[40] *Id.*

[41] *Id.*

[42] The November 13, 2024 email is annexed herein and marked as Exhibit L. It should be noted that Adasa Hernandez is the Pro Se Contact for the Philips Respironics Personal Injury Settlement Program at BrownGreer PLC.

[43] *Id.*

[44] (ECF No. 3166 at pp. 6-7)  (footnotes omitted).

It should be noted that the Philips Defendants note that Plaintiff King is not eligible to participate in the private Settlement Agreement.[45] Counsel for the MDL plaintiffs will have to answer for their conduct with the Disciplinary Counsel for the Pennsylvania Supreme Court and eventually a jury in a legal malpractice case. It is Plaintiff King's suggestion to counsel for the MDL Plaintiffs that they make sure that their professional liability insurance includes coverage for their conduct in this case and the harm caused to Plaintiff King.

## **CONCLUSION**

It is abundantly clear that Philips RS North America LLC does not want **any** court to determine whether or not the private master settlement agreement for personal injury claims will fairly and adequately protect the interests of **ALL** of the plaintiffs who filed suit alleging personal injuries. The company has lied to the general public regarding the nature of the $1.1 billion dollar settlement. For example, the company stated that:

> Philips said in a statement Monday that it had reached an agreement with the plaintiffs "to resolve the personal injury litigation and the medical monitoring class action to end the uncertainty associated with litigation in the U.S.," adding that it didn't "admit any fault or liability, or that any injuries were caused by Respironics' devices."[46]

---

[45] (ECF No. 3164 at p. 5 fn. 2) ("King alleges cardiac health issues, which were not qualifying injuries for the settlement program. See ECF No. 3139, ¶ 4."

[46] CBS News (Apr. 29, 2024), *Philips settles suits over its DreamStation sleep apnea machines for $1.1 billion.* Available online at https://www.cbsnews.com/news/philips-sleep-apnea-machines-settlement-dreamstation/ (accessed Feb. 21, 2025). *See also* Jen Christensen (Apr. 30, 2024), *Philips reaches $1.1 billion settlement for CPAP*

In addition, the Philips Defendants also stated that the following to the public:

> The settlement unveiled Monday between the global device maker and lawyers for patients will effectively end sweeping lawsuits that were filed after the 2021 recall of millions of the company's widely used sleep apnea machines and ventilators.[47]

It is clear that the Philips Defendants will say anything to protect their financial bottom-line. Accordingly, the arguments presented by the Philips Defendants should be rejected by this Court and Plaintiff King's motion should be granted.

Date: *February 24, 2025.*                           Respectfully Submitted,

                                                                       */s/ Derrick Martin King*
                                                                      **DERRICK MARTIN KING (*Pro se*)**
                                                                      1445 Crestview Avenue
                                                                      Akron, Ohio 44320-4049
                                                                      Phone: (330) 867-3979
                                                                      Email: dmking12370@hotmail.com

                                                                      *Plaintiff*

---

[47] Michael D. Sallah and Debbie Cenziper (Apr. 30, 2024), *Philips agrees to $1 billion settlement with patients over defective breathing machines.* Pittsburgh Post-Gazette, available online at https://www.post-gazette.com/business/healthcare-business/2024/04/29/philips-cpap-breathing-machines-settlement/stories/202404290044 (accessed Apr. 30, 2024).

*machine lawsuits, admits nofault or liability.* CNN, available online at https://cnn.com/2024/04/30/health/philips-1-billion-cpap-settlement-agreement/index.html (accessed Feb. 21, 2025) ("the money will pay people in the US whosued Philips and claimed that they had been injured by the faulty devices.")

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that a true and correct copy of the foregoing document was

filed via the Court's CM/ECF system. Parties and all counsel of record may access

and download the filing via the CM/ECF system or via MDL Centrality.

Date: _February 24, 2025._          _/s/ Derrick Martin King_
                                    **DERRICK MARTIN KING (Pro se)**
                                    *Plaintiff*