## IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| IN RE: PHILIPS RECALLED CPAP, BI-LEVEL PAP, AND MECHANICAL VENTILATOR PRODUCTS LITIGATION<br><br>This Document Relates to: All Actions | ) ) ) ) ) ) ) ) ) ) ) | Master Docket: Misc. No. 21-1230<br><br>MDL No. 3014 |

## MEMORANDUM OPINION

I.    Introduction

This opinion addresses third-party practice in multidistrict litigation ("MDL").  The question before the court is whether an MDL transferee court can exercise subject-matter jurisdiction over state law contribution claims asserted in a master third-party complaint filed in the context of a master personal injury complaint.  The master personal injury complaint was filed in this transferee court pursuant to an agreed-upon pretrial order.  The third-party complaint in issue asserted contribution claims arising from payments made or which will be made to individuals who participated in a settlement and (1) had their claims identified on a census registry, but did not file a separate case; (2) filed separate cases that were transferred to this court pursuant to 28 U.S.C. § 1407; (3) had separate cases locally filed in this court[1]; and (4) directly

---

[1] For purposes of this opinion, a "local" or "locally filed" case is one in which the plaintiff intended this district to be the "home court" for trial purposes, as well as pretrial proceedings.

filed cases in this court pursuant to a pretrial order, with the intent that the case would be "remanded" at the conclusion of pretrial proceedings to another district.[2]

During a hearing on February 25, 2025, the court sua sponte raised the issue about lack of subject-matter jurisdiction over claims identified on the census registry and ruled that this court lacked jurisdiction to resolve third-party contribution claims relating to settlement payments made to claimants listed on the census registry. Because the master third-party contribution complaint conflated the census registry claims with the claims asserted in filed cases, the court orally dismissed the master third-party contribution complaint filed by defendants/third-party plaintiffs Philips[3] against SoClean,[4] without prejudice to refile, to permit Philips to identify in an amended master third-party complaint the cases pending before the court over which it would have subject-matter jurisdiction to resolve third-party claims. *See* Transcript, ECF No. 3182. Because the parties cited no decisions directly on point, the court's independent research disclosed no decisions discussing third-party practice in an MDL, and the parties could benefit from further guidance, the court issues this opinion to further explain the rationale for its decision. The court offered the parties an opportunity to submit supplemental briefs, but none were filed.

---

[2] For purposes of this opinion, a "direct" or "directly filed" case is one in which the plaintiff filed a complaint in this court pursuant to PTO #28(b), but intended a different district court to be the "home court" for trial purposes. As will be discussed later, a "remand" would not be possible because there is no "home court" to which the case could be remanded. *See supra* at 32-33.

[3] The amended master third-party complaint in the Philips MDL was brought by Koninklijke Philips, N.V., Philips North America LLC, Philips Holding USA, Inc., Philips RS North America LLC and Philips RS North America Holding Corp. For convenience, all the Philips entities will be referred to as "Philips."

[4] The amended master third-party complaint in the Philips MDL named SoClean, Inc., and DW Management Services, LLC ("DW"), as defendants. For convenience, the SoClean-related entities will be referred to as "SoClean."

II.    <u>Background</u>

The court has been presiding as a transferee court over two related MDLs, MDL No.

3014 (the "Philips MDL") and MDL No. 3021 (the "SoClean MDL"), for a few years.  The

Judicial Panel on Multidistrict Litigation ("JPML") transferred cases to the Philips MDL starting

after the June 2021 recall of approximately 10,000,000 continuous positive air pressure

("CPAP") machines and other devices sold by Philips (the "Devices").  Among the claims in the

SoClean MDL is a dispute between SoClean and Philips arising from Philips' alleged

disparagement of SoClean's marketing and selling of an ozone cleaning system for use with,

among others, Philips' CPAP machines.[5]  Until the filing of the master third-party contribution

complaint, SoClean was not part of the Philips MDL.  There have been substantial efforts to

coordinate activities in both MDLs to promote efficiencies and economy for the parties and the

court.


A.  Procedural history leading to the master third-party complaint for contribution

The initial transfer order in the Philips MDL by the JPML was filed on October 8, 2021

(ECF No. 1).  The ten actions listed on Schedule A to the initial transfer order were transferred to

the United States District Court for the Western District of Pennsylvania and assigned to this

member of the court for "coordinated or consolidated pretrial proceedings."  *Id.* at 3.  During the

pendency of this litigation, numerous additional cases were (and continue to be) transferred to

this court by the JPML.  *See* Conditional Transfer Order No. 109, ECF No. 3289, dated April 14,

---

[5] SoClean filed a "business to business" lawsuit against Philips in the federal district court in
Massachusetts.  It was transferred by the JPML to this court as part of the SoClean MDL (Misc. No. 22-
152, ECF No. 34).  SoClean opposed the transfer to this court.  *Id.*  The court has federal question subject-
matter jurisdiction over the "business to business" case because SoClean asserted claims against Philips
under the Lanham Act, 15 U.S.C. § 1125.

2025.[6]  The Philips MDL includes cases that were originally filed in or removed to the District

Court for the Western District of Pennsylvania.[7]

The Philips MDL, at the request of the parties, was organized into three master

complaints that were filed on the MDL docket:  master complaints for (1) economic loss claims,[8]

(2) personal injury claims, and (3) medical monitoring claims.  *See* ECF Nos. 505, 510 (Rule

26(f) Report); ECF No. 573 (Pretrial Order ("PTO") #14).  At a status conference on April 20,

2022, the plaintiffs' leadership counsel explained that the master complaints were being filed as

an "administrative vehicle."  Transcript, ECF No. 528 at 14.  Philips' counsel agreed that the

master complaints served an important role to efficiently and cost-effectively resolve legal issues

(for example, motions to dismiss, discovery and summary judgment motions).  *Id.* at 16-17.  The

---

[6] Over 1,000 cases were identified in the Philips MDL.

[7] The JPML did not issue a transfer order with respect to cases locally or directly filed in this court. *See* J.P.M.L. Rule 7.2(a) ("Potential tag-along actions filed in the transferee district do not require Panel action. A party should request assignment of such actions to the Section 1407 transferee judge in accordance with applicable local rules."). Instead, the clerk's office of this court determined that the cases were related to the Philips MDL and were consolidated with the Philips MDL for pretrial proceedings pursuant to Federal Rule of Civil Procedure 42. *See* Pa.W.D. Local R. 40(E) ("If the fact of relatedness is indicated on the appropriate form at the time of filing, the Clerk of Court shall assign the case to the same Judge to whom the lower numbered related case is assigned."); *In re Activated Carbon-Based Hunting Clothing Mktg. & Sales Pracs. Litig.*, No. MDL09MD2059RHKJJK, 2009 WL 10678219, at *1 (D. Minn. Aug. 10, 2009).

[8] "Economic Loss Claims" were defined in the relevant settlement agreement to mean:

> any and all claims, demands, actions, or causes of action (whether for damages, fines, penalties, assessments, liens, injunctive, equitable or any other relief, whether direct, indirect or consequential, liquidated or unliquidated, past, present or future, or foreseen or unforeseen) relating in any way to the Recalled Devices or the Replacement Devices, including, but not limited to, payments, costs, reimbursements, and/or expenses incurred or made by Settlement Class Members in connection with the purchase, rental, lease or other acquisition of the Recalled Devices or the Replacement Devices, that have been asserted, could have been asserted, or could be asserted by any of the Settlement Class Members, whether known or unknown, in law or in equity, contingent or non-contingent, suspected or unsuspected, concealed or hidden, or past, present or future, including for attorneys' fees, expert fees, consultant fees, or other litigation fees or costs, except Economic Loss Claims expressly do not include Medical Monitoring and Personal Injury Claims.

ECF No. 2213-1.

court and counsel engaged in an extended discussion about: (1) a census registry[9] for individuals

with "unfiled personal injury claims" and the tolling of the statutes of limitations for those

claims; and (2) fact sheets and short form complaints to be filed by plaintiffs with existing cases

or later transferred or directly or locally filed cases.   Transcript, ECF No. 528.

A census registry was jointly proposed by the parties (ECF No. 696); *see* Transcript, ECF

No. 141 (discussing benefits of census registry).   Registry participants[10] did not file a complaint,

but completed a census registry form and data release form that were maintained by MDL

Centrality and the limitations period for filing a lawsuit for claims listed on the registry was

tolled until January 31, 2025, the expiry date later set by Philips.   The court ordered the

implementation of the census registry in PTO #25 (ECF No. 739) and, based on a joint motion

by the parties, modified it in PTO #25a (ECF No. 870).

Plaintiffs who filed personal injury cases that were consolidated or coordinated in the

Philips MDL were required to file a "short form complaint" on their individual case dockets.

