IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| **IN RE: PHILIPS RECALLED CPAP, BI-LEVEL PAP, AND MECHANICAL VENTILATOR PRODUCTS LITIGATION** <br><br> This Document Relates to: <br><br> *James v. Philips, et al.*, #22-1383 | Master Docket: Misc. No. 21-1230 <br><br> MDL No. 3014 |

**MEMORANDUM OPINION**

I.   Introduction

Pending before the court is a motion (ECF No. 23), with brief in support (ECF No. 24), filed by Defendants Philips RS North America LLC, Koninklijke Philips N.V., Philips North America LLC, Philips Holding USA, Inc., and Philips RS North America Holding Corporation (collectively, "Philips"). Philips asks the court to dismiss Civil Action No. 22-1383 with prejudice for failure to comply with this court's "show cause" order (ECF No. 21) dated June 13, 2025. Plaintiffs Connie James, Angela James Jenkins, Fiona James, Desiree James Adams and Andrew James, Jr. (collectively, "the James"), did not file a response to the motion. The motion is ripe for decision.

II.   Procedural History

This case was originally filed in a Louisiana state court. Philips removed it to the United States District Court for the Middle District of Louisiana. The Judicial Panel on Multidistrict Litigation transferred the case to this court for inclusion in the coordinated or consolidated pretrial proceedings for the above-captioned Philips MDL pursuant to 28 U.S.C. § 1407.

On May 9, 2024, the Court entered a Docket Management Order ("DMO") (Misc. No. 21-1230, ECF 2769), which set deadlines for all personal injury cases filed by "Litigating Plaintiffs" (i.e., individuals who did not participate in the settlement of personal injury claims). On February 28, 2025, Philips filed a Notice at the James' case, to reiterate that the DMO deadlines applied to them (ECF No. 19). As set forth in DMO ¶¶ 20 and 21, if Litigating Plaintiffs like the James fail to comply with the DMO, their complaint is subject to dismissal with prejudice.

On June 10, 2025, Philips filed a motion (ECF No. 20) for the court to enter a "show cause" order for the James to explain why their case should not be dismissed with prejudice for failure to comply with the DMO deadlines. The court granted Philips' motion and entered the show cause order (ECF No. 21). That order provided, in relevant part:

> ORDER TO SHOW CAUSE. All Plaintiffs listed in Exhibit A to this Order shall, no later than July 7, 2025, either (1) cure the deficiencies noted in Exhibit A to this Order and provide proof of having done so to the Court, or (2) file a response demonstrating good cause for their failure to cure. Pursuant to paragraph 21 of the Docket Management Order, ECF No. 2769, failure to do so shall result in dismissal of the relevant Plaintiff's claims with prejudice.

*Id.*

On July 7, 2025, the James filed a response to the show cause order. (Misc. No. 21-1230, ECF No. 3434). The James, by counsel, reported that they provided certain materials required by the DMO, but acknowledged they had not retained any experts or provided the required expert report. The James requested an extension of time to provide the missing information in their response, but did not file a formal motion.

Philips opposed the request for an extension of time and sought dismissal with prejudice, pointing out that the James failed to comply with the DMO deadlines and did not cure all their failures by the deadline set in the show cause order (ECF No. 3458).  Philips also contended that the James failed to articulate good cause for their failures to comply.  The James did not respond to Philips' contentions.

On September 2, 2025, Philips filed the pending motion to dismiss (ECF No. 23).  Philips represented that the James still had not provided an expert report, a litigating plaintiff fact sheet, or preservation notices, despite the passage of several months.  The James did not respond to the motion to dismiss.

III.    Discussion

Philips seeks dismissal of this case with prejudice.  With respect to the DMO and show cause orders, Philips reports that James did not provide all the required information.  The James's response acknowledged several shortcomiongs, but did not articulate any explanation or good cause for the failures to comply with those orders.  The James' last filing in this case was on July 7, 2025, in which they acknowedged that they had not fully complied with the DMO (ECF No. 3434).

