## IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| IN RE: PHILIPS RECALLED CPAP, BI-LEVEL PAP, AND MECHANICAL VENTILATOR PRODUCTS LITIGATION<br><br>This Document Relates to:<br><br>*Ruiz v. Philips, et al.*, #25-314 | Master Docket: Misc. No. 21-1230<br><br>MDL No. 3014 |

## <u>MEMORANDUM OPINION</u>

I.    <u>Introduction</u>

Pending before the court are: (1) a motion to remand this case to the Superior Court of the State of California, County of Los Angeles ("state court") (Civ. No. 21-1230, ECF No. 3302)[1] filed on behalf of plaintiff Adriana Ruiz ("Ruiz"), with brief and exhibits in support (ECF No. 3303), to which Philips RS North America LLC, and Philips North America, LLC (collectively, "Philips"), filed a brief in opposition to the motion (ECF No. 3347), with an attached declaration; and (2) Philips' motion to sever plaintiff's claims against Dr. Mladen Rasic ("Rasic") (ECF No. 3403), to which Ruiz filed a brief in opposition (ECF No. 3449) and Philips filed a reply brief (ECF No. 3480).

The court scheduled oral argument on all pending remand motions in the Philips MDL for May 6, 2025.  Because Ruiz's motion was not fully briefed by May 6, 2025, and counsel for

---

[1] Ruiz did not cross-file the motion at her individual case, Civ. No. 25-314.

Ruiz did not appear in court, the motion will be resolved by the court without oral argument.

The motion is ripe for disposition.


II.    Procedural and Factual Background

In her state court complaint, Ruiz named as defendants various Philips-related entities (none

of which is a citizen of California), Mladen A. Rasic, M.D., and Braden Partners, L.P. d/b/a

Pacific Pulmonary Services ("Pacific").[2]  The court will focus on the allegations against Rasic

because it concludes that those allegations are dispositive of the pending motion.  Rasic is a

medical doctor specializing in internal medicine and pulmonology and is a citizen of California.

Complaint ¶ 29.  Ruiz is also a citizen of California.  Complaint ¶ 25.[3]

The only count that names Rasic as a defendant is count IX (medical negligence - failure to

warn). Ruiz alleges that on May 8, 2019, Rasic prescribed a Philips DreamStation CPAP device

for her.  Complaint ¶ 144.  Between May 2019 and January 6, 2022, Rasic saw Ruiz for follow-

up appointments 4 to 5 times.  Complaint ¶ 145.  Rasic continued to approve Ruiz's use of the

DreamStation device throughout this time period, despite Philips' recall notice.  Complaint ¶¶

145-146.  On January 6, 2022, Rasic informed Ruiz about the recall, but did not advise her about

any potential dangers and did not recommend she discontinue use of the DreamStation device.

Complaint ¶ 147.  Ruiz alleges she suffered harm due to Rasic's failure to warn her.  Ruiz alleges

that Philips also failed to warn her about dangers associated with use of the DreamStation device.

Complaint ¶ 21.

---

[2] Ruiz also named numerous "John Doe" defendants, whose citizenship is disregarded for removal.  28 U.S.C. § 1441.
[3] The state court complaint simply alleged that Pacific was a partnership formed in California.  Complaint ¶ 30.  Philips submitted a declaration, ECF No. 3347-1, which described the citizenship of each of the partners of Pacific.  Ultimately, it was averred in the declaration that Pacific is a citizen of Delaware and Pennsylvania.

Philips removed Ruiz's state court complaint to the United States District Court for the Central District of California. The Judicial Panel on Multidistrict Litigation ("JPML") transferred the case to this court for pretrial proceedings as part of the Philips MDL. The case was assigned Civil Action No. 25-314 in this court. Ruiz filed the pending motion for remand in this court on April 23, 2025 (ECF No. 3302).

III.     Discussion – Fraudulent Misjoinder

Ruiz challenges subject-matter jurisdiction in the federal courts.[4] She argues that there is not complete diversity of citizenship between plaintiff and defendants, because Ruiz, Rasic and Pacific are all citizens of California. Philips does not contest that Ruiz and Rasic are citizens of California.[5]

In *Tresemer v. Barke*, 86 Cal. App. 3d 656 (Cal. Ct. App. 1978), the court held that a plaintiff stated a cause of action against a doctor for that doctor's failure to warn a former patient of dangers posed by a device the doctor inserted into the plaintiff several years earlier. The doctor interacted with the patient only once – in 1972, when he inserted a Dalkon Shield intrauterine device in her. *Id.* at 665. At that time, the Dalkon Shield was believed to be safe and effective. *Id.* at 667. "It was not until approximately two years later that serious question as to its general safety was first raised and acknowledged in the general medical community; shortly thereafter it was withdrawn from the market." *Id.*

_____

[4] Philips (correctly) did not seek removal based upon federal question jurisdiction, even though Ruiz asserts Magnuson-Moss Warranty Act ("MMWA") claims, 15 U.S.C. § 2301 et seq., in the state court complaint. *See Rowland v. Bissell Homecare, Inc.*, 73 F.4th 177, 180-82 (3d Cir. 2023) (discussing statutory prerequisites for federal jurisdiction over MMWA claims).

[5] As explained above, Philips contends that Pacific's citizenship is diverse from Ruiz's citizenship. The court does not need to reach this issue.

The plaintiff's theory of recovery in *Tresemer* was "that defendant had a duty to warn her of the dangerous effects of the Dalkon Shield when, subsequent to its insertion, he obtained actual knowledge of its hazards, and that his failure to do so amounted to negligence or willful, wanton and reckless disregard for the consequences." *Id.* at 669. The court explained, at length, that whether a legal duty exists is a complex, multi-faceted question of law that is determined by the courts alone. *Id.* at 669-672. The court noted that absent special circumstances, manufacturers have no duty to warn patients and asked rhetorically: "Who then is to tell the patient of hazards newly discovered and not known at the time of the original patient-physician contact when the drug or medical appliance was prescribed?" *Id.* at 671. The court concluded that the plaintiff stated a cognizable cause of action against her former doctor for negligent failure to warn. The duty arose "by virtue of a confidential relationship between doctor and patient." *Id.* at 672. The court explained: "It is not a malpractice cause of action in the commonly understood sense but rather a malpractice action from the imposed continuing status of physician-patient where the danger arose from that relationship." *Id. See Molsbergen v. United States*, 757 F.2d 1016, 1022-23 (9th Cir. 1985) (discussing *Tresemer* at length).