ECF No. 510.   The short form complaints were intended to work in conjunction with the master

personal injury complaint.   (PTO #28(b) at ¶ II(B)(3), ECF No. 2532 at 5) ("For each such

personal injury action, the Second Amended Complaint together with the Personal Injury

Plaintiff's Short Form Complaint shall be deemed that Plaintiff's operative Complaint.").   The

use of short form complaints complements the master complaint by ensuring the personal injury

claims of an individual plaintiff are set forth in that individual's separate case.

---

[9] The census registry process creates a separate, nondocketed list maintained by MDL Centrality, which enables potential claimants to save the cost of filing complaints and to receive the benefits of the tolling of the applicable statutes of limitations.   The claimants, however, must provide information about the device at issue, their personal injuries and provide a limited release of their medical information.   The information is intended to be used by counsel to vet potential claims and understand the composition of potential claims.   (ECF Nos. 739, 870).
[10] In discussing the private settlement agreement for certain personal injury claims, plaintiffs' leadership counsel reported that there were over 58,000 registrants listed on the registry.   (ECF No. 2768-1).

On February 5, 2024, plaintiffs' leadership counsel on behalf of plaintiffs who assert personal injury claims filed a second amended master long form personal injury complaint (ECF No. 2505). On February 26, 2024, the court issued Pretrial Order #28(b) (ECF No. 2532), which was jointly proposed by Philips and the plaintiffs' leadership counsel. PTO #28(b) set forth procedures with respect to the second amended master personal injury complaint and individual short form personal injury complaints. The master complaint process was adopted "[i]n light of the inefficiencies of drafting unique personal injury complaints and individual answers to those complaints." *Id.*

Pertinent to the issue now before the court, PTO #28(b) (ECF No. 2532) provided:

- (I): "No personal injury claims may be asserted in current and future filed cases in this MDL other than pursuant to the terms of this Order." *Id.*

- (II): "Nothing in this Order is intended to (or does) alter the applicable provisions of the Federal Rules of Civil Procedure or the Local Rules of this Court, except as otherwise provided herein or in any subsequent Order." *Id.*

- (II)(A)(2): "All claims pleaded in the Second Amended Complaint (ECF 2505) will supersede and replace all claims for personal injury in any action pending in this MDL." *Id.*

- (II)(B)(2)(e): if a case is filed directly in the MDL pursuant to PTO #28(b), it shall identify the federal court in which the action would otherwise have been filed, "which shall be the presumptive place of remand." *Id.*

- (II)(B)(2)(e): "Each case filed directly in this MDL pursuant to this Order will be litigated in the MDL for pretrial proceedings only, consistent with the Judicial Panel on Multidistrict Litigation's October 8, 2021 Transfer Order, and none of the parties is waiving his, her or its rights under *Lexecon, Inc. v. Milberg Weiss Bershad Hynes & Lerach*, 523 U.S. 26 (1998)." *Id.*

- (II)(B)(2)(f): if a case was originally filed or removed to another federal district court and then transferred to the MDL, plaintiffs must identify that court. *Id.*

- (II)(B)(4)(c): "All Other Personal Injury Complaints. All other Personal Injury Plaintiffs who seek to file a Personal Injury Complaint shall direct file in this MDL his or her Short Form Complaint as a new civil action through the Court's electronic filing system and pay the required filing fee through Pay.gov. At the time of filing,

the Short Form Complaint shall include in the caption that it is a "DIRECT FILED
COMPLAINT PURSUANT TO PRETRIAL ORDER # 28(b)." The civil cover sheet
accompanying the Short Form Complaint shall specify under the "Related Case(s)"
section that this case relates to MDL 3014. Once the case is filed, it shall be assigned
an individual civil case number. After review by the Clerk of Court's office, the case
will be automatically consolidated for pretrial purposes in MDL 3014."

- (II)(C)(6): PTO #28(b) does not waive defendants' personal jurisdiction and venue
arguments. *Id.*

PTO #28(b) set up different procedures for: (1) existing cases; and (2) future-filed cases.
For plaintiffs with existing personal injury cases that were transferred to or were directly or
locally filed in the MDL court, the short form complaints were required to be filed on the docket
of that existing case. *Id.* ¶ 4(a). No new filing fee was triggered. The filing date was deemed to
be that of the original complaint. Paragraph (II)(B)(4)(a) provided: "Nothing in this Order or
the filing of a Short Form Complaint shall be construed as a prior dismissal or amendment of a
prior complaint, but the prior complaint shall no longer be deemed the operative complaint." *Id.*
¶ (II)(B)(4)(a).

Personal injury plaintiffs filing new complaints were permitted to file a personal injury
short form complaint directly in this MDL as a new civil action through this court's electronic
filing system and pay the required filing fee. *Id.* ¶ 4(c) (""All other Personal Injury Plaintiffs
who seek to file a Personal Injury Complaint shall[11] direct file in this MDL his or her Short Form

---

[11] The word "shall" was used in the order. In most circumstances, "shall" means "must." *Lexecon,* 526 US
at 35. There are situations where, in context, "shall" means "may." *See, e.g., De Martinez v. Lamagno,*
515 U.S. 417, 434 n.9 (1995) ("Though "shall" generally means "must," legal writers sometimes use, or
misuse, "shall" to mean "should," "will," or even "may."). This order is one of those rare situations where
"shall" means "may." *See United States v. 1993 Bentley Coupe,* 1997 WL 803914, at *1 (D.N.J. Dec. 30,
1997) ("This Court finds that the Third Circuit would follow the Second and Tenth Circuits in concluding
that the word shall in § 1355(c) does not mean that courts must grant a stay upon an appellant's request").
*But see Lexecon,* 526 US at 35 ("The Panel's instruction comes in terms of the mandatory 'shall,' which
**normally** creates an obligation impervious to judicial discretion.") (emphasis added). As a factual matter,
many plaintiffs did not view PTO #28(b) as a directive to file all cases in this court and filed in, or had their
cases removed to, other federal courts, and those cases continued to be transferred to this MDL by the
JPML, *see, e.g.*, ECF No. 3289. This court treats the direct filing aspect of PTO #28(b) as permissive.

Complaint as a new civil action through the Court's electronic filing system."). Each short form complaint was required to include a reference in the caption that it was a "DIRECT FILED COMPLAINT PURSUANT TO PRETRIAL ORDER #28(B)." *Id.* A new case number (in this court) was assigned and the cases were automatically consolidated with MDL 3014. Pursuant to ¶(II)(D), filing a complaint directly in the Philips MDL did not determine the applicable choice of law, which was to be determined by the rules that would have applied in the federal district court of the plaintiff's preferred venue, i.e., the court in which the case would otherwise have been filed but for PTO #28(b). *Id.* ¶ II(D).

Service of the short form complaints was accomplished, with Philips' consent, when, pursuant to Pretrial Order # 27, plaintiffs uploaded their short form complaint to the online MDL Centrality System accessible at www.mdlcentrality.com/. *Id.* ¶ (B)(5).

The concept of a master third-party complaint for contribution claims by Philips against SoClean with respect to personal injury claims was previewed for the court by counsel for Philips at a status conference on March 14, 2024. Transcript, ECF No. 2702 (outlining the idea of a master third-party contribution complaint). SoClean objected and the court asked the discovery special master to issue a report and recommendation ("R&R") about the timing, i.e., whether Philips could file a master third-party complaint before Philips filed an answer to the master personal injury complaint. *Id.* The special master's R&R (ECF No. 2708) recommended that Philip's proposal to file a master third-party contribution complaint be granted. SoClean filed objections to the R&R (ECF No. 2728). The court raised some concerns at a status

---

In the context of an MDL, this court would likely not have authority to require persons to bypass § 1407, which establishes the process for centralization in one district of pretrial proceedings for cases filed in other districts with similar issues. It is a common practice in large MDLs to permit the direct filing of a case with the parties agreeing to the relevant plaintiff being able to have the case transferred to the district where, but for the MDL, it would have been originally filed. *See, e.g., Looper v. Cook Inc.*, 20 F.4th 387 (7th Cir. 2021).

conference on April 25, 2024, including differences among states about the applicable requirements for contribution and that short form third-party complaints may need to be filed in each of the individual cases.    Transcript, ECF No. 2753 at 10.  SoClean notified the court that it would be filing a Rule 14[12] challenge to the master third-party complaint.  *Id.* at 21.  The court essentially adopted the R&R by indicating that a master third-party contribution complaint could be filed; SoClean could challenge it, as filed; and personal jurisdiction challenges would likely be stayed until similar challenges were resolved in the SoClean MDL.  *Id.*  at 19.