A.  Subject-matter jurisdiction

As an initial matter, the court must confirm that it has subject-matter jurisdiction over this case.  Federal courts have a nondelegable duty to sua sponte review actions to confirm that they have jurisdiction at all phases of the case. *Louisville & Nashville R.R. Co. v. Mottley*, 211 U.S. 149, 152 (1908); *Buell v. Jarvis*, No. CV 2025-0016, 2025 WL 857311, at *2 (D.V.I. Mar. 19, 2025) ("The Court has an independent and ongoing obligation to ensure that it has subject matter

jurisdiction over an action, and to raise the issue *sua sponte* even when the parties fail to raise it.") (citing *Seneca Res. Corp. v. Township of Highland*, 863 F.3d 245, 252 (3d Cir. 2017)).

This case was originally filed in a Louisiana state court. Plaintiffs are citizens of Louisiana and named Louisiana citizens, Lagniappe Medical Data ("Lagniappe") and Sleep Apnea Store ("SAS"), as defendants. (ECF No. 4-2). The state court complaint is rather barebones. It alleges that Andrew James, Sr. (deceased) was harmed by using a CPAP machine that was defective with respect to its design, manufacture and warnings. Complaint ¶ 15. There are no specific allegations about the conduct of Lagniappe or SAS, other than that they "distributed the CPAP machine referenced herein." Complaint ¶¶ 4, 5.

In the notice of removal (ECF No. 4), Philips argued that the citizenship of Lagniappe and SAS may be ignored because they were fraudulently joined and plaintiffs have no colorable claim against them under Louisiana law. Philips argues: (1) the Louisiana Products Liability Act ("LPLA"), La. Rev. Stat. § 9:2800.52, provides the exclusive remedy for plaintiffs harmed by a defective product; and (2) the LPLA does not provide for liability against middleman sellers like Lagniappe or SAS. The James do not challenge the removal from state court or rebut these arguments. Instead, they filed a motion (3 months ago) merely to seek additional time to comply with the DMO and show cause deadlines.

1. Discussion

This court will apply Third Circuit law with respect to the fraudulent joinder doctrine and removal. As explained in *In re Diet Drugs (Phentermine, Fenfluramine, Dexfenfluramine) Prods. Liab. Litig.*, 294 F. Supp.2d 667 (E.D. Pa. 2003):

> As an MDL court sitting within the Third Circuit, defendant Wyeth is correct that we must apply the fraudulent joinder standard of our Court of Appeals, not that of the Eleventh Circuit. *See In re Korean Air Lines Disaster*, 829 F.2d 1171, 1174

(D.C.Cir.1987); *In re Ikon Office Solutions, Inc. Secs. Litig.*, 86 F.Supp.2d 481, 485 (E.D.Pa.2000).

*Id.* at 672.

    a. Fraudulent Joinder

With respect to fraudulent joinder, the applicable standard was recently summarized in *Contreras Madrid v. Walmart Stores East, LP*, No. CV 24-5229, 2025 WL 824124 (E.D. Pa. Mar. 14, 2025):

> A federal court has diversity jurisdiction where there is complete diversity—that is, no plaintiff is a citizen of the same state as any defendant—and the amount in controversy exceeds $75,000. *See* 28 U.S.C. § 1332(a); *In re Lipitor Antitrust Litig.*, 855 F.3d 126, 150 (3d Cir. 2017). The doctrine of fraudulent joinder, however, allows a defendant to remove an action to federal court if a nondiverse defendant was joined solely to destroy diversity jurisdiction. *Brown v. Jevic*, 575 F.3d 322, 326 (3d Cir. 2009). Joinder is fraudulent if "there is **no reasonable basis in fact or colorable ground supporting the claim against the joined defendant, or no real intention in good faith to prosecute the action against the defendant or seek a joint judgment**." *In re Briscoe*, 448 F.3d 201, 216 (3d Cir. 2006) (quoting *Abels v. State Farm Fire & Cas. Co.*, 770 F.2d 26, 32 (3d Cir. 1985)). If the court determines joinder was fraudulent, it "can disregard, for jurisdictional purposes, the citizenship of certain nondiverse defendants, assume jurisdiction over a case, dismiss the nondiverse defendants, and thereby retain jurisdiction." *Id.* (quotation and citations omitted). But if the court determines joinder was not fraudulent, it lacks subject matter jurisdiction and must remand to state court. *See* 28 U.S.C. § 1447(c).