Philips does not challenge Ruiz's ability to pursue a negligent failure to warn claim against Rasic. Instead, Philips invokes the "fraudulent misjoinder" doctrine and argues that Rasic's citizenship can be ignored because he was improperly joined as a defendant in the same case as Philips in order to defeat removal (ECF No. 3347 at 13-17).

A.  Legal standard

    1.  General

This court will apply Third Circuit law with respect to the issues involving fraudulent

misjoinder and remand.  As explained in *In re Diet Drugs (Phentermine, Fenfluramine,*

*Dexfenfluramine) Products Liability Litigation*, 294 F. Supp.2d 667 (E.D. Pa. 2003):

> As an MDL court sitting within the Third Circuit, defendant Wyeth is correct that
> we must apply the fraudulent joinder standard [and, by logical extension, the
> fraudulent misjoinder standard] of our Court of Appeals, not that of the Eleventh
> Circuit. *See In re Korean Air Lines Disaster*, 829 F.2d 1171, 1174 (D.C.Cir.1987);
> *In re Ikon Office Solutions, Inc. Secs. Litig.*, 86 F.Supp.2d 481, 485 (E.D.Pa.2000).

*Id.* at 672.

    2.  Removal

The court in *Contreras Madrid v. Walmart Stores East, LP*, No. CV 24-5229, 2025 WL

824124 (E.D. Pa. Mar. 14, 2025), discussed the standard for removal:

> A defendant in state court can remove a case to federal court if the federal court
> would have original jurisdiction over it. *See* 28 U.S.C. § 1441(a). "The removal
> statutes 'are to be strictly construed against removal and all doubts should be
> resolved in favor of remand.'" *Boyer v. Snap-on Tools Corp.*, 913 F.2d 108, 111
> (3d Cir. 1990) (quoting *Steel Valley Auth. v. Union Switch & Signal Div.*, 809 F.2d
> 1006, 1010 (3d Cir. 1987)).

*Id.*

When a case has been removed to federal court and fraudulent joinder or misjoinder is

raised by the remover, courts recognize that:

> The removing party arguing fraudulent joinder [and, by logical extension,
> fraudulent misjoinder], **has a "heavy burden** of persuasion." *Steel Valley Auth.*,
> 809 F.2d at 1012 n.6. **The district court must consider the complaint at the time
> the notice of removal was filed and accept all factual allegations in the
> complaint as true.** *Batoff v. State Farm Ins. Co.*, 977 F.2d 848, 851–52 (3d Cir.
> 1992). Although a court cannot "step 'from the threshold jurisdictional issue into a
> decision on the merits,'" it can "look to more than just the pleading allegations"
> when ruling on a fraudulent joinder motion. *Briscoe*, 448 F.3d at 219 (quoting
> *Boyer*, 913 F.2d at 112). **Thus, a removing defendant can rely on "evidence**

**outside the pleadings, including such supporting documents as affidavits and deposition transcripts.**" *Yellen v. Teledne Cont'l Motors, Inc*., 832 F. Supp. 2d 490, 503 (E.D. Pa. 2011) (quoting Charles A. Wright & Arthur R. Miller, 14C <u>Federal Practice & Procedure</u> § 3723.1 (4th ed., Apr. 2021 update)).

When deciding whether it has subject-matter jurisdiction, the Court's examination of the plaintiff's claims is less probing than on a motion to dismiss. *Batoff*, 977 F.2d at 852. Therefore, even if a party is not fraudulently joined [or, by logical extension, misjoined], the claims against that party may ultimately be dismissed on a Rule 12(b)(6) motion. *Id.*

*Id.* at *2 (emphasis added). Fraudulent Joinder

With respect to fraudulent joinder, the applicable standard was summarized in *Contreras*:

A federal court has diversity jurisdiction where there is complete diversity—that is, no plaintiff is a citizen of the same state as any defendant—and the amount in controversy exceeds $75,000. *See* 28 U.S.C. § 1332(a); *In re Lipitor Antitrust Litig*., 855 F.3d 126, 150 (3d Cir. 2017). The doctrine of fraudulent joinder, however, allows a defendant to remove an action to federal court if a nondiverse defendant was joined solely to destroy diversity jurisdiction. *Brown v. Jevic*, 575 F.3d 322, 326 (3d Cir. 2009). Joinder is fraudulent if "there is **no reasonable basis in fact or colorable ground supporting the claim against the joined defendant, or no real intention in good faith to prosecute the action against the defendant or seek a joint judgment**." *In re Briscoe*, 448 F.3d 201, 216 (3d Cir. 2006) (quoting *Abels v. State Farm Fire & Cas. Co*., 770 F.2d 26, 32 (3d Cir. 1985)). If the court determines joinder was fraudulent, it "can disregard, for jurisdictional purposes, the citizenship of certain nondiverse defendants, assume jurisdiction over a case, dismiss the nondiverse defendants, and thereby retain jurisdiction." *Id.* (quotation and citations omitted). But if the court determines joinder was not fraudulent, it lacks subject matter jurisdiction and must remand to state court. *See* 28 U.S.C. § 1447(c).

*Id.* In other words, the fraudulent joinder analysis "requires the court to ask only whether the claims are 'wholly insubstantial and frivolous,' and 'all doubts should be resolved in favor of remand.'" *Id*. (quoting *Batoff*).

3. Fraudulent Misjoinder

The fraudulent "<u>mis</u>joinder" doctrine is distinct from the fraudulent joinder doctrine. Both doctrines "focus on the idea that the non-diverse parties were invalidly included for the purpose of defeating diversity jurisdiction." *Brookside Banquets, LLC v. Selective Ins. Co.*, No.