After the conference, Philips submitted a revised proposed order, which SoClean did not oppose.  On April 30, 2024, the court entered the proposed order as PTO #31 (ECF No. 2745).  Relevant to the current dispute, PTO #31 provides:

- (I): "To allow the Philips Defendants and the Third-Party Defendants to benefit from the same efficiencies [in PTO #28(b)], this Court will extend those procedures to cover the third-party claims the Philips Defendants seek to assert against the Third-Party Defendants."  *Id.*

- (I): "Nothing in this Order is intended to (or does) alter the applicable provisions of the Federal Rules of Civil Procedure or the Local Rules of this Court, except as otherwise provided herein, in Pretrial Order #28(b), or in any subsequent Order."  *Id.*

- (II): Philips shall file the master third-party complaint on the main docket of the MDL.  The parties shall confer about potential short-form complaints.  *Id.*

- (III)(2): The parties would propose further procedures at the bellwether stage, including for "individual contribution claims in those cases."  *Id.*

- (III)(3): Because choice of law rules will be determined based on the plaintiff's preferred venue, "the choice of law applicable to the contribution claims of the Philips Defendants against the Third-Party Defendants with respect to each Personal Injury Plaintiff's claims—will be determined at a later date."  *Id.*

- (III)(6): "No Third-Party Defendant has agreed to or admitted any allegations, nor has any Third-Party Defendant conceded or waived its rights to dispute the legal validity

---

[12] Federal Rule of Civil Procedure 14(a)(1) provides:  "A defending party may, as third-party plaintiff, serve a summons and complaint on a nonparty who is or may be liable to it for all or part of the claim against it. But the third-party plaintiff must, by motion, obtain the court's leave if it files the third-party complaint more than 14 days after serving its original answer."

of the claims alleged therein, nor has any Third-Party Defendant conceded the question of personal jurisdiction in any court. Nothing in this Order shall be construed as a waiver of personal jurisdiction by any Third-Party Defendant or any Third-Party Defendant's jurisdictional and/or venue arguments." *Id.*

On May 10, 2024, Philips filed a master third-party complaint against SoClean, asserting that SoClean is responsible for some share of the personal injuries of certain plaintiffs who used a SoClean device in connection with a Philips CPAP device. ECF No. 2785. At least one of the Philips third-party plaintiffs and one of the SoClean third-party defendants are citizens of Delaware. The master third-party complaint asserts only state law claims for contribution. Under those circumstances, there is no federal court that could exercise original diversity or federal question jurisdiction over any of the contribution claims. *See* discussion *infra* at 13-14.

Philips asserts that this court has supplemental jurisdiction over the contribution claims filed in the master third-party complaint because they are intertwined and related to the claims at issue in the remainder of this case, i.e., the personal injury claims in the MDL as a whole. *Id.* ¶ 23. Philips alleges that venue is proper in this court "for pretrial proceedings" pursuant to 28 U.S.C. § 1407, and venue is appropriate in the courts from which the cases were transferred.[13] *Id.* ¶ 24.

On August 13, 2024, Philips filed an amended master third-party complaint, which is the operative pleading in issue (ECF No. 2922). The jurisdictional and venue allegations remained unchanged. *Id.* ¶¶ 29, 30. To date, no short form contribution third-party complaints have been filed. SoClean filed a motion to strike/dismiss the amended master third-party complaint for numerous substantive and procedural reasons (ECF No. 2995). DW filed a separate motion to dismiss for lack of personal jurisdiction (ECF No. 2997). The court sua sponte raised the lack of

---

[13] Of course, if a case is locally filed in this court, venue would be proper in this court, unless a defendant is able to prevail on a venue challenge. 28 U.S.C. § 1391.

subject-matter jurisdiction over the contribution claims asserted with respect to claims identified on the census registry, orally dismissed the master third-party complaint on the record on February 25, 2025, without prejudice to Philips' ability to file a second amended third-party complaint, and instructed counsel to confer about deadlines.  Transcript, ECF No. 3182.  The dismissal mooted SoClean's motion to dismiss (ECF No. 2995) and DW's motion to dismiss (ECF No. 2997).

### B.  Current status of the Philips MDL

In October 2023, the parties reported that a class settlement of the economic loss claims was reached in the Philips MDL.  The court granted final approval of the class settlement of the economic loss claims in April 2024 (Misc. No. 21-1230, ECF Nos. 2735, 2736).

In May 2024, the parties reached a class settlement of the medical monitoring claims.  On December 5, 2024, the court granted final approval of the medical monitoring class settlement (ECF Nos. 3053-3055).[14]

In May 2024, the parties reached a private (i.e., non-class) settlement of certain of the personal injury claims in the Philips MDL (ECF No. 2768).  The personal injury settlement does not require court approval, although the court issued orders to effectuate the settlement process (ECF Nos. 2769-2771).  The tolling of the statutes of limitations for individual personal injury claims identified on the census registry expired on January 31, 2025.  The parties reported to the court on February 25, 2025, that the private personal injury settlement is final.  Philips made a $1,075,000,000 payment on March 14, 2025, to fund the private personal injury settlement. Over 35,000 claimants listed on the census registry accepted the private personal injury settlement.

---

[14] That settlement did not release individual claims for medical monitoring.

(ECF No. 3181 at 5). Philips' counsel reported that Philips' contribution claims against SoClean involved approximately 3,000 persons who participated in the settlement, many of whom were listed on the census registry, but never filed a case. (ECF No. 3182 at 15-16).

The class action and personal injury claims by users of the Devices are now substantially resolved in the Philips MDL. In summary, while there will be cases remaining, a significant number of the cases pending in the Philips MDL are now resolved.[15]

### III.    Legal Standard – Subject-matter jurisdiction

As explained in *Johnson v. Rite Aid (Derek Faight)*, No. CV 17-862, 2018 WL 4838540, at (W.D. Pa. Oct. 4, 2018):

> Federal courts are courts of limited jurisdiction. *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377, 114 S.Ct. 1673, 128 L.Ed.2d 391 (1994). As such, federal courts possess a continuing obligation to assess their subject-matter jurisdiction and can dismiss a suit *sua sponte* for lack of subject-matter jurisdiction at any stage in the proceeding. *See Zambelli Fireworks Mfg. Co. v. Wood*, 592 F.3d 412, 420 (3d Cir. 2010); *see* Fed. R. Civ. P. 12(h)(3) ("If the court determines at any time that it lacks subject-matter jurisdiction, the court must dismiss the action."). The burden of establishing subject-matter jurisdiction in the district court lies with the party seeking to invoke the court's jurisdiction. *KVOS, Inc. v. Associated Press*, 299 U.S. 269, 278, 57 S.Ct. 197, 81 L.Ed. 183 (1936).

*Id.* at *5.

---

[15] There may be some further proceedings involving, for example, pending cases filed after the settlement or involving the claims of users of a Device who opted out of the economic loss settlement and claims of users of a Device who were eligible, but chose not to participate in the private personal injury settlement or whose medical conditions were not eligible for the private personal injury settlement.

IV.    Discussion

    A.  Issue

The specific question is whether this court, as an MDL transferee court, has subject-matter jurisdiction over the claims asserted in the amended master third-party contribution complaint. The master third-party complaint seeks contribution in favor of Philips from SoClean for settlement payments Philips made or that will be made to plaintiffs who: (1) filed cases locally in this court; (2) filed cases in other districts that were transferred to this court by the JPML; (3) filed cases directly in this MDL pursuant to PTO #28(b); and (4) identified claims on the census registry, but did not file a case.  The master third-party complaint conflated all those "plaintiffs" on a generic basis, i.e., referred to them as "Device User Plaintiffs." (ECF No. 2906).

The primary reason for an MDL court to exercise jurisdiction over related disputes is to "promote the just and efficient conduct" of the transferred cases.  28 U.S.C. § 1407.  Section 1407 identifies that important interest and specifically mentions third-party claims.  *Id.* Transferee courts apply the federal rules of civil procedure for pretrial proceedings, which include Rule 14 governing third-party claims.

This court is familiar with the issues raised by Philips and SoClean, having presided over both MDLs.  The court understands that multiple-state surveys of the law may be required with respect to the contribution claims.  While there is no federal court that could exercise original jurisdiction over the non-diverse, state law contribution claims, this court may exercise supplemental jurisdiction over those kinds of claims if they are filed in a third-party complaint. 28 U.S.C. § 1367.  In light of the numerous cases filed in this MDL and the overlapping issues, it would be efficient to resolve the contribution claims as part of this MDL.

The primary rebuttal argument is based on the limited jurisdiction of a federal court. Concerns for efficiency cannot trump any constitutional or statutory limit on this court's power to hear the third-party contribution claims.

    B.  General Principles of Law

      1.  Federal court jurisdiction

Federal courts are courts of limited jurisdiction. Limitations are imposed by both the Constitution and Congress. *See Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994) (federal courts "possess only that power authorized by Constitution and statute . . . which is not to be expanded by judicial decree") (citations omitted). Federal courts have a nondelegable duty to sua sponte review actions to confirm that they have jurisdiction. *Louisville & Nashville R.R. Co. v. Mottley*, 211 U.S. 149, 152 (1908).