    b. Removal

The court in *Contreras* discussed the standard for removal:

> A defendant in state court can remove a case to federal court if the federal court would have original jurisdiction over it. *See* 28 U.S.C. § 1441(a). "The removal statutes 'are to be strictly construed against removal and all doubts should be resolved in favor of remand.'" *Boyer v. Snap-on Tools Corp.*, 913 F.2d 108, 111 (3d Cir. 1990) (quoting *Steel Valley Auth. v. Union Switch & Signal Div.*, 809 F.2d 1006, 1010 (3d Cir. 1987)).

*Id.*

When a case has been removed to federal court and fraudulent joinder is raised by the remover, the court in *Contreres* recognized that:

> The **removing party arguing fraudulent joinder has a "heavy burden** of persuasion." *Steel Valley Auth.*, 809 F.2d at 1012 n.6. **The district court must consider the complaint at the time the notice of removal was filed and accept all factual allegations in the complaint as true.** *Batoff v. State Farm Ins. Co.*, 977 F.2d 848, 851–52 (3d Cir. 1992). Although a court cannot "step 'from the threshold jurisdictional issue into a decision on the merits,'" it can "look to more than just the pleading allegations" when ruling on a fraudulent joinder motion. *Briscoe*, 448 F.3d at 219 (quoting *Boyer*, 913 F.2d at 112). **Thus, a removing defendant can rely on "evidence outside the pleadings, including such supporting documents as affidavits and deposition transcripts."** *Yellen v. Teledne Cont'l Motors, Inc.*, 832 F. Supp. 2d 490, 503 (E.D. Pa. 2011) (quoting Charles A. Wright & Arthur R. Miller, 14C Federal Practice & Procedure § 3723.1 (4th ed., Apr. 2021 update)).
>
> When deciding whether it has subject-matter jurisdiction, the Court's examination of the plaintiff's claims is less probing than on a motion to dismiss. *Batoff*, 977 F.2d at 852. Therefore, even if a party is not fraudulently joined, the claims against that party may ultimately be dismissed on a Rule 12(b)(6) motion. *Id.* Indeed, the fraudulent joinder analysis requires the court to ask only whether the claims are "**wholly insubstantial and frivolous**," and "**all doubts should be resolved in favor of remand**." *Id.* at 851–52.

*Id.* at *2 (emphasis added).

    c.  Summary

Philips has a "heavy burden" and all doubts must be resolved in favor of remand. The remand standard is more deferential toward the plaintiff's claims than the motion to dismiss standard. In other words, the court may remand a case to the state court even if it believes the state court may dismiss the case for failure to state a claim. It is Philips' burden to show there is "no reasonable basis in fact or colorable ground supporting the claim against the joined defendant." *Id.*

2.  Application to this case

The court concludes that Philips met its heavy burden in this case. As recognized in *Baudin v. AstraZeneca Pharms. LP*, 413 F. Supp. 3d 498 (M.D. La. 2019) (holding that all non-LPLA claims must be dismissed), "[t]he LPLA establishes the exclusive theory of liability for manufacturers regarding damages caused by their products." *Id.* at 503; *see* La. Stat. Ann. § 9:2800.52 ("This Chapter establishes the exclusive theories of liability for manufacturers for damage caused by their products. A claimant may not recover from a manufacturer for damage caused by a product on the basis of any theory of liability that is not set forth in this Chapter.").