CV2108832, 2021 WL 6135940 *2 (D.N.J. Dec. 29, 2021).  However, "[f]raudulent joinder

focuses on the merits, i.e., whether the plaintiff possesses a colorable cause of action against the

nondiverse defendant. Fraudulent misjoinder focuses on procedure, i.e., whether the claims

against the diverse and nondiverse defendants, even if viable, may properly be joined in the same

action." *Id.*

Permissive joinder rules of civil procedure are involved when the issue of fraudulent

misjoinder is raised.  There is a general policy favoring permissive joinder.  As explained in

*Patrick Collins, Inc. v. Does 1-18*, No. CV 11-7252, 2012 WL 13018259 (E.D. Pa. May 7,

2012):

> The underlying policy for permissive joinder is "to promote trial convenience and
> expedite the final determination of disputes." *Cooper v. Fitzgerald*, 266 F.R.D. 86,
> 88 (E.D. Pa. 2010) (quoting *Daraji v. Monica*, 2007 WL 2994608, at *10 (E.D. Pa.
> Oct. 21, 2007) (internal quotation marks omitted). Thus, the impulse under the
> Federal Rules is "toward entertaining the broadest possible scope of action
> consistent with fairness to the parties; **joinder of claims, parties and remedies is
> strongly encouraged**." *Hagan v. Rogers*, 570 F.3d 146, 152 (3d Cir. 2009)
> (quoting *United Mine Workers of Am. v. Gibbs*, 383 U.S. 715, 724 (1966)).

*Id.* at *1 (emphasis added).

The fraudulent misjoinder doctrine contemplates another means by which diversity

jurisdiction can be achieved.  In *Alvarado v. Sweetgreen, Inc.*, 712 F. Supp. 3d 393 (S.D.N.Y.

2024), the court explained:

> So-called "fraudulent misjoinder" raises entirely different issues and presents
> entirely different problems. *See In re Propecia (Finasteride) Prod. Liab. Litig.*,
> 2013 WL 3729570, at *3 (E.D.N.Y. May 17, 2013). When a court is faced with a
> claim of "fraudulent misjoinder," it is not asked whether the claims that would
> defeat federal jurisdiction are fictive or are properly pled. The presumption of the
> doctrine is that the claims are properly pled; they seek relief from properly named
> defendants based on a properly alleged claim. *See id.*; *In re Prempro Prod. Liab.
> Litig.*, 591 F.3d at 620. Instead, the argument is that the claim that defeats federal
> jurisdiction should not have been joined with the claim that—were it pled alone—
> would have permitted federal jurisdiction. *See Nasca*, 2023 WL 5979210, at *8.

*Id.* at 406.

The doctrine of fraudulent misjoinder "refers to a situation where a plaintiff attempts to frustrate a defendant's right to remove by joining a nondiverse party in violation of the applicable joinder rule." *Saviour v. Stavropoulos*, No. CV 15-5362, 2015 WL 6810856, at *6 (E.D. Pa. Nov. 5, 2015). In other words, the fraudulent misjoinder doctrine recognizes that the plaintiff may have valid claims against the nondiverse defendant (i.e., whose joinder causes complete diversity of citizenship to be lacking), but argues those claims should be severed and remanded because there is no real connection between those claims and the claims the plaintiff asserts against the defendant seeking removal. *Saviour*, 2015 WL 6810856 at *6 & n.3. "Fraudulent misjoinder occurs when (1) a defendant has "no real connection" to the action in violation of the applicable permissive joinder rules, and (2) the violation is "so egregious as to constitute fraudulent joinder."" *Id.* (citation omitted).

The fraudulent misjoinder doctrine is somewhat controversial. "Thus far, the Eleventh Circuit appears to be the lone Circuit to have adopted the fraudulent misjoinder doctrine." *Nasca v. ByteDance, LTD.*, No. 23-CV-02786, 2023 WL 5979210, at *8 (E.D.N.Y. July 27, 2023), report and recommendation adopted, No. 23CV2786, 2023 WL 7102396 (E.D.N.Y. Oct. 27, 2023) (citing *Tapscott v. MS Dealer Service Corp.*, 77 F.3d 1353 (11th Cir. 1996) (abrogated on other grounds)). In *Nasca*, the court explained:

> Not every instance of misjoinder is fraudulent and courts should only retain jurisdiction if the misjoinder is found to be "egregious." *A. Kraus & Son*, 2006 WL 1582193, at *5, 2006 U.S. Dist. LEXIS 37284, at *16 (quoting *Tapscott*, 77 F.3d at 1360). Upon a finding of fraudulent misjoinder, the court can sever the non-diverse parties and retain jurisdiction over the diverse parties. *Abruzzo Docg Inc*., 2021 WL 5304058, at *5, 2021 U.S. Dist. LEXIS 220196, at *19.

*Id.*   "[T]he Court of Appeals for the Third Circuit has not recognized the fraudulent-misjoinder doctrine. The district courts in this circuit are divided on whether to adopt the rule." *Saviour*, 2015 WL 6810856, at *6.

       4.   Summary

Philips has a "heavy burden" and all doubts must be resolved in favor of remand.  The remand standard is more deferential toward the plaintiff's claims than the motion to dismiss standard.  In other words, the court may remand a case to the state court even if it believes the state court may dismiss the case for failure to state a claim.  Here, Philips is not asserting a fraudulent joinder argument, but asserts fraudulent misjoinder.  With respect to fraudulent misjoinder, assuming that doctrine were cognizable in the Third Circuit, it is Philips' burden to show: (1) the nondiverse defendant has no real connection to the action against the diverse defendants; and (2) the violation is so egregious as to constitute fraudulent misjoinder.  *See In re Fosamax (Alendronate Sodium) Prods. Liab. Litig. (No. II)*, No. CIV.A. 11-3045, 2012 WL 1118780, at *3 (D.N.J. Apr. 3, 2012), aff'd, 751 F.3d 150 (3d Cir. 2014) (fraudulent misjoinder analysis requires two steps: (1) a court must find that claims have been misjoined; and (2) the joinder must be egregious).

     B.   Application to this case

       1.   Connection of nondiverse defendant to the claims against Philips

Philips argues that Rasic was fraudulently misjoined because the medical negligence claims against the doctor do not arise out of the same transaction or occurrence as the product liability claims against Philips or present common questions of law or fact.  The

question, essentially, is whether permissive joinder of the claims against Rasic and

Philips in a single action in the state court is wholly frivolous.