No federal district court could exercise original jurisdiction over the contribution claims if Philips brought those claims against SoClean in separate actions. Philips is not asserting any federal question claims against SoClean and the asserted claims arise under state law. Because there is no diversity of citizenship, i.e., four Philips entities and at least one SoClean entity are citizens of Delaware, a federal court could not preside over those separate actions.

This court may, however, be able to exercise supplemental jurisdiction over certain of the contribution claims because they are related to the claims in this MDL. Pursuant to 28 U.S.C. § 1367(a):

> (a) Except as provided in subsections (b) and (c) or as expressly provided otherwise by Federal statute, in any civil action of which the district courts have original jurisdiction, the district courts shall have supplemental jurisdiction over all other claims that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy under Article

III of the United States Constitution. Such supplemental jurisdiction shall include claims that involve the joinder or intervention of additional parties.

Section § 1367(b) prohibits the use of supplemental jurisdiction to evade the limits on diversity jurisdiction, but that prohibition applies only to named plaintiffs or persons proposed to be joined or to intervene as plaintiffs:

> (b) In any civil action of which the district courts have original jurisdiction founded solely on section 1332 of this title, the district courts **shall not have supplemental jurisdiction** under subsection (a) over claims **by plaintiffs** against persons made parties under **Rule 14**, 19, 20, or 24 of the Federal Rules of Civil Procedure, or over claims by persons proposed to be joined as plaintiffs under Rule 19 of such rules, or seeking to intervene as plaintiffs under Rule 24 of such rules, when exercising supplemental jurisdiction over such claims would be inconsistent with the jurisdictional requirements of section 1332.

28 U.S.C. § 1367(b) (emphasis added).  A defendant, like Philips, could assert a third-party state law claim under Rule 14 against a non-diverse third-party defendant, like SoClean.  *Dev. Fin. Corp. v. Alpha Hous. & Health Care, Inc.*, 54 F.3d 156, 160 (3d Cir. 1995); *see* 13D Charles Alan Wright et al., Federal Practice and Procedure § 3567.2 (3d ed., April 2023 update).

Federal district courts have discretion whether or not to exercise supplemental jurisdiction over state law claims.  The Supreme Court explained in *Carlsbad Technology, Inc. v. HIF Bio, Inc.*, 556 U.S. 635 (2009):

> With respect to supplemental jurisdiction in particular, a federal court has subject-matter jurisdiction over specified state-law claims, which it may (or may not) choose to exercise. *See* §§ 1367(a), (c). A district court's decision whether to exercise that jurisdiction after dismissing every claim over which it had original jurisdiction is purely discretionary. *See* § 1367(c) ("The district courts may decline to exercise supplemental jurisdiction over a claim ... if ... the district court has dismissed all claims over which it has original jurisdiction" (emphasis added)).

*Id.* at 639.[16]

---

[16] The court understands that all the underlying personal injury cases (which Philips settled and seeks contribution from SoClean for SoClean's pro rata share of the relevant settlement payments) have been or will be voluntarily dismissed.

In *American Zurich Insurance Co. v. Cooper Tire & Rubber Co.*, 512 F.3d 800, 805 (6th Cir. 2008), the court of appeals needed to resolve "whether the district court erred in dismissing the third-party complaint filed by an original defendant, against [a third-party defendant], after [the original defendant] voluntarily entered into a settlement with the parties to the original complaint." *American Zurich*, 512 F.3d at 801. The court held that such a third-party claim over which the federal court had supplemental jurisdiction could go forward only with the discretion of the court and the district court did not abuse its discretion by dismissing the third-party complaint "after settlement of the original action from which [the relevant] claims derived." *Id.* at 805. The court commented that it is rare for a court to dismiss the underlying claim, but choose to address a third-party claim: "Ultimately, a court has the discretion to dismiss a third-party claim after the original claims of the plaintiff have been settled, and relegate the third-party plaintiff to a separate suit." *Id.* at 805-06. That issue is present here because Philips settled with certain of the plaintiffs who used the SoClean device in connection with a Philips CPAP Device and Philips seeks contribution from SoClean relating to the settlement payments Philips made to those plaintiffs.

### 2. Nature of MDLs

MDL proceedings differ from ordinary cases. "A transfer under Section 1407 is, in essence, a change of venue for pretrial purposes. Following a transfer, the transferee judge has all the jurisdiction and powers over pretrial proceedings in the actions transferred to him that the transferor judge would have had in the absence of transfer." *In re FMC Corp. Patent Litig.*, 422 F. Supp. 1163, 1165 (J.P.M.L. 1976) (internal citations omitted).

MDL transfers are only for pretrial purposes. Section 1407 "imposes two limitations on the kinds of proceedings that the transferee court may conduct: they must be (1) coordinated or consolidated and (2) pretrial." *In re Patenaude*, 210 F.3d 135, 142 (3d Cir. 2000) (citing *Lexecon*, 523 U.S. at 33–34). Section 1407 "'obligates the Panel to remand any pending case to its originating court when, at the latest, those pretrial proceedings have run their course,' which obligation is 'impervious to judicial discretion.'" *Id.* (quoting *Lexecon*). The JPML emphasized: "Limited transfer for pretrial proceedings only is an important and meaningful distinction." *In re Delta Dental Antitrust Litig.*, 509 F. Supp. 3d 1377, 1381 (J.P.M.L. 2020).

"Within the context of MDL proceedings, individual cases that are consolidated or coordinated for pretrial purposes remain fundamentally separate actions, intended to resume their independent status once the pretrial stage of litigation is over." *In re Korean Air Lines Co., Ltd.*, 642 F.3d 685, 700 (9th Cir. 2011). A transferee court cannot "consolidate actions for all purposes, as might be proper in other circumstances pursuant to Federal Rule of Civil Procedure 42." *Id.* Cases locally filed in the district of the transferee court can be managed by the transferee court through trial. *Id.* at 700 n.13. "But considerations that animate the restrictions placed on a transferee court's exercise of jurisdiction over its MDL docket—including the principle that individual cases remain separate actions despite being coordinated or consolidated for pretrial purposes—do not dissipate because a particular case was filed in the MDL's home district." *Id.*[17]

---

[17] Arguably, as reflected in footnote 11, *infra*, if the "shall" in PTO #28(b) is read as a mandate that all future cases be filed in this transferee court, that mandate would run afoul of the concerns set forth in *Korean Air Lines* and *Lexecon*. If "shall" meant "must," the order would limit the ability of new plaintiffs (who did not agree to the PTO) to choose their preferred forum and implicates the inability of this court to remand at the end of pretrial proceedings. As noted in footnote 11, this court interprets its own order to permit, but not require, the direct filing of cases.

In *In re Farmers Insurance Exchange Claims Representatives' Overtime Pay Litigation*, No. MDL 33-1439, 2008 WL 4763029, at *3 (D. Or. Oct. 28, 2008), the court explained:

> In the unique procedural world of an MDL, the authority of the transferee court to handle the case ordinarily ends at conclusion of pretrial proceedings. *See Lexecon Inc. v. Milberg Weiss*, 523 U.S. 26, 36–37 (1998). Cases that are not "previously terminated" "shall be remanded by the panel at or before the conclusion of such pretrial proceedings to the district from which it was transferred ...." *Lexecon*, 523 U.S. at 35 (quoting 28 U.S.C. § 1407(a)).

The necessity for a transferee court to be able to recommend to the JPML that it remand transferred cases, which are not settled or otherwise resolved, to the pertinent transferor courts for trial impacts the "jurisdictional"[18] power of the transferee court. *Id.* at *4.

In *Toyota Motor Corp. Unintended Acceleration Marketing, Sales Practices and Products Liability Litigation*, 785 F.Supp.2d 925 (C.D. Cal. 2011), the court cautioned: "MDL courts cannot lose sight of the separate and distinct nature of those actions," and transferee courts must not manage MDLs "in a manner that fails to take into account that the [transferred] cases are destined to be returned to their transfer[or] jurisdictions." *Id.* at 930.[19]

### 3.  The MDL statute, 28 U.S.C. § 1407

MDL proceedings are governed by 28 U.S.C. § 1407, which provides, in relevant part:

> (a) When civil actions involving one or more common questions of fact are **pending** in **different districts**, such actions may be **transferred** to any district for **coordinated or consolidated pretrial proceedings**. Such transfers shall be made by the judicial panel on multidistrict litigation authorized by this section upon its determination that transfers for such proceedings will be for the **convenience** of

---

[18] A transferee court may properly have subject-matter jurisdiction over transferred cases if there is a federal question or complete diversity of citizenship and the amount in controversy exceeds $75,000.  A transferee court, however, cannot preside over a transferred case beyond pretrial proceedings (unless the parties consent to having the transferee court preside over the trial), and there must be a home court to which the JPML could remand the case; otherwise, the process would be inconsistent with the statutory scheme in § 1407.