Under the LPLA, plaintiffs cannot assert a valid claim against Lagniappe and SAS based on their status as distributors. *See Baudin* ("Thus, to maintain a successful claim under the LPLA, a claimant must establish four elements: (1) that the defendant is a manufacturer of the product . . . ."). A "seller" can be defined as a "manufacturer" under the LPLA if the seller "exercises control over or influences a characteristic of the design, construction or quality of the product that causes damage." La. Stat. Ann. § 9:2800.53(1)(b). In *Ayo v. Honeywell Int'l, Inc.*, No. CIV.A. 06-688-BAJ, 2010 WL 4117726 (M.D. La. Oct. 13, 2010), aff'd sub nom. *Ayo v. Triplex, Inc.*, 457 F. App'x 382 (5th Cir. 2012), the court commented: "the law is clear that a non-manufacturing seller of a defective product is not responsible for damages in tort absent a showing that he knew or should have known the product was defective and failed to declare it." *Id.* at *6. There are no allegations in the complaint that Lagniappe or SAS exercised any control or influence over the design, construction or quality of the CPAP device or knew/should have known it was defective.

A federal court in Louisiana recently rejected a similar claim against a middleman seller and commented: "In fact, "[t]he LPLA 'provides the exclusive remedy for persons claiming

7

injury due to product defects,' " and "[t]he plaintiff may only recover from a defendant who qualifies as a manufacturer of the product under the LPLA." *Halka v. Costco Wholesale Corp.*, No. CV 24-1897, 2025 WL 843064, at *2 (E.D. La. Mar. 18, 2025); *accord Ayala v. Enerco Group, Inc.*, 569 F. App'x 241, 245 (5th Cir. 2014) ("The LPLA does not provide a cause of action against sellers of products not falling under the LPLA's definition of 'manufacturer.'"). The court's independent research did not disclose any decisions which held a middleman seller liable under the facts and circumstances of this case.

In sum, based on the allegations of the complaint, there is no reasonable basis in law or fact to impose liability against Lagniappe or SAS. Philips met its heavy burden to show that they were fraudulently joined. Because there is complete diversity of citizenship between the plaintiffs and the remaining defendant, Philips, the removal from state court was proper and this court has subject-matter jurisdiction over this case.

B.  Compliance with the DMO and Show Cause orders

The deadlines in the DMO were designed to create an efficient process for all litigants – including the James. There was no surprise because the DMO was issued more than a year ago, on May 9, 2024 (ECF No. 2769). A reminder to the James was docketed on February 28, 2025. The James, therefore, were on notice of their duties, among other things, to complete a plaintiff fact sheet, provide authorizations for medical records and obtain an expert report. On July 7, 2025, the James acknowledged that their responses to the DMO were incomplete (ECF No. 3434). Much of the information required by the DMO concerns only the James' claims and is not dependent on access to forms or discovery directed to other parties. As a practical matter, plaintiffs received another multi-month extension to the DMO deadlines.

The James did not explain why they were unable to comply with the DMO deadlines or the "show cause" deadlines. Although the James asked the court for an extension of time to gather the required information, they have not done so in the ensuing three months. The James did not articulate any steps they took to attempt diligently to comply with the deadlines.

As set forth in DMO ¶ 20 and 21, the James' complaint is subject to dismissal with prejudice. The court issued the "show cause" order contemplated by ¶ 21 of the DMO to the James on June 13, 2025. The James failed to cure the deficiencies or to demonstrate good cause for that failure.

IV.     Conclusion

For the reasons set forth above, this case will be dismissed with prejudice for failure to comply with the DMO deadlines and failure to show good cause for the failure to cure the deficiencies.

An appropriate order will be entered.

Dated: October 16, 2025

                                                       BY THE COURT:

                                                       /s/ Joy Flowers Conti
                                                       Joy Flowers Conti
                                                       Senior United States District Court Judge