In determining the first prong, i.e., whether claims or parties are misjoined, courts

are divided over whether federal or state rules of civil procedure should be applicable.

*Compare Alvarado*, 712 F. Supp. 3d at 406 ("whether two claims are properly joined is,

in the first instance and when the case originates, a question of state law, and not federal

law") (citations omitted), *with Brill River Inv. Co., LLC v. Covington Specialty Ins. Co*.,

No. CIV-25-87-R, 2025 WL 1753587, at *3 (W.D. Okla. June 25, 2025) (declining to

rule on fraudulent misjoinder issue because joinder complied with Fed. R. Civ. P. 20 and

remanding case).

This court need not decide whether the federal or California joinder rule applies

because they are substantially identical. *Sutton v. Davol, Inc.*, 251 F.R.D. 500, 504-05

(E.D. Cal. 2008) (due to similarity, no need to decide which joinder rules apply).

Philips relies heavily on the decision in *Sutton*, 251 F.R.D. 500. (*See* ECF No.

3347; Notice of Removal, Civ. No. 25-314, ECF No. 1).  The facts in *Sutton* are easily

distinguishable from this case.  In *Sutton*, there was no overlap in the facts or the law

because the nondiverse defendants' conduct was unrelated to the diverse defendants'

conduct and the relevant conduct occurred at different times.  "[T]he California

Defendants sent Plaintiffs a letter admitting that these **defendants implanted Plaintiff**

**with the Patch after it had been recalled by the FDA and after they had received**

**notice of the product recall**" from the diverse defendants who manufactured the Patch.

*Id.* at 502 (emphasis added).  The court observed that the evidence would be separate—

"manufacture-specific evidence involving the design, testing, and manufacture of the

Patch on one hand and health care provider-specific evidence regarding Plaintiffs' treatment and health care providers' response to recall warnings on the other." *Id.* at 504 (quoting defendants' brief and finding their position compelling).

The appellants did not attempt to argue that there was proper joinder; their only argument was that "a misjoinder, no matter how egregious, is not fraudulent joinder." *Id.* at 503. In *Sutton*, relying on *Tapscott v. MS Dealer Service Corp.*, 77 F.3d 1353 (11th Cir.1996), abrogated on other grounds, *Cohen v. Office Depot, Inc.*, 204 F.3d 1069 (11th Cir.2000), the court rejected appellants' legal argument, applied the fraudulent misjoinder doctrine and severed the strict products liability claims against the diverse defendants from later-occurring medical malpractice claims against the nondiverse California defendants. The court commented: "Appellants' attempt to join these parties is so egregious as to constitute fraudulent joinder." *Id.* at 504. *See Greene v. Wyeth*, 344 F. Supp. 2d 674, 683–85 (D. Nev. 2004) (reaching similar result).

The court found severance to be proper under Rule 21 "so as to preserve the removing Defendants' right to removal in the remaining multidistrict action and to preserve the interests of judicial expediency and justice so that all pre-trial discovery on the products liability case can be coordinated in a single forum." *Id.* at 505. *See Fosamax*, 2012 WL 1118780, at *3.

*Sutton* has been criticized and appears to represent a minority view. In *Thee Sombrero, Inc. v. Murphy*, No. EDCV15001004, 2015 WL 4399631, at *4 (C.D. Cal. July 17, 2015), the court refused to consider the fraudulent misjoinder argument and explained:

> **The reasons against the doctrine are many and persuasive**. As a district court in the Central District of California explained, although "[i]t is axiomatic that

> **removal under § 1441 should be narrowly construed** and that any doubts ... resolved in favor of remand[,] ... "[f]raudulent misjoinder flips this maxim on its head by making cases removable that by § 1441's plain terms should not be." *Early*, 2013 WL 3872218, at \*3; *see also, e.g., Rutherford v. Merck & Co., Inc.*, 428 F.Supp.2d 842, 852 (S.D. Ill. 2006) ("In the Court's view, the *Tapscott* doctrine is an improper expansion of the scope of federal diversity jurisdiction by the federal courts."). Likewise, this Court declines to expand its jurisdiction by adopting the doctrine of fraudulent misjoinder without intervention by Congress, or guidance from the Supreme Court or the Ninth Circuit.
>
> Moreover, **fraudulent misjoinder requires the severance** of non-diverse defendants under Federal Rule of Civil Procedure 20. *See Goodwin v. Kojian*, 2013 WL 1528966, at \*3 (C.D. Cal. Apr. 12, 2013) ("Fraudulent ... misjoinder looks at the factual commonality among the plaintiff's claims against different defendants and determines if they are sufficient to satisfy the standards provided in Federal Rule of Civil Procedure 20."). **Rule 20, however, "presumes the Court has jurisdiction to act."** *Perry v. Luu*, 2013 WL 3354446, at \*5 (E.D. Cal. July 3, 2013) (emphasis omitted). It makes little sense for a court first to sever part of the case under Rule 20, "and only then find it has jurisdiction." *Id.* (emphasis omitted).

*Id.* at \*4 (emphasis added).

Even if this court followed *Sutton*, fraudulent misjoinder could not be found in this case. Unlike *Sutton*, there is at least one common question of law and fact. In the state court complaint, Ruiz alleges that she was prescribed the CPAP device before the recall, Philips and Rasic both failed to properly warn her about the alleged defects in the Philips CPAP device, and her injuries arose, in part, due to those failures to warn. Complaint ¶¶ 21, 149. In addition, as Ruiz points out, both the negligent failure to warn and products liability claims require proof that the DreamStation device was defective and caused injury. (ECF No. 3303 at 3). The decision to pursue the claims against Rasic and Philips in a single action appears to be well within the California and federal permissive joinder rules. No basis was presented to the court which would support a finding that the joinder was fraudulently made to avoid removal jurisdiction.