[19] Cases that are locally filed in the transferee court are not subject to remand, but will be ordinarily resolved, if necessary, through trial by the MDL court. J.P.M.L. 7.2.

parties and witnesses and will **promote the just and efficient conduct** of such actions. **Each action** so **transferred shall** be **remanded by the panel** at or before the conclusion of such pretrial proceedings **to the district from which it was transferred** unless it shall have been previously terminated: Provided, however, That **the panel** may separate any claim, cross-claim, counter-claim, or **third-party claim** and **remand** any of such claims before the remainder of the action is **remanded**.

(b) Such coordinated or consolidated pretrial proceedings shall be conducted by a judge or judges to whom such actions are assigned by the judicial panel on multidistrict litigation. For this purpose, upon request of the panel, a circuit judge or a district judge may be designated and assigned temporarily for service in the transferee district by the Chief Justice of the United States or the chief judge of the circuit, as may be required, in accordance with the provisions of chapter 13 of this title. With the consent of the transferee district court, such actions may be assigned by the panel to a judge or judges of such district. The judge or judges to whom such actions are assigned, the members of the judicial panel on multidistrict litigation, and other circuit and district judges designated when needed by the panel **may exercise the powers of a district judge in any district** for the purpose of conducting **pretrial** depositions in such coordinated or consolidated pretrial proceedings.

(c)  Proceedings for the **transfer** of an action under this section may be initiated by-

   (i) the **judicial panel** on multidistrict litigation upon its own initiative, or
   (ii) motion filed **with the panel** by a **party** in any action in which transfer for coordinated or consolidated pretrial proceedings under this section may be appropriate. A copy of such motion shall be filed in the district court in which the moving party's action is pending.

28 U.S.C. § 1407 (emphasis added).

   Section 1407 is not a subject-matter or personal jurisdiction statute.  It does not expand the jurisdiction of the transferee court.  Instead, § 1407 allows consolidation of related cases filed in different districts – for pretrial proceedings only – to promote efficiency and economy.  The court in *In re Avandia Marketing, Sales Practices & Products Liability Litigation,* 617 F. App'x 136 (3d Cir. 2015), explained:

   Under 28 U.S.C. § 1407, district courts are empowered to conduct coordinated, consolidated pretrial proceedings in cases transferred by the Judicial Panel on Multidistrict Litigation. Section 1407, however, "does not expand the jurisdiction of the district court to which the cases are transferred." *In re Showa Denko K.K. L–*

> *Tryptophan Prods. Liab. Litig.–II*, 953 F.2d 162, 165 (4th Cir. 1992). Thus, "a
> transferee court's jurisdiction in multi-district litigation is limited to cases and
> controversies between persons who are properly parties to the cases transferred."
> *Id.* at 165–66.

*Id.* at *141; see In re Delta Dental*, 509 F.Supp.3d at 1379 ("[J]urisdiction in any federal civil

action *must* exist in the district where it is filed. This does not change when an action is

transferred under Section 1407.") (emphasis in original).

Section 1407(a) specifically contemplates the existence of third-party claims in an MDL.

There is no direct reference to adjudication of third-party claims by the transferee court.  The

statute merely provides that the JPML may separate third-party claims and remand them to the

transferor court before the remainder of the action is remanded.  By implication and the authority

to conduct pretrial proceedings in the transferred proceedings, if the JPML does not remand the

third-party claims, the transferee court can manage them through pretrial proceedings.


    4.   Locally filed cases and direct filed cases

As noted, a "local" or "locally filed" case is one in which the plaintiff intended this

district to be the "home court."  A "direct" or "directly filed" case is one in which the plaintiff

filed a complaint in this court pursuant to PTO #28(b), but intended a different district court to be

the "home court."  *See* footnotes 1 and 2, *infra*.  This court may exercise subject-matter

jurisdiction over both kinds of cases, assuming there is a federal question or diversity of

citizenship and $75,000 in controversy.  *See* J.P.M.L. 7.2 (reflecting that tag-along actions filed

in the transferee district do not require action by the JPML).

Several MDL courts have recognized the benefits of "direct filing" of cases in the

transferee court.  In *Looper v. Cook Inc.*, 20 F.4th 387 (7th Cir. 2021), the court explained that

direct filing can be a useful tool:

> Direct filing eliminates the need for plaintiffs to file their cases in their home jurisdictions (or other valid forums apart from the MDL court) and then wait for their cases to be tagged and later transferred to the MDL transferee court. Instead, once the transferee judge institutes direct filing—typically through an agreed case management order—plaintiffs can file directly in the MDL court, avoiding the delays in the tag-along process.

*Id.* at 390.  The court cautioned: "Direct filing can bring its own complications and potential pitfalls, however."  *Id*. at 391.  The court observed that direct filing can affect personal jurisdiction, venue, and choice of law, each of which is waivable and can be overcome by the parties' consent to the direct filing procedure.  *Id.*  The court noted the concerns that the MDL statute, § 1407, does not authorize transferee courts to override otherwise applicable law, and that the Supreme Court in *Lexecon* "rejected a favorite tool of many MDL transferee courts by holding that a transferee court does not have the power to order a case transferred to itself for purposes of trial."  *Id.; see id.* at 394 ("*Lexecon* stands as a stark reminder that practices that MDL transferee judges adopt for sound, practical reasons are not always legally permissible, at least without the parties' consent.").  The court "urge[d] transferee judges to use written orders to ensure clear consent from parties about how they will manage choice-of-law, personal jurisdiction, and venue issues in directly filed cases."  *Id.* at 399; *see* Lauren E. Godshall, <u>Direct Filing in Multidistrict Litigation: Limiting Venue Options and Choice of Law for Plaintiffs</u>, 29 Geo. Mason L. Rev. 3 (2021).

In *In re Dealer Management Systems Antitrust Litigation*, No. 18 C 2521, 2023 WL 8113436 (N.D. Ill. Nov. 21, 2023), the court noted that "'[d]irect filing' of cases in a transferee court is not uncommon, and the practice can promote efficiency and flexibility."  *Id.* at *1.  The court found that the parties had consented to a process by which a case that was directly filed in the transferee court was deemed to have been filed in another district.  The court advised: "where MDL courts allow direct filing, they are well advised to enter orders that require parties

to stipulate to trial venue (and perhaps also to personal jurisdiction and choice of law) and to memorialize those stipulations. Should defendants refuse to enter into such stipulations, plaintiffs will remain free to file cases in their preferred venue and seek transfer by way of the MDL tag-along procedures." *Id.* at *5.

### 5. Transferee courts cannot evade the limits in § 1407

In *Lexecon*, 523 U.S. at 28, the Supreme Court held that an MDL transferee court cannot invoke § 1404(a) to assign a transferred case to itself for trial. The Supreme Court emphasized the duty of a transferee court to remand cases to the transferor court (i.e., "home court") at the conclusion of pretrial proceedings. *Id.* at 34-35. As applicable here, *Lexecon* teaches that there must be a home court to which to return each transferred case.[20] This court, as a transferee court, cannot – without consent of the parties -- evade the limits in § 1407 by keeping transferred cases for trial.

In *In re January 2021 Short Squeeze Trading Litigation*, 580 F. Supp. 3d 1243, 1249 (S.D. Fla. 2022), the defendant challenged the inclusion of plaintiffs who first filed their claims in a master complaint, i.e., those plaintiffs did not have an individual case filed in or transferred to the MDL court. The transferee court concluded it lacked subject-matter jurisdiction over a plaintiff's claims that had not been filed in a separate case, but were only asserted by a plaintiff for the first time in the transferee court via a consolidated class action complaint. *Id.* at 1247 n.5. The court recognized one exception to the necessity of a transfer by the JPML to a transferee court: "[p]otential tag-along actions filed in the transferee district do not require Panel action." *Id.* at 1248-49 (citing J.P.M.L. Rule 7.2(a)). "To invoke this exception, a party filing a tag-along

_____

[20] Of course, if the case was locally filed in this court, this court would be the "home court" for trial and a remand or transfer is not implicated.

action in the transferee district 'should request assignment of such action[ ] to the Section 1407 transferee judge in accordance with applicable local rules.'" *Id.*[21]

In *Short Squeeze*, the court expressed concerns about its subject-matter jurisdiction when a plaintiff is named <u>only</u> in a master complaint:

> "Federal courts are courts of limited jurisdiction[,]" *Kokkonen*, 511 U.S. at 377, 114 S.Ct. 1673 (alteration added); and as the Court has explained, **failure to assert claims in a separate action prior to consolidation in an MDL deprives a transferee court of subject matter jurisdiction** over those claims. Absent subject matter jurisdiction, the Court is powerless to proceed. *See Underwriters at Lloyd's, London v. Osting-Schwinn*, 613 F.3d 1079, 1092 (11th Cir. 2010) (citing *Univ. of S. Ala. v. Am. Tobacco Co*., 168 F.3d 405, 410 (11th Cir. 1999)); *see also In re Packaged Ic*e, 2011 WL 6178891, at *9 (rejecting plaintiffs' argument that they "thought they were achieving efficiencies" by direct filing and "making it easier for everyone" because in doing so, they "ignored basic Article III principles" (quotation marks omitted)).