It would likely be more efficient and tactically favorable to Ruiz to pursue those claims in the same case.  If the claims were severed and proceeded in separate forums and Ruiz prevails in one suit (e.g., against Philips) and establishes that the Philips device was defective, she would likely have to relitigate that issue in a separate lawsuit against Rasic, which for Ruiz creates additional costs and the potential of inconsistent pretrial rulings and outcomes.  It is conceivable that if separate lawsuits are required, Ruiz could face "empty chair" defenses by both Rasic and Philips.  *See Massaro v. Bard Access Sys., Inc.*, 209 F.R.D. 363, 369 (E.D. Pa. 2002) ("plaintiff motivation is to avoid the burden of prosecuting two claims arising from the same set of facts in two separate forums, particularly in light of the fact that each defendant, in separate forums, will likely point to the proverbial empty chair of the other defendant as the more culpable party.").  Ruiz suggests that Rasic and Philips may file crossclaims against each other, in an effort to place blame on the other for the failure to warn (ECF No. 3449 at 9-11).

The court concludes that Ruiz's negligent failure to warn claim against Rasic shares a real connection and common questions of fact and law with the failure to warn claim against Philips.  Because there was no violation of the permissive joinder rules, the court need not address the second prong of the fraudulent misjoinder doctrine, i.e., whether the joinder was egregious, assuming it is even proper to consider the fraudulent misjoinder doctrine.  Philips failed to meet its heavy burden to demonstrate that Rasic was fraudulently misjoined.

IV.    Discussion -- Severance under Rule 21

As alternative relief if the court determines that Rasic was not fraudulently misjoined, Philips asks the court to sever and retain Ruiz's claims against Philips as part of the Philips MDL.

A.  Whether the court has authority to sever

Federal Rule of Civil Procedure 21, entitled "Misjoinder and Nonjoinder of Parties," provides that "the court may at any time, on just terms, add or drop a party. The court may also sever any claim against a party." Fed. R. Civ. P. 21. The court is aware of its authority, in some circumstances, to sever claims and parties pursuant to Rule 21 to achieve diversity jurisdiction pursuant to *Newman-Green, Inc. v. Alfonzo-Larrain*, 490 U.S. 826 (1989), *Zambelli Fireworks Manufacturing Co. v. Wood*, 592 F.3d 412, 420-21 (3d Cir. 2010), and *Publicker Industries, Inc. v. Roman Ceramics Corp.*, 603 F.2d 1065 (3d Cir. 1979).

*Newman-Green* was a breach of contract case filed in federal court involving Venezualan defendants and one United States citizen domiciled in Venezuala, whose "stateless" status destroyed complete diversity.  The case was litigated for several years and resolved on the merits by the federal district court.  A jurisdictional challenge was raised for the first time on appeal. The appellate court granted the plaintiff's motion to amend the complaint to drop the "jurisdictional spoiler" to preserve complete diversity.  *Id.* at 829.  The Supreme Court held that the appellate court had authority to cure the jurisdictional problem itself, rather than remanding for the district court to do so.  *Id.* at 833.  The Supreme Court observed that if the case was dismissed, the plaintiff could simply refile the suit and should not be compiled to jump through judicial hoops "for the sake of hypertechnical jurisdictional purity."  *Id.* at 837.  The Court "emphasize[d] that such authority should be exercised sparingly" in situations in which "the

practicalities weigh heavily in favor" of exercising jurisdiction.  *Id.*  In exercising their discretion to sever, courts should consider whether dismissal of the nondiverse party would prejudice or provide tactical advantage to any party.  *Id.* at 838.

*Zambelli* similarly involved a situation in which the case was originally filed in federal court and was fully litigated before the lack of diversity of citizenship caused by one LLC entity was discovered, for the first time, on appeal.  The Third Circuit Court of Appeals explained that "considerations of efficiency, fairness, and judicial economy weigh against a wholesale dismissal of the action at this stage."  *Zambelli*, 592 F.3d at 420-21.  The court explained that those considerations were particularly relevant where the plaintiff originally filed the case in federal court and could obtain complete relief against a nondiverse defendant simply by refiling the case without the defendant that destroyed diversity.  *Id.*

*Publicker* was a breach of contract case originally filed in federal court by a distiller and its wholly-owned subsidiary against a bottle supplier.  The district court dismissed the subsidiary to preserve diversity jurisdiction and ruled in favor of the defendant supplier after a bench trial. The plaintiffs, in an effort to avoid the adverse judgment, argued on appeal that the entire case should be dismissed due to the lack of complete diversity.  In *Publicker*, the Third Circuit Court of Appeals explained that courts have some power to sever even if diversity is lacking:

> [Publicker] argues that if complete diversity is lacking, then the court has absolutely no jurisdiction over the action. We see this view of the district court's power under Fed.R.Civ.P. 21 as too restrictive. The court may dismiss a nondiverse party in order to achieve diversity even after judgment has been entered. *See Finn v. American Fire & Casualty Co.*, 207 F.2d 113 (5th Cir. 1953), Cert. denied, 347 U.S. 912, 74 S.Ct. 476, 98 L.Ed. 1069 (1954); *Wolgin v. Atlas United Financial Corp.*, 397 F.Supp. 1003 (E.D.Pa.1975), Aff'd without opinion, 530 F.2d 966 (3d Cir. 1976). And although the district court is precluded from retaining diversity jurisdiction by dismissing a nondiverse party if that party is indispensable under Fed.R.Civ.P. 19, it has not been contended that Continental is an indispensable party with respect to the claims between Roman and Publicker.

*Publicker,* 603 F.2d at 1069.

In each of those cases, the plaintiff filed the original complaint in federal court and there were extensive proceedings on the merits before the jurisdictional challenge was raised.  This case, by contrast, involves removal jurisdiction of a case originally filed in state court.  In *Saviour*, 2015 WL 6810856, the court commented:

> "[W]hile Rule 21 is routinely employed in cases that *began* in federal court, the federal courts have frowned on using the Rule 21 severance vehicle to conjure removal jurisdiction that would otherwise be absent." *Kips Bay Endoscopy Ctr., PLLC v. Travelers Indem. Co.*, No. 14-cv-7153, 2015 WL 4508739, at *4 (S.D.N.Y. July 24, 2015) (quoting *Sons of the Revolution in New York, Inc. v. Travelers Indem. Co. of Am.*, No. 14-cv-03303, 2014 WL 7004033, at *2 (S.D.N.Y. Dec. 11, 2014)).