*Id.* at 1254 (emphasis added). In other words, fundamental constitutional limits on subject-matter jurisdiction override the desire to achieve efficiency and economy.

The court in *Short Squeeze* explained:

> Plaintiffs "are simply trying to make an end run around the proper procedural framework that governs MDL proceedings, and to avoid the necessary prerequisites of initiating a civil action or actions in some suitable federal district court ..., and then seeking transfer and consolidation through the appropriate channels[.]" *In re FCA US*, 2017 WL 6402992, at *4 (alterations added). But contrary to Plaintiffs' opinion — and as Defendant correctly points out — **the requirement that plaintiffs in an MDL have filed a separate action prior to consolidation and transfer "is not a mere procedural nicety."**

*Id.* (emphasis added). The court concluded: "A close review of the language of the MDL statute and Panel rules indicates that a plaintiff's claims are properly before an MDL court **only** where the plaintiff has first asserted his or her claims in a separate action." *Id.* at 1249 (emphasis

---

[21] Tag-along cases directly or locally filed in this district are assigned to the MDL judge pursuant to a local rule which provides that "[i]f the fact of relatedness is indicated on the appropriate form at the time of filing, the Clerk of Court shall assign the case to the same Judge to whom the lower numbered related case is assigned." Pa.W.D. Local R. 40(E).

added).  In other words, simply adding a party as a plaintiff in a master complaint was not sufficient for the district court to have subject-matter jurisdiction over that plaintiff's claims.

In *In re Mortgage Electric Registration System (Mers) Litigation*, No. MD-09-02119, 2016 WL 3931820, at *7 (D. Ariz. July 21, 2016), aff'd sub nom. *In re Mortg. Elec. Registration Sys., Inc., Litig.*, 719 F. App'x 550 (9th Cir. 2017) ("*In re MERS*"), the court commented: "the majority of case law on this topic indicates that a transferee court's jurisdiction is not sufficiently invoked where an added plaintiff never filed a lawsuit in any federal court nor had its case transferred to the transferee MDL court by the Judicial Panel."  *Id.* at * 7.  The court concluded that claims having no "home federal court" to which the claim could be eventually remanded in accordance with 28 U.S.C. § 1407(a) must be dismissed for lack of subject-matter jurisdiction. *Id.*

6.   Supplemental jurisdiction when no individual case filed

The court in *In re MERS* rejected the contention that the transferee court in the absence of a filed case was able to exercise supplemental jurisdiction over a plaintiff's claims.  The court quoted *Dorsey v. Manufacturers Life Insurance Co.*, No. CIV. A. 97-2389, 1997 WL 703354, at *3 (E.D. La. Nov. 10, 1997), at length:

In *Dorsey*, the court state[d]:

Supplemental jurisdiction presupposes the existence of a case, already properly before the court, to which the "other claims" may be attached. In other words, supplemental jurisdiction does not create original jurisdiction, it merely sweeps "other claims" under the federal court's jurisdictional rug.

Defendants would like to equate the procedural tool of "consolidation" with supplemental jurisdiction....A desire for consolidation, however, does not obviate the need for the *Dorsey* action to be properly before this Court. The statute governing inter-district consolidation states that "[w]hen civil actions involving one or more common questions of fact are pending in different districts, such actions may be transferred to any district for consolidated pretrial proceedings." 28 U.S.C. § 1407(a)....[H]owever, this rule "requires

> that both actions be 'pending before the court' and an improperly removed
> action does not meet this criterion."... The possibility, or even the actual,
> consolidation of two lawsuits does not give the district court subject matter
> jurisdiction to adjudicate an action that is lacking in original federal
> jurisdiction.

*In re MERS*, 2016 WL 3931820 at *8. The court explained that the parties wrongly equated

"consolidation," which occurs during an MDL, with supplemental jurisdiction. Civil actions

may be transferred for consolidated pretrial proceedings under § 1407, "but only if those actions

are 'pending before the court.'" *Id.* Regardless of parties' desire to consolidate claims in an

MDL, the transferee court lacks subject-matter jurisdiction where a plaintiff "never filed a suit of

his own nor had any suit pending." *Id.*

The court in *In re MERS* relied on the decision in *In re Packaged Ice Antitrust Litigation*,

No. 08-MDL-1952, 2011 WL 6178891, at *1 (E.D. Mich. Dec. 12, 2011):

> When the plaintiffs later filed a new, amended consolidated class action complaint
> on May 25, 2011, **additional plaintiffs were added whose claims had not been
> asserted in the prior complaint**. *Id.* at *2. Thereafter, the court granted the
> defendants' motion to dismiss these added claims for lack of subject-matter
> jurisdiction. *Id.* at *9. The court stated that by "adding these proposed new
> plaintiffs' claims to their existing complaint," plaintiffs "have ignored basic Article
> III principles and have bypassed the appropriate MDL process for consolidation of
> these plaintiffs' claims." *Id.* at *9. As the additional claims had not been transferred
> to the court through the MDL process nor pending in any court prior to their
> addition to the amended complaint, **"[w]ere the Court to permit the addition of
> these Plaintiffs, the Court would be without options at the time of remand as
> these proposed Plaintiffs' claims have no 'home[ ]' transferor court**. *Id.* at *8–
> 9. Although counsel for the plaintiffs "indicated that they 'thought they were
> achieving efficiencies' and 'making it easier for everyone' by simply adding these
> proposed new plaintiffs' claims to their existing complaint," the court did not allow
> the plaintiffs to "retroactively create jurisdiction that did not exist at the time a
> complaint was filed." *Id.* at *6, *9.

*In re MERS*, 2016 WL 3931820 at *9 (emphasis added).

7.  Nature of master complaints

Although master complaints are frequently used in complex litigation, they are not specifically mentioned in the Federal Rules of Civil Procedure or any federal statute. *In re Propulsid Prods. Liab. Litig.,* 208 F.R.D. 133, 141 (E.D. La. 2002). A master complaint may be construed to function: (1) as a procedural or administrative device only; or (2) as an operative complaint.

### a. Procedural or administrative device only

In *Propulsid*, the court concluded that master complaints are not "real" complaints; instead, they are procedural devices used to promote efficiency and economy. *Id.* The court explained that the master complaint in that case was not a pleading governed by Rule 8, but was an "order[] to avoid unnecessary cost or delay" under Rule 42(a)(3). *Id.*

Courts and commentators have recognized that treating a master complaint as a real complaint can create unintended substantive problems with "significant and perhaps unintended consequences." *Propulsid,* 208 F.R.D. at 141 (citing Diana E. Murphy, Unified and Consolidated Complaints in Multidistrict Litigation, 132 F.R.D. 597 (1991); and Arnold Levin, MDL/Class Actions in Mass Tort, Pharmaceutical, and Toxic Litigation, Ann. 2001 ATLA–CLE 2793 (2001)).

In *Propulsid*, the court recognized that one such problem was that the master complaint "would complicate the matter of the subsequent remand of the individual MDL actions back to the transferor court." *Id.* The court explained that "a master complaint, if given the status of a traditional complaint, could be used to circumvent the remand requirement of 28 U.S.C. § 1407 by substituting itself for all individual actions filed in the MDL and thereby frustrate the intended effect of that statute as recognized in the Supreme Court's decision in *Lexecon.*" *Id.* The court concluded that a "master complaint should not be given the same effect as an ordinary complaint.

Instead, it should be considered as only an administrative device to aid efficiency and economy." *Id.* at 142.

   b. Operative pleading

  In *In re Refrigerant Compressors Antitrust Litigation*, 731 F.3d 586, 590 (6th Cir. 2013) (holding that an order dismissing some but not all claims in a master complaint was not a final, appealable order), the court recognized that in some cases, the court and the parties "treat the master complaint as an operative pleading that supersedes the individual complaints." *Id.* The master complaint can be used as a vehicle to resolve motions to dismiss (as occurred in this case). *Id.* The court highlighted the confusion that may result if the parties do not clearly identify whether the master complaint is meant to be an operative pleading or an administrative summary. *Id.* at 591. The court asked, but did not answer: "And what would we do if the post-transfer consolidated complaint added new claims, **or worse still new parties**, never mentioned in the pre-transfer individual complaints?" *Id.* at 591-92 (emphasis added).