*Id.* at *5 (emphasis in original); *accord Klintworth v. Valley Forge Ins. Co.*, No. 17-CV-0448-, 2018 WL 4521219, at *2 (N.D. Okla. Sept. 21, 2018) ("[T]here is a difference between curing a jurisdictional defect and creating federal jurisdiction in the first instance."); *Nobers v. Crucible, Inc.,* 602 F. Supp. 703, 709 (W.D. Pa. 1985) (remanding to state court where there was no original jurisdiction and distinguishing *Publicker* on the ground that the district court in *Publicker* had original jurisdiction).

The court need not resolve whether "frowning on severance" means that courts should, in all circumstances, treat removal cases different from cases originally filed in federal court.[6]

---

[6] There are at least three reasons given for prohibiting Rule 21 severance in all removal cases: (1) deference to the plaintiff's choice of forum, *see Royal Canin U. S. A., Inc. v. Wullschleger*, 604 U.S. 22, 35 (2025) (plaintiff is "the master of the complaint," and controls whether to "establish—or not—the basis for a federal court's subject-matter jurisdiction," for example, by naming a defendant "from her own State and thereby destroy[ing] diversity of citizenship."); (2) the removal statute based on diversity of citizenship, 28 U.S.C. § 1441(b)(2), unlike 28 U.S.C. § 1332, contains a "forum defendant rule," *see In re Avandia Mktg., Sales Pracs. & Prods. Liab. Litig.*, 624 F. Supp. 2d 396, 409 (E.D. Pa. 2009) (Congress intended § 1441(b) to restrict federal jurisdiction and deemed defendants in cases involving a properly joined and served in-state defendant do not require access to the federal courts to avoid prejudice to out-of-state defendants); and (3) federalism/comity, *see Healy v. Ratta*, 292 U.S. 263, 270 (1934) ("Due regard for the rightful independence of state governments ... requires that [federal courts] scrupulously confine their own jurisdiction to the precise limits which the [removal] statute has defined").

Under the facts and circumstances of this case, even assuming the court has authority under Rule 21 to sever and retain the claims against Philips, it will decline its discretion to do so, for the reasons set forth below.

### B.   Whether severance is warranted under the circumstances of this case

#### 1.   Split of authority

There is a split of authority about whether, even if authorized, the court should sever and remand claims against nondiverse defendants and retain jurisdiction over claims against diverse defendants.  In *Saviour*, 2015 WL 6810856, which involved removal of a similar case with a nondiverse physician and an MDL for an alleged defective medical device, the court outlined the applicable analysis for severing a party pursuant to Rule 21 in order to preserve diversity jurisdiction: "(1) the party to be severed must be dispensable; and if so, (2) the Court must assess whether severing would prejudice any of the parties in the litigation."  *Id.* at *4.

A minority of courts have severed claims against nondiverse medical parties under contexts similar to this case.  In *Joseph v. Baxter International Inc.*, 614 F. Supp. 2d 868, 870 (N.D. Ohio 2009), as amended (May 27, 2009), the court denied a motion to remand with respect to a pharmaceutical company involved in an MDL, but severed and remanded the claims against

---

On the other hand, it is questionable whether there is a principled difference between cases originally filed in federal court where subject-matter jurisdiction is lacking and removed cases where subject-matter jurisdiction is lacking.  If in appropriate originally-filed cases subject-matter jurisdiction can be achieved after a court exercises its discretion under Rule 21, what difference does it make if the case is before the court due to original filing or being removed?  While there may be additional factors for the court to consider in exercising its discretion under Rule 21 in removal cases, i.e., the plaintiff's choice of forum,  upon reflection, it would be hard to find that given analogous facts (i.e., a jurisdictional defect was discovered without the fault of either party after extensive proceedings were held), the decisions in *Newman-Green*, *Zambelli* and *Publicker* would have been different if those cases had been removed.  In other words, it is possible that the federal courts retain discretion, in an appropriate case, to utilize Rule 21 to recognize that there may be situations where subject-matter jurisdiction will be found to exist after severing claims or parties in a removed case.  The Supreme Court's upcoming decision in *Hain Celestial Grp., Inc. v. Palmquist*, 145 S. Ct. 1960 (2025), may be instructive on this issue.

nondiverse, dispensable medical providers. *Accord Mayfield v. London Women's Care, PLLC*, No. CIV.A. 15-19, 2015 WL 3440492, at *4 (E.D. Ky. May 28, 2015); *DeGidio v. Centocor, Inc.*, Case No. 3:09CV721, 2009 WL 1867676, at *1 (N.D. Ohio June 29, 2009), as amended (July 8, 2009). These courts reasoned: (1) the nondiverse medical providers were not necessary parties under Rule 19; (2) the nondiverse medical providers were not indispensable parties under Rule 21; and (3) the inconvenience and prejudice to the pharmaceutical company outweighed the prejudice to the plaintiffs. In *Joseph*, the court recognized that fighting on two fronts would be inconvenient and more expensive for the plaintiffs, but believed that settlement was more likely if the case was part of an MDL and, even if the case did not settle, the plaintiffs would benefit from the MDL process because they would not bear the burden of having to litigate on their own. *Joseph*, 614 F. Supp. 2d at 873.

"These cases have not enjoyed broad support." *Hampton v. Insys Therapeutics, Inc*., 319 F. Supp. 3d 1204, 1214 n. 10 (D. Nev. 2018) (collecting decisions for the proposition the minority view is wrong and not well-reasoned). The majority of courts refuse to sever those kinds of claims and parties to achieve federal jurisdiction (even assuming they have authority to do so). In *Slater v. Hoffman-La Roche Inc*., 771 F. Supp. 2d 524 (E.D. Pa. 2011), the court explained:

> The Court declines to exercise its discretion to sever WKH and remand only plaintiff's claims against WKH to state court. Although severance and remand of the claims against WKH would benefit Roche because plaintiff's claims against Roche would remain in federal court and would be transferred to the MDL, and although the discovery relevant to the claims against WKH and Roche is not completely identical, the Court concludes that the potential prejudice to defendants if WKH is not severed is outweighed by the prejudice plaintiff will suffer if there is a severance. First, the Court is mindful of the deference to be afforded plaintiff's choice of forum. *See Delta Air Lines, Inc. v. Chimet, S.p.A*., 619 F.3d 288, 294 (3d Cir. 2010) ( "[A] plaintiff's choice of forum should rarely be disturbed.") (quoting *Piper Aircraft Co. v. Reyno*, 454 U.S. 235, 241, 102 S.Ct. 252, 70 L.Ed.2d 419 (1981)). Second, severance will prejudice plaintiff, who will be required to litigate

18

in two different fora. Third, and most importantly, given the Court's determination that WKH, the Pennsylvania defendant, was not fraudulently joined, Roche's removal of the case was improper. Thus, severing and remanding only the claims against WKH would undermine 28 U.S.C. § 1441(b)'s prohibition on removal of cases involving forum defendants.