  The Supreme Court cited *In re Refrigerant* with approval in *Gelboim v. Bank of America Corp.*, 574 U.S. 405 (2015) (holding that an order dismissing a consolidated MDL case in its entirety triggered the right to appeal). The Court explained:

> Parties may elect to file a "master complaint" and a corresponding "consolidated answer," which supersede prior individual pleadings. In such a case, the transferee court may treat the master pleadings **as merging the discrete actions for the duration of the MDL pretrial proceedings**. *In re Refrigerant Compressors Antitrust Litigation*, 731 F.3d 586, 590–592 (C.A.6 2013). No merger occurs, however, when "the master complaint is not meant to be a pleading with legal effect but only an administrative summary of the claims brought by all the plaintiffs." *Id.*, at 590.

*Id.* at 413 n.3 (emphasis added).

   c. Determining whether a master complaint is procedural or operative

The Seventh Circuit Court of Appeals adopted a "pragmatic approach," based on the behavior of the district court and parties, to determine whether a master complaint should be treated as an operative pleading or a procedural device, i.e., an administrative summary.  *In re Zantac (Ranitidine) Prods. Liab. Litig.*, No. 20-MD-2924, 2023 WL 2325536, at *24 (S.D. Fla. Mar. 2, 2023) (citing *Bell v. Publix Super Markets, Inc.*, 982 F.3d 468 (7th Cir. 2020)).  The default rule, absent a master complaint being the operative pleading, is that every individual case in an MDL maintains its separate identity.  *Id.*  The transferee court and parties may, however, manage the case via the use of an operative master complaint process contrary to that default rule.  *Id.*  In *Bell*, the court of appeals identified five factors, based on the decision in *In re Refrigerant*, 730 F.3d at 590-91, to determine whether a consolidated master complaint should be regarded as the operative pleading:  (1) the label on the complaint; (2) whether the complaint was served; (3) whether key deadlines were set in relation to the complaint; (4) whether the court entertained motions to dismiss the complaint; and (5) whether the parties and the court looked solely to the allegations in the complaint when arguing and deciding motions to dismiss.  *Zantac*, 2023 WL 2325536 at 25 (citing *Bell*, 982 F.3d at 490).

In this case, although counsel initially explained that the master complaints were intended to be "administrative vehicles," ECF No. 528 at 14, PTO #28(b) is somewhat ambiguous about the issue.  Paragraph II(A)(2) provides that the master PI complaint supersedes all other personal injury claims, but the individual claimants also were required to file separate short form complaints.  In other words, the parties recognized that the master complaint and short form complaints were the operative pleadings.  Paragraph II(B)(4)(a), however, provides that a short form complaint is not to be construed as the dismissal of the original complaint filed in a transferred case.  With respect to the *Bell* factors: (1) the master personal injury complaint is

entitled "SECOND AMENDED MASTER LONG FORM COMPLAINT FOR PERSONAL

INJURIES AND DAMAGES, AND DEMAND FOR JURY TRIAL" (ECF No. 2511); (2) it was

served, with the consent of Philips, by filing on this court's CM/ECF system; (3) key deadlines

for motions to dismiss were set in relation to the master complaint; (4) motions to dismiss were

filed against the master complaint; and (5) the parties and court looked solely at the master

complaint in briefing and deciding the motions to dismiss.  Those factors all weigh in favor of

concluding that the master personal injury complaint in this case is an operative pleading, rather

than only a procedural or administrative device.

    C.  Application to this case

In the master third-party complaint, Philips seeks contribution from SoClean for a pro rata

share of the payments Philips made (or will make as part of the settlement) to users of Philips

CPAP Devices, who also used a SoClean device in connection with the Philips Device.  Philips'

contribution claims fall into four separate categories, those for which the Device users: (1) filed

cases locally in this court, and this court is the intended home court; (2) filed cases in other

districts that were transferred to this court by the JPML; (3) submitted claims on the census

registry and participated in the settlement, but did not file separate complaints; and (4) filed short

form complaints in the MDL pursuant to PTO #28(b) and this court is not the intended home

court.[22]  The court will consider each category.

---

[22] At the hearing, the court raised a concern about a fifth category:  those plaintiffs whose cases were voluntarily dismissed prior to the filing of the master third-party complaint.  The court was assured by Philips' counsel that no contribution claims would be asserted where the underlying case was dismissed prior to the filing of the master third-party complaint.  Transcript at 13.

1.  Contribution claims related to cases locally filed in this court, but not pursuant to PTO #28(b)

This category is relatively straightforward.  This court has original jurisdiction over federal question or diversity jurisdiction cases filed by plaintiffs against Philips in this district (i.e., this court is the home court).  The court may, therefore, exercise supplemental jurisdiction over third-party contribution claims against SoClean based on Philips' payment to those individuals who used a SoClean device in connection with a Philips CPAP Device.  If a locally filed case is not disposed or resolved pretrial, this court will continue to manage those cases through trial.

2.  Contribution claims related to cases transferred by the JPML

This category is also relatively straightforward.  The plaintiffs filed cases against Philips in a transferor "home court."  The JPML transferred those cases to this transferee court pursuant to 28 U.S.C. § 1407.  This court may preside over pretrial proceedings, including third-party claims filed by Philips against SoClean arising out of Philips' payments to those plaintiffs.  Fed. R. Civ. P. 14.  This court may exercise supplemental jurisdiction over those contribution claims because the transferor home court would have been able to exercise supplemental jurisdiction over those claims.  28 U.S.C. § 1407(b) (transferee judge may exercise the powers of a district judge of transferor district).  At the conclusion of pretrial proceedings, if the case has not settled or been otherwise resolved, this court may recommend to the JPML that it remand those contribution claims to the relevant home courts.

3. Contribution claims related to individuals who are listed on the census registry

This court lacks subject-matter jurisdiction over contribution claims related to settlement payments made to individuals who did not file an underlying lawsuit that is properly pending before this court. For individuals who participated in the settlement by way of the registry, there is no "home court" and the contribution claims related to those claimants are not tethered to a case that is pending before this court. It is abundantly clear in the caselaw that this court cannot evade the limits set forth in § 1407. *See* discussion *supra* at 21-23. Claims listed on a census registry but not tethered to a filed case pending before the transferee court cannot be added to an MDL by fiat of the transferee court or the parties. Philips' third-party contribution claims derived from settlement payments made or that will be made to the individuals listed on the census registry cannot be resolved by this court or remanded to a home court because this court lacks subject-matter jurisdiction over those claims.

It is true that the court entered an order, at the request of Philips and plaintiffs' leadership counsel, to create the census registry. The registry was successful in facilitating an efficient settlement process. The registry does not, however, create a basis for this court to exercise subject-matter jurisdiction over related third-party contribution claims because they are not tethered to a separate case properly pending before this court.

4. Contribution claims related to cases filed by individuals who directly filed short form complaints pursuant to PTO #28(b) and for which this court is not the intended home court

To repeat, this category does not include cases for which this court is the intended home court (*see* category 1).[23] The court entered an order (at the request of Philips and the personal

---

[23] To the extent an individual had an existing case and filed a short form complaint as provided in PTO #28(b), that case would fall into category 1 or 2, as discussed above. *See* PTO #28(b) ¶ (II)(B)(4)(a) ("Nothing in this Order or the filing of a Short Form Complaint shall be construed as a prior dismissal or amendment of a prior complaint, but the prior complaint shall no longer be deemed the operative

injury plaintiffs' leadership counsel)[24] providing for a master personal injury complaint and complementary short form complaints.  As discussed previously, PTO #28(b) permitted, among other things, the direct filing of cases in this court.  *See* footnote 11.  Simply stated: as provided in PTO #28(b), a directly filed short form complaint commenced a new civil action on this court's electronic filing system.

It appears that this court has diversity jurisdiction over those personal injury cases because they assert complete diversity of citizenship and an amount in controversy greater than $75,000.[25]  Because this court has subject-matter jurisdiction over those directly filed cases, this court will manage those cases pretrial, including managing third-party complaints, like a locally filed case under category 1, and Philips may file a third-party complaint in a directly filed case.[26] The thorny issue, discussed below, is where those cases will be tried.

5.    Unintended consequences arising from directly filed cases

PTO #28(b) contemplates that this court will preside over all pretrial proceedings and at the end of those proceedings, if a directly filed case has not been resolved, the case will be presumptively "remanded" to the intended home court.  *See* PTO #28(b) ¶II(B)(2)(e)

---

complaint.").  Reading the entirety of PTO #28(b) in context, the reference in ¶ II(A)(2) that claims in the plaintiffs' amended master complaint supersede all claims for personal injury that were included in a transferred case must be understood to refer to superseding the original claims only for pretrial purposes. Paragraph (II)(B)(4)(a) is a more specific provision, which provides that the complaints in the underlying cases are not dismissed.