*Id.* at 530.

In *Saviour*, 2015 WL 6810856 at *4-6 (collecting decisions that refused to sever claims to achieve diversity jurisdiction), the court concluded that the medical provider was a dispensable party, but found that prejudice to the plaintiff outweighed the benefits of litigating in the MDL and remanded the case to the state court. The court noted the deference to be afforded plaintiff's choice of forum and the Supreme Court's admonition in *Newman-Green* that the authority to sever a nondiverse party "should be exercised sparingly"—where "the practicalities weigh heavily in favor of" preserving jurisdiction. *Id.* (quoting *Newman-Green,* 490 U.S. at 837). In addition, the court noted that severance would be inconsistent with the heavy burden removing defendants carry to show that a case is properly before the district court. *Id.* (citing *Brown v. Jevic*, 575 F.3d 322, 326 (3d Cir. 2009)). The court explained:

> Severing a non-diverse party at this stage of the litigation would be inconsistent with that burden. Severing Stavropoulos upon the removal of the case "would circumvent the strict constraints of the removal statute and unduly expand diversity jurisdiction." *Id.* "[M]any defendants would likely attempt to seek this post-removal action by the courts in order to avoid meeting the burdens associated with fraudulent joinder. Such a broad right would be inconsistent with the strict construction of the removal statute and the presumption in favor of remand." *Phillips v. R.R. Dawson Bridge Co., LLC*, No. 14-cv-00480, 2014 WL 3970176, at *5 (N.D. Ala. Aug. 12, 2014).

*Id.*

In *In re: Xarelto (Rivaroxaban) Products Liability Litigation*, No. 16-1066, 2016 WL 4409555, at *6–7 (E.D. La. Aug. 19, 2016), the court explained it refused to sever claims against a nondiverse physician to retain jurisdiction and send the case to an MDL because there would

be common questions of law and fact to all the parties to the action, and the relative liability of

the parties was in question, i.e., the plaintiffs contended that the pharmaceutical defendants and

medical defendants were each responsible for the death of the patient.  The court commented that

the plaintiffs had "a strong strategic interest in playing these parties against one another at trial,

which weighs against dismissal."  *Id*. (citing *Newman-Green*, 490 U.S. at 837) (instructing that

courts should consider tactical advantages to severance/nonseverance).  The court noted that

severance would force the plaintiffs to litigate against an "empty chair" (i.e., if the cases

proceeded separately, each defendant would blame the other, absent defendant).  *Id.*  The court

was "cognizant of the deference owed to a plaintiff's choice of forum, especially where Rule 21

is being used to create jurisdiction rather than preserve it."  *Id.*; *accord In re Heparin Prods.*

*Liab. Litig.*, No. CIV. 1:10-HC-60195, 2011 WL 197967, at *1-2 (N.D. Ohio Jan. 18, 2011)

(recognizing that severance to retain claims in MDL would have advantages, but declining to do

so because "empty chair" may be severely prejudicial to the plaintiff where there was no tidy

demarcation between claims, as in *Joseph*).[7]

### 2.  Application to this case

#### a.  Dispensable party

At the first step of the severance analysis, the court considers whether Rasic is a

dispensable party.  In *Joseph*, the court outlined the two-step analysis under Rule 19:

> I first assess under Rule 19(a) whether a party is necessary for just adjudication. A
> party is necessary if: "(1) complete relief cannot be given to existing parties in his
> absence; (2) disposition in his absence may impair his ability to protect his interest
> in the controversy; or (3) his absence would expose existing parties to substantial
> risk of double or inconsistent obligations." *Safeco Ins. Co., supra*, 36 F.3d at 546;
> Fed.R.Civ.P. 19(a).
> If the party is necessary, then, under Rule 19(b), I determine if he is indispensable
> by considering whether: 1) a judgment rendered in the party's absence would
> prejudice the available party; 2) such prejudice could be lessened or avoided; 3) a

---

[7] *Heparin* and *Joseph* were decided by the same judge.

judgment rendered in the party's absence would be adequate; and 4) the plaintiff has an adequate remedy if the action is dismissed for nonjoinder. *Soberay, supra*, 181 F.3d at 764.

*Joseph*, 614 F. Supp. 2d at 872.  In *Joseph*, the court concluded that the medical defendants were not necessary because resolution of a claim against them would not necessarily resolve the claims against the medical device manufacturer (i.e., the medical malpractice claims differed from the products liability claims).  *Id.* at 872-73 (collecting decisions); *accord Saviour,* 2015 WL 6810856 at *4.

Rule 19 does not require the joinder of joint tortfeasors.  *Talbot Underwriting Ltd. v. Nutra Food Ingredients*, LLC, No. 2:24-CV-258, 2025 WL 776177, at *3 (W.D. Pa. Mar. 11, 2025).  The court will assume for purposes of this analysis that Rasic is a dispensable party.

b.  Prejudice

At the second prong, the court considers prejudice and the tactical advantages of severance. There are considerations weighing on each side.  On one hand, Ruiz chose to file this case in the state court (and on the facts alleged could do so, as explained above).  Courts should not lightly disregard a plaintiff's choice of forum.  *Royal Canin*, 604 U.S. at 28.  There will be common questions of fact and law about the damages caused by the alleged failures to warn by Rasic and Philips.  If forced to litigate in separate forums, Ruiz could likely face "empty chair" defenses by both Rasic and Philips.

On the other hand, the court recognizes that keeping the MDL-related aspects of this case could minimize duplicative discovery and the potential for inconsistent pre-trial rulings.  Ruiz timely opposed removal and sought remand early in her case, but the court stayed ruling on the motion, for many of the reasons expressed in *Joseph*, i.e., the issue of fraudulent misjoinder, the availability of common resources and the likelihood of potential settlement.