[24] At the time of the entry of PTO #28(b), SoClean was not a party in the Philips MDL and had no role in the master complaint process.  SoClean's only involvement in the Philips MDL resulted from the master third-party complaint, which named SoClean as a third-party defendant.
[25] Each directly filed case will need to be reviewed to confirm that subject-matter jurisdiction would be proper in this court.
[26] Arguably, any plaintiff who directly filed in this district pursuant to PTO #28(b) may be deemed to have consented to that procedure.  While plaintiffs who directly filed under PTO #28(b) did not <u>affirmatively</u> consent to that procedure, no plaintiff filed an objection to PTO #28(b).

("<u>presumptive</u> place of remand" is the "federal district and division in which the action would

have been filed otherwise") (emphasis added).  There is, however, a problematic issue about

where a directly filed case will be tried because PTO #28(b) provides that parties were not

waiving their rights to object to venue[27]  or under *Lexecon*, although they could jointly agree "at

a future date" to try the case in this court. ¶ II(B)(2)(e), (C)(6).[28]

Numerous cases were directly filed in this court pursuant to PTO #28(b) and designated

another district in which the case would have been filed and to which the case would be

presumptively "remanded"[29] if the case was not settled or otherwise resolved pretrial.  Because

---

[27] Because the intended home court is only the "presumptive" place to transfer the case for trial purposes, query – is this court the court that will resolve any disputes about venue?

[28] The parties agreed that choice of law would be based on the forum in which the plaintiffs' cases would have been filed.  *Id.* ¶ II(D).

[29] "Transfer" and "remand" are not the same.  Transfer involves sending a case to a new district, *see Jumara v. State Farm Ins. Co.*, 55 F.3d 873, 878 (3d Cir. 1995);  remand involves sending a case back to a district it came from.  As the Third Circuit Court of Appeals stated:  "'Remand' means 'send back[;]' [i]t does not mean 'send elsewhere.'" *Bloom v Barry*, 755 F.2d 356, 358 (3d Cir 1985).  A case cannot be remanded to any court other than the court it came from.  *Id.*

In *Petrofsky v. ARA Group, Inc.*, 878 F. Supp. 85 (S.D. Tex. 1995), the court examined dictionary definitions and concluded that "remand, by definition, must return the remanded matter to the court from which it was removed":

> Remand means to send back; remand is from the Latin for "hand again." NEW SHORTER OXFORD ENGLISH DICTIONARY, 1683, 2539 (1993). The case must be handed back, not handed somewhere else. 28 U.S.C. § 1447(d).

> A case cannot be remanded to a court from which it did not come, regardless of how just or expedient that result might be. This court cannot transfer a case without jurisdiction of the subject. Another court of the same state within the same jurisdiction—however identical they might otherwise be—is not the court from which it was removed.

*Id.* at 86; *accord Ozuna v. Morales*, No. 23-CV-01747, 2023 WL 5625248, at *2 (D. Colo. Aug. 31, 2023) ("[f]ederal district judges do not have the authority to 'transfer' cases by remanding them to different courts within the same state, let alone to courts of another state, regardless of jurisdiction, venue, and efficiency considerations that might favor that action.") (quoting <u>Wright & Miller</u>, 14C FED. PRAC. & PROC. JURIS. § 3739 & n.14 (Rev. 4th ed.)).

Consistent with this caselaw, the text of § 1407 distinguishes the terms "transfer" and "remand." The JPML may "transfer" cases to a transferee court for pretrial proceedings.  "Each action so **transferred** shall be **remanded** . . . to the district from which it was **transferred**."  § 1407(a) (emphasis added).  Section 1407(c) provides that transfers to an MDL court may be initiated only by: (1) the JPML; or (2) by the parties, in a motion to the JPML.

there was no case pending in the other district which was the intended home court, those cases cannot be "remanded."[30]   Even though a plaintiff identified in the relevant short form complaint a different district, i.e., what the home court *would have been*, the stubborn fact remains that the different district is not a home court to which that case can be remanded.  *See* 28 U.S.C. § 1404(a).  In other words, there is no ability for this court to remand a case to another district unless that case was originally filed in or removed to that other district.  At best, this court could transfer such a direct filed case to the other district; provided, that it has authority to do so under § 1404.[31]

Because Philips preserved its ability to object to venue in the "home court," PTO #28(b) ¶ II(C)(6), i.e., Philips did not consent to venue in the intended "home court," it is not clear how this court could transfer a directly filed case to the intended home court unless this court had authority to do so under § 1404(a).  The parties did not raise or discuss this complication or address whether, if Philips does not consent to venue in the intended home court, the appropriate

---

In *Lexecon*, the Supreme Court held that transferee courts cannot invoke § 1404 to evade the limits in § 1407 by transferring cases to themselves.  Likewise, transferee courts cannot invoke § 1404 to evade the limits in § 1407 by "remanding" a case to a court in which it did not previously exist.

[30] *Id.*

[31] Section 1404(a) provides: "(a) For the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought or to any district or division to which all parties have consented."  28 U.S.C. § 1404(a).  The venue statute provides in relevant part:

  (b) Venue in general.--A civil action may be brought in--
      (1) a judicial district in which any defendant resides, if all defendants are residents of the State in which the district is located;
      (2) a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred, or a substantial part of property that is the subject of the action is situated; or
      (3) if there is no district in which an action may otherwise be brought as provided in this section, any judicial district in which any defendant is subject to the court's personal jurisdiction with respect to such action.

28 U.S.C. § 1391.

party must demonstrate under § 1404(a) that the intended home court is a district in which the civil action might have been brought.

While defendants and plaintiffs' leadership counsel agreed to PTO #28(b), and plaintiffs who later initiated a new case by filing a short form complaint in this court pursuant to PTO #28(b) did not object to PTO #28(b), the court would, at a minimum, need to modify PTO #28(b) to refer to a presumptive transfer rather than a presumptive remand of those cases to their respective intended home courts.  Even if PTO #28(b) was so modified, there remain the venue issues and concerns about the need to comply with the strictures of the transfer statute, 28 U.S.C. § 1404.

The master personal injury complaint in this case was highly successful in terms of identifying common legal issues and spurring settlement on behalf of over 35,000 users of Philips Devices who asserted personal injuries.  The parties, however, have not had an opportunity to be heard on the specific issues about the "remand" contemplated by PTO #28(b) and venue.  Accordingly, before taking action, the court will invite briefing and set a status conference to discuss the impact of this opinion and the appropriate modifications, if any, to PTO #28(b) for directly filed cases.

V.     Conclusion

For the reasons explained on the record on February 25, 2025 and as modified by or more fully explained in this opinion, the amended master third-party complaint (ECF No. 2922) contained numerous contribution claims over which this court lacks subject-matter jurisdiction (i.e., with respect to claimants who participated in the census registry, but did not file a civil case) and conflated the census registry claims with cases filed in or transferred to this court.  The

court sua sponte dismissed the amended master third-party complaint (ECF No. 2995) without prejudice to Philips' ability to refile.  SoClean's motion to dismiss (ECF No. 2995) and DW's motion to dismiss for lack of personal jurisdiction (ECF No. 2997) will be denied as moot.[32] Philips' counsel should consider this opinion in deciding whether to pursue third-party contribution claims as part of this MDL.

The issues concerning the use of the census registry and the entry of PTO #28(b) were not apparent from the submissions of the parties.  The master complaints and pretrial orders were agreed upon by defendants and plaintiffs' leadership counsel and no objections were filed to those orders.  The underlying complications became apparent only when considering challenges to the master third-party complaint.  In this MDL and future MDLs, the parties need to avoid the use of the word "shall" in proposed orders, and the other issues identified in this opinion should be directly addressed with the court before the relevant pretrial orders are entered.

As explained above, the parties did not have an opportunity to be heard on the specific issues discussed above about direct filing and PTO #28(b).  Accordingly, before taking action to modify PTO #28(b), the court will invite briefing and set a hearing or status conference to discuss the impact of this opinion and the appropriate next steps.

An appropriate order will be entered.


Dated: May 7, 2025

                                    BY THE COURT:

                                    /s/ Joy Flowers Conti
                                    Joy Flowers Conti
                                    Senior United States District Court Judge

---

[32] The court does not reach the personal jurisdiction challenge, but notes that personal jurisdiction must be analyzed for each defendant and for each claim.  *Remick v. Manfredy*, 238 F.3d 248, 255-60 (3d Cir. 2001).  The court also reserves its discretion to decline supplemental jurisdiction over any third-party complaint.