21

The current status of the MDL weighs in favor of remand. The MDL is now largely resolved. The court approved class action settlements of the Economic Loss and Medical Monitoring claims.[8] Philips offered private settlements to plaintiffs who had certain qualifying injuries, as defined in the settlement.[9] On March 14, 2025, Philips placed $1.05 billion in a fund to settle those kinds of personal injury claims. There were 35,746 claimants (ECF No. 3698). Some claimants filed cases in state courts which were removed to federal court and transferred to this court by the JPML; some claimants filed cases in other federal courts which were transferred to this court by the JPML; and some claimants directly filed their cases in this court. The majority of the claimants did not file a lawsuit in court, but were listed on a census registry established by the court at the joint request of Philips and plaintiffs' leadership counsel.[10] The

---

[8] The court is not addressing whether Ruiz is asserting any claims that may be impacted by those settlements.

[9] *See* Personal Injury Settlement Agreement, ECF No. 2678-1 at 4:
     Qualifying Injury means either a Qualifying Respiratory Injury or a Qualifying Cancer.

     Qualifying Respiratory Injury means, as demonstrated through proof of diagnosis or treatment,
     respiratory impairment (e.g., new or worsening asthma, new or worsening COPD, chronic bronchitis, bronchiectasis, sarcoidosis, acute respiratory distress syndrome, reactive airways dysfunction syndrome, pulmonary fibrosis, pneumonitis, other interstitial lung disease, other obstructive or restrictive lung disease).
     Qualifying Cancer means one of the following, as demonstrated through proof of diagnosis or
     treatment: lung cancer; certain blood cancers (acute myeloid leukemia (AML), chronic myeloid leukemia (CML), or mucosa associated lymphoid tissue (MALT) of the air-pathway lymphoid tissue); or ENT/pathway cancers (e.g., oral cavity cancers; oropharynx cancer; nasal cavity/sinus cancer; nasopharynx cancer; larynx cancer; hypopharynx cancer; salivary cancer; esophageal cancers; thyroid cancers).

[10] In discussing the private settlement agreement for certain personal injury claims, plaintiffs' leadership counsel reported that there were over 58,000 registrants listed on the registry. (ECF No. 2768-1).

settlement administrator expects all those settled claims to be paid by early 2026 (ECF No. 3698).

The record does not reflect that Ruiz participated in a private settlement in the Philips MDL. Thus, Ruiz will be deemed a "litigating plaintiff" and, unless the case is remanded, must comply with the requirements of the Docket Management Order ("DMO") (ECF No. 2769). This court previously explained: "If the court agrees with a plaintiff that the court lacks jurisdiction, that case will be remanded -- the plaintiff, however, will likely need to gather the evidence required by the DMO in any event. If the court determines that it may properly exercise jurisdiction over a case, the DMO deadlines will be enforceable and any plaintiff who fails to comply with those deadlines does so at his or her own risk." ECF No. 3249 at 6.

Philips reported to the court in a status report on November 17, 2025, that only 9 "litigating plaintiffs" complied with all the requirements of the DMO, two of whom are seeking remand (ECF No. 3718), although deadlines for some cases have not yet expired and there is potential for additional cases to be filed. At this stage of the MDL, considering the small number of cases remaining, there may be few common issues other than general causation among those plaintiffs. Extensive discovery has already taken place and is available to all plaintiffs. If Ruiz wants to access the repository of documents available to plaintiffs in the MDL, Ruiz, if her counsel is a Participating Counsel (see ECF Nos. 491, 586), may do so. The benefit of keeping this case in the MDL to coordinate common discovery is largely moot, as that benefit has for the most part been achieved. If Ruiz wants to access the repository of documents available to plaintiffs in the MDL, Ruiz, if her counsel is a Participating Counsel (see ECF Nos. 491, 586), may do so. Philips, as demonstrated by the extensive litigation in the MDL, has the resources to litigate in a California state court.

Remand at this time does not foreclose Philips' ability to access a federal forum because Philips may seek severance after the case is remanded to the state court or Rasic and Pacific may successfully challenge the claims against them. *See Alvarado*, 712 F. Supp.3d at 411 ("A defendant who believes that two claims have been joined improperly for the purpose of defeating federal jurisdiction or, even if not joined for a fraudulent purpose, that the two claims will not survive in a single complaint, is not without recourse. She can still 'seek severance in state court, which would render the propriety of subsequent removal to federal court straightforward.'"); 14C Charles A. Wright & Arthur R. Miller, Federal Practice and Procedure § 3723.1 (2018 & Supp. 2025).

At this stage of the MDL, considerations of efficiency, fairness, and judicial economy (in addition to the policy to consider plaintiff's choice of forum) weigh in favor of remand. Ruiz chose to file her case in the state court (and could properly do so, as explained above). Ruiz timely opposed removal and sought remand. Ruiz has not participated in extensive proceedings in the MDL in this court, but may have the benefits of the extensive discovery already conducted in this MDL. If severance was granted, she would be forced to litigate the claims against Rasic and Philips in separate forums. There may be "empty chair" defenses in each forum, with at least Rasic and Philips blaming each other for the failure to warn Ruiz and the resulting injuries.[11]  Because Philips did not meet its heavy burden to show that severance at this time is appropriate, the court, in the exercise of this court's discretion, declines to sever Rasic and the claims against Rasic from the claims against Philips.

---

[11] Philips did not counter the "empty chair" argument.

<u>V. Conclusion</u>

For the reasons set forth above, the court concludes that Rasic was not fraudulently misjoined and severance is not warranted.  Under those circumstances, the federal courts lack subject-matter jurisdiction over this case.  The motion to remand this case to the state court (Misc. No. 21-1230, ECF No. 3302) will be granted; and Philips' motion to sever plaintiff's claims against Rasic (ECF No. 3403) will be denied.  Civil Action No. 25-314 shall be remanded FORTHWITH to the Superior Court of the State of California, County of Las Angeles.

An appropriate order will be entered.

Dated: December 18, 2025

BY THE COURT:

<u>/s/ Joy Flowers Conti</u>
Joy Flowers Conti
Senior United States District Court Judge